Theodore H. Frank (SBN 196332)
Anna St. John (*pro hac vice*)
**COMPETITIVE ENTERPRISE INSTITUTE**
  **CENTER FOR CLASS ACTION FAIRNESS**
1899 L Street NW, 12th Floor
Washington, DC 20036
Voice: (202) 331-2263
Email: ted.frank@cei.org
Email: anna.stjohn@cei.org
*Attorneys for Amicus Curiae*
   *Competitive Enterprise Institute*
   *Center for Class Action Fairness*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 2672 |
| This document relates to: ALL CASES | **DECLARATION OF THEODORE H. FRANK** IN OPPOSITION TO UNNOTICED REQUEST FOR DISCOVERY ORDER |

MDL No. 2672

DECLARATION OF THEODORE H. FRANK

I, Theodore H. Frank, declare as follows:

1. I have personal knowledge of the facts set forth herein and, if called as witness, could and would testify competently thereto.

2. My business address is 1899 L Street NW, 12th Floor, Washington, DC 20036. My telephone number is (202) 331-2263. My email address is ted.frank@cei.org.

## CCAF and the Competitive Enterprise Institute

3. I founded the non-profit Center for Class Action Fairness ("CCAF") in 2009. CCAF litigates on behalf of class members, which it represents *pro bono*, against unfair class-action procedures and settlements. *See, e.g.*, *Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014) (Posner J.) (praising CCAF's work); *In re Dry Max Pampers Litig.*, 724 F.3d 713, 716-17 (6th Cir. 2013) (describing CCAF's client's objections as "numerous, detailed, and substantive") (reversing settlement approval and certification); *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 205 (D.D.C. Nov. 6, 2013) (describing CCAF's client's objection as "comprehensive and sophisticated" and noting that "[o]ne good objector may be worth many frivolous objections in ascertaining the fairness of a settlement") (rejecting settlement approval and certification).

4. On October 1, 2015, after consultation with its board of directors and its donors, the Center merged with the much larger Competitive Enterprise Institute ("CEI"), to take advantage of the economies of scale realized by eliminating some of the enormous fixed costs required for bureaucratic administration of and regulatory compliance by non-profits. The Center was on financially sound footing, and consistently growing its assets faster than its spending, but a disproportionate amount of attorney time was taken up with non-litigation tasks, and we were not large enough to justify hiring full-time communications or fundraising or regulatory-compliance staff, which I felt was limiting our effect.

5. Prior to its merger with CEI, the Center never took or solicited money from corporate donors other than court-awarded attorneys' fees. CEI, which is much larger than the Center, does take a small percentage of its donations from corporate donors. As part of the merger agreement, I negotiated a commitment that CEI would not permit donors to interfere with CCAF's case selection

MDL 2672                                                                                                                                    1
DECLARATION OF THEODORE H. FRANK

or management. In the event of a breach of this commitment, I am permitted to treat the breach as a constructive discharge entitling me to substantial severance pay. CEI has honored that commitment.

6. None of the corporate donors to CEI have earmarked contributions to CCAF.

7. According to the *Washington Post* article cited by Mr. Jaffe, Volkswagen America was a $5,000 sponsor at CEI's annual gala in 2013, over two years before I joined CEI. CEI personnel have told me that this is the only donation Volkswagen has made to CEI in CEI's thirty-year history. This $5,000 is less than 1% of the money that I estimate CCAF will bring in from court-awarded attorneys' fees and preexisting CCAF donors in the next fiscal year, and far less than the severance payment that I will be entitled to if CEI attempts to steer CCAF's litigation in this case over its relationship with any donor.

8. My understanding is that CEI's litigation history includes several lawsuits against the interests of some of its corporate donors. Based on this and based on my own experience working at CEI over the past four months, I have every confidence that CCAF will continue to have the autonomy for which I negotiated.

9. For example, I am personally the objector-appellant in a pending Ninth Circuit appeal against the *cy pres* settlement of a corporate donor to CEI who has contributed much more to CEI than Volkswagen. No one at CEI has complained that I am currently prosecuting that appeal against the donor, sought to interfere with the pending appeal, or even told me that I was adverse to the donor. I only discovered that information by happenstance when looking at the corporate donor's website.

10. Similarly, here, I learned that Volkswagen might previously have been a donor to CEI for the first time on January 5, 2016, when I read Mr. Jaffe's brief. I have investigated and learned that Volkswagen has given only a single $5,000 donation to CEI over the last thirty years. Whether Volkswagen is a regular donor or not does not affect my position in this case. I raised the possibility of CCAF involvement in the Volkswagen MDL with team members on or about October 1, 2015; made the decision to file an *amicus* in the JPMDL on October 17, 2015; and informed senior Competitive Enterprise Institute personnel of the decision on October 19, 2015, the day before we

were to file in the JPMDL. At no time did anyone at CEI tell me that Volkswagen is, had been, or might be a future donor; or suggest that I modify my public comments to the press or in briefing, which have repeatedly indicated that Volkswagen faced enormous liability over the clean diesel issue. CEI's *amicus* brief in the JPMDL, filed on October 20, 2015, took a position adverse to Volkwagen's proposed transfer destination. No one from Volkswagen or any organization affiliated with Volkswagen consulted with anyone from CCAF on either of our *amicus* briefs.

