UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID MILLINGTON, CHRISTOPHER HAITZ, JR. and ERIN SEEKAMP Individually And On Behalf of All Others Similarly Situated<br><br>         Plaintiffs,<br><br>   - against -<br><br>VOLKSWAGEN GROUP OF AMERICA, INC., VOLKSWAGEN AG, AUDI AG, and AUDI OF AMERICA, INC.,<br>         Defendants. | Jury Trial Demanded<br><br>This Document Relates to:<br><br>Case No. 15-cv-05910-CRB<br><br>Hon. Charles Breyer, U.S.D.J. |

**FIRST AMENDED COMPLAINT**

**CLASS ACTION**

David Millington, Christopher Haitz, Jr. and Erin Seekamp, individually and on behalf of all others similarly situated, ("Plaintiffs") based on personal knowledge as to themselves, and upon information and belief as to all other matters, allege as follows:

**NATURE OF CLAIMS**

1.  Defendants Volkswagen AG, Volkswagen Group of America, Inc., Audi AG, and Audi of America, Inc. (collectively "Volkswagen" or "Defendants") have aggressively claimed since 2008 that their cars containing TDI Clean Diesel engines ("Clean Diesel cars") are environmentally friendly, "clean," EPA certified, powerful, and fuel efficient.

2.  In reality, the Clean Diesel cars were anything but "clean."

3.  Rather, Defendants utilized a sophisticated software program to deceive purchasers, as well as the Environmental Protection Agency ("EPA") and state regulators, about the true nature of the emissions from these Clean Diesel cars.

4.  Defendants installed a software program in all Clean Diesel cars that detected when the

cars were undergoing emissions testing.

5. When the software detected emissions testing, it turned on full emissions control during the test.

6. However, when the Clean Diesel cars were not undergoing testing, these emissions controls were not activated.

7. As a result, during normal operations, these allegedly "clean" cars' engines emitted pollutants, such as nitrogen oxides (NOx), at up to 40 times the amounts allowed under the laws of the United States and various states.

8. Automobile manufacturers must abide by these federal laws and must adhere to EPA rules and regulations.

9. This case arises because Defendant Volkswagen purposefully and intentionally breached the laws of the United States and the rules and regulations of the EPA by selling vehicles manufactured by its affiliates Volkswagen AG and Audi AG that purposefully evaded federal and state laws.

10. As stated by Cynthia Giles, Assistant Administrator for the Office of Enforcement and Compliance Assurance at the EPA: "Using a defeat device in cars to evade clean air standards is illegal and a threat to public health."

11. Yet that is exactly what Volkswagen did in its 2009-2015 Volkswagen and Audi diesel vehicles.

12. On September 18, 2015, the EPA issued a Notice of Violation ("NOV") finding that this

sophisticated software constituted a "defeat device" under the Clean Air Act ("CAA"). [1]

13. A "defeat device" is anything that reduces the effectiveness of the vehicle's emissions control system during normal vehicle operations. The EPA found that because of these "defeat devices," the Clean Diesel cars did not meet federal emissions standards or comply with the certificates of conformity that Defendants—like all vehicle manufacturers—were required to secure for each car that they intended to sell in the United States.

14. By installing these "defeat devices" and failing to disclose the true level of emissions from the Clean Diesel cars, Defendants purposefully violated the CAA and its regulations, as well as state laws, lied to and defrauded consumers, and engaged in deceptive trade practices and unfair competition.

15. On September 21, 2015, Michael Horn, President and CEO of Volkswagen Group of America, spoke during the 2016 Volkswagen Passat introduction in Brooklyn, stating that his company had "totally screwed up" but intended to "fix those cars," so that Defendants can "make it right." [2]

16. As a result of Defendants' fraudulent, deceptive, and unfair conduct, owners and lessees of the Clean Diesel cars, such as Plaintiffs and the Class, have suffered losses.

17. According to the NOV, absent Defendants' deception, Defendants' nonconforming vehicles could not have been approved by the EPA for introduction into United States commerce.

---

[1] Letter from United States Environmental Protection Agency, Office of Enforcement and Compliance Assurance to Volkswagen AG, Audi AG, and Volkswagen Group of America, Inc. (September 18, 2015) http://www3.epa.gov/otaq/cert/documents/vw-nov-caa-09-18-15.pdf
[2] http://www.cruxialcio.com/volkswagen-reveals-passat-new-tech-and-looks-amidst-scandal-11991

18. Defendants charged a premium for these Clean Diesel cars compared to cars that contained gasoline engines.

19. Although the EPA has ordered Defendants to recall the Clean Diesel cars and repair them so that they comply with EPA emissions requirements, the necessary modifications will substantially degrade the Clean Diesel cars' performance.

20. Accordingly, regardless of whatever repairs Defendants might implement, the Clean Diesel cars will not perform as advertised, causing harm to Plaintiffs and the Class.

21. For example, the Clean Diesel cars will depreciate in value, and Plaintiffs and the Class will incur more expenses for fuel because the Clean Diesel cars will no longer be as fuel-efficient.

22. Further, the Clean Diesel cars are likely to experience diminution in power and performance once they are retrofitted to comply with EPA emissions requirements.

23. As a result, Plaintiffs and the Class seek damages, injunctive relief, declaratory relief, and equitable relief for Defendants' misconduct, as alleged in this Complaint, including but not limited to, the return of the purchase price of their cars, return of the premium they paid for the Clean Diesel cars, compensation for the diminution in value of their cars, compensation for the additional expenses (such as additional fuel costs) they incur as a result of Defendants' yet-to be made modifications to the Clean Diesel cars, disgorgement of ill-gotten profits, punitive damages, pre- and post-judgment interest, and attorneys' fees and costs, as allowed by law.

**PARTIES**

24. Defendant Volkswagen Aktiengesellschaft ("Volkswagen AG") is a German corporation with its principal place of business in Wolfsburg, Germany.

25. Volkswagen AG is the parent company of Volkswagen Group of America, Inc.

26. Defendant Volkswagen Group of America, Inc., is a New Jersey corporation with its principal place of business in Herndon, Virginia.

27. Defendant Audi Aktiengesellchaft ("Audi AG") is a German corporation with its principal place of business located at Ingolstadt, Germany; Volkswagen AG owns 99.55 percent of Audi AG's shares.

28. Defendant Audi of America, Inc. is a business unit of Volkswagen Group of America, Inc. with its principal place of business in Herndon, Virginia.

