Scott P. Nealey (CA Bar No. 193062)
NEALEY LAW
71 Stevenson, Suite 400
San Francisco, CA 94015
Ph: 415.231.5311; fax: 415.231.5313
snealey@nealeylaw.com

*(other counsel listed on signature page)*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 2672 CRB (JSC) |
| This Document Relates to:<br><br>ALL ACTIONS | **RESPONSE TO BRIEF OF AMICUS CURIAE THE COMPETITIVE ENTERPRISE INSTITUTE'S CENTER FOR CLASS ACTION FAIRNESS** |

      Plaintiffs in certain Washington state actions and their undersigned counsel, appointed prior to transfer as interim class counsel for Washington residents, hereby respond to the brief of amicus curiae, The Competitive Enterprise Institute's Center for Class Action Fairness (CCAF) [Dkt #576]. Plaintiffs initially note that CCAF has no interest in this litigation, but instead is an issue-oriented organization representing its own political views. The amicus brief does not say whether CCAF owns a Volkswagen, or represents a Volkswagen owner. The fair assumption then is that it does neither.

      An auction bidding process is inappropriate here and would be conducive to undesirable results. Auction bidding might simply create incentives via a reverse auction for lawyers to settle too early for too little, which is perhaps the outcome that the amicus actually seeks.

**Response to Brief of Amicus Curiae - 1**

Moreover, the premise for auction bidding offered by CCAF—that fees otherwise will be too high—presupposes that the Court will not do its job of determining that fees are reasonable. To the contrary, this Court, this district, and this circuit have a long history of overseeing fee requests with much scrutiny.

## THE AMICUS CURIAE HAS NO INTEREST IN THIS LITIGATION

CCAF is a political advocacy organization *possibly funded* in part by Volkswagen.[1] While ostensibly representing the interests of consumers here, its attack on class action plaintiff lawyers is part of a bigger agenda embracing purported "sound science" to defend the corporate interests that support it. Auction based attorney fees is part of that "sound science."[2]

The Competitive Enterprise Institute (CEI), of which CCAF is a part, is an advocacy group based in Washington DC with long ties to tobacco disinformation campaigns and more recently to climate change denial.[3] It calls itself "a non-profit, public policy organization dedicated to advancing the principles of limited government, free enterprise, and individual

---

[1] *See Response re Motion to File Amicus Curiae Brief* [Dkt #512]; *but see Declaration of Theodore H. Frank in Opposition to Opposition/Response to Motion* [Dkt #548].

[2] "Sound science" is a phrase often used by corporate public relations and government agency spokesmen to describe the scientific research used to justify a claim or position. Sound science, however, has no specific scientific definition itself, so the phrase is used subjectively. "Sound science" is not a synonym of "good science" practices, but rather it is an ideological policy statement more about the criteria for the use of science in policy making. It is invoked mostly to call into question the validity of a given study or scientific statement. Source Watch, *Sound Science*, available at: http://www.sourcewatch.org/index.php/Sound_science (last viewed Jan 7, 2016).

[3] Source Watch, *Competitive Enterprise Institute, available at:* http://www.sourcewatch.org/index.php/Competitive_Enterprise_Institute#cite_note-1 (last visited Jan. 7, 2016) ("*Source Watch / CEI*").

**Response to Brief of Amicus Curiae - 2**

liberty."[4] It postures itself as an advocate of "sound science" in the development of public policy.

In 1986, it began its "free market legal program," which seeks to overturn government regulations that the CEI regards as inappropriate, such as regulations pertaining to drug safety, rent control, and automobile fuel efficiency.[5] Since 1992, CEI has actively advocated against environmental laws and environmental education in the classroom, claiming for example in various publications that dioxin is good for you[6] and that that naturally-occurring chemicals produced by plants and other living organisms are as dangerous as industrial chemicals.[7]

Many of its claims have been debunked. Here are a few examples related to climate change:

- Annenberg Political Fact Check, *Scientist to CEI: You Used My Research To Confuse and Mislead*, May 26, 2006 (link deactivated);

- Real Climate, *Thank you for emitting*, May 18, 2006, *available at:* http://www.realclimate.org/index.php/archives/2006/05/thank-you-for-emitting (last viewed Jan. 7, 2016);

- News Bureau, University of Missouri-Columbia, *MU Professor Refutes National Television Ads Downplaying Global Warming: Engineering Professor Curt Davis says TV Spots are Misrepresenting His Research,*

---

[4] Competitive Enterprise Institute, *About CEI*, available at: https://cei.org/about-cei (last viewed Jan. 7, 2016).

