**R&B REICH & BINSTOCK**
**ATTORNEYS AT LAW**
Founded in 1984

A Registered Limited Liability Partnership

**Dennis C. Reich, Esq.**                                                                                              **Robert J. Binstock, Esq.**
Admitted to State Bars of California, Texas & New York                    Board Certified Civil Trial Advocate - National Board of Trial Advocacy
Board Certified Personal Injury Trial Law - Texas Board of Legal Specialization

January 8, 2016

Hon. Charles R. Breyer
U.S. District Judge, U.S. District Court, Northern District of California
450 Golden Gate Avenue
San Francisco, California 94102

>   In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability
>   Litigation; Case No. 3:15-MDL-2672-CRB

Dear Judge Breyer:

In accordance with PTO Nos. 1 and 2 (Documents 2 and 336, respectively) issued by this Court, I hereby submit my Application for an appointment to the Plaintiffs' Steering Committee ("PSC").

## INTRODUCTION

I currently serve as counsel in *Newton, et al v. Volkswagen Group of America, Inc., Cause No. 15-02969, In the Southern District of Texas, Houston Division,* which has been transferred to this Honorable Court. I have also been retained by other consumers and anticipate becoming counsel in other Volkswagen and Audi defeat device cases. I have substantial experience in MDL and other cases of national significance. As set forth below, I have served on PSCs and have held lead counsel and leadership roles in other mass action and class litigation throughout the United States. If appointed to a leadership role, I and my law firm of Reich & Binstock, LLP will immediately commit the necessary time and resources to pursue this case to a conclusion, and will work cooperatively with co-counsel to efficiently prosecute this case in a way that minimizes costs and will serve the best interests of all plaintiffs. As detailed below, I have the background, credentials and experience to serve in a leadership role in this important litigation, and would be honored to serve on the PSC[1]. I and the firm will be pleased to represent owners, lessees, dealers and governmental agencies that might make claims in this action.

## PRIOR EXPERIENCE WITH
## DIESEL EXHAUST/PUBLIC HEALTH LITIGATION

While this case presents significant consumer protection and fraud issues, it also raises important personal and public health issues. I have extensive experience with such issues. I tried to a jury one of the earliest diesel exhaust cancer cases in the United States (*Navarro v. Missouri Pacific Railroad Company d/b/a Union Pacific Railroad Company*, Cause No. 95-CVQ01439-D3, 341st District Court of Webb County, Texas, 1996). I served as lead counsel for Manuela Navarro, who developed multiple myeloma after working in a railroad yard and being subjected to intense diesel fumes from idling train engines. Mrs. Navarro passed away during the trial and the jury awarded her estate a multimillion dollar verdict. Ultimately, the verdict was reversed on appeal, in part because diesel exhaust, at that time, had not been classified by either the EPA or IARC as a known human carcinogen. *See https://www.iarc.fr/en/media-centre/pr/2012/pdfs/ pr213_E.pdf*. Thereafter, I handled an additional dozen cases involving plaintiffs who

---

[1] Attached as Exhibit 1 is a list of counsel who support my appointment to the PSC.

contracted lung cancer from occupational exposure to diesel exhaust. All of these cases were successfully resolved for significant compensation.

My interest in diesel exhaust litigation inspired me to write an article entitled "After the Dust Settles: Clearing the Air in the Debate over the Carcinogenicity of Diesel Exhaust to Humans" which was published by the Houston Bar Association for their Energy & Environmental Law Institute (December 2, 1999).

Although perhaps most relevant, diesel exhaust cases are not the only public health cases involving environmental pollution on which I have worked. I have an extensive history of working on environmental class action and multiple claim cases, including those involving ground water contamination from the gasoline additive MTBE; inadequately monitored petroleum-carrying pipelines; inadequate emissions controls for dangerous pollutants such as benzene and hexavalent chrome at petroleum refineries; oil pollution resulting in economic and physical injuries; and numerous occupational and residential cancer cases resulting from exposures to exogenous chemicals.

**IMPORTANCE FROM A PUBLIC HEALTH PERSPECTIVE OF REPRESENTATION OF TEXAS, AND PARTICULARLY HOUSTON, TEXAS ON THE PSC**

As the Court knows, diesel engines emit nitrogen oxides, which contribute to the formation of ground level ozone. Ground level ozone poses a health hazard for both healthy adults and individuals suffering from respiratory problems. Indeed, urban ozone pollution has been linked to increased hospital admissions for respiratory problems. The American Lung Association rates Houston, Texas as the 6th worst ozone polluted city in the United States. (The first five are in California). *See American Lung Association report "State of the Air: 2015"* http://www.stateoftheair.org/2015/city-rankings/most-polluted-cities.html. The Court obviously has an interest in ensuring that the PSC contains a diverse range of counsel from across the United States, and the citizens of Houston and of Texas have a particular interest in assuring that any additional detrimental burden on Texas air quality is addressed through this litigation. In this regard I recently concluded representing the City of Houston and our local transit authority, METRO, in claims we brought on behalf of these agencies for damages resulting from the BP Oil Spill. *See,* **MDL 2179, BP Oil Spill Litigation** (I served as a member of the *Economic Loss and Damage Committee* for this litigation).

