# BAILEY GLASSER LLP

209 Capitol Street
Charleston, WV 25301
Tel: 304.345.6555
Toll Free: 877.852.0342
Fax: 304.342.1110

January 8, 2016

*Via Electronic Court Filing*
The Honorable Charles R. Breyer
United States District Court, Northern District of California

> Re:  *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation* (MDL No. 2672 CRB (JSC)) (Relates to all actions)

Dear Judge Breyer:

My law firm and I respectfully request the opportunity to serve on the steering committee in a lead or membership role. We represent VW owners in five states and the District of Columbia in six cases now pending before you. The work we have done on the technical aspects of this case, however, would apply to all the VW cases.

### I. Our Work Identifying and Investigating Potential VW Claims

My home state has played a unique role in this VW saga, which is one of my principal reasons for this application. Engineers at West Virginia University's Center for Alternative Fuels, Engines and Emissions ("CAFEE") were the first to detect and expose the excessive emissions in VW diesel vehicles. In 2013, working on a small grant, WVU's CAFEE engineers designed a testing protocol for three European diesel vehicles, to compare their real-world emissions against chassis dynamometer (treadmill) test results. CAFEE used an offspring of a technology that they had developed over years of prior testing and refinement, known as a portable emissions measurement system (PEMS). The PEMS attaches to cars and actually measures emissions on the road. Over thousands of miles of testing, CAFEE learned that two of the three vehicles – a 2012 VW Jetta and a 2012 VW Passat – exhibited road emissions performance wildly noncompliant with EPA standards and different from treadmill results, particularly for NOx levels. NOx levels for the Jetta measured up to 40 *times* EPA standards; the Passat's later version emissions system still ran up to 20 times EPA limits. VW initially tried to debunk CAFEE's findings but eventually conceded that they had installed the emissions defeat devices that are at the heart of this dispute.

Since that news became public, we have retained and worked extensively with those engineers, including Dr. Gregory Thompson and CAFEE Director Dan Carder. These professionals, who work within minutes of our Morgantown office, will and should play an important role in this litigation. They have educated B&G's auto lawyers on the emissions systems in the relevant VW diesel engines, on their own testing methodology and its complexities, and on potential fixes to those engines. B&G has engaged CAFEE to conduct further testing and analysis, and we have and are in the process of obtaining vehicles for that

purpose. We have counseled and advised them on how their expertise may inform these proceedings. We have also asked CAFEE to design a protocol and conduct verification testing on any proposed VW repairs to their various emissions systems. We will of course share this valuable resource with the Court and with fellow attorneys.

Work with key experts in automotive cases is not new ground for our law firm. In the Toyota litigation we retained, sponsored and developed testimony from Dr. Todd Hubing at Clemson University, one of the key experts in that case and the person who presented Plaintiffs' portion of the technical tutorial to Judge Selna.

II.     Knowledge and Experience in Class and Complex Litigation

My firm and I have substantial experience in MDLs. Of greatest relevance, I served on the plaintiffs' economic loss steering committee in the *Toyota Sudden Unintended Acceleration MDL,* 8:10-ml-02151 (C.D. Cal.) (Selna, J.) (714-338-4750), and count that experience as a highlight of my career. In that litigation, B&G was the only law firm to have individuals on both executive committees established by the court. In 2013, as certain bellwether cases were getting ready for trial, Judge Selna appointed my partner Eric Snyder, a lawyer with an engineering degree, who joins in this application, to serve on the plaintiffs' committee for personal injury/wrongful death cases.

B&G has successfully represented plaintiffs, including plaintiff classes and the State of West Virginia, in consumer, antitrust and similar matters. For example, our firm successfully represented the State of West Virginia in *In Re Microsoft Corp. Antitrust* Litigation, MDL No. 1332 (D. Md.) (Motz, J.) (410-962-0782). This firm led a nationwide class against H&R Block on behalf of consumers challenging the legality of a refund anticipation loan product (*Cummins v. H & R Block, Inc.*, No. 03-C-134 (Kanawha Cnty., WV) (Bloom, J.) (304-357-0365). B&G currently serves as lead and liaison MDL counsel on behalf of a nationwide class of consumers pertaining to violations of the Telephone Consumer Protection Act (*In Re: Monitronics International, Inc., Telephone Consumer Protection Act Litigation*, MDL No. 1:13MD2493 (N.D. W.Va.) (Keeley, J.) (304-624-5850). I am also serving as liaison counsel for multiple state court cases with the federal litigation arising from a massive and catastrophic water contamination event that occurred in Charleston, West Virginia. *Good, et al. v. American Water Works Co., Inc.*, 2:14-cv-01374 (S.D. W.Va.) (Judge John T. Copenhaver, Jr., for whom I clerked) (304-347-3146).

My legal experience extends beyond large class actions. I founded B&G in 1999 with one other attorney and have grown it to a diverse practice with over 50 lawyers. Before that, I was a federal prosecutor, spent four years as counsel to the Governor of West Virginia, and then ten years in a large WV-based defense firm. I'm blessed to have had a diverse career representing plaintiffs and defendants in consumer, commercial, environmental, products liability and criminal cases. Mr. Snyder and I are both AV rated in Martindale Hubbell, and I am first-tier rated in Chambers U.S.A.'s Guide to America's Leading Business Lawyers. Attached are one-page resumes for each of us, as we will work as a team on this matter, and more information is of course available on our website.

### III. Committing Sufficient Time and Resources

B&G is well established, stable, and has the human and financial capital to fulfill the responsibilities attendant to a leadership role in this case. In Toyota, for example, B&G devoted over 9,000 common benefit hours to the MDL. B&G also spent over 11,000 hours on a state-court wrongful death Toyota case which, by virtue of its extensive discovery and trial preparation, became a *de facto* bellwether and settled on the eve of trial. In addition, B&G advanced over $1.2 million in expenses in the Toyota litigation.

The common benefit work was substantial. Our team participated in drafting the Consolidated Amended Complaint. In addition to our work with Dr. Hubing, my partners and I took and defended approximately 30 depositions of named plaintiffs, Toyota personnel, experts and "other similar incident" witnesses. I also served on the allocation committee and crafted portions of the settlement agreement.

Notably, the Toyota MDL is now largely complete. B&G does not presently have a leadership or committee position in the Takata, GM, or other large automotive MDLs. So we have the willingness, the time, and the resources to commit to this undertaking.

### IV. Ability to Work Well With Others

B&G fields a team of talented men and women who have worked successfully and collegially with many of the other plaintiffs' counsel expected to seek leadership positions. Moreover, unlike many of the plaintiffs' firms in this litigation, B&G frequently represents defendants as well. I think our lawyers have the respect of their fellow counsel and the perspective required to work cooperatively with other counsel on both sides of the "v." This factor takes on particular import in a case as large and urgent as this.

I, and others at B&G, have worked with and against, and have personal and professional relationships with, many of the firms and attorneys involved in this litigation. In Toyota alone, for example, we had the pleasure of working well for years with many of the lawyers who have applied for leadership roles in this case, and who support our application.

Pursuant to your order, I have also attached a list of endorsing counsel. My firm, Mr. Snyder and I would be pleased to serve as lead counsel, or in any other position where the Court believes our experience and work so far in this case might contribute.

Sincerely,

*Benjamin L. Bailey*
Benjamin L. Bailey