

ATTORNEYS AT LAW

January 8, 2016

Honorable Charles R. Breyer
United States District Court
Courtroom 6, 17th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

    Re:    MDL No. 2672 — In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation

Dear Judge Breyer:

    I am a founding partner of Girard Gibbs LLP, the San Francisco based law firm representing the *Lau*, *Walker*, and *Skye* plaintiffs. I respectfully submit this application for appointment as either lead counsel or as a member of a steering committee representing all plaintiffs.

    ***Professional Experience.*** In the course of representing plaintiffs in hundreds of complex actions over the past 20 years, my law firm has achieved landmark rulings and recovered billions of dollars for consumers, investors, employees, and other individuals injured by unlawful business practices. *E.g.*, *In re Chase Bank USA, N.A. "Check Loan" Contract Litig.*, MDL No. 2032 (N.D. Cal.) (Chesney, J.) (unfair loan practices class action settled for $100 million); *In re Adobe Sys. Inc. Privacy Litig.*, No. 13-cv-05226 (N.D. Cal.) (Koh, J.) (landmark Article III ruling, followed by settlement that imposes new data breach safeguards subject to auditing).

    Automobile litigation has long occupied a central role in my consumer practice. A noteworthy example is *In re Hyundai & Kia Fuel Econ. Litig.*, MDL No. 2424 (C.D. Cal.). Judge George H. Wu appointed me to represent the interests of dozens of law firms and their clients who learned at an initial conference that a proposed class settlement had been reached. As liaison counsel, I reconciled the plaintiffs' often competing interests and coordinated discovery and settlement negotiations. I reported to the court regularly throughout the process and ultimately helped finalize a nationwide settlement valued at $120 million. Afterward, Judge Wu wrote:

> *[Liaison counsel Eric H. Gibbs] efficiently managed the requests from well over 20 different law firms and effectively represented the interests of Non-Settling Plaintiffs throughout this litigation. This included actively participating in revisions to the proposed settlement in a manner that addressed many weaknesses in the original proposed settlement.*

MDL No. 2424, No. 2:13-ml-02424, ECF No. 437 at 8 (C.D. Cal.).

    Courts regularly appoint me to leadership roles in complex consumer cases. *E.g.*, *In re Am. Honda Motor CR-V Vibration Litig.*, MDL No. 2661, No. 2:15-md-02661, ECF No. 15 at 5 (S.D. Ohio) ("[T]he Court finds Gibbs's and [his partner's] prior automotive class action

litigation makes them best able to represent the interests of the putative class."); *In re Anthem, Inc. Data Breach Litig.*, MDL No. 2617 (N.D. Cal.) (one of two lawyers appointed to Plaintiffs' Steering Committee); *In re Pre-Filled Propane Tank Mktg. & Sales Practices Litig.*, MDL No. 2086 (W.D. Mo.) (Co-Lead). Courts have also credited my class and MDL leadership:

- "[T]he attorneys who handled the case were particularly skilled by virtue of their ability and experience." *In re Mercedes-Benz Tele Aid Contract Litig.*, MDL No. 1914, No. 2:07-cv-02720, ECF No. 207 at 14 (D.N.J.) (Debevoise, J.) (Co-Lead)

- "Counsel submitted dozens of letters from class members sharing their joy, appreciation, and relief that someone finally did something to help them." *Parkinson v. Hyundai Motor Am.*, No. 8:06-cv-0345, ECF No. 330 at 27 (C.D. Cal.) (Stotler, J.) (Co-Lead)

- "[C]lass counsel assumed substantial risks and burdens in this litigation. Representation was professional and competent; . . . counsel obtained an excellent result for the class." *Sugarman v. Ducati N. Am.*, 5:10-cv-05246, ECF No. 105 at 10 (N.D. Cal.) (Fogel, J.) (Lead)

Two aspects of my experience are particularly salient here. First, any repair of Volkswagen's emissions system will likely diminish performance and fuel economy. Securing compensation for this diminution will be a critical litigation objective. My recent leadership in two MDLs focused on diminished fuel economy—*In re Hyundai & Kia Fuel Econ. Litig.*, and *In re Ford Fusion & C-Max Fuel Econ. Litig.*, MDL No. 2450 (S.D.N.Y.)—will provide me with insight into the legal and factual issues likely to arise here.

