**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100

January 8, 2016

Honorable Charles R. Breyer
United States District Judge
Northern District of California
Courtroom 6, 7th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Judge Breyer:

I respectfully apply to be lead counsel to represent defrauded VW consumers. Given statements defendants have made, a principal task will be to incentivize them to resolve these cases early and on terms that fairly compensate the victims. I submit that I and my firm are ideally situated to accomplish exactly that. A key motivation to settle will be the credible prospect of losing badly at trial. We are known for our trial prowess and are one of few firms to have tried multiple consumer fraud class actions to verdict on both the plaintiff and defense side. We have obtained eight 9-figure verdicts and determinations of liability. With that reputation as trial lawyers, we have achieved settlements for plaintiffs in the past two years totaling $28 billion. Objective evidence supports that our participation will encourage the corporate defendants to resolve this case quickly: surveys of corporate general counsel by BTI Consulting Group have twice named us one of four law firms they most fear as adversaries. My own experience in resolving a matter against Volkswagen for over $1.1 billion, discussed below, likely will reinforce this motivation. Our adversaries also will know they face a strong team from our firm: the team leaders will include lawyers from our offices throughout the country including particularly Kathleen Sullivan (New York), Jenny Durkan (Washington, D.C.), and, importantly, from Germany, where we have three offices and 27 German lawyers—a critical advantage for consumers. A global settlement will require participation by the U.S. government. With two former U.S. Attorneys and 27 AUSA's, we have excellent relations with the Department of Justice, including at the highest levels, and have on many occasions been instrumental in forging major settlements involving U.S. government participation. This part of the effort would be led by Ms. Durkan who, until one year ago, was the U.S. Attorney in Seattle and had high level departmental responsibilities, including working closely with EPA and Department officials on Clean Air Act issues.

In short, we present a formidable team, capable of trial but equally capable of achieving an early and landmark settlement. As Judge Denise Cote observed when appointing our firm lead counsel for plaintiffs in *In re Credit Default Swaps Antitrust Litigation*—a case we resolved in 33 months and without trial for $1.8 billion: Quinn Emanuel ("QE") "is well equipped with trial lawyers who can actually go into court and try a case. It has run massive discovery cases by itself essentially. And it has extraordinary strengths with respect to appellate litigation." Tr. of proceedings, December 5, 2013, pp. 38-39.

(1) <u>Experience and qualifications</u>. My attached resume highlights my experience. I spend most of my professional life litigating some of the most challenging cases in the world, creating solutions to complex problems, and leading over 700 accomplished and independent-minded lawyers in 18 offices in 10 countries. A successful lead counsel here must possess all of these skills. I also have litigated, and tried, some of the biggest cases in recent California history. While our attorneys frequently serve as court-appointed lead counsel for MDL class action plaintiffs, this is the first case in which I personally have sought such an appointment. My experience leading teams of trial lawyers, and the growth of QE from four lawyers in 1986 to what the <u>Wall</u> <u>Street</u> <u>Journal</u> termed a national and international 700-person "litigation powerhouse" has exposed me to every issue that can arise leading lawyer groups. I understand the values of listening, inclusion, and compromise, while still being decisive. Moreover, precisely because I am not among the usual counsel who lead these cases, and because our firm regularly both sues and

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE
LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS

defends global companies in all manner of cases, I view this matter through a well-informed but different lens.  The fact that I bring a new perspective to this process means I can make a difference.

The Court need have no concern that my role as leader of our firm would interfere with the duties of leading this litigation.  I am a working lawyer who tries at least one major case every year.  It has always been important to me that I remain able to answer the demands of extraordinary litigation.  In the lengthy *Mattel/MGA* case, Judge David O. Carter required lead counsel to attend every hearing--usually several per week--and be available virtually 24/7.  If I am fortunate enough to be appointed, I am personally committed to seeing that consumers who bought cars marketed as "green" achieve an outcome commensurate with their financial loss and betrayal by VW.  I have been deeply involved in this case since its inception, including early settlement outreach to VW; preparing the preliminary injunction motion filed in the Central District of California; and advocating to VW on behalf of our South Korean class--an additional 120,000 consumers for whom we and Hagens Berman are the only counsel.

I will be supported by several partners, including Shon Morgan, head of our class action practice-- recognized by Law360 twice in the past four years (2012, 2015) as a Class Action Practice Group of the Year.  Mr. Morgan has litigated (and predominantly led) over 200 class actions, most involving consumer fraud, including automotive cases for Hyundai, Kia, Delphi, Suzuki and others.  He has been lead counsel for defendants in many significant MDLs for companies such as Coca-Cola and Colgate-Palmolive.  He was lead defense counsel in the Hyundai and Kia Fuel Economy Litigation and thus possesses state-of-the-art knowledge of this type of litigation.  Ms. Sullivan, head of our appellate team, will provide invaluable assistance to consumers.  Ms. Sullivan is a heralded appellate lawyer, former Dean of Stanford Law School and a leading Supreme Court advocate.  She would have an important role leading the motions team and, when appropriate, arguing motions before Your Honor.  Under Ms. Sullivan's leadership, our appellate group has achieved significant class actions victories, including recently defeating appellate challenges to class certification in the *Polyurethane Foam* case and the *Egg Products Antitrust Litigation*.

