

Respond to:
2407 Periwinkle Way, Suite 6
Sanibel, Florida 33957
O 239.472.1144 | F 239.461.0083

8 January 2016

The Honorable Charles R. Breyer                                                                                         VIA CM/ECF
United States District Judge
Northern District of California

Subject:    In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation, MDL No. 2672 CRB (JSC) (Case No. 3:15-md-02672

Dear Judge Breyer,

Pursuant to the Court's Pretrial Order No. 2 [Dk. 336], I seek appointment to a steering committee position or leadership in a separate track (should you deem one necessary) in the interests of the complex business, financial, accounting and statistical issues involved in the Lanham Act franchised non-VW auto dealer. While I am a Martindale-Hubbell AV-rated lawyer, more important than my background, there are essentially 4 significant traunches of cases within this MDL:

- In the **consumer** case (the vast majority of plaintiffs), the subject matter is physical objects (**cars**, principally new cars purchased from VW). The primary injuries flow from the impact that VW's admitted fraud had on **vehicle functionality** and the resulting **diminution in value**, as well as the excessive prices paid because of the fraud. The remedies are certainly *intangible* in nature (likely, *actual, punitive, and litigation damages*), but might also be *tangible* in nature (*mechanical alterations* to the intended, albeit illegal, design). The court inquiry will focus on the *direct physical and economic* impacts to numerous *physical objects* (**cars** with regard to functionality, diminution in value, and excessive purchase price).

- In the **independent used car dealer** case, the subject matter is physical objects (**cars** bought used and held for resale). The primary injuries flow from the impact that VW's admitted fraud had on **vehicle functionality**, the resulting **diminution in value**, and the resulting consequential damages from **unexpected overhead and carrying costs**. Like the consumer traunch, the remedies are *intangible* in nature (likely, *actual, punitive, and litigation damages*), but might also be *tangible* in nature (*mechanical alterations* to the intended, albeit illegal, design). The court inquiry will focus on the *direct physical and economic* impacts to numerous *physical objects* (**cars** with regard to functionality and diminution in value) and the *indirect and consequential economic* impact to numerous *business enterprises* (**independent used car dealers** with regard to the unexpected carrying costs).

- In the **securities** case, the subject matter is intangible (**publicly-traded stock**). The primary injuries flow from the impact that VW's admitted fraud had on VW's underlying financial performance and the resulting **negative impact on share price**. The remedies are purely financial in nature (likely, *actual, punitive, and litigation damages*). The court inquiry will focus on the *direct economic* impact to a single *business enterprise* (**VW** itself with regard to financial performance) and the resulting *direct and consequential economic* impact to a single *intangible object* (**publicly-traded stock** with regard to lost share value).

- In the **Lanham Act franchised non-VW auto dealer** case, the subject matter is intangible (**competing sales**).  The primary injuries flow from the impact that VW's admitted fraud had on **non-VW new vehicle sales**, the resulting incidental damages from **lost collateral finance and insurance product sales** opportunities, and the resulting incidental damages from **lost ongoing warranty and service revenue**.  The remedies are purely financial in nature (likely, *actual, punitive, and litigation damages* and *disgorgement of VW's profits*).  The court inquiry will focus on the *direct economic* impact to a *business enterprise* (**VW** itself with regard to the profit VW must disgorge from the illegal VW sales), the resulting *direct economic* impact to a *business enterprise* (**Lanham Act non-VW franchised auto dealers** with regard to the new car sales lost), and the resulting *direct and incidental economic* impact to a *business enterprise* (**Lanham Act franchised non-VW auto dealers** with regard to the lost collateral finance and insurance sales and ongoing warranty and service revenues).

Unlike the securities claims looking at the financial *impact* VW's admitted fraud *had on VW's present-day profitability and net asset value* to determine how much stock *value plaintiffs lost*, the Lanham Act claims require a look at the *contribution* VW's illegal sales *made to VW's historical profitability* to determine how much **profit VW must disgorge** to plaintiffs.

Unlike both the consumer claims and the independent used car dealer claims looking at *degraded vehicle performance* VW hid in the admitted fraud to *determine plaintiffs' damages from vehicle diminution in value*, the Lanham Act claims require a look at how much **profit margin plaintiffs lost on new car sales** when those consumers unfortunately fell prey to VW's illegal sales.

Unlike the independent used car dealer claims looking at *unexpected carrying costs from unsellable used car inventory* resulting from public knowledge of VW's admitted fraud to *determine plaintiffs' consequential damages*, the Lanham Act claims require a look at how much **profit margin plaintiffs lost on incidental finance and insurance product sales, as well as lost ongoing warranty and service revenue over the lives of the legitimate new car sales lost** when consumers unfortunately fell prey to VW's illegal sales.

I understand the Lanham Act claims and represent both Saturn of Southwest Florida LLC and Bill Branch Chevrolet, Inc. in claims filed in this MDL.  The complex Lanham Act issue in this case require the significant and diverse commercial litigation and financial background that I have.  I have successfully represented businesses and individuals for over 15 years in shareholder disputes, derivative actions, direct suits, contract disputes, corporate matters, real estate disputes, Chapter 11 bankruptcy cases, FINRA arbitration, tax controversy, and other sophisticated matters with an eye toward maximizing value rather than drawing out litigation.

The complex financial and statistical issues in this case need counsel who understand in business and financial matters.  To that end, I also am a Certified Public Accountant and received business-oriented degrees, including a Master of Business Administration degree from The University of Michigan Stephen M. Ross School of Business, a Master of Laws in Taxation from The University of Alabama School of Law, and a Bachelor of Science in Business Administration, *summa cum laude*, (accounting major) from Wayne State University Mike Illitch School of Business.

Thomas V. Girardi, Neville Johnson, Doug Johnson, and Jason W. Graham all support my application and understand the nature of representation the Lanham Act claims need.  I am willing to devote all of my resources to this litigation and already work closely with VW's lead counsel in the Lanham Act claims – speaking with him nearly weekly for almost 2 months.

Regardless of your view of my particular application, I hope you appoint appropriate leadership to represent the interests of the Lanham Act claims in this MDL.

Please contact me with any concerns.

Kind regards,

/s/

Charles PT Phoenix