# HAUSFELD

January 14, 2016

**VIA ECF FILING**

Honorable Charles R. Breyer
United States District Judge
Courtroom 6, 7th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

**Re: Response In Support of Application for Leadership in** *In re Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation*, 15-MD- 2672 CRB (JSC)

Dear Judge Breyer:

With more than 140 leadership applications from plaintiffs' lawyers across the country, including applications from some of the nation's best known and most highly respected litigators, this Court faces an embarrassment of riches. Like many of my highly-qualified colleagues, I have the experience, track record, and resources to lead this important litigation. In addition, however, my law firm and I have several qualifications that make us uniquely well-suited to serve as lead or co-lead counsel, or to serve on a plaintiffs' steering committee.

***Negotiation Skills.*** This Court and most of the lead counsel applicants have acknowledged that this case is likely to require early and intense settlement discussions. It is thus critical that a seasoned and skillful negotiator represents the interests of the class. While many of my colleagues have experience in litigation and settlement with automobile manufacturers, I was instrumental in settling the largest and most complex case so far involving German automotive firms, among others: *Forced and Slave Labor Cases.* In those cases, I was lead counsel for a class of survivors of World War II era forced and slave labor against German companies that profited from the labor of concentration camp inmates, including various vehicle manufacturers (such as Volkswagen). The class was comprised of 1.5 million people located in Belarus, the Czech Republic, Israel, Poland, Russia, and the Ukraine. I eventually came to represent the interests of many of these countries in the settlement negotiations. While denying legal liability for their actions, the German companies recognized a moral obligation to compensate these individuals. Between May of 1999 and July of 2000, a series of settlement conferences occurred in Germany and Washington, D.C. involving the United States and the German governments, class counsel, and representatives of German industry (including Volkswagen). Hundreds of people attended these conferences; the WilmerHale firm represented a number of the German companies. I participated in them on behalf of the class members and came to represent the interests of many of the countries in which they resided. The United States was represented by then Deputy Secretary of the Treasury, Stuart Eizenstat. The parties agreed to a settlement fund of $5.2 billion in December of 1999 (funded partly by German companies and partly by the German government) and reached an agreement on allocation among victims in March of 2000.

Thereafter, the legal structure of the agreement was hammered out. It involved passage of German legislation creating a foundation that would oversee the implementation of the compensation program and an Executive Agreement between the United States and Germany that resulted in dismissal of the class actions. Mr. Eizenstat publicly singled me out for special recognition for my role in achieving this result, stating that I "was central to any successful negotiation" because I had "a keen sense of where the bottom line was."

Equally groundbreaking was the settlement over which this Court presided in *In re International Air Transportation Surcharge Antitrust Litig*., MDL No. 1793, No. M:06-1793 CRB (N.D. Cal.) ("*Air Transportation*"). There, in a case involving price-fixing by British Airways and Virgin Atlantic Airways, I and the Cotchett Pitre firm achieved a historic settlement resolving claims by both U.S. and U.K. long haul passengers. This Court praised counsel for doing an "excellent job" and achieving "a very good result." Hopefully, a similar resolution can be achieved here.[1]

*European (including Berlin) Offices*.  In my application, I pointed to HLLP's Berlin office, which will have five lawyers by the end of January. Only one other applicant has pointed to its own offices in Germany, but it does not have the benefit of Christopher Rother or Dr. Thomas Höppner, who are, respectively, the Managing Partner of, and a Partner in, HLLP's Berlin office. Prior to joining HLLP, Mr. Rother spent almost two decades as part of Deutsche Bahn AG's ("DB") legal team, including ten years as the head of its Regulatory, Competition & Antitrust Department. In that role, he developed an unparalleled track record in litigation matters, handling cases worth over €1bn across multiple jurisdictions.  Mr. Rother pioneered DB's position as one of the most relevant players in private enforcement across the world. Dr. Höppner, who worked at Hogan Lovells and Oswang before joining HLLP, has extensive litigation experience before the European Commission and national (including German) courts and is extremely well-versed in the intricacies of discovery under German law.

---

[1] I will be supported by equally capable attorneys. For example, among my partners at HLLP is Bonny Sweeney, formerly a partner at Robbins Geller Rudman & Dowd, who was co-lead counsel in *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.,* MDL No. 1720 (E.D.N.Y.).  After seven years of hard-fought litigation against the world's largest credit card companies and 19 banks, the case settled for $7.2 billion, the largest antitrust class action settlement ever.  Ms. Sweeney and her co-lead counsel personally negotiated this complex agreement with the assistance of experienced mediators Magistrate Judge Edward Infante (Ret.) and Professor Eric Green. The negotiations encompassed roughly 45 meetings with the mediators, all of which she attended. HLLP also has a deep bench of nationally known experts on electronic discovery.  It will be able to harness their cutting edge expertise in crafting a cost-effective and innovative discovery plan.  Rather than "litigation as usual," HLLP will have specific recommendations to streamline discovery that will involve foreign language and programming terms (which will likely not be conducive to search terms).

