1  MORRIS POLICH & PURDY LLP
   David J. Vendler, Esq. (SBN 146528)
2  dvendler@mpplaw.com
   1055 West Seventh Street, Suite 2400
3  Los Angeles, CA 90017
   Telephone:  (213) 417-5100
4  Facsimile:   (213) 488-1178

5  Attorneys for Objectors
   ANDRES LUJAN, JR. and MARIA LUJAN

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS. | Case No.: MDL 2672 CRB (JSC)<br><br>**ANDRES LUJAN, JR. AND MARIA LUJAN'S OBJECTION TO SETTLEMENT** |

Now come class members Andres Lujan Jr. and Maria Lujan, who object to the Class Action Settlement in In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation, No. 3:15-md-2672 (N.D. Cal.) on the ground that it fails to include any compensation for the money the Lujans spent on theft control devices as part of their purchase of their new 2013 Volkswagen Passat, yet requires the Lujans to release all claims for the value of those products against Volkswagen.

///

///

A.   **Facts**

When the Lujan's purchased their brand new diesel Passat, they concurrently purchased from their authorized Volkswagen dealer two anti-theft products. These included: "Theft Guard" for $573 and a LoJack system for $695. Attached hereto as Exhibit "A" is a true and correct copy of their retail installment Sales Contract which evidences the $1,263 they spent on these two anti-theft products as well as the vehicle identification number of their vehicle, which they have owned since the date of their purchase.[1] Neither of the anti-theft products they purchased is transferrable to a new vehicle.[2] And this is the primary basis of the Lujan's objection.[3]

B.   **Argument**

As presented, the settlement contemplates the potential for a "buyback" of their vehicle. However, if the Lujans either opt for the repurchase of their car, or if they are forced to relinquish their car because Volkswagen is unable to get clearance for a "fix" from government regulators, *availing themselves of the settlement will result in the Lujans suffering an entirely different kind of damage* – losing the value of their anti-theft products – than they suffered from Volkswagen's original fraud. In other words, it is exclusively because the parties ultimately agreed to a settlement that included a buyback remedy that the Lujans faced the prospect of losing the value of their theft control devices they purchased. Prior to the settlement, given the uncertainty over what the remedy was going to be, the Lujans could not have known whether they would have a cause of action against Volkswagen for the cost of those

---

[1] The Lujans can, and should only be reached through their counsel. Their address is provided on Exhibit "A."

[2] LoJack systems are non-transferrable. See http://www.lojack.com/Customer-Service/Stolen-Vehicle-Recovery/FAQs#q8 (last accessed on September 16, 2016). The Anti-Theft product the Lujans purchased is also specific to their vehicle.

[3] The Lujans also join in the objections filed on September 15, 2016 by Christopher D'Angelo. (Document 1862).

products or not. After all, if the remedy had been purely a "fix," the Lujans could have continued to enjoy the benefits of the anti-theft products they purchased and would have had no claim against Volkswagen for the cost of those products.

But the moment the Lujans either opt for the buy-back option (or are forced into it by Volkswagen's failure to get a fix approved), they will, as a consequence, lose the value of their anti-theft products. And, because of the broad nature of the release that is contemplated by the settlement, the Lujans will not be able to recover for that damage. The Lujans contend that the settlement should not force class members in the Lujans' position to incur a separate item of damage as a consequence of participating in the settlement's buyback program (whether that participation be by election or by compulsion).

The Lujans instead contend that the settlement should either: (1) include as part of the buyback program a provision that would reasonably compensate class members who purchased from their authorized Volkswagen dealers anti-theft products concurrently with the purchase of their vehicle, or (b) exclude from the release that the Lujans (and other class members) will be required to give to Volkswagen in order to receive the benefits of the buyback program the value of the anti-theft devices that will no longer have any value to them *because of the settlement*. *Myles v. AlliedBarton Sec. Servs., LLC*, 2014 WL 6065602, at *6 (N.D.Cal. 2014) (settlement rejected because "the parties have not shown good reasons for extending the bounds of the release beyond the claims actually at issue in the case").

