Steve W. Berman (*Pro Hac Vice*)
Thomas E. Loeser (SBN 202724)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite #3300
Seattle, WA 98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
toml@hbsslaw.com

Richard N. Sox (*Pro Hac Vice to be filed*)
BASS SOX MERCER
2822 Remington Green Circle
Tallahassee, FL 32308
Telephone:  (850) 878-6404
Facsimile:  (850) 942-4869
rsox@dealerlawyer.com

*Counsel for Plaintiffs  Napleton Orlando Imports,*
*LLC, Napleton Sanford Imports, LLC, Napleton*
*Automotive of Urbana, LLC and J. Bertolet, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: VOLKSWAGEN 'CLEAN DIESEL' MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 02672-CRB (JSC) |
| This document relates to: | PLAINTIFF J. BERTOLET, INC.'S NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF FRANCHISE DEALER SETTLEMENT AGREEMENT, PROVISIONAL CERTIFICATION OF DEALER SETTLEMENT CLASS, AND APPROVAL OF CLASS NOTICE |
| *Napleton Orlando Imports, LLC et al. v. Volkswagen Group of America, Inc. et al.*, Case No. 3:16-cv-02086-CRB | |
| NAPLETON ORLANDO IMPORTS, LLC d/b/a NAPLETON'S VOLKSWAGEN OF ORLANDO, an Illinois limited liability company, NAPLETON SANFORD IMPORTS, LLC d/b/a NAPLETON'S VOLKSWAGEN OF SANFORD, an Illinois limited liability company, and NAPLETON AUTOMOTIVE OF URBANA, LLC d/b/a NAPLETON VOLKSWAGEN OF URBANA, a Florida limited liability company, individually, and J. BERTOLET, INC. dba J. BERTOLET VOLKSWAGEN, on behalf of itself and all similarly situated persons and entities, | Hearing:    October 18, 2016 Time:        8:00 a.m. Court:       6, 17th Floor  The Honorable Charles R. Breyer |
| Plaintiffs, | |

1

       v.

2    VOLKSWAGEN GROUP OF AMERICA, INC., a
New Jersey Corporation,  VW CREDIT, INC., a
3    Delaware corporation, VOLKSWAGEN AG, a
German corporation, ROBERT BOSCH, LLC, a
4    Michigan limited liability company, and ROBERT
BOSCH GmbH, a German corporation.
5

6                Defendants.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL
OF FRANCHISE DEALER SETTLEMENT
Case No. 02672-CRB (JSC)
010525-11 896005 V1

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on October 18, 2016, at 8:00 a.m., or as soon thereafter as the matter may be heard by the Honorable Judge Charles R. Breyer of the United States District Court of the Northern District of California, San Francisco Division, in Courtroom 6, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiff J. Bertolet, Inc., individually and on behalf of a proposed class of Volkswagen-branded franchise dealers, will and hereby does move the Court pursuant to Federal Rules of Civil Procedure 23 for an order:

    1)  preliminarily approving the proposed Franchise Dealer Class Settlement of this case with the Volkswagen Defendants;[1]

    2)  Provisionally certifying the proposed Franchise Dealer Class;

    3)  Approving and directing notice to the Franchise Dealer Class; and

    4)  Scheduling a final fairness hearing.

This unopposed motion is based on this notice of motion and motion for preliminary approval of settlement, the following memorandum of points and authorities, the declarations in support, the accompanying settlement agreement and proposed form of notice, the pleadings and the papers on file in this action, and such other matters as the Court may consider.

---

[1] Volkswagen Defendants, as defined in the Franchise Dealer Class Action Settlement, are Volkswagen AG, Volkswagen Group of America, Volkswagen Credit Incorporated, and Volkswagen Group of America Chattanooga Operations, LLC.

1

# TABLE OF CONTENTS

2

**Page**

3  I.    INTRODUCTION ..................................................................................................... 1

4  II.   BACKGROUND AND PROCEDURAL HISTORY ............................................... 3

5        A.    Factual Background ................................................................................... 3

6        B.    Procedural History .................................................................................... 3

7  III.  SUMMARY OF KEY SETTLEMENT TERMS ..................................................... 6

8        A.    The Settlement Class ................................................................................. 6

9        B.    Benefits to Franchise Dealer Class Members Who Do Not Opt-Out
              of the Settlement ....................................................................................... 6

10
              1.    New Cash Payments Representing Lost Value of
11                  Dealership Investment. ................................................................... 6

12            2.    Continuation of Incentives and Other Support Payments. ............. 7

13            3.    Standstill of Capital Investment Obligations. ................................ 7

14            4.    Treatment of Dealer Inventory of Volkswagen Diesel
                    Vehicles. ......................................................................................... 7
15
        C.    Release of Claims ..................................................................................... 8
16
        D.    Notice of the Settlement ........................................................................... 8
17
        E.    Claims-Paid Settlement ............................................................................ 9
18
        F.    Costs of Settlement Administration .......................................................... 9
19
        G.    Attorneys' Fees ........................................................................................ 9
20
   IV.  ARGUMENT ........................................................................................................ 10
21
        A.    The Court Should Preliminarily Approve the Settlement ........................ 10
22
              1.    The Settlement Is Substantively Fair, Reasonable and
23                  Adequate Resolution of the Franchise Dealer Litigation. ........... 11

24                  a.    Plaintiff's case is strong, thus the substantial
                          recovery is warranted. .......................................................... 11
25
                    b.    There would be substantial risk, expense and
26                        complexity in continuing the litigation, which could
                          last for years and would imperil the Consumer
27                        Settlements. .......................................................................... 12

28

c.    The Franchise Dealer Class carries material certification risk. ...................................................... 12

d.    Beyond the substantial discovery discussed in the Consumer Settlement, proposed Dealer Class Counsel obtained and reviewed discovery specifically geared to the unique aspects of franchise dealers' claims against Volkswagen. ................................. 13

e.    The settlement is by all measures substantial and adequately reflects the magnitude of harm to the Franchise Dealer Class. ......................................... 13

f.    In light of the unique facts and circumstances of this case, that it is being settled at an early stage of the case is not a concern. ......................................... 14

g.    Plaintiffs' counsel and Volkswagen counsel are highly experienced class action and automotive dealer litigators and they fully support the Settlement. ........................................................ 14

h.    The extensive involvement of government in response to the Volkswagen emissions scandal supports approval of this Settlement. ......................... 15

i.    Plaintiffs' counsel are confident the Settlement will be broadly supported by the Franchise Dealer Class. ........................ 15

2.    The Settlement Is the Result of Arm's-Length Negotiations. ....................... 16

B.    The Court Should Certify the Franchise Dealer Class ................................. 17

1.    The Proposed Class is Ascertainable. ........................................... 17

2.    Each of the Rule 23(a) Requirements Are Met ............................... 18

a.    The Class is so numerous that joiner is impracticable. ......................................... 18

b.    Numerous common issues exist. ................................... 18

c.    The Class Representative's claims are typical of those of other Class members. ......................... 19

d.    The Class Representative and its counsel adequately represent the interests of the Class. ......................... 20

3.    The Requirements of Rule 23(b)(3) Are Met. ............................. 21

a.    Common issues of law and fact predominate. ................ 21

b.    The class action mechanism is superior to any other methods of adjudication. ......................... 22

MOTION FOR PRELIMINARY APPROVAL
OF FRANCHISE DEALER SETTLEMENT
Case No. 02672-CRB (JSC)                                    - ii -
010525-11 896005 V1

C.  The Proposed Manner and Form of Notice Satisfies Rule 23 .................................. 23

D.  The Proposed Schedule for Dissemination of Notice and Final Approval ......................................................................................................... 24

V.  CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abdullah v. U.S. Sec. Assocs.*,
   731 F.3d 952 (9th Cir. 2013) ........................................................................19

