UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION ─────────────────────────────── / This Order Relates To: ALL ACTIONS (except the securities action) ─────────────────────────────── / | MDL No. 2672 CRB  (JSC) **ORDER (1) GRANTING RONALD CLARK FLESHMAN JR.'S MOTION TO AMEND AND (2) DENYING FLESHMAN'S MOTION TO INTERVENE AND MOTION TO DEPOSE THE VIRGINIA CLASS REPRESENTATIVES** |

The Court previously denied Ronald Clark Fleshman Jr.'s motion to intervene to object on behalf of all Virginia class members. (Dkt. No. 1742.) Fleshman has since filed two new motions. First, he again seeks to intervene as a matter of right, this time in the action brought by the United States Department of Justice ("United States"). (Dkt. No. 1760.) The United States and the Volkswagen and Porsche Defendants oppose the Motion. (Dkt. Nos. 1810, 1812.) Second, Fleshman moves for leave to depose the Virginia Class Representatives (Dkt. No. 1846[1]), which Plaintiffs oppose (Dkt. No. 1822). Having considered the parties' arguments and the relevant legal authority, the Court **DENIES** both Motions. Fleshman does not have a right to intervene and fails to provide a reasonable basis for deposing the Virginia Class Representatives.

**BACKGROUND**

A detailed factual and procedural background can be found in the Court's Amended Order Granting Preliminary Approval. (Dkt. No. 1698 at 2-4.) Relevant here, this multidistrict litigation includes a consolidated class action lawsuit brought by the Court-appointed Plaintiffs' Steering

---

[1] Fleshman's Motion for Leave to Depose was originally filed at Dkt. No. 1762 and refiled at Dkt. No. 1846 in accordance with the Court's September 8, 2016 Order to Refile under Seal. (*See* Dkt. No. 1823.)

Committee ("PSC" or "Plaintiffs") on behalf of consumers and reseller dealerships. (*See* Dkt. Nos. 1804-05.) It also includes a lawsuit brought by the United States on behalf of the United States Environmental Protection Agency ("EPA") against Volkswagen AG; Audi AG; Volkswagen Group of America, Inc.; Volkswagen Group of America Chattanooga Operations, LLC; Dr. Ing. h.c. F. Porsche AG; and Porsche Cars North America (the "United States Action," Case No. 16-cv-295 (CRB)). (*See* Dkt. No. 1, U.S. Action.)[2] The United States asserts claims arising under Section 203 of the Clean Air Act, 42 U.S.C. § 7522. (*Id.* ¶¶ 102-31.)

After five months of negotiations supervised by a Court-appointed Settlement Master, the PSC and the United States filed a proposed Consumer and Reseller Dealer Class Action Settlement (the "Settlement") and a Partial Consent Decree, respectively. (*See* Dkt. Nos. 1605-06; *see also* Dkt. No. 1685 (Amended Settlement).) Both agreements involve Volkswagen AG, Audi AG, and Volkswagen Group of America, Inc. (collectively, "Volkswagen") and concern the 2.0-liter TDI engine vehicles ("Eligible Vehicles"). The Court preliminarily approved the Settlement on July 26, 2016 (Dkt. No. 1688) and entered its Amended Order on July 29, 2016 (Dkt. No. 1698).

## DISCUSSION

**A.     Motion to Intervene in the United States Action**

1.     <u>Legal Standard</u>

In a class action context, courts may allow class members "to intervene and present claims or defenses, or to otherwise come into the action." Fed. R. Civ. P. 23(d)(B)(iii). Federal Rule of Civil Procedure ("Rule") 24 provides for two types intervention of right. *See* Fed. R. Civ. P. 24(a)(1)-(2).

First, Rule 24(a)(1) requires a court to "permit anyone to intervene who . . . is given an unconditional right to intervene by a federal statute." Fed. R. Civ. P. 24(a)(1). Second, Rule 24(a)(2) allows a party to intervene as a matter of right when the movant "claims an interest

---

[2] Unless otherwise noted, citations in this memorandum refer to documents filed in the master case file, Case No. 15-md-2672 (CRB). Citations to the "U.S. Action" refer to documents filed in *United States of America v. Volkswagen AG, et al.*, Case No. 16-cv-295 (CRB).

