UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION ──────────────────────────────/ This Order Relates To: *BRS v. Volkswagen AG, et al.*, Case No. 16-cv-3435 ──────────────────────────────/ | MDL No. 2672 CRB  (JSC) **ORDER APPOINTING PUERTO RICO GOVERNMENT EMPLOYEES AND JUDICIARY RETIREMENT SYSTEMS ADMINISTRATION AS LEAD PLAINTIFF** |

This is a putative securities class action arising out of an alleged scheme to mislead investors by failing to disclose the use a "defeat device" in certain diesel engine vehicles. Pending before the Court are two competing Motions for Appointment as Lead Plaintiff and Lead Counsel by (1) Boston Retirement System ("BRS") and (2) Puerto Rico Government Employees and Judiciary Retirement Systems Administration ("PRGERS"). (Dkt. Nos. 1755, 1759.) Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court **VACATES** the October 14, 2016 hearing. For the reasons set forth below, the Court **GRANTS** PRGERS' Motion for Appointment of Lead Plaintiff and its Selection of Lead Counsel and **DENIES** BRS' Motion requesting the same.

## BACKGROUND

Defendant Volkswagen AG is one of the world's leading automobile manufacturers. (Dkt. No. 1 ¶ 15, BRS Action.)[1] Defendant Volkswagen Group of America, Inc. ("VWGoA") is a wholly-owned United States subsidiary of Volkswagen AG and does business in all 50 states. (*Id.* ¶ 16.) Defendant Volkswagen Group of America Finance, LLC ("VWGAF") is VWGoA's

---

[1] Unless otherwise noted, citations refer to documents filed in the MDL master case file, 15-md-2672 (CRB). Citations to the "BRS Action" refer to documents filed in 16-cv-3435 (CRB).

wholly-owned subsidiary. (*Id.* ¶ 17.) Defendant Martin Winterkorn ("Winterkorn") served as Volkswagen AG's Chief Executive Officer ("CEO") and Chairman of the Board of Management from his appointment in 2007 to his resignation in 2015. (*Id.* ¶ 18.) Between January 2014 and March 9, 2016, Defendant Michael Horn ("Horn") was the President and CEO of VWGoA. (*Id.* ¶ 19.)

On June 20, 2016, BRS filed the instant securities class action against Volkswagen AG, VWGoA, VWGAF, Winterkorn, and Horn (collectively, "Defendants") for claims arising under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5. (*See* Dkt. No. 1 ¶¶ 60-67, BRS Action.) BRS brings its lawsuit on behalf of a putative class consisting of "all those who purchased or otherwise acquired Volkswagen Bonds exempt from registration with the U.S. Securities and Exchange Commission under Rule 144A between May 23, 2014 and September 22, 2015, inclusive, and who were damaged thereby." (*Id.* ¶ 52.) The Court related the BRS Action to the Volkswagen MDL. (Dkt. No. 1617.)

On June 21, 2016, counsel for BRS published a notice in *Globe Newswire, Inc.* informing investors of the pendency of this action as required by the PSLRA, 15 U.S.C. § 78u-4(a)(3)(A)(i). (*See* Dkt. No. 1755-4.) The notice informed putative class members of the pendency of the action and the class period, provided an overview of the allegations and claims, and stated that putative class members could seek appointment as Lead Plaintiff no later than August 22, 2016. (*Id.* at 1-2.) Both BRS and PRGERS timely filed their Motions.[2]

**LEGAL STANDARD**

The PSLRA creates a presumption that the most adequate plaintiff is

> the person or group of persons that
> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

---

[2] PRGERS filed its Motion in both the MDL and the individual case dockets. (*See* Dkt. No. 1759; Dkt. No. 8, BRS Action.) Citations in this Order refer to the MDL filing.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u-4(a)(3)(B)(iii)(II).

The PSLRA sets forth a three-step process to select the lead plaintiff. *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). In the first step, the plaintiff who filed the first PSLRA action must "publiciz[e] the pendency of the action, the claims made and the purported class period." *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002); *see* 15 U.S.C. § 78u-4(a)(3)(A)(i).

The second step requires the court to identify the presumptive lead plaintiff. *In re Cavanaugh*, 306 F.3d at 729-30; 15 U.S.C. § 78u-4(a)(3)(B)(i). This requires the court to compare the potential lead plaintiffs' financial stakes by calculating each one's financial interest in the litigation using "accounting methods that are both rational and consistently applied." *In re Cavanaugh*, 306 F.3d at 730 n.4. The court then focuses solely on the plaintiff with "the most to gain from the lawsuit" and "determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" (*Id.*) If that plaintiff meets the Rule 23(a) requirements, he becomes the most adequate plaintiff.

