

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
WASHINGTON, D.C. 20460

SEP 1 8 2015

OFFICE OF
ENFORCEMENT AND
COMPLIANCE ASSURANCE

*VIA CERTIFIED MAIL*
*RETURN RECEIPT REQUESTED*

Volkswagen AG
Audi AG
Volkswagen Group of America, Inc.
Thru.

David Geanacopoulos
Executive Vice President Public Affairs and General Counsel
Volkswagen Group of America, Inc.
2200 Ferdinand Porsche Drive
Herndon, VA 20171

Stuart Johnson
General Manager
Engineering and Environmental Office
Volkswagen Group of America, Inc.
3800 Hamlin Road
Auburn Hills, MI 48326

Re:   Notice of Violation

Dear Mr. Geanacopoulos and Mr. Johnson:

The United States Environmental Protection Agency (EPA) has investigated and continues to investigate Volkswagen AG, Audi AG, and Volkswagen Group of America (collectively, VW) for compliance with the Clean Air Act (CAA), 42 U.S.C. §§ 7401–7671q, and its implementing regulations. As detailed in this Notice of Violation (NOV), the EPA has determined that VW manufactured and installed defeat devices in certain model year 2009 through 2015 diesel light-duty vehicles equipped with 2.0 liter engines. These defeat devices bypass, defeat, or render inoperative elements of the vehicles' emission control system that exist to comply with CAA emission standards. Therefore, VW violated section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B). Additionally, the EPA has determined that, due to the existence of the defeat



devices in these vehicles, these vehicles do not conform in all material respects to the vehicle specifications described in the applications for the certificates of conformity that purportedly cover them. Therefore, VW also violated section 203(a)(1) of the CAA, 42 U.S.C. § 7522(a)(1), by selling, offering for sale, introducing into commerce, delivering for introduction into commerce, or importing these vehicles, or for causing any of the foregoing acts.

Law Governing Alleged Violations

This NOV arises under Part A of Title II of the CAA, 42 U.S.C. §§ 7521–7554, and the regulations promulgated thereunder. In creating the CAA, Congress found, in part, that "the increasing use of motor vehicles . . . has resulted in mounting dangers to the public health and welfare." CAA § 101(a)(2), 42 U.S.C. § 7401(a)(2). Congress' purpose in creating the CAA, in part, was "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population," and "to initiate and accelerate a national research and development program to achieve the prevention and control of air pollution." CAA § 101(b)(1)–(2), 42 U.S.C. § 7401(b)(1)–(2). The CAA and the regulations promulgated thereunder aim to protect human health and the environment by reducing emissions of nitrogen oxides (NOx) and other pollutants from mobile sources of air pollution. Nitrogen oxides are a family of highly reactive gases that play a major role in the atmospheric reactions with volatile organic compounds (VOCs) that produce ozone (smog) on hot summer days. Breathing ozone can trigger a variety of health problems including chest pain, coughing, throat irritation, and congestion. Breathing ozone can also worsen bronchitis, emphysema, and asthma. Children are at greatest risk of experiencing negative health impacts from exposure to ozone.

The EPA's allegations here concern light-duty motor vehicles for which 40 C.F.R. Part 86 sets emission standards and test procedures and section 203 of the CAA, 42 U.S.C. § 7522, sets compliance provisions. Light-duty vehicles must satisfy emission standards for certain air pollutants, including NOx. 40 C.F.R. § 86.1811-04. The EPA administers a certification program to ensure that every vehicle introduced into United States commerce satisfies applicable emission standards. Under this program, the EPA issues certificates of conformity (COCs), and thereby approves the introduction of vehicles into United States commerce.

To obtain a COC, a light-duty vehicle manufacturer must submit a COC application to the EPA for each test group of vehicles that it intends to enter into United States commerce. 40 C.F.R. § 86.1843-01. The COC application must include, among other things, a list of all auxiliary emission control devices (AECDs) installed on the vehicles. 40 C.F.R. § 86.1844-01(d)(11). An AECD is "any element of design which senses temperature, vehicle speed, engine RPM, transmission gear, manifold vacuum, or any other parameter for the purpose of activating, modulating, delaying, or deactivating the operation of any part of the emission control system." 40 C.F.R. § 86.1803-01. The COC application must also include "a justification for each AECD, the parameters they sense and control, a detailed justification of each AECD that results in a reduction in effectiveness of the emission control system, and [a] rationale for why it is not a defeat device." 40 C.F.R. § 86.1844-01(d)(11).

