UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION _____/ | MDL No. 2672 CRB  (JSC)<br><br>**ORDER RE: ATTORNEYS' LIENS** |
| This Order Relates To:<br>ALL ACTIONS (except the securities action)<br>_____/ | |

Volkswagen has notified the Court that certain attorneys have placed liens on several Class Members' settlement proceeds. (*See* Dkt. No. 2159.) Specifically, The Driscoll Firm, P.C.; Wayne Wright LLP; Lashley & Baer, P.C.; the Davis Law Firm; and Aylstock, Witkin, Kreis & Overholtz, PLLC have sent letters to Volkswagen Group of America, Inc.; Volkswagen AG; Audi of America, LLC; and/or Audi AG (collectively, "Volkswagen") notifying them that they have placed attorneys' liens on their clients' recovery under the Amended Consumer and Reseller Dealership Class Action Settlement ("Settlement"). (Dkt. Nos. 2159-1, 2159-2, 2159-3, 2159-4, 2159-5, 2159-6; *see* Dkt. No. 1685.) These five firms claim to represent approximately 1,185 Class Members.[1] (*See* Dkt. No. 2159 at 2.)

It is obvious that satisfaction of these liens would have a substantial impact on Class Members. Not only does a reduced payment fail to adequately compensate Class Members, but it also negatively effects the environmental benefits contemplated by the Settlement. With a smaller cash payment, Class Members may have little incentive to sell their vehicles back and, as a result, these vehicles will remain in their current polluting state. For the reasons set forth below, the

---

[1] This figure takes into account any duplicate names listed in The Driscoll Firm's June 28, 2016 and August 17, 2016 letters. (*See* Dkt. Nos. 2159-1, 2159-3.)

Court **ORDERS** Volkswagen to pay Class Members their Settlement compensation directly and in full, notwithstanding any purported liens on that compensation. Not only does recognizing these liens require Volkswagen to violate the terms of the Settlement, but ensuring that Class Members are made whole, whether or not they retained counsel, must be the highest priority.

## DISCUSSION

When the Court granted final approval of the Settlement, it "retain[ed] the exclusive jurisdiction to enforce, administer, and ensure compliance with all terms of the Settlement in accordance with the Settlement and this Order." (Dkt. No. 2102 at 48.) As such, the Court possesses ancillary jurisdiction to adjudicate any lien disputes that arise from the Settlement. *See Fed. Sav. & Loan Ins. Corp. v. Ferrante*, 364 F.3d 1037, 1041-42 (9th Cir. 2004) (explaining "ancillary jurisdiction exists over attorney fee disputes collateral to the underlying litigation" and noting "[h]ad [the firm] attempted to assert its attorney liens for services performed in connection with a particular action, it might have successfully invoked ancillary jurisdiction"); *Curry v. Del Priore*, 941 F.2d 730, 731 (9th Cir. 1991) ("Courts have long recognized that fee disputes arising from litigation pending before a district court fall within that court's ancillary jurisdiction."); *see also Elusta v. City of Chicago*, 696 F.3d 690, 694 (7th Cir. 2012) ("Attorney's fee disputes are closely enough related to the underlying litigation to be the basis for supplemental jurisdiction, even if other attorney-client disputes, such as malpractice actions, are not."); *Guy v. Lexington-Fayette Urban Cty. Gov't*, 624 F. App'x 922 (6th Cir. 2015) (district court had jurisdiction over motion to quash attorney's lien where lien was "'so related to claims in the action within . . . original jurisdiction that they form[ed] part of the same case'" (edits in *Guy*; quoting 28 U.S.C. § 1367(a)).

Among other things, the Settlement seeks to make Class Members whole. (*See* Dkt. No. 1976 at 13, 15.) As the Federal Trade Commission ("FTC") explains, "[t]o be made whole, consumers must receive full compensation for their vehicles' full retail value and all other losses caused by Volkswagen's deception. Full compensation has to be sufficient for consumers to replace their vehicle." (Dkt. No. 1781 at 1.) To effectuate this goal, the Settlement requires Volkswagen to pay cash compensation directly to Class Members. *See, e.g.*, Dkt. No. 1685 ¶ 2.16

("'Lessee Restitution' means monetary compensation that *Volkswagen will pay to Eligible Lessees* . . . ." (emphasis added)), ¶ 2.52 ("'Owner Restitution' means monetary compensation that *Volkswagen will pay to Eligible Owners* . . . ." (emphasis added)), ¶ 2.60 ("'Seller Restitution' means monetary compensation that *Volkswagen will pay to Eligible Sellers* . . . .") (emphasis added)).[2] The compensation provided under the Settlement "restore[s] Class members to the positions they would have occupied if Defendants had never committed the frauds." (Dkt. No. 1976 at 13.) In other words, the Settlement ensures Class Members who participate in a Buyback have sufficient cash to purchase a comparable replacement vehicle and thus facilitates removal of the polluting vehicles from the road.

An attorneys' lien on a Class Member's recovery frustrates this goal. By diverting a portion of Class Members' compensation to private counsel, a lien reduces Class Members' compensation and places them in a position where they must purchase another vehicle but lack the funds to do so. Put another way, attorneys—notably, attorneys who did not have a hand in negotiating the Settlement—stand to profit while their clients are left with inadequate compensation.[3] This interferes with the Settlement's purpose and the Class Member's decision to

---

[2] The FTC's Consent Order likewise states that payments shall be made directly to consumers. *See* Dkt. No. 1607 ¶ H ("'Consumer Payment' means *any payment under the Settlement Program made directly to an Eligible Consumer* or to a lender on behalf of an Eligible Owner for the purpose of satisfying an outstanding Loan Obligation related to an Eligible Vehicle." (emphasis added)).

