UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: VOLKSWAGEN "CLEAN DIESEL"
MARKETING, SALES PRACTICES, AND
PRODUCTS LIABILITY LITIGATION

MDL No. 2672 CRB (JSC)

_____/

## *PRO SE* PLAINTIFF'S MOTION FOR THE CREATION, ESTABLISHMENT AND IMPLEMENTATION OF DISABLED VETERANS ASSISTANCE PROGRAM AND FOR APPOINTMENT OF COMPETENT LEGAL COUNSEL TO ASSIST WITH REMOTE PROSECUTION OF LAWSUIT

Dear Court,

Please allow me to introduce myself. I am Staff Sergeant (Retired) Oleg Yarin. I am a 100% totally and permanently disabled veteran of the U.S. Armed Forces. My disabilities are service-connected. See the attached letter from the Department of Veterans' Affairs dated September 15, 2016. (Exhibit A.) I have limitations (disabilities). I also have an absolute need for medical and support networks to care for my disabilities. I am *pro se* plaintiff in *Yarin v. Volkswagen Group of America, Inc. et al.*, case number 8:16cv1382T23AEP filed at the U.S. District Court for the Middle District of Florida, Tampa Division. The U.S. Judicial Panel on Multidistrict Litigation ("the Panel") issued a transfer order on October 4, 2016 (Exhibit B) transferring my lawsuit to the MDL 2672 in the Northern District of California. The Panel described the circumstances of Yarin action in one single sentence: "*Pro se* plaintiff in the Middle District of Florida *Yarin* action asserts that transfer of his action will cause significant personal inconvenience." The Panel did not describe the facts of the *Yarin* action in sufficient detail. The Panel pigeon-holed the facts of *Yarin* action into the very restrictive language of Section 1407. On October 8, 2016 I filed *pro se* Plaintiff's Motion for Reconsideration citing,

1

*inter alia*, substandard description of the facts of the Yarin action. (Exhibit C). Defendant
VWGoA filed a Response in Opposition to Motion by Pro Se Plaintiff Oleg Yarin for
Reconsideration of the Panel's October 4, 2016 Order. (Exhibit D.) Defendant VWGoA stated:
"Furthermore, the very fact that Plaintiff has managed repeatedly, on his own, to file pleadings
and briefs in the JPML (including those noted above, and the instant motion), in the Northern
District of California and in other venues outside of his local district court in Florida, completely
undermines any claim that it is "impossible" for him to prosecute his claims outside of his local
Florida district court. To the extent that Plaintiff wishes to proceed *pro se* in the Northern
District of California, he is clearly capable of doing so." Mr. Jeffrey L. Chase signed this
Response in Opposition. The record shows that he personally appeared in the MDL Court, at
least, during the November 3, 2016 proceedings. Why is Mr. Chase not restricted to just filing
pleadings by mail? Why does he feel that it is sufficient for this disabled veteran *pro se* plaintiff
to be restricted to only filing motions and briefs by mail? I request this Honorable Court to
question Mr. Chase about this. Mr. Chase's conduct is unjust and prejudicial to the
administration of justice. Mr. Chase also should have known from my briefs that I rely on both
medical and support networks to accomplish the tasks necessary for the prosecution of this
lawsuit. In his argument his used the words "on his own" (which most likely is a reference to the
Latin phrase *pso se*) but omitted to mention my need for and reliance on medical and support
networks. Thus, Mr. Chase's argument is flawed. Does Mr. Chase's argument appear stronger
to this Honorable without the mention of "medical and support networks"? Please elaborate. To
me it does not as I have a unique insight into my veterans' disability issues, and specifically my
own. I can certainly appreciate the value of a support network and veterans' group assistance.
That's what helps disabled veterans survive.

On December 7, 2017 the Panel filed a Transfer Order denying my Motion for Reconsideration stating: "As we previously noted, in all likelihood, plaintiff will not need to travel to the transferee court, and he should be able to participate in the MDL proceedings with respect to his case remotely. Indeed, plaintiff has proven adept at filing documents before the Panel. Plaintiff can stay informed of the proceedings in the transferee court via MDL No. 2672 website and through the transferee court's electronic filing system." Thus, the Panel acknowledged that its transfer restricted me to only remote prosecution of my lawsuit, significantly limiting my ability to participate in the MDL 2672 proceedings. The Defendant Volkswagen, however, has lawyers that represent them in the MDL 2672 in the Northern District of California. Robert Giuffra, Jr., Sharon L. Nelles and Jeffrey L. Chase made personal appearance before Judge Breyer during November 3, 2016 proceeding.

The Panel has acted as quasi disability-adjudicative body when it determined that the transfer would restrict me to prosecuting my lawsuit only remotely. Congress did not, however, give the Panel the power to function as a quasi disability-adjudicative body. Moreover, the Panel is not a Party to this lawsuit. The burden and responsibility to move a case along, to file motions and interrogatories and to take depositions lie solely with the Plaintiff. It is up to the Plaintiff to determine how to best prosecute his or her lawsuit. Because I am a *Pro Se* Plaintiff, not an attorney and not a graduate of a law school, in order to prosecute my lawsuit effectively I need to participate in the MDL 2672 proceedings in person and to have a personal contact with the Court just like the Defendant Volkswagen does. The transfer of my case, indeed, prejudiced me rendering my efforts to prosecute my lawsuit less effective. I do not have access to my own case electronically. Nobody explained to me how to access the transferee court's electronic filing system. When my case was at the U.S. District Court for the Middle District of Florida, I was

3

able to call the Clerk and ask questions about my case. The Tampa Court, at least, would answer the phone. I was able to visit the Tama Court and view my case electronically. I have called the MDL Court during regular business hours on numerous occasions. But nobody so far has picked up the phone. I have left voice messages for the Clerk but MDL Court has not returned my phone calls. The Panel stated that "the transfer will further the just and efficient conduct of his case." But not answering the phone, not returning my phone calls, not providing me with answers and explanations is not "the just and efficient conduct" of my case. Moreover, the Court did not respond to my written Grievance dated September 9, 2016. I respectfully request the Court to provide a written response.

The New York State Bar Association (NYSBA) offers Lawyer and Judges Assistance Program to help attorneys and judges that suffer from stress, illness, substance abuse and various other problems.   https://www.nysba.org/WorkArea/DownloadAsset.aspx?id=58049.

The NYSBA website states: "Areas of Support and Services Provided: Our services include help for a broad range of problems and personal issues such as Alcohol and drug abuse, Depression, Stress and burnout, Gambling, Eating Disorders, Balancing work and family, Referral for other health related problems." And further: "Stress. Stress is an expected part of daily life today. It is also one of the most preventable and treatable causes of many major illnesses. Reducing or managing stress can be challenging, but it can also be life-saving. Recognizing the signs of stress and seeking solutions are the first steps towards avoiding stress-related problems. Some signs of stress include: Headaches, other physical aches, fatigue or sleep difficulties. Difficulty making decisions or constant worry. Feeling cynical, apathetic or empty. Feeling more isolated, lonely and less social than normal. Feeling nervous, irritable,

anxious or short-tempered.  Experiencing any of the above may be a reason to call Judges'
Assistance for stress management guidance.  Helpline 1-800-255-0569."

The State Bar of California also has Lawyer Assistance Program (LAP) which helps
"lawyers and State Bar applicants who are grappling with stress, anxiety, depression, substance
use or concerns about their career."
http://www.calbar.ca.gov/Attorneys/MemberServices/LawyerAssistanceProgram.aspx.
A wellness guide for senior lawyers and their families, friends and colleagues is located here.
http://ethics.calbar.ca.gov/Ethics/SeniorLawyersResources/Publications/WellnessGuide.aspx.  It
offers some useful information on depression and seeking help.

If there is help for judges and lawyers, there should also be help for disabled veterans of
the U.S. Armed Forces who are forced to prosecute their lawsuits at the MDL Court remotely.
Many veterans suffer from, *inter alia*, Post-Traumatic Stress Disorder (PTSD).  My fellow
veterans suffer from shrapnel wounds, amputations, poisoning by enemy, Agent Orange
exposure, wounds due to enemy fire, PTSD, cancer, torture and other severe health issues.  This
Honorable Court should provide a comprehensive program to assist disabled veterans of the
Armed Forces whose cases have been transferred to the MDL 2672.  This program should
include, at the minimum, a communications liaison clerk and competent attorneys to assist
disabled veterans with their lawsuits.

