Michael J. Myers
Morgan A. Costello
Admitted *Pro Hac Vice*
Assistant Attorneys General
New York State Attorney General's Office
Environmental Protection Bureau
The Capitol
Albany, NY 12224
Telephone: (518) 776-2392
Email: morgan.costello@ag.ny.gov

*Attorneys for Movants State of New York*
*& New York State Dep't of Envtl. Conservation*

(Counsel for additional movants appear in signature block)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 2672 CRB (JSC) |
| This Document Relates to: | **JOINT NOTICE OF MOTION TO REMAND AND JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS BY PLAINTIFFS NEW YORK, MASSACHUSETTS, MARYLAND, PENNSYLVANIA, AND VERMONT TO REMAND** |
| *State of New York et al. v. Volkswagen Aktiengesellschaft et al.*, Case No. 3:16-cv-05089 (CRB) | |
| *Commonwealth of Massachusetts et al. v. Volkswagen Aktiengesellschaft et al.*, Case No. 3:16-cv-05088 (CRB) | The Honorable Charles R. Breyer |
| *Maryland Department of the Environment v. Volkswagen Aktiengesellschaft et al.*, Case No. 3:16-cv-05090 (CRB) | Hearing Date: TBD<br>Hearing Time: TBD |
| *Commonwealth of Pennsylvania, Department of Environmental Protection et al. v. Volkswagen Aktiengesellschaft et al.*, Case No. 3:16-cv-05159 (CRB) | |
| *State of Vermont v. Volkswagen Aktiengesellschaft et al.*, Case No. 3:16-cv-06299 (CRB) | |

1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... iii

NOTICE OF MOTION ......................................................................................................... 1

PRELIMINARY STATEMENT .............................................................................................. 1

POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION ............................................... 3

   ISSUE TO BE DECIDED ................................................................................................... 3

   STATEMENT OF RELEVANT FACTS AND PROCEDURAL BACKGROUND............................ 3

   STANDARD OF REVIEW ................................................................................................. 8

   ARGUMENT ................................................................................................................... 9

     I.   THE MOVING STATES' CLAIMS ARISE EXCLUSIVELY UNDER STATE, NOT
         FEDERAL, LAW ............................................................................................ 10

     II.  VOLKSWAGEN IMPROPERLY ASSERTS "ARISING UNDER" JURISDICTION
         UNDER THE *GRABLE-GUNN* FACTORS........................................................... 12

        A.  The Moving States' Complaints Do Not Necessarily Raise Any Actually Disputed
           Federal Issues.................................................................................................13

           1.  The relief sought does not raise disputed federal issues. ............................13

           2.  The Moving States' state-law claims do not necessarily raise any disputed
               federal issues regarding compliance with federal emissions standards. ......17

        B.  Any Federal Questions Are Not Substantial....................................................19

        C.  Federal Courts Are Not Capable of Resolving the Moving States' Environmental
           Claims Without Compromising the Federal-State Balance. ...............................20

     III.  MOVING STATES ARE ENTITLED TO COSTS AND EXPENSES, INCLUDING
         ATTORNEYS' FEES, THAT WERE CAUSED BY VOLKSWAGEN'S IMPROPER
         REMOVALS ................................................................................................... 23

CONCLUSION................................................................................................................ 23

# TABLE OF AUTHORITIES

## CASES

*Autobahn Motors, Inc. v. Maskay Corp.*, No. 15-CV-04803-JST,
2015 WL 9311001 (N.D. Cal. Dec. 22, 2015) ................................................................ 18

*Beshear ex rel. Ky. v. Volkswagen Grp. of Am., Inc.*, Case No. 16-cv-27-GFVT, 2016 WL
3040492 (E.D. Ky. May 25, 2016) ................................................................................... 2

*Calif. Ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831 (9th Cir. 2004) ................................... 10

*California ex rel. Sacramento Metro. Air Quality Mgmt. Dist. v. United States*,
215 F.3d 1005 (9th Cir. 2000) ........................................................................................ 21

*California v. Hardesty Sand & Gravel*, No. 11-cv-2278, 2012 WL 639344
(E.D. Cal. Feb. 24, 2012) ................................................................................................ 12

*Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987) ..................................................... 8, 10, 14

*Claytor v. Volkswagen*, 189 F. Supp. 3d 602, 2016 WL 3087069
(W.D. Va. May 31, 2016) ........................................................................................... 14, 22

*Connecticut v. McGraw-Hill Cos.*, Case No. 13-cv-311, 2013 WL 1759864
(D. Conn. Apr. 24, 2013) ................................................................................................ 20

*Cooper v. Int'l Paper Co.*, 912 F. Supp. 2d 1307 (S.D. Ala. 2012) ..................................... 17

*Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006) ...................... 9, 20, 22

*Engine Mfrs. Ass'n v. South Coast Air Quality Mgmt. Dist.*, 541 U.S. 246 (2004) ........... 15, 16

*Fed. Home Mortgage Corp. v. Herrera*, Case No. C 12-03320 CRB,
2012 U.S. Dist. LEXIS 108562 (N.D. Cal. Aug. 2, 2012) ............................................. 23

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1 (1983) ................. 9, 12, 14

*Gardner v. UICI*, 508 F.3d 559 (9th Cir. 2007) ................................................................. 23

*Gaus v. Miles, Inc.*, 980 F.2d 564 (9th Cir. 1992) ................................................................ 8

*Giles v. Chicago Drum, Inc.*, 631 F. Supp. 2d 981 (N.D. Ill. 2009) .............................. 17, 19

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*,
545 U.S. 308 (2005) ............................................................................................... 9, 21, 22

*Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*,
508 F. Supp. 2d 295 (D. Vt. 2007) ................................................................................. 18

*Greenwich Fin. Servs. Distressed Mortgage Fund 3, LLC v. Countrywide Fin. Corp.*, 654 F. Supp. 2d 192 (S.D.N.Y. 2009) .................................................. 20

*Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109 (1936) .......................... 10, 12, 18

*Gunn v. Minton*, 133 S. Ct. 1059 (2013) .................................................... 9, 19, 21

*In re Applications to Quash Subpoenas Duces Tecum Issued by the Office of the Attorney General of the State of N.Y.*, 269 A.D.2d 1 (N.Y. App. Div. 1st Dep't 2000) ..................................... 13

*In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378 (S.D.N.Y. 2014) ................................................................................. 9, 20

*Jensen Family Farms, Inc. v. Monterey Bay Unified Air Pollution Control Dist.*, 644 F.3d 934 (9th Cir. 2011) ................................................................... 16

*Kalick v. Northwest Airlines*, 372 Fed. Appx. 317 (3d Cir. 2010) .......................... 17

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ........................... 8

*Lougy v. Volkswagen Grp. of Am., Inc.*, No. 16-1670, 2016 WL 3067686 (D.N.J. May 19, 2016) ................................................................... passim

*Luminant Generation Co., LLC v. United States EPA*, 675 F.3d 917 (5th Cir. 2012) ......... 21

*Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062 (9th Cir. 2008) ....................... 23

*Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005) ................................... 23

*Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804 (1986) ........................ 10, 14, 18

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562 (2016) ......... 9, 22

*Motor & Equipment Manufacturer's Ass'n v. EPA*, 627 F.2d 1095 (D.C. Cir. 1979) ........................................................................ 15

*Motor Vehicle Mfrs. Ass'n v. N.Y. St. Dep't of Envtl. Conservation*, 79 F.3d 1298 (2d Cir. 1996) ............................................................. 15

*N.Y. ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308 (2d Cir. 2016) .......................................................................... 21, 22

*Nevada v. Bank of Am. Corp.*, 672 F.3d 661 (9th Cir. 2012) ................................. 9

*Rains v. Criterion Sys., Inc.*, 80 F.3d 339 (9th Cir. 1996) ............................... 10

*Rodriguez v. Hovensa, LLC*, No. 2012-cv-100, 2014 WL 1308836 (D.V.I. Mar. 31, 2014) ................................................................. 19, 22

*State of Arizona ex rel. Mark Brnovich v. Volkswagen AG*, No. CV-16-1426-ROS, 2016 WL
5929219 (D. Ariz. June 23, 2016) .................................................................................. 2, 23

*U.S. Dep't of Energy v. Ohio*, 503 U.S. 607 (1992) ......................................................... 12

*Vehicle Mfrs. Ass'n v. N.Y. St. Dep't of Envtl. Conservation*, 17 F.3d 521
(2d Cir. 1994) ...................................................................................................................... 16

