1   Elizabeth J. Cabraser (State Bar No. 083151)
    LIEFF CABRASER HEIMANN &
2   BERNSTEIN, LLP
    275 Battery Street, 29th Floor
3   San Francisco, CA  94111-3339
    Telephone:  (415) 956-1000
4   Facsimile:  (415) 956-1008
    ecabraser@lchb.com
5
    Lead Counsel for Plaintiffs
6   (Plaintiffs' Steering Committee Members
    Listed on Signature Page)
7

8                  UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11

12  IN RE: VOLKSWAGEN "CLEAN DIESEL"          MDL 2672 CRB (JSC)
    MARKETING, SALES PRACTICES, AND
13  PRODUCTS LIABILITY LITIGATION             **PLAINTIFFS' NOTICE OF MOTION,**
                                              **MOTION, AND MEMORANDUM IN**
14  This Document Relates to:                 **SUPPORT OF PRELIMINARY**
                                              **APPROVAL OF THE BOSCH CLASS**
15  ALL CONSUMER AND RESELLER                 **ACTION SETTLEMENT AGREEMENT**
    ACTIONS                                   **AND RELEASE AND APPROVAL OF**
16                                            **CLASS NOTICE**

17                                            Hearing:  February 14, 2017
                                              Time:  8:00 a.m.
18                                            Courtroom:  6, 17th floor

19                                            The Honorable Charles R. Breyer

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF THE
BOSCH CLASS ACTION SETTLEMENT 2672 CRB (JSC)

# TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION ................................................................................................. 2

II.     BACKGROUND AND PROCEDURAL HISTORY ........................................... 3

    A.      Factual Background ................................................................................. 3

III.    TERMS OF THE SETTLEMENT...................................................................... 6

    A.      The Settlement Class............................................................................... 6

    B.      Benefits to Settlement Class Members ................................................... 7

    C.      Release .................................................................................................... 7

    D.      The Bosch Notice Program ..................................................................... 7

    E.      Settlement Administration ....................................................................... 8

    F.      Settlement Class Member Payment Distributions .................................. 8

    G.      Attorneys' Fees ..................................................................................... 10

IV.     THE SETTLEMENT MERITS PRELIMINARY APPROVAL ..................... 10

    A.      The Class Action Settlement Process.................................................... 10

    B.      The Standard for Preliminary Approval................................................ 11

    C.      The Settlement Is Substantively Fair Because It Provides Significant Benefits in Exchange for the Compromise of Plaintiffs' Claims. ................................. 13

    D.      The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations, and It Is Procedurally Fair. ................................................. 15

V.      THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES ... 15

    A.      The Class Meets the Requirements of Rule 23(a)................................. 17

    B.      The Requirements of Rule 23(b)(3) Are Met........................................ 23

VI.     THE PROPOSED NOTICE PROGRAM PROVIDES THE BEST PRACTICABLE NOTICE IN PLAIN LANGUAGE BY DIRECT MAIL, EMAIL AND PUBLICATION27

    A.      The Content of the Class Notice Program Satisfies Rule 23. ............... 28

    B.      The Proposed Plan Effectuates the Best Practicable Notice Method..................... 29

VII.    THE PROPOSED FINAL APPROVAL HEARING SCHEDULE................... 30

VIII.   CONCLUSION................................................................................................. 31

CERTIFICATE OF SERVICE ................................................................................. 35

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................................ 16, 24

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  133 S. Ct. 1184 (2013) ............................................................................................ 18

*Astiana v. Kashi Co.*,
  291 F.R.D. 493 (S.D. Cal. 2013) ............................................................................. 19

*Butler v. Sears, Roebuck & Co.*,
  702 F.3d 359 (7th Cir. 2012) ................................................................................... 24

*Cartwright v. Viking Indus., Inc.*,
  No. 2:07-CV-02159-FCD-EFB, 2009 WL 2982887 (E.D. Cal. Sept. 14, 2009) ... 27

*Churchill Vill., L.L.C., v. GE*,
  361 F.3d 566 (9th Cir. 2004) ................................................................................... 28

*Class Plaintiffs v. Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ................................................................................. 10

*Clemens v. Hair Club for Men, LLC*,
  No. C 15-01431 WHA, 2016 WL 1461944 (N.D. Cal. Apr. 14, 2016) ............ 21, 22

*Cohen v. Trump*,
  303 F.R.D. 376 (S.D. Cal. 2014) ............................................................................. 18

*Ellis v. Naval Air Rework Facility*,
  87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*,
  661 F.2d 939 (9th Cir. 1981) ................................................................................... 12

*Estrella v. Freedom Fin. Network*,
  No. C 09-03156 SI, 2010 WL 2231790 (N.D. Cal. June 2, 2010) ......................... 18

*Evon v. Law Offices of Sidney Mickell*,
  688 F.3d 1015 (9th Cir. 2012) ........................................................................... 20, 21

*Friedman v. 24 Hour Fitness USA, Inc.*, No. CV 06-6282 AHM (CTx), 2009 WL
  2711956 (C.D. Cal. Aug. 25, 2009) ........................................................................ 24

*Guido v. L'Oreal, USA, Inc.*,
  284 F.R.D. 468 (C.D. Cal. 2012) ............................................................................. 19

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ........................................................................... passim

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ................................................................................... 20

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  No. C-07-5944-SC, 2016 U.S. Dist. LEXIS 9944 (N.D. Cal. Jan. 6, 2016), *report
  & recommendation adopted*, 2016 U.S. Dist. LEXIS 9766 (N.D. Cal. Jan. 26,
  2016) ........................................................................................................................ 25

*In re Celera Corp. Sec. Litig.*,
  No. 5:10-CV-02604-EJD, 2014 WL 722408 (N.D. Cal. Feb. 25, 2014) ................ 19

*In re First Alliance Mortg. Co.*,
  471 F.3d 977 (9th Cir. 2006) ................................................................................... 24

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*In re Hewlett-Packard Co. S'holder Deriv. Litig.*,
No. 3:12-CV-06003-CRB, 2015 WL 1153864 (N.D. Cal. Mar. 13, 2015) ........................... 12

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000).................................................................... 11, 12, 14, 15

*In re Netflix Privacy Litig.*,
No. 5:11-CV-00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013)............................ 11

*In re Rambus Inc. Deriv. Litig.*,
No. C-06-3515 JF (HRL), 2009 WL 166689 (N.D. Cal. Jan. 20, 2009)................................ 11

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008).................................................................................... 10

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) .............................................................. 11, 13

*In re Transpacific Passenger Air Transp. Antitrust Litig.*,
No. C 07-05634 CRB, 2015 WL 3396829 (N.D. Cal. May 26, 2015) ................................. 25

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
No. 2672 CRB (JSC), 2016 WL 4010049 (N.D. Cal. July 26, 2016)............................ passim

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
No. 2672 CRB (JSC), 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016)............................ passim

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
527 F. Supp. 2d 1053 (N.D. Cal. 2007) ................................................................. 27

*Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*,
102 F.R.D. 457 (N.D. Cal. 1983)............................................................................. 18

*Jimenez v. Allstate Ins. Co.*,
765 F.3d 1161 (9th Cir. 2014)................................................................................ 18

*Kim v. Space Pencil, Inc.*,
No. C 11-03796 LB, 2012 WL 5948951 (N.D. Cal. Nov. 28, 2012)................................... 14

*Klay v. Humana, Inc.*,
382 F.3d 1241 (11th Cir. 2004)............................................................................... 24

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012)................................................................................... 12

*Leuthold v. Destination Am., Inc.*,
224 F.R.D. 462 (N.D. Cal. 2004)............................................................................. 26

*Mendoza v. Tuscon Sch. Dist. No. 1*,
623 F.2d 1338 (9th Cir. 1980)................................................................................ 28

*Moreno v. Autozone, Inc.*,
251 F.R.D. 417 (N.D. Cal. 2008)............................................................................. 17

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950)............................................................................................... 28

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
238 F.R.D. 482 (C.D. Cal. 2006) ............................................................................ 18

*Nobles v. MBNA Corp.*,
No. C 06-3723 CRB, 2009 WL 1854965 (N.D. Cal. June 29, 2009) ............................ 12, 14

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982)............................................................................ 11, 12

*Palmer v. Stassinos*,
    233 F.R.D. 546 (N.D. Cal. 2006) ........................................................................ 17

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014)............................................................................ 18, 20

*Radcliffe v. Experian Info. Sols., Inc.*,
    715 F.3d 1157 (9th Cir. 2013)................................................................................ 21

*Ries v. Ariz. Beverages USA LLC*,
    287 F.R.D. 523 (N.D. Cal. 2012) ........................................................................ 19

*Rodman v. Safeway, Inc.*,
    No. 11-cv-03003-JST, 2014 WL 988992 (N.D. Cal. Mar. 10, 2014) ................... 25

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010)................................................................................ 20

*Slaven v. BP Am., Inc.*,
    190 F.R.D. 649 (C.D. Cal. 2000) ........................................................................ 17

*Smith v. Cardinal Logistics Mgmt. Corp.*,
    No. 07-2104 SC, 2008 WL 4156364 (N.D. Cal. Sept. 5, 2008) ........................... 26

*Spalding v. City of Oakland*,
    No. C11-2867 TEH, 2012 WL 994644 (N.D. Cal. Mar. 23, 2012) ....................... 18

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003).................................................................................. 12

*Stockwell v. City & County of San Francisco*,
    749 F.3d 1107 (9th Cir. 2014)................................................................................ 17

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir. 2014).................................................................................. 19

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011)............................................................................... 24, 25

*Sykes v. Mel Harris & Assocs. LLC*,
    285 F.R.D. 279 (S.D.N.Y. 2012), *aff'd*, 780 F.3d 70 (2d Cir. 2015)...................... 19

*Trosper v. Styker Corp.*,
    No. 13-CV-0607-LHK, 2014 WL 4145448 (N.D. Cal. Aug. 21, 2014) .......... 22, 26

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) .......................................................................................... 23

*UAW v. GMC*,
    497 F.3d 615 (6th Cir. 2007).................................................................................. 14

*Wakefield v. Wells Fargo & Co.*,
    No. C 13-05053 LB, 2014 WL 7240339 (N.D. Cal. Dec. 18, 2014) ..................... 25

*Walker v. Life Ins. Co.*,
    No. CV 10-9198 JVS (RNBx), 2012 WL 7170602 (C.D. Cal. Nov. 9, 2012) ....... 26

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .......................................................................................... 18, 19

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE
BOSCH CLASS ACTION SETTLEMENT 2672 CRB (JSC)

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Wolin v. Jaguar Land Rover N. Am., LLC,*
617 F.3d 1168 (9th Cir. 2010)............................................................................. 20, 24, 25, 26

