UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: VOLKSWAGEN "CLEAN DIESEL"
MARKETING, SALES PRACTICES, AND
PRODUCTS LIABILITY LITIGATION

_____/

This Order Relates To:
ALL CONSUMER AND RESELLER
ACTIONS

_____/

MDL No. 2672 CRB  (JSC)

**ORDER GRANTING PRELIMINARY
APPROVAL OF THE CONSUMER
AND RESELLER DEALERSHIP 3.0-
LITER CLASS ACTION
SETTLEMENT**

In the fall of 2015 the public learned of Volkswagen's deliberate use of a defeat device—

software designed to cheat emissions tests and deceive federal and state regulators—in nearly

600,000 Volkswagen-, Porsche-, and Audi-branded turbocharged direct injection ("TDI") diesel

engine vehicles sold in the United States.  Litigation quickly ensued, and those actions were

consolidated and assigned to this Court as a multidistrict litigation ("MDL").  After months of

intensive negotiations and with the assistance of a court-appointed settlement master, Plaintiffs

and Defendants Volkswagen AG ("VWAG"), Audi AG, Porsche AG, and Volkswagen Group of

America, Inc. ("VWGoA"), and Porsche Cars North America, Inc. (collectively, "Volkswagen" or

"Defendants") reached a settlement that resolves consumer claims concerning certain 3.0-liter

diesel TDI vehicles.  (*See* Dkt. No. 2894.)

The Settlement Class Representatives now move the Court to (1) preliminarily approve the

proposed Consumer and Reseller Dealership 3.0-Liter Class Action Settlement Agreement and

Release, (2) conditionally certify a Settlement Class, (3) approve the proposed settlement notice

plan, and (4) schedule a fairness hearing.  Having reviewed the proposed settlement and with the

benefit of oral argument on February 14, 2017, the Court GRANTS the motion for preliminary

approval.  The Settlement is sufficiently fair, adequate, and reasonable to the 3.0-liter diesel

engine vehicle consumers to move forward with class notice.

## BACKGROUND

### I.      Factual Allegations

Volkswagen sold Volkswagen-, Audi-, and Porsche-branded TDI "clean diesel" vehicles, which it marketed as being environmentally friendly, fuel efficient, and high performing. Unbeknownst to consumers and regulatory authorities, Volkswagen installed in these cars a software defeat device that allowed the vehicles to evade United States Environmental Protection Agency ("EPA") and California Air Resources Board ("CARB") emissions test procedures. Specifically, the defeat device senses whether the vehicle is undergoing testing and produces regulation-compliant results, but operates a less effective emissions control system when the vehicle is driven under normal circumstances.  Only by installing the defeat device on its vehicles was Volkswagen able to obtain Certificates of Conformity from EPA and Executive Orders from CARB for its 2.0- and 3.0-liter diesel engine vehicles; in fact, these vehicles release nitrogen oxides at a factor of up to 40 times over the permitted limit.  Over six years, Volkswagen sold American consumers nearly 600,000 diesel vehicles equipped with a defeat device.

### II.     Procedural History

Consumers filed hundreds of lawsuits nationwide after Volkswagen's use of the defeat device became public, and on December 8, 2015, the Judicial Panel on Multidistrict Litigation ("JPML") transferred 56 related actions, including numerous putative class actions, to this Court for coordinated pretrial proceedings in the above-captioned MDL.  (Dkt. No. 1.)  The JPML has since transferred an additional 1,182 tag-along actions to the Court.  (Dkt. No. 2870.)  Many MDL cases have also been filed directly in this Court.  In January 2016, the Court appointed Elizabeth J. Cabraser of Lieff, Cabraser, Heimann & Bernstein, LLP as Lead Plaintiffs' Counsel and Chair of the Plaintiffs' Steering Committee ("PSC"), to which the Court also named 21 attorneys.  (Dkt. No. 1084.)  On September 2, 2016, the PSC filed its Amended Consolidated Consumer Class Action Complaint against 13 named defendants: VWGoA; VWAG; Audi AG; Audi of America, LLC; Porsche AG; Porsche Cars North America, Inc.; Martin Winterkorn; Mattias Müller; Michael Horn; Rupert Stadler; Robert Bosch GmbH; Robert Bosch, LLC; and Volkmar Denner.

United States District Court
Northern District of California

1   (Dkt. No. 1804.)  The complaint asserts against Volkswagen claims under (1) the Racketeer

2   Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c)-(d), and the

3   Magnusson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*; (2) state fraud, breach of contract, and

4   unjust enrichment laws; and (3) all fifty States' consumer protection laws.  The PSC also filed a

5   Second Amended Consolidated Reseller Dealership Class Action Complaint against the same 13

6   defendants; that complaint asserts against Volkswagen RICO, fraud, failure to recall/retrofit, and

7   unjust enrichment claims.  (Dkt. No. 1805.)

8   The MDL also includes actions brought by federal and state government entities.  The

9   United States Department of Justice ("United States") on behalf of EPA has sued VWAG, Audi

10   AG, VWGoA; Volkswagen Group of America Chattanooga Operations, LLC ("VW

11   Chattanooga"), Porsche AG, and PCNA for claims arising under Sections 204 and 205 of the

12   Clean Air Act, 42 U.S.C. §§ 7523 and 7524.  The Federal Trade Commission ("FTC") has also

13   brought an action against VWGoA. The FTC brings its claims pursuant to Section 13(b) of the

14   Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §53(b), and alleges violations of Section

15   5(a) of the FTC Act, 15 U.S.C. § 45(a).  Additionally, the State of California, on behalf of the

16   People and CARB, has sued VWAG, VWGoA, VW Chattanooga, Audi AG, Porsche AG, and

17   PCNA for violations of the Consumer Financial Protection Act, 12 U.S.C. § 5536, and various

18   California state laws.

19   In January 2016, the Court appointed former Director of the Federal Bureau of

20   Investigation Robert S. Mueller III as Settlement Master to oversee settlement negotiations.  (Dkt.

21   No. 973.)  Since that time, the parties and government entities have engaged in extensive

22   negotiations, resulting in final approval of settlements between Volkswagen and (1) consumers

23   who purchased or leased 2.0-liter diesel engine vehicles (Dkt. No. 2102) and (2) the Volkswagen-

24   branded dealerships (Dkt. No. 2807).  The EPA and the FTC have also resolved their claims

25   against Volkswagen (Dkt. Nos. 2103, 2520, 2758 (EPA consent decrees); Dkt. Nos. 1607, 2843

26   (stipulations resolving FTC's claims), while CARB has resolved most of its claims (Dkt. No.

27   2519).  The PSC now seeks preliminary approval of the 3.0-liter Settlement.  (Dkt. No. 2840.)

28

United States District Court
Northern District of California

3

United States District Court
Northern District of California

# SETTLEMENT TERMS

This Order addresses the proposed Amended Consumer and Reseller Dealership 3.0-Liter Class Action Settlement Agreement.  (Dkt. No. 2894.)  The key provisions of the Settlement are as follows.

## I.    The Settlement Class

The proposed Settlement Class consists of:

> a nationwide class, including Puerto Rico, of all persons (this includes individuals who are United States citizens, residents, United States military, diplomatic personnel and employees living or stationed overseas, as well as entities) who, (1) at any time between September 18, 2015 and November 2, 2015, inclusive, owned or leased a Volkswagen, Audi, or Porsche 3.0-liter TDI vehicle in the United States or its territories (an "Eligible Vehicle," defined more fully in Section 2.40); or who (2) between November 3, 2015 and the Claim Submission Deadline for Eligible Owners and Lessees, inclusive, become the owner of an Eligible Vehicle in the United States or its territories; or who (3) own an Eligible Vehicle in the United States or its territories at the time of participation in the 3.0-liter Class Action Settlement Program.  The Class includes Non-Authorized Dealers who otherwise meet the definition of the Class.

The following entities and individuals are excluded from the Class:

> (a) Owners who acquired an Eligible Vehicle after September 18, 2015, and sold it before November 2, 2015;
>
> (b) Owners who acquired an Eligible Vehicle after November 2, 2015, and transferred title on or before January 31, 2017;
>
> (c) Lessees of a Generation One Eligible Vehicle leased from a leasing company other than VW Credit, Inc., and lessees of a Generation Two Eligible Vehicle leased from a leasing company other than VW Credit, Inc. or Porsche Financial Services, Inc.;
>
> (d) Owners whose Eligible Vehicle had a Branded Title of Assembled, Dismantled, Flood, Junk, Rebuilt, Reconstructed, or Salvage on September 18, 2015, and was acquired from a junkyard, salvage yard, or salvage dealer after September 18, 2015;
>
> (e) Owners who sell or otherwise transfer ownership of their Eligible Vehicle after January 31, 2017 but on or before the Opt-Out Deadline, unless the Eligible Vehicle is (i) unintentionally damaged after January 31, 2017, in a manner that renders it a total loss (*i.e.*, "totaled") and (ii) transferred to an insurance company or otherwise permanently removed from commerce;
>
> (f) Defendants' officers, directors and employees; Defendants' affiliates and affiliates' officers, directors and employees; their distributors and distributors' officers, directors and employees;

participants in Volkswagen's Internal Lease Program and/or Porsche Associate Lease Program; and Authorized Dealers and Authorized Dealers' officers and directors;

(g) Judicial officers and their immediate family members and associated court staff assigned to this case; and

(h) All those otherwise in the Class who or which timely and properly exclude themselves from the Class as provided in this 3.0-liter Class Action Agreement.

(Dkt. No. 2894 ¶ 2.23.)

