1
2
3
4                        UNITED STATES DISTRICT COURT
5                       NORTHERN DISTRICT OF CALIFORNIA
6
7   IN RE: VOLKSWAGEN "CLEAN DIESEL"          MDL No. 2672 CRB  (JSC)
8   MARKETING, SALES PRACTICES, AND
    PRODUCTS LIABILITY LITIGATION
9   _____/      **ORDER GRANTING PRELIMINARY
                                              APPROVAL OF THE BOSCH CLASS
10  This Order Relates To:                    ACTION SETTLEMENT**
    ALL CONSUMER ACTIONS
11  ALL RESELLER DEALERSHIP ACTIONS
12  _____/

13          In the fall of 2015 the public learned of Volkswagen's deliberate use of a defeat device—

14  software designed to cheat emissions tests and deceive federal and state regulators—in nearly

15  600,000 Volkswagen-, Porsche-, and Audi-branded turbocharged direct injection ("TDI") diesel

16  engine vehicles sold in the United States.  Litigation quickly ensued, and those actions were

17  consolidated and assigned to this Court as a multidistrict litigation ("MDL").  After months of

18  intensive negotiations and with the assistance of a court-appointed settlement master, Plaintiffs

19  and Defendants Robert Bosch GmbH and Robert Bosch, LLC (collectively, "Bosch") reached a

20  settlement that resolves consumer claims concerning certain 2.0- and 3.0-liter diesel TDI vehicles.

21  (*See* Dkt. No. 2918.)

22          The Settlement Class Representatives now move the Court to (1) preliminarily approve the

23  proposed Bosch Class Action Settlement Agreement and Release ("Settlement"), (2) conditionally

24  certify a Settlement Class, (3) approve the proposed settlement notice plan, and (4) schedule a

25  fairness hearing.  Having reviewed the proposed settlement and with the benefit of oral argument

26  on February 14, 2017, the Court GRANTS the motion for preliminary approval.  The Settlement is

27  sufficiently fair, adequate, and reasonable to the 2.0- and 3.0-liter diesel engine vehicle consumers

28  to move forward with class notice.

United States District Court
Northern District of California

**BACKGROUND**

**I.      Factual Allegations**

Volkswagen sold Volkswagen-, Audi-, and Porsche-branded TDI "clean diesel" vehicles, which it marketed as being environmentally friendly, fuel efficient, and high performing. Unbeknownst to consumers and regulatory authorities, Volkswagen installed in these cars a software defeat device that allowed the vehicles to evade United States Environmental Protection Agency ("EPA") and California Air Resources Board ("CARB") emissions test procedures. Specifically, the defeat device senses whether the vehicle is undergoing testing and produces regulation-compliant results, but operates a less effective emissions control system when the vehicle is driven under normal circumstances. Only by installing the defeat device on its vehicles was Volkswagen able to obtain Certificates of Conformity from EPA and Executive Orders from CARB for its 2.0- and 3.0-liter diesel engine vehicles; in fact, these vehicles release nitrogen oxides at a factor of up to 40 times over the permitted limit. Over six years, Volkswagen sold American consumers nearly 600,000 diesel vehicles equipped with a defeat device.

As alleged, Bosch worked closely with Volkswagen to develop and supply the software defeat device for use in Volkswagen's vehicles. Despite having knowledge of Volkswagen's illicit of the defeat device, Bosch continued to work with Volkswagen and even concealed the defeat device in communications with U.S. regulators when concerns were raised about the emission control system in certain Volkswagen vehicles. While Volkswagen has publicly admitted wrongdoing, Bosch continues to deny wrongdoing. (*See* Dkt. No. 2838 at 8.)

**II.      Procedural History**

In January 2016, the Court appointed Elizabeth J. Cabraser of Lieff, Cabraser, Heimann & Bernstein, LLP as Lead Plaintiffs' Counsel and Chair of the Plaintiffs' Steering Committee ("PSC"), to which the Court also named 21 attorneys. (Dkt. No. 1084.) On September 2, 2016, the PSC filed its Amended Consolidated Consumer Class Action Complaint against 13 named defendants: Volkswagen Group of America; Volkswagen AG; Audi AG; Audi of America, LLC; Porsche AG; Porsche Cars North America, Inc.; Martin Winterkorn; Mattias Müller; Michael Horn; Rupert Stadler; Robert Bosch GmbH; Robert Bosch, LLC; and Volkmar Denner. (Dkt. No.

United States District Court
Northern District of California

1804.)  As against Bosch, the complaint asserts claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c)-(d), state fraud and unjust enrichment laws, and all fifty States' consumer protection laws.  The PSC also filed a Second Amended Consolidated Reseller Dealership Class Action Complaint against the same 13 defendants; the complaint asserts against Bosch claims for RICO, fraud, and unjust enrichment.  (Dkt. No. 1805.)

Also in January 2016, the Court appointed former Director of the Federal Bureau of Investigation Robert S. Mueller III as Settlement Master to oversee settlement negotiations between the parties.  (Dkt. No. 973.)  Since that time, in parallel to negotiations for the 2.0-liter and 3.0-liter Volkswagen settlements, the parties have engaged in both litigation and settlement discussions over Bosch's involvement in the Volkswagen emissions scandal.  The parties finally reached a proposed Settlement, and Plaintiffs now seek the Court's preliminary approval of the Settlement.  (Dkt. No. 2838.)

### SETTLEMENT TERMS

This Order addresses the proposed Bosch Class Action Settlement Agreement and Release. The key provisions of the Settlement are as follows.

## I.     The Settlement Amount

The Settlement requires Bosch to create a non-reversionary settlement fund, called the Bosch Settlement Fund, in the amount of $327,500,000 to compensate Class Members.  (Dkt. No. 2918 ¶¶ 4.1, 10.1.)

