UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION _____/ This Order Relates To: Dkt. No. 2175 _____/ | MDL No. 2672 CRB  (JSC) **ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS RELATING TO 2.0-LITER SETTLEMENT** |

This MDL consists of various actions brought by consumers, dealers, securities plaintiffs, and government agencies against Volkswagen based on its use of a defeat device—software designed to cheat emissions tests and deceive federal and state regulators—in nearly 600,000 Volkswagen-, Porsche-, and Audi-branded turbocharged direct injection ("TDI") diesel engine vehicles sold in the United States. With regards to the 2.0-liter TDI diesel vehicles, the parties submitted an Amended Consumer Class Action Settlement Agreement ("Settlement") on July 26, 2016 (Dkt. No. 1685), and the Court granted final approval of the Settlement on October 25, 2016 (Dkt. No. 2102). The Settlement established a Funding Pool of slightly more than $10 billion. (*See* Dkt. No. 1685 ¶ 2.42.) At the time of final approval, Class Counsel had not yet moved for their fees and costs, though they submitted a statement that they would seek no more than $324 million in fees and no more than $8.5 million in actual and reasonable out-of-pocket costs for expenses incurred through October 18, 2016. (*See* Dkt. No. 1730 at 2-3.)

Class Counsel has now submitted its application for $167 million in attorneys' fees and $8 million in costs. (Dkt. No. 2175.) Having considered the relevant briefing, including Class Members' objections, the Court GRANTS Class Counsel's motion. Class Counsel's requested fees, amounting to approximately 1.7% of the $10.033 billion Funding Pool established by the

Settlement, is an appropriate fee award in this case.  Further, Class Counsel's requested costs are reasonable.[1]

## DISCUSSION

Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  "Attorneys' fees provisions included in proposed class action agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is 'fundamentally fair, adequate and reasonable.'" *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003) (citation omitted).  Thus, even where attorneys' fees and costs are authorized by law or the parties' agreement in a certified class action, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).

In "common fund cases," a court has discretion to award attorneys' fees as either a percentage of such common fund or by using the lodestar method.[2] *See Staton*, 327 F.3d at 967-968.  The Ninth Circuit's "benchmark" for attorneys' fees in common fund class actions is 25% of the common fund.  *Id.* at 968.  "Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).  *Vizcaino* outlines a number of factors that courts may consider in setting an appropriate fee: (1) the results achieved; (2) the risks of litigation; (3) whether there are benefits to the class beyond the immediate generation of a cash fund; (4) whether the percentage rate is above or below the market rate; (5) the contingent nature of the

---

[1] Various Class Members' private attorneys—i.e., non-Class Counsel—have also submitted applications for fees and costs related to this MDL.  The Court will address the private attorneys' fee applications in a separate order.

[2] The Settlement's Funding Pool is not a traditional common fund from which settlement proceeds are to be paid; while the Funding Pool is capped at $10.033 billion, that number assumes 100% owner and lessee participation in the Settlement and thus may in fact be lower depending on actual Class Member participation.  (*See* Dkt. No. 1685 ¶ 2.42.)  Further, Volkswagen agreed to pay Plaintiffs' fees and costs in addition to the payments to the Class rather than from the fund created for payments to the Class.

1 representation and the opportunity cost of bringing the suit; (6) reactions from the class; and (7) a
2 lodestar cross-check. *Id.* at 1048-52.
3     Applying the relevant factors, the Court finds that the Settlement supports Class Counsel's
4 requested fees in the amount of $167 million and that Counsel's request for $8 million in costs is
5 reasonable.

**I.    Attorneys' Fees**

    **A.    Results Achieved**

Class Counsel achieved extraordinary results for Class Members and for the public as a whole. The results from the Settlement are particularly notable in light of the short time frame it took the parties to settle the 2.0-liter class action claims.

As to Class Members, the Settlement essentially makes Class Members whole, putting them in the position they were in prior to the public disclosure of Volkswagen's use of the illegal software defeat device and providing additional compensation on top. In particular, the Settlement provides restitution payments to each Class Member as well as the option for Class Members to (1) return their vehicles to Volkswagen for a buyback, in the case of owners, or terminate their leases, in the case of lessees, or (2) receive an emissions modification for their vehicles if such modification is approved by the Environmental Protection Agency ("EPA") and the California Air Resources Board ("CARB"). (*See* Dkt. No. 2102 at 6-7.) Compensation for buybacks, lease terminations, and restitution are to be drawn from a $10.033 billion Funding Pool. (*See* Dkt. No. 1685 ¶ 2.42.)

