Steve W. Berman (*Pro Hac Vice*)
Thomas E. Loeser (SBN 202724)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite #3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
toml@hbsslaw.com

Richard N. Sox (*Pro Hac Vice*)
BASS SOX MERCER
2822 Remington Green Circle
Tallahassee, FL 32308
Telephone: (850) 878-6404
Facsimile: (850) 942-4869
rsox@dealerlawyer.com

*Co-Lead Counsel for Plaintiff J. Bertolet, Inc.
and the Dealer Settlement Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: VOLKSWAGEN 'CLEAN DIESEL' MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>*Napleton Orlando Imports, LLC et al. v. Volkswagen Group of America, Inc. et al.*, Case No. 3:16-cv-02086-CRB | MDL No. 02672-CRB (JSC)<br><br>**SUPPLEMENTAL DECLARATION OF BRIAN T. FITZPATRICK IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**<br><br>Hearing: TBD<br>Time: TBD<br>Court: 6, 17th Floor<br><br>The Honorable Charles R. Breyer |

010584.11 946686 V1

1    I, BRIAN T. FITZPATRICK, declare as follows:

2    1.   I submitted a declaration in support of class counsel's fee motion in this case. Class counsel have asked me to submit this supplemental declaration to address points made by the defendants in opposition to their motion.[1]

3    2.   Both parties agree that the court has discretion to award fees under either the percentage method or the lodestar method. I continue to believe that the court should exercise that discretion to use the percentage method.

4    3.   To begin with, and simply put: the lodestar method is almost never used in class action cases anymore outside of fees that are awarded pursuant to fee-shifting statutes or settlements that involve only injunctive relief. I examined the fee awards following every single class action settlement in federal court in 2006 and 2007. That was 688 class action settlements. The lodestar method was used only 12% of the time, and usually only when a fee-shifting statute had been triggered or the settlement was comprised of injunctive relief. *See* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical L. Stud. 811, 832 (2010). The other major study of fee awards agrees. Ted Eisenberg and Geoff Miller examined hundreds of settlements from 1993 through 2008, and they found the lodestar method used only 9.6% of the time. *See* Theodore Eisenberg & Geoffrey P. Miller, *Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008*, 7 J. Empirical L. Stud. 248, 267 (2010). Professor Miller and a new co-author (Professor Eisenberg has sadly passed away) have posted an

---

[1] The defendants argued that I do not qualify as an expert under the Federal Rules of Evidence. I have submitted declarations in dozens of class action fee matters in my years as a professor at Vanderbilt, and never before has anyone argued that I did not qualify as an expert. My declarations here seek to assist the court on two matters that I have spent years researching as an academic: what does the data say courts award in fees in class action cases and what does economic analysis suggest courts should award as fees. *See, e.g.,* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical L. Stud. 811 (2010); Brian T. Fitzpatrick, *Do Class Action Lawyers Make Too Little?*, 158 U. Pa. L. Rev. 2043 (2010). As I noted in my initial declaration, this research has been relied upon by dozens of courts when they awarded fees in class actions. I will leave it to the court here to decide for itself whether it finds my declarations helpful.

SUPP. DECL. OF BRIAN T. FITZPATRICK
ISO MOTION FOR ATTORNEYS' FEES                - 1 -
Case No. 02672-CRB (JSC)
010584.11 946686 V1

update to this study online that examines settlements through 2013.  *See* Ted Eisenberg, Geoff Miller & Roy Germano, *Attorneys' Fees in Class Actions: 2009-2013*, *available at* https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2904194.  Although it has not yet been published, it is worth inspecting to see if the lodestar method has made a comeback in recent years.  It has not.  The lodestar method is used less frequently now than ever before: only 6.29% of the time.  *See id.* at 7.

4. That this is a constructive common fund settlement as opposed to common fund settlement does not change the fact that the court has discretion to use either the percentage method or the lodestar method.  As far as I am aware, no empirical study has ever tracked the relative popularity of the percentage and lodestar methods specifically in constructive common fund cases.  But this is because I have never seen it argued that the constructive nature of the common fund made any difference to the court's discretion on fees.  The purpose of constructing the common fund is not to protect defendants; it is to protect class members.  Courts construct common funds to ensure that class counsel and defendants do not evade by agreement the courts' scrutiny over class counsel's fees.  *See, e.g.*, *Lobatz v. U.S. W. Cellular of California, Inc.*, 222 F.3d 1142, 1148 (9th Cir. 2000) ("Such an agreement has the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class.").  The entire point of the exercise to ensure that attorneys' fees by agreement are *functionally equivalent* to attorneys' fees that would come out of a common fund.  *See, e.g.*, *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995) ("Although . . . the fee was a separate agreement, thus superficially resembling the separate awards in statutory fee cases, private agreements to structure artificially separate fee and settlement arrangements cannot transform what is in economic reality a common fund situation into a

statutory fee shifting case."). Thus, if a court would use the percentage method in a common fund case, it uses the percentage method in a constructive common fund case, too.

5. Consider, for example, the recent BP oil spill settlement. There was no fixed pot of money in the BP settlement; rather, class members were paid per claim. Like here, the defendant agreed to pay attorneys' fees on top of whatever was paid to the class. Yet, the court there did not hesitate to use the percentage method. *See In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on Apr. 20, 2010*, 2016 WL 6215974, at *15 (E.D. La. Oct. 25, 2016).

6. In my opinion, the court should apply the percentage method here, too. My reason is the same reason why the vast majority of courts in this situation choose to apply the percentage method: because we want class action lawyers to believe that their compensation will depend on how much they recover for the class rather than how many hours they work. What will happen if lawyers believe they will get paid by the hour rather than by how much they recover? Economic analysis tells us: the settlements will take a lot longer to come by and they won't come to nearly as much money for the class. This would be bad for everyone involved (except for defendants). Although it is true it is too late to affect class counsel's incentives in this case, every time a court eschews the percentage method for the lodestar method after a case is over, it makes class counsel wonder whether they should pay more attention to their hours in the next case.

