Elizabeth J. Cabraser (State Bar No. 083151)
ecabraser@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Plaintiffs' Lead Settlement Class Counsel
*(Plaintiffs' Settlement Counsel
Listed on Signature Page)*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>ALL CONSUMER AND RESELLER ACTIONS | MDL 2672 CRB (JSC)<br><br>**PLAINTIFFS' NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF THE BOSCH CLASS ACTION SETTLEMENT**<br><br>Hearing:  May 11, 2017<br>Time:  8:00 a.m.<br>Courtroom:  6, 17th floor<br><br>The Honorable Charles R. Breyer |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................ vii

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................... 1

I.     INTRODUCTION ....................................................................................................... 1

II.    BACKGROUND AND PROCEDURAL HISTORY ..................................................... 2

    A.     Factual Background .......................................................................................... 3

    B.     Procedural History ........................................................................................... 3

III.   TERMS OF THE BOSCH CLASS SETTLEMENT ..................................................... 7

    A.     The Settlement Class Definition ....................................................................... 7

    B.     Benefits to Settlement Class Members ............................................................. 7

    C.     Attorneys' Fees ................................................................................................ 9

IV.    THE BOSCH SETTLEMENT MERITS FINAL APPROVAL .................................... 9

    A.     The Class Action Settlement Process ............................................................... 9

    B.     The Settlement Meets the Ninth Circuit's Standards for Final Approval. .............. 10

    C.     The Settlement Is Substantively Fair Because it Provides Significant Benefits in Exchange for the Compromise of Plaintiffs' Claims. ............................................... 12

    D.     The Settlement Is Procedurally Fair as the Product of Good Faith, Informed, and Arm's-Length Negotiations. .................................................................................... 14

    E.     Class Member Reaction to the Settlement Has Been Favorable. ........................... 16

V.     THE COURT SHOULD CONFIRM THE CERTIFICATION OF THE BOSCH SETTLEMENT CLASS. ........................................................................................... 17

    A.     The Class Meets the Requirements of Rule 23(a) ............................................. 18

        1.     The Class Is Sufficiently Numerous. ..................................................... 18

        2.     There Are Common Questions of Both Law and Fact. ............................ 18

        3.     The Settlement Class Representatives' Claims Are Typical of Other Class Members' Claims. ............................................................................ 21

        4.     The Settlement Class Representatives and Settlement Class Counsel Fairly and Adequately Protect the Interests of the Settlement Class. ...................... 22

            a.     The Interests of the Settlement Class Representatives Are Directly Aligned with those of the Absent Class Members and the Settlement Class Representatives Have Diligently Pursued the Action on Their Behalf. ......................................................................... 23

            b.     Settlement Class Counsel Are Adequate Representatives of the Settlement Class. .......................................................................... 24

    B.     The Requirements of Rule 23(b)(3) Are Met .................................................... 25

        1.     Common Issues of Law and Fact Predominate. ...................................... 25

        2.     Class Treatment Is Superior in This Case. .............................................. 27

**TABLE OF CONTENTS**
**(continued)**

Page

VI.     THE APPROVED NOTICE PROGRAM GAVE THE BEST PRACTICABLE NOTICE
        TO CLASS MEMBERS AND SATISFIED RULE 23 AND DUE PROCESS. .............. 29

VII.    CONCLUSION ............................................................................................................... 32

# TABLE OF AUTHORITIES

Page

## CASES

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) ........................................................................................ 17, 26

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
133 S. Ct. 1184 (2013) .......................................................................................... 19

*Butler v. Sears, Roebuck & Co.*,
702 F.3d 359 (7th Cir. 2012) ................................................................................. 25

*Chun-Hoon v. McKee Foods Corp.*,
716 F. Supp. 2d 848 (N.D. Cal. 2010) .................................................................. 17

*Churchill Vill., L.L.C. v. GE*,
361 F.3d 566 (9th Cir. 2004) ................................................................................. 16

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ............................................................................... 10

*Clemens v. Hair Club for Men, LLC*,
No. C 15-01431 WHA, 2016 WL 1461944 (N.D. Cal. April 14, 2016) .......................... 23, 24

*Cohen v. Trump*,
303 F.R.D. 376 (S.D. Cal. 2014) ........................................................................... 19

*Cty. of Suffolk v. Long Island Lighting Co.*,
907 F.2d 1295 (2d Cir. 1990) ................................................................................ 14

*Ellis v. Naval Air Rework Facility*,
87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ..................... 11

*Estrella v. Freedom Fin'l Network*,
No. C 09-03156 SI, 2010 WL 2231790 (N.D. Cal. June 2, 2010) ......................... 19

*Evon v. Law Offices of Sidney Mickell*,
688 F.3d 1015 (9th Cir. 2012) ......................................................................... 21, 22

*Friedman v. 24 Hour Fitness USA, Inc.*,
No. CV 06-6282 AHM (CTx), 2009 WL 2711956 (C.D. Cal. Aug. 25, 2009) ..................... 26

*Garner v. State Farm Mut. Auto. Ins. Co.*,
No. C 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .......................... 17

*Glass v. UBS Fin. Serv., Inc.*,
No. C-06-4068-MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ..................... 17

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ......................................................................... passim

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ................................................................................. 21

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ................................................................................. 15

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
No. C-07-5944-SC, 2016 U.S. Dist. LEXIS 9944 (N.D. Cal. Jan. 6, 2016), *report and recommendation adopted*, 2016 U.S. Dist. LEXIS 9766 (N.D. Cal. Jan. 26, 2016) ........................................................................................................................ 26

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Celera Corp. Sec. Litig.*,
  No. 5:10-CV-02604-EJD, 2014 WL 722408 (N.D. Cal. Feb. 25, 2014) ............................... 20

*In re First Alliance Mortg. Co.*,
  471 F.3d 977 (9th Cir. 2006)........................................................................................ 25

*In re Netflix Priv. Litig.*,
  No. 5:11-CV-00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013)............................ 32

*In re Rambus Inc. Derivative Litig.*,
  No. C-06-3515–JF, 2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ........................................... 10

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008)......................................................................................... 10

*In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act
  (FACTA) Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014)................................................... 31

*In re Transpacific Passenger Air Transp. Antitrust Litig.*,
  No. C 07-05634 CRB, 2015 WL 3396829 (N.D. Cal. May 26, 2015) ................................. 26

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
  No. 2672 CRB (JSC), 2016 WL 4010049 (N.D. Cal. July 26, 2016).......................... passim

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
  No. MDL 2672 CRB (JSC), 2017 WL 672727 (N.D. Cal. Feb. 16, 2017).................... passim

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
  No. MDL 2672 CRB (JSC), 2017 WL 672820 (N.D. Cal. Feb. 16, 2017).................... passim

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
  No. 2672 CRB (JSC), 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016)........................... passim

*International Molders' & Allied Workers' Local Union No. 164 v. Nelson*,
  102 F.R.D. 457 (N.D. Cal. 1983)................................................................................. 20

*Jimenez v. Allstate Ins. Co.*,
  765 F.3d 1161 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 2835 (2015) ................................. 19

*Jones v. Amalgamated Warbasse Houses, Inc.*,
  97 F.R.D. 355 (E.D.N.Y. 1982) ..................................................................................... 15

*Kim v. Space Pencil, Inc.*,
  No. C 11-03796 LB, 2012 WL 5948951 (N.D. Cal. Nov. 28, 2012).................................. 13

*Klay v. Humana, Inc.*,
  382 F.3d 1241 (11th Cir. 2004)....................................................................................... 26

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012)........................................................................................... 11

*Leuthold v. Destination Am., Inc.*,
  224 F.R.D. 462 (N.D. Cal. 2004).................................................................................... 27

*Marshall v. Holiday Magic, Inc.*,
  550 F.2d 1173 (9th Cir. 1977)......................................................................................... 15

*Mego Financial Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000)............................................................................. 10, 13, 14

*Moreno v. Autozone, Inc.*,
  251 F.R.D. 417 (N.D. Cal. 2008).................................................................................... 29

**TABLE OF AUTHORITIES**
(continued)

Page

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ............................................................................................. 30

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................ 17

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
238 F.R.D. 482 (C.D. Cal. 2006) ........................................................................ 19

*Nobles v. MBNA Corp.*,
No. C 06-3723 CRB, 2009 WL 1854965 (N.D. Cal. June 29, 2009) .............. 11, 13

*Officers for Justice v. Civil Service Comm'n*,
688 F.2d 615 (9th Cir. 1982) ........................................................................ 10, 11

*Palmer v. Stassinos*,
233 F.R.D. 546 (N.D. Cal. 2006) ........................................................................ 18

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) ........................................................................ 19, 21

*Pha v. Yang*,
No. 2:12-cv-01580-TLN-DAD, 2015 U.S. Dist. LEXIS 109074 (E.D. Cal. Aug.
17, 2015) ............................................................................................................. 15

*Pierce v. Rosetta Stone, Ltd.*,
No. C 11-01283 SBA, 2013 WL 5402120 (N.D. Cal. Sept. 26, 2013) ................ 15

*Radcliffe v. Experian Info. Sols., Inc.*,
715 F.3d 1157 (9th Cir. 2013) ............................................................................ 22

*Riker v. Gibbons*,
No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012 (D. Nev. Oct. 28, 2010) ....... 17

*Rodman v. Safeway, Inc.*,
No. 11-cv-03003-JST, 2014 WL 988992 (N.D. Cal. Mar. 9, 2014) ..................... 26

*Rodriguez v. Hayes*,
591 F.3d 1105 (9th Cir. 2010) ............................................................................ 21

*Rosales v. El Rancho Farms*,
No. 1:09-cv-00707-AWI-JLT, 2015 WL 446091 (E.D. Cal. July 21, 2015) ........ 15

*Slaven v. BP Am., Inc.*,
190 F.R.D. 649 (C.D. Cal. 2000) ........................................................................ 18

*Smith v. Cardinal Logistics Mgmt. Corp.*,
No. 07-2104 SC, 2008 WL 4156364 (N.D. Cal. Sept. 5, 2008) .......................... 28

*Spalding v. City of Oakland*,
No. C11-2867 TEH, 2012 WL 994644 (N.D. Cal. Mar. 23, 2012) ...................... 19

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) .............................................................................. 11

*Stockwell v. City & Cty. of San Francisco*,
749 F.3d 1107 (9th Cir. 2014) ............................................................................ 19

*Suchanek v. Sturm Foods, Inc.*,
764 F.3d 750 (7th Cir. 2014) .............................................................................. 20

**TABLE OF AUTHORITIES**
(continued)

Page

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) ................................................................................. 26

*Sykes v. Mel Harris & Assocs. LLC*,
    285 F.R.D. 279 (S.D.N.Y. 2012) ......................................................................... 20

*Trosper v. Styker Corp.*,
    No. 13-CV-0607-LHK, 2014 WL 4145448 (N.D. Cal. Aug. 21, 2014) ......................... 23, 27

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ....................................................................................... 25

*UAW v. GMC*,
    497 F.3d 615 (6th Cir. 2007) ............................................................................... 14

*Wakefield v. Wells Fargo & Co.*,
    No. C 12-05053 LB, 2014 WL 7240339 (N.D. Cal. Dec. 18, 2014) ........................... 26

*Walker v. Life Ins. Co. of the Sw.*,
    No. CV 10-9198 JVS (RNBx), 2012 WL 7170602 (C.D. Cal. Nov. 9, 2012) .................. 28

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ..................................................................................... 19, 20

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) .................................................................. 21, 26, 27, 28

