# EXHIBIT A

## SECOND PARTIAL SETTLEMENT AGREEMENT

1. Parties.  The parties ("Parties") to this Second Partial Settlement Agreement ("Agreement") are Volkswagen AG, Audi AG, Volkswagen Group of America, Inc. (d/b/a Volkswagen of America, Inc. or Audi of America, Inc.), Audi of America, L.L.C., and Volkswagen Group of America Chattanooga Operations LLC (collectively, "Volkswagen"), Dr. Ing. h.c. F. Porsche AG and Porsche Cars North America, Inc. (together, "Porsche") (Volkswagen and Porsche together, "Defendants") and the Attorneys General of the States of Connecticut, Delaware, Maine, New York, Oregon, Rhode Island, Vermont, and Washington, and the Commonwealths of Massachusetts and Pennsylvania, on behalf of their respective states (collectively, "the Section 177 States" or "the States") and, where authorized, their States' environmental agencies and departments (collectively, "the State Environmental Agencies").[1]

2. Previous Settlements. Defendants have executed several previous settlements. These settlements have concerned Defendants' "Covered Conduct," defined herein at paragraph 4, related to certain diesel-powered 2.0-liter and 3.0-liter vehicles, the "Subject Vehicles," defined herein at paragraph 3. Aspects of these settlements are referenced herein, as set forth below.

   (A) First Partial Settlement Agreement.  On June 28, 2016, a 43-state multistate coalition that included all of the Section 177 States except Vermont entered into a Partial Settlement Agreement with Defendants resolving, *inter alia*, those States' "claims that were brought or could be

---

[1] For purposes of this Agreement, the "State Environmental Agencies" are: the Connecticut Department of Energy and Environmental Protection; the Delaware Department of Natural Resources and Environmental Control; the Massachusetts Department of Environmental Protection; the New York State Department of Environmental Conservation; the Oregon Department of Environmental Quality; the Pennsylvania Departments of Environmental Protection and Transportation; the Rhode Island Department of Environmental Management; the Vermont Agency of Natural Resources; the Washington Department of Ecology; and any other such State environmental agency that has the independent authority to pursue, or that may independently authorize the prosecution of, Environmental Claims on behalf of the Section 177 States.

brought under UDAP Laws arising from or related to the Covered Conduct concerning the Subject Vehicles,"[2] but expressly reserving, *inter alia*, "any claims that were brought or could be brought by the States under UDAP Laws for consumer injunctive relief or restitution or other monetary payments to consumers arising from or related to the Covered Conduct concerning the 3.0-liter Subject Vehicles;"[3] and "any claims arising under state environmental laws and regulations, including laws and regulations regarding mobile source emissions, inspection and maintenance of vehicles and/or anti-tampering provisions"[4] (the "First Partial Settlement Agreement").

(B)   On October 25, 2016, the Multidistrict Litigation ("MDL") Court[5] entered a consent decree executed by Volkswagen, the United States, on behalf of the United States Environmental Protection Agency ("DOJ/EPA"), and California, by and through the California Air Resources Board ("CARB") and the California Attorney General ("CA AG") concerning the 2.0-liter Subject Vehicles ("U.S. First Partial Consent Decree").  Volkswagen separately entered into settlement agreements or consent decrees or orders concerning the 2.0 liter Subject Vehicles with California, by and through CARB and the CA AG, entered on September 1, 2016; the Plaintiffs' Steering Committee ("PSC") for consumer class action lawsuits, entered on October 25, 2016; and the Federal Trade Commission ("FTC"), entered on October 25, 2016 (together with the U.S. First Partial Consent Decree, the "2.0-Liter Settlements").

---

[2] *See* First Partial Settlement Agreement, ¶ 8(A)(i).  The capitalized terms contained in the language quoted from the First Partial Settlement Agreement and used in this Agreement have the meanings ascribed to them in the First Partial Settlement Agreement.

[3] *See* First Partial Settlement Agreement, ¶ 8(B)(iv).

[4] *See* First Partial Settlement Agreement, ¶ 8(B)(vi).

[5] The term "MDL" shall refer to the multidistrict litigation styled as *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation,* No. 3:15-md-02672-CRB (N.D. Cal.) (MDL 2672).

(C)   Various proposed settlement documents have been or will be filed in the MDL proceeding to resolve claims concerning the 3.0 Liter Subject Vehicles, including: the Second Partial Consent Decree with DOJ/EPA and California, by and through CARB and the CA AG, lodged on December 20, 2016 ("U.S. Second Partial Consent Decree"); the Third Partial Consent Decree with DOJ/EPA, lodged on January 11, 2017 ("U.S. Third Partial Consent Decree");[6] the PSC's proposed 3.0-Liter Class Action Settlement Agreement, filed on January 31, 2017 and amended February 10, 2017 (the "3.0 Liter Class Action Settlement"); the FTC's proposed Second Partial Stipulated Order, filed on January 31, 2017; and the Second Partial Consent Decree with California, by and through CARB and the CA AG, filed on December 20, 2016 ("California Second Partial Consent Decree") (together, the "3.0-Liter Settlements").

