UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION
_____/

This Order Relates To:
Dkt. Nos. 2886, 3092
_____/

MDL No. 2672 CRB (JSC)

**ORDER GRANTING IN PART DEALER CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES**

This MDL consists of various actions brought by consumers, dealers, securities plaintiffs, and government agencies against Volkswagen based on its use of a defeat device—software designed to cheat emissions tests and deceive federal and state regulators—in nearly 600,000 Volkswagen-, Porsche-, and Audi-branded turbocharged direct injection ("TDI") diesel engine vehicles sold in the United States. With regard to the Volkswagen franchise dealers, the parties submitted the Volkswagen Branded Franchise Dealer Class Action Settlement Agreement and Release (the "Settlement") on September 30, 2016 (Dkt. No. 1970), and the Court granted final approval of the Settlement on January 23, 2017 (Dkt. No. 2807). The Settlement provides that Volkswagen will "pay reasonable attorneys' fees and costs related to the negotiation and execution" of the Settlement. (Dkt. No. 1970 ¶ 13.1.)

At the time of final approval, Dealer Class Counsel had not yet moved for its fees and costs, though it submitted a statement that it would seek no more than $36.24 million in attorneys' fees and costs. (Dkt. No. 2177 at 5.) Dealer Class Counsel has now submitted a motion for $28.56 million in attorneys' fees and costs. (Dkt. No. 2886.) Having considered the parties' submissions, including the redacted version of Volkswagen's opposition to counsel's motion (Dkt.

No. 3056-3),[1] and the redacted version of Volkswagen's sur-reply (Dkt. No. 3092-2),[2] the Court GRANTS IN PART Dealer Class Counsel's fees motion. Under the unique circumstances leading to the settlement of this case, the Court concludes that it is appropriate to award Dealer Class Counsel $2,954,455.00 in attorneys' fees and $87,538 in costs.

## DISCUSSION

Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Attorneys' fees provisions included in proposed class action settlement agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is 'fundamentally fair, adequate, and reasonable.'" *Staton v. Boeing Co.,* 327 F.3d 938, 963 (9th Cir. 2003) (quoting Fed. R. Civ. P. 23(e)). Thus, even where attorneys' fees and costs are authorized by law or the parties' agreement in a certified class action, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).

### I. Attorneys' Fees

#### A. Percentage or Lodestar Method?

Initially, the parties dispute which method of calculating attorneys' fees is appropriate—the percentage-of-recovery method (also known as the "percentage method") or the lodestar method. The dispute focuses on whether the Settlement creates a common fund. Traditionally, "[a] common fund is created when the settlement sets aside a specified amount of money to be

---

[1] In its reply brief, Dealer Class Counsel objected to Volkswagen's use of confidential settlement-related material in its opposition and moved to strike any such material. (*See* Dkt. No. 3074 at 6-7.) In determining the appropriate amount of fees, the Court has not considered any such material and therefore denies Dealer Class Counsel's motion to strike as moot.

[2] Volkswagen filed a five-page sur-reply in response to four supplemental declarations that Dealer Class Counsel included with its reply brief, which Volkswagen views as new evidence. (*See* Admin. Mot., Dkt. No. 3092; Supplemental Decls., Dkt. Nos. 3075-78.) The Court has reviewed the supplemental declarations and views them as responding to points made in Volkswagen's opposition, rather than offering new evidence. To be cautious, however, the Court has considered Volkswagen's sur-reply, given that "new evidence presented in reply should not be considered without giving the non-movant an opportunity to respond." *Spencer v. Sharp*, 487 F. App'x 424, 425 (9th Cir. 2012). The Court thus GRANTS Volkswagen's administrative motion seeking leave to file its sur-reply and to file portions thereof related to settlement negotiations under seal.

paid by the defendant for the benefit of the entire class 'in exchange for a release of liability.' The attorneys' fees are then taken from the common fund, thereby reducing the amount available to class members." *Moore v. Verizon Commc'ns Inc.*, No. C 09-1823 SBA, 2014 WL 588035, at *9 (N.D. Cal. Feb. 14, 2014) (citation omitted). Volkswagen asserts that no common fund exists from which a percentage can be taken because Dealer Class Counsel is being paid separate and apart from the class members' benefits. (*See* Dkt. No. 3056-3 at 16-17.) It insists that as a result the Court can only employ the lodestar method to determine appropriate fees.

