UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

|  |  |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) ) ) ) |

Case No: MDL No. 2672 CRB (JSC)

**THIRD PARTIAL CONSENT DECREE**

Hon. Charles R. Breyer

# TABLE OF CONTENTS

I.     JURISDICTION AND VENUE .................................................................................. 3
II.    APPLICABILITY ..................................................................................................... 4
III.   DEFINITIONS .......................................................................................................... 5
IV.    CIVIL PENALTY ..................................................................................................... 8
V.     INJUNCTIVE RELIEF FOR THE VW DEFENDANTS ...................................... 10
VI.    INJUNCTIVE RELIEF FOR THE PORSCHE DEFENDANTS ........................... 27
VII.   APPROVAL OF SUBMISSIONS ......................................................................... 38
VIII.  REPORTING AND CERTIFICATION REQUIREMENTS ................................. 40
IX.    STIPULATED PENALTIES ................................................................................... 43
X.     FORCE MAJEURE ................................................................................................ 53
XI.    DISPUTE RESOLUTION ...................................................................................... 55
XII.   INFORMATION COLLECTION AND RETENTION ......................................... 58
XIII.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS .............................. 60
XIV.   COSTS .................................................................................................................... 63
XV.    NOTICES ............................................................................................................... 63
XVI.   EFFECTIVE DATE ............................................................................................... 67
XVII.  RETENTION OF JURISDICTION ....................................................................... 68
XVIII. MODIFICATION ................................................................................................... 68
XIX.   TERMINATION ..................................................................................................... 68
XX.    PUBLIC PARTICIPATION ................................................................................... 69
XXI.   SIGNATORIES/SERVICE .................................................................................... 70
XXII.  INTEGRATION ..................................................................................................... 70
XXIII. FINAL JUDGMENT .............................................................................................. 71

**WHEREAS**, Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), filed a complaint in this action on January 4, 2016 (as amended on October 7, 2016), against Volkswagen AG, Volkswagen Group of America, Inc., Volkswagen Group of America Chattanooga Operations, LLC, Audi AG, Dr. Ing. h.c. F. Porsche AG, and Porsche Cars North America, Inc. (together, "Defendants") alleging that Defendants violated Sections 203(a)(1), (2), (3)(A), and (3)(B) of the Clean Air Act (the "Act"), 42 U.S.C. §§ 7522(a)(1), (2), (3)(A), and (3)(B), with regard to approximately 500,000 model year 2009 to 2015 motor vehicles containing 2.0 liter diesel engines (more specifically defined elsewhere as "2.0 Liter Subject Vehicles") and approximately 90,000 model year 2009 to 2016 motor vehicles containing 3.0 liter diesel engines (more specifically defined elsewhere as "3.0 Liter Subject Vehicles"), for a total of approximately 590,000 motor vehicles (collectively, "Subject Vehicles");

**WHEREAS**, the Complaint alleges that each Subject Vehicle contains, as part of the engine control module, certain computer algorithms that cause the emissions control system of those vehicles to perform differently during normal vehicle operation and use than during emissions testing. The Complaint alleges that these computer algorithms are prohibited defeat devices under the Act, and that during normal vehicle operation and use, the Subject Vehicles emit levels of oxides of nitrogen ("NOx") significantly in excess of the EPA-compliant levels. The Complaint alleges and asserts four claims for relief related to the presence of the defeat devices in the Subject Vehicles;

**WHEREAS**, on June 28, 2016, the United States lodged a Partial Consent Decree, Dkt. No. 1605-1 ("First Partial Consent Decree"), concerning the 2.0 Liter Subject Vehicles, which was entered into by the United States, California, and certain Defendants (Volkswagen AG, Audi

AG, Volkswagen Group of America, Inc., and Volkswagen Group of America Chattanooga Operations, LLC).  The First Partial Consent Decree was entered by this Court on October 25, 2016.  Dkt. No. 2103;

**WHEREAS**, on December 20, 2016, the United States lodged a Second Partial Consent Decree, Dkt. No. 2520-1 ("Second Partial Consent Decree"), concerning the 3.0 Liter Subject Vehicles, which was entered into by the United States, California, and all Defendants;

**WHEREAS**, the First and Second Partial Consent Decrees address the cars on the road and the associated environmental consequences resulting from the past and future excess emissions.  The United States enters into this Third Partial Consent Decree with Defendants (collectively, the "Parties") to address Defendants' liability under the Clean Air Act for civil penalties and injunctive relief to prevent similar violations in the future, which relief was reserved by the First and Second Partial Consent Decrees;

**WHEREAS**, Defendants admit that software in the 2.0 and 3.0 Liter Subject Vehicles enables the vehicles' engine control modules to detect when the vehicles are being driven on the road, rather than undergoing Federal Test Procedures, and that this software renders certain emission control systems in the vehicles inoperative when the engine control module detects the vehicles are not undergoing Federal Test Procedures, resulting in emissions that exceed EPA-compliant levels when the vehicles are driven on the road;

**WHEREAS**, Defendants admit that this software was not disclosed in the Certificate of Conformity applications for the 2.0 and 3.0 Liter Subject Vehicles, and, as a result, the design specifications of the 2.0 and 3.0 Liter Subject Vehicles, as manufactured, differ materially from the design specifications described in the Certificate of Conformity applications;

**WHEREAS**, this Third Partial Consent Decree is one of several coordinated resolutions of various federal civil and criminal claims related to the conduct alleged in the Complaint, to be set forth in other agreements;

**WHEREAS**, except as expressly provided in this Consent Decree, nothing in this Consent Decree shall constitute an admission of any fact or law by any Party except for the purpose of enforcing the terms or conditions set forth herein;

**WHEREAS**, the Parties recognize, and the Court by entering this Consent Decree finds, that the United States is not enforcing the laws of other countries, including the emissions laws or regulations of any jurisdiction outside the United States. Nothing in this Consent Decree is intended to apply to, or affect, Defendants' obligations under the laws or regulations of any jurisdiction outside the United States. At the same time, the laws and regulations of other countries shall not affect the Defendants' obligations under this Consent Decree; and

**WHEREAS**, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties regarding civil penalties and certain injunctive relief with respect to the claims alleged in the Complaint, and that this Consent Decree is fair, reasonable, and in the public interest.

**NOW, THEREFORE**, without the adjudication of any issue of fact or law, and with the consent of the Parties, **IT IS HEREBY ADJUDGED, ORDERED, AND DECREED** as follows:

## I. <u>JURISDICTION AND VENUE</u>

1. The Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Sections 203, 204, and 205 of the Act, 42 U.S.C. §§ 7522,

7523, and 7524, and over the Parties. Venue lies in this District pursuant to 28 U.S.C. § 1407 and the MDL Panel's Transfer Order, dated December 8, 2015, and filed in this MDL action as Dkt. No. 1. For purposes of this Decree, Defendants consent to the Court's jurisdiction over this Consent Decree, over any action to enforce this Consent Decree, and over Defendants, and consent to venue in this judicial district. Defendants reserve the right to challenge and oppose any claims to jurisdiction that do not arise from the Court's jurisdiction over this Consent Decree or an action to enforce this Consent Decree.

2.      For purposes of this Consent Decree, Defendants agree that the Complaint states claims upon which relief may be granted pursuant to Sections 203, 204, and 205 of the Act, 42 U.S.C. §§ 7522, 7523, and 7524.

## II.      **APPLICABILITY**

3.      The obligations of this Consent Decree apply to and are binding upon the United States, and upon the VW Defendants and any of the VW Defendants' successors, assigns, or other entities or persons otherwise bound by law, and upon the Porsche Defendants and any of the Porsche Defendants' successors, assigns, or other entities or persons otherwise bound by law.

4.      Defendants' obligations under Section IV (Civil Penalty) are joint and several. The VW Defendants' obligations to comply with all other requirements of this Consent Decree are joint and several. The Porsche Defendants' obligations to comply with the Porsche Defendants' other requirements of this Consent Decree are joint and several. Further, the VW Defendants shall be jointly liable with the Porsche Defendants to implement the Porsche Defendants' requirements of this Consent Decree. In the event of the insolvency of any VW Defendant or the failure by any VW Defendant to implement any requirement of this Consent Decree, the remaining VW Defendants shall complete all such requirements except as set forth in

this Paragraph.  In the event of the insolvency of any Porsche Defendant or the failure by any Porsche Defendant to implement any applicable requirement of this Consent Decree, the remaining Porsche Defendant and the VW Defendants shall complete all such requirements.

5.     Any legal successor or assign of any VW Defendant or Porsche Defendant shall remain jointly and severally liable for the payment and other performance obligations hereunder, except as described in Paragraph 4, above.  Defendants shall include an agreement to so remain liable in the terms of any sale, acquisition, merger, or other transaction changing the ownership or control of any of the Defendants, and no change in the ownership or control of any Defendant shall affect the obligations hereunder of any Defendant without modification of the Decree in accordance with Section XVIII (Modification).

6.     Defendants shall provide a copy of this Consent Decree to the members of their respective Board of Management and/or Board of Directors and their executives whose duties might reasonably include compliance with any provision of this Decree.  Defendants shall condition any contract providing for work required under this Consent Decree to be performed in conformity with the terms thereof.  Defendants shall also ensure that any contractors, agents, and employees whose duties might reasonably include compliance with any provision of the Decree are made aware of those requirements of the Decree relevant to their performance.

7.     In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by any of their officers, directors, employees, agents, contractors, or auditors to take any actions necessary to comply with the provisions of this Consent Decree.

### III.     DEFINITIONS

8.     Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such

regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions apply:

"2.0 Liter Subject Vehicles" has the meaning set forth in the Second Partial Consent Decree;

"3.0 Liter Subject Vehicles" has the meaning set forth in the Second Partial Consent Decree;

"Clean Air Act" or "Act" means 42 U.S.C. §§ 7401-7671q;

"Complaint" means the complaint filed by the United States in this action on January 4, 2016 (as amended on October 7, 2016);

"Consent Decree" or "Decree" or "Third Partial Consent Decree" means this partial consent decree;

"Day" means a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

"Defendants" means the persons or entities named in the Complaint, specifically, Volkswagen AG, Volkswagen Group of America, Inc., Volkswagen Group of America Chattanooga Operations, LLC, Audi AG, Dr. Ing. h.c. F. Porsche AG, and Porsche Cars North America, Inc.;

"Effective Date" has the meaning set forth in Section XVI;

"Electronic Emissions Control Module ("ECM") Software" means the electronic control unit(s), including the software and calibrations integrated in the ECM hardware, which control

the engine, transmission, powertrain, emissions control system, and on-board diagnostic system functions in the vehicle;

"Environmental Management System" or "EMS" means the management system established by the VW Defendants to provide a structure to carry out specific activities related to environmental protection and compliance with U.S. environmental laws for vehicles marketed and sold by the VW Defendants in the United States;

"EPA" means the United States Environmental Protection Agency and any of its successor departments or agencies;

"First Partial Consent Decree" means the Partial Consent Decree entered in this action by the Court on October 25, 2016;

The "Golden Rules" Handbook means the specific internal procedures developed by the VW Defendants on January 25, 2016 (Version 1.0), or subsequent versions if any, to optimize the VW Defendants' operational internal control system, which focuses on control unit software development, testing and monitoring procedures for vehicle certification, and escalation management in the Product Safety Committee (also referred to as "APS");

"Materials" means Submissions and other documents, certifications, plans, reports, notifications, data, or other information that is required to be submitted pursuant to this Decree;

"Paragraph" means a portion of this Decree identified by an Arabic numeral;

"Parties" means the United States and Defendants;

"Porsche Defendants" means Dr. Ing. h.c. F. Porsche AG, and Porsche Cars North America, Inc.;

"Product Development Process" means Defendants' process to manage the development of motor vehicles, including research and development, quality assurance, and compliance with U.S. environmental laws for vehicles marketed and sold by Defendants in the United States;

"Porsche Remediation Plan" means the plan approved by the Executive Board of Dr. Ing. h.c. F. Porsche AG in December 2016, or subsequent versions, if any, to develop and implement internal procedures for the development of vehicles that include emissions control systems designed to comply with U.S. environmental laws and regulations, and to ensure the segregation of duties relating to emission testing and certification of such vehicles;

"Second Partial Consent Decree" means the Partial Consent Decree lodged in this action by the United States on December 20, 2016;

"Section" means a portion of this Decree identified by a Roman numeral;

"Submission" means any plan, report, guidance, or other item that is required to be submitted for approval pursuant to this Consent Decree;

"United States" means the United States of America, acting on behalf of EPA, except when used in Paragraph 91.d, when it shall mean the United States of America; and

"VW Defendants" means Volkswagen AG, Volkswagen Group of America, Inc., Volkswagen Group of America Chattanooga Operations, LLC, and Audi AG.

