UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION  _____/  This Order Relates To: ALL ACTIONS (except the securities action) _____/ | MDL No. 2672 CRB (JSC)  **ORDER DENYING NON-CLASS COUNSEL'S MOTIONS FOR ATTORNEYS' FEES** |

Six months ago, this Court approved a settlement between Volkswagen and owners and lessees of certain model Volkswagen and Audi 2.0-liter TDI diesel vehicles, resolving claims predicated on Volkswagen's use of a "defeat device" in those vehicles—software designed to cheat emissions tests. Shortly after final approval of the 2.0-liter Settlement, plaintiffs' Lead Counsel, and the 21 other attorneys the Court appointed to the Plaintiffs' Steering Committee ("PSC," and together with Lead Counsel, "Class Counsel"), filed a motion for $167 million in attorneys' fees and $8 million in costs on behalf of "all counsel performing common benefit services under the provisions of [Pretrial Order No.] 11" for work performed in connection with the consolidated class action complaint and resulting settlement. (Dkt. No. 2175 at 5.) The Court granted Class Counsel's motion in March. (Dkt. No. 3053.)

Now before the Court are 244 motions for attorneys' fees and costs filed by attorneys who did not serve as Class Counsel, and who were not compensated out of the $175 million ultimately awarded for common benefit work (collectively referred to as "Non-Class Counsel").[1] Non-Class Counsel, in many instances, filed complaints against Volkswagen in courts throughout the United

---

[1] A list of the docket entries for the 244 motions is attached to this Order as an Appendix.

1  States prior to consolidation of the litigation before this Court.  Before and after the Court

2  appointed Class Counsel, Non-Class Counsel also monitored the proceedings, and ultimately

3  advised their clients on the Settlement's terms.  For these services, they seek attorneys' fees and

4  costs from Volkswagen.  Because Volkswagen did not agree to pay these fees and costs as part of

5  the Settlement, and because Non-Class Counsel have not offered evidence that their services

6  benefited the *class*, as opposed to their individual clients, the Court DENIES the motions.  To the

7  extent that Non-Class Counsel seek to enforce their fee agreements with individual clients,

8  however, they may bring such claims in an appropriate venue.

## BACKGROUND

After the public learned in September 2015 that Volkswagen had installed defeat devices in its "clean diesel" 2.0-liter TDI vehicles, ligation quickly ensued.  Attorneys filed complaints against Volkswagen on behalf of consumers across the country, and government entities launched criminal and civil investigations.  (*See* Dkt. No. 1609 at 11.)  On December 8, 2015, the Judicial Panel on Multidistrict Litigation transferred all related federal actions to this Court, where more than 1,200 cases have since been consolidated.  (*See* Dkt. No. 2175-1 ¶ 3.)

In January 2016, the Court appointed Elizabeth J. Cabraser of Lieff Cabraser Heimann & Bernstein, LLP as Plaintiffs' Lead Counsel and as Chair of the PSC, to which the Court also named 21 other attorneys.  (*See* Pretrial Order No. 7, Dkt. No. 1084.)  The Court tasked the PSC with conducting and coordinating the MDL litigation, but vested Lead Counsel with authority to retain the services of other attorneys to perform work for the benefit of the class.  (*See id.* ¶ 2; Pretrial Order No. 11, Dkt. No. 1254 at 1-2.)

In the months that followed, Class Counsel prosecuted the consumers' civil cases and worked with Volkswagen, federal and state agencies, and the Court appointed Settlement Master, to try and resolve the claims asserted.  (*See* Dkt. No. 1609 at 11-12.)  Class Counsel filed initial and amended consolidated class action complaints, conducted common discovery, and ultimately negotiated the 2.0-liter Settlement with Volkswagen (Dkt. No. 1685), which the Court approved on October 25, 2016.  (Dkt. No. 2102.)  With regard to attorneys' fees and costs, the Settlement Agreement provides that Volkswagen will "pay reasonable attorneys' fees and costs for work

performed by Class Counsel in connection with the Action as well as work performed by other attorneys designated by Class Counsel to perform work in connection with the Action . . . ." (Dkt. No. 1685 ¶ 11.1.) The Settlement Agreement defines Class Counsel as "Lead Counsel [*i.e.*, Ms. Cabraser] and the PSC." (*Id.* ¶ 2.19.)

