XAVIER BECERRA
Attorney General of California
NICKLAS A. AKERS (SBN 211222)
ROBERT W. BYRNE (SBN 213155)
SALLY MAGNANI (SBN 161677)
Senior Assistant Attorneys General
JUDITH A. FIORENTINI (SBN 201747)
GAVIN G. MCCABE (SBN 130864)
DAVID A. ZONANA (SBN 196029)
Supervising Deputy Attorneys General
AMOS E. HARTSTON (SBN 186471)
JOHN S. SASAKI (SBN 202161)
WILLIAM R. PLETCHER (SBN 212664)
JON F. WORM (SBN 248260)
ELIZABETH B. RUMSEY (SBN 257908)
LAUREL M. CARNES (SBN 285690)
Deputy Attorneys General
  455 Golden Gate Ave., Suite 11000
  San Francisco, CA 94102
  Telephone:  (415) 703-5500
  Fax:  (415) 703-5480
  E-mail:  nicklas.akers@doj.ca.gov

*Attorneys for the People of the State of California*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **THE PEOPLE OF THE STATE OF CALIFORNIA,**<br><br>Plaintiff,<br><br>v.<br><br>**VOLKSWAGEN AG; VOLKSWAGEN GROUP OF AMERICA, INC.; VOLKSWAGEN GROUP OF AMERICA CHATTANOOGA OPERATIONS LLC; AUDI AG; DR. ING. H.C. F. PORSCHE AG; and PORSCHE CARS NORTH AMERICA, INC.,**<br><br>Defendants. | Case No. 3:16-CV-03620<br><br>**THIRD CALIFORNIA PARTIAL CONSENT DECREE** |

**WHEREAS**, Plaintiff the People of the State of California ("the People"), acting by and through Xavier Becerra, Acting Attorney General of the State of California ("the California

1

1    Attorney General"), and the California Air Resources Board ("CARB") (collectively

2    "California"), filed a complaint (the "California Complaint") in this action on June 27, 2016,

3    against Volkswagen AG, Volkswagen Group of America, Inc., Volkswagen Group of America

4    Chattanooga Operations LLC, and Audi AG (collectively, "Volkswagen" or the "Volkswagen

5    Parties"), and Dr. Ing. h.c. F. Porsche AG and Porsche Cars North America, Inc. (together

6    "Porsche" or the "Porsche Parties") (Volkswagen and Porsche together, "Defendants"), alleging

7    in relevant part that Volkswagen and Porsche violated California Health and Safety Code sections

8    43016, 43017, 43151, 43152, 43153, 43205, 43211, and 43212; California Code of Regulations

9    Title 13, sections 1903, 1961, 1961.2, 1965, 1968.2, and 2037, and the 40 C.F.R sections

10   incorporated therein by reference; California Business and Professions Code sections 17200,

11   17500, and 17580.5; California Civil Code section 3494; and 12 USC § 5536 *et seq*. in

12   connection with the certification, marketing, distribution and sale of approximately 85,285

13   Volkswagen, Audi and Porsche diesel vehicles in California (the "California Claims");

14          **WHEREAS**, the California Claims have been partially resolved through the Court's entry

15   of: (1) the partial consent decree between the California Attorney General and Defendants (the

16   "First California Partial Consent Decree") on September 1, 2016 (Dkt. #1801 in 15-MD-2672);

17   and (2) the partial consent decree among the United States, California, and the Volkswagen

18   Parties (the "First Partial Consent Decree"), concerning 2.0 Liter Subject Vehicles, on October

19   25, 2016 (Dkt. #2103 in 15-MD-2672);

20          **WHEREAS**, it is anticipated that additional California Claims related to 3.0 Liter Subject

21   Vehicles will be partially resolved through the Court's entry of: (1) the proposed partial consent

22   decree among the United States, California, and Defendants lodged with the Court by the United

23   States on December 20, 2016 (Dkt. #2520 in 15-MD-2672) (the "Second Partial Consent

24   Decree"), which provides relief to California in the form of environmental mitigation trust funds,

25   and which addresses other environmental issues including vehicle recall; and (2) the proposed

26   partial consent decree between California and Defendants filed concurrently on December 20,

27   2016 (Dkt. #2519 in 15-MD-2672) ("Second California Partial Consent Decree"), which provides

28   further Zero Emission Vehicle ("ZEV") relief in California that is intended to address the adverse

environmental impacts that California alleges results from Defendants' conduct;

**WHEREAS**, The First Partial Consent Decree, Second Partial Consent Decree, First California Partial Consent Decree, and Second California Partial Consent Decree include provisions that, as described in further detail therein, collectively require the Volkswagen Parties, and/or the Porsche Parties, to pay $422,636,320 into a trust that will be used by CARB to mitigate environmental harm in California, to pay $25,000,000 to CARB to support ZEV vehicle replacement programs, to sell ZEVs in California, to make $800,000,000 in ZEV-related investments in California, to pay $86,000,000 to the California Attorney General, and to make additional mitigation payments if they fail to modify or buy back 85% of the subject vehicles in California;

**WHEREAS**, Defendants and the People (together the "Parties") have agreed to resolve remaining aspects of the California Claims related to 2.0 and 3.0 Liter Subject Vehicles without the need for litigation through this additional partial consent decree ("Third California Partial Consent Decree");

**WHEREAS**, Defendants admit that software in the 2.0 and 3.0 Liter Subject Vehicles enables the vehicles' engine control modules to detect when the vehicles are being driven on the road, rather than undergoing California or federal test procedures, and that this software renders certain emission control systems in the vehicles inoperative when the engine control module detects the vehicles are not undergoing California or federal test procedures, resulting in emissions that exceed permitted levels under California and federal law when the vehicles are driven on the road;

**WHEREAS**, Defendants admit that this software was not disclosed in the applications for Executive Orders submitted to CARB for the 2.0 and 3.0 Liter Subject Vehicles, and, as a result, the design specifications of the 2.0 and 3.0 Liter Subject Vehicles, as manufactured, differ materially from the design specifications described in the applications for Executive Orders;

**WHEREAS**, this Third California Partial Consent Decree (which is also referred to herein as the "Consent Decree"), is one of several coordinated resolutions of various state and federal

claims related to the conduct alleged in the Complaint, set forth in other agreements;

**WHEREAS**, except as expressly provided in this Third California Partial Consent Decree, nothing in this Consent Decree shall constitute an admission of any fact or law by any Party, including as to any factual or legal assertion set forth in the California Complaint, except for the purpose of enforcing the terms or conditions set forth herein;

**WHEREAS**, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties regarding the California Claims, and that this Consent Decree is fair, reasonable, and in the public interest; and

**WHEREAS**, various settlement documents have been filed in this Multidistrict Litigation ("MDL") proceeding, including the Second Partial Consent Decree and the Second California Partial Consent Decree, a second proposed consumer class action settlement agreement and release concerning 3.0 Liter Subject Diesel Vehicles by the Plaintiffs' Steering Committee, and a second proposed partial stipulated order for permanent injunction and monetary judgment by the Federal Trade Commission, and that, as set forth herein, portions of this California Partial Consent Decree shall not become effective unless and until certain other settlement documents are approved and/or entered by the Court, as applicable.

**NOW, THEREFORE**, before the taking of any testimony, without the adjudication of any issue of fact or law, and with the consent of the Parties, **IT IS HEREBY ADJUDGED, ORDERED, AND DECREED** as follows:

## I.        JURISDICTION AND VENUE

1.        The Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331 and 1355, and over the Parties to the extent limited by this paragraph.  Venue lies in this District pursuant to 28 U.S.C. § 1407 and the MDL Panel's Transfer Order, dated December 8, 2015, and filed in this MDL action as Dkt. # 1.  The Court has supplemental jurisdiction over California's state law claims pursuant to 28 U.S.C. § 1367.  For purposes of this Decree, Defendants consent to the Court's jurisdiction over entry of this Consent Decree and over

4

1    any action to enforce this Consent Decree, and consent to venue in this judicial district for such

2    purposes.  Defendants reserve the right to challenge and oppose any claims to jurisdiction by

3    California that do not arise from the Court's jurisdiction over this Consent Decree or an action to

4    enforce this Consent Decree.

5              2.      Solely for purposes of this Consent Decree, and without prejudice to their ability

6    to contest the legal sufficiency or merits of a complaint in any other proceeding, Defendants do

7    not contest that the California Complaint states claims upon which relief may be granted pursuant

8    to: California Health and Safety Code sections 43016, 43017, 43151, 43152, 43153, 43205,

9    43211, and 43212; California Code of Regulations Title 13, sections 1903, 1961, 1961.2, 1965,

10   1968.2, and 2037, and the 40 C.F.R. provisions incorporated therein by reference; California

11   Business and Professions Code Sections 17200, 17500, and 17580.5; California Civil Code

12   section 3494; and 12 USC § 5536 *et seq*.

13                          **II.      APPLICABILITY**

14             3.      The obligations of this Consent Decree apply to and are binding upon California,

15   and upon Volkswagen and Porsche, as applicable, and any of their respective successors, assigns,

16   or other entities or persons otherwise bound by law.

17             4.      The Volkswagen Parties' obligations to comply with all requirements of this

18   Consent Decree are joint and several.  The Porsche Parties' obligations to comply with the

19   Porsche Parties' other requirements of this Consent Decree are joint and several.  Further, the

20   Volkswagen Parties shall be jointly liable with the Porsche Parties to implement the Porsche

21   Parties' requirements of this Consent Decree.  In the event of the insolvency of any Volkswagen

22   Parties or the failure by any Volkswagen Parties to implement any requirement of this Consent

23   Decree, the remaining Volkswagen Parties shall complete all such requirements except as set

24   forth in this Paragraph.  In the event of the insolvency of any Porsche Party or the failure by any

25   Porsche Party to implement any applicable requirement of this Consent Decree, the remaining

26   Porsche Party and the Volkswagen Parties shall complete all such requirements.

27             5.      Any legal successor or assign of any Volkswagen Party or Porsche Party shall

28   remain jointly and severally liable for the payment and other performance obligations hereunder,

except as described in Paragraph 4, above.  Defendants shall include an agreement to so remain liable in the terms of any sale, acquisition, merger, or other transaction changing the ownership or control of any of the Defendants, and no change in the ownership or control of any Defendant shall affect the obligations hereunder of any Defendant without modification of the Decree in accordance with Section XVII (Modification).

6.    Defendants shall provide a copy of this Consent Decree to the members of their respective Board of Management and/or Board of Directors and their executives whose duties might reasonably include compliance with any provision of this Decree.  Defendants shall condition any contract providing for work required under this Consent Decree to be performed in conformity with the terms thereof.  Defendants shall also ensure that any contractors, agents, and employees whose duties might reasonably include compliance with any provision of the Consent Decree are made aware of those requirements of the Decree relevant to their performance.

7.    In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by any of their officers, directors, employees, agents, contractors, or auditors to take any actions necessary to comply with the provisions of this Consent Decree.

