CHARLES MILLER, ESQ./SBN: 276523
MICHAEL E. HEYGOOD, ESQ.
**HEYGOOD, ORR & PEARSON**
6363 North State Highway 161
Suite 450
Irving, Texas 75038
Telephone: (214) 237-9001
Facsimile: (214) 237-9002

**Attorneys for Plaintiffs**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No. 3:15-md-02672-CRB |

| | | |
|---|---|---|
| This Document Relates to: | ) | Case No. 3:17-cv-05153 |
| | ) | |
| MARK AZAM et al. | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN ORDER REMANDING THIS CASE TO TEXAS STATE COURT** |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | The Honorable Charles Breyer |
| vs. | ) | |
| | ) | Date: |
| | ) | Time: |
| VOLKWAGEN GROUP OF AMERICA, INC. et al. | ) | |
| | ) | Complaint Filed: October 14, 2015 |
| | ) | |
| Defendants | ) | |

# **TABLE OF CONTENTS**

SUMMARY OF THE ARGUMENT ................................................................................ 1

FACTUAL BACKGROUND ........................................................................................ 4

    I.     The procedural history of the instant lawsuit. ................................................ 4

    II.    At the time Plaintiffs commenced this lawsuit, Defendants were publicly stating that the fraudulent scheme was the result of a couple of rogue engineers and not a corporate decision. ............................................................................................................ 5

    III.   In light of what was known at the time, Plaintiffs filed suit against only Volkswagen of America, bringing only a single claim under the DTPA and limiting their relief to less than $75,000. ......................................................................................................... 7

    IV.   More than a year after the commencement of this lawsuit, it became public that the scheme went to the highest corporate levels of Volkswagen of America's parent company, Volkswagen AG, and that Volkswagen AG itself was criminally liable for its conduct. ...................................................................................................... 7

    V.    After Volkswagen AG's criminal guilty plea, which occurred more than a year after the commencement of this lawsuit, Plaintiffs made the decision to expand their lawsuit to include Volkswagen AG as a defendant and to add a claim for fraud. ............................. 9

    VI.   In addition to expanding the claims and defendants, the amended petition is part of a comprehensive plan to consolidate and make more efficient ongoing litigation in Texas. 9

ARGUMENT ........................................................................................................... 12

    I.     This Court should remand this case because there is no diversity of jurisdiction. ........ 12

    II.    Volkswagen of America has the burden of establishing jurisdiction and the "bad faith" exception for removing after more than one year is exceptionally narrow. .................... 13

    II.    Defendants cannot satisfy their heavy burden of showing bad faith because Plaintiffs amended their petition to seek more in damages in light of new information that showed their claims to be more valuable. ..................................................................... 14

CONCLUSION ....................................................................................................... 17

CERTIFICATE OF SERVICE ................................................................................... 18

i

# **TABLE OF AUTHORITIES**

**Cases**

*Asante v. Ocwen Loan Servicing, LLC,*
 CV16-8281, 2017 WL 111298 at *3 (C.D. Cal. Jan. 11, 2017) ............................... 13

*BNSF Ry Co. v. Tyrell*,
 137 S. Ct. 1549 (May 30, 2017)..................................................................... 10, 12

*Bristol Meyers Squibb Co. v. Superior Court of California*,
 137 S. Ct. 1773 (June 19, 2017)..................................................................... 10, 12

*Bryson v. Wells Fargo Bank, N.A.,*
 No. 16-28, 2016 WL 1305846 at *4 (E.D. Tex. Mar. 31, 2016) ............................... 14

*Escalante v. Burlington Nat. Indemn., Ltd.,*
 No. 2:14-CV-7237, 2014 WL 6670002 at *3 (C.D. Cal. Nov. 24, 2014)....................... 14

*Gaus v. Miles, Inc.,*
 980 F.2d 564, 566 (9th Cir.1992) ................................................................... 13

*Hamilton San Diego Apartments, LP v. RBC Capital Markets, LLC,*
 14CV01856 WQH BLM, 2014 WL 7175598, at *3 (S.D. Cal. Dec. 11, 2014)............... 15

*Heller v. Am. States Ins. Co.,*
 CV-159771, 2016 WL 1170891 at *3 (C.D. Cal. March 25, 2016) ............................ 15

*Hill v. Allianz Life Ins. Co. of N. Am.,*
 51 F. Supp. 3d 1277, 1282 (M.D. Fla. 2014)..................................................... 15

*Luther v. Countrywide Homes Loans Servicing, LP,*
 533 F.3d 1031, 1034 (9th Cir.2008) ................................................................. 13

*Markham v. Home Depot USA, Inc.,*
 CV 13-8431-GHK JCGX, 2014 WL 117102, at *1 (C.D. Cal. Jan. 10, 2014) ............... 14

*Miami Beach Cosmetic & Plastic Surgery Ctr., Inc. v. United Healthcare Ins. Co.,*
 1:15-CV-24041-UU, 2016 WL 8607846 at *5 (S.D. Fla. Jan. 8, 2016)....................... 17

