UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: VOLKSWAGEN "CLEAN DIESEL"
MARKETING, SALES PRACTICES, AND
PRODUCTS LIABILITY LITIGATION

_____/

This Order Relates To:
Dkt. No. 3749

_____/

MDL No. 2672 CRB  (JSC)

**ORDER DENYING THE UNITED
STATES' REQUEST TO SHARE MDL
DISCOVERY MATERIAL WITH
FOREIGN COUNSEL**

      Volkswagen's "clean diesel" emissions scandal has given rise to considerable litigation not only in this Court, but also in Germany where the company is headquartered.  In around 1,600 cases, shareholders have sued Volkswagen in Germany for allegedly deceiving them about the scandal in violation of German securities laws.  The United States is a plaintiff in one of these cases, and seeks to recover losses incurred by a federal employees' retirement plan, which held Volkswagen stock that traded on the Frankfurt Stock Exchange.  The DOJ's Civil Division is responsible for directing the German action; but because the Civil Division's attorneys are not licensed to practice law in Germany, they have retained a German law firm, GSK Stockmann ("GSK"), to represent the United States.  The Civil Division now seeks to share discovery produced by Volkswagen in this MDL with GSK, and the question before the Court is whether the parties' stipulated Protective Order permits the Civil Division to do so.  The Court concludes that it does not.[1]

---

[1] References to Volkswagen include Volkswagen AG; Volkswagen Group of America, Inc.; Volkswagen Group of America Chattanooga Operations, LLC; Audi AG; and Audi of America, LLC.

**BACKGROUND**

Shortly after this MDL began, the parties agreed to the terms of the stipulated Protective Order, which facilitates the production of confidential and highly confidential discovery material, referred to in the Order as "Protected Material."  (*See* Dkt. No. 1255, PTO No. 12 § 2.18.) Volkswagen and the DOJ's Environmental and Natural Resources Division ("ENRD") were among those who signed the Protective Order.  Once in place, Volkswagen shared nearly 25 million pages of documents with ENRD (the "Discovery Material"), and ENRD used those documents to prosecute (and ultimately settle) claims against Volkswagen based on the emissions fraud.  ENRD also shared these documents with the DOJ's Civil Division, who investigated whether Volkswagen violated certain U.S. customs laws and other federal laws.

More than a year later, counsel for ENRD informed Volkswagen that the Civil Division intended to provide the Discovery Material to GSK to use in the United States' German securities action against Volkswagen, and that GSK might file some of the Discovery Material with the German court overseeing that litigation.  (Monahan Decl., Ex. A, Dkt. No. 3749-3 at 9.)[2]

The parties' German law experts have explained that a Higher Regional Court in Germany is conducting a "model proceeding" to guide the 1,600 securities suits against Volkswagen, and that the United States and others who were not selected as the "model plaintiff" may file supporting materials in the model proceeding as "intervening parties" no later than October 30, 2017.  (Liebscher Decl. ¶¶ 4-7, Dkt. No. 3749-4; Moufang Decl. ¶¶ 9-13, Dkt. No. 3749-2.)[3]  All materials filed by the intervening parties will be accessible, via a password-protected electronic access site, to the model plaintiff, Volkswagen, and the other intervening parties who are participating in the model proceeding.  (Liebscher Decl. ¶ 7; Moufang Decl. ¶¶ 16-17.)

---

[2] The German suit is titled *United States of America, represented by the U.S. Department of Justice, Civil Division, Office of Foreign Litigation v. Volkswagen Aktiengesellschaft, represented by the Board of Directors*, File Reference: 5 O 2269/16 (784) Regional Court (Landgericht) Braunschweig, Germany.

[3] Dr. Thomas Liebscher has prepared a declaration in support of Volkswagen's position; he represents Volkswagen as local counsel in the German securities suit filed by the United States. Professor Dr. Oliver Moufang has prepared a declaration in support of the Civil Division's position; he is an attorney at GSK.

Volkswagen notified the DOJ that it believes the Protective Order does not authorize the Civil Division to share the Discovery Material with GSK. At the end of August 2017, counsel for the Civil Division and Volkswagen filed a Joint Statement regarding the dispute. (Dkt. No. 3749.)

**DISCUSSION**

The default rule under the Protective Order is that MDL Discovery Material cannot be disclosed to counsel who plan to use the material in foreign litigation against Volkswagen. Specifically § 7.5, titled "<u>Restriction on Disclosure in Actions Outside the United States</u>," provides that:

> Except as specifically provided in Section 13.7, and except, with respect to governmental Parties, where disclosure is otherwise authorized by United States law, treaty, convention, or international mutual agreement, no Protected Material shall be disclosed, shared, distributed, or otherwise provided in any manner to legal counsel in pending or threatened litigation against [Volkswagen] outside of the United States . . . , regardless of whether such legal counsel can be classified as a consultant or affiliate of any U.S. attorney of record in any legal proceeding against [Volkswagen] within the United States.

PTO No. 12 § 7.5.

