Robert J. Giuffra, Jr. (*pro hac vice*)
giuffrar@sullcrom.com
Sharon L. Nelles (*pro hac vice*)
nelless@sullcrom.com
William B. Monahan (*pro hac vice*)
monahanw@sullcrom.com
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

Laura Kabler Oswell
(State Bar No. 241281)
SULLIVAN & CROMWELL LLP
1870 Embarcadero Road
Palo Alto, California 94303
Telephone: (650) 461-5600
Facsimile: (650) 461-5700

*Counsel for Volkswagen Group of America, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE VOLKSWAGEN 'CLEAN DIESEL' MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>_____<br><br>This Document Relates to:<br><br>ECF Nos. 3784, 3786, 3787, 3788, 3793, 3794, 3797, 3800<br>_____ | ) Case No. 3:15-md-02672-CRB<br>)<br>) **VOLKSWAGEN GROUP OF**<br>) **AMERICA'S OPPOSITION TO**<br>) **CERTAIN TEXAS PLAINTIFFS'**<br>) **MOTIONS TO REMAND**<br>)<br>) The Honorable Charles R. Breyer<br>)<br>) Hearing Date:    TBD<br>)<br>) |

# TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS ........................................................................1

STATEMENT OF ISSUE....................................................................................................1

SUMMARY OF ARGUMENTS ...........................................................................................1

FACTUAL BACKGROUND ...............................................................................................2

ARGUMENT ....................................................................................................................5

I.     Plaintiffs' Misrepresentation That Each Plaintiff Would Not Seek More Than $75,000 in Damages Indicates Bad Faith.................................................................................6

II.     Plaintiffs' Blatant Forum and Complaint Manipulation Shows Bad Faith.................11

     A.     Refusal to Serve VWGoA................................................................................11

     B.     Illogical Realignment of Cases and Plaintiffs.................................................11

CONCLUSION.................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ALC Holding LLC* v. *Fed. Serv. Ins. Co.*,
    2015 WL 9312081 (D. Ariz. Dec. 23, 2015) ..........................................................................6

*In re Boston Scientific Corp.*,
    2015 WL 6456528 (C.D. Cal. Oct. 26,2015) ........................................................................11

*Cavallini* v. *State Farm Mut. Auto Ins. Co.*,
    44 F.3d 256 (5th Cir. 1995) ..................................................................................................5

*Craig* v. *MTD Prods. Co.*,
    2016 WL 6090899 (E.D. Cal. Oct. 18, 2016) ........................................................................7

*Davis & Assoc., PC* v. *Westchester Fire Ins. Co.*,
    2011 WL 4479487 (Sept. 26, 2011) ......................................................................................5

*Escalante* v. *Burlington Nat. Indem., Ltd.*,
    2014 WL 6670002 (C.D. Cal. Nov. 24, 2014) ....................................................................12

*Harris* v. *Bankers Life and Cas. Co.*,
    425 F. 3d 689 (9th Cir. 2005) ...............................................................................................3

*Heller* v. *Am. States Ins. Co.*,
    2016 WL 1170891 (C.D. Cal. Mar. 25, 2016) ..............................................................*passim*

*NKD Diversified Enters., Inc.* v. *First Mercury Ins. Co.*,
    2014 WL 1671659 (E.D. Cal. Apr. 28, 2014) ..............................................................2, 6, 8

*Stewart Title Guar. Co.* v. *Sterling*,
    822 S.W. 2d 1 (Tex. 1991) ..................................................................................................10


**Statutes**

28 U.S.C. § 1332 ......................................................................................................1, 3, 5, 6, 12

28 U.S.C. § 1446 ..................................................................................................................*passim*

Tex. Bus. & Com. Code § 17.50 ..............................................................................................10

Tex. Civ. Prac. & Rem. Code Ann. § 41.005 ...........................................................................10

## NATURE AND STAGE OF PROCEEDINGS

This brief relates to eight motions to remand encompassing eight cases filed on behalf of Texas plaintiffs who are represented by Patrick Law Firm P.C. and Heygood, Orr & Pearson (collectively, the "Texas Firms").[1]  From October 2015 through April 2017, the Texas Firms filed dozens of lawsuits asserting claims on behalf of hundreds of individual consumers in Texas (the "Texas Plaintiffs").  Plaintiffs in those actions asserted claims against Volkswagen Group of America, Inc. ("VWGoA") under the Texas Deceptive Trade Practices Act and represented that Plaintiffs would not seek or accept more than $75,000 in damages.  Relying on that representation, VWGoA did not then remove the actions to federal court.  In July 2017, however, notwithstanding their prior, unequivocal representations, the Texas Plaintiffs served demand letters on VWGoA asking for $175,000 in damages each.  As a result of Plaintiffs' new demands for increased damages, each of their cases became removable on the ground of diversity jurisdiction, and VWGoA promptly removed the cases within 30 days.  Although Plaintiffs do not contest that the requirements for diversity jurisdiction under Section 1332 are satisfied, Plaintiffs nonetheless seek remand on the sole basis that VWGoA's removal took place outside of the one-year timeframe for removing cases based on diversity jurisdiction specified in 28 U.S.C. § 1446.  As explained below, the Texas Plaintiffs acted in bad faith to prevent removal, fully aware of the one-year period under Section 1446.  As such, the time limit to remove these cases was tolled, and Plaintiffs' remand motions should be denied.

