CHARLES MILLER, ESQ./SBN: 276523
MICHAEL E. HEYGOOD, ESQ.
**HEYGOOD, ORR & PEARSON**
6363 North State Highway 161
Suite 450
Irving, Texas 75038
Telephone: (214) 237-9001
Facsimile: (214) 237-9002

**Attorneys for Plaintiffs**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No. 3:15-md-02672-CRB |
| This Document Relates to: ) | **PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR AN ORDER REMANDING CASES TO TEXAS STATE COURT** |
| ECF Nos. 3784, 3786, 3787, 3788, 3793 ) 3794, 3797, 3800 ) | |
| Alaniz, et al. v. Volkswagen Group of ) America, Inc., et al. ) Case No. 3:17-cv-05071 ) | The Honorable Charles Breyer |
| Allen, et al. v. Volkswagen Group of ) America, Inc., et al. ) Case No. 3:17-cv-05149 ) | Hearing Date: TBD |
| Asmussen, et al. v. Volkswagen Group of ) America, Inc., et al. ) Case No. 3:17-cv-05151 ) | |
| Bilyeu, et al. v. Volkswagen Group of ) America, Inc., et al. ) Case No. 3:17-cv-05074 ) | |

Alford, et al. v. Volkswagen Group of )
America, Inc., et al. )
Case No. 3:17-cv-05152 )
)
August, et al. v. Volkswagen Group of )
America, Inc., et al. )
Case No. 3:17-cv-05089 )
)
Cano, et al. v. Volkswagen Group of )
America, Inc., et al. )
Case No. 3:17-cv-05154 )
)
Azam, et al. v. Volkswagen Group of )
America, Inc., et al. )
Case No. 3:17-cv-05153 )

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................ii

SUMMARY OF THE ARGUMENT .......................................................................................1

ARGUMENT ...........................................................................................................................2

I.   VWoA cannot demonstrate that Plaintiffs acted in bad faith when they initially filed suit in
October 2015. ...............................................................................................................2

    A.   To show bad faith, VWoA must demonstrate that Plaintiffs knew their claims were
worth more than $75,000 when they filed suit and intended to increase their ad
damnum once one year had elapsed. ..........................................................................2

    B.   Defendant cannot satisfy its heavy burden of showing bad faith simply by pointing to
the fact that Plaintiffs amended their petition after more than one year to seek
increased damages in light of new information. ..........................................................5

    C.   There can be no bad faith where plaintiffs offer a plausible explanation for their
amended pleading ...................................................................................................7

        1.   The dramatic developments that occurred after Plaintiffs first filed suit in
October 2015 provide a plausible explanation for their amendments. .......8

        2.   The significant amendments to Plaintiffs' pleadings provide a plausible
explanation for the increase in their requested damages ........................12

    D.   Defendant cannot demonstrate that it was somehow misled by Plaintiffs' initial
statements that their damages were less than $75,000 ...............................................14

    E.   Plaintiffs' failure to serve the original complaints does not show bad faith ...............15

    F.   Plaintiff's recent consolidation of cases does not show bad faith ...............................16

CONCLUSION.......................................................................................................................16

CERTIFICATE OF SERVICE ...............................................................................................17

i

1
2

**TABLE OF AUTHORITIES**

**Cases**

3

*Aguayo v. AMCO Ins. Co.,*
  59 F. Supp. 3d 1225, 1273 (D. N.M. 2014) ...................................................... 4, 7, 16

4
5

*ALC Holding, LLC v. Federated Service Ins. Co.,*
  No. CV-15-08162, 2015 WL 9312081 (D. Ariz. Dec. 23, 2015) ............................. 4

6
7

*Alt v. Nat'l R.R. Passenger Corp.,*
  No. SAG-15-1529, 2015 WL 7294365 (D. Md. Nov. 19, 2015)............................ 3, 9

8
9

*Blue v. Equifax Info. Services, LLC,*
  No. C 06-06349, 2007 WL 602295 at *3 (N.D. Cal. Feb. 22, 2007)......................... 14

10
11

*Bonnel v. Best Buy Stores, L.P.,*
  881 F. Supp. 2d 1164, 1169 (N.D. Cal. Aug. 7, 2012) .................................. 2, 3, 9

12
13

*Brazell v. General Motors, LLC,*
  No. 6:14-4588-TMC, 2015 WL 1486932 at *4 (D. S.C. March 30, 2015) ........................ 4, 16

14
15

*Craig v. MTD Products Co.,*
  No. 2:16-cv-00480, 2016 WL 6090899 at *3 (E.D. Cal. Oct. 18, 2016)................................. 5

16

*Escalante v. Burlington Nat. Indemn., Ltd.,*
  No. 2:14-CV-7237, 2014 WL 6670002 at *3 (C.D. Cal. Nov. 24, 2014)................................. 2

17
18

*Gaus v. Mills,*
   980 F.2d 564, 566 (9th Cir. 1992) ....................................................... 14

19
20

*Grabicki v. Bays,*
  No. 13-CV, 0406-TOR, 2014 WL 535044 at *3 (E.D. Wash. Feb. 10, 2014) ........................ 15

21
22

*Hackney v. Golden Girl, Inc.,*
  No. 3:16-06569, 2016 WL 6634898 at *3 (S.D. W.Va. Nov. 8, 2016) ...................................... 3

23
24

*Hamilton San Diego Apartments, LP v. RBC Capital Markets, LLC,*
  14CV01856 WQH BLM, 2014 WL 7175598 at *3 (S.D. Cal. Dec. 11, 2014)............... 6, 7, 13

25

*Heller v. Am. States Ins. Co.,*
  CV-159771, 2016 WL 1170891 at *3 (C.D. Cal. March 25, 2016) ...................................... 7, 8

26
27

*Hill v. Allianz Life Ins. Co. of N. Am.,*
  51 F. Supp. 3d 1277, 1282 (M.D. Fla. 2014)............................................................ 8

28

*Jackson v. Specialized Loan Servicing, LLC,*
  No. CV 14-05981 MMM, 2014 WL 5514142 at *11 (C.D. Cal. Oct. 31, 2014) ...................... 3

*Johnson v. HCR Manorcare LLC,*
  No. 1:15CV189, 2015 WL 6511301 at *4 (N.D. W. Va. Oct. 28, 2015) ........................ 4, 7, 16

