UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION
_____/

This Order Relates To:
MDL Dkt. Nos. 3909, 3911

*BRS v. Volkswagen AG*, No. 16-cv-3435
("Bondholders Securities Action")
_____/

MDL No. 2672 CRB (JSC)

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS THE BONDHOLDERS' FIRST AMENDED CLASS ACTION COMPLAINT**

This Order addresses motions to dismiss a putative securities-fraud class action filed by a bondholder of Volkswagen Group of America Finance LLC (VWGoAF). The action is based on allegations that VWGoAF and related defendants made false and misleading statements to prospective VWGoAF bondholders about Volkswagen's emission-reducing technology and its compliance with emission standards. These statements were misleading, Plaintiff asserts, because Volkswagen was engaged in an almost decadelong scheme to cheat on emission tests through the use of a defeat device in as many as 11 million vehicles worldwide. (FAC ¶ 252.)

A disputed issue at the pleading stage of this case has been whether Plaintiff has adequately pled reliance, i.e., that it relied on Defendants' emission-related statements when it decided to purchase VWGoAF bonds. The Court previously held that Plaintiff could rely on a presumption of reliance under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because Plaintiff primarily alleges fraudulent omissions as opposed to misstatements. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prod. Liab. Litig.*, MDL No. 2672 CRB (JSC) ("*VW Bondholders*"), 2017 WL 3058563, at *14-15 (N.D. Cal. July 19, 2017). Defendants have asked the Court to reconsider that holding based on *Waggoner v. Barclays PLC*,

875 F.3d 79 (2d Cir. 2017), which is a recent decision in which the Second Circuit held that the *Affiliated Ute* presumption does not apply when the only omission alleged is of the truth that an affirmative misstatement misrepresents.

The Court has considered *Waggoner* and finds the decision persuasive. Accordingly, the Court deviates from its earlier decision and holds that Plaintiff may not rely on the *Affiliated Ute* presumption to plead reliance. Having determined that *Affiliated Ute* does not apply, the Court considers whether Plaintiff may plausibly allege reliance by other means—either by way of the "fraud on the market" presumption of reliance under *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), or by a theory of direct reliance based on an acknowledgement clause in the bond Offering Memoranda. As currently pled, the Court concludes that Plaintiff cannot rely on either of these alternative theories.

Because reliance is not sufficiently pled, the Court GRANTS Defendants' motions to dismiss the amended complaint, with leave to amend. In light of the holdings with respect to reliance, the Court does not consider at this time other issues that were raised in the motions.

**BACKGROUND**

**I. The Bond Offerings**

On three occasions in 2014 and 2015, VWGoAF issued U.S.-dollar denominated bonds to institutional investors. (FAC ¶ 3.) VWGoAF is a wholly-owned subsidiary of Volkswagen Group of America, Inc. (VWGoA), and the bonds were guaranteed by Volkswagen AG. (FAC ¶ 22.) Each of these corporate entities is a defendant in this case, along with Martin Winterkorn (the former CEO of Volkswagen AG) and Michael Horn (the former CEO of VWGoA).

VWGoAF issued the bonds in private placements, which were led primarily by U.S.-based investment banks. (FAC ¶ 15.) The bonds were exempt from registration with the SEC under Rule 144A, and accordingly could be purchased only by qualified institutional buyers— institutional investors with at least $100 million in securities under management. (FAC ¶¶ 1, 3.) *See* 17 C.F.R. § 230.144A(a)(1)(i). After the initial offerings, the bonds traded in a secondary market. (FAC ¶ 3.)

Each of the three initial offerings was made pursuant to an Offering Memorandum. The Memoranda are dated May 15, 2014, November 12, 2014, and May 19, 2015. (FAC ¶ 4.) Each Memorandum includes legal and financial disclosures, the terms of the offering, and an overview of Volkswagen's business. Within the business overview section, each Memorandum highlights Volkswagen's efforts to research and develop emission-reducing technology (the "R&D statements"). An example of an R&D statement is that "Volkswagen's top priority for research and development in [recent years has been] to develop engines and drivetrain concepts to reduce emissions." (FAC ¶ 227(a).) The Memoranda also include regulatory-risk statements; for example, that "Volkswagen's vehicles must comply with increasingly stringent requirements concerning emissions." (FAC ¶ 227(d).)

