UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION
_____/

This Order Relates To:
Dkt. No. 4048

*Napleton v. Volkswagen Group of America, Inc.*
Case No. 16-02086
_____/

MDL No. 2672 CRB (JSC)

**ORDER RE: VOLKSWAGEN GROUP OF AMERICA'S MOTION TO ENFORCE THE VOLKSWAGEN BRANDED FRANCHISE DEALER CLASS ACTION SETTLEMENT AGREEMENT**

After learning that Volkswagen had installed a defeat device in its TDI "clean diesel" vehicles to cheat on emissions tests, a group of Volkswagen-branded franchise dealers filed a class action against Volkswagen Group of America, Inc. ("VWGoA") in this Court. The franchise dealers and VWGoA subsequently agreed to the terms a settlement, which this Court approved. (Dkt. No. 2807 (final approval order); Dkt. No. 1970 (settlement agreement).) In the settlement agreement, class members and other "Releasing Parties" agreed to a broad release of claims against VWGoA. The release covers not only "all claims related in any way to the TDI matter," but also "all claims for monetary damages arising before the Effective Date of this Franchise Dealer Class Agreement that relate in any way to allocation complaints or irregularities." (Dkt. No. 1970 § 9.3.)

In a pending motion, VWGoA asks the Court to enforce the settlement agreement by enjoining what it characterizes as three allocation-related claims and one TDI-related claim. Each of these claims has been filed in New Jersey state court by either a class member or certain parties related to that class member. For the reasons that follow, the Court grants the motion with respect to the TDI-related claim, but denies the motion with respect to the three allocation-related claims.

# BACKGROUND

## I.     The State Court Complaints

Altomare Auto Group LLC ("AAG") opened the Volkswagen Union Dealership in Union, New Jersey in 2010 and is a member of the franchise dealer settlement class. In a civil action pending in New Jersey state court, AAG alleges that its former owner, Mr. Altomare, was fraudulently induced to open the dealership by VWGoA. VWGoA allegedly did so by, among other things, promising Mr. Altomare that it would provide the Union Dealership with a mix and quantity of new-vehicle inventory that was sufficient for the dealership to operate successfully, but then providing the dealership with only 40 new vehicles when it opened—far below the number of vehicles that VWGoA supplied to similar dealerships—and supplementing this initial inventory with an unpopular and slow-selling model. (*See* Dkt. No. 4048-3, Hogberg Decl., Ex. B, AAG Am. Compl. ¶¶ 1, 31-32, 39-44.) AAG also alleges that VWGoA breached the parties' franchise agreement by failing to provide the Union Dealership with the level of inventory it needed to operate successfully. (*See id.* ¶¶ 176-78.)

Mr. Altomare and two other entities owned by him—Altomare 22 Union LLC and Altomare Realty LLC—have joined AAG's New Jersey action by way of an intervenor complaint. As alleged, Altomare 22 owned the property and improvements that comprised the premises of the Union Dealership and leased those premises to AAG; Altomare Realty loaned approximately $700,000 to Altomare 22 so that Altomare 22 could purchase and make improvements to the Union Dealership premises; and Mr. Altomare loaned approximately $1.1 million to AAG to support the Union Dealership's operations. (*See* Dkt. No. 4048-4, Hogberg Decl., Ex. C, Intervenor Pls.' Compl. ¶¶ 2, 4, 83-87, 91.) The Court refers to these three intervenors collectively as the "Intervenor Plaintiffs."

Mirroring AAG's complaint, the Intervenor Plaintiffs allege that VWGoA fraudulently induced them to financially support the Union Dealership by promising to provide the dealership with sufficient vehicle inventory to support profitable operations. When VWGoA failed to honor that promise, the Intervenor Plaintiffs contend that their property and investments declined in value and their loans could not be repaid. (*See id.* ¶¶ 26-29, 123-129.)

