David Schertler (*admitted pro hac vice*)
Lisa Manning (*admitted pro hac vice*)
Joseph Gonzalez (*admitted pro hac vice*)
SCHERTLER & ONORATO, LLP
1101 Pennsylvania Avenue, N.W.
Suite 1150
Washington, D.C. 20004
Telephone: (202) 628-4199
Facsimile: (202) 628-4177

*Attorneys for Defendant Michael Horn*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | ) MDL No. 2672 CRB (JSC) ) ) ) **DEFENDANT MICHAEL HORN'S NOTICE OF** ) **MOTION AND MOTION TO DISMISS** |
| This Document Relates to: | ) **BONDHOLDERS SECOND AMENDED CLASS** ) **ACTION COMPLAINT; MEMORANDUM OF LAW** |
| *BRS v. Volkswagen AG, et al.*, Case No. 16-cv-3435 ("Bondholders Securities Action") | ) **IN SUPPORT THEREOF** ) ) Hearing:  July 31, 2018 ) Time:  10:00 a.m. ) Courtroom:  6 ) The Honorable Charles R. Breyer ) |

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 31, 2018 at 10:00 a.m., or as soon thereafter as counsel may be heard in Courtroom 6 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102-3489, Defendant Michael Horn will and hereby does move this Court to dismiss the Second Amended Class Action Complaint for Violations of the Federal Securities Laws Regarding Volkswagen Bonds, filed by Lead Plaintiff Puerto Rico Government Employees and Judiciary Retirement Systems Administration on the grounds that the claims fail to state a claim upon which relief can be granted. This Motion is made pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a) *et seq.*, and Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, and is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, all pleadings and papers filed herein, oral argument of counsel, and any matter which may be submitted at the hearing.

Dated: May 2, 2018

Respectfully submitted,

*/s/ David Schertler*
David Schertler (*admitted pro hac vice*)
Lisa Manning (*admitted pro hac vice*)
Joseph Gonzalez (*admitted pro hac vice*)
SCHERTLER & ONORATO, LLP
1101 Pennsylvania Avenue, N.W.
Suite 1150
Washington, D.C. 20004
Telephone: (202) 628-4199
Facsimile: (202) 628-4177

*Attorneys for Defendant Michael Horn*

# TABLE OF CONTENTS

*Page*

**ISSUES TO BE DECIDED** ...................................................................................................1

**SUMMARY OF ARGUMENT** ...........................................................................................1

    A.    The Rule 10b-5 Claim (Count I) Should be Dismissed As To Mr. Horn ...........................2

    B.    The Section 20(a) Claim (Count II) Should Be Dismissed As To Mr. Horn .....................3

**BACKGROUND** ..................................................................................................................4

**ARGUMENT** ........................................................................................................................6

**I.**    **THE AMENDED COMPLAINT FAILS TO PLEAD A "STRONG INFERENCE OF SCIENTER" WITH RESPECT TO MR. HORN.** ................................................6

    A.    Plaintiff's allegation that in April 2014, Mr. Horn requested reports and analyses of the as-yet-unpublished ICCT study reinforces the absence of scienter ....................................................................................................................7

    B.    Plaintiff's supplemental allegations regarding Mr. Horn's career and corporate position do not remedy Plaintiff's failure to allege a strong inference of scienter ..........................................................................................10

    C.    Mr. Horn's alleged statements and actions post-dating Plaintiff's May 23 purchase do not support an inference that Mr. Horn possessed scienter at the time of the purchase ..........................................................................................12

    D.    Adding Plaintiff's supplemental allegations to the "holistic" review of the allegations does not establish a strong inference of scienter against Mr. Horn ..........................................................................................................15

**II.**    **PLAINTIFF'S SECTION 20(a) CLAIM FAILS AS A MATTER OF LAW.** .........16

    A.    Because Plaintiff has failed to establish a primary violation as to Mr. Horn, Plaintiff's Section 20(a) claim against him fails ..............................................16

    B.    Alternatively, Plaintiff has not set forth allegations sufficient to support a strong inference that Mr. Horn had control over the fraud alleged ...................16

**CONCLUSION** ...................................................................................................................18

# TABLE OF AUTHORITIES

*Page(s)*

*In re Am. Apparel, Inc. S'holder Litig.*,
  855 F. Supp. 2d 1043 (C.D. Cal. 2012) ..............................................13

*In re Amgen Inc. Sec. Litig.*,
  544 F. Supp. 2d 1009 (C.D. Cal. 2008) ..........................................7, 16

*In re Ariba, Inc. Sec. Litig.*,
  2005 WL 608278 (N.D. Cal. Mar. 16, 2005).......................................11

*Arthur Children's Trust v. Keim*,
  994 F.2d 1390 (9th Cir. 1993) ..........................................................16

*In re Autodesk, Inc. Sec. Litig.*,
  132 F. Supp. 2d 833 (N.D. Cal. 2000) ................................................11

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
  856 F.3d 605, 622 (9th Cir. 2017) .....................................................14

*In re Countrywide Fin. Corp. Sec. Litig.*,
  588 F. Supp. 2d 1132 (C.D. Cal. 2008) ..............................................10

*In re Daou Sys., Inc.*,
  411 F.3d 1006 (9th Cir. 2005) ..........................................................10

*In re Downey Sec. Litig.*,
  2009 WL 736802 (C.D. Cal. Mar. 18, 2009).................................11, 12

*Ferry LP, No. 2 v. Killinger*,
  542 F.3d 776 (9th Cir. 2008) ..............................................................6

*In re Genzyme Corp. Sec. Litig.*,
  754 F.3d 31 (1st Cir. 2014) ................................................................8

*Glazer Capital Mgmt., LP v. Magistri*,
  549 F.3d 736 (9th Cir. 2008) .........................................................3, 10

*Higginbotham v. Baxter Int'l, Inc.*,
  495 F.3d 753 (7th Cir. 2007) ..........................................................7, 8

*Homestore.com, Inc. Sec. Litig.*,
  347 F. Supp. 2d 769 (C.D. Cal. 2004) ................................................18

*Horizon Asset Mgmt. Inc. v. H & R Block, Inc.*,
  580 F.3d 755 (8th Cir. 2009) ..............................................................2

-iv-

*Howard v. Hui,*
   2001 WL 1159780 (N.D. Cal. Sept. 24, 2001) ..................................................................18

*Howard v. Everex Sys., Inc.,*
   228 F.3d 1057 (9th Cir. 2000) ...........................................................................4, 16, 18

*In re HP Sec. Litig.,*
   2013 WL 6185529 (N.D. Cal. Nov. 26, 2013) .....................................................................9

*Kaplan v. Rose,*
   49 F.3d 1363 (9th Cir. 1994) ................................................................................16

