**In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation**

**Case No. 3:15-md-02672-CRB**

# REPORT OF INDEPENDENT CLAIMS SUPERVISOR ON VOLKSWAGEN'S PROGRESS AND COMPLIANCE RELATED TO 3.0 LITER RESOLUTION AGREEMENTS ENTERED MAY 17, 2017:

- 3.0 Liter Amended Consumer Class Action Settlement Agreement and Release
- Federal Trade Commission Amended Second Consent Order
- Department of Justice, Environmental Protection Agency, California Attorney General's Office, and California Air Resources Board Second Partial Consent Decree

JUNE 13, 2018



## TABLE OF CONTENTS

I.    Executive Summary ................................................................................................. 1

II.   Volkswagen's Performance Metrics ....................................................................... 3

   A.   Consumer Registrations ................................................................................. 4

   B.   Claim Submission and the First Ten-Business-Day Review Period ................... 8

   C.   Preliminary Eligibility Determinations and Deficiencies .............................. 15

   D.   The "Pause" Period ...................................................................................... 21

   E.   The Second Ten-Business-Day Review Period.............................................. 21

   F.   Offer Letters ................................................................................................ 26

   G.   Appointments, Closings, and Repair Participation Payments ........................ 33

   H.   Progress Toward the 85% Targets ................................................................ 37

III.  Claims Program Updates ...................................................................................... 41

   A.   Non-Standard Claims ................................................................................... 41

      1.   Branded Title Claims............................................................................. 41

      2.   Military Overseas Claims ...................................................................... 42

   B.   REM Approval ............................................................................................. 43

   C.   3.0-Liter Canada Settlement ......................................................................... 45

   D.   Status of Extended Warranty and Service Contract Refund Program.............. 46

   E.   Claims Review Committee............................................................................ 47

   F.   Virtual Closing Process ................................................................................ 48

IV.  Customer Service .................................................................................................. 49

V.   Conclusion............................................................................................................ 52

Consistent with the requirements of the 3.0 Liter Resolution Agreements,[1] the independent Claims Supervisor respectfully submits this quarterly report, which, unless otherwise specified, addresses progress in Volkswagen's 3.0 Liter Claims Program for the period from March 8, 2018 to June 7, 2018.

## I.     Executive Summary

A year into the 3.0 Liter Claims Program, Volkswagen has generally administered the Claims Program effectively and efficiently.  The company has timely reviewed claims, issued offer letters, scheduled closing appointments, performed AEMs, and provided payments to the overwhelming majority of eligible consumers.  Most consumers navigated the various phases of the Claims Program without significant issue, and the company received relatively limited consumer complaints.  For those consumers who faced issues or otherwise required assistance, the company generally delivered responsive customer support.

There were a number of notable developments that occurred during this quarterly reporting period.  First, Volkswagen made significant progress processing branded title claims. Following the February 26, 2018 adoption of a general framework developed by the Parties and the CRC for the handling of branded title claims, Volkswagen processed 170 claims that previously had been on hold.  At the end of the quarterly reporting period, thirty-three claims remained on hold -- largely consisting of claims determined by Volkswagen to involve unique factual circumstances requiring further collaboration with the PSC and possibly the CRC regarding the application of the established framework.

_____

[1] Capitalized and/or abbreviated terms in this report take on the definition in the 3.0 Liter Resolution Agreements or the initial report submitted by the Claims Supervisor in June 2017.

In addition, on May 23, 2018, the EPA and CARB approved a Reduced Emissions Modification ("REM") for Generation 1.1 vehicles.[2]  The company notified potentially impacted consumers by email and regular mail of the approval, and scheduling options to complete the REM were coordinated with Volkswagen's dealer network and became available in early June.

Moreover, following approval of the Canadian 3.0 Liter settlement in April 2018, Volkswagen elected to provide compensation to consumers who purchased vehicles manufactured for sale in the United States but registered in Canada, as these consumers were not expressly included in either settlement class.

Finally, Volkswagen and its vendor were able to make significant progress eliminating the backlog of pending claims submitted in connection with the extended warranty and service contract refund program.

The statistics below provide a cumulative presentation of key 3.0 Liter Claims Program metrics as of June 7, 2018:

- 76,882 registrations had been created in Volkswagen's Claims Portal;

- 64,376 consumers had submitted claims for Volkswagen to review;

- 60,662 consumers had been issued offer letters, the aggregate value of which totaled $951,144,680.47;

- 57,048 consumers had accepted offer letters from Volkswagen, the aggregate value of which totaled $915,058,281.17;

- 14,258 consumers with Generation One vehicles had closed on their Buyback or Trade-In, and Volkswagen had paid out $573,047,795.72 in connection with these claims;

---

[2] Generation 1.1 vehicles are defined as model year 2009-2010 Volkswagen Touaregs and Audi Q7s.

- 7 consumers had completed the REM for Generation 1.1 vehicles;

- 37,999 consumers with Generation Two vehicles had completed an ECR, including 34,111 consumers who also had completed the claims process;

- $275,918,615.63 had been paid to consumers with Generation Two vehicles who had completed an appointment for a Repair Participation Payment or ECR;

- For Generation One vehicles, 641 Former Owners, 43 Owners with totaled vehicles, and 9 Former Lessees had received Restitution Payments, and the aggregate values of these payments totaled $3,306,583.14, $427,637.45, and $49,846.33, respectively; and

- For Generation Two vehicles, 1,623 Former Lessee, 1,095 Former Owners, and 117 Owners with totaled vehicles had received Repair Payments, and the aggregate values of these payments totaled $3,245,000.00, $4,651,025.46, and $981,562.26, respectively.

## II.   Volkswagen's Performance Metrics

This section discusses the status of Volkswagen's 3.0 Liter Claims Program and the company's compliance with certain requirements mandated in the 3.0 Liter Resolution Agreements.  All data is as of June 7, 2018, unless otherwise specified.  Information relating to Generation One and Generation Two vehicles generally is reported separately because the 3.0 Liter Resolution Agreements afford different remedies to consumers corresponding to the generation of the vehicle.  References to Volkswagen's performance during "this quarter" refer to the period from March 8, 2018 through June 7, 2018.

A.      Consumer Registrations

As of June 7, 2018, there had been a total of 76,882 registrations in Volkswagen's system, including 4,373 registrations created during this quarter.[3]  A registration occurs when a consumer provides Volkswagen with basic information including name, contact information, vehicle identification number ("VIN"), and preferred dealership.  Of these registrations, there were 21,122 associated with Generation One vehicles (19,076 individuals and 2,046 businesses), and 55,760 associated with Generation Two vehicles (49,895 individuals and 5,865 businesses).  Chart 2-1 shows the total number of registrations created by consumers during each quarter of the Claim Period.

**Chart 2-1**



Charts 2-2 and 2-3 reflect all registrations created by consumers according to eligibility category across Generation One and Generation Two vehicles through June 7, 2018.  The "No

---

[3] These figures include a significant number of duplicate entries.  Duplicate entries are not identified until the requisite supporting claims information and documentation are submitted and the review periods begin.  Thus, the figure overstates the number of unique claims that have been registered.

