BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP
JAMES A. HARROD
JAI CHANDRASEKHAR
ADAM D. HOLLANDER
ROSS SHIKOWITZ
KATE W. AUFSES
jim.harrod@blbglaw.com
jai@blbglaw.com
adam.hollander@blbglaw.com
ross@blbglaw.com
kate.aufses@blbglaw.com
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444

*Attorneys for Lead Plaintiff ASHERS and*
*Plaintiff Miami Police, and*
*Lead Counsel in the Securities Actions*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 2672 CRB (JSC)<br><br>**CLASS ACTION** |
| _____/ | **PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| This Document Relates To: Securities Actions<br>*City of St. Clair Shores*, 15-1228 (E.D. Va.)<br>*Travalio*, 15-7157 (D.N.J.)<br>*George Leon Family Trust*, 15-7283 (D.N.J.)<br>*Charter Twp. of Clinton*, 15-13999 (E.D. Mich.)<br>*Wolfenbarger*, 15-326 (E.D. Tenn.)<br><br>_____/ | Judge:     Hon. Charles R. Breyer<br>Courtroom:   6, 17th Floor<br>Date:       October 5, 2018<br>Time:      10:00 a.m. |

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

NOTICE OF UNOPPOSED MOTION FOR  PRELIMINARY APPROVAL OF
SETTLEMENT .................................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ..................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 2

I.     PRELIMINARY STATEMENT ................................................................ 2

     A.     Overview Of The Litigation............................................................ 3

     B.     Settlement Negotiations And The Agreement In Principle On The
            Settlement ...................................................................................... 5

     C.     The Proposed Settlement ............................................................... 6

II.    ARGUMENT ........................................................................................... 7

     A.     The Proposed Settlement Class Meets The Prerequisites For Class
            Certification Under Rule 23 ........................................................... 8

            1.     Numerosity....................................................................... 8

            2.     Commonality.................................................................... 9

            3.     Typicality ........................................................................ 10

            4.     Adequacy ........................................................................ 11

            5.     The Proposed Class Action Satisfies Rule 23(b)(3) ................ 12

                  a.     Common Questions Of Law And Fact Predominate Over
                        Individual Questions .................................................. 13

                  b.     A Class Action Is The Superior Method Of Adjudication........... 14

     B.     Preliminary Approval Of The Settlement Is Appropriate..................................... 15

            1.     The Settlement Is The Product Of Good-Faith, Arm's-Length
                Negotiations Between Well-Informed and Experienced Counsel ........... 16

            2.     The Settlement Has No Obvious Deficiencies.......................................... 16

            3.     The Settlement Does Not Grant Preferential Treatment.......................... 17

4.      The Settlement Is Well Within The Range Of Possible Approval ........... 17

C.      The Plan of Allocation Is Fair and Reasonable ...................................................... 19

D.      The Court Should Approve The Form Of Notice And The Plan For Providing Notice to the Settlement Class ........................................................ 22

E.      Attorneys' Fees, Litigation Expenses, and Plaintiffs' Expenses .......................... 24

F.      Proposed Schedule ............................................................................................... 25

CONCLUSION ............................................................................................................................. 25

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
MDL No. 2672 CRB (JSC)

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*In re Adobe Sys., Inc. Sec. Litig.*,
    139 F.R.D. 150 (N.D. Cal. 1991)......................................................................8

*Allen v. Bedolla*,
    787 F.3d 1218 (9th Cir. 2015) ........................................................................7

*In re Am. Apparel, Inc. Shareholder Litig.*,
    2014 WL 10212865 (C.D. Cal. July 28, 2014)...............................................20

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)................................................................................10, 13

*In re Biolase, Inc. Sec. Litig.*,
    2015 WL 12720318 (C.D. Cal. Oct. 13, 2015)................................................18

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ...............................................................9, 10, 14

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) .........................................................................16, 17

*In re Brocade Sec. Litig.*,
    No. C 05-02042 CRB, ECF No. 496, Order (N.D. Cal. Jan. 26, 2009)....................24

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ........................................................................18

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Circ. 1992).......................................................................19

*In re Connetics Corp. Sec. Litig.*,
    257 F.R.D. 572 (N.D. Cal. 2009).....................................................................10

*In re Cooper Cos. Sec. Litig.*,
    254 F.R.D. 628 (C.D. Cal. 2009)..................................................................8, 14

*Destefano v. Zynga, Inc.*,
    2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ....................................................18

*In re Equity Funding Corp. of Am. Sec. Litig.*,
    603 F.2d 1353 (9th Cir. 1979) ......................................................................20

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
MDL No. 2672 CRB (JSC)

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   131 S. Ct. 2179 (2011) ............................................................................12

*In re Geron Corp. Sec. Litig.*,
   No. 3:14-CV-01224-CRB (N.D. Cal.) ...........................................................21

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ................................................7, 8, 10, 11, 13

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ....................................................................10

*Harris v. Palm Springs Alpine Estates, Inc.*,
   329 F.2d 909 (9th Cir. 1964) .....................................................................8

*Hatamian v. Advanced Micro Devices, Inc.*,
   2016 WL 1042502 (N.D. Cal. Mar. 16, 2016) ...................................................9

*In re Heritage Bond Litig.*,
   2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) .....................................21

*Hesse v. Sprint Corp.*,
   598 F.3d 581 (9th Cir. 2010) .....................................................................7

*Howard v. Everex Sys., Inc.*,
   228 F.3d 1057 (9th Cir. 2000) ..................................................................14

*In re HP Sec. Litig.*,
   No. 3:12-CV-05980-CRB (N.D. Cal. Nov. 16, 2015) .....................................20, 21

*In re LendingClub Sec. Litig.*,
   282 F. Supp. 3d 1171 (N.D. Cal. 2017) ..........................................10, 11, 12

*In re Marsh & McLennan Cos. Sec. Litig.*,
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ..................................................13

*Mauss v. NuVasive, Inc.*,
   2017 WL 1080654 (S.D. Cal. Mar. 22, 2017) .................................................12

*In re Montage Tech. Grp. Ltd. Sec. Litig.*,
   2016 WL 1598666 (N.D. Cal. Apr. 21, 2016) .................................................10

*In re Netflix Privacy Litig.*,
   2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ................................................16

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ....................................................16, 20

iv

*In re Oracle Sec. Litig.*,
    1994 WL 502054 (N.D. Cal. June 18, 1994) ..................................................................21

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) ........................................................................................24

*Perez-Funez v. Dist. Director, INS*,
    611 F. Supp. 990 (C.D. Cal. 1984) ..................................................................................9

*In re Pfizer Sec. Litig.*,
    No. 04-cv-09866, slip op. (S.D.N.Y. Dec. 21, 2016) ..........................................................24

*In re Portal Software, Inc. Sec. Litig.*,
    2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ...................................................................20

*Schleicher v. Wendt*,
    618 F.3d 679 (7th Cir. 2010) ........................................................................................14

*Stewart v. Applied Materials, Inc.*,
    2017 WL 3670711 (N.D. Cal. Aug. 25, 2017) ...................................................................16

*Tsirekidze v. Syntax-Brillian Corp.*,
    2009 WL 2151838 (D. Ariz. July 17, 2009) .....................................................................10

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
    535 F. Supp. 2d 249 (D.N.H. 2007) ...............................................................................22

*Vathana v. EverBank*,
    2010 WL 934219 (N.D. Cal. Mar. 15, 2010) ....................................................................12

*In re Verisign, Inc. Sec. Litig.*,
    2005 WL 7877645 (N.D. Cal. Jan. 13, 2005) ....................................................................11

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
    2016 WL 4010049 (N.D. Cal. July 29, 2016) ........................................................... *passim*

