**In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation**

**Case No. 3:15-md-02672-CRB**

# REPORT OF INDEPENDENT CLAIMS SUPERVISOR ON VOLKSWAGEN'S PROGRESS AND COMPLIANCE RELATED TO 3.0 LITER RESOLUTION AGREEMENTS ENTERED MAY 17, 2017:

- 3.0 Liter Amended Consumer Class Action Settlement Agreement and Release
- Federal Trade Commission Amended Second Consent Order
- Department of Justice, Environmental Protection Agency, California Attorney General's Office, and California Air Resources Board Second Partial Consent Decree

DECEMBER 13, 2018



# TABLE OF CONTENTS

I.    Executive Summary ................................................................................................. 1

II.   Volkswagen's Performance Metrics .................................................................... 3

    A.  Consumer Registrations ................................................................................ 4

    B.  Claim Submission and the First Ten-Business-Day Review Period ................... 7

    C.  Preliminary Eligibility Determinations and Deficiencies .................................. 13

    D.  The "Pause" Period ........................................................................................ 18

    E.  The Second Ten-Business-Day Review Period ............................................... 19

    F.  Offer Letters ................................................................................................. 22

    G.  Appointments, Closings, and Repair Participation Payments ......................... 28

    H.  Progress Toward the 85% Targets .................................................................. 32

III.  Consumer Experience .......................................................................................... 36

    A.  Claims Program Updates .............................................................................. 36

        1.  Non-Standard Claims ............................................................................ 36

        2.  Status of Extended Warranty and Service Contract Refund Program ...... 40

        3.  Claims Review Committee ..................................................................... 41

        4.  Reminder Notices ................................................................................. 42

        5.  Post-Closing Processing of Vehicles ...................................................... 44

        6.  Escrow Account Funding ....................................................................... 44

    B.  Customer Service ......................................................................................... 45

IV.   Conclusion ............................................................................................................. 47

Consistent with the requirements of the 3.0 Liter Resolution Agreements,[1] the independent Claims Supervisor respectfully submits this quarterly report, which, unless otherwise specified, addresses progress in the 3.0 Liter Claims Program for the period from September 10, 2018 to December 9, 2018.

## I.     **Executive Summary**

During this quarterly reporting period, Volkswagen continued to effectively and efficiently administer the Claims Program while adhering to the terms of the 3.0 Liter Resolution Agreements.  In the vast majority of instances, the company timely reviewed claims and, for eligible consumers, issued offer letters, completed Buybacks and Trade-Ins, performed Approved Emissions Modifications ("AEMs"), and rendered associated payments.  The company also provided responsive customer support through its hotline and chat portal in response to consumer inquiries.

There was substantial progress this quarterly reporting period relating to non-standard claims.  As of December 9, 2018, the company had processed a total of 354 branded title claims in accordance with the branded title framework, including 89 claims over the course of the quarterly reporting period.  No branded title claims remained on hold.  Volkswagen also completed 128 additional claims submitted by consumers who purchased vehicles in the United States but registered them in Canada, and 24 claims for military personnel stationed overseas with their vehicles.

Additionally, on November 16, 2018, the company sent Reminder Notices, in accord with the 3.0 Liter Resolution Agreements, to potentially eligible consumers who had not yet submitted a claim or completed an approved remedy.  The notices advised consumers of the

---

[1] Capitalized and/or abbreviated terms in this report take on the definition in the 3.0 Liter Resolution Agreements or the initial report submitted by the Claims Supervisor in June 2017.

relevant Claims Program deadlines, including the June 1, 2019 deadline for consumers with Generation One vehicles to submit a claim and the December 31, 2019 deadline for consumers with Generation Two vehicles to submit a claim.

The statistics below cumulatively present key 3.0 Liter Claims Program metrics as of December 9, 2018:

- 82,415 registrations had been created in Volkswagen's Claims Portal;

- 69,379 consumers had submitted claims for Volkswagen to review;

- 65,609 consumers had been issued offer letters, the aggregate value of which totaled $1,029,337,622.54;

- 63,160 consumers had accepted offer letters from Volkswagen, the aggregate value of which totaled $1,005,056,458.61;

- 15,644 consumers with Generation One vehicles had closed on their Buyback or Trade-In, and Volkswagen had paid out $631,646,991.50 in connection with these claims;

- 1,011 consumers had completed a Reduced Emissions Modification ("REM") for Generation One vehicles, including 862 consumers who also had completed the claims process, and Volkswagen had paid out $8,200,617.44 to consumers in connection with completed REM claims;[2]

- 43,564 consumers with Generation Two vehicles had completed an Emissions Complaint Repair ("ECR"), including 39,496 consumers who also had completed the claims process, and Volkswagen had paid out $316,556,240.82, which includes Repair Participation Payments and ECR payments;

---

[2] Data related to AEMs are as of December 5, 2018.

- For Generation One vehicles, 649 Former Owners, 56 Owners with totaled vehicles, and 9 Former Lessees had received Restitution Payments, and the aggregate values of these payments totaled $3,348,121.10, $553,790.72, and $49,846.33, respectively;

- For Generation Two vehicles, 2,223 Former Lessees, 1,103 Former Owners, and 148 consumers with totaled vehicles had received Repair Payments, and the aggregate values of these payments totaled $4,444,000.00, $4,687,215.13, and $1,174,182.12, respectively; and

- Volkswagen had paid a total of $63,152.25 in connection with 491 extended warranty or service contract refund claims.

At the conclusion of the quarterly reporting period, Volkswagen had removed from commerce or modified 87.8% of all Generation One Subject Vehicles, 88.3% of all Generation Two Subject Vehicles, 86.4% of all Generation One Subject Vehicles registered in California, and 87.7% of all Generation Two Subject Vehicles registered in California. Accordingly, Volkswagen has satisfied the requirements in the 3.0 Liter DOJ Consent Decree that it remove from commerce or modify at least 85% of the aforementioned categories of Subject Vehicles.

## II.   **Volkswagen's Performance Metrics**

This section discusses the status of Volkswagen's 3.0 Liter Claims Program and the company's compliance with certain requirements mandated in the 3.0 Liter Resolution Agreements. All data is as of December 9, 2018, unless otherwise specified. Information relating to Generation One and Generation Two vehicles generally is reported separately because the 3.0 Liter Resolution Agreements afford different remedies to consumers depending on the generation of the vehicle. References to Volkswagen's performance during "this quarter" refer to the period from September 10, 2018 through December 9, 2018.

3

A.   Consumer Registrations

As of December 9, 2018, there had been a total of 82,415 registrations in Volkswagen's system, including 2,283 registrations created during this quarter.[3]  A registration occurs when a consumer provides Volkswagen with basic information including name, contact information, vehicle identification number ("VIN"), and preferred dealership.  Of these registrations, there were 22,628 associated with Generation One vehicles (20,325 individuals and 2,303 businesses), and 59,787 associated with Generation Two vehicles (53,324 individuals and 6,463 businesses). Chart 2-1 shows the total number of registrations created by consumers during each quarter of the Claim Period.