11. Most importantly, Mr. Jaffe's brief does not identify how it would be remotely relevant to the merits of the CEI *amicus* brief if Volkswagen—or anyone else—were a current donor. Which legal and factual arguments made by CEI in its *amicus* are less credible if that fact were true? Indeed, as documented in our JPMDL *amicus*, CCAF's arguments for aligning class counsel's incentives with the class's incentives are adverse to Volkswagen's interests in settling this case for as cheaply as possible by structuring a settlement to benefit the attorneys at the expense of the class.

12. For this reason, the one time in CCAF's history that plaintiffs' attorneys engaged in a similar fishing expedition on vague assertions of bias and influence by donors were sanctioned $100,000 for their abuse of the discovery process. *In re Classmates.com Consol. Litig.*, No. 09-cv-0045-RAJ, 2012 U.S. Dist. LEXIS 83480 (W.D. Wash. Jun. 15, 2012). The proposed harassing discovery sought by counsel here should be similarly rejected out of hand.

13. I further note that CCAF's *amicus* brief works against CCAF's financial interests. If class counsel ultimately propose a settlement with an excessive attorney fee, and CCAF successfully objects on behalf of a class member to that fee, CCAF could win attorneys' fees. The procedures CCAF proposes in its *amicus* brief substantially reduces the chances of a successful objection to attorneys' fees.

### Other **Ad Hominem** Attacks

14. Mr. Jaffe's brief relies upon a third-party website run by a law firm that once demanded millions of dollars to settle an objection it had brought. That website is wildly inaccurate and arguably libelous: it includes vacated opinions without acknowledging that those opinions are not good law; falsely attributes cases and briefs I had nothing to do with as objections where I was an attorney;

MDL 2672                                                                                                   3
DECLARATION OF THEODORE H. FRANK

falsely characterizes successful objections I brought and court decisions on those objections; and omits dozens of successful objections I brought that won millions of dollars for class members. I will be happy to provide a complete list of Center for Class Action Fairness objections to the Court if the Court will find our track record useful, but I fail to see the relevance of that track record to an *amicus* brief advocating for establish *ex ante* procedures that would make an objection less likely.

### The Irony of Mr. Jaffe's Accusation of Conflict of Interest

15. Ironically, though Mr. Jaffe accuses CCAF of a conflict of interest, he seeks to represent a class despite the fact that his attorney is his co-counsel in at least two other class actions, *Fraley v. Facebook* (No. 11-cv-1726 (N.D. Cal.)) and *Becker v. Skype Inc.* (No. 12-cv-6477 (N.D. Cal.))—a conflict of interest that *per se* violates Rule 23(a)(4) and precludes his standing to maintain his action as a class action. *In re Southwest Airlines Voucher Litig.*, 799 F.3d 701 (7th Cir. 2015) (sanctioning class counsel for failure to disclose identical conflict); *Redman v. RadioShack Corp.*, 768 F.3d 622, 638 (7th Cir. 2014); *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1253-55 (11th Cir. 2003). That Mr. Jaffe's counsel is unaware of or indifferent to these highly-publicized rulings suggests that he would be entirely inadequate to represent any class of Volkswagen owners, and is seeking participation in this litigation solely to benefit himself rather than the putative class he would owe a fiduciary duty to.

16. Given that Mr. Jaffe and his counsel have previously attempted to benefit themselves at the expense of their class clients by negotiating a settlement that would pay $0 to their clients and $10.3 million to themselves that the district court rejected (*Fraley* Dkt. No. 224), the concern that they would work to benefit themselves ahead of the class is not hypothetical.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 5, 2016, in Washington, DC.

*/s/ Theodore H. Frank*
Theodore H. Frank

MDL 2672   4
DECLARATION OF THEODORE H. FRANK

# CERTIFICATE OF SERVICE

I, Theodore H. Frank, declare that I am over the age of eighteen and not a party to the entitled action. I am an attorney with the Competitive Enterprise Institute's Center for Class Action Fairness, and my office address is 1899 L Street NW, 12th Floor, Washington, DC 20036.

On January 5, 2016, I caused to be served a true and correct copy of the following:

**1)  DECLARATION OF THEODORE H. FRANK**

**2)  CERTIFICATE OF SERVICE**

with the Clerk of the Court using the Official Court Electronic Document Filing System which served copies on all interested parties registered for electronic filing.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on January 5, 2016, in Washington, DC.

*/s/ Theodore H. Frank*
Theodore H. Frank