29. Plaintiff David Millington is a resident of Nassau County, New York.

30. Plaintiff Millington purchased a 2010 VW Jetta sedan diesel at Bayside Volkswagen in January 2010.

31. Plaintiff Christopher Haitz, Jr. is a resident of Los Angeles County, California.

32. Plaintiff Haitz leased a 2013 Jetta TDI diesel from Van Nuys Volkswagen.

33. Plaintiff Erin Seekamp is a resident of Wake County, North Carolina.

34. Plaintiff Seekamp purchased a 2010 VW Jetta SportsWagon TDI in Auffenberg VW in Belleville, IL.

## JURISDICTION AND VENUE

35. This Court has both jurisdiction and venue over this action pursuant to the Transfer Order issued by the United States Judicial Panel on Multidistrict Litigation, dated December 8, 2015 transferring this and other related actions to the Northern District of California, assigned to the Honorable Charles R. Breyer.

36. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is of diverse

citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

37. The Eastern District of New York has personal jurisdiction over Defendant Volkswagen Group of America, Inc., because it conducts business in New York and has sufficient minimum contacts with New York.

38. The Eastern District of New York has personal jurisdiction over Defendant Audi AG because it conducts business in New York and has sufficient minimum contacts with New York.

39. The Eastern District of New York has personal jurisdiction over Defendant Audi of America, Inc., because it conducts business in New York and has sufficient minimum contacts with New York.

40. Volkswagen AG has purposefully availed itself of the forum of the Eastern District of New York by directing its agents and distributor—Volkswagen Group of America, Inc., Audi AG, and Audi of America, Inc. — to take action there, and accordingly the Eastern District of New York has specific jurisdiction over Volkswagen AG. Specifically, the President and CEO of Volkswagen Group of America made admission of the fraud that is the gravamen of this complaint in this forum (the "Horn Admission").

41. Volkswagen AG is the sole owner of Volkswagen Group of America, Inc. Volkswagen AG directs the actions of its agent, Volkswagen Group of America, Inc., in selling and leasing its cars in the United States, and in performing related activities such as marketing and advertising to effectuate those sales.

42. Defendants, including Volkswagen AG and Audi AG, and/or their agents designed the Clean Diesel engines and cars, as well as the "defeat device," for distribution in the

United States and in the Eastern District of New York.

43. These same Defendants and/or their agents developed and disseminated the (fraudulent) advertisements, warranties, and promotional materials related to the Clean Diesel cars throughout the United States, as well as in the Eastern District of New York.

44. Volkswagen AG closely controls and directs Volkswagen Group of America, Inc., and therefore any marketing statements made by Volkswagen Group of America, Inc., as well as other statements identified throughout this Complaint that were made by Volkswagen Group of America, Inc., were made at the behest and direction of Volkswagen AG, including the Horn Admission.

45. Audi of America, Inc. is a business unit of Volkswagen Group of America, Inc. Therefore, any marketing statements made by Audi of America, Inc., as well as other statements identified throughout this Complaint that were made by Audi of America, Inc., were made at the behest and direction of Volkswagen Group of America, Inc. and Volkswagen AG.

46. Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred and/or emanated from such District, including the Horn Admission, and because Defendants have caused harm to Class members residing in such District.

## FACTUAL ALLEGATIONS

### Defendants Fraudulently Represented That Their Clean Diesel Cars Were Environmentally Friendly, Clean, Fuel Efficient, and Powerful

47. From the time the Clean Diesel cars were introduced in 2008, Defendants repeatedly bragged that these cars were environmentally friendly, EPA Certified, clean, fuel-

efficient, and powerful.

48. Although diesel engines are often more fuel-efficient than gasoline engines, they generally emit higher levels of pollutants.

49. Defendants claimed that their Clean Diesel cars solved this problem; Defendants claimed their Clean Diesel cars reduced emissions by up to 90 percent in these TDI engines through modifications to the engines and a unique exhaust treatment system.

50. For example, an October 2008 press release stated:

The Jetta TDI is amongst the ten most fuel-efficient vehicles on the US market. In the recently published "Fuel Economy Guide 2009" the EPA (Environmental Protection Agency) listed the Jetta TDI in the top ten low consumption and low emissions vehicles. In the current edition of the publication, the Jetta 2.0.1 Clean TDI, introduced to the market two months ago, is praised particularly for its excellent consumption figures; it has a fuel consumption of 5.7 litre per 100 kilometre. Moreover, the Jetta Clean TDI also fulfills stringent Californian emissions standards. This was achieved through modifications within the engine and by implementing an exhaust treatment system developed especially by Volkswagen and which reduces nitrogen oxide emissions (NOx) by up to 90 percent. The central element of the exhaust treatment system is the NOx storage catalytic converter.[3]

51. Until Defendants' fraud was exposed, Defendants continued to falsely represent that

---

[3] Press Release, Volkswagen AG, Volkswagen in Fuel Economy Guide 2009 (October 29, 2008). http://www.volkswagenag.com/content/vwcorp/info_center/en/news/2008/10/vw_in_fuel_econo my_guide.html

Clean Diesel cars were clean and fuel-efficient.

52. Volkswagen Group's "Group Strategy 2018," published in 2014, stated that its

Strategy 2018 focuses on positioning the Volkswagen Group as a global economic and environmental leader among automobile manufacturers. We have defined four goals that are intended to make Volkswagen the most successful, fascinating and sustainable automobile automaker in the world by 2018. [4]

53. The Clean Air Act (CAA) was enacted in 1970, and regulates air emissions from various

sources, including vehicles. 42 U.S.C. § 7401, et seq. (1970).

54. The CAA and regulations promulgated thereunder, including emissions standards for

cars, exist to "protect human health and the environment by reducing emissions of

nitrogen oxides (NOx) and other pollutants from mobile sources of air pollution." [5]

55. Vehicles sold in the United States must meet emissions standards promulgated by the

EPA. The software produced and used by Volkswagen is a "defeat device" as defined by

the Clean Air Act.

56. According to the EPA, affected models, i.e. cars that were subjected to the defeat device,

include the following: Jetta, 2009 to 2015; Jetta SportWagen TDI, 2009 to 2014; Beetle,

2012 to 2015; Beetle Convertible, 2013 to 2015; Audi A3, 2010 to 2015; Golf, 2010 to

2015; Golf SportWagen TDI, 2015; and Passat, 2012 to 2015.

57. The Clean Air Act has strict emissions standards for vehicles and it requires vehicle

manufacturers to certify to EPA that the vehicles sold in the United States meet

applicable federal emissions standards to control air pollution.