[5] *Source Watch / CEI.*

[6] Michael Fumento, *Rachel's Folly: The End of Chlorine,* Competitive Enterprise Institute, February 29, 1996, *available at:* https://cei.org/search/node/rachel%27s%20folly (last viewed Jan. 7, 2016).

[7] Jonathan Tolman, *Nature's Hormone Factory: Endocrine Disrupters in the Natural Environment*, Competitive Enterprise Institute, January 31, 1996, *available at:* https://cei.org/studies-issue-analysis/natures-hormone-factory-endocrine-disrupters-natural-environment (last viewed Jan. 7, 2016).

**Response to Brief of Amicus Curiae - 3**

May 19, 2006, *available at:*
http://munews.missouri.edu/NewsBureauSingleNews.cfm?newsid=9842
(last viewed Jan. 7, 2016).

This is not a situation where CCAF and its lawyers represent an objector with an interest in the litigation. *Cf. In re Transpacific Passenger Air Transp. Antitrust Litig.,* C 07-05634 CRB, 2015 WL 4776946 (N.D. Cal. Aug. 13, 2015). CCAF represents no one other than itself, its "donors," and their political agenda.

As the parties properly before the Court are represented by competent counsel, the words of CCAF, who has no interest here or in any similar case, *see N. Sec. Co. v. United States*, 191 U.S. 555, 556 (1903) (leave to file denied), should be afforded little weight. Certainly, CCAF has no "unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Ryan v. Commodity Futures Trading Com'n*, 125 F.3d 1062, 1063 (7th Cir. 1997) (citing *Miller-Wohl Co. v. Commissioner of Labor & Industry*, 694 F.2d 203 (9th Cir.1982)(per curiam)).

**AUCTION BASED FEES ARE NOT SUPERIOR, ESPECIALLY HERE**

Competitive bidding is an approach taken by some courts in an effort to avoid some of the problems associated with the lodestar method. As has been noted by Wright & Miller:

> Judge Walker of the Northern District of California has ruled in several cases that class counsel and their compensation would be determined by allowing competitive bidding between firms as to who should represent the class. And at least one other court has adopted that technique, although it has been seriously critiqued. Judge Easterbrook offered the following analysis:
>
> > There is, moreover, considerable question just what is being auctioned in bidding to represent a class. Normally an auction specifies the precise product to be sold (a particular painting, a share of stock in a named corporation, or 5,000 cubic yards of concrete having defined attributes). For legal services, however, it is hard if not impossible to hold the quality dimension constant. Contingent-fee arrangements are used when it is difficult to monitor counsel

**Response to Brief of Amicus Curiae - 4**

> closely; otherwise some different arrangement, such as hourly rates, is superior. … When it is hard to monitor counsel's effort and other elements of quality, it is also hard to know what the bid represents. Maybe it shows that less work will be invested, and that less compensation then is required. … Lawyers will earn a competitive return even at the lower level of compensation, but the class may be worse off. Large and sophisticated purchasers of legal services, such as Exxon/Mobil and General Motors, do not acquire legal services at auction; even clients able to monitor lawyers closely may be worried about the effect of the auction process on quality.

§ 1803.1 *Attorney Fees—Standards for Assessing*, 7B Fed. Prac. & Proc. Civ. § 1803.1 (3d ed.) (quoting *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979 (7th Cir. 2003)) (citations omitted).

In an article published in the Columbia Law Review, the author argues that the selection and retention of lead counsel by empowered lead plaintiffs is preferable to utilizing auctions to select lead counsel, finding, after a detailed examination, that lead-counsel auctions present serious problems and have serious shortcomings. The author concludes:

> Careful scrutiny reveals that auction advocates have overlooked substantial methodological problems with the design and implementation of the lead counsel auction. Even if these problems were overcome, the auction procedure is flawed: Auctions are poor tools for selecting firms based on multiple criteria, compromise the judicial role, and are unlikely to produce reasonable fee awards.