Additionally, many of the offending vehicles are located in Texas. According to a recent filing by the Attorney General of the State of Texas, in Texas there are 32,000 VW and Audi vehicles that contain the "defeat" software. *See,* http://www.chron.com/news/politics/texas/article/_volkswagen-audi-scandal-texas-lawsuit-ken-paxton-6559508.php. It is estimated that over 6,000 are in Houston. *See*; http://www.khou.com/story/money/business/2015/09/30/harris-county-files-100-million-lawsuit-against-volkswagen/73070106.

**PRIOR EXPERIENCE WITH DIMINUTION IN
VEHICLE VALUE LITIGATION**

One of the critical issues from the perspective of car owners will be the diminution of the value of their vehicles caused by the defeat devices. Since 2000 my firm has been in the forefront of diminished value litigation in conjunction with other firms such as The Hayes Law Firm and Lieff, Cabraser, Heimann & Bernstein, LLP. We have been involved in representing tens of thousands of consumers in first party insurance claims where diminished value occurred when vehicles in certain types of accidents, though repaired, became worth less than similar vehicles that had not been in accidents. Over the course of these lawsuits, statistical models were developed that evaluated the damages sustained by consumers. The modeling played a central role in achieving significant compensation for the vehicle owners. Since it is likely that VWs and Audis with the "defeat" devices have sustained similar economic loss, my experience working with experts and computer modeling to establish diminished value will be directly applicable to the current litigation.

**LITIGATION EXPERIENCE WITH VOLKSWAGEN**

I also have experience litigating against Volkswagen, serving as co-lead counsel in a case tried in the Southern District of Texas styled *Martin v. Volkswagen. Martin* involved a fuel tank that ignited following a low speed impact. We obtained a very favorable resolution after we were able, through hard work by my firm, to establish that Volkswagen had failed to produce in discovery critical crash test results.

## QUALIFICATIONS OF COUNSEL

I am a founding partner of Reich & Binstock, LLP. I first became involved in mass litigation as a young lawyer in the early 1980s when working on the MGM fire litigation in Las Vegas, Nevada. Over the years, I have taken on numerous cases where I served as class counsel and on PSCs, and performed common benefit work involving diverse issues such as ground water contamination from the gasoline additive MTBE; ineffective smoke detectors used in residential properties; stimulant laxatives that were being improperly promoted for weight loss control in young women; inadequately monitored petroleum-carrying pipelines; inadequate emissions controls for dangerous pollutants such as benzene and hexavalent chrome at petroleum refineries; levee breaches; oil pollution resulting in economic and physical injuries; and defectively designed and marketed pharmaceutical products.

Because of my long history of working large and complex cases of national significance, I recognize and understand the importance of adhering to the highest standards of professionalism while at the same time serving as a zealous advocate on behalf of my clients. I am well recognized in my profession in working with a wide array of experts addressing the scientific, economic and technical issues that often drive and become focal points of the litigation. I am also mindful of the skyrocketing costs of litigation and will endeavor to both eliminate duplication and waste, and promote efficiency, in the discovery process if appointed to the Plaintiffs' Steering Committee.

Reich & Binstock, LLP has the financial resources to support the capital contributions that PSC members will need to provide in order to prosecute the subject case. Reich & Binstock, LLP has significant cash reserves as well as credit resources that will enable the firm to meet the kind of cash calls required in a case of this magnitude.

## CONTACT INFORMATION FOR SIGNIFICANT CASES

- PSC Member, *MDL 1873, In re: FEMA Trailer Formaldehyde Products Liability Litigation*, U.S. District Court, Eastern District of Louisiana; served as lead counsel and co-lead counsel in two FEMA trials (case involved over 50,000 persons who were placed in temporary trailers in the aftermath of Hurricane Katrina and were exposed to toxic levels of formaldehyde, which posed unacceptable health risks). Eastern District, The Honorable Kurt Englehardt, phone number (504) 589-7645;
- PSC Member, *JCCP 4775, In re: Risperdal and Invega Product Liability Cases*, Los Angeles Superior Court before The Honorable William F. Highberger, phone number (213) 351-7522;
- Economic Loss and Damage Committee Member. Served as lead counsel for City of Houston, Harris County & Metropolitan Transit Authority in *MDL 2179, BP Oil Spill Litigation* (case resolved);
- PSC Member and member of Plaintiffs' Executive Committee in *MDL 1358, MTBE Product Liability Litigation*, U.S. District Court, Southern District of New York (case resolved). The Honorable Shira Scheindlin, phone number (212) 805-0246;
- Chairman of the Damage Committee for Medical Providers, *MDL 2406, In re: Blue Cross Blue Shield Antitrust Litigation*, U.S. District Court, Northern District of Alabama, Southern Division;
- Co-Lead Counsel, *Cause No. 00-221-H, Lydia S. Perez, et al vs. Schering-Plough Corp., et al.,* 347th Judicial District Court of Nueces County, Texas. Class action suit against the **stimulant laxative industry** (case resolved);
- Lead counsel, *C.A. No. H-92-1054, Hayden v. Atochem North America, et al.,* U.S. District Court, Southern District of Texas, Houston Division. Represented over 20,000 persons exposed to arsenic through multiple pathways (case resolved). The Honorable Lynn Hughes, phone number (713) 250-5900.

Respectfully submitted,

DENNIS C. REICH

DCR:slwrn