Second, given Volkswagen's public admissions of liability, class members' interests in a prompt resolution, and the Court's impending appointment of a special settlement master, I have experience performing early, in-depth assessments of automotive cases' settlement potential. In *Browne v. American Honda Motor Co.*, for example, I persuaded Honda to allow our automotive experts and their in-house engineers to meet in person to discuss the braking technology at issue. After verifying our understanding of the technology, I negotiated an early class settlement in which more than 200,000 consumers filed claims—a level of participation rarely achieved. No. 2:09-cv-6750 (C.D. Cal.) (Morrow, J.). I used a similar approach in *Ducati*, in which I traveled to the manufacturer's Italian headquarters with our automotive expert to meet with Ducati's president, counsel, and several engineers. Our subsequent settlement was described as "excellent" by Judge Fogel.

Should early settlement attempts not succeed here, I am fully prepared to litigate this MDL. I have certified nationwide litigation classes in automotive class actions including *In re Mercedes-Benz Tele Aid* and *Parkinson v. Hyundai*. Similarly, as co-lead counsel in coordinated actions against GM, I certified two statewide classes and, on the eve of trial, negotiated a nationwide settlement covering 35 GM models spread over 10 years. *In re GM Dex-Cool Cases*, JCCP No. 4495 (Cal. Super. Ct., Alameda Cnty.) (Freedman, J.). At the time, the *Dex-Cool* settlement was one of the largest automotive class settlements ever.

Finally, in light of Volkswagen's recent reliance on German privacy laws to justify its refusal to provide discovery to attorneys general, I can report that my firm has some experience within the German legal system; we currently represent an individual who was severely injured in Germany and who is pursuing his claims there under German law. The knowledge we have

developed relating to German law and process—as well as the fact that two of my partners (Dena Sharp and Amy Zeman) speak German fluently—may well prove useful in this litigation.

*References.* Hon. George H. Wu, C.D. Cal. (213) 894-0191 • Hon. Maxine M. Chesney, N.D. Cal. (415) 522-2041 • Hon. Lucy H. Koh, N.D. Cal. (408) 535-5357 • Hon. Jeremy Fogel, N.D. Cal. (408) 535-5363 • Hon. Margaret M. Morrow, C.D. Cal. (213) 894-7857 • Hon. Robert B. Freedman, Cal. Super. Ct., Alameda Cnty. (510) 267-6936 • Hon. Edward A. Infante (Ret.) (415) 982-5267 • Hon. Ronald M. Sabraw (Ret.) (415) 982-5267

*Willingness and Ability to Serve Immediately.* No commitments will interfere with my ability to lead this litigation. Notably, several of my pending automotive class actions have made substantial progress towards settlement. *E.g.*, *Velasco v. Chrysler Group LLC*, No. 2:13-cv-8080 (C.D. Cal.); *Yaeger v. Subaru of Am., Inc.*, No. 1:14-cv-4490 (D.N.J.). I am prepared to fully commit myself and my firm to prosecuting this case.

*Working Cooperatively.* Judge Wu's comments in *In re Hyundai & Kia* attest to my ability to work cooperatively with plaintiffs' counsel and defense counsel. So too does the widespread support I have received from plaintiffs' counsel, which includes endorsements from prominent, experienced attorneys, and attorneys who are not themselves seeking a leadership position. *See* Ex. A.

*Access to Resources.* Girard Gibbs possesses the necessary resources to help lead this litigation. Our attorneys have been selected to serve on 35 MDL leadership teams—as lead or co-lead counsel in 18 MDLs, and as liaison counsel or as members of executive or steering committees in 17 others. We invest in the staff and litigation software tools necessary to allow us to litigate large cases; and we are able to carry millions of dollars in costs in multiple cases at a time. Against Intel, for example, I oversaw litigation that lasted ten years and through the start of trial, requiring over 130 depositions across the country and the advancement of millions of dollars in expenses. *See* Order of Final Approval and Judgment 7-8, *Skold v. Intel Corp.*, No. 1-05-CV-039231 (Cal. Super. Ct., Santa Clara Cnty.) ("It is abundantly clear that Class Counsel invested an incredible amount of time and costs in a case which lasted approximately 10 years with no guarantee that they would prevail.").

*Leadership Role.* In view of my prior leadership roles, I am applying for appointment here as lead counsel or as a member of a steering committee, and seek to represent all plaintiffs. I am ready and willing to serve the class in whatever role the Court chooses.

\* \* \*

My decades-long experience in consumer automotive multi-district litigation is the surest pledge I can offer for the responsible use of the class device and the faithful discharge of my duties as either lead counsel or as a member of a steering committee.

Thank you for considering my application.

Very truly yours,

Eric H. Gibbs