It will be critical to have access to German and EU legal expertise. Obtaining discovery from a German company can be problematic because of hostility to U.S. discovery.  German courts have entered injunctions against cooperating with such proceedings.  Germany made significant reservations under the Hague Convention on Taking of Evidence Abroad.  Privacy and data transfer issues are also unique under German and EU law.  No other firm here has our resources in Germany.  Our German lawyers are very experienced at navigating the conflicts that can arise between U.S. discovery and German and EU law.  Our German law team would be led by Dr. Nadine Herrman, managing partner of our Hamburg office.  Our offices there have earned top rankings, including recognition as a "leading law firm" in 2015 by Germany's Business Week publication, and the only non-German firm to be named IP "Firm of the Year" by German legal publication *JUVE*.  Because of our well-recognized reputation in Germany (and my personal role in litigation with VW on behalf of General Motors, discussed below) I believe I would carry singular credibility into negotiations with defendants.

Our representation of plaintiffs and defendants in class actions has made us especially effective achieving prompt, significant resolutions for plaintiffs.  We have credibility with defense counsel and their clients and understand defense strategy, including corporate governance and investor issues.  We have obtained more than $47 billion in judgments and settlements for plaintiffs.  We have been appointed lead counsel for plaintiffs in many of the most significant class actions in recent years, including, for example, the 2015 *CDS Litigation*, where we achieved a $1.8 billion settlement, and the *Polyurethane Foam Litigation*, where we obtained certification of a national class and a $430 million settlement.

We have a substantial reputation among auto industry defendants, whom we have both litigated against and defended.  I recently represented GM in connection with the ignition switch cases.  As mentioned, we have defended Hyundai and Kia in class actions, as well as Chrysler, Toyota, Suzuki, and Delphi.  Of particular relevance here, I led the QE team that represented GM in *GM v. Lopez, et al.* (E.D. Mich.), involving claims for trade secret misappropriation and RICO violation, among others.  That case arose out of the

theft of GM trade secrets by a senior GM officer and senior officers at VW.  After we defeated VW's jurisdictional and pleading motions, we pushed the case aggressively and were able to achieve a resolution of the case--after only nine months of litigation--on the eve of the deposition of then VW chairman Ferdinand Piech, with a settlement of cash and long-term supply contracts valued at over $1.1 billion.  Mr. Piech was Chairman of VW at the time of the events at issue here also.

(2) <u>Three Judges before whom I have appeared in complex matters (and one for Shon Morgan)</u>.  Hon. David O. Carter (C. D., CA); Hon. Curtis E.A. Karnow (S.F. Superior Court, Complex Div.); Hon. Victoria Chaney (L.A. Superior Court, Complex Div.; now Associate Justice, 2nd District Court of Appeal); Hon. George H. Wu (C. D., CA – Shon Morgan, lead for defendants in Hyundai/Kia MDL).

(3) <u>Willingness and ability to commit</u>.  With Hagens Berman, we have filed four actions, with 117 named plaintiffs (including plaintiffs from every state), a case for South Korean purchasers, and filed one of the few complaints on behalf of owners of 3.0 liter engines.[1]  We filed a pending preliminary injunction motion advocating a buy-back for affected class members who did not want to continue as forced polluters, an important interim remedy in light of the DOJ statement on January 4, 2016 that, "[s]o far, recall discussions with [VW] have not produced an acceptable way forward."  We began from the outset working with leading economists to develop a damages model that can form the basis for immediate settlement discussions or, if necessary, support class certification and eventually be presented to a jury.

(4) <u>Cooperative work environment</u>.  Co-counsel arrangements are a staple of my practice.  We have relationships with plaintiffs' and defense counsel, including many counsel representing parties here.  Hagens Berman, for example, often our adversary in class actions, is co-counsel here.  We have a record of working well with other firms in class actions where we served as lead counsel.  For a recent example, in *Polyurethane Foam*, we were co-lead counsel and worked effectively with an executive committee of eight other prominent plaintiffs' firms.  As a litigation-only firm, good relations with and referrals from other firms are key to our practice.  We are often retained to do final pre-trial and trial work in cases where another firm represented the client up until that point, and we are proud of our record of working collaboratively with prior counsel.  We also have worked with many of the most demanding and sophisticated mediators for major business disputes; our record of achieving outstanding settlements through mediation while maintaining our record and reputation as trial lawyers is a point of immense pride.

(5) <u>Access to resources</u>.  We have more than 700 lawyers and 18 offices in 10 countries.  Over half our partners regularly litigate class actions.  In addition to our recognition as Class Action Practice Group of the Year, we were also in 2015 named a Product Liability Group of the Year, and an Appellate Group of the Year--both practices relevant to this matter.  Our resources include an extraordinarily diverse group of lawyers: in fact, we are a "Top Firm for Diversity" based on a survey by <u>The American Lawyer</u>.  Our firm has been a leader in the promotion of women; six offices and twelve practice groups are led by women.

(6) <u>Willingness to serve as lead and/or steering committee</u>.  I would be honored to serve in either role.

(7) <u>Categories of plaintiffs</u>.  Our cases are filed on behalf of owners and lessees.

(8) <u>Other considerations</u>.  We are working with Hagens Berman here, but are not fettered by any alliances or undertakings.  We are free to make all decisions based only on what is best for the class.

I believe this case is as important as it gets in the business world.  Private litigation is often a vehicle for making public policy, and this case stands to serve as a potential landmark not only for consumers but as a test for how effectively and transparently the judicial system can resolve matters such as this one.  VW can be expected to fight hard to limit its losses.  We know and have great respect for many other applicants, but believe we are in the best position to lead this fight for a person's right not to be turned into an unwitting polluter.  I would be honored to lead this effort and to appear before Your Honor as lead counsel.

---

[1]  If Your Honor chooses to appoint co-lead counsel, we support the appointment of Steven Berman.

Very truly yours,

/s/ John B. Quinn

John B. Quinn

JBQ:wpc