**HAUSFELD**

*Cooperative Relations with Counsel*. My law firm and I have a long history of working cooperatively and successfully in leadership positions with other plaintiffs' law firms. We have, for example, served as co-lead counsel with Boies Schiller (*e.g.*, *In re Municipal Derivatives Antitrust Litig.*, MDL No. 950 (S.D.N.Y.); *In Re Blue Cross Blue Shield Antitrust Litig.*, No. 13-20000 (N.D. Ala.)); Cotchett Pitre (*In re Transpacific Passenger Air Transportation Antitrust Litig.*, No. 3:07-cv-0564-CRB (N.D. Cal); *Air Transportation*); Quinn Emanuel (*Four In One Co., Inc. v. S.K. Foods, L.P.*, No. 2:08-cv-3017 KJM EFB (E.D. Cal.); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, MDL No. 1869 (D.D.C.)); Hagens Berman (*In re NCAA Student-Athlete Name & Likenss Licensing Litig.*, No. 09-CV-1967-CW (N.D. Cal.)); and Robins Kaplan (*In re Disposable Contact Lens Antitrust Litig.*, No. 1:15-md-2626-HES (M.D. Fla.); *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775 (JG) (VVP) (S.D.N.Y.)), and worked successfully with Lieff Cabraser on multiple cases (*e.g.*, *O'Bannon v. NCAA*, No. 4:09-cv-3329 CW (N.D. Cal.); *In re Bank of New York Mellon Corp. Forex Transactions Litig.*, No. 12 MD 2335 (LAK) (S.D.N.Y.)). Although we did not seek any reciprocal endorsements from other lawyers or firms, we would be honored to work with any of these firms and lawyers or any others the Court may choose to appoint.

*Efficient and Cost-Sensitive Leadership*. Mindful of the imperative to maximize and protect a class's recovery, HLLP is efficient in its billing and is sensitive to cost issues. In cases in which we are lead or co-lead counsel, we make an effort to eliminate duplicative, excessive and unnecessary billing, and impose strict limits on expenses. The billing protocol that we have employed recently in other cases (attached as an appendix) is one that we would recommend employing here. In addition, given the nature of this case, the likelihood of a large recovery, and Volkswagen's public admissions of liability, I recommend that the Court should compensate class counsel here not on the basis of a percentage of some common fund, but instead on the basis of lodestar plus some reasonable multiplier.

For these reasons, and the reasons set forth in my January 5, 2016 application, I respectfully submit that I and my law firm are highly qualified to serve as lead or co-lead counsel, or, if the Court so wishes, as a member of plaintiffs' steering committee, and look forward to the prospect of working on this important matter.

Sincerely,

Michael D. Hausfeld
Partner

# APPENDIX--RECOMMENDED BILLING PROTOCOL

**Time:**

1. Each firm must submit its time to Lead or Co-Lead Counsel on a monthly basis, and a partner or shareholder must review and affirm, under penalty of perjury, that the information is accurate.  Computer generated time reports substantiating the information set forth in the monthly time reports shall be maintained by each firm, but shall only be submitted if and when requested by Lead or Co-Lead Counsel.

2. All time must be recorded contemporaneously, *i.e.*, recorded within seven days from the date on which it occurred.

3. All time must be recorded in tenths of an hour.

4. All work must be approved or assigned by Lead or Co-Lead Counsel.

5. All time descriptions must be detailed, and must break out the time for each discrete task.  In other words, block billing is not allowed.

6. Read and review time should not be billed, except to the extent it is necessary to perform a specific assignment from Lead Counsel.  Unnecessary appearances at hearings or depositions also shall not be billed, unless expressly authorized by Lead or Co-Lead Counsel.

7. Hourly billing rates must be reasonable, and must be the same hourly rate normally charged by that timekeeper for similar work for clients who pay by the hour, or, if the firm works only or primarily on contingent matters, the hourly rate must be the rate previously approved by a court as part of a fee petition or be reasonable compared to comparable hourly rate for lawyers in your city or the forum city with comparable experience for comparable tasks.

8. Attorneys assigned to work on projects must have an appropriate level of experience suitable for the task.  Partners and shareholders should not bill substantial time better suited for associates, and associates should not bill substantial time for work better suited for paralegals.

9. Time spent recording or monitoring a firm's time should not be included.

10. Time devoted to internal filing or other ministerial tasks should not be included.

11. If you choose to employ contract attorneys to work on this case, you must report the hourly rate you pay those attorneys together with the hourly rate you are billing for their time.

12. Travel time should be billed only up to 50%, unless, and to the extent that, the timekeeper is working on the case during the travel time.

13. No time entries should exceed nine hours a day, unless the attorney is preparing for and/or participating in a deposition, a hearing, trial, a discovery deadline, or some other exigency that requires it.

14. For attorneys assigned to document review, no daily entry should exceed 7.5 hours.

15. The hourly rate for document review will be capped at $300.

**Expenses:**

1. Each firm must submit its expenses to Lead or Co-Lead Counsel on a monthly basis, and a partner or shareholder must review and affirm, under penalty of perjury, that the information is accurate.  Actual invoices substantiating the information set forth in the monthly expense reports shall be maintained by each firm, but shall only be submitted if and when requested by Lead or Co-Lead Counsel.

2. All expenses must be reasonable in amount and related to an assigned task.

3. All expenses must be supported by documentation.

4. Alcohol expenses should be excluded.

5. First or business class air fare is not permitted.

6. No dinner may exceed $75.00; for other meals, the limit is $25.00.

7. Incidentals (hotel mini-bar, laundry, movies, etc.) are not permitted.

8. General overhead expenses must be excluded.

9. Internal copying shall not exceed $.20 per page.