///
///
///
///
///
///

C. **Conclusion**

The Court should sustain the Lujan's objection for the reasons stated herein. The Lujans further join the objections filed by Jessica Grace Li and Alexander D. Birner (Document No. 1871) and provide notice that their counsel intends to be present and argue at the final approval hearing with respect to their objections. Finally, the Lujans expressly join in the objections of all other class members whether made prior to or after this objection.

Date: September 16, 2016              MORRIS POLICH & PURDY LLP

                                           By: */s/ David J. Vendler*
David J. Vendler
MORRIS POLICH & PURDY LLP
1055 W. Seventh Street, 24th Floor
Los Angeles, CA 90017
Telephone: (213) 891-9100
Facsimile: (213) 488-1178
E-Mail: dvendler@mpplaw.com

*Attorneys for Objectors*
*ANDRES LUJAN, JR. and MARIA LUJAN*

**Exhibit "A"**

## (Retail Installment Sale Contract)

| | |
|---|---|
| Buyer Name(s) ("you") | ANDRES LUJAN JR |
| | MARIA LUJAN |
| Address: Street | 13765 APPALOOSA DR SAN MARTIN CA 95046 |
| Contract Date | 06/12/2013 |

| Year | Make | Model | VIN |
|---|---|---|---|
| 2013 | VOLKSWAGEN | PASSAT | 1VWBN7A38DC088423 |

### Optional Goods and Services

☐ Optional Service Contract(s):
- (1) 72 MOS./100000 MILES SERVICE CONT — $ 2499.00
- (2) N/A — $ N/A
- (3) N/A — $ N/A
- (4) N/A — $ N/A
- (5) N/A — $ N/A

☐ Optional Debt Cancellation Agreement (GAP): N/A — $ N/A

☐ Optional Theft Deterrent Device(s):
- (1) LOJACK — $ 695.00 ←
- (2) THEFT GUARD — $ 573.00 ←
- (3) N/A — $ N/A

☐ Optional Surface Protection Product(s):
- (1) N/A — $ N/A
- (2) N/A — $ N/A

☐ Optional Vehicle Contract Cancellation Option Agreement — $ N/A

☐ Optional Insurance Product: N/A — $ N/A

**Total** $ 3767.00

Installment Payment EXCLUDING Listed Items: $ 267.61
Installment Payment INCLUDING Listed Items: $ 331.69

THE ABOVE INSTALLMENT PAYMENTS INCLUDE THE ITEMS DESCRIBED ABOVE, THE PRICE OF THE VEHICLE, GOVERNMENT FEES AND TAXES, FINANCE CHARGES, AND THE FOLLOWING ADDITIONAL CHARGES:

#### Other Goods, Services and Miscellaneous Charges

| | | | | |
|---|---|---|---|---|
| Cash Price of Additional Accessories | $ N/A | Document Processing Charge | $ 80.00 |
| Other (Nontaxable) | | Emissions Testing Charge | $ N/A |
| N/A | $ N/A | Prior Credit or Lease Balance | $ N/A |
| N/A | $ N/A | Other (to whom paid) N/A | $ N/A |
| Electronic Vehicle Registration or Transfer Charge | $ 14.60 | For: N/A | |

By signing below, you acknowledge:

- All of the charges described above will be included in the retail installment sale contract accompanying the purchase of the above described vehicle.
- The goods and services are not required as a condition to obtaining financing terms.
- This document was presented to you prior to signing the retail installment sale contract and you consent to including all the above charges in the retail installment sale contract.