*Agne v. Papa John's Int'l*,
   286 F.R.D. 559 (W.D. Wash. 2012) ...............................................................18

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) .......................................................................................17

*Bickley v. Schneider Nat'l, Inc.*,
   2016 WL 4157355 (N.D. Cal. Apr. 25, 2016) ................................................10

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ........................................................................16

*Brown v. Consumer Law Assocs., LLC*,
   283 F.R.D. 602 (E.D. Wash. 2012) ..........................................................18, 19

*Churchill Vill., L.L.C. v. GE*,
   361 F.3d 566 (9th Cir. 2004) ...................................................................15, 23

*Collins v. Cargill Meat Solutions Corp.*,
   274 F.R.D. 294 (E.D. Cal. 2011) ...................................................................10

*Costelo v. Chertoff*,
   258 F.R.D. 600 (C.D. Cal. 2009) ...................................................................20

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ....................................................................19, 20

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981)...........15

*Evans v. IAC/Interactive Corp.*,
   244 F.R.D. 568 (C.D. Cal. 2007)...................................................................17

*Fraley v. Facebook, Inc.*,
   2012 WL 5838198 (N.D. Cal. Aug. 17, 2012) ...............................................10

*Galvan v. KDI Distrib.*,
   2011 U.S. Dist. LEXIS 127602 (C.D. Cal. Oct. 25, 2011) ...................17, 18, 20

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)....................................................11, 18, 19, 22

*Hartman v. United Bank Card Inc.*,
  2012 WL 4758052 (W.D. Wash. Oct. 4, 2012).................................................................18

*Kirkpatrick v. Ironwood Commc'ns, Inc.*,
  2006 U.S. Dist. LEXIS 57713 (W.D. Wash. Aug. 16, 2006)......................................19

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ...........................................................................................23

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ...........................................................................................16

*Nat'l Rural Telecomms. Coop. v. DIRECTV*,
  221 F.R.D. 523 (C.D. Cal. 2004)......................................................................................15

*In re NFL Players Concussion Injury Litig.*,
  821 F.3d 410 (3d Cir. 2016) ...............................................................................................9

*Nobles v. MBNA Corp.*,
  2009 WL 1854965 (N.D. Cal. June 29, 2009).................................................................10

*In re Northrop Grumman Corp. ERISA Litig.*,
  2011 U.S. Dist. LEXIS 94451 (C.D. Cal. Mar. 29, 2011)............................................17

*Officers for Justice v. Civ. Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ..............................................................................10, 11, 15

*In re Online DVD Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015).............................................................................................23

*Rivera v. Bio Engineered Supplements & Nutrition, Inc.*,
  2008 U.S. Dist. LEXIS 95083 (C.D. Cal. Nov. 13, 2008) ...........................................19

*Rodriguez v. Carlson*,
  166 F.R.D. 465 (E.D. Wash. 1996) ..................................................................................19

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ......................................................................................16, 23

*Roshandel v. Chertoff*,
  554 F. Supp. 2d 1194 (W.D. Wash. 2008), *amended in part*, 2008 WL 2275558
  (W.D. Wash. June 3, 2008) ...............................................................................................19

*Smith v. Univ. of Wash. Law Sch.*,
  2 F. Supp. 2d 1324 (W.D. Wash. 1998) .....................................................................18, 19

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2011) ...........................................................................................21

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) .......................................................................10

*UAW v. GMC*,
    497 F.3d 615 (6th Cir. 2007) ......................................................................................12

*Z.D. v. Grp. Health Coop.*,
    2012 WL 1977962 (W.D. Wash. June 1, 2012) ...........................................................18

*Zepeda v. PayPal, Inc.*,
    2015 WL 6746913 (N.D. Cal. Nov. 5, 2015) ..............................................................10

**Other**

Fed. R. Civ. P. 23(a) ............................................................................................................17

Fed. R. Civ. P. 23(b)(3) ...................................................................................................17, 21

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................................23

Fed. R. Civ. P. 23(e)(1) ........................................................................................................23

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632, 320-21 (2004) .........................10

# I.     INTRODUCTION

Plaintiff J. Bertolet, Inc., seeks preliminary approval of its Volkswagen-Branded Franchise Dealer Class Action Settlement and Release ("Franchise Dealer Settlement"); provisional certification of a class of Volkswagen-branded franchise dealers (the "Franchise Dealer Class"); approval of class notice; and setting a schedule for final approval of the Settlement.  The Settlement class is defined as all Volkswagen-branded franchise dealers in the United States as of September 18, 2016.  The cash component of the Settlement in the amount of up to $1.208 billion (assuming 100% participation of all 652 Franchise Dealer Class members) is a remarkable result which will provide an *average payout to the 652 Franchise Dealer Class members exceeding $1.85 million each*.  And there is no required claims process:  every Franchise Dealer Class member who does not opt-out of the settlement will automatically receive their settlement payment.  Individual Dealer Settlement payments are a multiple of the monthly financial support payments already being paid by Volkswagen to its franchise dealers, which has widespread approval among the Franchise Dealer Class members as being fair.  Moreover, attorneys' fees and expenses will be paid by Volkswagen *in addition to the Settlement benefits*, and thus will not reduce the actual cash payments to Franchise Dealer Class members.

The Franchise Dealer Settlement also provides for the continuation of certain incentive benefits to dealers, and a standstill on capital investment expenditures otherwise required in dealer franchise and transactional agreements.  Specifically:  (1) "VIP" and "CSI" payments will continue at their current level for 12 months following the end of the opt-out period for the Settlement; (2) any capital investment requirements in current agreements with Volkswagen may be deferred for two years at the Franchise Dealer Class member's option; and (3) for any future transfer of a dealership proposed to Volkswagen within 1 year of the end of the opt-out period, Volkswagen will not require a capital investment by the transferee as a condition to approving the transfer.

This recovery to the Franchise Dealer Class is outstanding, particularly given the immediate need for cooperation among Volkswagen and its franchise dealers to effectuate the terms of the $10 billion plus consumer class action settlement that this presently pending approval before this Court.

1   The proposed Franchise Dealer Settlement was reached after extensive negotiations between

2   experienced and informed counsel, including multiple in-person meetings and subsequent

3   discussions.  Without any obvious deficiencies, the settlement agreement readily meets the

4   standards for preliminary approval.  *See* Sections III & IV(A).

5       The proposed Franchise Dealer Class readily meets the requirements of Rule 23(a) for

6   provisional certification.  With 652 class members, the numerosity requirement is met.  There are

7   ample common questions of law and fact flowing directly from Volkswagen's admitted use of a

8   "defeat device" in over 550,000 new vehicles sold through Volkswagen-branded franchise dealers.

9   The Franchise Dealer Class representative, J. Bertolet, Inc., brings claims identical to, and thus

10  typical of all members of the Franchise Dealer Class.  J. Bertolet's interests are directly aligned

11  with those of the Franchise Dealer Class and he has diligently pursued this action on their behalf.

12  Plaintiff's counsel, Hagens Berman and Bass Sox Mercer, are unquestionably qualified to serve as

13  Franchise Dealer Class Counsel.

14      The requirements of Rule 23(b)(3) are also met in this case.  The common issues of law and

15  fact clearly predominate over any individualized issues; and a class action is the superior method of

16  resolving these common claims for Volkswagen's 652 similarly situated franchise dealers.  For

17  these reasons, the Franchise Dealer Class should be provisionally certified.  *See* Section IV(B)(3).