2

relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).

To prevail on a motion for intervention of right, the movant must demonstrate

> (1) it has a significant protectable interest relating to the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent its interest.

*Peruta v. Cty. of San Diego*, 824 F.3d 919, 940 (9th Cir. 2016) (citation omitted). Courts "evaluating whether Rule 24(a)(2)'s requirements are met . . . normally follow practical and equitable considerations and construe the Rule broadly in favor of proposed intervenors." *Wilderness Soc. v. United States Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (internal quotation marks omitted). Despite this liberal construction, "it is incumbent on the party seeking to intervene to show that all the requirements for intervention have been met." *Chamness v. Bowen*, 722 F.3d 1110, 1121 (9th Cir. 2013) (internal quotation marks and brackets omitted). "Failure to satisfy any one of the requirements is fatal to the application[.]" *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

2.  Motion to Amend

Fleshman has also filed a Motion to Amend his Reply to his Motion to Intervene to submit a proposed amended complaint in intervention. (Dkt. No. 1930; *see* Dkt. No. 1930-1.) The Court **GRANTS** the Motion to Amend and will consider Fleshman's Motion to Intervene in light of the proposed amended complaint.

3.  Discussion

Fleshman seeks to intervene as a matter of right to enforce Virginia's EPA-approved State Implementation Plan ("SIP"), [3] and he argues the Clean Air Act ("CAA" or "Act") provides him an unconditional right to do so. His reliance on the CAA is misplaced.

---

[3] The Clean Air Act requires states to "adopt . . . a plan which provides for implementation, maintenance, and enforcement" of national ambient air quality standards and submit such plans to the EPA for approval. 42 U.S.C. § 7410(a)(1). These SIPs, "once adopted by a state and approved by the EPA, become[] controlling and must be carried out by the state." *Bayview*

The CAA permits citizens to commence a civil action to prosecute violations of the Act. 42 U.S.C. § 7604(a). But this citizen-suit provision is not unlimited; the statute bars such actions "if the Administrator or State has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any person may intervene as a matter of right." *Id.* at § 7604(b)(1)(B). "This section of the citizen-suit provision . . . ensures that courts are not overburdened with citizen suits that are duplicative of ongoing governmental actions under the CAA." *United States v. Dominion Energy, Inc.*, 2014 WL 1476600, at *3 (C.D. Ill. Apr. 15, 2014).

The CAA does not give Fleshman a right to intervene because he seeks to enforce different standards, limitations, or orders than the United States. Although he contends § 7604(b)(1)(B) gives him "the statutory right to intervene in *any* action related to the enforcement of the emission standards or limitations applicable to new motor vehicles" (Dkt. No. 1760 at 2 (emphasis added)), the statute is not so broad. "Whether claims of prospective intervenors must mirror claims of the United States under the citizen-suit provision of the CAA is perhaps seldom addressed in case law because the plain language of the statute so clearly requires uniformity." *Dominion Energy, Inc.*, 2014 WL 1476600, at *5. Courts require proposed statutory intervenors to assert the same claims as the original plaintiff before permitting such intervention. *See id.* at *6 (no statutory right to intervene where proposed intervenors sought "to prosecute opacity and monitoring violations of the CAA that differ from the United States' allegations of unpermitted modifications"); *United States v. Gateway Energy & Coke Co., LLC*, 2014 WL 5797647, at *4 (S.D. Ill. Nov. 7, 2014) (finding no statutory right to intervene where the proposed intervenors' "claims clearly differ from the allegations asserted in this lawsuit. To allow the proposed intervenors to intervene based on allegations that differ from those of the United States would essentially gut the [CAA's] citizen-suit provision."); *see also United States v. EME Homer City Generation L.P.*, 823 F. Supp. 2d 274, 278 (W.D. Pa. 2011), *aff'd*, 727 F.3d 274 (3d Cir. 2013) (noting intervenor-plaintiffs had

---

*Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n*, 366 F.3d 692, 695 (9th Cir. 2004), *as amended on denial of reh'g and reh'g en banc* (June 2, 2004).