At the third step, other plaintiffs have "an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." (*Id.* (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)).) The PSLRA limits rebuttal evidence to that which shows the presumptively lead plaintiff "[1] will not fairly and adequately protect the interests of the class; or [2] is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb). The statute allows other plaintiffs to conduct limited discovery for purposes of rebutting the presumption, provided "the plaintiff first demonstrates a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iv).

The PSLRA gives the appointed lead plaintiff the right to "select and retain counsel to

3

1   represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "Although this power is subject to court

2   approval and is therefore not absolute, it plainly belongs to the lead plaintiff." *Cohen v. U.S. Dist.*

3   *Court for N. Dist. of Cal.*, 586 F.3d 703, 709 (9th Cir. 2009). "[T]he district court has no authority

4   to select for the class what it considers to be the best possible lawyer[.]" *In re Cavanaugh*, 306

5   F.3d at 732.

## DISCUSSION

### A.  Publication of Pending Action

The PLRA requires that within 20 days of filing the complaint, the plaintiff shall publish

> in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class—
> (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

BRS' counsel satisfied this requirement by publishing a notice of this action in *Globe Newswire* in accordance with the statute. (*See* Dkt. No. 1755 at 6; Dkt. No. 1755-4.) The Court thus proceeds to the second step of the analysis and compares the "the losses allegedly suffered by the various plaintiffs" to determine which plaintiff both "'has the largest financial interest in the relief sought by the class'" and satisfies Rule 23's requirements. *In re Cavanaugh*, 306 F.3d at 729–30 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)).

### B.  Greatest Financial Stake

At this stage, PRGERS is the class member with the greatest financial stake in the outcome of this litigation, as it represents it has lost at least $66,552 as a result of its purchase of Volkswagen Bonds. (Dkt. No. 1759 at 5; Dkt. No. 1759-4.) In comparison, BRS claims a loss of more than $12,426. (Dkt. No. 1755 at 7; Dkt. No. 1755-3.) PRGERS is therefore the presumptive lead plaintiff. *See In re Zynga Inc. Sec. Litig.*, 2013 WL 257161, at *2 (N.D. Cal. Jan. 23, 2013) (where plaintiff "is the clearly class member with the greatest financial stake in the outcome of the case and [is] therefore the presumptive lead plaintiff."). The Court focuses its attention on PRGERS and "determine[s], based on the information [it] has provided in his pleadings and

4

1 declarations, whether [it] satisfies the requirements of Rule 23(a), in particular those of 'typicality'
2 and 'adequacy.'" *In re Cavanaugh*, 306 F.3d at 730 (footnote omitted).

### 1. PRGERS

The plaintiff with the greatest losses that also satisfies Rule 23's typicality and adequacy requirements is entitled to lead plaintiff status. *In re Cavanaugh*, 306 F.3d at 732. As explained below, PRGERS meets both requirements and it is therefore the presumptive lead plaintiff.

#### a. *Typicality*

"The typicality requirement is satisfied when the putative lead plaintiff has suffered the same injuries as absent class members, as a result of the same conduct by the defendants." *In re Diamond Foods, Inc., Sec. Litig.*, 281 F.R.D. 405, 408 (N.D. Cal. 2012) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). PRGERS purchased 4,210 Volkswagen Bonds during the class period. (*See* Dkt. No. 1759 at 6; Dkt. No. 1759-4.) Its losses arose from the same events as the putative class, that is, as a result of Volkswagen's allegedly false and misleading statements or omissions concerning the defeat device. As such, PRGERS meets Rule 23(a)'s typicality requirement.

#### b. *Adequacy*

"A test for adequacy is whether the class representative and his counsel 'have any conflicts of interest with other class members' and whether the class representative and its counsel will 'prosecute the action vigorously on behalf of the class.'" *In re Diamond Foods, Inc., Sec. Litig.*, 281 F.R.D. 405, 409 (N.D. Cal. 2012) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003)). PRGERS states its "interests are perfectly aligned with those of the other members of the class are not antagonistic in any way." (Dkt. No. 1759 at 6.) PRGERS thus makes a prima facie showing that it meets Rule 23(a)'s adequacy requirements.