A defeat device is an AECD "that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and

2

use, unless: (1) Such conditions are substantially included in the Federal emission test procedure; (2) The need for the AECD is justified in terms of protecting the vehicle against damage or accident; (3) The AECD does not go beyond the requirements of engine starting; or (4) The AECD applies only for emergency vehicles . . . ." 40 C.F.R. § 86.1803-01.

Motor vehicles equipped with defeat devices, such as those at issue here, cannot be certified. EPA, *Advisory Circular Number 24: Prohibition on use of Emission Control Defeat Device* (Dec. 11, 1972); *see also* 40 C.F.R. §§ 86-1809-01, 86-1809-10, 86-1809-12. Electronic control systems which may receive inputs from multiple sensors and control multiple actuators that affect the emission control system's performance are AECDs. EPA, *Advisory Circular Number 24-2: Prohibition of Emission Control Defeat Devices – Optional Objective Criteria* (Dec. 6, 1978). "Such elements of design could be control system logic (i.e., computer software), and/or calibrations, and/or hardware items." *Id.*

"Vehicles are covered by a certificate of conformity only if they are in all material respects as described in the manufacturer's application for certification . . . ." 40 C.F.R. § 86.1848-10(c)(6). Similarly, a COC issued by EPA, including those issued to VW, state expressly, "[t]his certificate covers only those new motor vehicles or vehicle engines which conform, in all material respects, to the design specifications" described in the application for that COC. *See also* 40 C.F.R. §§ 86.1844-01 (listing required content for COC applications), 86.1848-01(b) (authorizing the EPA to issue COCs on any terms that are necessary or appropriate to assure that new motor vehicles satisfy the requirements of the CAA and its regulations).

The CAA makes it a violation "for any person to manufacture or sell, or offer to sell, or install, any part or component intended for use with, or as part of, any motor vehicle or motor vehicle engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this subchapter, and where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use." CAA § 203(a)(3)(B), 42 U.S.C. § 7522(a)(3)(B); 40 C.F.R. § 86.1854-12(a)(3)(ii). Additionally, manufacturers are prohibited from selling, offering for sale, introducing into commerce, delivering for introduction into commerce, or importing, any new motor vehicle unless that vehicle is covered by an EPA-issued COC. CAA § 203(a)(1), 42 U.S.C. § 7522(a)(1); 40 C.F.R. § 86.1854-12(a)(1). It is also a violation to cause any of the foregoing acts. CAA § 203(a), 42 U.S.C. § 7522(a); 40 C.F.R. § 86-1854-12(a).

Alleged Violations

Each VW vehicle identified by the table below has AECDs that were not described in the application for the COC that purportedly covers the vehicle. Specifically, VW manufactured and installed software in the electronic control module (ECM) of these vehicles that sensed when the vehicle was being tested for compliance with EPA emission standards. For ease of reference, the EPA is calling this the "switch." The "switch" senses whether the vehicle is being tested or not based on various inputs including the position of the steering wheel, vehicle speed, the duration of the engine's operation, and barometric pressure. These inputs precisely track the parameters of the federal test procedure used for emission testing for EPA certification purposes. During EPA

3

emission testing, the vehicles' ECM ran software which produced compliant emission results under an ECM calibration that VW referred to as the "dyno calibration" (referring to the equipment used in emissions testing, called a dynamometer). At all other times during normal vehicle operation, the "switch" was activated and the vehicle ECM software ran a separate "road calibration" which reduced the effectiveness of the emission control system (specifically the selective catalytic reduction or the lean NOx trap). As a result, emissions of NOx increased by a factor of 10 to 40 times above the EPA compliant levels, depending on the type of drive cycle (e.g., city, highway).

The California Air Resources Board (CARB) and the EPA were alerted to emissions problems with these vehicles in May 2014 when the West Virginia University's (WVU) Center for Alternative Fuels, Engines & Emissions published results of a study commissioned by the International Council on Clean Transportation that found significantly higher in-use emissions from two light duty diesel vehicles (a 2012 Jetta and a 2013 Passat). Over the course of the year following the publication of the WVU study, VW continued to assert to CARB and the EPA that the increased emissions from these vehicles could be attributed to various technical issues and unexpected in-use conditions. VW issued a voluntary recall in December 2014 to address the issue. CARB, in coordination with the EPA, conducted follow up testing of these vehicles both in the laboratory and during normal road operation to confirm the efficacy of the recall. When the testing showed only a limited benefit to the recall, CARB broadened the testing to pinpoint the exact technical nature of the vehicles' poor performance, and to investigate why the vehicles' onboard diagnostic system was not detecting the increased emissions. None of the potential technical issues suggested by VW explained the higher test results consistently confirmed during CARB's testing. It became clear that CARB and the EPA would not approve certificates of conformity for VW's 2016 model year diesel vehicles until VW could adequately explain the anomalous emissions and ensure the agencies that the 2016 model year vehicles would not have similar issues. Only then did VW admit it had designed and installed a defeat device in these vehicles in the form of a sophisticated software algorithm that detected when a vehicle was undergoing emissions testing.