That said, Eligible Owners who are eligible for Loan Forgiveness may have some or all of their compensation paid directly to their lenders. (Dkt. No. 1685 ¶ 4.2.2; Dkt. No. 1685-1 ¶ 14.) This still makes Eligible Owners whole; even if they do not receive cash, it relieves them of their obligation to make payments on a vehicle they no longer own.

[3] For instance, The Driscoll Firm's "retainer agreements with Claimants provides [sic] for a contingent attorney's fee to the Firm of forty percent (40%) of any amount paid in settlement or to satisfy any judgment after suit is filed." (Dkt. Nos. 2159-1 at ECF p.1, 2159-3 at ECF p.1.) Assume, for argument's sake, that each of The Driscoll Firm's clients is an Eligible Owner entitled to the *minimum* restitution payment of $5,100. (*See* Dkt. No. 1685-3 at 8-9.) Of that, The Driscoll Firm would take $2,040, leaving each client with only $3,060. Under these facts and with approximately 362 clients, The Driscoll Firm would be entitled to a total of $736,480. This figure could also reasonably be expected to be greater, as the $5,100 represents only the minimum, guaranteed amount of Restitution and does not include compensation for selling the vehicle back to Volkswagen in a Buyback. Indeed, if The Driscoll Firm takes 40% of an Eligible Owner's Buyback package—the cash received in a Buyback plus Restitution—its fees could easily run into

participate. By electing to remain part of the Class, consumers can and should expect to be compensated in an amount determined by the Settlement terms, not by attorneys who may have played no role in obtaining the Settlement.

Accordingly, the Court orders Volkswagen to pay Class Members the full amount of compensation as required by the terms of the Settlement, regardless of whether an attorney purports to have placed a lien on those funds. First, the Settlement does not allow Volkswagen to make payments to Class Members' private attorneys. Should Volkswagen recognize these liens and direct payment to counsel, Volkswagen risks violating the Settlement. Second, complete payment to Class Members is necessary to fulfill the Settlement's purpose of making Class Members whole; a Class Member's ability to purchase a comparable vehicle should not be hampered by an attorneys' lien. Finally, providing Class Members with the funds effectuates another goal of the Settlement—to ensure that polluting vehicles are removed from the roads. (*See* Dkt. No. 1976 at 16.) If Class Members do not receive sufficient monies to replace their vehicles, or if their compensation is otherwise reduced, they have little incentive to participate in the Settlement's Buyback or Fix programs. As a result, Class Members will likely continue to use their vehicles in their current polluting state. For these reasons, it is necessary that Volkswagen compensate Class Members in strict compliance with the Settlement.

Even if Volkswagen provides Class Members their full compensation, however, attorneys could seek to litigate their liens in state court. This too frustrates the administration and purpose of the Settlement. Given that the Court retains jurisdiction to enforce and ensure compliance with the Settlement, it now invokes its authority under the All Writs Act to enjoin any state court proceedings regarding attorneys' lien on Class Members' settlement compensation.

The All Writs Act provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. This broad grant of authority is limited by the Anti-Injunction Act, which prohibits federal courts from enjoining state court proceedings "except

---

the millions of dollars.

4

1   where expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to
2   protect or effectuate its judgments." 28 U.S.C. § 2283.  Nonetheless, "[u]nder an appropriate set
3   of facts, a federal court entertaining complex litigation, especially when it involves a substantial
4   class of persons from multiple states, or represents a consolidation of cases from multiple districts,
5   may appropriately enjoin state court proceedings in order to protect its jurisdiction." *In re Diet*
6   *Drugs*, 282 F.3d 220, 235 (3d Cir. 2002).  An injunction is appropriate here to preserve the
7   Court's jurisdiction.  If attorneys seek to enforce their liens in state court, such proceedings will
8   interfere with the Court's ability to enforce and ensure compliance with the Settlement terms, such
9   as Volkswagen's obligation to directly pay consumers the full amount to which they are entitled
10  under the Settlement.  For that reason, the Court enjoins any state court proceeding relating to an
11  attorneys' lien on any Class Member's recovery under the Settlement.

## CONCLUSION

Under the power conferred by the All Writs Act, together with the Court's retention of jurisdiction over the enforcement and administration of the Settlement, the Court **ORDERS** the following:

1. Volkswagen shall pay Class Members directly the full amount to which they are entitled under the terms of the Settlement, notwithstanding any lien an attorney purports to impose on those funds.

2. The Court **ENJOINS** any state court action relating to attorneys' liens on Class Members' Settlement compensation.

3. The Court understands that some attorneys may have provided Class Members with compensable services.  As with Class Counsel, those attorneys will not be paid out of the Settlement, and the Court will determine the appropriate amount of fees, if any.  If an attorney seeks to recover fees in accordance with his or her lien, he or she shall file with the Court a separate application for each Class Member supported by declaration.  The application shall set forth the amount sought; the specific legal service(s) provided, including time records; and the terms of the fee agreement that require such an award, and shall include a

signed copy of the agreement. Any declarations shall be filed by **November 29, 2016**.

**IT IS SO ORDERED.**

Dated: November 22, 2016

CHARLES R. BREYER
United States District Judge