Lawyers and Judges are law school graduates.  They work hard to attain their Juris
Doctor degrees.  They pass tests and hone their skills.  They graduate from law schools and pass
the bar exam.  Then they get hired by law firms and gain experience.  They file lawsuits,
motions, take depositions, participate in oral arguments and do whatever is required of them.
One would say they are very skilled or adept at what they do.  And then at least some of them get

affected by all these problems such as "substance abuse, stress, depression or other mental health issues." (https://www.nysba.org/LAP/). One would have to ask: if the judges are adept at doing their job, if they were able to graduate from law school, pass the bar exam, file lots of pleadings, why do they begin suffering from stress, depression and even substance use?  The answer to this question lies in the field of medicine and mental health sciences.  But the Panel does not have the competence to evaluate matters related to medicine and mental health sciences.

The Panel in my case determined that "Indeed, plaintiff has proven adept at filing documents before the Panel."  It is not reasonable to attempt to gauge how effectively I will be able to prosecute my lawsuit remotely based on this perfunctory observation.  It is also unfair to place a greater burden on members of my support network who help me with my lawsuit on a voluntary basis.  They too like lawyers and judges may begin suffering from stress and burnout. And what about this *pro se* plaintiff?  Are disabled veterans supposed to be impervious to the effects of stress?  What does this Honorable Court think?  I briefed the Panel that I rely both on a medical and a support network here in Tampa Bay.  Somehow the Panel left out from its rationale this important part about "a support network."  But this "support network" is a significant part of the reason my lawsuit was filed in the first place and my subsequent pleadings were submitted to the Panel, the MDL Court and to the Courts in other venues.  I had to file my lawsuit to protect my rights.  It would appear that the Panel engaged in a quasi disability adjudicative process which it legally has no power to do.  The Panel is also not competent to engage in quasi disability adjudication.  The members of the Panel do not have the necessary skills, knowledge, clinical experience and licenses.  The Panel did not follow any reasonable medical professional standards or guidelines.  See "Physical Examination Procedures For Advanced Practitioners and Non-Medical Prescribers:  Evidence and Rationale", Second Edition,

6

CRC Press. The book consists of 14 Chapters and includes the following: 1. The preliminary examination; 2. The cardiovascular system; 3. The respiratory system; 4. The ear, nose (mouth) and throat; 5. The abdomen; 6. The genitourinary system; 7. The breast; 8. The upper limb; 9. The back; 10. The lower limb; 11. The peripheral nervous system; 12. The cranial nerves; 13. The eye; 14. Mental health examination. This book contains detailed guidelines on how to conduct physical examinations. The Panel did not have the skill, knowledge and experience to evaluate any of the systems discussed in the book. And the Panel did not evaluate any of these systems.

The Panel did not make a list of evidence it considered and they did not mention the degree of impairment which is "100% total and permanent." Why this important piece of information did not get mentioned in the Panel's rationales is a complete mystery.

The Panel did not consider the conflict of laws in this case. 28 U.S.C. § 1407 vs. Title 38 U.S.C. and Title 38 of the Code of Federal Regulation. The Panel failed to describe the function of the Department of the Veterans' Affairs (DVA) and Veterans' Health Administration (VHA) in the language of the appropriate statutes governing the DVA. The United States maintains a strong commitment to the disabled veterans of the U.S. Armed Forces. It is committed to providing medical and other services to this Nation's disabled veterans through DVA and VHA.

The Panel has a habit of describing all facets of human experience in terms of "convenience" or "inconvenience." This is error. This is conduct prejudicial to the administration of justice. Not every human experience, and especially that of disabled veterans of the United States Armed Forces, can be described in terms of "convenience" or "inconvenience." 38 CFR § 17.33 PATIENTS RIGHTS reads: "(a) General. (1) Patients have a right to be treated with dignity in a humane environment that affords them both reasonable

protection from harm and appropriate privacy with regard to their personal needs. (2) Patients have a right to receive, to the extent of eligibility therefor under the law, prompt and appropriate treatment for any physical or emotional disability."

These two paragraphs shed light on the environment in which veterans should receive care. And the Judiciary should be mindful and protective of disabled veterans' rights. The Panel should have described the function of DVA and VHA in the language of their appropriate statutes and examined the relationship between DVA, VHA and disabled veterans, to include this *pro se* plaintiff. The Panel should have resolved the conflict of laws and explained its reasoning in a rationale. The Panel did not do any of this. This was error.

## STATISTICAL DATA ON ACTIVITY IN *YARIN* ACTION SINCE THE TRASNFER TO THE MDL COURT ON OCTOBER 4, 2016

Number of times the MDL Court answered the phone when the *Pro Se* Plaintiff called:  0.

Number of times the MDL Court returned this *Pro Se* Plaintiff's phone calls:  0.

Number of questions from this *Pro Se* Plaintiff the MDL Court answered:  0.

Number of times this *Pro Se* Plaintiff was provided an opportunity to view (access) his case:  0.

The number of times this *Pro Se* Plaintiff was able to meet (speak) with Judge Breyer:  0.

The number of motions (not counting this instant motion) the *Pro Se* Plaintiff was able to file:  0.

Thus, the transfer to the MDL Court proved a significant impediment to the just and efficient conduct of *Yarin* action.

## CONCLUSION

As described above, I suffered a severe prejudice (a severe loss) due to the transfer of my case to this Honorable Court. I humbly request the Honorable Court's help in prosecuting my lawsuit.

Therefore, I humbly move this Honorable Court to create, establish and implement a comprehensive Disabled Veterans Assistance Program to assist all disabled veterans of the U.S. Armed Forces, and specifically this *pro se* plaintiff, who due to a transfer of their actions to the MDL Court have been restricted to remote prosecution of their lawsuits. I further humbly move this Honorable Court to appoint a competent legal counsel to assist me with my lawsuit.

I further humbly request this Honorable Court to describe its level of familiarity with the matters of veterans' disability, care and support.

I respectfully request a written response to this Motion.

I respectfully request a written rationale explaining the Court's reasoning.

I further humbly request the Clerk of this Honorable Court to return a date-stamped copy of this Motion (provided) to me in an enclosed self-addressed stamped envelope.

Thank you in advance for your anticipated help.


Respectfully submitted,

Oleg Yarin, SSgt, USAF (Ret.)
7360 Ulmerton Road Apt 3C
Largo, Florida 33771
(727)688-7052
e-mail: olegyarin@tampabay.rr.com

December 27, 2016.

9

## LIST OF EXHIBITS

Exhibit A – Copy of DVA letter dated September 15, 2016

Exhibit B – Copy of JPML's order filed on October 4, 2016

Exhibit C – Copy of *Pro Se* Plaintiff's Motion for Reconsideration dated October 8, 2016

Exhibit D – Copy of Defendant VWGoA Response in Opposition dated October 21, 2016

Exhibit E – Copy of *Pro Se* Plaintiff's Reply to Defendant Volkswagen Response in Opposition

Exhibit F – Copy of JPML's order filed on December 7, 2016

## SERVICE LIST

Mr. Jeffrey L. Chase, Esquire
Herzfeld & Rubin, P.C.
125 Broad Street
New York, New York 10004

**EXHIBIT A**

### DEPARTMENT OF VETERANS AFFAIRS

September 15, 2016

**In Reply Refer To:** 317-vsc/pc/jk
CSS ●●7876

Oleg A Yarin
7360 ULMERTON RD
APT 3C
LARGO, FL 33771

Dear Mr. yARIN:

This is to certify that the records of the above-named honorably discharged veteran show

that he is 100 percent permanently and totally disabled, due to service connected disability or disabilities.

Records further show that the effective date of the rating as of 03/05/2005.

Sincerely,

RO Director
VA Regional Office

A veteran seeking real estate tax exemption and/or License Fee Exemption should remember that statements obtained from the U. S. Department of Veterans Affairs   in such matters are simply statements of fact taken from VA records.  The determination as to eligibility for the benefit sought rests with the appropriate Municipal, County or State official, not VA.

| How to Contact VA | |
|---|---|
| **By phone**: 1-800-827-1000<br>**If you use: Telecommunications Device for the Deaf (TDD)**: 711<br>International TDD:  1-800-829-4833<br>On line: www.va.gov<br>https://iris.va.gov | **By letter**: U.S. Department of Veterans Affairs<br>Evidence Intake Center<br>PO Box 4444<br>Newnan, GA  30271-0020<br>**By Fax# 1-844-531-7818** |

VAFL 27-333
JUNE 1995 (R)

Case 3:15-md-02672-CRB   Document 2626   Filed 12/30/16   Page 12 of 43   Exhibit B.

Case MDL No. 2672   Document 2064   Filed 10/04/16   Page 1 of 5

UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION

IN RE: VOLKSWAGEN "CLEAN DIESEL"
MARKETING, SALES PRACTICES, AND
PRODUCTS LIABILITY LITIGATION                                  MDL No. 2672

TRANSFER ORDER

    **Before the Panel:**[*] Plaintiffs in 21 actions listed on the attached Schedule A move under Panel Rule 7.1 to vacate the Panel's orders conditionally transferring their respective actions to MDL No. 2672. Volkswagen defendants[1] (collectively VW) oppose all of the motions.