## STATE STATUTES

10 Vt. Stat. Ann. § 567(b) .................................................................................................... 6

75 Pa. Cons. Stat. Ann. § 4107 ............................................................................................ 5

75 Pa. Cons. Stat. Ann. § 4531 ............................................................................................ 5

9 Vt. Stat. Ann. § 2453(a) .................................................................................................... 7

Cal. Health & Safety Code § 43017 .................................................................................... 16

Cal. Health & Safety Code § 43211 .................................................................................... 16

Mass. Gen. Laws ch. 111 § 142A ........................................................................................ 4

Mass. Gen. Laws ch. 111 § 142K ........................................................................................ 4

Mass. Gen. Laws ch. 111 § 142M ....................................................................................... 4

Md. Code Ann., Envir. § 2-1104 .......................................................................................... 5

N.Y. Envtl. Conserv. Law § 71-2103 ................................................................................... 3

N.Y. Envtl. Conserv. Law § 71-2107 ................................................................................... 3

N.Y. Vehicle & Traffic Law Art. 9, § 375.28-a. .................................................................. 3

## STATE RULES AND REGULATIONS

06-096 Code Me. R. Ch. 127, § 4(A).................................................................................... 7

06-096 Code Me. R. Ch. 127, § 4(A)(1)................................................................................ 7

06-096 Code Me. R. Ch. 127, § 4(A)(2)................................................................................ 7

06-096 Code Me. R. Ch. 127, § 4(A)(5)................................................................................ 7

06-096 Code Me. R. Ch. 127, § 5 ......................................................................................... 7

06-096 Code Me. R. Ch. 127, § 7 ......................................................................................... 7

06-096 Code Me. R. Ch. 127, § 8 ......................................................................................... 7

25 Pa. Code § 121.7 ............................................................................................ 5

25 Pa. Code § 121.9 ............................................................................................ 6

25 Pa. Code § 126.412(a) .................................................................................... 5

25 Pa. Code § 126.412(b) .................................................................................... 5

25 Pa. Code § 126.412(e) .................................................................................... 5

25 Pa. Code § 126.421-23 ................................................................................... 5

25 Pa. Code § 126.431(a) .................................................................................... 5

25 Pa. Code § 126.432(b) .................................................................................... 5

25 Pa. Code § 126.432(c) .................................................................................... 5

310 Code Mass. Regs. 60.01(1) .......................................................................... 4

310 Code Mass. Regs. 60.01(2) .......................................................................... 4

310 Code Mass. Regs. 60.02(12)(b)(1) ............................................................... 4

310 Code Mass. Regs. 60.02(23) ........................................................................ 4

310 Code Mass. Regs. 7.01 ................................................................................. 4

310 Code Mass. Regs. 7.01(2) ............................................................................ 4

310 Code Mass. Regs. 7.40(1)(c) ........................................................................ 4

310 Code Mass. Regs. 7.40(1)(d) ........................................................................ 4

310 Code Mass. Regs. 7.40(2)(a) ........................................................................ 4

310 Code Mass. Regs. 7.40(2)(b) ........................................................................ 4

310 Code Mass. Regs. 7.40(2)(h)(1) .................................................................... 4

310 Code Mass. Regs. 7.40(2)(h)(2) .................................................................... 4

310 Code Mass. Regs. 7.40(4)(a)(1) .................................................................... 4

6 NYCRR § 200.1 ............................................................................................... 3

6 NYCRR § 200.9 .......................................................................................... 3, 10

6 NYCRR § 211.1 ............................................................................................... 3

6 NYCRR § 218-11.1 .......................................................................................... 3

6 NYCRR § 218-2.1 ........................................................................................................... 3

6 NYCRR § 218-2.4 ........................................................................................................... 3

6 NYCRR § 218-3.2 ........................................................................................................... 3

6 NYCRR § 218-6.2 ........................................................................................................... 3

Md. Regs. Code 26.11.20.02A ........................................................................................... 5

Md. Regs. Code 26.11.34.02B (22)-(27) ........................................................................... 5

Md. Regs. Code 26.11.34.02B(4) ....................................................................................... 5

Md. Regs. Code 26.11.34.02B(6) ....................................................................................... 5

Md. Regs. Code 26.11.34.05 .............................................................................................. 5

Md. Regs. Code 26.11.34.13 .............................................................................................. 5

**FEDERAL STATUTES**

28 U.S.C. § 1331 ........................................................................................................... 9, 12

28 U.S.C. § 1441(a) ........................................................................................................... 8

28 U.S.C. § 1447 ...................................................................................................... 2, 3, 23

28 U.S.C. § 1447(c) ........................................................................................................... 1

42 U.S.C. § 7401(a)(3) ..................................................................................................... 21

42 U.S.C. § 7407(a) ..................................................................................................... 2, 21

42 U.S.C. § 7507 ..................................................................................................... passim

42 U.S.C. § 7511 .............................................................................................................. 21

42 U.S.C. § 7511a ............................................................................................................ 21

42 U.S.C. § 7543(a) .................................................................................................... 10, 20

42 U.S.C. § 7543(b) ............................................................................................... 10, 11, 21

42 U.S.C. § 7543(b)(1)(C) ............................................................................................... 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  **NOTICE OF MOTION**

2       Please take notice that, on a date and time to be determined by the Court, plaintiffs State of New

3  York, New York State Department of Environmental Conservation, Commonwealth of Massachusetts,

4  Maryland Department of the Environment, Commonwealth of Pennsylvania, Department of

5  Environmental Protection and Department of Transportation, and State of Vermont (collectively,

6  Moving States),[1] will move this Court, pursuant to 28 U.S.C. § 1447(c), to remand their respective cases

7  against defendants (collectively, Volkswagen or defendants), back to the state courts in which they

8  originated, due to lack of subject matter jurisdiction, and for payment of just costs and actual expenses,

9  including attorneys' fees, incurred as a result of defendants' improper removals of the Moving States'

10  actions to federal court.

11  **PRELIMINARY STATEMENT**

12       Each Moving State brought an enforcement action in its sovereign capacity in its own state court

13  for violations of its respective state civil environmental and/or anti-tampering statutes and regulations in

14  connection with Volkswagen's admitted use of illegal air pollution control "defeat devices." The

15  Moving States brought their enforcement actions to protect their own citizens and air quality, asserting

16  violations of their state civil environmental and/or anti-tampering laws and regulations designed to

17  protect public health by strictly limiting motor vehicle pollution in their states. The Moving States are all

18  "section 177" states, meaning that, pursuant to section 177 of the Clean Air Act, 42 U.S.C. § 7507, they

19  each have incorporated into state law, and enforce under their own sovereign powers, automobile

20  emission standards that are identical to those enacted in California. These standards are generally more

21  stringent than those promulgated by United States Environmental Protection Agency (EPA) and

22  enforced by the federal government. The Moving States' claims are predicated solely on state laws.

23  ───────────────

24  [1] The State of Maine has also brought a case against Volkswagen in its state court. Although Maine's
    case has not yet been transferred to this Court, Volkswagen filed a notice of removal of Maine's action

25  on January 27, 2017, and has indicated its intent to designate it for transfer to this Court, which transfer
    Maine will not oppose. After transfer, Maine intends to move for remand and will join in this brief.

26  Therefore, the Moving States have included Maine in this brief.

27

28

Volkswagen improperly removed each of the Moving States' cases relying on meritless theories of federal jurisdiction that are expressly foreclosed by binding precedent and persuasive authority across the United States. Federal jurisdiction over state-law claims exists in only a "small" category of "special" cases in which the claims asserted present a nearly pure issue of federal law that is necessary to the case, actually in dispute, and substantial, and that could be decided without affecting the division of responsibility between the federal and state courts. The Moving States' cases do not meet any one of these criteria. The Moving States' claims in no way depend on any necessary federal question, substantial or otherwise, that is actually in dispute, including any questions under the federal Clean Air Act or under regulations issued by EPA. Nor can Volkswagen rely on any potential federal defenses to create federal jurisdiction in these cases.