**RULES**

Fed. R. Civ. P.
Rule 23 ........................................................................................................................... 25
Rule 23(a) ....................................................................................................................... 16
Rule 23(a)(1) .................................................................................................................. 17
Rule 23(a)(3) .................................................................................................................. 20
Rule 23(a)(4) ............................................................................................................. 21, 22
Rule 23(b)(3) .................................................................................................... 16, 23, 25
Rule 23(c)(2)(B) ............................................................................................................. 27
Rule 23(e) ................................................................................................................. 10, 11
Rule 23(e)(1) .................................................................................................................. 29
Rule 23(g) ....................................................................................................................... 22

**TREATISES**

2 William B. Rubenstein, *et al.*, *Newberg on Class Actions* § 4:49 (5th ed. 2012) ..................... 23

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* §11:41 (4th ed. 2002)............ 10

7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1778 (3d ed. 2005) ........................................................................................... 24

*Manual for Complex Litigation* (Fourth) (2004)
§ 21.222............................................................................................................................ 29
§ 21.63........................................................................................................................ 10, 11
§ 21.632...................................................................................................................... 11, 16
§ 21.633............................................................................................................................ 16

## NOTICE OF MOTION AND MOTION

TO THE ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on February 14, 2017, at 8:00 a.m., or at such other date as may be agreed upon, in Courtroom 6 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, the undersigned Lead Counsel and Plaintiffs' Steering Committee ("PSC"), on behalf of Plaintiffs and a proposed settlement class of certain owners and lessees of Volkswagen-, Audi-, and Porsche-branded TDI vehicles ("Settlement Class") as defined in the Class Action Settlement Agreement and Release ("Settlement" or "Class Action Agreement"), will and hereby do move the Court for an Order granting preliminary approval of the Class Action Agreement with Robert Bosch GmbH and Robert Bosch, LLC ("Bosch"), provisionally certifying the Settlement Class, appointing Settlement Class Representatives, appointing Settlement Counsel, directing notice to the Settlement Class, and scheduling a fairness hearing.

As discussed in the Memorandum and Points of Authorities below, after intensive arm's-length negotiations overseen by Settlement Master Robert S. Mueller, III, Plaintiffs and Bosch ("the Parties") have reached a final classwide resolution.[1] The proposed settlement provides consumers with additional compensation, above and beyond the $10.03 billion that this Court has approved for the Volkswagen 2.0-liter Class Action Settlement (the "Volkswagen 2.0-liter Settlement" or "2.0-liter Settlement"), and the $1.26 billion that Volkswagen has, at a minimum, agreed to pay to settle claims concerning the 3.0-liter vehicles (the "Volkswagen 3.0-liter Class Action Settlement" or "3.0-liter Settlement"), as set forth in a concurrently filed motion. Moreover, the proposed Notice Program, which includes direct notice to Settlement Class Members and will be coordinated with the notice program for the Proposed 3.0-liter Class Action Settlement, is the best notice practicable under the circumstances. Plaintiffs thus respectfully request that the Court grant their motion for preliminary approval of their settlement with Bosch.

---

[1] All capitalized terms are the same as in the Class Action Agreement.

1  <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2  **I.     INTRODUCTION**

3        As Volkswagen recently admitted in its plea agreement with the Department of Justice

4  ("DOJ"), it knowingly misled regulators and the public into believing that its TDI "clean diesel"

5  engines met strict U.S. federal and state emission standards.  Plaintiffs alleged that Bosch's role

6  in supplying software to Volkswagen facilitated Volkswagen's scheme to deceive the United

7  States Environmental Protection Agency ("EPA"), the California Air Resources Board

8  ("CARB"), and other government officials into approving for sale hundreds of thousands of non-

9  compliant Class Vehicles in the U.S.  Volkswagen has since admitted wrongdoing, recently

10  pleading guilty to conspiracy to defraud the U.S., including wire fraud, and to violating the Clean

11  Air Act.  Bosch continues to deny wrongdoing.

12        The Parties' proposed Settlement creates a non-reversionary common fund worth at least

13  $327.5 million.  The Bosch class is defined to include all class members in the Volkswagen 2.0-

14  liter Settlement and 3.0-liter Settlement, including consumers and reseller dealers, which means

15  that those class members will receive payments from the Bosch Settlement on top of the very

16  significant payments they will receive from Volkswagen.

17        Anyone who submitted or submits in the future an approved claim in either or both of the

18  Volkswagen Settlements <u>automatically</u> will receive their Bosch Settlement Fund payment

19  check(s) in the mail.  Those people – the vast majority of Class Members – will not need to file

20  claims or do anything else to receive compensation from the Bosch Settlement Fund.  Even those

21  who excluded themselves from ("opted out of") either or both Volkswagen Settlements, or who

22  otherwise did not file approved claims in those settlements, will have the opportunity to obtain

23  compensation from the Bosch Settlement Fund through a claims process.

24        This Settlement brings to an end the final chapter of the consumer claims in the MDL

25  litigation, a resolution achieved at remarkable speed.  Indeed, the Settlement comes less than one-

26  and-a-half years after news of Volkswagen's diesel scandal broke, one year after this Court

27  appointed Lead Counsel and the PSC (together, "Class Counsel"), and three months after this

28  Court granted final approval of the Volkswagen 2.0-liter Settlement. It compensates all parties

1   directly injured by Bosch's alleged conduct, and is part of a broader resolution that has achieved

2   significant remedies for all consumers, reseller dealers, and Volkswagen franchise dealers.

3   　　　　As with the Volkswagen 2.0-liter Settlement, this Settlement is the result of significant

4   efforts undertaken by Class Counsel, defense counsel, Settlement Master Mueller and his team,

5   and the Court.  Despite the remarkable pace of the litigation that resulted in a Volkswagen 2.0-

6   liter Settlement between Class Counsel and Volkswagen and the announcement of the Proposed

7   Volkswagen 3.0-liter Class Action Settlement, Class Counsel's efforts toward a resolution with

8   Bosch continued full speed. The PSC worked around the clock to investigate the facts, review and

9   analyze documents, engage experts, and prepare for trial against Bosch.

10   　　　　Plaintiffs are proud to present this Bosch Settlement to the Court, and they respectfully

11   request its approval.  Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for the

12   reasons set forth below, this Court should enter the Parties' proposed Preliminary Approval

13   Order.

14   **II.　　BACKGROUND AND PROCEDURAL HISTORY**

15   　　　　The relevant factual allegations and procedural history are set forth in large part in this

16   Court's Order granting preliminary approval of the Volkswagen 2.0-liter Settlement.  *See In re*

17   *Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 2672 CRB (JSC),

18   2016 WL 4010049, at *1-2 (N.D. Cal. July 26, 2016).  Since that time, Plaintiffs have continued

19   to press forward with the litigation against Bosch, while also exploring a possible settlement.

20   　　　　**A.　　Factual Background**

21   　　　　As the Court previously outlined, this multidistrict litigation arises from Volkswagen's

22   sale of TDI "clean diesel" vehicles containing a "defeat device" to the American public.  *Id.* at *1.

23   Volkswagen marketed the TDI vehicles to the public "as being environmentally friendly, fuel

24   efficient, and high performing."  *Id.*  However, the vehicles contained hidden defeat devices—

25   "software that bypasses, defeats, or renders inoperative certain elements of the vehicles'

26   emissions control system"—to evade emissions testing by government regulators such as the EPA

27   and CARB.  *Id.*  The defeat device, which Volkswagen developed with software supplied by

28   Bosch, sensed when the vehicle was being tested for emissions compliance and then accordingly

1    adjusted its output to legal levels.  *Id*.  Then, when the defeat device sensed that testing was

2    complete, it would activate normal driving conditions, and the vehicles would "release nitrogen

3    oxides ("NO$_X$") at a factor of ***up to 40 times*** over the permitted limit."[2]  *Id*.  Volkswagen was able

4    "to obtain Certificates of Conformity ("COCs") from EPA and Executive Orders ("EOs") from

5    CARB for its 2.0- and 3.0-liter diesel engine vehicles" solely based on the installation of the

6    defeat device.  *Id*.

7         On September 3, 2015, Volkswagen admitted to government regulators that it had

8    installed a defeat device on 2009-2015 Volkswagen and Audi 2.0-liter TDI vehicles.  Dkt. 1804,

9    at ¶ 355.  On September 18, 2015, the EPA issued a Notice of Violation ("NOV") to Volkswagen,

10   alleging the defeat device violated provisions of the Clean Air Act, and CARB informed

11   Volkswagen it had commenced an enforcement investigation concerning the defeat device.  *Id*. at

12   ¶ 356.

13        On November 2, 2015, the EPA issued a second NOV to Volkswagen, as well as Dr. Ing.

14   h.c. F. Porsche AG and Porsche Cars North America, Inc., which alleged Volkswagen had

15   installed in its 3.0-liter diesel engine vehicles a defeat device similar to the one described in the

16   September 18 NOV.  *Id*. at ¶ 366.  CARB likewise sent a second letter concerning the same

17   matter.  *Id.* at ¶ 370.  After originally denying the allegations, Volkswagen finally admitted that

18   defeat device software was installed not only in the vehicles identified in the second NOV, but in

19   all 3.0-liter Class Vehicles sold by Volkswagen, Audi, and Porsche.  *Id*.

20        Following the public disclosure of Volkswagen's wrongdoing, consumers filed over 500

21   class actions across the country.  In addition, multiple governmental entities filed suit: the DOJ

22   filed a complaint on behalf of the EPA for violations of the Clean Air Act; the Federal Trade

23   Commission ("FTC") filed an action for violations of the FTC Act; and California and other state

24   attorneys general announced investigations or lawsuits.

25        On December 8, 2015, the Judicial Panel on Multidistrict Litigation ("JPML") transferred

26   all related federal actions to the Northern District of California for consolidated pre-trial

27

28   [2] Citations, internal quotations, and footnotes omitted and emphasis added unless otherwise noted.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE
BOSCH CLASS ACTION SETTLEMENT 2672 CRB (JSC)

1    proceedings in the above-captioned MDL.  Dkt. No. 1.  The following month, the Court

2    appointed Elizabeth J. Cabraser of Lieff, Cabraser, Heimann & Bernstein, LLP as Lead Counsel

3    and 21 additional attorneys to the PSC, which is chaired by Ms. Cabraser.  Dkt. No. 1084.   The

4    Court also appointed former FBI Director Robert S. Mueller III as Settlement Master to facilitate

5    settlement discussions.  Dkt. No. 797.