An Eligible Vehicle under the Settlement means:

the Model Year 2009 through 2016 Volkswagen and Audi and Model Year 2013 through 2016 Porsche light-duty vehicles equipped with 3.0-liter TDI engines that (1) are covered, or purported to be covered, by the EPA Test Groups in the table immediately below this paragraph; (2) are, at any point during the period September 18, 2015 to January 31, 2017, registered with a state Department of Motor Vehicles or equivalent agency, or owned by a Non-Authorized Dealer in the United States or its territories that (a) holds title to the vehicle or (b) holds the vehicle by bill of sale; and (3) have not been modified pursuant to an Approved Emissions Modification.  Eligible Vehicle also excludes any Volkswagen, Audi, or Porsche vehicle that was never sold or registered in the United States or its territories.  A vehicle must be Operable to be considered an Eligible Vehicle for the purpose of the Buyback, Trade-In, Reduced Emissions Modification, or Emissions Compliant Repair.

(*Id.* ¶ 2.40.)  The specific Eligible Vehicles identified in the Settlement are as follows:

| Model Year | EPA Test Group(s) | Vehicle Make and Model(s) | Sub-Generation |
|---|---|---|---|
| 2009 | 9ADXT03.03LD | VW Touareg, Audi Q7 | 1.1 |
| 2010 | AADXT03.03LD | VW Touareg, Audi Q7 | 1.1 |
| 2011 | BADXT03.02UG<br>BADXT03.03UG | VW Touareg<br>Audi Q7 | 1.2 |
| 2012 | CADXT03.02UG<br>CADXT03.03UG | VW Touareg<br>Audi Q7 | 1.2 |
| 2013 | DADXT03.02UG<br>DADXT03.03UG<br>DPRXT03.0CDD | VW Touareg<br>Audi Q7<br>Porsche Cayenne Diesel | 2.1 SUV |
| 2014 | EADXT03.02UG<br>EADXT03.03UG<br>EPRXT03.0CDD | VW Touareg<br>Audi Q7<br>Porsche Cayenne Diesel | 2.1 SUV |

United States District Court
Northern District of California

| Model Year | EPA Test Group(s) | Vehicle Make and Model(s) | Sub-Generation |
|---|---|---|---|
| 2014 | EADXJ03.04UG | Audi: A6 quattro, A7 quattro, A8, A8L, Q5 | 2 PC |
| 2015 | FVGAT03.0NU3 | Audi: Q7, A6 quattro, A7 quattro, A8, A8L, Q5 | 2.1 SUV |
| 2015 | FVGAT03.0NU2 FPRXT03.0CDD | VW Touareg Porsche Cayenne Diesel | 2.2 SUV |
| 2015 | FVGAJ03.0NU4 | Audi: A6 quattro, A7 quattro, A8, A8L, Q5 | 2 PC |
| 2016 | GVGAT03.0NU2 GPRXT03.0CDD | VW Touareg Porsche Cayenne Diesel | 2.2 SUV |
| 2016 | GVGAJ03.0NU4 | Audi: A6 quattro, A7 quattro, A8, A8L, Q5 | 2 PC |

(*Id.*)

Class Members are further categorized as Eligible Lessees, Eligible Former Lessees, Eligible Owners, and Eligible Former Owners.

An Eligible Lessee is:

> (1) the current lessee or lessees of an Eligible Vehicle with a lease issued by VW Credit, Inc. (Generation One vehicles) or VW Credit, Inc. or Porsche Financial Services, Inc. (Generation Two vehicles); (2) a former lessee or lessees of an Eligible Vehicle who had an active lease issued by VW Credit, Inc. (Generation One vehicles) or VW Credit, Inc. or Porsche Financial Services, Inc. (Generation Two vehicles) as of September 18, 2015 and/or November 2, 2015 and who surrendered or surrenders the leased Eligible Vehicle under the terms of the lease after January 31, 2017, but before the Claim Submission Deadline; or (3) the owner of an Eligible Vehicle who had an active lease issued by VW Credit, Inc. (Generation One vehicles) or VW Credit, Inc. or Porsche Financial Services, Inc. (Generation Two vehicles) as of September 18, 2015 and/or November 2, 2015, and acquired ownership of the previously leased Eligible Vehicle at the conclusion of the lease after January 31, 2017. For avoidance of doubt, no person shall be considered an Eligible Lessee by virtue of holding a lease issued by a lessor other than VW Credit, Inc. or Porsche Financial Services, Inc.

(*Id.* ¶ 2.38.)

An Eligible Former Lessee is:

> a lessee who leased an Eligible Vehicle from VW Credit, Inc.

United States District Court
Northern District of California

(Generation One vehicles) or VW Credit, Inc. or Porsche Financial Services, Inc. (Generation Two vehicles) as of September 18, 2015 and/or November 2, 2015, and who surrendered the leased Eligible Vehicle under the terms of the lease on or before January 31, 2017.

(*Id.* ¶ 2.35.)

An Eligible Owner is:

the owner or owners of an Eligible Vehicle on September 18, 2015, or the owner or owners who acquire an Eligible Vehicle after September 18, 2015, but before the end of the Settlement Benefit Period, except that the owner of an Eligible Vehicle who had an active lease issued by VW Credit, Inc. (Generation One vehicles) or VW Credit, Inc. or Porsche Financial Services, Inc. (Generation Two vehicles) as of September 18, 2015 and/or November 2, 2015, and purchased that previously leased Eligible Vehicle off lease after January 31, 2017, shall be an Eligible Lessee. For avoidance of doubt, an Eligible Owner ceases to be an Eligible Owner if he transfers ownership of the Eligible Vehicle to a third party. A third party who acquires ownership of an Eligible Vehicle thereby becomes an Eligible Owner if that third party otherwise meets the definition of an Eligible Owner, unless the third party acquired the Eligible Vehicle from an Eligible Lessee, in which case that third party will be an Eligible Lessee. An owner of an Eligible Vehicle will not qualify as an Eligible Owner while the Eligible Vehicle is under lease to any third party, although any such owner, including any leasing company other than VW Credit, Inc. or Porsche Financial Services, Inc., who otherwise meets the definition of an Eligible Owner would become an Eligible Owner if such lease has been canceled or terminated and the owner has taken possession of the vehicle. In exceptional cases, specific arrangements may be made with the leasing company, in consultation with the Claims Supervisor, such that, (1) without canceling or terminating the lease, the leasing company may be treated as an Eligible Owner and obtain (a) an Emissions Compliant Repair plus Lessee Repair Payment or (b) a Reduced Emissions Modification plus Owner Restitution, as appropriate, and (2) a lessor that takes possession of a leased Eligible Vehicle after the Claim Submission Deadline (or the end date of the Claim Program) may nonetheless be entitled to submit a Claim.

(*Id.* ¶ 2.39.)

An Eligible Former Owner is:

a person who purchased or otherwise acquired ownership of an Eligible Vehicle on or before September 18, 2015, and sold or otherwise transferred ownership of such vehicle after September 18, 2015 but on or before January 31, 2017, or who acquired ownership of an Eligible Vehicle on or before November 2, 2015, and sold or otherwise transferred ownership of such vehicle after November 2, 2015 but on or before January 31, 2017. For avoidance of doubt, a sale or transfer of ownership under this definition includes the transfer of ownership of an Eligible Vehicle to an insurance

company.

(*Id.* ¶ 2.36.)

## II.     Consumer Remedies

Class Members may seek benefits under the Settlement during the Settlement Benefit Period, which runs from the entry of this Order until (1) September 30, 2019 for Generation One vehicles, or (2) April 30, 2020 for Generation Two vehicles.  (*Id.* ¶ 2.84.)

### A.     Generation One (Model Years 2009-2012)

Class Members who own or a lease a Generation One vehicle have three possible options under the Settlement: (1) Buyback / Lease Termination; (2) Trade-In; or (3) if approved by the EPA and CARB, an emissions modification that would reduce the vehicle's emissions but not to the levels of their original certification (a "Reduced Emissions Modification").  Eligible Former Lessees and Eligible Former Owners are entitled to restitution.

#### 1.     Buyback / Lease Termination

The first option for Generation One vehicle owners is to receive a Buyback payment that consists of Vehicle Clean Trade Value (or Vehicle Value) plus Owner Restitution.  For Class Members electing the Buyback option, the total payment will range from $24,755 to $57,157. (Dkt. No. 2840 at 11.)

Vehicle Value is the Base Clean Trade Value adjusted for certain options and, in the case of eligible owners and former owners, for mileage.  (Dkt. No. 2894-1 at 7 ¶ 15.)  Base Clean Trade Value for each Eligible Vehicle refers to the Clean Trade value for the National Automobile Dealers Association ("NADA") Vehicle Identification Code ("VIC") corresponding to that vehicle in the September 2015 NADA Used Car Guide published in or around August 2015, based on the NADA Region that includes the state of the Eligible Vehicle's last known vehicle registration as of November 2015.  (*Id.* ¶ 14.)  Options adjustments are based on Volkswagen original equipment manufacturer ("OEM")-installed options that are valued in the September 2015 NADA Used Car Guide.  (*Id.* ¶ 16.)  Mileage adjustments are made using the mileage adjustment table in the September 2015 NADA Used Car Guide.  (*Id.* ¶ 17.)