## II.     The Settlement Class

The proposed Settlement Class consists of all persons and entities who were eligible for membership in the combination of classes defined in the 2.0-liter and 3.0-liter class action settlement agreements, including anyone who opted out or opts out of those agreements.  (*Id.* ¶ 2.17.)  The following are excluded from the Settlement Class: (a) Bosch's officers, directors, and employees; and Bosch's affiliates and affiliates' officers, directors, and employees; (b) Volkswagen; Volkswagen's officers, directors, and employees; and Volkswagen's affiliates and affiliates' officers, directors, and employees; (c) any Volkswagen franchise dealer; (d) judicial officers and their immediate family members and associated court staff assigned to this case; and

1    (e) any person or entity that timely and properly opted out of the Bosch Settlement.  (*Id.*)

2          Eligible Vehicles under the Settlement are the same eligible vehicles identified in the 2.0-

3    liter and 3.0-liter settlement agreements.  (*Id.* ¶ 2.34.)  Any Volkswagen, Audi, or Porsche

4    vehicles that were never sold in the United States or its territories are excluded from the Eligible

5    Vehicles.  (*Id.*)

6    **III.    Claims Process**

7          The Settlement Benefit Period, or the time period during which Class Members may obtain

8    benefits under the Settlement, ends on April 30, 2020.  (*Id.* ¶ 2.50.)

9          **A.    Class Members Who are not Required to Make a Claim**

10         Any Class Member whose filed claim has been approved or is approved in the future in

11   either or both of the 2.0-liter and 3.0-liter Volkswagen settlements will receive an automatic

12   payment via check by mail.  (*Id.* ¶ 5.4.)  In other words, those Class Members who made or make

13   an approved claim in the 2.0-liter or 3.0-liter settlements do not have to do anything to receive

14   their payments from Bosch.

15         **B.    Class Members Who Must Make a Claim**

16         Two categories of Class Members are entitled to compensation but will not receive

17   automatic payments: (1) eligible Class Members who opted out of the 2.0-liter and 3.0-liter class

18   settlements, and (2) eligible sellers in the 2.0-liter settlement who did not identify themselves

19   during the relevant period for purposes of the 2.0 class settlement.  (*Id.* ¶¶ 5.5.1, 5.5.2.)

20         Those Class Members who opted out of the Volkswagen settlements must file a claim no

21   later than August 15, 2017.  (*Id.* ¶ 5.6.)  Similarly, eligible sellers who did not timely identify

22   themselves in the 2.0-liter settlement and eligible former owners who do not identify themselves

23   by the deadline set forth in the 3.0-liter settlement and do not file a claim by the claim submission

24   deadline in the 3.0-liter settlement must file a claim no later than May 1, 2017.  (*Id.* ¶ 5.7.)  For

25   these categories of Class Members, claims eligibility will be decided by the Claims Administrator.

26   (*Id.* ¶ 5.6.)  Class Members will be notified by email or letter within five business days of the

27   Claims Administrator's eligibility determination.  (*Id.* ¶ 5.8.)  The Claims Administrator will mail

28   a compensation check to each Class Member whose claim is approved no later than 10 business

*United States District Court*
*Northern District of California*

4

1    days after the Claims Administrator's eligibility determination.  (*Id.* ¶ 5.9).

2    **IV.    Distribution of Settlement Payments**

3           The Bosch Settlement Fund will be distributed such that $163,267,450 will be shared

4    among 2.0-liter Class Members and $113,264,400 will be shared among 3.0-liter Class Members.

5    (Dkt. No. 2838 at 14.)  The Bosch Settlement Fund will be distributed, based on the Federal Trade

6    Commission's ("FTC") allocation plan (*see* Dkt. No. 2918 ¶ 4.4), to Class Members as follows:

7           An eligible owner of an Eligible Vehicle in the 2.0-liter settlement will receive $350,

8    except that if an eligible seller or lessee has an approved claim for the same Eligible Vehicle, the

9    eligible owner will receive $175.  (Dkt. No. 2838 at 15.)  An eligible seller in the 2.0-liter

10   settlement with an approved claim will receive $175.  (*Id.*)  An eligible lessee in the 2.0-liter

11   settlement will receive $200.  (*Id.*)

12          An eligible owner of an Eligible Vehicle in the 3.0-liter settlement will receive $1,500,

13   with three exceptions: (1) if an eligible former owner of the same Eligible Vehicle has an

14   approved claim in the 3.0-liter settlement, the $1,500 payment will be split equally ($750 each)

15   between the owner and the former owner; (2) an eligible owner will also receive $750 if an

16   eligible former lessee of the Eligible Vehicle has an approved claim; and (3) if two former eligible

17   owners of the Eligible Vehicle have approved claims, the $1,500 will be split such that the eligible

18   owner receives $750 and each of the two former owners receives $375.  (*Id.*)  An eligible lessee in

19   the 3.0-liter settlement will receive $1,200.  (*Id.*)

20          At the conclusion of the Settlement Benefit Period, if any funds remain in the Bosch

21   Settlement Fund and it is not feasible or economically reasonable to distribute such funds to Class

22   Members, the funds will be distributed through *cy pres* payments according to a distribution plan

23   and schedule filed by Class Counsel and approved by the Court.  (Dkt. No. 2918 ¶ 10.2.)  Any

24   unused funds will only revert to Bosch if the Settlement is terminated or invalidated prior to the

25   conclusion of the Settlement Benefit Period.  (*Id.* ¶ 10.3.)