As for the general public, the DOJ Consent Decree requires Volkswagen to pay $2.7 billion to fully remediate any environmental effects of excess nitrous oxide (NOx) emissions and an additional $2.0 billion to create infrastructure for and promote public awareness of zero emission vehicles. (*See* Dkt. No. 1685 at 3.) While the Consent Decree is not itself part of the Settlement Agreement, the Court has recognized that the 2.0-liter Settlement and the settlements with the government entities are highly interrelated—that is, "part and parcel of an overall settlement." (Dkt. No. 2079 at 53.)

In short, Class Members and the public have benefited and will benefit as a result of Class

3

Counsel's work in this litigation.  This factor supports Class Counsel's fee request.

### B. Litigation Risk

While Volkswagen's liability is not contested here, the case was nevertheless complex and posed a significant risk of non-payment to Class Members and, by extension, Class Counsel.  The Court previously addressed the litigation risks that existed absent the Settlement:

> Plaintiffs assert that "should Settlement Class Counsel prosecute these claims against Volkswagen to conclusion, any recovery would come years in the future and at far greater expense to the environment and the Class." (Dkt. No. 1784 at 20.)  Plaintiffs also emphasize that prolonged litigation risks further environmental damage caused by the Eligible Vehicles. (Dkt. No. 1784 at 21; *see* Dkt. No. 2079 at 19:6-9.)
>
> \* \* \*
>
> There are also potential monetary risks associated with litigation. Despite their strong claims, Class Counsel "recognize there are always uncertainties in litigation[.]" (*Id.* at 19.)  It is possible that "a litigation Class would receive less or nothing at all, despite the compelling merit of its claims, not only because of the risks of litigation, but also because of the solvency risks such prolonged and expanding litigation could impose upon Volkswagen." (*Id.* at 20.)

(Dkt. No. 2102 at 17.)  Such monetary risks include that (1) any class recovery obtained at trial could be reduced through offsets and (2) Volkswagen could reasonably be expected to defend against the action, including by challenging fraudulent inducement, notice, and continued use. (*See id.* at 17-18.)  The Court finds that counsel assumed a good deal of risk in bringing this suit and thus this factor supports Class Counsel's requested fee amount.

### C. Non-Monetary Relief

In terms of non-monetary relief, the Settlement provides Class Members, as an alternative to a buy back or lease termination, the option of having their vehicles fixed to comply with emissions standards (if the EPA and CARB approve such a fix). (*See* Dkt. No. 1685 ¶ 4.3.)  To date, the EPA and CARB have approved a proposed emissions modification for Generation 3, 2.0-liter vehicles. (*See* Dkt. No. 2731.)  Other proposed emissions modifications are pending. (*See* Dkt. No. 2103-1 at 110.)  This non-monetary relief, if selected, allows Class Members to keep and drive the vehicle that they originally intended to purchase, which provides the added benefit of minimizing the potential waste associated with Volkswagen buying back vehicles that can no longer run on the road.  While recognizing that not all Eligible Vehicles will have an approved fix

4

1  and that not all Class Members will even elect such a fix, the Court nevertheless finds the

2  availability of such non-monetary relief is important and thus concludes that this factor supports

3  Class Counsel's fee application.

### D. Percentage Rate Relative to Market Rate

Using the Funding Pool's capped amount of $10.033 billion (which excludes the additional amounts to be paid under the Consent Decree) as an estimate of the Settlement's overall value, Class Counsel's requested fee amounts to approximately 1.7% of the Funding Pool. However, recognizing that there likely will not be 100% consumer participation, the Court notes that, even using a conservative estimate of 85% consumer participation (i.e., the rate below which Volkswagen will incur monetary penalties under the DOJ Consent Decree (*see* Dkt. No. 2103-1 at 71-72 ¶¶ 6.1, 6.3)), the Funding Pool's value is $8.528 billion and Class Counsel's $167 million fee is approximately 1.96% of that value. Both of these percentages are substantially lower than the percentage rates of fee awards in similar cases and well below the Ninth Circuit's 25% benchmark rate. (*See, e.g.*, Dkt. No. 2175-2 ¶ 14 ("[C]lass counsel's fee request would amount to only 1.1% of the total value of the settlement (excluding the unknown funds paid for notice and settlement administration) and only 1.7% of the value of the cash compensation available to the class. According to Table 1 [of the Fitzpatrick declaration], either percentage would make the fee request here the lowest one ever recorded in a bill[i]on-dollar class action case.").) This factor weighs in favor of the fee request.