7. It is true that, about half the time, courts crosscheck the percentage method with class counsel's lodestar. *See* Fitzpatrick, *An Empirical Study, supra,* at 833. (The other half of the time, they do not examine the lodestar at all.) In my opinion, it is folly to do a crosscheck because it ends up making class counsel worry about their time rather than their recovery in the exact same way using the lodestar method does. I used economic analysis to give an example in my opening declaration and I will not repeat it here. But there are other reasons why, in my opinion, courts should not use the lodestar crosscheck. Two of them are apparent from this very case. First, even

SUPP. DECL. OF BRIAN T. FITZPATRICK
ISO MOTION FOR ATTORNEYS' FEES        - 3 -
Case No. 02672-CRB (JSC)
010584.11 946686 V1

though the lodestar crosscheck is only supposed to be a rough, back-of-the-envelope calculation, litigants cannot help but spawn contentious satellite litigation over how to calculate class counsel's lodestar. The percentage method was supposed to get us away from all that; yet, as we see, the lodestar crosscheck has put us right back in the thick of it. Second, in many cases, it is not even possible to accurately calculate a relevant rough, back-of-the-envelope lodestar. In a sprawling MDL like this one, with various classes of plaintiffs, various defendants, and multiple settlements, who can say who's hours contributed how much to which settlement? No matter what the time-entry codes say, the reality is that everything is interconnected. This is why the court in the BP oil spill litigation has never even attempted to separate time spent on one settlement from another; instead, when the court has had to perform the lodestar crosscheck, it compared a running tab of *all* the attorneys' fees it had awarded in the MDL to a running tab of *all* the common benefit time that had been logged in MDL. *See In Re: Oil Spill,* 2016 WL 6215974, at *19-20; *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on Apr. 20, 2010*, Nos. 12-970, 15-4143, 15-4146 (E.D. La. Feb. 15, 2017) p. 47 ("Viewing the BP Settlements together with the HESI and Transocean Settlements is . . . more relevant when the Court is conducting its lodestar cross-check."). If that were done in this case, the resulting multiplier would be about 3.7x—well within any court's acceptable range.

8. I understand the temptation to do the lodestar crosscheck. When class action lawyers generate significant returns on their time—what some people, in hindsight, call "windfalls"—it invites public and media scrutiny. But when other entrepreneurs and investors succeed in their ventures, no one asks them: How many hours did you spend on this venture? What effective hourly rate did you earn? Should we take some of it away from you because it is "too high"? Class action lawyers are entrepreneurs and investors just like any others. In my opinion, courts should not bow to the pressure and ask these questions of them, either. Courts

SUPP. DECL. OF BRIAN T. FITZPATRICK
ISO MOTION FOR ATTORNEYS' FEES                - 4 -
Case No. 02672-CRB (JSC)
010584.11 946686 V1

should only ask what is best for class counsel's incentives vis-à-vis class members. For example, at the outset of this litigation, would class members have objected to paying class counsel 2% of whatever the class recovered here? Or would the class have thought that was a good way to spur class counsel on? We do not have to guess at the answer: despite ample opportunity to do so, even in hindsight not a single class member has objected to this fee request.

9. If the court does choose to do the lodestar crosscheck, it should know that the lodestar multiplier that would result here is high,[2] but it is hardly unprecedented. *See, e.g.*, *Americas Mining Corp. v. Theriault*, 51 A.3d 1213, 1252 (Del. 2012) (awarding fees of 15% of $2 billion, resulting in 66 multiplier);[3] *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, 2005 WL 1213926, at *18 (E.D.Pa. May 19, 2005) (20% of $100 Million resulting in 15.6 multiplier); *In re Doral Financial Corp. Securities Litigation*, No. 05-cv-04014-RO (S.D.N.Y. Jul. 17, 2007) (15.25% of $130 million resulting in 10.26 multiplier).

10. For all these reasons, I continue to believe the fee award requested here is within the range of reasonable awards.

11. My compensation for this declaration was $795 per hour.

Executed this 23rd day of March, 2017, at Nashville, Tennessee.

_____
BRIAN T. FITZPATRICK

---

[2] In my empirical study, I found that the lodestar crosscheck multipliers ranged from .07 to 10.3, with a mean of 1.65 and a median of 1.34. *See* Fitzpatrick, *Empirical Study, supra,* at 834. As I noted, however, these numbers may be affected by a selection effect: class counsel may be more eager to submit their lodestar to the court when their lodestar multiplier is low; thus, the lodestar multipliers that we know about may be lower than the lodestar multipliers in all cases. *See id.* at n.80.

[3] In my declaration in the 2.0-liter consumer settlement, I included a table of all known billion-dollar class action settlements. Although I did not clearly state it there, the table was intended to include only federal settlements. I did not list state court billion-dollar class action settlements, such as the one I cite here, because I have not studied state court settlements in the same way I have federal court settlements and do not have a comprehensive list of such settlements.

SUPP. DECL. OF BRIAN T. FITZPATRICK
ISO MOTION FOR ATTORNEYS' FEES         - 5 -
Case No. 02672-CRB (JSC)
010584.11 946686 V1

**CERTIFICATE OF SERVICE**

I hereby certify that on March 23, 2017, I electronically transmitted the foregoing document to the Court Clerk using the ECF System for filing. The Clerk of the Court will transmit a Notice of Electronic Filing to all ECF registrants.

                              */s/ Steve W. Berman*
                              STEVE W. BERMAN