*Wren v. RGIS Inventory Specialists*,
    No. C-06-05778-JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ........................... 17

## RULES

Fed. R. Civ. P. 23(a) ........................................................................................ 17

Fed. R. Civ. P. 23(a)(1) .................................................................................... 18

Fed. R. Civ. P. 23(a)(3) .................................................................................... 21

Fed. R. Civ. P. 23(a)(4) .................................................................................... 22

Fed. R. Civ. P. 23(b)(3) ................................................................................. 17, 27

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................ 30

Fed. R. Civ. P. 23(e) .................................................................................... 9, 10

Fed. R. Civ. P. 23(g) ....................................................................................... 24

## TREATISES

2 W. Rubenstein, *Newberg on Class Actions*
    § 4:49 (5th ed. 2012) ....................................................................................... 25

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*
    § 11:41 (4th ed. 2002) ...................................................................................... 10

7AA C. Wright, A. Miller, & M. Kane, Federal Practice & Procedure
    § 1778 (3d ed. 2005) ....................................................................................... 25

*Manual for Complex Litigation (Fourth)* (2004)
    § 21.63 ......................................................................................................... 10

1

## NOTICE OF MOTION AND MOTION

2

**TO ALL PARTIES AND COUNSEL OF RECORD:**

3

PLEASE TAKE NOTICE that on May 11, 2017, at 8:00 a.m., in Courtroom 6 of the

4
United States District Court for the Northern District of California, located at 450 Golden Gate

5
Avenue, San Francisco, California, Settlement Class Counsel, on behalf of the provisionally

6
certified Settlement Class of certain owners and lessees of Volkswagen, Audi, and Porsche

7
branded TDI vehicles defined in the Class Action Settlement Agreement and Release (Amended)

8
("Settlement" or "Class Action Agreement"), will and hereby do move the Court for an Order

9
granting final approval of the Class Action Agreement with Robert Bosch GmbH and Robert

10
Bosch, LLC ("Bosch").

11
As discussed in the accompanying Memorandum and Points of Authorities, Plaintiffs and

12
Bosch (the "Parties") have reached a final classwide resolution in this historic litigation that

13
provides Class Members with $327.5 million in additional compensation.  This fund is to be paid

14
immediately after final approval by this Court.  This compensation is above and beyond the

15
$10.03 billion funding commitment that this Court has approved for the Volkswagen 2.0-liter

16
Class Action Settlement (the "Volkswagen 2.0-liter Settlement" or "2.0-liter Settlement"), and the

17
$1.26 billion that is the minimum available to pay consumers under the preliminarily approved

18
Volkswagen 3.0-liter Class Action Settlement (the "Volkswagen 3.0-liter Settlement" or "3.0-liter

19
Settlement") (together, "Volkswagen Settlements").  Moreover, the Notice Program ordered by

20
the Court, which included direct mail notice, and is being coordinated with the notice program for

21
the Volkswagen 3.0-liter Settlement, has timely commenced and is providing the best notice

22
practicable under the circumstances.  The Settlement Class Representatives and Settlement Class

23
Counsel therefore respectfully request that the Court grant final approval to the Settlement.

24

25

26

27

28

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.**    <u>**INTRODUCTION**</u>

3         In its recent plea agreement with the Department of Justice ("DOJ"), Volkswagen

4    admitted that it knowingly misled regulators and the public into believing that its TDI "clean

5    diesel" engines met strict U.S. federal and state emission standards.  Plaintiffs alleged that

6    Bosch's role in supplying software to Volkswagen facilitated Volkswagen's scheme to deceive

7    the United States Environmental Protection Agency ("EPA"), the California Air Resources Board

8    ("CARB"), and other government officials into approving for sale hundreds of thousands of non-

9    compliant Class Vehicles in the U.S.  Volkswagen has since admitted wrongdoing.  It recently

10   pled guilty to conspiracy to defraud the U.S., including wire fraud, and to violating the Clean Air

11   Act.  Bosch continues to deny wrongdoing.

12        The Parties' Settlement creates a non-reversionary common fund worth $327.5 million.

13   The Bosch class includes all persons and entities that were eligible for membership in the classes

14   defined in the Volkswagen Settlements, including consumers and reseller dealers.  This means

15   that affected TDI owners and lessees will receive payments from this Settlement on top of the

16   very significant payments they will receive from Volkswagen as a result of the Volkswagen

17   Settlements.

18        Anyone who submitted, or submits in the future, an approved claim in either or both of the

19   Volkswagen Settlements will not need to file a claim, or take any other action, to receive their

20   Bosch Settlement Fund payment check(s).  Those people—the vast majority of Class Members—

21   will *automatically* receive their Bosch Settlement Fund payment check(s) in the mail.  Those who

22   excluded themselves from ("opted out of") either or both Volkswagen Settlements, or who

23   otherwise did not file approved claims in those settlements, will have the opportunity to receive

24   compensation from the Bosch Settlement Fund through a claims process.

25        This Settlement, together with the simultaneously-filed settlement with Volkswagen

26   involving the 3.0-liter TDI vehicles, brings to an end the final chapter of the consumer and

27   reseller dealer claims in the Volkswagen MDL litigation, a resolution achieved at remarkable

28   speed.  This Settlement was announced less than one-and-a-half years after the news of

1    Volkswagen's diesel scandal broke, one year after this Court appointed Lead Counsel and the

2    Plaintiffs' Steering Committee ("PSC") (together, "Class Counsel"), and three months after this

3    Court granted final approval of the Volkswagen 2.0-liter Settlement.

4         As with the Volkswagen Settlements, this Settlement is the result of significant efforts

5    undertaken by Class Counsel, defense counsel, Settlement Master Mueller and his team, and the

6    Court.  Despite the remarkable pace of the litigation that resulted in the Volkswagen 2.0-liter

7    Settlement and the announcement of the Volkswagen 3.0-liter Settlement, Class Counsel's efforts

8    toward a resolution with Bosch continued full speed.  The PSC worked tirelessly to investigate

9    the facts, review and analyze documents, engage experts, and prepare for trial against Bosch.

10   After many more months of intensive negotiations and litigation preparation following the

11   Volkswagen 2.0-liter Settlement, and while the Volkswagen 3.0-liter Settlement was being

12   negotiated, the Parties reached the Settlement, which (along with the preliminarily approved 3.0-

13   liter Settlement for which Plaintiffs are contemporaneously seeking final approval) will conclude

14   the consumer and reseller dealers' claims in this MDL, if approved.  Class Counsel have fulfilled

15   their commitment to the Court to personally devote their own time, and the time and resources of

16   their respective firms, towards the litigation and resolution of this case.  And Class Counsel will

17   continue doing so.

18        Settlement Class Representatives and Settlement Class Counsel believe the Settlement is

19   fair, adequate and reasonable to the Class, according to Fed. R. Civ. P. 23(e) and prevailing

20   jurisprudence.  Settlement Class Representatives and Settlement Class Counsel respectfully

21   request this Court approve this Settlement.

22   **II.    BACKGROUND AND PROCEDURAL HISTORY**

23        The relevant factual allegations and procedural history are set forth in large part in this

24   Court's orders granting preliminary approval of the Volkswagen Settlements and this Bosch

25   Settlement.  *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,

26   No. 2672 CRB (JSC), 2016 WL 4010049, at *1-2 (N.D. Cal. July 26, 2016); *In re Volkswagen*

27   *"Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2017

28   WL 672727, at *1-2 (N.D. Cal. Feb. 16, 2017); *In re Volkswagen "Clean Diesel" Mktg., Sales*

*Practices, & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2017 WL 672820, at *1-2 (N.D. Cal. Feb. 16, 2017).

**A.    Factual Background**

This multidistrict litigation arises from Volkswagen's sale to the American public of TDI "clean diesel" vehicles containing a "defeat device" to the American public.  2017 WL 672727, at *1.  The Volkswagen Defendants marketed the TDI vehicles to the public "as being environmentally friendly, fuel efficient, and high performing."  *Id*.  In fact, the vehicles contained hidden defeat devices—"software designed to cheat emissions tests and deceive federal and state regulators"—to evade emissions testing by government regulators such as the EPA and CARB. *Id*.  The defeat devices, which Volkswagen developed with software supplied by Bosch, sensed when the vehicle was being tested for emissions compliance and then accordingly adjusted its output to legal levels.  *Id*.   Then, when testing was complete and normal driving conditions resumed, the car would "release nitrogen oxides ("$NO_X$") at a factor of up to <u>40 times</u> over the permitted limit."[1]  *Id*.  (emphasis added). Volkswagen was able "to obtain Certificates of Conformity ("COCs") from EPA and Executive Orders ("EOs") from CARB for its 2.0- and 3.0-liter diesel engine vehicles" solely based on the installation of the defeat device.  *Id*. Plaintiffs alleged that Bosch worked closely with Volkswagen to develop and supply the defeat device for use in Volkswagen's vehicles.  *Id*.   While Volkswagen has publicly admitted wrongdoing, Bosch continues to deny wrongdoing.  *Id*.

**B.    Procedural History**

On September 3, 2015, Volkswagen admitted to government regulators that it had installed a defeat device on 2009-2015 Volkswagen and Audi 2.0-liter TDI vehicles.  ¶ 355.[2]  On September 18, 2015, the EPA issued a Notice of Violation ("NOV") to Volkswagen, alleging the defeat device Volkswagen installed in vehicles containing 2.0-liter diesel engines violated provisions of the Clean Air Act, and CARB informed Volkswagen it had commenced an

---

[1] Citations, internal quotations, and footnotes omitted and emphasis added unless otherwise noted.
[2] All references to "¶" are to the Amended Consolidated Consumer Class Action Complaint ("Amended Consumer Complaint"), filed on September 2, 2016 (Dkt. No. 1804), unless otherwise noted.

- 3 -

1   enforcement investigation concerning the defeat device.  ¶ 356.

2          On November 2, 2015, the "EPA issued a second NOV to Volkswagen, as well as Dr. Ing.

3   h.c. F. Porsche AG and Porsche Cars North America, Inc., which alleged Volkswagen had

4   installed in its 3.0-liter diesel engine vehicles a defeat device similar to the one described in the

5   September 18 NOV."  ¶ 366.  CARB likewise sent a second letter concerning the same matter.

6   ¶ 370.  After originally denying the allegations, Volkswagen finally admitted that defeat device

7   software was installed not only in the vehicles identified in the second NOV, but in all 3.0-liter

8   Class Vehicles sold by Volkswagen, Audi, and Porsche.  *Id.*

9          Following public disclosure of Volkswagen's wrongdoing, consumers filed over 500 class

10  actions across the country.  Multiple governmental entities also filed suit against Volkswagen: the

11  DOJ filed a complaint on behalf of the EPA for violations of the Clean Air Act; the Federal Trade

12  Commission ("FTC") filed an action for violations of the FTC Act; and California and other state

13  attorneys general announced investigations or lawsuits.

14         On December 8, 2015, the Judicial Panel on Multidistrict Litigation transferred all related

15  federal actions to the Northern District of California for consolidated pre-trial proceedings in the

16  above-captioned MDL.  Dkt. No. 1.  The following month, the Court appointed Elizabeth J.

17  Cabraser of Lieff, Cabraser, Heimann & Bernstein, LLP as Lead Counsel and 21 additional

18  attorneys to the PSC, which is chaired by Ms. Cabraser.  Dkt. No. 1084.   The Court also

19  appointed former FBI Director Robert S. Mueller III as Settlement Master to facilitate settlement

20  discussions.  Dkt. No. 797.