3.   <u>Subject Vehicles</u>.  As used herein, the term "Subject Vehicles" shall mean each and every light duty diesel vehicle equipped with a 2.0-liter or 3.0-liter TDI engine that Volkswagen and Porsche or their respective affiliates sold or offered for sale in, leased or offered for lease in, or introduced or delivered for introduction into commerce in the United States or its states or territories, or imported into the United States or its states or territories, and that is or was purported to have been covered by the following EPA Test Groups:

**2.0-Liter Diesel Models**

| Model Year (MY) | EPA Test Group | Vehicle Make and Model(s) |
| --- | --- | --- |
| 2009 | 9VWXV02.035N 9VWXV02.0U5N | VW Jetta, VW Jetta Sportwagen |
| 2010 | AVWXV02.0U5N | VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2011 | BVWXV02.0U5N | VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2012 | CVWXV02.0U5N | VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2013 | DVWXV02.0U5N | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |

---

[6] The U.S. Third Partial Consent Decree covers both 2.0-liter and 3.0-liter Subject Vehicles.

| 2014 | EVWXV02.0U5N | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen |
|---|---|---|
| 2012 2013 2014 | CVWXV02.0U4S DVWXV02.0U4S EVWXV02.0U4S | VW Passat |
| 2015 | FVGAV02.0VAL | VW Beetle, VW Beetle Convertible, VW Golf, VW Golf Sportwagen, VW Jetta, VW Passat, Audi A3 |

**3.0-Liter Diesel Models**

| Model Year (MY) | EPA Test Groups | Vehicle Make and Model(s) |
|---|---|---|
| 2009 | 9ADXT03.03LD | VW Touareg, Audi Q7 |
| 2010 | AADXT03.03LD | VW Touareg, Audi Q7 |
| 2011 | BADXT03.02UG BADXT03.03UG | VW Touareg Audi Q7 |
| 2012 | CADXT03.02UG CADXT03.03UG | VW Touareg Audi Q7 |
| 2013 | DADXT03.02UG DADXT03.03UG DPRXT03.0CDD | VW Touareg Audi Q7 Porsche Cayenne Diesel |
| 2014 | EADXT03.02UG EADXT03.03UG EPRXT03.0CDD EADXJ03.04UG | VW Touareg Audi Q7 Porsche Cayenne Diesel Audi A6 Quattro, A7 Quattro, A8L, Q5 |
| 2015 | FVGAT03.0NU2 FVGAT03.0NU3 FPRXT03.0CDD FVGAJ03.0NU4 | VW Touareg Audi Q7 Porsche Cayenne Diesel Audi A6 Quattro, A7 Quattro, A8L, Q5 |
| 2016 | GVGAT03.0NU2 GPRXT03.0CDD GVGAJ03.0NU4 | VW Touareg Porsche Cayenne Diesel Audi A6 Quattro, A7 Quattro, A8L, Q5 |

4. <u>Covered Conduct</u>.  As used herein, the term "Covered Conduct" shall mean any and all acts or omissions, including all communications, occurring up to and including the effective date of this Agreement, relating to: (a) the design, installation, presence, or failure to disclose any Defeat Device[7] in

---

[7] The term "Defeat Device" means "an auxiliary emission control device (AECD) that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle

any Subject Vehicle; (b) the marketing or advertisement of any Subject Vehicle as green, clean, or environmentally friendly (or similar such terms), and/or compliant with state or federal emissions standards, including the marketing or advertisement of any Subject Vehicles without disclosing the design, installation or presence of a Defeat Device; (c) the offering for sale, sale, delivery for sale, or lease of the Subject Vehicles in the Section 177 States; (d) statements or omissions concerning the Subject Vehicles' emissions and/or the Subject Vehicles' compliance with applicable emission standards, including, but not limited to, certifications of compliance or other similar documents or submissions; and (e) conduct alleged, or any related conduct that could have been alleged, in any Complaint, Notice of Violation or Notice of Penalty filed or issued by a Section 177 State, and/or a State Environmental Agency[8], including, but not limited to, that the Subject Vehicles contain prohibited Defeat Devices that cause the Subject Vehicles to emit $NO_x$ in excess of applicable legal standards and that Volkswagen and Porsche falsely reported vehicle emissions, that Volkswagen and/or Porsche tampered with any emissions control device or element of design installed in

---

operation and use, unless:  (1) Such conditions are substantially included in the Federal emission test procedure; (2) The need for the AECD is justified in terms of protecting the vehicle against damage or accident; (3) The AECD does not go beyond the requirements of engine starting; or (4) The AECD applies only for emergency vehicles[.]"  40 C.F.R. § 86.1803-01, or "any part or component intended for use with, or as part of, any motor vehicle or motor vehicle engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with [the Emission Standards for Moving Sources section of the Clean Air Act], and where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use," 42 U.S.C. § 7552(a)(3)(B).

[8]  These pleadings include, but are not limited to, *State of Maine* v. *Volkswagen  AG, et al.*, No. 3:17-cv-00784 (CRB); *Commonwealth of Massachusetts*  v. *Volkswagen Aktiengesellschaft et al.*, No. 3:16-cv-05088 (CRB); *State of New York et al.* v. *Volkswagen Aktiengesellschaft et al.*, No. 3:16-cv-05089 (CRB); *Commonwealth of Pennsylvania, Department of Environmental Protection et al.* v. *Volkswagen Aktiengesellschaft et al.*, No. 3:16-cv-05159 (CRB); *State of Vermont et al.* v. *Volkswagen Aktiengesellschaft et al.*, No. 3:16-cv-06299; and *Volkswagen, et al.* v. *Ecology*, PCHB No.16-104c.

the Subject Vehicles, that Volkswagen and/or Porsche affixed labels to the Subject Vehicles that were false, invalid or misleading and/or that Volkswagen and/or Porsche breached its warranties relating to the Subject Vehicles.