The Court need not resolve the common fund issue here, as even in common fund cases "the district court 'has discretion to apply either the lodestar method or the percentage-of-the-fund method in calculating a fee award.'" *Stetson v. Grissom*, 821 F.3d 1157, 1165 (9th Cir. 2016) (quoting *Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002)). Given the unique circumstances leading to the Settlement, the Court, in its discretion, concludes that the lodestar method, as opposed to the percentage method, is the appropriate method for determining fees. Several factors support the Court's determination.

First, much of the groundwork for the Settlement was laid in the negotiations leading to the 2.0-liter settlement. Indeed, co-Dealer Class Counsel Hagens Berman spent "hybrid time" attributable to both the 2.0-liter and franchise dealer settlements, for which it was compensated through the 2.0-liter fee application. (*See* Dkt. No. 3053 at 8 n.4.) Second, having reached the 2.0-liter settlement, Volkswagen was incentivized to settle quickly with the franchise dealers, as the dealers—the ones tasked with interacting with customers during the buyback and fix processes—are an integral part to implementing the consumer settlements. (*See* Dkt. No. 2483 at 20 (Dealer Class Counsel's final approval motion, stating, "Volkswagen's branded dealers are the lynchpin in its Consumer Settlements. An ongoing dealer litigation would make cooperation on the Consumer Settlements difficult, if not impossible, further imperiling Volkswagen's and its dealers' ability to navigate the maelstrom.").) Third, the high total amount of the Settlement resulted substantially from the nature and value of the assets at issue—namely, Volkswagen's diesel vehicles and the franchise dealerships themselves.

These factors illuminate why a percentage method of calculating attorneys' fees would

overcompensate Dealer Class Counsel for its work. Dealer Class Counsel did not expend significant additional time procuring the Settlement, nor did it undertake significant additional risk, given Volkswagen's incentive to settle quickly. Yet because the Settlement was substantial—including $1.19 billion in required cash payments (Dkt. No. 2483 at 9)—even a modest percentage of the Settlement would generate an outsized award of attorneys' fees. Dealer Class Counsel's fee request proves the point. Specifically, counsel seeks an award of attorneys' fees equivalent to 2.4% of the Settlement value, which equates to $28.56 million. This amount is well above what counsel would have received if compensated on an hourly basis. As discussed more below, after subtracting fees received as part of the 2.0-liter settlement, Dealer Class Counsel's lodestar for Settlement work is, at most, $2.04 million, and a $28.56 million award would be 14 times this amount. And the Court's calculated lodestar is even less, only $1.48 million, meaning the requested award would be a 19x lodestar multiple.

A multiplier in the mid to high teens is simply not appropriate here. In comparison, in the 2.0-liter settlement this Court approved an award of attorneys' fees for class counsel that resulted in a lodestar multiplier of 2.63. (*See* Dkt. No. 3053 at 8.) That amount is comparable to multiples applied in other complex class actions. *See, e.g.*, *Alexander v. FedEx Ground Package Sys., Inc.*, No. 05-cv-00038-EMC, 2016 WL 3351017, at \*3 (N.D. Cal. June 15, 2016) (rejecting a request for a multiplier of approximately 4.0, and concluding that "a more typical multiplier for a megafund case is . . . 3 or less"); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation.").

To be sure, an occasional outsized attorneys' fees award may be just the type of outcome that motivates class action lawyers to take difficult cases. This is the position of Professor Brian T. Fitzpatrick, Dealer Class Counsel's "fee expert."[3] (*See* Dkt. 3078 ¶ 8.) Here, though, the

---

[3] Volkswagen objects to Professor Fitzpatrick's declarations as improper expert testimony. (Dkt. 3056-3 at 23 n.17.) While "federal courts typically prohibit lawyers, professors, and other experts from interpreting the law for the court or from advising the court about how the law should apply to the facts of a particular case," *Pinal Creek Group v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037, 1042 (D. Ariz. 2005), here Professor Fitzpatrick's opinion actually elucidates the Court's reasoning, and the Court consequently discusses his declaration herein.