## IV.    CIVIL PENALTY

9.      Within 30 Days after the Effective Date of this Consent Decree, Defendants shall pay the sum of $1,450,000,000 as a civil penalty, together with interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging.  This civil penalty resolves the civil claims of EPA as set forth in Paragraph 90 herein, and of U.S. Customs and Border Protection ("CBP"), as set forth in the

separate Settlement Agreement between CBP and Defendants, executed as part of the coordinated federal settlements.

10.    Defendants shall pay the civil penalty due at https://www.pay.gov to the U.S. Department of Justice ("DOJ") account, in accordance with instructions provided to Defendants by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Northern District of California, San Francisco Division, after the Effective Date. The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Defendants shall use to identify all payments required to be made in accordance with this Consent Decree. The FLU will provide the payment instructions to:

>    Head of Treasury of Volkswagen AG
>    Joerg Boche
>    Joerg.boche@volkswagen.de
>    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-92-4184

on behalf of Defendants. Defendants may change the individual to receive payment instructions on its behalf by providing written notice of such change to the United States, EPA, and CBP in accordance with Section XV (Notices).

11.    At the time of payment, Defendants shall send notice that payment has been made: (a) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; (b) to the United States via email or regular mail in accordance with Section XV; and (c) to EPA and CBP in accordance with Section XV. Such notice shall state that the payment is for (a) the civil penalty owed pursuant to the Consent Decree in *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation* and shall reference the civil action number, CDCS Number, and DOJ case number 90-5-2-1-11386, and (b) the CBP Settlement Agreement.

12. Defendants shall not deduct any penalties paid under this Decree pursuant to this Section or Section IX (Stipulated Penalties) in calculating their federal income taxes.

## V.      INJUNCTIVE RELIEF FOR THE VW DEFENDANTS

### Product Development Process

13. <u>Segregation of Duties between Product Development and Certification Testing/Monitoring for the VW Defendants</u>. Within 180 Days after the Effective Date, the VW Defendants shall implement measures to ensure that employees involved in certification testing and monitoring for purposes of vehicle certification under the Clean Air Act are organizationally separate from product development. The VW Defendants shall form and maintain an organizationally separate certification group ("Certification Group") to manage, supervise, and conduct certification testing and monitoring. The Certification Group shall:

a. Ensure that the VW Defendants have policies, procedures, practices, or processes for vehicle development that include emission control systems designed to comply with U.S. laws and regulations related to vehicle certification and emission standards;

b. Conduct, or retain a qualified contractor to conduct, emissions certification testing of both production and in-use vehicles;

c. Plan the testing program, obtain the vehicles, confirm that the configuration of the test vehicles is representative of the production vehicles, and test or retain a qualified contractor to test the certification vehicles consistent with EPA's regulations for certification and in-use performance testing. The Certification Group may utilize testing facilities and technicians assigned to other units within the VW Defendants' organization provided that the Certification

Group controls the certification testing; and

        d. Supervise all certification personnel, provide appropriate training, and control access to certification vehicles.

14.    <u>Establishment of VW Defendants' Group Steering Committee(s)</u>. Within 90 Days after the Effective Date, the VW Defendants shall establish and maintain one or more Group Steering Committees, for monitoring and complying with current and future U.S. laws regarding vehicle certification and vehicle emissions. The VW Defendants shall establish rules of procedure for the Group Steering Committee(s) and shall define its tasks, authorities, and responsibilities, which shall include: (1) to document significant current U.S. laws, regulations, and legislation related to vehicle certification and automotive emissions, and track future developments in U.S. law related to vehicle certification and automotive emissions; (2) to monitor and assist the VW Defendants' compliance with U.S. requirements regarding exhaust emission standards and technology; and (3) to establish internal procedures and controls for the VW Defendants in order to achieve compliance with U.S. requirements regarding exhaust emission standards and technology.

15.    <u>PEMS Testing by the VW Defendants</u>.

        a. The VW Defendants (under the supervision of the Certification Group) shall test certain model year 2017, 2018, and 2019 light-duty motor vehicles using portable emissions measurement system ("PEMS") testing. For each model year, the VW Defendants shall perform PEMS testing on 33% of VW Defendants' EPA-certified test groups within that model year ("VW Test Groups"). For purposes of determining the number of VW Test Groups composing 33%, the VW Defendants shall round up or down to the nearest whole

VW Test Group number closest to 33%. EPA may select the VW Test Groups for testing under this Paragraph 15.a pursuant to the following schedule: for model year 2017, by no later than February 1, 2017; for model year 2018, by no later than December 31, 2017, or at the annual certification meeting with EPA, whichever is earlier; and for model year 2019, by no later than December 31, 2018, or at the annual certification meeting with EPA, whichever is earlier. If EPA does not select the VW Test Groups pursuant to the schedule set forth in this Paragraph 15.a, then the VW Defendants shall select the VW Test Groups for PEMS testing. The VW Defendants shall select the VW Test Groups for model year 2017, model year 2018, and model year 2019 that will cover, in the aggregate, the full range of configurations of emission control systems on their light-duty vehicles for those model years, and shall not select a VW Test Group that was certified using carryover emissions data from another VW Test Group that has already been tested pursuant to this Paragraph (unless necessary to meet the 33% requirement). All testing under Paragraph 15.a for model year 2017 shall be completed by December 31, 2017. All testing under Paragraph 15.a for model years 2018 and 2019 shall be completed by September 30 of the calendar year for which the applicable model year is named, except that the VW Defendants and the United States may agree to a later date (but in no case later than December 31 of the applicable model year) sufficient to enable the VW Defendants to complete PEMS testing of the selected model year. The VW Defendants may, but are not required to, use the Third-Party Emissions Tester required by Paragraph 15.b to conduct the testing required by this Paragraph 15.a.

b. In addition to the requirements of Paragraph 15.a, the VW Defendants shall retain an independent third-party emissions tester ("Third-Party Emissions Tester"). (The VW Defendants and Porsche Defendants may hire the same Third-Party Emissions Tester.) No attorney-client relationship shall exist or be formed between any VW Defendant and the Third-Party Emissions Tester. For each of model year 2017, 2018, and 2019, the VW Defendants shall ensure that the Third-Party Emissions Tester conducts PEMS testing on a vehicle from each of two VW Test Groups. Testing under this Paragraph 15.b does not count toward the testing required under Paragraph 15.a. These VW Test Groups selected for testing under this Paragraph 15.b shall be the VW Test Groups with the highest projected sales for the model year at the time of certification, or if applicable those VW Test Groups selected by EPA by letter to the VW Defendants, pursuant to Section XV (Notices). Any such letters shall be provided no later than June 30 of the year for which the model year is named. All testing under this Paragraph 15.b shall be completed by December 31 of the calendar year for which the applicable model year is named.

c. The VW Defendants shall satisfy the testing required by Paragraph 15.a as follows, and shall ensure that the Third-Party Emissions Tester satisfies the testing required by Paragraph 15.a and b as follows:

i. Test a VW Test Group by testing one sample vehicle procured at random from the series production vehicles from that selected VW Test Group;

ii. Perform the required third-party PEMS testing on public

roads in the United States, and perform all PEMS testing under real-world

driving conditions over a range of ambient temperatures and pressures

(including conditions not represented on the Federal Test Procedure) to

measure emissions that are detectable on a serial vehicle via PEMS of the

vehicle's regulated criteria air pollutants and $CO_2$; and

        iii.  Conduct the required PEMS testing according to test

methods recorded before the testing commences.  The Third-Party Emissions

Tester shall use test methods independently from the VW Defendants.

      d.  Within 120 Days after the Effective Date, the VW Defendants

shall submit to EPA for review and approval in accordance with Section VII

(Approval of Submissions) a plan for PEMS testing under this Paragraph.  Such

plan shall include:

        i.  A list of those test groups the VW Defendants will test for

model year 2017;

        ii.  A written statement of qualifications for the proposed

Third-Party Emissions Tester including its name, affiliation, and address, its

experience in conducting PEMS testing, and a description of previous

contracts or financial relationships of the proposed Third-Party Emissions

Tester with the VW Defendants;

        iii.  A list of all emissions and vehicle and engine parameters

the VW Defendants will measure and record during each PEMS test they

perform under this Paragraph;

        iv.  A description of the test methods the VW Defendants

propose to use including the routes and ambient conditions over which the vehicles shall be tested;

     v.  A template for the VW Defendants' summary report as described below; and

     vi.  A description of how the VW Defendants intend to satisfy all requirements of this Paragraph.

     e.  For each model year, for the PEMS testing required by Paragraph 15.a, the VW Defendants shall provide the test data, a detailed statement of all test methods used, and an executive summary of the data and methods (that includes the measured emissions of the vehicle's regulated criteria air pollutants and $CO_2$) for all tests the VW Defendants performed under this Paragraph for that model year ("VW Defendants' Summary Report") to EPA as specified in Section XV (Notices). The VW Defendants' Summary Report for model year 2017 shall be due no later than March 1, 2018. The VW Defendants' Summary Report for model years 2018 and 2019 shall be due no later than November 30 of the calendar year for which the model year is named, unless the VW Defendants and the United States agree to a later date. Within 21 Days following submission of the VW Defendants' Summary Report to EPA, the VW Defendants shall post their Summary Report (redacted of any Confidential Business Information ("CBI") or personal information the disclosure of which is restricted by applicable law; however no emissions test methods and results may be claimed as CBI) in English and German at the public website required by Paragraph 51.

     f.  For each model year, for the PEMS testing required by Paragraph

15.b, the VW Defendants shall ensure that the Third-Party Emissions Tester prepares one or more "Third-Party Emissions Tester Summary Report" including the test data, a detailed statement of all test methods used, and an executive summary of the data and methods (that includes the measured emissions of the vehicle's regulated criteria air pollutants and $CO_2$) for all testing the Third-Party Emissions Tester performed under this Paragraph for that model year. The VW Defendants shall provide the Third-Party Emissions Tester Summary Report to EPA as specified in Section XV (Notices) by no later than March 1 of the calendar year immediately after the calendar year for which the model year is named. Within 30 Days following submission of the Third-Party Emissions Tester Summary Report to EPA, the VW Defendants shall post the Third-Party Emissions Tester Summary Report (redacted of any CBI or personal information the disclosure of which is restricted by applicable law; however no emissions test methods and results may be claimed as CBI) in English and German at the public website required by Paragraph 51.

g. The Parties agree and acknowledge that U.S. law does not set forth a standard by which PEMS testing can be used to determine compliance for purposes of certification under Title II of the Clean Air Act.

16. <u>Business Units within the Product Development Process</u>. Within 180 Days after the Effective Date, the VW Defendants shall implement the internal procedures set out in the "Golden Rules" Handbook by establishing internal controls and rules of procedure, and by defining the tasks, authorities, and responsibilities for the business units, committees, and boards involved in the Product Development Process, including, but not limited to, the Product Safety

Committee (also known as "APS"), the Change Control Board, and the Type Approval, Recyclability and Functional Safety Department (also known as "EGDT"); provided however, that implementation of software and information technology may extend beyond 180 Days after the Effective Date, and that these additional Days shall not count in determining the three-year period set forth in Paragraph 26. The "Golden Rules" Handbook and the internal controls and internal rules of procedure developed by the VW Defendants may be subject to reasonable modification, in consultation with the Department of Justice. The VW Defendants shall conduct regular employee training regarding the internal procedures, and shall monitor implementation of these procedures through the VW Defendants' Governance, Risk, and Compliance ("GRC") process.