In early November 2016, Class Counsel filed a motion seeking $167 million in attorneys' fees and $8 million in costs on behalf of "all counsel performing common benefit services under the provisions of [Pretrial Order No.] 11." (Dkt. No. 2175 at 5.) In addition to seeking fees for work performed by the PSC, the motion also sought fees for the work of nearly 100 other law firms who Lead Counsel authorized to perform common benefit work. (*See* Dkt. No. 2175-1 ¶ 7.) The common benefit work included not only time spent drafting pleadings and participating in negotiations, but also time spent communicating with class members, which includes 20,000 communications between PSC attorneys and class members. (*Id.* ¶ 3.) Class Counsel's fees motion also included 21,287 hours of reserve time to cover work necessary to "guide the hundreds of thousands of Class Members through the remaining 26 months of the Settlement Claims Period." (*Id.* ¶ 15.) Recognizing that counsel had achieved an extraordinary result for the class and the public as a whole, the Court granted the fees motion in March of this year. (Dkt. No. 3053 at 3.)

At the time the Court awarded fees, it noted that various class members' private attorneys—i.e., Non-Class Counsel—had also filed motions for fees and costs. (*Id.* at 2 n.1.) Some non-class attorneys began filing these motions even before the Court approved the 2.0-liter Settlement (*see, e.g.*, Dkt. No. 2029, filed on October 13, 2016), while the bulk of the motions were filed in late December 2016 and early January 2017. Some non-class attorneys initially took a different approach, placing liens on several class members' settlement proceeds. (*See* Dkt. No. 2159.) The Court, in two related orders, enjoined any state court action seeking to enforce fee-related liens, assignments, trust-account agreements, or other means that could diminish class members' recovery under the Settlement. (Dkt. Nos. 2247, 2428.) The Court also ordered Volkswagen to pay class members the full amount to which they were entitled under the terms of the Settlement. (*Id.*)

3

In total, Non-Class Counsel have now filed 244 motions for attorneys' fees and costs. The motions vary in length and detail, but ultimately raise similar bases for relief. A significant number of the motions seek fees for time spent filing individual and class complaints against Volkswagen prior to the centralization of proceedings before this Court.[2] Many of the motions also seek fees for time spent communicating with class members—both before and after the Court appointed Class Counsel—monitoring MDL proceedings, and ultimately advising clients on the 2.0-liter Settlement.[3]

On February 13, 2017, Volkswagen filed an omnibus opposition to Non-Class Counsel's motions for attorneys' fees and costs. (Dkt. No. 2903.) Volkswagen argues that it has no obligation to pay the fees of Non-Class Counsel under the Settlement or governing law. Non-Class Counsel responded by filings numerous reply briefs in support of their motions.[4]

## DISCUSSION

The question at issue is whether the Court should require Volkswagen to pay Non-Class Counsel attorneys' fees and costs as a result of the 2.0-liter Settlement. Because Volkswagen did not agree to pay these fees, and because Non-Class Counsel's work did not benefit the class as a whole, the answer is no.

---

[2] (*See, e.g.*, Dkt. No. 2272 at 5 ("We were one of the first filed complaints in the Commonwealth of Pennsylvania."); Dkt. No. 2531 (filed putative class action complaint in the Central District of Illinois); Dkt. No. 2588 (filed putative class action complaint in the Eastern District of Virginia); Dkt. No. 2729 (filed complaints in 14 district courts on behalf of 697 individuals who purchased Volkswagen vehicles).)

[3] (*See, e.g.*, Dkt. No. 2696 ("Met and corresponded with Plaintiff regarding his individual claims, settlement, and various other issues arising during [the] course of this litigation."); Dkt. No. 2532 ("Counsel[ed] and advise[d] the Class Member as to developments in the [MDL]" and the "'pros and cons' of the [Settlement]."); Dkt. No. 2648 at 6 (participated in "discussions with class members after each hearing and regarding the Settlement").)