### III.    DEFINITIONS

8.    Terms used in this Consent Decree that are defined under California law shall have the meanings assigned to them under California law, unless otherwise provided in this Decree. For purposes of this Consent Decree:

a.    "2.0 Liter Subject Vehicles" has the meaning set forth in the Second Partial Consent Decree;

b.    "3.0 Liter Subject Vehicles" has the meaning set forth in the Second Partial Consent Decree;

c.    "CARB" means the California Air Resources Board;

d.    "California" means Plaintiff the People of the State of California, acting by and through Xavier Becerra, Attorney General of the State of California, and the California Air Resources Board;

e.    "California Complaint" means the complaint filed by California in

6

this action on June 27, 2016;

f.      "Consent Decree," "this Decree," or "Third California Partial Consent Decree" means this partial consent decree;

g.      "Day" means a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or California state holiday, the period shall run until the close of business of the next business day;

h.      "Defendants" means Volkswagen AG, Volkswagen Group of America, Inc., Volkswagen Group of America Chattanooga Operations LLC, Audi AG, Dr. Ing. h.c. F. Porsche AG, and Porsche Cars North America, Inc.;

i.      "Effective Date" has the meaning set forth in Section XV below.

j.      "Electronic Emissions Control Module ("ECM") Software" means the electronic control unit(s), including the software and calibrations integrated in the ECM hardware, which control the engine, transmission, powertrain, emissions control system, and on-board diagnostic system functions in the vehicle;

k.      "Environmental Management System" or "EMS" means the management system established by the Volkswagen Parties to provide a structure to carry out specific activities related to environmental protection and compliance with United States environmental laws for vehicles marketed and sold by the Volkswagen Parties in the United States;

l.      "EPA" means the United States Environmental Protection Agency and any of its successor departments or agencies;

m.      "First California Partial Consent Decree" means the partial consent decree between the California Attorney General and Defendants entered by the Court on September 1, 2016 (Dkt. #1801 in 15-MD-2672);

n.      "First Partial Consent Decree" means the partial consent decree among the United States, California, and the Volkswagen Parties concerning 2.0 Liter Subject Vehicles entered by the Court on October 25, 2016 (Dkt. #2103 in 15-MD-

7

1    2672);

2            o.      "Golden Rules Handbook" means the specific internal procedures

3    developed by the Volkswagen Parties on January 25, 2016 (Version 1.0), or subsequent

4    versions if any, to optimize the Volkswagen Parties' operational internal control system,

5    which focuses on control unit software development, testing and monitoring procedures

6    for vehicle certification, and escalation management in the Product Safety Committee

7    (also referred to as "APS");

8            p.      "Materials" means Submissions and other documents,

9    certifications, plans, reports, notifications, data, or other information that is required to

10    be submitted pursuant to this Third California Partial Consent Decree;

11            q.      "Paragraph" means a portion of this Third California Partial

12    Consent Decree;

13            r.      "Parties" means California and Defendants;

14            s.      "Porsche" or the "Porsche Parties" means Dr. Ing. h.c. F. Porsche

15    AG and Porsche Cars North America, Inc.;

16            t.      "Product Development Process" means Defendants' process to

17    manage the development of motor vehicles, including research and development,

18    quality assurance, and compliance with United States environmental laws for vehicles

19    marketed and sold by Defendants in the United States;

20            u.      "Porsche Remediation Plan" means the plan approved by the

21    Executive Board of Dr. Ing. h.c. F. Porsche AG in December 2016, or subsequent

22    versions, if any, to develop and implement internal procedures for the development of

23    vehicles that include emissions control systems designed to comply with United States

24    environmental laws and regulations, and to ensure the segregation of duties relating to

25    emission testing and certification of such vehicles;

26            v.      "Second California Partial Consent Decree" means the proposed

27    partial consent decree between California and Defendants filed on December 20, 2016

28    (Dkt. #2519 in 15-MD-2672);

1           w.     "Second Partial Consent Decree" means the proposed partial

2    consent decree among the United States, California, and Defendants lodged with the

3    Court by the United States on December 20, 2016 (Dkt. #2520 in 15-MD-2672);

4           x.     "Section" means any portion of this Consent Decree identified by a

5    Roman Numeral;

6           y.     "Submission" means any plan, report, guidance, or other item that

7    is required to be submitted for approval pursuant to this Consent Decree;

8           z.     "US Third Partial Consent Decree" means the proposed partial

9    consent decree between the United States and Defendants lodged with the Court by the

10    United States on January 11, 2017 (Dkt. #2758 in 15-MD-2672) and entered by the

11    Court on April 13, 2017 (Dkt. #3155 in 15-MD-2672); and

12          aa.     "Volkswagen" or "Volkswagen Parties" means Volkswagen AG,

13    Volkswagen Group of America, Inc., Volkswagen Group of America Chattanooga

14    Operations LLC, and Audi AG.

## IV.    MONETARY TERMS

16        9.   Within 30 days after the earlier of the date upon which this Consent Decree is

17    entered by the Court or a motion to enter the Consent Decree is granted (the "Entry Date"),

18    Volkswagen shall pay directly to CARB the sum of $93,813,500 as a civil penalty.  These funds

19    shall be deposited into the Air Pollution Control Fund.

20        10.  Volkswagen shall also pay directly to CARB a total aggregate amount of

21    $60,000,000 in consideration for CARB's past and future costs associated with the First Partial

22    Consent Decree and Second Partial Consent Decree.  This amount shall be payable in equal

23    annual installments over a period of six years from the Entry Date, or, alternatively, at

24    Volkswagen's election, may be paid in full within 30 days of Entry Date.  If not paid in full,

25    Volkswagen shall make the first payment of $10,000,000 within 30 days of the Entry Date; each

26    of the five subsequent annual payments of $10,000,000 shall be due within one calendar year of

27    the due date for the prior year's payment.  These funds shall be deposited into the Air Pollution

28    Control Fund.

11.  Payments required to be made pursuant this Consent Decree shall be made via wire transfer to CARB pursuant to instructions to be provided by CARB.

## V.    INJUNCTIVE RELIEF FOR THE VOLKSWAGEN PARTIES

### Product Development Process

12.  Segregation of Duties between Product Development and Certification Testing/Monitoring for the Volkswagen Parties.  Within 180 Days after the Effective Date, the Volkswagen Parties shall implement measures to ensure that employees involved in certification testing and monitoring for purposes of vehicle certification under the Clean Air Act and California law are organizationally separate from product development. The Volkswagen Parties shall form and maintain an organizationally separate certification group ("Certification Group") to manage, supervise, and conduct certification testing and monitoring. The Certification Group shall:

    a.    Ensure that the Volkswagen Parties have policies, procedures, practices, or processes for vehicle development that include emission control systems designed to comply with U.S. laws and regulations, including California laws and regulations, related to vehicle certification and emission standards;

    b.    Conduct, or retain a qualified contractor to conduct, emissions certification testing of both production and in-use vehicles;

    c.    Plan the testing program, obtain the vehicles, confirm that the configuration of the test vehicles is representative of the production vehicles, and test or retain a qualified contractor to test the certification vehicles consistent with EPA's and CARB's regulations for certification and in-use performance testing. The Certification Group may utilize testing facilities and technicians assigned to other units within the Volkswagen Parties' organization provided that the Certification Group controls the certification testing; and

    d.    Supervise all certification personnel, provide appropriate training, and control access to certification vehicles.

13.  Establishment of Volkswagen Parties' Project Management Office(s). Within 90

1    Days after the Effective Date, the Volkswagen Parties shall establish and maintain one or more

2    Project Management Office(s) for monitoring and complying with current and future U.S. laws,

3    including California laws, regarding vehicle certification and vehicle emissions. The Volkswagen

4    Parties shall establish rules of procedure for the Project Management Office(s) and shall define its

5    tasks, authorities, and responsibilities, which shall include: (1) to document significant current

6    U.S. laws, regulations, and legislation (including California laws, regulations, and legislation)

7    related to vehicle certification and automotive emissions, and track future developments in U.S.

8    law (including California law) related to vehicle certification and automotive emissions; (2) to

9    monitor and assist the Volkswagen Parties' compliance with U.S. requirements, including

10   California requirements, regarding exhaust emission standards and technology; and (3) to

11   establish internal procedures and controls for the Volkswagen Parties in order to achieve

12   compliance with U.S. requirements, including California requirements, regarding exhaust

13   emission standards and technology.

14          14.   <u>PEMS Testing by the Volkswagen Parties</u>.  The testing required by this paragraph

15   is the same testing required by paragraph 15 of the US Third Partial Consent Decree, subject to

16   certain additional terms applicable to the Volkswagen Parties and CARB.

17                  a.      The Volkswagen Parties (under the supervision of the Certification

18          Group) shall test certain model year 2017, 2018, and 2019 light-duty motor vehicles

19          using portable emissions measurement system ("PEMS") testing.  For each model year,

20          the Volkswagen Parties shall perform PEMS testing on 33% of Volkswagen Parties'

21          EPA-certified test groups within that model year ("Volkswagen Test Groups").  For

22          purposes of determining the number of Volkswagen Test Groups composing 33%, the

23          Volkswagen Parties shall round up or down to the nearest whole Volkswagen Test

24          Group number closest to 33%.   Volkswagen shall test those Volkswagen Test Groups

25          selected by EPA pursuant to Paragraph 15(a) of the Third Partial Consent Decree

26          between Defendants and the United States, lodged with the Court on January 11, 2017

27          (Dkt. #2758 in 15-MD-2672) (the "US Third Partial Consent Decree").  If EPA does not

28          select the Volkswagen Test Groups pursuant to the schedule set forth in Paragraph 15(a)

11

1    of the US Third Partial Consent Decree, CARB will attempt to confer with EPA in an

2    effort to arrive at a common list of test groups to be tested by the Volkswagen

3    Defendants, and, if EPA fails to select the Volkswagen Test Groups for any given year

4    by the applicable deadline, CARB will have 10 business days following the applicable

5    EPA selection deadline to designate the Volkswagen Test Groups for that model year.

6    If CARB also fails to select the Volkswagen Test Groups for any given year by the

7    applicable deadline, Volkswagen will designate the Volkswagen Test Groups for that

8    model year.  The Volkswagen Parties shall select the Volkswagen Test Groups for

9    model year 2017, model year 2018, and model year 2019 that will cover, in the

10   aggregate, the full range of configurations of emission control systems on their light-

11   duty vehicles for those model years, and shall not select a Volkswagen Test Group that

12   was certified using carryover emissions data from another Volkswagen Test Group that

13   has already been tested pursuant to this Paragraph (unless necessary to meet the 33%

14   requirement).   All testing under this Paragraph 14.a for model year 2017 shall be

15   completed by December 31, 2017.  All testing under Paragraph 14.a for model years

16   2018 and 2019 shall be completed by September 30 of the calendar year for which the

17   applicable model year is named, except that the Volkswagen Parties and EPA may

18   agree, under the US Third Partial Consent Decree, to a later date (but in no case later

19   than December 31 of the applicable model year) sufficient to enable the Volkswagen

20   Parties to complete PEMS testing of the selected model year.  The Volkswagen Parties

21   may, but are not required to, use the Third-Party Emissions Tester required by

22   Paragraph 14.b to conduct the testing required by this Paragraph 14.a.

23             b.       In addition to the requirements of Paragraph 14.a, the Volkswagen

24   Parties shall retain an independent third-party emissions tester ("Third-Party Emissions

25   Tester").  (The Volkswagen Parties and Porsche Parties may hire the same Third-Party

26   Emissions Tester.)  No attorney-client relationship shall exist or be formed between any

27   Volkswagen Party and the Third-Party Emissions Tester.  For each of model year 2017,

28   2018, and 2019, the Volkswagen Parties shall ensure that the Third-Party Emissions

Tester conducts PEMS testing on a vehicle from each of two Volkswagen Test Groups. Testing under this Paragraph 14.b does not count toward the testing required under Paragraph 14.a.  These Volkswagen Test Groups selected for testing under this Paragraph 14.b shall be the Volkswagen Test Groups with the highest projected sales for the model year at the time of certification, or if applicable those Volkswagen Test Groups selected by EPA (or, if EPA fails to make a selection pursuant to Paragraph 15(a)) of the US Third Partial Consent Decree, those test groups selected by CARB) by letter to the Volkswagen Parties, pursuant to Section XIV (Notices).  Any such letters shall be provided no later than June 30 of the year for which the model year is named. All testing under this Paragraph 14.b shall be completed by December 31 of the calendar year for which the applicable model year is named.

       c.     The Volkswagen Parties shall satisfy the testing required by Paragraph 14.a as follows, and shall ensure that the Third-Party Emissions Tester satisfies the testing required by Paragraph 14.a and b as follows:

       i.     Test a Volkswagen Test Group by testing one sample vehicle procured at random from the series production vehicles from that selected Volkswagen Test Group;

       ii.     Perform the required third-party PEMS testing on public roads in the United States, and perform all PEMS testing under real-world driving conditions over a range of ambient temperatures and pressures (including conditions not represented on the Federal Test Procedure or any other test procedure designated by CARB) to measure emissions that are detectable on a serial vehicle via PEMS of the vehicle's regulated criteria air pollutants and $CO_2$; and

       iii.     Conduct the required PEMS testing according to test methods recorded before the testing commences.  The Third-Party Emissions Tester shall use test methods independently from the Volkswagen Parties.  The Volkswagen Parties and Third-Party Emissions Testers will make best efforts

13

1    to provide 10 days written notice to CARB before commencing testing.