*Miami Beach Cosmetic & Plastic Surgery Ctr., Inc. v. United Healthcare Ins. Co.,* 1:15-CV-
 24041-UU, 2016 WL 8607846, at *5 (S.D. Fla. Jan. 8, 2016) ............................... 15

*NKD Diversified Enterprises, Inc. v. First Mercury Ins. Co.,* 1:14-CV-00183-AWI, 2014 WL
 671659, at *3 (E.D. Cal. Apr. 28, 2014)............................................................ 14

ii

*Shorraw v. Bell,*
    4:15-CV-03998-JMC, 2016 WL 3586675 at *5 (D.S.C. July 5, 2016) .................................... 14

*Strotek Corp. v. Air Transp. Ass'n. of Am.,*
    300 F.3d 1129, 1131–32 (9th Cir. 2002) .......................................................... 1, 13

*Tanha v. Macy's Inc.,*
    No. 12-6471 SC, 2013 WL 1365953 at * 1 (N.D. Cal. April 3, 2013) ..................................... 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>SUMMARY OF THE ARGUMENT</u>

Plaintiffs respectfully move the Court for an order remanding this case to the District Court for Travis County, Texas, the state court from which it was improperly removed.  First, there is no subject matter jurisdiction based on diversity of citizenship because Plaintiff Jo-Ann Beveridge is, and has been since September 1, 2016, a citizen of the Commonwealth of Virginia and thus has the same citizenship as Volkswagen Group of America, Inc., which maintains its principal place of business in Virginia.  (*See* Affidavit of Jo-Ann Beveridge at ¶¶ 2-5.)  As this Court is well aware, in order to remove a case on the basis of diversity jurisdiction, there must be a diversity of citizenship both at time of the filing of the complaint **and at the time of removal**.  *See Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1131–32 (9th Cir. 2002) ("Thus, we start with the core principle of federal removal jurisdiction on the basis of diversity—namely, that it is determined (and must exist) as of the time the complaint is filed and removal is effected.").  Because there is no diversity of the parties, this Court lacks jurisdiction over this matter and must remand this case back to state court.

Second, this case must be remanded because 28 U.S.C. § 1446(c)(1) prohibits the removal of an action on the grounds of diversity jurisdiction more than one year after the commencement of the lawsuit.  There is no dispute that this case was removed on the grounds of diversity jurisdiction almost **two years** after it was commenced and thus is barred from removal by 28 U.S.C. § 1446(c).  Defendant Volkswagen Group of America, Inc. ("Volkswagen of America") nevertheless claims that it is entitled to remove the case at this late hour because Plaintiffs acted in "bad faith" in preventing removal sooner.  However, Defendant cannot meet the exacting standard and high burden of proof to establish bad faith on the part of the Plaintiffs.

Plaintiffs filed their original petition on October 14, 2015, approximately a month after the Volkswagen diesel scandal burst into the headlines.  Plaintiffs' Original Petition named only Volkswagen of America as a defendant and contained only a single claim under the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), which allows for, at most, a trebling of damages.  *See* Tex. Bus. Comm. Code § 17.50(b)(1).  In their original petition,

Plaintiffs sued one singular Defendant and sought less than $75,000 in damages - a reasonable amount based on the fact that Volkswagen of America was publicly claiming that the scandal was the result of a couple of rogue engineers and was not a "corporate decision" by either Volkswagen of America or any other entity.

The legal landscape regarding the VW emissions scandal has dramatically changed since the date this lawsuit was originally filed.  Most notably, in March 2017, more than **17 months after the commencement of this lawsuit,** despite having assured the public, including Plaintiffs, for over a year that the Volkswagen emissions scandal was not corporate fraud and just the result of a few "rogue engineers", Volkswagen AG, Volkswagen of America's parent company, pled guilty to criminal charges in the United States District Court for the Eastern District of Michigan. In doing so, Volkswagen AG (a defendant Plaintiffs did not even originally sue and had been assured by Volkswagen of America was not an appropriate defendant) publicly, under oath, acknowledged that the VW emissions scandal was not simply a few "rogue engineers" and instead admitted that the corporation had intentionally defrauded Plaintiffs.  This new, powerful evidence (first learned by Plaintiffs over 17 months after they first filed this lawsuit) revealed that Plaintiffs had again been lied to by Volkswagen when they had been assured by the CEO of Volkswagen of American that the fraud <u>did no</u>t extend to the corporate levels.  This new, powerful evidence led Plaintiffs to understand that there was now an additional culpable Defendant (perhaps the most culpable Defendant) that needed to be named as a Defendant and that Plaintiffs were entitled to significantly more in damages, both actual damages as well as punitive and additional damages, than was previously understood when this lawsuit was originally filed.

Volkswagen AG's guilty plea, despite long held assurances of their non-involvement by Volkswagen of America,  provided Plaintiffs with: (1) an additional culpable Defendant to sue for additional damages that were not sought in the original lawsuit, necessarily increasing the total amount being sought in the lawsuit; (2) strong, previously unknown, evidence that makes the case against Volkswagen of America much stronger and more valuable, necessarily raising the amount of money being sought against Volkswagen of America in this lawsuit; and (3) an additional cause of action for  fraud under Texas law (which had not originally been sought) for which punitive

damages are not limited to the treble-damage limitation of the Texas DTPA, thereby increasing the amount of money Plaintiffs could seek in this lawsuit.