This default rule is entirely sensible. Volkswagen's participation in this MDL does not obligate it to produce discovery in other proceedings, let alone foreign proceedings. Also, the discovery rules in foreign courts can be different from those here, and Volkswagen would understandably want to preserve its rights to produce only what is required in each jurisdiction.

The German litigation at issue illustrates this second point: The parties' German law experts agree that German discovery rules are generally stricter than those in the United States. (*See* Moufang Decl. ¶ 14 ("The [German courts] can . . . only within very narrow boundaries order third parties or the adverse party to submit records or documents in civil proceedings."); Liebscher Decl. ¶ 8 ("A party to a civil lawsuit in Germany does not have a general duty to disclose comprehensively all relevant facts and evidence.").) But if the Civil Division were permitted to share Discovery Material with GSK, Volkswagen would not receive the protections contemplated by these narrower German rules.

Section 7.5 references two exceptions, though, and the Civil Division argues that both

apply here. First, § 7.5 does not apply if § 13.7 specifically provides otherwise. Second, § 7.5 does not apply "where disclosure is otherwise authorized by United States law, treaty, convention, or international mutual agreement."

As to the second of these exceptions, the Civil Division has not cited to any "United States law, treaty, convention, or international mutual agreement" that "authorizes" the Civil Division to disclose MDL Discovery Material to GSK. The closest the Civil Division gets is 28 C.F.R. § 0.46, which states that the Civil Division shall "direct" civil litigation by the United States "in domestic *or foreign courts.*" (emphasis added). But this regulation says nothing about disclosure of discovery material. Nor is such disclosure required for the Civil Division to "direct" a suit by the United States in a foreign court; instead, the Civil Division could do so by retaining foreign counsel and overseeing strategic decisions in the foreign litigation, as the Civil Division is doing here; it does not need to disclose all relevant and confidential material in its possession.

That 28 C.F.R. § 0.46 does not authorize the contemplated disclosure is even clearer when compared to United States laws and conventions that *do* authorize disclosure of material to foreign authorities. A good example is the Convention on Cybercrime, which dozens of nations have agreed to (including Germany),[4] and which was ratified by the U.S. Senate in 2006.[5] The Convention establishes a framework for nations to collaborate to combat computer-related crimes, including forgery, fraud, child pornography, and certain copyright offenses. *See Message from the President of the United States transmitting Council of Europe Convention on Cybercrime* (Nov. 17, 2003). As relevant here, the Convention provides that "a Party may forward to another Party information it obtains in one of its own investigations where it believes such information might assist the other Party in initiating or carrying out an investigation or proceeding." *Letter of Submittal from the Department of State to the President* (Sept. 11, 2003) (summarizing Ch. III, Art. 26). The Convention on Cybercrime, then, is an authority that explicitly authorizes the United States to disclosure certain materials to foreign authorities. The regulation relied on by the

---

[4] *See* http://www.coe.int/en/web/conventions/full-list/-/conventions/treaty/185 (last visited Sept. 15, 2017).
[5] *See* https://www.congress.gov/treaty-document/108th-congress/11/document-text (last visited Sept. 15, 2017).

Civil Division is not.

The drafting history of § 7.5 also reinforces that the contemplated disclosure to GSK is not what the parties had in mind when they agreed to limited exceptions to § 7.5's default rule against disclosure to counsel in foreign proceedings. In an account of the negotiations by Volkswagen's counsel, which the Civil Division does not dispute, counsel explains that when the DOJ requested an exception to § 7.5, it offered the following hypothetical: "if [ENRD] found child pornography in the [MDL] document production, the DOJ was required to report that crime to the Criminal Division." (Monahan Decl. ¶ 6.) Reporting a crime to the DOJ's Criminal Division, without more, would not offend § 7.5, so the parties must have contemplated that there could be circumstances where the Criminal Division would then need to share those materials with foreign authorities. This makes sense given the Convention on Cybercrime: if Volkswagen produced child pornography—a highly unlikely event—the United States would have authority under the Convention to share that material with officials in Germany. The § 7.5 exception thus ensures that in such a scenario the Protective Order would not prevent the United States from taking action authorized by the Convention.

Child pornography may seem far afield from this MDL and the German securities litigation related to Volkswagen's emissions scandal. But that is exactly the point. The "where disclosure is otherwise authorized" exception to § 7.5 is narrow, or at least not at all intended to cover the type of civil dispute the Civil Division is currently directing.

Disclosure to GSK is also not clearly permitted by the other exception to § 7.5, which is the "[e]xcept as specifically provided in Section 13.7" exception. Section 13.7 states that:

> The Parties agree that Discovery Material may be shared by the United States *with any state or federal law enforcement or regulatory agency* with jurisdiction over matters related to this Action without limitation, provided that (a) such agency signs the "Agency's Agreement To Be Bound by Stipulated Protective Order" (Exhibit B) . . . , (b) the United States provides the Producing Party with a copy of such Exhibit B . . . , and (c) upon request of the Producing Party, the United States provides the Producing Party with information sufficient for the Producing Party to identify the Discovery Material that was provided . . . .
>
> Nothing in this Section precludes any state or federal law enforcement or regulatory agency that receives Discovery Material pursuant to this Section *from using that*

5

*material in accordance with the agency's applicable statutes, rules and regulations . . . .*

PTO No. 12 § 13.7 (line break and emphasis added).