## STATEMENT OF ISSUE

1.  Was Defendant's removal within 30 days of learning that Plaintiffs had increased their demand for damages to more than $75,000 timely?  *See generally* 28 U.S.C. § 1446.

## SUMMARY OF ARGUMENTS

The only asserted obstacle to removal in these cases is the general rule that cases should be removed on diversity grounds within one year of filing.  Otherwise, the Texas Plaintiffs' fully concede that the requirements for diversity jurisdiction removal are met.  But removal outside the one-year statutory window is expressly permitted when "the district court finds that the plaintiff has acted in bad

---

[1]      ECF Nos. 3784, 3786, 3787, 3788, 3793, 3794, 3797, 3800.

faith in order to prevent a defendant from removing the action."  28 U.S.C. § 1446(c)(1).  Here, there is bad faith in spades.

*First*, the Texas Plaintiffs misled Defendants as to the actual amount in controversy when filing their original petitions and for over a year thereafter.  After more than a year had passed since the filing of many of the original petitions, Plaintiffs served new demands for damages above the statutory threshold for diversity jurisdiction.  Such behavior—where "the plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal"—is defined by statute as bad faith.  28 U.S.C. § 1446(c)(3)(B). None of the Texas Plaintiffs' arguments to attempt to justify their dilatory behavior passes the smell test.

*Second*, courts also toll the one-year period wherever "the plaintiff engage[s] in strategic gamesmanship to prevent a defendant's removal from state court."  *Heller* v. *Am. States Ins. Co.*, 2016 WL 1170891, at *3 (C.D. Cal. Mar. 25, 2016) (quotation omitted).  The Texas Plaintiffs did just that when they deliberately failed to serve VWGoA with certain lawsuits, nonsuited dozens of removable cases, and then immediately shuffled those dismissed plaintiffs into lawsuits that had been filed more than one year earlier—telling evidence that the Texas Plaintiffs' entire plan from the get-go was to avoid removal and then increase their *ad damnum*, once the year period had elapsed.

Because the Texas Plaintiffs engaged in clear manipulation to prevent removal, the one-year limitation was equitably tolled, and VWGoA's prompt removal following receipt of the demands for damages above the statutory threshold was proper.[2]

## FACTUAL BACKGROUND

Following the U.S. Environmental Protection Agency's  issuance of a Notice of Violation to Volkswagen AG, VWGoA and others alleging the installation of "defeat devices" in certain 2.0-liter diesel engines, numerous individual consumers began filing actions against Volkswagen AG and

---

[2]    Remand should also be denied because, as set forth in the separate omnibus brief filed today, incorporated herein, this Court can exercise jurisdiction over these cases pursuant to 28 U.S.C. § 1331.

1   VWGoA in courts throughout the United States.  Among those individual actions were the eight cases at

2   issue in this Brief, which were originally filed in October 2015 on behalf of 187 plaintiffs from Texas.

3   The Texas Plaintiffs named VWGoA as the sole defendant and made nearly identical allegations that

4   VWGoA had violated various aspects of the Texas Deceptive Trade Practices Act ("DTPA").  *See, e.g.*,

5   Alaniz Compl. ¶¶ 74-79, No. 3:17-cv-05071, ECF No. 1-7.  Plaintiffs alleged that the "conduct of the

6   Defendant was done knowingly and intentionally," *e.g.* Alford Compl. ¶ 82, No. 1:17-cv-00789, ECF

7   No. 1-7, including that "Defendant advertised 'Clean Diesel', but had no intention of selling 'Clean

8   Diesel' vehicles," *see, e.g.,* Alaniz Compl. ¶ 75(1)(c), and that "Defendant failed to disclose the use of

9   the 'defeat device' in the Vehicles," *see, e.g.*, Alaniz Compl. ¶ 75(1)(d).  Plaintiffs sought as damages the

10   "diminished value of the Vehicles (the difference at the time and place of acceptance between the value

11   of the Vehicles as accepted and the value they would have had if they had been as warranted or

12   represented)"; "out of pocket expenses, including increased fuel costs"; and "additional [treble] damages

13   for a knowing and/or intentional violation of the DTPA."  *See, e.g.*, Alford Compl. ¶¶ 81–82.

14          Over the weeks and months that followed—and as recently as April 2017[3]—the Texas

15   Firms representing the Texas Plaintiffs continued to file similar complaints on behalf of additional Texas

16   plaintiffs making the same allegations of wrongdoing and asserting the same DTPA claims against

17   VWGoA.  In total, over the course of 18 months, 79 actions asserting claims on behalf of more than

18   1,000  Texas plaintiffs were filed against VWGoA. *See* Declaration of Vernon Hartline, dated November

19   3, 2017 ("Hartline Decl."), ¶ 4.  VWGoA's citizenship (New Jersey and Virginia) is diverse from all

20   Plaintiffs' citizenship (Texas), a requirement for diversity jurisdiction, 28 U.S.C. § 1332(a), but each

21   complaint contained an *ad damnum* clause expressly representing that Plaintiffs were "not seek[ing]

22   damages in excess of $74,500, [would] not seek damages in excess of $74,500, and [would] not accept a

23   judgment in excess of $74,500, exclusive of interests and costs."  *See, e.g.*, Bacon Orig. Compl. 12, No.