*Jones v. ADT Sec. Services, Inc.,*
  No. CV 11-7750 PSG, 2012 WL 12744 at *6 (C.D. Cal. Jan. 3, 2012) ..................................... 4

*Kulaas v. State Farm,*
  No. C132-485RSM, 2013 WL 2627138 at *3 (W.D. Wash. June 11, 2013) ........................... 6

*Lujan v. Alorica, Inc.,*
  No. EP-15-CV-335-KC, 2016 WL 8857008 at *8 (W.D. Tex. May 24, 2016)................. 5, 7, 8

*Luna v. Kemira Specialty, Inc.,*
  575 F. Supp. 2d 1166, 1172 (C.D. Cal. 2008) ...................................................................... 14

*Miami Beach Cosmetic & Plastic Surgery Ctr., Inc. v. United Healthcare Ins. Co.,*
  1:15-CV-24041-UU, 2016 WL 8607846, at *5 (S.D. Fla. Jan. 8, 2016)........................ 6, 7, 13

*NKD Diversified Enterprises, Inc. v. First Mercury Ins. Co.,*
  1:14-CV-00183-AWI, 2014 WL 671659, at *3 (E.D. Cal. Apr. 28, 2014) ........................... 2, 6

*Padgett v. Cigna Corp.,*
  Civil No. 07–00200 DAE–LEK, 2008 WL 639165 at *6 (D. Haw. Mar.6, 2008)................... 3

*Patel v. Nike Retail Services, Inc.,*
  58 F. Supp. 3d 1032, 1038 (C.D. Cal. 2014) .......................................................................... 3

*Schwenk v. Cobra Mfg. Co.,*
  322 F. Supp. 2d 676, 678 (E.D. Va. 2004) ..................................................................... 2, 4, 9

*Shorraw v. Bell,*
  4:15-CV-03998-JMC, 2016 WL 3586675 at *5 (D.S.C. July 5, 2016) .................................... 2

*Thompson v. Belk, Inc.,*
  1:13–CV–1412–WSD, 2013 WL 5786587 at *3 (N.D.Ga. Oct. 28, 2013) .............................. 4

*Trokey v. Great Plains Roofing and Sheet Metal, Inc.,*
  No. 4:16-cv-01193, 2017 WL 722607 at *2 (W.D. Mo. Feb. 23, 2017) .................................. 7

*Zazueta v. Morningstar Mortgage, LLC,*
  No. 3:16-cv-05893, 2017 WL 74682 at *3 (W.D. Wash. Jan. 9, 2017) ............................... 6, 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**Statutes**

28 U.S.C. § 1446(c)(1) ............................................................................................. 2

Tex. Bus. Comm. Code § 17.50(b)(1) ...................................................................... 10

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SUMMARY OF THE ARGUMENT

Despite the efforts of Volkswagen Group of America ("VWoA") to reframe the issue, the issue before the Court is not whether Plaintiffs should have sued Volkswagen AG ("VWAG") sooner than they did.  Rather, the issue is whether Plaintiffs acted in bad faith when they first sued VWoA and sought less than $75,000 in damages.  Defendant's Response ignores this critical distinction by focusing not on what Plaintiffs knew or intended when they filed suit in October 2015, just one month after the Dieselgate scandal erupted, but what they learned in the months and years thereafter.  Rather than showing that Plaintiffs knew their claims were worth more than $75,000 when they filed suit and intended to seek increased damages after one year had elapsed, Defendant's Response instead sets out to prove merely that Plaintiffs could have sued VWAG earlier than August 2017.  This misguided strategy is nothing more than a transparent attempt to distract this Court from the complete lack of any evidence of forum manipulation or bad faith.

The evidence submitted herewith and with Plaintiffs' Motion demonstrates conclusively that Plaintiffs fully intended to limit their damages to $75,000 when they first filed suit and had no predetermined plan to amend their petitions to seek increased damages once one year had elapsed.  Rather, VWAG's criminal plea agreement led Plaintiffs to amend their petitions <u>nearly two years after they filed suit</u> in order to add VWAG as a defendant, assert a claim for fraud, seek punitive damages and increase their demand to an amount in excess of $75,000.  Neither the timing nor substance of Plaintiffs' amended pleadings provides evidence of bad faith. Rather, courts have found bad faith only where, unlike here, a plaintiff offered no explanation for its amended pleadings and where its amended pleading added no new parties, facts or claims.

Nor can VWoA cobble together evidence of bad faith by pointing to Plaintiffs' lack of service of their petitions, especially where the uncontroverted evidence is that VWoA knew of the petitions at the time they were filed.  Finally, Plaintiffs' recent realignment and consolidation of their petitions nearly two years after they filed suit similarly provides no evidence of bad faith. Under the facts here, VWoA has not met the high threshold of proving bad faith.  The removed cases should therefore be remanded to Texas state court.

1

# ARGUMENT

**I.    VWoA cannot demonstrate that Plaintiffs acted in bad faith when they initially filed suit in October 2015**.

    **A.    To show bad faith, VWoA must demonstrate that Plaintiffs knew their claims were worth more than $75,000 when they filed suit and intended to increase their ad damnum once one year had elapsed**.

       Courts have described the bad faith exception to the one-year bar in 28 U.S.C. § 1446(c)(1) as "limited in scope" and imposing "an arduous burden that requires evidence of forum manipulation." *Shorraw v. Bell,* 4:15-CV-03998-JMC, 2016 WL 3586675 at *5 (D. S.C. July 5, 2016); *NKD Diversified Enterprises, Inc. v. First Mercury Ins. Co.,* 1:14-CV-00183-AWI, 2014 WL 671659 at *3 (E.D. Cal. Apr. 28, 2014) ("[T]he requirement that a party acts in bad faith sets a high threshold."); *Escalante v. Burlington Nat. Indemn., Ltd.,* No. 2:14-CV-7237, 2014 WL 6670002 at *3 (C.D. Cal. Nov. 24, 2014) (bad faith requires showing that a party "recklessly rais[ed]a frivolous argument or disrupt[ed] and hinder[ed] court proceedings").   In order to demonstrate bar faith under the facts here, VWoA must show that Plaintiffs misled it into believing that their true damages were less than $75,000 when they actually intended all along to seek more damages after one year had passed.  *See, e.g., Bonnel v. Best Buy Stores, L.P.,* 881 F. Supp. 2d 1164, 1169 (N.D. Cal. Aug. 7, 2012) ("Bad faith would alter the applicable standard of review where a Plaintiff pleads in such a way as to avoid federal jurisdiction, but does so knowing that the claims made actually seek an amount above the jurisdictional threshold."); *Schwenk v. Cobra Mfg. Co.,* 322 F. Supp. 2d 676, 678 (E.D. Va. 2004) ("The Plaintiff's demand for $74,000 in the Motion for Judgment, knowing that he will eventually amend to demand a sum well in excess of $75,000 . . . . constitutes bad faith").  As one court has explained, those cases finding bad faith:

        were predicated on the plaintiffs in those cases having had actual knowledge, at the time they filed their complaints in state court, that their claims were worth more than the amount they sought. Those plaintiffs also maintained plans to amend their complaints to seek more damages, but still claimed lesser amounts for the specific purposes of avoiding removal based on diversity jurisdiction and preserving a basis for remand.

*Alt v. Nat'l R.R. Passenger Corp.,* No. SAG-15-1529, 2015 WL 7294365 at *3 (D. Md. Nov. 19, 2015).  Consistent with this case law, Defendant tacitly admits that it is its burden to show that Plaintiffs knew their claims were worth more than $75000 when they filed suit and yet intended to increase their damages after one year had elapsed.  Dkt-4237 at 2 (asserting that Plaintiffs' realignment of claims is "telling evidence that the Texas Plaintiffs' entire plan from the get-go was to avoid removal and then increase their ad damnum once the year period had elapsed.").

   The reason a defendant asserting bad faith must demonstrate that the plaintiff fraudulently -- that is, with the intent to later increase their damages once one year has passed -- understated his damages is because plaintiffs are "masters of their complaint" and are permitted to limit their damages or their claims in order to avoid federal jurisdiction:

> It is axiomatic that plaintiffs are "master[s] of [their] complaint." "[I]f [plaintiffs] do not desire to try [their] case in the federal court, [they] may resort to the expedient of suing for less than the jurisdictional amount, and though [they] would be justly entitled to more, the defendant cannot remove."

*Jackson v. Specialized Loan Servicing, LLC,* No. CV 14-05981 MMM, 2014 WL 5514142 at *11 (C.D. Cal. Oct. 31, 2014); *see also Bonnel,* 881 F. Supp. 2d at 1169 ("The Ninth Circuit holds that 'a plaintiff may sue for less than the amount she may be entitled to if she wishes to avoid federal jurisdiction and remain in state court. In as much as Defendant asserts that Plaintiff excludes certain allegations to avoid federal jurisdiction, such a pleading is not itself bad faith."); *Patel v. Nike Retail Services, Inc.,* 58 F. Supp. 3d 1032, 1038 (C.D. Cal. 2014); ("Federal courts permit individual plaintiffs, who are the masters of their complaints, to avoid removal to federal court, and to obtain a remand to state court, by stipulating to amounts at issue that fall below the federal jurisdictional requirement"); *Padgett v. Cigna Corp.,* Civil No. 07–00200 DAE–LEK, 2008 WL 639165 at *6 (D. Haw. Mar.6, 2008) ("Plaintiff was free to sue for less than he may be entitled to recover in order to stay in state court. Plaintiff apparently chose to forego seeking the reinstatement of benefits to avoid federal jurisdiction.  Defendants have not pointed to any evidence which indicates that Plaintiff did so in bad faith."); *Hackney v. Golden Girl, Inc.,* No. 3:16-06569, 2016 WL 6634898 at *3 (S.D. W.Va. Nov. 8, 2016) ("But even if she was trying to avoid federal jurisdiction and thought not joining Philadelphia would accomplish her goal, Hackney would not

have acted in bad faith.  After all, Hackney was under no obligation to join Philadelphia, and a plaintiff is the master of his or her complaint and may use strategy to defeat federal jurisdiction."); *Aguayo v. AMCO Ins. Co.,* 59 F. Supp. 3d 1225, 1273 (D. N.M. 2014) ("There is nothing wrong with plaintiffs having a preference for state court, nor is there anything inherently invidious or 'bad faith' about using deliberate tactics to defeat federal jurisdiction..").  As masters of their complaints, Plaintiffs "are not obligated to overstate their damages to satisfy the defendant's interest in a federal forum, but may plead conservatively to secure a state forum." *Jones v. ADT Sec. Services, Inc.,* No. CV 11-7750 PSG, 2012 WL 12744 at *6 (C.D. Cal. Jan. 3, 2012); *see also Brazell v. General Motors, LLC,* No. 6:14-4588-TMC, 2015 WL 1486932 at *4 (D. S.C. March 30, 2015) ("Just as a plaintiff who wants a federal forum can forego valid claims against nondiverse defendants to create complete diversity, plaintiffs can forego federal causes of action to defeat federal question jurisdiction, limit recoverable damages to avoid meeting the amount-in-controversy requirement, or allege a colorable claim against a non-diverse defendant.").  Simply put, "[t]he use of strategy to defeat federal jurisdiction does not constitute bad faith." *Johnson v. HCR Manorcare LLC,* No. 1:15CV189, 2015 WL 6511301 at *4 (N.D. W. Va. Oct. 28, 2015)

The few cases that have found a plaintiff who pled for damages less than $75,000 acted in bad faith are cases in which the plaintiff "deliberately failed to disclose the actual amount in controversy to prevent removal." *ALC Holding, LLC v. Federated Service Ins. Co.,* No. CV-15-08162, 2015 WL 9312081 at *4 (D. Ariz. Dec. 23, 2015).  Such failures include refusing to specify a damage amount in an initial pleading, refusing to state an amount of damages in response to discovery requests and admitting to an intent to increase damages after one year had passed.  *See, e.g., Thompson v. Belk, Inc.,* 1:13–CV–1412–WSD, 2013 WL 5786587 at *3 (N.D.Ga. Oct. 28, 2013) (finding bad faith where plaintiff refused to respond to discovery requests regarding her alleged damages—going so far as to voluntarily dismiss her case with the intent of refiling—until the one year removal period expired); *Schwenk v. Cobra Mfg. Co.* 322 F.Supp.2d 676, 678–79 (E.D.Va.2004) (determining bad faith where plaintiff refused to stipulate to an amount in controversy under $75,000 and admitted intending to amend his demand to a sum well in excess of $75,000 after the one year removal period expired); *Craig v. MTD Products Co.,* No. 2:16-cv-