Lead Plaintiff purchased bonds in the first of the three offerings, which was governed by the May 15, 2014 Offering Memorandum.

## II. The Bondholders' Lawsuit

In the fall of 2015, Volkswagen publicly disclosed that it had installed an emissions defeat device in as many as 11 million vehicles worldwide. (FAC ¶ 252.) After the disclosure, the value of VWGoAF bonds dropped, and Plaintiff responded by filing this putative class action on behalf of all institutional investors that purchased VWGoAF bonds between May 23, 2014 and September 22, 2015. The putative class includes both investors that purchased VWGoAF bonds in the initial offerings, and investors that purchased the bonds in a secondary market. (FAC ¶ 352.)

Plaintiff alleges that the emission-related statements in the Offering Memoranda were misleading because Defendants failed to disclose Volkswagen's use of the defeat device, and that a significant number of Volkswagen's vehicles' on-road emissions greatly exceeded legal limits. These omissions rendered the R&D statements misleading, Plaintiff asserts, because these statements "implied that Volkswagen had already reduced vehicle emissions," which was not true for a significant number of vehicles. (FAC ¶ 228(c).) Plaintiff contends that the omissions also made the regulatory-risk statements misleadingly because those statements "implied that Volkswagen's vehicles were compliant with all such emissions regulations and requirements."

3

(FAC ¶ 228(d).) Plaintiff contends that, together, these omissions and affirmative statements violated Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b–5(b), which make it unlawful for any person, in connection with the sale of a security, "to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b–5(b).

Lead Plaintiff also previously sought to base its claims on statements outside the Offering Memoranda, "including in various interim and annual reports, press releases, and Corporate Social Responsibility and Sustainability Reports issued by Volkswagen during the class period." *VW Bondholders*, 2017 WL 3058563, at *4. The Court previously rejected this theory:

> Near the front of May 2014 Offering Memorandum, at the top of the page and in bold-faced type, is the statement that "**You should rely only on the information contained in this Offering Memorandum**" when considering this investment. In accepting the Memorandum, "Investors also acknowledge[d] that . . . they ha[d] relied only on the information contained in this document" in making an investment decision.
>
> Based on this instruction and acknowledgment, Plaintiff, as an institutional investor with more than $100 million in securities under management, could not reasonably have relied on statements outside the May 2014 Offering Memorandum and the appended financial statements in making its investment decision.

*Id.* at *5 (alterations in original) (citations omitted).

## DISCUSSION

To withstand Defendants' motions to dismiss, Plaintiff's complaint must include allegations that plausibly support each element of its Section 10(b) / Rule 10b–5 claims.[1] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). One such element is reliance: that Plaintiff relied

---

[1] Plaintiff also brings "control person" claims under Section 20(a) of the Exchange Act. An element of a "control person" claim is a primary violation of the federal securities laws. *See Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1061 (9th Cir. 2000). The Section 20(a) claims are therefore derivative of the Section 10(b) / Rule 10b–5 claims, which are the primary violations that Plaintiff alleges.

4

upon the statements that it asserts were misleading. *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011).

"The traditional (and most direct) way a plaintiff can demonstrate reliance is by showing that he was aware of a company's statement and engaged in a relevant transaction—*e.g.*, purchasing common stock—based on that specific misrepresentation." *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2407 (2014) (citation omitted). In two scenarios, however, a plaintiff may establish a rebuttable presumption of reliance without individualized proof. The Court previously held that one of these presumptions—the *Affiliated Ute* presumption—applies in this case.

## I. The *Affiliated Ute* Presumption of Reliance

Under *Affiliated Ute*, a presumption of reliance "is generally available to plaintiffs alleging violations of section 10(b) based on omissions of material fact." *Binder v. Gillespie*, 184 F.3d 1059, 1063 (9th Cir. 1999). The theory behind this presumption is that direct proof of reliance in omission cases requires "proof of a speculative negative"—that "I would not have bought had I known." *Blackie v. Barrack*, 524 F.2d 891, 908 (9th Cir. 1975). To relax this "difficult evidentiary burden," *id.*, *Affiliated Ute* allows reliance to be presumed in omission cases "when the information withheld is material," *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 941 (9th Cir. 2009). In cases in which, as here, both omissions and misrepresentations are alleged, the presumption is only appropriate if "the case can be characterized as one that primarily alleges omissions." *Binder*, 184 F.3d at 1064.