The Intervenor Plaintiffs also bring a separate fraud claim in which they allege that VWGoA made various fraudulent misrepresentations to them about the emissions levels of its "clean diesel" vehicles. (*See id.* ¶¶ 74, 131.) They assert that VWGoA promised them that these vehicles were environmentally friendly, which led them to make "significant loans and investments" in the Union Dealership. (*Id.* ¶ 74.) When it came to light that Volkswagen had equipped these vehicles with a defeat device, and that the vehicles emitted pollutants at a level that exceeded regulatory limits, the Intervenor Plaintiffs allege that the Union Dealership was unable to sell these vehicles and that the their property and investments declined in value and their loans could not be repaid. (*Id.* ¶¶ 77-82.)

## II. The Volkswagen-Branded Franchise Dealers' Class Action

### A. The Complaint

After learning in the fall of 2015 about Volkswagen's emissions fraud, a group of Volkswagen-branded franchise dealers filed a class action against VWGoA and other defendants in this Court. One hundred and ninety two paragraphs in the franchise dealers' complaint detail the "clean diesel" emissions fraud. (*See* Dkt. No. 1969, FD FAC ¶¶ 45-236.) Eleven paragraphs instead relate to what the named plaintiffs alleged was an independently actionable fraudulent scheme by VWGoA to establish tiered pricing and manipulate "DSI Sales Metrics," which had an effect on the franchise dealers' sales, margins, and vehicle allocation. (*See id.* ¶¶ 251-61.)

With respect to this separate fraudulent scheme, the named plaintiffs alleged that each VW-branded franchise dealer was assigned a Primary Area of Influence ("PAI"), and that each franchise dealer's success was based on sales penetration within the PAI. (*Id.* ¶ 252.) The named plaintiffs alleged that VWGoA wrongfully manipulated the size of these PAIs by disproportionately decreasing the size of certain franchise dealers' PAIs. (*Id.* ¶¶ 253-61.) This enabled dealers with smaller PAIs to "operate on an unlevel playing field, getting preferential allocations and more desirable vehicle inventory due to the fact that they [were] more easily able to achieve their performance objectives." (*Id.* ¶ 259.)

\\

3

**B. The Settlement**

In or around September 2016, the franchise dealers, VWGoA, and other defendants agreed to the terms of a settlement. (Dkt. No. 1970, *amended by* Dkt. No. 2802.) As part of the settlement, Volkswagen agreed to make payments to each franchise dealer that did not opt out of the settlement, and each of these franchise dealers and other "Releasing Parties" agreed to release certain claims against VWGoA and the other defendants. The definitions of Released Claims and Releasing Parties are found in Section 9.3 of the agreement.

> 9.3. Dealer Settlement Class Members, for and on behalf of themselves and their agents, heirs, executors, and administrators, successors, assigns, insurers, attorneys, representatives, shareholders, owners, owner associations, and any other legal or natural persons who may claim by, through, or under them (the "Releasing Parties") hereby fully and completely release, acquit, acknowledge as satisfied, and forever discharge the Released Parties, of and from the following claims (the "Released Claims"): (1) all claims related in any way to the TDI Matter; . . . [and] (3) all claims for monetary damages arising before the Effective Date of this Franchise Dealer Class Agreement that relate in any way to allocation complaints or irregularities . . . .

(Dkt. No. 1970 § 9.3.)

In January 2017, this Court approved the settlement agreement. (Dkt. No. 2807.) In the Court's final approval order, it ordered that "Class Members who have not properly opted out and any person purportedly acting on behalf of any Class Member(s) are ENJOINED from commencing, filing, initiating, instituting, pursuing, maintaining, enforcing or prosecuting, either directly or indirectly, any Released Claims . . . ." (Dkt. No. 2807 at 26 ¶ 5.)

**III. Litigation in the New Jersey State Court**

When AAG and the Intervenor Plaintiffs filed their vehicle inventory and emissions fraud claims in New Jersey state court, respectively by way of a motion to amend an earlier complaint and by way of a motion to intervene, VWGoA objected.[1] In briefs opposing the motions to amend

---

[1] The claims in AAG's original complaint focused on VWGoA's alleged interference with three attempts by AAG to sell the Union Dealership. Those claims, which remain in the amended complaint and are also part of the Intervenor Plaintiffs' complaint, are not relevant here.