*In re LeapFrog Enterprises, Inc. Sec. Litig.,*
   527 F. Supp. 2d 1033 (N.D. Cal. 2007) ...........................................................................14

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.,*
   540 F.3d 1049 (9th Cir. 2008) ...........................................................................3, 6, 12

*New Mexico State Inv. Council v. Ernst & Young LLP,*
   641 F.3d 1089 (9th Cir. 2011) ................................................................................15

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.,*
   96 F.3d 1151 (9th Cir. 1996) ...........................................................................4, 16, 17

*In re Pretium Res. Inc. Sec. Litig.,*
   2017 WL 2560005 (S.D.N.Y. June 13, 2017) .....................................................................8

*S.E.C. v. Todd,*
   642 F.3d 1207 (9th Cir. 2011) ................................................................................17

*In re Volkswagen "Clean Diesel,"*
   2017 WL 2798525 (N.D. Cal. June 28, 2017) ...................................................................18

*Weiss v. Amkor Tech., Inc.,*
   527 F. Supp. 2d 938 (D. Ariz. 2007) ............................................................................11

*In re Yahoo! Inc. Sec. Litig.,*
   2012 WL 3282819 (N.D. Cal. Aug. 10, 2012) .....................................................................8

*Yourish v. California Amplifier,*
   191 F.3d 983 (9th Cir. 1999) ................................................................................13

*Zucco Partners, LLC v. Digimarc Corp.,*
   552 F.3d 981 (9th Cir. 2009) ................................................................................14

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

Defendant Michael Horn respectfully submits this memorandum in support of his motion to

3

dismiss the Second Amended Bondholders Class Action Complaint ("**Second Amended Complaint**")

4

(ECF No. 4956) and joins the arguments made in the Corporate Defendants' contemporaneously filed

5

Memorandum of Points and Authorities in support of their motion to dismiss the Second Amended

6

Complaint.  Defendant Horn also incorporates the arguments and authorities that were successfully

7

employed to persuade the Court to dismiss the Bondholders Complaint and First Amended Complaint.

8

**ISSUES TO BE DECIDED**

9

1.      Whether Plaintiff's supplemental allegations overcome the deficiencies identified in the

10

Court's prior dismissal of all claims against Defendant Horn.

11

2.      Whether Plaintiff's supplemental allegations establish a "strong inference of scienter" as to

12

Defendant Horn at the time of the May 2014 Offering Memorandum and/or bond purchase.

13

3.      Whether Plaintiff has adequately alleged a control person claim against Defendant Horn

14

given that (a) Plaintiff has not established a primary violation as to Defendant Horn and (b)

15

Plaintiff fails to plead the specific circumstances of Defendant Horn's alleged control.

16

4.      Whether Plaintiff's claims against Defendant Horn should be dismissed.

17

**SUMMARY OF ARGUMENT**

18

Plaintiff, the Puerto Rico Government Employees and Judiciary Retirement Systems

19

Administration, filed its initial Complaint on December 16, 2016.  Defendant Michael Horn ("Mr.

20

Horn") and the Codefendants subsequently filed Motions to Dismiss asserting that the Complaint failed

21

to state claims against them.  On July 19, 2017, the Court granted Mr. Horn's Motion to Dismiss but

22

allowed Plaintiff the opportunity to attempt to correct its pleading deficiencies.  On August 18, 2017,

23

Plaintiff filed an Amended Complaint and, on March 2, 2018, the Court dismissed it for failure to allege

24

reliance.  The Court allowed Plaintiff to prepare a Second Amended Complaint, which it filed on April

25

2, 2018.  With respect to Mr. Horn, the few new allegations in the Second Amended Complaint fail to

26

overcome the pleading deficiencies that were previously identified by the Court.  The Second Amended

27

Complaint therefore should be dismissed as to Mr. Horn.

28

### A.  The Rule 10b-5 Claim (Count I) Should be Dismissed As To Mr. Horn

Like the original Complaint, the Second Amended Complaint lacks allegations sufficient to support a strong inference of scienter as to Mr. Horn.  Plaintiff continues to allege that it purchased bonds in May 2014, shortly after the Offering Memorandum was issued.  Plaintiff also continues to allege that, on May 15, 2014, Mr. Horn received the "Schmidt email" that is alleged to have placed Mr. Horn on notice of an issue that should have been disclosed.   As this Court stated in its prior dismissal Order, managers are permitted a reasonable amount of time to digest and investigate information before a disclosure obligation arises. (7/19/17 Order at 20).  The close temporal proximity between the May 15 email and the bond issuance continues to prevent Plaintiff from alleging a strong inference that Mr. Horn possessed scienter at the relevant time, *i.e.*, when the Offering Memorandum was issued and/or when the bond purchase occurred.  The new allegations contained in the Second Amended Complaint fail to overcome this pleading deficiency.

The Second Amended Complaint contains a new allegation that, in "April 2014, after learning the results of the ICCT and VWU study, Defendant Horn asked for reports and analyses from VWGoA's Engineering and Environmental Office." (Second Amended Complaint ("SAC") ¶ 324).  This allegation does not improve, much less rectify, the inadequacy of Plaintiff's scienter allegations with respect to Mr. Horn.  The new allegation instead invokes the well-established axiom that a manager's investigation of a potential issue is "a prudent course of action that weakens rather than strengthens an inference of scienter." *Horizon Asset Mgmt. Inc. v. H & R Block, Inc.*, 580 F.3d 755, 763 (8th Cir. 2009).  By alleging that, at the first inkling in April 2014 about the presence of elevated NOx levels (*i.e.*, word of the as-yet-unpublished ICCT report), Mr. Horn allegedly requested analyses of the issue, the Second Amended Complaint raises an inference of appropriate diligence, not scienter.  Mr. Horn's alleged receipt of the May 15 Schmidt email a very short time later would have reinforced the prudence of his inquiry.  The close temporal proximity between both of these alleged events and the bond purchase confirms that, in the Second Amended Complaint as in the previous ones, Plaintiff has failed to allege a strong inference of scienter with respect to Mr. Horn.

The bulk of Plaintiff's remaining allegations with respect to Mr. Horn are mere amplifications of generic corporate-position allegations that this Court has already found insufficient to demonstrate

-2-

1   scienter when considered, as they must be, without the May 15 email that predated the bond purchase by

2   only eight days.  By adding vague allegations, such as that Mr. Horn was "a 'Wolfsburg insider' with

3   close connections to Winterkorn, and well-versed in the inner workings of Volkswagen," Plaintiff has

4   replicated the prior shortcomings of its First Amended Complaint instead of correct them.  (SAC ¶ 327).