Category Selected" population consists of consumers who had created a registration as of June 7, 2018, but had not yet provided details identifying their eligibility category.

**Chart 2-2**



**Chart 2-3**



Chart 2-4 shows, among the population of vehicles associated with registered claims, the most common states where the vehicles are registered.

**Chart 2-4**



With respect to the population of 2,265 claims identified as ineligible in Charts 2-2 and 2-3, Volkswagen's system is configured to automatically determine certain ineligible claims

where information entered by the consumer into the Claims Portal indicates the consumer is not eligible under the requirements of the 3.0 Liter Resolution Agreements.  For example, a consumer who attempts to submit a Former Owner claim indicating the vehicle was sold on or before September 18, 2015, is ineligible under the "Eligible Former Owner" definition.  In these instances, Volkswagen sends the consumer a letter explaining the basis for the ineligibility determination.

Chart 2-5 shows the reasons for ineligibility determinations across the 2,265 claims that have been deemed systematically ineligible.

**Chart 2-5**



During this quarter, there were eighty-six new systematic ineligibility determinations. The Claims Supervisor reviewed all of these determinations and confirmed that Volkswagen's systematic ineligibility logic continues to operate appropriately.

B.      Claim Submission and the First Ten-Business-Day Review Period

Following registration and preliminary remedy selection, a consumer's next steps in the process are to provide prescribed documents needed to substantiate the claim, and submit the claim to Volkswagen for review.  As of June 7, 2018, a total of 64,376 consumers had submitted unique claims for Volkswagen to review, including 4,265 claims submitted by consumers during this quarter.[4]  Of these, 17,350 related to Generation One vehicles (15,973 individuals and 1,377 businesses), and 47,026 related to Generation Two vehicles (42,832 individuals and 4,194 businesses).

Chart 2-6 shows, across Generation One and Generation Two vehicles, the total number of unique claims submitted by consumers during each quarter of the Claim Period.

**Chart 2-6**



---

[4] "Unique claims" means unique VINs within unique eligibility categories.  A claim by an Owner and a Former Owner regarding the same VIN is counted as two unique claims.  Likewise, a claim by one Owner who owns five separate vehicles is counted as five unique claims.

Charts 2-7 and 2-8 show, across Generation One and Generation Two vehicles, respectively, the total population of consumers who had submitted claims by eligibility category.[5]

**Chart 2-7**



---

[5] The four claims not reflected in Chart 2-7 and fifteen claims not reflected in Chart 2-8 were associated with claims ultimately deemed not eligible.

Chart 2-8



Chart 2-9 shows the preliminary remedy selections for Owners and Current Lessees of Generation One vehicles who had submitted claims through June 7, 2018.

Chart 2-9[6]



As consumers with Generation Two vehicles only have one remedy available, all 38,541 Owners and 4,148 Current Lessees of Generation Two vehicles who had submitted claims through June 7, 2018 sought an ECR.  A Repair Payment is the only remedy available for the 1,946 Former Lessees, as well as 1,218 Former Owners, and 151 Owners with totaled vehicles who had submitted claims associated with Generation Two vehicles.  Additionally, there were 1,007 claims that were cancelled, usually as a result of the submission of duplicate claims or at the consumer's request, and 15 claims that ultimately were deemed not eligible.

Throughout the Claim Period, Volkswagen has continued to substantially satisfy the requirement that it timely issue first ten-business-day review period decisions.  As of June 7, 2018, excluding the 184 claims that were pending a determination but for which the first ten-

---

[6] Chart 2-9 does not include remedy selections for 726 Former Owners, 52 Owners with totaled vehicles, or 11 Former Lessees who had submitted claims associated with Generation One vehicles because the only remedy available to these consumers is Restitution.  The chart also excludes 372 claims that were cancelled, usually due to the submission of duplicate claims or at the consumer's request, as well as 4 claims that were deemed not eligible.

business-day review period had not yet elapsed, Volkswagen had been required to make 96,853 first ten-business-day review period determinations.  The company timely rendered 96,348 decisions for an overall first ten-business-day review period compliance rate of 99.5%.  During this quarter, Volkswagen was required to make 7,429 first ten-business-day review period decisions and timely did so in 7,184 instances for a reporting period-specific first ten-business-day review period compliance rate of 96.7%.

Chart 2-10 shows Volkswagen's performance during the Claim Period in timely issuing first ten-business-day review period decisions, and Chart 2-11 shows Volkswagen's overall first ten-business-day review period performance by eligibility category.

**Chart 2-10**



Volkswagen's Compliance in the First Ten-Business-Day Review Period During the Claim Period

Chart 2-11[7]



Chart 2-12 shows Volkswagen's performance in timely issuing first ten-business-day review period decisions across all quarters of the Claim Period.

---

[7] The thirty-eight claims not reflected in Chart 2-11 were all claims that were timely deemed not eligible.

Chart 2-12[8]



The first ten-business-day review period figures (and the second ten-business-day review period figures below) exclude three groups of consumers who had submitted claims for Volkswagen to process.  First, as of June 7, 2018, there were 195 active claims from consumers who initially purchased vehicles in the United States but registered them in Canada.[9]  Second, as of June 7, 2018, there were two active claims from consumers who indicated in their claim submissions that they were employees of Volkswagen.  Volkswagen has used the claims process to verify the information in these claims submissions and, where verified, engage with these

---

[8] The aggregated total of all claims in Chart 2-12 is 770 decisions (0.8%) greater than the aggregated total of 96,853 required decisions through June 7, 2018.  The divergence is the result of changes over time in the definitions of excluded claims from the timeliness analysis, including claims associated with branded titles as described below. Chart 2-12 reflects the required number of decisions by quarter based on the exclusionary rules that were applied at the time of each quarter, while the aggregated total of required decisions (96,853) and timely decisions (96,348) set forth above yields Volkswagen's overall compliance rate (99.5%) based on applying the current exclusionary rules across the entire Claim Period.

[9] For these purposes, a claim is considered "active" once a consumer submits it, but before a final determination on eligibility and award (or ineligibility) has been rendered.

consumers.  However, these consumers will not receive funds out of the Funding Pool because they are not eligible Class Members.

Finally, the timeliness analysis continues to exclude certain claims associated with vehicles with a branded title.  From the February 26, 2018 implementation of agreed-upon protocols for processing branded title claims through June 7, 2018, Volkswagen processed 170 branded title claims while 33 claims remained to be processed.  Further discussion of branded title claims is set forth in Section III below.

> C.      Preliminary Eligibility Determinations and Deficiencies

Through June 7, 2018, of the 64,376 unique claims that had been submitted by consumers for Volkswagen to review, a total of 61,681 claims (95.8%) had been determined by Volkswagen to be complete and preliminarily eligible.  This includes 4,176 unique claims submitted during this quarter that Volkswagen deemed complete and preliminarily eligible.  Across all 61,681 claims, 16,788 claims related to Generation One vehicles (15,565 individuals and 1,223 businesses) and 44,893 claims related to Generation Two vehicles (41,298 individuals and 3,595 businesses).