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
    2016 WL 6091259 (N.D. Cal. Oct. 18, 2016) ...........................................................8, 9, 16

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
    2017 WL 672820 (N.D. Cal. Feb. 16, 2017) ......................................................................7

*Wahl v. Am. Sec. Ins. Co.*,
    2011 U.S. Dist. LEXIS 59559 (N.D. Cal. June 2, 2011) .......................................................15

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ......................................................................................................9

v

*Wang v. Chinese Daily News, Inc.*,
    737 F.3d 538 (9th Cir. 2013) ..............................................................9

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ...........................................................14

**Statutes and Rules**

Class Action Fairness Act of 2005...............................................................24

    28 U.S.C. § 1715(b) ...........................................................................25

    28 U.S.C. § 1715(d) ...........................................................................25

Private Securities Litigation Reform Act of 1995 ...........................12, 17, 19

Securities Exchange Act of 1934

    Section 10(b), 15 U.S.C. § 78j(b) .......................................................4

    Section 20(a), 15 U.S.C. § 78t(a).....................................................4, 14

    Section 21D(a)(4), 15 U.S.C. § 78u-4(a)(4) ................................17, 24

    Section 21D(a)(7), 15 U.S.C. § 78u-4(a)(7) ......................................22

Fed. R. Civ. P. 23 .................................................................................7, 8, 19

Fed. R. Civ. P. 23(a) .......................................................................1, 7, 8, 15

Fed. R. Civ. P. 23(a)(1).............................................................................8

Fed. R. Civ. P. 23(a)(2).............................................................................9

Fed. R. Civ. P. 23(a)(3)...........................................................................10

Fed. R. Civ. P. 23(a)(4)......................................................................11, 12

Fed. R. Civ. P. 23(b) ................................................................................8

Fed. R. Civ. P. 23(b)(3).............................................1, 8, 12, 13, 14, 15, 22

Fed. R. Civ. P. 23(c)(2)(B) ............................................................1, 21, 22

Fed. R. Civ. P. 23(c)(3)(B) ......................................................................22

Fed. R. Civ. P. 23(e) .............................................................................2, 7

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
MDL No. 2672 CRB (JSC)

Fed. R. Civ. P. 23(e)(1) ............................................................................21, 22

Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5 ...................................4

**Other Authorities**

H.R. Rep. No. 104-369, 104th Cong., 1st Sess. (1995), reprinted in 1995
   U.S.C.C.A.N. 730 ............................................................................12

Fed. R. Civ. P. 23, 1966 Advisory Committee Note ...................................12

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
MDL No. 2672 CRB (JSC)

## NOTICE OF UNOPPOSED MOTION FOR
## PRELIMINARY APPROVAL OF SETTLEMENT

Lead Plaintiff Arkansas State Highway Employees' Retirement System ("ASHERS") and Plaintiff Miami Police Relief and Pension Fund ("Miami Police," and together with ASHERS, "Plaintiffs") move for an Order (1) certifying a class (the "Settlement Class" or "Class") only for purposes of settling this Action; (2) preliminarily approving a proposed settlement of this Action (the "Settlement"); (3) approving the form and manner of giving notice of the proposed Settlement to the Settlement Class; and (4) scheduling a hearing before the Court to determine whether to approve the proposed Settlement, the proposed plan of allocation (the "Plan of Allocation"), and Lead Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses.

The bases for this motion are that the proposed Settlement Class satisfies Fed. R. Civ. P. 23(a) and (b)(3); the proposed Settlement is within the range of what could be found to be fair, reasonable, and adequate; and the proposed form and manner of notice satisfy Fed. R. Civ. P. 23(c)(2)(B). Thus, notice should be disseminated to the proposed Settlement Class members, and a hearing for final approval of the proposed Settlement should be scheduled.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the Settlement Class should be certified for purposes of the Settlement.

2.      Whether the proposed $48 million cash Settlement is fair, reasonable, and adequate to warrant preliminary approval and the dissemination of notice to the proposed Settlement Class.

3.      Whether the proposed forms of Settlement notice and proof of claim and release form and the manner for disseminating them to the Settlement Class should be approved.

4.      Whether the Court should schedule a hearing on final approval of the Settlement, the Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses.

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
MDL No. 2672 CRB (JSC)

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   PRELIMINARY STATEMENT

Lead Plaintiff ASHERS and Plaintiff Miami Police respectfully submit this memorandum in support of their motion for preliminary approval of the proposed Settlement. The Settlement provides a recovery of $48 million in cash to resolve this securities class action against Defendants.[1] The terms of the Settlement are contained in the Stipulation and Agreement of Settlement, dated August 27, 2018 (the "Stipulation" or "Stip."),[2] entered into by all parties.

Plaintiffs have agreed to settle this Action in exchange for a $48 million cash payment. If this Settlement is approved by the Court, it will result in a significant payment to the Settlement Class members and will resolve this Action in its entirety. In accordance with Fed. R. Civ. P. 23(e), Plaintiffs seek the Court's preliminary approval of the Settlement so that notice can be given to Settlement Class members and a hearing on a motion for final approval can be scheduled.

The proposed Settlement, as provided in the Stipulation attached as Exhibit A, requires VWAG to pay or cause to be paid $48 million on behalf of all Defendants for the benefit of the Settlement Class. Plaintiffs and Lead Counsel believe that the proposed Settlement is in the best interest of the Settlement Class, as it provides a substantial, immediate recovery without the significant risks of continuing the litigation. Plaintiffs and Lead Counsel believe that the Settlement ultimately should be approved by this Court, especially because the Settlement represents a significant portion of the Settlement Class's potential recovery after trial.

The Settlement must be considered in light of the risks that continued litigation would be prolonged and could lead to no recovery or to a smaller recovery for Settlement Class members. If the Settlement is approved, the Settlement Class will avoid the risk that Defendants might defeat

---

[1] Defendants are Volkswagen Aktiengesellschaft ("VWAG"), Volkswagen Group of America, Inc. ("VWGoA"), Volkswagen Group of America, Inc. d/b/a Volkswagen of America, Inc. ("VWoA"), Audi of America, Inc. ("AoA"), Martin Winterkorn ("Winterkorn"), Michael Horn ("Horn"), and Herbert Diess ("Diess," and with Winterkorn and Horn, the "Individual Defendants").

[2] All capitalized terms used in this motion that are not otherwise defined herein shall have the meanings ascribed to them in the Stipulation.

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
MDL No. 2672 CRB (JSC)

class certification or defeat Plaintiffs' claims on summary judgment, at trial, or in subsequent appeals. Plaintiffs and Lead Counsel recognize the risks in establishing liability, such as materiality and scienter with respect to Defendants' alleged false and misleading statements.

Plaintiffs respectfully request that the Court enter the proposed Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order" or "Prel. Appr. Ord."), attached as Exhibit B, which will: (i) certify the Settlement Class and appoint Plaintiffs as class representatives and Lead Counsel as class counsel, for purposes of the Settlement only; (ii) preliminarily approve the Settlement as fair, reasonable, and adequate to the Settlement Class; (iii) approve the forms and methods of giving notice to the Settlement Class and direct that notice be issued; and (iv) set a date for a hearing on final approval of the Settlement that is the later of (x) December 6, 2018 or (y) 90 calendar days after entry of the Preliminary Approval Order.

### A.     Overview Of The Litigation

The Court is familiar with this Action and the allegations and claims in it. Plaintiffs provide only a brief overview here and will provide more details of the litigation history and prosecution efforts in a motion for final approval if the Court grants preliminary approval.