**Chart 2-1**



Charts 2-2 and 2-3 reflect all registrations created by consumers according to eligibility category across Generation One and Generation Two vehicles through December 9, 2018.  The

---

[3] These figures include a significant number of duplicate entries.  Duplicate entries are not identified until the requisite supporting claims information and documentation are submitted and the review periods begin.  Thus, the figure overstates the number of unique claims that have been registered.

"No Category Selected" population consists of consumers who had created a registration as of December 9, 2018, but had not yet provided details identifying their eligibility category.

**Chart 2-2**



**Chart 2-3**



Chart 2-4 shows, among the population of vehicles associated with registered claims, the most common states where the vehicles are registered.

**Chart 2-4**



With respect to the population of 2,403 claims identified as ineligible in Charts 2-2 and 2-3, Volkswagen's system is configured to automatically determine certain ineligible claims where information entered by the consumer into the Claims Portal indicates the consumer is not eligible under the requirements of the 3.0 Liter Resolution Agreements.  For example, a consumer who attempts to submit a Former Owner claim indicating the vehicle was sold on or before September 18, 2015, is ineligible under the "Eligible Former Owner" definition.  In these instances, Volkswagen sends the consumer a letter explaining the basis for the ineligibility determination.

Chart 2-5 shows the reasons for ineligibility determinations across the claims that have been deemed systematically ineligible.

**Chart 2-5**



During this quarter, there were fifty-seven new systematic ineligibility determinations. The Claims Supervisor reviewed all of these determinations and confirmed that Volkswagen's systematic ineligibility logic continues to operate appropriately.

    B.    <u>Claim Submission and the First Ten-Business-Day Review Period</u>

Following registration and preliminary remedy selection, a consumer's next steps in the process are to provide prescribed documents needed to substantiate the claim and submit the claim to Volkswagen for review.  As of December 9, 2018, a total of 69,379 consumers had submitted unique claims for Volkswagen to review, including 1,921 claims submitted by consumers during this quarter.[4]  Of these, 18,717 related to Generation One vehicles (17,138 individuals and 1,579 businesses), and 50,662 related to Generation Two vehicles (45,937 individuals and 4,725 businesses).

---

[4] "Unique claims" means unique VINs within unique eligibility categories.  A claim by an Owner and a Former Owner regarding the same VIN is counted as two unique claims.  Likewise, a claim by one Owner who owns five separate vehicles is counted as five unique claims.

Chart 2-6 shows, across Generation One and Generation Two vehicles, the total number of unique claims submitted by consumers during each quarter of the Claim Period.

**Chart 2-6**



Charts 2-7 and 2-8 show, across Generation One and Generation Two vehicles, respectively, the total population of consumers who had submitted claims by eligibility category.[5]

**Chart 2-7**



---

[5] The four claims not reflected in Chart 2-7 and seventeen claims not reflected in Chart 2-8 were associated with claims ultimately deemed not eligible.

**Chart 2-8**



Chart 2-9 shows the preliminary remedy selections for Owners and Current Lessees of

Generation One vehicles who had submitted claims through December 9, 2018.

**Chart 2-9**[6]



<hr />

[6] Chart 2-9 does not include remedy selections for 724 Former Owners, 65 Owners with totaled vehicles, or 10
Former Lessees who had submitted claims associated with Generation One vehicles because the only remedy
available to these consumers is Restitution.  The chart also excludes 408 claims that were cancelled, usually due to
the submission of duplicate claims or at the consumer's request, as well as 4 claims that were deemed not eligible.

As consumers with Generation Two vehicles only have one remedy available, all 41,799 Owners and 3,775 Current Lessees of Generation Two vehicles who had submitted claims through December 9, 2018 sought an ECR.  A Repair Payment is the only remedy available for the 2,499 Former Lessees, as well as 1,215 Former Owners, and 171 consumers with totaled vehicles who had submitted claims associated with Generation Two vehicles.  Additionally, there were 1,186 claims that were cancelled, usually as a result of the submission of duplicate claims or at the consumer's request, and 17 claims that ultimately were deemed not eligible.

Throughout the Claim Period, Volkswagen has continued to substantially satisfy the requirement that it timely issue a determination of whether a claim was complete and preliminarily eligible (or ineligible) within ten business days of the claim submission by the consumer.  As of December 9, 2018, excluding the 40 claims that were pending a determination but for which the first ten-business-day review period had not yet elapsed, Volkswagen had been required to make 105,534 first ten-business-day review period determinations.  The company timely rendered 104,970 decisions for an overall first ten-business-day review period compliance rate of 99.5%.  During this quarter, Volkswagen was required to make 3,493 first ten-business-day review period decisions and timely did so in 3,467 instances for a reporting period-specific first ten-business-day review period compliance rate of 99.3%.  As of December 9, 2018, there were no overdue claims pending in the first ten-business-day review period.

Chart 2-10 shows Volkswagen's performance during the Claim Period in timely issuing first ten-business-day review period decisions, and Chart 2-11 shows Volkswagen's overall first ten-business-day review period performance by eligibility category.

**Chart 2-10**



**Chart 2-11**[7]



---

[7] The forty-one claims not reflected in Chart 2-11 were all claims that were timely deemed not eligible.

Chart 2-12 shows Volkswagen's performance in timely issuing first ten-business-day review period decisions across all quarters of the Claim Period, including during this quarter.

**Chart 2-12**[8]



The first ten-business-day review period figures (and the second ten-business-day review period figures below) historically have excluded three groups of consumer claims submitted for Volkswagen to process: (i) claims by consumers who initially purchased the vehicle in the United States but registered it in Canada; (ii) claims from consumers who indicated that they were employed by Volkswagen or the Court; and (iii) certain claims associated with vehicles

---

[8] The aggregated total of all claims in Chart 2-12 is 857 decisions (0.8%) greater than the aggregated total of 105,534 required decisions through December 9, 2018.  The divergence is the result of changes over time in the definitions of excluded claims from the timeliness analysis, including claims associated with branded titles as described below.  Chart 2-12 reflects the required number of decisions by quarter based on the exclusionary rules that were applied at the time of each quarter, while the aggregated total of required decisions and timely decisions set forth above yields Volkswagen's overall compliance rate based on applying the current exclusionary rules across the entire Claim Period.

with branded titles.[9]  As of December 9, 2018, there were seven active claims from consumers who initially purchased vehicles in the United States but registered them in Canada.[10]  There were no active claims from consumers who indicated in their claim submissions that they were employees of Volkswagen or the Court and no branded title claims on hold.  Further discussion of these non-standard claims is set forth in Section III below.

C.      Preliminary Eligibility Determinations and Deficiencies

Through December 9, 2018, of the 69,379 unique claims that had been submitted by consumers for Volkswagen to review, a total of 66,447 claims (95.8%) had been determined by Volkswagen to be complete and preliminarily eligible, including 1,865 unique claims during this quarter.  Across all 66,447 claims, 18,073 claims related to Generation One vehicles (16,669 individuals and 1,404 businesses) and 48,374 claims related to Generation Two vehicles (44,243 individuals and 4,131 businesses).

Chart 2-13 shows, for Generation One and Generation Two vehicles, the total number of claims deemed complete and preliminarily eligible by Volkswagen during each quarter of the Claim Period.