---

[4] Volkswagen AG, Group Strategy 2018,
http://www.volkswagenag.com/content/vwcorp/content/en/the_group/strategy.html
[5] Letter from United States Environmental Protection Agency, Office of Enforcement and
Compliance Assurance to Volkswagen AG, Audi AG, and Volkswagen Group of America, Inc.
(September 18, 2015) http://www3.epa.gov/otaq/cert/documents/vw-nov-caa-09-18-15.pdf

58. Every vehicle sold in the United States must be covered by an EPA issued certificate of conformity.

59. Under federal law, cars equipped with defeat devices, which reduce the effectiveness of emissions control system during normal driving conditions, cannot be certified.

60. By manufacturing and selling cars with defeat devices that allowed for higher levels of emissions that were certified to EPA, Volkswagen violated the Clean Air Act, defrauded its customers, and engaged in unfair competition under state and federal law.

**Defendants' Misrepresentations Significantly Harmed Plaintiffs and Class Members**

61. As a result of Defendants' misrepresentations, Plaintiffs and the Class substantially overpaid for the Clean Diesel cars in the first place and face inevitable future costs.

62. Moreover, Plaintiffs and the Class never received the products they believed they purchased or leased.

63. Defendants charged a substantial premium for their Clean Diesel cars, as opposed to cars equipped with gasoline engines.

64. Plaintiffs and the Class paid these premiums to gain the supposed benefits of these Clean Diesel cars, but these benefits were illusory.

65. For example, the below chart, based on Defendants' historical published price listings from archived web pages, [6] illustrates the premiums charged for several Clean Diesel models in 2014 and 2015 as compared to the base gasoline models:

| Model | TDI Clean | Diesel Price Base Price | TDI Clean Diesel Price |
|---|---|---|---|

---

[6] Information is derived from archived versions of Volkswagen and Audi's websites, such as
https://web.archive.org/web/20150316205038/http://www.vw.com/models/jetta-sportwagen/
https://web.archive.org/web/20150322233515/http://www.audiusa.com/models/compare
https://web.archive.org/web/20150906033420/http://www.vw.com/models/beetle/

First Amended Complaint                                      10
15-cv-05910-CRB

|  |  |  | Premium |
|---|---|---|---|
| 2014 VW Jetta SportWagen | $26,565 | $20,995 | $5,570 |
| 2015 Audi A3 | $34,125 | $31,825 | $2,300 |
| 2015 VW Beetle | $25,330 | $20,695 | $4,635 |
| 2015 VW Beetle Convertible | $29,675 | $25,595 | $4,080 |
| 2015 VW Golf | $22,345 | $20,995 | $1,350 |
| 2015 VW Golf SportWagen | $24,595 | $21,395 | $3,200 |
| 2015 VW Jetta | $21,640 | $17,325 | $4,315 |
| 2015 VW Passat | $27,095 | $21,340 | $5,755 |

66. As a result, Plaintiffs and the Class overpaid for their Clean Diesel cars by at least the amount of these premiums.

67. Moreover, as a result of Defendants' fraudulent conduct, Plaintiffs and the Class have suffered a substantial diminution in the re-sale value of their cars.

68. The Clean Diesel cars are of diminished value because they do not comply with applicable federal and state emissions standards, cost more to operate, are less efficient when operated, cost more to repair, will have diminished performance, and have a diminished resale value.

69. These premiums occur across all of the vehicles in which Volkswagen installed its "defeat device" for emissions testing, including the VW Jetta, VW Beetle, VW Golf, VW Passat and Audi A3.

70. Volkswagen will not be able to make the Clean Diesel cars comply with emissions standards without substantially degrading their performance characteristics, including their horsepower and their efficiency.

71. As a result, even if Volkswagen is able to make Class members' Clean Diesel cars EPA compliant, Class members will nonetheless suffer actual harm and damages because their vehicles will no longer perform as they did when purchased and as advertised. This will

First Amended Complaint                                11
15-cv-05910-CRB

necessarily result in a diminution in value of every Affected Vehicle and it will cause owners to pay more for fuel while using their vehicles.

72. As a result of Volkswagen's unfair, deceptive, and/or fraudulent business practices, and its failure to disclose that under normal operating conditions the Clean Diesel cars emit 40 times the allowed levels, owners and/or lessees of the Clean Diesel cars have suffered losses in money and/or property.

73. Had Plaintiffs and Class members known of the "defeat device" at the time they purchased or leased their Clean Diesel cars, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

74. Moreover, when and if Volkswagen recalls the Clean Diesel cars and degrades the CleanDiesel engine performance in order to make the Clean Diesel cars compliant with EPA standards, Plaintiffs and Class members will be required to spend additional sums on fuel and will not obtain the performance characteristics of their vehicles when purchased.

75. Moreover, Clean Diesel cars will be worth less in the marketplace because of their decrease in performance and efficiency.

## TOLLING OF THE STATUTE OF LIMITATIONS

Discovery Rule Tolling

76. Class Members had no way of knowing about Volkswagen's deception with respect to its CleanDiesel engine system and "defeat device."

77. It took federal EPA investigations to uncover Volkswagen's deception, which involved sophisticated software manipulation on Volkswagen's part.

78. As reported by the Los Angeles Times on September 18, 2015, it took California Air

Resources Board testing on a special dynamometer in a laboratory, open road testing

using portable equipment, and the use of special testing devised by the Board to uncover

Volkswagen's scheme and to detect how software on the engine's electronic control

module was deceiving emissions certifications tests.

79. Plainly, Volkswagen was intent on expressly hiding its behavior from regulators and

consumers. This is the quintessential case for tolling.

80. Within the time period of any applicable statutes of limitation, Plaintiffs and members of

the proposed classes could not have discovered through the exercise of reasonable

diligence that Volkswagen was concealing the conduct complained of herein and

misrepresenting the Company's true position with respect to the emissions qualities of its

vehicles.

81. Plaintiffs and members of the proposed Class did not discover, and did not know of facts

that would have caused a reasonable person to suspect, that Volkswagen did not report

information within its knowledge to federal and state authorities, its dealerships, or

consumers; nor would a reasonable and diligent investigation have disclosed that

Volkswagen had information in its possession about the existence of its sophisticated

emissions scheme and that it opted to conceal that information, which was discovered by

Plaintiffs only shortly before this action was filed.

82. Nor in any event would such an investigation on the part of Plaintiffs and other Class

members have disclosed that Volkswagen valued profits over compliance with federal

and state law, or the trust that Plaintiffs and other Class members had placed in its

representations, or that, necessarily, Volkswagen actively discouraged its personnel from

raising or disclosing issues with regard to the true quality and quantity of the emissions,

and the emissions software, of its vehicles, or of Volkswagen's emissions scheme.

83. For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to all vehicles identified herein.

Fraudulent Concealment Tolling

84. All applicable statutes of limitation have also been tolled by Volkswagen's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

85. Instead of disclosing its emissions scheme, or that the quality and quantity of emissions from the subject vehicles were far worse than represented, and of its disregard of federal and state law, Volkswagen falsely represented that its vehicles complied with federal and state emissions standards, and that it was a reputable manufacturer whose representations could be trusted.