Jill E. Fisch, *Lawyers on the Auction Block: Evaluating the Selection of Class Counsel by Auction*, 102 Colum. L. Rev. 650 (2002).

The perceived abuses of class action counsel have been addressed by means other than auctions. For example, the Class Action Fairness Act provides specific directions to courts regarding how to calculate fees in cases involving coupon settlements. These include setting the fee based on the value to the class members of the coupons redeemed, or, when injunctive relief also is included, using the lodestar method to set the fee award. These requirements are meant to address perceived settlement abuses when counsel receive large fees, but the awards to class

**Response to Brief of Amicus Curiae - 5**

members have little or no value. 7B Fed. Prac. & Proc. Civ. § 1803.1 (citations omitted).

In the case at bar, although liability is admitted to some degree and while settlement seems near, the course of the case is not well established.  No "fix" for the problem has been announced or proposed, and Volkswagen appears to be at loggerheads with the EPA according to multiple reports.  Presently, there is no data, nor could there be absent a "fix," of the future value of Class member's vehicles.  Accordingly, the amount of work involved in reaching a fair and full resolution of the issues is unknown and unknowable at this time.  Under these circumstances, an auction is simply likely to provide additional pressure for a quick settlement and would empower those willing to bid low seeking one.

Additionally, an auction will reduce diversity of representation of class interests. Counsel who are willing or able to work for less—either as an individual firm or as a group—may be less capable of fully and fairly representing the various interests in the litigation where, as here, they are diverse. "Attorneys have legitimate concerns that their clients' interests be adequately represented." *Manual for Complex Litigation* § 10.224 (4th ed. 2004).  For these reasons, the judge is advised to take an active part in the decision on the appointment of counsel and to consider a list of factors including "whether designated counsel fairly represent the various interests in the litigation—where diverse interests exist among the parties, the court may designate a committee of counsel representing different interests…." *Id.*

Finally, the likelihood of windfall fees raised by the amicus is not present in this case.  Any "fee" request will – as it was by this Court and Judge Fern M. Smith in *In Re Bextra/Celebrex*, MDL 1699 – be carefully reviewed both as to the work that was done and the total compensation.   Well established Ninth Circuit case law calling for various cross checks, *see e.g.*, *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011), and this

**Response to Brief of Amicus Curiae - 6**

Court's prior practice to look carefully at fee requests, will ensure not only that any fee award is fair and reasonable (and not an early, too cheap deal, designed to benefit only a few counsel negotiating in secret), but also that the fee awarded reflects the work done and its value to the members of the Class.

## CONCLUSION

For all of these reasons, Washington Plaintiffs asks the Court to give little weight, if any, to the arguments of amicus curiae for the use of competitive bidding in the selection and compensation of counsel.

Respectfully submitted,

/s/ Scott P. Nealey
Scott P. Nealey (Cal Bar No. 193062)

NEALEY LAW
71 Stevenson, Suite 400
San Francisco, CA 94015
Ph: 415.231.5311; fax: 415.231.5313
snealey@nealeylaw.com

Debra Brewer Hayes (*pro hac vice applied for*)
dhayes@dhayeslaw.com
Charles Clinton Hunter (CA Bar No 93987)
chunter@dhayeslaw.com
THE HAYES LAW FIRM, PC
700 Rockmead, Suite 210
Houston, TX 77027
281-815-4963 Tel
832-575-4759 Fax

Stephen M. Hansen (*pro hac vice to be applied for*)
Law Offices of STEPHEN M. HANSEN, P.S.
1821 Dock Street
Tacoma, WA 98402
Ph: 253.302.5955; fax: 253.301.1147
steve@stephenmhansenlaw.com

**Response to Brief of Amicus Curiae - 7**

*Interim Class Counsel for Washington State Residents and Counsel for April Sims, Breck Lebegue, Amy Johnson, and Mathhew Slichko*

# CERTIFICATE OF SERVICE

I hereby certify that I served the forgoing through the Court's CM/ECF system upon all counsel registered with that system.

Dated: January 8, 2016.

/s/ Charles Clinton Hunter
CHARLES CLINTON HUNTER

**Response to Brief of Amicus Curiae - 8**