06/12/2013
Date — Buyer's Signature — Co-Buyer's Signature

LAW FORM NO. LAWCA-PCD (7/12)
© 2012 The Reynolds and Reynolds Company TO ORDER: www.reysource.com; 1-800-344-0996; fax 1-800-531-9055
THE PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

# RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE
## (WITH ARBITRATION PROVISION)

Dealer Number _____   Contract Number _____   R.O.S. Number 29429996   Stock Number 20945

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Creditor-Seller (Name and Address) |
|---|---|---|
| ANDRES LUJAN JR<br>13765 APPALOOSA DR<br>SAN MARTIN CA 95046<br>SANTA CLARA | MARIA LUJAN<br>13765 APPALOOSA DR<br>SAN MARTIN CA 95046<br>SANTA CLARA | MICHAEL AUTOMOTIVE CENTER<br>PO BOX 5419<br>FRESNO CA 93755-5419 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Creditor - Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| NEW | 2013 | VOLKSWAGEN PASSAT | 33 | 1VWBN7A38DC038423 | Personal, family or household unless otherwise indicated below.<br>☐ business or commercial |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 10804.35 is |
|---|---|---|---|---|
| 5.89 % | $ 3807.8 (e) | $ 20073.8 | $ 23881. (e) | $ 34686.0 (e) |

(e) means an estimate

**YOUR PAYMENT SCHEDULE WILL BE:**

| Number of Payments: | Amount of Payments: | When Payments Are Due: |
|---|---|---|
| One Payment of N/A | N/A | N/A |
| One Payment of N/A | N/A | N/A |
| 71 Payments | 331.69 | Monthly, Beginning 07/13/2013 |
| Payments | N/A | Monthly, Beginning N/A |
| One Final Payment | 331.69 | DUE ON 06/13/2019 |
| N/A | N/A | N/A |

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.
**Prepayment.** If you pay off all your debt early, you may be charged a minimum finance charge.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date, minimum finance charges, and security interest.

### STATEMENT OF INSURANCE
**NOTICE.** No person is required as a condition of financing the purchase of a motor vehicle to purchase or negotiate any insurance through a particular insurance company, agent or broker. You are not required to buy any other insurance to obtain credit. Your decision to buy or not buy other insurance will not be a factor in the credit approval process.

**Vehicle Insurance**

| | Term | Premium |
|---|---|---|
| $ N/A Ded. Comp., Fire & Theft | N/A Mos. | $ N/A |
| $ N/A Ded. Collision | N/A Mos. | $ N/A |
| Bodily Injury $ N/A Limits | N/A Mos. | $ N/A |
| Property Damage $ N/A Limits | N/A Mos. | $ N/A |
| Medical N/A | N/A Mos. | $ N/A |
| N/A | N/A Mos. | $ N/A |

Total Vehicle Insurance Premiums $ N/A (a)

UNLESS A CHARGE IS INCLUDED IN THIS AGREEMENT FOR PUBLIC LIABILITY OR PROPERTY DAMAGE INSURANCE, PAYMENT FOR SUCH COVERAGE IS NOT PROVIDED BY THIS AGREEMENT.

You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit.

Buyer X _(signature)_
Co-Buyer X _(signature)_
Seller X

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

### Application for Optional Credit Insurance
☐ Credit Life:   ☐ Buyer   ☐ Co-Buyer   ☐ Both
☐ Credit Disability (Buyer Only)

| | Term | Exp. | Premium |
|---|---|---|---|
| Credit Life | N/A Mos. | N/A | $ N/A |
| Credit Disability | N/A Mos. | N/A | $ N/A |

Total Credit Insurance Premiums $ N/A (b)
Insurance Company Name N/A
N/A
Home Office Address N/A
N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown above.