18      The proposed Class Notice will be provided to each of the 652 Franchise Dealer Class

19  members.  Class members are ongoing business concerns, with current or very recent contracts and

20  ongoing business relations with Volkswagen.  As such, overnight express delivery of the Class

21  Notice to Franchise Dealer Class members (with telephonic follow-up, if necessary) will be 100%

22  effective in reaching every member of the Franchise Dealer Class.  The notice is written in plain

23  English, clearly conveys to Franchise Dealer Class members their options and rights, and provides

24  exactly the monetary amount and other benefits each Franchise Dealer Class member will receive

25  from this settlement if they do not opt-out.  All of this constitutes notice in the reasonable manner

26  required under Rule 23(e).  *See* Section IV(C).

27

28  MOTION FOR PRELIMINARY APPROVAL
    OF FRANCHISE DEALER SETTLEMENT
    Case No. 02672-CRB (JSC)                          - 2 -
    010525-11 896005 V1

1      Finally, Plaintiffs' Lead Counsel propose a detailed schedule providing ample opportunity

2   for Franchise Dealer Class members to reach a decision on the Franchise Dealer Settlement, opt-

3   out, or object, if they see fit, and for the Court to reach an informed decision on final approval of

4   the proposed Settlement.  Accordingly, Plaintiff respectfully requests an order:  (1) preliminarily

5   approving the proposed Franchise Dealer Settlement; (2) Provisionally certifying the proposed

6   Franchise Dealer Class; (3) Approving and directing notice to the Franchise Dealer Class; and

7   (4) Scheduling a final fairness hearing.

8                    **II.    BACKGROUND AND PROCEDURAL HISTORY**

9   **A.    Factual Background**

10      By now the Court is well-acquainted with the Volkswagen emissions scandal, the facts

11   underlying the hundreds of complaints that were filed, and the proposed Consumer Settlement and

12   Government Settlements.  On April 6, 2016, an auto group owned by Edward Napleton, with three

13   Volkswagen-branded franchise dealerships in Florida and Illinois ("Napleton Dealerships"), filed a

14   proposed class action against Volkswagen on behalf of a proposed class of all Volkswagen

15   franchise dealers in the Northern District of Illinois, for, *inter alia*, the marked decrease in the

16   value of his own, and all Volkswagen-branded franchise dealerships in the Unites States since

17   disclosure of the emissions scandal.  On April 20, 2016, this lawsuit (the "Napleton Action") was

18   transferred to the MDL for pre-trial proceedings.

19      As alleged in the Dealer Action, Volkswagen artificially propped up the investment value

20   and return on Volkswagen-branded franchise dealers such that, when the emissions scandal was

21   revealed on September 18, 2015, and in the weeks and months thereafter, Volkswagen-branded

22   franchise dealerships plummeted in value and return on investment, causing extraordinary and

23   ever-increasing investment damages to the owners of Volkswagen-branded franchise dealerships in

24   the United States.

25   **B.    Procedural History**

26      On April 6, 2016, Napleton Orlando Imports, LLC dba Napleton's Volkswagen of Orlando,

27   Napleton's Sanford Imports, LLC dba Napleton's Volkswagen of Sanford, and Napleton

28
MOTION FOR PRELIMINARY APPROVAL
OF FRANCHISE DEALER SETTLEMENT
Case No. 02672-CRB (JSC)                                    - 3 -
010525-11 896005 V1

1   Automotive of Urbana, LLC dba Napleton Volkswagen of Urbana (collectively, the "Napleton VW

2   Dealerships") filed the Napleton Action.  On April 20, 2016, the Napleton Action was transferred

3   to the MDL for pre-trial proceedings.  Declaration of Steve W. Berman ("Berman Decl."), ¶ 2,

4   filed concurrently herewith.

5          Prosecution of a remedy for Volkswagen-branded franchise dealers followed two distinct,

6   but ultimately merged, tracks.  First, from soon after the emissions scandal became public,

7   Volkswagen-branded dealers nominated a "Dealer Investment Committee" ("DIC") to engage

8   Volkswagen in discussions concerning an appropriate remedy for U.S. franchise dealers to

9   compensate them for the substantial losses they were experiencing—and which were increasing—

10  they believed as a result of the emissions scandal.  The DIC engaged Bass Sox Mercer ("BSM"),

11  one of proposed Dealer Class Counsel, to represent it in negotiations with Volkswagen.  Berman

12  Decl., ¶ 3.

13         Second, Hagens Berman ("HB"), counsel for Napleton Dealerships and the other proposed

14  Dealer Class Counsel, began extensive pre-filing investigation and research early in 2016 and

15  continued it until shortly before filing the Napleton Action.  Thereafter, HB multiplied its efforts in

16  developing a complete picture of the emissions fraud as related to franchise dealer claims and the

17  damages flowing therefrom, including engaging noted economic and damages experts.  And given

18  the extensive cost expected, and then confirmed, for the Consumer Lawsuits, HB took great care to

19  assess Volkswagen's ability to pay damages to dealers, and its need for dealer cooperation in

20  effectuating the then-expected settlement of the Consumer Lawsuits.  Berman Decl., ¶ 4.

21         On July 18, 2016, HB sent Volkswagen a request for dealer-specific document discovery.

22  The requested documents included historical dealer-by-dealer vehicle deliveries, composite

23  financial statements, Units in Operation figures, buy/sale agreements, and several categories of

24  internal communication and reports relating to the projected impact on dealers from the emissions

25  scandal.  Berman Decl., ¶ 5.  On July 20, 2016, HB sent Volkswagen its second request for

26  documents, including documents relating to:  dealer inventory of TDI vehicles, Letters of Intent for

27  potential new dealerships and projections for such new dealerships, marketing planning and

28

MOTION FOR PRELIMINARY APPROVAL
OF FRANCHISE DEALER SETTLEMENT
Case No. 02672-CRB (JSC)                                    - 4 -
010525-11 896005 V1

1  budgeting, dealer and consumer-facing incentive programs, and certain communications between

2  Volkswagen and its dealers.  Berman Decl., ¶ 6.

3       Beginning on July 22, 2016, and continuing thereafter, Volkswagen electronically produced

4  thousands of pages of documents, including detailed spreadsheets and financial records.  Attorneys

5  at HB reviewed the entire production, and certain portions were shared with HB's retained

6  damages and economic experts.  In addition, attorneys at Hagens Berman searched the 12 million-

7  plus pages of electronic discovery produced in the consumer action to retrieve hundreds of

8  documents that were particularly relevant to the Dealer Action, Volkswagen's knowledge of harm

9  to dealers, and assessment of damages suffered by dealers.  Berman Decl., ¶ 7.

10       In July 2016, after each of BSM and HB had devoted significant, non-overlapping resources,

11  time and effort to prosecution of franchise dealer claims related to the emissions scandal, the two

12  firms agreed to work together to efficiently forge the best possible result for all 652 Volkswagen-

13  branded franchise dealers in the proposed Franchise Dealer Class.  The two firms together had

14  multiple meetings with Volkswagen and its attorneys from Sullivan & Cromwell ("S&C") in New

15  York, and via telephone and electronic communications.  Berman Decl., ¶ 8.  After months of

16  rigorous investigation, research, document review, consultation with experts, communication and

17  negotiation, a settlement term sheet was agreed in late August 2016 and shared with the Court's

18  Settlement Master, Robert S. Mueller, and then presented to the Court, which occurred on August

19  26, 2016.  *See* Dkt. No. 1774.  Berman Decl., ¶ 11.

20       The Court ordered submission of a final settlement agreement and this motion and

21  supporting documents on September 30, 2016, setting in motion a further intense flurry of work by

22  HB, BSM, Volkswagen and its counsel at S&C.  Berman Decl., ¶ 12.

23       On September 30, 2016, HB and BSM filed the Volkswagen-Branded Franchise Dealer

24  Amended and Consolidated Class Action Complaint ("Complaint"), adding J. Bertolet, Inc., dba J.

25  Bertolet Volkswagen as plaintiff and proposed Class Representative. The Complaint spanned 130

26  pages and set forth in detail the allegations relating to the Franchise Dealer Class claims against

27

28

MOTION FOR PRELIMINARY APPROVAL
OF FRANCHISE DEALER SETTLEMENT
Case No. 02672-CRB (JSC)                                   - 5 -
010525-11 896005 V1

1    Volkswagen and against Bosch.  The Complaint reflects the extensive labors undertaken by HB

2    and BSM in prosecution of this action.  Berman Decl., ¶ 13.