4

asserted "similar violations" and "essentially the same federal Clean Air Act claims set forth by the [original plaintiff]").

Fleshman does not seek to enforce the same standards, limitations, or orders as the United States. As an initial matter, Fleshman's proposed amended complaint does not state any claims; it offers only allegations. (*See* Dkt. No. 1930-1.) Fleshman does, however, state that he "is adopting the original Complaint filed on behalf of the EPA." (Dkt. No. 1845 at 1.) His proposed amended complaint clarifies that this includes the allegations set forth in the United States' Complaint. (*See* Dkt. No. 1930-1 ¶ 1 ("The allegations of the Complaint filed on January 4, 2016, by the United States of America at the request of the Administrator of the Environmental Protection Agency ('EPA') are incorporated herein by reference.").) Despite this assertion, Fleshman and the United States focus on different conduct by different actors, as well as different CAA provisions.

Fleshman focuses on the *EPA's* alleged failure to act in accordance with the CAA. *See* Dkt. No. 1930-1 ¶ 11 ("The Administrator and the EPA have not diligently prosecuted the mandatory, non-discretionary requirements of the Clean Air Act."), ¶ 15 ("Intervenor Ronald Clark Fleshman, Jr. asserts the Administrator and the EPA are not diligently prosecuting the defendants as required and have failed to perform the mandatory, non-discretionary requirements of the Clean Air Act in the following respects[.]"), ¶ 15(C) ("The Administrator's enforcement of the Clean Air Act cannot apply a remedy under § 7541 of the Act for violations under § 7522 of the Act."), ¶ 15(F) ("The EPA is under a nondiscretionary duty to not create a financial incentive for the defendants to violate the Clean Air Act."). Fleshman further alleges the EPA has "impermissibly annul[led] or repeal[ed] the EPA-approved" SIPs. *See* Dkt. No. 1930-1 ¶ 10 ("Operating a motor vehicle with an inoperable emissions system violates the EPA-approved SIP of at least the following states . . . .").

In contrast, the United States' claims center on *Volkswagen's* conduct. Specifically, the United States asserts violations of (1) 42 U.S.C. § 7522(a)(1) for the sale, offer for sale, introduction into commerce, delivery for introduction into commerce, or importation of new motor vehicles not covered by a certificate of conformity ("COC"); (2) 42 U.S.C. § 7522(a)(3)(B) for the

5

manufacture, sale, offer for sale, or installation of defeat devices on new motor vehicles; (3) 42 U.S.C. § 7522(a)(3)(A) for the incorporation of road calibration auxiliary emission control devices ("AECD") in the 2.0-liter engine vehicles; and (4) 42 U.S.C. § 7522(a)(3) for the failure to disclose AECDs in a COC application for a test group of new motor vehicles. (*See* Dkt. No. 1 ¶¶ 102-31, U.S. Action.) The United States' Complaint contains no state law claims and makes no reference to any SIPs. As such, Fleshman's proposed amended complaint attempts to enforce different standards from those currently being litigated.

True, Fleshman's proposed amended complaint alleges "42 U.S.C. § 7522 prohibits the sale of the Dirty Diesel vehicles because they are not 'covered' by a valid certificate of conformity and they were sold with a 'defeat device' installed."[4] (Dkt. No. 1930-1 ¶ 15(A).) But Fleshman still has not shown that his proposed amended complaint sufficiently mirrors the United States' complaint to mandate statutory intervention. Although the United States also asserts violations of various provisions of § 7522, it does so in relation to Volkswagen's conduct. Fleshman, however, appears to rely on § 7522 for the proposition that the Partial Consent Decree does not fully enforce the statute. *See id.* ¶ 15(A) ("The proposed Partial Consent Decree . . . do[es] not require the rescission of the sale of the affected Dirty Diesel vehicles as mandated by § 7522."). Put another way, Fleshman is concerned with the EPA's enforcement of § 7522 and the obtainment of what he believes are appropriate remedies, not how Volkswagen's actions violate the statute.