### C. Opportunity to Rebut Presumption

The third step gives other plaintiffs "an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *In re Cavanaugh*, 306 F.3d at 730 (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)). The presumption of lead plaintiff status may be rebutted only with evidence that "the presumptive lead plaintiff . . . [1] will

not fairly and adequately protect the interests of the class; or [2] is subject to unique defenses that render such plaintiff incapable of adequately representing the class." § 78u-4(a)(3)(B)(iii)(II). At this point, "the process turns adversarial and other plaintiffs may present evidence that disputes the lead plaintiff's prima facie showing of typicality and adequacy. The district court may need to hold an evidentiary hearing, and to make a renewed determination of typicality and adequacy." *In re Cavanaugh*, 306 F.3d at 730–31.

  a. *Adequacy and Typicality*

BRS challenges PRGERS' status as presumptive lead plaintiff on adequacy grounds. BRS asserts PRGERS is "embroiled in legislative and legal action arising from Puerto Rico's debt crisis" and cannot oversee the litigation because it "is in dire legal and financial straits and almost certainly will not be able to allocate sufficient resources to this litigation." (Dkt. No. 1813 at 2, 7.) BRS fails to show this is in fact the case.

The Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. § 2101 et seq., addresses Puerto Rico's debt crisis by, among other things, establishing a Financial Oversight and Management Board ("Oversight Board") "to provide a method for a covered territory to achieve fiscal responsibility and access to the capital markets." 48 U.S.C. § 2121(a). "The Oversight Board operates as an entity within the Puerto Rico Government, [] and is tasked with several responsibilities and endowed with several powers." *Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 2016 WL 4435660, at *2 (D.P.R. Aug. 22, 2016) (citation omitted).

First, BRS questions whether the "Oversight Board has approved, or is even aware of, PRGERS' involvement in this action" (Dkt. No. 1813 at 8), but there is no indication the Oversight Board must approve or be notified of PRGERS' involvement. Indeed, BRS does not point to any provision of PROMESA that requires such action.[3] (*See* Dkt. No. 1813 at 8.) In the

---

[3] PROMESA does allow the Oversight Board to "intervene in any litigation filed against the territorial government." 48 U.S.C. § 2152. However, as Puerto Rico is not a defendant in this action, the statute does not provide the Oversight Board a basis to intervene here.

1   same vein, BRS also relies on *Baker v. Arnold*, No. 03-cv-5642-JF (N.D. Cal. May 17, 2004), for

2   the proposition that a plaintiff that cannot serve as lead plaintiff if its decision-making abilities are

3   restricted.  (Dkt. No. 1813 at 8-9; *see* Dkt. No. 1813-9.)  That reliance is misplaced.  *Baker*

4   concerned a pension fund that for over twenty years had been operating under a consent decree

5   with the United States Department of Labor.  *Baker*, No. 03-cv-5642-JF, slip op. at 5-6.  Noting

> that [the plaintiff] remains under its federal supervision as to its financial condition and is not entirely a 'free agent' under circumstances in which a funding deficiency or other violations of the consent decree is imminent[,] [t]he court [was] concerned that the best interest of the class may not be served adequately by a lead plaintiff operating under such circumstances during settlement negotiations, which are a normal, if not universal, occurrence in securities class actions.

(*Id.* at 6; *see* Dkt. No. 1813-9 at 6.)  The court thus declined to appoint the pension fund as lead plaintiff.  But this litigation presents a different situation.  Whereas the proposed lead plaintiff in *Baker* could not independently manage its affairs on account of the consent decree, PRGERS Administrator Pedro R. Ortiz Cortes states that "PROMESA's passage has in no way affected or interfered with PREGERS' function, management or day-to-day operations."  (Dkt. No. 1848 ¶ 6.) Although BRS contests this by declaring that "PRGERS is not even permitted to manage the assets and pension funds of its own beneficiaries independently" (Dkt. No. 1841 at 4), it offers no support for its assertion.

Second, BRS also notes that "the press has speculated that substantial restructuring of the pension is almost inevitable." (Dkt. No. 1813 at 5; *see* Dkt. No. 1813-2.)  But as BRS states, this is speculation; BRS offers no other evidence that restructuring is imminent or will affect the litigation.  As such, BRS fails to rebut the presumption that PRGERS can adequately represent the interests of the class.

    b.    *Unique Defenses*

The PSLRA also allows evidence that the presumptively most adequate plaintiff is subject to unique defenses.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb).  "There is no requirement at this early stage to prove a defense, only to show a degree of likelihood that a unique defense might play a significant role at trial."  *In re Netflix, Inc., Sec. Litig.*, 2012 WL 1496171, at *5 (N.D. Cal. Apr.

1   27, 2012) (citing *Beck v. Maximus, Inc.*, 457 F.3d 291, 300 (3d Cir. 2006); *Eichenholtz v. Verifone*
2   *Holdings, Inc.*, 2008 WL 3925289, at *10–11 (N.D. Cal. Aug. 22, 2008)).  This requirement seeks
3   "to protect the absent class members from the expense of litigating defenses applicable to lead
4   plaintiffs but not to the class as a whole." *Id.* (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497,
5   508 (9th Cir. 1992)).