VW knew or should have known that its "road calibration" and "switch" together bypass, defeat, or render inoperative elements of the vehicle design related to compliance with the CAA emission standards. This is apparent given the design of these defeat devices. As described above, the software was designed to track the parameters of the federal test procedure and cause emission control systems to underperform when the software determined that the vehicle was not undergoing the federal test procedure.

VW's "road calibration" and "switch" are AECDs[1] that were neither described nor justified in the applicable COC applications, and are illegal defeat devices. Therefore each vehicle identified by the table below does not conform in a material respect to the vehicle specifications described in the COC application. As such, VW violated section 203(a)(1) of the CAA, 42 U.S.C. § 7522(a)(1), each time it sold, offered for sale, introduced into commerce, delivered for introduction into commerce, or imported (or caused any of the foregoing with respect to) one of the hundreds of thousands of new motor vehicles within these test groups. Additionally, VW

---

[1] There may be numerous engine maps associated with VW's "road calibration" that are AECDs, and that may also be defeat devices. For ease of description, the EPA is referring to these maps collectively as the "road calibration."

violated section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B), each time it manufactured and installed into these vehicles an ECM equipped with the "switch" and "road calibration."

The vehicles are identified by the table below. All vehicles are equipped with 2.0 liter diesel engines.

| Model Year | EPA Test Group | Make and Model(s) |
|---|---|---|
| 2009 | 9VWXV02.035N | VW Jetta, VW Jetta Sportwagen |
| 2009 | 9VWXV02.0U5N | VW Jetta, VW Jetta Sportwagen |
| 2010 | AVWXV02.0U5N | VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2011 | BVWXV02.0U5N | VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2012 | CVWXV02.0U5N | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2012 | CVWXV02.0U4S | VW Passat |
| 2013 | DVWXV02.0U5N | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2013 | DVWXV02.0U4S | VW Passat |
| 2014 | EVWXV02.0U5N | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2014 | EVWXV02.0U4S | VW Passat |
| 2015 | FVGAV02.0VAL | VW Beetle, VW Beetle Convertible, VW Golf, VW Golf Sportwagen, VW Jetta, VW Passat, Audi A3 |

Enforcement

The EPA's investigation into this matter is continuing. The above table represents specific violations that the EPA believes, at this point, are sufficiently supported by evidence to warrant the allegations in this NOV. The EPA may find additional violations as the investigation continues.

The EPA is authorized to refer this matter to the United States Department of Justice for initiation of appropriate enforcement action. Among other things, persons who violate section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B), are subject to a civil penalty of up to $3,750 for each violation that occurred on or after January 13, 2009;[1] CAA § 205(a), 42 U.S.C. § 7524(a); 40 C.F.R. § 19.4. In addition, any manufacturer who, on or after January 13, 2009, sold, offered for sale, introduced into commerce, delivered for introduction into commerce, imported, or caused any of the foregoing acts with respect to any new motor vehicle that was not covered by an EPA-issued COC is subject, among other things, to a civil penalty of up to $37,500 for each violation.[2] CAA § 205(a), 42 U.S.C. § 7524(a); 40 C.F.R. § 19.4. The EPA may seek, and district courts may order, equitable remedies to further address these alleged violations. CAA § 204(a), 42 U.S.C. § 7523(a).

---

[1] $2,750 for violations occurring prior to January 13, 2009.
[2] $32,500 for violations occurring prior to January 13, 2009.

The EPA is available to discuss this matter with you. Please contact Meetu Kaul, the EPA attorney assigned to this matter, to discuss this NOV. Ms. Kaul can be reached as follows:

> Meetu Kaul
> U.S. EPA, Air Enforcement Division
> 1200 Pennsylvania Avenue, NW
> William Jefferson Clinton Federal Building
> Washington, DC 20460
> (202) 564-5472
> kaul.meetu@epa.gov

Sincerely,

Phillip A. Brooks
Director
Air Enforcement Division
Office of Civil Enforcement

Copy:
Todd Sax, California Air Resources Board
Walter Benjamin Fisherow, United States Department of Justice
Stuart Drake, Kirkland & Ellis LLP