    After considering the argument of counsel, we find these actions involve common questions of fact with the actions previously transferred to MDL No. 2672, and that transfer under 28 U.S.C. § 1407 will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. Moreover, transfer is warranted for the reasons set out in our order directing centralization. In that order, we held that the Northern District of California was an appropriate Section 1407 forum for actions sharing factual questions regarding the role of VW and related entities in equipping certain 2.0 and 3.0 liter diesel engines with software allegedly designed to engage emissions controls only when the vehicles undergo official testing, while at other times the engines emit nitrous oxide well in excess of legal limits. *See In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, 148 F. Supp. 3d 1367 (J.P.M.L. 2015). These actions involve allegations related to affected VW, Audi and/or Porsche vehicles and clearly fall within the MDL's ambit.

    Plaintiffs in seventeen actions argue against transfer primarily based on the pendency of their motions to remand their respective actions to state court. These plaintiffs can present their motions for

---

[*] Judge Charles R. Breyer took no part in the decision of this matter.

[1] Volkswagen Group of America, Inc. (VWGoA) states that Volkswagen AG (VW AG) and Dr. Ing. h.c. F. Porsche AG are headquartered in the Federal Republic of Germany and named as defendants in certain actions. Although not yet served as required pursuant to the Convention On The Service Abroad of Judicial And Extrajudicial Documents In Civil Or Commercial Matters, [1969] 20 U.S.T. 361, T.I.A.S. No. 5538 (the Convention), and without waiver of their rights under the Convention, VW AG and Porsche AG have reportedly authorized VWGoA to state that they support VWGoA's position on the motions to vacate the CTOs before the Panel.

-2-

remand to the transferee judge.[2] *See, e.g., In re: Ivy,* 901 F. 2d 7, 9 (2nd Cir. 1990); *In re: Prudential Ins. Co. of Am. Sales Practices Litig.,* 170 F. Supp. 2d 1346, 1347-48 (J.P.M.L. 2001).

   *Pro se* plaintiff in the Middle District of Florida *Yarin* action asserts that transfer of his action will cause significant personal inconvenience. Other plaintiffs also stress the inconvenience that transfer may cause, given that their respective witnesses are primarily located where their actions are pending. But, in deciding issues of Section 1407 transfer, the Panel looks to the overall convenience of the parties and witnesses in the litigation as a whole.[3] Here, overall convenience will be served by transfer of all of these actions, given the extensive factual overlap among the actions before us and the nearly 1,300 cases pending in MDL No. 2672. Moreover, we note that "since Section 1407 transfer is for pretrial proceedings only, there is usually no need for the parties and witnesses to travel to the transferee district for depositions or otherwise." *See In re: Cygnus Telecommunications Tech., LLC, Patent Litig.,* 177 F. Supp. 2d 1375, 1376 (J.P.M.L. 2001).

   Plaintiff in the Western District of Missouri *Molle* action, a VW dealer, asserts that its action is unique because it focuses on, *inter alia,* plaintiff's 2006 construction of a new dealer facility and VW's alleged misrepresentations concerning a new rival dealership. But plaintiff also brings claims concerning the alleged damage VW has done to its brand by engaging in the conduct that forms the basis of the "clean diesel" emissions litigation. Given these common factual issues, the presence of *Molle's* unique claims is not an impediment to its transfer.[4]

   The State plaintiff in the Western District of Oklahoma *Pruitt* action asserts that federal jurisdiction is lacking over its enforcement action, while also stressing the unique nature of its claims. Similarly, plaintiff Salt Lake County in the District of Utah action argues that its claims are unique and focused on local concerns – namely, the health effects of excessive emissions caused by the defeat devices on affected vehicles. The transferee judge can decide plaintiff's motion to remand in *Pruitt,* as in other cases. At their core, both actions are based upon the common factual questions in MDL No. 2672—VW's conduct in installing defeat devices in over 500,000 of its diesel vehicles. Allowing these cases to proceed separately would require duplicative, and potentially inconsistent, decisions on

---

   [2] Panel Rule 2.1(d) expressly provides that the pendency of a conditional transfer order does not limit the pretrial jurisdiction of the court in which the subject action is pending. Between the date a remand motion is filed and the date that transfer of the action to the MDL is finalized, a court generally has adequate time to rule on a remand motion if it chooses to do so.

   [3] *See In re: Watson Fentanyl Patch Prods. Liab. Litig.,* 883 F. Supp. 2d 1350, 1351-52 (J.P.M.L. 2012) ("While we are aware that centralization may pose some inconvenience to some parties, in deciding issues of transfer under Section 1407, we look to the overall convenience of the parties and witnesses, not just those of a single plaintiff or defendant in isolation.").

   [4] *See, e.g., In re: Barclays Liquidity Cross & High Frequency Trading Litig.,* 67 F. Supp. 3d 1375, 1376 (J.P.M.L. 2014) ("Section 1407 does not require a complete identity or even a majority of common factual issues as a prerequisite to centralization. The statute also does not require a complete identity of claims or parties.") (internal citations omitted).

-3-

fundamental issues that bear on VW's liability for the installation of the defeat devices. As Salt Lake County acknowledges, the MDL already includes an action brought by a county government. *See Envtl. Prot. Comm'n of Hillsborough Cty. v. Volkswagen AG, et al.,* M.D. Florida, Case No. 16-cv-00721 (transferred on 4/19/16 via unopposed CTO). The Panel routinely transfers claims brought by a State that involve facts common to the MDL proceeding[5] and recently transferred an action brought by the Attorney General of Kentucky over similar objections. *See In re: Volkswagen,* MDL No. 2672, J.P.M.L. doc. 1949 at 2 (August 5, 2016 Transfer Order).

IT IS THEREFORE ORDERED that the actions listed on Schedule A are transferred to the Northern District of California and, with the consent of that court, assigned to the Honorable Charles R. Breyer for inclusion in the coordinated or consolidated pretrial proceedings.

PANEL ON MULTIDISTRICT LITIGATION

*Sarah Vance*

Sarah S. Vance
Chair

Marjorie O. Rendell          Lewis A. Kaplan
R. David Proctor             Ellen Segal Huvelle
Catherine D. Perry

---

[5]  *See, e.g., In re: Fresenius Granuflo/Naturalyte Dialysate Prods. Liab. Litig.,* MDL No. 2428, ECF No. 993 (J.P.M.L., Dec. 11, 2014) (rejecting Louisiana Attorney General's argument that its action should not be transferred to MDL because of "unique" factual and legal issues, noting that "while plaintiff in *State of Louisiana* may seek different relief, its claims are based on the same underlying facts as the actions already in MDL No. 2428."); *In re: Zyprexa Prods. Liab. Litig.,* MDL No. 1596, ECF No. 497 (J.P.M.L. 2004) (transferring action brought by West Virginia Attorney General despite distinct legal theories alleged because the action contained facts common to the MDL).

IN RE: VOLKSWAGEN "CLEAN DIESEL"
MARKETING, SALES PRACTICES, AND
PRODUCTS LIABILITY LITIGATION                          MDL No. 2672

### SCHEDULE A

   <u>District of Colorado</u>

   BERRY, ET AL. v. VOLKSWAGEN GROUP OF AMERICA, INC., ET AL.,
        C.A. No. 1:16-01368
   LORD, ET AL. v. VOLKSWAGEN GROUP OF AMERICA, INC., ET AL.,
        C.A. No. 1:16-01371
   KEHL, ET AL. v. VOLKSWAGEN GROUP OF AMERICA, INC., ET AL.,
        C.A. No. 1:16-01372
   NORTON, ET AL. v. VOLKSWAGEN GROUP OF AMERICA, INC., ET AL.,
        C.A. No. 1:16-01373
   VANN, ET AL. v. VOLKSWAGEN GROUP OF AMERICA, INC., ET AL.,
        C.A. No. 1:16-01375
   RICHIE, ET AL. v. VOLKSWAGEN GROUP OF AMERICA, INC., ET AL.,
        C.A. No. 1:16-01378
   CIONE, ET AL. v. VOLKSWAGEN GROUP OF AMERICA, INC., ET AL.,
        C.A. No. 1:16-01482
   CIONE, ET AL. v. VOLKSWAGEN GROUP OF AMERICA, INC., ET AL.,
        C.A. No. 1:16-01483