Further, allowing removal of the Moving States' state-based enforcement actions to federal court would contravene the congressionally-approved division of state and federal responsibilities by interfering with the Moving States' overriding sovereign interests in enforcing their own state pollution laws, an interest that Congress expressly reserved to the Moving States under the Clean Air Act. *See* 42 U.S.C. §§ 7507, 7407(a). Other district courts that have ruled on motions to remand similar state enforcement actions against Volkswagen, including an environmental enforcement action brought by the State of New Jersey (a section 177 state), have uniformly rejected the arguments made here by Volkswagen for federal subject matter jurisdiction.[2]

As federal subject matter jurisdiction is lacking, the Moving States' actions should all be remanded back to their respective state courts pursuant to 28 U.S.C. § 1447. Further, because the

---

[2] *See Lougy v. Volkswagen Grp. of Am., Inc.*, No. 16-1670, 2016 WL 3067686 (D.N.J. May 19, 2016); *State of Arizona ex rel. Mark Brnovich v. Volkswagen AG*, No. CV-16-1426-ROS, 2016 WL 5929219 (D. Ariz. June 23, 2016); *Cf. Beshear ex rel. Ky. v. Volkswagen Grp. of Am., Inc.*, Case No. 16-cv-27-GFVT, 2016 WL 3040492 (E.D. Ky. May 25, 2016) (declining to rule on merits of remand motion and staying further proceedings pending a ruling by the Judicial Panel on Multidistrict Litigation (JPML) concerning transfer of the action to this Court).

absence of federal jurisdiction has been clear from the outset, this Court should award the Moving States

their costs incurred as a result of Volkswagen's improper removals.

## POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION

### ISSUE TO BE DECIDED

The issue to be decided is whether remand of these state court actions is required pursuant to

28 U.S.C. § 1447 due to lack of subject matter jurisdiction.

### STATEMENT OF RELEVANT FACTS AND PROCEDURAL BACKGROUND

On July 19, 2016, the State of New York and the New York State Department of Environmental

Conservation (collectively, New York), filed a complaint in New York State Supreme Court seeking

civil penalties and injunctive relief for Volkswagen's violations of state civil environmental laws and

regulations designed to protect public health by strictly limiting motor vehicle pollution. Case No.

904021-16 (N.Y. Sup. Ct., Albany Co.). *See* Declaration of Morgan A. Costello, sworn to on January 31,

2017 (NY Decl.), Ex. A. New York's complaint asserts five causes of action against Volkswagen:

(1) violations of New York emissions standards and on-board diagnostics requirements in the sale of the

subject vehicles that exceeded these standards and requirements in everyday use (N.Y. Envtl. Conserv.

Law (ECL) §§ 71-2103 & 71-2107; 6 N.Y. Comp. Code R. & Regs. (NYCRR) §§ 218-2.1 & 200.9);

(2) violations of prohibition on false statements in emissions certifications and reporting to secure

certification of the subject vehicles (ECL §§ 71-2103 & 71-2107; 6 NYCRR §§ 218-2.1, 218-2.4,

218-3.2, 200.1 & 200.9); (3) violations of New York's environmental performance label requirements

by placing fraudulently obtained emissions performance labels on these non-complying vehicles to

enable their sale in New York (6 NYCRR §§ 218-11.1 & 200.9); (4) violations of New York laws

prohibiting use of defeat devices by installing defeat devices and disabling vehicles' emissions systems

on the subject vehicles (6 NYCRR § 218-6.2 & N.Y. Vehicle & Traffic Law Art. 9, § 375.28-a); and

(5) violations of New York law prohibiting emissions that unreasonably interfere with the comfortable

enjoyment of life or property by causing through the sale of the subject vehicles air pollution that is

injurious to human life in New York (6 NYCRR § 211.1). Volkswagen removed New York's state

action to the United States District Court for the Northern District of New York on August 17, 2016.
Case No. 1:16-cv-1005-GTS-CFH (N.D.N.Y.). *See* NY Decl., Ex. B.

On July 19, 2016, the Commonwealth of Massachusetts filed a complaint in the Suffolk County
Superior Court, Boston, Massachusetts seeking civil penalties and injunctive relief for Volkswagen's
violations of the state's civil environmental laws and regulations. Case No. 16-2266D (Mass. Super.
Ct.). *See* Declaration of Christophe Courchesne, sworn to on Jan. 31, 2017 (Mass. Decl.), Ex. A).
Massachusetts' complaint asserts six causes of action against Volkswagen: (1) causing through the use
of defeat devices in the subject vehicles and the vehicles' consequent air emissions in excess of
regulatory standards, a condition of air pollution in violation of Massachusetts law (Mass. Gen. Laws ch.
111, §§ 142A & 142M, & 310 Code Mass. Regs. (C.M.R.) 7.01 & 60.01(1) ; (2) violating Massachusetts
emissions regulations through the use of defeat devices in the subject vehicles to cause emissions of
nitrogen oxides ($NO_X$) in excess of the standards in the regulations (Mass. Gen. Laws ch. 111, §§ 142A
& 142K, & 310 C.M.R. 7.40(1)(c) & 7.40(1)(d) ); (3) making false submissions to the Massachusetts
Department of Environmental Protection in the certification process for the subject vehicles (Mass. Gen.
Laws ch. 111, §§ 142A & 142M, & 310 C.M.R. 7.01(2) & 60.01(2) ); (4) submitting invalid Executive
Orders that were fraudulently obtained from the California Air Resources Board (CARB) to the
Massachusetts Department of Environmental Protection in the certification process for the subject
vehicles (Mass. Gen. Laws ch. 111, §§ 142A & 142K, & 310 C.M.R. 7.40(2)(a) ); (5) tampering with
the emissions systems through the use of defeat devices on the subject vehicles in violation of
Massachusetts law (Mass. Gen. Laws ch. 111, §§ 142A, 142K, & 142M, & 310 C.M.R. 7.40(2)(b) ,
7.40(2)(h)(1) , 7.40(2)(h)(2) , 7.40(4)(a)(1) , 60.02(12)(b)(1) & 60.02(23) ); and (6) engaging in a civil
conspiracy to commit these violations. Volkswagen removed Massachusetts' state action to the United
States District Court for the District of Massachusetts on August 19, 2016. Case No. 1:16-cv-11690 (D.
Mass.). *See* Mass. Decl., Ex. B.

On July 19, 2016, the Maryland Department of the Environment (Maryland) filed a complaint in
the Circuit Court for Baltimore City, Maryland seeking civil penalties and injunctive relief for
Volkswagen's violations of the state's environmental laws and regulations. Case No. 24-C-16-004114.

*See* Declaration of Roberta R. James, sworn to on Jan. 31, 2017 (Md. Decl.), Ex. A. Maryland's complaint asserts four causes of action: (1) selling the subject vehicles in Maryland without valid CARB Executive Orders (Md. Code Ann., Envir. § 2-1104; Md. Regs. Code (COMAR) 26.11.34.05); (2) violating Maryland's NO$_X$ emissions limits in the sale of the subject vehicles (COMAR 26.11.34.02B(4) & (6) ); (3) submitting false reports (COMAR 26.11.34.13) on NO$_X$ emissions compliance with respect to the subject vehicles; and (4) violating Maryland's anti-tampering provisions by installing and using defeat devices on the subject vehicles (COMAR 26.11.20.02A & COMAR 26.11.34.02B (22)-(27) ). Volkswagen removed Maryland's state action to the United States District Court for the District of Maryland on August 18, 2016. Case No. 1:16-cv-02921-RDB (D. Md.). *See* Md. Decl., Ex. B.

On August 1, 2016, the Commonwealth of Pennsylvania's Department of Environmental Protection and Department of Transportation (collectively, Pennsylvania) filed a complaint in the Commonwealth Court of Pennsylvania seeking civil penalties and injunctive relief for Volkswagen's violations of the state's environmental laws and regulations and its anti-tampering statutes. Case No. 423 MD 2016 (Pa. Commw. Ct.). *See* Declaration of Nicole R. DiTomo, sworn to on Jan. 31, 2017 (Penn. Decl.), Ex. A. Pennsylvania's complaint asserts nine causes of action: (1) violating Pennsylvania environmental and vehicle laws by disabling the emissions control system on the subject vehicles (75 Pa. Cons. Stat. Ann. §§ 4107 & 4531); (2) misrepresenting to Pennsylvania that the subject vehicles complied with the required emissions standards (25 Pa. Code §§ 126.421-23); (3) obtaining false CARB Executive Orders through Volkswagen's non-disclosure of defeat devices on the subject vehicles for use in the Pennsylvania certification process (25 Pa. Code § 126.412(a)); (4) failing to accurately demonstrate compliance with Pennsylvania standards on the subject vehicles with respect to NMOG and NMOG plus NOx fleetwide emissions averages (25 Pa. Code § 126.412(b)); (5) using false emissions control labels in Pennsylvania (25 Pa. Code § 126.412(e)); (6) failing to accurately report the NMOG and NMOG plus NOx fleetwide average of the subject vehicles (25 Pa. Code §§ 126.432(b) & (c) ); (7) failing to accurately warrant that the subject vehicles met all applicable regulations (25 Pa. Code § 126.431(a)); (8) causing excessive air pollution through the sale of the subject vehicles (25 Pa. Code § 121.7); and (9) using a device to conceal air emissions or contaminants on the subject vehicles (25 Pa.