6         In the weeks and months that followed, a fully deployed PSC worked tirelessly to

7    prosecute the civil cases on behalf of consumers against Volkswagen and Bosch.  Lead Counsel

8    created more than a dozen PSC working groups to ensure that the enormous amount of work that

9    needed to be done in a very short period of time was done in the most organized and efficient

10   manner possible.  The Bosch working group focused on all aspects of the litigation involving

11   Bosch, including drafting the complaints, serving and reviewing voluminous discovery, assessing

12   technical and engineering issues (and retaining experts concerning those issues), preparing a

13   motion for class certification, preparing for an early trial, and researching German and European

14   data privacy issues, among others.

15        On February 22, 2016, Class Counsel filed a Consolidated Consumer Class Action

16   Complaint alleging, among other things, that Bosch had conspired with Volkswagen to develop,

17   install, and conceal the defeat devices in violation of the Racketeer Influenced and Corrupt

18   Organizations Act ("RICO"), 18 U.S.C. § 1962(c)-(d).  Dkt. No. 1230.  Following the filing of

19   the Complaint, Class Counsel served Bosch with extensive written discovery, including

20   interrogatories, requests for production, and requests for admissions.  Class Counsel reviewed and

21   analyzed many millions of pages of documents relating to Bosch, which required the reviewing

22   attorneys not only to understand the legal and technical complexities of the "defeat device"

23   scheme, but also to master the difficulties and nuances involved when working with documents

24   composed in German.  The review of these documents enabled Class Counsel to investigate the

25   extent of Bosch's involvement in the fraud.  On September 2, 2016, the PSC filed the Amended

26   Consumer Complaint, which amplified contentions about Bosch's alleged role in the conspiracy.

27   Thereafter, additional discovery was exchanged, motions were drafted, and preparation for trial

28   accelerated.  Dkt. No. 1804.

1    Parallel to this litigation track, intensive settlement talks began immediately following the

2    Court's appointment of Lead Counsel and the Settlement Master.  However, Bosch was not a

3    party to the Volkswagen 2.0-liter Settlement.  *See In re Volkswagen "Clean Diesel" Mktg., Sales*

4    *Practices, & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2016 WL 6248426 (N.D. Cal. Oct. 25,

5    2016).  It took several more months of intensive litigation before Bosch tentatively agreed to a

6    proposed settlement.  During this time, the Parties engaged in meet and confers (both in-person

7    and telephonically) regarding the scope of discovery and Bosch's objections to Plaintiffs'

8    discovery requests and prepared letters to Magistrate Judge Corley to assist with the resolution of

9    the Parties' various discovery disputes.  The Parties vigorously litigated Bosch's alleged role in

10   the fraud up until the moment a tentative agreement was announced, as evidenced by the

11   stipulation filed by the Parties on December 2, 2016, regarding briefing on Bosch's forthcoming

12   motions to dismiss.  *See* Dkt. No. 2414.

13   The government agencies pursuing Volkswagen chose not to engage in litigation against

14   Bosch.  Thus, the PSC has performed all of the investigatory and discovery work in the case

15   against Bosch. Those efforts ultimately will provide Settlement Class Members with the

16   additional compensation offered by this Settlement.  By any measure, this Settlement is an

17   extraordinary result for the Settlement Class, given the difficulty of presenting Bosch's alleged

18   involvement from ambiguous and technical documents and in the face of Bosch's significant

19   asserted defenses.

20   **III.    TERMS OF THE SETTLEMENT**

21   **A.    The Settlement Class**

22   As mentioned above, the Settlement Class consists of the combined class members of the

23   Volkswagen 2.0-liter and 3.0-liter settlements.  Therefore, the Class consists of Eligible Owners,

24   Eligible Sellers, Eligible Former Lessees, and Eligible Lessees in the 2.0-liter Settlement, and

25   Eligible Owners, Eligible Former Owners, Eligible Former Lessees, and Eligible Lessees in the

26   3.0-liter Settlement.

27   The following entities and individuals are excluded from the Class:

28   (1)    Bosch's officers, directors, and employers; and Bosch's affiliates and affiliates'

officers, directors, and employees;

(2)    Volkswagen; Volkswagen's officers, directors, and employees; and Volkswagen's affiliates and affiliates' officers, directors, and employees;

(3)    any Volkswagen Franchise Dealer;

(4)    Judicial officers and their immediate family members and associated court staff assigned to this case; and

(5)    All those otherwise in the Class who or which timely and properly exclude themselves from the Class as provided in the Class Action Settlement Agreement.

**B.    Benefits to Settlement Class Members**

Bosch has agreed to make a guaranteed lump-sum payment of $327,500,000 (the "Bosch Settlement Fund") for the benefit of the Settlement Class Members. This payment includes any attorneys' fees and expenses that might be awarded by the Court. Further, Bosch will pay all reasonable and necessary fees and costs of the Notice Administrator and Claims Administrator incurred with providing notice under, and for the administration of, the Class Action Settlement Agreement.

**C.    Release**

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will release Bosch from any and all claims relating to the subject matter of this action. The detailed release language is set forth in Section 9 of the Class Action Settlement Agreement.

**D.    The Bosch Notice Program**

The Bosch Notice Program will be administered by Epiq Systems, Inc., one of the leading class action settlement administrators in the country. The Bosch Notice Program set forth in Section 8 of the Class Action Agreement, and described in more detail below, is designed to provide the best notice practicable, and is tailored to take advantage of the information about the Settlement Class that has been obtained in the Volkswagen settlements.

Each class member will be sent two notices, a Short Form Notice and a Long Form Notice. The Short Form Notice – which will be mailed in postcard format – contains general information about the settlement, and directs Class Members to the Claims Website for more

1   information about the Bosch Settlement. The Long Form Notice – which will be emailed to Class

2   Members – contains detailed information on class membership, cash benefits, the class action

3   process, and how Class Members can file claims or obtain more information. Both notices will

4   guide the class member to a dedicated Settlement Website for more details on the Bosch

5   Settlement and Class Members' rights and options under the Settlement.

6           **E.       Settlement Administration**

7           The vast majority of Settlement Class Members will automatically receive their Bosch

8   Settlement compensation via mailed checks.  They will not have to submit claims or take any

9   other affirmative step to receive their payments under the Settlement.  Instead, any Settlement

10  Class Member with an approved claim (currently or in the future) in either the Volkswagen 2.0-

11  liter Settlement or the Proposed Volkswagen 3.0-liter Class Action Settlement will automatically

12  receive a check from the Bosch Settlement Fund.  Settlement Class Members who opted out of

13  either the 2.0-liter Settlement or the Proposed 3.0-liter Class Action Settlement, or who are

14  eligible under the 2.0-liter Settlement or the Proposed 3.0-liter Class Action Settlement but have

15  not filed a claim (or did not file a timely claim), will also have the opportunity to file a claim and

16  receive a check from the Bosch Settlement Fund.

17          **F.       Settlement Class Member Payment Distributions**

18          Payments to Settlement Class Members will begin after entry of an order granting final

19  approval to the Settlement, and will be distributed over the course of the Claim Period.  Subject to

20  Court approval, allocation of the Bosch Settlement Fund among Settlement Class Members will

21  be made in accordance with the following plan of distribution developed by the FTC:

22          (1)     The Bosch Settlement Fund will be distributed among Settlement Class Members

23  as follows:

24                  (a)     Persons eligible to participate in the 2.0-liter Class Action Settlement will

25  receive a total of $163,267,450, to be shared among 2.0-liter Class Members as set forth below.

26                  (b)     Persons eligible to participate in the 3.0-liter Class Action Settlement will

27  receive a total of $113,264,400, to be shared among 3.0-liter Class Members as set forth below.

28          (2)     The Bosch Settlement funds will be allocated to individual Class members as

- 8 -

follows:

(a)     An Eligible Owner of an Eligible Vehicle in the 2.0-liter Class Action Settlement will receive $350, except that if an Eligible Seller has identified himself or herself and filed an approved claim for the Eligible Vehicle, or if an Eligible Lessee has identified himself or herself and filed an approved claim for the Eligible Vehicle, the Eligible Owner will receive $175.

(b)     An Eligible Seller in the 2.0-liter Class Action Settlement who has identified himself or herself and filed an approved claim will receive $175.

(c)     An Eligible Lessee in the 2.0-liter Class Action Settlement will receive $200.

(d)     An Eligible Owner of an Eligible Vehicle in the 3.0-liter Class Action Settlement will receive $1,500, with three exceptions:

(i)     If an Eligible Former Owner has identified himself or herself and filed an approved claim for the Eligible Vehicle in the 3.0-liter Class Action Settlement, the $1,500 payment will be split equally ($750 each) between the Eligible Owner and the Eligible Seller.

(ii)    An Eligible Owner will also receive $750 if an Eligible Former Lessee has identified himself or herself and filed an approved claim for the Eligible Vehicle in the 3.0-liter Class Action Settlement.

(iii)   If two Eligible Former Owners have identified themselves and filed approved claims for the Eligible Vehicle in the 3.0-liter Class Action Settlement, the $1,500 will be split among the Eligible Owner and the two Eligible Former Owners, with $750 going to the Eligible Owner and $375 each to the two Eligible Former Owners.

(e)     An Eligible Lessee in the 3.0-liter Class Action Settlement will receive $1,200.

The Federal Trade Commission ("FTC") is an independent government agency whose mission is to prevent business practices that are anticompetitive, or deceptive or unfair to consumers.  Acting as an independent third party to the litigation between the PSC and Bosch, the

1   Commission's counsel met with Bosch and directed an allocation of the Bosch Settlement fund

2   among members of the Bosch Settlement Class that Commission counsel would recommend that

3   the Commission accept.  The FTC required that the parties accept its allocation, so the Settlement

4   depended upon the parties accepting the FTC's determination.  Bosch tendered a final offer

5   consistent with this allocation and Class counsel accepted that allocation.

6           **G.      Attorneys' Fees**

7           Class Counsel will move this Court for an award of attorneys' fees of up to sixteen

8   percent of the Bosch Settlement Fund, as well as reimbursement of costs and expenses incurred

9   with the action, both to be paid from the Bosch Settlement Fund.  The parties did not discuss

10  attorneys' fees and costs prior to agreement on all material terms of the Class Action Settlement

11  Agreement.

12  **IV.     THE SETTLEMENT MERITS PRELIMINARY APPROVAL**

13          **A.      The Class Action Settlement Process**

14          Pursuant to Rule 23(e),[3] class actions "may be settled, voluntarily dismissed, or

15  compromised only with the court's approval."  As a matter of "express public policy," federal

16  courts favor and encourage settlements, particularly in class actions, where the costs, delays, and

17  risks of continued litigation might otherwise overwhelm any potential benefit the class could hope

18  to obtain.  *See Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong

19  judicial policy that favors settlements, particularly where complex class action litigation is

20  concerned"); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (same); *see also*

21  4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* §11:41 (4th ed. 2002) (same;

22  collecting cases).