Owner Restitution is composed of a fixed dollar amount that is the same for all Generation

One Eligible Vehicles (the "fixed component"), and a variable dollar amount (the "variable component"). (*Id.* at 3 ¶ 8(i).) Owners who acquired a new vehicle at any point in time or a used vehicle on or before September 18, 2015 will receive a fixed component of $5,155 and a variable component consisting of (1) the amount by which Vehicle Clean Retail Value exceeds Vehicle Value, plus (2) state and local taxes on the Vehicle Clean Retail Value. (*Id.*) If Owner Restitution would otherwise be less than $6,000, the variable component will include an additional amount sufficient to raise Owner Restitution to $6,000. (*Id.*) Owners who acquired a used vehicle after September 18, 2015 will receive the same amount just described unless (1) one or more Eligible Former Owners timely file a valid claim related to the same vehicle, or (2) the Eligible Vehicle was previously leased by someone else and the Eligible Former Lessee timely files a valid claim. (*Id.*) In such instances, Owner Restitution will be half the amount described above.

The table below provides an illustrative Buyback calculation. (*See* Dkt. No. 2894-1 at 4.) As noted above, a Buyback payment includes Vehicle Clean *Trade* Value (or Vehicle Value) plus Owner Restitution. Vehicle Value below is $22,825, assuming standard mileage. Owner Restitution consists of the fixed component of $5,155 plus the variable component consisting of (1) the amount by which Vehicle Clean *Retail* Value ($25,550) exceeds Vehicle Value ($25,550 - $22,825 = $2,725), plus (2) the appropriate state and local tax rate multiplied by the Vehicle Clean Retail Value (6.35% of $25,550 = $1,622.43). The variable component thus equals $4,347.43, and Owner Restitution totals $9,502.43 (or $5,155 + $4,347.43). In this example, the total Buyback amount is $32,327.43 (or $22,825 + $9,502.43).

| Vehicle ID | 100001 |
|---|---|
| **Description** | 2009 Q7 TDI Premium Plus |
| **Vehicle Value** | $22,825 (assumes standard mileage) |
| **Vehicle *Clean Retail* Value** | $25,550 (assumes standard mileage) |
| **State and Local Tax Rate** | Connecticut 6.35% |
| **Tax on Vehicle Clean Retail Value** | 6.35% of $25,550 = $1,622.43 |
| **Difference between Vehicle Clean Retail Value and Vehicle Value** | $25,550 - $22,825 = $2,725 |
| **Owner Restitution** | $5,155.00 [fixed component] + $4,347.43 [variable component: amount by which Vehicle Clean |

United States District Court
Northern District of California

| | |
|---|---|
| | Retail Value exceeds Vehicle Value ($2,725), plus tax ($1,622.43)] + $0 [amount necessary to bring total Owner Restitution to $6,000] = **$9,502.43** |
| **Buyback Amount** | $22,825 + $9,502.43 = **$32,327.43** |
| **Minimums** | Owner Restitution is greater than $6,000, and the Buyback Amount is greater than Retail Replacement Value, so the minimums are not implicated. |

Eligible Lessees who have an active lease of a Generation One Eligible Vehicle can terminate their leases with no penalty for early termination and receive Lessee Restitution.  (Dkt. No. 2894 ¶ 5.4.)  Lessee Restitution ranges from $5,001 to $6,615.  (Dkt. No. 2840 at 19.)  Lessee Restitution consists of a fixed component of $2,577.50 and a variable component that is one half of (1) the amount by which Vehicle Clean Retail Value exceeds Vehicle Value, added to (2) state and average local sales taxes on the Vehicle Clean Retail Value.  (Dkt. No. 2894-1 at 5 ¶ 9(i).)

### 2. Trade-In

Owners of Generation One vehicles can choose to trade in their vehicle at a participating dealer and receive a Trade-In Credit at the dealer.  (Dkt. No. 2894 ¶ 5.3.) The Trade-In Credit will be equal to the Buyback Amount to which that owner would be entitled in a Buyback.

### 3. Reduced Emissions Modification

The availability of this option will depend on whether the EPA and CARB approve an emissions modification for a Class Member's Generation One vehicle.  (*Id.* ¶ 5.5.)  The expected timeline for Volkswagen to submit proposed emissions modifications for Generation One vehicles is set forth in the DOJ 3.0-liter Consent Decree.  (*See* Dkt. No. 2520-1.)  If no emissions modification is approved for a particular make, model, and model year of Generation One vehicle, Class Members owning or leasing such vehicles will not be able to select a Reduced Emissions Modification.  If no emissions modification exists, Class Members will be informed that they remain eligible for Buyback or Trade-In, or that they may opt out of the Settlement from August 1, 2018 to September 1, 2018.  Owners that receive an approved emissions modification will also receive Owner Restitution.

United States District Court
Northern District of California

10

United States District Court
Northern District of California

**4.      Restitution for Eligible Former Lessees and Eligible Former Owners**

Eligible Former Lessees are entitled to the same Lessee Restitution as Eligible Lessees. (*See* Dkt. No. 2894 ¶ 5.7; Dkt. No. 2894-1 at 5 ¶ 9.)  Eligible Former Owners are entitled to receive Former Owner Restitution.  (*See* Dkt. No. 2894 ¶ 5.8; Dkt. No. 2894-1 at 6 ¶ 10.)  There can be no more than two Eligible Former Owners for each Eligible Vehicle.  If only one Eligible Former Owner for a vehicle timely files a valid claim, Former Owner Restitution will be one half the amount of Owner Restitution, as calculated above.  If two Eligible Former Owners timely file valid claims, Former Owner Restitution for each former owner will be 25% of Owner Restitution.

**B.      Generation Two (Model Years 2013-2016)**

The benefits available to Generation Two vehicle owners will depend on whether Volkswagen can timely make available an approved emissions modification (an "Emissions Compliant Repair").  (Dkt. No. 2894 ¶ 6.1.)  An Emissions Compliant Repair will be considered timely if it is approved (i) on or before the Decision Date for the Sub-Generation to which that Eligible Vehicle belongs, (ii) on or before any subsequent date set by the Court, or (iii) during any 30-day extension period (of which there may be up to three) for which Volkswagen agrees to make an extension payment.  (*Id.* ¶ 6.2.)  The Decision Dates for an Emissions Compliant Repair for each Sub-Generation of Generation Two vehicles are as follows:

| Sub-Generation | Decision Date for the Emissions Compliant Repair |
|---|---|
| 2.1 SUV | November 8, 2017 |
| 2.2 SUV | October 23, 2017 |
| 2 PC | December 20, 2017 |

Eligible Owners, Eligible Lessees, Eligible Former Owners, and Eligible Former Lessees of Generation Two vehicles with an available Emissions Compliant Repair will be offered the Emissions Compliant Repair and an Emissions Compliant Repair Payment, which ranges from $7,039 to $16,114.  (*Id.* ¶ 6.1; Dkt. No. 2840 at 20.)

If no Emissions Compliant Repair is timely available, then Generation Two vehicle owners have similar remedies to those available to Generation One vehicle owners.  (Dkt. No. 2894 ¶ 6.7.)

### III.   Claims Process

The Settlement sets forth a Claims Program that provides for different steps for Class Members with Generation One vehicles and Class Members with Generation Two vehicles.  (*See id.* ¶ 8.)

#### A.   Generation One

**Step One:** Based on information they provide to Volkswagen online or by telephone, Class Members will obtain information about the options available to them.  Class Members who sold their Eligible Vehicles after September 18, 2015 and on or before January 31, 2017 will need to meet the requirements of Eligible Former Owner Identification by submission of an Eligible Former Owner identification form online or by mail or fax.  The Eligible Former Owner Identification period will last until May 1, 2017.  Eligible Former Owners who do not identify themselves during that time period will not be eligible for a restitution payment under the Settlement.

**Step Two:** To begin the claims process, the Class Member will need to submit a claim form online, by mail, or by fax, that contains certain information about his or her Eligible Vehicle along with required documentation.  (Dkt. No. 2894-4 at 2 ¶ 2.)  Eligible Former Owners and Eligible Former Lessees must file a claim within 60 days of the Court's order granting final approval of the Settlement to receive benefits under the Settlement.  (*Id.* at 2.)

**Step Three:** The Class Member's document package and information will be reviewed for completeness.  Within 10 business days of receiving a Class Member's claim package, Volkswagen will either confirm that the claim is ready to move on to the next step or notify the Class Member that there is a deficiency with the claim package and/or that more information is needed.  (*Id.* at 3 ¶ 3.)

**Step Four:** For Class Members that have elected a Buyback or Trade-In and who have an outstanding loan against their Eligible Vehicle, Volkswagen will obtain the Class Member's loan payoff information.  Volkswagen may contact a Class Member if it needs assistance in determining loan payoff information.  (*Id.* at 3 ¶ 4.)  All other Class Members will proceed immediately from Step 3 to Step 5.

1    **Step Five:** The Claims Supervisor will verify the Class Member's document package and

2    the Class Member's eligibility or ineligibility to participate in the Class Action Settlement will be

3    determined, and Volkswagen will prepare an offer, which the Claims Supervisor will verify.  (*Id.*

4    at 3 ¶ 5.)  The parties have agreed, subject to the Court's approval, that Ankura Consulting Group,

5    LLC will serve as the Claims Supervisor.  (Dkt. No. 2894 ¶ 2.22.)

6    **Step Six:** An offer will be made if the Class Member is deemed eligible; the offer will be

7    sent within 15 business days after Step 5 commences.  (Dkt. No. 2894-4 at 3 ¶ 6.)  In addition,

8    Class Members who own or lease their Eligible Vehicles will receive a voucher for one AdBlue

9    refill and one oil change (including motor oil, engine oil filter, and associated labor) free of charge

10   at a participating authorized dealer.  (*Id.*)

11   **Step Seven:** Class Members will confirm their selection of an offered remedy, accept their

12   offer, and schedule an appointment at their preferred dealer (if necessary) and obtain their chosen

13   remedy.  (*Id.* at 4 ¶ 7.)  To accept an offer, the Class Member will be required to submit a

14   completed offer package, including a signed and notarized individual release.  (*Id.*)  Class

15   Members that are eligible for a Buyback, Trade-In, Lease Termination, or Reduced Emissions

16   Modification may change their remedy selection at any time before the selected remedy is

17   completed, even if they have accepted an offer for a different remedy.  (*Id.*)

18   **Step Eight:** Class Members that elect a Buyback may submit a claim for a pro-rated

19   refund of the purchase price of an extended vehicle warranty and/or vehicle service plan purchased

20   from an Authorized Volkswagen or Audi Dealer prior to January 31, 2017.  (*Id.* at 5 ¶ 8.)