26   **V.    Opt Out Procedure and Objections**

27          Class Members may request exclusion from the Settlement by mailing a signed, written

28   request stating their desire in clear and unambiguous language, such as "I wish to exclude myself

United States District Court
Northern District of California

5

from the Bosch Settlement Class in *In re Volkswagen 'Clean Diesel' Marketing, Sales Practices and Products Liability Litigation*, No. 15-md-2672," to the Notice Administrator on or before the opt-out deadline of April 14, 2017.  (Dkt. No. 2918 ¶ 6.1.)  The written request must also include (1) the Class Member's printed name, address, and telephone number; (2) a statement as to whether the class member is an eligible owner, eligible lessee, or eligible seller in the 2.0-liter settlement or an eligible owner, eligible former owner, eligible lessee, or eligible former lessee in the 3.0-liter settlement; (3) the VIN of the Eligible Vehicle(s); and (4) the dates of the Class Member's ownership or lease of the Eligible Vehicle(s).  (*Id.*)

The Class Notice shall advise that Class Members may object to the Settlement by filing with the Court a written objection that explains why he or she believes the Court should not approve the Class Action Settlement as fair, reasonable, and adequate.  (*Id.* ¶ 7.1.)  The written objection must include: (1) a detailed statement of and specific reasons for the objection; (2) the Class Member's name, address, and telephone number; (3) a statement as to whether the class member is an eligible owner, eligible lessee, or eligible seller in the 2.0-liter settlement or an eligible owner, eligible former owner, eligible lessee, or eligible former lessee in the 3.0-liter settlement; (4) the VIN of the Eligible Vehicle(s); (5) a statement that the Class Member has reviewed the Class definition and has not opted out of the Class; (6) the dates of the Class Member's ownership or lease of the Eligible Vehicle(s); and (7) any other supporting documents the Class Member wishes the Court to consider.  (*Id.*)  Class Members may object on their own behalf or through counsel, at the Class Members' own expense. (*Id.* ¶ 7.2.)

## VI.    Release of Claims

Class Members agree to release Released Claims against the Released Parties.  The Settlement defines Released Parties as:

> (1) Robert Bosch GmbH, Robert Bosch LLC, and all current and former parents (direct or indirect), shareholders (direct or indirect), members (direct or indirect), subsidiaries, affiliates, joint venture partners, insurers, contractors, consultants, and auditors, and the predecessors, successors, and assigns of the foregoing (the "Bosch Released Entities"); and (2) all current and former officers, directors, members of the management or supervisory boards, employees, agents, advisors and attorneys of the Bosch Released Entities (the "Bosch Released Personnel").

1    (*Id.* ¶ 9.2.)

2        The Released Claims are defined as:

3            any and all claims, demands, actions, or causes of action, whether
             known or unknown, that they may have, purport to have, or may
4            have hereafter against any Released Party, as defined above, that: (i)
             are related to any Eligible Vehicle; (ii) arise from or in any way
5            relate to the 2.0-liter TDI Matter or the 3.0 Liter TDI Matter; and
             (iii) that arise from or are otherwise related to conduct by a Released
6            Party that (a) predates the date of this Class Action Settlement
             Agreement and (b) formed the factual basis for a claim that was
7            made or could have been made in the Complaints. This Release
             applies to any and all claims, demands, actions, or causes of action
8            of any kind or nature whatsoever, whether in law or in equity,
             contractual, quasi-contractual, or statutory, known or unknown,
9            direct, indirect or consequential, liquidated or unliquidated, past,
             present or future, foreseen or unforeseen, developed or undeveloped,
10           contingent or non-contingent, suspected or unsuspected, whether or
             not concealed or hidden, related to any Eligible Vehicle and arising
11           from or otherwise related to conduct by a Released Party that
             predates the date of this Class Action Settlement Agreement as set
12           forth above, including without limitation (1) any claims that were or
             could have been asserted in the Action; (2) all marketing and
13           advertising claims related to Eligible Vehicles; (3) all claims arising
             out of or in any way related to emissions, emissions control
14           equipment, electronic control units, electronic transmission units,
             CAN-bus-related hardware, or software programs, programing,
15           coding, or calibration in Eligible Vehicles; (4) all claims arising out
             of or in any way related to a 2.0-liter TDI Matter under the 2.0-liter
16           Class Action Settlement and a 3.0-liter TDI Matter under the 3.0-
             liter Class Action Settlement; and (5) any claims for fines, penalties,
17           criminal assessments, economic damages, punitive damages,
             exemplary damages, statutory damages or civil penalties, liens,
18           rescission or equitable or injunctive relief, attorneys', expert,
             consultant, or other litigation fees, costs, or expenses, or any other
19           liabilities, that were or could have been asserted in any civil,
             criminal, administrative, or other proceeding, including arbitration[.]

20

21   (*Id.* ¶ 9.3.)  The Court is satisfied that the scope of the Released Claims is consistent with Ninth

22   Circuit law; that is, it covers only those claims that are based on the identical factual predicate as

23   that underlying the claims in the Complaints.  *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th

24   Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the

25   future even though the claim was not presented and might not have been presentable in the class

26   action, but only where the released claim is based on the identical factual predicate as that

27   underlying the claims in the settled class action.") (citation and internal quotations omitted).

28        Class Members expressly waive and relinquish any rights they may have under California

United States District Court
Northern District of California

7

1   Civil Code § 1542 or other similar federal or state laws.  (*Id.* ¶ 9.5; *see* Cal. Civ. Code § 1542 ("A

2   general release does not extend to claims which the creditor does not know or suspect to exist in

3   his or her favor at the time of executing the release, which if known by him or her must have

4   materially affected his or her settlement with the debtor.").)

5       Class Members who receive payment from the Bosch Settlement Fund must execute an

6   individual release as a condition of obtaining such payment.  (Dkt. No. 2918 ¶ 9.6.)  The

7   individual release becomes effective and binding once the Class Member signs and deposits a

8   compensation check issued pursuant to the Settlement.  (*Id.*)

9   **VII.   Attorneys' Fees and Costs**

10      Reasonable attorneys' fees and costs for work performed by Class Counsel, as well as

11  other attorneys designated by Class Counsel to perform work in connection with this MDL, will

12  be paid from the Bosch Settlement Fund.  (*Id.* ¶ 11.1.)  Attorneys' fees are subject to the Court's

13  approval.  (*Id.*)  Bosch and Class Counsel did not discuss the amount of fees and expenses to be

14  paid prior to agreement on the terms of the Settlement (*id.*), though Class Counsel has indicated

15  that it will seek attorneys' fees of no more than 16 percent of the Bosch Settlement Fund (Dkt. No.