### E. Contingent Nature of Representation and Opportunity Cost

Class Counsel brought this claim on a purely contingent basis, agreeing to advance all necessary expenses, knowing that they would receive a fee only if there was a recovery. It is an established practice to reward attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all. *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994). Such a practice encourages the legal profession to assume such a risk and promotes competent representation for plaintiffs who could not otherwise hire an attorney. *Id.* Moreover, Class Counsel had to turn down opportunities to work on other cases to devote the appropriate amount

United States District Court
Northern District of California

of time, resources, and energy necessary to handle this complex case. This factor supports Class Counsel's requested fee amount.

### F. Reactions from the Class

Only four Class Members[3] out of a class of approximately 475,000 objected to the proposed fee award. The Court considers this a strong, positive response from the class, supporting Class Counsel's requested fees. Moreover, the Court has reviewed the objections and concludes that the requested fees are reasonable and fair.

First, Comlish objects to the fee award because, according to him, "there is virtually no evidence that class counsel provided any class benefit beyond what government-negotiated consent decrees would have provided anyway." (Dkt. No. 2518 at 13.) Comlish made this same objection in opposing final approval of the Settlement and the Court overruled his objection:

> Comlish erroneously claims the Settlement offers nothing more than what is required by the United States' Partial Consent Decree and the FTC's Partial Consent Order. Simply put, none of the agreements can be viewed in a vacuum and none can function without the others . . . . [I]f the Partial Consent Decree were to operate without the Settlement, the cars would be removed from the roads, but Class Members would not be entitled to any compensation for their losses. Undoubtedly, Class Members would have little incentive to give back or fix their cars if they received nothing in return. On the other hand, if the Settlement were to stand alone, Class Members could receive a Buyback or Fix and Restitution, but Volkswagen would have little motivation buy back or fix as many cars as possible. The Partial Consent Decree's penalties for failing to meet the Recall Rate ensure Volkswagen will attempt to buy back or fix as many Eligible Vehicles as possible. *Thus, the Settlement does not fail to provide additional benefits as Comlish argues—far from it.* In fact, the Settlement provides the benefits necessary to encourage Class Members to ensure the polluting vehicles are removed from the road, but these benefits can only be successful with the implementation of the Partial Consent Decree and the Partial Consent Order. Accordingly, the Court overrules Comlish's objection.

(Dkt. No. 2102 at 25 (emphasis added).) The Court overrules this objection for the same reasons. Class counsel provided enormous benefit to the Class, and did so in an unprecedentedly speedy

---

[3] Matthew Comlish submitted written objections. (Dkt. No. 2518.) Jolian Kangas submitted written objections and also separately joined in Comlish's objections. (Dkt. Nos. 2479, 2534.) Marcia Weese and Rudolf Sodamin filed notices of joinder in Comlish's objections. (Dkt. Nos. 2537, 2538.)

6

fashion.

Second, Comlish and Kangas each object to the fee application as indicating collusion between Volkswagen and Class Counsel, including because (1) Volkswagen has agreed not to oppose the fee application, resulting in an *ex post facto* "clear sailing" agreement, and (2) attorneys' fees not awarded to Class Counsel improperly revert to Volkswagen. (*See, e.g.*, Dkt. No. 2479 at 2-4.) As to point (1), Volkswagen's agreement not to oppose the application does not evidence collusion and was not obtained by Class Counsel to Class Members' detriment. As the Court noted previously, no attorneys' fees negotiations occurred prior to the parties' reaching a settlement in the case and thus Volkswagen did not attempt to secure a lower settlement value by agreeing to pay more money to Class Counsel. (*See* Dkt. No. 1685 ¶ 11.1.) Furthermore, any awarded fees will be paid by Volkswagen separate and distinct from the Funding Pool created for the benefit of Class Members. (*Id.*) As to point (2), the Court is not persuaded that any reversionary fees exist, as the objectors contend. Although Class Counsel submitted a statement that they would seek no more than $324 million in fees, there is nothing in the Settlement—or anywhere else in the record—suggesting that Class Counsel would be entitled to the full amount or that Volkswagen was required to set aside that amount for the benefit of Class Members. To the contrary, Class Members' benefits come separately from the Funding Pool—and not from any amount related to Class Counsel's fees.

Third, Comlish objects that Class Counsel breached its fiduciary duty by failing to control costs and thus improperly enlarging the lodestar amount. (Dkt. No. 2518 at 24.) The Court has reviewed the fee application and determines that the amount of work for which Class Counsel seeks compensation is reasonable, especially in light of the large amount of work necessary to settle the 2.0-liter action in such a short amount of time. As the Court has repeatedly noted, Class Counsel "are qualified attorneys with extensive experience in consumer class action litigation and other complex cases" (Dkt. No. 1698 at 18), and there is no indication that Class Counsel sought to artificially inflate their hours to justify the lodestar amount.