21         In the weeks and months that followed, a fully deployed PSC worked tirelessly to

22  prosecute the civil cases on behalf of consumers against Volkswagen and Bosch.  Lead Counsel

23  created more than a dozen PSC working groups to ensure that the enormous amount of work that

24  needed to be done in a very short period of time was done in the most organized and efficient

25  manner possible.  Many of these working groups, in particular the Bosch working group, were

26  involved in investigating Bosch's alleged role in the fraud.  The Bosch working group focused on

27  all aspects of the litigation involving Bosch, including drafting the complaints, serving and

28  reviewing voluminous discovery, reviewing and translating German-language documents,

1   assessing technical and engineering issues (and retaining experts concerning those issues),

2   preparing a motion for class certification, preparing for an early trial, and researching German

3   and European data privacy issues, among many others.

4        On February 22, 2016, Class Counsel filed a Consolidated Consumer Class Action

5   Complaint alleging, among other things, that Bosch had conspired with Volkswagen to develop,

6   install, and conceal the defeat devices in violation of the Racketeer Influenced and Corrupt

7   Organizations Act ("RICO"), 18 U.S.C. § 1962(c)-(d).  Dkt. No. 1230.

8        Following the filing of the Complaint, Class Counsel served Bosch with extensive written

9   discovery, including interrogatories, requests for production, and requests for admissions.  Class

10   Counsel reviewed and analyzed many millions of pages of documents relating to Bosch, which

11   required the reviewing attorneys not only to understand the legal and technical complexities of

12   the "defeat device" scheme, but also to master the difficulties and nuances involved when

13   working with documents composed in German.  The review of these documents enabled Class

14   Counsel to investigate the extent of Bosch's alleged involvement in the fraud.  On September 2,

15   2016, the PSC filed the Amended Consumer Complaint, which amplified contentions about

16   Bosch's alleged role in the conspiracy.  On October 22, 2016, the PSC served Bosch with

17   amended discovery requests, drafted motions, and accelerated trial preparation.

18        Parallel to its litigation against Bosch, Class Counsel was engaged in intensive settlement

19   talks with Volkswagen, which began immediately following the Court's appointment of Lead

20   Counsel and the Settlement Master.  However, Bosch was not a party to the Volkswagen 2.0-liter

21   Settlement.  *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,

22   No. 2672 CRB (JSC), 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016).  It took several more months

23   of intensive litigation before Bosch tentatively agreed to a proposed settlement.  During this time,

24   the Parties engaged in meet and confers (both in-person and telephonically) regarding the scope

25   of discovery and Bosch's objections to Plaintiffs' discovery requests and prepared letters to

26   Magistrate Judge Corley to assist with the resolution of the Parties' various discovery disputes.

27   The Parties vigorously litigated Bosch's alleged role in the fraud up until the moment a tentative

28   agreement was announced, as evidenced by the stipulation filed by the Parties on December 2,

1    2016, regarding briefing on Bosch's forthcoming motions to dismiss.  *See* Dkt. No. 2414.

2         The government agencies pursuing Volkswagen chose not to engage in litigation against

3    Bosch.  Thus, the PSC has performed all of the investigation, discovery, and trial preparation

4    work in the case against Bosch. Those efforts ultimately will provide Settlement Class Members

5    with the additional compensation offered by this Settlement.  By any measure, this Settlement is

6    an extraordinary result for the Settlement Class, given the difficulty of presenting Bosch's alleged

7    involvement from ambiguous and technical documents and in the face of Bosch's significant

8    asserted defenses.

9         On January 31, 2017, Plaintiffs and Settlement Class Counsel filed their Motion and

10   Memorandum in Support of Preliminary Approval of the Bosch Class Action Settlement

11   Agreement and Release and Approval of Class Notice ("Motion for Preliminary Approval").  Dkt.

12   No. 2838.  On February 14, 2017, the parties presented a comprehensive description of the

13   Settlement terms, benefits and procedures at the hearing on the Motion for Preliminary Approval,

14   and on February 16, 2016 provided the Court with the Class Action Settlement Agreement and

15   Release (Amended) ("Settlement").  Dkt. 2918.  Following the hearing, the Court entered its

16   Order Granting Preliminary Approval of the Bosch Class Action Settlement ("Preliminary

17   Approval Order").  *In re Volkswagen*, 2017 WL 672820.  The Preliminary Approval Order

18   provisionally certified the Settlement Class, preliminarily approved the Settlement, appointed

19   Lead Counsel and the PSC as Settlement Class Counsel, appointed and designated the individuals

20   listed on Exhibit 1 to the Motion for Preliminary Approval as Class Representatives, approved the

21   manner and form of providing notice of the Settlement to Class Members, set a deadline for Class

22   Members to opt-out from or object to the Settlement, and scheduled a final Fairness Hearing.

23        Following preliminary approval, Settlement Class Counsel diligently worked with

24   respected class notice provider Epiq Systems, Inc. ("Epiq") to effectuate the Notice Program

25   ordered by the Court.  The approved Short Form Notice has been directly sent by first class mail

26   to all readily identifiable Class Members using addresses gathered in the notice programs in the

27   Volkswagen Settlements.  Email Notice has been sent by email to the majority of class members.

28   Epiq further disseminated notice through an extensive print and digital media program.  Finally, a

1   Settlement Website and a toll-free telephone number were established to provide details regarding

2   the Settlement to inquiring Class Members.  Class Counsel have made themselves available to

3   directly address questions, comments, and requests for assistance from Class Members, and have

4   been doing so since the parties filed the Settlement documents with the Court.

5   **III.**   **TERMS OF THE BOSCH CLASS SETTLEMENT**

6         The Settlement provides substantial benefit to all persons and entities who were eligible

7   for membership in the Volkswagen Settlements.

8         **A.**   **The Settlement Class Definition**

9         As mentioned above, the Settlement Class consists of all persons and entities who were

10   eligible for membership in the classes defined in the Volkswagen Settlements, including

11   Volkswagen Settlement Opt Outs.  Therefore, the Class consists of Eligible Owners, Eligible

12   Sellers, Eligible Former Lessees, and Eligible Lessees in the 2.0-liter Settlement, and Eligible

13   Owners, Eligible Former Owners, Eligible Lessees, and Eligible Former Lessees in the 3.0-liter

14   Settlement.

15         The following entities and individuals are excluded from the Class:

16         (1)   Bosch's officers, directors, and employers; and Bosch's affiliates and affiliates'

17   officers, directors, and employees;

18         (2)   Volkswagen; Volkswagen's officers, directors, and employees; and Volkswagen's

19   affiliates and affiliates' officers, directors, and employees;

20         (3)   any Volkswagen Franchise Dealer;

21         (4)   Judicial officers and their immediate family members and associated court staff

22   assigned to this case; and

23         (5)   All those otherwise in the Class who or which timely and properly exclude

24   themselves from the Class as provided in the Class Action Agreement.

25         **B.**   **Benefits to Settlement Class Members**

26         Bosch has agreed to make a guaranteed lump-sum payment of $327,500,000 (the "Bosch

27   Settlement Fund") for the benefit of the Settlement Class Members.  This payment includes any

28   attorneys' fees and expenses that might be awarded by the Court.  Bosch has also agreed to pay

all reasonable and necessary fees and costs of the Notice Administrator and Claims Administrator incurred with providing notice under, and for the administration of, the Class Action Settlement Agreement.

The Bosch Settlement Fund will be allocated among Settlement Class Members pursuant to the following plan of distribution developed by the FTC[3]:

(1)    Individuals and entities eligible to participate in the 2.0-liter Settlement will receive a total of $163,267,450, to be shared among 2.0-liter Settlement class members as set forth below; and

(2)    Individuals and entities eligible to participate in the 3.0-liter Settlement will receive a total of $113,264,400, to be shared among 3.0-liter Settlement class members, as set forth below.

The Bosch Settlement funds will be allocated to individual Settlement Class Members as follows:

(1)    An Eligible Owner of an Eligible Vehicle in the 2.0-liter Settlement will receive $350, except that if an Eligible Seller has identified himself or herself and filed an approved claim for the Eligible Vehicle, or if an Eligible Lessee has identified himself or herself and filed an approved claim for the Eligible Vehicle, the Eligible Owner will receive $175;

(2)    An Eligible Seller in the 2.0-liter Settlement who has identified himself or herself and filed an approved claim will receive $175;

(3)    An Eligible Lessee in the 2.0-liter Settlement will receive $200;

(4)    An Eligible Owner of an Eligible Vehicle in the 3.0-liter Settlement will receive $1,500, with three exceptions:

(a)    If an Eligible Former Owner has identified himself or herself and filed an approved claim for the Eligible Vehicle in the 3.0-liter Settlement, the $1,500 payment will be split equally ($750 each) between the Eligible Owner and the Eligible Seller;

---

[3] The FTC is an independent government agency whose mission is to prevent business practices that are anticompetitive, or deceptive or unfair to consumers.  Acting as an independent third party to the litigation between the PSC and Bosch, the FTC's counsel met with Bosch and directed an allocation of the Bosch Settlement fund among members of the Bosch Settlement Class that the FTC's counsel would recommend that the FTC accept.

1    (b)    An Eligible Owner will also receive $750 if an Eligible Former Lessee has

2  identified himself or herself and filed an approved claim for the Eligible Vehicle in the 3.0-liter

3  Settlement; and

4    (c)    If two Eligible Former Owners have identified themselves and filed

5  approved claims for the Eligible Vehicle in the 3.0-liter Settlement, the $1,500 will be split

6  among the Eligible Owner and the two Eligible Former Owners, with $750 going to the Eligible

7  Owner and $375 each to the two Eligible Former Owners.

8    (5)    An Eligible Lessee in the 3.0-liter Settlement will receive $1,200.

9  The above payments are net payments to Settlement Class Members and will not be reduced by

10  any amount of attorneys' fees or expenses that might be awarded by the Court.  Payments to

11  Settlement Class Members will begin after entry of an order granting final approval to the

12  Settlement, and will be distributed over the course of the Claim Period.  If any funds remain, and

13  it is not feasible and/or economically reasonable to distribute the remaining funds to Class

14  Members, those funds shall be distributed through Court-approved cy pres payments according to

15  a distribution plan and schedule filed by Class Counsel and approved by the Court.

16    Payments to Class Members will not be held up pending any appeals; they will begin as

17  soon as practicable after final approval by this Court.

18    **C.    Attorneys' Fees**

19    Contemporaneous with the filing of this motion, Class Counsel has moved this Court

20  under Rule 23(h) for an award of attorneys' fees of $51,000,000 and reimbursement of costs and

21  expenses incurred with the action in the amount of $1,000,000.  The combined fees and costs

22  amount to less than sixteen percent (16%) of the total common fund.  If approved, both amounts

23  requested will be paid from the Bosch Settlement Fund.  The Parties did not discuss attorneys'

24  fees and costs prior to agreement on all material terms of the Class Action Agreement.

25    **IV.    THE BOSCH SETTLEMENT MERITS FINAL APPROVAL**

26    **A.    The Class Action Settlement Process**

27    Pursuant to Federal Rule of Civil Procedure 23(e), class actions "may be settled,

28  voluntarily dismissed, or compromised only with the court's approval."  As a matter of "express

1    public policy," federal courts favor and encourage settlements, particularly in class actions, where

2    the costs, delays, and risks of continued litigation might otherwise overwhelm any potential

3    benefit the class could hope to obtain.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276

4    (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where

5    complex class action litigation is concerned"); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101

6    (9th Cir. 2008) (same); *see also* 4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*

7    § 11:41 (4th ed. 2002) (same, collecting cases).