5. <u>Binding Agreement</u>.  Except as otherwise set forth in paragraph 12, the Parties agree that this Agreement: (a) contains the essential terms resolving each Section 177 State's (i) claims or potential claims that could be brought by the Section 177 States and/or the State Environmental Agencies under all potentially applicable federal, state, and/or local environmental laws, rules, and/or regulations, including, but not limited to, laws, rules, and/or regulations regarding mobile source emissions, certification, reporting of information, inspection and maintenance of vehicles and/or anti-tampering provisions, together with related common law and equitable claims ("Environmental Claims"),[9] and (ii) with the exception of Vermont, claims or potential claims that could be brought for injunctive relief and/or restitution or other monetary payments to consumers under all potentially applicable consumer protection and unfair trade and deceptive acts and practices laws, rules and/or regulations, as well as common law and equitable claims, predicated on the Covered Conduct ("UDAP Laws"), to the extent not previously resolved under the First Partial Settlement Agreement ("UDAP Injunctive and Restitution Claims" and, together with the Environmental Claims, the "Environmental and UDAP Claims"[10]),

---

[9] Any potentially applicable laws, rules, regulations, and/or common law or equitable principles or doctrines under which the Environmental Claims may arise are referred to as the "Environmental Laws."

[10] Without limitation, the Environmental Claims include claims under: Conn. Gen. Stat. tit. 22a, ch. 446c, tit. 14, ch. 246a, § 14-164c, and Conn. Agencies Regs. §§ 22a-174-1 *et seq.*; Del Code Ann. tit. 7, §§ 6000 *et seq.*, tit. 6, §§ 2511 *et seq.* & § 2531; 38 Me. Rev. Stat. §§ 581-610-D and 06-096 CMR ch. 127; Mass. Gen. Laws c. 111, §§ 142A-142O, 310 C.M.R. 7.00 *et seq.*, and 310 C.M.R. 60.00 *et seq.*; N.Y. Env. Cons. Law, art. 19 and 6 N.Y.C.R.R. § 218; Or. Rev. Stat. §§ 468.020, 468.936, 468.939, 468.953, 468A.025, and 468A.360 & Or. Admin. Rules ch. 340, div. 257; 35 P.S. § 4008, 25 Pa. Code §§ 121.7 and -9 & 126.412, -21, -22, -23, -31, and -32 and 75 Pa. Cons. Stat. §§ 4107 & 4531; R.I. Gen. Laws § 23-23-1, et seq. and R.I. Admin. Code §§ 25-4-37:37.1 et seq.; 10 Vt. Stat. Ann. §§ 551 et seq. and VAPCR §§ 5-1101-09; and Wash. Rev. Code §§ 70.94 & 70.120A,

whether brought by the Section 177 States in their sovereign enforcement capacity or as *parens patriae* on behalf of state citizens against the Released Parties (as defined in paragraph 12); (b) fully extinguishes the reservations set forth in Paragraphs 8(B)(iv) and (vi) of the First Partial Settlement Agreement; and (c) is fully binding and enforceable notwithstanding any additional documents necessary or appropriate to implement the Agreement, except in States where judicial approval is required by statute, regulation, or policy.

6. Remand.

(A) The Parties shall file a stipulation and proposed order in the MDL Court seeking to remand to the respective state courts the Complaints or other pleadings filed by the Section 177 States that have been removed to federal court, with the exception of the Complaint filed by the State of Vermont.[11]  Except in the case of Oregon, Washington State, and, potentially, Delaware, the settlement described herein shall be effectuated in the state courts of the Section 177 States.  In Oregon, no judicial approval is necessary, and this Agreement, upon signature by Defendants and Oregon, is sufficient to serve as a full and complete resolution of Oregon's Environmental and UDAP Claims.  In Washington State, the settlement shall be effectuated by means of the filing of a settlement agreement materially embodying this Agreement with the Washington State Pollution Control Hearings Board and the dismissal of the proceeding before the Board.  In Delaware, settlement shall be effectuated either in state court or by means of an administrative order or agreement, at Delaware's sole discretion.  In no event shall the documents effectuating this settlement in any Section 177 State impose material terms on Defendants not expressly agreed to

---

and WAC §§ 173-421 and -23. Without limitation, the UDAP Claims include claims under: Conn. Gen. Stat. § 42-110a, *et seq.*; Del. Code Ann. tit. 6 § 2511, *et seq.*; Del Code Ann. tit. § 2531, *et seq.*; Me. Rev. Stat. tit. 5 §§ 205-A to 214; Mass. Gen. Laws ch. 93A, § 2;  N.Y. Gen. Bus. Law §§ 349, 350; Or. Rev. Stat. § 646.605, *et seq.*; 73 Pa. Cons. Stat. § 201-1, *et seq.*; R.I. Gen. Laws § 6-13.1-1, *et seq.*; and Wash. Rev. Code § 19.86.

[11] If any additional similarly situated states join this Agreement, the Complaints or other pleadings filed by such states likewise shall be remanded to the appropriate state courts to effect the terms of this Agreement.

herein.  Defendants do not concede that remand is warranted for any reason other than to effectuate the terms of this Agreement, including the reasons set forth in the Section 177 States' motion to remand filed in the MDL Court on January 31, 2017, and the States do not concede that removal was proper.