4

franchise dealer class action and its Settlement were intrinsically linked with the 2.0-liter class action and settlement, and applying the percentage method would "yield[] an unreasonable result," while "the lodestar approach would avoid a 'windfall.'" *Fischel*, 307 F.3d at 1003, 1007.

Professor Fitzpatrick also opines that the percentage method is the "more popular method of calculating attorneys' fees today" in common fund class actions. (Dkt. 2888 ¶¶ 10-11.) This does not alter the Court's conclusion, though, as district courts still have discretion to use the lodestar method in common fund cases where doing so promotes the ultimate goal— reasonableness. *See Fischel*, 307 F.3d at 1007. For the reasons discussed, the percentage method would not lead to a reasonable award here. Further, in the cases Professor Fitzpatrick cites where the percentage method was used, the lodestar multiplier (when calculated as a cross-check) averaged 3.3, with a high of 6.2—significantly lower than the 19x multiplier sought here. (*See* Dkt. No. 2888 ¶ 11.)[4]

While use of the lodestar method results in a more modest award of attorneys' fees, the Court nevertheless recognizes, as it has previously, that Dealer Class Counsel achieved a great result for the franchise dealer class members, even in the face of uncertain risk and litigation length. The attorneys' fees calculation set forth below reasonably compensates Dealer Class Counsel for its efforts.

**B.     Lodestar Calculation**

The lodestar method for determining reasonable attorneys' fees has two parts. *See Van*

---

[4] *See, e.g., In Re: Oil Spill by the Oil Rig "Deepwater Horizon"*, MDL No. 2179, 2016 WL 6215974 (E.D. La. Oct. 25, 2016) (lodestar multiplier of 2.3); *In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016) (lodestar multiplier of 6.0); *In re Payment Card Antitrust Litig.*, 991 F. Supp. 2d 437, 448 (E.D.N.Y. 2014) (lodestar multiplier of 3.4); *In re Black Farmers Discrimination Litig.*, 953 F. Supp. 2d 82 (D.D.C. 2013) (lodestar multiplier less than 2.0); *In re Enron Corp. Sec. Litig.*, 586 F. Supp. 2d 732, 741 (S.D. Tex. 2008) (lodestar multiplier of 5.2); *In re Diet Drugs Prods. Liab. Litig.*, 553 F. Supp. 2d 442, 486 (E.D. Pa. 2008) (lodestar multiplier of 2.6); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249 (D.N.H. 2007) (lodestar multiplier of 2.7); *In re AOL Time Warner, Inc. Sec.*, 2006 WL 3057232 (S.D.N.Y. Oct. 25, 2006) (lodestar multiplier of 3.7); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319 (S.D.N.Y. 2005) (lodestar multiplier of 4.0); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503 (E.D.N.Y. 2003) (lodestar multiplier of 3.5); *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 106 F. Supp. 2d 721, 736 (D.N.J. 2000) (lodestar multiplier of 2.1).

*Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).

> First, a court determines the "lodestar" amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. The party seeking an award of fees must submit evidence supporting the hours worked and the rates claimed. A district court should exclude from the lodestar amount hours that are not reasonably expended because they are "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983).

*Id.* Once the court determines the lodestar amount, the Court may in "'rare' and 'exceptional' cases" adjust the lodestar upward or downward "using a 'multiplier' based on factors not subsumed in the initial calculation." *Id.* (citing *Blum v. Stevenson*, 465 U.S. 886, 897, 898-901 (1984)). Such adjustments must be supported by "specific evidence on the record and detailed findings by" the court. *Id.* (internal quotation marks omitted).