17. <u>Definition of Managers' Responsibilities</u>. Within 120 Days after the Effective Date, the VW Defendants shall define the tasks, authorities, and responsibilities of the managers involved in the Product Development Process with respect to compliance with U.S. environmental laws and regulations.

18. <u>Internal Audit</u>. Within one year after the Effective Date, the VW Defendants shall conduct and complete an internal audit to track the implementation of the internal procedures in the "Golden Rules" Handbook relating to vehicle approval procedures with respect to U.S. environmental laws and regulations, ECM Software development in the Product Development Process, and escalation management in the Product Safety Committee ("APS"). The audit shall assess the effectiveness of those internal procedures and propose any corrective actions to improve their effectiveness.

19. <u>Reporting on Injunctive Relief Measures</u>. The first annual report provided to the Department of Justice pursuant to Paragraph 47 shall include the information required by

Paragraphs 18, 21, 22, and 23. In the second and third annual reports provided to the Department of Justice pursuant to Paragraph 47, the VW Defendants shall describe the measures that they have implemented to promote compliance with the requirements of Paragraphs 13, 14, 15, 16, 17, 21, 22, and 23 of this Section V (Injunctive Relief for the VW Defendants), together with an assessment of the effectiveness of those measures in promoting compliance with U.S. environmental law and any corrective actions the VW Defendants have undertaken to improve their effectiveness in promoting compliance with U.S. environmental law. In the second and third annual reports provided to the Department of Justice pursuant to this Paragraph 19, Defendants shall also address: (1) all risks assessed and recorded as part of the annual GRC process relating to either compliance with U.S. environmental laws and regulations or risks of rule violations in the Product Development Process; (2) countermeasures taken by the VW Defendants' business units in response to those risks; and (3) management controls implemented by the VW Defendants' business units relating to those risks. The information required to be provided in the annual reports pursuant to this Paragraph 19 shall be certified in accordance with Paragraph 52.

### Whistleblower System

20. _Implementation of Whistleblower System._ Within 180 Days of the Effective Date, the VW Defendants shall implement and maintain the Volkswagen Group whistleblower system that was approved by the Board in September 2016. The VW Defendants shall retain professionally educated and trained employees to administer the system. Any whistleblower policy that applies to individuals whose work the VW Defendants reasonably anticipate may involve or relate to vehicles to be certified for sale in the United States shall designate violations of U.S. environmental laws or regulations as "serious violations" within the meaning of the

policy.

21. <u>Report on case tracking</u>.  In each annual report provided to the Department of Justice pursuant to Paragraph 47, the VW Defendants shall submit a report, with a certification in accordance with Paragraph 52 of the Consent Decree, regarding case tracking under the Volkswagen Group whistleblower system of all whistleblower alerts relating to violations of U.S. environmental protection laws or regulations.

**Employee Survey and Code of Compliance**

22. <u>Annual Employee Survey</u>.  Within 90 Days after the Effective Date, the VW Defendants shall create for inclusion in their annual employee survey a question to monitor progress of the VW Defendants' integrity campaign as introduced on June 16, 2016, and, for teams whose work includes matters related to compliance with U.S. environmental laws, questions in appropriate managers' guides to the annual employee survey to gauge compliance with U.S. laws or regulations relating to environmental compliance.  The VW Defendants shall establish a centralized process to monitor and address employee survey responses relating to the integrity campaign.  In each annual report to the Department of Justice pursuant to Paragraph 47, the VW Defendants shall provide a summary of survey results relating to the integrity campaign.

23. <u>Code of Conduct</u>.  Within 180 Days after the Effective Date, the VW Defendants shall ensure that the VW Defendants' corporate Code of Conduct includes provisions regarding (1) environmental protection and (2) responsibility for compliance.  The VW Defendants shall require all new employees to attend training regarding the Code of Conduct.  In each annual report to the Department of Justice pursuant to Paragraph 47, the VW Defendants shall provide a summary of training provided to employees regarding the Code of Conduct.

## Environmental Management System ("EMS") Audit

24.     EMS Audit.  Within 90 Days after the Effective Date, the VW Defendants shall contract with and retain an independent third party to conduct an EMS audit pursuant to an industry-recognized standard for product development processes for vehicles to be certified for sale in the United States for each year for calendar years 2017, 2018, and 2019.  Beginning with the EMS audit covering calendar year 2017, the EMS audit shall include: (1) an assessment of the VW Defendants' processes to comply with U.S. environmental laws and regulations; and (2) a recommendation for corrective actions.

25.     Annual EMS Audit Report.  Upon completion of each annual EMS audit report, the VW Defendants shall provide to the Department of Justice a copy of their annual EMS audit report covering calendar year 2017, 2018, and 2019.  To the extent that any such report contains CBI, the VW Defendants shall simultaneously submit to Department of Justice for its review a summary version that can be made publicly available.  Within 21 Days after a copy is provided to the Department of Justice, the VW Defendants shall post a copy of the annual EMS audit report (redacted of any CBI or personal information the disclosure of which is restricted by applicable law; however no emissions test methods and results may be claimed as CBI) in English and German on the public website required by Paragraph 51.

## Implementation Timeframe

26.     The VW Defendants shall continue to implement the ongoing requirements of this Consent Decree, other than Section VI (Injunctive Relief for the Porsche Defendants), for a three-year period after the implementation of the requirements of Paragraph 16.

## Independent Compliance Auditor

27.     Retention of Independent Compliance Auditor.  The VW Defendants shall retain,

upon approval by the United States, a person or entity to serve as the Independent Compliance Auditor for the oversight of the VW Defendants' obligations under this Section V (Injunctive Relief for the VW Defendants) for a three-year period after the Effective Date.

a. <u>Recommendation of Candidates for the Independent Compliance Auditor</u>. Within 60 Days after the Effective Date, the VW Defendants shall submit to the United States a list of three candidates for the position of the Independent Compliance Auditor. The VW Defendants shall:

i. Submit a resume, biographical information, and any relevant material concerning each of the candidate's competence and qualifications to serve as Independent Compliance Auditor;

ii. Describe any past, present, or future business or financial relationship that the candidate has with the VW Defendants or EPA. A candidate may not be an employee or an agent of the VW Defendants, VW Defendants' subsidiaries or the United States, nor may the candidate be currently engaged in any work for, or in representation of, the VW Defendants;

iii. Verify that, to the VW Defendants' best knowledge and based on the reasonably available information, either the candidate has no conflicts of interest with regard to this matter or any actual or apparent conflict has been waived by the VW Defendants and the United States;

iv. Verify that the candidate has agreed not to be employed by the VW Defendants, or their subsidiaries, for a minimum of two years after the termination of its term as the Independent Compliance Auditor; and

v.   Accompany all of the information listed above in subparagraph 27.a.i through a.iv with a certification in accordance with Paragraph 52 of the Consent Decree.

b.  <u>Selection of the Independent Compliance Auditor</u>.  After receiving the list of candidates from the VW Defendants, the United States shall select an Independent Compliance Auditor from among the candidates and notify the VW Defendants of such selection.  Within 30 Days after notification by the United States of its selection, the VW Defendants shall retain the selected candidate to serve as the Independent Compliance Auditor.  If the United States does not select any of the candidates submitted by the VW Defendants, the process under subparagraph 27.a shall be repeated until the Independent Compliance Auditor is selected.

c.  <u>Vacancy in the Position of the Independent Compliance Auditor</u>. In the event that the Independent Compliance Auditor, once selected, is unable or unwilling to fulfill its duties as the Independent Compliance Auditor, the processes under subparagraphs a. and b. shall be used to select a new Independent Compliance Auditor.

d.  <u>Independent Compliance Monitor</u>.  If there is an Independent Compliance Monitor retained pursuant to Paragraph 15 of the Plea Agreement entered in *United States v. Volkswagen AG* (2017) (E.D. Mich.), the same individual shall function as the Independent Compliance Auditor under this Paragraph 27.  Provided however that the VW Defendants acknowledge and agree that their obligations under this Consent Decree are independent of the Plea

Agreement.  Thus, if for any reason the VW Defendants do not retain a Monitor under the Plea Agreement by such time as an Auditor is required to be retained by Paragraph 27.b of this Consent Decree, or if the Court does not enter the Plea Agreement by such time as an Auditor is required to be retained by Paragraph 27.b of this Consent Decree, the VW Defendants must still retain an Auditor that satisfies the requirements of Paragraph 27 of this Consent Decree.

28.   <u>Access Rights and Duties of the Independent Compliance Auditor</u>.  The VW Defendants shall cooperate fully with the Auditor in any and all matters relating to the Auditor's duties as set forth in this Paragraph.

a. <u>Audit Plan</u>.  The Independent Compliance Auditor shall carry out its duties based on: (1) review of relevant documents and procedures; (2) on-site observation of selected systems and procedures at the VW Defendants' sites, including internal controls, record-keeping, and internal audit procedures; (3) meetings with and interviews of relevant employees, managers, and directors; and (4) analyses, studies, and testing of the VW Defendants' compliance management system.  Within 30 Days after retention, the Independent Compliance Auditor shall develop and submit to the Department of Justice for comment a draft audit plan that will establish a checklist of relevant compliance requirements, procedures for the exchange of any documents and information that the Independent Compliance Auditor needs to perform its duties, and any other terms that the Independent Compliance Auditor may deem necessary to effectuate its duties.  By February 28 of each subsequent year, the Independent Compliance Auditor shall develop and submit to the Department of Justice for comment a draft

audit plan for its annual audit activities.  The Independent Compliance Auditor shall take the Department of Justice's comments into consideration in developing each of the final audit plans.

b. <u>Information and Access Rights Accorded to Independent Compliance Auditor, and Independent Compliance Auditor Notice to DOJ of Non-Compliance</u>.  The VW Defendants shall cooperate fully with the Independent Compliance Auditor and shall provide the Independent Compliance Auditor with any information and documents that the Auditor requests or may reasonably need to fulfill the duties listed in this Paragraph 28.  The VW Defendants shall designate an Environmental Compliance Officer to liaise directly with the Independent Compliance Auditor regarding issues of information and access rights.  The VW Defendants shall facilitate the Independent Compliance Auditor's access to the VW Defendants' documents, databases, and facilities where certification or compliance testing of the VW Defendants' vehicles occur.  The VW Defendants shall use best efforts to make their employees or contractors available to answer questions or provide information that the Independent Compliance Auditor may need in the fulfillment of its duties.  In the event that the VW Defendants seek to withhold from the Auditor access to information, documents, records, facilities, or current or former employees or contractors of the VW Defendants that may be subject to a claim of attorney-client privilege or to the attorney work product doctrine, or where the VW Defendants reasonably believe production or providing access would otherwise be inconsistent with applicable law, the VW Defendants shall work cooperatively with the Auditor to resolve the

matter to the satisfaction of the Auditor consistent with applicable law. If the Independent Compliance Auditor believes the VW Defendants have violated the requirements of this Paragraph 28, the Independent Compliance Auditor shall promptly notify the Department of Justice, including a description of the alleged violations and supporting documentation as necessary.

c. <u>Annual Reports</u>. The Independent Compliance Auditor shall review documents and take such reasonable measures as may be necessary to verify the VW Defendants' compliance with Section V (Injunctive Relief for the VW Defendants). For three years after the Effective Date, the Independent Compliance Auditor shall audit the VW Defendants' compliance with their obligations under Section V (Injunctive Relief for the VW Defendants) of this Consent Decree, and shall provide an annual report to the Department of Justice. The first annual report is due one year after the Effective Date, the second annual report is due two years after the Effective Date, and the third annual report is due three years after the Effective Date. The Independent Compliance Auditor shall concurrently provide a draft copy of its annual report to the Department of Justice and the VW Defendants. Within 30 Days after receipt of the draft report, the VW Defendants shall provide their comments, if any, to the Independent Compliance Auditor. The Independent Compliance Auditor may consider and reflect the VW Defendants' comments in its final report to the extent that the Independent Compliance Auditor deems appropriate in the exercise of its independent judgment. In the annual report, the Independent Compliance Auditor shall include, as applicable, findings that identify any noncompliance by the VW

Defendants with the requirements of Section V (Injunctive Relief for the VW Defendants), and shall recommend, as applicable, actions for the VW Defendants to take to achieve compliance. The Independent Compliance Auditor shall also monitor the VW Defendants' implementation of any action plan submitted pursuant to Paragraph 29, and shall indicate in the annual report the status of any corrective action. All final annual reports from the Independent Compliance Auditor (redacted of any CBI or personal information the disclosure of which is restricted by applicable law; however no emissions test methods and results may be claimed as CBI) shall be posted by the VW Defendants on the public website required by Paragraph 51 in both English and German within 21 Days after issuance.

     d. <u>Compensation of the Independent Compliance Auditor</u>. The VW Defendants shall be responsible for compensating the Independent Compliance Auditor for the performance of its duties in accordance with the terms agreed upon by the VW Defendants and the selected Independent Compliance Auditor. Such terms of agreement shall clarify that the Independent Compliance Auditor is not an employee or an agent of the VW Defendants, and the Independent Compliance Auditor's work is not subject to the VW Defendants' assertion of attorney-client or work product privileges. Upon the Department of Justice's request, any agreements between the VW Defendants and the Independent Compliance Auditor shall be made available for the Department of Justice's review.