[4] Many non-class attorneys argue in their reply briefs that the Court should disregard Volkswagen's opposition as untimely. (*See, e.g.*, Dkt. No. 2927 at 2-3; Dkt. No. 2952 at 2.) Volkswagen filed its omnibus opposition on February 13, 2017, more than 14 days after each non-class attorney filed his or her motion. *See* Local Rule 7-3(a). Under the unique circumstances at issue, however, where Volkswagen needed to respond to 244 separate motions, and where these motions were filed on a rolling basis, the Court concludes that Volkswagen filed its opposition within a reasonable period of time. In the future, however, Volkswagen (and other parties seeking to file pleadings outside of the time periods prescribed in the Local Rules) should seek leave in advance to file late pleadings.

4

Federal Rules of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The second of these two avenues clearly does not apply here, because Volkswagen did not agree to pay the fees at issue as part of the Settlement Agreement. The Settlement Agreement provides that Volkswagen will "pay reasonable attorneys' fees and costs for work performed by Class Counsel in connection with the Action as well as work performed by other attorneys *designated by Class Counsel* to perform work in connection with the Action." (Dkt. No. 1685 ¶ 11.1 (emphasis added).) Non-Class Counsel are, by definition, not "Class Counsel," nor do they assert that the fees at issue are for work "designated by Class Counsel." Non-Class Counsel therefore cannot demonstrate that an award of attorneys' fees and costs is "authorized . . . by the parties' agreement." Fed. R. Civ. P. 23(h).[5]

The first avenue under Rule 23(h)—that the Court may award fees and costs that are authorized by law—also does not apply. In "common fund" cases, a court may award non-class counsel a reasonable attorney's fee only if counsel's work conferred a benefit on the *class*, as opposed to on an individual client. *See In re Cendant Corp. Secs. Litig*, 404 F.3d 173, 191 (3d Cir. 2005) ("Non-lead counsel will have to demonstrate that their work conferred a benefit on the class *beyond* that conferred by lead counsel." (emphasis in original)); *Gottlieb v. Barry*, 43 F.3d 474, 489 (10th Cir. 1994) (holding that non-lead counsel should receive compensation if "they have . . . conferred a benefit on the class"); *cf. Stetson v. Grissom*, 821 F.3d 1157, 1164 (9th Cir. 2016) (holding that, to be entitled to an award of attorneys' fees, an objector "must increase the fund or otherwise substantially benefit the class members" (internal quotation marks omitted)). Non-Class Counsel have not made such a showing here.

First, Non-Class Counsel's filing of individual and class complaints prior to the MDL did

---

[5] At least one non-class law firm has offered evidence that it provided substantive information to PSC counsel upon request. (*See* Dkt. No. 2176-2 ¶ 8.) That law firm, however, does not currently seek compensation for that work, for which it may have already been compensated as part of the award of attorneys' fees made to Class Counsel. Other non-class attorneys assert that they made suggestions to the PSC regarding the language used in the consolidated class action complaints. (*See, e.g.*, Dkt. No. 2316.) Those attorneys, however, have not submitted evidence that Lead Counsel requested and authorized this work.

5

not benefit the class. These cases were consolidated before this Court as part of a multidistrict litigation less than three months after the public disclosure of Volkswagen's use of a defeat device. And approximately four months after the disclosure, the Court appointed Class Counsel to prosecute the consolidated consumer class action. There consequently was little to any pretrial activity in the cases filed by Non-Class Counsel, and the filings alone did not materially drive settlement negotiations with Volkswagen. *See In re Cendant*, 404 F.3d at 191, 196, 204 (explaining that non-class counsel should not normally be compensated for "fil[ing] complaints and otherwise prosecut[ing] the early stages of litigation," which is best viewed as an "entrepreneurial effort," rather than as work that benefits the class). The relatively short time period between the public disclosure of Volkswagen's use of a defeat device and the consolidation of proceedings also distinguishes this case from *Gottlieb*, 43 F.3d at 488-89, where the Tenth Circuit reversed a district court order that did not award fees to non-class counsel who had "vigorously pursued [numerous] cases for *sixteen months* before class counsel was designated." *Id.* at 488 (emphasis added). Here, by contrast, Non-Class Counsel simply did not have the time needed to materially impact the consolidated class proceedings.