2           d.     Within 120 Days after the Effective Date, the Volkswagen Parties

3    shall submit to CARB for review (and for CARB approval, if EPA fails to approve or

4    disapprove a plan for PEMS testing submitted by the Volkswagen Parties to EPA) in

5    accordance with Section VII (Approval of Submissions) a plan for PEMS testing under

6    this Paragraph. Such plan shall include:

7              i.     A list of those test groups the Volkswagen Parties will test

8    for model year 2017;

9              ii.     A written statement of qualifications for the proposed Third-

10   Party Emissions Tester including its name, affiliation, and address, its

11   experience in conducting PEMS testing, and a description of previous contracts

12   or financial relationships of the proposed Third-Party Emissions Tester with

13   the Volkswagen Parties;

14             iii.     A list of all emissions and vehicle and engine parameters the

15   Volkswagen Parties will measure and record during each PEMS test they

16   perform under this Paragraph 14;

17             iv.     A description of the test methods the Volkswagen Parties

18   propose to use including the routes and ambient conditions over which the

19   vehicles shall be tested;

20             v.     A template for the Volkswagen Parties' summary report as

21   described below; and

22             vi.     A description of how the Volkswagen Parties intend to

23   satisfy all requirements of this Paragraph 14.

24          e.     For each model year, for the PEMS testing required by Paragraph

25   14.a, the Volkswagen Parties shall provide the test data, a detailed statement of all test

26   methods used, and an executive summary of the data and methods (that includes the

27   measured emissions of the vehicle's regulated criteria air pollutants and $CO_2$) for all

28   tests the Volkswagen Parties performed under this Paragraph for that model year

14

("Volkswagen Defendants' Summary Report") to CARB as specified in Section XIV (Notices).  The Volkswagen Parties' Summary Report for model year 2017 shall be due no later than March 1, 2018.  The Volkswagen Parties' Summary Report for model years 2018 and 2019 shall be due no later than November 30 of the calendar year for which the model year is named, unless the Volkswagen Parties and EPA agree to a later date that is no later than January 15 of the following calendar year, unless also agreed to by CARB.  Within 21 Days following submission of the Volkswagen Parties' Summary Report to CARB, the Volkswagen Parties shall post their Summary Report (redacted of any Confidential Business Information ("CBI") or personal information the disclosure of which is restricted by applicable law; however no emissions test methods and results may be claimed as CBI) in English and German at the public website required by Paragraph 50.

f.      For each model year, for the PEMS testing required by Paragraph 14.b, the Volkswagen Parties shall ensure that the Third-Party Emissions Tester prepares one or more "Third-Party Emissions Tester Summary Report" including the test data, a detailed statement of all test methods used, and an executive summary of the data and methods (that includes the measured emissions of the vehicle's regulated criteria air pollutants and $CO_2$) for all testing the Third-Party Emissions Tester performed under this Paragraph for that model year.  The Volkswagen Parties shall provide the Third-Party Emissions Tester Summary Report to CARB as specified in Section XIV (Notices) by no later than March 1 of the calendar year immediately after the calendar year for which the model year is named.  Within 30 Days following submission of the Third-Party Emissions Tester Summary Report to CARB, the Volkswagen Parties shall post the Third-Party Emissions Tester Summary Report (redacted of any CBI or personal information the disclosure of which is restricted by applicable law; however no emissions test methods and results may be claimed as CBI) in English and German at the public website required by Paragraph 50.

g.      If any of the PEMS data produced pursuant to the testing in

15

Paragraph 14.a or Paragraph 14.b suggest the potential presence of an undisclosed AECD or defeat device, or are otherwise anomalous or inconsistent with the certification application for the Volkswagen Test Groups being tested, the Volkswagen Parties shall, upon CARB's reasonable written request: meet and confer with CARB to discuss the PEMS data; work collaboratively with CARB to determine why the PEMS data suggest the potential presence of an undisclosed AECD or defeat device, or are otherwise anomalous or inconsistent with the certification application for the Volkswagen Test Groups being tested; provide relevant information and documents to CARB; and provide CARB with vehicles and vehicle components (including without limitation hardware and software) for PEMS or other testing by CARB.

h.      The Parties agree and acknowledge that neither U.S. law nor California law set forth a standard by which PEMS testing can be used to determine compliance for purposes of certification under California law.

15.  <u>Business Units within the Product Development Process</u>. Within 180 Days after the Effective Date, the Volkswagen Parties shall implement the internal procedures set out in the Golden Rules Handbook by establishing internal controls and rules of procedure, and by defining the tasks, authorities, and responsibilities for the business units, committees, and boards involved in the Product Development Process, including, but not limited to, the Product Safety Committee (also known as "APS"), the Change Control Board, and the Type Approval, Recyclability and Functional Safety Department (also known as "EGDT"); provided however, that implementation of software and information technology may extend beyond 180 Days after the Effective Date, and that these additional Days shall not count in determining the three-year period set forth in Paragraph 25.  The Golden Rules Handbook and the internal controls and internal rules of procedure developed by the Volkswagen Parties may be subject to reasonable modification, in consultation with the Department of Justice and California.  The Volkswagen Parties shall conduct regular employee training regarding the internal procedures, and shall monitor implementation of these procedures through the Volkswagen Parties' Governance, Risk, and Compliance ("GRC") process.

16

16.   <u>Definition of Managers' Responsibilities</u>. Within 120 Days after the Effective Date, the Volkswagen Parties shall define the tasks, authorities, and responsibilities of the managers involved in the Product Development Process with respect to compliance with California environmental laws and regulations.

17.   <u>Internal Audit</u>. Within one year after the Effective Date, the Volkswagen Parties shall conduct and complete an internal audit to track the implementation of the internal procedures in the Golden Rules Handbook relating to vehicle approval procedures with respect to California environmental laws and regulations, ECM Software development in the Product Development Process, and escalation management in the Product Safety Committee ("APS"). The audit shall assess the effectiveness of those internal procedures and propose any corrective actions to improve their effectiveness.

18.   <u>Reporting on Injunctive Relief Measures</u>. The first annual report provided to California pursuant to Paragraph VIII.46 shall include the information required by Paragraphs 17, 20, 21, 22.  In the second and third annual reports provided to California pursuant to Paragraph 46, the Volkswagen Parties shall describe the measures that they have implemented to promote compliance with the requirements of Paragraphs 12, 13, 14, 15, 16, 20, 21, and 22 of this Section V (Injunctive Relief for Volkswagen Parties), together with an assessment of the effectiveness of those measures in promoting compliance with U.S. environmental law, including California law, and any corrective actions the Volkswagen Parties have undertaken to improve their effectiveness in promoting compliance with U.S. environmental law, including California law.  In the second and third annual reports provided to the California pursuant to this Paragraph, the Volkswagen Parties shall also address: (1) all risks assessed and recorded as part of the annual GRC process relating to either compliance with California environmental laws and regulations or risks of rule violations in the Product Development Process; (2) countermeasures taken by the Volkswagen Parties' business units in response to those risks; and (3) management controls implemented by the Volkswagen Parties' business units relating to those risks. The information required to be provided in the annual reports pursuant to this Paragraph 18 shall be certified in accordance with Paragraph 51.  The Volkswagen Parties may elect to fulfill their reporting obligations under this

17

Paragraph 18 by submitting the required information in a single joint report to the Department of Justice and California.

**Whistleblower System**

19.  Implementation of Whistleblower System. Within 180 Days of the Effective Date, the Volkswagen Parties shall implement and maintain the Volkswagen Group whistleblower system that was approved by the Board in September 2016.  The Volkswagen Parties shall retain professionally educated and trained employees to administer the system.  Any whistleblower policy that applies to individuals whose work the Volkswagen Parties reasonably anticipate may involve or relate to vehicles to be certified for sale in California shall designate violations of U.S. environmental laws or regulations, including California laws or regulations, as "serious violations" within the meaning of the policy.

20.  Report on case tracking. In each annual report provided to CARB pursuant to Paragraph VIII.46, the Volkswagen Parties shall submit a report, with a certification in accordance with Paragraph 51 of this Consent Decree, regarding case tracking under the Volkswagen Group whistleblower system of all whistleblower alerts relating to violations of U.S. environmental protection laws or regulations, including California laws or regulations.

**Employee Survey and Code of Compliance**

21.  Annual Employee Survey. Within 90 Days after the Effective Date, the Volkswagen Parties shall create for inclusion in their annual employee survey a question to monitor the progress of the Volkswagen Parties' integrity campaign as introduced on June 16, 2016, and, for teams whose work includes matters related to compliance with U.S. environmental laws, including California laws, questions in appropriate managers' guides to the annual employee survey to gauge compliance with U.S. laws or regulations (including California laws or regulations) relating to environmental compliance.  The Volkswagen Parties shall establish a centralized process to monitor and address employee survey responses relating to the integrity campaign.  In each annual report to CARB pursuant to Paragraph 46, the Volkswagen Parties shall provide a summary of survey results relating to the integrity campaign.

22.  Code of Conduct. Within 180 Days after the Effective Date, the Volkswagen

18

Parties shall ensure that the Volkswagen Parties' corporate Code of Conduct includes provisions regarding (1) environmental protection and (2) responsibility for compliance. The Volkswagen Parties shall require all new employees to attend training regarding the Code of Conduct.  In each annual report to CARB pursuant to Paragraph 46, the Volkswagen Parties shall provide a summary of training provided to employees regarding the Code of Conduct.

**Environmental Management System ("EMS") Audit**

23.  <u>EMS Audit</u>. Within 90 Days after the Effective Date, the Volkswagen Parties shall contract with and retain an independent third party to conduct an EMS audit pursuant to an industry-recognized standard for product development processes for vehicles to be certified for sale in the United States for each year for calendar years 2017, 2018, and 2019. Beginning with the EMS audit covering calendar year 2017, the EMS audit shall include: (1) an assessment of the Volkswagen Parties' processes to comply with U.S. environmental laws and regulations (including California laws and regulations); and (2) a recommendation for corrective actions.

24.  <u>Annual EMS Audit Report</u>. Upon completion of each annual EMS audit report, the Volkswagen Parties shall provide to CARB a copy of their annual EMS audit report covering calendar years 2017, 2018, and 2019. To the extent that any such report contains CBI, the Volkswagen Parties shall simultaneously submit to CARB for its review a summary version that can be made publicly available. Within 21 Days after a copy is provided to CARB, the Volkswagen Parties shall post a copy of the annual EMS audit report (redacted of any CBI or personal information the disclosure of which is restricted by applicable law; however no emissions test methods and results may be claimed as CBI) in English and German on the public website required by Paragraph 50.

**Implementation Timeframe**

25.  The Volkswagen Parties shall continue to implement the ongoing requirements of this Consent Decree, other than Section VI (Injunctive Relief for the Porsche Defendants), for a three-year period after the implementation of the requirements of Paragraph 15.

**Reports of Independent Compliance Auditor**

26.  The Volkswagen Parties shall comply with the obligations set forth in Paragraphs

27 through 29 (Independent Compliance Auditor) under the US Third Partial Consent Decree between Defendants and the United States, lodged with the Court on January 11, 2017 (Dkt. #2758 in 15-MD-2672).

27.   Additionally, the Independent Compliance Auditor retained by the Volkswagen Parties pursuant to Paragraphs 27 through 29 (Independent Compliance Auditor) of the US Third Partial Consent Decree between Defendants and the United States, lodged with the Court on January 11, 2017 (Dkt. #2758 in 15-MD-2672), shall evaluate and report on the Volkswagen Parties' compliance with Section V (Injunctive Relief for the Volkswagen Parties) of this Consent Decree.