As a result, Plaintiffs decided, in compliance with the Texas MDL Court's scheduling order, to amend their petition to: (1) add as a defendant to this lawsuit Volkswagen AG - who, by its own public admission, is criminally liable for the fraudulent conduct at issue – a fact unknown to Plaintiffs on the day the lawsuit was originally filed or even a year after the lawsuit was filed, (2) formally advise all parties that the addition of this new party increased the amount of damages Plaintiffs are seeking in this lawsuit and (3) remove, for organizational and judicial economy reasons, all plaintiffs from the lawsuit that accepted the class action settlement and realign the remaining plaintiffs in a more concise, organized manner.  In sum, when Plaintiffs filed their amended petition, Plaintiffs simply clarified that, given the new additional facts and evidence that they were now aware of concerning the scope and admitted depths of fraud on the part of the Defendants that they did not have when they originally filed their lawsuit, each Plaintiff is now seeking more than $75,000 in total damages (actual, additional, and punitive) against all Defendants, including the newly added Defendant.

Despite the clear one-year bar of 28 U.S.C. 1446(c), Volkswagen of America nevertheless removed this action, claiming Plaintiffs had acted in bad faith by expanding their lawsuit to seek more than $75,000 more than a year after the lawsuit was filed.  But Volkswagen of America can come nowhere close to establishing the high standard for bad faith, a finding that is precluded if there is even a plausible explanation for an amendment like Plaintiffs'.  In this case, Plaintiffs' explanation for expanding their lawsuit (due to the Volkswagen AG criminal guilty plea and other evidence uncovered after the filing of the original lawsuit) demonstrate not only plausible, but compelling, evidence that Plaintiffs have not acted in bad faith.

In removing this action, Volkswagen of America appears to be asserting that Plaintiffs should have figured out the breadth and depth of the fraud (and Volkswagen AG's criminal culpability) well within a year of filing the original lawsuit and thus should have known that their damages were much larger than originally believed.

In other words, Volkswagen of America is faulting Plaintiffs not only for failing to quickly discover how high their multi-year, multi-billion dollar fraud went but also for failing to see past Defendants' continued attempt to obfuscate and spin the situation in the press. This claim by Volkswagen is preposterous.

It is particularly ironic that Volkswagen, which has become the symbol of bad faith, greed and fraud in the corporate world for its years of intentional fraud against its consumers, including Plaintiffs, would have the audacity to lob a bad faith accusation at Plaintiffs. It is, if nothing else, a poster child for "the pot calling the kettle black". Simply put, there was nothing nefarious about Plaintiffs' decision to initially seek less than $75,000 and then later amend their lawsuit to seek more damages in light of new evidence and information. For all of the reasons set forth below, this Court should enter an order remanding this case to the District Court for Travis County, Texas.

## FACTUAL BACKGROUND

**I.    The procedural history of the instant lawsuit.**

This lawsuit was one of the 73 lawsuits filed by one of Plaintiffs' counsel, Craig Patrick, on behalf of consumers of Volkswagen, Audi, and Porsche diesel-powered vehicles and arising out of the Volkswagen emissions cheating scandal. Plaintiffs filed the instant lawsuit on October 14, 2015, in the District Court for Dallas County Texas. (Patrick Decl. ¶ 2.) In November 2015, all Texas state court cases against Defendants, including the instant lawsuit, were consolidated into a statewide Multidistrict Litigation Proceeding in Travis County, Texas. (*Id.*) On August 17, 2017 (over 22 months after the original filing), Volkswagen America removed this case to the United States District Court for the Western District of Texas, and this case was subsequently transferred to this Court pursuant to a conditional transfer order entered by the Judicial Panel on Multidistrict Litigation. (*Id.*)

**II.    At the time Plaintiffs commenced this lawsuit, Defendants were publicly stating that the fraudulent scheme was the result of a couple of rogue engineers and not a corporate decision.**

As the Court is well aware, the scandal regarding Defendants' diesel scheme became public on September 18, 2015, when the Environmental Protection Agency ("EPA") issued a Notice of Violation of the CAA (the "First NOV") for installing illegal cheat devices in 2009-2015 Volkswagen and Audi diesel cars equipped with 2.0-liter diesel engines.  (*See* Patrick Decl., Ex.1.)

On October 8, 2015 (six days before this lawsuit was originally filed), Michael Horn, CEO of Volkswagen of America, testified under oath before Congress about the VW emissions scandal. During this congressional testimony, while Horn was apologetic about the emissions problem, he insisted that it was the result of a "couple of software engineers who put this in for whatever reasons."  (Horn Tr. at 59, Patrick Decl., Ex. 2.)  He testified repeatedly that "this was not a corporate decision."  (*Id.* at 59; *see also id.* at 60 (testifying "this was not a corporate decision. This was something individuals did."); *see also id.* at 72 ("some people have made the wrong decisions in order to get away with something which will have to be found"); *id.* at 105 (testifying that he hoped the investigation would "find out what drove those people into these decisions"); *id.* at 110-111 (testifying that he agrees the scheme was the result of "some engineers").  He further testified that senior corporate executives at Volkswagen AG first learned about the emissions problems around September 3, 2015 (only days before the scandal became public), clearly suggesting that Volkswagen AG had no prior knowledge of the emissions issues and certainly had no involvement in the fraud and had no responsibility or liability for corporate fraud.  (*Id.* at 60.)