The parties have experience with applying the first part of § 13.7, as the Civil Division itself obtained Discovery Material from ENRD by following the procedures laid out there. As noted above, Volkswagen originally provided the Discovery Material to ENRD. Counsel for ENRD then notified Volkswagen that it intended to share the material with the Civil Division pursuant to § 13.7, and emailed Volkswagen a copy of Exhibit B signed by counsel for the Civil Division. (Engel Decl., Exs. A-B, Dkt. No. 3749-1 at 4-5.) ENRD also identified the Discovery Material it shared with the Civil Division—which was all of the Discovery Material—upon Volkswagen's request. (*Id.* at 6.)

The Civil Division now asserts that it has authority to share the Discovery Material with GSK pursuant to the second part of § 13.7, because by doing so it would be "using that material in accordance with the agency's applicable statutes, rules and regulations." PTO No. 12 § 13.7. The "applicable . . . regulation[]" relied on is again 28 C.F.R. § 0.46, which requires the Civil Division to "direct" civil litigation by the United States in "foreign courts." By sharing the Discovery Material with GSK, the Civil Division argues that it would be "using" the material in accordance with § 0.46, because it "must discuss with GSK the information and documents available to the Civil Division to analyze the relevant arguments under German law and prepare court filings." (Dkt. No. 3749 at 5.)

It is far from clear that § 13.7 covers this scenario. For one thing, the Civil Division is not a prototypical "federal law enforcement or regulatory agency." The FBI is a federal law enforcement agency; EPA is a federal regulatory agency; the Civil Division instead represents the United States in litigation, which is not traditionally considered a law enforcement or regulatory activity. It is thus not even clear that ENRD was permitted to share the Discovery Material with the Civil Division under the first part of § 13.7. But even putting that aside, nothing in § 13.7 speaks directly about disclosure to foreign counsel. Instead, the provision seems to most clearly contemplate the use of Discovery Material by *state or federal* law enforcement or regulatory

agenc[ies]." It is true that § 7.5 does list § 13.7 as an exception to its rule against disclosure to legal counsel in *foreign* proceedings, so § 13.7 must have some force in that regard, but its scope is uncertain.

With the text of § 13.7 not providing much clarity, the drafting history is again helpful. Volkswagen's counsel represents that the child pornography hypothetical discussed above was the only example the DOJ provided when discussing the need for exceptions to § 7.5. (Monahan Decl. ¶ 6.) Likely, then, § 13.7 was added as extra security to ensure that, in the event Volkswagen happened to disclose material that could give rise to criminal liability—for matters unrelated to the "clean diesel" emissions scandal—ENRD would be able to share that material with law enforcement and, in some circumstances, with foreign authorities. Disclosure of *all* the MDL Discovery Material to foreign counsel to pursue securities litigation against Volkswagen stretches § 13.7 well beyond what the parties contemplated.

This conclusion is bolstered further by § 7.4 of the Protective Order. That section is titled "Restrictions on Disclosure to Plaintiffs in Securities Actions," and states that:

> Nothing herein authorizes disclosure of Discovery Material to plaintiffs (or their Counsel) in the securities actions consolidated in this Action for pre-trial proceedings. Any disclosure of Discovery Material with respect to the securities actions will be addressed in a separate order at an appropriate time in the future.

PTO 12 § 7.4.

From § 7.4 it is clear that the parties contemplated that the Protective Order did not permit the Discovery Material to be disclosed to plaintiffs in the domestic securities actions. Given that, it seems almost inconceivable that Volkswagen would have been willing to permit the Discovery Material to be used by plaintiffs in *foreign* securities litigation. And even though the United States is only one plaintiff, the parties do not dispute that *all* of the plaintiffs in the roughly 1,600 German securities actions would have access to any Discovery Material that GSK ultimately files in the German court, because (as noted above) all documents filed with the German court must be filed on an electronic access site to which all plaintiffs in the consolidated cases will have access. (Liebscher Decl. ¶ 17; Moufang Decl. ¶¶ 16-17.)

If ENRD and Volkswagen had intended for the United States to be able to use the MDL Discovery Material in any proceeding—foreign or domestic—they easily could have said so. But they did not, and it is clear from what they did say, and from the Protective Order's drafting history, that they did not mutually intend for the Order to permit ENRD to share MDL Discovery Material with foreign counsel representing the United States in securities litigation against Volkswagen in Germany. This does not mean that GSK cannot conduct discovery in Germany in the same way that plaintiffs in any of the 1,600 cases could do so. But GSK (by way of the Civil Division) cannot use the Protected Order to end-run around German discovery rules.

The United States' request is DENIED.

**IT IS SO ORDERED.**

Dated: September 15, 2017

JACQUELINE S. CORLEY
United States Magistrate Judge