24   1:17-cv-0774, ECF No. 1-7; *see also, e.g.*, Alaniz Compl. ¶ 2 (limiting damages sought to "less than

25   $75,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney

26

27

28   
---
[3]   *See* Ex. B (Abreu Compl.).

fees").[4]  Defendants were entitled to rely on the sums purportedly "demanded in good faith in the initial pleading," which were "deemed to be the amount in controversy," 28 U.S.C. § 1446(c)(2)(B); *see Harris* v. *Bankers Life and Cas. Co.*, 425 F. 3d 689, 694 (9th Cir. 2005) ("[T]he ground for removal must be revealed affirmatively in the initial pleading in order for the first thirty-day clock under § 1446(b) to begin.").  In twenty-two cases, moreover, the Texas plaintiffs never served VWGoA with the complaints. *See* Hartline Decl., ¶ 4.  Accordingly, VWGoA did not immediately remove these cases as subject to diversity jurisdiction.

Conveniently, given the one-year removal period under 28 U.S.C. § 1446(c)(1), the Texas Firms waited more than one year in most of these matters, until July 17, 2017, to send VWGoA's counsel identical demand letters on behalf of 1,002 plaintiffs, seeking *$175,000* in recovery per plaintiff.  *See* Hartline Decl., ¶ 3.  Plaintiffs' purported rationale for their demand tracked the same facts alleged in their original complaints and did not reference any newly ascertained information.  Faced with Plaintiffs' demands for damages (significantly) in excess of $75,000 for each plaintiff, VWGoA decided to remove 64 of the cases then pending—and so notified Plaintiffs' counsel three days before doing so.  *See* Hartline Decl., ¶ 5.  On August 14, 2017—within 30 days of learning that the cases had become removable—VWGoA filed a Consolidated Notice of Filing Notice of Removal,[5] informing the Texas State MDL Court, as well as the Texas Firms, that VWGoA had begun removing the cases, a time-consuming process that could not happen instantaneously and simultaneously for all of the cases.

Within mere hours of VWGoA's filing of its first notices of removal, Plaintiffs began nonsuiting dozens of cases and amending others in an apparent effort to stave off federal subject matter jurisdiction.  *See* Hartline Decl., ¶ 5.  The maneuvers included:

- Nonsuiting all cases that were less than a year old and clearly removable on the basis of diversity jurisdiction, but that had not been served on VWGoA;[6]

---

[4]     Of the 79 cases filed by one or both of the Texas Firms, only 4 of the complaints did not contain such a representation and instead pled damages less than $200,000.  *See* Exs. A–D (Compls. of Abiodun, Abreu, Austin, and Aldredge), ¶ 2.   Although these four complaints were clearly subject to diversity jurisdiction on their face, tellingly, not one of these complaints was actually served on VWGoA, and all have now been voluntarily dismissed.

[5]     *See* Exs. G–H (Consolidated Notice and Amended Consolidated Notice).

[6]     *See, e.g., Austin* Orig. Pet. Cause No. DC-17-03877 (filed on March 31, 2017) (case less than one-year old, where plaintiffs alleged up to $200,000 in damages and did not serve VWGoA).

- Nonsuiting all cases more than a year old where Plaintiffs had not served VWGoA; and

- Almost simultaneously adding these nonsuited plaintiffs to cases that had been pending for more than a year in state court.[7]

As a result of these maneuvers, only eight of the original 79 cases remain, containing a mixture of the original plaintiffs in these eight actions and plaintiffs from other actions brought by the Texas Firms that were non-suited.  As amended, these eight cases (1) add Volkswagen AG as a defendant; (2) assert an additional cause of action sounding in fraud; and (3) increase the amount of claimed damages to more than $75,000.  *See, e.g.*, Alford 2d Am. Compl., ¶ 5 ("Each plaintiff individually seeks and sues for in this lawsuit damages in excess of $90,000.").

On September 13 and 14, 2017, the Texas Plaintiffs filed eight motions to remand these eight newly consolidated and amended actions.  Each motion makes the identical argument that VWGoA "improperly removed" these actions "more than one year after the commencement of a lawsuit," and that VWGoA cannot "establish bad faith on the part of the plaintiffs."  *E.g.*, Alford Memo of Points and Authorities 1, ECF No. 3793-1.  As set forth below, Plaintiffs are incorrect.  The cases were properly removed and should remain before this Court.