00480, 2016 WL 6090899 at *3 (E.D. Cal. Oct. 18, 2016) (court found bad faith where plaintiff did not specify the amount of damages he was claiming and claimed not to have sufficient knowledge of his damages in response to discovery requests).  None of these facts are present here. Here, Plaintiffs stated in their initial pleading that they were seeking less than $75,000 in damages and never concealed such facts in any discovery responses.  Moreover, Plaintiffs strenuously deny that they intended at the time they filed suit to increase their damages after one year.  Patrick Decl., ¶¶ 5, 8.   In fact, any such intent is refuted by the fact that Plaintiffs' counsel offered to enter into a binding stipulation that Plaintiffs would not seek or recover more than $75,000 in damages. (Patrick Decl., at ¶2, Ex. 8).  Defendant has offered no evidence that Plaintiffs acted in bad faith when they initially filed suit in October 2015.  It certainly has not met the "high burden" of demonstrating that Plaintiffs concealed the true amount in controversy while planning all along to increase their damages after one year had elapsed.

**B.  Defendant cannot satisfy its heavy burden of showing bad faith simply by pointing to the fact that Plaintiffs amended their petition after more than one year to seek increased damages in light of new information**.

Defendant goes to great lengths to try to show that Plaintiffs should have known prior to August 2017 that they had potential claims against VWAG as well as a basis for a fraud claim against all Defendants.  *See* Dkt-4237 at 8.  Not only is it highly doubtful that Plaintiffs could have learned of such potential claims as early as Defendant suggests, it is simply irrelevant.  After all, a plaintiff is under no obligation to immediately bring a claim as soon as he discovers its potential existence.  In *Lujan v. Alorica, Inc.,* No. EP-15-CV-335-KC, 2016 WL 8857008 at *8 (W.D. Tex. May 24, 2016), a defendant who removed a case to federal court after one year argued that the plaintiff acted in bad faith by waiting for one year to elapse before amending his suit to seek increased damages when he knew of such increased damages earlier.  The court rejected this argument, which it characterized as "objectively unreasonable" and explained that:

> though Defendant argues that "Plaintiff is waiting until the last possible minute to file any amended Petition, in an attempt to thwart removal," Defendant fails to point to any Texas law that required Plaintiff to amend his Original Petition due to an increase in damages. Instead, as Plaintiff points out, Texas law allows a plaintiff to amend his complaint to increase the amount of damages even after a verdict.

*Id.* at *8; *see also Zazueta v. Morningstar Mortgage, LLC,* No. 3:16-cv-05893, 2017 WL 74682 at *3 (W.D. Wash. Jan. 9, 2017) ("Defendant argues that Plaintiff knew of the facts underlying the additional claim and damages request, but the plaintiff is the master of the complaint, which may be amended up to and during trial, and the new allegations, by their own terms, do not show an intention to avoid removal."); *Kulaas v. State Farm,* No. C132-485RSM, 2013 WL 2627138 at *3 (W.D. Wash. June 11, 2013) (plaintiff's delay in amending his complaint until new evidence justified amendment was not bad faith; in fact, "plaintiff's care in determining a factual and legal basis for the additional claims suggests proper practice, not bad faith.").

The real issue here is whether Defendant has met its high burden of demonstrating that Plaintiffs somehow anticipated when they filed suit in October 2015, <u>only one month after the Dieselgate scandal broke</u>, that they had valid claims against VWAG as well as a basis for a fraud claim against all Defendants and intended to assert such claims after one year had elapsed. VWoA offers zero evidence to support such an allegation. Indeed, most of the events they point to concern actions that occurred well after Plaintiffs first filed suit. Dkt-4237 at 8.

Instead of offering real evidence of bad faith, Defendant would have the Court believe that the mere fact that Plaintiffs amended their pleadings <u>nearly two years after they filed suit</u> is *prima facie* evidence of bad faith. It most assuredly is not. Numerous courts have held that the mere timing of a plaintiff's actions, including actions taken within a few months after the one-year removal deadline, is no evidence of bad faith. *See, e.g., NKD Diversified Enterprises, Inc. v. First Mercury Ins. Co.,* 1:14-CV-00183-AWI, 2014 WL 671659 at *5 (E.D. Cal. Apr. 28, 2014) ("while the timing of the dismissal of Defendant Giddings may appear suspect, that in itself does not support the contention that Giddings was named to defeat diversity jurisdiction."); *Hamilton San Diego Apartments, LP v. RBC Capital Markets, LLC,* 14CV01856 WQH BLM, 2014 WL 7175598 at *3 (S.D. Cal. Dec. 11, 2014) (court found that plaintiff's dismissal of non-diverse defendant two months after one-year removal deadline expired was "not indicative of bad faith."); *Miami Beach Cosmetic & Plastic Surgery Ctr., Inc. v. United Healthcare Ins. Co.*, 1:15-CV-24041-UU, 2016 WL 8607846 at *5 ("the mere timing of Plaintiff's decision to expand its claims, without more, is insufficient to show bad faith under 28 U.S.C. 1446(c)(1)."); *Trokey v. Great Plains Roofing and*

*Sheet Metal, Inc.,* No. 4:16-cv-01193, 2017 WL 722607 at *2 (W.D. Mo. Feb. 23, 2017) (settlement with and dismissal of non-diverse defendant one month after one-year removal deadline expired was no evidence of bad faith; "the timing of the settlement, without more, does not reach the level of bad faith proscribed by section 1446(c)."); *Aguayo*, 59 F. Supp. 3d at 1277 ("The suspicious timing of a dismissal, a drop in a settlement offer to the removal spoiler after the one-year mark, or an ambiguous comment about how the plaintiff plans to drop the removal spoiler before trial, will not suffice" to show bad faith); *Johnson,* 2015 WL 6511301 at *4 (court found no bad faith where "[o]ther than the suspicious timing, the defendants have presented no evidence that plaintiff's counsel is systematically engaging in forum manipulation.").