### A. The Court's July 2017 Order

Defendants previously argued that the *Affiliated Ute* presumption is inapplicable in this case because "Plaintiff's claims are overwhelmingly based on alleged affirmative misstatements." (Dkt. No. 2897 at 24.) It is therefore not a case that "primarily alleges omissions," Defendants asserted. In support of this argument, Defendants noted that the original complaint "contains no less than 18 pages of supposedly 'false and misleading statements.'" (*Id.* (citations omitted).)

In its July 2017 order, the Court disagreed, holding that the *Affiliated Ute* presumption applies because "Plaintiff's case can be characterized as one that primarily alleges omissions."

5

*VW Bondholders*, 2017 WL 3058563, at *14. Specifically, the Court reasoned that:

> The heart of the case, as Plaintiff notes, is that Volkswagen misled bond purchasers by failing to disclose its use of a defeat device in its "clean diesel" vehicles. Although the Complaint also alleges misrepresentations, it does so primarily to frame the omission as misleading, which is necessary given that Section 10(b) does not create an affirmative duty to disclose all material information. *Matrixx*, 563 U.S. at 44.

*Id.* (citation omitted). With respect to Defendants' argument that the original complaint contained no less than 18 pages of allegedly false and misleading statements, the Court noted that:

> Almost all of those statements . . . are outside the Offering Memorandum, in interim and annual reports (Compl. ¶¶ 203-14), press releases (*id.* ¶¶ 218-26), and Corporate Social Responsibility and Sustainability Reports (*id.* ¶¶ 227-30). These are the same materials that Defendants argue cannot be considered given that the Offering Memorandum expressly limited the universe of materials that investors could consider. Defendants cannot have it both ways—arguing that, on the one hand, these statements should not be considered, but that, on the other hand, these statements make Plaintiff's claims "overwhelmingly based on alleged affirmative misstatements." (Dkt. No. 2897 at 25.)

*Id.*

### B. Defendants' Request for Reconsideration

Defendants' prior argument for why the *Affiliated Ute* presumption should not apply can be characterized as a counting argument. *Affiliated Ute* does not apply here, Defendants argued, because Plaintiff's complaint alleges more misrepresentations than it does omissions. In their motions to dismiss the amended complaint, Defendants instead argue that the *type* of omission alleged by Plaintiff does not support the *Affiliated Ute* presumption. Specifically, Defendants argue that the *Affiliated Ute* presumption does not apply when the only omission is of the truth that an affirmative misstatement misrepresents.

The Second Circuit recently reached this holding in *Waggoner*, 875 F.3d 79. Investors in that case asserted that Barclays violated Rule 10b–5(b) by omitting information that made certain affirmative statements misleading. For example, investors alleged that Barclays told them that a proprietary tool would allow them to "choose which trading styles they interacted with" on a

specialized trading platform, so they could avoid high-frequency traders. *Id.* at 87. The investors asserted that this statement and others were misleading because Barclays failed to disclose that the tool did not apply to a significant portion of the trades conducted on the platform. *Id.* at 90.

Similar to this Court's reasoning in its July 2017 order, the district court in *Waggoner* held that the *Affiliated Ute* presumption applied because "a case could be made that it is the material omissions, not the affirmative statements, that are the heart of this case." *Id.* at 91. The Second Circuit disagreed. Noting that "the labels 'misrepresentation' and 'omission' are of little help," the Second Circuit reasoned that "what is important is to understand the rationale" of the *Affiliated Ute* presumption, which is that in cases where "no positive statements exist . . . reliance as a practical matter is impossible to prove." *Id.* at 95 (quoting *Wilson v. Comtech Telecomms. Corp.*, 648 F.2d 88, 93 (2d Cir. 1981)). Reliance was not impossible to prove in the case before it, the Second Circuit held, because the investors had alleged that Barclays made multiple affirmative statements, and the omission was only of "the truth that the statement[s] misrepresent[ed]." *Id.* at 96. As a result, the Second Circuit concluded that the *Affiliated Ute* presumption was inapplicable. *Id.*