4

and to intervene, VWGoA argued that the vehicle inventory and emissions fraud claims were released by the franchise dealers' settlement agreement. (*See* Dkt. No. 4283-1, Danhi Decl., Ex. O; Dkt. No. 4294-1, Stone Decl., Ex. C.) In September 2017, the New Jersey state court granted AAG's motion for leave to amend and the Intervenor Plaintiffs' motion to intervene. With respect to AAG's motion, the New Jersey court reasoned that:

> Motions for leave to amend are required by rule to be liberally granted and without consideration for the ultimate merits of the amendment. Plaintiff's claims do not appear to have been released by the Volkswagen Branded Dealer Class Action Settlement. Plaintiff is hereby granted leave to file its amended complaint.

(Dkt. No. 4048-5 at 3, Hogberg Decl., Ex. D at 2.)

With respect to the Intervenor Plaintiffs' motion, the New Jersey court concluded that the allegations were "factually intertwined" with those in AAG's complaint, and that permissive intervention and intervention as of right were appropriate under New Jersey law. (Dkt. No. 4048-6 at 3, Hogberg Decl., Ex. E at 2.) The New Jersey court also reasoned that the franchise dealers' settlement agreement did not appear to bar the Intervenor Plaintiffs' claims. (*Id.*)

## IV. VWGoA's Motion in the VW MDL

After the New Jersey court's rulings, VWGoA filed a motion to enforce the franchise dealers' settlement agreement in this Court. In its motion, VWGoA seeks an order that (1) dismisses with prejudice, and enjoins AAG and the Intervenor Plaintiffs from asserting, the three vehicle inventory claims in the New Jersey action; and (2) dismisses with prejudice, and enjoins the Intervenor Plaintiffs from asserting, the emissions fraud claim in the New Jersey action. (Dkt. No. 4048 at 10.) VWGoA contends that these four claims are Released Claims and that AAG and the Intervenor Plaintiffs are also Releasing Parties as defined in the settlement agreement.

\\
\\
\\
\\

5

**DISCUSSION**

**I. Waiver**

In its order approving the settlement agreement, this Court "retain[ed] the exclusive jurisdiction to enforce, administer, and ensure compliance with all terms of the Settlement." (Dkt. No. 2807 at 27 ¶ 8.) As an initial matter, AAG and the Intervenor Plaintiffs argue that the Court should decline to exercise this jurisdiction because VWGoA has already raised the release as a defense in the New Jersey action. Specifically, AAG and the Intervenor Plaintiffs note that VWGoA, in opposition to their respective motions to amend and to intervene in New Jersey, argued that the vehicle inventory and emissions fraud claims were released in the franchise dealers' settlement agreement. Instead of litigating the application of the release in New Jersey, AAG and the Intervenor Plaintiffs contend that VWGoA could have come to this Court immediately after they filed their motions for leave to amend and to intervene, but instead VWGoA chose to litigate in New Jersey and lost. (*See* Dkt. No. 4283 at 11-12, Dkt. No. 4294 at 15.) They content that VWGoA should not be given a second opportunity to litigate the release's application to their claims.

AAG and the Intervenor Plaintiffs' waiver argument is based on general principles of equity and fairness. Legally and factually, however, they overstate the extent to which the New Jersey court decided the matters at issue, and the extent to which VWGoA's current motion to enforce the settlement agreement is untimely or amounts to gamesmanship.

Legally, the New Jersey court did not adjudicate the merits of whether the settlement agreement released the claims at issue. Instead, the New Jersey court simply noted—in the context of ruling on motions to amend and to intervene, which are to be granted liberally under New Jersey law—that it did not "appear" that the settlement agreement barred the new claims. (Dkt. Nos. 4048-5, 4048-6, Hogberg Exs. D & E.) AAG and the Intervenor Plaintiffs do not explain how this preliminary assessment constitutes a merits decision that could potentially bar this Court's evaluation of the release.