5   The same holds true for the new allegations that Mr. Horn "held various roles over his 25-year tenure" at

6   Volkswagen and was on the "North America Committee" in 2014.  (*Id.* ¶¶ 25, 327).  Expanding upon

7   the details of Mr. Horn's career or noting an additional committee membership does not change the fact

8   that the allegations relate to position alone, and thus still lack "specific facts indicating no less than a

9   degree of recklessness that strongly suggests actual intent."  *Glazer Capital Mgmt., LP v. Magistri*, 549

10  F.3d 736, 743 (9th Cir. 2008).

11      Similarly, the new statement–and-action allegations postdating Plaintiff's bond purchase are

12  irrelevant to the scienter analysis by virtue of their timing.  By adding an allegation that on "July 21,

13  2015, Defendant Horn expressed the urgency of the [certification] situation to multiple VWAG"

14  employees, discussed the issue with regulators, and that he was "personally involved with Volkswagen's

15  response to the ICCT and WVU report," (SAC ¶¶ 181, 327), Plaintiff disregards that scienter requires

16  "allegations of specific *contemporaneous* statements or conditions" that strongly suggest an intent to

17  deceive.  *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1066 (9th Cir. 2008)

18  (emphasis added).  Statements and actions postdating Plaintiff's bond purchase by more than a year are

19  incapable of fulfilling that requirement.

20      Finally, Plaintiff's supplemental allegations, viewed in their entirety, fail to support a strong

21  inference of scienter as to Mr. Horn for the same reasons that this Court found the initial Complaint to

22  be insufficient.  The May 15 email came to Mr. Horn too late to bear on scienter for purposes of

23  Plaintiff's claims and, without that email, "the other allegations are not sufficient to support a strong

24  inference that, as of either May 15 or May 23, 2014, Horn knew about the defeat device scheme and

25  intentionally or recklessly omitted information about the scheme in the May 2014 Offering

26  Memorandum."  (7/19/17 Order at 20).

27

28

**B.     The Section 20(a) Claim (Count II) Should Be Dismissed As To Mr. Horn**

Plaintiff's amended Section 20(a) control-person claim against Mr. Horn is insufficient for the same reason that the original Section 20(a) claim failed: "Because Plaintiff has not adequately established a primary violation as to Horn, Plaintiff's control person claims against him" must be dismissed as well. (7/19/17 Order at 27).   Additionally, Plaintiff has not set forth allegations sufficient to support a strong inference that Mr. Horn had control over the fraud alleged.  Just as in *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151 (9th Cir. 1996), Plaintiff has alleged "no evidence that [Mr. Horn] exercised direct or indirect control over the [bond] offering in any way." *Id.* at 1157.  Mr. Horn was not a manager or employee of VWGoAF, the entity that allegedly was responsible for issuing the Offering Memorandum and the underlying bonds.  Moreover, there is no factual allegation that Mr. Horn "was authorized to participate in the release of the financial statements" or that he ever signed any such statements, let alone the May 2014 Offering Memorandum.  *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1066 (9th Cir. 2000).  The Section 20(a) claim in the Second Amended Complaint therefore should be dismissed as to Mr. Horn.

## BACKGROUND

This action arises out of Volkswagen's alleged failure "to disclose that it installed and utilized a 'defeat device' in a substantial amount of vehicles[.]" (SAC ¶ 4).  Plaintiff Puerto Rico Government Employees and Judiciary Retirement Systems Administration, a pension fund and sophisticated institutional investor, alleges that this non-disclosure rendered its May 2014 purchase of VWAG bonds fraudulent.  (*Id.* ¶¶ 1, 3, 16; *see* Case No. 15-md-2672-CRB, Dkt. No. 1759-3, at Ex. A (Certification of Plaintiff's purchases)).

Like the initial Complaint, the Second Amended Complaint names as defendants the corporate entities Volkswagen Aktiengesellschaft ("VW AG"), Volkswagen Group of America ("VWGoA"), and Volkswagen Group of America Finance, LLC ("VWGoAF").  Plaintiff also has sued the former CEO of VWAG, Martin Winterkorn, and the former CEO of VWGoA, Michael Horn.  Plaintiff alleges that Defendants committed securities fraud in violation of Section 10(b) and Rule 10b-5 (Count I) by making "materially false and misleading statements and omissions to Bondholders regarding the Company's operations" with respect to the installation and use of defeat devices.  (SAC ¶ 4).  Plaintiff also brings

-4-

1    control person claims (Count II) pursuant to Section 20(a) of the Securities Exchange Act against VW

2    AG, VWGoA, Mr. Winterkorn, and Mr. Horn.

3         Defendants previously moved to dismiss these same claims in the initial Complaint.  On July 19,

4    2017, the Court dismissed both claims against Mr. Horn, dismissed the Rule 10b-5 claim against

5    VWGoA, and limited the actionable alleged misstatements to those contained in the Offering

6    Memorandum and the financial statements appended to it.  (ECF No. 3470, herein after the "7/19/17

7    Order").  With respect to Mr. Horn, the Court dismissed the Rule 10b-5 claim because Plaintiff failed to

8    allege facts that would support a strong inference that Mr. Horn possessed scienter at the time of

9    Plaintiff's May 2014 bond purchase.  (7/19/17 Order at 19-20).  The Court held that the May 15, 2014,

10   email from Mr. Schmidt to Mr. Horn failed to establish scienter at the relevant time because:

11            Even if Plaintiff did not finalize its bond purchase until May 23, 2014, and
12            Horn accordingly had time to read the [May 15, 2014] Schmidt email before
              the transaction was complete, managers are permitted a reasonable amount
13            of time to consider, digest, and investigate negative information before they
              disclose that information to the public.
14

15   (*Id.* at 19).  With respect to Plaintiff's other allegations of scienter, the Court held that "[i]f the Schmidt

16   email is not considered, the other allegations are not sufficient to support a strong inference that, as of

17   either May 15 or May 23, 2014, Horn knew about the defeat device scheme[.]"  (*Id.* at 20).  Finally,

18   the Court rejected Plaintiff's belated attempt to establish scienter through the core operations doctrine,

19   reasoning that the "Complaint does not included allegations supporting that information about the *defeat*

20   *device*—a software program—was readily available to Horn."  (*Id.* at 21) (emphasis original).

21        Plaintiff's inadequate allegations of scienter as to Mr. Horn prevented Plaintiff from adequately

22   pleading scienter as to VWGoA as well.  As the Court held, "because Plaintiff's allegations do not

23   support a strong inference of scienter as to Horn, and 'corporate scienter relies heavily on the awareness

24   of the directors and officers,' the allegations also do not support scienter as to VWGoA."  (7/19/17

25   Order at 21-22 (citation omitted)).  The inadequacy of Plaintiff's scienter allegations also foreclosed

26   Plaintiff from establishing the primary securities violation element of its Section 20(a) claim against Mr.

27   Horn and made it unnecessary for the Court to address the adequacy of Plaintiff's allegations relating to

28   Mr. Horn's alleged control over the purported primary violator.  (*Id.* at 27).

1    The Court granted Plaintiff leave to amend its Complaint and, on August 18, 2017, Plaintiff filed

2    the First Amended Complaint.  Defendants again moved to dismiss, and the Court granted the motions.