Chart 2-13 shows, for Generation One and Generation Two vehicles, the total number of claims deemed complete and preliminarily eligible by Volkswagen during each quarter of the Claim Period.

**Chart 2-13**



Charts 2-14 and 2-15 reflect the number of claims Volkswagen determined to be complete and preliminarily eligible by eligibility category across Generation One and Generation Two vehicles as of June 7, 2018.[10]

---

[10] The one claim not accounted for in Chart 2-14 and seven claims not accounted for in Chart 2-15 were ultimately deemed not eligible.

Chart 2-14



Chart 2-15



Charts 2-16 shows the most common states in which Eligible Vehicles associated with preliminarily eligible claims have been registered.

17

**Chart 2-16**



Chart 2-17 shows, as of June 7, 2018, the remedy selected by Owners and Current Lessees of Generation One vehicles whose claims Volkswagen had deemed complete and preliminarily eligible.

**Chart 2-17**[11]



For Generation Two vehicles, there is only one remedy option available to consumers. As a result, all claims of the 37,400 Owners and 3,951 Current Lessees of Generation Two vehicles that had been deemed complete and preliminarily eligible by Volkswagen through June 7, 2018, were for the ECR remedy. A Repair Payment is the only remedy available for 1,885 Former Lessees, as well as for 1,145 Former Owners, and 140 Owners with totaled vehicles who had submitted claims associated with Generation Two vehicles that, through June 7, 2018, had been deemed complete and preliminarily eligible by Volkswagen. There were an additional 365 cancelled claims and 7 additional claims that ultimately had been deemed not eligible.

Through June 7, 2018, there were 29,952 instances where Volkswagen had deemed a claim deficient during its first ten-business-day review period. More than 50,000 individual deficiency codes had been applied by Volkswagen as of that date, as multiple deficiencies may

---

[11] Chart 2-17 excludes 660 Former Owners, 48 Owners with totaled vehicles, and 10 Former Lessees because Restitution is the only remedy available to those consumers. It also excludes 129 cancelled claims and 1 claim that ultimately was determined to be ineligible.

be associated with a single claim submission.  The most common deficiency codes have been: (i) an incorrect document was uploaded (13,448 claims); (ii) a document was illegible (9,364 claims); (iii) a document was incomplete or the document image was cut off (6,870 claims); and (iv) a document was missing pages (4,133 claims).

As the same claim may be resubmitted to Volkswagen after initially being deemed deficient, the 29,952 instances of deficiency determinations implicated 20,152 unique claims.  Of those 20,152 unique claims, consumers made at least one attempt to cure in connection with 19,017 claims (94.4%), while no attempt to cure had been made in connection with 1,135 claims (5.6%).  Across the 19,017 attempts to cure: (i) in 17,914 instances (94.2%) claims were successfully cured; (ii) in 73 instances (0.4%), claims were resubmitted and pending review by Volkswagen as of June 7, 2018; and (iii) in 1,030 instances (5.4%), the claim had not been subsequently resubmitted after the initial attempt to cure was unsuccessful.

Through June 7, 2018, there were 1,219 consumer claims with active deficiencies.  The most common deficiency codes among active deficient claims were: (i) an incorrect document was uploaded (532 claims); (ii) a document was illegible (252 claims); (iii) a name on a document did not match the name in the Claims Portal (188 claims); and (iv) a document was incomplete or the document image was cut off (129 claims).

Finally, the Claims Supervisor reviewed a sample of 600 deficiency codes applied by Volkswagen reviewers during the first ten-business-day review period to assess whether the codes were properly applied.  The Claims Supervisor substantiated Volkswagen's deficiency determinations in 569 instances (94.8%).  This concurrence rate is relatively consistent with that of the last three quarters.  Trend analyses showed that instances of disagreements involving

complex documents decreased slightly as compared to the previous quarter,[12] as did disagreements involving identification documents and financial consent forms.  Instances of disagreements involving proof of ownership documents marginally increased.[13]

      D.      The "Pause" Period

For Owners of Generation One vehicles who elect a Buyback or Trade-In remedy, whose claims are deemed complete and preliminarily eligible by Volkswagen, and whose vehicles are encumbered by a loan, the second ten-business-day review period does not begin until Volkswagen obtains loan payoff information from the lender.  This information is necessary for Volkswagen to generate an offer letter for the consumer.

Through June 7, 2018, there had been 728 instances in which a claim had been "tolled" pending receipt of loan payoff information from a lender.  On average, the "tolled" period has lasted less than two business days per claim.  As of June 7, 2018, there were no actively tolled claims pending receipt of loan payoff information from a lender.

      E.      The Second Ten-Business-Day Review Period

Volkswagen generally has ten business days from the date it concludes that a consumer's claim is complete and preliminarily eligible to issue an offer letter.[14]  Within that time, the

---

[12] "Complex documents" include: power of attorney; death certificate; proof of VCI account; corporate document; previous registration; proof of acquisition; proof of name change; proof of vehicle transfer to insurance; proof of lease conversion; paper claim forms; and proof of sale documents.

[13] Where the Claims Supervisor disagrees with a deficiency code determination and that deficiency determination is the sole reason the claim has been deemed deficient, the Claims Supervisor will raise the claim with Volkswagen for additional review.

[14] As stated above, for claims by Owners of Generation One vehicles who elect a Buyback or Trade-In and whose vehicles are encumbered by a third-party loan, the second ten-business-day review period does not begin until Volkswagen receives from the lienholder the loan payoff amount information necessary to calculate the award and generate the offer letter.

Claims Supervisor also must independently verify Volkswagen's completeness, eligibility, and award determinations before an offer letter can issue.[15]

As of June 7, 2018, a total of 61,774 consumers had reached the second ten-business-day review period after having been deemed preliminarily eligible by Volkswagen, including 4,178 such consumers during this quarter.[16]  Of these, 16,807 claims related to Generation One vehicles (15,583 individuals and 1,224 businesses) and 44,967 claims related to Generation Two vehicles (41,370 individuals and 3,597 businesses).  Across this population, 60,662 consumers (98.2%) had been issued offer letters, including 4,582 offer letters issued during this quarter.

Chart 2-18 shows, for Generation One and Generation Two vehicles, the total number of claims reaching the second ten-business-day review period during each quarter of the Claim Period.

---

[15] In certain instances, Volkswagen can determine during the first ten-business-day review period that a claim is ineligible, in which case that ineligibility determination must be verified by the Claims Supervisor during the second ten-business-day review period.  These ineligibility determinations are separate from claims automatically deemed ineligible by Volkswagen's system based on information input by the consumer in the Claims Portal.  Through June 7, 2018, there had been 576 instances in which claims had been deemed ineligible upon review by Volkswagen.  For 398 of these claims, the ineligibility determination had been validated by the Claims Supervisor and communicated by Volkswagen to the consumer.  Remaining claims generally either were actively under review or were instances where claims were deemed deficient instead of ineligible, offering the consumer a chance to cure.