In short, this securities class action asserts claims on behalf of investors who purchased VWAG Ordinary and Preferred ADRs from November 19, 2010 through January 4, 2016 (the "Class Period"). In September 2015, a class action styled *City of St. Clair Shores Police & Fire Ret. Sys. v. Volkswagen AG, et al.*, Case No. 15-CV-1228-LMB-TCB, was filed in the United States District Court for the Eastern District of Virginia, alleging that VWAG, VWGoA, VWoA, AoA, and several of their highest-ranking executives made material misstatements and omissions regarding Volkswagen diesel vehicles' compliance with US emissions standards. The complaint asserted violations of the federal securities laws on behalf of VWAG ADR investors. Several related securities class actions were filed in United States District Courts in Virginia, New Jersey, Michigan, and Tennessee on behalf of VWAG ADR investors in September–November 2015.

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
MDL No. 2672 CRB (JSC)

In December 2015, the United States Judicial Panel on Multidistrict Litigation centralized the *Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation* in the Northern District of California. ECF No. 1. In January 2016, the Court granted ASHERS' motion for appointment as Lead Plaintiff and approved of ASHERS' selection of Bernstein Litowitz Berger & Grossmann LLP as Lead Counsel in the consolidated ADR Actions. ECF No. 545. Plaintiffs then filed the Consolidated Securities Class Action Complaint (the "First Consolidated Complaint") in May 2016. ECF No. 1510.

The First Consolidated Complaint asserted claims under § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Securities and Exchange Commission Rule 10b-5 against Defendants VWAG, VWGoA, VWoA, AoA, Winterkorn, and Diess, as well as claims under § 20(a) of the Exchange Act against Defendants Winterkorn, Diess, Horn, and another former VWGoA employee. The claims were based on allegations that Defendants fraudulently misrepresented and concealed material facts regarding Volkswagen's regulatory compliance, financial results, and commitment to producing "environmentally friendly" vehicles. In particular, the First Consolidated Complaint alleged that Defendants violated the federal securities laws by failing to disclose that Volkswagen sold approximately 585,000 diesel vehicles in the United States and millions in other countries that were equipped with "defeat devices," and by misrepresenting that Volkswagen's diesel vehicles complied with US and European Union emissions regulations. The First Consolidated Complaint further alleged that VWAG improperly failed to recognize contingent liabilities relating to the emissions-cheating scheme during the Class Period, artificially inflating VWAG's reported financial results by at least $18 billion. Finally, the First Consolidated Complaint alleged that Defendants' false statements artificially inflated the prices of VWAG Ordinary and Preferred ADRs, which resulted in massive losses to investors when the truth was revealed to the public in a series of corrective disclosures from September 2015 to January 2016.

Defendants moved to dismiss Plaintiffs' claims in August 2016. ECF Nos. 1705, 1706, 1708. After full briefing and a hearing in December 2016, the Court granted in part and denied in

4

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
MDL No. 2672 CRB (JSC)

part the motions to dismiss in January 2017. ECF No. 2636. In February 2017, Plaintiffs filed the First Amended Consolidated Securities Class Action Complaint (ECF No. 2862) (the "Complaint"), and Defendants moved to dismiss the Complaint in March 2017 (ECF Nos. 3059, 3060). After another round of full briefing and a hearing, the Court granted in part and denied in part the motions to dismiss the Complaint in June 2017. ECF No. 3392.

In March 2017, Plaintiffs moved for partial summary judgment on the issues of falsity and scienter with respect to a number of Defendants' alleged false statements. ECF No. 3036. After full briefing, the Court granted Plaintiff's motion for partial summary judgment with respect to one statement and denied it with respect to the other statements in December 2017. ECF No. 4521.

In August 2017, the parties filed and the Court approved the Joint Case Management Statement and Order (ECF Nos. 3595, 3620), and the parties then began discovery. Between August 2017 and July 2018, Plaintiffs served extensive document requests upon Defendants and document subpoenas upon several dozen relevant nonparties, and Plaintiffs responded to document requests served by Defendants. The parties also served and responded to interrogatories and litigated several discovery disputes before Magistrate Judge Corley. Plaintiffs' review and analysis of more than four million pages of documents produced by Defendants was in process when the parties reached an agreement in principle to settle the Action in July 2018.

**B.     Settlement Negotiations And The Agreement In Principle On The Settlement**

The Settlement is a result of Plaintiffs' and Lead Counsel's vigorous representation. At the time the Settlement was reached, Lead Counsel had conducted an extensive review of the relevant facts, including through its investigation associated with the filing of the two complaints, and a review of materials produced in discovery. When the Settlement was reached, Plaintiffs and Lead Counsel were preparing to move for class certification and to depose the Individual Defendants and other current and former employees of VWAG and VWGoA.

Through the exchange of information concerning both damages and the merits of the case, counsel for Plaintiffs and Defendants engaged in a series of arm's-length negotiations through

5

which the Parties reached an agreement in principle to settle and release all claims against Defendants in return for a cash payment of $48 million that VWAG would pay or cause to be paid on behalf of all Defendants for the benefit of the Settlement Class, subject to the execution of a customary "long form" stipulation and related papers. The Stipulation (with its exhibits) constitutes the final and binding agreement between the parties. The parties executed the Stipulation on August 27, 2018.

### C.      The Proposed Settlement

The Stipulation provides that VWAG will pay or cause to be paid $48 million in cash (the "Settlement Amount") into an interest-bearing escrow account for the benefit of the Settlement Class. The Settlement Amount, plus interest, after the deduction of attorneys' fees and litigation expenses to be determined by the Court, notice and administration costs, taxes and related expenses, and any other costs or fees approved by the Court (the "Net Settlement Fund"), will be distributed among Settlement Class members who submit timely and valid claim forms ("Authorized Claimants"), in accordance with the Plan of Allocation to be approved by the Court.

Under the Settlement, the parties have agreed to the certification of a Settlement Class for Settlement purposes only. The proposed Settlement Class is effectively the same as the class proposed in Plaintiffs' Complaint: all persons and entities who purchased or otherwise acquired VWAG Ordinary ADRs (CUSIP: 928662303) and/or VWAG Preferred ADRs (CUSIP: 928662402) from November 19, 2010 through January 4, 2016, inclusive (the "Class Period"), and who were allegedly damaged thereby. *Compare* Stip. ¶1(uu) *with* Complaint ¶ 540.[3]

---

[3] The only differences between the proposed Settlement Class and the class alleged in the Complaint are minor refinements in the list of persons and entities excluded from the class by definition, as negotiated by the parties. Excluded from the Settlement Class are: (i) Defendants; (ii) any person who was an Officer or director of VWAG, VWGoA, VWoA, or AoA during the Class Period; (iii) the Immediate Family Members of all individuals excluded in (i) or (ii); (iv) the parents, subsidiaries, and affiliates of VWAG, VWGoA, VWoA, or AoA; (v) any entity in which any person or entity excluded in (i), (ii), (iii) or (iv) has, or had during the Class Period, a controlling interest; and (vi) the legal representatives, heirs, affiliates, successors, or assigns of any such excluded person or entity. *See* Stip. ¶1(uu).

If the Settlement receives the Court's final approval, the Settlement Class members will release the "Released Plaintiffs' Claims" in exchange for the Settlement Amount. Released Plaintiffs' Claims include all claims that Plaintiffs or any member of the Settlement Class "(i) asserted in the Complaint, or (ii) could have asserted in any forum that concern, arise out of, relate to, involve, or are based upon any of the allegations, circumstances, events, transactions, facts, matters, representations, or omissions involved, set forth, or referred to in the Complaint and that relate to the purchase, acquisition, or ownership of VWAG ADRs during the Class Period." Stip. ¶1(pp). The release's scope is reasonable as it is limited to claims related to purchase or ownership of VWAG ADRs *and* to the Complaint's factual allegations. While the release includes unknown and other claims that could have been asserted but were not, releasing these claims is appropriate because they arise out of the identical factual predicate as the claims in the Complaint. *See In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 672820, at *5 (N.D. Cal. Feb. 16, 2017) (citing *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010)).