---

[9] These types of claims have been excluded from the timeliness analysis because the consumers do not meet the Class Member definition.  While Volkswagen has used the claims process to identify and engage with these consumers, they would not receive any funds out of the Funding Pool.

[10] For these purposes, a claim is considered "active" once a consumer submits it, but before a final determination on eligibility and award (or ineligibility) has been rendered.

**Chart 2-13**



Charts 2-14 and 2-15 reflect the number of claims Volkswagen determined to be complete and preliminarily eligible by eligibility category across Generation One and Generation Two vehicles as of December 9, 2018.[11]

**Chart 2-14**



_____

[11] The one claim not accounted for in Chart 2-14 and seven claims not accounted for in Chart 2-15 were ultimately deemed not eligible.

**Chart 2-15**



Charts 2-16 shows the most common states in which Eligible Vehicles associated with preliminarily eligible claims have been registered.

**Chart 2-16**



Chart 2-17 shows, as of December 9, 2018, the remedy selected by Owners and Current Lessees of Generation One vehicles whose claims Volkswagen had deemed complete and preliminarily eligible.

**Chart 2-17**[12]



For Generation Two vehicles, there is only one remedy option available to consumers. As a result, all claims of the 40,606 Owners and 3,599 Current Lessees of Generation Two vehicles that had been deemed complete and preliminarily eligible by Volkswagen through December 9, 2018 were for the ECR remedy. A Repair Payment is the only remedy available for 2,447 Former Lessees, as well as for 1,150 Former Owners, and 159 Owners with totaled vehicles who had submitted claims associated with Generation Two vehicles that, through December 9, 2018, had been deemed complete and preliminarily eligible by Volkswagen. There were an additional 406 cancelled claims and 7 additional claims that ultimately had been deemed not eligible.

---

[12] Chart 2-17 excludes 668 Former Owners, 62 Owners with totaled vehicles, and 10 Former Lessees because Restitution is the only remedy available to those consumers. It also excludes 131 cancelled claims and 1 claim that ultimately was determined to be ineligible.

Through December 9, 2018, there were 33,149 instances where Volkswagen had deemed a claim deficient during its first ten-business-day review period.  More than 55,000 individual deficiency codes had been applied by Volkswagen as of that date, as multiple deficiencies may be associated with a single claim submission.  The most common deficiency codes have been: (i) an incorrect document was uploaded (14,777 claims); (ii) a document was illegible (10,051 claims); (iii) a document was incomplete or the document image was cut off (7,442 claims); and (iv) a document was missing pages (4,635 claims).

As the same claim may be resubmitted to Volkswagen after initially being deemed deficient, the 33,149 instances of deficiency determinations were associated with 22,039 unique claims.  Of those 22,039 unique claims, consumers had made at least one attempt to cure in connection with 20,991 claims (95.2%), while no attempt to cure had been made with respect to the remaining 1,048 claims (4.8%).  Across the 20,991 claims where consumers had attempted to cure: (i) for 19,791 claims (94.3%), consumers successfully cured the deficiency; (ii) for 1,187 claims (5.7%), consumers had not subsequently resubmitted claims after their initial attempt to cure the deficiency was unsuccessful; and (iii) for 13 claims (0.1%), consumers had resubmitted claims that were pending a completeness determination by Volkswagen as of December 9, 2018.

Through December 9, 2018, there were 1,056 consumer claims with active deficiencies. The most common deficiency codes among active deficient claims were: (i) an incorrect document was uploaded (440 claims); (ii) a document was illegible (215 claims); (iii) a name on a document did not match the name in the Claims Portal (204 claims); and (iv) a document was incomplete or the document image was cut off (100 claims).

During this quarterly reporting period, the Claims Supervisor reviewed a sample of 600 deficiency codes applied by Volkswagen reviewers during the first ten-business-day review period to assess whether the codes were properly applied.  The Claims Supervisor substantiated Volkswagen's deficiency determinations in 565 instances (94.2%).  This concurrence rate is

17

relatively consistent with that of previous quarters.  Trend analyses showed that instances of disagreements involving complex documents decreased slightly as compared to the previous quarter,[13] as did disagreements involving financial consent forms.  Disagreements regarding identification documents and proof of ownership forms marginally increased.[14]

### D.    The "Pause" Period

For Owners of Generation One vehicles who elect a Buyback or Trade-In remedy, whose claims are deemed complete and preliminarily eligible by Volkswagen, and whose vehicles are encumbered by a loan, the second ten-business-day review period does not begin until Volkswagen obtains loan payoff information from the lender.  This information is necessary for Volkswagen to generate an offer letter for the consumer.

As of December 9, 2018, there had been 771 instances in which a claim had been "paused" pending receipt of loan payoff information from a lender.  On average, the "pause" period has lasted less than two business days per claim.  As of December 9, 2018, there was one actively paused claim pending receipt of loan payoff information from a lender, and that claim had been pending for three business days.

---

[13] "Complex documents" include: power of attorney; death certificate; proof of VCI account; corporate document; previous registration; proof of acquisition; proof of name change; proof of vehicle transfer to insurance; proof of lease conversion; paper claim forms; and proof of sale documents.

[14] Where the Claims Supervisor disagrees with a deficiency code determination and that deficiency determination is the sole reason the claim has been deemed deficient, the Claims Supervisor will raise the claim with Volkswagen for additional review.

E.      The Second Ten-Business-Day Review Period

Subject to the "pause" period discussed above, Volkswagen generally has ten business days from the date it concludes that a consumer's claim is complete and preliminarily eligible to issue an offer letter.[15]

As of December 9, 2018, a total of 66,542 consumers had reached the second ten-business-day review period after having been deemed preliminarily eligible by Volkswagen, including 1,867 such consumers during this quarter.[16]  Of these, 18,092 claims related to Generation One vehicles (16,687 individuals and 1,405 businesses) and 48,450 claims related to Generation Two vehicles (44,316 individuals and 4,134 businesses).  Across this population, 65,609 consumers (98.6%) had been issued offer letters, including 1,976 offer letters issued during this quarter.

Chart 2-18 shows, for Generation One and Generation Two vehicles, the total number of claims reaching the second ten-business-day review period during each quarter of the Claim Period, including during this quarter.

---

[15] In certain instances, Volkswagen can determine during the first ten-business-day review period that a claim is ineligible, in which case that ineligibility determination must be verified by the Claims Supervisor during the second ten-business-day review period.  These ineligibility determinations are separate from claims automatically deemed ineligible by Volkswagen's system based on information input by the consumer in the Claims Portal.  Through December 9, 2018, there had been 1,077 instances in which claims had been deemed ineligible upon review by Volkswagen.  For 711 of these claims, the ineligibility determination had been validated by the Claims Supervisor and communicated by Volkswagen to the consumer.  Remaining claims generally either were actively under review or were instances where claims were deemed deficient instead of ineligible, offering the consumer a chance to cure.

[16] As described above, there were 66,447 consumers whose claims were deemed complete and preliminarily eligible by Volkswagen, but 66,542 preliminarily eligible claims reached the second ten-business-day review period.  The difference relates to instances where claims reached the second ten-business-day review period having skipped the status that ends the first ten-business-day review period.  The distinction does not substantively affect claims processing.  It is only reflected when data is queried to generate aggregated figures for reporting.