Estoppel

86. Volkswagen was under a continuous duty to disclose to Plaintiffs and the other Class members the true character, quality, and nature of emissions from the vehicles at issue, and of those vehicles' emissions systems, and of the compliance of those systems with applicable federal and state law.

87. Volkswagen knowingly, affirmatively, and actively concealed the true nature, quality, and character of the emissions systems, and the emissions, of the vehicles at issue.

88. Volkswagen was also under a continuous duty to disclose to Plaintiffs and Class members that it had engaged in the scheme complained of herein to evade federal and state emissions and clean air standards, and that it systematically devalued compliance with, and deliberately flouted, federal and state law regulating vehicle emissions and

clean air.

89. Based on the foregoing, Volkswagen is estopped from relying on any statutes of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

90. The Classes' claims all derive directly from a common course of conduct by Defendants.

91. This case is about Defendants' responsibility for their knowledge and deception, their conduct, and their products.

92. Defendants engaged in uniform and standardized conduct toward the Classes.

93. They did not differentiate, in degree of care or candor, in their actions or inactions, or in the content of their statements or omissions, among individual Class members.

94. The objective facts on these subjects are the same for all Class members. Within each Claim for Relief asserted by the respective Classes, the same legal standards govern.

95. Accordingly, Plaintiffs bring this lawsuit as a class action on their own behalf and on behalf of all other persons similarly situated as members of the proposed Classes pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2) and/or (c)(4).

96. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

**Nationwide Consumer Class**

97. Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(2); and/or (b)(3); and/or (c)(4) of the Federal Rules of Civil Procedure on behalf of themselves and a Nationwide Consumer Class defined as follows:

All persons in the United States who, prior to the date on which Defendants' fraud was revealed, entered into a lease or bought a Class Vehicle, and who (i) still own

First Amended Complaint                                    15
15-cv-05910-CRB

or lease the Class Vehicle, or (ii) sold the Class Vehicle after the date on which Defendants' fraud was revealed, or (iii) owned a Class Vehicle which was, following an accident, declared a total loss after the date on which Defendants' fraud was revealed.

Excluded from the Class are Defendants' officers, directors, and employees; any entity in which Defendants have a controlling interest; and the affiliates, agents, legal representatives, attorneys, successors, heirs, and assigns of Defendants. Excluded also from the Class are members of the judiciary to whom this case is assigned, their families and members of their staff.

98. Subclasses are a subclass of New York residents under New York General Business Law §§ 349 & 350 and two subclasses of non-New York residents under 35 states' Deceptive Practice Acts.

99. <u>Numerosity</u> - Fed. R. Civ. P. 23(a)(1). The members of the Class are so numerous that the joinder of all members is impractical. While the exact number of Class members is unknown to Plaintiffs at this time, based on information and belief, it is in the hundreds of thousands, if not millions.

100. <u>Commonality</u> - Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

    a) Whether the Defendants engaged in the conduct alleged herein;
    b) Whether the Class Vehicles have "defeat devices" installed in them;
    c) Whether the Class Vehicles emitted high levels of pollutants when operated in normal conditions;
    d) Whether Defendants knew or should have known about the "defeat devices";
    e) Whether Defendants knew or should have known that the Class Vehicles emitted unlawful levels of pollutants when operated in normal conditions;
    f) Whether the Class Vehicles have defects in that they do not comply with federal emissions regulations;
    g) Whether the Class Vehicles have suffered a diminution of value as a result of the Class Vehicles' incorporation of the "defeat devices";
    h) Whether Defendants had a duty to disclose the existence of the "defeat devices";

     i)   Whether Defendants had a duty to disclose that the Class Vehicles emitted unlawful levels of pollutants when operated in normal conditions;

     j)   Whether Defendants omitted and failed to disclose material facts about the Class Vehicles;

     k)   Whether Defendants' conduct tolls any or all applicable limitations periods by acts of fraudulent concealment, application of the discovery rule, or equitable estoppel;

     l)   Whether Defendants misrepresented that the Class Vehicles were "clean" and environmentally friendly;

     m)  Whether Defendants' unlawful, unfair, and/or deceptive practices harmed Plaintiffs and the Classes;

     n)   Whether Defendants have been unjustly enriched by their conduct;

     o)   Whether Plaintiffs and other Class members overpaid for the Class Vehicles;

     p)   Whether Plaintiffs and other Class members are entitled to damages and other monetary relief and, if so, in what amount;

     q)   Whether Plaintiffs and Class members are entitled to declaratory relief; and

     r)   Whether Plaintiffs and the Classes are entitled to equitable relief, including but not limited to, a preliminary and/or permanent injunction.

101.    <u>Typicality</u> - Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are typical of those of other Class members, all of whom are purchasers, lessees or other users.

102.    <u>Adequacy of Representation</u> - Fed. R. Civ. P. 23(a)(4). Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs' Counsel are competent and experienced in litigating class actions and have many decades of experience in the public and private sector protecting consumer rights.

103.    <u>Superiority of Class Action</u> - Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action.

104.    Damages for any individual Class member are likely insufficient to justify the

cost of individual litigation, so that in the absence of class treatment, Defendants' violations of law inflicting substantial damages in the aggregate would go un-remedied without certification of the Class.

105.     Defendants have acted or refused to act on grounds that apply generally to the Class, as alleged above, and certification is proper under Rule 23(b)(2).

## FIRST CAUSE OF ACTION
### <u>Unjust Enrichment</u>
#### *(On Behalf of the Nationwide Class)*

106.     Plaintiffs repeat, reallege, and incorporate by reference the substantive allegations contained in each of the foregoing paragraphs of this Complaint as if fully set forth herein.

107.     Plaintiffs bring this claim individually and on behalf of Class members nationwide.

108.     As described in this complaint, *supra,* Plaintiffs and the Class they seek to represent had direct contact with Defendants.

109.     Plaintiffs bring this Count against Defendants on behalf of members of the Nationwide Consumer Class.

110.     As a result of their wrongful and fraudulent acts, concealments, and omissions pertaining to the design defect of their vehicles and the concealment of the defect, as set forth above, Defendants charged a higher price for their vehicles than the vehicles' true value.

111.     Defendants were also able to sell cars to customers that they would have otherwise been unable to sell.

112.     Defendants enjoyed the benefit of increased financial gains, to the detriment of

Plaintiffs and other Class members, who paid a premium price that did not reflect the true value of the affected vehicles.