You are applying for the credit insurance marked above. Your signature below means that you agree that: (1) You are not eligible for insurance if you have

### ITEMIZATION OF THE AMOUNT FINANCED (Seller may keep part of the amounts paid to others.)

1. **Total Cash Price**
   - A. Cash Price of Motor Vehicle and Accessories $ 24497.3 (A)
     1. Cash Price Vehicle $ 24497.35
     2. Cash Price Accessories $ N/A
     3. Other (Nontaxable)
        - Describe N/A $ N/A
        - Describe N/A $ N/A
   - B. Document Processing Charge (not a governmental fee) $ 80.00 (B)
   - C. Emissions Testing Charge (not a governmental fee) $ N/A (C)
   - D. (Optional) Theft Deterrent Device (to whom paid) MICHAEL AUTO $ 695.00 (D)
   - E. (Optional) Theft Deterrent Device (to whom paid) MICHAEL AUTO $ 573.00 (E)
   - F. (Optional) Theft Deterrent Device (to whom paid) N/A $ N/A (F)
   - G. (Optional) Surface Protection Product (to whom paid) N/A $ N/A (G)
   - H. (Optional) Surface Protection Product (to whom paid) N/A $ N/A (H)
   - I. Sales Tax (on taxable items in A through H) $ 2261.47 (I)
   - J. Electronic Vehicle Registration or Transfer Charge (not a governmental fee) (to whom paid) CVR $ 14.60 (J)
   - K. (Optional) Service Contract (to whom paid) NPP $ 2499.00 (K)
   - L. (Optional) Service Contract (to whom paid) N/A $ N/A (L)
   - M. (Optional) Service Contract (to whom paid) N/A $ N/A (M)
   - N. (Optional) Service Contract (to whom paid) N/A $ N/A (N)
   - O. (Optional) Service Contract (to whom paid) N/A $ N/A (O)
   - P. Prior Credit or Lease Balance paid by Seller to

| | | |
|---|---|---|
| (Optional) Service Contract (to whom paid) N/A | $ | N/A (N) |
| (Optional) Service Contract (to whom paid) N/A | $ | N/A (O) |
| Prior Credit or Lease Balance paid by Seller to N/A | (e) $ | N/A (P) |
| (see downpayment and trade-in calculation) | | |
| (Optional) Gap Contract (to whom paid) N/A | $ | N/A (Q) |
| (Optional) Used Vehicle Contract Cancellation Option Agreement | $ | N/A (R) |
| Other (to whom paid) N/A | | |
| For N/A | $ | N/A (S) |
| al Cash Price (A through S) | $ | 30620.4 (1) |
| ounts Paid to Public Officials | | |
| Vehicle License Fees ESTIMATED | $ | 159.00 (A) |
| Registration/Transfer/Titling Fees ESTIMATED | $ | 90.00 (B) |
| California Tire Fees | $ | 8.75 (C) |
| Other N/A | $ | N/A (D) |
| al Official Fees (A through D) | $ | 257.75 (2) |
| ount Paid to Insurance Companies | | |
| al premiums from Statement of Insurance column a + b) | $ | N/A (3) |
| State Emissions Certification Fee or ☐ State Emissions Exemption Fee | $ | N/A (4) |
| btotal (1 through 4) | $ | 30878.1 (5) |
| al Downpayment | | |
| Agreed Trade-In Value Yr 2004 Make GMC | $ | 7000.00 (A) |
| Model YUKON XL DENALI Odom 126278 | | |
| VIN 1GKFK65U14J211942 | | |
| Less Prior Credit or Lease Balance (e) | $ | N/A (B) |
| Net Trade-In (A less B) (indicate if a negative number) | $ | 7000.00 (C) |
| Deferred Downpayment | $ | N/A (D) |
| Manufacturer's Rebate | $ | N/A (E) |
| Other N/A | $ | N/A (F) |
| Cash | $ | 3804.35 (G) |
| al Downpayment (C through G) | $ | 10804.35 (6) |
| egative, enter zero on line 6 and enter the amount less than zero as a positive number on line 1P above) | | |
| ount Financed (5 less 6) | $ | 20073.8 (7) |

**SELLER ASSISTED LOAN**
MAY BE REQUIRED TO PLEDGE SECURITY FOR THE LOAN, AND E OBLIGATED FOR THE INSTALLMENT PAYMENTS ON BOTH THIS INSTALLMENT SALE CONTRACT AND THE LOAN.

eds of Loan From: N/A
nt $ N/A Finance Charge $ N/A
$ N/A Payable in N/A
ments of $ N/A $ N/A
his Loan is shown in item 6D.