3          On September 30, 2016, the Settlement Agreement that Plaintiff now proposes for approval

4    was completed, agreed and executed.  Berman Decl., ¶ 14.

5                    **III.    SUMMARY OF KEY SETTLEMENT TERMS**

6    **A.     The Settlement Class**

7          The proposed settlement class (the "Franchise Dealer Class") is the same class defined in

8    the Complaint:

9                   All persons or entities who owned a Volkswagen-branded franchise
                   dealership that operated in the United States as of September 18,
10                  2015.

11   Excluded from the Franchise Dealer Class are all persons who make a timely election to be

12   excluded from the Franchise Dealer Class.

13   **B.     Benefits to Franchise Dealer Class Members Who Do Not Opt-Out of the Settlement**

14          **1.     New Cash Payments Representing Lost Value of Dealership Investment.**

15          Volkswagen will pay a maximum amount of $1,208,000,000.00 (assuming 100%

16   participation) to Franchise Dealer Class members who do not opt-out of the Settlement

17   ("Settlement Class Members").  The funds will be allocated to Settlement Class Members *pro rata*,

18   based upon the ratio of each dealer's current dealer support payments from Volkswagen to the total

19   of all dealer support payments being paid by Volkswagen.  No claim form is necessary, every

20   Settlement Class Member who does not opt out will automatically receive their allocated share of

21   the cash payment.  On average, Settlement Class Members will receive approximately

22   $1,850,000.00

23          Fifty percent of each Settlement Class Members' cash benefit (the "Initial Payment") will

24   be paid within 30 days of the Settlement Opt-Out Date, provided such Settlement Class Member

25   has executed an Individual Release (that mimics the Settlement Release described below).

26   Settlement Class Members who do not execute the Individual Release will receive their Initial

27   Payment with 30 days of the Effective Date of the Settlement.  The remaining 50% of the cash

28
     MOTION FOR PRELIMINARY APPROVAL
     OF FRANCHISE DEALER SETTLEMENT
     Case No. 02672-CRB (JSC)                          - 6 -
     010525-11 896005 V1

payment will be paid in 18 equal monthly installments beginning 30 days after each Settlement Class Members' Initial Payment.  Cash payments under the Settlement are assignable by Settlement Class Members through approved buy/sale agreements of dealerships.

**2.      Continuation of Incentives and Other Support Payments.**

Volkswagen agrees to continue its "VIP" and "CSI" incentive payments to Settlement Class Members for at least 12 months following the Opt-Out Date.  In addition, Volkswagen will continue to pay its monthly dealer support payments until after the Opt-Out Date.

**3.      Standstill of Capital Investment Obligations.**

To the extent any Settlement Class Member is obligated under an existing agreement with Volkswagen to make capital investments (i.e., remodel, new construction, etc.) in its dealership, the Settlement Class Member may defer, at its option, such obligations for two years after the Opt-Out Date.  Likewise, Volkswagen agrees not to require capital investment in connection with the sale of a dealership for any sale that is formally proposed to Volkswagen within one year of the Opt-Out Date.

**4.      Treatment of Dealer Inventory of Volkswagen Diesel Vehicles.**

For used diesel vehicles for which Volkswagen is unable to provide an approved emissions modification ("AEM"), Volkswagen will repurchase such vehicles from the Dealer Settlement Class Member at the same gross amount that an Eligible Owner would receive (a) under the Consumer Settlement Agreement for 2.0-liter used No AEM Vehicles, and (b) under a future potential consumer settlement, if any, for 3.0-liter used No AEM Vehicles.  For new diesel vehicles with no AEM, Volkswagen will repurchase such vehicles from Dealer Settlement Class Members for the net wholesale cost that was paid by the Settlement Class Member for such vehicles.  For all vehicles repurchased from Dealer Settlement Class Members, Volkswagen will pay the reasonable carrying and storage costs of such vehicles from the date such vehicle is determined to have no AEM until Volkswagen retrieves them, and if it fails to retrieve them within one year of repurchase, Dealer Settlement Class Members may ship such cars to Volkswagen at its sole expense.

For new, unused Model Year 2015 2.0L diesel vehicles for which Volkswagen is able to provide an AEM, Volkswagen will offer a TDI Lease Program and a TDI Service Loan Program. The TDI Lease Program will provide consumers leasing such AEM Vehicles attractive lease terms with substantial subvention.  The lease program will be administered by VCI, and VCI will maintain ownership of the New MY15 AEM Vehicles placed into the lease program.

The TDI Service Loan Program will be a 12-month service loan car program for the New MY15 AEM Vehicles currently in the inventory of Dealer Settlement Class Members whereby Dealer Settlement Class Members will be charged a monthly rental fee below the current standard price of 2% of MSRP per month, and have the option, but not the requirement, to buy such New MY15 AEM Vehicles at the end of the 12-month program if all of the steps of the AEM have been completed for the vehicle(s).

**C.      Release of Claims**

If the settlement becomes final, Class Representative Plaintiff and Settlement Class Members will release all claims in the Complaint against Volkswagen AG, Volkswagen Group of America, Inc., Volkswagen Credit, Inc., and Volkswagen Group of America Chattanooga Operations, LLC.  Claims relating to Robert Bosch GmbH and Robert Bosch, LLC (collectively, "Bosch") are not subject to any release in the Agreement.  Except for the right to assert as a defense to any termination of dealership by Volkswagen, Settlement Class Members will essentially wipe the slate clean as to any disputes they have with Volkswagen as of the Effective Date of the Settlement.

**D.      Notice of the Settlement**

Because each Franchise Dealer Class member has a present (or very recent) Dealer Agreement with Volkswagen, the identity and contact information for each Franchise Dealer Class member is known to Volkswagen.  Volkswagen will send Class Notice via overnight express mail to each Franchise Dealer Class member address of operations and notice address under the applicable Dealer Agreement (if different).  Volkswagen will follow up each mailing with a telephone call to confirm that every member of the Franchise Dealer Class has received Class

MOTION FOR PRELIMINARY APPROVAL
OF FRANCHISE DEALER SETTLEMENT
Case No. 02672-CRB (JSC)
010525-11 896005 V1

- 8 -

1   Notice.  HB and BSM will be available to consult with Franchise Dealer Class members

2   concerning the terms of the Settlement and their opt-out rights, should any Franchise Dealer Class

3   members so desire.

4   **E.      Claims-Paid Settlement**

5       The Settlement is "claims-paid", meaning that Settlement Class Members need not

6   complete any form or claims procedure in order to obtain their benefits under the Settlement.  By

7   returning an Individual Release, as described above, Settlement Class Members will be able to

8   obtain the cash portion of the Settlement sooner, but the cash payments and all other benefits will

9   accrue to Settlement Class Members no later than the Effective Date of the Settlement, whether or

10  not the Individual Release is ever executed.

11  **F.      Costs of Settlement Administration**

12      The Settlement specifies that all costs associated with administration of the Settlement will

13  be paid by Volkswagen.  Under the circumstances of this case, the parties agree that a third-party

14  settlement, claims or notice administrator is not necessary.