In any event, Fleshman's requested relief reveal further disparities in enforcement. The United States' desired remedies against Volkswagen consist of (1) civil monetary penalties; (2) injunctions on the sale or the importation of any new vehicles equipped with a defeat device or covered by a COC; and (3) an order for Volkswagen to take steps to mitigate excess nitrous oxides emissions. (Dkt. No. 1 at 26-28, U.S. Action.) But Fleshman's desired relief focuses solely on the EPA.[5] Specifically, he requests the Court "find and order" that (1) "enforcement of the law found

---

[4] Fleshman does not specify which provisions of § 7522 are at issue. (*See* Dkt. No. 1930-1 ¶ 15(A).)

[5] In addition to his failure to list claims, Fleshman's proposed amended complaint does not name any defendants. To the extent it also adopts the defendants named in the United States' Complaint, that Fleshman seeks remedies only against the EPA and not any of the Volkswagen

6

1   in the 'Prohibited Acts' enumerated by Congress in 42 U.S.C. § 7522 and require the rescission of
2   the sale of all affected Dirty Diesel vehicles with the full cost thereof placed on the defendant
3   manufacturers;" (2) "a remedy under 42 U.S.C. § 7541 is not to be used for violations of 42
4   U.S.C. § 7522;" (3) the EPA has no authority to annul or repeal the EPA-approved SIPs; (4) 42
5   U.S.C. §§ 7413 and 7541 require the EPA to notify owners and lessees it is illegal to use their
6   vehicles in the United States; (5) 42 U.S.C. § 7413(a)(2) requires the EPA to inform states of
7   widespread violations of 42 U.S.C. §§ 7522 and 7541, as well as various SIPs; (6) the EPA must
8   not impair or impede the enforcement of an SIP through a settlement that does not require
9   compliance with such plans and eliminates available remedies; (7) "the imposition of civil
10  penalties do not affect the defendants' obligation to comply with" or give the EPA discretion to
11  allow continuous violations of the CAA; and (8) "the EPA cannot propose and support a monetary
12  penalty which is an incentive to violate the Clean Air Act." (Dkt. No. 1930-1 at 11-12.) The
13  United States seeks no such relief. That Fleshman does not appear to seek any remedies against
14  Volkswagen further indicates that he is not attempting to enforce the same standards as the United
15  States.
16       In sum, Fleshman has not shown that his proposed lawsuit in intervention seeks to enforce
17  the same standard, limitation, or order as does the United States such that the CAA mandates his
18  intervention. To the contrary, Fleshman purports to add new claims rather than litigate the ones
19  asserted by the United States. Even if "Fleshman has the right to enforce the emission standards
20  and limitations in State Implementation Plans" (Dkt. No. 1845 at 3), this is not what the United
21  States seeks to do in its lawsuit. Accordingly, the CAA does not mandate Fleshman's
22  intervention. Indeed, to allow Fleshman to assert new claims and seek different relief risks
23  prolonging litigation and delaying relief to other Class Members.
24       Fleshman's remaining arguments are specious. For instance, he argues that "[t]he Partial
25  Consent Decree gives Volkswagen a huge financial incentive to re-publish and re-broadcast the
26  EPA's incorrect statement that these cars remain legal to drive" and that "Volkswagen will do

---

entities suggests he does not intend to litigate claims against Volkswagen.

7

everything it can to . . . leave as many vehicles on the Virginia roads as possible." (Dkt. No. 1760 at 8-9.)  Neither the EPA, CARB, other federal or state regulatory agency, nor a court has found the vehicles are illegal to operate or ordered consumers to stop driving them.  In fact, Fleshman relied on this very argument when he sought a temporary injunction from the Nineteenth Judicial Circuit of Virginia.  (Dkt. No. 1812-1 at 18-19.)  The Virginia court rejected it, noting the alleged harm caused by the ongoing use of these vehicles was "merely speculative." (*Id.* at 19.)