6   BRS argues Puerto Rico's financial crisis subjects PRGERS to unique defenses such that
7   PRGERS' unique legal situation could become the focus of the litigation.  (Dkt. No. 1813 at 9.)
8   Specifically, BRS asserts that "[g]iven PRGERS' historical mismanagement and resulting central
9   involvement in debt restructuring efforts, PRGERS is in no position to effectively serve as the
10  fiduciary over the Class in this Action as PRGERS stares down certain litigation should those
11  efforts fail." (*Id.* at 9-10.)  But BRS fails to identify what, if any, defenses would be specific to
12  PRGERS.  It is also unclear how any creditor litigation arising out of PRGERS' alleged financial
13  mismanagement is related to PRGERS' purchase of Volkswagen Bonds such that it would affect
14  this action.  Indeed, PROMESA creates a stay of litigation by creditors.  48 U.S.C. § 2194(b).

15      c.   *Limited Discovery*

16  The PSLRA permits "discovery relating to whether . . . the purported plaintiff . . . is the
17  most adequate plaintiff" if another plaintiff "demonstrates a reasonable basis for finding that the
18  presumptively most adequate plaintiff is incapable of adequately representing the class."  15
19  U.S.C. § 78u-4(a)(3)(B)(iv).  "Courts are to take care to prevent the use of discovery to harass
20  presumptive lead plaintiffs, something the Reform Act was meant to guard against." *Zhu v.*
21  *UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1055 n.1 (N.D. Cal. 2010) (internal quotation marks
22  omitted).

23  BRS requests that if the Court finds PRGERS is the presumptive lead plaintiff, it should
24  allow BRS to conduct limited discovery to ascertain PRGERS' ability to serve as lead plaintiff.
25  At this point, BRS has not demonstrated a reasonable basis to permit limited discovery.  BRS has
26  made a number of allegations concerning PROMESA's effect on PRGERS' ability to serve as lead
27  plaintiff; however, those allegations are speculative, and BRS fails to point to any specific
28  PROMESA provision that indicates the either PROMESA or the Oversight Board curtails

1  PRGERS' managerial capabilities. To the contrary, PRGERS' Administrator has attested to
2  PRGERS' control of its decisions and operations. (*See* Dkt. No. 1848 ¶ 6.) BRS has not shown
3  discovery is appropriate at this time.

4                                                    ***

5  BRS fails to rebut the presumption that PRGERS is entitled to be the lead plaintiff.
6  Accordingly, the Court appoints PRGERS as Lead Plaintiff.

### D. Appointment of Lead Counsel

The PSLRA also grants presumptive lead plaintiff the authority to select counsel to represent the class. 15 U.S.C. § 78u-4(a)(3)(B)(v). "Consistent with congressional intent in enacting the PSLRA to vest authority for selecting class counsel in the lead plaintiff and our reasoning in *Cavanaugh*, the district court should not reject a lead plaintiff's proposed counsel merely because it would have chosen differently." *Cohen v. U.S. Dist. Court for N. Dist. of Cal.*, 586 F.3d 703, 711 (9th Cir. 2009) (citing *Cavanaugh*, 306 F.3d at 732, 734 & n. 14). Rather, "if the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice." (*Id.* (citation omitted).)

PRGERS has selected the firm of Abraham, Fruchter & Twersky, LLP ("AF&T") to serve as lead counsel. BRS questions AF&T's ability "to vigorously litigate against Volkswagen and its counsel" given that AF&T is a firm with fewer attorneys than BRS' proposed lead counsel. (Dkt. No. 1813 at 2 (noting AF&T has approximately ten attorneys compared to the more than 60 attorneys that comprise BRS' choice of counsel.) But size alone is not indicative of an unreasonable choice, and BRS offers no other reasons to believe AF&T is not capable of serving as lead counsel. Having reviewed the firm's resume (*see* Dkt. No. 1759-5), PRGERS has made a reasonable choice. AF&T has experience litigating securities class actions, including serving as co-lead counsel in several cases. While their resources may not be as great as BRS's proposed counsel, the selection of AF&T is not unreasonable. Accordingly, the Court appoints AF&T as lead counsel.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** PRGERS' Motion and **APPOINTS**

9

PRGERS as Lead Plaintiff. The Court also **APPOINTS** Abraham, Fruchter & Twersky, LLP as Lead Counsel.

This Order disposes of Docket Nos. 1755 and 1759 in Case No. 15-md-2672 and Docket No. 8 in Case No. 16-cv-3435.

**IT IS SO ORDERED.**

Dated: October 11, 2016



CHARLES R. BREYER
United States District Judge

10