   <u>Middle District of Florida</u>

   YARIN v. VOLKSWAGEN GROUP OF AMERICA, INC., ET AL.,
        C.A. No. 8:16-01382

   <u>Eastern District of Louisiana</u>

   ABBASI v. VOLKSWAGEN GROUP OF AMERICA, INC., ET AL.,
        C.A. No. 2:16-12956

   <u>Western District of Missouri</u>

   MOLLE AUTOMOTIVE GROUP, LLC D/B/A MOLLE VOLKSWAGEN v.
        VOLKSWAGEN GROUP OF AMERICA, INC., C.A. No. 2:16-04151
   HENLEY, JR. v. VOLKSWAGEN GROUP OF AMERICA, INC., ET AL.,
        C.A. No. 4:16-00619

   <u>District of New Jersey</u>

   BORRELLI v. VOLKSWAGEN GROUP OF AMERICA, INC., C.A. No. 1:16-04147



- A2 -

Western District of Oklahoma

PRUITT v. VOLKSWAGEN AG, ET AL., C.A. No. 5:16-00759

District of South Carolina

RICKENMANN v. VOLKSWAGEN GROUP OF AMERICA, INC., ET AL.,
      C.A. No. 3:16-02426

Western District of Texas

SULLIVAN v. VOLKSWAGEN GROUP OF AMERICA, INC., C.A. No. 1:16-00634
BUOY, ET AL. v. VOLKSWAGEN GROUP OF AMERICA, INC.,
      C.A. No. 1:16-00635
CHEEK, ET AL. v. VOLKSWAGEN GROUP OF AMERICA, INC.,
      C.A. No. 1:16-00706
ALTSCHUL, ET AL. v. VOLKSWAGEN GROUP OF AMERICA, INC.,
      C.A. No. 1:16-00713

District of Utah

SALT LAKE COUNTY v. VOLKSWAGEN GROUP OF AMERICA, ET AL., D. Utah, C.A.
      No. 2:16-817

Western District of Washington

FARMER v. VOLKSWAGEN GROUP OF AMERICA, INC., ET AL.,
      C.A. No. 3:16-05611



# BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

**IN RE:  VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION**

MDL No. 2672

## PRO SE PLAINTIFF'S MOTION FOR RECONSIDERATION OF TRANSFER ORDER FILED ON OCTOBER 4, 2016

Pro se plaintiff Oleg Yarin moves the Honorable Panel to vacate Transfer Order filed on October 4, 2016 and return plaintiff's case to the U.S. District Court for the Middle District of Florida, Tampa Division.

The transfer order is in error and is not based on the facts of this case and the applicable law.  In issuing its order the Honorable Panel ignored the facts of the plaintiff's case.  The laws are applied to specific sets of facts.  The law in this case 28 U.S.C. § 1407 must be applied to a specific set of facts.  So the first thing the Honorable Panel should have done was to determine a set of facts to which apply the law.  But the Honorable Panel was unable able to determine the facts of this case.  The Honorable Panel was unable to accurately describe the facts of this case.  The Honorable Panel was unable to describe the facts of this case with sufficient detail.  The Honorable Panel was unable to provide a written rationale for its decision as it pertains to the facts of *Yarin* case.

The Honorable Panel used one single line to describe complex and information-rich facts of *Yarin* case:  "*Pro se* plaintiff in the Middle District of Florida *Yarin* action asserts that transfer of his action will cause significant personal inconvenience."

1

If a third party like The New York Times, The Washington Post, The Boston Globe, The Tampa Bay Times, The Advocate or the U.S. Court of Appeals for the Fifth Circuit reads the Honorable Panel's transfer order, what are they supposed to think "significant personal inconvenience" to Yarin is? How can they learn from the order that pro se Plaintiff Yarin is a 100% totally and permanently disabled veteran of the Armed Forces? How can they learn from the order that I am proceeding without a lawyer to save Volkswagen expenses on attorney's fees and costs that my attorney, if hired, could claim against Volkswagen based on Florida law? How are they supposed to learn all other relevant facts?

Indeed, may I clarify what kind of "significant personal inconvenience" the Honorable Panel is referring to? If you mean that a 100% totally and permanently disabled veteran will be deprived of medical and support network, **why don't you just say so?**

When a hotel has a pool located on the premises, that is a convenience. When a hotel room has a fax, that is also a convenience. When one has two walk several blocks to get to a newsstand, is that a "significant personal inconvenience"? Is the Honorable Panel comparing this 100% totally and permanently disabled veteran's absolute need for a medical network and a support network with conveniences that hotels, restaurants and similar establishments offer? The Honorable Panel should clarify this and provide a thorough description of the facts of this case.

The Honorable Panel completely omitted from its description of *Yarin* case the fact that pro se plaintiff Yarin is proceeding without a lawyer in order to save the Defendant, VWGoA expenses on plaintiff's attorney's fees and costs. Under Florida law (Florida Unfair and Deceptive Trade Practices Act and Florida Civil Theft Statute) a lawyer can claim attorney's fees and costs against Volkswagen. And these moneys can be astronomical. On August 10, 2016 the lead counsel for plaintiffs in Volkswagen "CleanDiesel" Settlement Elizabeth J. Cabraser filed

"Settlement Class Counsel's Statement of Additional Information Regarding Prospective Request for Attorney's Fees and Costs." In this document Mrs. Cabraser stated: "Settlement Class Counsel's common benefit fee application will seek no more than $324 million in attorney's fees, plus actual and reasonable out-of-pocket costs, not to exceed $8.5. This fee application will cover all work performed by the 22 Court-appointed Settlement Class Counsel firms and the additional counsel designated to perform common benefit work and all expenses incurred through October 18, 2016, the date of the Final Approval Hearing."

If you divide $324 million by 22 law firms, you get $14.72 million per law firm on average. This is the kind of expense I have been trying to help VWGoA to avoid in connection with my lawsuit. My lawsuit was filed on June 2, 2016, more than four months ago. But so far no attorney can claim a penny in attorney's fees and costs against VWGoA on my behalf because I have been proceeding without an attorney. However, this is about to change due to your transfer order filed on October 4, 2016.

While on active duty this pro se plaintiff wrote military reports for the U.S. Department of Defense. This is how I would summarize the facts of this case. "Pro se plaintiff Yarin proceeds without a lawyer to save VWGoA all expenses on plaintiff's attorney's fees and costs. In accord with Florida law (Florida Unfair and Trade Practices Act and Florida Civil Theft Statue) plaintiff's attorney can claim attorney's fees and costs against Volkswagen. Based on Court documents (Mrs. Elizabeth Cabraser's statement) the attorney's fees and costs can be astronomical. Additionally, pro se Plaintiff Yarin is a 100% totally and permanently service connected disabled veteran of the U.S. Armed Forces. Plaintiff submitted proof of his 100% total and permanent service connected disability. See Department of Veterans' Affairs letter dated September 15, 2016. Plaintiff has an absolute need for medical and support networks.

Plaintiff lacks both medical and support networks in San Francisco Bay area, where he does not reside. Plaintiff has established medical and support networks in Tampa Bay area, where he resides. Due to service connected disabilities and lack of medical and support networks Plaintiff cannot prosecute his lawsuit in San Francisco Court in a pro se status. Plaintiff would have to hire an attorney if his case is transferred to San Francisco. This would create a hardship for VWGoA because the plaintiff's attorney would be able to claim attorney's fees and costs against VWGoA."

This write up, perhaps, could be made better but it would suffice in my opinion as it has all the essential elements of information. It contains the minimum of information that the Honorable Panel should have included in the description of *Yarin* case in its Transfer Order. This write up allows the Honorable Panel to apply the law to it and arrive at a decision.

The Honorable Panel should be familiar with a totality of circumstances test as it is part of law school curriculum. "...a totality of the circumstances test requires the court to consider all of the relevant circumstances of a particular case and not any one circumstance." ("Legal Analysis: the Fundamental Skill", by David Romantz and Kathleen Vinson, page 33.) The Honorable Panel did not use a totality of circumstances test to determine the outcome of this case during this particular phase. This is error.

The Honorable Panel's assertion that "since Section 1407 transfer is for pretrial proceedings only, there is usually no need for the parties and witnesses to travel to the transferee district for depositions or otherwise" is without merit as it pertains to the *Yarin* case. I have visited the local U.S. District Court in Tampa on numerous occasions to obtain information. I should be making even more visits to the Court as this case develops. I also asked the Tampa Court for a meeting with the Judge (Merryday) but he declined as my case in Tampa is stayed. A

meeting with the Judge is necessary to resolve the deficiencies of Court-provided form "Summons in a Civil Action" for the purposes of serving process on Volkswagen AG. This meeting needs to happen as soon as possible. Both the Defendant Volkswagen AG and this pro se plaintiff are prejudiced by delays in substantive development of this case.