Code § 121.9). Volkswagen removed Pennsylvania's state action to the United States District Court for the Middle District of Pennsylvania on August 25, 2016. Case No. 1:16-cv-01765-CCC (M.D. Pa.). *See* Penn. Decl., Ex. B.

On August 23, 2016, Volkswagen notified the Court (ECF No. 1756) that defendants and five states (Maryland, Massachusetts, New York, Pennsylvania, and Washington[3]) had entered into a "Standstill Agreement" to facilitate efficient resolution of the States' environmental claims. The Standstill Agreement provided that these states would not oppose transfer of their state environmental actions to this Court and, after transfer, would move to remand their actions in accordance with Pre-Trial Order No. 22. The Standstill Agreement further provided that Volkswagen intended to oppose these states' remand motions.

On September 8, 2016, the State of Vermont a filed a complaint in the State of Vermont Superior Court, Washington Unit, seeking civil penalties and injunctive relief for Volkswagen's violations of the state's environmental and consumer protection laws and regulations. Case No. 536-9-16 (Vt. Sup. Ct.). *See* Declaration of Nicholas F. Persampieri, sworn to on Jan. 31, 2017 (Vt. Decl.), Ex. A. Vermont's complaint asserts ten causes of action: (1) failing to disclose auxiliary emissions control devices on the subject vehicles (VAPCR Subtitle XI); (2) selling the subject vehicles in Vermont based on falsely obtained CARB Executive Orders (VAPCR § 5-1103); (3) deploying defeat devices (VAPCR Subtitle XI), and rendering inoperative the subject vehicles' emissions systems (VAPCR § 5-701 & 10 Vt. Stat. Ann. § 567(b)); (4) violating with respect to the sale of the subject vehicles California's NOx emissions standards as codified in Vermont law (VAPCR Subtitle XI); (5) violating Vermont smog index and environmental performance labeling requirements with respect to the sale of the subject vehicles (VAPCR Subtitle XI); (6) violating on-board diagnostics system requirements with respect to the sale of the subject vehicles (VAPCR Subtitle XI); (7) improperly selecting vehicles for testing in the process of obtaining CARB Executive Orders necessary to place the subject vehicles on sale in Vermont (VAPCR

---

[3] Washington has not yet filed a lawsuit against Volkswagen, but has issued a notice of penalty asserting an administrative penalty claim under Washington environmental laws.

Subtitle XI); (8) submitting improper test data for the subject vehicles in the process of obtaining CARB Executive Orders necessary to place the subject vehicles on sale in Vermont (VAPCR Subtitle XI); (9) engaging in deceptive acts and practices by, among other things, misrepresenting to consumers the environmental impact of the subject vehicles in connection with the placement onto the Vermont market of the subject vehicles (9 Vt. Stat. Ann. § 2453(a)); and (10) engaging in unfair acts and practices by submitting inaccurate emissions data in connection with the placement onto the Vermont market of the subject vehicles (9 Vt. Stat. Ann. § 2453(a)). Volkswagen removed Vermont's state action to the United States District Court for the District of Vermont on October 7, 2016. Case No. 2:16-cv-00269-cr (D. Vt.).[4] Vt. Decl., Ex. B. Vermont signed onto a Standstill Agreement with Volkswagen on September 29, 2016 that closely tracks the Standstill Agreement described above. *Id.*, Ex. C.

On December 29, 2016, Maine filed a complaint in the Maine Superior Court (Kennebec County) seeking civil penalties and injunctive relief for Volkswagen's violations of state civil environmental regulations. Case No. CV-2016-242 (Me. Super. Ct.). *See* Declaration of Mary Sauer, sworn to on Jan. 31, 2017 (Me. Decl.), Ex. A. Maine's complaint asserts five causes of action against Volkswagen: (1) violations of Maine's rule on emissions standards arising from Volkswagen's failure to obtain valid CARB Executive Orders for vehicles sold in Maine (06-096 Code Me. R. (C.M.R.) Ch. 127, § 4(A)); (2) violations of Maine's exhaust emissions standards and on-board diagnostic requirements arising from Volkswagen's use of the defeat devices on vehicles sold in Maine (06-096 C.M.R. Ch. 127, § 4(A)(1) & (5) ); (3) violations of Maine's rule label requirements because labels affixed to vehicles sold in Maine were not valid (06-096 C.M.R. Ch. 127, § 4(A)(2) ); (4) violations of Maine's rule warranty requirements for vehicles delivered for sale to Maine (06-096 C.M.R. Ch. 127, § 5); and (5) violations of Maine's fleet average emissions requirements (06-096 C.M.R. Ch. 127, §§ 7 & 8). Volkswagen removed Maine's action to federal court on January 27, 2017. Me. Decl., Ex. B. Maine

---

[4] Concurrently with this joint brief, Vermont is filing a supplemental memorandum of law demonstrating that, as with its environmental claims, its deceptive and unfair acts and practices causes of action also do not provide a basis for federal jurisdiction.

signed onto a Standstill Agreement with defendants on January 25, 2017 that closely tracks the Standstill Agreement described above, pursuant to which Volkswagen intends to transfer Maine's action to this Court. *Id.*, Ex. C.

The Judicial Panel on Multidistrict Litigation's (JPML) order transferring New York's, Massachusetts', and Maryland's federal actions to this Court became effective on August 31, 2016 (ECF No. 1792). The JPML's order transferring Pennsylvania's action to this Court became effective on September 7, 2016 (ECF No. 1820), and the order transferring Vermont's action became effective on October 24, 2016 (ECF No. 2092). Transfer of the Maine action to this Court is imminent.

New York, Pennsylvania, Massachusetts, Maryland, and each filed motions to remand their respective actions on October 5, 2016 (ECF Nos. 1995, 1996, 2001, & 2002). Vermont filed a motion to remand on November 4, 2016 (ECF No. 2156). After transfer of the Maine action to this Court, Maine will file a motion to remand.

## STANDARD OF REVIEW

"Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and Congress." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A suit filed in state court may be removed to federal court if "the district courts of the United States have original jurisdiction" over the case. 28 U.S.C. § 1441(a). Thus, "[o]nly state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).

Federal courts "strictly construe the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.* This "strong presumption" against removal means that the removing party always bears the heavy burden of establishing that removal is proper. *Id.*

The presumption against federal jurisdiction is even stronger where, as here, defendants seek to remove cases brought by States to vindicate their sovereign interests in enforcing their own state laws and in protecting their own citizens. Under these circumstances, the "claim of sovereign protection from removal arises in its most powerful form." *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 676 (9th Cir.

2012). As the Supreme Court has explained: "Considerations of comity make [federal courts] reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 21 n.22 (1983); *see also Nevada*, 672 F.3d at 676 (deferring to "Nevada's strong sovereign interest in enforcing its state laws . . . in the courts of its own state" and ordering remand); *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 385 (S.D.N.Y. 2014) ("The presumption against federal jurisdiction is especially strong in cases of this sort, involving States seeking to vindicate quasi-sovereign interests in enforcing state laws and protecting their own citizens from deceptive trade practices and the like.").

## ARGUMENT

Volkswagen's notices of removal assert "arising under" federal question jurisdiction under 28 U.S.C. § 1331, which authorizes federal district courts to exercise original jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." Federal jurisdiction, however, does not exist where there is a mere possibility that an issue of federal law may arise. Rather, a case "arises under" federal law in two ways: either federal law creates the cause of action asserted, which is the basis for the vast bulk of cases that arise under federal law; or in a "special and small" category of cases, a claim can arise under federal law if each of four requirements is met: (1) a federal issue is necessarily raised; (2) actually disputed; (3) substantial; and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *Gunn v. Minton*, 133 S. Ct. 1059, 1064-65 (2013) (citing *Grable & Sons Metal Prods., Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 314 (2005)) (hereinafter, the *Grable-Gunn* test); *see also Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006) (stating that removal based on a substantial federal question is a "special and small category" of state-law claims involving "pure issues of [federal] law" and is generally inapplicable to "fact-bound and situation-specific" cases, and that "it takes more than a federal element to open the 'arising under' door"); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562, 1570 (2016) (noting that federal jurisdiction over state law claims will not lie unless the claim "rises or falls on the plaintiff's ability to prove a violation of a federal duty" and the state-law "claim's very success depends on giving effect to a federal requirement").