23          The *Manual for Complex Litigation* (Fourth) (2004) ("*Manual*") describes the three-step

24  procedure for approving class action settlements: (1) preliminary approval of the proposed

25  settlement; (2) dissemination of the notice of the settlement to class members, providing for,

26  among other things, a period for potential objectors and dissenters to raise challenges to the

27

28  [3] All references to "Rule" are to the Federal Rules of Civil Procedure.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE
BOSCH CLASS ACTION SETTLEMENT 2672 CRB (JSC)

1  settlement's reasonableness; and (3) a formal fairness and final settlement approval hearing. *Id.*

2  at § 21.63.  The *Manual* characterizes the preliminary approval stage as a court's "initial

3  evaluation" of the fairness of the proposed settlement on the basis of written submissions and

4  informal presentations from the settlement parties.  *Id.* at § 21.632.  Plaintiffs request that the

5  Court grant preliminary approval of the Settlement and authorize the dissemination of notice of

6  the Settlement to Settlement Class Members.  Plaintiffs further request that the Court appoint the

7  undersigned Lead Counsel and the PSC as Class Counsel and the 2.0-liter and 3.0-liter TDI

8  owners and lessees listed in Exhibit 1 as the Settlement Class Representatives.  *See In re*

9  *Volkswagen*, 2016 WL 6248426, at *28 (confirming appointment of Lead Counsel and the PSC as

10  Settlement Counsel in the context of the 2.0-liter Settlement).

11  **B.     The Standard for Preliminary Approval**

12  Rule 23(e) governs a district court's analysis of the fairness of a settlement of a class

13  action.  To approve a class action settlement, the Court must determine whether the settlement is

14  "fundamentally fair, adequate and reasonable."  *In re Rambus Inc. Deriv. Litig.*, No. C-06-3515

15  JF (HRL), 2009 WL 166689, at *2 (N.D. Cal. Jan. 20, 2009) (citing Fed. R. Civ. P. 23(e)); *see*

16  *also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *Officers for Justice v.*

17  *Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)).  Preliminary approval of a proposed

18  settlement is the first step in making this determination.

19  If "the proposed settlement appears to be the product of serious, informed, non-collusive

20  negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to

21  class representatives or segments of the class, and falls within the range of possible approval, then

22  the court should direct that the notice be given to the class members of a formal fairness hearing."

23  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); *see also In re*

24  *Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18,

25  2013) (applying at preliminary approval a "presumption" of fairness to settlement that was "the

26  product of non-collusive, arms' length negotiations conducted by capable and experienced

27  counsel").  "The preliminary determination establishes an initial presumption of fairness."  *In re*

28  *Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079-80.  "Although Rule 23 imposes strict

1    procedural requirements on the approval of a class settlement, a district court's only role in

2    reviewing the substance of that settlement is to ensure that it is 'fair, adequate, and free from

3    collusion.'"  *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon v.*

4    *Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)); *see also In re Hewlett-Packard Co.*

5    *S'holder Deriv. Litig.*, No. 3:12-CV-06003-CRB, 2015 WL 1153864 at *5 (N.D. Cal. Mar. 13,

6    2015) (granting preliminary approval of settlement in derivative action that "appears to represent

7    a fair, reasonable, and adequate resolution" of the claims).

8         When class counsel is experienced and supports the settlement, and the agreement was

9    reached after arm's-length negotiations, courts give a presumption of fairness to the settlement.

10   *See Nobles v. MBNA Corp.*, No. C 06-3723 CRB, 2009 WL 1854965, at *6 (N.D. Cal. June 29,

11   2009); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939

12   (9th Cir. 1981).  Additionally, "[i]t is the settlement taken as a whole, rather than the individual

13   component parts, that must be examined for overall fairness."  *Staton v. Boeing Co.*, 327 F.3d

14   938, 952 (9th Cir. 2003).

15        The Ninth Circuit has identified "the strength of the plaintiffs' case; the risk, expense,

16   complexity, and likely duration of further litigation; the risk of maintaining class action status

17   throughout the trial; the amount offered in settlement; the extent of discovery completed and the

18   stage of the proceedings; the experience and views of counsel; the presence of a governmental

19   participant; and the reaction of the class members to the proposed settlement" as factors for

20   determining whether a settlement is, in the final analysis, fair, reasonable, and adequate.  *See*

21   *Hanlon*, 150 F.3d at 1026.  "The relative degree of importance to be attached to any particular

22   factor will depend upon and be dictated by the nature of the claims advanced, the types of relief

23   sought, and the unique facts and circumstances presented by each individual case."  *Officers for*

24   *Justice*, 688 F.2d at 625.  To determine whether a settlement is within the range of possible

25   approval, the Court must also ensure it is "not the product of fraud or overreaching by, or

26   collusion between, the negotiating parties."  *Id.*; *see also In re Mego*, 213 F.3d at 458.  Thus, to

27   preliminarily assess the reasonableness of the parties' proposed settlement, the Court should

28   review both the substance of the deal and the process used to arrive at the settlement.  *See In re*

1  *Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080 ("preliminary approval . . . has both a
2  procedural and a substantive component").

3      Here, this Settlement is well within the range of possible approval as a fair, reasonable,
4  and adequate resolution between the parties as discussed below, and should be preliminarily
5  approved.  All of the relevant factors set forth by the Ninth Circuit for evaluating the fairness of
6  a settlement at the final stage weigh in favor of preliminary approval now, and there can be no
7  reasonable doubt that the Settlement was reached in a procedurally fair manner, given Settlement
8  Master Mueller's ongoing guidance and assistance.  For these reasons, the Settlement merits
9  preliminary approval.

10     **C.     The Settlement Is Substantively Fair Because It Provides Significant Benefits
               in Exchange for the Compromise of Plaintiffs' Claims.**
11

12     As noted in the summary of the Settlement terms above, the Settlement compensates
13  Settlement Class Members for their losses as a result of Bosch's alleged participation in the
14  scheme to defraud.   The Settlement's significant benefits are provided in recognition of the
15  litigation risk Bosch faced from Plaintiffs' claims.  All PSC members—a uniquely experienced
16  group including preeminent class action litigators, consumer and environmental advocates, trial
17  lawyers, and automobile litigation veterans—support this Settlement.

18     It is doubtful that the Settlement Class could obtain a better outcome against Bosch
19  through continued litigation, trial, and appeal.  There are serious litigation risks in this case.
20  Bosch contends, for example, that several of the key documents upon which Plaintiffs rely on in
21  their Complaint do not relate to the TDI matter or otherwise fail to support the allegations that
22  Bosch knowingly participated in Volkswagen's fraud.  For example, Bosch has pointed out that a
23  German-language document, which Plaintiffs stress as proof of knowledge of Volkswagen's
24  defeat device,[4] actually does not concern diesel vehicles at all, does not reference the EDC-17 that
25  the complaints allege contained the defeat device, and instead relates to a gasoline engine.  Bosch
26  similarly points out that another German-language document which the Complaints allege reflects

27  ─────────────────
28  [4] *See, e.g.*, Amended Consolidated Consumer Class Action Complaint (ECF No. 1804), ¶¶ 237,
    266, 487.

1    a conversation between Volkswagen's CEO and Bosch GmbH's CEO about the "acoustic

2    function" in fact referred to diesel vehicle acoustics, and not an alleged defeat device.[5]  Such

3    claims therefore might be more difficult to prove at trial.

4          A further consideration is that Bosch GmbH is a German company, and much of the

5    allegations against it concern actions taken in Germany.  Plaintiffs might have the burden of

6    proving that the Court may properly exercise personal jurisdiction over Bosch GmbH and that

7    U.S. law extends to its conduct, which are other risk factors that must be assessed.

8          While Class Counsel nevertheless believe in the strength of this case, they also recognize

9    that there are always uncertainties in litigation, which thus counsel in favor of a compromise in

10   exchange for certain and timely provision to the Settlement Class of the significant benefits

11   described herein.  *See Nobles*, 2009 WL 1854965, at *2 ("The risks and certainty of recovery in

12   continued litigation are factors for the Court to balance in determining whether the Settlement is

13   fair.") (citing *In re Mego*, 213 F.3d at 458; *Kim v. Space Pencil, Inc.*, No. C 11-03796 LB, 2012

14   WL 5948951, at *5 (N.D. Cal. Nov. 28, 2012) ("The substantial and immediate relief provided to

15   the Class under the Settlement weighs heavily in favor of its approval compared to the inherent

16   risk of continued litigation, trial, and appeal, as well as the financial wherewithal of the

17   defendant.")).

18         Indeed, should Class Counsel prosecute these claims against Bosch to conclusion, any

19   recovery would come years in the future and at far greater expense to the Settlement Class.  There

20   is also a risk that a litigation Class would receive less or nothing at all, despite the merit of the

21   claims, not only because of the risks of litigation, but also because of the solvency risks that such

22   prolonged and expanding litigation might impose upon Bosch.  A judgment that bankrupts Bosch

23   would be far less satisfying than a settlement that provides meaningful and certain monetary and

24   restorative relief now.  *See, e.g.*, *UAW v. GMC*, 497 F.3d 615, 632 (6th Cir. 2007) (affirming

25   approval of settlement class and rejecting objections premised on prospect of plaintiffs complete

26   victory on disputed issue because "any such victory would run the risk of being a Pyrrhic one . . .

27

28   [5] Id. ¶¶ 271, 299.

1  we need not embellish the point by raising the prospect of bankruptcy").  As recognized by the

2  Court in its Order granting final approval of the 2.0-liter Settlement, "[w]eighing this possibility

3  against the immediate and guaranteed benefits provided by the Settlement, settlement is clearly

4  favored."  *In re Volkswagen*, 2016 WL 6248426, at *18.

5          **D.      The Settlement Is the Product of Good Faith, Informed, and Arm's-Length
                     Negotiations, and It Is Procedurally Fair.**
6

7          Lead Counsel and Class Counsel engaged in intensive settlement discussions with Bosch

8  and government representatives under Settlement Master Mueller's guidance and supervision.

9  Class Counsel also analyzed voluminous discovery material that provided them with sufficient

10 information to enter into a reasoned and well-informed settlement.  *See In re Volkswagen*, 2016

11 WL 4010049, at *14 (holding that Class Counsel's review of discovery "allowed them to make a

12 well-informed assessment of the merits of the Class' claims and to determine whether

13 Volkswagen's offers adequately compensates Class Members for their injuries"); *see also In re*

14 *Mego*, 213 F.3d at 459 (holding that "significant investigation, discovery and research" supported

15 the "district court's conclusion that the Plaintiffs had sufficient information to make an informed

16 decision about the Settlement").