21   **B.      Generation Two**

22   The steps for the Claims Program for Generation Two vehicles will depend on whether an

23   Emissions Compliant Repair for those vehicles is timely available.

24   **1.      If Emissions Compliant Repair is Timely Available**

25   **Step One:** Class Members will obtain information about the Emissions Compliant Repair.

26   Class Members who sold their Eligible Vehicles after September 18, 2015 and on or before

27   January 31, 2017 will need to meet the requirements of Eligible Former Owner Identification by

28   submission of an Eligible Former Owner identification form online or by mail or fax.  The Eligible

United States District Court
Northern District of California

13

1    Former Owner Identification period will last until May 1, 2017.  Eligible Former Owners who do

2    not identify themselves during that time period will not be eligible for a restitution payment under

3    the Settlement.

4         **Step Two:** To begin the claims process, the Class Member will need to submit a claim

5    form online, by mail, or by fax, that contains certain information about his or her Eligible Vehicle

6    along with required documentation.  (Dkt. No. 2894-4 at 9 ¶ 2.)  Eligible Former Owners and

7    Eligible Former Lessees must file a claim within 60 days of the Court's order granting final

8    approval of the Settlement to receive benefits under the Settlement.  (*Id.* at 9.)

9         **Step Three:** The Class Member's document package and information will be reviewed for

10   completeness.  Within 10 business days of receiving a Class Member's claim package,

11   Volkswagen will either confirm that the claim is ready to move on to the next step or notify the

12   Class Member that there is a deficiency with the claim package and/or that more information is

13   needed.  (*Id.* at 10 ¶ 3.)

14        **Step Four:** The Claims Supervisor will verify the Class Member's document package and

15   the Class Member's eligibility or ineligibility to participate in the Class Action Settlement will be

16   determined, and Volkswagen will prepare an offer, which the Claims Supervisor will verify.  (*Id.*

17   at 10 ¶ 4.)

18        **Step Five:** An offer will be made if the Class Member is deemed eligible.  (*Id.* at 10 ¶ 5.)

19   Class Members who no longer possess their vehicles (former owners and eligible lessees whose

20   leases have ended) will receive final offers and can then proceed to accept their offers.  (*Id.* at 10

21   ¶ 5, 12 ¶ 14.)  Class Members that still own or lease an Eligible Vehicle may accept their offer and

22   schedule an appointment at their preferred Volkswagen, Audi, or Porsche authorized dealer to

23   obtain their Repair Participation Payment, which is half of the amount a Class Member will be

24   entitled to if an Emissions Compliant Repair becomes available on time.  (*Id.* at 10 ¶ 5.)  Class

25   Members are not required to accept a Repair Participation Payment to remain eligible for benefits;

26   in other words, Class Members who do not accept the Repair Participation Payment will still

27   receive 100% of the compensation to which they are entitled at the appropriate time.  (*Id.* at 11.)

28        **Step Six:** Volkswagen will inform the Class Members whether an Emissions Compliant

United States District Court
Northern District of California

14

Repair has been timely approved by the EPA and CARB.  (*Id.* at 11 ¶ 6.)

**Step Seven:** If and when an Emissions Compliant Repair becomes available, Class Members will confirm their current contact information and that they still own the Eligible Vehicle and schedule an appointment to receive an Emissions Compliant Repair.  (*Id.* at 11 ¶ 7.)

**Step Eight:** Class Members bring their Eligible Vehicles to an authorized dealer of the same brand as the Eligible Vehicle to receive the Emissions Compliant Repair free of charge.  (*Id.* at 11 ¶ 8.)  Class Members will receive their remaining restitution (or full restitution if no Repair Participation Payment was previously made for the subject Eligible Vehicle).  (*Id.*)

## 2.      If Emissions Compliant Repair is *Not* Timely Available

If an Emissions Compliant Repair is not timely available, Class Members that still own or lease an Eligible Vehicle will be notified that they may choose a Buyback, Lease Termination, or Reduced Emissions Modification (or untimely Emissions Compliant Repair), if available, instead. Class Members may then follow the steps set forth above with respect to Generation One vehicles to file a claim and obtain a Buyback, Lease Termination, or Reduced Emissions Modification (or untimely Emissions Compliant Repair).  (*See id.* at 11-14 ¶¶ 9-15.)

## IV.    Distribution of Settlement Payments

The Settlement requires Volkswagen to create and fund an escrow account, which funds will be used to compensate Class Members who submit valid claims under the Settlement.  (Dkt. No. 2894 ¶ 13.1.)  The escrow account will be funded with an initial Funding Amount of $252,000,000.  If the funding level of the escrow account reaches the Minimum Balance, which will initially be set at $168,000,000, Volkswagen must, within seven business days of being notified, deposit additional funds into the escrow account to bring the balance of the account back to the Funding Amount.  (*Id.*)  The Funding Amount and the Minimum Balance will be adjusted as described in the Settlement depending on whether an Emissions Compliant Repair is available for Generation 2.2 SUV vehicles by October 23, 2017.  (*Id.* ¶¶ 13.2, 13.3.)  Any unused funds at the end of the Settlement Benefit Period will revert to Volkswagen.  (*Id.* ¶ 13.4)  In the event that the Settlement is invalidated or terminated for any reason prior to conclusion of the Settlement Benefit Period, any unused funds in the escrow account will revert to Volkswagen.  (*Id.* ¶ 13.5.)

United States District Court
Northern District of California

15

Class Members may elect to receive their payments under the Settlement, such as Repair Participation Payments, Repair Payments, Restitution Payments, and Buyback Payments, either by electronic fund transfer or by check.  (*See* Dkt. No. 2894-4 at 6 ¶ 11, 15 ¶ 19.)

An electronic fund transfer will be submitted within three banking days of an Emissions Compliant Repair, a Reduced Emissions Modification, a Buyback, a Lease Termination, or the acceptance of an offer by an Eligible Former Owner or Eligible Lessee who no longer owns or leases their Eligible Vehicle.

For Class Members who elect to receive a check and do not require an appointment to complete their remedy, such as Eligible Former Lessees and Eligible Former Owners who are simply receiving payments, a check for the full amount due will be mailed within five banking days of when Volkswagen determines that the Class Member's accepted offer package is complete.  Class Members who select a Buyback or Lease Termination and payment by check will receive a check for the full amount due at the dealership appointment, unless a mileage adjustment is required.  If an upward mileage adjustment is required, the Class Member will not receive a check at the dealership but will instead be mailed a check within three banking days.  If a downward mileage adjustment is required, the Class Member will receive a check at the dealership and will be mailed a second check within five banking days for the additional amount due.  Class Members who elect to receive a check and who receive an Emissions Compliant Repair or Reduced Emissions Modification will have a check mailed to them within five banking days of completion of such repair or modification.

## V.      Opt Out Procedure and Objections

Class Members may request exclusion from the Settlement by mailing a signed, written request stating their desire in clear and unambiguous language, such as "I wish to exclude myself from the Class in *In re Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation*, No. 15-md-2672," to the Claims Supervisor on or before the opt-out deadline of April 14, 2017 (postmarked no later than April 14, 2017).  (Dkt. No. 2894 ¶ 9.1.)  The written request must also include (1) the Class Member's printed name, address, and telephone number; (2) a statement as to whether the class member is an eligible owner, eligible former owner, or

eligible lessee; (3) the VIN of the Eligible Vehicle(s); and (4) the dates of the Class Member's ownership or lease of the Eligible Vehicle(s).  (*Id.*)  Class Members who no longer own or lease an Eligible Vehicle must also provide evidence that the vehicle was sold or that the lease expired or was terminated.  (*Id.*)

The Class Notice shall advise that Class Members may object to the Settlement by filing with the Court a written objection that explains why he or she believes the Court should not approve the Class Action Settlement as fair, reasonable, and adequate.  (*Id.* ¶ 10.1.)  The written objection must include: (1) a detailed statement of and specific reasons for the objection; (2) the Class Member's name, address, and telephone number; (3) a statement as to whether the class member is an eligible owner, eligible former owner, eligible lessee, or eligible former lessee; (4) the VIN of the Eligible Vehicle(s); (5) a statement that the Class Member has reviewed the Class definition and has not opted out of the Class; (6) the dates of the Class Member's ownership or lease of the Eligible Vehicle(s); and (7) any other supporting documents the Class Member wishes the Court to consider.  (*Id.*)  Class Members may object on their own behalf or through counsel, at the Class Members' own expense. (*Id.* ¶ 10.2.)