16  2838 at 16).  Bosch will not be required to pay any amounts for fees and expenses in addition to

17  the Bosch Settlement Fund.  (Dkt. No. 2918 ¶ 11.1.)

18                    **LEGAL STANDARD**

19      "'[T]here is a strong judicial policy that favors settlements, particularly where complex

20  class action litigation is concerned.'"  *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)

21  (quoting *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008)).  Nevertheless, Federal

22  Rule of Civil Procedure 23(e) requires courts to approve any class action settlement.

23  "[S]ettlement class actions present unique due process concerns for absent class members."

24  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  As such, "the district court has a

25  fiduciary duty to look after the interests of those absent class members."  *Allen*, 787 F.3d at 1223

26  (collecting cases).

27      Preliminary approval of a class action settlement generally requires two inquiries.  *See*

28  *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016).  Courts first assess whether a class

United States District Court
Northern District of California

8

exists.  *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  This is "of vital

importance, for a court asked to certify a settlement class will lack the opportunity, present when a

case is litigated, to adjust the class, informed by the proceedings as they unfold."  *Id.*  Second,

Rule 23(e) requires courts to determine "whether a proposed settlement is fundamentally fair,

adequate, and reasonable."  *Hanlon*, 150 F.3d at 1026; *see also* Fed. R. Civ. P. 23(e)(2).

**DISCUSSION**

**I.      Class Certification**

Class certification is a two-step process.  *See Amchem*, 521 U.S. at 613.  The Settlement

Class Representatives must first satisfy Rule 23(a)'s four requirements: (1) numerosity, (2)

commonality, (3) typicality, and (4) adequacy of representation.  *See* Fed. R. Civ. P. 23(a).

"[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis, that the

prerequisites of Rule 23(a) have been satisfied[.]"  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338,

350-51 (2011) (internal quotations omitted).

The Settlement Class Representatives must then establish that a class action may be

maintained under any of Rule 23(b)(1), (2), or (3).  *See Amchem*, 521 U.S. at 613.  The Settlement

Class Representatives seek certification under Rule 23(b)(3), which is appropriate when questions

of law or fact common to Class Members predominate and a class action is the superior means to

other available methods to resolve the controversy.  *See* Fed. R. Civ. P. 23(b)(3).

**A.      Rule 23(a)**

As discussed below, the Settlement Class Representatives meet all four Rule 23(a)

requirements for purposes of preliminary approval.

**1.      Numerosity**

Rule 23(a)(1) requires the class to be "so numerous that joinder of all parties is

impracticable."  Fed. R. Civ. P. 23(a)(1).  "A specific minimum number is not necessary, and [a]

plaintiff need not state the exact number of potential class members."  *Richie v. Blue Shield of

California*, No. C-13-2693 EMC, 2014 WL 6982943, at *15 (N.D. Cal. Dec. 9, 2014) (citations

omitted).  The numerosity requirement is easily satisfied here.  There were over 500,000 Eligible

Vehicles sold or leased to consumers in the United States, and thus hundreds of thousands of

9

United States District Court
Northern District of California

potential Class Members.  Rule 23(a)(1) is met because joinder is impossible.  *See Palmer v. Stassinos*, 233 F.R.D. 546, 549 (N.D. Cal. 2006) ("Joinder of 1,000 or more co-plaintiffs is clearly impractical.").

### 2.     Commonality

Rule 23(a)(2) mandates the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019.  Assessing commonality requires courts to have "a precise understanding of the nature of the underlying claims." *Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014) (citations omitted).  This allows courts to determine if the class' "claims . . . depend upon a common contention" that is "of such a nature that it is capable of classwide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.  The commonality "analysis does not turn on the number of common questions, but on their relevance to the factual and legal issues at the core of the purported class' claims." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 2835 (2015).  Rather, a single common question of law or fact satisfies the Rule.  *See Dukes*, 564 U.S. at 369.

The Settlement Class Representatives satisfy the commonality requirement, as their claims arise from Volkswagen's and Bosch's common course of conduct.  Specifically, the common questions of fact relate to Bosch's involvement in Volkswagen's fraudulent scheme to deceive state and federal regulatory authorities by installing in 2.0- and 3.0-liter diesel engine vehicles the designed defeat device.  (*See* Dkt. No. 2838 at 25.)  Without class certification, individual Class Members would be forced to separately litigate the same issues of law and fact which arise from Bosch's involvement in Volkswagen's use of the defeat device and from Volkswagen's and Bosch's alleged common course of conduct.  *See In re Celera Corp. Sec. Litig.*, No. 5:10-CV-02604-EJD, 2014 WL 722408, at *3 (N.D. Cal. Feb. 25, 2014) (finding commonality requirement met where plaintiffs raised questions of law or fact that would be addressed by other putative class members pursuing similar claims).  Accordingly, Rule 23(a)(2) is satisfied.

10

### 3.     Typicality

Rule 23(a)(3) requires that the representative parties' claims be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality "assure[s] that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation and quotations omitted). Under this "permissive" rule, "representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Parsons*, 754 F.3d at 685 (citation and quotations omitted). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted).

Here, the typicality requirement is met. The Settlement Class Representatives' claims are based on the same pattern of Volkswagen's and Bosch's wrongdoing as those brought on behalf of Class Members. The Settlement Class Representatives, as well as Class Members, purchased or leased an Eligible Vehicle equipped with a defeat device. Their claims are typical because they were subject to the same conduct as other Class Members, and as a result of that conduct, the Settlement Class Representatives and Class Members suffered the same injury.