### G. Lodestar Cross-Check

A lodestar cross-check also supports the reasonableness of Class Counsel's requested fees.

1  Class Counsel expended approximately 98,000 hours while litigating and settling this claim as
2  well as implementing the Settlement. (*See* Dkt. No. 2786 at 11; Dkt. No. 2175-1 ¶ 14.) Further,
3  as of the filing of the instant fee application in November 2016, Class Counsel reserved an
4  additional 21,000 hours to "(1) guide the hundreds of thousands of Class Members through the
5  remaining 26 months of the Settlement Claims Period; (2) assist in the implementation and
6  supervision of the Settlement, including by participating in the Claims Review Committee, as
7  outlined in the Final Approval Order (Dkt. No. 2102 at 46); and (3) defend and protect the
8  Settlement on appeal, among other things." (Dkt. No. 2175-1 ¶ 15; *see also id.* ¶ 16.) The
9  blended average hourly billing rate is $529 per hour for all work performed and projected, with
10  billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490
11  for paralegals. (*Id.* ¶ 17.) Using the hours and average billing rate, the lodestar amounts to
12  roughly $63.5 million, and the resulting lodestar multiplier is 2.63 (*id.* ¶ 14),[4] which is more than
13  reasonable given the complexities of this case and the extraordinary result achieved for the Class.
14  *See, e.g.*, *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers
15  in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation.").[5]

---

[4] The Court has been informed that the lodestar calculations for the fee applications in the 2.0-liter and franchise dealer settlements inadvertently include approximately $1.5 million in fees for work performed by Hagens Berman attributable to both settlements, which Hagens Berman calls "hybrid time." (*See* Dkt. No. 2963 ¶¶ 6-8.) To avoid double counting such hybrid time, Hagens Berman has indicated that it prefers to be paid for the hybrid time through its fee application in the franchise dealer settlement. In other words, $1.5 million would be shifted away from the lodestar amount for the 2.0-liter settlement. According to Plaintiffs' Lead Counsel, adjusting the 2.0-liter fee application to exclude the $1.5 million for Hagens Berman's hybrid time would result in a lodestar amount of $62 million and a multiplier of 2.69. (*See* Dkt. No. 3005 ¶¶ 7-8.) Volkswagen opposes such an adjustment, arguing that Hagens Berman's hybrid time should be included in the 2.0-liter application because "Volkswagen agreed not to oppose the PSC's November 8, 2016 fee request for $175 million in the 2.0-Liter Litigation on the express understanding that the PSC's application, if granted, would constitute the 'full and final payment for any and all attorneys' fees and costs owed to Participating Counsel in connection with work performed in the 2.0-liter litigation against Volkswagen.'" (Dkt. No. 3008 at 5.) Volkswagen further asserts that Hagens Berman should not be permitted to shift its hybrid time in an effort to lower the resulting lodestar multiplier in the franchise dealer fee application. (*Id.* at 7.) The Court agrees that Hagens Berman's hybrid time is properly accounted for in the 2.0-liter fee application and thus Plaintiffs' Lead Counsel shall pay Hagens Berman from the $167 million awarded in fees. The remainder of Hagens Berman's time shall be addressed in the franchise dealer fee application.

[5] Comlish also objected to the information provided in support of Class Counsel's lodestar amount as inadequate. (*See* Dkt. No. 2518 at 30-31.) The Court overrules this objection, however, as "it is well established that '[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean counting . . . [courts] may rely on summaries submitted by the attorneys and

8

**II.     Litigation Expenses**

Class Counsel seeks reimbursement of $8 million in reimbursable expenses, consisting of $7,192,794.28 in costs already incurred and $807,205.72 in anticipated future costs associated with implementing the Settlement.  (*See* Dkt. No. 2175 at 20; Dkt. No. 2175-1 ¶¶ 18-19.)  The Court finds that such expenses are reasonable and that the reimbursement of such expenses is appropriate.

## CONCLUSION

For the reasons stated above, the Court GRANTS Class Counsel's motion for attorneys' fees and costs relating to the 2.0-liter settlement.  Class Counsel shall be awarded $167 million in attorneys' fees and $8 million in costs.

**IT IS SO ORDERED.**

Dated: March 17, 2017

_____
CHARLES R. BREYER
United States District Judge

---

need not review actual billing records.'"  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015) (citation omitted).  Further, Class Counsel has provided information consistent with the Court's Pretrial Order No. 11.  (*See* Dkt. No. 1254.)

9