8          The *Manual for Complex Litigation* describes the three-step procedure for approval of

9    class action settlements: (1) preliminary approval of the proposed settlement; (2) dissemination of

10    the notice of the settlement to class members, providing for, among other things, a period for

11    potential objectors and dissenters to raise challenges to the settlement's reasonableness; and (3) a

12    formal fairness and final settlement approval hearing.  *Manual for Complex Litigation (Fourth)* at

13    § 21.63 (2004).  The Court completed the first step in the settlement process when it granted

14    preliminary approval to the Settlement.  Thereafter, Settlement Class Counsel completed the

15    second step by implementing the Notice Program pursuant to the terms of the Settlement and the

16    Court's Preliminary Approval Order.  Settlement Class Representatives and Settlement Class

17    Counsel now request that the Court take the third and final step—holding a formal fairness

18    hearing and granting final approval of the Settlement.  Settlement Class Representatives and

19    Settlement Class Counsel further request that the Court confirm certification of the Settlement

20    Class and enter a Final Judgment in this action.

21          **B.**       **The Settlement Meets the Ninth Circuit's Standards for Final Approval.**

22          Federal Rule of Civil Procedure 23 governs a district court's analysis of the fairness of a

23    class action settlement.  *See* Fed. R. Civ. P. 23(e).  To approve a class action settlement, the Court

24    must determine whether the settlement is "fundamentally fair, adequate and reasonable."  *In re*

25    *Rambus Inc. Derivative Litig.*, No. C-06-3515–JF, 2009 WL 166689, at *2 (N.D. Cal. Jan. 20,

26    2009) (citing Fed. R. Civ. P. 23(e)); *see also Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 459

27    (9th Cir. 2000); *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

28    In granting preliminary approval of the Settlement, the Court took the first step in making this

1    determination.  *See In re Volkswagen*, 2017 WL 672820, at *13 ("The Court finds that the

2    proposed Settlement is the result of intensive, non-collusive negotiations and is reasonable, fair,

3    and adequate.").  "Although Rule 23 imposes strict procedural requirements on the approval of a

4    class settlement, a district court's only role in reviewing the substance of that settlement is to

5    ensure that it is 'fair, adequate, and free from collusion.'"  *Lane v. Facebook, Inc.,* 696 F.3d 811,

6    819 (9th Cir. 2012) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)).

7    When class counsel is experienced and supports the settlement, and the agreement was reached

8    after arm's-length negotiations, courts should give a presumption of fairness to the settlement.

9    *See Nobles v. MBNA Corp.,* No. C 06-3723 CRB, 2009 WL 1854965, at *6 (N.D. Cal. June 29,

10   2009); *Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939

11   (9th Cir. 1981).  Additionally, "[i]t is the settlement taken as a whole, rather than the individual

12   component parts, that must be examined for overall fairness."  *Staton v. Boeing Co.*, 327 F.3d

13   938, 952 (9th Cir. 2003).

14          The Ninth Circuit has identified "the strength of the plaintiffs' case; the risk, expense,

15   complexity, and likely duration of further litigation; the risk of maintaining class action status

16   throughout the trial; the amount offered in settlement; the extent of discovery completed and the

17   stage of the proceedings; the experience and views of counsel; the presence of a governmental

18   participant; and the reaction of the class members to the proposed settlement" as factors for

19   determining whether a settlement is fair, reasonable, and adequate.  *See Hanlon*, 150 F.3d at

20   1026.  "The relative degree of importance to be attached to any particular factor will depend on

21   the unique circumstances of each case."  *Officers for Justice*, 688 F.2d at 625.  As discussed

22   below, all of the relevant factors set forth by the Ninth Circuit for evaluating the fairness of a

23   settlement at the final stage support final approval, and there can be no reasonable doubt that the

24   Settlement was reached in a procedurally fair manner given Settlement Master Mueller's ongoing

25   guidance and assistance.  For these reasons, the Settlement merits final approval.

26

27

28

1

2

**C.      The Settlement Is Substantively Fair Because it Provides Significant Benefits in Exchange for the Compromise of Plaintiffs' Claims.**

3

4

5

6

7

As noted in the summary of the Settlement terms above, and in the Settlement itself, the Settlement compensates Class Members for their losses as a result of Bosch's alleged participation in the scheme to defraud.  All PSC members, a uniquely experienced group including preeminent class action litigators, consumer and environmental advocates, noted trial lawyers, and auto litigation veterans, support this Settlement.

8

9

10

11

12

This was a difficult case from the start, and, as described above, it is not at all certain that the Class could obtain a better outcome against Bosch through continued litigation, trial, and appeal—much less at the speed at which it was accomplished through the Settlement.  Indeed, the litigation thus far has revealed very significant disputes on a number of factual and legal issues necessary for Plaintiffs to prevail.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

As to the facts, unlike Volkswagen, Bosch never came close to even arguably conceding any element of liability.  Indeed, Plaintiffs and Bosch have advanced competing narratives about a number of key documents underpinning Plaintiffs' case.  For example, while Plaintiffs assert that one particular document is strong evidence that Bosch knew about and participated in Volkswagen's defeat device scheme, Bosch claims that document does not implicate the EDC-17 engine software that Plaintiffs allege contained the defeat device and does not concern diesel vehicles at all.  Similarly, Plaintiffs assert that another document regarding the "acoustic function" (a euphemism sometimes used to reference the defeat device) reflects conversations between Volkswagen's CEO and Bosch GmbH's CEO about the critical issues in this case, demonstrating Bosch's knowledge of, complicity with, and participation in the defeat device scheme.  Bosch vigorously disputes this interpretation, arguing instead that the document refers only to diesel vehicle acoustics.  Thus, while Plaintiffs continue to believe strongly in the allegations in their Complaints, the proof underlying those allegations was hotly contested, and Plaintiffs' ultimate success at trial was far from certain.

27

28

The case presented considerable legal hurdles as well.  Plaintiffs' principal claim against Bosch was brought under the RICO statute.  But, even assuming the absence of factual disputes,

prevailing on that claim was no gimme.  In fact, Bosch recently briefed a motion to dismiss a

similar RICO claim brought by the non-settling Volkswagen Franchise Dealers.  That briefing

outlines some of the potential legal obstacles to the consumer and reseller dealers' RICO claim,

including challenges to standing, causation, and damages, among other things.  Dkt. Nos. 2864,

3052.  Moreover, Bosch GmbH, a German company, challenged the Court's exercise of

jurisdiction—an argument which, if correct, would significantly impair Plaintiffs' claims.  Bosch

was prepared to aggressively defend itself, and was not without the legal means to do so.

While Settlement Class Counsel believe in the strength of the case against Bosch, they

also recognize there are always uncertainties in litigation, which weigh in favor of a compromise

in exchange for certain and timely provision to the Settlement Class of the significant benefits

described herein.  *See Nobles*, 2009 WL 1854965, at *2 ("The risks and certainty of recovery in

continued litigation are factors for the Court to balance in determining whether the Settlement is

fair.") (citing *Mego*, 213 F.3d at 458; *Kim v. Space Pencil, Inc.*, No. C 11-03796 LB, 2012 WL

5948951, at *15 (N.D. Cal. Nov. 28, 2012) ("The substantial and immediate relief provided to the

Class under the Settlement weighs heavily in favor of its approval compared to the inherent risk

of continued litigation, trial, and appeal, as well as the financial wherewithal of the defendant.")).

Because Class Members will have received substantial compensation through the

Volkswagen settlements for the economic losses associated with the defeat device scheme,

moreover, there was a risk that any potential recovery would have been offset, partially or

entirely, by the funds Class Members already received.  Even if the Class secured an additional

judgment against Bosch, Bosch maintained that it was indemnified by Volkswagen for any

liability arising from the defeat devices.  The Volkswagen settlements, in turn, provide that if that

indemnification claim succeeded, Class Members would "waive enforcement of [their] judgment

against . . .  Bosch . . .  by the amount of the damages that [Volkswagen is] . . .  held to be

responsible for by way of indemnification of . . . Bosch."  Dkt. No. 1685-5 ¶ 6.  Furthermore,

while treble damages were potentially available under Plaintiffs' RICO claim, "it is inappropriate

to measure the adequacy of a settlement amount by comparing it to a possible trebled base

recovery figure."  *Cty. of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1324 (2d Cir.

1   1990).

2         Finally, even if Settlement Class Counsel prosecuted these claims against Bosch to

3   conclusion, and recovered additional funds for the Class, that recovery would likely come years

4   in the future and at far greater expense to the Settlement Class.  And, as outlined above, despite

5   Settlement Class Counsel's belief in the merit of its claims, there is also a risk that a litigation

6   Class would receive less or nothing at all, not only because of the risks of litigation, but also

7   because of the solvency risks such prolonged and expanding litigation could impose upon Bosch.

8   A judgment that bankrupts Bosch would be far less satisfying than a settlement that provides

9   meaningful and certain monetary and restorative relief now.  *See, e.g.*, *UAW v. GMC*, 497 F.3d

10  615, 632 (6th Cir. 2007) (affirming approval of settlement class and rejecting objections premised

11  on prospect of plaintiffs complete victory on disputed issue because "any such victory would run

12  the risk of being a Pyrrhic one . . . we need not embellish the point by raising the prospect of

13  bankruptcy").  As recognized by the Court in its order granting final approval of the 2.0-liter

14  Settlement, "[w]eighing this possibility against the immediate and guaranteed benefits provided

15  by the Settlement, settlement is clearly favored." *In re Volkswagen*, 2016 WL 6248426, at *18.

16         **D.      The Settlement Is Procedurally Fair as the Product of Good Faith, Informed, and Arm's-Length Negotiations.**

17

18         Lead Counsel and Class Counsel engaged in intensive settlement discussions with Bosch

19  and government representatives under Settlement Master Mueller's guidance and supervision.