(B)  With regard to the Complaint filed by the State of Vermont, although that Complaint shall not be remanded by operation of this Agreement, the Parties will cooperate to ensure that the settlement of Vermont's Environmental Claims described herein shall be effectuated in the State of Vermont, Superior Court, Washington Unit.  The Parties agree that this shall occur, unless the MDL Court promptly issues a ruling on Vermont's remand motion obviating the need to transfer the Environmental Claims, through (i) filing in the MDL Court a stipulation of voluntary dismissal without prejudice of Vermont's Environmental Claims and (ii) filing in the State of Vermont, Superior Court, Washington Unit, (a) as agreed by the parties, a new complaint or other form of pleading, such as a pleading by agreement pursuant to V.R.C.P. 8(g) asserting only Vermont's Environmental Claims and (b) a consent judgment or similar document resolving those claims on the terms set forth in this Agreement.  Defendants consent to the splitting as described in this subparagraph of the Environmental Claims and consumer claims in Vermont's original complaint, for the purpose of effectuating the settlement of Vermont's Environmental Claims.  Upon the splitting of such claims, Defendants agree not to seek dismissal of any of the consumer claims that remain pending in the MDL on the ground that those claims should have been brought in the new proceeding in state court.[12]  Further, in the event that the settlement of Vermont's Environmental Claims described herein is not approved by the Vermont state court, Defendants agree not to seek dismissal of any of those claims on the ground that Vermont should have continued to

---

[12] For avoidance of doubt, Defendants and Vermont do not intend for the splitting of claims as contemplated herein to result in prejudice to any Party.  Aside from agreeing not to seek dismissal based on such splitting, Defendants do not waive any defenses to any of Vermont's claims in any proceeding.  Nor do Defendants consent to any claim splitting other than that expressly set forth in this subparagraph (i.e., the splitting of the Environmental Claims asserted in the original complaint so that those claims can be resolved in state court).

assert them in Vermont's action now pending in the MDL.  Defendants further agree that the statute of limitations on Vermont's Environmental Claims, to the extent asserted in the original complaint, shall be tolled during the period between the filing of Vermont's initial complaint against Defendants in this matter on September 8, 2016 and the filing of the new complaint or other pleading in the State of Vermont, Superior Court, Washington Unit.

(C) In any State where judicial approval is required, if (i) the state court, hearings board, or other tribunal or agency, as appropriate, declines to enter the court papers required to implement this Agreement, including if the court declines to enter the releases set forth in Paragraph 12, and (ii) disputed issues of federal jurisdiction and remand remain unadjudicated, the Parties will cooperate to restore the State's action to the procedural posture it would have occupied if the Parties had not entered into this Agreement, including, if necessary, by voluntarily dismissing and refiling the action to ensure that it can be removed and transferred to the MDL Court, where any remaining remand issues would then be adjudicated.[13]

(D) Assuming all necessary judicial or administrative approvals are granted, the terms of this Agreement and the resulting obligations shall be enforceable only as to Defendants and each respective State in that State's respective state court.

7. <u>Execution of Additional Documents, Decrees or Judgments</u>.

(A) Volkswagen and Porsche agree to provide prompt cooperation to the Section 177 States seeking to further memorialize or implement this Agreement through execution of any additional documents and/or entry of consent decrees or orders incorporating the terms of this Agreement, including but not limited to injunctive relief, provided however, that such additional documents, decrees or orders shall not materially

---

[13] In the event that judicial or administrative approval of the Agreement is not obtained in the court of a particular State, no Party shall be prejudiced, and Defendants agree not to seek dismissal of that State's action, based on any ground arising solely as a result of the Parties' attempt to effectuate the Agreement in state court.

modify the terms of this Agreement.  A State where judicial approval is required to implement this Agreement will promptly provide Volkswagen and Porsche for review, comment and execution such additional court papers as may require execution by Volkswagen and/or Porsche.  In addition, Washington State will promptly provide Volkswagen and Porsche for review, comment and execution the additional settlement documents required to be filed with the Pollution Control Hearings Board to secure dismissal of case number PCHB No. 16-104c.  Volkswagen and Porsche agree to review and provide comment on additional documents provided by the Section 177 States within a reasonable period of time, but in any event no later than 60 days from the date of receipt.  To the extent that any State that requires judicial approval does not secure judicial approval, the portion of the Multistate Payment deposited in escrow for that State shall be returned to Volkswagen.

(B)  For the limited purpose of obtaining state court judicial approval implementing this Agreement in the Section 177 States that may require such approval, Defendants, with respect to the additional documents, consent decrees, or orders described in paragraph 7(A), shall consent and agree: (i) to each state court's continuing subject matter and personal jurisdiction solely for purposes of entry, enforcement, and modification of such documents and without waiving Defendants' right to contest the court's jurisdiction in other matters; (ii) to venue in each state court, without waiving Defendants' right to contest the state court's venue in other matters; (iii) to each state court's retention of jurisdiction over the action for the purpose of enforcing or modifying the terms of such documents; and (iv) that the provisions of such documents shall be construed in accordance with the laws of the state in which it is entered.  In the event that a state court does not approve the agreed-upon additional document, consent decree, or order, Defendants' agreement and consent to the matters described in this paragraph are withdrawn as to that Section 177 State and may not be cited or relied upon in any further proceedings by that Section 177 State, including as a basis for jurisdiction or venue.

8.  <u>Relief</u>.