### 1. Lodestar Amount

Step one of the lodestar method requires the Court to determine a "lodestar" amount by multiplying the number of hours counsel reasonably expended on this litigation by a reasonable hourly rate. *See id.* Dealer Class Counsel asserts that it spent 4,792 hours in negotiating and achieving the Settlement and that an additional 1,114 hours should be reserved for implementation of the Settlement. (Dkt. No. 2963 ¶ 12.) The billing rates for these hours range from $158 per hour for paralegal time to $950 hour for lead counsel's time, with an average rate of $502 per hour. (*Id.* ¶ 5.) Dealer Class Counsel's estimated lodestar breaks down as follows:

| | |
|---|---|
| HB[5] Exclusive Franchise Dealer Action Fees | $1,166,213.00 |
| BSM[6] Exclusive Franchise Dealer Action Fees | $311,014.50 |
| HB Hybrid VW Emissions Time (50%) | $1,491,036.80 |
| Reserve for Settlement Implementation | $560,000.00 |
| Total | $3,528,264.30 |

(*Id.* ¶ 11.)

---

[5] HB stands for co-Class Counsel Hagens Berman.
[6] BSM stands for co-Class Counsel Bass Sox & Mercer.

6

Volkswagen contends that Dealer Class Counsel's lodestar is overstated for three reasons: (1) the lodestar total improperly includes Hagens Berman's "hybrid time" attributable to both the 2.0-liter and franchise dealer settlements; (2) the reserve time for settlement implementation is unnecessary; and (3) Dealer Class Counsel did not provide adequate documentation relating to the hours spent. The Court addresses each argument in turn.

First, regarding Hagens Berman's "hybrid time," the Court has already determined that such time was properly compensable through the PSC's application for fees relating to the 2.0-liter settlement. (*See* Dkt. No. 3053 at 8 n.4.) The amount of $1,491,036.80 for "hybrid time" should therefore be excluded from the lodestar here. In fact, in its reply brief, Dealer Class Counsel also does not include "hybrid time" in its lodestar calculation. (*See* Dkt. No. 3074 at 18.)

Second, the Court agrees that, given the nature of the Settlement, no reserve time is required for its implementation. Volkswagen has begun making settlement payments to Franchise Dealer Class Members, and it is not clear that there is much, if any, additional work for Class Counsel to do. The reserve of $560,000 should thus be excluded.

Third, Dealer Class Counsel's documentation of its hours spent is sufficient. Volkswagen contends that it cannot determine why Dealer Class Counsel spent 1,081 hours ($457,883.85 of lodestar) on "Administrative" work. (Dkt. No. 3056-3 at 26.) But Dealer Class Counsel explains that, in addition to administrative tasks, it included in the Administrative category "all time spent discussing the settlement with dealers." (Dkt. 2963 ¶ 12.) Volkswagen also asserts that it cannot understand why—given the quick resolution of the dealer claims—1,097 hours ($625,575 of lodestar) were spent on "Pleadings/Briefs/Pre-trial Motions/Legal" work. (Dkt. 3056-3 at 26.) The Court is satisfied, however, with Dealer Class Counsel's explanation that extensive research was required to develop the theory of the case; research the law of multiple states; and to draft the complaint, preliminary and final approval papers, class notice, and other elements necessary to the eventual settlement. (Dkt. 3074 at 16-17). Finally, the fact that Hagens Berman's lodestar amount is nearly 3.75 times that of Bass Sox & Mercer is not unreasonable. Hagens Berman performed the initial research, filing, and prosecution of the Napleton litigation, which Bass Sox & Mercer did not join until several months after it was filed. (*See* Dkt. No. 2807 at 3.)

Subtracting "hybrid" time and reserve time, the Court determines that the proper lodestar amount is as follows:

| HB Exclusive Franchise Dealer Action Fees | $1,166,213.00 |
| BSM Exclusive Franchise Dealer Action Fees | $311,014.50 |
| Total | $1,477,227.50 |

### 2. Lodestar Multiplier

Having determined the lodestar amount, the Court next determines whether the lodestar should be adjusted upward or downward using a multiplier. *See Van Gerwen*, 214 F.3d at 1045 & n.2. An upward multiplier of 2.0 is appropriate here. As an initial matter, the lower multiplier (as compared to the 2.63 multiplier in the 2.0-liter fee award) reflects the nature and circumstances of the Settlement, as discussed above—namely, that the Settlement flowed naturally and necessarily from the 2.0-liter consumer settlement. Nevertheless, the Court recognizes that the result achieved is excellent, and that Dealer Class Counsel played a role in swiftly obtaining it.