29. <u>VW Defendants' Response to Independent Compliance Auditor's Report</u>.

     a. <u>Action Plan</u>. Within 60 Days after receiving an Independent

Compliance Auditor's final report containing a finding of noncompliance, the VW Defendants shall submit to the Department of Justice a response to the Independent Compliance Auditor's findings and recommendations for corrective action. The VW Defendants' response shall include, as applicable, an action plan to implement corrective measures as expeditiously as practicable, or an explanation of why corrective measures are not being implemented. After the VW Defendants have completed implementation of the corrective measures, if any, the VW Defendants shall provide a report to the Department of Justice with a certification, in accordance with Paragraph 52 of the Consent Decree, that the work has been completed.

b. <u>Annual Meeting</u>. Within 90 Days after receiving an Independent Compliance Auditor's final report, the VW Defendants shall meet with the Department of Justice to discuss the Independent Compliance Audit and any suggestions, comments, or improvements that the VW Defendants may wish to discuss with the Department of Justice.

VI.     <u>**INJUNCTIVE RELIEF FOR THE PORSCHE DEFENDANTS**</u>

30.     <u>Segregation of Duties between Product Development and Certification Testing/Monitoring</u>. Within 90 Days after the Effective Date, the Porsche Defendants shall implement measures to ensure that employees involved in certification testing and monitoring are organizationally separate from those involved in product development. Consistent with the Porsche Remediation Plan, the Porsche Defendants shall, as set forth in Paragraph 31 below, improve policies, procedures, practices, or processes for the development of vehicles that include emission control systems designed to comply with U.S. laws and regulations related to emissions

standards and certifications, and to ensure that emissions certification testing of such vehicles is not performed by the organizational units responsible for product development.

31. <u>Organization and Processes</u>.

a.  The Porsche Defendants shall implement cross-departmental segregation of duties by establishing a new organizational unit, the "Technical Conformity" unit, which shall have primary responsibility for: (1) developing and implementing the certification testing program; (2) coordinating a central list of auxiliary emission control devices ("AECDs") in vehicles; (3) interpreting technical provisions related to certification; and (4) communicating with government agencies regarding the certification of vehicles.

b.  For vehicles that the Porsche Defendants will certify for sale in the United States, the Technical Conformity organizational unit shall: (1) develop and implement the certification testing program, obtain and manage the certification test vehicles, confirm that the configuration of the test vehicles is representative of the production vehicles, and test the certification vehicles consistent with EPA's regulations for certification; and (2) supervise all certification personnel, provide training for certification personnel, and control access to certification vehicles during certification emissions testing.

c.  In order to optimize internal processes regarding the interpretation of technical provisions relating to certification of vehicles, the Porsche Defendants shall centralize the responsibility for such interpretation in the Technical Conformity organizational unit.

d.  The Porsche Defendants shall restructure the Powertrain Change

Control Board ("CCB") and the Product Safety Committee ("PSK") in accordance with the Porsche Remediation Plan. The CCB, which is the central approval and escalation committee for ECM Software changes, shall be subject to internal procedures requiring increased standards for establishment of ECM Software change requests, stricter requirements for documentations of decisions, and expansion of the participants required for a CCB decision. The PSK shall be restructured to improve conformity with U.S. environmental laws and regulations for vehicles sold in the U.S.

e. The Porsche Defendants shall establish rules of procedure for the approval of ECM Software development.

f. The Porsche Defendants shall establish additional approval criteria for technical conformity in product development processes related to emissions control.

g. The Porsche Defendants shall transfer responsibility for the conformity of production process from the Research and Development Division ("E") to the Corporate Quality Department ("GQ"). GQ shall establish rules of procedure for conformity of production to determine compliance of vehicles with U.S. environmental laws and regulations.

h. For vehicles certified for sale in the United States, GQ shall supervise the in-use performance testing of vehicles, which testing must be performed in accordance with EPA regulations.

32. <u>Establishment of the Porsche Defendants' Project Management Office for the Porsche Remediation Plan</u>. Within 90 Days after the Effective Date, the Porsche Defendants

shall establish and maintain a Project Management Office ("PMO") for the Porsche Remediation Plan. The PMO shall ensure that an adequate organizational structure for monitoring and complying with current and future United States laws regarding vehicle certification and vehicle emissions is established. Consistent with the Porsche Remediation Plan, the PMO shall establish rules of procedure and set out tasks, authorities, and responsibilities for specific Porsche Defendants' organizations: (1) to document significant current U.S. laws, regulations, and legislation related to vehicle certification and automotive emissions, and track future developments in United States law related to vehicle certification and automotive emissions; (2) to monitor and assist the Porsche Defendants' compliance with U.S. requirements regarding exhaust emission standards and technology; and (3) to establish internal procedures and controls for the Porsche Defendants in order to achieve compliance with U.S. requirements regarding exhaust emission standards and technology.

33. PEMS Testing by the Porsche Defendants.

a. The Porsche Defendants (under the supervision of the Technical Conformity Group) shall test certain model year 2017, 2018, and 2019 light-duty motor vehicles using PEMS testing. For each model year, the Porsche Defendants shall perform PEMS testing on 33% of the Porsche Defendants' EPA-certified test groups within that model year ("Porsche Test Groups"). For purposes of determining the number of Porsche Test Groups composing 33%, the Porsche Defendants shall round up or down to the nearest whole Porsche Test Group number closest to 33%. EPA may select the Porsche Test Groups for testing under this Paragraph 33.a pursuant to the following schedule: for model year 2017, by no later than February 1, 2017, for model year 2018, by no later than December 31,

2017, or at the annual certification meeting with EPA, whichever is earlier, and for model year 2019, by no later than December 31, 2018, or at the annual certification meeting with EPA, whichever is earlier.  If EPA does not select the Porsche Test Groups pursuant to the schedule set forth in this Paragraph 33.a, the Porsche Defendants shall select Porsche Test Groups for PEMS testing.  The Porsche Defendants shall select Porsche Test Groups for model year 2017, model year 2018, and model year 2019 that will cover, in the aggregate, the full range of configurations of emission control systems on their light-duty vehicles for those model years, and shall not select a Porsche Test Group that was certified using carry-over emissions data from another Porsche Test Group that has already been tested pursuant to this Paragraph (unless necessary to meet the 33% requirement).  All testing under this Paragraph 33.a for model year 2017 must be completed by December 31, 2017.  All testing under this Paragraph 33.a for model years 2018 and 2019 must be completed by September 30 of the calendar year for which the applicable model year is named, except that the Porsche Defendants and the United States may agree to a later date (but in no case later than December 31 of the applicable model year) sufficient to enable the Porsche Defendants to complete PEMS testing of the selected model year.  The Porsche Defendants may, but are not required to, use the Third-Party Emissions Tester required by Paragraph 33.b to conduct the testing required by this Paragraph 33.a.

b. In addition to the requirements of Paragraph 33.a, the Porsche Defendants shall retain an independent Third-Party Emissions Tester.  (The VW Defendants and Porsche Defendants may hire the same Third-Party Emissions

Tester.) No attorney-client relationship shall exist or be formed between any Porsche Defendant and the Third-Party Emissions Tester. For each of model year 2017, 2018, and 2019, the Porsche Defendants shall ensure that the Third-Party Emissions Tester conducts PEMS testing on one vehicle from one Porsche Test Group. Testing under this Paragraph 33.b does not count toward the testing required under Paragraph 33.a. The Porsche Test Group selected for testing under this Paragraph 33.b shall be the Porsche Test Group with the highest projected sales for the model year at the time of certification or, if applicable, the Porsche Test Group selected by EPA by letter to the Porsche Defendants pursuant to Section XV (Notices). Any such letters shall be provided no later than June 30 of the year for which the model year is named. All testing under this Paragraph 33.b shall be completed by December 31 of the calendar year for which the applicable model year is named.

c. The Porsche Defendants shall satisfy the testing required by Paragraph 33.a as follows, and shall ensure that the Third-Party Emissions Tester satisfies the testing required by Paragraphs 33.a and 33.b as follows:

i. Test a Porsche Test Group by testing one sample vehicle procured at random from the series production vehicles from that selected Porsche Test Group;

ii. Perform the required third-party PEMS testing on public roads in the United States, and perform all PEMS testing under real-world driving conditions over a range of ambient temperatures and pressures (including conditions not represented on the Federal Test Procedure) to

measure emissions that are detectable on a serial vehicle via PEMS of the vehicle's regulated criteria air pollutants and $CO_2$; and

      iii.  Conduct the required PEMS testing according to test methods recorded before the testing commences.  The Third-Party Emissions Tester shall use test methods independently from the Porsche Defendants.

    d.  Within 120 Days after the Effective Date, the Porsche Defendants shall submit to EPA for review and approval in accordance with Section VII (Approval of Submissions) a plan for PEMS testing under this Paragraph.  Such plan shall include:

      i.  A list of those test groups the Porsche Defendants will test for model year 2017;

      ii.  A written statement of qualifications for the proposed Third-Party Emissions Tester including its name, affiliation, and address, its experience in conducting PEMS testing, and a description of previous contracts or financial relationships of the proposed Third-Party Emissions Tester with the Porsche Defendants;

      iii.  A list of all emissions and vehicle and engine parameters the Porsche Defendants will measure and record during each PEMS test they perform under this Paragraph;

      iv.  A description of the test methods the Porsche Defendants propose to use including the routes and ambient conditions over which the vehicles shall be tested;

      v.  A template for the Porsche Defendants' summary report as

described below; and

vi. A description of how the Porsche Defendants intend to satisfy all requirements of this Paragraph.

e. For each model year, for the PEMS testing required by Paragraph 33.a, the Porsche Defendants shall provide the test data, a detailed statement of all test methods used, and an executive summary of the data and methods (that includes the measured emissions of the vehicle's regulated criteria air pollutants and $CO_2$) for all tests the Porsche Defendants performed under this Paragraph for that model year ("Porsche Defendants' Summary Report") to EPA as specified in Section XV (Notices). The Porsche Defendants' Summary Report for model year 2017 shall be due no later than March 1, 2018. The Porsche Defendants' Summary Report for model years 2018 and 2019 shall be due no later than November 30 of the calendar year for which the model year is named, unless the Porsche Defendants and the United States agree to a later date. Within 21 Days after submitting the Porsche Defendants' Summary Report to EPA, the Porsche Defendants shall post their Summary Report (redacted of any CBI or personal information the disclosure of which is restricted by applicable law; however no emissions test methods and results may be claimed as CBI) in English and German at the public website required by Paragraph 51.

f. For each model year, for the PEMS testing required by Paragraph 33.b, the Porsche Defendants shall ensure that the Third-Party Emissions Tester prepares a Third-Party Emissions Tester Summary Report including the test data, a detailed statement of all test methods used, and an executive summary of the data

and methods (that includes the measured emissions of the vehicle's regulated criteria air pollutants and $CO_2$) for all testing the Third-Party Emissions Tester performed under this Paragraph for that model year. The Porsche Defendants shall provide the Third-Party Emissions Tester Summary Report to EPA as specified in Section XV (Notices) by no later than March 1 of the calendar year immediately after the calendar year for which the model year is named. Within 30 Days after submitting the Third-Party Emissions Tester Summary Report to EPA, the Porsche Defendants shall post the Third-Party Emissions Tester Summary Report (redacted of any CBI or personal information the disclosure of which is restricted by applicable law; however no emissions test methods and results may be claimed as CBI) in English and German at the public website required by Paragraph 51.

g. The Parties agree and acknowledge that U.S. law does not set forth a standard by which PEMS testing can be used to determine compliance for purposes of certification under Title II of the Clean Air Act.