Second, Non-Class Counsel offers evidence that, before the appointment of Class Counsel, they fielded hundreds of phone calls from prospective and actual clients, and consulted with prospective class members about their potential legal claims. While undoubtedly requiring time and effort, this work at most benefited individual class members, not the class as a whole. *See, e.g.*, *In re Auction Houses Antitrust Litig.*, No. 00-CIV-0648., 2001 WL 210697, at *4 (S.D.N.Y. Feb. 26, 2001) (finding no reason "for the class as a whole to compensate large numbers of lawyers for individual class members for keeping abreast of the case on behalf of their individual clients"). Further, the significant majority of 2.0-liter class members did not retain private counsel. In the 244 motions at issue, counsel seek fees for their work representing 3,642 class members, which represents only 0.74 percent of the total class of 490,000. (*See* Dkt. No. 1976 at 6.) That such a small percentage of class members actually retained Non-Class Counsel makes it even less likely that Non-Class Counsel's services benefited the class as a whole.

Third, Non-Class Counsel seek fees and expenses for services provided after the Court

6

appointed Class Counsel, including time spent monitoring class proceedings, keeping class members informed, and ultimately advising class members on the terms of the proposed Settlement. Similar to Non-Class Counsel's efforts prior to the appointment of Class Counsel, the Court "cannot see how the monitoring itself benefits the class as a whole, as opposed to the attorney's individual client." *In re Cendant Corp.*, 404 F.3d at 201. Further, after this Court appointed Class Counsel, it explained that only "Court-appointed Counsel and those attorneys working on assignments . . . that require them to review, analyze or summarize . . . filings or Orders [in these proceedings] are doing so for the common benefit." (Dkt. No. 1253 at 4.) Non-Class Counsel therefore were on notice that they would not receive common benefit compensation for these efforts.

As for the time Non-Class Counsel spent advising class members on the terms of the Settlement, this work was duplicative of that undertaken by Class Counsel, and therefore did not "confer[] a benefit *beyond* that conferred by lead counsel." *In re Cendant Corp.*, 404 F.3d at 191. As noted in Class Counsel's motion for attorneys' fees, by the time the Court approved the 2.0-liter Settlement, the law firms comprising the PSC had logged over 20,000 communications with class members, responding to questions and requests for information. (*See* Dkt. No. 2175-1 ¶ 3.) Additionally, as part of an expansive Settlement Notice Program, the parties established a Settlement call center and website, which—as of the final Settlement approval hearing on October 18, 2016—had respectively received more than 130,000 calls and more than 1 million visits. (*See* Dkt. No. 2102 at 26.) Lead Counsel's fees award also included 21,287.4 hours of reserve time to cover additional work necessary to, among other things, guide the class members through the remaining Settlement Claims Period. (*See* Dkt. No. 2175-1 ¶ 15.) Thus, even without retaining Non-Class Counsel, class members could, did, and continue to obtain legal advice from Lead Counsel and the PSC.

Finally, Non-Class Counsel's requests for fees and costs for work performed after the Court appointed Class Counsel are deficient in another—procedural—respect. In Pretrial Order No. 11, this Court explained that all plaintiffs' attorneys needed to obtain Lead Counsel's authorization to perform compensable common benefit work. (*See* Dkt. No. 1254 at 1-2 (noting

7

that the recovery of common benefit attorneys' fees would be limited to Lead Counsel, members of the PSC, and "any other counsel authorized by Lead Counsel to perform work that may be considered for common benefit compensation").) As noted above, Non-Class Counsel have not asserted that they obtained authorization from Lead Counsel to perform the common benefit work for which they now seek compensation, as required.

In sum, because Volkswagen did not agree to pay the fees and costs at issue as part of the Settlement, and because Non-Class Counsel have not offered evidence that their services benefited the class as a whole, Volkswagen is not required to pay Non-Class Counsel's attorneys' fees and costs as a result of the 2.0-liter Settlement.[6]

\*\*\*

While Non-Class Counsel are not entitled to fees from Volkswagen as part of this class action, Non-Class Counsel may be entitled to payment of certain fees and costs pursuant to attorney-client fee agreements. This is a matter of contract law, subject to the codes of professional conduct, and such disputes should be resolved in the appropriate forum. To that end, the Court VACATES the injunction on state court actions, to the extent those actions are brought to enforce an attorney-client fee agreement. Volkswagen, however, must continue to "directly pay consumers the full amount to which they are entitled under the Settlement" for all the reasons stated in the Court's previous Order. (Dkt. No. 2428 at 2.)