28.   Access Rights and Duties of the Independent Compliance Auditor.  The Volkswagen Parties shall cooperate fully with the Independent Compliance Auditor in any and all matters relating to the Auditor's duties as set forth in Paragraphs 26 through 29 of this Consent Decree.

a.      The Volkswagen Parties shall cooperate fully with the Independent Compliance Auditor and shall provide the Independent Compliance Auditor with any information and documents that the Auditor requests or may reasonably need to fulfill the duties listed in this Paragraph.  The Volkswagen Parties shall facilitate the Independent Compliance Auditor's access to the Volkswagen Parties' documents, databases, and facilities where certification or compliance testing of the Volkswagen Parties' vehicles occur.  The Volkswagen Parties shall use best efforts to make their employees or contractors available to answer questions or provide information that the Independent Compliance Auditor may need in the fulfillment of its duties.  In the event that the Volkswagen Parties seek to withhold from the Auditor access to information, documents, records, facilities, or current or former employees or contractors of the Volkswagen Parties that may be subject to a claim of attorney-client privilege or to the attorney work product doctrine, or where the Volkswagen Parties reasonably believe production or providing access would otherwise be inconsistent with applicable law, the Volkswagen Parties shall work cooperatively with the Independent Compliance Auditor

20

1    to resolve the matter to the satisfaction of the Independent Compliance Auditor

2    consistent with applicable law.  If the Independent Compliance Auditor believes the

3    Volkswagen Parties have violated the requirements of this Paragraph 28.a, the

4    Independent Compliance Auditor shall promptly notify California, including a

5    description of the alleged violations and supporting documentation as necessary.

6              b.      Annual Reports of Independent Compliance Auditor.  The

7    Independent Compliance Auditor shall review documents and take such reasonable

8    measures as may be necessary to verify the Volkswagen Parties' compliance with

9    Section V (Injunctive Relief for the Volkswagen Parties) of this Consent Decree.  For

10   three years after the Effective Date, the Independent Compliance Auditor shall audit the

11   Volkswagen Parties' compliance with their obligations under Section V (Injunctive

12   Relief for the Volkswagen Parties) of this Consent Decree, and shall provide an annual

13   report to California.  The first annual report is due one year after the Effective Date, the

14   second annual report is due two years after the Effective Date, and the third annual

15   report is due three years after the Effective Date.  The Independent Compliance Auditor

16   shall concurrently provide a draft copy of its annual report to California and the

17   Volkswagen Parties.  Within 30 Days after receipt of the draft report, the Volkswagen

18   Parties shall provide their comments, if any, to the Independent Compliance Auditor.

19   The Independent Compliance Auditor may consider and reflect the Volkswagen Parties'

20   comments in its final report to the extent that the Independent Compliance Auditor

21   deems appropriate in the exercise of its independent judgment.  In the annual report, the

22   Independent Compliance Auditor shall include, as applicable, findings that identify any

23   noncompliance by the Volkswagen Parties with the requirements of Section V

24   (Injunctive Relief for the Volkswagen Parties) of this Consent Decree, and shall

25   recommend, as applicable, actions for the Volkswagen Parties to take to achieve

26   compliance.  The Independent Compliance Auditor shall also monitor the Volkswagen

27   Parties' implementation of any action plan submitted pursuant to Paragraph 29, and

28   shall indicate in the annual report the status of any corrective action.  All final annual

21

reports from the Independent Compliance Auditor (redacted of any CBI or personal information the disclosure of which is restricted by applicable law; however no emissions test methods and results may be claimed as CBI) shall be posted by the Parties on the public website required by Paragraph 50 in both English and German within 21 Days after issuance.  The Independent Compliance Auditor may elect to fulfill the reporting obligations under this Paragraph by submitting a single joint report to the Department of Justice and California.

        c.      <u>Copies of Final Annual Reports Submitted to United States</u>.  If the Independent Compliance Auditor does not elect to submit a single joint report to the Department of Justice and California, within 5 business days of submission to the United States, the Independent Compliance Auditor shall provide California a copy of the final annual reports submitted pursuant to Paragraph 28.c of the Third Partial Consent Decree between Defendants and the United States, lodged with the Court on January 11, 2017 (Dkt. #2758 in 15-MD-2672).

        d.      <u>Compensation of the Independent Compliance Auditor</u>.  The Volkswagen Parties shall be responsible for compensating the Independent Compliance Auditor for the performance of its duties in accordance with the terms agreed upon by the Volkswagen Parties and the selected Independent Compliance Auditor.  Such terms of agreement shall clarify that the Independent Compliance Auditor is not an employee or an agent of the Volkswagen Parties, and the Independent Compliance Auditor's work is not subject to the Volkswagen Parties' assertion of attorney-client or work product privileges.

    29.  <u>Volkswagen Parties' Response to Independent Compliance Auditor's Report</u>.

        a.      <u>Action Plan</u>.  Within 60 Days after receiving an Independent Compliance Auditor's final report containing a finding of noncompliance, the Volkswagen Parties shall submit to California a response to the Independent Compliance Auditor's findings and recommendations for corrective action.  The Volkswagen Parties' response shall include, as applicable, an action plan to implement

corrective measures as expeditiously as practicable, or an explanation of why corrective measures are not being implemented.  After the Volkswagen Parties have completed implementation of the corrective measures, if any, the Volkswagen Parties shall provide a report to California with a certification, in accordance with Paragraph 51 of the Consent Decree, that the work has been completed.

b.      <u>Annual Meeting</u>.  Within 90 Days after receiving an Independent Compliance Auditor's final report, the Volkswagen Parties shall meet with California to discuss the Independent Compliance Audit and any suggestions, comments, or improvements that the Volkswagen Parties may wish to discuss with California.

## VI.      <u>INJUNCTIVE RELIEF FOR THE PORSCHE PARTIES</u>

30.  <u>Segregation of Duties between Product Development and Certification Testing/Monitoring</u>.  Within 90 Days after the Effective Date, the Porsche Parties shall implement measures to ensure that employees involved in certification testing and monitoring are organizationally separate from those involved in product development.  Consistent with the Porsche Remediation Plan, the Porsche Parties shall, as set forth in Paragraph 31 below, improve policies, procedures, practices, or processes for the development of vehicles that include emission control systems designed to comply with U.S. laws and regulations, including California laws and regulations, related to emissions standards and certifications, and to ensure that emissions certification testing of such vehicles is not performed by the organizational units responsible for product development.

31.  <u>Organization and Processes</u>.

a.      The Porsche Parties shall implement cross-departmental segregation of duties by establishing a new organizational unit, the "Technical Conformity" unit, which shall have primary responsibility for: (1) developing and implementing the certification testing program; (2) coordinating a central list of auxiliary emission control devices ("AECDs") in vehicles; (3) interpreting technical provisions related to certification; and (4) communicating with government agencies regarding the certification of vehicles.

23

b.      For vehicles that the Porsche Parties will certify for sale in California, the Technical Conformity organizational unit shall: (1) develop and implement the certification testing program, obtain and manage the certification test vehicles, confirm that the configuration of the test vehicles is representative of the production vehicles, and test the certification vehicles consistent with California laws and regulations for certification; and (2) supervise all certification personnel, provide training for certification personnel, and control access to certification vehicles during certification emissions testing.

c.      In order to optimize internal processes regarding the interpretation of technical provisions relating to certification of vehicles, the Porsche Defendants shall centralize the responsibility for such interpretation in the Technical Conformity organizational unit.

d.      The Porsche Parties shall restructure the Powertrain Change Control Board ("CCB") and the Product Safety Committee ("PSK") in accordance with the Porsche Remediation Plan.  The CCB, which is the central approval and escalation committee for ECM Software changes, shall be subject to internal procedures requiring increased standards for establishment of ECM Software change requests, stricter requirements for documentations of decisions, and expansion of the participants required for a CCB decision.  The PSK shall be restructured to improve conformity with U.S. environmental laws and regulations, including California laws and regulations, for vehicles sold in California.

e.      The Porsche Parties shall establish rules of procedure for the approval of ECM Software development.

f.      The Porsche Parties shall establish additional approval criteria for technical conformity in product development processes related to emissions control.

g.      The Porsche Parties shall transfer responsibility for the conformity of production process from the Research and Development Division ("E") to the Corporate Quality Department ("GQ").  GQ shall establish rules of procedure for

24

conformity of production to determine compliance of vehicles with U.S. environmental laws and regulations, including California laws and regulations.

    h.    For vehicles certified for sale in California, GQ shall supervise the in-use performance testing of vehicles, which testing must be performed in accordance with California law.

32. <u>Establishment of the Porsche Defendants' Project Management Office for the Porsche Remediation Plan</u>.  Within 90 Days after the Effective Date, the Porsche Parties shall establish and maintain a Project Management Office ("PMO") for the Porsche Remediation Plan. The PMO shall ensure that an adequate organizational structure for monitoring and complying with current and future U.S. laws, including California laws, regarding vehicle certification and vehicle emissions is established. Consistent with the Porsche Remediation Plan, the PMO shall establish rules of procedure and set out tasks, authorities, and responsibilities for specific Porsche Parties' organizations: (1) to document significant current U.S. laws, regulations, and legislation (including California laws, regulations, and legislation) related to vehicle certification and automotive emissions, and track future developments in U.S. law, including California law, related to vehicle certification and automotive emissions; (2) to monitor and assist the Porsche Parties' compliance with U.S. requirements (including California requirements) regarding exhaust emission standards and technology; and (3) to establish internal procedures and controls for the Porsche Parties in order to achieve compliance with U.S. requirements (including California requirements) regarding exhaust emission standards and technology.

33. <u>PEMS Testing by the Porsche Parties</u>.  The testing required by this paragraph is the same testing required by Paragraph 33 of the US Third Partial Consent Decree, subject to certain additional terms applicable to the Porsche Parties and CARB.

    a.    The Porsche Parties (under the supervision of the Technical Conformity Group) shall test certain model year 2017, 2018, and 2019 light-duty motor vehicles using PEMS testing.  For each model year, the Porsche Parties shall perform PEMS testing on 33% of the Porsche Parties' EPA-certified test groups within that model year ("Porsche Test Groups").  For purposes of determining the number of

25

1    Porsche Test Groups composing 33%, the Porsche Parties shall round up or down to the

2    nearest whole Porsche Test Group number closest to 33%. Porsche shall test those

3    Porsche Test Groups selected by EPA pursuant to Paragraph 33(a) of the Third Partial

4    Consent Decree between Defendants and the United States, lodged with the Court on

5    January 11, 2017 (Dkt. #2758 in 15-MD-2672) (the "US Third Partial Consent

6    Decree").  If EPA does not select the Porsche Test Groups pursuant to the schedule set

7    forth in Paragraph 33(a) of the US Third Partial Consent Decree, CARB will attempt to

8    confer with EPA in an effort to arrive at a common list of test groups to be tested by the

9    Porsche Parties, and, if EPA fails to select the Porsche Test Groups for any given year

10   by the applicable deadline, CARB will have 10 business days following the applicable

11   EPA selection deadline to designate the Porsche Test Groups for that model year.  If

12   CARB also fails to select the Porsche Test Groups for any given year by the applicable

13   deadline, Porsche will designate the Porsche Test Groups for that model year.  The

14   Porsche Parties shall select Porsche Test Groups for model year 2017, model year 2018,

15   and model year 2019 that will cover, in the aggregate, the full range of configurations of

16   emission control systems on their light-duty vehicles for those model years, and shall

17   not select a Porsche Test Group that was certified using carry-over emissions data from

18   another Porsche Test Group that has already been tested pursuant to this Paragraph 33. a

19   (unless necessary to meet the 33% requirement).  All testing under this Paragraph 33.a

20   for model year 2017 must be completed by December 31, 2017.  All testing under this

21   Paragraph 33.a for model years 2018 and 2019 must be completed by September 30 of

22   the calendar year for which the applicable model year is named, except that the Porsche

23   Parties and EPA may agree, pursuant to the US Third Partial Consent Decree, to a later

24   date (but in no case later than December 31 of the applicable model year) sufficient to

25   enable the Porsche Parties to complete PEMS testing of the selected model year. The

26   Porsche Parties may, but are not required to, use the Third-Party Emissions Tester

27   required by Paragraph 33.b to conduct the testing required by this Paragraph 33.a.