This general approach  of (1) spin; (2) less than forth-coming admissions;  and (3) declaring that ultimate conclusions of responsibility must await further investigation is confirmed by a November 23, 2015, press release entitled, "Statement on Audi's discussions with the US environmental authorities EPA and CARB," in which the entire diesel fraud involving Audi, Porsche, and Volkswagen was painted as a simple technical issue and an inadvertent failure to disclose a software glitch in regulatory documentation.  Defendants downplayed the situation by explaining that they were simply "informed [by regulatory authorities] that AECDs . . . were not sufficiently described and declared in the application for U.S. type approval," but they assured the public that "[t]hat will now be done with the updated software and documentation."   (November 23, 2015, Press Release Exhibit 25 to Ward Dep., Patrick Decl., Ex. 5.)  Of course, Plaintiffs now

know this was blatantly false and simply characteristic of the Defendants' spin, which intentionally misled the public and Plaintiffs.

### III. In light of what was known at the time, Plaintiffs filed suit against only Volkswagen of America, bringing only a single claim under the DTPA and limiting their relief to less than $75,000.

In their original petition, Plaintiffs named only Volkswagen of America and brought a single claim under the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), which allows for, at most, a trebling of actual damages.  (Patrick Decl. ¶ 3; Dkt 1-7).) Tex. Bus. Comm. Code § 17.50(b)(1). Based upon what Plaintiffs knew at the time, Plaintiffs stated in their original petition that individually they were not seeking in excess of $75,000 each.  (Patrick Decl. ¶ 3.)  This was a reasonable amount given that Volkswagen of America was claiming that the diesel scheme was not "a corporate decision" but rather the result of a couple of rogue engineers.[1]

### IV. More than a year after the commencement of this lawsuit, it became public that the scheme went to the highest corporate levels of Volkswagen of America's parent company, Volkswagen AG, and that Volkswagen AG itself was criminally liable for its conduct.

On September 9, 2016, Volkswagen engineer James Liang pled guilty to federal criminal charges in connection with his role in Volkswagen's fraud.  (*See* Liang Guilty Plea, Patrick Decl., Ex. 7.)  Liang pled guilty to conspiring with other employees to mislead the U.S. government about the defeat devices.  (*Id.*) He pled guilty to conspiracy to defraud the United States, conspiracy to commit wire fraud, and conspiracy to violate the Clean Air Act and was ultimately sentenced to 40 months in prison.  (*Id.*,)  James Liang's guilty plea and the information that became public as a result began to demonstrate more clearly the scope and depths of the fraud including that, despite the fact that Liang was its employee, Volkswagen of America began attempting to distance itself from Liang and asserting that his conduct was more attributable to Volkswagen AG than Volkswagen of America.  In fact, as recently as August 2017, Volkswagen of America continued

---

[1]  At the time of the filing of the original petition, the entire breadth of the scandal was not even known as the EPA had not even yet issued its Second Notice of Violation, which accused Defendants of cheating with regard to 3.0-liter vehicles, until a month later.  (*See* Second Notice Violation, Patrick Decl., Ex. 6.)

to take this position.  In a recent motion in *limine* filed in the *Zelonis v. Volkswagen Group of America* lawsuit in Virginia, Volkswagen of America stated that:

- Liang was a "former VW Germany employee."

- VW Germany "sent Liang to work in the United States in 2008 to gain approval from U.S. regulators to sell TDI's in the United States."

- "Liang misled others at VW America with regard to the existence of the defeat device" and was engaged in "covering up his conduct and deceiving VW America."

- "VW America plans to present evidence that Mr. Liang hid his knowledge about the defeat device from others at VW America" and that "his knowledge should not be imputed to the company."

(Patrick Decl., Ex. 8.)  In other words, Volkswagen of America claims that Liang was a rogue agent sent from Germany by Volkswagen AG to dupe both Volkswagen of America and U.S. regulators.