## ARGUMENT

The Texas Plaintiffs do not meaningfully contest that VWGoA has satisfied the jurisdictional requirements of 28 U.S.C. § 1332.  All of the Texas Plaintiffs have represented that they are citizens of Texas,[8] while VWGoA is organized under the laws of New Jersey and headquartered in

---

[7]   *See, e.g.*, Exs. J–K (Abiodun Notice of Nonsuit; Cano Am. Petition); *see also* Hartline Decl., ¶¶ 5–6.

[8]   The Texas Plaintiffs raise a belated and unavailing citizenship argument as to plaintiff Jo-Anne Beveridge.  *See* Azam Memo Points and Authorities 12–13, ECF No. 3800-1.  This argument, which discredits Plaintiffs' assertion that one reason for realigning the actions was to "to include only Texas-based clients represented by Plaintiffs' counsel," Declaration of Craig M. Patrick ¶ 8, ECF No. 3800-3, should be rejected as a naked attempt to destroy diversity, and because it has no merit.  In the August 14, 2017 Second Amended Petition of a case originally filed on behalf of Mark Azam, but now headed by Dino Ballariano, each of the plaintiffs, including Jo-Anne Beveridge, claimed Texas residency.  Azam 2d. Am. Pet., ¶ 10, No. 3:17-cv-05153, ECF No. 1-17.  VWGoA was entitled to rely on such representations in determining diversity.  *See Davis & Assoc., PC* v. *Westchester Fire Ins. Co.*, 2011 WL 4479487, at *3-4 (D. Colo. Sept. 26, 2011) ("[A]n allegation of residency in a particular state . . . establishes a *prima facie* case" that a party is domiciled in that state.).  However, in an affidavit submitted with the September 14, 2017 *Ballariano* Motion to Remand, Beveridge, for the first time, claimed to be a citizen of Virginia.  *See* Beveridge Affidavit, ECF No. 3800-2.  Whether Beveridge has moved cross-country is immaterial, as there was complete diversity among the parties at the time of

1    Virginia.   In light of their July 17, 2017 demand letters and the subsequent amendments to their

2    complaints, none of the Texas Plaintiffs dispute that the amount in controversy for each action exceeds

3    $75,000.   Thus, Plaintiffs' only hope for evading federal jurisdiction rests on the fact that their

4    manipulative delay in revealing that each plaintiff was seeking damages in excess of $75,000 forestalled

5    removal for at least one year.   The Court should not reward that gamesmanship.

6           As a general matter, "a case may not be removed . . . on the basis of jurisdiction conferred

7    by section 1332 more than one year after commencement of the action."   28 U.S.C. § 1446(c)(1).

8    However, removal outside the one-year window is permitted when "the district court finds that the

9    plaintiff has acted in bad faith in order to prevent a defendant from removing the action."   *Id.*; *see also*

10   *NKD Diversified Enters., Inc.* v. *First Mercury Ins. Co.*, 2014 WL 1671659, at *3 (E.D. Cal. Apr. 28,

11   2014) ("[T]he one year limitation [is] procedural and can be excused upon a showing of bad faith.").   For

12   instance, it constitutes "bad faith" when "the plaintiff deliberately failed to disclose the actual amount in

13   controversy to prevent removal."   28 U.S.C. § 1446(c)(3)(B).   Courts also toll the one-year limitation

14   wherever "the plaintiff engaged in strategic gamesmanship to prevent a defendant's removal from state

15   court."   *Heller* v. *Am. States Ins. Co.*, 2016 WL 1170891, at *3 (C.D. Cal. Mar. 25, 2016) (quoting

16   *Ehrenreich* v. *Black*, 994 F. Supp. 2d 284, 288 (E.D.N.Y. 2014)).

17          Here, because the Texas Plaintiffs deliberately misled Defendants as to the actual amount

18   in controversy at the time of filing their original petitions and for over a year thereafter, and because they

19   engaged in clear manipulation to prevent removal, the one-year limitation was equitably tolled, and

20   VWGoA's prompt removal following receipt of the demand letters was timely.

21   **I.    Plaintiffs' Misrepresentation That Each Plaintiff Would Not Seek More Than $75,000 in
          Damages Indicates Bad Faith.**

22

23          Plaintiffs' misrepresentations in their original petitions that they would not seek or accept

24   damages in excess of $75,000 are the quintessential example of bad faith under 28 U.S.C. § 1446.   "The

25   plain meaning of the rule [defining bad faith] suggests that the Plaintiff must possess an intent to avoid

26

27   VWGoA's removal of the *Ballariano* action, and "it is well established that an amended petition cannot
     operate to defeat jurisdiction of a case that was properly removed."   *Cavallini* v. *State Farm Mut. Auto*
28   *Ins. Co.*, 44 F.3d 256, 260 n. 8 (5th Cir. 1995).   Beveridge's affidavit should be viewed as an improper
     post-removal attempt to defeat diversity.

1    removal through the concealment of the amount in controversy." *ALC Holding LLC* v. *Federated Serv.*

2    *Ins. Co.*, 2015 WL 9312081, at *4 (D. Ariz. Dec. 23, 2015)  Where, as here, plaintiffs' representations as

3    to the amount in controversy have changed over time, courts in this Circuit treat two factors as

4    particularly relevant to the "intent to avoid" inquiry:  (1) the timing of amendment, *see Craig* v. *MTD*

5    *Prods. Co.*, 2016 WL 6090899, at *3 (E.D. Cal. Oct. 18, 2016), and (2) the presence or absence of good-

6    faith explanations for the increase in the requested recovery, *see Heller*, 2016 WL 1170891, at *3.