## C. There can be no bad faith where plaintiffs offer a plausible explanation for their amended pleading.

It is well-established that it is not bad faith for a plaintiff to expand his or her claims after a year has passed in light of new information. *See, e.g. Miami Beach Cosmetic & Plastic Surgery Ctr.,* 2016 WL 8607846 at *5 (rejecting finding of bad faith because plaintiff had offered a "plausible explanation for expanding its claims" despite having initially claimed damages not in excess of $15,000). Rather, a plaintiff who offers a "plausible explanation" for an amendment after the one-year removal deadline does not act in bad faith as a matter of law. *See Hamilton San Diego Apartments,* 2014 WL 7175598 at *3 (rejecting bad faith argument because the plaintiff "states a plausible explanation for the joinder of WNC in the instant action but failing to join WNC in the initial action"); *Heller v. Am. States Ins. Co.,* CV-159771, 2016 WL 1170891 at *3 (C.D. Cal. March 25, 2016) ("courts have remanded where delays can be reasonably explained."). A plausible explanation can be the receipt of new or additional information. *See, e.g., Miami Beach Cosmetic & Plastic Surgery Ctr.,* 2016 WL 8607846 at *5 (no bad faith where "after undertaking some discovery and additional research, Plaintiff decided to seek relief under multiple contracts"); *Lujan,* 2016 WL 8857008 at *8 (no bad faith where facts showed that plaintiff's damages had increased over time, leading to change in amount of damages sought). Or it can be a legitimate change in strategy. *Miami Beach Cosmetic & Plastic Surgery Ctr.,* 2016 WL 8607846 at *5 (No bad faith where expansion of claims was "consistent with a change in strategy").

By contrast, those cases in which courts have found bad faith involved situations where a plaintiff's pleading amendment was based on no new facts or information or where the plaintiff offered no plausible explanation for its actions. *See, e.g.*, *Hill v. Allianz Life Ins. Co. of N. Am.*, 51 F. Supp. 3d 1277, 1282 (M.D. Fla. 2014) (finding bad faith where "the proposed Amended Complaint contains no additional information that would warrant an increase in the damages sought" and "offers absolutely no plausible reason for the sudden increase in damages aside from bad faith attempts to remain in State court."); *Heller v. Am. States Ins. Co.*, CV-159771, 2016 WL 1170891 at *3 (C.D. Cal. March 25, 2016) (court found bad faith where plaintiff "provided inconsistent explanations" for his failure to dismiss non-diverse defendant before the one-year removal deadline). Here, as set forth more fully in their Motion to Remand and below, Plaintiffs' reasons for amending their petition are not only "plausible," they are compelling and clearly preclude any finding of bad faith.

### 1. The dramatic developments that occurred after Plaintiffs first filed suit in October 2015 provide a plausible explanation for their amendments.

On March 11, 2017, approximately seventeen months after the commencement of this lawsuit, VWAG pled guilty to three felony counts. As a result, Plaintiffs decided to amend their petitions to add VWAG as a defendant, add a claim for fraud and seek more than $75,000 in damages. (Patrick Decl., ¶¶6, 8, 11, 12). Defendant spends four pages of its Response arguing that earlier developments should have informed Plaintiffs that VWAG was a viable defendant and that they therefore should have amended their pleadings earlier than they did. Dkt-4272 at 7-10 ("Any of these events were enough for the Texas Plaintiffs to realize that they may have a claim against Volkswagen AG."). But this entire argument is a massive red herring. The issue is not whether Plaintiffs should have sued VWAG sooner than they did. *See, e.g.*, *Lujan*, 2016 WL 8857008 at *8 ("though Defendant argues that 'Plaintiff is waiting until the last possible minute to file any amended Petition, in an attempt to thwart removal,' Defendant fails to point to any Texas law that required Plaintiff to amend his Original Petition due to an increase in damages. Instead, as Plaintiff points out, Texas law allows a plaintiff to amend his complaint to increase the amount of damages even after a verdict."); *Zazueta*, 2017 WL 74682 at *3 ("Defendant argues that Plaintiff

knew of the facts underlying the additional claim and damages request, but the plaintiff is the master of the complaint, which may be amended up to and during trial, and the new allegations, by their own terms, do not show an intention to avoid removal."). <u>Rather, the issue is whether Plaintiffs acted in bad faith when they sued VWoA in October 2015 and sought less than $75,000 in damage<b>s</b></u>. *See, e.g.*, *Schwenk*, 322 F. Supp. 2d at 678 ("The Plaintiff's demand for $74,000 in the Motion for Judgment, knowing that he will eventually amend to demand a sum well in excess of $75,000 . . . constitutes bad faith").

Nothing in Defendant's Response shows that Plaintiffs knew when they filed suit in October 2015, just one month after the Dieselgate scandal broke, that VWAG was a proper defendant, that they had a viable claim for fraud and that their damages exceeded $75,000.[1] And even if VWoA could prove these facts, there is no evidence that rather than simply deciding to forego a recovery in excess of $75,000 as the price for staying in state court, Plaintiffs' true intent was to wait more than one year and then increase their damage claim. *See, e.g., Bonnel*, 881 F. Supp. 2d at 1169 ("The Ninth Circuit holds that 'a plaintiff may sue for less than the amount she may be entitled to if she wishes to avoid federal jurisdiction and remain in state court. In as much as Defendant asserts that Plaintiff excludes certain allegations to avoid federal jurisdiction, such a pleading is not itself bad faith."); *Alt*, 2015 WL 7294365 at *3 (cases finding bad faith "were predicated on the plaintiffs in those cases having had actual knowledge, at the time they filed their complaints in state court, that their claims were worth more than the amount they sought. Those plaintiffs also maintained plans to amend their complaints to seek more damages").

Rather, the facts demonstrate that dramatic new developments in the case easily explain why Plaintiffs waited until August 2017 to add VWAG, amend their complaints and increase their damages. As the Court is well aware, the scandal regarding Defendant's diesel scheme became public on September 18, 2015, when the Environmental Protection Agency ("EPA") issued a Notice of Violation of the Clean Air Act for installing defeat devices in 2009-2015 Volkswagen and Audi diesel cars equipped with 2.0-liter diesel engines. (Patrick Decl., Ex. 1). On October 8,

---

[1] Nearly all of the events Defendant points to in its Response occurred well after Plaintiffs filed suit in October 2015. Dkt-4237 at 8.