Several district courts have also held, like the Second Circuit in *Waggoner*, that the *Affiliated Ute* presumption does not apply where the only alleged omission is of the truth that an affirmative misstatement misrepresents. *See, e.g.*, *Loritz v. Exide Tech.*, No. 2:13-cv-02607-SVW-E, 2015 WL 6790247, at *1-3, 21 (C.D. Cal. July 21, 2015) (looking at the rationale behind *Affiliated Ute*—the "difficulty of proving a 'speculative' negative"—and concluding that this difficulty "does not apply to this case," where Exide Technologies failed to disclose lead and arsenic emissions, which rendered certain affirmative statements about the company's compliance with environmental regulations misleading); *In re Interbank Funding Corp. Sec. Litig.*, 668 F. Supp. 2d 44, 50-51 (D.D.C. 2009) ("Given the difficulty of drawing semantic distinctions between omissions and misrepresentations . . . . [it is important to] understand the rationale [behind *Affiliated Ute*: that in cases where] no positive statements exist . . . reliance as a practical matter is impossible to prove. Reliance is not 'impossible to prove' in this case because Radin did offer positive statements . . . . [As a result,] plaintiffs easily could have alleged that they directly relied

7

on Radin's assertions in deciding whether to buy, sell, or hold their Interbank securities.") (internal quotation marks omitted).

The Court finds the reasoning in *Waggoner* and in these district court decisions persuasive. Although the Ninth Circuit has stated that the *Affiliated Ute* presumption may be available in cases that "allege both misstatements and omissions" if the case can be characterized as one that "primarily alleges omissions," *Binder*, 184 F.3d at 1064, the Ninth Circuit has not offered detailed guidance on how to distinguish a complaint that "primarily alleges omissions" from one that alleges omissions, but not primarily. And despite the statement in *Binder* that the *Affiliated Ute* presumption may be available in cases that "allege both misstatements and omissions," it appears that the Ninth Circuit has yet to uphold the use of the presumption in such a scenario. *Cf. Binder*, 184 F.3d at 1063-64 (affirming district court's determination that the presumption did not apply where the "complaint contains both allegations of omissions and misrepresentations, and at the very least, must be characterized, as the district court noted, as 'a mixed case of misstatements and omissions'"); *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 667 (9th Cir. 2004) (holding that the presumption did not apply where plaintiffs' claims "are mixed claims based on *both* affirmative misrepresentations and omissions").[2]

The Ninth Circuit has also recognized a need to "maintain[] the well-established distinction, for purposes of the *Affiliated Ute* presumption, between omission claims, on the one hand, and misrepresentation and manipulation claims, on the other." *Desai*, 573 F.3d at 941. In *Desai*, the court held that a stock market manipulation scheme could not be characterized as an omissions claim because "[a]ny fraudulent scheme requires some degree of concealment, both of the truth and of the scheme itself." *Id.* (citation omitted). Because of this overlap, the court

---

[2] Arguably, the Ninth Circuit upheld the use of the *Affiliated Ute* presumption in a mixed case in *Blackie*, 524 F.2d 891, where the plaintiffs asserted that the defendants' financial statements misrepresented particular line items because they failed to include adequate reserves for uncollectable accounts and obsolete inventory. *Id.* at 903-06. But in *Binder*, the Ninth Circuit referred to *Blackie* as a pure omissions case and stated that, before *Binder*, the Circuit "ha[d] not squarely decided . . . whether the [*Affiliated Ute*] presumption may be invoked in a case involving . . . both omissions and misrepresentations." *Id.* at 1063-64; *see also id.* at 1068 (Reinhardt, J., dissenting in part) (referring to *Blackie* as "a pure omissions case"). *Blackie* is therefore not instructive in considering when a case that alleges both misstatements and omissions can be characterized as one that "primarily alleges omissions." *Binder*, 184 F.3d at 1064.