Factually, while VWGoA could have filed its motion to enforce the settlement agreement in this Court before opposing the motions to amend and to intervene in the New Jersey action,

VWGoA's decision to first file opposition briefs in New Jersey was reasonable given that this Court may not have addressed the motion to enforce before the opposition briefs were due in the New Jersey action. For example, VWGoA's opposition to AAG's motion to amend its complaint was due eight days after VWGoA received that motion. *See* N.J. Court Rule 1:6–3(3). With such a short window of time, VWGoA took the reasonable step of filing an opposition in the New Jersey action, while preserving its right to ask this Court to adjudicate whether the settlement agreement's release bars the new claims. Given these considerations, principles of equity and fairness do not counsel in favor of this Court declining to exercise its ancillary jurisdiction. The Court accordingly considers the merits of VWGoA's motion.

**II. The Vehicle Inventory Claims**

The definition of Released Claims in the franchise dealers' settlement agreement includes "all claims for monetary damages arising before the Effective Date of this Franchise Dealer Class Agreement that relate in any way to allocation complaints or irregularities." (Dkt. No. 1970 § 9.3.) The parties do not dispute that "allocation complaints," as used in the settlement agreement, refers to complaints between VWGoA and franchise dealers over the allocation of vehicle inventory. Yet AAG and the Intervenor Plaintiffs argue that their claims are not "allocation complaints" because allocation refers to a system of refilling a dealer's inventory in the normal course of operations, whereas their claims are based on "the initial opening inventory provided to new dealers," which is "distinct from the regular allocation process." (Dkt. No. 4283 at 15-16.)

Even assuming that AAG's and the Intervenor Plaintiff's claims relate to "allocation complaints," however, and thus fall within the definition of Released Claims in the settlement, the release of these particular claims is unenforceable.

The Ninth Circuit has held that

> a settlement agreement may preclude a party from bringing a related claim in the future "even though the claim was not presented and might not have been presentable in the class action," but only where the released claim is "based on the identical factual predicate as that underlying the claims in the settled class action."

7

*Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (quoting *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008)). This rule follows from principles of claim preclusion and res judicata, pursuant to which a prior action may bar a subsequent action between the same parties only when the two actions arise from the same transaction or occurrence. *See id.* In *Hesse*, the Ninth Circuit applied this standard and reversed the district court's dismissal of claims that came within the broad definition of a release in a prior settlement agreement, but which were not based on the identical factual predicate of the claims at issue in the original proceedings. The Ninth Circuit reasoned that the settlement "cannot preclude the [plaintiffs'] unique cause of action, regardless of the expansive release contained in [the earlier settlement]." *Id.* at 592.

The vehicle inventory claims at issue here are based on allegations that are far afield from the subject matter of the franchise dealers' class action. They have nothing to do with Volkswagen's emissions fraud, and they do not resemble the vehicle allocation claims in the franchise dealers' class action, which centered on VWGoA's alleged manipulation of the size of PAIs, which enabled certain dealers with smaller PAIs to get "preferential allocations and more desirable vehicle inventory." (FD FAC ¶ 259.) Neither AAG nor the Intervenor Plaintiffs make any mention of PAIs in their state court complaints; instead, their allegations focus on a promise by VWGoA to provide the Union Dealership with a certain level of inventory, and VWGoA's alleged failure to honor that promise. No similar conduct was alleged in the class action.

For these reasons, the vehicle inventory claims at issue are not "based on the identical factual predicate as that underlying the claims in the settled class action." *Hesse*, 598 F.3d at 590. The franchise dealers' settlement agreement therefore cannot preclude AAG and the Intervenor Plaintiffs from pursuing these claims in New Jersey state court. *See also Williams*, 517 F.3d at 1134 ("While Boeing may have drafted the settlement agreement to include as broad a release as possible, the release would have only been *enforceable* as to subsequent claims . . . depending upon the same set of facts.") (internal quotations marks omitted).