3    The Court reasoned that Plaintiff had failed to establish the reliance element of its Rule 10b-5 claim

4    because it had not "allege[d] that one or more of its agents actually read the Memorandum and relied on

5    the statements."  (ECF No. 4886, 3/2/18 Order at 16).  This pleading deficiency also required dismissal

6    of the Section 20(a) control person claim, as there was no primary violation upon which to premise it.

7    (*Id*. at 4 n.1).  The Court did "not consider at this time other issues that were raised in the motions [to

8    dismiss]," including those in Mr. Horn's motion, in "light of the holding with respect to reliance[.]"  (*Id*.

9    at 2).

10         Plaintiff filed its Second Amended Complaint on April 2, 2018, but has failed to correct the

11   pleading deficiencies previously identified by the Court in its first Order of dismissal as to Mr. Horn.

12   The Second Amended Complaint therefore should be dismissed as to Mr. Horn as well.

**ARGUMENT**

**I.    THE AMENDED COMPLAINT FAILS TO PLEAD A "STRONG INFERENCE OF
SCIENTER" WITH RESPECT TO MR. HORN.**

16         The Court previously dismissed Plaintiff's Rule 10b-5 claim against Mr. Horn for failure to

17   allege facts sufficient to support a strong inference that Mr. Horn possessed scienter at the time of

18   Plaintiff's May 23, 2014 bond purchase.  *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d

19   1049, 1061 (9th Cir. 2008) ("In order to state a claim for securities fraud that complies with the dictates

20   of the PSLRA, the complaint must raise a '*strong inference*' of scienter—*i.e.,* a *strong inference* that the

21   defendant acted with an intent to deceive, manipulate, or defraud.") (citations omitted).  The Court

22   reasoned that the lynchpin of Plaintiff's claim as to Mr. Horn – the  May 15, 2014 Schmidt email – did

23   not support a finding of scienter because "it would have been reasonable for Horn … to have considered

24   and investigated the issue [raised in Schmidt's email] for more than a week before disclosing the

25   information to potential bondholders or the public."  (7/19/17 Order at 20).  This pleading deficiency

26   rendered Plaintiff's other allegations against Mr. Horn wanting because, "[i]f the Schmidt email is not

27   considered, the other allegations are not sufficient" to support a finding of scienter by themselves.  *Id*.;

28   *see Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008) ("The allegations, read as a whole,

-6-

1    must raise an inference of scienter that is cogent and compelling, thus strong in light of other

2    explanations, to satisfy the PSLRA standard.") (citations omitted).

3         In the Second Amended Complaint, Plaintiff attempts to cure its deficient allegations of scienter

4    with respect to Mr. Horn through three categories of supplemental allegations:

5         (A) Plaintiff alleges that in April of 2014, Mr. Horn learned of the forthcoming publication of the

6    ICCT study and requested reports and analyses of the study from VWGoA's Environmental and

7    Engineering Office (SAC ¶¶ 77, 171, 192, 324);

8         (B) Plaintiff adds a variety of corporate position allegations, including that Mr. Horn had more

9    than 25 years with the company, was "hand selected by Winterkorn," and was a "Wolfsburg insider"

10   with "access to and knowledge of the same information as Winterkorn" (*Id*. ¶¶ 25, 327); and

11        (C) Plaintiff alleges that Mr. Horn made statements and took actions in 2015 that post-date

12   Plaintiff's May 2014 purchase by more than one year.  (*Id*. ¶¶ 181, 186).

13   As shown below, these three categories of supplemental allegations do not support a "strong inference"

14   that Mr. Horn had scienter, *i.e.*, a mental state embracing intent to deceive, manipulate, or defraud, at the

15   time of Plaintiff's May 2014 bond purchase.

16       **A.**    **Plaintiff's allegation that in April 2014, Mr. Horn requested reports and analyses of**

17            **the as-yet-unpublished ICCT study reinforces the absence of scienter.**

18        The Second Amended Complaint contains repeated variants of the allegation that in "April 2014,

19   after learning the results of the ICCT and VWU study, Defendant Horn asked for reports and analyses

20   from VWGoA's Engineering and Environmental Office."  (SAC ¶ 324, *see also id.* ¶¶ 77, 171, 192).

21   Through this allegation, Plaintiff presumably seeks to push back the date on which Mr. Horn allegedly

22   would have formed an inkling of a possible emissions issue.  By alleging a first awareness of a possible

23   issue on a date preceding the May 15 email by a matter of weeks, Plaintiff seeks to address this Court's

24   prior ruling that the eight-day period between the May 15 email and Plaintiff's May 23 purchase was an

25   insufficient period of time for Mr. Horn to have formed scienter.

26        But Plaintiff's amended timeline allegations do not alter this Court's prior analysis.  Numerous

27   courts, including this Court and others in this District, recognize that when managers are first presented

28   with notice of an issue, they "are entitled to investigate for a reasonable time, until they have a full story

-7-

1    to reveal." *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 761 (7th Cir. 2007).  These same courts

2    also hold that a period of at least two months for investigation is "both proper and lawful."  *Id.* (finding

3    investigatory period lawful where the "headquarters in the United States knew of the shenanigans [with

4    its Brazilian subsidiary in] May 2004" but did not publicly disclose them until July 22, 2004); *see*, *e.g.,*

5    *In re Yahoo! Inc. Sec. Litig.*, 2012 WL 3282819, at *22 (N.D. Cal. Aug. 10, 2012) (five weeks of silence

6    upon notice of an issue was reasonable because the CEO needed time to investigate); *Slayton v. Am.*

7    *Express Co.*, 604 F.3d 758, 763-64, 774, 777 (2d Cir. 2010) (taking two months to "ascertain and

8    disclose future losses" is "both proper and lawful") (citation omitted); *In re Pretium Res. Inc. Sec. Litig.*,

9    2017 WL 2560005, at *12 (S.D.N.Y. June 13, 2017) (where "[a]t most, [defendant] took four months …

10   to investigate [a subcontractor's] concerns" the court held that [t]his is a reasonable period of time under

11   all the circumstances presented[.]").