[16] As described above, there were 61,681 consumers whose claims were deemed complete and preliminarily eligible by Volkswagen, but 61,774 preliminarily eligible claims reached the second ten-business-day review period.  The difference relates to instances where claims reached the second ten-business-day review period having skipped the status that ends the first ten-business-day review period.  The distinction does not substantively affect claims processing.  It is only reflected when data is queried to generate aggregated figures for reporting.

**Chart 2-18**



Throughout the Claim Period, Volkswagen has continued to substantially satisfy the requirement to timely issue second ten-business-day review period decisions. As of June 7, 2018, excluding the 157 claims that had reached the second ten-business-day review period but for which the review period had not yet elapsed, the company had been required to make 66,651 second ten-business-day review period decisions. The company timely rendered determinations in 65,183 instances, for a second ten-business-day review period compliance rate of 97.8%. During this quarter, Volkswagen was required to make 5,262 second ten-business-day review period decisions, and timely did so in 4,870 instances for a reporting period-specific compliance rate of 92.6%.

Chart 2-19 shows Volkswagen's performance during the Claim Period in timely issuing second ten-business-day review period decisions, and Chart 2-20 reflects Volkswagen's overall second ten-business-day review period performance by eligibility categories.

**Chart 2-19**



**Chart 2-20**[17]



---

[17] The eleven claims not accounted for in Chart 2-20 are associated with claims that ultimately were deemed not eligible, ten of which were timely decisions and one of which was untimely.

Chart 2-21 reflects Volkswagen's performance in timely issuing second ten-business-day review period decisions across each quarter of the Claim Period.

**Chart 2-21**[18]



Chart 2-22 shows the twenty-two claims in Volkswagen's backlog by the number of calendar days those claims were overdue.

---

[18] For the same reasons set forth in footnote 8, the aggregated total of required decisions reflected in Chart 2-21 is 482 decisions (0.7%) greater than the 66,651 required second ten-business-day review period decisions set forth above.

Chart 2-22



Of the twenty-two claims in Volkswagen's backlog as of June 7, 2018, ten claims were awaiting Volkswagen's resolution of a deficiency associated with a generated offer letter before the offer letter could be finalized and sent to the consumer.  Another six claims involved vehicles totaled after the issuance of a Repair Participation Payment.  Three claims involved consumers who purchased a Generation Two vehicle through a private sale after the previous owner had received a Repair Participation Payment for the vehicle.  The remaining three claims were pending resolution by Volkswagen of a document deficiency, non-document deficiency, or eligibility concern associated with the claim.

F.    Offer Letters

Through June 7, 2018, Volkswagen had issued 60,662 offer letters, the aggregate value of which totaled $951,144,680.47, including 4,582 offer letters issued during this quarter aggregately valued at $60,067,248.35.[19]  Of these, 16,576 offer letters with an aggregate value of

---

[19] The Claims Supervisor identified 634 claims -- 610 related to Generation Two vehicles and 24 related to Generation One vehicles -- where it appears that consumers who leased Eligible Vehicles and later purchased the vehicles after January 31, 2017, had claims that were categorized as Owner (Lease Conversion) claims when they

$622,984,294.84 related to Generation One vehicles (15,400 offers to individuals with an aggregate value of $578,915,844.23, and 1,176 offers to businesses with an aggregate value of $44,068,450.61).  The remaining 44,086 offer letters with an aggregate value of $328,160,385.63 related to Generation Two vehicles (40,666 offers to individuals with an aggregate value of $303,016,117.79, and 3,420 offers to businesses with an aggregate value of $25,144,267.84).

Chart 2-23 shows, for Generation One and Generation Two vehicles, the total number of offer letters issued by Volkswagen during each quarter of the Claim Period.

**Chart 2-23**



Charts 2-24 and 2-25 show, across Generation One and Generation Two vehicles, the total number of offer letters issued by Volkswagen by eligibility category.

---

may be more appropriately categorized as Eligible Lessee claims under Section 2.38 of the 3.0 Liter Class Action Settlement Agreement.  A review of the claims showed that when offers were extended, those offers were appropriately being valued using the Lessee valuation formulas for Generation One and Generation Two vehicles. Therefore, this issue is not substantively affecting consumers.  It is purely one of data categorization that affects the aggregation of figures for reporting.  For purposes of this report, unless otherwise noted, these claims will be captured as Owner claims, as that is how they are currently reflected in Volkswagen's claims system.

**Chart 2-24**



**Chart 2-25**



Chart 2-26 shows offer letters related to Generation One vehicles issued to Owners by remedy selections.

**Chart 2-26**[20]



As to Generation Two vehicles, a total of 37,091 Owners and 3,896 Current Lessees had received offer letters for an ECR, while 1,846 Former Lessees, 1,124 Former Owners, and 129 Owners with totaled vehicles had received offer letters associated with Repair Payments.

Chart 2-27 shows the top ten states by vehicle registration of consumers who had received offer letters through June 7, 2018.

---

[20] Chart 2-26 excludes 647 Former Owners, 47 Owners with totaled vehicles, and 9 Former Lessees who had received offer letters because the only remedy available to those consumers is Restitution.

Chart 2-27



Through June 7, 2018, of the approximately $622.98 million corresponding to the offer letters issued by Volkswagen relating to Generation One vehicles, Owners account for about $619.60 million.  Across these consumers, about $402.22 million related to Owners without loans; $216.91 million related to Owners with loans; $469,241.89 related to forty-seven Owners with totaled vehicles; and $5,475.00 related to one Owner claim where the consumer purchased the vehicle between September 18, 2015 and January 31, 2017, following the expiration of the lease.[21]  The remainder was split among Former Owners (647 offer letters valued in the aggregate at about $3.33 million) and Former Lessees (9 offer letters valued in the aggregate at $49,846.33).

Chart 2-28 reflects the minimum, maximum, and average awards issued to consumers with Generation One vehicles based on eligibility category and offer selection through June 7, 2018.

---

[21] Through June 7, 2018, there had been one instance where a loan amount on a Generation One vehicle that was the subject of a Buyback or a Trade-In claim had exceeded 130% of the award amount.  The difference between the loan value and 130% of the award value was approximately $3,300.

**Chart 2-28**[22]

| Eligibility Category and Offer Selection | Average Value | Minimum Value | Maximum Value |
|---|---|---|---|
| Owner – Buyback | $40,404.91 | $12,675.00[23] | $64,846.12 |
| Owner – Trade In | $41,763.97 | $18,055.75 | $62,984.50 |
| Current Lessee – REM | $9,973.79 | $4,002.50 | $13,206.76 |
| Owner – Totaled Vehicle Restitution | $9,983.87 | $4,808.48 | $12,516.20 |
| Former Lessee Restitution | $5,538.48 | $5,100.00 | $6,344.12 |
| Former Owner Restitution | $5,148.91 | $2,612.17 | $6,997.50 |

Through June 7, 2018, of the approximately $328.16 million associated with offer letters to consumers with Generation Two vehicles, Owners accounted for about $311.90 million. The remainder was split among Current Lessees (3,896 offer letters valued in the aggregate at $7.792 million); Former Lessees (1,846 offer letters valued in the aggregate at $3.692 million); and Former Owners (1,124 offer letters valued in the aggregate at about $4.78 million).