Plaintiffs and Lead Counsel believe that the Settlement is an excellent recovery in this Action and is fair, adequate, reasonable, and in the best interests of the Settlement Class.

## II.   ARGUMENT

"[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2016 WL 4010049, at *9 (N.D. Cal. July 29, 2016) ("*2.0 Liter Preliminary Approval Order*") (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015); alteration in original). "Preliminary approval of a class action settlement generally requires two inquiries. Courts first assess whether a class exists." *Id.* (citations omitted). "Second, Rule 23(e) requires courts to determine 'whether a proposed settlement is fundamentally fair, adequate, and reasonable.'" *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
MDL No. 2672 CRB (JSC)

### A.   The Proposed Settlement Class Meets The Prerequisites For Class Certification Under Rule 23

The Ninth Circuit has long recognized that courts may certify class actions for the purpose of settlements only. *See Hanlon*, 150 F.3d at 1023-24. Rule 23(a) establishes the following four prerequisites to class certification: (i) numerosity, (ii) commonality, (iii) typicality, and (iv) adequacy of representation. The class must also meet one of the three requirements of Rule 23(b). *See* Fed. R. Civ. P. 23; *2.0 Liter Preliminary Approval Order*, 2016 WL 4010049, at *10.

Courts routinely endorse the use of class actions to resolve claims under the federal securities laws. "[C]lass actions commonly arise in securities fraud cases as the claims of separate investors are often too small to justify individual lawsuits, making class actions the only efficient deterrent against securities fraud. Accordingly, the Ninth Circuit and courts in this district hold a liberal view of class actions in securities litigation." *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 152-53 (N.D. Cal. 1991) (citations omitted); *see also In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009) ("The availability of the class action to redress such frauds has been consistently upheld, in large part because of the substantial role that the deterrent effect of class actions plays in accomplishing the objectives of the securities laws.") (citation omitted). This Action is no exception, and the Settlement Class satisfies Rule 23(a) and 23(b)(3).

#### 1.   Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable. "'[I]mpracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted). "A specific minimum number is not necessary, and [a] plaintiff need not state the exact number of potential class members." *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2016 WL 6091259, at *7 (N.D. Cal. Oct. 18, 2016) ("*Branded Dealer Preliminary Approval Order*") (quotation marks and citation omitted; alteration in original). "[A] proposed class of at least forty members presumptively satisfies the numerosity requirement." *Id.* at *7 (quotation marks and citation

omitted; alteration in original); *see also Perez-Funez v. Dist. Director, INS*, 611 F. Supp. 990, 995 (C.D. Cal. 1984) (finding that class of 25 members was large enough for certification).

Here, VWAG Ordinary and Preferred ADRs were both traded actively during the Class Period. On average during the Class Period, 138,947 VWAG Ordinary ADRs were traded daily, and 694,734 were traded weekly, and an average of 41,475 VWAG Preferred ADRs were traded daily, and 207,375 weekly. Accordingly, thousands of investors purchased VWAG Ordinary and Preferred ADRs during the Class Period. Thus, numerosity is established here.

### 2. Commonality

Rule 23(a)(2) is satisfied where the proposed class representatives share at least one question of fact or law with the claims of the prospective class. *See Branded Dealer Preliminary Approval Order*, 2016 WL 6091259, at *7 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 369 (2011)). Commonality may exist even if there are differing circumstantial facts among members of the class, so long as the claims are based on the same legal or remedial theory. *See Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975). "So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL 1042502, at *4 (N.D. Cal. Mar. 16, 2016) (citing *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013)).

The common questions of fact and law here include whether (i) Defendants made false statements in financial reports, press releases, marketing brochures, and vehicle emissions-control information stickers; (ii) Defendants acted with scienter; (iii) the prices of VWAG Ordinary and Preferred ADRs were artificially inflated during the Class Period; and (iv) Defendants' alleged misrepresentations and omissions caused Class members to suffer economic losses. "Without class certification, individual Class Members would be forced to separately litigate the same issues of law and fact which arise from Volkswagen's use of the defeat device and Volkswagen's alleged common course of conduct." *2.0 Liter Preliminary Approval Order*, 2016 WL 4010049, at *10.

9

Courts routinely recognize that securities fraud actions alleging a common course of conduct based on a "fraud on the market," such as this, satisfy the commonality requirement. *See, e.g.*, *In re Montage Tech. Grp. Ltd. Sec. Litig.*, 2016 WL 1598666, at *3 (N.D. Cal. Apr. 21, 2016). Once common questions are resolved, little will remain other than the mechanical act of computing the amount of damages suffered by each Class member. *See Blackie*, 524 F.2d at 905 (holding that need for individual calculation of damages "does not defeat class action treatment").

### 3.    Typicality

Rule 23(a)(3) is satisfied when the claims of the party or parties representing the class are typical of the claims of the other class members. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). The typicality requirement's purpose "is to assure that the interest of the named representative aligns with the interests of the class." *In re Connetics Corp. Sec. Litig.*, 257 F.R.D. 572, 576 (N.D. Cal. 2009) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *see also In re LendingClub Sec. Litig.*, 282 F. Supp. 3d 1171, 1179 (N.D. Cal. 2017). Typicality in securities actions is easily satisfied when the parties' claims arise from "the same set of events and course of conduct that gave rise to other Class members' claims." *Connetics*, 257 F.R.D. at 576-78; *see also Tsirekidze v. Syntax-Brillian Corp.*, 2009 WL 2151838, at *4 (D. Ariz. July 17, 2009) ("Differences in the amount of damages, the size or manner of [stock] purchases, the nature of the purchaser, and even the specific document influencing the purchase will not render a claim atypical in most securities cases.").

Here, typicality is established because Plaintiffs' and other Class members' claims arise from the same course of conduct, and the claims are based on the same legal theory. ASHERS purchased 80,000 Volkswagen Ordinary ADRs on the open market during the Class Period at allegedly artificially inflated prices. ECF No. 1510-1. Miami Police purchased 4,297 Volkswagen Preferred ADRs on the open market during the Class Period, also at allegedly artificially inflated

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
MDL No. 2672 CRB (JSC)

prices. ECF No. 1510-2. Defendants' alleged fraud affected both Plaintiffs and all other Class members uniformly because each purchased VWAG's allegedly artificially inflated Ordinary or Preferred ADRs and later allegedly suffered losses when the prices of the ADRs declined in response to public revelations of Defendants' alleged fraud. The claims of Plaintiffs and all Class members are based on the same legal theories and would be proven by the same set of operative facts. Thus, there is no conflict or antagonism between Plaintiffs and other Class members; and the typicality requirement is satisfied.

### 4.    Adequacy

Rule 23(a)(4) is met when "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine whether a plaintiff will adequately serve the class, courts must consider two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *LendingClub*, 282 F. Supp. 3d at 1182 (citing *Hanlon*, 150 F.3d at 1020). To satisfy this requirement, the proposed Class representatives must not have interests that are antagonistic to other Class members, and counsel must be qualified, experienced, and capable of conducting the litigation. *See Hanlon*, 150 F.3d at 1020. ASHERS and Miami Police satisfy both prongs of the adequacy inquiry.