Chart 2-18



Throughout the Claim Period, Volkswagen has continued to substantially satisfy the requirement to timely issue second ten-business-day review period decisions.  As of December 9, 2018, excluding the 52 claims that had reached the second ten-business-day review period but for which the review period had not yet elapsed, the company had been required to make 72,394 second ten-business-day review period decisions.  The company timely rendered determinations in 70,689 instances, for a second ten-business-day review period compliance rate of 97.6%. During this quarter, Volkswagen was required to make 2,355 second ten-business-day review period decisions, and timely did so in 2,224 instances for a reporting period-specific compliance rate of 94.4%.  As of December 9, 2018, there were no overdue claims pending in the second ten-business-day review period.

Chart 2-19 shows Volkswagen's performance during the Claim Period in timely issuing second ten-business-day review period decisions, and Chart 2-20 reflects Volkswagen's overall second ten-business-day review period performance by eligibility categories.

**Chart 2-19**



**Chart 2-20**[17]



Chart 2-21 reflects Volkswagen's performance in timely issuing second ten-business-day review period decisions across each quarter of the Claim Period.

---

[17] The eleven claims not accounted for in Chart 2-20 are associated with claims that ultimately were deemed not eligible, ten of which were timely decisions and one of which was untimely.

**Chart 2-21**[18]



### F.    Offer Letters

Through December 9, 2018, Volkswagen had issued 65,609 offer letters, the aggregate

value of which totaled $1,029,337,622.54, including 1,976 offer letters issued during this quarter

aggregately valued at $29,019,909.41.[19]  Of these, 17,910 offer letters with an aggregate value of

$673,176,219.52 related to Generation One vehicles (16,535 offers to individuals with an

aggregate value of $621,597,883.78, and 1,375 offers to businesses with an aggregate value of

$51,578,335.74).  The remaining 47,699 offer letters with an aggregate value of $356,161,403.02

---

[18] For the same reasons described in footnote 8, the aggregated total of required decisions reflected in Chart 2-21 is
548 decisions (0.8%) greater than the 72,394 required second ten-business-day review period decisions set forth
above.

[19] The Claims Supervisor identified 897 claims -- 28 claims related to Generation One vehicles and 869 claims
related to Generation Two vehicles -- where it appears that consumers who leased Eligible Vehicles and later
purchased the vehicles after January 31, 2017, had claims that were categorized as Owner (Lease Conversion)
claims when they may be more appropriately categorized as Eligible Lessee claims under Section 2.38 of the 3.0
Liter Class Action Settlement Agreement.  A review of the claims showed that when offers were extended, those
offers were appropriately being valued using the Lessee valuation formulas for Generation One and Generation Two
vehicles.  Therefore, this issue is not substantively affecting consumers.  It is purely one of data categorization that
affects the aggregation of figures for reporting.  For purposes of this report, unless otherwise noted, these claims will
be captured as Owner claims, as that is how they are currently reflected in Volkswagen's claims system.

related to Generation Two vehicles (43,703 offers to individuals with an aggregate value of $326,541,143.33, and 3,996 offers to businesses with an aggregate value of $29,620,259.69).

Chart 2-22 shows, for Generation One and Generation Two vehicles, the total number of offer letters issued by Volkswagen during each quarter of the Claim Period, including during this quarter.

**Chart 2-22**



Charts 2-23 and 2-24 show, across Generation One and Generation Two vehicles, the total number of offer letters issued by Volkswagen by eligibility category.

Chart 2-23



Chart 2-24



Chart 2-25 shows offer letters related to Generation One vehicles issued to Owners by remedy selections.

**Chart 2-25**[20]



As to Generation Two vehicles, a total of 40,446 Owners and 3,556 Current Lessees had received offer letters for an ECR, while 2,409 Former Lessees, 1,130 Former Owners, and 158 Owners with totaled vehicles had received offer letters associated with Repair Payments.

Chart 2-26 shows the top ten states by vehicle registration of consumers who had received offer letters through December 9, 2018.

**Chart 2-26**



---

[20] Chart 2-25 excludes 657 Former Owners, 61 Owners with totaled vehicles, and 9 Former Lessees who had received offer letters because the only remedy available to those consumers is Restitution.

Through December 9, 2018, of the approximately $673.18 million corresponding to the offer letters issued by Volkswagen relating to Generation One vehicles, Owners account for about $669.74 million.  Across these consumers:  about $441.06 million related to Owners without loans; about $228.07 million related to Owners with loans; $605,174.61 related to sixty-one Owners with totaled vehicles; and $11,291.75 related to two Owner claims where the consumer purchased the vehicle between September 18, 2015 and January 31, 2017, following the expiration of the lease.[21]  The remainder was split among Former Owners (657 offer letters valued in the aggregate at about $3.38 million) and Former Lessees (9 offer letters valued in the aggregate at $49,846.33).

Chart 2-27 shows the minimum, maximum, and average awards issued to consumers with Generation One vehicles by eligibility category and offer selection through December 9, 2018.

**Chart 2-27**[22]

| Eligibility Category and Offer Selection | Average Value | Minimum Value | Maximum Value |
|---|---|---|---|
| Owner – Buyback | $40,487.36 | $13,575.00[23] | $64,846.12 |
| Owner – Trade In | $41,853.06 | $18,055.75 | $62,984.50 |
| Current Lessee – REM | $10,072.54 | $3,990.00 | $13,472.48 |
| Owner – Totaled Vehicle Restitution | $10,116.77 | $4,808.48 | $12,516.20 |
| Former Lessee Restitution | $5,538.48 | $5,100.00 | $6,344.12 |
| Former Owner Restitution | $5,149.23 | $2,612.17 | $6,997.50 |

---

[21] Through December 9, 2018, there had been one instance where a loan amount on a Generation One vehicle that was the subject of a Buyback or a Trade-In claim had exceeded 130% of the award amount.  The difference between the loan value and 130% of the award value was approximately $3,300.

[22] Chart 2-27 excludes the twenty-eight Generation One claims discussed in footnote 19 above that were categorized as Owner instead of Eligible Lessee claims.

[23] This lower amount was in connection with a vehicle associated with a branded title for which, under the branded title eligibility and award protocols, the consumer was entitled only to receive Vehicle Value.

Through December 9, 2018, of the approximately $356.16 million associated with offer letters to consumers with Generation Two vehicles, Owners accounted for about $339.43 million. The remainder was split among: Current Lessees (3,556 offer letters valued in the aggregate at $7.112 million); Former Lessees (2,409 offer letters valued in the aggregate at $4.818 million); and Former Owners (1,130 offer letters valued in the aggregate at about $4.81 million).

Chart 2-28 shows the minimum, maximum, and average awards issued to consumers with Generation Two vehicles based on eligibility category and offer selection through December 9, 2018.