113.    It would be inequitable, unjust, and unconscionable for Volkswagen to retain those wrongfully obtained funds.

114.    Plaintiffs and other Class members have no adequate remedy at law.

115.    Plaintiffs and other Class members therefore seek disgorgement of all profits, plus interest.

**SECOND CAUSE OF ACTION**
**Violation of the Consumer Fraud and Deceptive Trade Practices Acts**
**<u>of the Various States and District of Columbia</u>**
***(On Behalf of the Two Non-New York Subclasses)***

116.    Plaintiffs repeat, reallege, and incorporate by reference the substantive allegations contained in each of the foregoing paragraphs of this Complaint as if fully set forth herein.

117.    Plaintiffs bring this claim individually and on behalf of Class members of two non-New York Resident subclasses.

118.    By stating that their diesel cars met emissions standards under governmental guidelines and statutes, Defendants deceived Plaintiffs and the Class they seek to represent.

119.    Defendants intended, and still intend, that Plaintiffs and the members of the Class rely upon Defendants' misrepresentations and omissions concerning safety and cleanliness of diesel emissions.

120.    Defendants' misrepresentations and omissions possessed the tendency or capacity to mislead and create the likelihood of deception.

121.     Plaintiffs and the Class had a reasonable right to rely on the veracity of Defendants' statements and did so in buying Defendants' cars.

122.     The above-described deceptive and unfair acts and practices were used or employed in the conduct of trade or commerce, namely, the everyday purchase of Defendants' Clean Diesel cars by Plaintiffs and the Class members.

123.     The above-described deceptive and unfair acts offend public policy and cause substantial injury to consumers.

124.     Acting as reasonable consumers, had Plaintiffs and the Class known that their cars would not pass government safety standards, they would not have purchased them.

125.     Plaintiffs and the Class they seek to represent are consumers under these 35 state DPAs.

126.     By Defendants' deceptive actions, Plaintiffs and the Class were harmed.

127.     Plaintiffs bring this Count individually, and on behalf of all similarly situated residents of each of the 35 other states and the District of Columbia for violations of the respective statutory DPAs and consumer protection laws, as follows:

  a.  the Arizona Consumer Fraud Act, A.R.S §§ 44-1521, *et seq*.;
  b.  the Arkansas Deceptive Trade Practices Act, Ark.Code §§ 4-88-101, *et seq*.;
  c.  the California Unfair Competition Law, Bus. & Prof. Code §§17200, *et seq*. and 17500 *et seq*.;
  d.  the California Consumers Legal Remedies Act, Civil Code §1750, *et seq*.;
  e.  the Colorado Consumer Protection Act, C.R.S.A. §6-1-101, *et seq*.;
  f.  the Connecticut Unfair Trade Practices Act, C.G.S.A. § 42-110, *et seq*.;
  g.  the Delaware Consumer Fraud Act, 6 Del. C. § 2513, *et seq*.;
  h.  the D.C. Consumer Protection Procedures Act, DC Code § 28-3901, *et seq*.;
  i.  the Hawaii Unfair Competition Law, H.R.S. § 480-1, *et seq*.;
  j.  the Idaho Consumer Protection Act, I.C. § 48-601, *et seq*.;
  k.  the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 501/1 *et seq*.;

l.   the Kansas Consumer Protection Act, K.S.A. § 50-623, *et seq.*;

m.  the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 205-A, *et seq.*;

n.   the Maryland Consumer Protection Act, MD Code, Commercial Law, § 13-301, *et seq.*;

o.   the Massachusetts Regulation of Business Practices for Consumers Protection Act, M.G.L.A. 93A, *et seq.*;

p.   the Michigan Consumer Protection Act, M.C.L.A. 445.901, *et seq.*;

q.   the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.*;

r.   the Missouri Merchandising Practices Act, V.A.M.S. § 407, *et seq.*;

s.   the Nebraska Consumer Protection Act, Neb.Rev.St. §§ 59-1601, *et seq.*;

t.   the Nevada Deceptive Trade Practices Act, N.R.S. 41.600, *et seq.*;

u.   the New Hampshire Regulation of Business Practices for Consumer Protection, N.H.Rev.Stat. § 358-A:1, *et seq.*;

v.   the New Jersey Consumer Fraud Act, N.J.S.A. 56:8, *et seq.*;

w.   the New Mexico Unfair Practices Act, N.M.S.A. §§ 57-12-1, *et seq.*;

x.   the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen Stat. § 75-1.1, *et seq.*;

y.   the North Dakota Consumer Fraud Act, N.D. Cent.Code Chapter 51-15, *et seq.*;

z.   the Ohio Consumer Sales Practices Act, R.C. 1345.01, *et seq.*;

aa. the Oklahoma Consumer Protection Act, 15 O.S.2001, §§ 751, *et seq.*;

bb. the Oregon Unlawful Trade Practices Act, ORS 646.605, *et seq.*;

cc. the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.*;

dd. the Rhode Island Deceptive Trade Practices Act, G.L.1956 § 6-13.1-5.2(B), *et seq.*;

ee. the South Carolina Unfair Trade Practices Act, SC Code 1976, §§ 39-5-10, *et seq.*;

ff.  the South Dakota Deceptive Trade Practices and Consumer Protection Act, SDCL § 37-24-1, *et seq.*;

gg. the Vermont Consumer Fraud Act, 9 V.S.A. § 2451, *et seq.*;

hh. the Washington Consumer Protection Act, RCWA 19.86.010, *et seq.*;

ii.  the West Virginia Consumer Credit And Protection Act, W.Va.Code § 46A-1-101, *et seq.*;

jj.  the Wisconsin Deceptive Trade Practices Act, WIS.STAT. § 100.18, *et seq.*; and

kk. the Wyoming Consumer Protection Act, WY ST § 40-12-101, *et seq.*

128.   These statutes can be grouped into the two proposed subclasses, grouped by dominant legal requirements:

a.  the "unfair practices subclass" which includes state DPAs prohibiting unfair or deceptive acts or practices in or affecting commerce (includes the following states: California, Connecticut, Hawaii, Illinois, Maine, Maryland, Massachusetts, Missouri, Nebraska, New Hampshire, North Carolina, Ohio, Oklahoma, Rhode Island, South Carolina, Vermont, Washington, West Virginia, and Wyoming); and

b.  the "no unfair practices subclass" which includes state DPAs prohibiting false, misleading, or deceptive acts or practices, but not unfair practices (includes the following states: Arizona, Arkansas, Colorado, Delaware, District of Columbia, Idaho, Kansas, Michigan, Minnesota, Nevada, New Jersey, New Mexico, North Dakota, Oregon, Pennsylvania, South Dakota, and Wisconsin).

129.    This grouping approach does not undermine the predominance of common factual and legal concerns described above, nor does it present any significant problems with manageability.