**AUTO BROKER FEE DISCLOSURE**
If this contract reflects the retail sale of a new motor vehicle, the sale is not subject to a fee received by an autobroker from us unless the following box is checked:

☐ Name of autobroker receiving fee, if applicable: N/A

**ER'S RIGHT TO CANCEL** If Buyer and Co-Buyer sign here, the provisions of the Seller's Right to Cancel section on ck giving the Seller the right to cancel if Seller is unable to assign this contract to a financial institution will apply.

X _[signature]_
Co-Buyer

**ment to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this ct, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the tion Provision for additional information concerning the agreement to arbitrate.

Signs X _[signature]_
yer Signs X _[signature]_

**N:** ☐ You pay no finance charge if the Amount Financed, item 7, is paid in full on or before N/A , Year N/A SELLER'S INITIALS N/A

E MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED IN LAW MUST BE MET BY EVERY PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER OR OUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE IN THE EVENT OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
RNING:
UR PRESENT POLICY MAY NOT COVER COLLISION DAMAGE OR MAY NOT PROVIDE FOR FULL REPLACEMENT COSTS FOR THE VEHICLE BEING PURCHASED. IF YOU DO HAVE FULL COVERAGE, SUPPLEMENTAL COVERAGE FOR COLLISION DAMAGE MAY BE AVAILABLE TO YOU THROUGH YOUR INSURANCE AGENT OR THROUGH THE SELLING ER. HOWEVER, UNLESS OTHERWISE SPECIFIED, THE COVERAGE YOU OBTAIN THROUGH THE DEALER PROTECTS ONLY THE DEALER, USUALLY UP TO THE AMOUNT OF NPAID BALANCE REMAINING AFTER THE VEHICLE HAS BEEN REPOSSESSED AND SOLD.
R ADVICE ON FULL COVERAGE THAT WILL PROTECT YOU IN THE EVENT OF LOSS OR DAMAGE TO YOUR VEHICLE, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
E BUYER SHALL SIGN TO ACKNOWLEDGE THAT HE/SHE UNDERSTANDS THESE PUBLIC LIABILITY TERMS AND CONDITIONS.

_[signature]_ X _[signature]_

f Agreement: Seller relied on information from you and/or the lienholder or lessor of your trade-in vehicle to arrive at the payoff amount shown in item 6B of the Itemization of Amount Financed as the Credit or Lease Balance." You understand that the amount quoted is an estimate.

agrees to pay the payoff amount shown in 6B to the lienholder or lessor of the trade-in vehicle, or its designee. If the actual payoff amount is more than the amount shown in 6B, you must pay the Seller

---

Right column:

due date for the last payment unless a different term for the insurance is shown above.

You are applying for the credit insurance marked above. Your signature below means that you agree that: (1) You are not eligible for insurance if you have reached your 65th birthday. (2) You are eligible for disability insurance only if you are working for wages or profit 30 hours a week or more on the Effective Date. (3) Only the Primary Buyer is eligible for disability insurance. DISABILITY INSURANCE MAY NOT COVER CONDITIONS FOR WHICH YOU HAVE SEEN A DOCTOR OR CHIROPRACTOR IN THE LAST 6 MONTHS (Refer to "Total Disabilities Not Covered" in your policy for details).
You want to buy the credit insurance.

| Date | X _[signature]_ Buyer Signature | Age |
|---|---|---|
| Date | X _[signature]_ Co-Buyer Signature | Age |

**OPTIONAL GAP CONTRACT** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in item 1Q of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term N/A Mos. N/A
Name of Gap Contract

I want to buy a gap contract.
Buyer Signs X _[signature]_

**OPTIONAL SERVICE CONTRACT(S)** You want to purchase the service contract(s) written with the following company(ies) for the term(s) shown below for the charge(s) shown in item 1K, 1L, 1M, 1N, and/or 1O.