15  **G.      Attorneys' Fees**

16      The Settlement provides that attorneys' fees to Dealer Class Counsel shall be paid by

17  Volkswagen *in addition to the benefits provided to Settlement Class Members.*  As a result,

18  Settlement Class Members' benefits under the Settlement will not be reduced to pay attorneys' fees

19  or reimburse litigation expenses with respect to this settlement.  Volkswagen and Plaintiffs'

20  attorneys have only recently initiated discussions concerning fees and expenses and have not

21  agreed on the amount of attorneys' fees to be paid in this case, deferring such discussions until

22  after substantive terms of the Settlement were settled.[2]  Attorneys' fees and expenses to be awarded

23  in this case will be subject to Court approval after opportunity for Settlement Class Members to

24  object, pursuant to Fed. R. Civ. P. 23(h).

25

26

27         [2] *See In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 444-45 (3d Cir. 2016), as
    amended May 2, 2016.

28  MOTION FOR PRELIMINARY APPROVAL
    OF FRANCHISE DEALER SETTLEMENT
    Case No. 02672-CRB (JSC)                                    - 9 -
    010525-11 896005 V1

## IV.     ARGUMENT

### A.     The Court Should Preliminarily Approve the Settlement

Federal Rule of Civil Procedure 23(e) requires judicial approval of any settlement of class action claims.  Approval of a settlement is a multi-step process, beginning with preliminary approval, followed by notice to the class and the filing of any objections, and concluding with a motion for final approval and fairness hearing.[3]  Preliminary approval is thus not a dispositive assessment of the fairness of the proposed settlement, but rather determines whether it falls within the "range of possible approval."[4]  Preliminary approval establishes an "initial presumption" of fairness, such that notice may be given to the class and the class may have a full and fair opportunity to consider the proposed settlement.[5]

Preliminary approval of a settlement and notice to the proposed class is appropriate if the proposed settlement:  (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls with the range of possible approval.[6]  The "initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge."[7]

As is the case here, when proposed class counsel are experienced, and support the settlement, which was reached through arms-length negotiations, a presumption of fairness applies.[8]  The final test of fairness, in the Ninth Circuit, turns on analysis of the following factors: the strength of plaintiffs' case; the risk, expense, complexity and likely duration of continued

---

[3] *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632, 320-21 (2004).  All internal citations and quotations omitted and all emphasis added, unless otherwise indicated.

[4] *Id.*; *see also Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 301-02 (E.D. Cal. 2011).

[5] *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

[6] *See Bickley v. Schneider Nat'l, Inc.*, 2016 WL 4157355, at *1 (N.D. Cal. Apr. 25, 2016); *Zepeda v. PayPal, Inc.*, 2015 WL 6746913, at *4 (N.D. Cal. Nov. 5, 2015); *Fraley v. Facebook, Inc.*, 2012 WL 5838198, at *1 n.1 (N.D. Cal. Aug. 17, 2012); *Tableware*, 484 F. Supp. 2d at 1079.

[7] *Officers for Justice v. Civ. Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("*OFJ*").

[8] *See Nobles v. MBNA Corp.*, 2009 WL 1854965, at *6 (N.D. Cal. June 29, 2009).

litigation; the risk of certification and maintaining class action status through trial; the discovery completed; the size of the settlement; the stage of the case at which settlement is proposed, the experience and views of counsel; government involvement in the case; and the reaction of class members to the proposed settlement.[9]  The particulars of the case and proposed settlement determine the weight to be provided each factor.[10]

In addition to substance of the settlement itself, the Court must also ensure the settlement is procedurally fair; that it is "not the product of fraud or overreaching by, or collusion between, the negotiating parties."[11]  Because this settlement is substantively fair when weighing the factors above, and was reached through procedurally fair, arms-length negotiations, it should be preliminarily approved.

1. **The Settlement Is Substantively Fair, Reasonable and Adequate Resolution of the Franchise Dealer Litigation.**

a. **Plaintiff's case is strong, thus the substantial recovery is warranted.**

Volkswagen purposefully used the Defeat Device to obtain EPA and CARB approval for its 2009-15 diesel passenger vehicles.  As evidenced by the Consumer Settlements and the swift resolution of the related DOJ and FTC civil actions, there is a compelling case for liability.  This liability extends to alleged investment losses suffered by owners of Volkswagen's U.S. franchise dealers because the losses directly flow from the alleged conduct.  Dealers had and still have thousands of new and used TDI cars on their lots that became immediately unsalable when Volkswagen issued its broad stop sale orders.  When consumers learned of the emissions scandal, the entire market for Volkswagen's diesel cars immediately disappeared and the tarnished brand name also caused precipitous decreases in sales of all Volkswagen cars.  This factor weighs in favor of approval of the settlement because there is clear and meaningful relationship between the strength of the case and the benefits provided in the settlement.

---

[9] *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

[10] *See OFJ*, 688 F.2d at 625.

[11] *See id.*

MOTION FOR PRELIMINARY APPROVAL
OF FRANCHISE DEALER SETTLEMENT
Case No. 02672-CRB (JSC)                                    - 11 -
010525-11 896005 V1

**b.     There would be substantial risk, expense and complexity in continuing the litigation, which could last for years and would imperil the Consumer Settlements.**

Notwithstanding the substantial evidence that Plaintiff can bring to bear in this case, there are always risk factors in litigation.  Here, Volkswagen has already agreed to pay up to $15 billion of settlements stemming from the diesel emissions scandal, and this is just in the United States.  Volkswagen is still facing criminal probes in the U.S., and it is facing dozens of lawsuits in international fora.  As such, a long complex litigation could result in a Pyrrhic victory if Volkswagen's resources are depleted in the process.[12]  Moreover, Volkswagen's branded dealers are the lynchpin in its Consumer Settlements.  An ongoing dealer litigation would make cooperation on the Consumer Settlements difficult, if not impossible, further imperiling Volkswagen's ability to navigate the maelstrom.  This factor supports approval of the settlement because it is important not just to Class Members, but also to Volkswagen to promptly resolve this litigation.

**c.     The Franchise Dealer Class carries material certification risk.**

While liability evidence is strong in this case, certification draws a different test and may be challenging to achieve and maintain in this case.  Principal concerns are the sophistication of class members and the size of potential recoveries.  Each Franchise Dealer Class Member is itself a substantial business operation that has either in-house counsel, or ready access to legal counsel that could pursue its individual case.  In addition, dealers' losses are at a level that could support individual litigation—as evidenced by the fact that this settlement will provide, on average, $1.85 million to each Franchise Dealer Class Member.  As an ongoing litigation progressed, the many, varied business pressures on dealer operations could put pressure on the cohesiveness of the ongoing class.  This factor supports approval of the settlement because manageability of a settlement class is not a requirement of provisional certification and at present Franchise Dealer Class Members interests and concerns are substantially aligned and cohesive.

---

[12] *See, e.g., UAW v. GMC*, 497 F.3d 615, 632 (6th Cir. 2007) (rejecting settlement objections premised on Plaintiff prevailing at trial because "any such victory would run the risk of being a Pyrrhic one….").

    **d.**      **Beyond the substantial discovery discussed in the Consumer Settlement, proposed Dealer Class Counsel obtained and reviewed discovery specifically geared to the unique aspects of franchise dealers' claims against Volkswagen.**

Discovery reviewed in the consumer actions against Volkswagen revealed substantial and material evidence of liability and the participants in the alleged diesel fraud. But this alone was not sufficient to properly evaluate liability, causation and potential damages in franchise dealers' case against Volkswagen. As a result, proposed Dealer Class Counsel requested and obtained from Volkswagen extensive discovery relating to franchise dealers' case. All of this discovery was reviewed, and much of it was reviewed by and included within the analysis of noted economic experts who had been retained by the proposed Dealer Class Counsel. In addition, much investigation and research was directed toward the Franchise Dealer Class Members to assess the effects of the diesel emissions scandal on their operations, expectations and investment value. This factor supports approval because ample discovery was completed to properly assess the case, evaluate damages, and inform settlement discussions.