Moreover, the Consent Decree requires Volkswagen to buy back or fix 85% of the Eligible Vehicles by June 30, 2019 (the "National Recall Rate"); failure to do so results in additional monetary penalties.  (Dkt. No. 1605-1 ¶¶ 3, 10-11; App'x A ¶¶ 1, 6.1, 6.3, *id.*)  Specifically, the Consent Decree requires Volkswagen to pay $85 million for each 1% that falls short of the National Recall Rate.  (App'x A ¶ 6.3, Dkt. No. 1605-1.)  With such penalties at stake, Volkswagen is incentivized to take as many Eligible Vehicles off the road as possible to ensure it reaches the National Recall Rate.

### 4. Conclusion

As the CAA does not provide a basis for mandatory intervention, Fleshman cannot intervene as a matter of right in the United States Action.[6]

## B. Motion for Leave to Depose the Virginia Class Representatives

In his second Motion, Fleshman seeks to depose the six Virginia Class Representatives. (Dkt. No. 1846 at 2; *see* Dkt. No. 1740-4 at 14, 116-20.)  Fleshman has not shown that depositions are necessary to test the fairness and adequacy of the Settlement.

### 1. Legal Standard

"While objectors are entitled to meaningful participation in the settlement proceedings and leave to be heard, they are not automatically entitled to discovery or to question and debate every provision of the proposed compromise." *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 619 (S.D. Cal. 2005) (internal quotation marks and citations omitted).  In other words, objectors do not have an absolute right to discovery.  *In re Cmty. Bank of N. Va.*, 418 F.3d 277,

---

[6] The United States also contends the Motion is untimely.  (Dkt. No. 1810 at 10-12.)  The Court need not address this argument as the CAA does not mandate Fleshman's intervention.

8

316 (3d Cir. 2005). Discovery may be appropriate only under certain circumstances, for instance, "if lead counsel has not conducted adequate discovery or if the discovery conducted by lead counsel is not made available to objectors." (*Id.*) Courts faced with a request for discovery consider "(1) the nature and amount of previous discovery; (2) whether there is a reasonable basis for the discovery requests; and (3) the number and interests of objectors." *Wixon v. Wyndham Resort Dev. Corp.*, 2011 WL 3443650, at *2 (N.D. Cal. Aug. 8, 2011) (citing *Hemphill*, 225 F.R.D. at 620).

2. Discussion

Fleshman explains that he "had intended to depose these [Virginia] Class Representatives after intervening as a party." (Dkt. No. 1846 at 7.) Though his prior, unsuccessful motion did not mention depositions (*see* Dkt. No. 1672), his Motion to Depose the Virginia Class Representatives is, in essence, a second bite at the apple. In any event, Fleshman has not shown a basis to take depositions.

a. *The Nature and Amount of Previous Discovery*

The nature and amount of previous discovery weighs against permitting depositions. Fleshman presents no evidence—indeed, does not even argue—that Class Counsel have not conducted adequate discovery or that discovery has not been made available to objectors. To the contrary, the Court has already determined that Class Counsel conducted sufficient discovery to engage in informed settlement negotiations. (Dkt. No. 1698 at 22; *see* Dkt. No. 1609 at 6 (noting that Volkswagen produced over 12 million pages of documents and that Counsel had reviewed approximately 70% of them).) Fleshman offers no reason to believe this was not in fact the case. Thus, this factor weighs against allowing Fleshman to depose the Virginia Class Representatives.

b. *Reasonable Basis for Discovery Requests*

Fleshman also fails to provide a reasonable basis to depose the Virginia Class Representatives. His argument that depositions are necessary to determine the fairness and adequacy of the Settlement is unpersuasive. Indeed, the information he seeks to discover would be of little use.

First, Fleshman contends that "[d]iscovery must be obtained to learn why the Virginia Subclass representatives have not insisted that the EPA and Volkswagen correct their false statements that the Dirty Diesels are legal to drive in Virginia." (Dkt. No. 1846 at 5.) But as noted earlier, no court or government agency has declared it illegal to drive an Eligible Vehicle. Moreover, assuming without deciding that Fleshman is correct that "Virginia law makes it illegal to operate a motor vehicle in the Commonwealth with an inoperable emissions system" (Dkt. No. 1846 at 4 (citing 9 Va. Code Ann. § 5-40-5670(A)(3))), the Settlement in fact addresses this concern. By requiring Volkswagen to buyback or fix the vehicles, the Settlement ensures that Eligible Vehicles will be taken off the road or brought into compliance.