Besides, when the Honorable Panel says **"there is <u>usually</u> no need"** we all must remember that Volkswagen "CleanDiesel" Litigation is **<u>an unusual case.</u>** Depending on how you count (whether you include 3L models), roughly 500,000 to 600,000 "CleanDiesel" automobiles were introduced to the U.S. economy over the course of many years. Usually this type of blunder does not happen. Based on the evidence, a calculated effort by Volkswagen who admittedly developed the "alleged" defeat device is the reason "CleanDiesel" automobiles violated the Clean Air Act and emit into the air up to 40 times the legal limit for nitrogen oxide.

When I submitted to the Honorable Panel my Motion to Vacate CTO No. 49, I requested information on qualifications of the members of the Panel such as education, training, licenses, professional affiliations, prior military service, disciplinary standing. To this day I have not received this information from the Honorable Panel. I am in touch with Senator Bill Nelson's office about this. I requested his help in obtaining this information from the Honorable Panel. This information is relevant. I request that the Honorable Panel cooperate with Senator Bill Nelson's office. Based on the record, the Honorable Panel is poorly informed about veterans, disabled veterans and their relationship to the United States. What does Honorable Panel know about medical care for disabled veterans? What does the Honorable Panel know about support needs of disabled veterans? The record shows that you lack knowledge about these important areas which are pertinent to *Yarin* case. Lack of knowledge is perhaps the reason the Honorable Panel can not tell the difference between "significant personal inconvenience" and medical and

supports needs of a veteran. Service members make sacrifices on behalf of all of us. When they finish their commitment to the United States, they become veterans. The relationship between veterans and the United States is intensely patriotic. I feel that veterans' wounds are my wounds. I care for veterans. I generously donate money to various veterans' and military causes: Wounded Warrior Project, Blind American Veterans, DAV, VFW, American Bible Society's "Bibles for Troops", etc. It is unethical for the Honorable Panel to place me in a situation where I would be deprived of medical network and support networks and call it "significant personal inconvenience." Such callous language is a tell-tell sign that the members of the Honorable Panel do not care. But I encourage you to start making efforts to care!

My overall impression after reading the Transfer Order is that the Honorable Panel omits pertinent and significant facts and misrepresents issues to achieve <u>a predetermined result.</u>

According to Florida Judge Thomas D. Sawaya, <u>knowledge, skill and superior intellect is the standard of care for lawyers.</u> (Florida Personal Injury Law and Practice, 2015-2016 Edition.) Based on the evidence of the record, the Honorable Panel does not meet this standard.

There is evidence that the Honorable Panel violated the American Bar Association's Model Rules of Professional Conduct. I have a good mind to file a complaint v. Judge Sarah S. Vance, Panel Chair, with the U.S. Court of Appeals for the Fifth Circuit, followed by complaints against the other members of the Honorable Panel with their appropriate Courts of Appeals. There is evidence in the record to raise questions about the Honorable Panel members' competence, diligence, candor before (within) the tribunal, etc.

On September 6, 2016 I filed a complaint v. Defendant, VWGoA counsel Mr. Jeffrey L. Chase with the Departmental Disciplinary Committee, New York State Supreme Court, Appellate Division, First Judicial Department. I submitted a copy of that complaint to the

6

## BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL NO. 2672 |

## RESPONSE OF DEFENDANT VOLKSWAGEN GROUP OF AMERICA, INC. IN OPPOSITION TO MOTION BY *PRO SE* PLAINTIFF OLEG YARIN FOR RECONSIDERATION OF THE PANEL'S OCTOBER 4, 2016 TRANFSER ORDER

Volkswagen Group of America, Inc. ("VWGoA"), a defendant in *Yarin v. Volkswagen Group of America, Inc., et al.*, M.D. Fla. Case No. 16-cv-01382 (the "*Yarin* action") submits this brief in opposition to *pro se* Plaintiff Oleg Yarin's motion for reconsideration (ECF No. 2073) of the Panel's October 4, 2016 Order transferring the *Yarin* action to the above-captioned MDL in the Northern District of California (ECF No. 2064).

Plaintiff's motion should respectfully be denied because Plaintiff does not, and cannot, show that the Panel misapprehended any facts, controlling law, or any party's position, nor can Plaintiff point to any intervening change in law or circumstances that would warrant this Panel revisiting its decision.

Plaintiff does not dispute that the allegations in his complaint concern the emissions control software in his TDI vehicle and that his suit is, therefore, related to the myriad other actions now centralized for pretrial proceedings before Hon. Charles Breyer in the Northern District of California. *See* ECF No. 2073. Instead, Plaintiff's principal argument in his motion to vacate the CTO and, now, in his motion for reconsideration, has been that he is a disabled veteran who will suffer severe inconvenience if he is required to participate in pre-trial proceedings in the Northern District of California rather than in the Middle District of Florida,

where he originally filed his action. *Id.* Plaintiff claims the Panel did not sufficiently credit the nature of his disabilities in its October 4, 2016 Transfer Order.

VWGoA has no basis to dispute that Plaintiff is a disabled veteran, and does not do so. VWGoA honors Mr. Yarin's service to the country and is sympathetic to Plaintiff's circumstances. However, Plaintiff's status is not a basis for the Panel to reconsider the Transfer Order since the Panel was made aware of, and considered, Plaintiff's circumstances when it decided to transfer Plaintiff's case to the MDL. *See* ECF No. 2064 at p. 2. Plaintiff extensively briefed the Panel on this very subject including in his motion to Vacate CTO-49 as well as in subsequent multiple filings with the JPML, including a reply brief and five supplemental information briefs. *See* ECF Doc. Nos. 1905, 1974, 1984, 2008, 2019, 2030, 2050. Considering those filings, the Panel correctly concluded, as it has done previously in ordering MDL centralization and transfer, that the interests of efficiency and overall convenience to all the parties and witnesses outweighed even "significant personal inconvenience" to an individual plaintiff like Mr. Yarin. *See* ECF No. 2064 at p. 2; *see also In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1351-42 (J.P.M.L. 2012) ("While we are aware that centralization may pose some inconvenience to some parties, in deciding issues of transfer under Section 1407, we look to the overall convenience of the parties and witnesses, not just those of a single plaintiff or defendant in isolation.").

Moreover, Plaintiff's arguments are undermined by the fact that he states he is able to retain a lawyer to assist him in prosecuting his action who would work on a "contingency basis" at "minimal inconvenience." ECF No. 1974 at p. 3. Plaintiff asserts that he does not want to retain such counsel, however, because, according to Plaintiff, this would raise *VWGoA's* legal expenses and cause a "hardship" to *VWGoA.* ECF No. 2073 at pp. 2-4; *see also* ECF No. 1905 at

p. 1, ECF No. 1974 at p. 3. In other words, Plaintiff claims he is proceeding *pro se* in order to save VWGoA money. *Id.* This assertion is manifestly not a valid basis for the Panel to reconsider its transfer of the *Yarin* action. In the first place, VWGoA has not requested – let alone agreed – that Plaintiff should proceed on a *pro se* basis in order to help VWGoA. Obviously, Plaintiff is VWGoA's adversary, not its representative, and Plaintiff clearly has no standing to purport to assert VWGoA's interests in this or any other litigation. Moreover, even if Plaintiff's argument were somehow valid, it is not relevant to Plaintiff's reconsideration motion because, as shown above, Plaintiff already raised it in his motion to vacate the CTO, and there is no evidence that the Panel failed to consider it.

Furthermore, the very fact that Plaintiff has managed repeatedly, on his own, to file pleadings and briefs in the JPML (including those noted above, and the instant motion), in the Northern District of California and in other venues outside of his local district court in Florida, completely undermines any claim that it is "impossible" for him to prosecute his claims outside of his local Florida district court. To the extent that Plaintiff wishes to proceed *pro se* in the Northern District of California, he is clearly capable of doing so. There is no reason that Plaintiff cannot direct, to that court, any requests he may have for accommodation of his disabilities. Moreover, as shown, there is in any event, no plausible reason offered as to why Plaintiff has refused the assistance of a lawyer.

## CONCLUSION

Accordingly, VWGoA respectfully requests that the Panel deny Plaintiff's motion for reconsideration of its October 4, 2016 Transfer Order with respect to the *Yarin* action.

Dated: October 21, 2016

Respectfully submitted,
HERZFELD & RUBIN, P.C.
By: /s/ Jeffrey L. Chase
    Jeffrey L. Chase

125 Broad Street
New York, NY 10004
Telephone: (212) 471-8500
Facsimile: (212) 344-3333
jchase@herzfeld-rubin.com

*Attorneys for Defendant Volkswagen Group of America, Inc.*

- 4 -

## SERVICE LIST

Mr. Jeffrey L. Chase, Esquire
Herzfeld & Rubin, P.C.
125 Broad Street
New York, New York 10004

Honorable Panel. But Mr. Chase's situation is more excusable. He is not a judge, and he is just one person. But based on the record, there were six U.S. Federal Judges who heard *Yarin* case on September 29, 2016 and authored the Transfer Order dated October 4, 2016.