## I.      THE MOVING STATES' CLAIMS ARISE EXCLUSIVELY UNDER STATE, NOT FEDERAL, LAW

The Moving States each pled claims exclusively under their state air pollution control statutes and regulations.[5] None of the Moving States have asserted any federal causes of action. Whether removal on the basis of federal question jurisdiction exists must be determined by reference to a plaintiff's "well-pleaded complaint." *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986). The federal question must be apparent on the face of the complaint, unaided by the answer or by the petition for removal. *See Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 112-13 (noting that the federal question cannot be "merely a possible or conjectural one"). The "well-pleaded complaint" rule permits a plaintiff, as "master of the complaint," to "choose to have the cause heard in state court by eschewing claims based on federal law." *California Ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838-39 (9th Cir. 2004) (citation omitted). Thus, where a plaintiff can bring claims under both federal and state law, the plaintiff can prevent removal by ignoring the federal claim and alleging only state law claims. *Caterpillar, Inc.*, 482 U.S. at 392; *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 344 (9th Cir. 1996).

Under the well-pleaded complaint rule, the Moving States' state-law claims do not give rise to federal question jurisdiction. While the Clean Air Act generally preempts states from adopting and enforcing state-specific vehicle emission standards that would otherwise require manufacturers to design and market a multitude of different models to suit state-specific standards, 42 U.S.C. § 7543(a), the Act expressly carves out an exception for California. *Id.* at § 7543(b). As the only state to have promulgated vehicle emission standards as of 1970 when Congress enacted the Clean Air Act's mobile source provisions, section 209(b) of the Act grants California a waiver to adopt and enforce its own state

---

[5] For instance, in Count I of its complaint, New York alleges a violation of New York's Emission Standards for Motor Vehicles and Motor Vehicle Engines regulations at 6 NYCRR §§ 200.9 and 218, promulgated under New York's Environmental Conservation Law, which prohibit any person from selling, registering, or offering for sale a new or used motor vehicle that is not certified as meeting California's emission regulations. *See* NY Decl., Ex. A, at ¶¶ 248-261.

standards *as a matter of state law*, provided that California has determined that its standards are, "in the aggregate, at least as protective of public health and welfare as applicable Federal standards." *Id.*

Beginning in 1977, Congress created a second exception to preemption in section 177 of the Act, which permits other states to adopt and enforce vehicle emission standards identical to those promulgated by California. Section 177 provides:

> Notwithstanding section 7543(a) of this title, any State which has plan provisions approved under this part may *adopt and enforce* for any model year standards relating to control of emissions from new motor vehicles or new motor vehicle engines and take such other actions as are referred to in section 7543(a) of this title respecting such vehicles if – (1) such standards are identical to the California standards for which a waiver has been granted for such model year; and (2) California and such State adopt such standards at least two years before commencement of such model year (as determined by regulations of the Administrator).

42 U.S.C. § 7507 (emphasis added). Thus, by the express terms of section 177, these states have full authority to "adopt and enforce" vehicle emission standards as a matter of *state, not federal, law*.

Each of the Moving States has adopted California's emission standards into its state environmental laws and regulations. When the Moving States sue to enforce those standards, they are suing under their state laws, not under the Clean Air Act or any federal statute or regulation. While Moving States' complaints refer to Volkswagen's violation of federal law, their complaints do not seek to enforce any federal law, but rather seek to vindicate the rights of their own citizens solely pursuant to the rights and powers conferred by state statutes and regulations. In light of that clear authority, the Moving States did not allege, nor must they prove, violations of any federal law to prevail on their claims against Volkswagen. Rather, state law provides the substantive standards that Volkswagen has violated, as well as the remedies for those violations.

Volkswagen relies heavily on the existence of the federal statutory scheme under the Clean Air Act and EPA's regulatory role over motor vehicle emissions to allege some inchoate yet overriding federal interest. The argument avails Volkswagen nothing. The fact that the federal Clean Air Act reserves to a state the authority to enact and enforce certain explicit motor vehicle standards does not give rise to federal jurisdiction. Under the unambiguous holdings of numerous Supreme Court cases, federal law deferring statutory control to the states does not confer federal jurisdiction. *See Gully*, 299

U.S. at 116 ("That there is a federal law permitting such [state action] does not change the basis of the suit, which is still the statute of the state, though the federal law is evidence to prove the statute valid."); *U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 625 (1992) (stating that in 28 U.S.C. § 1331, "the phrase 'arising under' federal law . . . exclude[s] cases in which the plaintiff relies on state law, even when the State's exercise of power in the particular circumstances is expressly permitted by federal law"); *Franchise Tax Bd.*, 463 U.S. at 11 (same); *see also Lougy v. Volkswagen*, 2016 WL 3067686, at *3 (same). Further, even where "the [Clean Air Act] provides the basis for adoption of the state rules and regulations, the federal origin of the state statute does not confer federal question removal jurisdiction." *California v. Hardesty Sand & Gravel*, No. 11-cv-2278, 2012 WL 639344, at *4 (E.D. Cal. Feb. 24, 2012) (citing *Gully*, 299 U.S. at 116). In short, the Moving States' claims plainly arise under state, not federal, law.

## II.   VOLKSWAGEN IMPROPERLY ASSERTS "ARISING UNDER" JURISDICTION UNDER THE *GRABLE-GUNN* FACTORS

Recognizing, as it must, that state, not federal, law creates the causes of action asserted by the Moving States, Volkswagen cites three purported federal questions supporting federal jurisdiction under the *Grable-Gunn* test, all of which relate to the *relief* sought by the Moving States for Volkswagen's violations of state environmental laws and regulations: (1) whether the Moving States' penalty regimes are identical to California's, as Volkswagen claims is required under section 177 of the Clean Air Act; (2) whether the Moving States' requests for injunctive relief, including appointment of a monitor, are consistent with section 177 of the Clean Air Act; and (3) the legal consequences for Volkswagen's use of "defeat devices," the legal definition of which is governed by federal law and California regulations expressly approved by EPA. *See, e.g.,* Notice of Removal at 4, *New York v. Volkswagen AG et al.*, No. 1:16-cv-01005 (N.D.N.Y. Aug. 17, 2016), attached as Ex. B to NY Decl.

These arguments fail the *Grable-Gunn* test because they do not relate to the face of the Moving States' complaints, but rather are premised on purported defenses to such claims. Regardless, Volkswagen's preemption defenses do not raise substantial disputed federal issues. Section 177 requires states to implement emissions "standards" identical to California's, but leaves the appropriate measures of relief to the states. Further, where, as here, Volkswagen has admitted installing "defeat devices" in the

relevant vehicles,[6] resolution of the Moving States' state law claims will not necessarily require resolving any legal dispute, substantial or otherwise, regarding the meaning of that term.

**A.** **The Moving States' Complaints Do Not Necessarily Raise Any Actually Disputed Federal Issues.**

The first and second *Grable-Gunn* factors require that a federal issue is necessarily raised and actually disputed. *See, supra*, at 9. None of the purported issues of federal law asserted by Volkswagen meet these requirements.

### 1. The relief sought does not raise disputed federal issues.

The Moving States have all adopted emission "standards" that are identical to those of California and thus all Moving States are explicitly authorized under section 177 of the Clean Air Act to "enforce" such standards as a matter of state, not federal, law. Despite this, Volkswagen first argues that the Moving States' state-law enforcement mechanisms and penalties for violations of their state pollution laws conflict with federal law because they are not "identical" to California's, as they incorrectly allege is required by section 177. Volkswagen secondly asserts that the equitable relief sought by the Moving States, which includes enjoining Volkswagen from violating the Moving States' emission standards and appointment of a monitor to ensure future compliance with such standards (i.e., standards identical to California's), would somehow have the "effect of creating, a motor vehicle . . . different than a motor vehicle . . . certified in California," in violation of section 177. According to Volkswagen, these two alleged violations of section 177 present federal questions regarding the scope of section 177. *See, e.g.*, NY Decl., Ex. B, at 20-23. Yet, as is evident from Volkswagen's reliance on preemption case law to support such argument, these alleged federal questions arise not from the face of the Moving States' claims, but from a purported preemption defense to those claims. *See, e.g.*, *id.* at 22.[7]

---

[6] *See, e.g.*, Rule 11 Plea Agreement at Ex. 2, Statement of Facts, ¶¶ 18, 38, 39, *United States v. Volkswagen AG*, No. 16-CR-20394 (E.D. Mich. Jan. 11, 2017) (Plea Agreement) (attached as Ex. C to NY Decl.).