17         Here, the Parties' settlement negotiations were conducted in good faith at all times, and

18 the Settlement was reached through arms-length negotiations over the course of months under the

19 supervision of the Court-appointed Settlement Master Mueller, who played a crucial role in

20 supervising the negotiations and in helping the Parties bridge their differences in order to reach

21 this Settlement.  *See In re Volkswagen*, 2016 WL 4010049, at *14 (finding that "the Settlement

22 Master's guidance coupled with informed dialogues and the intensive involvement of government

23 entities suggests the parties reached the Settlement after serious, informed, non-collusive

24 negotiations").

25         Taken together, the benefits provided to Settlement Class Members and the fair manner in

26 which the Settlement was reached weigh in favor of granting preliminary approval here.

27 **V.      THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES**

28         Plaintiffs respectfully request that the Court certify the Class defined in paragraph 2.7 of

the Class Action Agreement for settlement purposes, and order that notice of the Settlement be issued to inform Settlement Class Members of: (1) the existence and terms of the Settlement; (2) how to obtain benefits under the Settlement; (3) their right to be heard on its fairness; (4) their right to opt out; and (5) the date, time, and place of the fairness hearing. *Manual* §§ 21.632, 21.633.

When "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is appropriate where: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Certification of a class seeking monetary compensation also requires a showing that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

In the context of the Volkswagen 2.0-liter Settlement, the Court certified a substantially similar class of owners and lessees of Volkswagen- and Audi-branded TDI vehicles. *See In re Volkswagen*, 2016 WL 4010049, at *10-12; *see In re Volkswagen*, 2016 WL 6248426, at *6-7 (adopting the certification analysis at the preliminary approval stage and granting final class certification). Given that Plaintiffs' claims here are substantially identical to, and arise from the same facts as, those brought on behalf of the substantially similar 2.0-liter class, the Court's analysis in approving the 2.0-liter Settlement applies with equal force here, particularly because the software alleged to contain the defeat devices in each of the Class Vehicles was supplied by Bosch. As demonstrated below, the Settlement Class readily satisfies each of Rule 23's requirements.

**A.      The Class Meets the Requirements of Rule 23(a).**

**1.      The Class Is Sufficiently Numerous.**

Rule 23(a)(1) is satisfied when "the class is so numerous that joinder of all class members is impracticable."  Numerosity is generally satisfied when the class exceeds forty members.  *See, e.g.*, *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000).

Here, it is undisputed that more than 500,000 Class Vehicles were sold or leased in the U.S., and, thus, that the Class consists of tens of thousands of members.  Therefore, numerosity is easily established.  *See In re Volkswagen*, 2016 WL 4010049, at *10 ("The numerosity requirement is easily satisfied. There were 475,745 [2.0-liter] Eligible Vehicles sold or leased to consumers in the United States, and thus hundreds of thousands of potential Class Members.").  The large size of the Class and the geographic dispersal of its members across the U.S. render joinder impracticable.  *See id.* (finding numerosity satisfied in context of the 2.0-liter Settlement "because joinder is impractical"); *see also Palmer v. Stassinos*, 233 F.R.D. 546, 549 (N.D. Cal. 2006) ("Joinder of 1,000 or more co-plaintiffs is clearly impractical.").

Moreover, the Class is defined by objective, transactional facts—the purchase or lease of Class Vehicle—and there is no dispute that Settlement Class Members can easily be identified by reference to the books and records of Volkswagen and their dealers.  Accordingly, to the extent required, the Class is readily ascertainable.  *See Moreno v. Autozone, Inc.*, 251 F.R.D. 417, 421 (N.D. Cal. 2008) (Breyer, J.) ("A class is ascertainable if it identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description.").

**2.      There Are Common Questions of Law and Fact.**

Further, common questions of law and fact apply to each of the Settlement Class Member's claims.  "Federal Rule of Civil Procedure 23(a)(2) conditions class certification on demonstrating that members of the proposed class share common 'questions of law or fact.'"  *Stockwell v. City & County of San Francisco*, 749 F.3d 1107, 1111 (9th Cir. 2014).  The "commonality requirement has been 'construed permissively,' and its requirements deemed 'minimal.'"  *Estrella v. Freedom Fin. Network*, No. C 09-03156 SI, 2010 WL 2231790, at *7

- 17 -

1  (N.D. Cal. June 2, 2010) (quoting *Hanlon*, 150 F.3d at 1020).  "The existence of shared legal

2  issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled

3  with disparate legal remedies within the class."  *Hanlon*, 150 F.3d at 1019.  Assessing

4  commonality requires "a precise understanding of the nature of the underlying claims."

5  *Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014) (citing *Amgen Inc. v. Conn. Ret. Plans & Tr.*

6  *Funds*, 133 S. Ct. 1184, 1194–95 (2013)).  This allows courts to determine if the class' "claims . .

7  . depend upon a common contention" that is "of such a nature that it is capable of classwide

8  resolution—which means that determination of its truth or falsity will resolve an issue that is

9  central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*,

10  564 U.S. 338, 350 (2011).  The commonality "analysis does not turn on the number of common

11  questions, but on their relevance to the factual and legal issues at the core of the purported class'

12  claims."  *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014).  Indeed, "'[e]ven a

13  single question of law or fact common to the members of the class will satisfy the commonality

14  requirement."  *Dukes*, 564 U.S. at 369.

15      Courts routinely find commonality where the class' claims arise from a defendant's

16  uniform course of conduct.  *See, e.g.*, *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482,

17  488 (C.D. Cal. 2006) ("The Court finds that the class members' claims derive from a common

18  core of salient facts, and share many common legal issues. These factual and legal issues include

19  the questions of whether Allianz entered into the alleged conspiracy and whether its actions

20  violated the RICO statute.  The commonality requirement of Rule 23(a)(2) is met."); *Cohen v.*

21  *Trump*, 303 F.R.D. 376, 382 (S.D. Cal. 2014) ("Here, Plaintiff argues his RICO claim raises

22  common questions as to 'Trump's scheme and common course of conduct, which ensnared

23  Plaintiff[] and the other Class Members alike.'  The Court agrees."); *Spalding v. City of Oakland*,

24  No. C11-2867 TEH, 2012 WL 994644, at *3 (N.D. Cal. Mar. 23, 2012) (commonality found

25  where plaintiffs "allege[] a common course of conduct that is amenable to classwide resolution");

26  *Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 102 F.R.D. 457, 462 (N.D. Cal.

27  1983) ("commonality requirement is satisfied where it is alleged that the defendants have acted in

28  a uniform manner with respect to the class"); *see also Suchanek v. Sturm Foods, Inc.*, 764 F.3d

1  750, 756 (7th Cir. 2014) (finding that "[w]here the same conduct or practice by the same

2  defendant gives rise to the same kind of claims from all class members, there is a common

3  question").[6]

4      Here, as in the 2.0-liter Settlement, the Settlement Class Members' claims arise from

5  Volkswagen's and Bosch's alleged "common course of conduct."  *In re Volkswagen*, 2016 WL

6  4010049, at *10.  Common questions of fact include allegations of Bosch's involvement in

7  Volkswagen's "fraudulent scheme to deceive state and federal regulatory authorities by installing

8  in [the] 2.0-liter [and 3.0-liter] diesel engine vehicles the defeat device designed."  *Id*.  Common

9  questions of law and fact about the scheme and common course of conduct will generate common

10  answers "apt to drive the resolution of the litigation" for the Settlement Class as a whole.  *Dukes*,

11  564 U.S. at 350.  Because Plaintiffs allege that the Class's "injuries derive from [D]efendants'

12  alleged 'unitary course of conduct,'" they have "'identified a unifying thread that warrants class

13  treatment.'"  *Sykes v. Mel Harris & Assocs. LLC*, 285 F.R.D. 279, 290 (S.D.N.Y. 2012), *aff'd*,

14  780 F.3d 70 (2d Cir. 2015).

15      As this Court recognized when certifying the 2.0-liter class, "[w]ithout class certification,

16  individual Class Members would be forced to separately litigate the same issues of law and fact

17  which arise from Volkswagen's use of the defeat device and Volkswagen's alleged common

18  course of conduct."  *In re Volkswagen*, 2016 WL 4010049, at *10 (citing *In re Celera Corp. Sec.

19  Litig.*, No. 5:10-CV-02604-EJD, 2014 WL 722408, at *3 (N.D. Cal. Feb. 25, 2014) (finding

20  commonality met where plaintiffs raised questions of law or fact that would be addressed by other

21  putative class members pursuing similar claims)).  The same is true with regard to Bosch.

22  Accordingly, Commonality is easily satisfied here.

23

[6] Although the Court need not reach the question, courts routinely find commonality in cases
24  where uniform misrepresentations and omissions are employed to deceive the public.  *See Ries v.
    Ariz. Beverages USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012) ("Courts routinely find
25  commonality in false advertising cases."); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 501-02 (S.D.
    Cal. 2013) (same); *see also Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 478 (C.D. Cal. 2012)
26  (whether misrepresentations "are unlawful, deceptive, unfair, or misleading to reasonable
    consumers are the type of questions tailored to be answered in 'the capacity of a classwide
27  proceeding to generate common answers apt to drive the resolution of the litigation'") (quoting
28  *Dukes*, 564 U.S. at 350).

- 19 -                PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE
                     BOSCH CLASS ACTION SETTLEMENT 2672 CRB (JSC)

1

2

        **3.**      **The Settlement Class Representatives' Claims Are Typical of Other Settlement Class Members' Claims.**

3

      The proposed Settlement Class Representatives' claims are also typical of other

4  Settlement Class Members' claims.  "Rule 23(a)(3) requires that 'the claims or defenses of the

5  representative parties are typical of the claims or defenses of the class.'"  *Parsons*, 754 F.3d at

6  685 (quoting Fed. R. Civ. P. 23(a)(3)).  "Like the commonality requirement, the typicality

7  requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-

8  extensive with those of absent class members; they need not be substantially identical.'"

9  *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F.3d at 1020).

10  "The test of typicality is 'whether other members have the same or similar injury, whether the

11  action is based on conduct which is not unique to the named plaintiffs, and whether other class

12  members have been injured by the same course of conduct.'"  *Evon v. Law Offices of Sidney*

13  *Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d

14  497, 508 (9th Cir. 1992)).  Accordingly, the typicality requirement "assure[s] that the interest of

15  the named representative aligns with the interests of the class."  *Wolin v. Jaguar Land Rover N.*

16  *Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting *Hanon*, 976 F.2d at 508).  Thus, where a

17  plaintiff suffered a similar injury and other class members were injured by the same course of

18  conduct, typicality is satisfied.  *See Parsons*, 754 F.3d at 685.