## VI.    Release of Claims

Class Members agree to release all Released Claims against the Released Parties.  The Settlement defines Released Parties as:

> any person who, or entity that, is or could be responsible or liable in any way whatsoever, whether directly or indirectly, for the 3.0- liter TDI Matter. The Released Parties include, without limitation, (1) Volkswagen AG, Volkswagen Group of America, Inc. (d/b/a Volkswagen of America, Inc. or Audi of America, Inc.), Volkswagen Group of America Chattanooga Operations, LLC, Audi AG, Audi of America, LLC, VW Credit, Inc., VW Credit Leasing, Ltd., VCI Loan Services, LLC, Porsche Automobil Holding SE, Dr. Ing. h.c. F. Porsche AG, Porsche Cars North America, Inc., Porsche Financial Services, Inc., Porsche Leasing Ltd., and any former, present, and future owners, shareholders, directors, officers, employees, attorneys, affiliates, parent companies, subsidiaries, predecessors, and successors of any of the foregoing (the "VW and Porsche Released Entities"); (2) any and all contractors, subcontractors, and suppliers of the VW and Porsche Released Entities; (3) any and all persons and entities indemnified by any VW and Porsche Released Entity with respect to the 3.0-liter TDI Matter; (4) any and all other persons and entities involved in the design, research, development, manufacture, assembly, testing, sale, leasing,

United States District Court
Northern District of California

repair, warranting, marketing, advertising, public relations, promotion, or distribution of any Eligible Vehicle, even if such persons are not specifically named in this paragraph, including without limitation all Authorized Dealers, as well as non-authorized dealers and sellers; (5) Claims Supervisor; (6) Notice Administrator; (7) lenders, creditors, financial institutions, or any other parties that financed any purchase or lease of an Eligible Vehicle; and (8) for each of the foregoing, their respective former, present, and future affiliates, parent companies, subsidiaries, predecessors, successors, shareholders, indemnitors, subrogees, spouses, joint ventures, general or limited partners, attorneys, assigns, principals, officers, directors, employees, members, agents, representatives, trustees, insurers, reinsurers, heirs, beneficiaries, wards, estates, executors, administrators, receivers, conservators, personal representatives, divisions, dealers, and suppliers. Notwithstanding the foregoing, this Release does not release any claims against Robert Bosch GmbH and Robert Bosch, LLC or any of its former, present, and future owners, shareholders, directors, officers, employees, attorneys, affiliates, parent companies, subsidiaries, predecessors, or successors unless the Court approves any settlement between Bosch and members of the Class in any way related to, or arising from, the 3.0-liter TDI Matter.

(*Id.* ¶ 12.2.)

The Released Claims are defined as:

any and all claims, demands, actions, or causes of action of any kind or nature whatsoever, whether in law or in equity, known or unknown, direct, indirect or consequential, liquidated or unliquidated, past, present or future, foreseen or unforeseen, developed or undeveloped, contingent or noncontingent, suspected or unsuspected, whether or not concealed or hidden, arising from or in any way related to the 3.0-liter TDI Matter, including without limitation (1) any claims that were or could have been asserted in the Action; and (2) any claims for fines, penalties, criminal assessments, economic damages, punitive damages, exemplary damages, liens, injunctive relief, attorneys', expert, consultant, or other litigation fees or costs other than fees and costs awarded by the Court in connection with this Settlement, or any other liabilities, that were or could have been asserted in any civil, criminal, administrative, or other proceeding, including arbitration[.]

(*Id.* ¶ 12.3.)

Class Members expressly waive and relinquish any rights they may have under California Civil Code § 1542 or other similar federal or state laws. (*Id.* ¶ 12.6; *see* Cal. Civ. Code § 1542 ("A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.").)

Class Members who receive a Buyback, a Trade-In, a Lease Termination, and/or a

Restitution Payment must execute an individual release as a condition of obtaining such relief. (Dkt. No. 2894 ¶ 12.7; *see also* Dkt. No. 2894-5.)  The individual release becomes effective and binding once the Class Member receives a benefit under the Settlement.  (Dkt. No. 2894-5 ¶ 1.)

## VII.    Attorneys' Fees and Costs

Volkswagen will pay reasonable attorneys' fees and costs for work performed by Class Counsel, as well as work performed by other attorneys designated by Class Counsel, in connection with this litigation.  (Dkt. No. 2894 ¶ 14.1.)  Attorneys' fees are subject to the Court's approval. (*Id.*)  Although Class Counsel and Volkswagen have not yet discussed attorneys' fees and costs, they agree to attempt to negotiate those amounts to be paid after the execution of this Settlement. (*Id.*)  Class Counsel and Volkswagen will either submit a negotiated amount to the Court or litigate the fee issues if the parties disagree on the amount.  (*Id.*)  Any fees and costs paid by Volkswagen will be in addition to the compensation provided to Class Members under the Settlement.  (*Id.*)

**LEGAL STANDARD**

"'[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'"  *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (quoting *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008)).  Nevertheless, Federal Rule of Civil Procedure 23(e) requires courts to approve any class action settlement. "[S]ettlement class actions present unique due process concerns for absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  As such, "the district court has a fiduciary duty to look after the interests of those absent class members."  *Allen*, 787 F.3d at 1223 (collecting cases).

Preliminary approval of a class action settlement generally requires two inquiries.  *See Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016).  Courts first assess whether a class exists.  *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  This is "of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold."  *Id.*  Second, Rule 23(e) requires courts to determine "whether a proposed settlement is fundamentally fair,

adequate, and reasonable." *Hanlon*, 150 F.3d at 1026; *see also* Fed. R. Civ. P. 23(e)(2).

**DISCUSSION**

## I.      Class Certification

Class certification is a two-step process.  *See Amchem*, 521 U.S. at 613.  The Settlement

Class Representatives must first satisfy Rule 23(a)'s four requirements: (1) numerosity, (2)

commonality, (3) typicality, and (4) adequacy of representation.  *See* Fed. R. Civ. P. 23(a).

"[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis, that the

prerequisites of Rule 23(a) have been satisfied[.]"  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338,

350-51 (2011) (internal quotations omitted).

The Settlement Class Representatives must then establish that a class action may be

maintained under any of Rule 23(b)(1), (2), or (3).  *See Amchem*, 521 U.S. at 613.  The Settlement

Class Representatives seek certification under Rule 23(b)(3), which is appropriate when questions

of law or fact common to Class Members predominate and a class action is the superior means to

other available methods to resolve the controversy.  *See* Fed. R. Civ. P. 23(b)(3).

### A.      Rule 23(a)

As discussed below, the Settlement Class Representatives meet all four Rule 23(a)

requirements for purposes of preliminary approval.

#### 1.      Numerosity

Rule 23(a)(1) requires the class to be "so numerous that joinder of all parties is

impracticable."  Fed. R. Civ. P. 23(a)(1).  "A specific minimum number is not necessary, and [a]

plaintiff need not state the exact number of potential class members."  *Richie v. Blue Shield of

California*, No. C-13-2693 EMC, 2014 WL 6982943, at *15 (N.D. Cal. Dec. 9, 2014) (citations

omitted).  The numerosity requirement is satisfied here.  There were over 77,000 Eligible Vehicles

sold or leased to consumers in the United States, and thus tens of thousands of potential Class

Members.  Rule 23(a)(1) is met because joinder is impossible.  *See Palmer v. Stassinos*, 233

F.R.D. 546, 549 (N.D. Cal. 2006) ("Joinder of 1,000 or more co-plaintiffs is clearly impractical.").

#### 2.      Commonality

Rule 23(a)(2) mandates the existence of "questions of law or fact common to the class."

20

United States District Court
Northern District of California

Fed. R. Civ. P. 23(a)(2).  "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *Hanlon*, 150 F.3d at 1019.  Assessing commonality requires courts to have "a precise understanding of the nature of the underlying claims."  *Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014) (citations omitted).  This allows courts to determine if the class' "claims . . . depend upon a common contention" that is "of such a nature that it is capable of classwide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Dukes*, 564 U.S. at 350.  The commonality "analysis does not turn on the number of common questions, but on their relevance to the factual and legal issues at the core of the purported class' claims."  *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 2835 (2015).  Rather, a single common question of law or fact satisfies the Rule.  *See Dukes*, 564 U.S. at 369.

The Settlement Class Representatives satisfy the commonality requirement, as their claims arise from Volkswagen's common course of conduct.  Similar to the 2.0-liter settlement, "the common questions of fact are (1) Volkswagen's fraudulent scheme to deceive state and federal regulatory authorities by installing in its [3].0-liter diesel engine vehicles the defeat device designed, and (2) Volkswagen's false and misleading marketing campaign that misrepresented and omitted the true nature of the Eligible Vehicles' 'clean' diesel engine system."  (Dkt. No. 1698 at 16 (internal quotations and citation omitted); *see also* Dkt. No. 2840 at 33-34.)  Without class certification, individual Class Members would be forced to separately litigate the same issues of law and fact which arise from Volkswagen's use of the defeat device and from Volkswagen's alleged common course of conduct.  *See In re Celera Corp. Sec. Litig.*, No. 5:10-CV-02604-EJD, 2014 WL 722408, at *3 (N.D. Cal. Feb. 25, 2014) (finding commonality requirement met where plaintiffs raised questions of law or fact that would be addressed by other putative class members pursuing similar claims).  Accordingly, Rule 23(a)(2) is satisfied.

### 3.      Typicality

Rule 23(a)(3) requires that the representative parties' claims be "typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality "assure[s] that the interest of the

named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation and quotations omitted).  Under this "permissive" rule, "representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Parsons*, 754 F.3d at 685 (citation and quotations omitted).  "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted).

Here, the typicality requirement is met.  The Settlement Class Representatives' claims are based on the same pattern of wrongdoing as those brought on behalf of Class Members.  The Settlement Class Representatives, as well as Class Members, purchased or leased an Eligible Vehicle equipped with a defeat device.  Their claims are typical because they were subject to the same conduct as other Class Members, and as a result of that conduct, the Settlement Class Representatives and Class Members suffered the same injury.