### 4.     Adequacy of Representation

Rule 23(a)(4) requires that the representative party be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This requirement is rooted in due-process concerns—'absent class members must be afforded adequate representation before entry of a judgment which binds them.'" *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (citation omitted). Courts engage in a dual inquiry to determine adequate representation and ask: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020 (citation omitted).

First, nothing in the record suggests the Settlement Class Representatives or Class Counsel have any conflicts of interests with other potential Class Members. The Court is satisfied that the

1   Settlement Class Representatives have adequately represented Class Members' interests

2   throughout this litigation, including with regards to the related 2.0-liter diesel engine settlement

3   with Volkswagen, which has been finally approved, as well as the 3.0-liter diesel engine

4   settlement.  As the Court previously noted, "[t]he Settlement Class Representatives affirm they

5   'and Class Members are entirely aligned in their interest in proving that Volkswagen misled them

6   and share the common goal of obtaining redress for their injuries.'  The Court finds no reason to

7   believe otherwise."  (Dkt. No. 1698 at 18) (internal citation omitted).)

8           Second, the Court is satisfied that the Settlement Class Representatives and Class Counsel

9   have and will continue to vigorously prosecute this action on behalf of the class.  The Settlement

10  Class Representatives have actively participated in this litigation by providing Class Counsel with

11  factual information concerning the purchase or lease of their Eligible Vehicle, which assisted in

12  the drafting of the complaint.  (*See* Dkt. No. 2838 at 28.)  The Settlement Class Representatives

13  also submitted detailed verified Plaintiff Fact Sheets during discovery, provided relevant

14  documents and information, assisted in the preparation of discovery responses, and communicated

15  regularly with Class Counsel.  (*Id.*)

16          Finally, there are no doubts regarding Class Counsel's adequacy.  As the Court previously

17  stated with regards to the 2.0-liter engine settlement:

18              The Court appointed Lead Plaintiffs' Counsel and the 21 PSC
                members after a competitive application process, during which the
19              Court received approximately 150 applications.  They are qualified
                attorneys with extensive experience in consumer class action
20              litigation and other complex cases.  The extensive efforts undertaken
                thus far in this matter are indicative of Lead Plaintiffs' Counsel's
21              and the PSC's ability to prosecute this action vigorously.   The Court
                therefore finds the Settlement Class Representatives and Class
22              Counsel are adequate representatives.

23  (Dkt. No. 1698 at 18.)

24          **B.      Rule 23(b)(3)**

25          A class action may be maintained under Rule 23(b)(3) when "the court finds [1] that the

26  questions of law or fact common to class members predominate over any questions affecting only

27  individual members, and [2] that a class action is superior to other available methods for fairly and

28  efficiently adjudicating the controversy[.]"  Fed. R. Civ. P. 23(b)(3).  "Rule 23(b)(3)'s

United States District Court
Northern District of California

predominance criterion is even more demanding than Rule 23(a)." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013).  The Rule 23(b)(3) "analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3)." *Hanlon*, 150 F.3d at 1022. Instead, "[t]he 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation'" and requires "courts to give careful scrutiny to the relation between common and individual questions in a case." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted).  Predominance is found "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication[.]" *Hanlon*, 150 F.3d at 1022 (internal quotations omitted).

This case meets Rule 23(b)(3)'s predominance requirement.  Plaintiffs allege that Bosch and Volkswagen perpetrated the same fraud in the same manner against all Class Members.  If the Court were to find that Bosch and Volkswagen have indeed engaged in a deceptive and fraudulent scheme, such a finding would apply to all of the Class Members' claims.  Plaintiffs also allege a common and unifying injury, as their and other Class Members' injuries arise solely from Bosch's and Volkswagen's use of the defeat device.  As such, the Court finds predominance is met.

The superiority test is also satisfied.  This inquiry "requires the court to determine whether maintenance of this litigation as a class action is efficient and whether it is fair." *Wolin*, 617 F.3d at 1175-76.  If Class Members were to bring individual lawsuits against Bosch, each Member would be required to prove the same wrongful conduct to establish liability and thus would offer the same evidence.  Given that Class Members number in the hundreds of thousands, there is the potential for just as many lawsuits with the possibility of inconsistent rulings and results.  Thus, classwide resolution of their claims is clearly favored over other means of adjudication, and the proposed Settlement resolves Class Members' claims at once.  As such, class action treatment is superior to other methods and will efficiently and fairly resolve the controversy.

\*   \*   \*

In sum, Plaintiffs satisfy the Rule 23(a) and (b)(3) requirements.  The Court therefore certifies the proposed Settlement Class for settlement purposes.

**II.      Preliminary Fairness Determination**

The Ninth Circuit has identified eight factors courts should consider to determine whether

a settlement agreement is fair, adequate, and reasonable:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citation omitted).

Courts must examine "the settlement taken as a whole, rather than the individual component parts"

for fairness. *Hanlon*, 150 F.3d at 1026. Courts cannot "delete, modify or substitute certain

provisions" of the settlement. *Id.* (internal quotations omitted).

But where, as here, the parties negotiate a settlement before a class has been certified,

"courts must peruse the proposed compromise to ratify both the propriety of the certification and

the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Pre-class

certification settlements "must withstand an even higher level of scrutiny for evidence of collusion

or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the

court's approval as fair." *Bluetooth*, 654 F.3d at 946 (citation omitted). This heightened scrutiny

"ensure[s] that class representatives and their counsel do not secure a disproportionate benefit 'at

the expense of the unnamed plaintiffs who class counsel had a duty to represent.'" *Lane v.*

*Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (citation omitted). Thus, courts must evaluate

the settlement for evidence of collusion. *Id.*

Because "[c]ollusion may not always be evident on the face of a settlement, . . . courts

therefore must be particularly vigilant not only for explicit collusion, but also for more subtle

signs that class counsel have allowed pursuit of their own self-interests and that of certain class

members to infect the negotiations." *Bluetooth*, 654 F.3d at 947. In *Bluetooth*, the Ninth Circuit

identified signs of subtle collusion including, but not limited to:

> (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded, (2) when the parties negotiate a

14

> "clear sailing" arrangement providing for the payment of attorneys'
> fees separate and apart from class funds, which carries "the potential
> of enabling a defendant to pay class counsel excessive fees and costs
> in exchange for counsel accepting an unfair settlement on behalf of
> the class"; and (3) when the parties arrange for fees not awarded to
> revert to defendants rather than be added to the class fund[.]