20  Class Counsel analyzed voluminous discovery material that provided them with sufficient

21  information to enter into a reasoned and well-informed settlement.  *See In re Volkswagen*, 2017

22  WL 672820, at *10 (holding that Class Counsel's review of discovery "allowed them to make a

23  well-informed assessment of the merits of the Class' claims and to determine whether [Bosch's]

24  offers adequately compensates Class Members for their injuries"); *see also In re Volkswagen*,

25  2016 WL 4010049, at *14 (same as to Volkswagen's offers); *Mego*, 213 F.3d at 459 (holding

26  "significant investigation, discovery and research" supported "district court's conclusion that the

27  Plaintiffs had sufficient information to make an informed decision about the Settlement").

28         Here, the Parties' settlement negotiations were conducted in good faith at all times, and

1    "[t]he Settlement is [] the result of arm's-length negotiations by experienced Class Counsel."  *In*

2    *re Volkswagen*, 2017 WL 672820, at *10.  In a separately-filed Declaration, Settlement Master

3    Mueller, who oversaw and facilitated the negotiation of the Settlement, confirmed the Settlement

4    "is the product of good faith, multi-dimensional negotiations among the parties."  Declaration of

5    Robert Mueller, III ("Mueller Decl.") ¶ 8.

6            Participation of government entities in the settlement process also weighs highly in favor

7    of granting final approval.  *See In re Volkswagen*, 2017 WL 672727, at *16; *see also In re*

8    *Volkswagen*, 2016 WL 6248426, at *14; *Marshall v. Holiday Magic, Inc*., 550 F.2d 1173, 1178

9    (9th Cir. 1977) ("The participation of a government agency serves to protect the interests of the

10   class members, particularly absentees, and approval by the agency is an important factor for the

11   court's consideration.") (citation omitted); *Jones v. Amalgamated Warbasse Houses, Inc*., 97

12   F.R.D. 355, 360 (E.D.N.Y. 1982) ("That a government agency participated in successful

13   compromise negotiations and endorsed their results is a factor weighing heavily in favor of

14   settlement approval—at least where, as here, the agency is 'committed to the protection of the

15   public interest.'") (citation omitted).   Here, the FTC conducted an independent analysis of the

16   claims against Bosch and was involved both in the allocation process and in discussing, drafting,

17   circulating, and revising the various documents that made up the Bosch Settlement.  *See* Mueller

18   Decl. ¶ 6.

19           A settlement process involving protracted negotiations with the assistance of a court-

20   appointed mediator weighs in favor of granting final approval.  *See Pha v. Yang*, No. 2:12-cv-

21   01580-TLN-DAD, 2015 U.S. Dist. LEXIS 109074, at *13 (E.D. Cal. Aug. 17, 2015) (finding that

22   the fact "the settlement was reached through an arms-length negotiation with the assistance of a

23   mediator through a months-long process . . . weigh[ed] in favor of approval"); *Rosales v. El*

24   *Rancho Farms*, No. 1:09-cv-00707-AWI-JLT, 2015 WL 446091, at *44 (E.D. Cal. July 21, 2015)

25   ("Notably, the Ninth Circuit has determined the 'presence of a neutral mediator [is] a factor

26   weighing in favor of a finding of non-collusiveness.'") (quoting *In re Bluetooth Headset Prods.*

27   *Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011)); *Pierce v. Rosetta Stone, Ltd*., No. C 11-01283

28   SBA, 2013 WL 5402120, at *15-16 (N.D. Cal. Sept. 26, 2013) (same).  As the Court recognized

1   in its Preliminary Approval Order, "the parties negotiated the Settlement under the supervision of

2   the court-appointed Settlement Master" and "Class Counsel negotiated the Settlement alongside

3   government entities, including the EPA and the FTC." *In re Volkswagen*, 2017 WL 6728280, at

4   *10. It is an understatement to say that the parties benefited from the assistance of Settlement

5   Master Mueller, who played a crucial role in supervising the negotiations and in helping the

6   parties bridge their differences in order to reach this Settlement. *See id.* (finding that "the

7   Settlement Master's guidance coupled with informed dialogues and the intensive involvement of

8   government entities suggests the parties reached the Settlement after serious informed, non-

9   collusive negotiations").

10      Taken together, the benefits provided to the Settlement Class Members and the

11   procedurally fair manner in which it was reached weigh in favor of granting final approval.

12      **E.      Class Member Reaction to the Settlement Has Been Favorable.**

13      The deadline for Class Member objections and opt-outs is April 14, 2017, and any

14   objections will be comprehensively analyzed, reported on, and responded to, in Settlement Class

15   Counsel's Reply Submissions, to be filed on April 28, 2017.

16      In the meantime, the immediate reaction of Class Members to the proposed Settlement has

17   been overwhelmingly positive. As detailed in Section VI below, direct mail and e-mail notice has

18   been accomplished. Over 1,804,803 notices were sent directly via First Class U.S. Mail and e-

19   mail to ensure reaching virtually all Class Members. Although the Opt-Out and Objection

20   Deadlines have not yet passed, approximately eight consumers have requested exclusion from the

21   Settlement Class (though their compliance with the Settlement's opt-out criteria has not yet been

22   verified) and approximately two objections have been received. Collectively, these numbers

23   represent less than 0.002% of the total Settlement Class. These figures provide evidence of the

24   Settlement's fairness. *See In re Volkswagen*, 2016 WL 6248426, at *16 (noting that out of the

25   approximately 490,000 class members in the 2.0-liter Settlement only 0.7% opted out and 0.09%

26   timely objected, and holding that "[g]iven the high claim rate and the low opt-out and objection

27   rates, this factor strongly favors final approval"); *see also Churchill Vill., L.L.C. v. GE*, 361 F.3d

28   566, 577 (9th Cir. 2004) (affirming approval of settlement with 45 objections and 500 opt-outs

from class of 90,000 members, roughly 0.6%); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp.

2d 848, 852 (N.D. Cal. 2010) (finding that sixteen opt outs in class of 329 members, or 4.86%,

strongly supported settlement); *Glass v. UBS Fin. Serv., Inc.*, No. C-06-4068-MMC, 2007 WL

221862, at *5 (N.D. Cal. Jan. 26, 2007) (approving settlement with 2% opt-out rate); *Wren v.*

*RGIS Inventory Specialists*, No. C-06-05778-JCS, 2011 WL 1230826, at *11 (N.D. Cal. Apr. 1,

2011) (holding that "'the absence of a large number of objections to a proposed class action

settlement raises a strong presumption that the terms of a proposed class action settlement are

favorable to the class members'") (quoting *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221

F.R.D. 523, 529 (C.D. Cal. 2004)); *see also Garner v. State Farm Mut. Auto. Ins. Co.*, No. C 08

1365 CW (EMC), 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010); *Riker v. Gibbons*, No.

3:08-cv-00115-LRH-VPC, 2010 WL 4366012, at *5 (D. Nev. Oct. 28, 2010) ("The small number

of objections is an indication that the settlement is fair, adequate, and reasonable.").

## V.    THE COURT SHOULD CONFIRM THE CERTIFICATION OF THE BOSCH SETTLEMENT CLASS.

Federal Rule of Civil Procedure 23 governs the issue of class certification, whether the

proposed class is a litigated class or a settlement class.  When "[c]onfronted with a request for

settlement-only class certification, a district court need not inquire whether the case, if tried,

would present intractable management problems . . . for the proposal is that there will be no trial."

*Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

Class certification is appropriate where: "(1) the class is so numerous that joinder of all

members is impracticable; (2) there are questions of law and fact common to the class; (3) the

claims or defenses of the representative parties are typical of the claims or defenses of the class;

and (4) the representative parties will fairly and adequately protect the interests of the class."

Fed. R. Civ. P. 23(a).  Certification of a class seeking monetary compensation also requires a

showing that "questions of law and fact common to class members predominate over any

questions affecting only individual members, and that a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Pursuant to the Preliminary Approval Order, the Court certified the Class defined in

1    paragraph 2.7 of the Class Action Agreement for settlement purposes. *In re Volkswagen*, 2017

2    WL 672820, at *6-9.   In doing so, the Court found that the Settlement Class Representatives

3    satisfied both Rule 23(a) and (b)(3) requirements, and that Settlement Class Counsel were

4    adequate representatives of the Class.  The Class certified by the Court is substantially similar to

5    the class of owners and lessees of Volkswagen and Audi branded TDI vehicles that was certified

6    in the context of the 2.0-liter Settlement. *See In re Volkswagen*, 2016 WL 6248426, at *6-7

7    (adopting the certification analysis at the preliminary approval stage and granting final class

8    certification).  And as the Class definition has not changed since preliminary approval, there is no

9    reason for the Court to depart from its previous conclusion that certification of the Class is

10   warranted.

11          **A.      The Class Meets the Requirements of Rule 23(a).**

12                 **1.      The Class Is Sufficiently Numerous.**

13          Rule 23(a)(1) is satisfied when "the class is so numerous that joinder of all class members

14   is impracticable." Fed. R. Civ. P. 23(a)(1).  Numerosity is generally satisfied when the class

15   exceeds forty members. *See, e.g.*, *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000).

16          As previously recognized by the Court, "[t]he numerosity requirement is easily satisfied

17   here." *In re Volkswagen*, 2017 WL 672820, at *10 ("There were over 500,000 Eligible Vehicles

18   sold or leased to consumers in the United States, and thus hundreds of thousands of potential

19   Class Members.").  The large size of the Class and the geographic dispersal of its members across

20   the United States render joinder impracticable. *See id.* ("Rule 23(a)(1) is met because joinder is

21   impossible."); *see also In re Volkswagen*, 2016 WL 4010049, at *10 (finding numerosity satisfied

22   in context of the 2.0-liter Settlement "because joinder is impractical"); *see Palmer v. Stassinos*,

23   233 F.R.D. 546, 549 (N.D. Cal. 2006) ("Joinder of 1,000 or more co-plaintiffs is clearly

24   impractical.").

25                 **2.      There Are Common Questions of Both Law and Fact.**

26          Further, common questions of law and fact apply to each of the Class Member's claims.

27   "Federal Rule of Civil Procedure 23(a)(2) conditions class certification on demonstrating that

28   members of the proposed class share common 'questions of law or fact.'" *Stockwell v. City &*

1342830.4                              - 18 -                    PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
                                                                 THE BOSCH CLASS ACTION SETTLEMENT
                                                                 MDL 2672 CRB (JSC)

1   *Cty. of San Francisco*, 749 F.3d 1107, 1111 (9th Cir. 2014).  The "commonality requirement has

2   been 'construed permissively,' and its requirements deemed 'minimal.'"  *Estrella v. Freedom*

3   *Fin'l Network,* No. C 09-03156 SI, 2010 WL 2231790, at *25 (N.D. Cal. June 2, 2010) (quoting

4   *Hanlon*, 150 F.3d at 1020).  "The existence of shared legal issues with divergent factual

5   predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies

6   within the class." *Hanlon*, 150 F.3d at 1019.  Assessing commonality requires "a precise

7   understanding of the nature of the underlying claims." *Parsons v. Ryan*, 754 F.3d 657, 676 (9th

8   Cir. 2014) (citing *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194–95

9   (2013)).  This allows courts to determine if the class' "claims . . . depend upon a common

10  contention" that is "of such a nature that it is capable of classwide resolution—which means that

11  determination of its truth or falsity will resolve an issue that is central to the validity of each one

12  of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  The

13  commonality "analysis does not turn on the number of common questions, but on their relevance

14  to the factual and legal issues at the core of the purported class' claims." *Jimenez v. Allstate Ins.*

15  *Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 2835 (2015).  Indeed, "'[e]ven

16  a single question of law or fact common to the members of the class will satisfy the commonality

17  requirement." *Dukes*, 564 U.S. at 369.

18       Courts routinely find commonality where the class' claims arise from a defendant's

19  uniform course of conduct.  *See, e.g.*, *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482,

20  488 (C.D. Cal. 2006) ("The Court finds that the class members' claims derive from a common

21  core of salient facts, and share many common legal issues. These factual and legal issues include

22  the questions of whether Allianz entered into the alleged conspiracy and whether its actions

23  violated the RICO statute.  The commonality requirement of Rule 23(a)(2) is met."); *Cohen v.*

24  *Trump*, 303 F.R.D. 376, 382 (S.D. Cal. 2014) ("Here, Plaintiff argues his RICO claim raises

25  common questions as to 'Trump's scheme and common course of conduct, which ensnared

26  Plaintiff[] and the other Class Members alike.'  The Court agrees."); *Spalding v. City of Oakland*,

27  No. C11-2867 TEH, 2012 WL 994644, at *8 (N.D. Cal. Mar. 23, 2012) (commonality found

28  where plaintiffs "allege[] a common course of conduct that is amenable to classwide resolution");

1   *Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 102 F.R.D. 457 (N.D. Cal.

2   1983) ("commonality requirement is satisfied where it is alleged that the defendants have acted in

3   a uniform manner with respect to the class"); *see also Suchanek v. Sturm Foods, Inc.*, 764 F.3d

4   750, 756 (7th Cir. 2014) (finding that "where the same conduct or practice by the same defendant

5   gives rise to the same kind of claims from all class members, there is a common question").