(A)  Within fifteen business days of the MDL Court's entry of the remand stipulation and order in the MDL, Volkswagen shall pay $157,448,480

to a mutually agreed escrow agent ("Escrow Agent") for the benefit of the Section 177 States to resolve the Environmental and UDAP Claims.[14]

(B) Each Section 177 State may, consistent with state law and at its sole discretion, use all or a portion of its allocation for any environmentally beneficial purpose.[15]  Subject to specific escrow and disbursement procedures and requirements materially consistent with those agreed in connection with the First Partial Settlement Agreement to be agreed by the Parties, Volkswagen shall authorize the Escrow Agent to disburse a State's allocation from the escrow account within five (5) business days after the later of the funding of the escrow account or receipt from the State of (i) written certification, in a mutually agreeable form,[16] (a) that judicial approval has been granted by the State's court (or in Washington state, that the Pollution Control Hearings Board has dismissed case number PCHB No. 16-104c) and that the Agreement, including the releases set forth herein, is now final under the law of the applicable State, and that no additional judicial or administrative approval is required, or (b) that judicial approval is not required  and that no further documentation is required to implement or effectuate the terms of the Agreement; (ii) if applicable, copies of any entered consent decree, consent judgment, or other documents implementing the Agreement; and (iii) wire instructions in a form to be agreed by the Parties.[17] Each state shall send the certifications and any other

---

[14] Per the Section 177 States' agreement, the allocation to each settling Section 177 State is set forth in <u>Attachment 1</u>.

[15] For avoidance of doubt, as to the State of Maine and the State of Rhode Island, the term "Section 177 State" in paragraph 8(B) means, respectively, the Attorney General of the State of Maine, on behalf of the State of Maine, and the Attorney General of Rhode Island, on behalf of the State of Rhode Island.

[16] The certification shall include the name and title of the signatory and shall certify that such signatory is a duly authorized representative of the State and is duly authorized to make such certification.

[17] The Agreement takes no position with regard to the tax consequences of the Agreement with regard to federal, state, local and foreign taxes.

documents or notices required under this paragraph to representatives designated by Volkswagen.

(C) After March 15, 2018, VWGoA may authorize a distribution to itself or any other person in respect of any escrowed funds that have not been disbursed by March 1, 2018; provided, however, that any State other than Oregon may send notice by March 15, 2018 to Volkswagen that it has undertaken to secure the approvals or additional documentation but has not secured such approvals, and Volkswagen shall not release such escrowed funds allocated to such State in the event Volkswagen receives such notice. Any State providing such notice shall send Volkswagen a further notice every three months thereafter or Volkswagen shall otherwise be authorized to issue a distribution to itself or any other person of the remaining escrowed funds associated with that State. For avoidance of doubt, any interest, net realized gains or any other earnings accrued on the deposits shall be for the account of Volkswagen and shall not increase the amounts payable under this Agreement.

(D) Volkswagen and Porsche shall not engage in any unfair or deceptive acts or practices that they are prohibited from engaging in by the 3.0-Liter Settlements.

9. <u>Admissions</u>.

(A) Volkswagen admits that:

   i. software in the 2.0 and 3.0 Liter Subject Vehicles enables the vehicles' engine control modules to detect when the vehicles are being driven on the road, rather than undergoing Federal Test Procedures, and that this software renders certain emission control systems in the vehicles inoperative when the engine control module detects the vehicles are not undergoing Federal Test Procedures, resulting in $NO_x$ emissions that exceed EPA-compliant and CARB-compliant levels (which CARB standards are applicable in the Section 177 States that are parties hereto) when the vehicles are driven on the road;

   ii. this software was not disclosed in the Certificate of Conformity and Executive Order applications for the 2.0 and 3.0 Liter Subject

Vehicles, and, as a result, the design specifications of the 2.0 and 3.0 Liter Subject Vehicles, as manufactured, differ materially from the design specifications described in the Certificate of Conformity and Executive Order applications.

(B)   Porsche admits that:

    i.    software in the 3.0 Liter Subject Vehicles enables the vehicles' engine control modules to detect when the vehicles are being driven on the road, rather than undergoing Federal Test Procedures, and that this software renders certain emission control systems in the vehicles inoperative when the engine control module detects the vehicles are not undergoing Federal Test Procedures, resulting in $NO_x$ emissions that exceed EPA-compliant and CARB-compliant levels (which CARB standards are applicable in the Section 177 States that are parties hereto) when the vehicles are driven on the road;

    ii.    this software was not disclosed in the Certificate of Conformity and Executive Order applications for the 3.0 Liter Subject Vehicles, and, as a result, the design specifications of the 3.0 Liter Subject Vehicles, as manufactured, differ materially from the design specifications described in the Certificate of Conformity and Executive Order applications.

(C)   Volkswagen AG admits, agrees, and stipulates that the factual allegations set forth in the Statement of Facts attached as Exhibit 2 to its January 11, 2017 Rule 11 Plea Agreement in *U.S. v. Volkswagen AG*, No. 16-CR-20394 are true and correct.  Volkswagen AG agrees it will neither contest the admissibility of, nor contradict, the Statement of Facts contained in Exhibit 2 to the Rule 11 Plea Agreement in any proceeding.  A true and correct copy of the Statement of Facts described in this paragraph is attached hereto as <u>Attachment 2</u>.

(D)   Except as provided in Paragraphs 9(A)-(C), Volkswagen and/or Porsche neither admits nor denies any factual allegations regarding the Covered Conduct.