Two months after this Court granted preliminary approval of the 2.0-liter class settlement, Dealer Class Counsel filed a motion for preliminary approval of the Dealer Class Settlement (Dkt. No. 1971), which this Court subsequently approved (Dkt. No. 2807). The Settlement had multiple cash and non-cash components, and—as both sides recognize (Dkt. 2886 at 7-8; Dkt. 3056-3 at 10.)—ultimately will provide franchise dealer class members with a recovery of nearly all of their losses attributable to Volkswagen's disclosure of its use of a defeat device.[7] Given the size of the class, the complexities of the case, and the multi-pronged settlement that was agreed to, it is commendable that Dealer Class Counsel was able to reach this resolution in such a short period of time.

Class counsel, however, "should not be 'punished' for efficiently litigating this action." *Bayat v. Bank of the West*, No. C-13-2376 EMC, 2015 WL 1744342, at \*9 (N.D. Cal. Apr. 15, 2015). A positive multiplier rewards Dealer Class Counsel for its efforts in achieving a swift

---

[7] The Court discussed the terms of the Settlement in detail in its Order Granting Final Approval of the Volkswagen Branded Franchise Dealer Class Action Settlement Agreement and Release. (*See* Dkt. 2807 at 4-8.)

8

settlement, while recognizing that counsel's efficiency actually reduced its lodestar. Other district courts have likewise concluded that remarkable swiftness in resolving litigation warrants a positive multiplier. *See id.* (holding that a positive multiplier was appropriate "given the efficiency with which class counsel litigated [the] action"); *Browne v. Am. Honda Motor Co., Inc.*, No. 09-cv-06750 MMM, 2010 WL 9499073, at *11 (C.D. Cal. Oct. 5, 2010) (applying a positive lodestar multiplier in part because of "the rapidity with which a settlement was reached").

The Court also recognizes that there were certain risks involved for Dealer Class Counsel, especially before resolution of the 2.0-liter case. Litigation time, costs, and risks fell solely upon Hagens Berman and Bass Sox & Mercer, as compared to the 2.0-liter case, where plaintiffs were represented by the 21 law firms appointed to the PSC. (*See* Dkt. 2102 at 3.) Franchise dealers also have a different relationship with Volkswagen than consumers, and Dealer Class Counsel faced the risk of unique defenses and arguments against class certification.

The Court is convinced that these factors support the 2.0x upward multiplier here. Applying the multiplier, Bass Sox & Mercer will be awarded $622,029.00 for its work in the Dealer litigation—that is, $311,014.50 times the 2.0x multiplier—and Hagens Berman will be awarded $2,332,426.00—that is, $1,166,213.00 times the 2.0x multiplier.[8]

\* \* \*

In sum, Dealer Class Counsel shall be awarded $2,954,455.00 in attorneys' fees for work performed related to the Settlement.

## II. Litigation Expenses

Dealer Class Counsel states that it has incurred litigation expenses exceeding $87,538 but that it would "absorb these costs in its fee request." (Dkt. No. 2886 at 22.) The Court finds that the reimbursement of such expenses, which include "court fees, service, copying, postage, legal research, experts and consultants, depositions, and travel" (Dkt. No. 2887 ¶ 21), is appropriate and will award $87,538 in costs to Dealer Class Counsel.

---

[8] As noted above, the Court previously awarded Hagens Berman $1,491,036.80 in attorneys' fees as part of the 2.0-liter settlement for its "hybrid time." (See Dkt. No. 3053 at 8 n.4.) When multiplied by the 2.3x multiplier adopted there, Hagens Berman's prior fees award was $3,429,384.64. Added to the fees awarded today, its total MDL fees award is $5,761,810.64.

**CONCLUSION**

For the reasons stated above, the Court GRANTS IN PART Dealer Class Counsel's motion for attorneys' fees relating to the Settlement. Dealer Class Counsel shall be awarded $2,954,455.00 in attorneys' fees and $87,538 in costs.

**IT IS SO ORDERED.**

Dated: April 12, 2017

CHARLES R. BREYER
United States District Judge