34. <u>Business Units within Product Development Process</u>. Within 18 months after the Effective Date, the Porsche Defendants shall implement the Porsche Remediation Plan by establishing internal controls and rules of procedure, and by defining the tasks, authorities, and responsibilities for the business units, committees, and boards involved in the Product Development Process, including, but not limited to, the PSK, the CCB, the Technical Conformity organizational unit, and the Product Safety & Compliance Department, as described in the Remediation Plan. The internal controls and internal rules of procedure developed by the Porsche Defendants may be subject to reasonable modification, in consultation with the

Department of Justice. The Porsche Defendants shall monitor implementation of these procedures through the Porsche Defendants' Internal Audit Department.

35. <u>Supplier Contracts</u>. The Porsche Defendants shall adjust or modify supplier contracts to include standardized requirements pertaining to conformity with U.S. legal requirements for vehicle emissions, certification, and information reporting.

36. <u>Definition of Managers' Responsibilities</u>. Within 90 Days after the Effective Date, the Porsche Defendants shall define the tasks, authorities, and responsibilities of the managers involved in the Product Development Process, including with respect to compliance with U.S. environmental laws and regulations.

37. <u>Whistleblower System</u>. Upon the Effective Date, the Porsche Defendants shall maintain the whistleblower/employee reporting system for the Porsche Defendants' employees, which ensures that the identity and anonymity of whistleblowers is protected. The Porsche Defendants shall retain a minimum of two external, independent, and experienced professionals to act as ombudsmen; the ombudsmen shall be obliged to maintain professional confidentiality. The Porsche Defendants shall conduct periodic training events to publicize the availability of reporting options for employees and to explain the procedures and protections of the whistleblower system. Violations of the U.S. environmental laws and regulations shall be treated as serious violations within the Porsche Defendants' whistleblower system. In each semi-annual report provided to the Department of Justice, the Porsche Defendants shall submit a report of all whistleblower alerts relating to violations of U.S. environmental laws or regulations.

38. <u>Compliance Awareness – Employee Training</u>.

a. Within 90 Days after the Effective Date, the Porsche Defendants shall revise the Porsche Defendants' corporate Code of Conduct to include

compliance with environmental laws or regulations within the Code's discussion of (1) environmental protection and (2) responsibility for compliance. The Porsche Defendants shall ensure that the Code of Conduct is discussed with new employees during new employee orientation and inform current employees about the amended content.

b. The Porsche Defendants shall provide technical product conformity training to employees involved in the Product Development Process to ensure appropriate knowledge of the following topics: correct use of test equipment, guidelines for handling test data, overview of U.S. emission-relevant regulations and standards, and AECD-relevant topics.

c. In each semi-annual report to the Department of Justice, the Porsche Defendants shall provide a summary of training provided to employees as described in this Paragraph 38.

39. <u>Semi-Annual Reporting on the Porsche Defendants' Implementation of the Porsche Remediation Plan and Internal Audit</u>.

a. <u>Semi-Annual Reporting</u>. On a semi-annual basis (January 31 and July 31 of each year), the Porsche Defendants' Head of Internal Audit shall submit a report, with a certification in accordance with Paragraph 52 of the Consent Decree, to the Department of Justice, identifying the objectives, as defined in the Remediation Plan, which have been completed and track the status of objectives that have not yet been completed, including the identification of any issues that may delay the implementation of the same. Each semi-annual report shall also provide information regarding the Porsche Defendants' compliance with the

requirements of Paragraphs 30 through 38.

b. <u>Internal Audit</u>.  Within two years after the Effective Date, or earlier as consistent with the timelines and schedule of the Porsche Remediation Plan, the Porsche Defendants shall conduct and complete an internal audit to track the implementation of internal procedures relating to approval procedures or software development in the Product Development Process.  The audit shall assess: (1) the implementation and effectiveness of the internal procedures, as specifically set forth in the Porsche Remediation Plan, and propose any corrective actions to improve their effectiveness; and (2) the escalation of critical issues, as defined in the Porsche Remediation Plan, to report recipients, including the Executive Board of Dr. Ing. h.c. F. Porsche AG.  Following completion, the Porsche Defendants shall provide a copy of the audit report to the Department of Justice.

40.  Provided that Defendants have commenced implementation of the Porsche Remediation Plan pursuant to the provisions of this Consent Decree and are implementing the Remediation Plan substantially consistent with the timelines established in the Remediation Plan, then the requirements of this Section VI (Injunctive Relief for the Porsche Defendants) shall be deemed to be implemented for purposes of Section XIX (Termination) as of June 30, 2020.

## VII.  APPROVAL OF SUBMISSIONS

41.  After review of any Submission required by Paragraph 15 or Paragraph 33, EPA shall in writing: (a) approve the Submission; (b) approve the Submission upon specified conditions; (c) approve part of the Submission and disapprove the remainder; or (d) disapprove the Submission.  In the event of disapproval, in full or in part, of any portion of the Submission,

if not already provided with the disapproval, upon request of any one of the Defendants, EPA will provide in writing the reasons for such disapproval.

42.     If the Submission is approved pursuant to Paragraph 41, the VW Defendants or the Porsche Defendants, as applicable, shall take all actions required by the Submission in accordance with the schedules and requirements of the Submission, as approved.  If the Submission is conditionally approved or approved only in part pursuant to Paragraph 41(b) or (c), the VW Defendants or the Porsche Defendants, as applicable, shall, upon written direction from EPA, take all actions required by the Submission that EPA determines are technically severable from any disapproved portions.

43.     If the Submission is disapproved in whole or in part pursuant to Paragraph 41(c) or (d), the VW Defendants or the Porsche Defendants, as applicable, shall, within 30 Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the Submission, or disapproved portion thereof, for approval, in accordance with Paragraphs 41 to 42.  If the resubmission is approved in whole or in part, the VW Defendants or the Porsche Defendants, as applicable, shall proceed in accordance with Paragraph 42.

44.     If a resubmitted Submission, or portion thereof, is disapproved in whole or in part, EPA may again require the VW Defendants or the Porsche Defendants, as applicable, to correct any deficiencies, in accordance with Paragraphs 42 and 43, or EPA may itself correct any deficiencies.

45.     Defendants may elect to invoke the dispute resolution procedures set forth in Section XI (Dispute Resolution) concerning any decision of EPA to disapprove, approve on specified conditions, modify, or correct a Submission.  If one or more Defendants elect to invoke dispute resolution, they shall do so within 30 Days (or such other time as the Parties agree to in

writing) after receipt of the applicable decision.

46.     Any stipulated penalties applicable to the original Submission, as provided in

Section IX (Stipulated Penalties), shall accrue during the 30-Day period or other specified period

pursuant to Paragraph 43.  Such stipulated penalties shall not be payable unless the resubmission

of the Submission is untimely or is disapproved in whole or in part; provided that, if the original

Submission was so deficient as to constitute a material breach of the VW Defendants' or the

Porsche Defendants', as applicable, obligations under this Decree in making that Submission, the

stipulated penalties applicable to the original Submission shall be due and payable

notwithstanding any subsequent resubmission.

## VIII.     <u>REPORTING AND CERTIFICATION REQUIREMENTS</u>

47.     <u>Timing of Reports</u>.  The VW Defendants shall submit an annual report

incorporating information required by Paragraphs 19, 21, 22, 23, and 28.  The first annual report

is due one year after the Effective Date; the second annual report is due two years after the

Effective Date, and the third annual report is due three years after the Effective Date.  The

reports required by Paragraphs 15, 18, 25, and 49.b shall be due as set forth in those Paragraphs.

48.     Defendants may assert that information submitted under this Consent Decree is

protected as CBI as set out in 40 C.F.R. Part 2.

49.     <u>Reporting of Violations</u>.

a. If the VW Defendants or the Porsche Defendants reasonably

believe they have violated, or that they may violate, any requirement of this

Consent Decree, such Defendants shall notify EPA of such violation and its likely

duration, in a written report submitted within 14 business Days after the Day such

Defendants first reasonably believe that a violation has occurred or may occur,

with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the VW Defendants or the Porsche Defendants believe the cause of a violation cannot be fully explained at the time the report is due, such Defendants shall so state in the report. The VW Defendants or the Porsche Defendants, as applicable, shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days after the Day on which such Defendants reasonably believe they have determined the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves Defendants of their obligation to provide the notice required by Section X (Force Majeure).

       b. <u>Semi-Annual Report of Violations</u>. On January 31 and July 31 of each year, the VW Defendants and Porsche Defendants shall each submit a summary to the United States of any violations of the Decree that occurred during the preceding six months (or potentially shorter period for the first semi-annual report), and that are required to be reported pursuant to subparagraph 49.a, including the date of the violation, the date the notice of violation was sent, and a brief description of the violation.

    50. Whenever the VW Defendants or the Porsche Defendants reasonably believe that any violation of this Consent Decree or any other event affecting the VW Defendants' or the Porsche Defendants' performance under this Decree may pose an immediate threat to the public health or welfare or the environment, such Defendants shall notify EPA by email as soon as practicable, but no later than 24 hours after such Defendants first reasonably believe the violation

or event has occurred.  This procedure is in addition to the requirements set forth in Paragraph 49.

51.    All reports required to be posted to a public website by this Consent Decree shall be accessible on the public website www.VWCourtSettlement.com, used by Defendants pursuant to the First Partial Consent Decree, and a link to such website shall be displayed on www.vw.com, www.audiusa.com, and www.porsche.com.

52.    Each report to be certified pursuant to this Paragraph shall be signed by an officer or director of the VW Defendants or the Porsche Defendants, as appropriate, and shall include the following sworn certification, which may instead be certified as provided in 28 U.S.C. § 1746:

> I certify under penalty of perjury under the laws of the United States that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, correct, and complete.  I have no personal knowledge, information or belief that the information submitted is other than true, correct, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

53.    Defendants agree that the certification required by Paragraph 52 is subject to 18 U.S.C. §§ 1001(a) and 1621.

54.    The certification requirement in Paragraph 52 does not apply to emergency or similar notifications where compliance would be impractical.