To the extent that a non-class attorney brings an action against his or her client or makes a demand to enforce a fee agreement, the Court orders that attorney to first provide his or her client

---

[6] Certain non-class counsel argue that they are entitled to attorneys' fees because they filed complaints bringing claims under statutes with fee-shifting provisions, providing that a "prevailing party" may recover attorneys' fees and expenses. (*See, e.g.*, Dkt. No. 2356 at 2-3 (citing South Carolina Dealers Act, S.C. Code § 56-15-110); Dkt. No. 2243 at 2 (citing Magnuson-Moss Warranty Act, 15 U.S.C. § 2310).) To the extent that class members are prevailing parties as a result of the 2.0-liter Settlement, however, they prevailed because of the work of Lead Counsel and the PSC, not because of Non-Class Counsel's efforts. As a result, awarding fees to Non-Class Counsel under these provisions would be inappropriate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (reasoning that a "prevailing party" should be awarded fees based on the "value of a lawyer's services"). Further, the Ninth Circuit has held that, "[a]pplication of the common fund doctrine to class action settlements does not compromise the purposes underlying fee-shifting statutes," and "common fund fees can be awarded [even] where statutory fees are available." *Staton v. Boeing Co.*, 327 F.3d 938, 968-69 (9th Cir. 2003).

8

with a copy of this Order, and to file a certificate of service with this Court.

**IT IS SO ORDERED.**

Dated: April 24, 2017

CHARLES R. BREYER
United States District Judge

# APPENDIX

The following are the docket numbers that correspond with each motion for attorneys' fees and costs resolved by this Order.

Dkt. Nos. 2029, 2176, 2208, 2224, 2228, 2241, 2243, 2272, 2286, 2288, 2291, 2292, 2295, 2296, 2297, 2298, 2299, 2300, 2301, 2303, 2304, 2305, 2308, 2309, 2310, 2312, 2313, 2314, 2315, 2316, 2317, 2319, 2320, 2321, 2322, 2323, 2324, 2325, 2326, 2327, 2328, 2329, 2330, 2331, 2335, 2337, 2339, 2340, 2341, 2342, 2343, 2344, 2345, 2346, 2347, 2348, 2349, 2350, 2351, 2352, 2353, 2354, 2355, 2356, 2357, 2358, 2370, 2376, 2382, 2384, 2393, 2395, 2396, 2401, 2402, 2406, 2420, 2427, 2451, 2462, 2463, 2472, 2474, 2476, 2478, 2503, 2527, 2530, 2531, 2532, 2540, 2541, 2542, 2543, 2544, 2545, 2546, 2547, 2548, 2549, 2550, 2551, 2552, 2553, 2554, 2555, 2556, 2557, 2558, 2559, 2560, 2561, 2562, 2563, 2564, 2565, 2566, 2567, 2568, 2569, 2570, 2571, 2572, 2573, 2574, 2575, 2576, 2583, 2586, 2587, 2588, 2589, 2590, 2591, 2592, 2593, 2594, 2605, 2607, 2608, 2609, 2610, 2611, 2612, 2618, 2621, 2623, 2628, 2631, 2634, 2635, 2642, 2643, 2644, 2646, 2648, 2649, 2650, 2651, 2652, 2653, 2654, 2655, 2656, 2657, 2658, 2659, 2660, 2661, 2662, 2663, 2664, 2665, 2666, 2667, 2668, 2669, 2670, 2671, 2672, 2673, 2674, 2675, 2676, 2677, 2678, 2679, 2680, 2681, 2682, 2683, 2684, 2685, 2686, 2687, 2688, 2689, 2690, 2691, 2692, 2693, 2694, 2695, 2696, 2697, 2698, 2699, 2700, 2701, 2702, 2703, 2704, 2705, 2706, 2707, 2708, 2709, 2710, 2711, 2712, 2713, 2714, 2715, 2716, 2717, 2718, 2719, 2720, 2721, 2722, 2725, 2726, 2727, 2729, 2730, 2741, 2742, 2743, 2744, 2745, 2746, 2747, 2748, 2806.