28          b.      In addition to the requirements of Paragraph 33.a, the Porsche

26

Parties shall retain an independent Third-Party Emissions Tester.  (The Volkswagen Parties and Porsche Parties may hire the same Third-Party Emissions Tester.)  No attorney-client relationship shall exist or be formed between any Porsche Party and the Third-Party Emissions Tester.  For each of model years 2017, 2018, and 2019, the Porsche Parties shall ensure that the Third-Party Emissions Tester conducts PEMS testing on one vehicle from one Porsche Test Group.  Testing under this Paragraph 33.b does not count toward the testing required under Paragraph 33.a.  The Porsche Test Group selected for testing under this Paragraph 33.b shall be the Porsche Test Group with the highest projected sales for the model year at the time of certification or, if applicable, the Porsche Test Group selected by EPA (or, if EPA fails to make a selection pursuant to Paragraph 33(a) of the US Third Partial Consent Decree, the test group selected by CARB,) by letter to the Porsche Parties pursuant to Section XIV (Notices).  Any such letters shall be provided no later than June 30 of the year for which the model year is named.  All testing under this Paragraph 33.b shall be completed by December 31 of the calendar year for which the applicable model year is named.

c.     The Porsche Parties shall satisfy the testing required by Paragraph 33.a as follows, and shall ensure that the Third-Party Emissions Tester satisfies the testing required by Paragraph 33.a and Paragraph 33.b as follows:

i.     Test a Porsche Test Group by testing one sample vehicle procured at random from the series production vehicles from that selected Porsche Test Group;

ii.     Perform the required third-party PEMS testing on public roads in the United States, and perform all PEMS testing under real-world driving conditions over a range of ambient temperatures and pressures (including conditions not represented on the Federal Test Procedure or any other test procedure designated by California) to measure emissions that are detectable on a serial vehicle via PEMS of the vehicle's regulated criteria air pollutants and $CO_2$; and,

27

iii.    Conduct the required PEMS testing according to test methods recorded before the testing commences.  The Third-Party Emissions Tester shall use test methods independently from the Porsche Parties.

d.    Within 120 Days after the Effective Date, the Porsche Parties shall submit to CARB for review (and for CARB approval, if EPA fails to approve or disapprove a plan for PEMS testing submitted by the Porsche Parties to EPA) in accordance with Section VII (Approval of Submissions) a plan for PEMS testing under this Paragraph 33. Such plan shall include:

i. A list of those test groups the Porsche Parties will test for model year 2017;

ii.    A written statement of qualifications for the proposed Third-Party Emissions Tester including its name, affiliation, and address, its experience in conducting PEMS testing, and a description of previous contracts or financial relationships of the proposed Third-Party Emissions Tester with the Porsche Parties;

iii.    A list of all emissions and vehicle and engine parameters the Porsche Parties will measure and record during each PEMS test they perform under this Paragraph;

iv.    A description of the test methods the Porsche Parties propose to use including the routes and ambient conditions over which the vehicles shall be tested;

v.    A template for the Porsche Parties' summary report as described below; and,

vi.    A description of how the Porsche Parties intend to satisfy all requirements of this Paragraph 33.

e.    For each model year, for the PEMS testing required by Paragraph 33.a, the Porsche Parties shall provide the test data, a detailed statement of all test methods used, and an executive summary of the data and methods (that includes the

28

1 measured emissions of the vehicle's regulated criteria air pollutants and $CO_2$) for all

2 tests the Porsche Parties performed under this Paragraph 33 for that model year

3 ("Porsche Parties' Summary Report") to CARB as specified in Section XIV (Notices).

4 The Porsche Parties' Summary Report for model year 2017 shall be due no later than

5 March 1, 2018.  The Porsche Parties' Summary Report for model years 2018 and 2019

6 shall be due no later than November 30 of the calendar year for which the model year is

7 named, unless the Porsche Parties and EPA agree to a later date that is no later than

8 January 15 of the following calendar year, unless also agreed to by CARB.  Within 21

9 Days after submitting the Porsche Parties' Summary Report to CARB, the Porsche

10 Parties shall post their Summary Report (redacted of any CBI or personal information

11 the disclosure of which is restricted by applicable law; however no emissions test

12 methods and results may be claimed as CBI) in English and German at the public

13 website required by Paragraph 50.

14  f. For each model year, for the PEMS testing required by Paragraph

15 33.b, the Porsche Parties shall ensure that the Third-Party Emissions Tester prepares a

16 Third-Party Emissions Tester Summary Report including the test data, a detailed

17 statement of all test methods used, and an executive summary of the data and methods

18 (that includes the measured emissions of the vehicle's regulated criteria air pollutants

19 and $CO_2$) for all testing the Third-Party Emissions Tester performed under this

20 Paragraph 33 for that model year.  The Porsche Parties shall provide the Third-Party

21 Emissions Tester Summary Report to CARB as specified in Section XIV (Notices) by no

22 later than March 1 of the calendar year immediately after the calendar year for which the

23 model year is named.  Within 30 Days after submitting the Third-Party Emissions Tester

24 Summary Report to CARB, the Porsche Parties shall post the Third-Party Emissions

25 Tester Summary Report (redacted of any CBI or personal information the disclosure of

26 which is restricted by applicable law; however no emissions test methods and results

27 may be claimed as CBI) in English and German at the public website required by

28 Paragraph 50.

29

g.      If any of the PEMS data produced pursuant to the testing in

Paragraph 33.a or Paragraph 33.b suggest the potential presence of an undisclosed

AECD or defeat device, or are otherwise anomalous or inconsistent with the

certification application for the Porsche Test Groups being tested, the Porsche Parties

shall, upon CARB's reasonable written request: meet and confer with CARB to discuss

the PEMS data; work collaboratively with CARB to determine why the PEMS data

suggest the potential presence of an undisclosed AECD or defeat device, or are

otherwise anomalous or inconsistent with the certification application for the Porsche

Test Groups being tested; provide relevant information and documents to CARB; and

provide CARB with vehicles and vehicle components (including without limitation

hardware and software) for PEMS or other testing by CARB.

h.      The Parties agree and acknowledge that neither U.S. nor California

law sets forth a standard by which PEMS testing can be used to determine compliance

for purposes of certification under California law.

34.   <u>Business Units within Product Development Process</u>.  Within 18 months after the

Effective Date, the Porsche Parties shall implement the Porsche Remediation Plan by establishing

internal controls and rules of procedure, and by defining the tasks, authorities, and responsibilities

for the business units, committees, and boards involved in the Product Development Process,

including, but not limited to, the PSK, the CCB, the Technical Conformity organizational unit,

and the Product Safety & Compliance Department, as described in the Remediation Plan.  The

internal controls and internal rules of procedure developed by the Porsche Parties may be subject

to reasonable modification, in consultation with the Department of Justice and California.  The

Porsche Parties shall monitor implementation of these procedures through the Porsche Parties'

Internal Audit Department.

35.   <u>Supplier Contracts</u>.  The Porsche Parties shall adjust or modify supplier contracts

1    to include standardized requirements pertaining to conformity with U.S. legal requirements

2    (including California requirements) for vehicle emissions, certification, and information

3    reporting.

4            36.  Definition of Managers' Responsibilities.  Within 90 Days after the Effective

5    Date, the Porsche Parties shall define the tasks, authorities, and responsibilities of the managers

6    involved in the Product Development Process, including with respect to compliance with U.S.

7    environmental laws and regulations, including California laws and regulations.

8            37.  Whistleblower System.  Upon the Effective Date, the Porsche Parties shall

9    maintain the whistleblower/employee reporting system for the Porsche Parties' employees, which

10   ensures that the identity and anonymity of whistleblowers is protected.  The Porsche Parties shall

11   retain a minimum of two external, independent, and experienced professionals to act as

12   ombudsmen; the ombudsmen shall be obliged to maintain professional confidentiality.  The

13   Porsche Parties shall conduct periodic training events to publicize the availability of reporting

14   options for employees and to explain the procedures and protections of the whistleblower system.

15   Violations of the U.S. environmental laws and regulations (including California laws and

16   regulations) shall be treated as serious violations within the Porsche Parties' whistleblower

17   system.  In each semi-annual report provided to California, the Porsche Parties shall submit a

18   report of all whistleblower alerts relating to violations of U.S. environmental laws or regulations,

19   including California laws or regulations.

20           38.  Compliance Awareness – Employee Training.

21                   a.      Consistent with Paragraph 38.a of the US Third Partial Consent

22           Decree, the Porsche Parties shall revise, if not already revised, the Porsche Parties'

23           corporate Code of Conduct to include compliance with environmental laws or

24           regulations within the Code's discussion of (1) environmental protection and (2)

25           responsibility for compliance. The Porsche Parties shall ensure that the Code of

26           Conduct is discussed with new employees during new employee orientation and inform

27           current employees about the amended content.

28                   b.      The Porsche Parties shall provide technical product conformity

1   training to employees involved in the Product Development Process to ensure

2   appropriate knowledge of the following topics: correct use of test equipment, guidelines

3   for handling test data, overview of U.S. emission-relevant regulations and standards

4   (including California regulations and standards), and AECD-relevant topics.

5           c.      In each semi-annual report to California, the Porsche Parties shall

6   provide a summary of training provided to employees as described in this Paragraph 38.

7       39.  Semi-Annual Reporting on the Porsche Parties' Implementation of the Porsche

8   Remediation Plan and Internal Audit.

9           a.      Semi-Annual Reporting.  On a semi-annual basis (January 31 and

10   July 31 of each year), the Porsche Parties' Head of Internal Audit shall submit a report,

11   with a certification in accordance with Paragraph 51 of the Consent Decree, to

12   California, identifying the objectives, as defined in the Remediation Plan, which have

13   been completed and track the status of objectives that have not yet been completed,

14   including the identification of any issues that may delay the implementation of the

15   same. Each semi-annual report shall also provide information regarding the Porsche

16   Parties' compliance with the requirements of Paragraphs 30 through 38.  The Porsche

17   Parties may elect to fulfill their reporting obligations under this Paragraph 39.a by

18   submitting the required information in a single joint report to the Department of Justice

19   and California.

20           b.      Internal Audit. Within two years after the Effective Date, or earlier

21   as consistent with the timelines and schedule of the Porsche Remediation Plan, the

22   Porsche Parties shall conduct and complete an internal audit to track the implementation

23   of internal procedures relating to approval procedures or software development in the

24   Product Development Process. The audit shall assess: (1) the implementation and

25   effectiveness of the internal procedures, as specifically set forth in the Porsche

26   Remediation Plan, and propose any corrective actions to improve their effectiveness;

27   and (2) the escalation of critical issues, as defined in the Porsche Remediation Plan, to

28   report recipients, including the Executive Board of Dr. Ing. h.c. F. Porsche AG.

1    Following completion, the Porsche Parties shall provide a copy of the audit report to

2    California.

3        40.   Provided that the Porsche Parties have commenced implementation of the Porsche

4    Remediation Plan pursuant to the provisions of this Consent Decree and are implementing the

5    Remediation Plan substantially consistent with the timelines established in the Remediation Plan,

6    then the requirements of this Section VI (Injunctive Relief for the Porsche Parties) shall be

7    deemed to be implemented for purposes of Section XVIII (Termination) as of June 30, 2020.

8                    **VII.**      **APPROVAL OF SUBMISSIONS**

9        41.   After review of any Submission required by Paragraph 14 (PEMS Testing by the

10   Volkswagen Parties) or Paragraph VI.33 (PEMS Testing by the Porsche Parties), CARB and EPA

11   shall in writing: (a) approve the Submission; (b) approve the Submission upon specified

12   conditions; (c) approve part of the Submission and disapprove the remainder; or (d) disapprove

13   the Submission.  In the event of disapproval, in full or in part, of any portion of the Submission, if

14   not already provided with the disapproval, upon request of any one of the Defendants, CARB and

15   EPA will provide in writing the reasons for such disapproval.

16       42.   If the Submission is approved pursuant to Paragraph 41, the Volkswagen Parties

17   or the Porsche Parties, as applicable, shall take all actions required by the Submission in

18   accordance with the schedules and requirements of the Submission, as approved.  If the

19   Submission is conditionally approved or approved only in part pursuant to Paragraph 41(b) or (c),

20   the Volkswagen Parties or the Porsche Parties, as applicable, shall, upon written direction from

21   CARB and EPA, take all actions required by the Submission that CARB and EPA determine are

22   technically severable from any disapproved portions.

23       43.   If the Submission is disapproved in whole or in part pursuant to Paragraph 41(c)

24   or (d), the Volkswagen Parties or the Porsche Parties, as applicable, shall, within 30 Days or such

25   other time as the Parties agree to in writing, correct all deficiencies and resubmit the Submission,

26   or disapproved portion thereof, for approval, in accordance with Paragraphs 41 to 42.  If the

27   resubmission is approved in whole or in part, the Volkswagen Parties or the Porsche Parties, as

28   applicable, shall proceed in accordance with Paragraph 42.