On January 11, 2017, well over a year after the filing of this lawsuit, the other shoe dropped. **Volkswagen AG itself (as a corporate entity) was indicted by the United States Department of Justice for its role in the VW emissions scheme.** In response to the indictment, on March 10, 2017, in direct contravention of what Volkswagen had been saying publicly, Volkswagen AG pled guilty in the United States District Court for the Eastern District of Michigan to three felony counts concerning the diesel vehicles at issue in this lawsuit.  Volkswagen AG (as a corporate entity) pled guilty to the following charges: (1) conspiracy to defraud the United States, engage in wire fraud, and violate the Clean Air Act; (2) obstruction of justice; and (3) importation of merchandise by means of false statements.  (Patrick Decl., Ex. 9.)  Specifically, Volkswagen AG pled guilty, first, to participating in a conspiracy to defraud the United States and Volkswagen AG's U.S. customers, including Plaintiffs, and to violate the Clean Air Act, by misleading the EPA and U.S. customers into believing that its vehicles complied with U.S. emissions standards through its use of cheating software. (*Id.*) Second, Volkswagen AG pled guilty to obstruction of justice for destroying documents related to the scheme.  (*Id.*) And third, Volkswagen AG pled guilty to importing the vehicles into the United States by means of false statements about the vehicles' compliance with emissions limits.  (*Id.*)

**V.    After Volkswagen AG's criminal guilty plea, which occurred more than a year after the commencement of this lawsuit, Plaintiffs made the decision to expand their lawsuit to include Volkswagen AG as a defendant and to add a claim for fraud.**

After Volkswagen AG's guilty plea in March 2017, Plaintiffs came to understand that they were entitled to significantly more in damages, both actual damages as well as punitive and additional damages, than was previously understood at the time of the original filing of this lawsuit or even at the one year mark after the filing of this lawsuit. (Patrick Decl. ¶ 4.) There was now a defendant that had pled guilty to criminal charges in federal court for the very conduct at issue in this lawsuit, which significantly increased the value of punitive and additional damages that can be awarded. (*Id.*) Moreover, Volkswagen of America's claim that the whole scheme was due to a couple of rogue engineers and not a corporate decision was proven demonstrably false, making it much easier to establish the right to punitive damages under Texas law. [2] (Notably, as of the filing of this motion, Volkswagen of America, the sole original defendant in this lawsuit, has not even been indicted, let alone pled guilty to any criminal charges concerning its conduct, making it possible and reasonable that Volkswagen is not just another culpable defendant but potentially the most culpable defendant.) (*Id.*) As a result of these new developments, Plaintiffs decided to add Volkswagen AG to the instant lawsuit and to include a claim for fraud under Texas law, which is not subject to the treble-damage limitation of the DTPA. (*Id.*)

**VI.    In addition to expanding the claims and defendants, the amended petition is part of a comprehensive plan to consolidate and make more efficient ongoing litigation in Texas.**

Plaintiffs amended the instant petition in August 2017, nearly two years after they first filed suit and more than ten months after the one-year bar date on removal. (Patrick Decl. ¶ 5.) Contrary

---

[2] Under Texas law, in order to obtain punitive damages against a corporation based on the criminal conduct of an agent one must show "(1) the [corporation] authorized the doing and the manner of the act; (2) the agent was unfit and the [corporation] acted with malice in employing or retaining him; (3) the agent was employed in a managerial capacity and was acting in the scope of employment; or (4) the employer or a manager of the employer ratified or approved the act." TEX. CIV. PRAC. & REM. CODE ANN. § 41.005. With Volkswagen AG's guilty plea, Plaintiffs no longer needed to meet this evidentiary burden because Volkswagen AG itself has pled guilty.

to Volkswagen of America's allegations, this was not done as part of a premeditated plan to keep this case in state court.  (*Id.*)  Instead, it was done to add Volkswagen AG as a defendant, add a new claim for fraud, realign counsel's Texas cases to make them more efficient and address new legal developments regarding jurisdiction.  (*Id.*)

Since the scandal broke, Plaintiffs' counsel has represented nearly 2000 clients who acquired affected vehicles and, as of August 2017, had filed 73 lawsuits in Texas on behalf of hundreds and hundreds of customers.  (Patrick Decl. ¶ 6.)  However, subsequent to the filing of these 73 lawsuits, several appellate opinions were issued, including the decisions by the United States Supreme Court in *BNSF Ry Co. v. Tyrell*, 137 S. Ct. 1549 (May 30, 2017) and *Bristol Meyers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (June 19, 2017), that created an argument that a court in Texas might lack jurisdiction over a claim made by a consumer who acquired their vehicle in a state other than Texas.  (*Id.*)  While Plaintiffs and Plaintiffs' counsel do not concede this argument, they certainly acknowledge its existence.   (*Id.*)

As a result, after (1) Volkswagen AG's guilty plea, (2) the national VW class action settlement, and (3) the recent appellate cases related to jurisdiction, and in compliance with the scheduling order of the Texas MDL Court, Plaintiffs' counsel began the process of trying to realign the Texas cases in order to shrink down the number of lawsuits from 73 to a more manageable number and make the litigation more efficient. (Patrick Decl. ¶ 7.) Simply put, certain plaintiffs needed to be removed from the Texas litigation who had accepted the class action settlement offer, the non-Texas Plaintiffs needed to be removed from the Texas litigation as a result of the recent opinions regarding jurisdiction, and Volkswagen AG needed to be added as a defendant given the newly discovered facts.  In doing so, it was unwieldy, inefficient and unnecessary to continue to maintain some 73 separate lawsuits.   Plaintiffs therefore decided to use the amendment of this lawsuit and eight others to make these changes and shrink down the number of lawsuits to a more manageable number.  (*Id.*)