7              The Texas Plaintiffs check every box for a deliberate misrepresentation.  In all but four of

8    the original petitions (and, notably, in every petition actually served on VWGoA), Plaintiffs represented

9    that they did "not seek damages in excess of $74,500, [would] not seek damages in excess of $74,500,

10   and [would] not accept a judgment in excess of $74,500, exclusive of interests and costs."  *See, e.g.,*

11   Bacon Orig. Compl. 12.  These unequivocal representations held constant for over a year in the eight

12   cases at issue here, until suddenly in mid-July of this year, the Texas Firms gave notice that *each*

13   *plaintiff's* asserted damages had increased to the same exact amount—irrespective of the make, model, or

14   year of the plaintiff's vehicle, whether the vehicle was sold or leased, when the vehicle was acquired or

15   disposed of, or any other factors that would differentiate the claimed amount of economic damages for

16   each Plaintiff.

17             In an attempt to justify their about-face, Plaintiffs now contend that they only recently

18   learned "powerful evidence [that] led Plaintiffs to understand that there was now an additional culpable

19   Defendant . . . and that Plaintiffs were entitled to significantly more in damages, both actual damages as

20   well as punitive and additional damages, than was previously understood when this lawsuit was

21   originally filed."  *See, e.g.*, Alford Memo of Points and Authorities 2.  Specifically, Plaintiffs cite to

22   Volkswagen AG's March 2017 guilty plea as evidence that (1) justifies suing "an additional culpable

23   Defendant . . . for additional damages"; (2) "makes the case against [VWGoA] much stronger and more

24   valuable"; and (3) supports an "additional cause of action for fraud under Texas law . . . for which," at

25   least according to Plaintiffs, "punitive damages are not limited."  *Id.*  Tellingly, Plaintiffs did not

26   reference Volkswagen AG's guilty plea or any other supposedly new evidence when they made their

27   demand for increased damages in their July 2017 demand letters.  *See* Hartline Decl., ¶ 3.

28

1     ***Plaintiffs' Explanation for their Delay Is Not Credible.*** Plaintiffs' attempt to excuse

2 their delay by pointing to the March 2017 Volkswagen AG plea rings hollow, for at least two reasons:

3 *First*, the "new" development of Volkswagen AG's plea does not justify waiting until July and August

4 2017 to demand additional damages, because the development was not "new" in the summer of 2017.

5 The Department of Justice announced Volkswagen AG's agreement to plead guilty on January 11, 2017.[9]

6 Yet the Texas Plaintiffs did not amend their petitions until August 14, 2017, seven months after the

7 information was publicly available and five months after the actual plea.

8     *Second*, news of the plea agreement was by no means the first indication that claims could

9 be brought—and indeed, had been brought, including by one of the Texas Firms—against Volkswagen

10 AG.  For example:

11    • On September 18, 2015, the EPA issued a Notice of Violation against Volkswagen AG alleging

12      the installation of "defeat devices" in 2.0-liter diesel engines. *See* Trans. Order at 2, ECF No. 1.

13    • On September 20, 2015, then-CEO of Volkswagen AG, Martin Winterkorn, stated: "I personally

14      am deeply sorry that we have broken the trust of our customers and the public."[10]

15    • On December 23, 2015, at the first MDL conference, this Court stated that Volkswagen AG's

16      admissions "may very well give rise to liability."[11]

17    • On January 4, 2016, the Department of Justice, on behalf of the EPA, sued Volkswagen AG

18      alleging violations of the Clean Air Act.

19    • On January 21, 2016, the Plaintiffs' Steering Committee was established, and Michael Heygood,

20      one of the lawyers for the Texas Plaintiffs here, was named a member.  PTO 7, ECF No. 1084.

21      The Plaintiffs' Steering Committee, on which Mr. Heygood sat (and still sits) then proceeded to

22      name Volkswagen AG as a defendant in three separate Consolidated Class Action Complaints

23

24

---

25 [9]     *See*         https://www.justice.gov/opa/pr/volkswagen-ag-agrees-plead-guilty-and-pay-43-billion-criminal-and-civil-penalties-six; *see also* https://www.epa.gov/newsreleases/volkswagen-agrees-plead-

26 guilty-pay-43-billion-criminal-and-civil-penalties.

27 [10]    *See* https://www.volkswagen-media-services.com/en/detailpage/-/detail/Statement-of-Prof-Dr-Martin-Winterkorn-CEO-of-Volkswagen-AG/view/2709406/7 a5bbec13158edd433c6630f5ac445da?
p_p_auth=kuwI3uk6

28 [11]    ECF No. 365 at 4–5.

1   filed on February 22, 2016, including one complaint filed on behalf of a putative class of Texas

2   consumers. ECF No. 1230.