2015 (the same day this lawsuit was originally filed), Michael Horn, CEO of Volkswagen of America, testified under oath before Congress about the VW emissions scandal.   During this congressional testimony, while Horn was apologetic about the emissions problem, he insisted that it was the result of a "couple of software engineers who put this in for whatever reasons." (Horn Tr. at 59, Patrick Decl., Ex. 2.)  He testified repeatedly that the installation of the defeat devices was not a corporate decision.  *Id.* at 59, 60, 72, 105, 110-111.

In their original petition, Plaintiffs named only VWoA and brought a single claim under the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), which allows for, at most, a trebling of actual damages.  (Patrick Decl. ¶ 4; Dkt 1-7).) Tex. Bus. Comm. Code § 17.50(b)(1). Based upon what Plaintiffs knew at the time, Plaintiffs stated in their original petition that individually they were not seeking in excess of $75,000 each.  (Patrick Decl. ¶¶ 4-5.)  This was a reasonable estimate given that Volkswagen of America was claiming that the diesel scheme was not "a corporate decision" but rather the result of a couple of rogue engineers.  *Id.* [2]  Plaintiffs had no intent to seek more than $75,000 and there was no plan to do so after one year had elapsed. (Patrick Decl. ¶¶5, 8.).  In fact, Plaintiffs' counsel offered to enter into a binding stipulation that Plaintiffs would not seek or recover more than $75,000 in damages.  (Patrick Decl., at ¶2, Ex. 8).

On January 11, 2017, well over a year after the filing of this lawsuit, the legal landscape began to significantly change when VWAG was indicted by the United States Department of Justice for its role in the VW emissions scheme.  In response to the indictment, on March 10, 2017, in direct contravention of what it had been saying publicly, VWAG pled guilty to three felony counts concerning the diesel vehicles at issue in this lawsuit:

> (1) conspiracy to defraud the United States;
> (2) conspiracy to engage in wire fraud;
> (3) conspiracy to violate the Clean Air Act;
> (4) obstruction of justice; and
> (5) importation of merchandise by means of false statements.

---

[2]  At the time of the filing of the original petition, the entire breadth of the scandal was not even known as the EPA had not yet issued its Second Notice of Violation, which accused Defendant of cheating with regard to 3.0-liter vehicles.  (*See* Second Notice Violation, Patrick Decl., Ex. 3.)

(Patrick Decl., Ex. 4.)   In March 2017, VWAG signed a Plea Agreement and accompanying Statement of Facts.   In the Statement of facts, VWAG admitted that it intentionally defrauded federal regulators and consumers, obstructed justice and concealed the presence of its defeat devices.   *Id.*   VWAG also admitted that the acts of its employees were acts of VWAG.   *Id.*

According to Defendant, earlier developments should have caused Plaintiffs to sue VWAG. For example, Defendant points to an apology by Martin Winterkorn in September 2015.   Dkt-4237 at 8.  But accepting moral responsibility and legal responsibility are very different, and it was not until March 2017 that VWAG did the latter.[3]   Defendant also points to the government's civil suit against VWAG in January 2016.   However, mere allegations of civil wrongdoing are a far cry from VWAG's admission of criminal guilt in March 2017. Defendant's Response evinces a remarkable failure to appreciate the distinction between facts showing a potential viable claim against VWAG and a plea agreement whereby VWAG pled guilty to multiple felonies, admitted its intentional fraud and agreed to pay billions in damages.  It was this dramatic change in the legal landscape in 2017 that caused Plaintiffs to reexamine their claims and reassess their legal strategy, ultimately leading them to amend their petitions.  (Patrick Decl., ¶¶6-8).

Finally, Defendant fails to appreciate that, in addition to the new information about VWAG's culpability, Plaintiffs' decision to wait until August 2017 to amend their complaints was also driven by various practical considerations.   Specifically, it made no sense for Plaintiffs' counsel to add new claims and a new defendant until after he had determined which of his clients wanted to accept the 2.0 Liter and 3.0 Liter settlements, which had opt-out dates in September 2016 and   April 2017. (Patrick Decl., ¶13); Dkt-1698; Dkt-2919.   And the latest Plaintiffs could amend their claims consistent with the pleading amendment deadlines in the Texas MDL was

---

[3] Well after Winterkorn's apology, VWAG continued to deny culpability.  For example, in November 2015, after receiving the second EPA Notice of Violation relating to the 3.0 liter vehicles, VWAG denied that these vehicles had defeat devices installed in them. Emily Field, *Volkswagen Slams Newest EPA Emissions Fraud Claims*, Law360 (Nov. 3, 2015), http://www.law360.com/articles/722478/volkswagen-slams-newest-epa-emissions-fraudclaims.  In January 2016, Winterkorn stated in an NPR interview at the North American International Auto Show that VWAG did not lie and that the whole issue was a mere "technical problem" caused by a faulty interpretation of American law.  Andreas Cremer, *Das Auto' no more; Volkswagen plans image offensive*, Reuters (Dec. 22, 2014), http://www.reuters.com/article/us-volkswagen-emissions-communications iidUSKBN0U514L20151222.

September 5, 2017.  (Patrick Decl., Ex. 5).  The foregoing dates effectively "bookended" the time during which it was practical for Plaintiffs to amend their pleadings to the time between April and September 2017.  Rather than evidence of some nefarious plot that began in October 2015 and lasted nearly two years, the timing of Plaintiffs' pleading amendments was a simple matter of expedience and efficiency in light of significant new factual developments.[4]

### 2. The significant amendments to Plaintiffs' pleadings provide a plausible explanation for the increase in their requested damages.

In their original petitions, Plaintiffs sued only VWoA.  They asserted a single claim for violation of the Texas DTPA.  They sought economic damages for the diminution in value of the affected vehicles as well as out of pocket expenses.  They also sought an award of treble damages under the DTPA (treble damages are in lieu of actual damages, so that the "additional" damages are only two times the actual damages awarded).  (Patrick Decl., ¶4, Ex. 6).