8

reasoned that "[w]e cannot allow the mere fact of this concealment to transform the alleged malfeasance into an omission rather than an affirmative act." *Id.* (quoting *Joseph v. Wiles*, 223 F.3d 1155, 1163 (10th Cir. 2000), *abrogated on other grounds by Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042 (2017)). Instructive to this case, especially in light of *Waggoner*, the *Desai* court went on to embrace the purpose behind the *Affiliated Ute* presumption as the touchstone in determining when the presumption applies:

> To [allow the manipulation to be characterized as an omission claim] would permit the *Affiliated Ute* presumption to swallow the reliance requirement almost completely. Moreover, it would fail to serve the *Affiliated Ute* presumption's purpose since this is not a case where reliance would be difficult to prove because it was based on a negative.

*Desai*, 573 F.3d at 941 (quoting *Joseph*, 223 F.3d at 1163).

After considering the Second Circuit's decision in *Waggoner*, and after reviewing the above district court decisions and Ninth Circuit caselaw addressing the *Affiliated Ute* presumption in light of *Waggoner*, the Court concludes that whether the *Affiliated Ute* presumption of reliance is applicable is a decision that should be based on whether the presumption's purpose—of avoiding the need to prove a speculative negative—is implicated. Here, it is not. Similar to *Waggoner*, Plaintiff's claims are predicated on affirmative statements that Defendants are alleged to have made—specifically, the R&D and regulatory-risk statements in the bond Offering Memoranda. Plaintiff contends that these statements were misleading because Defendants did not disclose Volkswagen's emissions fraud. (FAC ¶ 228(c), (d).) In other words, the omission is of the truth that certain affirmative statements allegedly misrepresent.

Either Plaintiff and the other putative class members relied on the R&D and regulatory-risk statements in purchasing VWGoAF bonds or they did not. And if they did not, they should not be able to overcome this shortfall by characterizing their claims as primarily alleging omissions. *See Joseph*, 223 F.3d at 1162 ("In an attempt to take advantage of the *Affiliated Ute* presumption, an artfully-pleaded complaint can recharacterize as an omission conduct which more closely resembles a misrepresentation."). The Court therefore reconsiders its July 2017 decision and

9

holds that Plaintiff may not rely on the *Affiliated Ute* presumption to plead reliance.[3]

## II. The *Basic* Presumption

The second scenario in which a plaintiff may establish a rebuttable presumption of reliance in a Section 10(b) / Rule 10b–5 case is when the "fraud on the market" theory of reliance applies. *See Basic*, 485 U.S. 224. Having determined that the *Affiliated Ute* presumption does not apply, the Court considers for the first time whether Plaintiff may rely on the *Basic* presumption to plead reliance.

As explained by the Supreme Court, the *Basic* presumption is based on the idea that:

> [T]he market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations. . . . [Thus], rather than scrutinize every piece of public information about a company for himself, the typical investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price—the belief that it reflects all public, material information. As a result, whenever the investor buys or sells stock at the market price, his reliance on any public material misrepresentations may be presumed for purposes of a Rule 10b–5 action.

*Halliburton*, 134 S. Ct. at 2408 (citations omitted).

For *Basic* to apply, Plaintiff must plausibly allege "(1) that the alleged misrepresentations were publicly known, (2) that they were material, (3) that the stock [or bonds] traded in an efficient market, and (4) that the plaintiff traded the stock [or bonds] between the time the misrepresentations were made and when the truth was revealed." *Id.*

Defendants argue that Plaintiff has not satisfied the third of these elements, asserting that

---

[3] As the above analysis suggests, and as Defendants argue, it may be that the *Affiliated Ute* presumption is only available for claims under Rule 10b–5 subsections (a) and (c), and not for claims under subsection (b), because claims under Rule 10b–5(b) are inherently tied up with affirmative statements and therefore do not require proof of a speculative negative. *See Matrixx*, 563 U.S. at 44 (noting that Rule 10b–5(b) "do[es] not create an affirmative duty to disclose," and that disclosure is necessary only "to make the statements made . . . not misleading" (quoting 17 C.F.R. § 240.10b–5(b)). There is some out-of-circuit authority for this limitation. *See Smith v. Ayres*, 845 F.2d 1360, 1363 (5th Cir. 1988) ("By the terms of [Rule 10b–5], a presumption of reliance would not arise where the plaintiff's case is grounded in the second subsection."). The Second Circuit's holding in *Waggoner* did not sweep this broadly, however. Nor has the Ninth Circuit suggested that *Affiliated Ute* applies only in claims under subsections (a) and (c). Because the Court's reasoning does not require it to resolve this question, the Court declines to do so.