### III. The Emissions Fraud Claim

Unlike the vehicle inventory claims, the Intervenor Plaintiffs' emissions fraud claim is clearly "based on the identical factual predicate" as that underlying the claims in the franchise

8

dealers' class action. *Hesse*, 598 F.3d at 590. The emissions fraud claim is based on allegations that the Intervenor Plaintiffs invested in the Union Dealership in reliance upon false representations by VWGoA that its "clean diesel" vehicles were environmentally friendly. (*See* Intervenor Pls.' Compl. ¶¶ 74-82, 130-133.) Similar representations by VWGoA were the primary focus in the franchise dealers' class action. (*See* FD FAC ¶¶ 135-63.)

There is also no dispute that the Intervenor Plaintiffs' emissions fraud claim comes within the definition of Released Claims in the settlement agreement. Released Claims include "all claims related in any way to the TDI Matter," and the TDI Matter is defined broadly to cover all claims related to VWGoA's use of a defeat device in its "clean diesel" vehicles and its marketing of those vehicles as environmentally friendly. (*See* Dkt. No. 1970 §§ 2.27, 9.3.) The Intervenor Plaintiffs' emissions fraud claim is based on allegations of just such conduct by VWGoA. It is therefore a claim related to the TDI Matter and is accordingly a Released Claim.

Notwithstanding the above, the Intervenor Plaintiffs argue that the Court should not enjoin their TDI claim for two reasons. First, they argue that they are not Releasing Parties as defined in the settlement agreement. Second, they contend that an injunction is not permissible under the Anti-Injunction Act. The Court addresses these arguments in turn.

### A. Releasing Parties

The settlement agreement defines Releasing Parties as follows:

> 9.3. Dealer Settlement Class Members, for and on behalf of themselves and their agents, heirs, executors, and administrators, successors, assigns, insurers, attorneys, representatives, shareholders, owners, owner associations, and any other legal or natural persons who may claim by, through, or under them (the "Releasing Parties") . . . .

(Dkt. No. 1970 § 9.3.)

With respect to Mr. Altomare, the Intervenor Plaintiffs do not dispute that he was the owner and sole shareholder of AAG (a Dealer Settlement Class Member) during the relevant time period. However, they assert that the terms "owners" and "shareholders" in § 9.3 must be construed in light of the catch-all phrase at the end of the definition of Releasing Parties: "any

other legal or natural persons who may claim by, through, or under [a class member]." This language, they argue, limits the release to claims that owners and shareholders bring on behalf of a Dealer Settlement Class Member. They assert that Mr. Altomare's are not such claims, because he is seeking to maintain his claims in the New Jersey action "in his personal capacity—not by or on behalf of AAG." (Dkt. No. 4294 at 9-10.) With respect to Altomare 22 and Altomare Realty, the Intervenor Plaintiffs argue that these entities' claims are even further removed than Mr. Altomare's from the scope of the release. This is because neither of these entities was a shareholder or owner of AAG, and their relationships with AAG do not fit within any of the other listed categories in § 9.3. The Intervenor Plaintiffs also contend that VWGoA committed separate torts against each of them because VWGoA made promises to each of them that were not true and that it did not intend to keep. (*Id.* at 11-12.)

The Intervenor Plaintiffs are correct that the terms "owners" and "shareholders" in § 9.3 should be read in light of the "by, through, or under [a class member]" catch-all phrase that follows. If it were otherwise, the release could be used to prevent the owner of a franchise dealer from asserting a TDI claim based on his or her personal ownership of a vehicle affected by Volkswagen's emissions fraud. Such a result clearly was not intended given that the class members are franchise dealers, not individual consumers. The "by, through, or under" language prevents such a reading because it ensures that owners, shareholders, and other agents of franchise dealers are only releasing claims that are tied directly to the franchise dealers, as opposed to personal claims.