12          Plaintiff's new allegations set forth a timetable that fits comfortably within these examples of the

13   lawful internal-inquiry period during which scienter *cannot* be reasonably inferred.  Plaintiff alleges that

14   in April 2014, Mr. Horn learned of an "upcoming publication of a report" by the ICCT showing that

15   certain clean-diesel VW vehicles were emitting elevated levels of NOx during normal driving

16   conditions.  (SAC ¶ 77).  Rather "than jump the gun with half-formed stories as soon as [the] problem

17   [came] to [his] attention," *Higginbotham*, 495 F.3d at 761, Mr. Horn allegedly "requested reports and

18   analyses" of the yet-to-be-released study.  (SAC ¶ 77).  Then, on May 15, 2014, Mr. Horn allegedly

19   received an email containing additional information regarding the possible issue and its possible impact.

20   (SAC ¶ 82).  Thus, the new allegations simply trace the progression from Mr. Horn's alleged first

21   awareness of a rumor about elevated NOx levels in certain VW cars (April 2014) to Mr. Horn's alleged

22   first exposure to additional information regarding the possible issue weeks later (May 15, 2014).

23          The allegation that it was Mr. Horn who "requested" the additional information further

24   diminishes the inference of scienter.  Plaintiff alleges that Mr. Horn made a conscious decision to pursue

25   an executive inquiry (*i.e.*, by requesting follow-up information) within a permissible period of time for

26   investigating an issue before any scienter inference can arise.  Plaintiff's allegation that Mr. Horn

27   undertook an *actual investigation* undermines any inference of scienter even more forcefully than would

28   facts that supported merely the existence of the investigatory period.  *See In re Genzyme Corp. Sec.*

-8-

1    *Litig.*, 754 F.3d 31, 44 (1st Cir. 2014) ("[W]here the defendants did not immediately know the cause of

2    the first two bioreactor run failures … it was proper for [the defendant] to open an inquiry into the

3    matter, and to wait for a complete picture to become apparent before making any formal

4    announcements.").  In other words, Plaintiff's allegations demonstrate not only the existence of a

5    permissible investigatory period, but also cast Mr. Horn as actively pursuing the investigatory process

6    during the lawful internal-inquiry period.  For both reasons, no strong inference of scienter is supported

7    as to Mr. Horn.

8        The temporal progression of Plaintiff's allegations with respect to Mr. Horn also reinforce the

9    Court's prior holding that "it would have been reasonable for Horn to have obtained the Schmidt email

10   and to have considered and investigated the issue for more than a week before disclosing the information

11   to potential bondholders or the public." (7/19/17 Order at 20).  As in Plaintiff's original Complaint, the

12   May 15 email is still the first-in-time factual allegation that Mr. Horn was made aware of a possible

13   emissions issue and its possible scope.  Thus, regardless of when Mr. Horn allegedly heard about a

14   forthcoming ICCT report, May 15 still stands as the operative date on which he first received

15   information "to have considered and investigated[.]"  (*Id.*)  Plaintiff's apparent attempt to push back that

16   awareness to the moment Mr. Horn allegedly heard the ICCT rumor relies on a false equivalency.

17   Awareness of an unverified rumor regarding a yet-to-be-published report is a far cry from written notice

18   of a possible issue, and still an even farther "distance from convincing proof of intent to deceive."

19   *Higginbotham,* 495 F.3d at 758 ("[K]nowing enough to launch an investigation ... is a very great

20   distance from convincing proof of intent to deceive.").  Mr. Horn had no obligation to publicly disclose

21   a rumor he himself had yet to verify or investigate.  *See In re HP Sec. Litig.*, 2013 WL 6185529, at *10

22   (N.D. Cal. Nov. 26, 2013) ("Defendants have no obligation to prematurely report allegations, even if

23   well-founded; nor would Defendants have been able to accurately determine the true amount of the

24   required write-down absent a thorough investigation.") (Breyer, J.).  Thus, Plaintiff's supplemental

25   allegations regarding the rumored ICCT report do not cure Plaintiff's failure to allege a strong inference

26   of scienter against Mr. Horn.

27

28

**B.** **Plaintiff's supplemental allegations regarding Mr. Horn's career and corporate position do not remedy Plaintiff's failure to allege a strong inference of scienter.**

The bulk of Plaintiff's remaining new allegations with respect to Mr. Horn are merely vague amplifications of the corporate position allegations that this Court has already found insufficient to support an inference of scienter on their own (*i.e.*, without the May 15 email). The amended allegations still fail "to support a strong inference that as of either May 15 or May 23, 2014, Horn knew about the defeat device scheme and intentionally or recklessly omitted information about the scheme in the May 2014 Offering Memorandum." (7/19/17 Order at 20). Recitation of Mr. Horn's career history and work duties cannot substitute for the missing logical nexus to the defeat device. *See Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 743 (9th Cir. 2008) ("[P]laintiffs proceeding under the PSLRA can no longer aver intent in general terms … but rather, must state specific facts indicating no less than a degree of recklessness that strongly suggests actual intent.") (citation omitted); *cf. In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1191 (C.D. Cal. 2008) ("[P]osition alone creates a strong inference of scienter only in the extraordinary case where it is 'absurd' to suggest that a defendant did not know.").

For example, Plaintiff originally alleged that Mr. Horn had "access to adverse undisclosed information" due to the "Company's centralized and detail-oriented style of management" – and thus vaguely suggested that somehow, by virtue only of the corporation's management style, Mr. Horn gained knowledge of the defeat device. (Compl. ¶ 27). Plaintiff now adds that Mr. Horn was "a 'Wolfsburg insider' with close connections to Winterkorn, and well-versed in the inner workings of Volkswagen, including access to and knowledge of the same information as Winterkorn." (SAC ¶ 327). These allegations are functionally indistinguishable from one another and are equally inadequate to support an inference of scienter.

The original allegation vaguely implied that Mr. Horn's "access" to adverse information stemmed from the management structure, and the supplemental allegations vaguely imply that it also stemmed from Mr. Horn's status as a "Wolfsburg insider" (hardly a self-defining term) with alleged "close connections" to Winterkorn. All of these allegations reduce to speculation that Mr. Horn "must have known" given the proximity his corporate position allegedly afforded him to others who allegedly had scienter. But such "[g]eneral allegations of defendants' … interaction with other officers and

-10-

1   employees [and] their attendance at meetings … are insufficient" to support an inference of scienter.  *In*

2   *re Daou Sys., Inc.*, 411 F.3d 1006, 1022 (9th Cir. 2005).  "[A] ruling to the contrary would eliminate the

3   necessity for specially pleading scienter as any corporate officer could be said to possess the requisite

4   knowledge by virtue of his or her position."  *In re Autodesk, Inc. Sec. Litig.,* 132 F. Supp. 2d 833, 844

5   (N.D. Cal. 2000); *see In re Ariba, Inc. Sec. Litig.*, 2005 WL 608278, at *8 (N.D. Cal. Mar. 16, 2005)

6   (noting that "district courts in the Northern District of California have held that scienter cannot be pled

7   on the basis of defendants' positions alone").  Plaintiff needed to allege facts which support a strong

8   inference that Mr. Horn actually had knowledge of the defeat device, not speculative inferences of

9   knowledge premised only on his position.[1]

10       It also makes no difference that Plaintiff has expanded its work history allegations from Mr.

11   Horn's position in 2009 to the broader allegation that Mr. Horn "held various roles over his 25-year

12   tenure[.]"  (SAC ¶ 25).  Expanding allegations regarding the arc of Mr. Horn's career do not change the

13   fact that the allegation still relates to position alone, and thus still lacks "specific facts indicating no less

14   than a degree of recklessness that strongly suggests actual intent."  *Glazer Capital Mgmt.*, 549 F.3d at

15   743.  If anything, this amendment exacerbates the irrelevance of the corporate position allegations, as it

16   is unclear what possible inference of scienter could follow from what Mr. Horn was doing in the 1990s.