Chart 2-29 shows the minimum, maximum, and average awards issued to consumers with Generation Two vehicles based on eligibility category and offer selection through June 7, 2018.

---

[22] Chart 2-28 excludes the twenty-four Generation One claims discussed in footnote 19 above that were categorized as Owner instead of Eligible Lessee claims.

[23] This lower amount was in connection with a vehicle associated with a branded title for which, under the recently adopted branded title eligibility and award protocols, the consumer was entitled only to receive Vehicle Value.

**Chart 2-29**[24]

| Eligibility Category and Offer Selection | Average Value | Minimum Value | Maximum Value |
|---|---|---|---|
| Owner – ECR | $8,436.21 | $3,519.62 | $13,398.94 |
| Owner – Totaled Vehicle Restitution | $8,327.26 | $3,683.37 | $10,466.84 |
| Current Lessee – ECR | $2,000.00 | $2,000.00 | $2,000.00 |
| Former Lessee – Restitution | $2,000.00 | $2,000.00 | $2,000.00 |
| Former Owner – Restitution | $4,251.15 | $1,841.69 | $5,722.12 |

Finally, Chart 2-30 shows, through June 7, 2018, data related to two categories of non-standard claimants: (i) military personnel deployed overseas with their vehicles; and (ii) decedent estates.

**Chart 2-30**[25]

| | Military Overseas | Decedent Estates |
|---|---|---|
| Registrations | 84 | 110 |
| Submitted Claims | 84 | 94 |
| Deemed Complete and Eligible | 84 | 87 |
| Offer Letters Issued | 83 | 84 |
| Total Offer Amounts | $1,621,768.81 | $1,771,625.51 |

[24] With respect to the figures for Owner-ECR claims, Chart 2-29 excludes the 610 Generation Two claims discussed in footnote 19 above that were categorized as Owner instead of Eligible Lessee claims.

[25] Military overseas claims are categorized as non-standard claims because of the unique issues they present in terms of claims processing and closing logistics. While decedent estate claims present unique claims processing issues, closings generally follow the standard process, so information regarding these claims is included within the closing data in this Section along with other standard claims.

G.      Appointments, Closings, and Repair Participation Payments

As of June 7, 2018, a total of 57,048 consumers had accepted offer letters from Volkswagen, the aggregate value of which totaled $915,058,281.17.[26]  This includes 16,156 accepted offer letters associated with Generation One vehicles valued in the aggregate at $608,830,089.54, and 40,892 accepted offer letters associated with Generation Two vehicles valued in the aggregate at $306,228,191.63.  During this quarter, 5,720 offer letters with an aggregate value of $72,714,224.90 were accepted by consumers.

Chart 2-31 shows, for Generation One and Generation Two vehicles, the total number of accepted offer letters for each quarter of the Claim Period.

**Chart 2-31**



---

[26] In addition to Owners, this figure includes Former Lessees, Former Owners, and Owners with totaled vehicles who do not need to proceed through the closing phase because they do not have possession of an Eligible Vehicle. Information on payments made to consumers in these eligibility categories is set forth below.

Of the 16,156 consumers with Generation One vehicles who had accepted offer letters as of June 7, 2018, 15,460 were Owners.  Within that group of 15,460 consumers, 14,517 consumers (93.9%) had scheduled Buyback or Trade-In closing appointments as of June 7, 2018.[27]  Chart 2-32 shows for these consumers the total number of appointments by appointment type across eligibility categories, and Chart 2-33 shows the remedy selection of consumers with closed appointments.[28]

**Chart 2-32**



[27] On May 23, 2018, the EPA and CARB approved a REM for Generation 1.1 vehicles.  REM appointments are scheduled directly through dealerships, and therefore are not shown in Chart 2-32.  Information as of June 8, 2018 regarding completed appointments for Generation 1.1 vehicles is set forth below.

[28] As of June 7, 2018, there had been 4,898 instances where a scheduled Buyback or Trade-In appointment for a Generation One vehicle had resulted in cancellation.  Of these, 4,620 appointments (94.3%) were cancelled at the consumer's request.  Other common reasons for cancellations included: (i) the customer did not show up to the appointment (128 instances); (ii) the title holder was not present at the closing (24 instances); and (iii) the Owner or Current Lessee was not present at the closing and the consumer did not provide a valid power of attorney with his or her claim submission (18 instances).

34

Chart 2-33



As set forth in Chart 2-32, there had been 14,258 appointments associated with Generation One vehicles that had resulted in a Buyback or Trade-In closing as of June 7, 2018, the aggregate value of the offer letters for which totaled $577,726,187.89.  This includes 944 closings during this quarter with offer letters aggregately valued at $39,490,157.71.  Chart 2-34 shows the top ten states for consumers with Generation One vehicles who proceeded through closing based on the state in which the vehicle was registered.

Chart 2-34



Through June 7, 2018, Volkswagen had issued payments totaling $573,047,795.72 to, or on behalf of, Owners with Generation One vehicles who had closed Buyback or Trade-In claims.

As discussed in more detail below, on May 23, 2018, the EPA and CARB approved a REM for Generation 1.1 vehicles and, in late May and early June, Volkswagen provided notice of the approval to consumers. As of June 8, 2018, REMs had been completed on seven Generation 1.1 vehicles, a small figure because of the close proximity between the date consumers were notified that the REM had become available and the date REM data were generated for this report. This includes five consumers who also had completed the claims process, and two consumers who had completed the REM and had submitted a claim that was still pending review.

With ECRs having been approved for all Generation Two vehicles, 37,999 consumers had completed the ECR as of June 8, 2018. This includes 34,111 consumers who also had completed the claims process. An additional 2,288 consumers completed the ECR but had not yet completed the claims process. These are instances where the consumer elected to have the

36

ECR completed on the vehicle and had completed a registration but had not yet submitted the claim, or had submitted a claim that was still pending review.  Finally, 1,600 consumers completed the ECR but had not yet registered a claim or had cancelled their claim.  These consumers remain eligible for funding provided that they register and substantiate their eligibility by submitting all required documentation, including a "repair order" evidencing proof of repair.  In total, Volkswagen had paid $275,918,615.63 to Owners and Current Lessees with Generation Two vehicles, which amount includes both Repair Participation Payments and ECR payments.