First, Plaintiffs' purchases of Volkswagen Ordinary and Preferred ADRs during the Class Period directly align their interests with other Class members'. As a result of Defendants' alleged misrepresentations, Plaintiffs and Class members all sustained losses and have the same interest in obtaining the maximum possible recovery. *See In re VeriSign, Inc. Sec. Litig.*, 2005 WL 7877645, at *8 (N.D. Cal. Jan. 13, 2005).

Second, Plaintiffs and Lead Counsel have vigorously prosecuted this action on behalf of the Class and intend to continue doing so. ASHERS and Miami Police fully understand the duties of class representatives. *See* ECF Nos. 1510-1, 1510-2. Plaintiffs have demonstrated their commitment to leading this action by (i) retaining experienced counsel, (ii) reviewing pleadings

---

11

and briefs, (iii) regularly communicating with counsel and participating in strategic decisions, and (iv) responding to document requests and interrogatories. *See LendingClub*, 282 F. Supp. 3d at 1182 ("To establish adequacy lead plaintiffs need only be familiar with the basis for the suit and their responsibilities as lead plaintiffs."); *Mauss v. NuVasive, Inc.*, 2017 WL 1080654, at *2 (S.D. Cal. Mar. 22, 2017) ("[I]n the Ninth Circuit, as long as the class representative understands his duties and is represented by competent counsel, the class representative and class counsel are considered competent for purposes of Rule 23(a)(4).").

Further, ASHERS and Miami Police are the type of institutional investors that are meant to be empowered as class representatives under the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *See* H.R. Rep. No. 104-369, 104th Cong., 1st Sess. (1995), reprinted in 1995 U.S.C.C.A.N. 730, 733 ("Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake."). Plaintiffs have retained counsel highly experienced in securities litigation who have successfully prosecuted many complex class actions throughout the United States (*see, e.g.*, *City of St. Clair Shores*, Case No. 15-1218 (E.D. Va.), ECF No. 118-1 (Bernstein Litowitz firm resume)), and who have vigorously prosecuted the Class's claims to date by overcoming Defendants' motions to dismiss in substantial part (ECF Nos. 2336, 3391), winning partial summary judgment on falsity and scienter (ECF No. 4521), and engaging in extensive discovery. Therefore, Plaintiffs are adequate representatives of the Settlement Class, and their counsel are qualified, experienced, and capable of prosecuting this action as required by Rule 23(a)(4).

### 5.    The Proposed Class Action Satisfies Rule 23(b)(3)

Rule 23(b)(3) requires the proposed class representatives to establish that common questions of law or fact predominate over individual questions, and that a class action is the superior method of adjudication available. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011); *Vathana v. EverBank*, 2010 WL 934219, at *2 (N.D. Cal. Mar. 15, 2010)

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
MDL No. 2672 CRB (JSC)

(noting that "subsection [23(b)(3)] encompasses 'those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results'") (quoting Fed. R. Civ. P. 23, 1966 Advisory Committee Note).

This case aggregates small claims of all Class members in order to make the cost and effort of litigation economically feasible, which is the main focus of Rule 23(b)(3). *See Amchem Prods.*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). A class action is the superior means of fairly and efficiently litigating the Class's claims, and common questions of law and fact predominate here.

### a.     Common Questions Of Law And Fact Predominate Over Individual Questions

Rule 23(b)(3)'s predominance requirement is satisfied "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication . . . ." *2.0 Liter Preliminary Approval Order*, 2016 WL 4010049, at *12 (quoting *Hanlon*, 150 F.3d at 1022) (quotation marks omitted; alterations in original). The Supreme Court has held that this requirement is "readily met in certain cases alleging . . . securities fraud." *Amchem Prods.*, 521 U.S. at 625.

Predominance focuses on whether the Class's claims arise out of the same legal or remedial theory. *See Hanlon*, 150 F.3d at 1022. Factors considered in determining if the claims arise out of the same legal theory are whether the Defendants "(1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury. Each of these is susceptible of generalized proof and, accordingly, the predominance requirement of Rule 23(b)(3) is satisfied." *In re Marsh & McLennan Cos. Sec. Litig.*, 2009 WL 5178546, at *11 (S.D.N.Y. Dec. 23, 2009).

13

Here, numerous common questions of law and fact predominate over individual questions:

> This case meets Rule 23(b)(3)'s predominance requirement. Plaintiffs allege Volkswagen perpetrated the same fraud in the same manner against all Class Members. If the Court were to find that Volkswagen has indeed engaged in a deceptive and fraudulent scheme, such a finding would apply to all of the Class Members' claims. Plaintiffs also allege a common and unifying injury, as their and other Class Members' injuries arise solely from Volkswagen's use of the defeat device.

*2.0 Liter Preliminary Approval Order*, 2016 WL 4010049, at *12. Thus, Plaintiffs allege a "common course of conduct," and common questions predominate. *Blackie*, 524 F.2d at 902.

Proof of falsity, materiality, scienter, and loss causation "can be made on a class-wide basis" because they "affect[] investors in common." *Schleicher v. Wendt*, 618 F.3d 679, 682, 685, 687 (7th Cir. 2010). Plaintiffs would prove each element with common evidence concerning Defendants' alleged knowingly or recklessly false and misleading statements and omissions regarding the "environmental friendliness" of Volkswagen's "clean diesel" vehicles and alleged fraudulent understating of liabilities, overstating of profits, and allegedly failing to disclose material contingencies relating to the existence of defeat devices. Likewise, Defendants' alleged misrepresentations and omissions resulted in the alleged artificial inflation of all Volkswagen ADRs during the Class Period, which "affect[ed] [all] investors alike." *Schleicher*, 618 F.3d at 685, 687; *see also Cooper*, 254 F.R.D. at 641. In addition, Plaintiffs' Section 20(a) claim for control-person liability requires that Plaintiffs prove that the 20(a) Defendants controlled VWAG or VWGoA in connection with the making of alleged false statements. *See Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000).

As a result, common questions of law and fact predominate.

### b.    A Class Action Is The Superior Method Of Adjudication

Rule 23(b)(3)'s superiority test is also satisfied. This test "requires the court to determine whether maintenance of this litigation as a class action is efficient and whether it is fair." *2.0 Liter Preliminary Approval Order*, 2016 WL 4010049, at *12 (quoting *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175-76 (9th Cir. 2010)). "If Class Members were to bring individual

---

14

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
MDL No. 2672 CRB (JSC)

lawsuits against Volkswagen, each Member would be required to prove the same wrongful conduct to establish liability and thus would offer the same evidence." *Id.* Given that Settlement Class members number in the thousands, "there is the potential for just as many lawsuits with the possibility of inconsistent rulings and results. Thus, classwide resolution of their claims is clearly favored over other means of adjudication . . . ." *Id.*

* * *

In sum, Plaintiffs satisfy the Rule 23(a) and (b)(3) requirements, and the Settlement Class should be certified for purposes of the Settlement. The proposed certification of the Settlement Class and appointment of Plaintiffs as class representatives and of Lead Counsel as counsel for the Settlement Class easily meet the applicable standards. *See, e.g.*, *Wahl v. Am. Sec. Ins. Co.*, 2011 U.S. Dist. LEXIS 59559, at *5-6 (N.D. Cal. June 2, 2011) (certifying settlement class).

## B.    Preliminary Approval Of The Settlement Is Appropriate

The Ninth Circuit has established a number of factors to be considered by courts before granting final approval of class-action settlements, but "courts need not assess all of these fairness factors at the preliminary approval stage." *2.0 Liter Preliminary Approval Order*, 2016 WL 4010049, at *13. Rather, "the preliminary approval stage [i]s an initial evaluation of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties." *Id.* (quotation marks and citation omitted; alteration in original). Preliminary approval of a class-action settlement is appropriate if "[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval." *Id.* (citations omitted). Under these standards, the Settlement merits preliminary approval.