**Chart 2-28**[24]

| Eligibility Category and Offer Selection | Average Value | Minimum Value | Maximum Value |
|---|---|---|---|
| Owner – ECR | $8,438.27 | $3,519.62 | $16,113.64 |
| Owner – Totaled Vehicle Restitution | $7,923.19 | $1,977.94 | $10,466.84 |
| Current Lessee – ECR | $2,000.00 | $2,000.00 | $2,000.00 |
| Former Lessee – Restitution | $2,000.00 | $2,000.00 | $2,000.00 |
| Former Owner – Restitution | $4,253.30 | $1,841.69 | $5,722.12 |

Finally, Chart 2-29 shows, through December 9, 2018, data related to two categories of non-standard claimants: (i) military personnel deployed overseas with their vehicles; and (ii) decedent estates.

---

[24] With respect to the figures for Owner-ECR claims, Chart 2-28 excludes the 869 Generation Two claims discussed in footnote 19 above that were categorized as Owner instead of Eligible Lessee claims.

**Chart 2-29**[25]

|  | Military Overseas | Decedent Estates |
|---|---|---|
| Registrations | 89 | 126 |
| Submitted Claims | 89 | 112 |
| Deemed Complete and Eligible | 89 | 107 |
| Offer Letters Issued | 88 | 106 |
| Total Offer Amounts | $1,736,292.67 | $2,067,363.87 |

G.   Appointments, Closings, and Repair Participation Payments

As of December 9, 2018, a total of 63,160 consumers had accepted offer letters from Volkswagen, the aggregate value of which totaled $1,005,056,458.61.[26]  This includes 17,620 accepted offer letters associated with Generation One vehicles valued in the aggregate at $663,191,308.42, and 45,540 accepted offer letters associated with Generation Two vehicles valued in the aggregate at $341,865,150.19.  During this quarter, 2,644 offer letters were accepted by consumers with an aggregate value of $38,165,556.39.

Chart 2-30 shows, for Generation One and Generation Two vehicles, the total number of accepted offer letters for each quarter of the Claim Period, including during this quarter.

---

[25] Military overseas claims are categorized as non-standard claims because of the unique issues they present in terms of claims processing and closing logistics.  While decedent estate claims present unique claims processing issues, closings generally follow the standard process, so information regarding these claims is included within the closing data in this Section along with other standard claims.

[26] In addition to Owners, this figure includes Former Lessees, Former Owners, and consumers with totaled vehicles who do not need to proceed through the closing phase because they do not have possession of an Eligible Vehicle. Information on payments made to consumers in these eligibility categories is set forth below.

**Chart 2-30**



Of the 17,620 consumers with Generation One vehicles who had accepted offer letters as of December 9, 2018, 16,901 were Owners.  Within that group of 16,901 consumers, 15,824 consumers (93.6%) had scheduled Buyback or Trade-In closing appointments as of December 9, 2018.[27]  Chart 2-31 shows for these consumers the total number of appointments by appointment type across eligibility categories, and Chart 2-32 shows the remedy selection of consumers with closed appointments.[28]

---

[27] Information regarding completed REMs on Generation One vehicles is set forth below.

[28] As of December 9, 2018, there had been 5,453 instances where a scheduled Buyback or Trade-In appointment for a Generation One vehicle had resulted in cancellation.  Of these, 5,177 appointments (94.9%) were cancelled at the consumer's request.  Other common reasons for cancellations included: (i) the customer did not show up to the appointment (127 instances); (ii) the title holder was not present at the closing (24 instances); and (iii) the Owner or Current Lessee was not present at the closing and the consumer did not provide a valid power of attorney with his or her claim submission (18 instances).

**Chart 2-31**



**Chart 2-32**



As set forth in Chart 2-32, there had been 15,644 Buyback and Trade-In appointments associated with Generation One vehicles that had resulted in closing as of December 9, 2018, the aggregate value of the offer letters for which totaled $634,814,737.21.  This includes 664 closings during this quarter with offer letters aggregately valued at $27,824,417.30.  Chart 2-33 shows the top ten states for consumers with Generation One vehicles who proceeded through closing based on the state in which the vehicle was registered.

30

Chart 2-33



Through December 9, 2018, Volkswagen had issued payments totaling $631,646,991.50 to, or on behalf of, Owners with Generation One vehicles who had closed Buyback or Trade-In claims.

As discussed in prior reports, a REM has been approved for all Generation One vehicles. As of December 5, 2018, Volkswagen had completed 1,011 REMs on Generation One vehicles, including 146 REMs during this quarterly reporting period.  This includes 826 consumers who also had completed the claims process, 74 consumers who had completed the REM and submitted a claim but had not yet completed the claims process, and 111 consumers who had completed the REM but had not yet submitted a claim.  In total, Volkswagen had paid $8,200,617.44 in connection with REMs on Generation One vehicles, including $2,299,075.92 paid during this quarterly reporting period.

With ECRs also having been approved for all Generation Two vehicles, 43,564 consumers with Generation Two vehicles had completed an ECR as of December 5, 2018, including 2,207 ECRs during this quarterly reporting period.  This includes 39,496 consumers who also had completed the claims process.  An additional 2,015 consumers completed the ECR but had not yet completed the claims process.  Finally, 2,053 consumers completed the ECR but

had not yet registered a claim or had cancelled their claim.  In total, Volkswagen had paid $316,556,240.82 to Owners and Current Lessees with Generation Two vehicles, which amounts include both Repair Participation Payments and ECR payments, including $16,285,577.47 paid during this quarterly reporting period.

The figures above for Generation One and Generation Two vehicles do not account for claims from Former Owners, Former Lessees, and Owners with totaled vehicles because these consumers do not need to go through the closing process.  For Generation One vehicles, aggregated payments across these eligibility categories were: $3,348,121.10 across 649 Former Owners; $553,790.72 across 56 Owners with totaled vehicles; and $49,846.33 across 9 Former Lessees.  For Generation Two vehicles, these figures were: $4,444,000.00 across 2,223 Former Lessees; $4,687,215.13 across 1,103 Former Owners; and $1,174,182.12 across 148 Owners with totaled vehicles.

 H. <u>Progress Toward the 85% Targets</u>

As of October 2018, Volkswagen had satisfied the requirement in the 3.0 Liter DOJ Consent Decree that the company remove from commerce or perform an AEM on at least 85% of Generation One 3.0 Liter Subject Vehicles by November 30, 2019.  The 3.0 Liter DOJ Consent Decree provides that "the total number of Generation 1.x 3.0 Liter Subject Vehicles is 19,602."  Chart 2-34 reflects data on the number of Generation One Subject Vehicles that Volkswagen had removed from commerce or modified.

**Chart 2-34**[29]



The "Other Vehicles" category depicted in Chart 2-34 (and Charts 2-35, 2-36, and 2-37 below) represents vehicles Volkswagen has removed from commerce outside of the Claims Program. This includes, among others, used vehicles that Volkswagen acquired from dealerships and company cars previously utilized by Volkswagen employees that have since been retired.