130.    Defendants engaged in unfair or deceptive acts or practices by wrongfully and deceitfully advertising and selling diesel cars.

131.    Therefore, Defendants engaged in a deceptive practice against consumers, causing consumers quantifiable harm and damages.

132.    Plaintiffs, individually, and on behalf of the Class, seek statutory damages, and punitive damages, along with reasonable attorney's fees and costs.

### THIRD CAUSE OF ACTION
### Breach of GBL 349
### *(On Behalf of Plaintiff Millington and the New York Subclass)*

133.    Plaintiffs repeat, reallege, and incorporate by reference the substantive allegations contained in each of the foregoing paragraphs of this Complaint as if fully set

forth herein.

134.     Plaintiffs bring this claim individually and on behalf of Class members of a New

York Resident subclass.

135.     Plaintiffs repeat, reallege, and incorporate by reference the substantive allegations

contained within tis complaint, describing the manner in which Defendants wrongfully

and deceitfully intend, that Plaintiffs and the members of the Class rely upon Defendants'

misrepresentations and omissions concerning consumers depending on Defendants'

"Clean Diesel."

136.     Defendants' sale of the vehicles constitutes the "conduct of any trade or

commerce" within the meaning of GBL § 349.

137.     Defendants misrepresent true nature of the cars they wrongfully sold to Plaintiffs

and the Class.

138.     Defendants reap huge, ill-gotten monetary gains from this dishonest and deceptive

sale to Plaintiffs and the Class.

139.     By Defendants' deceptive actions to consumers like Plaintiffs and the Class in

sales of Defendants' diesel cars, Plaintiffs and the Class were harmed.

140.     Plaintiffs, individually, and on behalf of the Class, seek statutory damages, and

punitive damages, along with reasonable attorney's fees and costs.

**FOURTH CAUSE OF ACTION**
**FALSE ADVERTISING**
**(N.Y. GEN. BUS. LAW § 350)**
*(On Behalf of Plaintiff Millington and the New York Subclass)*

141.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as

though fully set forth herein.

First Amended Complaint                         23
15-cv-05910-CRB

142.     New York G.B.L. § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce.…" False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of … representations [made] with respect to the commodity.…" N.Y. G.B.L. § 350-a.

143.     Plaintiffs are consumers as defined by G.B.L. § 350.

144.     Defendants' sale of its vehicles to Plaintiffs and the Class as described herein constitute the "conduct of any trade or commerce" within the meaning of G.B.L. § 350.

145.     Defendants' advertisement and marketing of its vehicles to Plaintiffs and the Class as described herein constitute the "false advertising in the conduct of any business, trade or commerce" within the meaning of NYS GBL 350.

146.     In its normal course of business in its dealings with consumers, Defendants caused to be made in, or disseminated through, New York(through advertising, marketing and other publications), statements that were untrue or misleading, and which it knew (or which by the exercise of reasonable care should have known) to be untrue and misleading, to Plaintiffs and consumers.

147.     Defendants have violated G.B.L. § 350 because the misrepresentations and omissions regarding the safety and reliability of its vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

148.     Plaintiffs and the Class have suffered injury, including the loss of money or property, as a result of Defendant's false advertising.

149.     In purchasing or leasing their vehicles, the Plaintiffs and the Class reasonably

relied on Defendants' advertising, and on the affirmative misrepresentations and/or omissions of Defendants with respect to the safety and reliability of the vehicles within that advertising.

150.    Defendants' affirmative representations were not true because the vehicles do no meet government standards, lowering their true value.

151.    Plaintiffs and the Class were similarly damaged by reliance on Defendants' advertising as described in this Complaint.

152.    Had the Plaintiffs and the Class known the truth regarding Defendants' vehicles, they would not have purchased or leased their Diesel vehicles and/or paid as much for them.

153.    Accordingly, the Plaintiffs and the Class overpaid for their Diesel vehicles and did not receive the benefit of the bargain for their Diesel vehicles, which now have a lower true market value.

154.    Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices.

155.    Plaintiffs and the Class are also entitled to recover their actual damages or $500 whichever is greater.

156.    Because Defendants acted willfully or knowingly, Plaintiffs are entitled to recover three times actual damages, up to $10,000.

**FIFTH CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(N.Y. U.C.C. § 2-313)**
***(On Behalf of the Nationwide Class)***

157.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

158.     Defendants are and at all relevant times were merchants with respect to motor vehicles under N.Y. U.C.C. § 2-313.

159.     In the course of selling its vehicles, Defendants expressly warranted in writing that the Diesel vehicles were covered by certain warranties, including the Limited Warranty.

160.     Defendants breached the express warranty to repair and/or adjust to correct defects in materials and workmanship of any part supplied by Defendants. Defendants has not repaired or adjusted, and has been unable to repair or adjust, the Diesel vehicles' materials and workmanship defects.

161.     In addition to warranties such as the Limited Warranty, Defendants expressly warranted several attributes, characteristics and qualities of Diesel vehicles, as set forth above.

162.     These warranties are only a sampling of the numerous warranties that Defendants made relating to safety, reliability and operation, which are more fully outlined above. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of Diesel design. These warranties were made, *inter alia*, in advertisements, in Defendants' brochures, and in uniform statements provided by Defendants to be made by salespeople. These affirmations and promises were part of the basis of the bargain between the parties.

163.     These additional warranties were also breached because the Diesel vehicles were not fully operational or reliable, nor did they comply with the warranties expressly made

First Amended Complaint                          26
15-cv-05910-CRB

to purchasers or lessees. Defendants did not provide at the time of sale, and have not provided since then, vehicles conforming to these express warranties.

164.    Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the Class whole and because the Defendants have failed and/or has refused to adequately provide the promised remedies within a reasonable time.

165.    Accordingly, recovery by the Plaintiffs is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

166.    Also, as alleged in more detail herein, at the time that Defendants warranted and sold the vehicles they knew that the vehicles did not conform to the warranties and were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or concealed material facts regarding its vehicles. Plaintiffs and the Class were therefore induced to purchase the vehicles under false and/or fraudulent pretenses. The enforcement under these circumstances of any limitations whatsoever precluding the recovery of incidental and/or consequential damages is unenforceable.

167.    Moreover, many of the damages flowing from the Diesel vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to Defendants' fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' remedies would be insufficient to make Plaintiffs whole.

168.    Finally, due to the Defendants' breach of warranties as set forth herein, Plaintiffs

First Amended Complaint                        27
15-cv-05910-CRB

and the Class assert as an additional and/or alternative remedy, as set forth in N.Y.