1K Company MRP
Term 72 Mos. or 100000 Miles
1L Company N/A
Term N/A Mos. or N/A Miles
1M Company N/A
Term N/A Mos. or N/A Miles
1N Company N/A
Term N/A Mos. or N/A Miles
1O Company N/A
Term N/A Mos. or N/A Miles
Buyer X _[signature]_

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to the contract must be in writing and both you and we must sign it. No oral changes are binding.

Buyer Signs X _[signature]_
Co-Buyer Signs X _[signature]_

If you have a complaint concerning this sale, you should try to resolve... Complaints concerning unfair or deceptive practices or methods by the seller may be referred to the city attorney, the district attorney, or an investigator for the Department of Motor Vehicles, or any combination thereof.

After this contract is signed, the seller may not change the financing or payment terms unless you agree in writing to the change. You do not have to agree to any change, and it is an unfair or deceptive practice for the seller to make a unilateral change.

Buyer Signature X _____  Co-Buyer Signature X _____

**The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.**

**THERE IS NO COOLING-OFF PERIOD UNLESS YOU OBTAIN A CONTRACT CANCELLATION OPTION**

California law does not provide for a "cooling-off" or other cancellation period for vehicle sales. Therefore, you cannot later cancel this contract simply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign below, you may only cancel this contract with the agreement of the seller or for legal cause, such as fraud. However, California law does require a seller to offer a 2-day contract cancellation option on used vehicles with a purchase price of less than $40,000, subject to certain statutory conditions. This contract cancellation option requirement does not apply to the sale of a recreational vehicle, a motorcycle, or an off-highway motor vehicle subject to identification under California law. See the vehicle contract cancellation option agreement for details.

YOU AGREE TO THE TERMS OF THIS CONTRACT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU ACKNOWLEDGE THAT YOU HAVE READ BOTH SIDES OF THIS CONTRACT, INCLUDING THE ARBITRATION PROVISION ON THE REVERSE SIDE, BEFORE SIGNING BELOW. YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED IT.

Buyer Signature X _____ Date 06/12/13  Co-Buyer Signature X _____ Date 06/12/13

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other Owner Signature X _____  Address _____

**GUARANTY:** To induce us to sell the vehicle to Buyer, each person who signs as a Guarantor individually guarantees the payment of this contract. If Buyer fails to pay any money owing on this contract, each Guarantor must pay it when asked. Each Guarantor will be liable for the total amount owing even if other persons also sign as Guarantor, and even if Buyer has a complete defense to Guarantor's demand for reimbursement. Each Guarantor agrees to be liable even if we do one or more of the following: (1) give the Buyer more time to pay one or more payments; (2) give a full or partial release to any other Guarantor; (3) release any security; (4) accept less from the Buyer than the total amount owing; or (5) otherwise reach a settlement relating to this contract or extend the contract. Each Guarantor acknowledges receipt of a completed copy of this contract and guaranty at the time of signing. Guarantor waives notice of acceptance of this Guaranty, notice of the Buyer's non-payment, non-performance, and default; and notices of the amount owing at any time, and of any demands upon the Buyer.

Guarantor X _____ Date _____  Guarantor X _____ Date _____

Address _____  Address _____

Seller Signs MICHAEL AUTOMOTIVE CENTER  Date 06/12/13  By X GREG MORELOS  Title F&I M

**LAW** FORM NO. 553-CA-ARB (REV. 7/12) U.S. PATENT NO. D460,782
©2012 The Reynolds and Reynolds Company TO ORDER: www.reysource.com; 1-800-344-0996; fax 1-800-531-9055
THE PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

**CUSTOMER/TRUTH IN LENDING COPY**

# CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of September, 2016, I electronically filed a copy of the foregoing using the CM/ECF system, which sent a notification of such filing to counsel of record.

                                            */s/ David J. Vendler*
                                              David J. Vendler