    **e.**      **The settlement is by all measures substantial and adequately reflects the magnitude of harm to the Franchise Dealer Class.**

The Settlement in this case is $1,208,000,000.00 if there is 100% participation by the Franchise Dealer Class members. By any measure, it is one of the largest settlements in history. And in terms of raw size for automotive settlements it ranks behind only the Volkswagen Consumer Settlement, and the Toyota Sudden Unintended Acceleration settlement, which was approximately $1.5 billion. And unlike those cases that had hundreds of thousands of class members that would share in the settlement, this settlement class has only 652 members, thus the average recovery by each Franchise Dealer Class Member will be about $1.85 million, a sum that likely exceeds the amount of most class action settlements. The size of the settlement clearly supports approval of the settlement because it is extraordinary by any measure and reflects the strength of Franchise Dealer Class Members' case against Volkswagen and Volkswagen's need to have the cooperation of Franchise Dealer Class Members to effectuate the Consumer Settlement and ensure its very ongoing survival.

**f.     In light of the unique facts and circumstances of this case, that it is being settled at an early stage of the case is not a concern.**

This case is still in an early stage.  While adequate discovery to assess the adequacy of the settlement has been obtained and reviewed, there has been no motions practice yet in the case. However, the circumstances of the diesel emissions scandal, and Volkswagen's need to effectuate a prompt resolution for consumers, regulators, and dealers suggests that an early resolution of the dealer case is not only desirable, but indeed required.  The ongoing viability and cooperation of Volkswagen's franchise dealer network is essential to the Consumer Settlement.  For this reason, the early stage of settlement does not militate against preliminary or final approval.

**g.     Plaintiffs' counsel and Volkswagen counsel are highly experienced class action and automotive dealer litigators and they fully support the Settlement.**

Hagens Berman is one of the most experienced plaintiffs class firms in the country, especially in the context of massive automotive class cases.  Hagens Berman has had and currently has a leadership role in the largest automotive class cases in history, including *In re: Toyota SUA*, which settled for over $1.3 billion, and *In re Hyundai/Kia MPG*, which settled for nearly $400 million; the massive GM ignition switch case, which is currently in active litigation, and the Volkswagen consumer case, for which Hagens Berman Managing Partner, Steve W. Berman, is a member of the Plaintiffs' Steering Committee.  Bass Sox Mercer is a nationwide leader in the representation of automotive dealers in lawsuits and other actions against automobile manufacturers.  Its depth of knowledge and experience in the particular type of dispute at issue in this case brings necessary perspective to dealers' damages in this case and concerns about ongoing litigation.  Hagens Berman and Bass Sox Mercer strongly support this settlement.  It provides Franchise Dealer Class Members with genuine and substantial financial support to compensate them for the loss in the value of their dealerships.  It also, through the non-monetary aspects of the Settlement, provides a cooperative path forward where Volkswagen and its dealers can work cooperatively toward remediation of the diesel emissions scandal and recovery of the brand.

1    Counsel's judgment that the Settlement is fair and reasonable is entitled to great weight.[13]

2    "[A]bsent fraud, collusion, or the like, [the Court] should be hesitant to substitute its own judgment

3    for that of counsel."[14]

4           Likewise, Volkswagen's counsel, Sullivan & Cromwell, strongly support the Settlement.

5    As Volkswagen's counsel throughout the diesel emissions scandal, S&C is intimately familiar with

6    the needs and resources of Volkswagen, and its goals and intentions going forward.  The strong

7    support of the very experienced counsel involved in the negotiation of the Settlement support its

8    preliminary approval.

9           **h.     The extensive involvement of government in response to the Volkswagen
                     emissions scandal supports approval of this Settlement.**

10          Government regulators and the Department of Justice did not have a direct role in the

11   negotiation of this Settlement, yet their critical presence in the Consumer Settlement and ongoing

12   criminal investigation support approval of this Settlement.  The EPA, CARB, and the Department

13   of Justice were a guiding force in the Consumer Settlement, which will swiftly reduce ongoing

14   environmental damage by removing the polluting cars from the road and requiring substantial (over

15   $2.5 billion worth) environmental mitigation by Volkswagen.  But the success of the Consumer

16   Settlement depends on, and requires the extensive cooperation of the Franchise Dealer Class.  This

17   Settlement assures that cooperation.

18          **i.     Plaintiffs' counsel are confident the Settlement will be broadly
                     supported by the Franchise Dealer Class.**

19

20          Plaintiffs' counsel, Bass Sox Mercer, was hired by the Dealer Investment Committee

21   ("DIC") to seek a negotiated resolution with Volkswagen for all Volkswagen-branded franchise

22   dealers.  The DIC, in turn, consists of five current Franchise Dealer Class Members who were

23   nominated to the DIC by their peers.  The DIC fully support this Settlement, and based on their

24

25          [13] *See Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 576-77 (9th Cir. 2004); *OFJ*, 688 F.2d at 625
     (same); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939

26   (9th Cir. 1981) ("the fact that experienced counsel involved in the case approved the settlement
     after hard-fought negotiations is entitled to considerable weight").

27          [14] *Nat'l Rural Telecomms. Coop. v. DIRECTV*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (citation
     omitted).

28   MOTION FOR PRELIMINARY APPROVAL
     OF FRANCHISE DEALER SETTLEMENT
     Case No. 02672-CRB (JSC)                                     - 15 -
     010525-11 896005 V1

interactions with other Franchise Dealer Class Members, they are confident that the Settlement will receive overwhelming support from Franchise Dealer Class Members throughout the United States.

Thus, each of the factors to be evaluated for final approval suggest that this Settlement is substantively fair and should receive preliminary approval.

### 2.    The Settlement Is the Result of Arm's-Length Negotiations.

This settlement arises out of extended, informed, arm's-length negotiations between counsel for the parties.  The parties reached agreement after months of intensive investigation, dealer-specific document discovery, expert retention and consultation.  As a result, Plaintiffs' Counsel had ample information to participate in an informed, and thus reasonable negotiation process.[15]  And with that knowledge to bring to bear, Plaintiffs' counsel held multiple settlement meetings and communications with Volkswagen's counsel, who were similarly very sophisticated and well-informed.  While a neutral mediator was not present at the settlement discussions, Director Mueller, the Court's Settlement Master appointed in the MDL was provided the initial term sheet and final Settlement, and has indicated his belief that the Settlement should be submitted to the Court for approval.[16]

In short, these non-collusive and fully informed negotiations between sophisticated sets of counsel support preliminary approval of the settlement agreement.  As the Ninth Circuit has stated, "We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."[17]

Plaintiffs respectfully request that the Court preliminarily approve the settlement agreement.

---

[15] *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (holding "significant investigation, discovery and research" supported the district court's conclusion "that the Plaintiffs had sufficient information to make an informed decision about the Settlement").

[16] *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (finding the presence of a neutral mediator "a factor weighing in favor of a finding of non-collusiveness").

[17] *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

**B.      The Court Should Certify the Franchise Dealer Class**

Class certification—whether through motions practice or uncontested in conjunction with a proposed settlement—requires:  (1) that "the class is so numerous that joinder of all parties is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."[18]  Where a proposed class seeks monetary damages, and not just injunctive relief, "questions of law and fact common to class members [must] predominate over any questions affecting only individual members," and the class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy."[19]  But unlike in a contested class certification process, which is a precursor to trial, a proposed settlement class does not require a showing that a trial on class claims would present no manageability issues—precisely because there will be no trial that needs to be managed.[20]

**1.      The Proposed Class is Ascertainable.**

Although not specified in Rule 23, courts imply a prerequisite that the proposed class be ascertainable.[21]  "A class definition should be precise, objective, and presently ascertainable."[22]  Ascertainability is satisfied when it is "administratively feasible for the court to determine whether a particular individual is a member."[23]

The Settlement Class definition here utilizes objective criteria that make class membership objectively verifiable.  The identity of Class members is easily ascertainable through reference to

---

[18] Fed. R. Civ. P. 23(a).