Second, Fleshman agues "[d]iscovery must be obtained to learn why claims were not made based on the Virginia Motor Vehicle Warranty Act" which he contends "allows full refund of all money paid to Virginia consumers on the admitted facts of this case, but inexplicably was not pled nor was the relief provided thereby sought." (Dkt. No. 1846 at 5.) Because of this, "[d]iscovery must be obtained to learn why the Virginia Subclass representatives agreed to a settlement where lessees get no refund of their payments when Virginia law, under these admitted facts, allows lessees a full refund." (*Id.* at 5-6.) This argument is based on a flawed interpretation of the law— Fleshman does not seem to have finished reading the statute. The Virginia Motor Vehicle Warranty Act provides that a manufacturer that is unable "conform [a] motor vehicle to any applicable warranty by repairing or correcting any defect or condition" must

> [a]ccept return of the motor vehicle and refund to the consumer, lessor, and any lienholder as their interest may appear the full contract price, including all collateral charges, incidental damages *less a reasonable allowance for the consumer's use of the vehicle up to the date of the first notice of nonconformity that is given to the manufacturer, its agents or authorized dealer.* [ ] *The subtraction of a reasonable allowance for use shall apply to either a replacement or refund of the motor vehicle.*

Va. Code. Ann. § 59.1-207.13(A)(2) (emphasis added). Only "[m]ileage, expenses, and reasonable loss of use *necessitated by attempts to conform such motor vehicle to the express warranty* may be recovered by the consumer." (*Id.* (emphasis added).) The Settlement reflects this reality. By calculating the Buyback and Restitution amounts based on the September 2015

10

NADA Clean Trade-In value, the Settlement takes into account the value of the vehicle minus any depreciation for use.  Although the Consolidated Consumer Class Complaint did not assert a claim under the Virginia Motor Vehicle Warranty Act, the recovery provided under the terms of the Settlement is consistent with the possible recovery under that statute.  Fleshman therefore fails to provide any reasonable basis to depose the Virginia Class Representatives.

        c.    *Number and Interests of Objectors*

The small number of objectors weighs against allowing Fleshman to take depositions. The deadline for filing objections has passed,  and , only 0.0% of Class Members objected to the Settlement;that is, out of 489,000 Class Members, 482 timely objected.  (Dkt. No. 1976 at 3.) That so few Class Members have objected weighs against allowing discovery.  *See In re Wachovia Corp. "Pick-A-Payment" Mortg. Mktg. & Sales Practices Litig.*, 2011 WL 1496342, at *2 (N.D. Cal. Apr. 20, 2011) (where only 36 objections were filed out of class of 522,000 members, "the likelihood of the court granting [unnamed class member's] discovery requests is decreased because the court will give great weight to the interests of the majority of the class members."); *Hemphill*, 225 F.R.D. at 620 (having received only 9 objections after the mailing of more than 27,000 notices, "[t]he fact that Movants represent only a small number of the thousands of class members also weighs against Movants' discovery requests.").

    3.    <u>Conclusion</u>

Fleshman presents no basis to allow him to depose the Virginia Class Representatives.  The reasons he provide are based on flawed understandings of the law or his own unsubstantiated beliefs.  Moreover, information obtained in a deposition could not affect his or any other Class Member's decision to opt out of the Settlement given that the deadline to do so has passed.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** both Motions.  The CAA does not mandate intervention under these circumstances, and Fleshman fails to provide a basis to depose the Virginia Class Representatives.

This Order disposes of Dkt. Nos. 1760, 1762, 1846, and 1930.

//

11

**IT IS SO ORDERED.**

Dated: October 4, 2016

_____
CHARLES R. BREYER
United States District Judge