The unethical behavior of the Honorable Panel's members is perplexing. I will be contacting Florida Senators Bill Nelson and Marco Rubio about these issues.

## CONCLUSION

Based on the foregoing, I move the Honorable Panel to vacate Transfer Order dated October 4, 2016 and issue an order to return this pro se plaintiff's case to the U.S. District Court for the Middle District of Florida, Tampa Division. I humbly request the Honorable Panel to provide a written rationale for its decision in response to this Motion for Reconsideration.

I further humbly request the Honorable Panel to direct the counsel for VWGoA to provide a detailed, well-researched and fully substantiated written response to this Motion for Reconsideration.

Plaintiff further humbly requests the Clerk of the Honorable Panel to make this motion part of the Honorable Panel's proceedings and return a date-stamped copy of the motion (provided) to the Plaintiff in an enclosed self-addressed stamped envelope.

Respectfully submitted,

//SIGNED//

Oleg Yarin, SSgt, USAF (Ret.)
7360 Ulmerton Road Apt 3C
Largo, Florida 33771
(727)688-7052
e-mail: olegyarin@tampabay.rr.com
Dated: October 8, 2016.

# BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE: VOLKSWAGEN "CLEAN DIESEL"
MARKETING, SALES PRACTICES, AND
PRODUCTS LIABILITY LITIGATION       MDL No. 2672

---

## *PRO SE* PLAINTIFF'S REPLY TO DEFENDANT VOLKSWAGEN GROUP OF AMERICA, INC. IN OPPOSITION TO MOTION BY *PRO SE* PLAINTIFF OLEG YARIN FOR RECONSIDERATION OF THE PANEL'S OCTOBER 4, 2016 ORDER

*Pro se* plaintiff Oleg Yarin submits this Reply to Volkswagen Group of America, Inc.'s

("VWGoA") Response in Opposition to Motion by *Pro Se* Plaintiff Oleg Yarin for

Reconsideration of the Panel's October 4, 2016 Transfer Order and provides the following

clarifications.

The Defendant's VWGoA Response is in error. Defendant VWGoA stated "… Plaintiff

does not, and cannot, show that the Panel misapprehended any facts, controlling law, or any

party's position…" This statement is incompetent and is not based on the facts of *Yarin* action.

The Panel indeed misapprehended the facts of *Yarin* action. In Panel's October 4, 2016

the Panel described the facts of *Yarin* action in one single sentence: *"Pro se* plaintiff in the

Middle District of Florida *Yarin* action asserts that transfer of his action will cause significant

personal inconvenience." This statement is incompetent. This statement is in error. This

statement is evidence that the Panel did not consider the facts of *Yarin* action and relevant

medical evidence with the required thoroughness and diligence. The Panel misapprehended a

100% totally and permanently disabled veteran's absolute need for medical and support networks

as a mere "significant personal convenience." This is error. The Panel did not describe the facts

of *Yarin* action in sufficient detail. This is error. If a third party reader were to read the Panel's

single-sentence description of *Yarin* action in its October 4, 2016 Transfer Order, they would

have to ask JPML judges a question: "What does "significant personal inconvenience" to *pro se* plaintiff Yarin mean?" And the Panel should provide a clear and unambiguous answer to this question because a totally and permanently disabled veteran's "lack of medical and support networks" is not a "significant personal inconvenience." I request that the Panel provide an answer to the above question in their decision in response to this *pro se* plaintiff's Motion for Reconsideration. The Panel should finally describe the facts of *Yarin* action in sufficient detail. The lack of description of the facts of Yarin action with sufficient diligence and thoroughness violates the Code of Conduct for United States Judges. If the Panel explains that a disabled veteran's absolute need for medical and support networks is merely a significant personal convenience, then I will have more evidence to file judicial misconduct complaints. I would take a copy of the decision and use it to supplement my complaint against Judge Vance to the U.S. Court of Appeals for the Fifth Circuit. See the attached complaint v. Judge Sarah S. Vance (Exhibit A). I submitted to JPML a copy of this complaint against Judge Vance on October 19, 2016. But it was not entered into the JMPL's ECM/EF system. Can you explain why? I am resubmitting a copy of the complaint with this pleading.

The Panel should have applied the law 28 U.S.C. § 1407 to a specific set of facts. The Panel did not do so. The first thing the Honorable Panel should have done was to determine a specific set of facts to which apply the law 28 U.S.C. § 1407. This did not happen either. In the text of 28 U.S.C. § 1407 the Congress used the following language: "actions may be transferred." This means that the Panel is not obligated to transfer every single case to the MDL. The law 28 U.S.C. § 1407 did not relieve the Panel of its duty to describe the facts of cases before it in sufficient detail and with sufficient diligence and thoroughness. The law 28 U.S.C. § 1407 did not relieve the Panel of its duty to thoroughly and diligently analyze the facts of various

2

cases before it. The law 28 U.S.C. § 1407 did not relieve the Panel of its duty to apply a totality of the circumstances test to cases before it. The law 28 U.S.C. § 1407 did not give the Panel the power to describe (misapprehend) a 100% totally and permanently disabled veteran's absolute need for medical and support networks merely as a "significant personal convenience." The law 28 U.S.C. § 1407 did not give the Panel the power to misapprehend a 100% totally and permanently disabled veteran's lack of medical and support networks as "significant personal inconvenience." The law 28 U.S.C. § 1407 did not give the Panel the power to deprive disabled veterans of the U.S. Armed Forces of medical and support networks. **The law 28 U.S.C. § 1407 did not give the Panel the power to disrupt medical, therapeutic, recuperative, rehabilitative care and support activities of disabled veterans.** The law 28 U.S.C. § 1407 did not give the power to treat disabled veterans exceedingly harshly. "Disability" and "absolute need for medical and support networks" are not within the ambit of 28 U.S.C. § 1407. But the Panel realized that it needed to pigeon-hole the facts of *Yarin* action into the language of 28 U.S.C. § 1407. That is why the Panel carefully avoided using in its transfer order factual descriptors such as "100% totally and permanently disabled veteran of the U.S. Armed Forces", "disability", "absolute need for medical and support networks", "extraordinary circumstances", etc. In other words, the Panel intentionally misrepresented the facts of *Yarin* action. This is a violation of the Code of Conduct for the United States Judges. By pigeon-holing the facts of *Yarin* action into one single sentence "*Pro se* plaintiff in the Middle District of Florida *Yarin* action asserts that transfer of his action will cause significant personal inconvenience" the Panel hoped to avoid an appearance of impropriety. This attempt failed. The JPML's misrepresentation of the facts of *Yarin* action described above is unethical and unlawful. Judge Sarah S. Vance signed this transfer order. Judges Marjorie O. Rendell, R. David Proctor,

Catherine D. Perry, Lewis A. Kaplan, Ellen Segal Huvelle are in agreement (collusion) with Judge Sarah S. Vance. In my complaint against Judge Vance I referred to this pattern of behavior as "intentional subversion of Congressional intent." This behavior of the judiciary is an interesting phenomenon that perhaps should be further studied by legal scholars.

Defendant VWGoA stated: "Plaintiff claims the Panel did not sufficiently credit the nature of his disabilities in its October 4, 2016." This statement is incompetent. U.S. Congress did not give the Panel the power to credit the nature of disabilities of veterans of the U.S. Armed Force. The Panel does not have the skills, knowledge, clinical training and experience to credit the nature of veteran's disabilities. The statement above is unethical. I should consider filing an attorney misconduct complaint against defendant VWGoA counsel Mr. Chase.

Defendant VWGoA cited In re Watson Fentanyl Patch Prods. Liab. Litig., 883 F. Supp. 2d 1350, 1351-42 (J.P.M.L 2012): "While we are aware that centralization may pose some inconvenience to some parties, in deciding issues of transfer under Section 1407, we look to the overall convenience of the parties and witnesses, not just those of a single plaintiff or defendant in isolation.") Issues of disability, medical, recuperative, therapeutic and rehabilitative care and absolute need for medical and support networks are not within the ambit of Section 1407. Even if the Panel misrepresented, misunderstood and misapprehended the facts of cases and the law in the past and erred as a result, that should not serve as the basis for repeating these errors in *Yarin* action.