[7] For instance, Volkswagen cites *In re Applications to Quash Subpoenas Duces Tecum Issued by the Office of the Attorney General of the State of N.Y.*, 269 A.D.2d 1 (N.Y. App. Div. 1st Dep't 2000), in which the court held the express preemption provision contained in section 209 of the Clean Air Act

It is black letter law that defenses, and more specifically the defense of federal preemption, cannot give rise to federal question subject matter jurisdiction when the federal question is otherwise not apparent from the four corners of the complaint. *See Caterpillar Inc.*, 482 U.S. at 393 ("[A] case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue."); *Merrell Dow*, 478 U.S. at 808) ("A defense that raises a federal question is inadequate to confer federal jurisdiction."); *see also Franchise Tax Bd.*, 463 U.S. at 12 (noting that removal is inappropriate "in cases in which neither the obligation created by state law, nor the defendant's factual failure to comply are in dispute, and both parties admit that the only question for decision is raised by a federal preemption defense"). That an issue of interpretation of federal law *might* arise in the course of a defense is not enough. Volkswagen's arguments regarding the permissibility of the Moving States' claims for penalties and injunctive and other equitable relief are preemption defenses to the Moving States' claims and thus are incapable of creating federal jurisdiction. *See Lougy v. Volkswagen*, 2016 WL 3067986, at *3 (rejecting Volkswagen's argument that New Jersey may not have the right to enforce its state law as a preemption defense incapable of supporting removal); *Claytor v. Volkswagen*, 189 F. Supp. 3d 602, 2016 WL 3087069, at *5 (W.D. Va. May 31, 2016) (finding that Volkswagen's argument that plaintiffs' claims conflict with the Clean Air Act or EPA's interpretation of the Act "sounds in preemption, which is not a valid basis for removal.").

In addition to being irrelevant for jurisdictional purposes, Volkswagen's argument that the Moving States' emission standards are not "identical" for purposes of section 177 of the Clean Air Act

---

precluded the New York Attorney General from pursuing claims arising out of defendants' manufacture of heavy-duty diesel engines that were alleged to be equipped with devices to circumvent federal emission controls. Apart from demonstrating that Volkswagen's argument is in fact a preemption defense, that case is not relevant here. At the time that case was brought, New York had adopted California's emission standards solely for *light* duty vehicles (such as those at issue here), and had not yet adopted the California emission standards for the *heavy* duty vehicles at issue in that case, which it subsequently did in 2002. Therefore, New York was not a section 177 state for purposes of heavy duty vehicles at that time and was seeking to use state regulatory and judicial remedies for conduct prohibited by federal, rather than state, law.

because the Moving States "employ enforcement procedures and penalties and demand injunctive relief

that substantially differs from those implemented by California," is legally baseless. The plain language

of section 177 only requires that states adopt and enforce identical emission "standards," not that they

adopt or enforce identical state statutory penalties or injunctive relief provisions for violations of such

standards. "Although [section 177] requires states to adopt standards identical to those in place in

California to avoid preemption, *there is no such identicality requirement for the mechanism employed to*

*enforce those standards.*" *Motor Vehicle Mfrs. Ass'n v. N.Y. St. Dep't of Envtl. Conservation*, 79 F.3d

1298, 1305 (2d Cir. 1996) (emphasis added); *see also Engine Mfrs. Ass'n v. South Coast Air Quality*

*Mgmt. Dist.*, 541 U.S. 246, 253 (2004) (explaining that emission "standards" are separate and distinct

from the means of enforcing standards).[8]

Volkswagen cannot seriously argue that state statutory penalty and injunctive relief provisions

qualify as emission "standards" for federal preemption purposes under section 177 of the Clean Air Act.

"Standards" under Title II of the Clean Air Act, including under section 177, refer to regulations relating

to the emission characteristics of a vehicle or engine, such as those that establish emission levels, require

---

[8] Volkswagen repeatedly characterizes the Moving States' state-law statutory penalty and injunctive relief provisions as "enforcement procedures" under the Clean Air Act. The phrase "enforcement procedures" is not contained in section 177, which requires identicality of emission "standards" only. While the Clean Air Act references "enforcement procedures" in section 209(b)(1)(C) as part of EPA's waiver determinations with respect to California, *see* 42 U.S.C. § 7543(b)(1)(C) (requiring that the Administrator not grant a waiver if California's standards and "accompanying enforcement procedures" are inconsistent with section 202(a) of the Act, which requires EPA's standards to be technically feasible), that term is not part of section 177. Even if it applied here, the United States Court of Appeals for the District of Columbia Circuit has clarified that "accompanying enforcement procedures" in section 209 refers to requirements that are directly relevant to a manufacturer's ability to produce motor vehicles that will comply with applicable emissions standards. *See Motor & Equip. Mfrs. Ass'n v. EPA*, 627 F.2d 1095, 1112-14 (D.C. Cir. 1979) (upholding EPA Administrator's determinations that California regulations that limited the amount of maintenance that manufacturers could require vehicle owners to perform (and which would accordingly affect the warranty obligations of manufacturers) were accompanying enforcement standards as opposed to emission standards, and noting that "an indirect relationship exists between enforcement procedures and the public health and welfare. *Yet the relationship turns on the impact of the enforcement procedures on the effectiveness of the standards.*") Under this rationale, state statutory penalty and injunctive relief provisions cannot even be characterized as "accompanying enforcement procedures" under section 209 because they are not relevant to a manufacturer's ability to produce compliant motor vehicles.

1 that vehicles or engines not emit more than a certain amount of a given pollutant, require a vehicle or

2 engine to be equipped with a certain type of pollution-control device, or require that a vehicle or engine

3 include some other design feature relating to emissions control. *See South Coast Air Quality Mgmt.*

4 *Dist.*, 541 U.S. at 253; *see also Jensen Family Farms, Inc. v. Monterey Bay Unified Air Pollution*

5 *Control Dist.*, 644 F.3d 934, 939-40 (9th Cir. 2011) (discussing examples of regulatory requirements

6 that would properly be considered "standards relating to the control of emissions" for federal preemption

7 purposes and holding California regulations imposing fees on owner and operators of diesel engines did

8 not qualify as "standards"). State statutory penalty and injunctive relief provisions, on the other hand, do

9 not themselves control emissions, but rather are simply means of enforcing the emission standards.

10        Further, Volkswagen's argument is entirely baseless because the standards that states must adopt

11 to meet the identicality requirement under the plain language of section 177 are "only those standards

12 that, pursuant to § 209(b), California included in its waiver application to the EPA." *Vehicle Mfrs. Ass'n*

13 *v. N.Y. St. Dep't of Envtl. Conservation*, 17 F.3d 521, 531-32 (2d Cir. 1994). California's statutory

14 penalty and injunctive relief provisions relating to violations of its state emissions standards, *see, e.g.*,

15 Cal. Health & Safety Code §§ 43211[9] & 43017, are not included in California's waiver requests as

16 standards for which California seeks a waiver under section 209 of the Clean Air Act.

17        Thus, both because it merely relates to a defense and because it lacks any legal support,

18 Volkswagen's attempt to manufacture a disputed issue of federal law by conflating "standards" with the

19 mechanisms states employ under statutory penalty and injunctive relief provisions to enforce such

20 standards is unavailing.

21

22

23

24

_____

25 [9] In large part due to the Volkswagen scandal, the California Legislature recently amended Cal. Health &
26 Safety Code § 43211 to raise the maximum civil penalty for violations of California's new motor vehicle
   emission standards from $5,000 to $37,500. *See* 2016 Cal. Legis. Serv. Ch. 604 (A.B. 1685), effective
27 January 1, 2017.

28

### 2. The Moving States' state-law claims do not necessarily raise any disputed federal issues regarding compliance with federal emissions standards.

The third issue identified by Volkswagen, regarding the legal consequences to Volkswagen for the existence in their vehicles of "defeat devices" as defined by federal law, also is not a federal issue necessarily raised by the Moving States' well-pleaded complaints or actually disputed under the first and second *Grable-Gunn* factors. As an initial matter, Volkswagen's argument rings particularly hollow here because *it has already admitted* that the software it installed in the relevant vehicles constitutes a "defeat device" under the federal definition in violation of federal law. *See, e.g.*, NY Decl., Ex. C (Plea Agreement, Statement of Facts, ¶¶ 18, 38, 39). Here, there is neither any legal dispute regarding the federal definition of defeat devices nor any remaining factual dispute that the software installed by Volkswagen in the relevant vehicles constitutes such a "defeat device." Volkswagen therefore cannot identify any actual dispute regarding the interpretation or application of any federal law or regulation that must be answered to resolve the Moving States' state-law claims as required under the "actually disputed" portion of the *Grable-Gunn* test.