19        Here, the same course of conduct that injured Settlement Class Representatives also

20  injured other Settlement Class Members.  Indeed, as in the 2.0-liter Settlement, "[t]he Settlement

21  Class Representatives' claims are based on the same pattern of wrongdoing as those brought on

22  behalf of [Settlement] Class Members."  *In re Volkswagen*, 2016 WL 4010049, at *11.  Thus,

23  "[t]heir claims are typical because they were subject to the same conduct as other Settlement

24  Class Members, and as a result of that conduct, the Settlement Class Representatives and

25  Settlement Class Members suffered the same injury."  *Id*.  The Settlement Class Representatives,

26  like other Settlement Class Members, would not have purchased or leased their vehicles had the

27  illegal defeat devices been disclosed because the Class Vehicles would not have been approved

28  for sale or lease in the U.S. in the first place.  The Settlement Class Representatives and the other

Settlement Class Members will similarly—and equitably—benefit from the relief provided by the Settlement.

Accordingly, Rule 23's typicality requirement is satisfied here.  *See In re Volkswagen*, 2016 WL 4010049, at *11 (finding typicality satisfied in context of the 2.0-liter Settlement).

### 4.   The Settlement Class Representatives and Class Counsel Will Fairly and Adequately Protect the Interests of the Settlement Class.

Adequacy of representation is clearly met.  Rule 23(a)(4) requires "the representative parties [to] adequately protect the interests of the class."  "This requirement is rooted in due-process concerns—'absent class members must be afforded adequate representation before entry of a judgment which binds them.'"  *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (quoting *Hanlon*, 150 F.3d at 1020).  Courts engage in a two-prong inquiry: "'(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"  *Evon*, 688 F.3d at 1031 (quoting *Hanlon*, 150 F.3d at 1020).  Here, the answer to question one is no, and the answer to question two is a resounding yes.

### a.   The Interests of the Settlement Class Representatives Are Directly Aligned with Those of the Absent Class Members and the Settlement Class Representatives Have Diligently Pursued the Action on Their Behalf.

The Settlement Class Representatives do not have any interests antagonistic to the other Settlement Class Members and will continue to vigorously protect their interests, as they have for the past year.  *See Clemens v. Hair Club for Men, LLC*, No. C 15-01431 WHA, 2016 WL 1461944, at *2 (N.D. Cal. Apr. 14, 2016).  Indeed, the Settlement Class Representatives and Settlement Class Members "are entirely aligned in their interest in proving that Volkswagen [and Bosch] misled them and share the common goal of obtaining redress for their injuries."  *In re Volkswagen*, 2016 WL 4010049, at *11.

As in the 2.0-liter Settlement, the Settlement Class Representatives understand their duties as class representatives, have agreed to consider the interests of absent Settlement Class Members, and have actively participated in this litigation.  *See id.*; *see also Trosper v. Styker*

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE
BOSCH CLASS ACTION SETTLEMENT 2672 CRB (JSC)

1  *Corp.*, No. 13-CV-0607-LHK, 2014 WL 4145448, at *29 (N.D. Cal. Aug. 21, 2014) ("All that is

2  necessary is a 'rudimentary understanding of the present action and . . . a demonstrated

3  willingness to assist counsel in the prosecution of the litigation.'").

4  Here, for example, the Settlement Class Representatives have provided factual

5  information pertaining to their purchase or lease of a Class Vehicle in order to assist in drafting

6  the complaints in this litigation.  *In re Volkswagen*, 2016 WL 4010049, at *11.  The Settlement

7  Class Representatives have searched for, and provided, relevant documents and information to

8  their counsel, and have assisted in preparing discovery responses and completing comprehensive

9  fact sheets.  *Id.*  Moreover, the Settlement Class Representatives have regularly communicated

10  with their counsel regarding various issues pertaining to this case, and they will continue to do so

11  until the Settlement is approved and its administration completed.  *Id.*  All of this together is more

12  than sufficient to meet the adequacy requirement of Rule 23(a)(4).  *See id.*

13
14  **b.    Class Counsel Are Qualified to Serve as Settlement Class Counsel.**

15  Rule 23(g) requires this Court to appoint class counsel to represent the Settlement Class.

16  At the outset of the MDL, as part of a competitive application process before the Court, Lead

17  Counsel and each member of the PSC established, and the Court recognized, their qualifications,

18  experience, and commitment to the successful prosecution of this MDL.  Importantly, the criteria

19  that the Court considered in appointing Lead Counsel and the PSC was substantially similar to the

20  considerations set forth in Rule 23(g).  *Compare* Dkts. 336 and 1084, *with Clemens*, 2016 WL

21  1461944, at *2.  In the context of the 2.0-liter Settlement, the Court found that Class Counsel "are

22  qualified attorneys with extensive experience in consumer class action litigation and other

23  complex cases" and that "there are no doubts regarding Class Counsel's adequacy."  *In re*

24  *Volkswagen*, 2016 WL 4010049, at *11.  Further, Class Counsel, and their respective law firms,

25  have undertaken an enormous amount of work, effort, and expense in this litigation and

26  demonstrated their willingness to devote whatever resources necessary to see it through to a

27  successful outcome.  *Id.*; *see* 12/22/16 Status Conf. Tr. 14:7-22 (Dkt. No. 2757) ("I am well

28  aware of the extraordinary effort that the lawyers for all the parties have put into this. . . . Lawyers

1   have families. Lawyers have other obligations. Lawyers have lives. And they have sort of taken

2   all of that, put it to the side, and worked on this task of resolving this issue because of the serious

3   environmental concerns that were raised by this litigation."); 5/24/16 Status Conf. Tr. 8:6-14

4   (Dkt. No. 1535) ("I have been advised by the Settlement Master that all of you have devoted

5   substantial efforts, weekends, nights, and days, and perhaps at sacrifice to your family.").

6        The Court need look no further than the significant benefits already obtained for the Class

7   through Class Counsel's zealous and efficient prosecution of this action.  Accordingly, as this

8   Court found for the 2.0-liter Settlement, Class Counsel are qualified and adequate to represent the

9   interests of the Settlement Class in this Settlement with Bosch.  *See In re Volkswagen*, 2016 WL

10  4010049, at *11 (finding adequacy satisfied in context of the 2.0-liter Settlement); *see also In re*

11  *Volkswagen*, 2016 WL 6248426, at *28 (confirming appointment of Lead Counsel and the PSC as

12  Settlement Counsel in the context of the 2.0-liter Settlement).

13        **B.        The Requirements of Rule 23(b)(3) Are Met.**

14        In addition to the requirements of Rule 23(a), the Court must also find that of Rule 23(b)'s

15  requirements are satisfied.  A Rule 23(b)(3) class may be certified where, as here: (i) "questions

16  of law or fact common to class members predominate over any questions affecting only

17  individual members"; and (ii) a class action is "superior to other available methods for fairly and

18  efficiently adjudicating the controversy."  Both requirements are met.

19        **1.        Common Issues of Law and Fact Predominate.**

20        First, common questions of law and fact predominate over any individual questions.  "The

21  predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are

22  more prevalent or important than the non-common, aggregation-defeating, individual issues.'"

23  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 2 William B.

24  Rubenstein, *et al.*, *Newberg on Class Actions* § 4:49, at 195-96 (5th ed. 2012)).  "When 'one or

25  more of the central issues in the action are common to the class and can be said to predominate,

26  the action may be considered proper under Rule 23(b)(3) even though other important matters

27  will have to be tried separately, such as damages or some affirmative defenses peculiar to some

28  individual class members.'"  *Id.* (quoting 7AA Charles Alan Wright, Arthur R. Miller & Mary

- 23 -

Kay Kane, *Federal Practice and Procedure* § 1778, at 123-24 (3d ed. 2005)).  Instead, at its core, "[p]redominance is a question of efficiency."  *Butler v. Sears, Roebuck & Co.*, 702 F.3d 359, 362 (7th Cir. 2012).  Thus, "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

The Ninth Circuit favors class treatment of fraud claims stemming from a "common course of conduct," like the scheme alleged here.  *See In re First Alliance Mortg. Co.*, 471 F.3d 977, 990 (9th Cir. 2006); *Hanlon*, 150 F.3d at 1022-23.  Even outside of the settlement context, predominance is readily met in cases asserting RICO and consumer claims arising from a fraudulent scheme that injured each plaintiff.  *See Amchem Prods.*, 521 U.S. at 625; *Wolin*, 617 F.3d at 1173, 1176 (consumer claims based on uniform omissions are readily certifiable where the claims are "susceptible to proof by generalized evidence," even if individualized issues remain); *Friedman v. 24 Hour Fitness USA, Inc*., No. CV 06-6282 AHM (CTx), 2009 WL 2711956, at *8 (C.D. Cal. Aug. 25, 2009) ("Common issues frequently predominate in RICO actions that allege injury as a result of a single fraudulent scheme."); *see also Klay v. Humana, Inc.*, 382 F.3d 1241, 1256-57 (11th Cir. 2004) (upholding class certification of RICO claim where "all of the defendants operate nationwide and allegedly conspired to underpay doctors across the nation, so the numerous factual issues relating to the conspiracy are common to all plaintiffs [and the] corporate policies [at issue] constitute[d] the very heart of the plaintiffs' RICO claims").[7]

---

[7] The Rule 23(b)(3) predominance inquiry in the context of the certification of a nationwide settlement class involving various state consumer protection law claims was the subject of an extensive *en banc* decision by the Third Circuit in *Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011).  In affirming certification of a nationwide settlement class, the Third Circuit's predominance inquiry was informed by "three guideposts": (1) "commonality is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members"; (2) "variations in state law do not necessarily defeat predominance"; and (3) "concerns regarding variations in state law largely dissipate when a court is considering the certification of a settlement class."  *Id.* at 297.

This Court recently adopted the rationale in *Sullivan*, foreshadowed by the Ninth Circuit in *Hanlon*, that "state law variations are largely 'irrelevant to certification of a settlement class.'" *Id.* at 304 (quoting *Sullivan*, 667 F.3d at 304); *Wakefield v. Wells Fargo & Co.*, No. C 13-05053

- 24 -

1    Here, too, questions of law or fact common to the claims of the Settlement Class Members

2    predominate over any questions affecting only individual members.  As the Court found in the

3    context of the 2.0-liter Settlement, Volkswagen's uniform scheme to mislead regulators and

4    consumers by submitting false applications for COCs and EOs, failing to disclose the existence of

5    the illegal Defeat Devices in the Class Vehicles, and misrepresenting the levels of $NO_X$ emissions

6    of the Class Vehicles are central to the claims asserted in the Amended Consumer Complaint, as

7    are claims concerning Bosch's alleged involvement.  *See In re Volkswagen*, 2016 WL 4010049, at

8    *12; *see also* Dkt. 1804, at ¶¶ 238-296.  "Plaintiffs allege Volkswagen perpetrated the same fraud

9    in the same manner against all [Settlement] Class Members."  *In re Volkswagen*, 2016 WL

10    4010049, at *12.  Indeed, as with the 2.0-liter Settlement, if the Court were to find that

11    Volkswagen and Bosch "engaged in a deceptive and fraudulent scheme, such a finding would

12    apply to all of the [Settlement] Class Members' claims."  *Id.*  Plaintiffs also allege a common and

13    unifying injury, as their and other Settlement Class Members' injuries arise solely from the use of

14    the defeat device.  *Id.*  Thus, here too, Plaintiffs satisfy the predominance requirement.