### 4.    Adequacy of Representation

Rule 23(a)(4) requires that the representative party be able to "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "This requirement is rooted in due-process concerns—'absent class members must be afforded adequate representation before entry of a judgment which binds them.'" *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (citation omitted).  Courts engage in a dual inquiry to determine adequate representation and ask: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020 (citation omitted).

First, nothing in the record suggests the Settlement Class Representatives or Class Counsel have any conflicts of interests with other potential Class Members.  The Court is satisfied that the Settlement Class Representatives have adequately represented Class Members' interests throughout this MDL, including with regards to the 2.0-liter settlement, which has been finally approved, as well as the proposed Bosch settlement (*see* Dkt No. 2837).  As the Court previously

United States District Court
Northern District of California

1   noted, "[t]he Settlement Class Representatives affirm they 'and Class Members are entirely

2   aligned in their interest in proving that Volkswagen misled them and share the common goal of

3   obtaining redress for their injuries.'  The Court finds no reason to believe otherwise."  (Dkt. No.

4   1698 at 18) (internal citation omitted).)

5       Second, the Court is satisfied that the Settlement Class Representatives and Class Counsel

6   have and will continue to vigorously prosecute this action on behalf of the class.  The Settlement

7   Class Representatives have actively participated in this litigation by providing Class Counsel with

8   factual information concerning the purchase or lease of their Eligible Vehicle, which assisted in

9   the drafting of the complaint.  (*See* Dkt. No. 2840 at 36.)  The Settlement Class Representatives

10   also submitted detailed verified Plaintiff Fact Sheets during discovery, provided relevant

11   documents and information, assisted in the preparation of discovery responses, and communicated

12   regularly with Class Counsel.  (*Id.*)

13       Finally, there are no doubts regarding Class Counsel's adequacy.  As the Court previously

14   stated with regards to the 2.0-liter settlement:

15       > The Court appointed Lead Plaintiffs' Counsel and the 21 PSC
        > members after a competitive application process, during which the
16       > Court received approximately 150 applications.  They are qualified
        > attorneys with extensive experience in consumer class action
17       > litigation and other complex cases.  The extensive efforts undertaken
        > thus far in this matter are indicative of Lead Plaintiffs' Counsel's
18       > and the PSC's ability to prosecute this action vigorously.   The Court
        > therefore finds the Settlement Class Representatives and Class
19       > Counsel are adequate representatives.

20   (Dkt. No. 1698 at 18.)

21       **B.**   **Rule 23(b)(3)**

22       A class action may be maintained under Rule 23(b)(3) when "the court finds [1] that the

23   questions of law or fact common to class members predominate over any questions affecting only

24   individual members, and [2] that a class action is superior to other available methods for fairly and

25   efficiently adjudicating the controversy[.]"  Fed. R. Civ. P. 23(b)(3).  "Rule 23(b)(3)'s

26   predominance criterion is even more demanding than Rule 23(a)."  *Comcast Corp. v. Behrend*,

27   133 S. Ct. 1426, 1432 (2013).  The Rule 23(b)(3) "analysis presumes that the existence of

28   common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence

United States District Court
Northern District of California

23

of commonality alone is not sufficient to fulfill Rule 23(b)(3)." *Hanlon*, 150 F.3d at 1022. Instead, "[t]he 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation'" and requires "courts to give careful scrutiny to the relation between common and individual questions in a case." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted).  Predominance is found "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication[.]" *Hanlon*, 150 F.3d at 1022 (internal quotations omitted).

This case meets Rule 23(b)(3)'s predominance requirement.  Plaintiffs allege that Volkswagen perpetrated the same fraud in the same manner against all Class Members.  If the Court were to find that Volkswagen have indeed engaged in a deceptive and fraudulent scheme, such a finding would apply to all of the Class Members' claims.  Plaintiffs also allege a common and unifying injury, as their and other Class Members' injuries arise solely from Volkswagen's use of the defeat device.  As such, the Court finds predominance is met.

The superiority test is also satisfied.  This inquiry "requires the court to determine whether maintenance of this litigation as a class action is efficient and whether it is fair."  *Wolin*, 617 F.3d at 1175-76.  If Class Members were to bring individual lawsuits against Volkswagen, each Member would be required to prove the same wrongful conduct to establish liability and thus would offer the same evidence.  Given that Class Members number in the hundreds of thousands, there is the potential for just as many lawsuits with the possibility of inconsistent rulings and results.  Thus, classwide resolution of their claims is clearly favored over other means of adjudication, and the proposed Settlement resolves Class Members' claims at once.  As such, class action treatment is superior to other methods and will efficiently and fairly resolve the controversy.

*       *       *

In sum, Plaintiffs satisfy the Rule 23(a) and (b)(3) requirements.  The Court therefore certifies the proposed Settlement Class for settlement purposes.

## II.    Preliminary Fairness Determination

The Ninth Circuit has identified eight factors courts should consider to determine whether

a settlement agreement is fair, adequate, and reasonable:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citation omitted).

Courts must examine "the settlement taken as a whole, rather than the individual component parts"

for fairness. *Hanlon*, 150 F.3d at 1026. Courts cannot "delete, modify or substitute certain

provisions" of the settlement. *Id.* (internal quotations omitted).

But where, as here, the parties negotiate a settlement before a class has been certified,

"courts must peruse the proposed compromise to ratify both the propriety of the certification and

the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Pre-class

certification settlements "must withstand an even higher level of scrutiny for evidence of collusion

or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the

court's approval as fair." *Bluetooth*, 654 F.3d at 946 (citation omitted). This heightened scrutiny

"ensure[s] that class representatives and their counsel do not secure a disproportionate benefit 'at

the expense of the unnamed plaintiffs who class counsel had a duty to represent.'" *Lane v.

Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (citation omitted). Thus, courts must evaluate

the settlement for evidence of collusion. *Id.*

Because "[c]ollusion may not always be evident on the face of a settlement, . . . courts

therefore must be particularly vigilant not only for explicit collusion, but also for more subtle

signs that class counsel have allowed pursuit of their own self-interests and that of certain class

members to infect the negotiations." *Bluetooth*, 654 F.3d at 947. In *Bluetooth*, the Ninth Circuit

identified signs of subtle collusion including, but not limited to:

> (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded, (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of

United States District Court
Northern District of California

the class"; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund[.]

*Id.* (internal quotations and citations omitted).

Courts need not assess all of these fairness factors at the preliminary approval stage. *See Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008). Rather, "the preliminary approval stage [is] an 'initial evaluation' of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties." *In re High-Tech Employee Antitrust Litig.*, No. 11-CV-2509-LHK, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013) (citation omitted). At this stage, "[p]reliminary approval of a settlement is appropriate if 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'" *Ruch v. AM Retail Grp., Inc.*, No. 14-CV-05352-MEJ, 2016 WL 1161453, at *7 (N.D. Cal. Mar. 24, 2016) (citation omitted). Ultimately, "[t]he initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

A. **Settlement Process**

"The first factor the Court examines is the means by which the parties arrived at settlement." *Sciortino v. PepsiCo, Inc.*, No. 14-CV-00478-EMC, 2016 WL 3519179, at *4 (N.D. Cal. June 28, 2016). Preliminary approval is appropriate if the proposed settlement is the product of serious, informed, non-collusive negotiations. The Settlement is the end result of such negotiations. Class Counsel received and analyzed "voluminous discovery material" (Dkt. No. 2849 at 29), which allowed them to make a well-informed assessment of the merits of the Class' claims and to determine whether Volkswagen's offers adequately compensates Class Members for their injuries. The Settlement is also the result of arm's-length negotiations by experienced Class Counsel and thus is "entitled to 'an initial presumption of fairness.'" *In re High-Tech Empl.*, 2013 WL 6328811, at *1 (citation omitted). Moreover, Class Counsel negotiated the Settlement alongside government entities, including the EPA, CARB, and the FTC. (*See* Dkt. No. 2840 at 29.) While those entities are not technically parties to the Settlement, their coordination with

United States District Court
Northern District of California

1   Class Counsel and support of the Settlement weigh in favor of granting preliminary approval.

2       Further, the parties negotiated the Settlement under the supervision of the court-appointed

3   Settlement Master.  While "the mere presence of a neutral mediator, though a factor weighing in

4   favor of a finding of non-collusiveness, is not on its own dispositive of whether the end product is

5   a fair, adequate, and reasonable settlement agreement[,]" *Bluetooth*, 654 F.3d at 948, on balance,

6   the Settlement Master's guidance coupled with informed dialogues and the intensive involvement

7   of government entities suggests the parties reached the Settlement after serious, informed, non-

8   collusive negotiations.  This factor weighs strongly in favor of preliminary approval.

9       **B.      The Presence of Obvious Deficiencies**

10      The second consideration is whether the Settlement contains any obvious deficiencies. The

11  Court finds no glaring concerns at this time, particularly in light of the *Bluetooth* factors.

12      The first *Bluetooth* factor asks (1) whether class counsel receive a disproportionate

13  distribution of the settlement or (2) whether counsel are amply rewarded while the class receives

14  no monetary distribution.  *Id.* at 947.  At this point, this factor is not problematic.  As the parties

15  have not yet negotiated attorneys' fees, the Court cannot presently determine if the first situation

16  exists, that is, whether the Settlement awards Class Counsel a disproportionate distribution of the

17  settlement funds.  Further, the Court will make the final decision as to the amount of Class

18  Counsel's compensation.  The second situation is not also at issue, given that the Settlement

19  provides for significant monetary compensation for Class Members.  As such, there is no evidence

20  of collusion under the first *Bluetooth* factor.