*Id.* (internal quotations and citations omitted).

Courts need not assess all of these fairness factors at the preliminary approval stage. *See Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008). Rather, "the preliminary approval stage [is] an 'initial evaluation' of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties." *In re High-Tech Employee Antitrust Litig.*, No. 11-CV-2509-LHK, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013) (citation omitted). At this stage, "[p]reliminary approval of a settlement is appropriate if 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'" *Ruch v. AM Retail Grp., Inc.*, No. 14-CV-05352-MEJ, 2016 WL 1161453, at *7 (N.D. Cal. Mar. 24, 2016) (citation omitted). Ultimately, "[t]he initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

## A.     Settlement Process

"The first factor the Court examines is the means by which the parties arrived at settlement." *Sciortino v. PepsiCo, Inc.*, No. 14-CV-00478-EMC, 2016 WL 3519179, at *4 (N.D. Cal. June 28, 2016). Preliminary approval is appropriate if the proposed settlement is the product of serious, informed, non-collusive negotiations. The Settlement is the end result of such negotiations. Class Counsel received and analyzed "voluminous discovery material" (Dkt. No. 2838 at 21), which allowed them to make a well-informed assessment of the merits of the Class' claims and to determine whether Volkswagen's offers adequately compensates Class Members for their injuries. The Settlement is also the result of arm's-length negotiations by experienced Class Counsel and thus is "entitled to 'an initial presumption of fairness.'" *In re High-Tech Empl.*, 2013 WL 6328811, at *1 (citation omitted). Moreover, Class Counsel negotiated the Settlement

alongside government entities, including the EPA and the FTC.  (*See* Dkt. No. 2838 at 21.)  While those entities are not technically parties to the Settlement, their coordination with Class Counsel and support of the Settlement weigh in favor of granting preliminary approval.

Further, the parties negotiated the Settlement under the supervision of the court-appointed Settlement Master.  While "the mere presence of a neutral mediator, though a factor weighing in favor of a finding of non-collusiveness, is not on its own dispositive of whether the end product is a fair, adequate, and reasonable settlement agreement[,]" *Bluetooth*, 654 F.3d at 948, on balance, the Settlement Master's guidance coupled with informed dialogues and the intensive involvement of government entities suggests the parties reached the Settlement after serious, informed, non-collusive negotiations.  This factor weighs strongly in favor of preliminary approval.

### B.      The Presence of Obvious Deficiencies

The second consideration is whether the Settlement contains any obvious deficiencies. The Court finds no glaring concerns at this time, particularly in light of the *Bluetooth* factors.

The first *Bluetooth* factor asks (1) whether class counsel receive a disproportionate distribution of the settlement or (2) whether counsel are amply rewarded while the class receives no monetary distribution.  *Id.* at 947.  At this point, this factor is not problematic.  As the parties have not yet negotiated attorneys' fees, the Court cannot presently determine if the first situation exists, that is, whether the Settlement awards Class Counsel a disproportionate distribution of the settlement funds.  Further, the Court will make the final decision as to the amount of Class Counsel's compensation.  The second situation is also not present, as the Settlement provides for monetary compensation from the Bosch Settlement Fund to all Class Members.  (*See* Dkt. No. 2838 at 14-15.)  As such, there is no evidence of collusion under the first *Bluetooth* factor.

As for the second *Bluetooth* factor relating to the existence of any "clear sailing" arrangement, the parties have agreed that any fees that Bosch owes will be paid from the Bosch Settlement Fund. (Dkt. No. 2918 ¶ 11.1.)  As noted earlier, however, the parties have not agreed on an amount of attorneys' fees and costs.  (*Id.*)  Thus, as of now, there is no "clear sailing" agreement and this factor does not weigh against preliminary approval.

The Long Form Notice informs Class Members that Bosch will pay court-approved

United States District Court
Northern District of California

United States District Court
Northern District of California

1  attorneys' fees and costs and that their compensation will not be reduced by those expenses.  (Dkt.

2  No. 2918-1 at 10.)  It further advises Class Members that they will have opportunity to comment

3  on and/or object to the PSC's request for fees and costs.  (*Id.* at 15.)  The Settlement provides that

4  Class Counsel will submit their application for attorneys' fees and costs at the same time that they

5  move for final approval of the Settlement.[1]  (Dkt. No. 2918 ¶ 11.1.)  Class Members therefore will

6  have this information available when deciding whether to object to or opt out of the Settlement, a

7  decision that must be made by April 14, 2017.  Such additional information shall be made

8  available to interested Class Members on the Court's website as well as the Settlement Website.[2]

9  The third *Bluetooth* factor considers whether the settlement provides for funds not awarded

10  to revert to defendants.  *See Bluetooth*, 654 F.3d at 947.  There is no concern under this factor, as

11  any unpaid funds at the end of the Settlement Benefit Period will not revert to Bosch; rather, to the

12  extent it is not feasible or economically reasonable to distribute the remaining funds to Class

13  Members, such funds will be distributed through *cy pres* payments according to a distribution plan

14  and schedule submitted by Class Counsel and approved by the Court.  (*See* Dkt. No. 2918 ¶ 10.2.)