6       Here, Class Members' "claims arise from Volkswagen's and Bosch's common course of

7   conduct." *In re Volkswagen*, 2017 WL 672820, at *6; *see also In re Volkswagen*, 2016 WL

8   4010049, at *10 (finding class members' "claims arise from Volkswagen's common course of

9   conduct" in context of 2.0-liter Settlement).  Indeed, Plaintiffs allege that "the common questions

10  of fact relate to Bosch's involvement in Volkswagen's fraudulent scheme to deceive state and

11  federal regulatory authorities by installing in 2.0- and 3.0-liter diesel engine vehicles the designed

12  defeat device." *In re Volkswagen*, 2017 WL 672820, at *6; *see also In re Volkswagen*, 2016 WL

13  4010049, at *10 (finding common questions of fact to include "Volkswagen's fraudulent scheme

14  to deceive state and federal regulatory authorities by installing in its 2.0-liter diesel engine

15  vehicles the defeat device designed").  Bosch's alleged common course of conduct raises

16  common questions of law and fact, the resolution of which will generate common answers "apt to

17  drive the resolution of the litigation" for the Settlement Class as a whole.  *Dukes*, 564 U.S. at 350.

18  And as Plaintiffs allege that the Class's "injuries derive from [Bosch's] alleged 'unitary course of

19  conduct,'" they have "'identified a unifying thread that warrants class treatment.'"  *Sykes v. Mel*

20  *Harris & Assocs. LLC*, 285 F.R.D. 279, 290 (S.D.N.Y. 2012).

21      As this Court recognized when granting preliminary approval, "[w]ithout class

22  certification, individual Class Members would be forced to separately litigate the same issues of

23  law and fact which arise from Bosch's involvement in Volkswagen's use of the defeat device and

24  from Volkswagen's and Bosch's alleged common course of conduct." *In re Volkswagen*, 2017

25  WL 672820, at *6 (citing *In re Celera Corp. Sec. Litig.*, No. 5:10-CV-02604-EJD, 2014 WL

26  722408, at *3 (N.D. Cal. Feb. 25, 2014) (finding commonality met where plaintiffs raised

27  questions of law or fact that would be addressed by other putative class members pursuing similar

28  claims)).  The same was true with the classes in the context of the Volkswagen Settlements.  *See*

*In re Volkswagen*, 2017 WL 672727, at \*13; *In re Volkswagen*, 2016 WL 4010049, at \*10.

Accordingly, commonality is satisfied here.

### 3. The Settlement Class Representatives' Claims Are Typical of Other Class Members' Claims.

The proposed Settlement Class Representatives' claims are also typical of other

Settlement Class Members' claims.  They include both owners and lessees of 2.0-liter and 3.0-

liter Eligible Vehicles.  "Rule 23(a)(3) requires that 'the claims or defenses of the representative

parties are typical of the claims or defenses of the class.'"  *Parsons v. Ryan*, 754 F.3d at 657, 685

(9th Cir. 2014) (quoting Fed. R. Civ. P. 23(a)(3)).  "Like the commonality requirement, the

typicality requirement is 'permissive' and requires only that the representative's claims are

'reasonably co-extensive with those of absent class members; they need not be substantially

identical.'"  *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F.3d

at 1020). "The test of typicality is 'whether other members have the same or similar injury,

whether the action is based on conduct which is not unique to the named plaintiffs, and whether

other class members have been injured by the same course of conduct.'"  *Evon v. Law Offices of*

*Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) (quoting *Hanon v. Dataproducts Corp.*, 976

F.2d 497, 508 (9th Cir. 1992)).  Accordingly, the typicality requirement "assure[s] that the

interest of the named representative aligns with the interests of the class."  *Wolin v. Jaguar Land*

*Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting *Hanon* , 976 F.2d at 508).

Thus, where a plaintiff suffered a similar injury and other class members were injured by the

same course of conduct, typicality is satisfied.  *See Parsons*, 754 F.3d at 685.

Here, the same course of conduct that injured Settlement Class Representatives also

injured other Class Members.  Indeed, as the Court found when granting preliminary approval,

"[t]he Settlement Class Representatives' claims are based on the same pattern of Volkswagen's

and Bosch's wrongdoing as those brought on behalf of Class Members."  *In re Volkswagen*, 2017

WL 672820, at \*7.  "The Settlement Class Representatives, as well as Class Members, purchased

or leased an Eligible Vehicle equipped with a defeat device."  *Id.*  Thus, "[t]heir claims are typical

because they were subject to the same conduct as other Class Members, and as a result of that

1    conduct, the Settlement Class Representatives and Class Members suffered the same injury." *Id.*

2    The Settlement Class Representatives, like other Class Members, would not have purchased or

3    leased their vehicles had the illegal defeat devices been disclosed because the Eligible Vehicles

4    would not have been approved for sale or lease in the U.S. in the first place.  Finally, the

5    Settlement Class Representatives and the other Class Members will similarly—and equitably—

6    benefit from the relief provided by the Settlement.

7          Accordingly, Rule 23's typicality requirement is satisfied here.  *See In re Volkswagen*,

8    2016 WL 4010049, at *11 (finding typicality satisfied in context of the 2.0-liter Settlement).

9              **4.      The Settlement Class Representatives and Settlement Class Counsel**
                        **Fairly and Adequately Protect the Interests of the Settlement Class.**
10

11          Adequacy of representation is met.  Rule 23(a)(4) requires "the representative parties [to]

12   adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "This requirement is

13   rooted in due-process concerns—'absent class members must be afforded adequate representation

14   before entry of a judgment which binds them.'"  *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d

15   1157, 1165 (9th Cir. 2013) (quoting *Hanlon*, 150 F.3d at 1020).  Courts engage in a two-prong

16   inquiry: "'(1) do the named plaintiffs and their counsel have any conflicts of interest with other

17   class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously

18   on behalf of the class?'"  *Evon*, 688 F.3d at 1031 (quoting *Hanlon*, 150 F.3d at 1020).  Here, as

19   with the Volkswagen Settlements, the answer to question one is no, and the answer to question

20   two is a resounding yes.  *See In re Volkswagen*, 2017 WL 672820, at *7 ("First, nothing in the

21   record suggests the Settlement Class Representatives or Class Counsel have any conflicts of

22   interests with other potential Class Members. . . . Second, the Court is satisfied that the Settlement

23   Class Representatives and Class Counsel have and will continue to vigorously prosecute the

24   action on behalf of the class."); *See In re Volkswagen*, 2017 WL 672727, at *13 (holding same in

25   the context of 3.0-liter Settlement); *See In re Volkswagen*, 2016 WL 4010049, at *11 (holding

26   same in the context of 2.0-liter Settlement).

27

28

**a.**     **The Interests of the Settlement Class Representatives Are Directly Aligned with those of the Absent Class Members and the Settlement Class Representatives Have Diligently Pursued the Action on Their Behalf.**

The Settlement Class Representatives do not have any interests antagonistic to the other Class Members and will continue to vigorously protect their interests, as they have for the past year.  *See Clemens v. Hair Club for Men, LLC*, No. C 15-01431 WHA, 2016 WL 1461944, at *3 (N.D. Cal. April 14, 2016).  Indeed, as the Court previously noted:

> "[T]he Settlement Class Representatives affirm they 'and Class Members are entirely aligned in their interest in proving that Volkswagen misled them and share the common goal of obtaining redress for their injuries.' The Court finds no reason to believe otherwise."

*In re Volkswagen*, 2017 WL 672820, at *7 (quoting *In re Volkswagen*, 2016 WL 4010049, at *11).

As in the Volkswagen Settlements, the Settlement Class Representatives here understand their duties as class representatives, have agreed to consider the interests of absent Settlement Class Members, and have actively participated in this litigation.  *See id.*; *see also Trosper v. Styker Corp.*, No. 13-CV-0607-LHK, 2014 WL 4145448, at *43 (N.D. Cal. Aug. 21, 2014) ("All that is necessary is a rudimentary understanding of the present action and . . . a demonstrated willingness to assist counsel in the prosecution of the litigation.").  Here, for example, the Settlement Class Representatives have provided factual information pertaining to their purchase or lease of an Eligible Vehicle in order to assist in drafting the complaints in this litigation.  *In re Volkswagen*, 2017 WL 672820, at *7.  The Settlement Class Representatives have searched for, and provided, relevant documents and information to their counsel, and have assisted in preparing discovery responses and completing comprehensive fact sheets.  *Id.*  Moreover, the Settlement Class Representatives have regularly communicated with their counsel regarding various issues pertaining to this case, including the terms and process of the proposed Settlement, and they will continue to do so until the Settlement is approved and its administration completed.  *Id.*  All of this together is more than sufficient to meet the adequacy requirement of Rule 23(a)(4).  *See id.*

**b.**    **Settlement Class Counsel Are Adequate Representatives of the Settlement Class.**

Rule 23(g) requires this Court to appoint class counsel to represent the Settlement Class. *See* Fed. R. Civ. P. 23(g).  At the outset of the MDL, as part of a competitive application process before the Court, Lead Counsel and each member of the PSC established, and the Court recognized, their qualifications, experience, and commitment to the successful prosecution of this MDL.  Importantly, the criteria that the Court considered in appointing Lead Counsel and the PSC was substantially similar to the considerations set forth in Rule 23(g).  *Compare* Dkt. Nos. 336 and 1084, *with Clemens*, 2016 WL 1461944, at *3.  In its Preliminary Approval Order, the Court held "there were no doubts regarding Class Counsel's adequacy," and repeated its holding from the 2.0-liter Settlement:

> The Court appointed Lead Plaintiffs' Counsel and the 21 PSC members after a competitive application process, during which the Court received approximately 150 applications. They are qualified attorneys with extensive experience in consumer class action litigation and other complex cases. The extensive efforts undertaken thus far in this matter are indicative of Lead Plaintiffs' Counsel's and the PSC's ability to prosecute this action vigorously. The Court therefore finds the Settlement Class Representatives and Class Counsel are adequate representatives.

*In re Volkswagen*, 2017 WL 672820, at *8 (quoting *In re Volkswagen*, 2016 WL 4010049 at *11); *see also* 12/22/16, Status Conf. Tr. at 14:7-22 (Dkt. No. 2757) ("I am well aware of the extraordinary effort that the lawyers for all the parties have put into this. . . . Lawyers have families. Lawyers have other obligations. Lawyers have lives. And they have sort of taken all of that, put it to the side, and worked on this task of resolving this issue because of the serious environmental concerns that were raised by this litigation."); 5/24/16 Status Conf. Tr. at 8:6-14 (Dkt. No. 1535) ("I have been advised by the Settlement Master that all of you have devoted substantial efforts, weekends, nights, and days, and perhaps at sacrifice to your family.").

The Court need look no further than the significant benefits already obtained for the Class through Class Counsel's zealous and efficient prosecution of this action, and their ongoing efforts on behalf of the TDI consumers.  Accordingly, as this Court previously found, Class Counsel are qualified and adequate to represent the interests of the instant Settlement.  *See In re Volkswagen*, 2017 WL 672820, at *7-8; *see also In re Volkswagen*, 2017 WL 672727, at *14 (appointing Lead

1  Counsel and the PSC as Settlement Counsel in the context of 3.0-liter Settlement); *In re*

2  *Volkswagen*, 2016 WL 6248426, at \*28 (confirming appointment of Lead Counsel and the PSC as

3  Settlement Counsel in the context of 2.0-liter Settlement).

4  **B.      The Requirements of Rule 23(b)(3) Are Met.**

5      In addition to the requirements of Rule 23(a), the Court must also find that of Rule 23(b)'s

6  requirements are satisfied.  A Rule 23(b)(3) class may be certified where, as here: (i) "questions

7  of law or fact common to class members predominate over any questions affecting only

8  individual members"; and (ii) a class action is "superior to other available methods for fairly and

9  efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Both requirements are met.