10.  Restitution, ZEV Investment Commitment, Mitigation Trust and Injunctive Relief.

(A)  To the extent that such requirements apply to the Section 177 States or vehicles therein, Volkswagen shall, consistent with the terms and definitions set forth in the U.S. First Partial Consent Decree, comply with:

  i.  The Buyback, Lease Termination, and Vehicle Modification Recall Program requirements of Section IV.A. and Appendix A;

  ii.  The Vehicle Recall and Emissions Modification Program requirements of Section IV.B. and Appendices A & B;

  iii.  The ZEV Investment Commitment requirements of Section IV.C and Appendix C; and

  iv.  The Mitigation of Excess Emissions and Mitigation Trust requirements of Section IV.D and Appendix D, as may be modified by the Trustee to the Mitigation Trust and approved by the MDL Court.[18]

(B)  With respect to vehicles in Section 177 States other than Vermont, the Volkswagen and Porsche consumer restitution program set forth in U.S. Second Partial Consent Decree, the 3.0 Liter Class Action Settlement and the FTC's proposed Second Partial Stipulated Order shall be deemed part of this Agreement (except as to Vermont).

(C)  Volkswagen and Porsche, as applicable, shall, consistent with the terms and definitions set forth in U.S. Second and Third Partial Consent Decrees, and as approved by the MDL Court:

  i.  Implement the Buyback, Lease Termination, and Vehicle Modification, and Emissions Compliant Recall Program and

---

[18] As set forth in the U.S. First Partial Consent Decree, Section IV.D and Appendix D required Volkswagen to make $2,700,000,000 in Mitigation Trust Payments.

Vehicle Recall and Emissions Modification Program for 3.0 Liter Vehicles set forth in Section IV and Appendices A and B of the U.S. Second Partial Consent Decree;

ii.  Comply with the obligation to deposit $225,000,000[19] in Mitigation Trust Payments into the Trust Account to be used to fund Eligible Mitigation Actions, as set forth in paragraph 17(a) of Section IV of the U.S. Second Partial Consent Decree; and

iii. Comply with the injunctive relief provisions set forth in Section V (Volkswagen) and Section VI (Porsche) of the U.S. Third Partial Consent Decree.

11. <u>Zero Emission Vehicle (ZEV) Commitment</u>

(A) Defendants shall increase the availability of Zero Emissions Vehicles in the Section 177 States by introducing in the Section 177 States the three additional Battery Electric Vehicle ("BEV") models to be introduced in California under Paragraphs 11.a. and 11.b. of the California Second Partial Consent Decree.  Defendants shall introduce and continue to market these BEV models in each of the Section 177 States within the same time periods that are set forth for California in Paragraphs 11.a. and 11.b. of the California Second Partial Consent Decree.  In each of the Section 177 States until at least 2019, Volkswagen shall offer its existing BEV model (the VW e-Golf BEV) or its successor or replacement models.  In each of the Section 177 States until at least 2025, in the event that Volkswagen agrees to offer a new BEV model in the United States between 2020 and 2025 (in addition to the three BEV models identified above), it will offer that BEV model (or its successor).

(B) Defendants shall make each BEV model launched in the Section 177 States available to their dealers of new vehicles in each of the Section 177 States and encourage such dealers to make the BEV models available for potential consumers for demonstration and test drive. Defendants shall deliver at least one vehicle of each BEV model within

---

[19] Such payment under the U.S. Second Partial Consent Decree is in addition to the $2,700,000,000 payment required under the U.S. First Partial Consent Decree.

eight weeks of the port release date to all of their dealers in each Section 177 State that (i) agree to sell BEV models; and (ii) sell the brand of that particular BEV model (*e.g.*, Volkswagen BEV models need only be delivered to Volkswagen dealers and need not be delivered to Audi or Porsche dealers). Defendants shall undertake commercially reasonable efforts to make each such BEV model available to their dealers through the course of each model's production for purposes of consumer demonstration, test drive, sale and lease. In each of the Section 177 States, Defendants' launch and marketing of each BEV model shall include advertising, promotional support, and support to dealers to incentivize dealer participation in the offering for sale or lease of the BEV models. This dealer support shall include support for dealers in (i) making the BEV models available for consumer demonstration and test driving; and (ii) the servicing of the BEV models.

(C)   Defendants' obligations under paragraphs 11(A) and (B), including to introduce, offer for sale, deliver, advertise, market or promote the BEV models, shall be limited to (i) the Section 177 States in which they have dealers of new vehicles; and (ii) dealers that agree to sell the BEV models. Defendants shall have no obligations under paragraphs 11(A) and (B) with respect to (i) any Section 177 State in which they have no dealer of new vehicles; or (ii) any dealer that does not agree to sell the BEV models. Regardless of the foregoing, Audi or Volkswagen will ensure that at least one vehicle of each of the Audi or Volkswagen BEV models introduced in the Section 177 States is available for consumer demonstration and driving in each of the Section 177 States until at least 2025 to the extent that there is at least one Audi or Volkswagen dealer in that State and for so long as such BEV model is being offered nationally for new vehicle sale.