55.    The reporting requirements of this Consent Decree do not relieve Defendants of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

56.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## IX.     **STIPULATED PENALTIES**

57.     Defendants shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified in this Section, unless excused under Section X (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

58.     Late Payment of Civil Penalty.  If Defendants fail to pay the civil penalty required under Section IV (Civil Penalty) of this Decree when due, then Defendants shall pay stipulated penalties that accrue for each Day that the civil penalty payment is late:

| Stipulated Penalty | Duration of Compliance Failure |
|---|---|
| Interest (per Paragraph 63) | 1st through 4th Day |
| $50,000 | 5th through 30th Day |
| $100,000 | 31st through 45th Day |
| $200,000 | 46th Day and beyond |

59.     Injunctive Relief Requirements for the VW Defendants

        a.  Independent Certification Group, Group Steering Committee, and Whistleblower System.  The VW Defendants shall pay stipulated penalties per each Day for each Day that the establishment, maintenance, or implementation of an organizationally-separate certification group, the Group Steering Committee(s), or the whistleblower system is overdue or is otherwise not in accordance with the requirements set forth in Paragraphs 13, 14, and 20, as follows.  However, any

such stipulated penalties shall not accrue if, during the period of noncompliance alleged by the United States: the VW Defendants (1) took reasonable and substantial measures to comply with the obligation; and (2) had an objectively reasonable belief that they had complied with the obligation, which shall be established by a certification pursuant to Paragraph 52 and any other evidence the VW Defendants may submit.  Such certification and evidence shall be submitted by the VW Defendants to the United States within 30 Days of receiving the United States' stipulated penalty demand together with a description of the measures the VW Defendants are taking to address the noncompliance identified in the United States' demand.  The United States shall evaluate the evidence submitted by the VW Defendants to determine whether to modify or withdraw the United States' stipulated penalty demand.  If the United States, after reviewing such evidence, elects to impose stipulated penalties on any VW Defendant(s), such VW Defendant(s) have the right to invoke the Dispute Resolution procedures set forth in Section XI (Dispute Resolution).  Any stipulated penalties pursuant to this Paragraph shall be as follows, running from the date of accrual as determined pursuant to this Paragraph:

| Stipulated penalty | Duration of compliance failure |
| --- | --- |
| $2,000 | 1st through 14th Day |
| $10,000 | 15th through 30th Day |
| $50,000 | 31st Day and beyond |

b. <u>PEMS Testing Program</u>.  The VW Defendants shall pay stipulated penalties per each Day for each Day that the PEMS testing program is overdue or

is otherwise not in accordance with the requirements set forth in Paragraph 15, as follows:

| Stipulated penalty | Duration of compliance failure |
|---|---|
| $2,000 | 1st through 14th Day |
| $10,000 | 15th through 30th Day |
| $50,000 | 31st Day and beyond |

c. "Golden Rules" Handbook Implementation and Annual EMS Audits. The VW Defendants shall pay stipulated penalties per each Day for each Day that the audit of "Golden Rules" Handbook implementation is overdue or is otherwise not in accordance with the requirements set forth in Paragraph 18, and the VW Defendants shall pay stipulated penalties per each Day for each Day that an annual EMS audit, or a related audit report or that the requirement to post an annual EMS audit report on the VW Defendants' website is overdue or is otherwise not in accordance with the requirements set forth in Paragraphs 24 and 25, as follows:

| Stipulated penalty | Duration of compliance failure |
|---|---|
| $1,000 | 1st through 14th Day |
| $5,000 | 15th through 30th Day |
| $10,000 | 31st Day and beyond |

d. Annual Reporting. The VW Defendants shall pay stipulated penalties per each Day for each Day on which an annual report that includes the information required by Paragraphs 19, 21, 22, and 23 is overdue or is otherwise not in accordance with the requirements set forth in Paragraph 47, as follows:

| Stipulated penalty | Duration of compliance failure |
| --- | --- |
| $2,000 | 1st through 14th Day |
| $10,000 | 15th through 30th Day |
| $50,000 | 31st Day and beyond |

e. <u>Independent Compliance Auditor</u>. The VW Defendants shall pay stipulated penalties per each Day for each Day on which the list of candidates, the retaining of the Compliance Auditor, the report of proposed corrective measures, or the posting of the final annual reports on the VW Defendants' website is overdue or is otherwise not in accordance with the requirements set forth in Paragraphs 27 and 29, as follows:

| Stipulated penalty | Duration of compliance failure |
| --- | --- |
| $1,000 | 1st through 14th Day |
| $5,000 | 15th through 30th Day |
| $10,000 | 31st Day and beyond |

The VW Defendants shall pay stipulated penalties per Day for each Day on which the report of implementation of corrective measures is overdue or is otherwise not in accordance with the requirements set forth in Paragraph 29, as follows:

| Stipulated penalty | Duration of compliance failure |
| --- | --- |
| $2,000 | 1st through 14th Day |
| $10,000 | 15th through 30th Day |
| $50,000 | 31st Day and beyond |

f. <u>Independent Compliance Auditor Information and Access</u>. If the United States believes that the VW Defendants are in violation of the requirements

set forth in Paragraph 28.b (Information and Access Rights Accorded to Independent Compliance Auditor), the United States may provide notice of such violations pursuant to Section XV (Notices) to the VW Defendants. The VW Defendants shall have 30 Days from receipt of the notice to address the alleged violations or invoke Dispute Resolution. If after 30 Days following receipt by the VW Defendants of the United States' notice, the United States believes the VW Defendants are in violation of the requirements set forth in Paragraph 28, then the VW Defendants shall be subject to stipulated penalties, as follows:

| Stipulated penalty | Duration of compliance failure |
| --- | --- |
| $1,000 | 31st through 45th Day |
| $5,000 | 46th through 60th Day |
| $10,000 | 61st Day and beyond |

60. Injunctive Relief Requirements for the Porsche Defendants

a. Technical Conformity Unit, Project Management Office, and Whistleblower System. The Porsche Defendants shall pay stipulated penalties per each Day for each Day that the establishment, maintenance, or implementation of the Technical Conformity organizational unit, the Project Management Office, or the whistleblower system is overdue or is otherwise not in accordance with the requirements set forth in Paragraphs 31, 32, or 37, as follows. However, any such stipulated penalties shall not accrue if, during the period of noncompliance alleged by the United States: the Porsche Defendants (1) took reasonable and substantial measures to comply with the obligation; and (2) had an objectively reasonable belief that they had complied with the obligation, which shall be established by a certification pursuant to Paragraph 52 and any other evidence the Porsche

Defendants may submit. Such certification and evidence shall be submitted by the Porsche Defendants to the United States within 30 Days of receiving the United States' stipulated penalty demand together with a description of the measures the Porsche Defendants are taking to address the noncompliance identified in the United States' demand. The United States shall evaluate the evidence submitted by the Porsche Defendants to determine whether to modify or withdraw the United States' stipulated penalty demand. If the United States, after reviewing such evidence, elects to impose stipulated penalties on any Porsche Defendant(s), such Porsche Defendant(s) have the right to invoke the Dispute Resolution procedures set forth in Section XI (Dispute Resolution). Any stipulated penalties pursuant to this Paragraph shall be as follows, running from the date of accrual as determined pursuant to this Paragraph:

| Stipulated penalty | Duration of compliance failure |
| --- | --- |
| $2,000 | 1st through 14th Day |
| $10,000 | 15th through 30th Day |
| $50,000 | 31st Day and beyond |

b. __PEMS Testing Program.__ The Porsche Defendants shall pay stipulated penalties per each Day for each Day that the PEMS testing program is overdue or is otherwise not in accordance with the requirements set forth in Paragraph 33, as follows:

| Stipulated penalty | Duration of compliance failure |
| --- | --- |
| $2,000 | 1st through 14th Day |
| $10,000 | 15th through 30th Day |
| $50,000 | 31st Day and beyond |

c. <u>Porsche Remediation Plan Audit</u>.  The Porsche Defendants shall pay stipulated penalties per each Day for each Day that the audit of the Porsche Remediation Plan required by Paragraph 39.b is overdue or is otherwise not in accordance with the requirements set forth in Paragraph 39.b, as follows:

| <u>Stipulated penalty</u> | <u>Duration of compliance failure</u> |
| --- | --- |
| $1,000 | 1st through 14th Day |
| $5,000 | 15th through 30th Day |
| $10,000 | 31st Day and beyond |

d. <u>Semi-Annual Reporting</u>.  The Porsche Defendants shall pay stipulated penalties per each Day for each Day on which a semi-annual report that includes the information required by Paragraph 39.a is overdue or is otherwise not in accordance with the requirements set forth in Paragraph 39.a, as follows:

| <u>Stipulated penalty</u> | <u>Duration of compliance failure</u> |
| --- | --- |
| $2,000 | 1st through 14th Day |
| $10,000 | 15th through 30th Day |
| $50,000 | 31st Day and beyond |

61.  <u>Reporting of Violations and Certification Requirements</u>

a. <u>Reporting of Violations</u>.  The following stipulated penalties shall accrue per violation per Day for each violation of the requirements of Paragraph 49 (Reporting of Violations):

| <u>Stipulated penalty</u> | <u>Duration of compliance failure</u> |
| --- | --- |
| $2,000 | 1st through 14th Day |
| $5,000 | 15th through 30th Day |
| $10,000 | 31st Day and beyond |

b. <u>Certification Requirements</u>.  The following stipulated penalties shall accrue per violation per Day for each violation of the certification requirements of Paragraph 52, except for false statements as described in subparagraph 61.c, below, in which case the stipulated penalty shall be the higher of the penalty provided for here in subparagraph 61.b or in subparagraph 61.c:

| Stipulated penalty | Duration of compliance failure |
|---|---|
| $10,000 | 1st through 14th Day |
| $25,000 | 15th through 30th Day |
| $50,000 | 31st Day and beyond |

c. <u>False Statements</u>.  The VW Defendants or the Porsche Defendants, as appropriate, shall pay a stipulated penalty of $1,000,000 for each report or Submission required to be submitted pursuant to this Consent Decree that contains a knowingly false, fictitious, or fraudulent statement or representation of material fact, by such Defendant.

62.    Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

63.    If the VW Defendants or the Porsche Defendants fail to pay stipulated penalties according to the terms of this Consent Decree, such Defendants shall be liable for interest on such penalties at the rate provided for in 28 U.S.C. § 1961, accruing as of the date payment became due and continuing until payment has been made in full.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for

Defendants' failure to pay any stipulated penalties.

64. <u>Stipulated Penalty Demands and Payment.</u>  The United States will issue any demand for stipulated penalties required by this Consent Decree.  The VW Defendants or the Porsche Defendants, as appropriate, shall pay stipulated penalties to the United States within 30 Days after a written demand by the United States, unless such Defendants invoke the dispute resolution procedures under Section XI (Dispute Resolution) within the 30-Day period.

65. The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

66. Stipulated penalties shall continue to accrue as provided in Paragraph 62 during any Dispute Resolution, but need not be paid until the following:

a. If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to the Court, the appropriate Defendants shall pay accrued stipulated penalties determined to be owing, together with interest, as provided in Paragraph 63, to the United States within 30 Days of the Effective Date of the agreement or the receipt of EPA's decision or order.

b. If the dispute is appealed to the Court and the United States prevails in whole or in part, the appropriate Defendants shall pay all accrued penalties determined by the Court to be owing, together with interest as provided in Paragraph 63, within 60 Days after receiving the Court's decision or order, except as provided in subparagraph c, below.

c. If any Party appeals the District Court's decision, the appropriate Defendants shall pay all accrued penalties determined to be owing, together with interest as provided in Paragraph 63, within 15 Days of receiving the final

appellate court decision.

67.     The VW Defendants or the Porsche Defendants, as appropriate, shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraphs 10 to 11, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

68.     If the VW Defendants or the Porsche Defendants, as appropriate, fail to pay stipulated penalties according to the terms of this Consent Decree, such Defendants shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendants' failure to pay any stipulated penalties.

69.     The payment of stipulated penalties and interest, if any, shall not alter in any way Defendants' obligation to complete the performance of the requirements of this Consent Decree.

70.     <u>Non-Exclusivity of Remedy</u>.  Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree, including violations of the Consent Decree that are also violations of law.  Subject to the provisions in Section XIII (Effect of Settlement/Reservation of Rights), the United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree.  In addition to the remedies specifically reserved and those specifically agreed to elsewhere in this Consent Decree, the United States expressly reserves the right to seek any other relief it deems appropriate for any Defendant's violation of this Consent Decree, including but not limited to an action against such Defendant for statutory penalties where applicable, additional injunctive relief, mitigation or

offset measures, contempt, and/or criminal sanctions. However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree for the same violation.

## X.     FORCE MAJEURE

71.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendants, of any entity controlled by Defendants, or of Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendants' best efforts to fulfill the obligation. The requirement that Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring, and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized. "Force majeure" does not include Defendants' financial inability to perform any obligation under this Consent Decree.

72.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, for which Defendants intend or may intend to assert a claim of force majeure, whether or not caused by a force majeure event, Defendants shall provide notice by email to the United States, within 7 Days of when Defendants first knew that the event might cause a delay. Within 14 Days thereafter, Defendants shall provide in writing to the United States an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay or the effect of the delay; a schedule for implementation of any such measures; Defendants' rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a

statement as to whether, in the opinion of Defendants, such event may cause or contribute to an endangerment to public health, welfare, or the environment. Defendants shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure event. Failure to comply with the above requirements shall preclude Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. The VW Defendants shall be deemed to know of any circumstance of which the VW Defendants or the Porsche Defendants, any entity controlled by the VW Defendants or the Porsche Defendants, or their respective contractors knew or should have known. The Porsche Defendants shall be deemed to know of any circumstance of which the Porsche Defendants, any entity controlled by the Porsche Defendants, or the Porsche Defendants' contractors knew or should have known.