44.  If a resubmitted Submission, or portion thereof, is disapproved in whole or in part, CARB and EPA may again require the Volkswagen Parties or the Porsche Parties, as applicable, to correct any deficiencies, in accordance with Paragraphs 42 and 43, or CARB and EPA may themselves correct any deficiencies.

45.  Defendants may elect to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution) concerning any decision of CARB and EPA to disapprove, approve on specified conditions, modify, or correct a Submission.  If one or more Defendants elect to invoke dispute resolution, they shall do so within 30 Days (or such other time as the Parties agree to in writing) after receipt of the applicable decision.

### VIII.   REPORTING AND CERTIFICATION REQUIREMENTS

46.  <u>Timing of Reports</u>.  The Volkswagen Parties shall submit to California an annual report incorporating information required by Paragraphs 18, 20, 21, 22, and 28.  The first annual report is due one year after the Effective Date; the second annual report is due two years after the Effective Date, and the third annual report is due three years after the Effective Date. The reports required by Paragraphs 14, 17, 24, and 48.b shall be due as set forth in those Paragraphs.  The Volkswagen Parties may elect to fulfill their reporting obligations under this Paragraph 46 by submitting the required information in a single joint report to the Department of Justice and California.

47.  Defendants may assert that information submitted under this Consent Decree is protected as Confidential Business Information as set out in Cal. Code Regs. tit. 17, §§ 91000 to 91022.

48.  <u>Reporting of Violations</u>.

a.   If the Volkswagen Parties or the Porsche Parties reasonably believe they have violated, or that they may violate, any requirement of this Consent Decree, such Defendants shall notify California of such violation and its likely duration, in a written report submitted within 14 business Days after the Day such Defendants first reasonably believe that a violation has occurred or may occur, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or

34

minimize such violation.  If the Volkswagen Parties or the Porsche Parties believe the cause of a violation cannot be fully explained at the time the report is due, such Defendants shall so state in the report.  The Volkswagen Parties or the Porsche Parties, as applicable, shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days after the Day on which such Defendants reasonably believe they have determined the cause of the violation.  Nothing in this Paragraph 48.a or the following Paragraph relieves Defendants of their obligation to provide the notice required by Section IX (Force Majeure).

        b.     <u>Semi-Annual Report of Violations</u>.  On January 31 and July 31 of each year, the Volkswagen Parties and Porsche Parties shall each submit a summary to California of any violations of this Consent Decree that occurred during the preceding six months (or potentially shorter period for the first semi-annual report), and that are required to be reported pursuant to Paragraph 48.a, including the date of the violation, the date the notice of violation was sent, and a brief description of the violation.

49.  Whenever the Volkswagen Parties or the Porsche Parties reasonably believe that any violation of this Consent Decree or any other event affecting the Volkswagen Parties' or the Porsche Parties' performance under this Consent Decree may pose an immediate threat to the public health or welfare or the environment, such Defendants shall notify California by email as soon as practicable, but no later than 24 hours after such Defendants first reasonably believe the violation or event has occurred. This procedure is in addition to the requirements set forth in Paragraph 48.

50.  All reports required to be posted to a public website by this Consent Decree shall be accessible on the public website www.VWCourtSettlement.com, used by Defendants pursuant to the First Partial Consent Decree, and a link to such website shall be displayed on www.vw.com, www.audiusa.com, and www.porsche.com.

51.  Each report to be certified pursuant to this Paragraph 51 shall be signed by an officer or director of the Volkswagen Parties or the Porsche Parties, as appropriate, and shall

35

include the following sworn certification:

> I certify under penalty of perjury under the laws of the State of California that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, correct, and complete.  I have no personal knowledge, information or belief that the information submitted is other than true, correct, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

52.  The certification requirement in Paragraph 51 does not apply to emergency or similar notifications where compliance would be impractical.

53.  The reporting requirements of this Consent Decree do not relieve Defendants of any reporting obligations required by any other federal, state, or local law, regulation, permit, or other requirement.

54.  Any information provided pursuant to this Consent Decree may be used by California in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## IX.     FORCE MAJEURE

55.  "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendants, of any entity controlled by Defendants, or of Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendants' best efforts to fulfill the obligation.  The requirement that Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring, and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized.  "Force majeure" does not include Defendants' financial inability to perform any obligation under this Consent Decree.

56.  If any event occurs or has occurred that may delay the performance of any

36

1   obligation under this Consent Decree, for which Defendants intend or may intend to assert a

2   claim of force majeure, whether or not caused by a force majeure event, Defendants shall provide

3   notice by email to California, within 7 Days of when Defendants first knew that the event might

4   cause a delay.  Within 14 Days thereafter, Defendants shall provide in writing to California an

5   explanation and description of the reasons for the delay; the anticipated duration of the delay; all

6   actions taken or to be taken to prevent or minimize the delay or the effect of the delay; a schedule

7   for implementation of any such measures; Defendants' rationale for attributing such delay to a

8   force majeure event if it intends to assert such a claim; and a statement as to whether, in the

9   opinion of Defendants, such event may cause or contribute to an endangerment to public health,

10  welfare, or the environment.  Defendants shall include with any notice all available

11  documentation supporting the claim that the delay was attributable to a force majeure event.

12  Failure to comply with the above requirements shall preclude Defendants from asserting any

13  claim of force majeure for that event for the period of time of such failure to comply, and for any

14  additional delay caused by such failure.  The Volkswagen Parties shall be deemed to know of any

15  circumstance of which the Volkswagen Parties or the Porsche Parties, any entity controlled by the

16  Volkswagen Parties or the Porsche Parties, or their respective contractors knew or should have

17  known.  The Porsche Parties shall be deemed to know of any circumstance of which the Porsche

18  Parties, any entity controlled by the Porsche Parties, or the Porsche Parties' contractors knew or

19  should have known.

20          57.  If California agrees that the delay or anticipated delay is attributable to a force

21  majeure event, the time for performance of the obligations under this Consent Decree that are

22  affected by the force majeure event will be extended by California for such time as is necessary to

23  complete those obligations.  An extension of the time for performance of the obligations affected

24  by the force majeure event shall not, of itself, extend the time for performance of any other

25  obligation.  California will notify Defendants in writing of the length of the extension, if any, for

26  performance of the obligations affected by the force majeure event.

27          58.  If California does not agree that the delay or anticipated delay has been or will be

28  caused by a force majeure event, California will notify Defendants in writing of its decision.

37

59.  If any Defendants elect to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution), they shall do so no later than 15 Days after receipt of the notice from California.  In any such proceeding, those Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendants complied with the requirements of Paragraphs 55 and 56.  If those Defendants carry this burden, the delay at issue shall be deemed not to be a violation by those Defendants of the affected obligation of this Consent Decree identified to California and the Court.

## X.      DISPUTE RESOLUTION

60.  The dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  Failure by the Volkswagen Defendants or the Porsche Defendants to seek resolution of a dispute under this Section shall preclude such Defendants from raising any such issue as a defense to an action by California to enforce any obligation of Defendants arising under this Decree.

61.  Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendants send California by mail a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 30 Days after the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by California shall be considered binding unless, within 30 Days after the conclusion of the informal negotiation period, Defendants invoke formal dispute resolution procedures as set forth below.

62.  Formal Dispute Resolution.  Defendants shall invoke formal dispute resolution procedures, within the time period provided in Paragraph 61, by serving on California a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include,

38

but need not be limited to, any factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendants.

63.   California will serve a Statement of Position within 45 Days after receipt of Defendants' Statement of Position.  The Statement of Position served by California will include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by California.  The Statement of Position served by California shall be binding on Defendants, unless Defendants file a motion for judicial review of the dispute in accordance with Paragraph 64.

64.   Defendants may seek judicial review of the dispute by filing with the Court and serving on California, in accordance with Section XIV (Notices), a motion requesting judicial resolution of the dispute.  The motion must be filed within 10 Days after receipt of the Statement of Position from California pursuant to the preceding Paragraph.  The motion shall contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

65.   California will respond to Defendants' motion within the time period allowed by the Local Rules of this Court.  Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

66.   <u>Standard of Review for Judicial Disputes</u>

a.      <u>Disputes Concerning Matters Accorded Record Review</u>.  Except as otherwise provided in this Consent Decree, in CARB's review of the plans submitted under Paragraphs 14 or 33 (PEMS Testing by the Volkswagen Parties or Porsche Parties, respectively) and in any disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendants shall have the burden of demonstrating, based on the administrative record, that the position of CARB is arbitrary and capricious or otherwise not in accordance with law.  Prior to the filing of any motion, the Parties may submit additional Materials to be part of the

39

1    administrative record pursuant to applicable principles of administrative law.

2                  b.      Other Disputes.  Except as otherwise provided in this Consent

3    Decree, in any other dispute brought pursuant to Paragraph 64, Defendants shall bear

4    the burden of demonstrating by a preponderance of the evidence that their actions were

5    in compliance with this Consent Decree.

6        67.  In any disputes brought under this Section X, it is hereby expressly acknowledged

7    and agreed that this Consent Decree was jointly drafted in good faith by California and

8    Defendants.  Accordingly, the Parties hereby agree that any and all rules of construction to the

9    effect that ambiguity is construed against the drafting party shall be inapplicable in any dispute

10   concerning the terms, meaning, or interpretation of this Consent Decree.

11       68.  The invocation of dispute resolution procedures under this Section X shall not, by

12   itself, extend, postpone, or affect in any way any obligation of Defendants under this Consent

13   Decree, unless and until final resolution of the dispute so provides.

14            **XI.        INFORMATION COLLECTION AND RETENTION**

15       69.  CARB and the California Attorney General and their representatives, including

16   attorneys, contractors, and consultants, shall have the right of entry, upon presentation of

17   credentials, at all reasonable times into any of Defendants' offices, plants, or facilities:

18                  a.      to monitor the progress of activities required under this Consent

19   Decree;

20                  b.      to verify any data or information submitted to the California in

21   accordance with the terms of this Consent Decree;

22                  c.      to inspect records related to this Consent Decree;

23                  d.      to conduct testing related to this Consent Decree;

24                  e.      to obtain documentary evidence, including photographs and similar

25   data, related to this Consent Decree;

26                  f.      to assess Defendants' compliance with this Consent Decree; and

27                  g.      for other purposes as set forth in Cal. Gov't Code § 11180.

28       70.  Until three years after the termination of this Consent Decree, Defendants shall

                                            40

1   retain, and shall instruct their contractors, agents, and auditors to preserve all non-identical copies

2   of all documents, records, reports, or other information (including documents, records, or other

3   information in electronic form) (hereinafter referred to as "Records") in their or their contractors',

4   agents', or auditors' possession or control, or that come into their or their contractors', agents', or

5   auditors' possession or control, relating to Defendants' performance of their obligations under

6   this Consent Decree.  This information-retention requirement shall apply regardless of any

7   contrary corporate or institutional policies or procedures.  At any time during this information-

8   retention period, upon request by California, Defendants shall provide copies of any Records

9   required to be maintained under this Paragraph 70, notwithstanding any limitation or requirement

10  imposed by foreign laws.  Nothing in this Paragraph 70 shall apply to any documents in the

11  possession, custody, or control of any outside legal counsel retained by Defendants in connection

12  with this Consent Decree or of any contractors or agents retained by such outside legal counsel

13  solely to assist in the legal representation of Defendants.  Defendants may assert that certain

14  Records are privileged or protected as provided under California law.  If Defendants assert such a

15  privilege or protection, they shall provide the following: (a) the title of the Record; (b) the date of

16  the Record; (c) the name and title of each author of the Record; (d) the name and title of each

17  addressee and recipient; (e) a description of the subject of the Record; and (f) the privilege or

18  protection asserted by Defendants.  However, Defendants may make no claim of privilege or

19  protection regarding the portion of any Record that Defendants are required to create or generate

20  pursuant to this Consent Decree.

21        71.    At the conclusion of the information-retention period provided in the preceding

22  Paragraph, the Volkswagen Parties and the Porsche Parties shall notify California at least 90 Days

23  prior to the destruction of any Records subject to the requirements of the preceding Paragraph

24  and, upon request by California, such Defendants shall deliver any such Records to California.