To accomplish this goal, Plaintiffs' counsel intended to do the following:  (1) dismiss the claims of all clients who had settled; (2) amend the petition in the instant lawsuit (along with the petitions in eight other Texas state court lawsuits) to include only Texas-based clients represented

by Plaintiffs' counsel; (3) add Volkswagen AG as a defendant; (4) add a claim for fraud; and (5) dismiss the remaining now obsolete lawsuits.  (Patrick Decl. ¶ 8.)  It was intended that, when the dust settled, all of Plaintiffs' counsel's Texas clients would have claims pending against the proper Defendants, Volkswagen of America and Volkswagen AG (and, in the singular appropriate instance, Audi AG and in one singular instance the proper Porsche defendants), in only 9 total lawsuits in the Texas MDL.   (*Id.*)

Pursuant to the plan to realign the Texas litigation, the instant amended lawsuit does the following:

- It adds Volkswagen AG as a defendant;

- It adds a claim of fraud under Texas law;

- Its identifies that the amount of damages sought is now increased given the addition of this newly discovered defendant;

- It dismisses the claims of any clients who were previously in this lawsuit but who have settled their claims with Defendants and have chosen to discontinue this litigation;

- It dismisses the claims of any clients who did not acquire their vehicle in Texas; and

- It adds some plaintiffs who were not originally in this lawsuit but who are continuing with their litigation effects in an effort to realign Plaintiffs' counsel's clients into a total of nine (9) lawsuits in the Texas MDL proceeding regarding the VW emissions scandal.

The timing of Plaintiff's most recent petition and the realignment of Plaintiffs' counsel's clients as whole was due to a number of factors.  (Patrick Decl. ¶ 9.)

<u>First</u>, Plaintiffs' counsel did not know how many clients would decide to settle their claims under the national class action.  (*Id.* ¶ 10.)  Although the deadline to opt out of the National Class Action Settlement was September 16, 2016 for 2.0-liter vehicles and April 14, 2017 for 3.0 liter cars, and Defendants repeatedly extended the deadline to opt in to the settlement.  (*Id.*)  In other words, in order to realign the litigation, Plaintiffs' counsel needed to know which clients were going to proceed with litigation and which clients were going to settle their claims under the national class action settlement.

11

Second, Plaintiff's counsel decided to realign the Texas litigation due to the United States Supreme Court Rulings in *BNSF Ry Co. v. Tyrell*, 137 S. Ct. 1549 (May 30, 2017) and *Bristol Meyers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (June 19, 2017), which arguably changed the landscape of personal jurisdiction jurisprudence. (*Id.* ¶ 11.)  In light of these rulings, there was now an argument that could be raised by Defendants (with which Plaintiffs' counsel strongly disagrees) that there was no personal jurisdiction over Defendants in any case in which a client had filed a lawsuit in Texas but had acquired his or her car in another state.  (*Id.*) In order to completely eliminate this argument, Plaintiffs' counsel determined that it was prudent to dismiss non-Texas purchasers from Texas lawsuits and refile their lawsuits in jurisdictions where there would not even be the possibility of such an argument.  (*Id.*)

Third, Plaintiffs' counsel needed to amend the petition when it was amended because the Texas MDL judge had entered a scheduling order setting a September 5, 2017 deadline for amending pleadings.  (*Id.* ¶ 12; *See* Scheduling Order, Patrick Decl., Ex. 10.)  That deadline has since been extended, but at the time Plaintiffs filed their amended petition, it was still in effect. (Patrick Decl. ¶ 12.)

## **ARGUMENT**

## I.    **This Court should remand this case because there is no diversity of jurisdiction.**

The Court should remand this case because there is no diversity of citizenship. Specifically, Plaintiff Jo-Ann Beveridge is, and has been since September 1, 2016, a citizen of the Commonwealth of Virginia and thus has the same citizenship as Volkswagen Group of America, Inc., which maintains its principal place of business in Virginia.  (*See* Affidavit of Jo-Ann Beveridge at ¶¶ 2-5.)  As this Court is well aware, in order to remove a case on the basis of diversity jurisdiction, there must be a diversity of citizenship both at time of the filing of the complaint **and at the time of removal.**  *See Strotek Corp. v. Air Transp. Ass'n. of Am.*, 300 F.3d 1129, 1131–32 (9th Cir. 2002) ("Thus, we start with the core principle of federal removal jurisdiction on the basis of diversity—namely, that it is determined (and must exist) as of the time the complaint is filed

and removal is effected."). Ms. Beveridge was inadvertently and mistakenly identified as a citizen of Texas in the most recent petition, but her affidavit corrects this mistake and conclusively establishes that the Court lacks subject matter jurisdiction due to lack of diversity at the time of removal.[3] The fact that Plaintiffs' current petition identifies Ms. Beveridge as a Texas citizen does not alter the material fact – as evidenced by the Ms. Beveridge's affidavit, Ms. Beveridge is currently a citizen of Virginia. As a result, there is no diversity of the parties, and therefore this Court lacks jurisdiction over this matter and must remand this case back to state court.