3   • On August 31, 2016, news outlets reported that a final settlement between U.S. authorities and

4   Volkswagen AG could be reached as soon as October.[12]

5   Any of these events were enough for the Texas Plaintiffs to realize that they may have a claim against

6   Volkswagen AG.  Importantly, all of these developments occurred within one year of October 2015,

7   when Plaintiffs first brought suit.  In fact, leaving to the side the complaints Mr. Heygood filed as a

8   member of the Plaintiffs' Steering Committee, numerous other plaintiffs brought individual claims

9   against Volkswagen AG in September and October 2015 (and throughout 2016).[13]   Had Plaintiffs

10  amended their petitions following any of these developments, VWGoA would have been free to remove

11  within 30 days.  *See* 28 U.S.C. § 1446(b)(3) ("if the case stated by the initial pleading is not removable, a

12  notice of removal may be filed within thirty days after receipt" of an amended pleading that is

13  removable).  Instead, Plaintiffs strategically waited more than a year to renege on the representations in

14  their original petitions and suddenly demand damages well in excess of $75,000.

15           ***Plaintiffs' Assertion that Potential Damages Have Suddenly Increased Is Not Credible.***

16  Plaintiffs' argument that Volkswagen AG's plea allows them to plead additional damages likewise does

17  not hold water.  Plaintiffs assert, wrongly, that the "new" evidence provided by the guilty plea enables

18  them to name an "additional culpable defendant," *see, e.g.*, Alford Memo of Points and Authorities 2, but

19  even if that were so, it would not increase potential damages.   First, Plaintiffs fail to explain (indeed, it

20  would be impossible to do so) why the economic damages that they incurred—*i.e.*, the alleged

21  "diminished value of their Vehicles"—would somehow be greater as a result of Volkswagen AG's plea.

22  Second, the fact that Plaintiffs have named *two* defendants on each of their counts does not increase the

23  damages recoverable on any single claim.  *See Stewart Title Guar. Co.* v. *Sterling,* 822 S.W.2d 1, 6 (Tex.

24  1991) ("There is no reason we should allow a windfall double recovery in cases involving multiple

25  _____

26  [12]    *See*    http://fortune.com/2016/08/31/vw-could-reach-a-final-u-s-settlement-by-october-says-audi-exec/.

27  [13]    *See, e.g., Lowrance* v. *Volkswagen AG, C.A.* No. 0:15-cv-61993 (S.D. Fla.) (filed Sept. 21, 2015);
    *D'Angelo* v. *Volkswagen AG, et. al,* C.A. No. 2:15-cv-07390 (C.D. Cal.) (filed Sept. 21, 2015);

28  *Silverman* v. *Volkswagen AG*, C.A. No. 1:15-cv-03332 (N.D. Ga.) (filed Sept. 22, 2015);  *Lamproe* v.
    *Volkswagen AG, et. al*., C.A. No. 2:15-cv-02221 (W.D. Ark.) (filed Oct. 14, 2015).

1  defendants when double recovery is clearly prohibited against a single defendant.").   Third, although

2  Plaintiffs theorize that the Volkswagen AG plea "makes the case against [VWGoA] much stronger and

3  more valuable," *see, e.g.*, Alford Memo of Points and Authorities at 2,   the perceived strength of a

4  plaintiff's case does not affect the *actual damages* suffered by a plaintiff.[14]

5           Nor does *Volkswagen AG*'s plea newly justify the Texas Plaintiffs' request for punitive

6  damages against *VWGoA*.   Plaintiffs argue that the plea admits to a "corporate decision" by VWGoA,

7  and fraud by VWGoA will therefore be easier to establish.[15]   *See, e.g.*, Alford Memo of Points and

8  Authorities at 8-9.  But even if Volkswagen AG's plea could somehow be imputed to VWGoA (a point

9  VWGoA contests), the new addition of a claim for fraud—and, relatedly, punitive damages for fraud—

10  that plaintiffs assert because of the supposed revelation of a "corporate decision" (as opposed to the acts

11  of "rogue engineers") does not differ in substance from the allegations in their original complaints.   In

12  their original complaints, the Texas Plaintiffs alleged that VWGoA had engaged in "fraudulent business

13  practices," including "advertising goods or services *with intent* not to sell them as advertised" and

14  "failing to disclose information concerning goods . . . *which was known* at the time of the transaction."

15  *See, e.g.,* Ex. E (*Ahrens* Orig. Compl.), ¶ 90.  Even with respect to Volkswagen AG, the plea does not

16  support Plaintiffs' contention that they are entitled to "additional damages."  Indeed, the plea in question

17  admitted only that Volkswagen AG had made misrepresentations to the U.S. government, not to owners.

18           Plaintiffs' decision to add claims for fraud and punitive damages was not the result of new

19  facts, or the ability to prove new wrongdoing, but a strategic choice, reflective of their judgment that the

20  one-year period for removal had to elapse before they increased their *ad damnum*.   Given the widely

21  publicized reports of Volkswagen AG's conduct, admissions, and efforts to take responsibility, the Texas

22  Plaintiffs cannot claim that prior 2017 they somehow lacked notice of the claims now asserted and

23  damages now sought in their amended petitions.