By contrast, Plaintiffs' amended petitions added VWAG as a Defendant and specifically referenced VWAG's guilty plea in so doing.  The petitions sought damages for the full purchase price of the affected vehicles rather than merely diminution in value damages.  They sought non-economic damages for mental anguish and emotional distress when no such damages had been sought in the original petitions.  And the amended petitions added a claim for fraud, which allows for an award of punitive damages that could far exceed the treble damages awardable under the DTPA. (Patrick Decl., ¶¶11-12, Ex. 7).[5]

VWAG's guilty plea was critically important in bringing the amended claims.  First, in its plea agreement, VWAG admitted that it had defrauded U.S. consumers.  Second, VWAG admitted that the acts of its employees were within the scope of their employment and for the benefit of

---

[4] Defendant points to certain actions taken in January 2016 by the Plaintiffs' Steering Committee, of which Michael Heygood was a member, as evidence that Plaintiffs knew they had claims against VWAG as of that date. Dkt-4237 at 8. But they overlook the fact that Mr. Heygood did not represent the Texas Plaintiffs herein until July 2017. (Patrick Decl., ¶7).

[5] Section 41.008 of the Texas Civil Practice and Remedies Code permits punitive damages up to the greater of: (a) $200,000 or (b) two times the plaintiff's economic damages plus up to $750,000 in non-economic damages as found by the jury.

VWAG and that VWAG therefore "is responsible for the acts of its employees." (Statement of Facts, Patrick Decl. Ex. 4 at p. 2-1).[6] Third, VWAG admitted that it intentionally deceived the EPA into issuing Certificates of Conformity for its vehicles without which VWoA could not sell the vehicles in the U.S. (Statement of Facts, Patrick Decl., Ex. 4 at ¶¶ 17, 19, 21, 28, 31, 41-43). This latter admission allows Plaintiffs to seek an award of uncapped punitive damages under Texas law.[7]

Given the price of the affected vehicles, it is likely that punitive damages will constitute a significant portion of the total damages awarded by a jury. Thus, the foregoing changes to Plaintiffs' pleadings clearly provide a more than plausible explanation for the increase in their requested damages. Such an explanation precludes a finding of bad faith. *See, e.g., Miami Beach Cosmetic & Plastic Surgery Ctr.,* 2016 WL 8607846 at *5 (rejecting finding of bad faith because plaintiff had offered a "plausible explanation for expanding its claims" despite having initially claimed damages not in excess of $15,000); *Hamilton San Diego Apartments,* 2014 WL 7175598 at *3 (rejecting bad faith argument because the plaintiff "states a plausible explanation for the joinder of WNC in the instant action but failing to join WNC in the initial action").

Despite the abundant evidence – including the sworn statements of Plaintiffs' counsel – that Plaintiffs' pleading amendments were based on new information not available in October 2015, Defendant insists that the amendments were far more nefarious. According to VWoA,

---

[6] Under Texas law, in order to obtain punitive damages against a corporation based on the criminal conduct of an agent one must show "(1) the [corporation] authorized the doing and the manner of the act; (2) the agent was unfit and the [corporation] acted with malice in employing or retaining him; (3) the agent was employed in a managerial capacity and was acting in the scope of employment; or (4) the employer or a manager of the employer ratified or approved the act." TEX. CIV. PRAC. & REM. CODE ANN. § 41.005. VWAG's admissions in its plea agreement established these prerequisites as a matter of law.

[7] Section 41.008(c) of the Texas Civil Practice and Remedies Code provides that the punitive damage caps do not apply if the conduct alleged constitutes a felony under various state penal code sections. One of the Sections listed is Section 32.46, entitled "Securing execution of document by deception." That section makes it a felony, in a transaction involving property worth more than $1500, for a person, with an intent to defraud, to cause another to sign or execute any document affecting property. Given the foregoing admissions, it is clear that Defendants, with an intent to defraud, caused the EPA to issue Certificates of Conformity for their diesel vehicles. Under these facts, Plaintiffs are eligible for an award of uncapped punitive damages. *See, e.g., Swinnea v. ERI Consulting Engineers, Inc.,* 364 S.W.3d 421, 424 (Tex. App.— Tyler 2012, pet. denied).

"Plaintiff's decision to add claims for fraud and punitive damages was not the result of new facts, or the ability to prove new wrongdoing, but a strategic choice, reflective of their judgment that the one-year period for removal had to elapse before they increased their *ad damnum*." Dkt-4237 at 10. While this is a catchy soundbite, Defendant's Response is devoid of a single shred of evidence supporting this allegations of bad faith, especially in light of the applicable standards and burdens of proof; the Ninth Circuit "strictly construes the removal statute against removal jurisdiction" and "[f]ederal jurisdiction must be rejected if there is any doubt as to the legal right of removal in the first instance." *Gaus v. Mills*, 980 F.2d 564, 566 (9th Cir. 1992); *see also Luna v. Kemira Specialty, Inc.*, 575 F. Supp. 3d 1166, 1172 (C.D. Cal. 2008) ("If there is any doubt regarding the existence of federal jurisdiction, the court must resolve those doubts in favor of remanding the action to state court."). Consistent with these standards, "facts that *could* indicate forum manipulation are not enough to demonstrate *actual* forum manipulation." *Blue v. Equifax Info. Services, LLC*, No. C 06-06349, 2007 WL 602295 at *3 (N.D. Cal. Feb. 22, 2007). Here, Defendant's bald accusations of forum manipulation are flatly contradicted by the sworn testimony of Plaintiffs' counsel and fall well short of meeting the "high threshold" imposed on litigants asserting bad faith.