10

Plaintiff's pleading does not plausibly support an "efficient market" for the VWGoAF bonds. The Court agrees. In support of the "efficient market" element, Plaintiff alleges that

> at all relevant times, the market for the Volkswagen Bonds was efficient for the following reasons, among others:
>
> (a) Volkswagen communicated with eligible Bond purchasers via offering memoranda bearing the same or substantially similar information;
>
> (b) Volkswagen filed periodic public reports readily available to all actual Bondholders and potential bondholders;
>
> (c) Volkswagen regularly communicated with the public via established market communication mechanisms, including through regular disseminations of press releases . . . and through other wide-ranging public disclosures . . . ;
>
> (d) Volkswagen was followed extensively by the media and by numerous securities analysts employed by major brokerage firms who wrote over 495 analyst reports about Volkswagen during the Class Period, which were publicly available and entered the public market place;
>
> (e) Analysts for major credit rating agencies provided ratings on the Bonds in their initial offering and throughout the Class Period; and
>
> (f) [T]he market value of the Bonds was sizeable during the Class Period and prices reacted promptly to the dissemination of new public information regarding Volkswagen.

(FAC ¶ 347.)

These allegations focus almost exclusively on the post-offering market for the VWGoAF bonds; that is, once the bonds were trading. But Plaintiff purchased VWGoAF bonds in an initial offering, not in a secondary market. The relevant question in determining whether Plaintiff is entitled to a presumption of reliance, then, is not whether the bonds traded in an efficient market, but whether the initial-offering market was efficient. With respect to the initial offering, the amended complaint includes limited detail on how prices were set, and whether the offering prices were subject to change based upon market information disseminated prior to the offerings. Without allegations of this type, the amended complaint does not plausibly support that Plaintiff

11

purchased VWGoAF bonds in an efficient market. As a result, Plaintiff may not presently rely on the *Basic* presumption to plead reliance. *See Plichta v. SunPower Corp.*, 790 F. Supp. 2d 1012, 1022 (N.D. Cal. 2011) ("[U]nder *Iqbal* and *Twombly* plaintiffs must allege a sufficient factual basis for any contention that the debentures were traded on a well-developed and efficient market.").

As Defendants note, a number of courts have declined to apply *Basic* in cases involving newly issued securities. *See, e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006) (holding that the *Basic* presumption was unavailable because "the market for IPO shares is not efficient"); *Freeman v. Laventhol & Horwath*, 915 F.2d 193, 199 (6th Cir. 1990) ("[T]he fraud on the market theory . . . does not apply to cases involving fraud on a primary market for newly issued tax-exempt municipal bonds."); *In re Enron Corp. Sec. Deriv. & ERISA Litig.*, 529 F. Supp. 2d 644, 771-72 (S.D. Tex. 2006) ("[P]rimary markets [for Enron debt] . . . cannot qualify as open markets."). These decisions demonstrate that Plaintiff faces a heavy burden to plausibly allege that there was an efficient market for newly issued VWGoAF bonds. At this point, however, it is not a certainty that an amendment of the complaint to address the above shortcomings would be futile. The Court therefore gives Plaintiff leave to amend its complaint to add any allegations that it believes support *Basic*'s application.

### III. Direct Reliance

Putting aside presumptions of reliance, Plaintiff alleges, for the first time in the amended complaint, that a portion of the putative class plausibly relied directly on the statements at issue. Specifically, Plaintiff alleges that investors that purchased VWGoAF bonds in an initial offering— as opposed to in a secondary market—plausibly relied on the statements at issue "based on an express, uniform acknowledgement, and representation" in each Memorandum that, by accepting the Memorandum, each Offering investor '*relied on the information contained in this document*.'" (FAC ¶ 349 (emphasis added).) Plaintiff argues that this clause supports that each purchaser of VWGoAF bonds in the offerings (1) was aware of the allegedly misleading statements and omissions therein, and (2) purchased the bonds based on them.