Although the "by, through, or under" clause informs the reading of the release, the Intervenor Plaintiffs' interpretation of the clause is too narrow. They read the clause in a way that would effectively limit the release to franchise dealers and persons or entities that assert claims on behalf of franchise dealers—such as trustees or successors of franchise dealers. But this reading would allow for duplicative litigation by the owners of franchise dealers, who occupy a different legal relationship than trustees or successors but who nevertheless may assert claims that are "by, through, or under [a class member]." Here, for example, it is clear from the state court complaints that Mr. Altomare controlled and funded the Union Dealership. He used separate corporate

10

entities to do so—with AAG owning the Union Dealership, Altomare 22 owning the dealership's premises, and Altomare Realty operating as a lender—but each of these entities was wholly-owned by Mr. Altomare and there is no indication in the state court complaints, or in the briefing before this Court, that anyone but Mr. Altomare controlled the operations and the decisions made by these entities. Further, to the extent that Mr. Altomare, Altomare 22, or Altomare Realty suffered economic losses as a result of VWGoA's alleged conduct, those losses are derivative of the losses incurred by AAG, the Dealer Settlement Class Member. The promises that VWGoA allegedly made to Mr. Altomare and to the entities he owned were the same, and these promises all related to how VWGoA would support the Union Dealership—as relevant here, by providing the dealership with environmentally friendly vehicles. To the extent that VWGoA made these promises but did not honor them, it was AAG, as the owner of the Union Dealership, that was directly injured in the form of operating losses; any injuries incurred by Mr. Altomare, Altomare 22, and Altomare Realty were only passed on when AAG did not repay their loans or when their investments in the Union Dealership declined in value.

Given the relationship between the Intervenor Plaintiffs and AAG, it is reasonable to view the Intervenor Plaintiffs' claims as claims that are "by, through, or under [AAG]," even though the Intervenor Plaintiffs are not asserting claims on behalf of AAG in the same manner that a trustee or successor would. A contrary interpretation of the release would allow claims that are essentially identical to those that were released by franchise dealers to proceed simply because the claims are asserted indirectly by the owners of franchise dealers. Such an interpretation of the release would frustrate a goal of the settlement, which was to resolve all claims between VWGoA and the franchise dealers related to Volkswagen's emissions fraud.

The Intervenor Plaintiffs rely on two other clauses in the settlement agreement in asserting either that they are not Releasing Parties or that their emissions fraud claim is otherwise not released. Neither clause weighs against the preceding analysis.

First, the Intervenor Plaintiffs cite to a clause at the end of § 9.3, which states in part that a Releasing Party that owns a Volkswagen dealership is releasing claims "specifically *and only* with respect to its ownership of the VW-branded dealership." (Dkt. No. 1960 § 9.3 (emphasis added).)

11

Based on this clause, the Intervenor Plaintiffs argue that "[o]ther claims (*i.e.*, claims against VWGoA that a Releasing Party may have in a capacity other than as an owner of a dealership) are not released." (Dkt. No. 4294 at 10.) The full sentence in § 9.3 in which this clause appears does not support this argument. It reads:

> For avoidance of doubt, to the extent that a Releasing Party owns a VW-branded dealership and also owns a Porsche-branded dealership and/or an Audi-branded dealership, that Releasing Party is releasing all Released Claims specifically and only with respect to its ownership of the VW-branded dealership, and does not release any claims with respect to its ownership of a Porsche-branded dealership and/or an Audi-branded dealership against any party.

(Dkt. No. 1960, § 9.3 (emphasis added).)

VWGoA correctly notes that, when read in full, this provision seeks only to clarify that Releasing Parties are only releasing claims tied to VW-branded dealerships, and not claims tied to Porsche- or Audi-branded dealerships. This provision does not modify the definitions of Released Claims or Releasing Parties in § 9.3.