17       Plaintiff's supplemental allegations regarding the North America Committee share the same

18   defect.  Plaintiff alleges that the committee was formed by Mr. Winterkorn and "is believed to have

19   included Defendant Horn, and met regularly holding 'at least five' meetings from February 2014-

20   December 2014[.]"  (SAC ¶ 327).  In *In re Downey Sec. Litig.*, 2009 WL 736802 (C.D. Cal. Mar. 18,

21   2009), the plaintiff employed the same tactic, arguing that scienter could be inferred from the allegation

22   _____

23   [1]    Plaintiff's allegation in the first sentence of paragraph 334 of the Second Amended Complaint is
     identical to the first sentence of paragraph 319 of the initial Complaint and therefore requires the same
24   result – dismissal.  (*See* SAC ¶ 334 & Compl. ¶ 319, "The U.S.-based Volkswagen entities—VWGoA,
     VWoA, and AoA, as well as VWGoA and VWoA executive Horn —acted with scienter because they
25   were centrally involved in the process for acquiring all necessary approvals and certifications so that
     their vehicles could legally be sold and driven in the United States.").  Plaintiff has merely narrowed, but
26   not corrected, an insufficient allegation of scienter based only on management position by vaguely
     linking it with the corporate function of "acquiring all necessary approvals and certifications[.]"  *See*
27   *Weiss v. Amkor Tech., Inc*., 527 F. Supp. 2d 938 (D. Ariz. 2007) (holding that the plaintiffs "have done
     little more than alleged the Individual Defendants" respective board or executive positions" by alleging
28   that they "had significant control over the Company's stock option practices").

1   that the three executive defendants were members of various committees.  *Id*. at *9.  But the court

2   rejected the argument and held that the defendants' "positions on various committees, such as the

3   executive, internal asset review, and nominating and corporate governance committees" was

4   "insufficient to demonstrate a strong inference of scienter[.]"  *Id*.  The court reasoned that the plaintiff

5   had "failed to allege any specifics with respect to the Individual Defendants' knowledge or an adequate

6   description of their duties on various committees."  *Id*.  The same holds true here.  Plaintiff fails to

7   allege any description of either Mr. Horn's duties on this North America Committee or the Committee's

8   function.  Plaintiff's bare-bones allegations create no inference whatsoever that Mr. Horn's alleged

9   committee membership afforded him knowledge of the defeat device before the date of Plaintiff's bond

10  purchase.

11       **C.    Mr. Horn's alleged statements and actions post-dating Plaintiff's May 23 purchase
            do not support an inference that Mr. Horn possessed scienter at the time of the
12          purchase.**

13       In the initial Complaint, Plaintiff alleged that on October 8, 2015, Mr. Horn apologized on behalf

14  of the company before Congress and that on March 9, 2016, he resigned.  (Compl. ¶¶ 259, 289).

15  Plaintiff now adds that on "July 21, 2015, Defendant Horn expressed the urgency of the [certification]

16  situation to multiple VWAG" employees, discussed the issue with regulators, and that he was

17  "personally involved with Volkswagen's response to the ICCT and WVU report[.]"  (SAC ¶ 181).

18  However, these new allegations lack any inferential merit for the same reason the original two fell

19  short— they all postdate Plaintiff's May 23, 2014 bond purchase.

20       Scienter requires "allegations of specific *contemporaneous* statements or conditions" that

21  strongly suggest an intent to deceive.  *Metzler Inv. GMBH*, 540 F.3d at 1066 (emphasis added).  Thus,

22  "facts relevant to scienter will ordinarily date from *before* any alleged misrepresentations."  *Zelman v.*

23  *JDS Uniphase Corp.*, 376 F. Supp. 2d 956, 971 (N.D. Cal. 2005) (emphasis added).  What Mr. Horn

24  allegedly did or did not do *after* the investigatory period does not bear upon what Mr. Horn was thinking

25  during that earlier period and cannot rectify Plaintiff's failure to allege the required "specific

26  contemporaneous statements or conditions" to support a strong inference of scienter.  *Metzler Inv.*

27  *GMBH*, 540 F.3d at 1066.

28

1       This is especially true with respect to statements.  For example, in *In re Am. Apparel, Inc.*

2   *S'holder Litig.*, 855 F. Supp. 2d 1043 (C.D. Cal. 2012), the plaintiffs relied on statements post-dating the

3   class period to attempt to establish that previous statements minimizing "the impact of the work force

4   reduction were made with scienter[.]"  *Id.* at 1081.  The court rejected the argument, reasoning that

5   statements post-dating the stock purchases may suggest scienter only "if the later statement directly

6   contradicts or is inconsistent with the earlier statement."  *Id.* at 1082.  And even if the later statement

7   concerned the same subject matter, it would be "clearly insufficient for plaintiffs to say that a later,

8   sobering revelation makes an earlier, cheerier statement a falsehood."  *Id.*; *see Yourish v. California*

9   *Amplifier*, 191 F.3d 983, 996 (9th Cir. 1999) (Only a "later statement by the defendant along the lines of

10  'I knew it all along'" can support an inference that an earlier statement was made with scienter.").

11      Plaintiff's new allegation that on "July 21, 2015 Defendant Horn expressed the urgency of the

12  [certification] situation to multiple VWAG" executives makes no claim of direct contradiction or that he

13  "knew it all along."  (SAC ¶ 181).  Rather, if anything, the allegation confirms that Mr. Horn lacked

14  knowledge of the scheme even a year after Plaintiff made its purchase, as Plaintiff alleges that he was

15  imploring VWAG executives to "provide CARB with all of the still outstanding information[.]"  (*Id.*)

16  The allegation that Mr. Horn "was centrally involved in communications with regulators about the

17  affected vehicles" supports the same conclusion.  (*Id.* at ¶ 334).  This allegation implies that Mr. Horn's

18  urgent requests that the company provide CARB with outstanding information was the result of Horn's

19  communications with regulators about their need for the information.