The figures above for Generation One and Generation Two vehicles do not account for claims from Former Owners, Former Lessees, and Owners with totaled vehicles because these consumers do not need to go through the closing process.  For Generation One vehicles, aggregated payments across these eligibility categories were: $3,306,583.14 across 641 Former Owners; $427,637.45 across 43 Owners with totaled vehicles; and $49,846.33 across 9 Former Lessees.  For Generation Two vehicles, these figures were: $3,245,000.00 across 1,623 Former Lessees; $4,651,025.46 across 1,095 Former Owners; and $981,562.26 across 117 Owners with totaled vehicles.

H.    Progress Toward the 85% Targets

The 3.0 Liter DOJ Consent Decree requires Volkswagen to remove from commerce or perform an AEM on at least 85% of Generation One 3.0 Liter Subject Vehicles by November 30, 2019.  The 3.0 Liter DOJ Consent Decree also provides that "the total number of Generation 1.x 3.0 Liter Subject Vehicles is 19,602."  Chart 2-35 shows Volkswagen's progress toward this 85% target for Generation One Subject Vehicles.

Chart 2-35[29]



The "Other Vehicles" category depicted in Chart 2-35 (and Charts 2-36, 2-37, and 2-38 below) represents vehicles Volkswagen has removed from commerce outside of the Claims Program. This includes, among others, used vehicles that Volkswagen acquired from dealerships and company cars previously utilized by Volkswagen employees that have since been retired.

Additionally, the 3.0 Liter DOJ Consent Decree states that by November 30, 2019, Volkswagen must remove from commerce or perform an AEM on at least 85% of Generation One 3.0 Liter Subject Vehicles that were registered in California as of November 2, 2015. The 3.0 Liter DOJ Consent Decree also provides that "the total number of all Generation 1.x 3.0 Liter

---

[29] Figures in Charts 2-35 through 2-38 relating to Polk Units in Operation ("UIO") Scrapped and Other Vehicles are based on Volkswagen data as of March 31, 2018. The REM and ECR figures in Charts 2-35 through 2-38 are based on data provided by Volkswagen as of June 8, 2018. Charts 2-35 through 2-38 also include certain vehicles associated with claims from consumers who opted out of the settlement. These vehicles are within the universe of Subject Vehicles, so they count toward the 85% target once they are removed from commerce or modified.

Subject Vehicles registered in California is 2,925."  Chart 2-36 shows Volkswagen's progress

toward this 85% target for Generation One Subject Vehicles registered in California.

**Chart 2-36**



Notably, in past reports the Buyback and Trade-In components of the California-specific

85% target analysis were reported by counting all completed claims for Buyback and Trade-In

appointments associated with vehicles that were registered in California at the time the claim was

submitted.  However, the DOJ Consent Decree contemplates that the Buyback and Trade-In

figures should be counted relative to 2,925 specified Generation One vehicles that were

registered in California as of November 2, 2015 -- and, for California-specific Generation Two

vehicles as shown in Chart 2-38, counted relative to the 11,805 Generation Two vehicles that

were registered in California as of November 2, 2015.  Practically, this means vehicles on the list

that complete a Buyback or Trade-In appointment are counted even if at the time of the claim

they were not registered in California, and vehicles that were registered in California at the time

of the claim are not counted if they are not on the list of specified vehicles.  Accordingly, Charts 2-36 and 2-38 update Volkswagen's progress toward the California-specific 85% targets incorporating this counting methodology.

There are similar targets for Generation Two vehicles.  The 3.0 Liter DOJ Consent Decree provides that by May 31, 2020, Volkswagen is required to perform an ECR on at least 85% of Generation Two 3.0 Liter Subject Vehicles.  The 3.0 Liter DOJ Consent Decree also states that "the total number of Generation 2.x 3.0 Liter Subject Vehicles is 62,772."  Chart 2-37 shows Volkswagen's progress toward this 85% target for Generation Two Subject Vehicles.

**Chart 2-37**



Likewise, by May 31, 2020, Volkswagen is also required to perform an ECR on at least 85% of Generation Two 3.0 Liter Subject Vehicles that were registered in California as of November 2, 2015.  The 3.0 Liter DOJ Consent Decree states that "the total number of all

Generation 2.x 3.0 Liter Subject Vehicles registered in California is 11,805." Chart 2-38 shows Volkswagen's progress toward this 85% target for Generation Two Subject Vehicles.

**Chart 2-38**



## III.    Claims Program Updates

### A.  Non-Standard Claims

#### 1.    Branded Title Claims

As detailed in the March 2018 report, on February 26, 2018, Volkswagen implemented a general eligibility framework for the processing of certain branded title claims that had been on hold, in some cases for months, while the Parties evaluated the nuances presented by these non-standard claim types.[30]  The framework was developed jointly by the Parties and the CRC.  The

---

[30] Title brands include salvage, rebuilt, reconstructed, and prior salvage, and indicate, among other things, whether a vehicle has sustained damage or may be unsafe to drive.  A vehicle branded with a salvage title is typically one that was damaged to the point that it was declared a total loss by an insurance company, often because the cost to repair the vehicle was greater than the value of the vehicle in its damaged state.  In some states, a vehicle with a salvage title cannot be registered with the applicable department of motor vehicles.  However, the nomenclature related to

Parties and CRC recognized that while the framework should address most claims associated with vehicles with titles branded after September 18, 2015, there may be certain claims that present unique factual circumstances and require further collaboration.

Through June 7, 2018, Volkswagen had processed 170 claims previously placed on hold in accordance with the general framework.[31]  A total of seventy-six claims were deemed eligible and resulted in the issuance of offer letters, and a total of ninety-four claims were deemed ineligible.  The majority of eligible claims involved vehicles with rebuilt titles, and the majority of ineligible claims involved vehicles that had salvage titles as of February 26, 2018. Additionally, a total of twenty-one claims required additional information from consumers before the company could render an eligibility and award determination.  The most common form of documentation requested was proof of vehicle acquisition.

At the conclusion of the reporting period, there were thirty-three branded title claims still on hold because the company determined that it needed to discuss with the PSC and possibly the CRC how the new protocols should be applied to the unique factual circumstances of the claims. The Claims Supervisor will continue to closely monitor developments related to the processing of these claims and will provide updates in future reports.

2.   Military Overseas Claims

As of June 5, 2018, Volkswagen had identified ninety claims submitted by military personnel deployed overseas with their vehicles, of which thirty had selected the Buyback

---

title brands varies from state to state and will be analyzed accordingly, so that the eligibility requirements are consistently applied.

[31] Included in this total and the totals that follow in this section are claims submitted by consumers who Volkswagen has identified as acquiring a significant number of vehicles with branded titles for the purpose of participating in the Claims Program.  Although some of these consumers have also submitted claims involving vehicles with non-branded, clean titles, Volkswagen previously placed all claims submitted by these consumers on hold while it continued discussions with the PSC and the CRC, and analyzed the details surrounding these consumers' acquisitions of their vehicles.

remedy and sixty had requested an AEM.  Twenty-five Buybacks have been completed and the remaining five are in the process of being completed.