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
MDL No. 2672 CRB (JSC)

### 1.     The Settlement Is The Product Of Good-Faith, Arm's-Length Negotiations Between Well-Informed and Experienced Counsel

The fact that the Settlement resulted from arm's-length negotiations between experienced counsel creates a presumption that it is fair. "Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arm's length negotiations conducted by capable and experienced counsel." *In re Netflix Privacy Litig.*, 2013 WL 1120801 at *4 (N.D. Cal. Mar. 18, 2013). In deciding whether to approve a proposed class-action settlement, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Stewart v. Applied Materials, Inc.*, 2017 WL 3670711, at *6 (N.D. Cal. Aug. 25, 2017); *accord In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). Here, Lead Counsel has a thorough understanding of the merits of the Action and extensive experience in securities litigation. Lead Counsel and Plaintiffs' recommendation of this Settlement warrants a presumption of reasonableness. *See Branded Dealer Preliminary Approval Order*, 2016 WL 6091259, at *10.

### 2.     The Settlement Has No Obvious Deficiencies

Under the heading of "obvious deficiencies," courts consider three factors established by *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011). First, Plaintiffs' Counsel will not "receive a disproportionate distribution of the settlement" or be "amply rewarded while the class receives no monetary distribution." *2.0 Liter Preliminary Approval Order*, 2016 WL 4010049, at *14 (citing *Bluetooth*, 654 F.3d at 948). The Settlement provides the Settlement Class with a substantial cash benefit of $48 million, plus interest and less any attorneys' fees and expenses approved by the Court. Subject to the Court's approval, and with Plaintiffs' approval, Lead Counsel will seek attorneys' fees not to exceed 25% of the Settlement Fund net of expenses, and reimbursement of litigation expenses totaling no more than $500,000. Thus, "there is no evidence of collusion under the first *Bluetooth* factor." *Id.* Second, the Stipulation contains no 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds . . . ." *Id.* at *13 (quoting *Bluetooth*, 654 F.3d at 947). Finally, the Stipulation does not

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
MDL No. 2672 CRB (JSC)

"provide[] for funds not awarded to revert to defendants." *Id.* at *15 (citing *Bluetooth*, 654 F.3d at 947). Rather, any funds that cannot economically be distributed to Settlement Class members will be contributed to a *cy pres* organization approved by the Court.

### 3.      The Settlement Does Not Grant Preferential Treatment

As discussed further in Section II.C below, the Plan of Allocation reasonably allocates the Net Settlement Fund to Settlement Class members in proportion to their losses attributable to the alleged fraud. Plaintiffs will receive distributions from the Net Settlement Fund in accordance with the Plan of Allocation approved by the Court in the same manner as all other Settlement Class members, and will also seek Court-approved payment of their reasonable time and expenses as Plaintiffs for the benefit of the Settlement Class in accordance with the PSLRA, 15 U.S.C. § 78u-4(a)(4). Thus, the Settlement does not grant preferential treatment to Plaintiffs or any segment of the Settlement Class.

### 4.      The Settlement Is Well Within The Range Of Possible Approval

Plaintiffs believe that the proposed $48 million Settlement is an excellent result for the Settlement Class and falls well within a range of fairness, reasonableness, and adequacy. The parties had substantial disagreements about the range of aggregate damages to the Class. Plaintiffs' damages expert has estimated that the Class's likely maximum recoverable damages were approximately $147 million, as reflected in the Notice. *See* Stip., Ex. A-1, ¶4. Accordingly, the $48 million Settlement represents a recovery of approximately 33% of likely recoverable damages to the Settlement Class. Thus, "the value of the settlement offer" compares favorably with "plaintiffs' expected recovery" and with "the maximum amount of damages recoverable in a successful litigation . . . ." *2.0 Liter Preliminary Approval Order*, 2016 WL 4010049, at *16 (quotation marks and citations omitted).[4]

---

[4] The per-ADR inflation amounts used to determine the $147 million in aggregate damages are the same as those used in the Plan of Allocation. Plaintiffs' expert estimated that the maximum possible recoverable damages to the Class would be approximately $280 million, assuming that Plaintiffs prevailed on all liability, damages, and loss-causation arguments, and giving no effect to arguments concerning the nature of the alleged corrective disclosures (i.e., whether they revealed

17

Plaintiffs respectfully submit that $48 million is an impressive recovery when considering the substantial risks and expenses of continuing this complex litigation, the uncertainty of establishing Defendants' liability, and the advantages of obtaining an immediate cash benefit for Settlement Class members. *See, e.g.*, *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016) (noting that the "Settlement Amount represent[s] approximately 14 percent of likely recoverable aggregate damages at trial," which was "well within the range of percentages approved in other securities-fraud related actions"); *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (finding that settlement of "approximately 8% of the maximum recoverable damages . . . equals or surpasses the recovery in many other securities class actions").

In considering the Settlement, Plaintiffs and Lead Counsel considered the inherent risks in establishing all elements of their claims, specifically, the risks of proving falsity, materiality, scienter, loss causation, and damages, as well as the expense and duration of further litigation. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004) (citing risk, expense, complexity, and likely duration of further litigation as factors supporting final approval of settlement). In order to prevail at trial, Plaintiffs would need to prove not only that Defendants made misrepresentations about Volkswagen's "clean diesel" vehicles but also that the misrepresentations were material and were made intentionally or recklessly. The challenges of proving that Defendants' alleged misrepresentations were both false and material are illustrated by the Court's denial of Plaintiffs' motion for partial summary judgment with respect to all but one of the alleged misrepresentations. In addition, proving scienter would have been particularly challenging here, because Defendants strenuously denied that senior management of VWAG were aware of the defeat devices until shortly before the end of the Class Period.

Importantly, VWAG's guilty plea in the criminal case relating to the "clean diesel" scandal addressed only one of the alleged misrepresentations at issue here, and it did not establish that

---

previously undisclosed or misrepresented facts), the effect of other information unrelated to the alleged fraud causing declines in the ADRs' prices on the corrective-disclosure dates, and the lack of statistical significance of price movements after certain alleged corrective disclosures.

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
MDL No. 2672 CRB (JSC)

knowledge of the defeat devices reached senior executives whose scienter is attributable to VWAG. Moreover, Plaintiffs faced significant obstacles to obtaining depositions of many crucial witnesses who are current or former VWAG employees residing in Germany, where civil plaintiffs have more limited rights to obtain pretrial discovery than in the United States, and corporate defendants have more limited obligations or even ability to produce employees for depositions.

Considering the many risks of continued litigation, Plaintiffs respectfully submit that the Settlement is fair, reasonable, and adequate and deserves preliminary approval.

### C.    The Plan of Allocation Is Fair and Reasonable

Plaintiffs seek preliminary approval of the proposed Plan of Allocation of the Net Settlement Fund, which is included in the Notice to be mailed to Settlement Class members. The Court's review of a proposed plan of allocation for a class action settlement under Rule 23 is governed by the same standards applicable to the settlement itself—the plan must be fair and reasonable. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284 (9th Circ. 1992). Here, the Plan of Allocation was developed with the assistance of Plaintiffs' damages expert and provides a fair, reasonable, and equitable basis to allocate the Net Settlement Fund among Settlement Class members who submit acceptable Claim Forms.