As of November 2018, Volkswagen had satisfied the requirement in the 3.0 Liter DOJ Consent Decree that the company remove from commerce or perform an AEM on at least 85%

---

[29] Figures in Charts 2-34 through 2-37 relating to Polk Units in Operation ("UIO") Scrapped and Other Vehicles are based on Volkswagen data as of September 30, 2018. The population of Other Vehicles includes certain vehicles associated with completed Buyback, Trade-In, or ECR appointments. To avoid double-counting, these vehicles are excluded from the Buyback, Trade-In, and ECR figures reflected in Charts 2-34 through 2-37 and are counted only in the Other Vehicles figure. Buyback and Trade-In figures also would account for certain vehicles associated with consumers who opted out of the settlement. While these consumers are outside of the Class, their vehicles are within the population of Subject Vehicles and thus are counted toward the 85% target once they are removed from commerce or modified. The data also reflect closed Buyback and Trade-In claims on Generation One vehicles purchased in the United States but registered in Canada through December 9, 2018. Data on Canadian-registered Generation Two vehicles that have received an ECR are likewise subsumed within the REM and ECR figures shown by vehicle generation. Finally, the REM and ECR figures in Charts 2-34 through 2-37 are based on data provided by Volkswagen as of December 5, 2018.

of Generation One 3.0 Liter Subject Vehicles registered in California by November 30, 2019. The 3.0 Liter DOJ Consent Decree provides that "the total number of all Generation 1.x 3.0 Liter Subject Vehicles registered in California is 2,925." Chart 2-35 reflects data on the number of Generation One Subject Vehicles registered in California that had been modified or removed from commerce.

**Chart 2-35**



Volkswagen's California-Specific 85% Target - Generation One

2,925 (100%)
2,528 (86.4%)
2,487 (85.0%)

29 (1.0%)
22 (0.8%)
159 (5.4%)
90 (3.1%)

2,228 (76.2%)

Number of Subject Vehicles (Percent of Total Subject Vehicle Population)

- Closed Buybacks
- Closed Trade-ins
- Reduced Emissions Modification
- Other Vehicles
- UIO Scrapped/Consumer Export

There are similar targets for Generation Two vehicles. As of October 2018, Volkswagen had satisfied the requirement in the 3.0 Liter DOJ Consent Decree that, by May 31, 2020, the company permanently remove from commerce or perform an ECR on at least 85% of Generation Two 3.0 Liter Subject Vehicles. The 3.0 Liter DOJ Consent Decree states that "the total number of Generation 2.x 3.0 Liter Subject Vehicles is 62,772." Chart 2-36 generally reflects data on the number of Generation Two Subject Vehicles that had been modified or removed from commerce.

**Chart 2-36**



As of October 2018, Volkswagen also had satisfied the requirement in the 3.0 Liter DOJ

Consent Decree that, by May 31, 2020, the company permanently remove from commerce or

perform an ECR on at least 85% of Generation Two 3.0 Liter Subject Vehicles that were

registered in California as of November 2, 2015.  The 3.0 Liter DOJ Consent Decree states that

"the total number of all Generation 2.x 3.0 Liter Subject Vehicles registered in California is

11,805."  Chart 2-37 generally reflects data on the number of Generation Two Subject Vehicles

registered in California that had been modified or removed from commerce.

**Chart 2-37**



### III. Consumer Experience

#### A. Claims Program Updates

##### 1. Non-Standard Claims

###### a) Branded Title Claims

As detailed in prior reports, on February 26, 2018, Volkswagen implemented a general framework developed by the Parties and the CRC for the processing of certain non-standard branded title claims that had been on hold, in some cases, for many months.[30]  Following implementation of the agreed-upon framework, Volkswagen had processed a total of 354 claims

---

[30] Title brands include salvage, rebuilt, reconstructed, and prior salvage, and indicate, among other things, whether a vehicle has sustained damage or may be unsafe to drive.  A vehicle branded with a salvage title is typically one that was damaged to the point that it was declared a total loss by an insurance company, often because the cost to repair the vehicle was greater than the value of the vehicle in its damaged state.  In some states, a vehicle with a salvage title cannot be registered with the applicable department of motor vehicles.  However, the nomenclature related to title brands varies from state to state and is analyzed accordingly, so that the eligibility requirements are consistently applied.

in accordance with the branded title framework, including 89 claims over the course of the quarterly reporting period.  No branded title claims remain on hold.  Chart 3-1 reflects the total number of these claims Volkswagen had processed as of December 9, 2018, as well as those processed during this quarterly reporting period, by the company's eligibility determination.

**Chart 3-1**

| Branded Title Claims Determinations | Total Claims | Claims Processed During the Quarterly Reporting Period |
|---|---|---|
| Eligible | 143 | 10 |
| Ineligible | 211 | 79 |

The majority of eligible claims have involved vehicles with rebuilt titles, and the majority of ineligible claims have involved vehicles that had salvage titles as of February 26, 2018.

At the conclusion of the quarterly reporting period, a total of twenty-six claims required additional information from consumers before the company could render an eligibility and award determination.  For those consumers from whom Volkswagen requested additional information, the most common forms of documentation required were: (i) proof of vehicle acquisition (16); (ii) copy of certificate of title (9); and (iii) proof of ownership (6).

The Claims Supervisor will continue to monitor developments related to the processing of these claims for the duration of the Claims Program, and will provide updates in future reports.

b)      Canadian Claims

Volkswagen completed additional claims submitted by consumers who had purchased vehicles in the United States, but registered them in Canada.[31]  As of December 4, 2018, the company reported that it had received 378 such claims (an increase of 61 from the prior quarterly reporting period) and completed 190 claims, including 128 over the course of the quarterly reporting period. A total of twenty-six claims had been deemed ineligible.[32]  Chart 3-2 reflects the number of completed claims, as well as the claims remaining to be processed by remedy selection.

**Chart 3-2[33]**

| Canadian Claims by Remedy Selection | Total Eligible/Completed Claims | Eligible/Completed Claims During the Quarterly Reporting Period | Claims Remaining to Be Completed |
|---|---|---|---|
| Buyback/Trade-In | 140 | 92 | 110 |
| AEMs | 46 | 32 | 51 |
| Seller Restitution | 2 | 2 | 0 |
| Owner Restitution | 2 | 2 | 1 |

c)      Military Overseas Claims

Volkswagen continued to make progress in connection with claims submitted by military personnel stationed overseas with their vehicles.  As of December 4, 2018, the company reported

---

[31] As previously reported, following the approval of the Canadian 3.0 Liter settlement in April 2018, Volkswagen decided to extend benefits to certain consumers who had purchased vehicles manufactured for sale in the United States but registered them in Canada -- although these claims were not expressly covered under either the United States or Canadian settlements.

[32] As set forth in Chart 3-2, Volkswagen identified 162 pending claims submitted by consumers who initially purchased vehicles in the United States but registered them in Canada.  This figure includes the seven active claims identified in Section II, as well as claims that are not considered active (e.g., claims that have been registered, but for which documents have not yet been submitted, and claims for which offers have been extended, but a remedy has not yet been completed).

[33] Chart 3-2 excludes the twenty-six claims that had been deemed ineligible.

that it had received eighty-two such claims -- thirty-one for Buybacks and fifty-one for AEMs

(AEMs include both REMs and ECRs).[34]   None of these claims had been deemed ineligible.  The

company had completed twenty-eight Buybacks, including three over the course of the quarterly

reporting period.  Chart 3-3 lists the fifty-one AEM claims by the country in which the consumer

who submitted the claim was stationed with his or her vehicle as of December 4, 2018.