U.C.C. §§ 2-608 and 2-711, for a revocation of acceptance of the goods, and for a return

to Plaintiffs and to the Class of the purchase price of all vehicles currently owned and for

such other incidental and consequential damages as allowed under N.Y. U.C.C. §§ 2-608

and 2-711.

169.    Defendants were provided notice of these issues by numerous complaints filed

against it, including the instant complaint, and by numerous individual letters and

communications sent by Plaintiffs and its Diesel customers before or within a reasonable

amount of time after the allegations of vehicle defects became public.

170.    As a direct and proximate result of Defendants' breach of express warranties,

Plaintiffs and the Class have been damaged in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**
**<u>BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY</u>**
**(N.Y. U.C.C. § 2-314)**
***(On Behalf of the Nationwide Class)***

171.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as

though fully set forth herein.

172.    Defendants are and were at all relevant times merchants with respect to motor

vehicles.

173.    Plaintiffs and the Class as purchasers from Defendants had a successive

relationship to the same rights of property in the vehicles and therefore after purchase are

in privity with Defendants.

174.    In the instant transactions, a warranty that Defendants' diesel vehicles were in

merchantable condition is implied by law.

175.     These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.

176.     Specifically, Defendants' diesel vehicles are inherently defective in that there are defects in the emissions systems as detailed within this Complaint.

177.     Defendants were provided notice of these issues by numerous complaints filed against it, including the instant Complaint, and by numerous individual letters and communications sent by Plaintiffs and the Class before or within a reasonable amount of time after the allegations of vehicle defects became public.

178.     As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

**SEVENTH CAUSE OF ACTION**
**<u>REVOCATION OF ACCEPTANCE</u>**
**(N.Y. U.C.C. § 2-608)**
***(On Behalf of the Nationwide Class)***

179.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

180.     Plaintiffs identified above demanded revocation and the demands were refused.

181.     Plaintiffs and the Class had no knowledge of such defects and nonconformities, were unaware of these defects, and reasonably could not have discovered them when they purchased or leased their automobiles from Defendants.

182.     Defendants were aware of the defects and nonconformities at the time of sale and thereafter.

183.     Acceptance was reasonably induced by the difficulty of discovery of the defects

and nonconformities before acceptance.

184.     There has been no change in the condition of Plaintiffs' vehicles not caused by the defects and nonconformities.

185.     When Plaintiffs sought to revoke acceptance, Defendants refused to accept return of the diesel vehicles and to refund Plaintiffs' purchase price and monies paid.

186.     Plaintiffs and the Class would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.

187.     Because Defendants are refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and the Class have not re-accepted their Diesel vehicles by retaining them.

188.     These defects and nonconformities substantially impaired the value of the Diesel vehicles to Plaintiffs and the Class: this impairment stems from the fact that the repair and adjust warranty has failed its essential purpose because Defendants cannot repair or adjust the Diesel vehicles.

189.     Plaintiffs and the Class provided notice of their intent to seek revocation of acceptance by a class-action lawsuit seeking such relief.

190.     In addition, Plaintiffs (and many Class members) have requested that Defendants accept return of their vehicles and return all payments made.

191.     Plaintiffs, on their own behalf and for the putative Class, hereby demand revocation and tender their Diesel vehicles.

192.     Plaintiffs and the Class would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them. Because Defendants are refusing to acknowledge any revocation of acceptance and return

immediately any payments made, Plaintiffs and the Class have not re-accepted their Diesel vehicles by retaining them, as they must continue using them due to the financial burden of securing alternative means of transport for an uncertain and substantial period of time.

193.    Finally, due to the Defendants' breach of warranties as set forth herein, Plaintiffs and the Class assert as an additional and/or alternative remedy, as set forth in N.Y. U.C.C. § 2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the Class of the purchase price of all vehicles currently owned.

194.    Consequently, Plaintiffs and the Class are entitled to revoke their acceptances, receive all payments made to Defendants, and to all incidental and consequential damages, including the costs associated with purchasing marketable or sellable vehicles, and all other damages allowable under law, all in amounts to be proven at trial.

### EIGHTH CAUSE OF ACTION
### VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT
**(15 U.S.C. §§ 2301 et seq.)**
*(On Behalf of the Nationwide Class)*

195.    Plaintiffs hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

196.    Plaintiffs bring this Count against Defendants on behalf of members of the Nationwide Consumer Class.

197.    This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332(a)-(d).

198.    The Class Vehicles are "consumer products" within the meaning of the Magnuson- Moss Warranty Act, 15 U.S.C. § 2301(1).

199.     Plaintiffs and Class members are "consumers" within the meaning of the

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

200.     Defendants are "suppliers" and "warrantors" within the meaning of the

Magnuson- Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

201.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is

damaged by the failure of a warrantor to comply with an implied or written warranty.

202.     Volkswagen provided Plaintiffs and the other Class members with an implied

warranty of merchantability in connection with the purchase or lease of their vehicles that

is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15

U.S. C. § 2301(7).

203.     As a part of the implied warranty of merchantability, Volkswagen warranted that

the Class Vehicles were fit for the ordinary purpose of passenger motor vehicles, would

pass without objection in the trade as designed, manufactured, and marketed, and would

comply with applicable federal and state emissions standards.

204.     Volkswagen breached this implied warranty and is therefore liable to Plaintiffs

and the Class pursuant to 15 U.S.C. § 2310(d)(1) because, without limitation, the Class

Vehicles share a common design defect in that they emit high levels of pollutants and are

equipped with defeat devices intended to evade detection of their unlawful emissions.

The Defendants have admitted that the Class Vehicles are defective and anticipate

recalling the Class Vehicles, but the recalls are woefully insufficient.

205.     Defendants provided Plaintiffs and the other Class members with an express

written warranty in connection with the purchase or lease of their vehicles, as described

further below, that is a "written warranty" within the meaning of the Magnuson-Moss

Warranty Act, 15 U.S.C. § 2301(6). Defendants made written affirmations of fact that the Class Vehicles would be free of defects that would prevent ordinary use.

206.     Defendants affixed labeling and other written affirmations making specific, performance-related representations related to the nature of the Class Vehicles, including the performance within specified emissions ranges.

207.     The EPA fuel economy label affixed to each Class Vehicle warrantied the "greenhouse gas" rating, yearly fuel cost, the fuel savings over a period of five years, the miles-per-gallon the car achieved, and the horsepower and torque the car achieved, all based on knowingly and intentionally misleading information.

208.     Defendants breached their express warranties for the Class Vehicles by, among other things, selling or leasing to Class Members Class Vehicles that are not free of material defects; they emit high levels of pollutants, do not achieve warranted horsepower and torque, and are equipped with defeat devices intended to evade detection of their unlawful emissions.