[19] Fed. R. Civ. P. 23(b)(3).

[20] *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

[21] *Galvan v. KDI Distrib.*, 2011 U.S. Dist. LEXIS 127602, at *8 (C.D. Cal. Oct. 25, 2011); *In re Northrop Grumman Corp. ERISA Litig.*, 2011 U.S. Dist. LEXIS 94451, at *26 n.61 (C.D. Cal. Mar. 29, 2011).

[22] *Evans v. IAC/Interactive Corp.*, 244 F.R.D. 568, 574 (C.D. Cal. 2007) (internal quotations omitted).

[23] *In re Northrop Grumman*, 2011 U.S. Dist. LEXIS 94451, at *26 n.61 (internal quotation omitted).

"objective criteria,"[24] because Volkswagen knows precisely who its franchise dealers are and have been.  The exact identity and whereabouts of each of the 652 members of the Franchise Dealer Class is known.

### 2.  Each of the Rule 23(a) Requirements Are Met

#### a.  The Class is so numerous that joiner is impracticable.

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is "impracticable."[25]  Numerosity "depends on the facts and circumstances of each case and does not, as a matter of law, require any specific minimum number of class members."[26]  Courts generally find numerosity when a class includes at least 40 members.[27]  Class size does not have to be "exactly determined" at the certification stage; "a class action may proceed upon estimates as to the size of the proposed class."[28]

Here, the numerosity requirement is easily met because there are 652 Franchise Dealer Class Members.  This number of Class members clearly makes joinder impracticable.[29]

#### b.  Numerous common issues exist.

Plaintiffs must demonstrate that there are questions of fact and law that are common to the class in order to satisfy Rule 23(a)(2).  "[A] common question 'must be of such a nature that it is capable of classwide resolution – which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke.'"[30]  The

---

[24] *See Agne v. Papa John's Int'l*, 286 F.R.D. 559, 566 (W.D. Wash. 2012).

[25] *Hanlon*, 150 F.3d at 1019.

[26] *Smith v. Univ. of Wash. Law Sch.*, 2 F. Supp. 2d 1324, 1340 (W.D. Wash. 1998).

[27] *See Z.D. v. Grp. Health Coop.*, 2012 WL 1977962, at *3 (W.D. Wash. June 1, 2012).

[28] *Hartman v. United Bank Card Inc.*, 2012 WL 4758052, at *10 (W.D. Wash. Oct. 4, 2012).

[29] *See Brown v. Consumer Law Assocs., LLC*, 283 F.R.D. 602, 612 (E.D. Wash. 2012) (class of 894 debt settlement customers satisfied numerosity requirement).

[30] *Galvan*, 2011 U.S. Dist. LEXIS 127602, at *17 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)).

"existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."[31]

Commonality is liberally and permissively construed.[32]  It requires only "a single *significant* question of law or fact."[33]  A defendant's actions need not affect each Class member in the same manner and individual differences in damages will not defeat class treatment.[34]

This litigation centers around one single and common core question:  whether Volkswagen defrauded consumers, government regulators and its own franchise dealers by installing and utilizing illegal defeat device software to fraudulently obtain the EPA required Certificates of Compliance.  The relatively low commonality hurdle is satisfied here.  The claims of all Franchise Dealer Class Members involve this same overriding question.  This issue is central to this case and is sufficient to establish commonality.

      **c.**      **The Class Representative's claims are typical of those of other Class members.**

Rule 23(a)(3) requires that the class representative's claims are typical of the class.  "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"[35]  "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief

---

[31] *Rivera v. Bio Engineered Supplements & Nutrition, Inc.*, 2008 U.S. Dist. LEXIS 95083, at *15 (C.D. Cal. Nov. 13, 2008) (quoting *Hanlon*, 150 F.3d at 1019).

[32] *Hanlon*, 150 F.3d at 1019; *see also Kirkpatrick v. Ironwood Commc'ns, Inc.*, 2006 U.S. Dist. LEXIS 57713, at *11-14 (W.D. Wash. Aug. 16, 2006); *Rodriguez v. Carlson*, 166 F.R.D. 465, 472 (E.D. Wash. 1996).

[33] *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 957 (9th Cir. 2013) (emphasis in original); *accord Roshandel v. Chertoff*, 554 F. Supp. 2d 1194, 1203 (W.D. Wash. 2008), *amended in part*, 2008 WL 2275558 (W.D. Wash. June 3, 2008).

[34] *Smith v. Univ. of Wash. Law Sch.*, 2 F. Supp. 2d at 1342; *Brown*, 283 F.R.D. at 612 (citing *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1026 (9th Cir. 2011)).

[35] *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

MOTION FOR PRELIMINARY APPROVAL
OF FRANCHISE DEALER SETTLEMENT
Case No. 02672-CRB (JSC)
010525-11 896005 V1

- 19 -

sought."[36]  "Under the 'permissive standards' of this Rule, 'representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.'"[37]  The "focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff."[38]

The proposed Class Representative here is J. Bertolet Volkswagen.  Bertolet's claims arise from a common course of conduct of Volkswagen and a common legal theory.  His interests are typical of and closely aligned with those of the absent Class members.  J. Bertolet Volkswagen is a Volkswagen-branded franchise dealer who, like every Franchise Dealer Class member, sells Volkswagen cars to consumers.  He, and every Franchise Dealer Class member, was injured by Volkswagen's diesel emissions scandal, and particularly the stop sale order on all Volkswagen diesel cars, and the precipitous decline in the value of the Volkswagen brand.  Thus, because J. Bertolet's claims rely on facts and legal theories identical to those of the Class, the typicality requirement is satisfied.

### d.    The Class Representative and its counsel adequately represent the interests of the Class.

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class.  The relevant inquiries are:  "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"[39]

Here, the proposed Class representative is committed to the action and has devoted substantial time to assisting counsel with this action, providing documents and reviewing pleadings.  Berman Decl., ¶ 15.  The proposed Class representative has no interests that are

---

[36] *Id.*

[37] *Galvan*, 2011 U.S. Dist. LEXIS 127602, at *18 (quoting *Hanlon*, 150 F.3d at 1020).

[38] *Costelo v. Chertoff*, 258 F.R.D. 600, 608 (C.D. Cal. 2009) (quoting *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005)).

[39] *Ellis*, 657 F.3d at 985 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)); *see also Galvan*, 2011 U.S. Dist. LEXIS 127602, at *20.

antagonistic to other Class members, and in fact shares a strong and identical interest in protecting Class members and the Volkswagen community as a whole.  Berman Decl., ¶ 16.

Similarly, class counsel are well qualified, possess no conflicts of interest, and have already proven capable of prosecuting this action vigorously on behalf of the Class.  Plaintiffs' counsel has litigated this action along both its prongs since its inception.  Hagens Berman thoroughly investigated then filed the first franchise dealer action stemming from the diesel emissions scandal, and Bass Sox Mercer was retained by the Dealer Investment Counsel, a group of Volkswagen dealers that were nominated by Franchise Dealer Class members to represent their interests in discussions with Volkswagen.  While Hagens Berman has extensive experience in handling complex commercial litigation, including class actions;[40] Bass Sox Mercer has represented auto dealerships in disputes with manufacturers for years and are widely regarded as one of the country's preeminent dealer-side law firms.[41]  By melding the firms' expertise in this action, there can be no question that they are adequate.