If a JPML judge becomes disabled and is removed from his position as a judge due to a physical or mental disability, no one will argue that such judge's need for medical and support networks is merely a significant personal convenience. If VWGoA legal counsel becomes disabled and is removed from his position as counsel, no one will argue that this counsel's need

4

for medical and support networks is a mere significant personal convenience. Disabled judges and counsels would be removed from their positions and referred to appropriate disability system for medical and supportive care. A new judge would replace the disabled judge. And new counsel would replace the disabled counsel.

I am a disabled veteran of the U.S. Armed Forces. I have limitations and disabilities. But I retain my Constitutional rights and protections. It is my right to proceed in a *pro se* status. But unlike the case with the disabled judiciary or disabled VWGoA counsel I cannot replace myself with another *pro se* plaintiff.

28 U.S.C. § 1407 (f) states: "The Panel may prescribe rules for the conduct of its business not inconsistent with the Acts of Congress and the Federal Rules of Civil Procedure."

U.S. Congress enacted laws to provide medical care for disabled veterans. See Title 38 of the United States Code and Title 38 of the Code of Federal Regulations. Congress established the Department of Veterans Affairs and Veterans Health Administration (VHA). VHA doctors and medical staff provide medical care for disabled veterans. JPML should have researched Title 38 and established policies and procedures that would take into account the intent of Congress to provide medical, rehabilitative, recuperative care and support for this Nation's disabled veterans. JPML was negligent and violated 28 U.S.C. § 1407(f).

In its Response Defendant, VWGoA counsel, specifically Mr. Jeffrey L. Chase used the words "severe inconvenience." This description of the circumstances of *Yarin* action is incompetent. This is error. Defendant VWGoA through its counsel Mr. Chase also tries to pigeon-hole the facts of *Yarin* action into the language of 28 U.S.C. § 1407. It does not appear from the record that Mr. Chase holds a medical doctor's license, that he has had clinical training and experience and is legally able to render opinions on the matters of disability, medical care

and supportive care. For Mr. Chase to issue opinions on such matters is simply unethical and unlawful. The record does not show that he is a medical professional in the field of disability and medicine.

Similarly, it does not appear from the record that Judges Vance, Rendell, Proctor, Perry, Kaplan, Huvelle hold medical licenses and have had clinical training and experience. It is, therefore, unethical and unlawful for them to issue opinions on such matters.

I submitted to the Panel a letter from the Department of Veterans Affairs dated September 15, 2016. In pertinent part the letter states: "This is to certify that the records of the above-named honorably discharged veteran show that he is 100 percent permanently and totally disabled, due to service connected disability or disabilities. Records further show that the effective date of the rating as of 03/05/2005." This letter is competent medical evidence. The Panel completely ignored this pertinent evidence. This is in error. This letter is not mentioned in the Panel's October 4, 2016 transfer order. The Panel's description of the facts of Yarin action should clearly state what evidence I submitted. Because the letter discusses this *pro se* plaintiff's service connected disabilities, the Panel's transfer order should have accurately described the evidence. According to the Panel's October 4, 2016 transfer order the Panel did not consider this pro se plaintiff's disability and need for medical and support networks. It is unlawful and unethical for the Panel not to consider the relevant evidence submitted to it. Had the Panel considered this evidence, the outcome of *Yarin* action during the JPML phase of the proceedings would have been substantially different.

It is my right to sue VWGoA in court. It is my right to prosecute my lawsuit in a *pro se* status. It is my right and decision to prosecute this lawsuit in a pro se status in order to save the defendant VWGoA substantial amounts of money on plaintiff's attorney's fees and costs.

6

Since the day of inception of the *Yarin* action and throughout the entire JPML phase of proceedings I have resided in Largo, Florida and had the full assistance and support of my medical and support networks. The JPML phase of proceedings is not representative of the entire pretrial phase of proceedings in the Northern District of California. I have received generous support and assistance from my support network in prosecuting this case throughout the JPML phase of proceedings. There is no evidence in the record to suggest otherwise. The Defendant VWGoA assertion that "the very fact that Plaintiff has managed repeatedly, on his own, to file pleadings and briefs in the JPML (including those noted above, and the instant motion), in the Northern District of California and in other venues outside of his local district court in Florida, completely undermines any claim that is "impossible" for him to prosecute his claims outside of his local Florida district court" is incompetent. This statement was made to harass this Plaintiff. In all of my activities, including this lawsuit, I have been assisted and supported by my medical and support networks. Filing of JPML-related pleadings and complaints are not representative of the entire pretrial phase of **complex litigation** proceedings in the Northern District of California. MDL Court proceedings will involve a much broader range of activities of significantly higher complexity. However, having responded to this comment by VWGoA, I must emphasize again that Mr. Chase who signed the Response has no record of possessing a medical doctors license, having clinical training and experience or understanding of issues of veterans' disability and medical care. It is unethical for Mr. Chase to predict what this disabled veteran can do. This is outside of his competence as a VWGoA Counsel.

In accord with the First Amendment to the U.S. Constitution I have freedom to exercise my religious beliefs in all matters that have been entrusted to me. I believe in our Lord Jesus

7

Christ, the Son of God. Lord Jesus Christ told his followers: "Love your enemies, bless those who curse you, do good to those who hate you, and pray for those who spitefully use you and persecute you, that you may be sons of your Father in Heaven; for He makes His sun rise on the evil and on the good, and sends rain on the just and on the unjust." (Matthew 5:44.) My Lord and my God Jesus Christ commanded me to do good to those who cause me sorrows. Proceeding without a lawyer in this matter to save VWGoA on plaintiff's attorney's fees and costs is done in compliance with this commandment. VWGoA did not request me to proceed in a pro se status to save them money on attorney's fees and costs. But I did not request VWGoA to install an illegal defeat device in my 2013 Passat TDI yet, as evidence shows, they did it anyway. Can VWGoA explain why they installed a defeat device in my car? I did not ask VWGoA to overcharge me approximately $7000 for "Clean Diesel" engine. But they did it anyway. Who commanded Defendant VWGoA to do it? The MDL 2672 proceeding in the Northern District of California have been underway for more than 13 months. In all this time VWGoA offered no plausible reason why it installed a defeat device in my 2013 Passat TDI.

I explained my reasons for proceeding in a *pro se* status. My reasons for doing a good thing to VWGoA are protected by the First Amendment to the Constitution of the United States. I am not required to obtain Defendant VWGoA's approval or agreement in order to follow my faith in the Lord Jesus Christ and fulfill His commandments.

The U.S. District Court in Northern District of California is not a medical center. It is not a medical and support network for disabled veterans. Judge Charles R. Breyer does not appear to hold license of a medical doctor. He does not appear to have clinical training and experience. He does not appear to have a Drug Enforcement Administration license to prescribe medication. It is unethical for Defendant VWGoA to suggest that this plaintiff should direct "any requests he

may have for accommodation of his disabilities" to the U.S. District Court for the Northern District of California.

Defendant VWGoA made the following statement: "To the extent that Plaintiff wishes to proceed *pro se* in the Northern District of California, he is clearly capable of doing so." This statement is incompetent. This statement was made to harass this Plaintiff. There is no evidence that Mr. Chase holds a license of a medical doctor and has attained long and rigorous academic training and clinical experience in the applicable fields of medicine. Mr. Chase lacks the required skill and knowledge to make the above statement. In making the statement above Mr. Chase acted outside of his capacity as an attorney and violated the ABA Model Rules of Professional Conduct. This is unethical. I will consider filing another professional misconduct complaint against Mr. Chase.

Defendant VWGoA made the following statement: "There is no reason that Plaintiff cannot direct, to that court, any requests he may have for accommodations of his disabilities." This statement is incompetent. This statement was made to harass the Plaintiff. Defendant VWGoA wants me to burden the U.S. District Court for the Northern District of California with requests for accommodations of my disabilities, i.e. medical and supportive care. Would such requests be convenient to the MDL Court? Would such requests be within the ambit of the MDL Court? Does MDL Court have the necessary skill, knowledge, clinical training and experience and resources to accommodate a disabled veteran's request for accommodation of disabilities? This statement above is unethical and violates the ABA Model Rules of Professional Conduct. Mr. Jeffrey L. Chase of Hertzfeld and Rubin, P.C. has represented Volkswagen since at least 1979. See Caiazzo v. Volkswagen, 751 F.2d 241 (2nd Cir. 1981). In order to prevent the installation of the defeat device in approximately 600,000 Volkswagen and Audi vehicles in the

United Sates alone, all Mr. Jeffrey L. Chase had to do was to advise the Volkswagen that installation of an illegal defeat devices in Volkswagen and Audi "Clean Diesel" vehicles would violate the Clean Air Act and trigger a myriad of lawsuits against Volkswagen Group of America, Inc.