Even if a state court would somehow be required to construe the federal definition of "defeat device" to resolve the Moving States' claims, there is no "dispute" about the meaning of that definition for purposes of the *Grable-Gunn* analysis where the issue is merely the application of facts to the definition. *See Kalick v. Northwest Airlines*, 372 Fed. Appx. 317, 320 (3d Cir. 2010) (stating that there is no *Grable* jurisdiction if the "interpretation of the federal regulation" is not in dispute, but rather "only whether [defendant] abided by the regulations"); *Cooper v. Int'l Paper Co.*, 912 F. Supp. 2d 1307, 1317 (S.D. Ala. 2012) (rejecting *Grable* jurisdiction in Clean Air Act case where "a state court will be called upon to do nothing more than apply a settled federal framework to the facts of this case"); *Giles*, 631 F. Supp. 2d at 986 ("incorporation of federal regulations through state statute [is] insufficient to create disputed issue of federal law where alleged conduct, if true, would indisputably violate federal statute"); *Lougy v. Volkswagen*, 2016 WL 3067686, at *3 (finding that Volkswagen failed to offer "any persuasive explanation for how [New Jersey's] claims will require interpreting the meaning of federal law as opposed to applying the facts of the case to federal definitions and/or standards.").

1    Further, resolution of the Moving States' claims does not "necessarily raise" any federal issues

2  regarding Volkswagen's compliance with federal emission standards, even if such compliance were in

3  dispute, which it is not. The issue of whether Volkswagen's vehicles contain defeat devices for purposes

4  of violations of California's emission standards and, thus, the Moving States' identical standards

5  incorporated into their state environmental laws and regulations, and the legal consequences for such

6  violations, are all governed exclusively by each Moving States' laws, not by federal law.

7    Even if the definition of a "defeat device" under the Clean Air Act were relevant to the Moving

8  States' claims, federal courts have roundly rejected the notion that the mere interpretation of a federal

9  law term is enough to "necessarily raise" an issue of federal law. *See Autobahn Motors, Inc. v. Maskay*

10  *Corp.*, No. 15-CV-04803-JST, 2015 WL 9311001, at *3 (N.D. Cal. Dec. 22, 2015) ("Defendants offer

11  no argument suggesting that Congress intended federal courts to hear cases involving only state law

12  claims simply because resolution of one of the state law claims may require interpretation of a federal

13  law"); *see also Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 813 (1986) ("[T]he mere presence

14  of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction.");

15  *Gully*, 299 U.S. at 115 ("That there is a federal law permitting [the state to take] such [action] does not

16  change the basis of the suit, which is still the statute of the state.").

17    Similarly misguided is Volkswagen's argument that determining whether its vehicles violated

18  the Moving States' laws will necessarily implicate federal law because California's emission

19  regulations, which the Moving States have adopted by reference, are approved by EPA and have the

20  "stature" and "force" of a federal regulation. *See, e.g.*, NY Decl., Ex. B at 24 (citing *Green Mountain*

21  *Chrysler Plymouth Dodge Jeep v. Crombie*, 508 F. Supp. 2d 295, 347 (D. Vt. 2007)). In holding that

22  California's emission standards are not preempted by the Energy Policy and Conservation Act, the court

23  in *Green Mountain Chrysler* stated that California emission standards for which EPA has issued a

24  waiver have the same "stature" and "force" as a federal regulation. *Id.* This says nothing about whether

25  this Court has original federal jurisdiction over state claims asserting violations of California's new

26

27

28

motor vehicle emissions standards.[10] Merely because state standards might be "approved by the EPA and subject to minimally restrictive requirements" does not mean that they have the "legal effect of federal law" for jurisdictional purposes. *See Giles v. Chicago Drum, Inc.*, 631 F. Supp. 2d 981, 989 n.2 (N.D. Ill. 2009) (rejecting argument that Illinois Environmental Protection Act, approved by EPA, had the legal effect of federal law for purposes of supporting federal question jurisdiction and granting remand motion). Even if the Moving States' adoption of California's standards could equate to the adoption of federal standards (which it does not), that would still not support federal jurisdiction. *See Rodriguez v. Hovensa, LLC*, No. 2012-cv-100, 2014 WL 1308836, at *18-19 (D.V.I. Mar. 31, 2014) (finding no *Grable* jurisdiction simply because a state "incorporate[d] federal emission standards" from the Clean Air Act).

### B.     Any Federal Questions Are Not Substantial.

Volkswagen also fails to meet the "substantiality" prong of the *Grable-Gunn* test. Volkswagen claims that the "need for uniformity" creates a substantial issue justifying federal jurisdiction. *See, e.g.*, NY Decl., Ex. B at 25-26. The question of substantiality, however, does not rest on the importance of the issue to the particular parties or their particular case because "that will *always* be true when the state claim 'necessarily raise[s]' a disputed federal issue, as *Grable* separately requires." *Gunn*, 133 S. Ct. at 1066. Rather, the substantiality prong looks to the "importance of the issue to the federal system as a whole," and whether a state court's "resolution of the federal question would be controlling in numerous other cases." *Id.* at 1067 (finding no substantiality despite the need for a "uniform body of patent law," since a state court decision could not jeopardize that uniformity). Substantiality is especially lacking for cases that, like those here, are "fact-bound and situation specific," because the effects of any

---

[10] California's action against Volkswagen is properly before this Court only because it has asserted a claim under the federal Consumer Financial Protection Act of 2010, 12 U.S.C. §§ 5536, et seq. *See California v. Volkswagen AG, et al.*, Case No. 16-cv-03620, Compl. [ECF No. 1], First Cause of Action, at ¶¶ 127-41. However, California invokes the Court's supplemental jurisdiction under 28 U.S.C. § 1367 over all of its other claims, including its claims asserting violations of its Health & Safety Code and its automobile emission standards, found at California Code of Regulations title 13, sections §§1900 *et seq*. *Id.* at ¶ 13.

determination by the state court would necessarily be limited. *Empire Healthchoice Assurance, Inc.*, 547 U.S. at 701. Instead, *Grable* jurisdiction should be reserved for cases that "present[] a nearly pure issue of law, one that could be settled once and for all" and thereafter govern future cases raising the same issue. *Id.* at 700.

Volkswagen argues that, because multiple states have adopted California's emission standards pursuant to section 177, there is a likelihood that courts in each state will provide their own interpretations of these regulations and that will create an "anarchic patchwork" of federal and state regulation contrary to congressional intent. *See, e.g.*, NY Decl., Ex. B at 25-26. However, Congress expressly empowered the several states to "adopt and enforce" California's standards into their own state laws. *See* 42 U.S.C. §§ 7507, 7543(b). Volkswagen fails to explain how a state court judge could decide any necessarily raised and disputed issue of federal law regarding such state emission standards that would be important to the federal system as a whole or would be controlling in numerous other cases.

Volkswagen points to the existence of this Multidistrict Litigation and the hundreds of lawsuits filed across the country that have been transferred to this Court as evidence of substantiality. *See, e.g.*, NY Decl., Ex. B at 26. Volkswagen misses the point. While it may be "tempting to find federal jurisdiction every time a multi-billion dollar case with national implications arrives at the doorstep of a federal court," *Greenwich Fin. Servs. Distressed Mortgage Fund 3, LLC v. Countrywide Fin. Corp.*, 654 F. Supp. 2d 192, 204 (S.D.N.Y. 2009), "succumbing to that temptation is barred by the careful limits Congress has placed on the jurisdictional reach of federal courts," *Connecticut v. McGraw-Hill Cos.*, Case No. 13-cv-311, 2013 WL 1759864, at *5 (D. Conn. Apr. 24, 2013). "[T]he doors to federal court [do] not swing open merely because a party has a national presence or is alleged to have committed wrongdoing that is national in scope, or merely because litigation in federal court might be more efficient." *In re Standard & Poor's*, 23 F. Supp. 3d at 414. Substantiality is lacking here.

### C. Federal Courts Are Not Capable of Resolving the Moving States' Environmental Claims Without Compromising the Federal-State Balance.