15              **2.**       **Class Treatment Is Superior in This Case.**

16         Finally, class treatment is superior.  Pursuant to Rule 23(b)(3), a class action must be

17    "superior to other available methods for fairly and efficiently adjudicating the controversy."  This

18    factor "requires determination of whether the objectives of the particular class action procedure

19    will be achieved in the particular case."  *Hanlon*, 150 F.3d at 1023.  In other words, it "requires

20    the court to determine whether maintenance of this litigation as a class action is efficient and

21    whether it is fair."  *Wolin*, 617 F.3d at 1175-76.  Under Rule 23, "the Court evaluates whether a

22

23    LB, 2014 WL 7240339, at *4 (N.D. Cal. Dec. 18, 2014); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2016 U.S. Dist. LEXIS 9944, at *28-29 (N.D. Cal. Jan. 6, 2016),

24    *report & recommendation adopted*, 2016 U.S. Dist. LEXIS 9766 (N.D. Cal. Jan. 26, 2016). Moreover, in the settlement context, the Court need not "differentiate[e] within a class based on

25    the strength or weakness of the theories of recovery."  *In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. C 07-05634 CRB, 2015 WL 3396829, at *3 (N.D. Cal. May 26, 2015)

26    (quoting *Sullivan*, 667 F.3d at 328); *Rodman v. Safeway, Inc.*, No. 11-cv-03003-JST, 2014 WL

27    988992, at *15 (N.D. Cal. Mar. 10, 2014) (citing *Sullivan*, 667 F.3d at 304-07).  Here, like in *Sullivan*, any material variations in state law do not preclude a finding of predominance, given the

28    uniformity of Volkswagen's and Bosch's conduct in the scheme and common course of conduct.

1    class action is a superior method of adjudicating plaintiff's claims by evaluating four factors: '(1)

2    the interest of each class member in individually controlling the prosecution or defense of

3    separate actions; (2) the extent and nature of any litigation concerning the controversy already

4    commenced by or against the class; (3) the desirability of concentrating the litigation of the

5    claims in the particular forum; and (4) the difficulties likely to be encountered in the management

6    of a class action.'" *Trosper*, 2014 WL 4145448, at *17 (quoting *Leuthold v. Destination Am.,*

7    *Inc.*, 224 F.R.D. 462, 469 (N.D. Cal. 2004)).

8         There can be little doubt that class treatment here is superior to the litigation of thousands

9    of individual consumer actions.  "From either a judicial or litigant viewpoint, there is no

10   advantage in individual members controlling the prosecution of separate actions. There would be

11   less litigation or settlement leverage, significantly reduced resources and no greater prospect for

12   recovery." *Hanlon*, 150 F.3d at 1023; *see also Wolin*, 617 F.3d at 1176 ("Forcing individual

13   vehicle owners to litigate their cases, particularly where common issues predominate for the

14   proposed class, is an inferior method of adjudication.").  The damages sought by each Settlement

15   Class Member here, while related to an important purchase, are not so large as to weigh against

16   certification of a class action. *See Smith v. Cardinal Logistics Mgmt. Corp.*, No. 07-2104 SC,

17   2008 WL 4156364, at *11 (N.D. Cal. Sept. 5, 2008) (class members had a small interest in

18   personally controlling the litigation even where damages averaged $25,000-$30,000 per year of

19   work); *see also Walker v. Life Ins. Co.*, No. CV 10-9198 JVS (RNBx), 2012 WL 7170602, at *16

20   (C.D. Cal. Nov. 9, 2012) (finding that each class member did not have "a greater interest in

21   pursuing individual claims," even though it was "not the typical case of thousands of class

22   members with very low amounts in controversy").

23        The sheer number of separate trials that would otherwise be required also weighs in favor

24   of certification.  Indeed, "[i]f [Settlement] Class Members were to bring individual lawsuits

25   against Volkswagen [and Bosch], each Member would be required to prove the same wrongful

26   conduct to establish liability and thus would offer the same evidence." *In re Volkswagen*, 2016

27   WL 4010049, at *12.  "Given that [Settlement] Class Members number in the hundreds of

28   thousands, there is the potential for just as many lawsuits with the possibility of inconsistent

- 26 -

1    rulings and results." *Id.* "Thus, classwide resolution of their claims is clearly favored over other

2    means of adjudication, and the proposed Settlement resolves [Settlement] Class Members' claims

3    at once." *Id.*

4         Moreover, all private federal actions seeking relief for the Class have already been

5    transferred to this District for consolidated MDL pretrial proceedings.[8]  That the JPML

6    consolidated all related federal consumer cases in an MDL before this Court is a clear indication

7    that a single proceeding is preferable to a multiplicity of individual lawsuits.  The government

8    suits are pending as part of this MDL, too, enabling this Court to approve and enforce all of the

9    provisions of each of these settlements.  The certification of the Settlement Class enables and

10   completes this advantageous unified jurisdiction.  *See In re Volkswagen*, 2016 WL 4010049, at

11   *12 (finding superiority satisfied in context of 2.0-liter Settlement).

12        Because the class action device provides the superior means to effectively and efficiently

13   resolve this controversy, and as the other requirements of Rule 23 are each satisfied, certification

14   of the Settlement Class is appropriate.  *See id.* (finding plaintiffs satisfied the Rule 23(a) and

15   (b)(3) requirements and certifying the class in the context of the 2.0-liter Settlement).

16   **VI.   THE PROPOSED NOTICE PROGRAM PROVIDES THE BEST
         PRACTICABLE NOTICE IN PLAIN LANGUAGE BY DIRECT
17        MAIL, EMAIL AND PUBLICATION**

18        Upon certifying a Rule 23(b)(3) class, Rule 23(c)(2)(B) requires courts to "direct to class

19   members the best notice that is practicable under the circumstances, including individual notice to

20   all members who can be identified through reasonable effort."  The best practicable notice is that

21   which is "reasonably calculated, under all the circumstances, to apprise interested parties of the

22

23   _____

     [8] Although several class actions are pending in various state courts, the existence of these actions
24   does not defeat a finding of superiority.  *See Cartwright v. Viking Indus., Inc.*, No. 2:07-CV-
     02159-FCD-EFB, 2009 WL 2982887, at *14-15 (E.D. Cal. Sept. 14, 2009) (certifying CLRA,
25   UCL, fraudulent concealment, unjust enrichment, and warranty claims despite a concurrent state
     court class action that certified warranty claims for class treatment); *In re Wells Fargo Home
26   Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1069 (N.D. Cal. 2007) (recognizing that courts
     often certify concurrent FLSA and UCL class actions).  Nor does the existence of actions filed by
27   the DOJ or FTC preclude a finding of superiority because, among other reasons, both of those
     actions are part of this MDL and the proposed Settlement was negotiated with their participation.
28

                                              - 27 -

1   pendency of the action and afford them an opportunity to present their objections." *Mullane v.*

2   *Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).  The "[n]otice is satisfactory if it

3   'generally describes the terms of the settlement in sufficient detail to alert those with adverse

4   viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., L.L.C., v. GE*, 361

5   F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tuscon Sch. Dist. No. 1*, 623 F.2d 1338, 1352

6   (9th Cir. 1980)).

7       Here, the proposed Notice Program for the Bosch Settlement meets these standards.  *See*

8   Exhibit 2, Declaration of Cameron R. Azari on Adequacy of the Class Notice Program ("Azari

9   Decl."). The Class Notice Program includes clear and complete Short and Long Form Notices, as

10  well as a comprehensive Settlement Website.  Notice will be distributed through direct mail,

11  email, an Information Hotline, and a media/advertising plan.  Both the content and distribution of

12  the Notice Program meet the requirements of Rule 23.

13      **A.      The Content of the Class Notice Program Satisfies Rule 23.**

14      The Long Form Notice is a 15-plus page document that uses a series of detailed, clearly

15  worded questions and answers to explain the Bosch Settlement in a reader-friendly format.  The

16  Long Form Notice includes, among other things, an overview of the litigation, an explanation of

17  the benefits available under the Bosch Settlement, and detailed instructions on how to participate

18  in or opt out of the Settlement.  It also explains that Class Members who wish to opt out of the

19  Settlement will have until April 14, 2017 to do so.  The proposed Long Form Notice is attached to

20  the Class Action Settlement Agreement, filed concurrently, as Exhibit 1.

21       The Short Form Notice is designed to capture Class Members' attention via a mailed

22  postcard. It articulates the basic structure of the Settlement in clear, plain, and concise language.

23  It directs readers to the Settlement Website (where the Long Form Notice is available), and offers

24  a toll-free number to call for more information.  The proposed Short Form Notice is attached to

25  the Class Action Settlement Agreement, filed concurrently, as Exhibit 2.

26      Together, these notices satisfy all of the requirements set forth in Rule 23(c)(2)(B),

27  specifically:

28      •      A description of the nature of the case. *See* Long Form Notice Question 5;

- 28 -      PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE
BOSCH CLASS ACTION SETTLEMENT 2672 CRB (JSC)

1    •    The Class definition and composition. *See* Long Form Notice Questions 3-4;

2    •    A description of the Class claims, potential outcomes, and the reasons for the

3    Settlement. *See* Long Form Notice Questions 19, 22-27;

4    •    A statement concerning the Class Members' rights to recovery. *See* Long Form

5    Notice Summary and Questions 10-15;

6    •    The names of representatives for Class Counsel who can answer Class Members'

7    questions. *See* Long Form Notice Question 28;

8    •    The process and procedure for objecting to the Settlement and appearing at a final

9    fairness hearing, with or without the aid of an attorney.  *See* Long Form Notice at Questions 31-

10   35;

11   •    The procedure and time frame through which a Class Member may opt out of the

12   Settlement. *See* Long Form Notice Summary and Question 23; and

13   •    The fact that the final judgment in this case will release all claims against Bosch

14   and bind all Class Members. *See* Long Form Notice Summary and Questions 20-21, 24-25.