21      As for the second *Bluetooth* factor relating to the existence of any "clear sailing"

22  arrangement, the parties have agreed that Volkswagen will pay reasonable fees separate from the

23  compensation provided to Class Members and that those fees are subject to the Court's approval.

24  (Dkt. No. 2894 ¶ 14.1.)  As noted earlier, the parties have not agreed on an amount of attorneys'

25  fees and costs.  (*Id.*)  Thus, as of now there is no "clear sailing" agreement and this factor does not

26  weigh against preliminary approval.

27      If the parties eventually agree as to the amount of attorneys' fees and costs, Class Counsel

28  will submit the negotiated amount to the Court for approval.  (*Id.*)  In the event the parties cannot

United States District Court
Northern District of California

27

United States District Court
Northern District of California

1    reach such an agreement, they will litigate the issue.  (*Id.*)  The Notice informs Class Members

2    that Volkswagen will pay Court-approved attorneys' fees and costs and that their compensation

3    will not be reduced by those expenses.  (Dkt. No. 2915 at 43.)  It further advises Class Members

4    that they will have opportunity to comment on and/or object to the PSC's request for fees and

5    costs, once made and before the Court rules on any such request.  (*Id.*)

6           That the amount of attorneys' fees and costs is still to be determined is not fatal to

7    preliminary approval.  Rule 23(h), which governs attorneys' fees in class actions, does not require

8    Class Counsel to move for its fee award at the preliminary approval juncture, or even upon

9    seeking final approval.  *See* Fed. R. Civ. P. 23(h); *In re Nat'l Football League Players Concussion*

10   *Injury Litig.* ("*In re NFL Players*"), 821 F.3d 410, 445 (3d Cir. 2016) ("[T]he separation of a fee

11   award from final approval of the settlement does not violate Rule 23(h)."); *In re Oil Spill by Oil*

12   *Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 910 F. Supp. 2d 891, 918 n.16 (E.D.

13   La. 2012), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) (granting final

14   approval where "parties had no discussions regarding fees other than the PSC's making clear that

15   it would eventually file a request for attorneys' fees").  While Class Members must be given an

16   opportunity to object to a request for fees, *see In re Mercury Interactive Corp. Secs. Litig.*, 618

17   F.3d 988, 994-95 (9th Cir. 2010), they can be given that opportunity after final approval.

18          The Court wants to ensure, however, that Class Members have sufficient information as to

19   the PSC's prospective request for attorneys' fees and costs to make an informed decision as to

20   whether they should object to or opt out of the Settlement, a decision which must be made by

21   September 16, 2016.  *See In re NFL Players*, 821 F.3d at 446 ("Even if the class members were

22   missing certain information—for example, the number of hours class counsel worked and the

23   terms of any contingency fee arrangements class counsel have with particular retired players—

24   they still had enough information to make an informed decision about whether to object to or opt

25   out from the settlement.").  The Court therefore orders Lead Plaintiffs' Counsel to submit more

26   information regarding the PSC's request for attorneys' fees on or before **March 31, 2017**.  Pretrial

27   Order Number 11 sets forth the guidelines and rules for work done and expenses incurred for the

28   common benefit of all Plaintiffs in this MDL.  In accordance with that Order, Lead Plaintiffs'

1    Counsel should either provide an estimate of the amount of fees and costs the PSC will seek for

2    work in connection with the Settlement or, alternatively, detail the methodology the PSC will use

3    to determine the amount of fees and costs they will seek.  For example, if the PSC intends to rely

4    on a lodestar plus a multiplier, they should so state, as well as indicate the specific multiplier they

5    intend to seek and the range of the hourly rates charged by authorized timekeepers. Such

6    additional information shall be made available to interested Class Members on the Court's website

7    as well as the Settlement Website.[1]

8         The third *Bluetooth* factor considers whether the settlement provides for funds not awarded

9    to revert to defendants.  *See Bluetooth*, 654 F.3d at 947.  Under the Settlement, any funds

10   remaining in the Escrow Account upon the conclusion of the Settlement Benefit Period or upon

11   the termination or invalidation of the Settlement shall revert to Volkswagen. (Dkt. No. 2894

12   ¶¶ 13.4-13.5.)  Generally, reversionary provisions, while not prohibited, can be problematic.  *See*

13   *Fraley v. Facebook Inc.*, No. 3:11-CV-01726-RS, 2012 WL 5835366, at *3 (N.D. Cal. Aug. 17,

14   2012).  The Court, however, is not concerned with the reversion of funds here.  First, Volkswagen

15   is incentivized under the Settlement to develop Emissions Compliant Repairs for vehicles as

16   opposed to simply buying back noncompliant vehicles; where such Repairs are available, it makes

17   sense for Volkswagen to receive funds it otherwise would have spent purchasing Class Members'

18   vehicles outright.  Further, Volkswagen's response with respect to the 2.0-liter vehicles suggests

19   that it will not attempt to discourage Class Member participation in an effort to maximize

20   unclaimed funds.  Under these circumstances, the Court finds this factor does not suggest

21   collusion.

22        At this time, none of the *Bluetooth* factors are present, nor does the Court note any other

23   apparent problems with the Settlement.  The lack of any obvious deficiencies weighs in favor of

24   preliminary approval.

25        **C.    Preferential Treatment**

26        The third factor asks whether the Settlement provides preferential treatment to any Class

27

28   _____
     [1] The Court's website concerning this MDL may be found at http://cand.uscourts.gov/crb/vwmdl.
     The Settlement Website may be found at www.VWCourtSettlement.com.

United States District Court
Northern District of California

Member.  It does not.  Buyback values and Restitution Payments for all Class Members are based on the September 2015 NADA Clean Trade In value of the Eligible Vehicle, which ensures a uniform classwide calculation.  The Settlement also treats, and thus compensates, Class Members equally.  Class Members receive the same amount of restitution regardless of the remedy they elect.  All lessees are treated alike as well.  Further, the Settlement does not provide an incentive award for the Settlement Class Representatives or Representative.  The Court is satisfied the Settlement does not afford any Class Member preferential treatment and finds this factor weighs in favor of preliminary approval.

### D.       Range of Possible Approval

Under the fourth factor, courts determine whether a settlement falls within the range of possible approval.  This requires courts to focus on "substantive fairness and adequacy" and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Tableware*, 484 F. Supp. 2d at 1080.  As part of this assessment, courts must "estimate the maximum amount of damages recoverable in a successful litigation and compare that with the settlement amount."  *Harris*, 2011 WL 1627973, at *11 (internal quotations omitted).

As with the 2.0-liter settlement, the full purchase price of Eligible Vehicles here is unlikely to represent the maximum recovery, as many state laws allow a deduction for vehicles' use. *See, e.g.*, Md. Code Com. Law § 14-1502(c)(1)(ii)(2) (requiring manufacturer to "[a]ccept return of the motor vehicle from the consumer and refund to the consumer the full purchase price . . . less: 1. A reasonable allowance for the consumer's use of the vehicle not to exceed 15 percent of the purchase price; and 2. A reasonable allowance for damage not attributable to normal wear . . . ."); Mass. Gen. Laws ch. 90 § 7N 1/2 ("In instances in which a vehicle is sold and subsequently returned, the manufacturer shall refund the full contract price of the vehicle . . . , less . . . a reasonable allowance for use . . . ."); Wash. Rev. Code § 19.118.041(1)(a) ("Compensation for a reasonable offset for use shall be paid by the consumer to the manufacturer in the event that the consumer accepts a replacement motor vehicle.").  Moreover, as Plaintiffs note, any recovery obtained at trial could also be subject to offsets.  (Dkt. No. 2840 at 27; *see also* 15 U.S.C. § 2301(12) (defining "refund" as "refunding the actual purchase price (less reasonable

depreciation based on actual use where permitted by rules of the Commission)"); Cal. Civ. Code § 1793.2(d)(2)(C) (stating that restitution "may be reduced by the manufacturer by that amount directly attributable to use by the buyer prior to the time the buyer first delivered the vehicle to the manufacturer or distributor, or its authorized service and repair facility for correction of the problem that gave rise to the nonconformity").

In line with these laws, the Buyback option takes into account Class Members' use of their Eligible Vehicles. But because the Buyback price is based in part on the Vehicle Value at the September 2015 NADA Clean Trade In value, this ensures Class Members' recovery is not affected by the loss in value caused by Volkswagen's disclosure of the defeat device. Furthermore, that value does not decrease despite Class Members' use of their vehicle from September 2015 through the conclusion of the Buyback. The Restitution Payments likewise factor in Class Members' use of their Eligible Vehicles until September 2015, while also providing additional compensation for Class Members. The Settlement's value thus is wholly consistent with Class Members' possible recovery in proceeding with litigation. This is how it should be, as liability is not seriously at issue, and the Settlement's substantial compensation to Class Members reflects this reality.

*   *   *

For the reasons above, the proposed Settlement is fair, adequate, and reasonable.

### III. Class Notice

#### A. Method of Providing Notice

For any class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "[T]he express language and intent of Rule 23(c)(2) leave no doubt that individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974).

The Class Notice Program will begin February 15, 2017. (Dkt. No. 2894 ¶ 15.3.) The parties have selected, subject to the Court's approval, Kinsella Media, LLC as the Notice

United States District Court  
Northern District of California

United States District Court
Northern District of California

1   Administrator.  (*Id.* ¶ 2.64.)  The Notice Administrator will send the Short Form Notice (*see* Dkt.

2   No. 2894-2) in the form of postcards via first-class mail to all readily identifiable Class Members

3   and approximately 77,558 non-Volkswagen dealers.  (Dkt. No. 2840-3 ¶¶ 11-16.)  To supplement

4   this notice, the Notice Administrator will send two emails to Class Members who have provided

5   their emails; the first email will provide an overview of the Settlement and direct Class Members

6   to the Settlement Website for more information and to review the Long Form Notice, and the

7   second email will include a copy of the Long Form Notice.  (*Id.* ¶ 17.)