15  At this time, none of the *Bluetooth* factors are present, nor does the Court note any other

16  apparent problems with the Settlement.  The lack of any obvious deficiencies weighs in favor of

17  preliminary approval.

18  **C.      Preferential Treatment**

19  The third factor asks whether the Settlement provides preferential treatment to any Class

20  Member.  It does not.  Payments to Class Members are to be made in accordance with the

---

[1] That the amount of attorneys' fees and costs is still to be determined is not fatal to preliminary approval.  Rule 23(h), which governs attorneys' fees in class actions, does not require Class Counsel to move for its fee award at the preliminary approval juncture, or even upon seeking final approval.  *See* Fed. R. Civ. P. 23(h); *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 445 (3d Cir. 2016) ("[T]he separation of a fee award from final approval of the settlement does not violate Rule 23(h)[.]"); *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 910 F. Supp. 2d 891, 918 n.16 (E.D. La. 2012), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) (granting final approval where "parties had no discussions regarding fees other than the PSC's making clear that it would eventually file a request for attorneys' fees").  While Class Members must be given an opportunity to object to a request for fees, *see In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994-95 (9th Cir. 2010), they can be given that opportunity during or even after final approval.
[2] The Court's website concerning this MDL may be found at http://cand.uscourts.gov/crb/vwmdl.  The Settlement Website may be found at www.BoschVWSettlement.com.

1   distribution plan developed by the FTC, which is an independent government agency acting as an

2   independent third party to the litigation between Plaintiffs and Bosch.  (*See* Dkt. No. 2918 ¶ 4.4;

3   Dkt. No. 2838 at 14-16.)  Under the FTC's distribution plan, eligible Class Members receive

4   payments based on various objective criteria (e.g., 2.0-liter or 3.0-liter engines, owners or lessees,

5   etc.) that do not improperly favor one or more Class Members over others.  Further, the Settlement

6   does not provide an incentive award for the Settlement Class Representatives.  The Court is

7   satisfied the Settlement does not afford any Class Member preferential treatment and finds this

8   factor weighs in favor of preliminary approval.

9        **D.**    **Range of Possible Approval**

10        Under the fourth factor, courts determine whether a settlement falls within the range of

11   possible approval.  This requires courts to focus on "substantive fairness and adequacy" and

12   "consider plaintiffs' expected recovery balanced against the value of the settlement offer."

13   *Tableware*, 484 F. Supp. 2d at 1080.  As part of this assessment, courts must "estimate the

14   maximum amount of damages recoverable in a successful litigation and compare that with the

15   settlement amount."  *Harris*, 2011 WL 1627973, at *11 (internal quotations omitted).  In light of

16   the serious litigation risks identified by the PSC, coupled with the PSC's support for the

17   Settlement, the Court concludes that the calculated settlement payments to Class Members strike

18   an adequate balance between the litigation risks and Class Members' expected recovery.  (*See* Dkt.

19   No. 2838 at 19.)  This factor favors preliminary approval.

20                           *   *   *

21        For the reasons above, the proposed Settlement is fair, adequate, and reasonable.

22   **III.**    **Class Notice**

23        **A.**    **Method of Providing Notice**

24        For any class certified under Rule 23(b)(3), "the court must direct to class members the

25   best notice that is practicable under the circumstances, including individual notice to all members

26   who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  "[T]he express

27   language and intent of Rule 23(c)(2) leave no doubt that individual notice must be provided to

28   those class members who are identifiable through reasonable effort."  *Eisen v. Carlisle &*

United States District Court
Northern District of California

*Jacquelin*, 417 U.S. 156, 175 (1974).

The Class Notice Program will begin February 15, 2017.  (Dkt. No. 2838 at 37.)  The parties have selected, subject to the Court's approval, Epiq Systems, Inc. as the Notice Administrator.  (Dkt. No. 2918 ¶ 2.42.)  The Notice Administrator will send the Short Form Notice (*see* Dkt. No. 2918-2) in the form of postcards to all Class Members using the Class Member contact information that was gathered during the 2.0- and 3.0-liter Volkswagen settlements.  (Dkt. No. 2838-2 ¶¶ 13-16.)  The Long Form Notice will be mailed to all Class Members that request a copy; the Notice will also be made available for download or printing on the Settlement Website.  (*Id.* ¶ 17.)  Further, the Notice Administrator will email Class Members for whom a valid email address is available with a slightly modified version of the Long Form Notice.  (*Id.* ¶ 18.)

In light of the direct-mail and email notice efforts described above, along with the media notice previously done in 2016 for the 2.0-liter engine settlement and the concurrent media plan for the proposed 3.0-liter engine settlement, there will only be moderate supplemental paid media for the Bosch Settlement.  (*Id.* ¶ 20.)  Such paid media includes: (1) digital banner advertisements targeted specifically to Bosch Class Members; (2) sponsored search listings on the three most highly-visited Internet search enginges, Google, Yahoo! and Bing; and (3) a party-neutral informational release issued to approximately 4,200 print and broadcast and 5,500 online press outlets throughout the United States.  (*Id.* ¶¶ 21-26.)  Class Members will also be able to visit the Settlement Website (www.BoschVWSettlement.com) and call a toll-free telephone number to obtain information about and access the Settlement, the Long Form Notice, the complaint, and answers to frequently asked questions.  (*Id.* ¶¶ 27-29.)  The Notice Administrator will also establish a post office box to allow Class Members to contact the Claims Administrator by mail.  (*Id.* ¶ 30.)