10  **1.      Common Issues of Law and Fact Predominate.**

11      First, common questions of law and fact predominate over any individual questions.  "The

12  predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are

13  more prevalent or important than the non-common, aggregation-defeating, individual issues.'"

14  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) (quoting 2 W. Rubenstein, *Newberg on*

15  *Class Actions* § 4:49 at 195-96 (5th ed. 2012)).  "When 'one or more of the central issues in the

16  action are common to the class and can be said to predominate, the action may be considered

17  proper under Rule 23(b)(3) even though other important matters will have to be tried separately,

18  such as damages or some affirmative defenses peculiar to some individual class members.'" *Id.*

19  (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Prac. & Proc. § 1778, at 123-24 (3d ed.

20  2005)).  Instead, at its core, "[p]redominance is a question of efficiency." *Butler v. Sears,*

21  *Roebuck & Co.*, 702 F.3d 359, 362 (7th Cir. 2012).  Thus, "[w]hen common questions present a

22  significant aspect of the case and they can be resolved for all members of the class in a single

23  adjudication, there is clear justification for handling the dispute on a representative rather than on

24  an individual basis." *Hanlon*, 150 F.3d at 1022.

25      The Ninth Circuit favors class treatment of fraud claims stemming from a "common

26  course of conduct," like the scheme alleged here. *See In re First Alliance Mortg. Co.*, 471 F.3d

27  977, 990 (9th Cir. 2006); *Hanlon*, 150 F.3d at 1022-1023.  Even outside of the settlement context,

28  predominance is readily met in cases asserting RICO and consumer claims arising from a

fraudulent scheme that injured each plaintiff.  *See Amchem Prods.*, 521 U.S. at 625; *Wolin v.*

*Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1173, 1176 (9th Cir. 2010) (consumer claims

based on uniform omissions are readily certifiable where the claims are "susceptible to proof by

generalized evidence," even if individualized issues remain); *Friedman v. 24 Hour Fitness USA,*

*Inc.*, No. CV 06-6282 AHM (CTx), 2009 WL 2711956, at *22-23 (C.D. Cal. Aug. 25, 2009)

("Common issues frequently predominate in RICO actions that allege injury as a result of a single

fraudulent scheme."); *see also Klay v. Humana, Inc.*, 382 F.3d 1241, 1256, 1257 (11th Cir. 2004)

(upholding class certification of RICO claim where "all of the defendants operate nationwide and

allegedly conspired to underpay doctors across the nation, so the numerous factual issues relating

to the conspiracy are common to all plaintiffs . . . [and the] "corporate policies [at issue] . . .

constitute[d] the very heart of the plaintiffs' RICO claims").[4]

Here, too, questions of law or fact common to the claims of the Class Members

predominate over any questions affecting only individual members.  As the Court found in its

Preliminary Approval Order, "Plaintiffs allege that Bosch and Volkswagen perpetrated the same

fraud in the same manner against all Class Members. If the Court were to find that Bosch and

Volkswagen have indeed engaged in a deceptive and fraudulent scheme, such a finding would

---

[4] The Rule 23(b)(3) predominance inquiry in the context of the certification of a nationwide
settlement class involving various state consumer protection law claims was the subject of an
extensive *en banc* decision by the Third Circuit in *Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d
Cir. 2011).  In affirming certification of a nationwide settlement class, the Third Circuit's
predominance inquiry was informed by "three guideposts": (1) "commonality is informed by the
defendant's conduct as to all class members and any resulting injuries common to all class
members"; (2) "variations in state law do not necessarily defeat predominance"; and (3)
"concerns regarding variations in state law largely dissipate when a court is considering the
certification of a settlement class."  *Sullivan*, 667 F.3d at 297.

  This Court recently adopted the rationale in *Sullivan*, foreshadowed by the Ninth Circuit
in *Hanlon*, that "state law variations are largely 'irrelevant to certification of a settlement class.'"
*Id.* at 304 (quoting *Sullivan*, 667 F.3d at 304); *see Wakefield v. Wells Fargo & Co.*, No. C 12-
05053 LB, 2014 WL 7240339, at *12-13 (N.D. Cal. Dec. 18, 2014); *In re Cathode Ray Tube
(CRT) Antitrust Litig.*, No. C-07-5944-SC, 2016 WL 721680, at *14-15  (N.D. Cal. Jan. 28,
2016), *report & recommendation adopted*, 2016 WL 3648478 (N.D. Cal. July 7, 2016).
Moreover, in the settlement context, the Court need not "differentiate[e] within a class based on
the strength or weakness of the theories of recovery."  *In re Transpacific Passenger Air Transp.
Antitrust Litig.*, No. C 07-05634 CRB, 2015 WL 3396829, at *20 (N.D. Cal. May 26, 2015)
(quoting *Sullivan*, 667 F.3d at 328); *Rodman v. Safeway, Inc.*, No. 11-cv-03003-JST, 2014 WL
988992, at *54-56 (N.D. Cal. Mar. 9, 2014) (citing *Sullivan*, 667 F.3d at 304-07).  Here, like in
*Sullivan*, any material variations in state law do not preclude a finding of predominance, given the
uniformity of Bosch's alleged conduct in the scheme and common course of conduct.

apply to all of the Class Members' claims." *In re Volkswagen*, 2017 WL 672820, at *8; *see In re Volkswagen*, 2017 WL 672727, at *14 (finding same as to plaintiffs' claims against Volkswagen in the context of the 3.0-liter Settlement); *In re Volkswagen*, 2016 WL 4010049, at *12 (finding same as to plaintiffs' claims against Volkswagen in the context of the 2.0-liter Settlement); *see also* ¶¶ 238-296. "Plaintiffs also allege a common and unifying injury, as their and other Class Members' injuries arise solely from Bosch's and Volkswagen's use of the defeat device." *In re Volkswagen*, 2017 WL 672820, at *8. As in the Volkswagen Settlements, here too, Plaintiffs satisfy the predominance requirement. *See In re Volkswagen*, 2017 WL 672727, at *14 (finding predominance met in the context of 3.0-liter Settlement); *In re Volkswagen*, 2016 WL 4010049, at *12 (finding same in the context of 2.0-liter Settlement).

### 2. Class Treatment Is Superior in This Case.

Finally, class treatment is superior. Pursuant to Rule 23(b)(3), a class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This factor "requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. In other words, it "requires the court to determine whether maintenance of this litigation as a class action is efficient and whether it is fair." *Wolin*, 617 F.3d at 1175-76. Under Rule 23, "the Court evaluates whether a class action is a superior method of adjudicating plaintiff's claims by evaluating four factors: '(1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action.'" *Trosper*, 2014 WL 4145448, at *17 (quoting *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 469 (N.D. Cal. 2004)).

There can be little doubt that class treatment here is superior to the litigation of thousands of individual consumer actions. "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for

1    recovery." *Hanlon*, 150 F.3d at 1023; *see also Wolin*, 617 F.3d at 1176 ("Forcing individual

2    vehicle owners to litigate their cases, particularly where common issues predominate for the

3    proposed class, is an inferior method of adjudication.").  The damages sought by each Class

4    Member here, while related to an important purchase, are not so large as to weigh against

5    certification of a class action. *See Smith v. Cardinal Logistics Mgmt. Corp.*, No. 07-2104 SC,

6    2008 WL 4156364, at *32-33 (N.D. Cal. Sept. 5, 2008) (class members had a small interest in

7    personally controlling the litigation even where the average amount of damages were $25,000-

8    $30,000 per year of work); *see also Walker v. Life Ins. Co. of the Sw.*, No. CV 10-9198 JVS

9    (RNBx), 2012 WL 7170602, at *16 (C.D. Cal. Nov. 9, 2012) (finding that each class member did

10   not have "a greater interest in pursuing individual claims," even though it was "not the typical

11   case of thousands of class members with very low amounts in controversy").

12        The sheer number of separate trials that would otherwise be required also weighs in favor

13   of certification.  Indeed, "[i]f Class Members were to bring individual lawsuits against Bosch,

14   each Member would be required to prove the same wrongful conduct to establish liability and

15   thus would offer the same evidence." *In re Volkswagen*, 2017 WL 672820, at *8.  "Given that

16   Class Members number in the hundreds of thousands, there is the potential for just as many

17   lawsuits with the possibility of inconsistent rulings and results." *Id.*  "Thus, classwide resolution

18   of their claims is clearly favored over other means of adjudication, and the proposed Settlement

19   resolves Class Members' claims at all once." *Id.*

20        Moreover, all private federal actions seeking relief for the Class have already been

21   transferred to this District for consolidated MDL pretrial proceedings.  Dkt. No. 950.  That the

22   Judicial Panel on Multidistrict Litigation consolidated all related federal consumer cases in an

23   MDL before this Court is a clear indication that a single proceeding is preferable to a multiplicity

24   of individual lawsuits.  The government suits concerning Volkswagen emissions are pending as

25   part of this MDL too, enabling this Court to approve and enforce all of the provisions of each of

26   these settlements.  The certification of the Settlement Class enables and completes this

27   advantageous unified jurisdiction.  For these reasons, "class action treatment is superior to other

28   methods and will efficiently and fairly resolve the controversy." *In re Volkswagen*, 2017 WL

672820, at *8; *see In re Volkswagen*, 2017 WL 672727, at *14 (finding superiority satisfied in context of 3.0-liter Settlement); *see also In re Volkswagen*, 2016 WL 4010049, at *12 (finding superiority satisfied in context of 2.0-liter Settlement).

Finally, the Class is defined by objective, transactional facts—the purchase or lease of an Eligible Vehicle—and there is no dispute that Class Members can easily be identified by reference to the books and records of Volkswagen and their dealers.  Accordingly, to the extent required, the Class is readily ascertainable.  *See Moreno v. Autozone, Inc.*, 251 F.R.D. 417, 421 (N.D. Cal. 2008) (Breyer, J.) ("A class is ascertainable if it identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description.").

Because the class action mechanism provides the superior means to effectively and efficiently resolve this controversy, and as the other requirements of Rule 23 are each satisfied, final approval of the Court's certification of the Settlement Class is appropriate.  *See In re Volkswagen*, 2017 WL 672820, at *9 (certifying the Settlement Class for settlement purposes); *see also In re Volkswagen*, 2016 WL 4010049, at *12 (finding plaintiffs satisfied the Rule 23(a) and (b)(3) requirements and confirming certification of the class in the context of 2.0-liter Settlement).

## VI.   THE APPROVED NOTICE PROGRAM GAVE THE BEST PRACTICABLE NOTICE TO CLASS MEMBERS AND SATISFIED RULE 23 AND DUE PROCESS.