12.   Effect of Settlement/Reservation of Rights

(A)   Subject to paragraphs (B) and (C) below, in consideration of the monetary relief described in paragraph 8(A), the non-monetary relief described in paragraph 8(C), the admissions in paragraph 9, certain of the undertakings to which Volkswagen and/or Porsche have agreed in the U.S. First, Second, and Third Partial Consent Decrees, the 3.0 Liter Class Action Settlement, and the FTC's proposed Second Partial Stipulated Order, to the extent approved by the MDL Court, as set forth

in paragraph 10, and the ZEV Commitment described in paragraph 11, and upon Volkswagen's payment of the amount contemplated in paragraph 8(A), above:

i.   Each Section 177 State releases Volkswagen, Porsche, their affiliates and any of Volkswagen's, Porsche's or their affiliates' former, present or future owners, shareholders, directors, officers, employees, attorneys, parent companies, subsidiaries, predecessors, successors, dealers, agents, assigns and representatives (collectively, the "Released Parties"[20]), from all Environmental Claims arising from or related to the Covered Conduct, including, without limitation, penalties, fines, or other monetary payments and/or injunctive relief.

ii.   Each Section 177 State releases the Released Parties from all UDAP Injunctive and Restitution Claims (and any other claims under the UDAP Laws) to the extent not already released in the First Partial Settlement Agreement, arising from or related to the Covered Conduct concerning the Subject Vehicles, upon the MDL Court's approval of the U.S. Second Partial Consent Decree, the 3.0 Liter Class Action Settlement, and the FTC's proposed Second Partial Stipulated Order, and subject to Volkswagen fulfilling its obligations thereunder; provided, however, Vermont does not release the Released Parties for claims for injunctive relief, restitution, penalties or other relief that were brought or could have been brought under UDAP Laws arising from or related to the Covered Conduct concerning the Subject Vehicles.

iii.   The claims released under subsections (i) and (ii) above include claims that the Section 177 States and/or the State Environmental Agencies brought or could have brought under Environmental and/or UDAP Laws: (a) in the Section 177 State's sovereign enforcement capacity; and (b) as *parens patriae* on behalf of Section 177 State citizens; provided, however, Vermont does not release the Released Parties for claims that were brought or could

---

[20] For avoidance of doubt, for purposes of this Agreement, Robert Bosch GmbH and Robert Bosch LLC are not Released Parties and IAV GmbH and IAV Automotive Engineering, Inc. are Released Parties.

have been brought under UDAP Laws arising from or related to the Covered Conduct concerning the Subject Vehicles.

(B)   The Section 177 States reserve, and this Agreement is without prejudice to, all claims, rights and remedies against Volkswagen, Porsche and their affiliates, and Volkswagen, Porsche and their affiliates reserve, and this Agreement is without prejudice to, all defenses (except to the extent waived in Paragraph 6), with respect to all matters not expressly released in paragraph 12(A) herein, including, without limitation:

    i.   any claims arising under state tax laws;

    ii.   any claims for the violation of securities laws;

    iii.   any claims unrelated to the Covered Conduct;

    iv.   any action to enforce this Agreement and subsequent, related orders or judgments; and

    v.   as to Vermont only, any claims by Vermont arising under its state consumer protection and unfair trade and deceptive acts and practices laws, rules and/or regulations.

(C)   This Agreement constitutes a resolution of the States' enforcement actions under the Environmental Laws.  Nothing in this Agreement shall create or give rise to a private right of action of any kind.

(D)   Nothing in this Agreement releases any private rights of action asserted by entities or persons not releasing claims under this Agreement, nor does this Agreement limit any defense available to Volkswagen or Porsche in any such action.

(E)   This Agreement is made without trial or adjudication of any issue of fact or law.

(F)   The Parties agree that this Agreement does not enforce the laws of other countries, including the emissions laws or regulations of any jurisdiction outside the United States.  Nothing in this Agreement is intended to apply to, or affect, Volkswagen's or Porsche's obligations under the laws or regulations of any jurisdiction outside the United

States.  At the same time, the laws and regulations of other countries shall not affect Volkswagen's or Porsche's obligations under this Agreement.

13.  <u>Reporting</u>

(A)  Volkswagen shall produce to each Section 177 State:

    i.  any status reports provided to the DOJ/EPA, CARB and the CA AG under Paragraph 7.4 of Appendix A to the U.S. First Partial Consent Decree;

    ii.  any status reports to be provided by Volkswagen to the DOJ/EPA, CARB and the CA AG under Paragraph 11.3 of Appendix A to the U.S. Second Partial Consent Decree;

    iii.  any consumer name and address information to be provided by Volkswagen to the Notice Administrator under the 3.0 Liter Class Action Agreement.  Volkswagen shall provide this information to the States promptly upon execution of this Agreement.  The Section 177 States shall take all reasonable efforts to protect data consumers provide for any purpose related to this Agreement or the other settlement agreements referenced herein.

(B)  Other than as to Vermont, Volkswagen shall promptly respond to the Section 177 States' reasonable inquiries about the status and calculation of consumers' claims and reimbursement from citizens of their respective Section 177 State and shall provide the Section 177 States with contact information for a Volkswagen representative for purposes of such inquiries.

14.  <u>Authority of Signatories to Bind the Parties</u>.  Each of the persons who signs his/her name below affirms that he/she has the authority to execute this Agreement on behalf of the Party whose name appears next to his/her signature and that this Agreement is a binding obligation enforceable against said Party under applicable state law.  Where the signatory is a member of an Attorney General's office, he/she represents that he/she has the authority to execute this Agreement on behalf of his/her respective Section 177 State and that this Agreement is a binding obligation enforceable against that Section 177 State under applicable state law.