73.     If the United States agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by the United States for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. The United States will notify Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

74.     If the United States does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, the United States will notify Defendants in writing of its decision.

75.     If Defendants elect to invoke the dispute resolution procedures set forth in Section

XI (Dispute Resolution), they shall do so no later than 15 Days after receipt of the United States' notice. In any such proceeding, Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendants complied with the requirements of Paragraphs 71 and 72. If Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Defendants of the affected obligation of this Consent Decree identified to the United States and the Court.

## XI.  DISPUTE RESOLUTION

76.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Failure by the VW Defendants or the Porsche Defendants to seek resolution of a dispute under this Section shall preclude such Defendants from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendants arising under this Decree.

77.     Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendants send the United States by mail a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 30 Days after the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 30

Days after the conclusion of the informal negotiation period, Defendants invoke formal dispute resolution procedures as set forth below.

78.     <u>Formal Dispute Resolution</u>.  Defendants shall invoke formal dispute resolution procedures, within the time period provided in Paragraph 77, by serving on the United States a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendants.

79.     The United States will serve its Statement of Position within 45 Days after receipt of Defendants' Statement of Position.  The United States' Statement of Position will include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on Defendants, unless Defendants file a motion for judicial review of the dispute in accordance with Paragraph 80.

80.     Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XV (Notices), a motion requesting judicial resolution of the dispute.  The motion must be filed within 10 Days after receipt of the United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

81.     The United States will respond to Defendants' motion within the time period allowed by the Local Rules of this Court.  Defendants may file a reply memorandum, to the

extent permitted by the Local Rules.

82. <u>Standard of Review for Judicial Disputes</u>

a. <u>Disputes Concerning Matters Accorded Record Review</u>. Except as otherwise provided in this Consent Decree, in EPA's review of the plans submitted under Paragraph 15 and in any disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendants shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law. Prior to the filing of any motion, the Parties may submit additional Materials to be part of the administrative record pursuant to applicable principles of administrative law.

b. <u>Other Disputes</u>. Except as otherwise provided in this Consent Decree, in any other dispute brought pursuant to Paragraph 80, Defendants shall bear the burden of demonstrating by a preponderance of the evidence that their actions were in compliance with this Consent Decree.

83. In any disputes brought under this Section, it is hereby expressly acknowledged and agreed that this Consent Decree was jointly drafted in good faith by the United States and Defendants. Accordingly, the Parties hereby agree that any and all rules of construction to the effect that ambiguity is construed against the drafting party shall be inapplicable in any dispute concerning the terms, meaning, or interpretation of this Consent Decree.

84. The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendants under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with

respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 66. If Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section IX (Stipulated Penalties).

## XII.    INFORMATION COLLECTION AND RETENTION

85. The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry, upon presentation of credentials, at all reasonable times into any of Defendants' offices, plants, or facilities:

a. to monitor the progress of activities required under this Consent Decree;

b. to verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

c. to inspect records related to this Consent Decree;

d. to conduct testing related to this Consent Decree;

e. to obtain documentary evidence, including photographs and similar data, related to this Consent Decree;

f. to assess Defendants' compliance with this Consent Decree; and

g. for other purposes as set forth in 42 U.S.C. § 7542(b).

86. Until three years after the termination of this Consent Decree, Defendants shall retain, and shall instruct their contractors, agents, and auditors to preserve all non-identical copies of all documents, records, reports, or other information (including documents, records, or other information in electronic form) (hereinafter referred to as "Records") in their or their contractors', agents', or auditors' possession or control, or that come into their or their

contractors', agents', or auditors' possession or control, relating to Defendants' performance of their obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, Defendants shall provide copies of any Records required to be maintained under this Paragraph, notwithstanding any limitation or requirement imposed by foreign laws. Nothing in this Paragraph shall apply to any documents in the possession, custody, or control of any outside legal counsel retained by Defendants in connection with this Consent Decree or of any contractors or agents retained by such outside legal counsel solely to assist in the legal representation of Defendants. Defendants may assert that certain Records are privileged or protected as provided under federal law. If Defendants assert such a privilege or protection, they shall provide the following: (a) the title of the Record; (b) the date of the Record; (c) the name and title of each author of the Record; (d) the name and title of each addressee and recipient; (e) a description of the subject of the Record; and (f) the privilege or protection asserted by Defendants. However, Defendants may make no claim of privilege or protection regarding the portion of any Record that Defendants are required to create or generate pursuant to this Consent Decree.

87. At the conclusion of the information-retention period provided in the preceding Paragraph, the VW Defendants and the Porsche Defendants shall notify the United States at least 90 Days prior to the destruction of any Records subject to the requirements of the preceding Paragraph and, upon request by the United States, such Defendants shall deliver any such Records to the Department of Justice. Defendants may assert that certain Records are privileged or protected as provided under federal law. If Defendants assert such a privilege or protection, they shall provide the following: (a) the title of the Record; (b) the date of the Record; (c) the

name and title of each author of the Record; (d) the name and title of each addressee and recipient; (e) a description of the subject of the Record; and (f) the privilege or protection asserted by Defendants. However, Defendants may make no claim of privilege or protection regarding the portion of any Record that Defendants are required to create or generate pursuant to this Consent Decree.

88.     Defendants may also assert that information required to be provided under this Section is protected as CBI as defined in Paragraph 48. As to any information that Defendants seek to protect as CBI, Defendants shall follow the procedures set forth in 40 C.F.R. Part 2.

89.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendants to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XIII.     EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

90.     This Third Partial Consent Decree shall resolve and settle the United States' Clean Air Act civil claims related to: (1) any conduct described in the Complaint; (2) any conduct related to the emissions, or compliance with U.S. emissions standards, of the Subject Vehicles; and (3) any conduct related to the Subject Vehicles and disclosed by or on behalf of the Defendants to, or otherwise known to, the Department of Justice or EPA as of the date of this Agreement for the following relief:

a.  injunctive relief that is intended to enjoin, prevent, and deter future violations of the Act of the types alleged in the Complaint; and

b.  the assessment of civil penalties against Defendants.

91.     The United States reserves, and this Third Partial Consent Decree is without prejudice to, all claims, rights, and remedies against Defendants with respect to all matters not expressly resolved in Paragraph 90.  Notwithstanding any other provision of this Decree, the United States reserves all claims, rights, and remedies against Defendants with respect to:

a.  All rights reserved under the First and Second Partial Consent Decrees, except as provided in Paragraph 90 of this Decree;

b.  All rights reserved by Paragraph 70 of this Consent Decree;

c.  Any criminal liability;

d.  Any claim(s) of the United States or any agency of the United States, other than EPA; and

e.  United States of America versus Volkswagen Aktiengesellschaft, File reference: 5 O 2269/16 (784), Regional Court Braunschweig, Germany.

92.  This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as specifically provided in Paragraph 90.  The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at any of Defendants' facilities, or posed by Defendants' 2.0 or 3.0 Liter Subject Vehicles, whether related to the violations addressed in this Consent Decree or otherwise.

93.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, or other appropriate relief relating to Defendants' violations, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion,

claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to the claims that have been specifically resolved pursuant to Paragraph 90.

94.     By entering into this Consent Decree, the United States is not enforcing the laws of other countries, including the emissions laws or regulations of any jurisdiction outside the United States. Nothing in this Consent Decree is intended to apply to, or affect, Defendants' obligations under the laws or regulations of any jurisdiction outside the United States. At the same time, the laws and regulations of other countries shall not affect the Defendants' obligations under this Consent Decree.

95.     This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Defendants' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, or with any other provisions of United States, state, or local laws, regulations, or permits.

96.     This Consent Decree does not limit or affect the rights of Defendants or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law.

97.     This Consent Decree shall not be construed to create rights in, or grant any cause

of action to, any third party not party to this Consent Decree.

## XIV.    COSTS

98.    The Parties shall bear their own costs of this Consent Decree, including attorneys' fees, except that the United States shall be entitled to collect the costs and reasonable attorneys' fees incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due under this Consent Decree but not paid by the VW Defendants or the Porsche Defendants, as appropriate.

## XV.    NOTICES

99.    Except as specified elsewhere in this Decree, whenever any Materials are required to be submitted pursuant to this Consent Decree, or whenever any communication is required in any action or proceeding related to or bearing upon this Consent Decree or the rights or obligations thereunder, they shall be submitted with a cover letter or otherwise be made in writing (except that if any attachment is voluminous, it shall be provided on a disk, hard drive, or other equivalent successor technology), and shall be addressed as follows:

| | |
|---|---|
| As to the United States: | DOJ at the email or mail addresses below, with a preference for email unless otherwise specified<br>and<br>EPA at the email and mail addresses below |
| As to DOJ by mail: | EES Case Management Unit<br>Environment and Natural Resources Division<br>U.S. Department of Justice<br>P.O. Box 7611<br>Washington, D.C. 20044-7611<br>Re: DJ # 90-5-2-1-11386 |
| As to DOJ by overnight mail: | Chief<br>Environmental Enforcement Section<br>Environment and Natural Resources |

Division
U.S. Department of Justice
601 D St. NW
Washington, D.C. 20004

As to DOJ by email:               eescdcopy.enrd@usdoj.gov
                                  Re: DJ # 90-5-2-1-11386

As to EPA:                        <u>By mail and email to:</u>
                                  Director, Air Enforcement Division
                                  1200 Pennsylvania Avenue NW
                                  William J Clinton South Building
                                  MC 2242A
                                  Washington, DC 20460
                                  VW_settlement@epa.gov

As to CBP by mail:                AnnMarie Highsmith
                                  Deputy Chief Counsel
                                  Office of Chief Counsel
                                  U.S. Customs and Border Protection
                                  1300 Pennsylvania Avenue, NW
                                  Suite 4.4B
                                  Washington, DC 20229

As to CBP by email:               AnnMarie Highsmith
                                  Deputy Chief Counsel
                                  annmarie.highsmith@cbp.dhs.gov

As to Volkswagen AG by mail:      Volkswagen AG
                                  Berliner Ring 2
                                  38440 Wolfsburg, Germany
                                  Attention: Company Secretary

                                  With copies to each of the following:

                                  Volkswagen AG
                                  Berliner Ring 2
                                  38440 Wolfsburg, Germany
                                  Attention: Group General Counsel

                                  Volkswagen Group of
                                  America, Inc.
                                  2200 Ferdinand Porsche Dr.
                                  Herndon, VA 20171
                                  Attention: U.S. General Counsel

| | As to Audi AG by mail: | Audi AG |
|---|---|---|
| 1 | | Auto-Union-Straße 1 |
| 2 | | 85045 Ingolstadt, Germany |
| 3 | | Attention: Company Secretary |

<table>
<tr><td>1</td><td>As to Audi AG by mail:</td><td>Audi AG<br>Auto-Union-Straße 1</td></tr>
</table>

As to Audi AG by mail:

Audi AG
Auto-Union-Straße 1
85045 Ingolstadt, Germany
Attention: Company Secretary

With copies to each of the following:

Volkswagen AG
Berliner Ring 2
38440 Wolfsburg, Germany
Attention: Group General Counsel

Volkswagen Group of
America, Inc.
2200 Ferdinand Porsche Dr.
Herndon, VA 20171
Attention: U.S. General Counsel

As to Volkswagen Group of
America, Inc. by mail:

Volkswagen Group of
America, Inc.
2200 Ferdinand Porsche Dr.
Herndon, VA 20171
Attention: Company Secretary

With copies to each of the following:

Volkswagen Group of
America, Inc.
2200 Ferdinand Porsche Dr.
Herndon, VA 20171
Attention: President

Volkswagen Group of
America, Inc.
2200 Ferdinand Porsche Dr.
Herndon, VA 20171
Attention: U.S. General Counsel

As to Volkswagen Group of America
Chattanooga Operations, LLC by mail:

Volkswagen Group of America
Chattanooga Operations, LLC
8001 Volkswagen Dr.
Chattanooga, TN 37416
Attention: Company Secretary

With copies to each of the following:

Volkswagen Group of
America, Inc.
2200 Ferdinand Porsche Dr.
Herndon, VA 20171
Attention: President

Volkswagen Group of
America, Inc.
2200 Ferdinand Porsche Dr.
Herndon, VA 20171
Attention: U.S. General Counsel

As to Dr. Ing. h.c. F. Porsche AG by mail:  Dr. Ing. h.c. F. Porsche Aktiengesellschaft
Porscheplatz 1, D-70435 Stuttgart
Attention:
GR/ Rechtsabteilung/ General Counsel

As to Porsche Cars North America, Inc.:  Porsche Cars North America, Inc.
1 Porsche Dr.
Atlanta, GA 30354
Attention: Secretary
With copy by email to offsecy@porsche.us

As to one or more of the
Defendants by email:

Robert J. Giuffra, Jr.
Sharon L. Nelles
Granta Nakayama
Cari Dawson

giuffrar@sullcrom.com
nelless@sullcrom.com
gnakayama@kslaw.com
cari.dawson@alston.com

As to one or more of the
Defendants by mail:

Robert J. Giuffra, Jr.
Sharon L. Nelles
Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004

Granta Nakayama
King & Spalding LLP
1700 Pennsylvania Ave., N.W., Suite 200
Washington, DC 20006

Cari Dawson
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424

100.    Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

101.    Communications submitted pursuant to this Section shall be deemed submitted upon (1) mailing or emailing as required and where Defendants have a choice, or (2) where both email and mail are required, when both methods have been accomplished, except as provided elsewhere in this Consent Decree or by mutual agreement of the Parties in writing.