25  Defendants may assert that certain Records are privileged or protected as provided under

26  California law.  If Defendants assert such a privilege or protection, they shall provide the

27  following: (a) the title of the Record; (b) the date of the Record; (c) the name and title of each

28  author of the Record; (d) the name and title of each addressee and recipient; (e) a description of

1    the subject of the Record; and (f) the privilege or protection asserted by Defendants.  However,

2    Defendants may make no claim of privilege or protection regarding the portion of any Record that

3    Defendants are required to create or generate pursuant to this Consent Decree.

4           72.  Defendants may also assert that information required to be provided under this

5    Section XI is protected as CBI as defined in Paragraph 47.  As to any information that Defendants

6    seek to protect as CBI, Defendants shall follow the procedures set forth in Cal. Code Regs. tit. 17,

7    §§ 91000 to 91022.

8           73.  This Consent Decree in no way limits or affects any right of entry and inspection,

9    or any right to obtain information, held by CARB or the California Attorney General pursuant to

10   applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or

11   obligation of Defendants to maintain documents, records, or other information imposed by

12   applicable federal or state laws, regulations, or permits.

13          **XII.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS**

14          74.  This Third California Partial Consent Decree shall release, resolve and settle

15   California's civil claims against Defendants, their respective direct or indirect parents and

16   subsidiaries, and any of their respective direct or indirect parents' or subsidiaries' present or

17   former directors, officers, employees, and dealers ("Released Parties") related to: (1) any conduct

18   described in the California Complaint, underlying claims that California made or could have

19   made against Defendants; (2) any conduct related to the emissions, or compliance with U.S.

20   emissions standards, of the 2.0L and 3.0L Subject Vehicles; and (3) any conduct related to the

21   Subject Vehicles and disclosed by or on behalf of the Defendants to, or otherwise known to,

22   California as of the date of this Agreement for the following relief:

23                  a.      for civil penalties, fines, restitution or other monetary payments

24          with respect to the 2.0 and 3.0 Liter Subject Vehicles, but only to the extent not

25          previously resolved in the First California Partial Consent Decree;

26                  b.      for costs and attorneys' fees related to the investigation and

27          litigation related to the 2.0 and 3.0 Liter Subject Vehicles, as well as for costs incurred

28          in connection with Defendants' actions to fulfill the requirements of the First Partial

                                                    42

1    Consent Decree, Second Partial Consent Decree, First California Partial Consent

2    Decree, Second California Partial Consent Decree, and this Consent Decree as to the 2.0

3    and 3.0 Liter Vehicles; and

4              c.      for injunctive relief that is intended to enjoin, prevent, and deter

5         future violations of the Health and Safety Code and related regulations of the types

6         alleged in the California Complaint related to the 2.0 and 3.0 Liter Subject Vehicles.

7         75.   California releases claims against Released Parties for relief to consumers,

8    including claims for restitution, refunds, rescission, damages, and disgorgement, arising from the

9    conduct alleged in the California Complaint related to the 3.0 Liter Subject Vehicles.  In

10   exchange for this release of claims for relief to consumers, Settling Defendants shall provide the

11   relief to consumers that is provided for in the Second Partial Consent Decree, as well as the relief

12   to consumers that is provided for in the following documents filed in this MDL: (1) a consumer

13   class action settlement concerning 3.0 Liter Subject Diesel Vehicles to be filed by the Plaintiffs'

14   Steering Committee ("3L Consumer Class Action Settlement") and (2) a proposed partial

15   stipulated order by the Federal Trade Commission ("3L FTC Order").  This paragraph does not

16   release any claims of individual consumers.

17        76.   To the extent that any claims released herein are duplicative of claims to be

18   released, settled, or resolved by California under the Second Partial Consent Decree or Second

19   California Partial Consent Decree, such claims are not released unless or until the Court approves

20   and enters the Second Partial Consent Decree and Second California Partial Consent Decree.

21        77.   California reserves, and this Consent Decree is without prejudice to, all claims,

22   rights, and remedies against Defendants with respect to all matters not expressly resolved in

23   Paragraphs 74 through 75.  Notwithstanding any other provision of this Consent Decree,

24   California reserves all claims, rights, and remedies against Defendants with respect to:

25             a.      All rights reserved under the First Partial Consent Decree, Second

26        Partial Consent Decree, First California Partial Consent Decree, and Second California

27        Partial Consent Decree, except as provided under this Consent Decree, including in

28        Paragraphs 74 through 75 of this Consent Decree;

43

b.      Any and all civil claims related to any vehicle other than the 2.0 and 3.0 Liter Subject Vehicles;

c.      Any criminal liability;

d.      Any claims for the violation of securities laws; and

e.      Any other claim(s) of any officer or agency of the State of California, other than CARB or the California Attorney General.

78.  Except as expressly set forth herein, this Consent Decree, including the releases set forth in Paragraphs 74 and 75, does not modify, abrogate, or otherwise limit the injunctive and other relief to be provided by Defendants under, nor any obligation of any party or person under, the First Partial Consent Decree, the First California Partial Consent Decree, the Second Partial Consent Decree, or the Second California Partial Consent Decree.

79.  By entering into this Consent Decree, California is not enforcing the laws of other countries, including the emissions laws or regulations of any jurisdiction outside the United States.  Nothing in this Consent Decree is intended to apply to, or affect, Volkswagen's or Porsche's obligations under the laws or regulations of any jurisdiction outside the United States. At the same time, the laws and regulations of other countries shall not affect Volkswagen's or Porsche's obligations under this Consent Decree.

80.  This Consent Decree shall not be construed to limit the rights of California to obtain penalties or injunctive relief, except as specifically provided in this Consent Decree, including in Paragraphs 74 through 75.  California further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at any of Volkswagen's or Porsche's facilities, or posed by Defendants' 2.0 and 3.0 Liter Subject Vehicles, whether related to the violations addressed in this Consent Decree or otherwise.

81.  In any subsequent judicial proceeding initiated by California for injunctive relief, civil penalties, or other relief, Volkswagen and Porsche shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the

44

1    claims raised by California in the subsequent proceeding were or should have been brought in the

2    instant case, except with respect to the claims that have been specifically released pursuant to

3    Paragraphs 74 through 75.

4             82.   This Consent Decree is not a permit, or a modification of any permit, under any

5    federal, State, or local laws or regulations.  Volkswagen and Porsche are each responsible for

6    achieving and maintaining complete compliance with all applicable federal, State, and local laws,

7    regulations, and permits; and Volkswagen's or Porsche's compliance with this Consent Decree

8    shall be no defense to any action commenced pursuant to any such laws, regulations, or permits,

9    except as set forth herein.  California does not, by its consent to the entry of this Consent Decree,

10   warrant or aver in any manner that Volkswagen's or Porsche's compliance with any aspect of this

11   Consent Decree will result in compliance with provisions of the Clean Air Act, or with any other

12   provisions of United States, State, or local laws, regulations, or permits.

13            83.   Nothing in this Consent Decree releases any private rights of action asserted by

14   entities or persons not releasing claims under this Consent Decree, nor does this Consent Decree

15   limit any defense available to Volkswagen or Porsche in any such action.

16            84.   This Consent Decree does not limit or affect the rights of Volkswagen or Porsche

17   or of California against any third parties, not party to this Consent Decree, nor does it limit the

18   rights of third parties, not party to this Consent Decree, against Volkswagen or Porsche, except as

19   otherwise provided by law.

20            85.   Except for persons or entities released under Paragraphs 74 and 75, this Consent

21   Decree shall not be construed to create rights in, or grant any cause of action to, any third party

22   not party to this Consent Decree.  Except for persons or entities released under Paragraphs 74 and

23   75, no third party shall be entitled to enforce any aspect of this Consent Decree or claim any legal

24   or equitable injury for a violation of this Consent Decree.

25            86.   Nothing in this Consent Decree shall be construed as a waiver or limitation of any

26   defense or cause of action otherwise available to Volkswagen or Porsche in any action.  This

27   Agreement is made without trial or adjudication of any issue of fact or law or finding of liability

28   of any kind.

## XIII.   COSTS

87.   Apart from the cost reimbursement payments required by this Consent Decree in Paragraph 10, the Parties shall bear their own costs of this Consent Decree, including attorneys' fees, except that California shall be entitled to collect the costs and reasonable attorneys' fees incurred in any action necessary to collect any portion of the civil penalty or cost reimbursement payments due under this Consent Decree but not paid by Defendants.

## XIV.   NOTICES

88.   Except as specified elsewhere in this Consent Decree, whenever any Materials or Submissions are required to be submitted pursuant to this Consent Decree, whenever any notification or other communication is required by this Consent Decree, or whenever any communication is required in any action or proceeding related to or bearing upon this Consent Decree or the rights or obligations thereunder, it shall be made in writing (except that if any attachment is voluminous, it shall be provided on a disk, hard drive, or other equivalent successor technology), and shall be addressed as follows:

As to the California Attorney General:    Senior Assistant Attorney General
Consumer Law Section
California Department of Justice
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004

Senior Assistant Attorney General
Natural Resources Law Section
California Department of Justice
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004

As to the California Air Resources Board:    Chief Counsel
California Air Resources Board
1001 "I" Street
Sacramento, CA 95814

As to Volkswagen AG:    Volkswagen AG
Berliner Ring 2
38440 Wolfsburg, Germany
Attention:  Company Secretary

With copies to each of the following:

Volkswagen AG

46

1
2

Berliner Ring 2
38440 Wolfsburg, Germany
Attention:  Group General Counsel

3
4
5

Volkswagen Group of
America, Inc.
2200 Ferdinand Porsche Dr.
Herndon, VA 20171
Attention:  U.S. General Counsel

6
7
8

As to Audi AG:

Audi AG
Auto-Union-Straße 1
85045 Ingolstadt, Germany
Attention:  Company Secretary

9

With copies to each of the following:

10
11
12

Volkswagen AG
Berliner Ring 2
38440 Wolfsburg, Germany
Attention:  Group General Counsel

13
14
15

Volkswagen Group of
America, Inc.
2200 Ferdinand Porsche Dr.
Herndon, VA 20171
Attention:  U.S. General Counsel

16
17
18

As to Volkswagen Group of
America, Inc.:

Volkswagen Group of
America, Inc.
2200 Ferdinand Porsche Dr.
Herndon, VA 20171
Attention:  Company Secretary

19

With copies to each of the following:

20
21
22

Volkswagen Group of
America, Inc.
2200 Ferdinand Porsche Dr.
Herndon, VA 20171
Attention:  President

23
24
25

Volkswagen Group of
America, Inc.
2200 Ferdinand Porsche Dr.
Herndon, VA 20171
Attention:  U.S. General Counsel

26
27
28

As to Volkswagen Group of America
Chattanooga Operations LLC:

Volkswagen Group of America
Chattanooga Operations LLC
8001 Volkswagen Dr.

47

1

Chattanooga, TN 37416
Attention:  Company Secretary

2

With copies to each of the following:

3

4

Volkswagen Group of
America, Inc.
2200 Ferdinand Porsche Dr.

5

Herndon, VA 20171
Attention:  President

6

7

Volkswagen Group of
America, Inc.
2200 Ferdinand Porsche Dr.

8

Herndon, VA 20171
Attention:  U.S. General Counsel

9

10

As to Dr. Ing. h.c. F. Porsche AG:

Dr.Ing.h.c. F. Porsche Aktiengesellschaft
Porscheplatz 1, D-70435 Stuttgart

11

Attention:
GR/ Rechtsabteilung/ General Counsel

12

13

As to Porsche Cars North America, Inc.:

Porsche Cars North America, Inc.
1 Porsche Dr.

14

Atlanta, GA   30354
Attention:  Secretary

15

With copy by email to offsecy@porsche.us

16

As to one or more of the Volkswagen
Parties by email:

Robert J. Giuffra, Jr.

17

Sharon L. Nelles
giuffrar@sullcrom.com

18

nelless@sullcrom.com

19

As to one or more of the
Defendants by mail:

Robert J. Giuffra, Jr.