## II. Volkswagen of America has the burden of establishing jurisdiction and the "bad faith" exception for removing after more than one year is exceptionally narrow.

As the removing party, Volkswagen of America has the burden of establishing federal jurisdiction over the instant case. *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992). Under well-established case law, removal statutes are strictly construed against removal. *Luther v. Countrywide Homes Loans Servicing, LP,* 533 F.3d 1031, 1034 (9th Cir.2008). Federal courts must "resolve all doubts regarding the propriety of removal in favor of remand." *Asante v. Ocwen Loan Servicing, LLC,* CV16-8281, 2017 WL 111298 at *3 (C.D. Cal. Jan. 11, 2017). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Tanha v. Macy's Inc.,* No. 12-6471 SC, 2013 WL 1365953 at * 1 (N.D. Cal. April 3, 2013).

Per 28 U.S.C. § 1446(c)(1), a case may not be removed to federal court on the basis of diversity jurisdiction "more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." As one court has explained:

> Section 1446(c)(1)'s one-year deadline serves as a means of reducing the opportunity for removal after substantial progress has been made in state court. This modest curtailment in access to diversity jurisdiction is necessary to avoid substantial delay and disruption in state court proceedings. Section 1446 therefore

---

[3] To the extent the Court finds it necessary, Plaintiffs would move the Court for leave to amend their most recent pleading to correct this incorrect jurisidictional allegation. *See* 28 U.S. § 1653 (allowing amendment of defective jurisdictional allegations in the trial and even the appellate courts).

expresses Congress's opinion that a diversity case which has been before a state court for more than one year should stay there.

*Markham v. Home Depot USA, Inc.,* CV 13-8431-GHK JCGX, 2014 WL 117102, at *1 (C.D. Cal. Jan. 10, 2014) (internal quotations marks and citations omitted).  Here, Volkswagen of America did not remove this case until August 2017, <u>more than twenty-two months</u> after it was first filed.

In an attempt to avoid the clear one-year bar on removal, Defendants assert that Plaintiffs acted in "bad faith" under 28 U.S.C. § 1446(c)(1).  However, courts have described the bad faith exception as "limited in scope" and imposing "an arduous burden that requires evidence of forum manipulation."  *Shorraw v. Bell,* 4:15-CV-03998-JMC, 2016 WL 3586675 at *5 (D.S.C. July 5, 2016); *see also Bryson v. Wells Fargo Bank, N.A.,* No. 16-28, 2016 WL 1305846 at *4 (E.D. Tex. Mar. 31, 2016) ("the exception to the bar of removal after one year is limited in scope"); *NKD Diversified Enterprises, Inc. v. First Mercury Ins. Co.,* 1:14-CV-00183-AWI, 2014 WL 671659, at *3 (E.D. Cal. Apr. 28, 2014) ("[T]he requirement that a party acts in bad faith sets a high threshold.").  Another court has held that meeting this standard is tantamount to meeting the "high threshold" of showing that a party "recklessly rais[ed]a frivolous argument or disrupt[ed] and hinder[ed] court proceedings"  *Escalante v. Burlington Nat. Indemn., Ltd.,* No. 2:14-CV-7237, 2014 WL 6670002 at *3 (C.D. Cal. Nov. 24, 2014).  As set forth more fully below, Defendants have not met this arduous burden and cannot under the facts here.

## II.    Defendants cannot satisfy their heavy burden of showing bad faith because Plaintiffs amended their petition to seek more in damages in light of new information that showed their claims to be more valuable.

Plaintiff's amended petition adds a new defendant, Volkswagen AG, and expands the petition to include a new claim for fraud.  This was done because Plaintiffs' claims became substantially more valuable than $75,000 on March 11, 2017, approximately **seventeen months after the commencement of this lawsuit,** when Volkswagen AG pled guilty to three felony counts.  As a result, Plaintiffs are now justified in seeking more than $75,000 in their petition because they have added a corporate defendant who has pled guilty in federal court to criminal charges concerning the very conduct at issue in this lawsuit.  Moreover, the expansion of the

14

petition to include a claim for fraud means that Plaintiffs can now seek more in punitive damages than the treble damages limitation imposed by the DTPA.

Courts have held that it is not bad faith for a plaintiff to expand his or her claims after a year has passed in light of new information. *See, e.g. Miami Beach Cosmetic & Plastic Surgery Ctr., Inc. v. United Healthcare Ins. Co.*, 1:15-CV-24041-UU, 2016 WL 8607846, at *5 (S.D. Fla. Jan. 8, 2016) (rejecting finding of bad faith because plaintiff had offered a "plausible explanation for expanding its claims" despite having initially claimed damages not in excess of $15,000). Rather, a plaintiff who offers a "plausible explanation" for an amendment after the one-year mark does not act in bad faith. *See  Hamilton San Diego Apartments, LP v. RBC Capital Markets, LLC*, 14CV01856 WQH BLM, 2014 WL 7175598, at *3 (S.D. Cal. Dec. 11, 2014) (rejecting bad faith argument because the plaintiff "states a plausible explanation for the joinder of WNC in the instant action but failing to join WNC in the initial action"); *Heller v. Am. States Ins. Co.,* CV-159771, 2016 WL 1170891 at *3 (C.D. Cal. March 25, 2016) ("courts have remanded where delays can be reasonably explained.").  By contrast, those cases in which courts have found bad faith involved situations were a plaintiffs' pleading amendment was based on no new facts or information.  *See, e.g., Hill v. Allianz Life Ins. Co. of N. Am.,* 51 F. Supp. 3d 1277, 1282 (M.D. Fla. 2014) (finding bad faith when plaintiff removed damages claim for less than $75,000 because "the proposed Amended Complaint contains no additional information that would warrant an increase in the damages sought" and "offers absolutely no plausible reason for the sudden increase in damages aside from bad faith attempts to remain in State court.").  Here, Plaintiff's reasons for amending their petition are not only "plausible," they are compelling and preclude any finding of bad faith. *Hamilton San Diego Apartments*, 2014 WL 7175598 at *3.