24  ───────────────

[14]    The damages for claims under the Texas Deceptive Trade Practices Act are limited by the
25  economic loss suffered by the individual (subject to potential trebling), *see* Tex. Bus. & Com. Code §
17.50.  A "stronger" claim is not "more valuable" when it comes to calculating damages.

26  [15]    Plaintiffs' focus on this supposed "corporate decision" appears to be an attempt to parrot the
27  language in the Tex. Civ. Prac. & Rem. Code Ann. that specifies that punitive damages may be awarded
against a corporation for the criminal conduct of its agent if the plaintiff shows "the [corporation]
authorized the doing and the manner of the act" or "the employer or a manager of the employer ratified
28  or approved the act." Tex. Civ. Prac. & Rem. Code Ann. § 41.005.

1    **II.      Plaintiffs' Blatant Forum and Complaint Manipulation Shows Bad Faith.**

2                Courts in this Circuit have held that any type of "strategic gamesmanship to prevent a

3    defendant's removal from state court" qualifies as a bad-faith tactic that warrants equitable tolling of the

4    one-year removal limitation.  *Heller*, 2016 WL 1170891, at *3.  In addition to their misrepresentations as

5    to the amount they seek in recovery, the Texas Plaintiffs have engaged in two broad categories of

6    strategic gamesmanship that manifest obvious bad faith on their part:  failing to timely serve VWGoA in

7    certain actions the Texas Firms strategically selected, and "realigning" cases to avoid removal.

8            **A.      Refusal to Serve VWGoA**

9                A common example of gamesmanship evidencing bad faith is plaintiffs' failure to

10   properly serve defendants until the removal window has elapsed.  *See In re Boston Scientific Corp.*, 2015

11   WL 6456528, at *6 (C.D. Cal. Oct. 26, 2015) ("Previous examples of bad faith include removal-

12   defeating strategies such as fraudulently joining parties to destroy diversity or refraining to serve

13   defendants until the passage of the one-year deadline.");  *Escalante*  v.  *Burlington Nat. Indem., Ltd.*, 2014

14   WL 6670002, at *4 (C.D. Cal. Nov. 24, 2014) ("[Defendant] is correct in asserting that failure to serve

15   defendants within a year can be construed as bad faith.").

16               The Texas Plaintiffs have engaged in such tactics.  For 22 of the 79 cases those Plaintiffs

17   filed, they never served the complaints at all.  When VWGoA learned of the complaints and answered

18   them without having been served,[16] nine of the cases were more than a year old—but twelve were not.

19   Dissatisfied with these results, the Texas Plaintiffs nonsuited all of the un-served cases as well as all

20   cases that were more than a year old and shuffled those plaintiffs into more-than-a-year-old lawsuits, as

21   described below.  Counsel's failure to promptly serve VWGoA with these lawsuits was plainly an effort

22   to run out the removal clock.

23           **B.      Illogical Realignment of Cases and Plaintiffs**

24               The so-called "realignment" of these cases is perhaps the clearest example of Plaintiffs'

25   blatant attempts at forum manipulation.  "The bad faith exception . . . applies to plaintiffs who joined—

26   and then, after one year, dismissed—defendants whom they *could* keep in the suit, but that they did not

27

28   ---

     [16]         Ex. F (August 11, 2017 Texas MDL Consolidated Answer).

1   want to keep in the suit, except as removal spoilers." *Heller*, 2016 WL 1170891, at *2 (internal

2   quotation marks and citation omitted) (emphasis in original).  A similar species of gamesmanship is on

3   display here, where the Texas Plaintiffs have nonsuited and refiled lawsuits and shuffled around

4   Plaintiffs with no rhyme or reason other than their effort to skirt the jurisdictional bounds of 28 U.S.C.

5   § 1332.

6   　　　　　In their motions to remand, the Texas Plaintiffs contend that the reorganization of their

7   cases was principally motivated by a desire to "make the litigation more efficient" and to "dismiss the

8   claims of all clients who had settled."  *See*, *e.g.*, Bilyeu Mot. Remand at 10, ECF No. 3788-1.  Those

9   soundbites, however, do not account for the changes Plaintiffs actually made.  As a threshold matter, it is

10  difficult to see how judicial efficiency *in an MDL*—whether in state court or federal—is served by

11  consolidating numerous cases with a few plaintiffs into a few cases with numerous plaintiffs.  Moreover,

12  if the Texas Plaintiffs' objective was to exclude those Plaintiffs who had settled, the logical step would

13  have been to simply dismiss those Plaintiffs from their existing cases, not to dismiss entire lawsuits and

14  shuffle Plaintiffs around.  In addition, Plaintiffs' explanation is unpersuasive in light of the fact that the

15  "realignment" did not actually remove many Plaintiffs who have settled their claims.  For example, in the

16  *Bradshaw* complaint alone, No. 3:17-cv-05071, ECF No. 1-7, there remain 35 plaintiffs who opted back

17  in to the MDL settlements, including lead plaintiffs Nick Bradshaw and Lauren Bradshaw.  *See*

18  Stipulation and Order Permitting Certain Individuals to Revoke their Opt-Outs and Participate in the 2.0-

19  Liter and 3.0-Liter Consumer Class Action Settlements, ECF No. 3885; *see also* Supplemental

20  Stipulation and Order Permitting Certain Individuals to Revoke Their Opt-Outs and Participate in the

21  2.0-Liter and 3.0-Liter Consumer Class Action Settlements, ECF No. 4169.  These Plaintiffs do not have

22  valid claims remaining and should be dismissed from these cases, but the key point for these purposes is

23  that the explanation proffered by the Texas Firms is belied by the facts.