**D.    Defendant cannot demonstrate that it was somehow misled by Plaintiffs' initial statements that their damages were less than $75,000.**

The entire basis of Defendant's Response is its allegation that "Plaintiffs misled Defendant as to the actual amount in controversy when they filed their original petitions" by stating that their damages were less than $75,000. Dkt-4237 at 2; *see also* Dkt-4237 at 6 ("Plaintiffs' misrepresentations in their original petitions that they would not seek or accept damages in excess of $75,000 are the quintessential example of bad faith"). The falsity of this allegation is laid bare by the approach taken by Defendant in its recent Omnibus Response to Plaintiffs' Motions to Remand relating to other pending remand motions. In that pleading, VWoA asserted that it properly removed some 124 diversity cases by showing that the real damages exceeded $75,000 per case even though the plaintiffs explicitly sought less than $75,000 in damages in their state court complaints. Dkt-4232 at 23, 45. According to Defendant, "a defendant's statutory right to removal cannot be thwarted by such pleadings gamesmanship." Dkt-4232 at 38. And yet in the

instant case, Defendant claims that it failed to remove the cases at issue here because they were somehow "misled" into believing Plaintiffs' damages were less than $75,000 based simply on the amount they claimed in their pleadings!  VWoA cannot explain how it was "misled" by the pleadings in this case but not by the similar pleadings in the 124 other cases it timely removed, including numerous Texas cases.  There simply is no evidence that Defendant was misled in any way; instead, VWoA made a conscious and deliberate choice not to remove the instant cases within one year even though it chose to timely remove dozens of other similar cases in which plaintiffs sought less than $75,000.  Given those other removals, Defendant's assertion in this case that "Plaintiffs' manipulative delay in revealing that each plaintiff was seeking damages in excess of $75,000 forestalled removal for at least one year" is facially absurd.  Dkt-4237 at 6.

**E.      Plaintiffs' failure to serve the original complaints does not show bad faith.**

Defendant claims that Plaintiffs' failure to serve four complaints on VWoA that sought "less than $200,000" in damages is somehow evidence that Plaintiffs acted in bad faith by trying to "run out the removal clock." Dkt-4237 at 11.  What Defendant's Response blatantly omits is the fact that Plaintiffs did not serve VWoA with any of their complaints, not just the handful that sought damages exceeding $75,000. (Patrick Decl., ¶3).  More importantly, Defendant's Response omits the fact that <u>VWoA was provided with a copy of each lawsuit as it was filed</u> and was therefore well aware of each of the complaints even though VWoA had not been formally served. *Id.*[8]  Defendant's knowledge of the filing of each of the complaints rebuts any allegation that the lack of formal service prevented it from removing the cases.  *See, e.g., Grabicki v. Bays*, No. 13-CV, 0406-TOR, 2014 WL 535044 at *3 (E.D. Wash. Feb. 10, 2014) (because defendants were aware of the lawsuit, "it is unclear how any alleged failure to serve them after they already appeared could be construed as an attempt to prevent them from removing the action.").  Simply put, Plaintiffs' decision to avoid formal service while still informing VWoA of the filing of their petition provides no evidence of bad faith.

---

[8] This explains how it is that VWoA answered the four petitions seeking "less than $200,000" in damages "without having been served" and before one year from the date of filing.  Dkt-4237 at 11.

1

### F.      Plaintiff's recent consolidation of cases does not show bad faith.

Finally, Plaintiff's recent consolidation of cases does not show bad faith.  First, one of the motives for consolidating the cases was for efficiency.  It is simply easier to track eight cases than 73. (Patrick Decl. ¶10).    Second, the amendment and consolidation process was well under way when Defendant started filing its notices of removal.  (Patrick Decl. ¶11).  Third, while Plaintiffs moved some claims from "younger" lawsuits to "older" lawsuits to avoid federal jurisdiction, "[t]he use of strategy to defeat federal jurisdiction does not constitute bad faith."  *Johnson,* 2015 WL 6511301 at *4; *see also Aguayo,* 59 F. Supp. 3d at 1273 ("There is nothing wrong with plaintiffs having a preference for state court, nor is there anything inherently invidious or 'bad faith' about using deliberate tactics to defeat federal jurisdiction"); *Brazell*, 2015 WL 1486932 at *4 ("it is not inherently bad faith to use strategy to defeat federal jurisdiction.").  Finally, Plaintiffs' actions in consolidating their claims in August 2017 have no bearing on their intent when they filed suit in October 2015.  For the foregoing reasons, Plaintiffs' recent consolidation of their complaints provides no evidence of bad faith.[9]

## **CONCLUSION**

For all of the reasons set forth above, Plaintiffs request that this Court enter an order remanding the cases to the District Court for Travis County, Texas.

DATED:  November 29, 2017

---

[9] Defendant claim that Plaintiffs' explanation for the reason for and timing of their pleading amendments is "unpersuasive in light of the fact that the 'realignment' did not actually remove many Plaintiffs who have settled their claims" and point as an example to the 35 plaintiffs in the *Bradshaw* complaint that "opted back into the MDL settlements."  Dkt-4237 at 12.  However, what Defendant fails to inform the Court is that Plaintiffs amended their pleadings and consolidated their lawsuits in August 2017and the Court did not enter an order permitting the *Bradshaw* plaintiffs and others who accepted VW's recent settlement offer to opt back into the MDL settlement until September 22, 2017.  Dkt-3885.

Respectfully submitted,

*/s/ Charles Miller*
Charles Miller, SBN 276523
charles@hop-law.com
Michael E. Heygood
Michael@hop-law.com
Eric D. Pearson
eric@hop-law.com
**HEYGOOD, ORR & PEARSON**
6363 North State Highway 161
Suite 450
Irving, Texas 75038
Telephone: (214) 237-9001
Facsimile: (214) 237-9002

Craig M. Patrick, SBN 255849
PATRICK LAW FIRM, P.C.
6244 E. Lovers Lane
Dallas, Texas 75214
Telephone: (214) 390-3343
Facsimile: (469) 914-6565
craig@patricklaw.com

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 29th day of November 2017, I filed the foregoing from the Service List and a copy of has been served on all Parties required to be served by electronically filing with the Clerk of the Court of the U. S. District Court for the Northern District of California, San Francisco Division, by using the CM/ECF system.  In addition, Plaintiffs provided a copy of the foregoing to the following persons via email:

Via email at vhartline@hdbdlaw.com
C. Vernon Hartline, Jr.
HARTLINE DACUS BARGER DREYER LLP
8750 N. Central Expressway, Suite 1600
Dallas, Texas 75231

Via email at monahanw@sullcrom.com
William B. Monahan
SULLIVAN & CROMWELL, LLP
125 Broad St.
New York, NY 10004

*/s/ Charles Miller*
Charles Miller

17