Defendants argue that the acknowledgement clause alone is not sufficient to plead reliance.

12

To plausibly plead reliance, and to do so with the particularity required by Rule 9(b), they assert that Plaintiff must also allege, for example, "that the person who placed the trade read the allegedly misleading statements in the May 15, 2014 Offering Memorandum upon which Plaintiff's claims depend." (Dkt. No. 3911 at 25-26.) Plaintiff has not included such an allegation in the amended complaint. And at a hearing on the motions to dismiss, counsel for Plaintiff could not confirm whether, if given leave to amend, he would be able to allege in good faith that Plaintiff actually read the Offering Memorandum. (*See* Feb. 1, 2018 Hr'g Tr., Dkt. No. 4715 at 53.)[4]

If the May 15, 2014 Offering Memorandum included the acknowledgment clause alleged in paragraph 349 of the amended complaint, the Court would be inclined to conclude that the clause at least supports a plausible inference of direct reliance. At the time of the offering, Plaintiff was an institutional investor with at least $100 million in securities under management. VWGoAF in turn was a debt-issuing vehicle for one of the world's largest automobile manufacturers. These were sophisticated parties, and if they had agreed to include a clause in the Offering Memorandum providing that investors had relied on the information contained therein, it would be reasonable to conclude that Plaintiff had done just that.

Yet Plaintiff's phrasing of the acknowledgement clause is not a direct quote from the May 15, 2014 Offering Memorandum. Instead, the Memorandum contains the following two acknowledgment clauses, which both appear under the bold title **IMPORTANT NOTICE**:

> [1] **You should rely only on the information contained in this Offering Memorandum.**
>
> [2] Investors also acknowledge that (i) they have not relied on the Initial Subscribers or any person affiliated with the Initial Subscribers in connection with any investigation of the accuracy of any information contained in this Offering Memorandum or their

---

[4] Defendants focus on the May 15, 2014 Offering Memorandum because it is the Memorandum that governed Plaintiff's investment. The Court also focuses on that Memorandum for the same reason. Plaintiff must first establish its own standing to sue before the claims of other putative class members, which are based in part on other Offering Memoranda, are considered. *See Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) ("If the individual plaintiff lacks standing, the court need never reach the class action issue." (quoting 3 Herbert B. Newberg on Class Actions § 3:19, at 400 (4th ed. 2002))).

> investment decision; and (ii) they have relied only on the information contained in this document, and that no person has been authorized to give any information or make any representation concerning the Issuer, the Guarantor or its subsidiaries or the Notes (other than as contained in this document) and, if given or made, any such other information or representation should not be relied upon as having been authorized by the Issuer, the Guarantor or the Initial Subscribers.

(Stanley Decl., Dkt. 2896–6 at 4-5.)

The acknowledgement clause alleged in the amended complaint does not have the same meaning as clause [1] in the Offering Memorandum. Clause [1] uses the auxiliary verb "should." (*See id.* ("You *should* rely only on the information contained in this Offering Memorandum.") (emphasis added).) You "should rely" is a prescription. Without more, it does not plausibly support that Plaintiff *did* rely on information in the Memorandum.

Clause [2](ii) is closer in kind to the acknowledgement clause alleged in the amended complaint, except that clause [2](ii) uses the word "only," which Plaintiff has omitted. (*Compare* FAC ¶ 349 (investors "relied on the information contained in this document"), *with* Stanley Decl., Dkt. 2896–6 at 4 (investors "have relied *only* on the information contained in this document") (emphasis added).) "Only" adds additional meaning to the clause. That investors "have relied *only* on the information contained in this document" means that they have not relied on information *outside* the document. Indeed, because of this clause—and clause [1], which also uses the word "only"—the Court previously held that Plaintiff could not base its claims on statements outside the Offering Memorandum, such as in Volkswagen press releases and annual reports. *See VW Bondholders*, 2017 WL 3058563, at *5. Because the acknowledgement clause alleged in the amended complaint does not use the word "only," this meaning is missing in Plaintiff's version.