The Intervenor Plaintiffs also rely on § 9.5, which reads as follows:

> 9.5. **Actions or Proceedings Involving Released Claims.** *Dealer Settlement Class Members* who do not opt out expressly agree that each of this Release, the Individual Release and the Final Approval Order, are, will be, and may be raised as a complete defense to, and will preclude, any action or proceeding specified in, or involving claims encompassed by, this Release. . . . If an *Eligible Dealer* who does not opt out and is therefore a Dealer Settlement Class Member commences, files, initiates, or institutes any new legal action . . . for any Released Claim against any Released Party . . . , (1) such legal action or other proceeding shall be dismissed with prejudice and at that *Franchise Dealer Class Member*'s cost; and (2) the respective Released Party shall be entitled to recover any and all reasonable related costs and expenses from that *Dealer Settlement Class Member* arising as a result of that *Dealer Settlement Class Member*'s breach of his, her, or its obligations under this Release.

(Dkt. No. 1970 § 9.5 (emphasis added).)

This provision describes the consequences of asserting Released Claims. And the Intervenor Plaintiffs highlight that it refers only to Eligible Dealers and Dealer Settlement Class Members, and makes no mention of the owners or shareholders of Dealer Settlement Class

12

Members, or any other person or entity that may have a relationship with a Dealer Settlement Class Member. Because of this, the Intervenor Plaintiffs contend that the release may only be used as a complete defense against Dealer Settlement Class Members, which the Intervenor Plaintiffs are not.

In effect, the Intervenor Plaintiffs are arguing that § 9.5 should be read to rewrite and narrow the definition of Releasing Parties in § 9.3, which explicitly sweeps more broadly than covering only Dealer Settlement Class Members. Section 9.3 includes in the definition of Releasing Parties not only Dealer Settlement Class Members, but also their "agents, heirs, executors, and administrators, successors, assigns, insurers, attorneys, representatives, shareholders, owners, owner associations, and any other legal or natural persons who may claim by, through, or under them." (Dkt. No. 1970 § 9.3.) The Intervenor Plaintiffs have not identified any rational reason for why the parties to the settlement agreement would have intended § 9.5 to rewrite § 9.3 so that the release would only apply to Dealer Settlement Class Members and not other Releasing Parties. As a result, the Court rejects this interpretation of the settlement agreement.

Because the Intervenor Plaintiffs each assert claims "by, through, or under [AAG]," they are Releasing Parties under the settlement agreement.

### B. Anti-Injunction Act

The Anti-Injunction Act forbids federal courts from enjoining state court proceedings except (1) as expressly authorized by Act of Congress, (2) where necessary in aid of the federal court's jurisdiction, or (3) to protect or effectuate the federal court's judgments. *See* 28 U.S.C. § 2283; *Sandpiper Vill. Condo. Ass'n. v. Louisiana-Pac. Corp.*, 428 F.3d 831, 842 (9th Cir. 2005). The third of these exceptions (referred to as the "relitigation exception") is applicable here.

Similar to the rule articulated in *Hesse*, 598 F.3d at 590, which governs when a settlement release is enforceable, the relitigation exception is "founded in the well-recognized concepts of res judicata and collateral estoppel." *Sandpiper*, 428 F.3d at 847 (quoting *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147-48 (1988)). The exception "allows federal courts to . . . protect the res judicata effect of their judgments and prevent the harassment of . . . federal litigants through

13

repetitious state litigation." *Id.* (omissions in original) (quoting *Amwest Mortg. Corp. v. Grady*, 925 F.2d 1162, 1164 (9th Cir. 1991)). For the exception to apply, the claim sought to be enjoined must be "related to the same set of facts" as the original action, and there must be an "identity of parties" in the original action and in the action sought to be enjoined. *Id.* at 847-48 (internal quotation marks omitted).

For the reasons noted above, the Intervenor Plaintiffs' TDI claim clearly "relate[s] to the same set of facts" as the franchise dealers' class action as required for the relitigation exception to apply. The TDI claim is based on Volkswagen's misrepresentations about its "clean diesel" vehicles, as was the franchise dealers' class action. The Intervenor Plaintiffs argue that the "identity of parties" requirement is not satisfied, however, because they were not parties in the franchise dealers' class action.