20      Plaintiff's renewed allegation regarding Mr. Horn's testimony to Congress on October 8, 2015

21  cannot support an inference of scienter for the same reason.  Plaintiff does not allege (nor could it) that

22  Mr. Horn testified that he knew about the defeat device at the time of Plaintiff's May 2014 purchase.

23  Plaintiff's subjective spin on Mr. Horn's testimony – alleging that "he refused to be forthcoming and

24  claimed that the corporation was not responsible for the scheme rather, it was the work of a select few

25  individuals" – not only lacks the requisite contradiction to support an inference of scienter, but also has

26  no bearing whatsoever on Mr. Horn's state of knowledge a year and a half earlier.  (SAC ¶ 186).[2]  Thus,

27  

28      [2]    Plaintiff's allegation that Mr. Horn disclaimed corporate responsibility also significantly mischaracterizes Mr. Horn's testimony.  Even Plaintiff quotes an excerpt from Mr. Horn's testimony in

-13-

1   without a later statement that directly negates the fair and reasonable inference that Mr. Horn was

2   investigating the possible emissions non-compliance issue in the short period following its alleged

3   revelation to him, Plaintiff is stuck with the Court's prior holding— as of May 15, 2014 "it would have

4   been reasonable for Horn to … have considered and investigated the issue."  (7/19/17 Order at 20).

5         Plaintiff's allegations regarding Mr. Horn's actions post-dating May 2014 lead to the same

6   result.  Resignation contributes inferential value as to scienter only when the facts pled "refut[e] the

7   reasonable assumption that the resignation occurred as a result of" the error merely having occurred on

8   the executive's watch."  *Zucco Partners, LLC* v. *Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009).

9   As in the initial Complaint, Plaintiff again pleads no facts at all concerning the circumstances of Mr.

10   Horn's March 9, 2016 resignation.  Nor does Plaintiff attempt to explain how a resignation nearly six

11   months after public disclosure of the defeat device could provide any inferential value as to scienter

12   nearly two years earlier.  *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech.,*

13   *Inc.*, 856 F.3d 605, 622 (9th Cir. 2017) (holding that "the fact that [the CFO] remained an employee of

14   [the company] for an additional six months after the first goodwill impairment announcement was made

15   further diminishes any inference of scienter based on his resignation.").  Plaintiff therefore yet again

16   fails to "allege sufficient information to differentiate between a suspicious change in personnel and a

17   benign one."  *Zucco Partners, LLC*, 552 F.3d at 1002.

18         Finally, Plaintiff's supplemental allegation that Mr. Horn "was also personally involved with

19   Volkswagen's response to the ICCT and WVU report" fails to support an inference of scienter because it

20   provides nothing new.  (SAC ¶ 327).  Plaintiff has already alleged that Mr. Horn testified to Congress in

21   response to the report and, as explained above, neither Mr. Horn's testimony nor his participation in

22   responding to the report supports a strong inference that he was aware of the defeat device a year and a

23   half earlier.  Recasting these allegations as "personal involvement" changes nothing.  To the extent

24   Plaintiff would suggest that this allegation refers to some other involvement at some other time, Plaintiff

25   has neglected to allege any factual support.  *See In re LeapFrog Enterprises, Inc. Sec. Litig.*, 527 F.

26

27   which he stated, on behalf of the company, that VW had "broken the trust of our customers, dealerships,
    and employees, as well as the public and regulators."  (SAC ¶ 334).

28

1  Supp. 2d 1033, 1043 (N.D. Cal. 2007) (finding no scienter because "[i]n particular, plaintiffs'

2  allegations purporting to show defendants made false and misleading disclosures with scienter are

3  largely vague [and] made without specific reference to time[.]").  Thus, Mr. Horn's alleged statements

4  and actions post-dating Plaintiff's May 23 purchase do not support an inference that Mr. Horn possessed

5  scienter at the time of its purchase.

6           **D.   Adding Plaintiff's supplemental allegations to the "holistic" review of the allegations
7                does not establish a strong inference of scienter against Mr. Horn.**

8           The Court's original holding that "[i]f the Schmidt email is not considered, the other allegations

9  are not sufficient to support a strong inference that … Horn knew about the defeat device scheme"

10 remains correct even after adding Plaintiff's supplemental allegations into the mix and performing a

11 holistic review.  *See New Mexico State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1095 (9th

12 Cir. 2011) (If the allegations individually fail to support an inference of scienter, the court should

13 "conduct a 'holistic' review of the same allegations to determine whether the insufficient allegations

14 combine to create a strong inference of intentional conduct or deliberate recklessness.").  This remains

15 true because Plaintiff's supplemental allegations replicate, rather than rectify, the initial Complaint's

16 shortcomings.

17          For example, Plaintiff's amplified and more colloquial "position" allegations ("seasoned,"

18 "insider," etc.) are still just empty position allegations.  Similarly, the new statement-and-action

19 allegations postdating Plaintiff's purchase still cannot inform the scienter analysis by virtue of their

20 timing.  Thus, the new allegations like the original ones, are inherently incapable of supporting scienter.

21 Viewing them collectively does not move the needle in Plaintiff's favor.  Zero plus zero equals zero.

22          Plaintiff's new allegations regarding the rumored forthcoming report in April 2014 also do not

23 strengthen an inference of scienter.   Where Plaintiff originally alleged that Mr. Horn simply received

24 the May 15 email, Plaintiff now alleges that Mr. Horn also pursued further information concerning a

25 rumor he heard weeks earlier.  Mr. Horn's alleged seeking of "reports and analyses" is consistent with

26 the aim of discovering information, not a willful attempt to conceal it. (SAC. ¶¶ 77, 171, 192, 324).

27 Plaintiff's addition of new facts to the timeline merely reinforces the inferential absence of scienter and

28 does not alter the validity of the Court's previous finding that Plaintiff's allegations support no inference

-15-

that Mr. Horn possessed scienter.  Moreover, Plaintiff's bare position-based allegations add no value to an evaluation of scienter and therefore do not alter the outcome of a holistic review of the adequacy of Plaintiff's allegations.

## II.    PLAINTIFF'S SECTION 20(a) CLAIM FAILS AS A MATTER OF LAW.

### A.    Because Plaintiff has failed to establish a primary violation as to Mr. Horn, Plaintiff's Section 20(a) claim against him fails.

A prima facie claim under Section 20(a) requires (1) a primary violation of federal securities laws and (2) a showing "that the defendant exercised actual control or power over the primary violator[.]"  *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000).  With respect to the original Complaint, the Court held that "[b]ecause Plaintiff has not adequately established a primary violation as to Horn, Plaintiff's control person claims against him" must be dismissed.  (7/19/17 Order at 27).  For all the reasons set forth above, this deficiency has not been remedied in the Second Amended Complaint.