Completing AEMs overseas poses various legal and logistical challenges, including: consideration of import/export laws; a lack of readily available United States vehicle parts in foreign countries; and the training of personnel at foreign dealerships on the Claims Program and the technical aspects of performing an AEM.  Nevertheless, Volkswagen has developed a process for completing AEMs in Germany and expects to run a pilot of this process in the coming weeks.

The process begins with consumers scheduling appointments with, and delivering their vehicles to, agreed-upon dealers in Germany that have been trained by Volkswagen to perform the AEM.[32]  Consumers are provided loaner vehicles, free-of-charge, while the AEMs are completed by the dealership.

After Volkswagen completes the pilot program in Germany, it will work to develop a process for AEMs in other countries.  The Claims Supervisor will continue to monitor progress related to the scheduling and completion of AEMs overseas, and will provide updates in future reports.

B.  REM Approval

On May 23, 2018, the EPA and CARB approved a REM for the vehicles depicted in Chart 3-1 below, which the 3.0 Liter DOJ Consent Decree classifies as Generation 1.1 vehicles.

---

[32] Volkswagen has advised that it is asking military personnel for their preferred dealerships, and accommodating those selections when possible.  The company anticipates that military personnel will have multiple dealerships throughout Germany from which to choose, so that their travel time to and from the dealership is minimized.

**Chart 3-1**

| Generation 1.1 | |
|---|---|
| **Model** | **Model Years** |
| VW Touareg | 2009-2010 |
| Audi Q7 | 2009-2010 |

As discussed in prior reports, the 3.0 Liter DOJ Consent Decree requires Volkswagen to provide emissions modification disclosures by mail to all affected Owners and Lessees within fifteen days of approval.  The disclosures must be approved by the EPA and CARB and identify, among other things, software changes, hardware changes, and potential impacts to vehicle operation as a result of the REM, as well as any applicable extended emissions warranty for the vehicles.  Additionally, the 3.0 Liter DOJ Consent Decree requires Volkswagen to make available, through a website, a database that includes all vehicles for which the REM is available and allows consumers to conduct a free-of-charge search by VIN to determine if a REM is available.  The website also is required to display the approved emissions modification disclosure and any approved extended emissions warranty within two business days of EPA's and CARB's approval of the REM.

In response to inquiries from the Claims Supervisor regarding compliance with these requirements, Volkswagen confirmed that, on June 4, 2018, it emailed notice of the REM approval to approximately 1,000 consumers who had previously registered a Generation 1.1 vehicle in Volkswagen's Claims Portal.  Additionally, on June 7, 2018, it provided by regular mail notices of the REM to approximately 2,000 Owners and Lessees of Generation 1.1 vehicles. The notifications included approved emissions modification disclosures and information pertaining to extended emissions warranty coverage.  The Claims Supervisor verified that www.audidiesellookup.com, https://content2.us.porsche.com/diesellookup and www.vwdiesellookup.com remain available for consumers to conduct a cost-free search by VIN

44

to determine whether a REM has been completed on a specific vehicle and whether an extended emissions warranty is in effect.

On June 4, 2018, Volkswagen began offering REM appointments to Eligible Owners and Lessees of Generation 1.1 vehicles.  The REM involves the modification of the vehicles' emissions control system software and installation of updated emissions control system hardware components.  The approved emissions modification disclosures state that, once the REM is performed, the vehicles' emissions control system will function effectively in all normal driving conditions and the vehicles' emissions output will be decreased, though not to the levels at which the vehicles were originally certified.  Volkswagen reference materials also state that the REM may have effects that are potentially noticeable to the consumer -- including, differences in engine sound, slight changes in shift patterns, the potential for an increase or decrease in diesel exhaust fluid consumption depending on the vehicle, and a potential decrease in fuel economy by up to one mile per gallon.  Consumers should not incur any cost to obtain the REM and will be provided a complimentary loaner vehicle for the duration of the appointment, which is expected to last approximately two hours.  After the REM is performed, eligible consumers who complete a claim will receive a Repair Payment.

### C.  3.0-Liter Canada Settlement

In mid-January 2018, Volkswagen reached a preliminary agreement to resolve class action litigation in Canada related to approximately 20,000 3.0 Liter vehicles.  The Canadian courts approved the settlement in early April 2018.  The settlement provides that current owners and lessees of Generation One vehicles registered in Canada are entitled to receive a Buyback, Trade-In, Early Lease Termination, or REM (if one is approved by the EPA) plus restitution

(referred to as "Damages Payments"), provided they meet eligibility requirements.[33]  Current owners and lessees of Generation Two vehicles registered in Canada are entitled to an ECR and restitution, provided they meet eligibility requirements.

Because the United States and Canada share a territorial border, vehicles are occasionally manufactured for sale in the United States, but registered in  Canada.  In these instances, consumers will be able to participate in the settlement (provided they meet all other eligibility requirements), and will have the option of scheduling their closing appointment at authorized dealerships in Canada or the United States; however, Trade-Ins must be completed at an authorized dealership in Canada.  Vehicles that were purchased in the United States but registered in Canada are not expressly covered under the terms of either the Canadian or U.S. settlements; however, Volkswagen has advised it will provide compensation for these consumers if all eligibility criteria are met.

D.  Status of Extended Warranty and Service Contract Refund Program

During this quarterly reporting period, the vendor Volkswagen engaged to administer the refund program for unused and otherwise nonrefundable portions of qualifying extended warranties and vehicle service contracts made substantial progress processing claims and making payments to eligible consumers.

As of June 7, 2018, consumers had submitted claims in connection with 2,010 extended warranties and service contracts, and the vendor had reviewed and communicated 1,973 decisions (98.2%) -- including 1,424 claims during this quarterly reporting period -- using the revised protocols and procedures implemented in December 2017.[34]  Across all 1,973 decisions:

---

[33] The Canadian settlement defers to the U.S. EPA's approval of emissions modifications for 3.0 Liter vehicles.

[34] Of the remaining thirty-seven claims, fourteen had been deemed preliminarily eligible, but the vendor was awaiting information from the warranty provider.  Volkswagen's vendor has experienced delays confirming information with warranty providers, with some providers refusing to cooperate with the vendor's requests for

(i) 1,326 claims (67.2%) had been deemed ineligible; (ii) 631 claims (32.0%) had been deemed eligible and offers had been issued; and (iii) 16 claims (0.8%) had been deemed deficient and required additional information from the consumer to complete processing.

For the 631 consumers who had been deemed eligible, payment had been initiated on 289 claims where consumers had accepted their offers.  Of the remaining 342 claims: (i) 297 claims (96.8%) the consumer had not yet responded to the offer; (ii) 42 claims (12.3%) had resulted in accepted offers and Volkswagen was in the process of initiating payment on those claims; and (iii) 3 claims (0.8%) had resulted in offers being rejected by the consumer.[35]

The Claims Supervisor reviewed all 1,424 refund determinations made during the quarterly reporting period, and concurred with all but 38 determinations, resulting in an error rate of 2.7% (similar to the 2.6% error rate from the prior quarterly reporting period).  Upon reconsideration, the vendor agreed to change its original determinations on thirty-one claims, and it is re-analyzing the remaining seven determinations.  The Claims Supervisor will continue to monitor refund program progress and provide updates in future reports.