To develop the Plan of Allocation, Plaintiffs' damages expert calculated the estimated amount of alleged artificial inflation in the per ADR closing prices of VWAG Ordinary and Preferred ADRs that was allegedly proximately caused by Defendants' alleged false statements and omissions by considering changes in the ADRs' prices in reaction to public announcements regarding Volkswagen in which the alleged misrepresentations were revealed to the market. *See* Notice ¶54. The Plan of Allocation calculates a "Recognized Loss Amount" or "Recognized Gain Amount" for each purchase of VWAG Ordinary and Preferred ADRs during the Class Period that is listed in the Proof of Claim Form and for which there is adequate documentation. *Id.* ¶56-58.[5]

---

[5] For VWAG ADRs sold during the Class Period, Recognized Loss or Gain Amounts are the lower of: (i) the difference between the estimated alleged artificial inflation on the date of purchase and the estimated alleged artificial inflation on the date of sale, or (ii) the difference between actual

19

Because the Court dismissed Plaintiffs' claims based on VWAG's financial statements before May 2014, the Recognized Loss Amounts for ADRs purchased from November 19, 2010 through April 30, 2014 will be reduced by half. *Id.* ¶¶ 56, 59. This adjustment reflects Lead Counsel's assessment that proving Defendants' liability for the period before May 2014 would be much more difficult than for the subsequent period. The Court dismissed Plaintiffs' claims based on VWAG's financials before May 2014 largely on the basis of scienter, and similar arguments would apply to all of Plaintiffs' claims during that period. Specifically, proving Defendants' scienter would be more difficult for the earlier period due to an absence of evidence that before May 2014, top management were told about the defeat devices and warned about potential fines for using them. Moreover, since claims related to VWAG's financial statements after May 2014 were not dismissed, Plaintiffs had additional avenues of recovery in the post-April 2014 portion of the Class Period. Thus, discounting the weaker claims for the earlier period is appropriate under Ninth Circuit law. *See In re Equity Funding Corp. of Am. Sec. Litig.*, 603 F.2d 1353, 1364-66 (9th Cir. 1979). In *In re HP Sec. Litig.*, this Court approved a plan of allocation that discounted claims that had been dismissed by the Court to 15%. *See In re HP Sec. Litig.*, No. 3:12-CV-05980-CRB, ECF Nos. 268, 269, Notice of Pendency of Class Action and Proposed Settlement, Settlement Fairness Hearing and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses, at *10 (N.D. Cal. Sept. 29, 2015); *In re HP Sec. Litig.*, No. 3:12-CV-05980-CRB, ECF No. 280, Order Approving Plan of Allocation of the Net Settlement Fund, at *2 (N.D. Cal. Nov. 16, 2015). Courts in this circuit routinely approve plans of allocation that discount weaker claims.[6]

purchase price and sales price. *Id.* ¶¶57(a), 58(a). For VWAG ADRs sold during the 90-day period following the end of the Class Period, or held as of the end of that period, the Plan of Allocation also limits Recognized Loss Amounts based on the average price of the ADRs during that 90-day period, consistent with the PSLRA. *Id.* ¶¶57(b)-(c), 58(b)-(c).

[6] *See In re Am. Apparel, Inc. Shareholder Litig.*, 2014 WL 10212865, at *19 (C.D. Cal. July 28, 2014) (approving discounting dismissed claims by 10%); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008) (approving awarding no recovery for purchases during parts of class period, and finding it "reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits"); *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *5-6 (N.D. Cal. Nov. 26, 2007) (approving allocating 5% of settlement fund to dismissed claims and 95% to sustained claims, and noting that "Courts

20

Under the Plan of Allocation, claimants' Recognized Loss Amounts will be netted against their Recognized Gain Amounts, if any, to determine the claimants' "Recognized Claims," and the Net Settlement Fund will be allocated *pro rata* to Authorized Claimants based on the relative size of their Recognized Claims. *Id.* ¶¶65, 69. Lead Counsel believes that the Plan of Allocation will result in a fair and equitable distribution of Settlement proceeds among the Settlement Class members with valid claims. "The fact that the plan of allocation is recommended by experienced and competent counsel further cuts in favor of approving the Settlement." *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *39.

The Plan of Allocation also identifies the Investor Protection Trust as the proposed *cy pres* recipient of any funds that may remain after one or more distributions of the Net Settlement Fund to Eligible Claimants. *See* N.D. Cal. Guid. ¶8 (the "parties should address their chosen *cy pres* awardees"). Notably, however, 100% of the Net Settlement Fund will be distributed to eligible Authorized Claimants and, if any funds remain after the initial distribution, as a result of uncashed or returned checks or other reasons, further distributions to eligible Authorized Claimants will be made as long as they are cost effective. Thus, payment will be made to charity only when the residual amount left for distribution to Authorized Claimants is so small that further distribution would not be cost effective. The Investor Protection Trust, a 501(c)(3) nonprofit devoted to investor education, is an appropriate *cy pres* recipient in a securities fraud case, and this Court has approved it in similar actions, including *In re Geron Corp. Sec. Litig.*, No. 3:14-CV-01224-CRB (N.D. Cal.), and *In re HP Sec. Litig.*, No. 3:12-CV-05980-CRB (N.D. Cal.).

---

endorse distributing settlement proceeds according to the relative strengths and weaknesses of the various claims"); *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *38 (C.D. Cal. June 10, 2005) (approving "sensibly mak[ing] interclass distinctions based upon . . . the relative strengths and weaknesses of class members' individual claims") (citation omitted); *In re Oracle Sec. Litig.*, 1994 WL 502054, at *1-2 (N.D. Cal. June 18, 1994) (finding it "reasonable to allocate more of the settlement to class members with stronger claims on the merits").

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
MDL No. 2672 CRB (JSC)

### D.    The Court Should Approve The Form Of Notice And The Plan For Providing Notice to the Settlement Class

The Court should approve the form and content of the proposed Notice. *See* Stip., Ex. A-1. Written in plain language, the Notice clearly presents the relevant information and answers most questions Settlement Class members will have. The Notice complies with Rules 23(c)(2)(B) and 23(e)(1) by objectively apprising all Settlement Class members of the nature of the Action, the definition of the Settlement Class, the claims and issues in the Action, the ability to request exclusion, and the binding effect of a Rule 23(c)(3)(B) judgment on Settlement Class members. *See 2.0 Liter Preliminary Approval Order*, 2016 WL 4010049, at *18-19.

The Notice also satisfies the PSLRA's disclosure requirements by stating (i) the amount of the proposed Settlement to be distributed, (ii) a statement from each party regarding any issues about which they disagree, (iii) the amount of attorney's fees and litigation expenses that Lead Counsel will seek, (iv) the names, addresses, and telephone numbers of Lead Counsel, who will be available for questions from Settlement Class members, and (v) a brief statement explaining the reasons why the parties are proposing the Settlement. *See* 15 U.S.C. § 78u-4(a)(7); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 258 (D.N.H. 2007).

The Notice also meets the Northern District of California Procedural Guidance for Class Action Settlements (the "Northern District Guidance" or "N.D. Cal. Guid.") by including (i) contact information for class counsel to answer questions, (ii) the web address for the settlement website, and (iii) instructions on how to access the case docket. *See* N.D. Cal. Guid. ¶3. The Notice also includes the procedures and deadlines for submitting objections and Proofs of Claim and will include the date, time, and location of the Settlement Hearing scheduled by the Court.

Rule 23(c)(2)(B) requires provision to a class certified under Rule 23(b)(3) of "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Further, Rule 23(e)(1) requires "notice in a reasonable manner to all class members who would be bound" by a proposed settlement. Fed. R. Civ. P. 23(e)(1). The proposed notice program readily meets these standards.