**Chart 3-3**

| AEM Claims Submitted by Overseas Military Personnel | |
|---|---|
| Country | # of Claims |
| Germany | 40 |
| South Korea | 3 |
| Belgium | 2 |
| Italy | 2 |
| Macedonia | 1 |
| Malaysia | 1 |
| Turkey | 1 |
| United Kingdom | 1 |

As detailed in the September 2018 report, the company began performing overseas

AEMs in Germany due to the high concentration of AEM claims submitted by military personnel

stationed there.  Following the successful completion of four AEMs under a pilot program in

Germany, Volkswagen expanded appointment offerings and, as of December 4, 2018, had

completed a total of twenty-three such claims in Germany, including nineteen during the quarter.

Due to the success the company achieved in completing AEMs in Germany, it implemented a

similar process to complete AEMs at dealerships in Italy.  Over the course of the quarterly

reporting period, the company completed its first AEM in Italy.  Additionally, Volkswagen

completed its first AEM in Belgium, utilizing an exporter located within the country.  The

company continues to assess options for completing AEMs in other countries.

---

[34] The total number of claims submitted by military personnel stationed overseas with their vehicles, as well as the number of related AEM claims, decreased from the prior quarterly reporting period as a result of certain military personnel returning to the United States.

The Claims Supervisor will monitor progress related to the scheduling and completion of AEMs overseas on an ongoing basis and will provide updates in future reports.

2.    Status of Extended Warranty and Service Contract Refund Program

Consistent with recent reporting periods, the vendor engaged by Volkswagen to administer the extended warranty and service contract refund program continued to accurately and efficiently process claims resulting in the rendering of additional payments to eligible consumers.

As of December 9, 2018, the company's vendor had communicated decisions in connection with nearly every claim that had been submitted -- 2,086 of 2,089 (99.9%).  Across all 2,086 decisions: (i) 1,383 claims (66.3%) had been deemed ineligible; (ii) 701 claims (33.6%) had been deemed eligible; and (iii) 2 claims (0.1%) had an active deficiency and required additional information from the consumer to complete processing.

Of the 701 claims that had been deemed eligible, Volkswagen had initiated payment on 491 of them -- an increase of 41 from the prior quarter -- for a total of $63,152.25, which averages $128.62 per claim.  Of the 210 claims for which payment had not been initiated: (i) 185 claims were pending a decision by the consumer on whether to accept or reject the offer; (ii) 7 claims had resulted in accepted offers for which Volkswagen was in the process of initiating payment; and (iii) 4 claims had resulted in offers being rejected by the consumer.  There were also fourteen claims that involved eligible contracts for which no payment was due.[35]  For claims where an offer has been extended but not accepted, Chart 3-4 depicts the number of days the offers have been outstanding.[36]

---

[35] Consumers with otherwise eligible contracts do not receive any additional payment from Volkswagen when the refund available from the provider equals or exceeds the amount due to the consumer under the terms of the extended warranty and service contract refund program.

[36] Volkswagen's vendor sends reminder emails on a monthly basis to consumers who have not responded to the offer.  Consumers have until the end of the 3.0 Liter Claims Program to accept offers.  Consumers may challenge the refund offer by submitting an appeal to the CRC.

**Chart 3-4**



As mentioned above, Volkswagen's vendor continued to review submitted claims accurately. Of the forty-five refund determinations initially reached by the vendor during the quarterly reporting period, the Claims Supervisor concurred with all but two determinations. After further review, the vendor ultimately agreed that one initial determination had been made in error and was in the process of reviewing the other determination.

The Claims Supervisor will continue to validate all determinations and award calculations reached by Volkswagen's vendor, and will provide further updates regarding the status of the refund program in upcoming reports.

       3.      Claims Review Committee

As of December 9, 2018, consumers had submitted 941 unique appeals (1.4% of all submitted claims), including 103 unique appeals submitted during this quarterly reporting period. The appeals have challenged, among other issues, Volkswagen's eligibility decisions and award calculations. The CRC had reached determinations with respect to 234 (24.9%) of all appeals, including 36 CRC determinations made over the quarterly reporting period, which are summarized as follows:

41

- The CRC denied 19 appeals;

- For 9 consumers, the CRC advised that the issues that were the subject of the appeal had previously been resolved, and thus the appeal was moot; and

- In 8 instances, the CRC advised consumers that they may be eligible for benefits, provided that a new claim be submitted for review and consideration.

All decisions issued by the CRC have involved appeals in which the Volkswagen and Class Counsel representatives have agreed on the outcome.  The Parties have reported that they are continuing to work together to resolve pending appeals and will seek the assistance of the court-appointed neutral as necessary.

4.    Reminder Notices

Pursuant to the 3.0 Liter Resolution Agreements, Volkswagen is required to provide Reminder Notices to consumers to: (i) inform them of the deadlines to file a claim and/or schedule an appointment to receive compensation; and (ii) direct them to the Claims Program website.  The FTC Consent Order requires that Volkswagen issue two separate Reminder Notices -- one at least 180 days prior to the Program End Date (i.e., by November 18, 2018) and a second at least 150 days prior to the Program End Date (i.e., by December 18, 2018).[37] Pursuant to the FTC Consent Order, the Reminder Notices are to be sent by at least two means (e.g., mail, e-mail, telephone) to every eligible consumer who has not submitted a claim application, elected a remedy, or scheduled a closing appointment.

On November 16, 2018, Volkswagen sent the First Reminder Notice by regular mail to 7,513 consumers with Generation One vehicles and 22,035 consumers with Generation Two vehicles, and by e-mail to 2,558 consumers with Generation One vehicles and 7,786 consumers

---

[37] The Program End Date is defined in the FTC Consent Order as "two years after the last Repair Approval Date or the Effective Date, whichever comes earlier."  Accordingly, the Program End Date is defined as two years after the Effective Date (i.e., May 17, 2019).

with Generation Two vehicles for whom Volkswagen had e-mail addresses.  The company also posted the First Reminder Notice on www.VWCourtSettlement.com.

The First Reminder Notice sent to consumers with Generation One vehicles encouraged recipients to submit a claim as soon as possible, and advised them, among other things, that: (i) they must submit a complete claim application (including all required documents) by June 1, 2019 either online through the Claims Portal (accessible via www.VWCourtSettlement.com) or using a paper claim form (also accessible at www.VWCourtSettlement.com), or they risk losing the opportunity to participate in the Claims Program; (ii) they should submit the necessary documents by May 1, 2019 to ensure that they are able to timely address any document deficiencies; (iii) if their claim is approved, they must return a signed and notarized offer letter to the company to receive benefits; (iv) the signed and notarized offer letter should be submitted by September 1, 2019 because, if it is submitted after that date, there is significant risk that it will not be reviewed and approved in time to schedule and complete a Buyback, Trade-In or Early Lease Termination appointment prior to the end of the Claims Program; and (v) if the approved remedy is not completed by September 30, 2019, benefits under the Claims Program will not be provided.