209.     Any efforts to limit the express and implied warranties in a manner that would exclude coverage of the Class Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Class Vehicles is null and void.  Any limitations on the express and implied warranties are procedurally unconscionable. Defendants purposefully misrepresented the Class Vehicles to consumers.

210.     Additionally, there was unequal bargaining power between Defendants, on the one hand, and Plaintiffs and the other Class members, on the other.

211.     Any limitations on the express and implied warranties are substantively unconscionable.

212.    Defendants knew that defeat devices were installed on the Class Vehicles and that they were misrepresenting the emissions, fuel performance, and value of the Class Vehicles.

213.    Defendants failed to disclose the defeat device to Plaintiffs and the other Class members well after becoming aware of them.

214.    Given this intentionally fraudulent behavior, Defendants' enforcement of any durational limitations on those warranties, would be harsh and shock the conscience. Plaintiffs and each of the other Class members have had sufficient direct dealings with either Defendants or their agents (dealerships) to establish privity of contract.

215.    Nonetheless, privity is not required here because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between Defendants and their dealers and agents.

216.    Specifically, Plaintiffs and each of the other Class members are intended third-party beneficiaries of the implied and written warranties.

217.    The dealers and agents were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided for the Class Vehicles: the warranty agreements were designed for and intended to benefit consumers.

218.    Finally, privity is also not required because the Class Vehicles are unsafe and hazardous instrumentalities due to the toxic level of pollutants they produce with normal use.

219.    Pursuant to 15 U.S.C. § 2310(e), Plaintiffs is entitled to bring this class action and are not required to give Defendants notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the

Federal Rules of Civil Procedure.

220.     Furthermore, affording Defendants an opportunity to cure their breach of warranties would be unnecessary and futile.

221.     At the time of sale or lease of each Class Vehicle, the Defendants knew, should have known, or were reckless in not knowing of their misrepresentations concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design.

222.     Under the circumstances, the remedies available under any informal settlement procedure would be inadequate, and any requirement that Plaintiffs resort to an informal dispute resolution procedure and afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

223.     The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25.

224.     The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

225.     Plaintiff, individually and on behalf of the other Class members, seeks all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial.

226.     In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class members in connection with the commencement and prosecution of this action.

First Amended Complaint
15-cv-05910-CRB

227.    Additionally, Plaintiffs and each of the other Class members are entitled to equitable relief under 15 U.S.C. § 2310(d)(1).

## JURY DEMAND

Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against Defendants, as follows:

A.    For an Order certifying this action as a class action and appointing Plaintiffs and their Counsel to represent the Class;

B.    For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained because of Defendants' wrongful conduct;

C.    For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined;

D.    For an award of costs of suit and attorneys' fees, as allowable by law; and

E.    Such other and further relief as this court may deem just and proper.


Dated: Thursday, January 7, 2016



x_____/s/_____
Paul C. Whalen, Esq. (PW-1300)
**Law Office of Paul C. Whalen, P.C.**
768 Plandome Road
Manhasset, NY  11030
Telephone: (516) 426-6870
Facsimile:  (212) 658-9685
pcwhalen@paulwhalen.com

Jasper D. Ward IV, Esq.
Alex C. Davis, Esq.
*Pro Hac Vice Pending*
**Jones Ward PLC**
Marion E. Taylor Building
312 South Fourth Street, Sixth Floor
Louisville, Kentucky 40202
Telephone: (502) 882-6000
Facsimile: (502) 587-2007


G. Oliver Koppell, Esq.
Daniel Schreck, Esq.
*Pro Hac Vice Pending*
**Law Offices of G. Oliver Koppell & Associates**
99 Park Avenue, Suite 1100
New York, NY 10016
Telephone: (212) 867-3838
Facsimile:  (212) 681-0810
okoppell@koppellaw.com


Ariana J. Tadler, Esq.
Andrei Rado, Esq.
*Pro Hac Vice Pending*
**Milberg LLP**
One Pennsylvania Plaza
New York, New York 10119
Telephone: (212) 946-9453
Facsimile:  (212)868-1229
atadler@milberg.com


Roland W. Burris, Esq.
*Pro Hac Vice Pending*
**Roland W. Burris & Associates, LLC**
100 N. Lasalle, Suite 1515
Chicago IL, 60602
Telephone: (312) 364-9292
Facsimile:  (312) 364-9618
rburris@burrislawllc.com

Marc Dann, Esq.
*Pro Hac Vice Pending*
**The Dann Law Firm**
4600 Prospect Avenue
Cleveland, OH 43235
Telephone: (216) 373-0539
Facsimile:  (216) 373-0536
mdann@dannlaw.com

Rufus Edmisten, Esq.
William Woodward Webb, Sr., Esq.
*Pro Hac Vice Pending*
**The Edmisten & Webb Law Firm**
127 West Hargett Street, Suite 104
Raleigh, North Carolina 27601
Telephone: (919) 831-8700
Facsimile:  (919) 831-8749

F. Chris Gorman, Esq.
*Pro Hac Vice Pending*
**Conliffe, Sandman & Sullivan**
325 W Main St, Suite 2000
Louisville, KY 40202
Telephone: (502) 719-3125
Facsimile:  (502) 587-7756

Michael A. Lilly, Esq.
**Ning, Lilly & Jones**
707 Richards Street, Suite 700
Honolulu, HI 96813
Telephone: (808) 528-1100
Facsimile: (808) 531-2415
michael@nljlaw.com

Ellen L. Lyons, Esq.
*Pro Hac Vice Pending*
1718 M Street, N.W. #217
Washington, DC 20036
Telephone: (202) 465-7173

James E. O'Neil, Esq.
*Pro Hac Vice Pending*
The Meadows, Suite A-103
1130 Ten Rod Road
North Kingstown, RI 02852
Telephone: (401) 667-7111
Facsimile:  (401) 667-7112

Dennis J. Roberts II, Esq.
*Pro Hac Vice Pending*
**Law Offices of Dennis J. Roberts II**
349 Hope Street
Providence, RI 02906
Telephone: (401) 274-9600
Facsimile:  (401) 274-6500
droberts@djrlaw.com

Luis Sánchez Betances, Esq.
*Pro Hac Vice Pending*
**Sánchez Betances Sifre & Muñoz Noya, PSC**
Bolivia 33, Fifth Floor
San Juan, PR 00917
Telephone (787) 756-7880
Facsimile (787) 753-6580
lsb@sbsmnlaw.com

Robert T. Stephan, Esq.
*Pro Hac Vice Pending*
12548 W 123rd St
Overland Park, KS 66213-2224
Telephone: (913) 685-1953

Attorneys for Plaintiffs and the Proposed Class