### 3.      The Requirements of Rule 23(b)(3) Are Met.

A class may be certified under Rule 23(b)(3) when "questions of law or fact common to the class members predominate over any questions affecting only individual members" and the class action mechanism is "superior" to other methods of adjudicating the controversy.[42]

### a.      Common issues of law and fact predominate.

"The predominance inquiry … asks whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[43]  "The focus is on the relationship between the common and individual issues."[44]  Here the common issues of law and fact clearly predominate over issues

---

[40] *See* Berman Decl., Ex. A (HB Firm Resume).

[41] *See* Berman Decl., Ex. B (BSM Frim Resume).

[42] Fed. R. Civ. P. 23(b)(3).

[43] *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011).

[44] *Id.*

1    affecting only individual plaintiffs.  The common issues are Volkswagen's development and use of

2    the Defeat Device, resulting stop sale orders and brand damage.  The individual issues are each

3    franchise dealer's interactions with Volkswagen.  But the latter will have little effect, if any, on

4    damages or any other aspect of the case because the allegations against Volkswagen simply do not

5    turn on the identity or any individual characteristics of the franchise dealer.  Every Volkswagen-

6    branded franchise dealer was subject to the stop sale orders, everyone had to hold the frozen

7    inventory of diesels, and everyone suffered huge losses in brand value when the diesel emissions

8    scandal was exposed.  It is difficult to imagine a single individual dealer issue that would affect, let

9    alone predominate, the overriding common issue of development and use of the Defeat Device.

10         **b.      The class action mechanism is superior to any other methods of
                    adjudication.**

11        The "superiority" element is satisfied because, through class certification, the nature,

12    knowledge of Volkswagen, intent, and effect of the Defeat Device can be determined in one

13    proceeding for Volkswagen-branded franchise dealers.  "When common questions present a

14    significant aspect of the case and they can be resolved for all members of the class in a single

15    adjudication, there is clear justification for handling the dispute on a representative rather than on

16    an individual basis."[45]  Also, in this case, the fact that 652 individual claims "would not only

17    unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs" weighs

18    heavily in favor of a class action.[46]  While the payments each Settlement Class Member will

19    receive in this case are large, each such dealer has an ongoing and vital relationship with

20    Volkswagen.  Litigating an individual case against their sole supplier of inventory is a highly

21    undesirable, and risk-fraught endeavor.  Moreover, Volkswagen needs the cooperation of its dealer

22    network to effectuate the terms of the massive Consumer Settlement and government consent

23    decree.  Such cooperation would be difficult, perhaps impossible, if Volkswagen were engaged in

24    hundreds of dealer lawsuits.

25

26

27    [45] *Hanlon*, 150 F.3d at 1022.

28    [46] *See id.* at 1023.

MOTION FOR PRELIMINARY APPROVAL
OF FRANCHISE DEALER SETTLEMENT                        - 22 -
Case No. 02672-CRB (JSC)
010525-11 896005 V1

A class action is superior here, not only based on judicial economy, but because it truly represents the only option for franchised dealers and Volkswagen alike to resolve the claims and move forward in a cooperative manner that helps sustain the franchise dealers and Volkswagen and its ability to effectuate the Consumer Settlement and ameliorate the environmental damage from its diesel vehicles.

For these reasons, the proposed Franchise Dealer Class meets the requirements of Rule 23(a) and 23(b)(3) and the Court should grant provisional certification for purposes of effecting the proposed Settlement.

## C.     The Proposed Manner and Form of Notice Satisfies Rule 23

Rule 23(e)(1) requires that a court approving a class action settlement "direct notice in a reasonable manner to all class members who would be bound by the proposal."[47]  A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."[48]

The proposed plan for notice will be 100% effective in alerting each Franchise Dealer Class Member to the Settlement and its terms.  It is necessarily then "the best notice that is practicable under the circumstances."[49]

Moreover, the proposed notice of settlement follows, as closely as possible, the language recommended by this District's Procedural Guidance for Class Action Settlements[50] and required by the Ninth Circuit.[51]  There will be links to the Settlement website that will contain the notice of settlement, key court documents, and other important information about the case.  With this

---

[47] Fed. R. Civ. P. 23(e)(1).

[48] *Churchill Vill.*, 361 F.3d at 575; *see also* Fed. R. Civ. P. 23(c)(2)(B) (describing specific information to be included in the notice).

[49] Fed. R. Civ. P. 23(c)(2)(B).

[50] *See* http://www.cand.uscourts.gov/ClassActionSettlementGuidance (last visited August 4, 2016).

[51] *E.g.*, *In re Online DVD Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015); *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012); *Rodriquez*, 563 F.3d at 962.

motion, plaintiffs provide their proposal for the notice of settlement, which Volkswagen has reviewed and also approves.[52]

Courts have found that notice plans estimated to reach a minimum of 70 percent are constitutional and comply with Rule 23.  Here, the notice will reach 100% of the Franchise Dealer Class.  These notice provisions meet the requirements of Rule 23 and will allow the Class a full and fair opportunity to review and respond to the proposed settlement.

**D.     The Proposed Schedule for Dissemination of Notice and Final Approval**

Plaintiffs propose the following schedule for the dissemination of class notice and final approval:

| Event | Deadline |
|---|---|
| Hearing and order re preliminary approval | |
| Notice to be sent by overnight express carrier to each Franchise Dealer Class member and settlement website to be launched | [one week from preliminary approval order] |
| Last day for motion for attorneys' fees, costs, expenses, and service awards | [two weeks before objection deadline] |
| Last day to file objections to the settlement or requests for exclusion from the class ("Opt-Out Date") | [45 days from notice] |
| Last day for motion in support of final approval of settlement | [two weeks after objection deadline] |
| Last day for response to objections, reply in support of motion for final approval, and reply in support of motion for attorneys' fees, costs, expenses, and service awards | [one week prior to the final fairness hearing] |
| Final Fairness Hearing | [three weeks after motion for final approval], unless otherwise ordered by the Court |

---

[52] The Class Notice is attached as Exhibit 1 to the Settlement Agreement.

MOTION FOR PRELIMINARY APPROVAL
OF FRANCHISE DEALER SETTLEMENT
Case No. 02672-CRB (JSC)                     - 24 -
010525-11 896005 V1

## V.    CONCLUSION

With this Settlement, plaintiffs have secured recovery of $1,208,000,000.00 for Franchise Dealer Class members plus valuable non-cash benefits limiting pending capital investment requirements.  The Settlement will assure the ongoing success and vitality of Volkswagen's dealer network and cement their cooperation in the Consumer Settlement and amelioration of the environmental damage caused by Volkswagen's alleged defeat device fraud.  The Settlement was reached only after extensive arms-length negotiations and is supported by the Court's Settlement Master.  Plaintiffs respectfully request that this Court enter an order:  (1) preliminarily approving the proposed class action settlement; (2) provisionally certifying the Franchise Dealer Class; (3) approving the manner and form of notice; and (4) setting a final fairness hearing.

DATED:  September 30, 2016.                    HAGENS BERMAN SOBOL SHAPIRO LLP


By ___/s/ Steve W. Berman_____
Steve W. Berman
Steve W. Berman (*Pro Hac Vice*)
Thomas E. Loeser (SBN 202724)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
toml@hbsslaw.com

Richard N. Sox (*Pro Hac Vice to be filed*)
BASS SOX MERCER
2822 Remington Green Circle
Tallahassee, FL 32308
Telephone:  (850) 878-6404
Facsimile:  (850) 942-4869
rsox@dealerlawyer.com

*Counsel for Plaintiffs and the proposed Franchise Dealer Class*

1

## CERTIFICATE OF SERVICE

2

I hereby certify that on September 30, 2016, I electronically transmitted the foregoing

3

document to the Court Clerk using the ECF System for filing. The Clerk of the Court will transmit

4

a Notice of Electronic Filing to all ECF registrants.

5

6

_____
                    */s/ Steve W. Berman*
                    STEVE W. BERMAN

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28