## CONCLUSION

Based on the foregoing, I request the Honorable Panel to act only within their judicial capacity and competence and not take upon themselves the role of medical professionals. I request that the Honorable Panel describe the facts of Yarin action in sufficient detail and find that the Congressional intent in enacting 28 U.S.C. § 1407 was not to give the JPML the power to deprive disabled veterans of medical and supportive care. I also request the Honorable Panel to find that in enacting 28 U.S.C § 1407 the Congressional intent was not to give the Panel the power to disrupt disabled veterans' medical, therapeutic, recuperative, rehabilitative care and support activities. I request the Honorable Panel to grant my motion for reconsideration.

Respectfully submitted,

//SIGNED//

Oleg Yarin, SSgt, USAF (Ret.)
7360 Ulmerton Road Apt 3C
Largo, Florida 33771
(727)688-7052
e-mail:  olegyarin@tampabay.rr.com

Dated:  October 29, 2016.

10

## LIST OF ATTACHMENTS

Exhibit A:   Complaint dated October 20, 2016 against Judge Sarah S. Vance to the Court of Appeals for the Fifth Circuit

Exhibit B:   Notice dated October 20, 2016 to JPML of Filing of a Complaint against Judge Sarah S. Vance

Exhibit C:   Certified Mail receipt and proof of mailing

Exhibit D:   Department of Veterans' Affairs letter dated September 15, 2016

## SERVICE LIST

Mr. Jeffrey L. Chase, Esquire
Herzfeld & Rubin, P.C.
125 Broad Street
New York, New York 10004

UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION

IN RE: VOLKSWAGEN "CLEAN DIESEL"
MARKETING, SALES PRACTICES, AND
PRODUCTS LIABILITY LITIGATION                                    MDL No. 2672

TRANSFER ORDER

Before the Panel:[*] Plaintiffs in two actions (Banks and LeBlanc) listed on the attached Schedule A move under Panel Rule 7.1 to vacate the Panel's orders conditionally transferring their respective actions to MDL No. 2672. Additionally, plaintiff in a third action (Yarin) moves to reconsider our October 4, 2016, order transferring his action to MDL No. 2672. Defendant Volkswagen Group of America, Inc., opposes all of the motions.

After considering the argument of counsel, we find these actions involve common questions of fact with the actions previously transferred to MDL No. 2672, and that transfer under 28 U.S.C. § 1407 will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. Moreover, transfer is warranted for the reasons set out in our order directing centralization. In that order, we held that the Northern District of California was an appropriate Section 1407 forum for actions sharing factual questions regarding the role of VW and related entities in equipping certain 2.0 and 3.0 liter diesel engines with software allegedly designed to engage emissions controls only when the vehicles undergo official testing, while at other times the engines emit nitrous oxide well in excess of legal limits. See In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation, 148 F. Supp. 3d 1367 (J.P.M.L. 2015). These actions involve allegations related to affected VW, Audi and/or Porsche vehicles and clearly fall within the MDL's ambit.

Plaintiffs in Banks and LeBlanc argue against transfer primarily based on the pendency of their motions to remand their respective actions to state court and related arguments that federal courts lack jurisdiction over these actions. These plaintiffs can present their motions for remand to the transferee judge.[1] See, e.g., In re: Ivy, 901 F. 2d 7, 9 (2nd Cir. 1990); In re: Prudential Ins. Co. of Am. Sales Practices Litig., 170 F. Supp. 2d 1346, 1347-48 (J.P.M.L. 2001).

───────────────

[*] Judges Charles R. Breyer took no part in the decision of this matter. Judge R. David Proctor did not participate in the decision in Banks.

[1] Panel Rule 2.1(d) expressly provides that the pendency of a conditional transfer order does not limit the pretrial jurisdiction of the court in which the subject action is pending. Between the date a remand motion is filed and the date that transfer of the action to the MDL is finalized, a court generally has adequate time to rule on a remand motion if it chooses to do so.

-2-

Pro se plaintiff in the Middle District of Florida Yarin action seeks reconsideration of our decision transferring his action to the MDL. Plaintiff argues, inter alia, that we failed to adequately explain our rationale for transfer, that our transfer order mischaracterized his disability and dependence on a local medical support network as a "significant personal inconvenience," and we failed to note that he was proceeding pro se in order to save the VW defendants from having to pay fees to any attorney he may hire (in earlier filings, he contended that transfer may force him to hire an attorney).

In our previous order transferring Yarin with twenty other actions, we first noted that Yarin clearly falls within the MDL's ambit, and then we specifically noted that:

> Pro se plaintiff in the Middle District of Florida Yarin action asserts that transfer of his action will cause significant personal inconvenience. Other plaintiffs also stress the inconvenience that transfer may cause, given that their respective witnesses are primarily located where their actions are pending. But, in deciding issues of Section 1407 transfer, the Panel looks to the overall convenience of the parties and witnesses in the litigation as a whole. Here, overall convenience will be served by transfer of all of these actions, given the extensive factual overlap among the actions before us and the nearly 1,300 cases pending in MDL No. 2672. Moreover, we note that "since Section 1407 transfer is for pretrial proceedings only, there is usually no need for the parties and witnesses to travel to the transferee district for depositions or otherwise." See In re: Cygnus Telecommunications Tech., LLC, Patent Litig., 177 F. Supp. 2d 1375, 1376 (J.P.M.L. 2001).

October 4, 2016, Transfer Order at 2.

Absent a significant change in circumstances, we only rarely will reach a different result upon reconsideration. See, e.g., In re: Fresh Dairy Prods. Antitrust Litig. (No. II), 959 F. Supp. 2d 1361, 1362-63 (J.P.M.L. 2013). Here, Plaintiff Yarin has failed to demonstrate that a significant change in circumstances has occurred. In reaching our initial decision to transfer Yarin to the MDL, we were briefed upon, considered and did not find persuasive the arguments that plaintiff then (and now) advances to avoid transfer– namely, that he is attempting to save VW defendants money by proceeding pro se and that he is a disabled veteran who depends upon a medical support system in Tampa.

While we remain sympathetic to arguments regarding plaintiff's health conditions, we continue to hold the opinion that Yarin involves numerous factual issues arising in the MDL proceedings and that transfer will further the just and efficient conduct of his case. Despite having several opportunities to do so, plaintiff still has made no attempt to dispute that his action concerns the same factual controversy as the over 1,370 other MDL actions. While transfer of a particular action might inconvenience some parties to that action, such transfer is often necessary to further the expeditious resolution of the litigation taken as a whole. See, e.g., In re: Crown Life Ins. Premium Litig., 178 F. Supp. 2d 1365, 1366 (J.P.M.L. 2001).

As we previously noted, in all likelihood, plaintiff will not need to travel to the transferee court, and he should be able to participate in the MDL proceedings with respect to his case remotely. Indeed,

-3-

plaintiff has proven adept at filing documents before the Panel. Plaintiff can stay informed of the proceedings in the transferee court via the MDL No. 2672 website and through the transferee court's electronic filing system. If necessary, plaintiff can present his arguments regarding his health conditions to the transferee judge, who can determine if Yarin warrants expedited treatment or whether remand to the transferor court or other pretrial measures might be appropriate. Further, we note that in this MDL, we have transferred at least one other action brought by a pro se plaintiff. See Armstrong v. Volkswagen Group of America, D. Colorado, C.A. No. 1:16-71 (transferred over plaintiff's objections on April 7, 2016).

IT IS THEREFORE ORDERED that the actions listed on Schedule A are transferred to the Northern District of California and, with the consent of that court, assigned to the Honorable Charles R. Breyer for inclusion in the coordinated or consolidated pretrial proceedings.

IT IS FURTHER ORDERED that the motion of plaintiff Oleg Yarin to reconsider our October 4, 2016, decision to transfer his action to MDL No. 2672 is denied.

PANEL ON MULTIDISTRICT LITIGATION

_Sarah Vance_

Sarah S. Vance
Chair

Marjorie O. Rendell          Lewis A. Kaplan
Ellen Segal Huvelle          R. David Proctor*
Catherine D. Perry

IN RE: VOLKSWAGEN "CLEAN DIESEL"
MARKETING, SALES PRACTICES, AND
PRODUCTS LIABILITY LITIGATION

MDL No. 2672

## SCHEDULE A

### Northern District of Alabama

BANKS, ET AL. v. VOLKSWAGEN GROUP OF AMERICA, INC.,
    C.A. No. 7:16! 01219

### Middle District of Florida

YARIN v. VOLKSWAGEN GROUP OF AMERICA, INC., ET AL.,
    C.A. No. 8:16! 01382

### Eastern District of Louisiana

LEBLANC v. VOLKSWAGEN GROUP OF AMERICA, INC., ET AL.,
    C.A. No. 2:16! 13553