Finally, Volkswagen also fails the fourth prong of the *Grable-Gunn* test: that the alleged "federal issue is . . . capable of resolution in federal court without disrupting the federal-state balance approved

by Congress." *Gunn*, 133 S. Ct. at 1065 (citing *Grable*, 545 U.S. at 313-14). This prong "focuses principally on the nature of the claim, the traditional forum for such a claim, and the volume of cases that would be affected" in order to determine whether the exercise of federal jurisdiction would disturb "the federal-state division of labor" set by Congress. *N.Y. ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 316 (2d Cir. 2016).

Here, the removal of the Moving States' cases to federal court would frustrate the federal-state balance envisioned by Congress because the litigation of such claims by states in state court was *specifically contemplated* by Congress, as expressed in the plain language of section 177 of the Clean Air Act. Congress provided in that section that the states "may adopt *and enforce* for any model year standards relating to control of emissions from new motor vehicles or new motor vehicle engines," as adopted by California. 42 U.S.C. § 7507 (emphasis added); *see also* 42 U.S.C. § 7543(b) (waiving preemption of California's "State standards"). This grant of concurrent authority to the states is consistent with the cooperative federalism reflected throughout the structure of the Clean Air Act (and other federal environmental laws). *See California ex rel. Sacramento Metro. Air Quality Mgmt. Dist. v. U.S.*, 215 F.3d 1005, 1007 (9th Cir. 2000) ("Though the Clean Air Act establishes a federal framework for ensuring the nation's air quality, Congress vested the states with the primary responsibility of implementing its provisions."); *Luminant Generation Co., LLC v. EPA*, 675 F.3d 917, 921 (5th Cir. 2012) (describing Clean Air Act as an "experiment in cooperative federalism," assigning primary responsibility to EPA for "identifying air pollutants and establishing . . . [s]tandards" and the primary responsibility to the states "for implementing those standards."); *see, e.g.*, 42 U.S.C.§ 7401(a)(3) ("air pollution prevention . . . and air pollution control at its source is the primary responsibility of States and local governments.); 42 U.S.C. § 7407(a) ("Each State shall have the primary responsibility for assuring air quality within the entire geographic area comprising such State."); 42 U.S.C. §§ 7511 and 7511a (requiring states to adopt automobile inspection and maintenance programs to regulate and enforce in-use emissions in National Ambient Air Quality Standards nonattainment areas).

Volkswagen argues that because the states' statutes emanate from authority granted under the Act and could require the application and interpretation of terms (like "defeat device") defined in the

Act, the only appropriate forum is a federal court.[11] But if that were so, *every* such attempt to enforce state emissions regulations adopted under the authority granted to states in section 177 would be a federal case, thereby vitiating Congress's express grant of the power to the states to "enforce" that section. Such a conclusion would certainly alter "the traditional forum" and the full "volume of cases" brought pursuant to the concurrent authority granted in section 177, thereby upsetting "the federal-state division of labor" envisioned by Congress in the Clean Air Act. *Jacobson*, 824 F.3d at 316; *see also Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562, 1574 (2016) (courts "will not lightly read [a] statute to alter the usual constitutional balance, as it would by sending actions with all state-law claims to federal court just because a complaint references a federal duty"); *Empire Healthchoice Assurance, Inc.*, 547 U.S. at 681 ("The state court in which the . . . suit was lodged is competent to apply federal law, to the extent it is relevant, and would seem best positioned to determine" relevant factual issues.); *Grable*, 545 U.S. at 319 (counseling against exercise of federal jurisdiction when doing so "herald[s] a potentially enormous shift of traditionally state cases into federal courts").

Volkswagen's attempt to remove these state law claims to federal court must fail because it would significantly alter the federal-state balance contemplated by Congress. Other federal courts considering this issue—whether state law claims against Volkswagen relating to alleged emissions fraud are properly removed to federal court—have reached the same conclusion. *See, e.g.*, *Claytor v. Volkswagen*, 2016 WL 3087069, at *5; *Lougy v. Volkswagen*, 2016 WL 3067686, at *3; *see also Rodriguez v. Hovensa, LLC*, 2014 WL 1308836, at *18-19 (finding lack of *Grable* jurisdiction where state "incorporate[d] federal emissions standards" from the Clean Air Act). Accordingly, this court should grant the States' respective motions to remand.

---

[11] As explained above, these are not disputed issues necessarily raised by the Moving States' claims. *See supra* sections II.A.1. & 2.

**III.  MOVING STATES ARE ENTITLED TO COSTS AND EXPENSES, INCLUDING ATTORNEYS' FEES, THAT WERE CAUSED BY VOLKSWAGEN'S IMPROPER REMOVALS**

Pursuant to 28 U.S.C. § 1447(c), this Court has discretion to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Here, an award of costs and fees to the Movant States is appropriate because Volkswagen lacked an "objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005); *see Gardner v. UICI*, 508 F.3d 559, 562 (9th Cir. 2007) (standard for awarding fees "turn[s] on the reasonableness of the removal"); *see also Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1066-67 (9th Cir. 2008) (test is whether governing law "clearly foreclosed" purported basis for removal). As the discussion above makes plain, Volkswagen's asserted bases for federal subject matter jurisdiction are wholly without merit and clearly foreclosed under the applicable language of the Clean Air Act, 42 U.S.C. § 7507. *See* Point I and II, *supra*; *Lougy v. Volkswagen*, 2016 WL 3067686, *3; *State of Arizona ex rel. Mark Brnovich v. Volkswagen*, 2016 WL 5929219, at *3. Therefore, the Movant States should be awarded their costs and attorney fees in having to litigate this motion. *See Fed. Home Mortgage Corp. v. Herrera*, Case No. C 12-03320 CRB, 2012 U.S. Dist. LEXIS 108562, * (N.D. Cal. Aug. 2, 2012) (awarding costs and attorney fees to party moving to remand where review of face of well-pleaded complaint demonstrated lack of federal subject matter jurisdiction).

**CONCLUSION**

For the foregoing reasons, the Moving States respectfully request the Court enter the Proposed Order filed concurrently herewith.

Dated:  January 31, 2017

Respectfully Submitted,

ERIC T. SCHNEIDERMAN
*Attorney General of New York*

By:    */s/Morgan A. Costello*
MORGAN A. COSTELLO
MICHAEL J. MYERS
Admitted *Pro Hac Vice*
*Assistant Attorney General*
Environmental Protection Bureau
The Capitol
Albany, NY 12224
Telephone: (518) 776-2392
Facsimile: (518) 650-9363
Email:morgan.costello@ag.ny.gov

*For Movants State of New York and New York State Department of Environmental Conservation*

BRIAN E. FROSH
*Attorney General of Maryland*

By:    */s/ Roberta R. James*
ROBERTA R. JAMES
Admitted *Pro Hac Vice*
Maryland Department of the Environment
1800 Washington Blvd.
Baltimore, MD 21230
Telephone: (410) 537-3748
Facsimile: (410) 537-3943
Email: roberta.james@maryland.gov

*For Movant Maryland Department of the Environment*

MAURA HEALEY
*Attorney General of Massachusetts*

By:    */s/ Christophe G. Courchesne*
CHRISTOPHE G. COURCHESNE
Admitted *Pro Hac Vice*
Chief, Environmental Protection Division
Massachusetts Attorney General's Office
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 963-2423
Facsimile: (617) 727-9665
Email: christophe.courchesne@state.ma.us

*For Movant Commonwealth of Massachusetts*

JOSH SHAPIRO
*Attorney General of Pennsylvania*

By:    */s/ Nicole R. DiTomo*
NICOLE R. DITOMO
Admitted *Pro Hac Vice*
Deputy Attorney General
Pennsylvania Office of Attorney General
Bureau of Consumer Protection
15th Floor, Strawberry Square
Harrisburg, PA 17120
Telephone: (717) 705-6559
Facsimile: (717) 705-3795
Email: nditomo@attorneygeneral.gov

*For Movants Pennsylvania Department of Environmental Protection and Department of Transportation*

THOMAS J. DONOVAN, JR.
*Attorney General of Vermont*

By:     */s/ Nicholas F. Persampieri*
Nicholas F. Persampieri
Merideth C. Chaudoir
Admitted *Pro Hac Vice*
*Assistant Attorney General*
Office of the Attorney General
109 State Street
Montpelier, VT 05609-1001
Telephone: (802) 828-6902
Facsimile: (802) 828-2154
Email: nick.persampieri@vermont.gov

*For Movant State of Vermont*