15        **B.    The Proposed Plan Effectuates the Best Practicable Notice Method.**

16        Rule 23(e)(1) requires that before a proposed settlement may be approved, the Court

17   "must direct notice in a reasonable manner to all class members who would be bound by the

18   proposal."  The Class Notice Program described herein exemplifies the reasonable efforts

19   contemplated by Rule 23.  This method of dissemination is the best and most practicable method

20   for reaching potential Class Members and for providing individualized notice to those Class

21   Members who can be identified through reasonable effort.  The Class Notice Program covers

22   several distribution channels, including: (1) individual direct mail and email notice; (2) paid

23   media; (3) earned media and outreach; (4) a Settlement Website; and (5) an Information Hotline.

24   *See* Exhibit 2, Azari Decl., at ¶¶ 13-30.

25        The principal method of reaching Class Members will be through individual direct mail

26   notice, given that the Class is objectively defined and readily identifiable.  *See Manual for*

27   *Complex Litigation* (Fourth) (2004), § 21.222.   The Parties and Volkswagen have agreed to share

28   Class Member information gathered during the negotiation and administration of the 2.0-liter and

1    3.0-liter Volkswagen settlements.  Thus, contact data for Bosch Class Members will be obtained

2    through the Notice Administrator and Claims Supervisor in the Volkswagen Settlements.

3           Short Form Notice will be sent to the vast majority of Class Members, who are readily

4    identifiable through pre-existing records and/or registration data, which will be checked prior to

5    sending against the National Change of Address Database maintained by the United States Postal

6    Service.  *Id.* at ¶¶ 14-16.  Long Form Notice will be mailed to all persons who request one via the

7    toll-free phone number or by mail. The Long Form Notice will also be available for download or

8    printing at the website.  *Id.* at ¶ 17. Additionally, an Email Notice will be sent to all potential

9    Bosch Class Members for whom a facially valid email address is available. The Email Notice will

10   consist of the Long Form Notice slightly modified as appropriate to be sent as an email. *Id.* at ¶

11   18.

12          To supplement the comprehensive individual notice and concurrent media plan

13   contemplated for the contemporaneous 3.0-Liter Settlement, the Bosch Notice Program also

14   includes paid media, including target digital banner advertisements that match actual names and

15   physical/email addresses of known class members with current consumer profiles.  *Id.* at ¶ 23. A

16   party-neutral Informational Release will be issued to approximately 4,200 print and broadcast and

17   5,500 online press outlets throughout the United States.  Finally, a dedicated website will be

18   created for the Bosch Settlement, where Class Members will be able to review documents

19   including the Long Form Notice, Settlement Agreement, Complaint and answers to frequently

20   asked questions.

21          The Parties created this comprehensive proposed notice program—including both the

22   content and the distribution plan— with Epiq Systems, Inc. ("Epiq"), a firm that specializes in

23   designing, developing, analyzing and implementing large-scale, un-biased, legal notification

24   plans.  Subject to the Court's approval, the parties have selected Epiq to serve as the Notice

25   Administrator.  The Parties are confident that the Notice Program meets the applicable legal

26   standards and will provide the best notice practicable under the circumstances.

27   **VII.   THE PROPOSED FINAL APPROVAL HEARING SCHEDULE**

28          The last step in the settlement approval process is the final approval hearing, at which the

Court may hear any evidence and argument necessary to evaluate the Settlement.  At that hearing, proponents of the Settlement may explain and describe its terms and conditions and offer argument in support of settlement approval, and Settlement Class Members, or their counsel, may be heard in support of or in opposition to the Settlement.  Plaintiffs propose the following schedule for final approval of the Settlement and implementation of the Settlement Program:

| Date | Event |
|------|-------|
| February 7, 2017 | Bosch provides Class Action Fairness Act Notice to State Attorneys General |
| February 14, 2017 | Preliminary Approval Hearing [Remainder of schedule assumes entry of Preliminary Approval Order on this date] |
| February 15, 2017 | Class Notice Program begins |
| March 24, 2017 | Motions for Final Approval and Attorneys' Fees filed |
| April 14, 2017 | Objection and Opt-Out Deadline |
| April 28, 2017 | Reply Memorandum in Support of Final Approval and Attorneys' Fees filed, along with Declaration by the Notice and Settlement Administrator. |
| May 1, 2017 – May 5, 2017 [precise date and time TBD by Court] | Final Approval Hearing |

## VIII.   CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court preliminarily approve the Bosch Settlement, provisionally certify the Settlement Class, conditionally appoint the undersigned as Class Counsel and the Plaintiffs listed in Exhibit 1 hereto as Settlement Class Representatives, order dissemination of notice to Settlement Class Members, and set a date for the final approval hearing.

| | |
|---|---|
| Dated:  January 31, 2017 | Respectfully submitted, |
| | LIEFF CABRASER HEIMANN & BERNSTEIN, LLP |
| | By:  */s/ Elizabeth J. Cabraser* |
| | Elizabeth J. Cabraser LIEFF CABRASER HEIMANN & BERNSTEIN, LLP 275 Battery Street, 29th Floor San Francisco, CA  94111 Telephone: 415.956.1000 Facsimile:  415.956.1008 E-mail: ecabraser@lchb.com |
| | *Plaintiffs' Lead Counsel* |
| Benjamin L. Bailey BAILEY GLASSER LLP 209 Capitol Street Charleston, WV 25301 Telephone: 304.345.6555 Facsimile:  304.342.1110 E-mail: Bbailey@baileyglasser.com | Roland K. Tellis BARON & BUDD, P.C. 15910 Ventura Boulevard, Suite 1600 Encino, CA  91436 Telephone: 818.839.2320 Facsimile:  818.986.9698 E-mail: trellis@baronbudd.com |
| W. Daniel "Dee" Miles III BEASLEY ALLEN LAW FIRM 218 Commerce Street Montgomery, AL  36104 Telephone: 800.898.2034 Facsimile:  334.954.7555 E-mail: dee.miles@beasleyallen.com | Lesley E. Weaver BLEICHMAR FONTI & AULD LLP 1999 Harrison Street, Suite 670 Oakland, CA 94612 Telephone: 415.455.4003 Facsimile: 415.445.4020 E-mail: lweaver@bfalaw.com |
| David Boies BOIES, SCHILLER & FLEXNER LLP 333 Main Street Armonk, NY  10504 Telephone: 914.749.8200 Facsimile:  914.749.8300 E-mail: dboies@bsfllp.com | J. Gerard Stranch IV BRANSTETTER, STRANCH & JENNINGS, PLLC 223 Rosa L. Parks Avenue, Suite 200 Nashville, TN  37203 Telephone: 615.254.8801 Facsimile: 615.250.3937 E-mail: gerards@bsjfirm.com |
| James E. Cecchi CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO P.C. 5 Becker Farm Road Roseland, NJ  07068-1739 Telephone: 973.994.1700 Facsimile:  973.994.1744 E-mail: jcecchi@carellabyrne.com | David Seabold Casey, Jr. CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD, LLP 110 Laurel Street San Diego, CA  92101-1486 Telephone: 619.238.1811 Facsimile:  619.544.9232 E-mail: dcasey@cglaw.com |

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE
BOSCH CLASS ACTION SETTLEMENT 2672 CRB (JSC)

Frank Mario Pitre
COTCHETT PITRE & McCARTHY LLP
840 Malcolm Road, Suite 200
Burlingame, CA  94010
Telephone: 650.697.6000
Facsimile:  650.697.0577
E-mail: fpitre@cpmlegal.com

Rosemary M. Rivas
FINKELSTEIN THOMPSON LLP
One California Street, Suite 900
San Francisco, CA  94111
Telephone: 415.398.8700
Facsimile:  415.393.8704
E-mail: rrivas@finkelsteinthompson.com

Adam J. Levitt
GRANT & EISENHOFER P.A.
30 North LaSalle Street, Suite 2350
Chicago, IL  60602
Telephone: 312.610.5400
Facsimile:  312.214.0001
E-mail: alevitt@gelaw.com

Steve W. Berman
HAGENS BERMAN
1918 8th Avenue, Suite 3300
Seattle, WA  98101
Telephone: 206.623.7292
Facsimile:  206.623.0594
E-mail: steve@hbsslaw.com

Michael D. Hausfeld
HAUSFELD
1700 K Street, N.W., Suite 650
Washington, DC  20006
Telephone: 202.540.7200
Facsimile:  202.540.7201
E-mail: mhausfeld@hausfeld.com

Michael Everett Heygood
HEYGOOD, ORR & PEARSON
6363 North State Highway 161, Suite 450
Irving, TX  75038
Telephone: 214.237.9001
Facsimile:  214.237-9002
E-mail: Michael@hop-law.com

Lynn Lincoln Sarko
KELLER ROHRBACK L.L.P.
1201 3rd Avenue, Suite 3200
Seattle, WA  98101-3052
Telephone: 206.623.1900
Facsimile:  206.623.3384
E-mail: lsarko@kellerrohrback.com

Joseph F. Rice
MOTLEY RICE, LLC
28 Bridgeside Boulevard
Mount Pleasant, SC  29464
Telephone: 843.216.9000
Facsimile:  843.216.9450
E-mail: jrice@motleyrice.com

Paul J. Geller
ROBBINS GELLER RUDMAN &
DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone: 561.750.3000
Facsimile:  561.750.3364
E-mail: pgeller@rgrdlaw.com

Roxanne Barton Conlin
ROXANNE CONLIN & ASSOCIATES, P.C.
319 Seventh Street, Suite 600
Des Moines, IA  50309
Telephone: 515.283.1111
Facsimile:  515.282.0477
E-mail: roxlaw@aol.com

Christopher A. Seeger
SEEGER WEISS LLP
77 Water Street
New York, NY  10005-4401
Telephone: 212.584.0700
Facsimile:  212.584.0799
E-mail: cseeger@seegerweiss.com

Jayne Conroy
SIMMONS HANLY CONROY LLC
112 Madison Avenue
New York, NY  10016-7416
Telephone: 212.784.6400
Facsimile:  212.213.5949
E-mail: jconroy@simmonsfirm.com

1

Robin L. Greenwald
WEITZ & LUXENBERG P.C.

2

700 Broadway
New York, NY  10003

3

Telephone: 212.558.5500
Facsimile:  212.344.5461

4

E-mail: rgreenwald@weitzlux.com

5

*Plaintiffs' Steering Committee*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE
BOSCH CLASS ACTION SETTLEMENT 2672 CRB (JSC)

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that, on January 31, 2017, service of this document was accomplished

3    pursuant to the Court's electronic filing procedures by filing this document through the ECF

4    system.

5

6                                              /s/ Elizabeth J. Cabraser_____
                                               Elizabeth J. Cabraser

7

1337068.6

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE
                                              BOSCH CLASS ACTION SETTLEMENT 2672 CRB (JSC)