8          The direct-mail and email notices will be supplemented by a paid media program.  The

9   Publication Notice (*see* Dkt. No. 2894-2 at 7-9) will appear as a color advertisement in: (1) the

10  Sunday edition of *The New York Times*; (2) the daily editions of *The Wall Street Journal* and *USA*

11  *Today*; (3) the Sunday and daily editions of three newspapers that cover markets with 5,000 or

12  more Eligible Vehicles; (4) the Sunday editions of 10 newspapers that cover markets with 2,000 to

13  4,999 Eligible Vehicles; and (5) the weekly editions of 13 African American newspapers.  (Dkt.

14  No. 2840-3 ¶¶ 18-22.)  A Spanish translation of the Publication Notice will also appear as a color

15  advertisement in the weekly editions of 13 Hispanic newspapers.  (*Id.* ¶¶ 22-23.)

16         The paid media campaign will also include digital advertising.  This campaign will include

17  third-party targeting, such as banner advertisements delivered to websites using industry standard

18  third-party data sources (such as Bluekai Auto Data and Datalogix DLX Auto) and IHS

19  Automotive (Polk) data, in an effort to reach eligible owners and lessees.  (*Id.* ¶ 25.)  In order to

20  reach fleet owners and others interested in the automotive industry, banner advertisements will

21  appear on the National Association of Fleet Administrators website (www.nafa.org) and the

22  National Automobile Dealers Association (www.nada.org), as well as on websites associated with

23  *Automotive Fleet*, *Automotive News*, and *Auto Rental News*.  (*Id.* ¶ 26.)

24         The paid media campaign will also include targeted advertising on Facebook, Instagram,

25  Twitter, LinkedIn and the Google Display Network.  (*Id.* ¶¶ 27-28.)  The Notice Administrator

26  will also implement sponsored keywords and phrases with major search engines such that a when

27  user searches for one of the specified search terms or phrases, sponsored links will appear on the

28  results page.  (*Id.* ¶ 29.)  Additionally, the Notice Administrator will email various non-

Volkswagen dealer and fleet associations, national organizations, and state independent automobile associations asking them to share information about the Settlement with their members.  (*Id.* ¶ 30.)

Finally, Class Members can visit the Settlement Website and call a toll-free telephone number to obtain information about the Settlement, including the Long Form Notice and the Settlement Agreement.  (*Id.* ¶¶ 33-34.)  The Notice Administrator will also establish a post office box to allow Class Members to contact Class Counsel by mail. (*Id.* ¶ 35.)  Class Counsel will also maintain email (info@vwclasscounsel.com) and a toll-free telephone (1 (800) 948-2181) to enable Class Members to contact them.  (*Id.* ¶ 36.)

Identifiable Class Members will receive via email and mail notifications when EPA and CARB approve or reject a fix, or if Volkswagen does not propose one.  (*Id.* ¶¶ 31-32.)  Updates on the approval of a fix will also be placed on the Settlement Website.  (*Id.* ¶ 31.)

The Court is satisfied that the Notice Program is adequate.  Direct mail provides individual notice to identifiable Class Members, as required by Rule 23(c)(2).  Class Members' names and addresses are readily identifiable, and there is nothing to suggest Class Members cannot be located through reasonable efforts.  Direct mail therefore serves as the best practicable method to notify Class Members of this Settlement.  *See Hunt v. Check Recovery Sys., Inc.*, No. C05 04993 MJJ, 2007 WL 2220972, at *3 (N.D. Cal. Aug. 1, 2007) ("Delivery by first-class mail can satisfy the best notice practicable when there is no indication that any of the class members cannot be identified through reasonable efforts."), *aff'd sub nom. Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137 (9th Cir. 2009).  The paid media campaign, Settlement Website, and toll-free telephone number further ensure notice will reach Class Members.  The Court thus approves Plaintiffs' proposed method of notice as it provides the best practicable notice that is reasonably calculated to inform Class Members of this Settlement.

### B.   Contents of the Notice

Rule 23(c)(2)(B) also requires the notice clearly and concisely state:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so

33

desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The Long Form Notice and the Short Form Notice satisfy the elements of Rule 23(c)(2)(B).  (*See* Dkt. Nos. 2894-2, 2915.)  They provide a summary of the Settlement and clearly explain how Class Members may object to or opt out of the Settlement, as well as how Class Members may address the Court at the final approval hearing.  *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.").  The Long Form Notice further explains in question-and-answer format the benefits provided under the Settlement, how Class Members receive benefits, and who is a Class Member.  Furthermore, the Long Form Notice provides the names and contact addresses of Lead Plaintiffs' Counsel and PSC members, and both Notices indicate additional information about the Settlement can be found on the Settlement Website or by calling 1 (844) 98-CLAIM.

### C.      Costs of Class Notice Program

Volkswagen will bear all reasonable and necessary fees and costs of the Class Notice Program.  (Dkt. No. 2894 ¶ 11.6.)  Within two days of this Order, Volkswagen shall transfer or pay to the Notice Administrator an amount sufficient to cover the initial costs of the Class Notice Program.  (*Id.* ¶ 11.7.)

### CONCLUSION

The Court finds that the proposed Settlement is the result of intensive, non-collusive negotiations and is reasonable, fair, and adequate. The Court therefore GRANTS Plaintiffs' motion for preliminary approval as follows:

1.      The proposed Settlement Class is conditionally certified pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) for settlement purposes.  The Settlement Class is defined as:

a nationwide class, including Puerto Rico, of all persons (this includes individuals who are United States citizens, residents, United States military, diplomatic personnel and employees

34

living or stationed overseas, as well as entities) who, (1) at any time between September 18, 2015 and November 2, 2015, inclusive, owned or leased a Volkswagen, Audi, or Porsche 3.0-liter TDI vehicle in the United States or its territories (an "Eligible Vehicle," defined more fully in Section 2.40); or who (2) between November 3, 2015 and the Claim Submission Deadline for Eligible Owners and Lessees, inclusive, become the owner of an Eligible Vehicle in the United States or its territories; or who (3) own an Eligible Vehicle in the United States or its territories at the time of participation in the 3.0-liter Class Action Settlement Program.  The Class includes Non-Authorized Dealers who otherwise meet the definition of the Class.  The following entities and individuals are excluded from the Class:

(a) Owners who acquired an Eligible Vehicle after September 18, 2015, and sold it before November 2, 2015;

(b) Owners who acquired an Eligible Vehicle after November 2, 2015, and transferred title on or before January 31, 2017;

(c) Lessees of a Generation One Eligible Vehicle leased from a leasing company other than VW Credit, Inc., and lessees of a Generation Two Eligible Vehicle leased from a leasing company other than VW Credit, Inc. or Porsche Financial Services, Inc.;

(d) Owners whose Eligible Vehicle had a Branded Title of Assembled, Dismantled, Flood, Junk, Rebuilt, Reconstructed, or Salvage on September 18, 2015, and was acquired from a junkyard, salvage yard, or salvage dealer after September 18, 2015;

(e) Owners who sell or otherwise transfer ownership of their Eligible Vehicle after January 31, 2017 but on or before the Opt-Out Deadline, unless the Eligible Vehicle is (i) unintentionally damaged after January 31, 2017, in a manner that renders it a total loss (*i.e.*, "totaled") and (ii) transferred to an insurance company or otherwise permanently removed from commerce;

(f) Defendants' officers, directors and employees; Defendants' affiliates and affiliates' officers, directors and employees; their distributors and distributors' officers, directors and employees; participants in Volkswagen's Internal Lease Program and/or Porsche Associate Lease Program; and Authorized Dealers and Authorized Dealers' officers and directors;

(g) Judicial officers and their immediate family members and associated court staff assigned to this case; and

(h) All those otherwise in the Class who or which timely and properly exclude themselves from the Class as provided in this 3.0-liter Class Action Agreement.

2.   The Settlement is preliminarily approved as fair, adequate, and reasonable pursuant to Federal Rule of Civil Procedure 23(e).

35

3.      The Court appoints Elizabeth J. Cabraser and the 21 members of the PSC listed in Pretrial Order No. 7 as Settlement Class Counsel.  (*See* Dkt. No. 1084.)

4.      The Court appoints and designates the individuals listed in Exhibit 1 to the motion as Class Representatives for settlement purposes only.  (*See* Dkt. No. 2840-1.)

5.      The Court appoints Kinsella Media, LLC as the Notice Administrator to perform the duties set forth in the Settlement.

6.      Notice shall be provided in accordance with the Notice Program and this Order— that is, beginning **February 15, 2017**.

7.      The Court appoints Ankura Consulting Group, LLC as Claims Supervisor to perform the duties described in the Settlement.

8.      Class Members shall submit their objections or requests for exclusion by **April 14, 2017** in the manner set forth in the Settlement.

9.      Class Counsel shall file a motion for final approval by **March 24, 2017**, and any reply shall be filed by **April 28, 2017**.

10.     The deadline for Eligible Former Owner identification is **May 1, 2017**.

The Court will hold a final fairness hearing to determine whether the settlement is fair, reasonable, and adequate on **May 11, 2017 at 8:00 a.m.** in Courtroom 6, 450 Golden Gate Avenue, San Francisco, California.  The deadline for Class Members to file a Notice of Intent to Appear at final fairness hearing is **April 14, 2017**.

        **IT IS SO ORDERED.**

Dated: February 16, 2017

_____
CHARLES R. BREYER
United States District Judge