The Court is satisfied that the Notice Program is adequate.  Direct mail provides individual notice to identifiable Class Members, as required by Rule 23(c)(2).  Class Members' names and addresses are readily identifiable, and there is nothing to suggest Class Members cannot be located through reasonable efforts.  Direct mail therefore serves as the best practicable method to notify

United States District Court
Northern District of California

19

United States District Court
Northern District of California

1  Class Members of this Settlement.  *See Hunt v. Check Recovery Sys., Inc.*, No. C05 04993 MJJ,

2  2007 WL 2220972, at *3 (N.D. Cal. Aug. 1, 2007) ("Delivery by first-class mail can satisfy the

3  best notice practicable when there is no indication that any of the class members cannot be

4  identified through reasonable efforts."), *aff'd sub nom. Hunt v. Imperial Merch. Servs., Inc.*, 560

5  F.3d 1137 (9th Cir. 2009).  The paid media campaign, Settlement Website, and toll-free telephone

6  number further ensure notice will reach Class Members.  The Court thus approves Plaintiffs'

7  proposed method of notice as it provides the best practicable notice that is reasonably calculated to

8  inform Class Members of this Settlement.

9      **B.**    **Contents of the Notice**

10      Rule 23(c)(2)(B) also requires the notice clearly and concisely state:

11          (i) the nature of the action; (ii) the definition of the class certified;
12          (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so
13          desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting
14          exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

15  Fed. R. Civ. P. 23(c)(2)(B).

16      The Long Form Notice and the Short Form Notice satisfy the elements of Rule

17  23(c)(2)(B).  (*See* Dkt. Nos. 2918-1, 2918-2.)  They provide a summary of the Settlement and

18  clearly explain how Class Members may object to or opt out of the Settlement, as well as how

19  Class Members may address the Court at the final approval hearing.  *See Churchill Vill., L.L.C. v.*

20  *Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it generally describes the

21  terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and

22  to come forward and be heard.").  The Long Form Notice further explains in question-and-answer

23  format the benefits provided under the Settlement, how Class Members receive benefits, and who

24  is a Class Member.  Furthermore, the Long Form Notice provides the names and contact addresses

25  of Lead Plaintiffs' Counsel and PSC members, and both Notices indicate additional information

26  about the Settlement can be found on the Settlement Website or by calling 1 (844) 305-1928.

27      **C.**    **Costs of Class Notice Program**

28      Bosch will bear all reasonable and necessary fees and costs of the Class Notice Program.

1   (Dkt. No. 2918 ¶ 8.2.)  Within five days of this Order, Bosch shall transfer or pay to the Notice

2   Administrator and the Claims Administrator an amount sufficient to cover the initial costs of the

3   Program.  (*Id.* ¶ 8.3.)

4                                              **CONCLUSION**

5           The Court finds that the proposed Settlement is the result of intensive, non-collusive

6   negotiations and is reasonable, fair, and adequate. The Court therefore GRANTS Plaintiffs'

7   motion for preliminary approval as follows:

8           1.       The proposed Settlement Class is conditionally certified pursuant to Federal Rules

9                    of Civil Procedure 23(a) and (b)(3) for settlement purposes.  The Settlement Class

10                   is defined as set forth in the Settlement (*see* Dkt. No. 2918 ¶ 2.17):

11                         all persons and entities who were eligible for membership in
12                         the combination of the classes as defined in the 2.0-liter
                           Class Action Settlement Agreement and the 3.0-liter Class
13                         Action Settlement Agreement, including Volkswagen
                           Settlement Opt Outs. The Class thus consists of:

14                         2.17.1. Eligible Owners, Eligible Sellers, and Eligible
15                         Lessees in the 2.0-liter Class Action Settlement Agreement,
                           and

16                         2.17.2. Eligible Owners, Eligible Former Owners, Eligible
17                         Lessees and Eligible Former Lessees in the 3.0-liter Class
                           Action Settlement Agreement.

18                         2.17.3. The following entities and individuals are excluded
19                         from the Class:

20                         (a) Bosch's officers, directors, and employees; and Bosch's
                           affiliates and affiliates' officers, directors, and employees;

21                         (b) Volkswagen; Volkswagen's officers, directors, and
22                         employees; and Volkswagen's affiliates and affiliates'
                           officers, directors, and employees;

23                         (c) any Volkswagen Franchise Dealer;

24                         (d) Judicial officers and their immediate family members and
25                         associated court staff assigned to this case; and

26                         (e) All those otherwise in the Class who or which timely and
                           properly exclude themselves from the Class as provided in
27                         this Class Action Settlement Agreement.

28          2.       The Settlement is preliminarily approved as fair, adequate, and reasonable pursuant

                                                      21

1    to Federal Rule of Civil Procedure 23(e).

2    3.    The Court appoints Elizabeth J. Cabraser and the 21 members of the PSC listed in

3          Pretrial Order No. 7 as Settlement Class Counsel.  (*See* Dkt. No. 1084.)

4    4.    The Court appoints and designates the individuals listed in Exhibit 1 to the motion

5          as Class Representatives for settlement purposes only.  (*See* Dkt. No. 2838-1.)

6    5.    The Court appoints Epiq Systems, Inc. as both the Claims Administrator and the

7          Notice Administrator to perform the duties set forth in the Settlement.

8    6.    Notice shall be provided in accordance with the Notice Program and this Order—

9          that is, beginning **February 15, 2017**.

10   7.    Class Members shall submit their objections or requests for exclusion by **April 14,**

11         **2017** in the manner set forth in the Settlement.

12   8.    Class Counsel shall file a motion for final approval and attorneys' fees by **March**

13         **24, 2017**, and any reply shall be filed by **April 28, 2017**.

14         The Court will hold a final fairness hearing to determine whether the settlement is fair,

15   reasonable, and adequate on **May 11, 2017 at 8:00 a.m.** in Courtroom 6, 450 Golden Gate

16   Avenue, San Francisco, California.  The deadline for Class Members to file a Notice of Intent to

17   Appear at final fairness hearing is **April 14, 2017**.

18         **IT IS SO ORDERED.**

19   Dated: February 16, 2017

20

21                                                    _____

22                                                    CHARLES R. BREYER
                                                      United States District Judge

23

24

25

26

27

28