In its Preliminary Approval Order, the Court held that "the Notice Plan is adequate" because "it provides the best practicable notice that is reasonably calculated to inform Class Members of this Settlement."  *In re Volkswagen*, 2017 WL 672820, at *12.  That Notice Program, which is currently being implemented, meets and exceeds all legal requirements.  Supplementing the comprehensive individual notice and concurrent media plan for the contemporaneous 3.0-liter Settlement, the Notice Program also included direct First Class U.S. Mail mailings to confirmed addresses of Class Members, as well as email notifications; extensive print and digital media campaigns; and a comprehensive website and a toll-free telephone number.  To quantify the scope and scale of the Notice Program:  (a) 949,563 Short Form Notices have been directly mailed to

Class Members; (b) 855,240 Email Notices have been sent to Class Members; (c) the informational release has been issued to 5,000 print and broadcast and 5,400 online press outlets throughout the United States; and (d) more than 4,152 sponsored search listings have been placed on Google, Yahoo! and Bing.

Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Publication and other notice techniques are sufficient where individual notice to the Class is impractical. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). Incorporating both direct and indirect notification methods, and with the benefit of the extensive notice done in the Volkswagen Settlements, the Notice Program here takes every reasonable step to ensure no Class Member is unaware of the Settlement. The ongoing implementation of the Notice Program is fully consistent with this Court's Preliminary Approval Order.

In conjunction with preliminary approval, the Court analyzed the content of the Long-Form Notice and the Short Form Notice in light of the requirements of Rule 23(c)(2)(B), and determined that they "satisfy the elements" of that Rule. *In re Volkswagen*, 2017 WL 672820, at *13. As Plaintiffs demonstrated in seeking preliminary approval of the Settlement, the Long Form Notice explains how Class Members may object to, or opt out of, the Settlement, and how Class Members may address the Court at the final approval hearing. It includes a series of questions and answers designed to explain the benefits and other details of the Settlement in clear terms in a well-organized and reader-friendly format. It also identifies by name and furnishes contact information for Lead Plaintiffs' Counsel and PSC members who can answer Class Members' questions, and indicates that additional information about the Settlement can be found on the Settlement Website (https://www.boschvwsettlement.com) or by calling the toll-free telephone number (1-844-305-1928) specifically established to provide Class Members with additional information about the Settlement and to answer any questions they may have about the Settlement. The Email Notice contains information in easily digestible bullet-point format that advises class members of the compensation under the Settlement, deadlines for objecting to and

1   opting out of the Settlement, deadlines for filing a claim in the Bosch Settlement in the event

2   class members exclude themselves from the Volkswagen Settlement(s), and the date of the Final

3   Approval Hearing. It also directs class members to the Settlement Website and the toll-free

4   telephone number for more information.  The Short Form Notice conveys the basic structure of

5   the Settlement and was designed to capture Class Members' attention with clear, concise, plain

6   language.

7        In addition to direct mailings, emails, and print and broadcast informational releases, a

8   digital campaign focused on stimulating awareness about the Settlement and encouraging Class

9   Members' participation in the Settlement has been implemented.  Each form of notice was

10  designed to assist Class Members in obtaining full details of the Settlement by directing them to

11  the Settlement Website and/or the toll-free telephone number.  All of the relevant background

12  information and the Settlement documents (including the Long Form Notice and the Claim Form)

13  have been made available through both the Settlement Website and the toll-free telephone

14  number.  The interactive Settlement Website currently allows Class Members to run a vehicle

15  look-up by VIN number to determine their eligibility to participate in the Settlement.  The

16  Settlement Website will post periodic updates as additional information becomes available, and as

17  the claims process opens, in order to facilitate Class Members' claim submissions.  A final report

18  on the completion of the Notice Program, including updating of addresses for returned mail, will

19  be submitted by Declaration from the Court-appointed notice provider as part of the April 28,

20  2017, reply submissions.

21       As discussed above, direct mail notice to Class Members remains the gold standard for

22  adequate class-wide notice under Rule 23(b)(2)(C), Rule 23(e)(1), and principles of due process.

23  Here, all addresses gathered in the Volkswagen Settlements were used, to assure delivery of

24  notice, and many Class Members received multiple notices.  Indeed, the majority of the Class

25  Members received e-mail notice, as well as U.S. mail notice.  The other forms of notice

26  implemented in this case, including publication and email notice, ordinarily suffice even absent

27  direct notice by mail.  *See, e.g.*, *In re Toys "R" Us-Del., Inc. Fair & Accurate Credit*

28  *Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 449 (C.D. Cal. 2014) (approving notice by

1   publication in *USA Today* and issuing final approval of settlement where "[t]he notice clearly

2   apprises class members of the action and of their legal options."); *In re Netflix Priv. Litig.*, No.

3   5:11-CV-00379 EJD, 2013 WL 1120801, at *9 (N.D. Cal. Mar. 18, 2013) (approving notice by

4   email and publication and issuing final approval of settlement).  The Notice Program being

5   implemented in this case far surpasses the applicable legal requirements and ensures that all Class

6   Members will receive adequate notice of the Settlement and an opportunity to object to, or opt out

7   of, the Settlement.

8   **VII.    <u>CONCLUSION</u>**

9          For the foregoing reasons, Settlement Class Representatives and Settlement Class Counsel

10  respectfully request that the Court confirm the certification of the Settlement Class and grant final

11  approval to the Settlement.

12  Dated:  March 24, 2017                     Respectfully submitted,

13                                             LIEFF CABRASER HEIMANN &
                                               BERNSTEIN, LLP
14
                                               By:  */s/ Elizabeth J. Cabraser*
15
                                               Elizabeth J. Cabraser
16                                             LIEFF CABRASER HEIMANN &
                                               BERNSTEIN, LLP
17                                             275 Battery Street, 29th Floor
                                               San Francisco, CA  94111
18                                             Telephone: 415.956.1000
                                               Facsimile:  415.956.1008
19                                             E-mail: ecabraser@lchb.com

20                                             *Plaintiffs' Lead Counsel*

21  Benjamin L. Bailey                         Roland K. Tellis
    BAILEY GLASSER LLP                         BARON & BUDD, P.C.
22  209 Capitol Street                         15910 Ventura Boulevard, Suite 1600
    Charleston, WV 25301                       Encino, CA  91436
23  Telephone: 304.345.6555                    Telephone: 818.839.2320
    Facsimile:  304.342.1110                   Facsimile:  818.986.9698
24  E-mail: Bbailey@baileyglasser.com          E-mail: trellis@baronbudd.com

25

26

27

28

1   W. Daniel "Dee" Miles III
    BEASLEY ALLEN LAW FIRM
2   218 Commerce Street
    Montgomery, AL  36104
3   Telephone: 800.898.2034
    Facsimile:  334.954.7555
4   E-mail: dee.miles@beasleyallen.com

5   David Boies
    BOIES, SCHILLER & FLEXNER LLP
6   333 Main Street
    Armonk, NY  10504
7   Telephone: 914.749.8200
    Facsimile:  914.749.8300
8   E-mail: dboies@bsfllp.com

9
    James E. Cecchi
10  CARELLA, BYRNE, CECCHI,
    OLSTEIN, BRODY & AGNELLO P.C.
11  5 Becker Farm Road
    Roseland, NJ  07068-1739
12  Telephone: 973.994.1700
    Facsimile:  973.994.1744
13  E-mail: jcecchi@carellabyrne.com

14  Frank Mario Pitre
    COTCHETT PITRE & McCARTHY LLP
15  840 Malcolm Road, Suite 200
    Burlingame, CA  94010
16  Telephone: 650.697.6000
    Facsimile:  650.697.0577
17  E-mail: fpitre@cpmlegal.com

18  Adam J. Levitt
    GRANT & EISENHOFER P.A.
19  30 North LaSalle Street, Suite 2350
    Chicago, IL  60602
20  Telephone: 312.610.5400
    Facsimile:  312.214.0001
21  E-mail: alevitt@gelaw.com

22  Michael D. Hausfeld
    HAUSFELD
23  1700 K Street, N.W., Suite 650
    Washington, DC  20006
24  Telephone: 202.540.7200
    Facsimile:  202.540.7201
25  E-mail: mhausfeld@hausfeld.com

    Lesley E. Weaver
    BLEICHMAR FONTI & AULD LLP
    1999 Harrison Street, Suite 670
    Oakland, CA 94612
    Telephone: 415.455.4003
    Facsimile: 415.445.4020
    E-mail: lweaver@bfalaw.com

    J. Gerard Stranch IV
    BRANSTETTER, STRANCH & JENNINGS,
    PLLC
    223 Rosa L. Parks Avenue, Suite 200
    Nashville, TN  37203
    Telephone: 615.254.8801
    Facsimile: 615.250.3937
    E-mail: gerards@bsjfirm.com

    David Seabold Casey, Jr.
    CASEY GERRY SCHENK FRANCAVILLA
    BLATT & PENFIELD, LLP
    110 Laurel Street
    San Diego, CA  92101-1486
    Telephone: 619.238.1811
    Facsimile:  619.544.9232
    E-mail: dcasey@cglaw.com

    Rosemary M. Rivas, Esq.
    LEVI & KORSINSKY LLP
    44 Montgomery Street, Suite 650
    San Francisco, CA 94104
    Telephone: 415.291.2420
    Facsimile:  415.484.1294
    E-mail:  rrivas@zlk.com

    Steve W. Berman
    HAGENS BERMAN
    1918 8th Avenue, Suite 3300
    Seattle, WA  98101
    Telephone: 206.623.7292
    Facsimile: 206.623.0594
    E-mail: steve@hbsslaw.com

    Michael Everett Heygood
    HEYGOOD, ORR & PEARSON
    6363 North State Highway 161, Suite 450
    Irving, TX  75038
    Telephone: 214.237.9001
    Facsimile:  214.237-9002
    E-mail: Michael@hop-law.com

26

27

28

Lynn Lincoln Sarko
KELLER ROHRBACK L.L.P.
1201 3rd Avenue, Suite 3200
Seattle, WA  98101-3052
Telephone: 206.623.1900
Facsimile:  206.623.3384
E-mail: lsarko@kellerrohrback.com

Joseph F. Rice
MOTLEY RICE, LLC
28 Bridgeside Boulevard
Mount Pleasant, SC  29464
Telephone: 843.216.9000
Facsimile:  843.216.9450
E-mail: jrice@motleyrice.com

Paul J. Geller
ROBBINS GELLER RUDMAN &
DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone: 561.750.3000
Facsimile:  561.750.3364
E-mail: pgeller@rgrdlaw.com

Roxanne Barton Conlin
ROXANNE CONLIN & ASSOCIATES, P.C.
319 Seventh Street, Suite 600
Des Moines, IA  50309
Telephone: 515.283.1111
Facsimile:  515.282.0477
E-mail: roxlaw@aol.com

Christopher A. Seeger
SEEGER WEISS LLP
77 Water Street
New York, NY  10005-4401
Telephone: 212.584.0700
Facsimile:  212.584.0799
E-mail: cseeger@seegerweiss.com

Jayne Conroy
SIMMONS HANLY CONROY LLC
112 Madison Avenue
New York, NY  10016-7416
Telephone: 212.784.6400
Facsimile:  212.213.5949
E-mail: jconroy@simmonsfirm.com

Robin L. Greenwald
WEITZ & LUXENBERG P.C.
700 Broadway
New York, NY  10003
Telephone: 212.558.5500
Facsimile:  212.344.5461
E-mail: rgreenwald@weitzlux.com

*Plaintiffs' Settlement Class Counsel*

1

## <u>CERTIFICATE OF SERVICE</u>

2      I hereby certify that, on March 24, 2017, service of this document was accomplished

3  pursuant to the Court's electronic filing procedures by filing this document through the ECF

4  system.

5

6                                     /s/ *Elizabeth J. Cabraser*_____
                                      Elizabeth J. Cabraser

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
THE BOSCH CLASS ACTION SETTLEMENT
MDL 2672 CRB (JSC)