15. Additional Provisions.

(A)   This Agreement supplements the First Partial Settlement Agreement and supersedes any other prior agreements or understandings among the Parties, whether oral or written, concerning the settlement embodied herein. The Parties acknowledge that there are no documents, representations, inducements, agreements, understandings or promises that constitute any part of this Agreement or the settlement it represents other than those expressly contained in this Agreement.

(B)   If any portion of this Agreement is held invalid by operation of law, the remaining terms of this Agreement shall not be affected and shall remain in full force and effect.

(C)   This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which shall together be one and the same Agreement.  Signatures by facsimile or other electronic imaging shall be deemed to constitute original signatures.

(D)   The Parties agree to enter into this Agreement for the purpose of avoiding further prolonged and costly litigation, and in furtherance of the public interest.  Each of the Parties warrants and represents that the terms of this Agreement were negotiated in good faith.

(E)   The terms of this Agreement may be modified only by a subsequent written agreement signed by all the Parties.

(F)   Nothing in this Agreement shall be deemed to create any right in a non-party to enforce any aspect of this Agreement or claim any legal or equitable injury for a violation of this Agreement.  The exclusive right to enforce any violation or breach of this Agreement shall be with the Parties to this Agreement.

**COUNSEL FOR VOLKSWAGEN AG, AUDI AG, VOLKSWAGEN GROUP OF AMERICA, INC. (d/b/a VOLKSWAGEN OF AMERICA, INC. or AUDI OF AMERICA, INC.), AUDI OF AMERICA, L.L.C. and VOLKSWAGEN GROUP OF AMERICA CHATTANOOGA OPERATIONS LLC**

March 29, 2017

Robert J. Giuffra, Jr.
Sharon L. Nelles
David M.J. Rein
George R. Painter IV
Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

**COUNSEL FOR DR. ING. H.C. F. PORSCHE AG and PORSCHE CARS NORTH AMERICA, INC.**

March ___, 2017

Granta Y. Nakayama
Joseph A. Eisert
King & Spalding LLP
1700 Pennsylvania Ave., N.W. Suite 200
Washington, DC 20006
(202) 737-0500

**COUNSEL FOR VOLKSWAGEN AG, AUDI AG, VOLKSWAGEN GROUP OF AMERICA, INC. (d/b/a VOLKSWAGEN OF AMERICA, INC. or AUDI OF AMERICA, INC.), AUDI OF AMERICA, L.L.C. and VOLKSWAGEN GROUP OF AMERICA CHATTANOOGA OPERATIONS LLC**

March __, 2017

_____

Robert J. Giuffra, Jr.
Sharon L. Nelles
David M.J. Rein
George R. Painter IV
Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

**COUNSEL FOR DR. ING. H.C. F. PORSCHE AG and PORSCHE CARS NORTH AMERICA, INC.**

March 29, 2017

_____

Granta Y. Nakayama
Joseph A. Eisert
King & Spalding LLP
1700 Pennsylvania Ave., N.W. Suite 200
Washington, DC 20006
(202) 737-0500

March 29, 2017

Scott N. Koschwitz
Assistant Attorney General
**Office of the Connecticut Attorney General**

March 28, 2017

Christian Douglas Wright
Director of the Consumer Protection Unit
**Office of the Delaware Attorney General**

March 29, 2017

Gerald D. Reid
Assistant Attorney General
**Office of the Maine Attorney General**

March 29, 2017

Gillian Feiner
Chief, False Claims Division
**Office of the Massachusetts Attorney
General**

March 29, 2017

Date

David F. Nachman
Senior Enforcement Counsel
Executive Division
**Office of the New York Attorney General**

March 29, 2017

_____

Ellen F. Rosenblum
Attorney General
Frederick M. Boss
Deputy Attorney General
**Oregon Department of Justice**

3.29.17

_____

Date

_Nicole R. DiTomo_ / JMA

_____

Nicole R. DiTomo, Deputy Attorney General
Bureau of Consumer Protection
**Pennsylvania Office of Attorney General**
*On behalf of the Pennsylvania Department of
Environmental Protection, and the
Pennsylvania Department of Transportation*

March 50, 2017

Gerald J. Coyne
Deputy Attorney General
**Rhode Island Department of Attorney General**

March 29, 2017

Nicholas F. Persampieri
**Vermont Office of the Attorney General**

March 2?, 2017

Katharine G. Shirey
Assistant Attorney General
**Office of the Washington State Attorney General**
**On behalf of the Washington State Department of Ecology**

March __, 2017

John A. Nelson
Assistant Attorney General
**Office of the Washington State Attorney General**

31

March __, 2017

_____

Katharine G. Shirey
Assistant Attorney General
**Office of the Washington State Attorney
General**
**On behalf of the Washington State
Department of Ecology**

Shannon Smith, AAG
for

March 29, 2017

_____

John A. Nelson
Assistant Attorney General
**Office of the Washington State Attorney
General**

31

** THIS PAGE INTENTIONALLY BLANK **

# ATTACHMENT 1

### State Allocation Amounts

| State | Allocation Amount ($) |
|---|---|
| Connecticut | $  14,846,465.95 |
| Delaware | $    1,448,374.90 |
| Massachusetts | $  20,031,183.95 |
| Maine | $    5,162,281.90 |
| New York | $  32,536,816.80 |
| Oregon | $  16,222,546.75 |
| Pennsylvania | $  30,434,055.65 |
| Rhode Island | $    4,103,313.40 |
| Vermont | $    4,242,401.80 |
| Washington | $  28,421,038.90 |
| Total | $157,448,480.00 |