102.    The Parties anticipate that a non-public secure web-based electronic portal may be developed in the future for submission of Materials.  The Parties may agree in the future to use such a portal, or any other means, for submission of Materials.  Any such agreement shall be approved as a non-material modification to the Decree in accordance with Paragraphs 105 to 106.

## XVI.    EFFECTIVE DATE

103.    The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XVII.     RETENTION OF JURISDICTION

104.    The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections XI (Dispute Resolution) and XVIII (Modification), or effectuating or enforcing compliance with the terms of this Decree.

## XVIII.     MODIFICATION

105.    Except as otherwise provided herein, the terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

106.    The United States will file any non-material modifications with the Court.  Once the non-material modification has been filed, Defendants shall post the filed version (with ECF stamp) on the website required by Paragraph 51.

107.    Any disputes concerning modification of this Decree shall be resolved pursuant to Section XI (Dispute Resolution), provided, however, that instead of the burden of proof provided by Paragraph 82, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Fed. R. Civ. P. 60(b).

## XIX.     TERMINATION

108.    After Defendants have paid the civil penalty required in Section IV (Civil Penalty), and the VW Defendants have implemented the requirements of Section V (Injunctive Relief for the VW Defendants) and Section VIII (Reporting and Certification Requirements), and have paid any accrued stipulated penalties as required by this Consent Decree, but in any event no later than four years after the Effective Date, the VW Defendants may serve upon the United States a

Request for Termination.  The Request for Termination will state that the VW Defendants have satisfied those requirements and be submitted with all necessary supporting documentation.

109.  After the Defendants have paid the civil penalty required in Section IV (Civil Penalty), and the Porsche Defendants have implemented the requirements of Section VI (Injunctive Relief for the Porsche Defendants) and Section VIII (Reporting and Certification Requirements), and have paid any accrued stipulated penalties as required by this Consent Decree, but in any event no later than four years after the Effective Date, the Porsche Defendants may serve upon the United States a Request for Termination.  The Request for Termination will state that the Porsche Defendants have satisfied those requirements and be submitted with all necessary supporting documentation.

110.  Following receipt by the United States of the VW Defendants' or the Porsche Defendants' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether such Defendants have satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Decree may be terminated, the United States will file a motion to terminate the Decree.

111.  If the United States does not agree that the Decree may be terminated, such Defendants may invoke Dispute Resolution under Section XI.  However, such Defendants shall not seek Dispute Resolution of any dispute regarding termination until 90 Days after service of their Request for Termination.

## XX.  <u>PUBLIC PARTICIPATION</u>

112.  This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States

reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendants consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendants in writing that it no longer supports entry of the Decree.

## XXI.     SIGNATORIES/SERVICE

113.    Each undersigned representative of Defendants, and the Assistant Attorney General for the Environment and Natural Resources Division of the DOJ certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

114.    This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. For purposes of this Consent Decree, a signature page that is transmitted electronically (*e.g.*, by facsimile or e-mailed "PDF") shall have the same effect as an original.

## XXII.     INTEGRATION

115.    This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein, with the acknowledgment that this settlement is one of several coordinated resolutions of various federal civil and criminal claims related to the conduct alleged in the Complaint, to be set forth in other agreements that may reference but are not part of this agreement. Other than deliverables that are subsequently submitted and approved pursuant to

this Decree, the Parties acknowledge that there are no documents, representations, inducements, agreements, understandings, or promises that constitute any part of this Decree or the settlement it represents other than those expressly contained in this Consent Decree.

## XXIII. FINAL JUDGMENT

116.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendants.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

Dated and entered this 13th day of April, 2017.

_____
CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation,*

FOR THE UNITED STATES OF AMERICA:

Date **1/11/17**

JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

JOSHUA H. VAN EATON
BETHANY ENGEL
GABRIEL ALLEN
LESLIE ALLEN
PATRICK BRYAN
NIGEL COONEY
KAREN DWORKIN
DANICA GLASER
RUBEN GOMEZ
ANNA GRACE
SHEILA McANANEY
ROBERT MULLANEY
RICHIE KHANH NGUYEN
ERIKA WELLS
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 514-5474
Facsimile: (202) 514-0097
josh.van.eaton@usdoj.gov
bethany.engel@usdoj.gov

*Counsel for the United States*

1   FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

2   1/10/17

3   Date                                CYNTHIA GILES

4                                       Assistant Administrator
                                        Office of Enforcement and Compliance Assurance
5                                       U.S. Environmental Protection Agency
                                        1200 Pennsylvania Avenue, N.W.
6                                       Washington, DC  20460

7

8                                       SUSAN SHINKMAN

9                                       Director, Office of Civil Enforcement
                                        Office of Enforcement and Compliance Assurance
10                                      U.S. Environmental Protection Agency
                                        1200 Pennsylvania Avenue, N.W.
11                                      Washington, DC  20460

12

13

14                                      PHILLIP A. BROOKS

                                        Director, Air Enforcement Division
15                                      Office of Civil Enforcement
                                        Office of Enforcement and Compliance Assurance
16                                      U.S. Environmental Protection Agency
                                        1200 Pennsylvania Avenue, N.W.
17                                      Washington, DC  20460

18

19

20                                      EVAN BELSER
                                        MEETU KAUL
21                                      SEEMA KAKADE
                                        BRIANNA IDDINGS
22                                      Air Enforcement Division
                                        Office of Civil Enforcement
23                                      Office of Enforcement and Compliance Assurance
                                        U.S. Environmental Protection Agency
24                                      1200 Pennsylvania Ave., NW
                                        Washington, DC  20460
25

26

27

28

FOR VOLKSWAGEN AG:

Date: Jan. 11, 2017

FRANCISCO JAVIER GARCIA SANZ
VOLKSWAGEN AG
P.O. Box 1849
D-38436 Wolfsburg, Germany

Date: Jan. 11, 2017

MANFRED DOESS
VOLKSWAGEN AG
P.O. Box 1849
D-38436 Wolfsburg, Germany

1    FOR AUDI AG:

2

3

4

5    Date: January 11, 2017

6                                          BERND MARTENS
                                           AUDI AG
7                                          Auto-Union-Straße 1
                                           85045 Ingolstadt, Germany
8

9

10

11

12

13

14

15   Date: January 11, 2017

16                                         MARTIN WAGENER
                                           AUDI AG
17                                         Auto-Union-Straße 1
                                           85045 Ingolstadt, Germany
18

19

20

21

22

23

24

25

26

27

28

75     THIRD PARTIAL CONSENT DECREE
                                           MDL No. 2672 CRB (JSC)

1  FOR VOLKSWAGEN GROUP OF AMERICA, INC.:

2

3

4

5     Date:  Jan. 11, 2017

6                                                      DAVID DETWEILER
                                                       VOLKSWAGEN GROUP OF AMERICA, INC.
7                                                      2200 Ferdinand Porsche Drive
                                                       Herndon, Virginia 20171
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOR VOLKSWAGEN GROUP OF AMERICA CHATTANOOGA OPERATIONS, LLC:

Date: Jan. 11, 2017

_____
DAVID DETWEILER
VOLKSWAGEN GROUP OF AMERICA, INC.
2200 Ferdinand Porsche Drive
Herndon, Virginia 20171

77      THIRD PARTIAL CONSENT DECREE
MDL No. 2672 CRB (JSC)

COUNSEL FOR VOLKSWAGEN AG, AUDI AG, VOLKSWAGEN GROUP OF AMERICA, INC., and VOLKSWAGEN GROUP OF AMERICA CHATTANOOGA OPERATIONS, LLC

January 11, 2017

Date

ROBERT J. GIUFFRA, JR.
SHARON L. NELLES
BRENT J. McINTOSH
WILLIAM B. MONAHAN
Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3358
giuffrar@sullcrom.com
nelless@sullcrom.com
mcintoshb@sullcrom.com
monahanw@sullcrom.com

78       THIRD PARTIAL CONSENT DECREE
MDL No. 2672 CRB (JSC)

1

2   FOR DR. ING. h.c. F. PORSCHE AG:

3

4

5   Date: 1/11/2017

6                                                   _____
                                                    DR. MICHAEL STEINER
7                                                   Member of the Executive Board –
                                                    Research and Development
8                                                   DR. ING. h.c. F . PORSCHE
                                                    AKTIENGESELLSCHAFT
9                                                   Porschestrasse 911
                                                    71287 Weissach, Germany
10

11

12

13  Date: 1/11/2017

14

15

16                                                  _____
                                                    ANGELA KREITZ
17                                                  Chief Counsel
                                                    Chief Compliance Officer
18                                                  DR. ING. h.c. F . PORSCHE
                                                    ATKIENGESELLSCHAFT
19                                                  Porscheplatz 1
                                                    70435 Stuttgart-Zuffenhausen, Germany
20

21

22

23

24

25

26

27

28

79          THIRD PARTIAL CONSENT DECREE
            MDL No. 2672 CRB (JSC)

FOR PORSCHE CARS NORTH AMERICA, INC.:

Date: 1/11/17

JOSEPH S. FOLZ
Vice President, General Counsel and Secretary
PORSCHE CARS NORTH AMERICA, INC.
1 Porsche Drive
Atlanta, GA 30354

Date: 1/11/17

TIM QUINN
Vice President, After Sales
PORSCHE CARS NORTH AMERICA, INC.
1 Porsche Drive
Atlanta, GA 30354

THIRD PARTIAL CONSENT DECREE
MDL No. 2672 CRB (JSC)

1    COUNSEL FOR DR. ING. H.C. F. PORSCHE AG and PORSCHE CARS NORTH AMERICA,
     INC.:

2

3

4    Date: 1/11/2017

5                                        GRANTA Y. NAKAYAMA
                                         GARY G. GRINDLER
6                                        ILANA SALTZBART
                                         JOSEPH A. EISERT
7                                        King & Spalding LLP
                                         1700 Pennsylvania Ave., N.W., Suite 200
8                                        Washington, DC 20006
                                         gnakayama@kslaw.com
9                                        ggrindler@kslaw.com
                                         isaltzbart@kslaw.com
10                                       jeisert@kslaw.com

11

12

13

14

15

16

17

18   Date: 1/11/17

19                                       CARI DAWSON
                                         Alston & Bird LLP
20                                       One Atlantic Center
                                         1201 West Peachtree Street
21                                       Atlanta, Georgia 30309-3424
                                         cari.dawson@alston.com

22

23

24

25

26

27

28

                              81      THIRD PARTIAL CONSENT DECREE
                                         MDL No. 2672 CRB (JSC)