20

Sharon L. Nelles
Sullivan & Cromwell LLP

21

125 Broad Street
New York, New York 10004

22

23

24

25

26

27

28

48

As to one or more of the Porsche
Parties by email:                          Granta Y. Nakayama
                                           Joseph A. Eisert
                                           gnakayama@kslaw.com
                                           jeisert@kslaw.com

As to one or more of the Porsche
Parties by mail:                           Granta Y. Nakayama
                                           Joseph A. Eisert
                                           King & Spalding LLP
                                           1700 Pennsylvania Ave., N.W., Suite 200
                                           Washington, DC 20006

89.  Any party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

90.  Communications submitted pursuant to this Section XIV shall be deemed submitted upon (1) mailing or emailing as required and where Defendants have a choice, or (2) where both email and mail are required, when both methods have been accomplished, except as provided elsewhere in this Consent Decree or by mutual agreement of the Parties in writing.

91.  The Parties anticipate that a non-public secure web-based electronic portal may be developed in the future for submissions of Materials.  The Parties may agree in the future to use such a portal, or any other means, for submission of Materials.  Any such agreement shall be approved as a non-material modification to this Consent Decree in accordance with Section XVII.

## XV.    EFFECTIVE DATE

92.  The Effective Date of this Consent Decree shall be deemed to be the Effective Date of the US Third Partial Consent Decree.  If the Effective Date of the US Third Partial Consent Decree occurs before the Entry Date of this Consent Decree, the Parties shall have no obligations under this Consent Decree until its Entry Date.

## XVI.    RETENTION OF JURISDICTION

93.  The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Consent Decree or entering orders modifying this Consent Decree, pursuant to Sections X (Dispute Resolution) and XVII (Modification), or effectuating or enforcing compliance with the terms of this Consent Decree.

## XVII.    MODIFICATION

94.   Except as otherwise provided herein, the terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Consent Decree, it shall be effective only upon approval by the Court.

95.   California will file any non-material modifications with the Court.  Once the non-material modification has been filed, Defendants shall post the filed version (with ECF stamp) on the website required by Paragraph 50.

96.    Any disputes concerning modification of this Decree shall be resolved pursuant to Section X (Dispute Resolution), provided, however, that instead of the burden of proof provided by Paragraph 66, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure § 60(b).

## XVIII.    TERMINATION

97.   After Volkswagen has paid the civil penalty and cost reimbursement required in Section IV (Monetary Terms), and the Volkswagen Parties have implemented the requirements of Section V (Injunctive Relief for the Volkswagen Parties) and Section VIII (Reporting and Certification Requirements), but in any event no later than four years after the Effective Date, the Volkswagen Parties may serve upon California a Request for Termination.  The Request for Termination will state that the Volkswagen Parties have satisfied those requirements and be submitted with all necessary supporting documentation.

98.   After Volkswagen has paid the civil penalty and cost reimbursement required in Section IV (Monetary Terms), and the Porsche Defendants have implemented the requirements of Section VI (Injunctive Relief for the Porsche Parties) and Section VIII (Reporting and Certification Requirements), but in any event no later than four years after the Effective Date, the Porsche Parties may serve upon California a Request for Termination.  The Request for Termination will state that the Porsche Parties have satisfied those requirements and be submitted

50

1   with all necessary supporting documentation.

2          99.   Following receipt by California of the Volkswagen Parties' or the Porsche

3   Parties' Request for Termination, the Parties shall confer informally concerning the Request and

4   any disagreement that the Parties may have as to whether such Defendants have satisfactorily

5   complied with the requirements for termination of this Consent Decree.  If California agrees that

6   the Consent Decree may be terminated, California will file a motion to terminate the Consent

7   Decree.

8          100. If California does not agree that the Decree may be terminated, such Defendants

9   may invoke Dispute Resolution under Section X.  However, such Defendants shall not seek

10  Dispute Resolution of any dispute regarding termination until 90 Days after service of their

11  Request for Termination.

12                    **XIX.    SIGNATORIES/SERVICE**

13         101. Each undersigned representative of Volkswagen, Porsche, and California certifies

14  that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and

15  to execute and legally bind the Party he or she represents to this document.  The California

16  Attorney General and CARB represent that they have the authority to execute this Consent

17  Decree on behalf of California and that, upon entry, this Consent Decree is a binding obligation

18  enforceable against California under applicable law.

19         102. This Consent Decree may be signed in counterparts, and its validity shall not be

20  challenged on that basis.  For purposes of this Consent Decree, a signature page that is

21  transmitted electronically (*e.g.*, by facsimile or e-mailed "PDF") shall have the same effect as an

22  original.

23                         **XX.    INTEGRATION**

24         103. This Consent Decree constitutes the final, complete, and exclusive agreement and

25  understanding among the Parties with respect to the settlement embodied in this Consent Decree

26  and supersedes all prior agreements and understandings, whether oral or written, concerning the

27  settlement embodied herein, with the exception of the First Partial Consent Decree, Second

28  Partial Consent Decree, US Third Partial Consent Decree, First California Partial Consent Decree,

51

and Second California Partial Consent Decree.  Other than deliverables that are subsequently submitted and approved pursuant to this Consent Decree, the Parties acknowledge that there are no documents, representations, inducements, agreements, understandings or promises that constitute any part of this Consent Decree or the settlement it represents other than those expressly contained or referenced in this Consent Decree.

## XXI.   **FINAL JUDGMENT**

104. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to California and the Defendants.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

Dated and entered this 21st day of July, 2017

_____
CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

52

1   FOR THE PEOPLE OF THE STATE OF CALIFORNIA, acting by and through XAVIER
2   BECERRA, ATTORNEY GENERAL OF THE STATE OF CALIFORNIA, and the
    CALIFORNIA AIR RESOURCE BOARD:

3

4                                                 XAVIER BECERRA
                                                  Attorney General of California
5                                                 NICKLAS A. AKERS
                                                  ROBERT W. BYRNE
6                                                 SALLY MAGNANI
                                                  Senior Assistant Attorneys General
7                                                 JUDITH A. FIORENTINI
                                                  GAVIN G. MCCABE
8                                                 DAVID A. ZONANA
                                                  Supervising Deputy Attorneys General
9                                                 AMOS E. HARTSTON
                                                  JOHN S. SASAKI
10                                                WILLIAM R. PLETCHER
                                                  JON F. WORM
11                                                ELIZABETH B. RUMSEY
                                                  LAUREL M. CARNES
12  Dated: _June 23_, 2017                        Deputy Attorneys General

13

14

15                                                NICKLAS A. AKERS
                                                  Senior Assistant Attorney General
16                                                *Attorneys for the*
                                                  *People of the State of California*

17

18

19

20

21

22

23

24

25

26

27

28

3:16-CV-03620                                    THIRD CALIFORNIA PARTIAL CONSENT DECREE

1   FOR THE CALIFORNIA AIR RESOURCES BOARD:

2

3   Dated: ___6 / 23___, 2017

MARY D. NICHOLS
4                                              Chair
California Air Resources Board

5

6

7                                              RICHARD W. COREY
Executive Officer
8                                              California Air Resources Board

9

10

11                                             ELLEN M. PETER
Chief Counsel
D. ARON LIVINGSTON
12                                             Assistant Chief Counsel
DIANE KIYOTA
13                                             ALEXANDRA KAMEL
Attorneys
14                                             Legal Office
California Air Resources Board

15

16

17

18

19

20

21

22

23

24

25

26

27

28

54

1   FOR VOLKSWAGEN AG:

2

3

4   Dated: _June, 26th_, 2017

5                                          MANFRED DOESS
                                           VOLKSWAGEN AG
6                                          P.O. Box 1849
                                           D-38436 Wolfsburg, Germany
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

55

1    FOR AUDI AG:

2

3

4    Dated: _June 28_, 2017

5                                BERND MARTENS

                                     AUDI AG

6                                Auto-Union-Straße 1

                               85045 Ingolstadt, Germany

7

8

9

10                                MARTIN WAGENER

                               AUDI AG

11                                Auto-Union-Straße 1

12                                85045 Ingolstadt, Germany

13    Dated: _06 / 26_, 2017

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3:16-CV-03620                                THIRD CALIFORNIA PARTIAL CONSENT DECREE

1    FOR VOLKSWAGEN GROUP OF AMERICA, INC.:

2

3

4                                        _____
                                         DAVID DETWEILER
5    Dated: _June 28_, 2017              VOLKSWAGEN GROUP OF AMERICA,
                                         INC.
6                                        2200 Ferdinand Porsche Drive
                                         Herndon, Virginia 20171
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3:16-CV-03620                                    THIRD CALIFORNIA PARTIAL CONSENT DECREE

1

2   FOR VOLKSWAGEN GROUP OF AMERICA CHATTANOOGA OPERATIONS LLC:

3

4

5   Dated: _June 28_ , 2017

6   DAVID DETWEILER
   VOLKSWAGEN GROUP OF AMERICA, INC.

7   2200 Ferdinand Porsche Drive
   Herndon, Virginia 20171

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3:16-CV-03620             THIRD CALIFORNIA PARTIAL CONSENT DECREE

COUNSEL FOR VOLKSWAGEN AG; AUDI AG; VOLKSWAGEN GROUP OF AMERICA, INC.; And VOLKSWAGEN GROUP OF AMERICA CHATTANOOGA OPERATIONS LLC:

Dated: <u>June 28</u>, 2017

_____
ROBERT J. GIUFFRA, JR.
SHARON L. NELLES
DAVID M.J. REIN
Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

*Attorneys for Volkswagen AG; Audi AG, Volkswagen Group of America, Inc.; and Volkswagen Group of America Chattanooga Operations LLC*

59

1   FOR DR. ING. h.c. F. PORSCHE AG:

2

3

4   Dated: 27. June        , 2017

5                                          DR. MICHAEL STEINER
                                           Member of the Executive Board –
6                                          Research and Development
                                           DR. ING. h.c. F. PORSCHE AG
7                                          AKTIENGESELLSCHAFT
                                           Porschestrasse 911
                                           71287 Weissach, Germany
8

9

10  Dated: _____, 2017

11                                         ANGELA KREITZ
                                           General Counsel
12                                         Chief Compliance Officer
                                           DR. ING. h.c. F. PORSCHE AG
13                                         ATKIENGESELLSCHAFT
                                           Porscheplatz 1
14                                         70435 Stuttgart-Zuffenhausen, Germany

15

16

17

18

19

20

21

22

23

24

25

26

27

28

60

1   FOR DR. ING. h.c. F. PORSCHE AG:

2

3

4   Dated: _____, 2017

5                                                    _____
                                                     DR. MICHAEL STEINER
                                                     Member of the Executive Board –
6                                                    Research and Development
                                                     DR. ING. h.c. F. PORSCHE AG
7                                                    AKTIENGESELLSCHAFT
                                                     Porschestrasse 911
8                                                    71287 Weissach, Germany

9

10  Dated: 27 June, 2017                             ppa. Angela Kreitz
                                                     _____
11                                                   ANGELA KREITZ
                                                     General Counsel
12                                                   Chief Compliance Officer
                                                     DR. ING. h.c. F. PORSCHE AG
13                                                   ATKIENGESELLSCHAFT
                                                     Porscheplatz 1
14                                                   70435 Stuttgart-Zuffenhausen, Germany

15

16

17

18

19

20

21

22

23

24

25

26

27

28

60

1    FOR PORSCHE CARS NORTH AMERICA, INC.:

2

3

4    Dated: _____6/26_____, 2017

5                                          TIMOTHY L. QUINN
                                           Vice President, After Sales
6                                          PORSCHE CARS NORTH AMERICA,
                                           INC.
7                                          1 Porsche Dr.
                                           Atlanta, GA 30354
8

9    Dated: _____June 23_____, 2017

10                                         JOSEPH S. FOLZ
                                           Vice President, General Counsel and
11                                         Secretary
                                           PORSCHE CARS NORTH AMERICA,
12                                         INC.
                                           1 Porsche Dr.
13                                         Atlanta, GA 30354

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3:16-CV-03620                              THIRD CALIFORNIA PARTIAL CONSENT DECREE

COUNSEL FOR DR. ING. h.c. F. PORSCHE AG and PORSCHE CARS NORTH AMERICA, INC.:

Dated: _June 26_, 2017

GRANTA Y. NAKAYAMA
JOSEPH A. EISERT
King & Spalding LLP
1700 Pennsylvania Ave., N.W., Suite 200
Washington, DC 20006
Telephone: (202) 737-0500
gnakayama@kslaw.com
jeisert@kslaw.com

62