In removing this lawsuit, Volkswagen of America asserts that Plaintiffs should have known their claims were worth more than $75,000 less than a year after commencement because (1) Volkswagen of America first began producing documents in discovery in the Texas MDL in February 2016; and (2) Volkswagen of America made numerous public admissions about the scheme.  Setting aside the fact that Volkswagen of America wholly fails to identify the statements and documents to which it is referring, the primary flaw with this argument is that it concerns only

**Volkswagen of America** and has nothing to do with Volkswagen AG, the new defendant. Defendants do not (because they cannot) claim that Volkswagen AG produced documents in the first year of this lawsuit, let alone that such unspecified documents would have conclusively established Volkswagen AG's criminal culpability as its guilty plea did.  Defendants do not (because they cannot) claim that Volkswagen AG publicly admitted to criminal liability for its role in the scheme during the first year of this lawsuit.

To summarize, the following is a chronology of events relating to the filing of Plaintiffs' original state court petition, their discovery of new facts and their amendment of their petition:

| | |
|---|---|
| 9-18-15 | Volkswagen Dieselgate scandal breaks |
| 10-14-15 | Plaintiffs file their original petition |
| **10-14-16** | **One year from date of filing** |
| 1-11-17 | Volkswagen AG indicted |
| 3-10-17 | Volkswagen AG pleads guilty to criminal charges |
| 4-14-17 | Opt-out date for 3.0 liter class action settlement |
| 6-19-17 | *Bristol Meyers Squibb* Supreme Court opinion raises jurisdictional issues |
| 8-11-17 | Volkswagen America challenges admissibility of James Liang's acts and knowledge, portraying him as acting on behalf of Volkswagen AG |
| 8-14-17 (3:37 pm) | Plaintiffs amend their petition to add Volkswagen AG and a claim for fraud |
| 8-14-17 (7:21 pm) | Volkswagen America removes this case |
| 9-5-17 | Pleading amendment deadline in Texas MDL |

As this chronology establishes, it was a confluence of events that led Plaintiffs' counsel to amend the petitions to seek additional damages when they did and not some calculated plot to avoid federal jurisdiction.  Where, as here, a change to the amount in controversy results from a "change in strategy," bad faith simply cannot be found.  *See, e.g., Miami Beach Cosmetic & Plastic Surgery Ctr., Inc. v. United Healthcare Ins. Co.*, 1:15-CV-24041-UU, 2016 WL 8607846 at *5 (S.D. Fla. Jan. 8, 2016).  In sum, Defendants come wholly fail to satisfy their burden of showing that Plaintiffs acted in bad faith, and this claim should be rejected.

## CONCLUSION

For all of the reasons set forth above, Plaintiffs request that this Court enter an order remanding this case to the District Court for Travis County, Texas

DATED:  September 14, 2017

Respectfully submitted,

*/s/ Charles Miller*
Charles Miller, SBN 276523
charles@hop-law.com
Michael E. Heygood
Michael@hop-law.com
**HEYGOOD, ORR & PEARSON**
6363 North State Highway 161
Suite 450
Irving, Texas 75038
Telephone: (214) 237-9001
Facsimile: (214) 237-9002

Craig M. Patrick, SBN 255849
PATRICK LAW FIRM, P.C.
6244 E. Lovers Lane
Dallas, Texas 75214
Telephone: (214) 390-3343
Facsimile: (469) 914-6565
craig@patricklaw.com

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 14th day of September 2017, I filed the foregoing from the Service List and a copy of has been served on all Parties required to be served by electronically filing with the Clerk of the Court of the U. S. District Court for the Northern District of California, San Francisco Division, by using the CM/ECF system.  In addition, Plaintiffs provided a copy of the foregoing to the following persons via email:

**<u>Via email at vhartline@hdbdlaw.com</u>**
C. Vernon Hartline, Jr.
HARTLINE DACUS BARGER DREYER LLP
8750 N. Central Expressway, Suite 1600
Dallas, Texas 75231

**<u>Via email at monahanw@sullcrom.com</u>**
William B. Monahan
SULLIVAN & CROMWELL, LLP
125 Broad St.
New York, NY 10004

<i>/s/ Charles Miller</i>
Charles Miller