24  　　　　　The timing of the reshuffling also indicates jurisdictional gamesmanship. The Texas

25  Plaintiffs suggest that it was simply a coincidence that the nonsuiting of cases susceptible to removal and

26  the reshuffling of plaintiffs occurred mere hours after VWGoA began removing cases.  In their motions

27  to remand, Plaintiffs contend that they "did not learn that Defendants had removed the lawsuit hours

28  before the amendment [to add recently nonsuited plaintiffs to the cases before the court] until after the

1    amendment was filed." *See, e.g.*, Bilyeu Memo of Points and Authorities, ECF No. 3788-1 at 9, n. 4.

2    Plaintiffs' statements that they simply filed their amendments at a fortuitous time and were unaware of

3    the ongoing removal of their cases are belied by the fact that Plaintiffs' counsel had been informed of

4    VWGoA's plan to remove all diverse cases three days prior.  *See* Hartline Decl., ¶ 4.  The timing,

5    combined with Plaintiffs' forewarning that removal was coming, strongly indicates bad-faith

6    manipulation.

7           The following example illustrates the Texas Plaintiffs' tactics.  Plaintiff Olufemi Abiodun

8    filed his original complaint on March 17, 2017, in the 134th District Court for Dallas County, Texas.  Ex.

9    A (Abiodun Compl.).  Abiodun's complaint did not limit damages to less than $75,000, and instead

10   requested "an amount less than $200,000, exclusive of costs and interest."  *Id.* ¶ 2.  Abiodun never served

11   VWGoA.  On August 14, 2017, VWGoA removed Abiodun's case to federal court.  *See* Ex. H.

12   (Amended Consolidated Notice of Removal), at 1.  Later that day—and, according to Plaintiffs, purely

13   coincidentally—Abiodun filed a notice of nonsuit voluntarily dismissing his claims.  Ex. J (Abiodun Not.

14   Nonsuit).  And then, later *the same day*, Abiodun was added, through an amended petition, to a case that

15   was originally filed in *October 2015*.  *See* Ex. K (Cano Am. Compl.).  Abiodun was one of 61 new

16   plaintiffs funneled into this older case.  As a result of Plaintiffs' so-called "realignment," this case

17   originally filed in October 2015 retained just one of the original plaintiffs and was joined by 61 new

18   plaintiffs.  *Compare* Cano Compl., No. 3:17-cv-05154, ECF No. 1-7 *with* Ex. K (Cano Am. Compl.)

19   (retaining only Mitchell Davis from the original plaintiffs).  And Abiodun—along with other plaintiffs

20   just like him—who filed his original complaint earlier this year and requested up to $200,000 in

21   damages—is now seeking remand on the ground that his case is time-barred from removal.  *See* ECF No.

22   3797-1.

23          As the foregoing example demonstrates, the "realignment" was a careful pruning of the

24   cases most vulnerable to removal, including all cases that were less than a year old and the four un-

25   served cases in which the original *ad damnum* did not limit damages to less than $75,000.  This is clear

26   evidence of bad faith.

27                                            *  *  *

28          The conduct set forth above demonstrates the pains that Plaintiffs have taken to avoid

jurisdiction in federal court.  The Texas Plaintiffs have engaged in numerous species of bad faith—intentionally misrepresenting their demands for damages; filing and then nonsuiting cases, dismissing and reshuffling the plaintiffs in each case; and failing to serve VWGoA for over a year—any one of which would warrant equitable tolling of the one-year limitation under 28 U.S.C. § 1446(c).  Once the Texas Plaintiffs showed their true intentions of seeking recovery above the jurisdictional threshold, VWGoA promptly sought removal.  VWGoA should not be penalized for Plaintiffs' gamesmanship.

## CONCLUSION

VWGoA respectfully requests that this Court deny the Texas Plaintiffs' motions to remand.

Dated:       November 3, 2017                       Respectfully submitted,

*/s/ William B. Monahan*
Robert J. Giuffra, Jr. (*pro hac vice*)
giuffrar@sullcrom.com
Sharon L. Nelles (*pro hac vice*)
nelless@sullcrom.com
William B. Monahan (*pro hac vice*)
monahanw@sullcrom.com
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

Laura Kabler Oswell
(State Bar No. 241281)
SULLIVAN & CROMWELL LLP
1870 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 461-5600
Facsimile: (650) 461-5700

*Counsel for Volkswagen Group of America, Inc.*