Even with the word "only," clause [2](ii) also arguably has a second meaning: that investors have relied on the information contained *within* the Offering Memorandum. The clause uses the phrase "have relied," not "should rely." And although the word "only" negates reliance on material outside the Memorandum, it may not necessarily negate reliance on information contained within the Memorandum. This second meaning is subtle, however, and it is clear from context that only the first meaning was intended.

14

Starting with the IMPORTANT NOTICE header, eight pages of the Offering Memorandum follow that include a variety of cautionary notes to investors. These include that the Memorandum was prepared by Volkswagen "solely for use in connection with the proposed offering;" that VWGoAF and Volkswagen AG have not authorized anyone to provide investors with different information; that Initial Subscribers (which were investment banks) do not warrant that the information in the Memorandum is accurate; that the SEC has not approved or disapproved of the bonds; and that VWGoAF, Volkswagen AG, and Initial Subscribers do not represent the legality of an investment in the Notes by purchasers. (Stanley Decl., Dkt. 2896–6 at 4; *see also id.* at 5-11 (including additional cautionary notes and warnings).)

These are liability disclaimers. They seek to prevent investors from claiming that they reasonably thought they could rely on sources of information other than the Memorandum, or that they thought the Initial Subscribers or the SEC had approved of the accuracy of the Memorandum. An acknowledgment that investors have relied *only* on the information in the Offering Memorandum in making their investment decisions—and not on anything outside the Memorandum—accomplishes the same goal. It signals that if investors intend to rely on extrinsic information, they do so at their own risk, and that their reliance on such information will not be justifiable. A statement that investors have relied on the information within the Memorandum does not further the same purpose. It effectively confirms that investors have performed a certain level of due diligence, which is less of a cautionary note and more of an attestation. Such a statement would be out of place.

The other statements within clause [2] also do not support such a reading. Clause [2](i) states that investors acknowledge that "they have not relied on the Initial Subscribers . . . in connection with . . . their investment decision." (*Id.*) Again, the focus is on preventing investors from justifiably relying on information outside the Memorandum, not on confirming that investors have actually relied on information within the Memorandum. The second part of Clause [2](ii) is similar. (*See id.* (investors acknowledged that they "have relied only on the information contained in this document, *and* that no person has been authorized to give any information or make any representation concerning the Issuer, the Guarantor or its subsidiaries or the Notes (*other than as*

*contained in this document*)") (emphasis added).)

Because Plaintiff relies on the Memorandum is asserting that reliance is well pled, the Court looks directly at the acknowledgment clauses therein rather than at Plaintiff's paraphrasing of the clauses in the amended complaint. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (explaining that, under the "incorporation by reference" doctrine, a court resolving a motion to dismiss may "take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading") (internal quotation marks omitted). Given the context in which the clauses appear, the Court concludes that the clauses' only reasonable meaning is that investors, by accepting the Memorandum, agreed not to rely on extrinsic materials in making their investment decisions. The clauses therefore do not carry the meaning that Plaintiff contends they do: that investors actually relied on all of the information within the Memorandum.

Because the acknowledgement clauses alone do not plausibly support that Plaintiff read and relied on the statements in the Offering Memorandum that are at issue in this case, direct reliance is not well pled. To plausibly plead direct reliance, Plaintiff must also allege that one or more of its agents actually read the Memorandum and relied on the statements therein that are at issue. The Court gives Plaintiff leave to amend its complaint to include the missing allegations, to the extent Plaintiff can do so in good faith.

## CONCLUSION

Having concluded that Plaintiff has not sufficiently pled reliance, the Court GRANTS Defendants' motions to dismiss the amended class action complaint. Because it is not a certainty that Plaintiff cannot allege facts sufficient to address the deficiencies identified above, the Court gives Plaintiff leave to amend the complaint. Plaintiff shall file a new amended complaint within 30 days of this Order.

**IT IS SO ORDERED.**

Dated: March 2, 2018

CHARLES R. BREYER
United States District Judge

16