Although this is true—the Intervenor Plaintiffs were not parties in the class action—the Intervenor Plaintiffs' interests were "sufficiently parallel to the class members' interests such that privity [can] be implied," which satisfies the "identity of parties" requirement. *Sandpiper*, 428 F.3d at 848. In *Taylor v. Sturgell*, 553 U.S. 880 (2008), the Supreme Court enumerated six exceptions to the general rule against nonparty preclusion, one of which is that "in certain limited circumstances, a nonparty may be bound by a judgment because she was adequately represented by someone with the same interests who was a party to the suit." *Id.* at 894 (internal quotation marks omitted). The Supreme Court then gave the following examples of such "[r]epresentative suits with preclusive effect on nonparties": "properly conducted class actions, and suits brought by trustees, guardians, and other fiduciaries." *Id.*

None of these representative relationships characterizes the relationship between class member AAG and the Intervenor Plaintiffs. Yet even though the Supreme Court cautioned in *Taylor* that the adequate-representation exception to the rule against nonparty preclusion applies only "in certain limited circumstances," the examples given in *Taylor* were only illustrative. And similar to suits brought by trustees, guardians, or other fiduciaries, here the interests of the nonparty Intervenor Plaintiffs were adequately represented by AAG in the franchise dealers' class action.

14

As noted above, the claims asserted by the Intervenor Plaintiffs are derivative of the claims asserted by class member AAG, because the Intervenor Plaintiffs' claims all rely on harm that is alleged to have been suffered directly by the Union Dealership, which AAG owned. Thus, by the nature of the claims, the Intervenor Plaintiffs' interests in the franchise dealers' class action were substantially the same as AAG's interests, which weighs in favor of privity. *See In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983) ("Privity exists when there is substantial identity between the parties, that is, when there is sufficient commonality of interests."). Further, intervenor Mr. Altomare was the sole owner of Altomare 22, Altomare Realty, and AAG during the relevant time period. Given Mr. Altomare's sole ownership of all three entities, and the lack of allegations suggesting that critical decisions at these companies were made by anyone other than him, it is also reasonable to conclude that Mr. Altomare, as the final decision maker for AAG, would have also considered the impact of the settlement agreement on Altomare 22 and Altomare Realty during the franchise dealers' class action. Common ownership, without more, does not trigger privity. *See Park 'n Fly, Inc. v. Dollar Park and Fly, Inc.*, 782 F.2d 1508, 1509 (9th Cir. 1986) ("Even under the definition of privity in the collateral estoppel context, there is no privity between the two separate corporations."). Yet here, common ownership bolsters the already identified commonality of interests between AAG and the Intervenor Plaintiffs. Thus, although the Intervenor Plaintiffs were not parties to the franchise dealers' class action, the identity of parties requirement of the relitigation exception is satisfied.

Because the res judicata requirements of the relitigation exception to the Anti-Injunction Act are satisfied as to the Intervenor Plaintiffs' TDI claim, the Court has the authority to enjoin that claim. The Court exercises that authority. The franchise dealers' class action sought to resolve all litigation between VWGoA, VW-branded franchise dealers, and affiliates of the franchise dealers related to the "clean diesel" emissions fraud. By seeking to litigate in state court a claim based on the emission fraud, the Intervenor Plaintiffs threaten the final resolution of the franchise dealers' class action and the res judicata effect of this Court's prior judgment. The Court therefore enjoins the Intervenor Plaintiffs from asserting their TDI claim in the New Jersey action.

**CONCLUSION**

The Court grants in part VWGoA's motion to enforce the franchise dealers' settlement agreement.

- The Court GRANTS the motion as it relates to the Intervenor Plaintiffs' TDI claim, which is Count Six in the Intervenor Plaintiffs' complaint in the New Jersey state court action. The Intervenor Plaintiffs are ENJOINED from pursuing this claim.
- The Court DENIES the motion as to AAG's and the Intervenor Plaintiffs' vehicle inventory based claims, which are Counts Six and Seven in AAG's amended complaint and Count Five in the Intervenor Plaintiffs' complaint in the New Jersey state court action.

**IT IS SO ORDERED.**

Dated: March 30, 2018

CHARLES R. BREYER
United States District Judge