### B.    Alternatively, Plaintiff has not set forth allegations sufficient to support a strong inference that Mr. Horn had control over the fraud alleged.

The "actual control" element of a Section 20(a) claim does not require "actual participation or the exercise of actual power" by the defendant.  *Howard*, 228 F.3d at 1065.  By the same token, "an individual's status as an officer or director of the issuing corporation is insufficient, standing alone, to demonstrate" actual control.  *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1037 (C.D. Cal. 2008); *see Arthur Children's Trust v. Keim*, 994 F.2d 1390, 1396 (9th Cir. 1993) ("A director is not automatically liable as a controlling person.").  A defendant meets the actual control standard only when he controls the operation responsible for the alleged fraud.

Generally, this "is an intensely factual question, involving scrutiny of the defendant's participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions."  *Kaplan v. Rose*, 49 F.3d 1363, 1382 (9th Cir. 1994).  Intense factual scrutiny of these matters is not required here, however.  Regardless of whether the primary violator were deemed to be VWGoA or VWGoAF, Plaintiff's allegations fail to satisfy the "actual control" element with respect to Mr. Horn

1   under the binding authority of *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151 (9th Cir.

2   1996).

3          In *Paracor*, the plaintiff brought a Section 20(a) claim against the CEO of a company, among

4   others, alleging that the company withheld "negative sales data for the three months immediately prior

5   to the" sale of debentures. *Paracor*, 96 F.3d at 1157. The Ninth Circuit determined that the CEO (1)

6   was "at least consulted on every major decision," (2) "knew the debenture offering was taking place,"

7   and (3) "understood that the Placement Memorandum was a disclosure of what the company was all

8   about," but still declined to find that the CEO was a control person as to the offering. *Id.* at 1163. The

9   court reasoned that the plaintiff had "introduced no evidence that [the CEO] exercised direct or indirect

10  control over the debenture offering in any way." *Id.* Moreover, the CEO "was not authorized to act for

11  [the company] on the matter and was not involved in the preparation of any of the offering materials."

12  *Id.* at 1164.

13         In *Howard*, the Ninth Circuit addressed a similar fact pattern and again focused on whether the

14  CEO had actual control over the financial matter at issue, which in that case was the issuance of

15  financial statements. The court determined that even though the CEO "did not make much of a review

16  of the financial statements," he qualified as a control person because he "was authorized to participate in

17  the release of the financial statements and *signed off on the statements as correct*." 228 F.3d at 1066

18  (emphasis added); *see also S.E.C. v. Todd*, 642 F.3d 1207, 1212 (9th Cir. 2011) (holding that a jury

19  could find that a CEO qualified as a control person because he "had day-to-day control of the company,"

20  signed a letter that provided misleading financial information, and "participated in preparing a press

21  release" that contained misleading financial information); *In re Homestore.com, Inc. Sec. Litig.*, 347 F.

22  Supp. 2d 769, 790 (C.D. Cal. 2004) (holding that "evidence that [the CEO] was involved with the day-

23  to-day operations *and* the financial aspects" that were the source of the fraud was sufficient to support a

24  control person claim) (emphasis added).

25         Just as in *Paracor*, Plaintiff has failed to allege "that [Mr. Horn] exercised direct or indirect

26  control over the [bond] offering in any way." *Paracor*, 96 F.3d at 1157. Mr. Horn was not an officer or

27  even an employee of VWGoAF, the entity that was responsible for issuing the Offering Memorandum

28  and the underlying bonds. (*See* SAC ¶ 3, "Defendant VWGoAF was incorporated on February 14, 2014,

-17-

1   as a debt-issuing vehicle for its ultimate parent company, VWAG.")  Plaintiff's allegation that

2   "VWGoAF Board members reported to Defendant Horn in their responsibilities as executives of

3   VWGoA" does not remedy the absence of allegations of control. (*Id.* ¶ 25).  Critically absent from the

4   Second Amended Complaint is any assertion that these VWGoAF board members made reports *about*

5   VWGoAF or the relevant bond offering to Mr. Horn.

6          The allegations tracing Mr. Horn's 25-year history with VW actually reduce any inference of

7   control, as they state *nothing* about Horn's securities experience or financial expertise and instead cast

8   him as a veteran salesman.  *See In re Homestore.com, Inc. Sec. Litig.*, 347 F. Supp. 2d at 790 (holding

9   that "[a]lthough [the CEO] might not have had a formal background in finance or accounting" evidence

10  that the CEO "was involved with the day-to-day operations and the financial aspects" of the company,

11  supported control person liability).  As in *Howard*, no factual allegation supports an inference that Mr.

12  Horn "was authorized to participate in the release of the financial statements" or that he *ever* signed any

13  such statements, let alone the May 2014 Offering Memorandum.  *See Howard*, 228 F.3d at 1066.

14  Simply put, Plaintiff fails to allege that Mr. Horn had any involvement in or control over VWGoAF

15  bond offerings in general, or the bond offering at issue here in particular.  *Cf. In re Volkswagen "Clean*

16  *Diesel*," 2017 WL 2798525, at *10 (N.D. Cal. June 28, 2017) (finding that the allegation that Mr. Horn

17  was "centrally involved in communications with regulators about the Affected Vehicles" supported a

18  control person claim regarding certifications from regulators).

19          Accordingly, Plaintiff has failed to "plead the circumstances of the control relationship with

20  sufficient particularity to satisfy rule 9(b)."  *Howard v. Hui*, 2001 WL 1159780, at *4 (N.D. Cal. Sept.

21  24, 2001).

22                                    **CONCLUSION**

23          For the reasons set forth above, Defendant Michael Horn respectfully moves the Court to dismiss

24  him from both Counts of the Second Amended Complaint with prejudice.[3]

25  _____

26  [3]      Because Plaintiff has been given leave to amend twice and has still failed to state a claim against
    Mr. Horn, its claims now should be dismissed with prejudice. *See Zucco Partners, LLC*, 552 F.3d at
27  1007 (9th Cir. 2009) ("[W]here the plaintiff has previously been granted leave to amend and has
    subsequently failed to add the requisite particularity to its claims, [t]he district court's discretion to deny
28  leave to amend is particularly broad." (internal quotation marks omitted) (second alteration in original)).

-18-

Dated: May 2, 2018

Respectfully submitted,

*/s/ David Schertler*
David Schertler (*admitted pro hac vice*)
Lisa Manning (*admitted pro hac vice*)
Joseph Gonzalez (*admitted pro hac vice*)
SCHERTLER & ONORATO, LLP
1101 Pennsylvania Avenue, N.W.
Suite 1150
Washington, D.C. 20004
Telephone: (202) 628-4199
Facsimile:  (202) 628-4177

*Attorneys for Defendant Michael Horn*