E.   Claims Review Committee

Over the course of this quarterly reporting period, the CRC continued to make progress in adjudicating consumer appeals.  As of June 8, 2018, a total of 731 unique appeals (1.0% of all submitted claims) had been filed by consumers, the majority of which challenged Volkswagen's eligibility determinations or award calculations.  The CRC had reached determinations and provided consumer notifications with respect to 177 of those appeals, including 77

---

information.  On February 2, 2018, the Court issued an order requiring warranty providers to provide information requested by Volkswagen unless they can demonstrate a valid legal basis for their refusal.  As a result of the order, the company's vendor has received requested information from several vendors that previously had been uncooperative.  Another twenty-three claims are still being processed.

[35] If consumers reject an offer, they are informed on how they can appeal the determination to the CRC or, alternatively, reconsider and accept the offer.

determinations and notifications over the course of this quarterly reporting period.  The seventy-seven determinations made during this quarter were as follows:

- The CRC denied fifty-five appeals;

- For nineteen consumers, the CRC advised that the issues that were the subject of the appeal had previously been resolved, and thus the appeal was moot; and

- In three instances, the CRC advised consumers that they may be eligible for benefits, provided that a new claim be submitted for review and consideration.

Currently, all decisions issued by the CRC have involved appeals in which the Volkswagen and Class Counsel representatives have agreed on the outcome.  The Parties continue to work together to resolve pending appeals with the assistance of the court-appointed neutral where necessary.

F.   Virtual Closing Process

As previously reported, Volkswagen instituted a virtual closing process conducted by closing support agents located in Michigan and program ambassadors located on-site at local dealerships.  Consumers are required to schedule a Buyback or Early Lease Termination appointment at a dealership that has elected to participate in the virtual closing program, while consumers may schedule an AEM appointment at any dealership of their choosing.

During the quarterly reporting period, Volkswagen completed almost 1,000 Buyback and Early Lease Termination appointments utilizing the virtual closing process.  The company reported experiencing some limited technical challenges resulting in connectivity issues between closing support agents and consumers, as well as a few appointments not being recorded, but the causes of those issues were identified and rectified.

Over the course of the quarterly reporting period, the Claims Supervisor attended a number of virtual closing appointments, all of which were completed successfully and without

issue.  These observations, combined with the closing metrics in Section II, the relatively few consumer complaints received, and the limited issues identified by the company, indicate that the virtual closing process is operating effectively.

**IV.    Customer Service**

Consumer call and chat volume continued to decline over the course of the quarter. Between March 5, 2018 and June 4, 2018, call volume decreased to an average of 236 calls per weekday, as compared to 409 calls per weekday during the prior quarterly reporting period.  The average abandonment rate over the course of the quarter was 6.4%, an increase from the previous quarterly abandonment rate of 4.4%.  The average wait time -- or speed of answer -- averaged just under one minute, an increase of nearly thirty seconds from the prior quarterly reporting period.

Chart 3-2 depicts the daily Hotline call volume and related data from May 5, 2018 to June 4, 2018.[36]

---

[36] ASA is the abbreviation for average speed of answer and AHT represents average handle time.





Compared to the previous quarterly reporting period, chat volume decreased from 264 chats per day to an average of 200 chats per day, while the abandonment rate increased slightly, from 15% to 16% for the quarter.

The Claim Supervisor's analysis of a sample of 746 recorded calls and 1,044 chats that occurred between March 1, 2018 and May 21, 2018, indicated that Volkswagen continued to deliver effective customer service, with 97.3% of calls and 96.9% of chats being deemed successful. This represents a slight decrease in the error rate for calls from the prior quarterly reporting period error rate. The limited instances where a call or chat was deemed unsuccessful were mainly the result of agents not properly following the company's protocols for verifying a consumer's identity. This has remained the primary error over the last several months, though the error rate began to decline over the last month of the quarterly reporting period.

The company reported that, during this reporting period, it required its vendor to implement the following measures to address the issue of agents failing to properly verify the identity of a caller: (i) the vendor's agents signed a written agreement indicating a commitment to adhering to the caller verification process; (ii) the vendor's agents were required to log email and other information provided by consumers to verify their identification and better ensure compliance with established verification protocols; (iii) the frequency of audits of the vendor's phone agents increased; (iv) caller identity verification protocol reminders were posted at each of the agents' work stations; and (v) individualized coaching has been provided to agents.[37]

Consumer complaint volume continued to decline over the last quarterly reporting period. Of the limited complaints received by Volkswagen, the most common related to: (i) the Claims Program in general, including its length; (ii) perceived changes to vehicle performance following AEMs; (iii) documentation requirements, including documents being rejected; (iv) complaints relating to experiences at dealerships; and (v) a lack of information regarding the status of claims.

Volkswagen's Resolution Team continued to provide assistance in connection with more challenging consumer inquiries and claims over the course of the quarterly reporting period. From March 5, 2018 to June 4, 2018, the Resolution Team received 152 inquiries, less than half of the volume from the prior quarterly reporting period.  During this same timeframe, the Resolution Team resolved 171 inquiries.  Consistent with prior reporting periods, the most prevalent inquiry handled by the Resolution Team involved payment issues, although the overall volume of such inquiries has declined, which Volkswagen has attributed, in part, to the company's inclusion of more detailed EFT instructions in the appointment packets consumers

---

[37] As previously reported, Volkswagen has supplemented its agents with those provided by a third-party vendor.

receive prior to attending closing appointments.  With the decrease in inquiry volume, the Resolution Team has had time for more proactive consumer outreach, such as contacting consumers who have not initiated receipt of their EFT.

V.      **Conclusion**

During the quarterly reporting period, Volkswagen generally applied Claims Program resources effectively and efficiently to process the vast majority of claims submitted by consumers across the United States.  By June 7, 2018, the company had paid out $861,628,065.99 in connection with eligible claims to, or on behalf of, eligible consumers, and also had completed 39,616 AEMs for consumers.  Additionally, Volkswagen secured approval for a REM from the EPA and CARB for Generation 1.1 vehicles.  With respect to the extended warranty and service contract refund program, Volkswagen and its vendor made significant progress decreasing the backlog of claims under review and making payments to eligible consumers.  Moreover, notable progress was made to reduce the backlog of claims involving vehicles with branded titles.

Consistent with the requirements of the 3.0 Liter Resolution Agreements, the Claims Supervisor will continue to evaluate and report on Volkswagen's progress with and adherence to the terms of the 3.0 Liter Resolution Agreements as the Claims Program progresses.

Sincerely,

**Ankura Consulting Group, LLC**


Terrence S. Brody
Senior Managing Director

Edward J. Bell
Senior Managing Director

Gary Wingo
Senior Managing Director

Submitted:  June 13, 2018

52