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
MDL No. 2672 CRB (JSC)

Plaintiffs propose that the notice and claims process be administered by Epiq Class Action & Claims Solutions, Inc. ("Epiq"), an independent settlement and claims administrator selected by Lead Counsel after competitive bidding. If the Court preliminarily approves the Settlement, the Claims Administrator will mail the Notice and Proof of Claim Form (the "Notice Packet") to Settlement Class members who may be identified with reasonable effort. In accordance with the customary practice in securities class actions, the Notice provides that nominees (such as broker-dealers) that acquired VWAG ADRs during the Class Period on behalf of others are to either provide the Claims Administrator with the names and addresses of those beneficial owners, or request copies of the Notice Packet to forward to the beneficial owners (with reimbursement of the nominees' reasonable expenses). In addition, the Claims Administrator will cause the Summary Notice (Ex. A-3 to Stip.) to be published in *Investor's Business Daily* and over PR Newswire. The Claims Administrator will also maintain a website, on which the Notice, Proof of Claim Form, preliminary-approval and (when filed) final-approval and attorney's-fees motion papers will be available, as well as a toll-free telephone number and email address to which Settlement Class members may direct inquiries about the Settlement and requests for the Notice Packet. Thus, the notice program provides the best practicable notice that is reasonably calculated to inform Settlement Class members of the Settlement.

Epiq's fees for administering the Settlement will be charged on a per-claim basis, and expenses (including for printing and mailing, publishing, and establishing and maintaining the settlement website and toll-free telephone helpline) will be billed separately. Because the costs depend on how many Notice Packets are ultimately mailed and how many Claims are ultimately received and processed, only a rough estimate of the total Notice and Administration Costs can be provided now. Epiq estimates, based on the Class Period's length, that 200,000 Notice Packets will be mailed and 50,000 claims will be processed, and that the total Notice and Administration Costs will be about $500,000. These costs are necessary to effectuate the Settlement, and, at approximately 1% of the total Settlement value, are reasonable. If the Settlement is approved, the

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
MDL No. 2672 CRB (JSC)

Notice and Administration Costs will be paid from the Settlement Fund.[7] *See* N.D. Cal. Guid. ¶2 (preliminary approval motion should identify "proposed settlement administrator" and discuss "anticipated administrative costs," their reasonableness, and who will pay them).[8]

### E.    Attorneys' Fees, Litigation Expenses, and Plaintiffs' Expenses

Lead Counsel will seek an award of attorneys' fees for all Plaintiffs' Counsel not to exceed 25% of the Settlement Fund less Court-approved expenses, and reimbursement of Litigation Expenses not to exceed $500,000, which includes expert fees, the fees to establish and maintain the database of documents in discovery, and other costs. The benchmark for attorneys' fees in the Ninth Circuit is 25%; therefore, the requested award is comparable to fees in other class actions with contingency-fee risks. *See Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 272 (9th Cir. 1989); *In re Pfizer Sec. Litig.*, No. 04-cv-09866, ECF No.727, slip op. at 2 (S.D.N.Y. Dec. 21, 2016) (awarding 28% of $486 million settlement); *In re Brocade Sec. Litig.*, No. C 05-02042 CRB, ECF No. 496, Order, at 13 (N.D. Cal. Jan. 26, 2009) (awarding fee of 25% of $160 million settlement, net of expenses).[9] Lead Counsel will provide detailed information in support of its application for attorneys' fees and expenses, which will be filed before the Settlement Hearing and at least 14 days before the deadline to object to the Settlement. *See* N.D. Cal. Guid. ¶9. Under 15 U.S.C. § 78u-4(a)(4), Lead Counsel will also seek an award for Plaintiffs to reimburse their time and expenses in representing the Settlement Class in a total amount not to exceed $50,000.

---

[7] Consistent with the Northern District Guidance, Notice and Administration Costs will not be paid out of the Settlement Fund before the Settlement Hearing without prior Court approval. *See* Stip. ¶15; N.D. Cal. Guid. ¶2.

[8] No later than ten calendar days after the Stipulation is filed with the Court, Defendants will serve the notice required by the Class Action Fairness Act, 28 U.S.C. § 1715, *et seq.* (2005) ("CAFA"). *See* Stip. ¶21; N.D. Cal. Guid. ¶10 (preliminary approval motion should address CAFA notice).

[9] Also, while Lead Counsel has not completed a review of its or any other Plaintiffs' Counsel's time, as of May 31, 2018, Lead Counsel had a lodestar of approximately $7 million, which would result in a lodestar multiple of less than two if a 25% fee request were granted by the Court.

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
MDL No. 2672 CRB (JSC)

### F.    Proposed Schedule

Plaintiffs respectfully propose the schedule below to be set in the Preliminary Approval Order for a final approval hearing, mailing and publication of the Notice and Summary Notice, and submitting claims and requesting exclusion from or objecting to the Settlement:

| Event | Time for Compliance |
|---|---|
| Deadline to commence mailing the Notice and Claim Form to potential Settlement Class members ("Notice Date") | 15 business days after entry of Preliminary Approval Order (Prel. Appr. Ord.¶7(b)) |
| Deadline to publish Summary Notice | 10 business days after Notice Date (Prel. Appr. Ord. ¶7(d)) |
| Deadline to file motions for final approval and attorney's fees and expenses | 35 calendar days before Settlement Hearing (Prel. Appr. Ord. ¶26) |
| Deadline for receipt of exclusion requests | 21 calendar days before Settlement Hearing (Prel. Appr. Ord. ¶13) |
| Deadline for mailing/filing objections | 21 calendar days before Settlement Hearing (Prel. Appr. Ord. ¶17) |
| Deadline to file reply papers | 7 calendar days before Settlement Hearing (Prel. Appr. Ord. ¶26) |
| Settlement Hearing | Later of (i) December 6, 2018 or (ii) 90 calendar days after entry of Preliminary Approval Order (Prel. Appr. Ord. ¶5)[10] |
| Deadline to submit Claim Forms | 120 calendar days after Notice Date (Prel. Appr. Ord. ¶10) |

## CONCLUSION

Plaintiffs respectfully request that the Court certify the Settlement Class for Settlement purposes, preliminarily approve the Settlement, approve the forms and methods of notice, and enter the proposed Preliminary Approval Order that is attached to this motion as Exhibit B.

---

[10] Under 28 U.S.C. § 1715(b), Defendants must notify certain federal and state officials of the proposed Settlement within 10 days after filing the Stipulation with the Court, and are doing so concurrently with this motion. Subsection (d) of 28 U.S.C. § 1715 provides that "[a]n order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal . . . and . . . State officials are served with the notice required under Subsection (b)." To comply with these requirements and to provide sufficient time for Settlement Class members to receive the Notice and exercise their right to request exclusion from the Settlement Class or file objections, Lead Counsel respectfully requests that the Court schedule the Settlement Hearing on the later of (i) December 6, 2018 (which is 100 calendar days after the date of filing this motion), or (ii) 90 calendar days after entry of the Preliminary Approval Order.

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
MDL No. 2672 CRB (JSC)

Dated: August 28, 2018

Respectfully submitted,

/s/ James A. Harrod

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
James A. Harrod
Jai Chandrasekhar
Adam D. Hollander
Ross Shikowitz
Kate W. Aufses
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444

*Lead Counsel for Lead Plaintiff ASHERS
and Plaintiff Miami Police and the
Settlement Class*

**KLAUSNER, KAUFMAN, JENSEN &
  LEVINSON**
Robert D. Klausner
Stuart A. Kaufman
7080 Northwest 4th Street
Plantation, FL 33317
Telephone:  (954) 916-1202
Facsimile:  (954) 916-1232

*Counsel for Plaintiff Miami Police*

#1214137

26

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
MDL No. 2672 CRB (JSC)