The First Reminder Notice sent to consumers with Generation Two vehicles included similar information to the First Reminder Notice sent to consumers with Generation One vehicles except that recipients were advised that: (i) they must submit a complete claim application (including all required documents) by December 31, 2019 or they risk losing the opportunity to participate in the Claims Program; (ii) they should submit the necessary documents by December 1, 2019 to ensure that they are able to timely address any document deficiencies; (iii) their signed and notarized offer letter should be submitted by April 1, 2020 because, if it is submitted after that date, there is significant risk that it will not be reviewed and approved in time to schedule and complete an ECR prior to the end of the Claims Program; and

43

(iv) if the ECR is not completed by April 30, 2020, they may still have it performed free of charge, but compensation will not be provided.

5.       Post-Closing Processing of Vehicles

As discussed in prior reports, once a Buyback or Trade-In appointment is completed, arrangements are made by Volkswagen to transfer the vehicle to one of several secure storage facilities throughout the country, at which point each vehicle is inspected to determine if it should be destroyed or undergo an AEM, if one is available, and be offered for sale in accordance with an approved resale plan.  Volkswagen is required to track each vehicle from closing to either destruction, or modification and resale, in order to report these figures to the DOJ, EPA, and CARB on a quarterly basis.  The most recent data supplied by Volkswagen to the DOJ, EPA, and CARB reflects that, as of September 30, 2018, Volkswagen housed approximately 15,300 Eligible Vehicles at the storage facilities.

6.       Escrow Account Funding

As provided in Section 13 of the 3.0 Liter Class Action Settlement Agreement, Volkswagen was required to fund an Escrow Account to be used to compensate consumers who submit valid claims.  As previously reported, on May 24, 2017, Volkswagen deposited into the Escrow Account $252,000,000, which represented the initial Funding Amount required under the 3.0 Liter Class Action Settlement Agreement.  If the Escrow Account were to reach a Minimum Balance of $168,000,000, Volkswagen was required to replenish the account to bring it back to the Funding Amount.  The 3.0 Liter Class Action Settlement Agreement further provides for downward adjustments to both the Funding Amount and Minimum Balance if the company received an ECR for Generation 2.2 SUV vehicles by October 23, 2017.  As a result of achieving that milestone, the 3.0 Liter Class Action Settlement Agreement permitted the Funding Amount to be reduced to $150,000,000 and, following that reduction, further permitted it to be adjusted every six months thereafter to 25% percent of the unspent amount of the maximum

44

compensation then due to all Class Members.  Any adjustment to the Funding Amount results in a corresponding adjustment to the Minimum Balance.

Consistent with the requirements of the 3.0 Liter Class Action Settlement Agreement, the following Escrow Account adjustments were made: (i) in November 2017, Volkswagen initiated the process to reduce the Funding Amount to $150,000,000 as a result of Volkswagen receiving an ECR for Generation 2.2 SUV vehicles by October 23, 2017; (ii) in May 2018, the Funding Amount was reduced to $89,608,333 (representing 25% percent of the unspent amount of the maximum compensation then due to all Class Members); and (iii) in November 2018, the Funding Amount was reduced to $52,180,764 (also representing 25% percent of the unspent amount of the maximum compensation then due to all Class Members).  Based on a review of Volkswagen's monthly Escrow Account statements, the Claims Supervisor has confirmed that the company has complied with the escrow requirements set forth in Section 13 of the 3.0 Liter Class Action Settlement Agreement, and has maintained an Escrow Account balance that meets or exceeds the applicable Funding Amount.

B. Customer Service

Consumer call and chat volume substantially declined over the quarterly reporting period. Between September 5, 2018 and December 4, 2018, call volume decreased 49.1% compared to the prior quarter, from an average of 184 calls per weekday to an average of 93 calls per weekday.  The average abandonment rate decreased from 14.5% last quarter to 1.9% this quarter, and the average speed to answer improved from over three and a half minutes last quarter to under thirty seconds this quarter.  The following chart depicts the daily Hotline call volume and related data from November 5, 2018 to December 4, 2018.[38]

---

[38] ASA is the abbreviation for average speed of answer and AHT represents average handle time.

**Chart 3-5**

**3.0 Call Stats (11/05/18 – 12/04/18)**



Chat volume declined from over 100 chats per weekday the prior quarter to an average of 60 chats per weekday this quarter, and the abandonment rate was 14.0%.

The Claims Supervisor reviewed a sample of 582 recorded calls and 1,044 chats that occurred between September 1, 2018 and November 30, 2018, and determined that Volkswagen remained effective in delivering customer service. The overall success rate for the sample of calls analyzed was 99.7% -- the same as the prior quarterly reporting period. The overall success rate for the sample of chats analyzed was 99.5% -- slightly higher than the prior quarterly reporting period. The primary reason that the limited number of calls and chats were deemed unsuccessful was that agents failed to properly verify the identity of the consumer -- although that issue was less prevalent this quarter following measures the company undertook to increase compliance with its identity verification protocols, including holding training sessions.

Volkswagen's Resolution Team remained effective in resolving more complex consumer issues. From September 6, 2018 to December 5, 2018, the Resolution Team received 145

inquiries (nearly all involving payment issues) and resolved 152 consumer inquiries including some from prior reporting periods.

Finally, complaint volume remained relatively low and decreased from the prior quarterly reporting period.  The limited complaints received related to dissatisfaction with vehicle performance following the completion of AEMs,[39] as well as the claims process in general, including documentation requirements and obtaining payments.

## IV.   Conclusion

During this quarterly reporting period, Volkswagen continued to administer the Claims Program consistent with the terms of the 3.0 Liter Resolution Agreements.  As of December 9, 2018, the company had completed 13,720 Buybacks, 44,575 AEMs for consumers, 1,924 Trade-Ins and paid $970,724,157.41 in connection with eligible claims to, or on behalf of, eligible consumers.  Volkswagen also satisfied the requirements in the 3.0 Liter DOJ Consent Decree that it remove from commerce or modify at least 85% of all Generation One and Generation Two Subject Vehicles and at least 85% of all Generation One and Generation Two Subject Vehicles registered in California.

Volkswagen also continued to make progress with non-standard claims.  The company processed all branded title claims that were previously placed on hold, as well as additional claims for consumers whose vehicles were manufactured for sale in the United States but registered in Canada, and for military personnel stationed overseas with their vehicles.  In addition, the company maintained an adequate level of customer support for consumers requiring assistance.

---

[39] The Claims Supervisor is aware of 100 such complaints made since the inception of the Claims Program, which amounts to approximately 0.2% of all completed ECRs and REMs.  Volkswagen has advised that specially trained customer care representatives assist consumers in determining whether perceived vehicle changes are attributable to an AEM, including evaluation by a dealership, when necessary.

Consistent with the requirements of the 3.0 Liter Resolution Agreements, the Claims Supervisor will continue to evaluate and report on Volkswagen's progress with and adherence to the terms of the 3.0 Liter Resolution Agreements as the Claims Program progresses.

Sincerely,

**Ankura Consulting Group, LLC**


Terrence S. Brody
Senior Managing Director

Edward J. Bell
Senior Managing Director

Gary Wingo
Senior Managing Director

Submitted:  December 13, 2018