1  JOHN H. CIGAVIC III (SBN: 231806)
   (basiclegalservices.me@gmail.com)
2  **(ATTORNEY – BASIC LEGAL SERVICES)**
   201 Mission Street, Suite 1200
3  San Francisco, CA 94105
   Tel: (415) 859-5065
4  Fax: (415) 432-4301
   Attorney for Claimant Farchione Motors, Inc.
5

6

7

8              **UNITED STATES DISTRICT COURT**
9         **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
              **(SAN FRANCISCO DIVISION)**
10

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | **CASE NO.: 15-MD-2672 CRB** |
| | **NOTICE OF MOTION & MOTION OF CLAIMANT FARCHIONE MOTORS, INC. TO ENFORCE 2.0L SETTLEMENT AGREEMENT & REQUEST FOR ORDER DECLARING CLAIMANT'S CLAIMS ARE "APPROVED"; MEMORANDUM OF POINTS & AUTHORITIES** |
| This Document Relates to: | |
| ALL CONSUMER AND RESELLER ACTIONS | Judge: Hon. Charles R. Breyer |
| | Courtroom: 6, 17th Floor |
| | Hearing Date: 25 January 2019 |
| | Time:  10:00 a.m. |

22          COMES NOW CLAIMANT FARCHIONE MOTORS, INC. (ECF 5200) AND

23  FILES AND SERVES ON ALL PARTIES AND THEIR COUNSEL OF RECORD

24  THIS "NOTICE OF MOTION & MOTION OF CLAIMANT FARCHIONE MOTORS,

25  INC TO ENFORCE 2.0L SETTLEMENT AGREEMENT & REQUEST FOR ORDER

26  DECLARING CLAIMANT'S CLAIMS ARE 'APPROVED'" ("Motion") as follows:

27  //

28  //

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

1

**MOTION OF CLAIMANT FARCHIONE MOTORS, INC. TO ENFORCE 2.0L SETTLEMENT
AGREEMENT (IN RE: VOLKSWAGEN "CLEAN DIESEL" LITIGATION – 15-MD-2672)**

P1218.2018.BLS27a

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

### NOTICE OF MOTION & MOTION

TO VOLKSWAGEN GROUP OF AMERICA, INC.; CLASS COUNSEL, THE FEDERAL TRADE COMMISSION OF THE UNITED STATES GOVERNMENT AND THE DEPARTMENT OF JUSTICE OF THE UNITED STATES GOVERNMENT, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on 25 January 2019 at 10:00 a.m., or as soon thereafter as the matter may be heard before the Hon. Charles R. Breyer, Courtroom 6, 17th Floor, in the above titled Court, located at 450 Golden Gate Avenue, Claimant Farchione Motors, Inc. ("Claimant") will and hereby does move this Court for an order Approving Claimant's Claims under the Settlement in the "*In Re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation*, Cause No. 3:15-md-02672, initiated in this Court on December 8, 2015" ("Volkswagen Diesel Action") for full vehicle value buyback and restitution benefits for their 67 "Branded Title" claims and 15 "Clean Title" claims with an insurance history (total 82) because:

Claimant holds title to 67 "Branded Title" claims and 15 "Clean Title" claims with an insurance history (82 total) "Operable"[1] 2.0-liter TDI Volkswagen vehicles as of the date of this Motion and is:

(1)     an "Eligible Owner" pursuant to Settlement Agreement §2.30,

(2)     of an "Eligible Vehicle" pursuant to Settlement Agreement §2.33, and

(3)     is thereby entitled to the monetary benefits of the Settlement Agreement including:

(a) full vehicle value "Buyback" pursuant to Settlement Agreement §2.6 and Section 4 of Exhibit 3 (ECF 1685-3), and

(b) "Owner Restitution" pursuant to Settlement Agreement §2.52 and Section 5 of Exhibit 3 (ECF 1685-3); and therefore

(4)     Claimant's Claims should be "Approved".

---

[1] "Operable" is defined in the Settlement Agreement at §2.50 as "a vehicle that can be driven under its own 2.0-liter TDI engine power".

P1218.2018.BLS27a

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

1    This Motion will be based upon this Notice of Motion and Motion; the attached

2    Memorandum of Points and Authorities In Support; [Proposed] Order Granting

3    Claimant's Motion; Declaration of John H. Cigavic III, Esq. in Support of Motion;

4    Declaration of Thomas Farchione in Support of Motion; all of the papers on file in this

5    action; and such further evidence as is presented to the Court at the time of the hearing.

6

7                                         **JOHN H. CIGAVIC III, ESQ.**
                                          **(ATTORNEY – BASIC LEGAL SERVICES)**
8        Dated:       19 December 2018

9                                         By: _____ /s/John H. Cigavic III _____

10                                            JOHN H. CIGAVIC III, ESQ.
                                              Attorney for Claimant Farchione Motors, Inc.
11

12

13

14    //

15    //

16    //

17    //

18    //

19    //

20    //

21    //

22    //

23    //

24    //

25    //

26    //

27    //

28    //

P1218.2018.BLS27a

**JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)**
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

## TABLE OF CONTENTS

I.   **Introduction & Requested Relief**…………………………………………………7

   A.   Introduction ……………………………………………………………7

   B.   This Motion Follows Claimant's Attempts to Exhaust all Settlement Agreement Remedies in good faith in 2018 ……………………………8

   C.   Requested Relief: Order declaring Claimant should be paid Settlement Agreement benefits and that its Branded Title Claims are "Approved" …..9

II.  **Procedural Posture**……………………………………………………………..10

   A.   Volkswagen's TDI Diesel Engine "Cheater" Fraud & Punishment

   B.   The Multi-District Class Action Litigation Settlement………………...10

      1.   *Volkswagen settles the class action lawsuits* ………………….…10

      2.   *The Settlement Agreement states the purpose is full and complete compensation for Eligible Owners* ………………………………..12

      3.   *Consent Orders among Volkswagen and the FTC and EPA support Claimant's Claims being "Approved"* …………………………13

III. **Brief Statement of Material Facts** ……………………………………...…13

   A.   Volkswagen Class Action Settlement Agreement provisions relevant to this Motion - 2.0L Settlement Agreement provisions …………………………13

   B.   Independent Claims Supervisors Reports ……………………………...…16

      1.   *The February 26, 2018 Report arbitrarily changes dates* ………..16

      2.   *The November 27, 2018 Report confirms bottlenecking of claims*..18

   C.   Facts Supporting Claimant's Claims Should be Approved ……………18

      1.   *Claimant is a member of the "Class" (§2.16) and an "Eligible Owner" (§2.30) of "Eligible Vehicles" (§2.33) and Appeared in this Action in August 2018* ………………………………………………18

      2.   *Claimant received full buyback and restitution Settlement Benefits for 51 vehicles with Branded Title until May 2017 and now has*

P1218.2018.BLS27a

67 claims for vehicles with Branded Titles and 15 Clean Title claims

with Insurance history …………………………………………………19

3.      Claimant timely submitted all relevant claims & attempted to

exhaust all available remedies under the Settlement Agreement

before bringing this Motion ………………………………………20

IV.     **Law & Argument** ……………………………………………………20

A.      The Court has ample jurisdiction to decide this Motion …………………20

B.      The Settlement Agreement is a contract governed by California law

rules of contract interpretation: the Plain Meaning of the Settlement

Agreement Supports Claimant's Claims being "Approved" …………..22

1.      Contract interpretation law in Federal Actions …………………22

2.      Argument: California contract law and the Plain Meaning of the

Settlement Agreement support Claimant's Claims being "Approved"

…………………………………………………………………23

C.      Volkswagen's Course of Performance Supports the Plain Meaning of the

Settlement Agreement and Supports Claimant's Claims being "Approved"

………………………………………………………………………25

1.      Course of performance under California law ……………………25

2.      Argument: VW's Course of Performance supports Claimant's

Claims being "Approved" …………………………………...…26

D.      Promissory estoppel supports Claimant's Claims being "Approved" ……27

E.      Specific performance supports Claimant's Claims being "Approved" …..27

**Conclusion** ……………………………………………………………………29

//

//

//

//

//

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

P1218.2018.BLS27a

## TABLE OF AUTHORITIES

*Statutes*

28 USC §1367 ………………………………………………………………………20

*Federal Cases*

*In re Int'l Air Transp. Surcharge Antitrust Litig.*, 2011 US Dist LEXIS 148547 (NDCA 2011) ……………………………………………………………………………8, 21

Dacanay v. Mendoza, 573 F2d 1075 (9th Cir. 1978) …………………………………20

Montgomery v. Aetna Plywood, Inc., 231 F3d 399 (7th Cir. 2000) ……………………20

Myers v. Richland County, 429 F3d 740 (8th Cir. 2005) ………………………………20

TNT Marketing, Inc. v. Agresti, 796 F2d 276 (9th Cir. 1986) ………………11, 21, 28

Skilstaf, Inc. v. CVS Caremark Corp., 669 F3d 1005 (9th Cir. 2012) ………………22, 23

Stroman v. West Coast Grocery Co., 884 F2d 458 (9th Cir. 1989) ……………………22

Lennar Mare Island v. Steadfast Ins. Co., 176 F. Supp. 3d 949 (EDCA 2016) ……25-27

Adams v. Johns-Manville Corp., 876 F2d 702 (9th Cir. 1989) ………………………23,28

MCA Records, Inc. v. Charly Records, 865 F. Supp. 649, 655 (CDCA 1994) ……27, 28

*California State Cases*

Westlake Community Hosp. v. Superior Court, 17 Cal. 3d 465 (1976) …………………9

Johnson v. Hydraulic Research & Mfg. Co., 70 Cal. App. 3d 675 (1977) ………………9

Weddington Productions, Inc. v. Flick, 60 Cal. App. 4th 793 (1998) …………………22

Citizens for Goleta Valley v. HT Santa Barbara, 117 Cal. App. 4th 1073 (2004) ……22

Vaillette v. Fireman's Fund Ins. Co., 18 Cal. App. 4th 680 (1993) ……………22,24, 27

Epic Communications, Inc. v. Richwave Technology, Inc., 237 Cal. App. 4th 1342 (2015) ………………………………………………………………………………25

In re Tobacco Cases I, 186 Cal. App. 4th 42 (2010)…………………………………25

Smith v. City and County of San Francisco, 225 Cal. App. 3d 38 (1990)………………28

*Secondary Sources*

*O'Connell & Stevenson, Federal Civil Procedure Before Trial,*

*2018, §§15:140, et. seq…………………………………………………………..passim*

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

**MOTION OF CLAIMANT FARCHIONE MOTORS, INC. TO ENFORCE 2.0L SETTLEMENT
AGREEMENT (IN RE: VOLKSWAGEN "CLEAN DIESEL" LITIGATION – 15-MD-2672)**

P1218.2018.BLS27a

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

## MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT

**I.     Introduction & Requested Relief**

    A.     <u>Introduction</u>

This "Notice of Motion & Motion of Claimant Farchione Motors, Inc. to Enforce 2.0L Settlement Agreement & Request for Order Declaring Claimant's Claims are 'Approved'" ("Motion") is brought by Farchione Motors, Inc. ("Claimant") who is a non-Volkswagen "Dealer"[2] who timely submitted "Claims"[3] to Volkswagen Group of America, Inc. ("VWGoA") under the Settlement Agreement in the MultiDistrict Class Action Litigation styled "*In Re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation*, Cause No. 3:15-md-02672, initiated in this Court on December 8, 2015" ("Volkswagen Diesel Action") for otherwise eligible vehicles that have "Assembled, Dismantled, Flood, Junk, Rebuilt, Reconstructed, or Salvage" Title (hereinafter "Branded Title") and certain "clean titles" with an insurance history. *Infra* Section III C.

**VWGoA initially paid these claims 100% for five months in 2017 including 51 "Branded Title" claims of Claimant** but then abruptly stopped, delayed their decision making process for over a year, bottlenecked the claims before denying them and still continues to refuse to pay these claims despite the claims being (a) timely submitted, (b) timely appealed to the Claims Review Committee ("CRC"), and (c) covered by the Settlement Agreement's Plain Meaning and the Course of Performance of VWGoA during this settlement process. *Infra*; ECF 5585 at p. 39-40.  The CRC has still not formally approved or denied 39 claims of Claimant, of which 24 have Branded Title. Decl. of Farchione ¶2 (Ex1).

This Motion deals with the 2.0-Liter Settlement Agreement only.   ECF 1685.

*//*

---

2 "Consumer Class Action Settlement Agreement and Release" for 2.0-Liter Volkswagen and Audi branded turbocharged direct injection ("TDI") diesel vehicles ("Settlement Agreement") at §2.16.  ECF 1685.
3 Settlement Agreement §2.9.

**MOTION OF CLAIMANT FARCHIONE MOTORS, INC. TO ENFORCE 2.0L SETTLEMENT AGREEMENT (IN RE: VOLKSWAGEN "CLEAN DIESEL" LITIGATION – 15-MD-2672)**

P1218.2018.BLS27a

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

B.     <u>This Motion Follows Claimant's Attempts to Exhaust all Settlement Agreement Remedies in good faith in 2018</u>

This Motion is timely and proper following this District Court's analysis of the Federal Rules of Civil Procedure in *In re Int'l Air Transp. Surcharge Antitrust Litig.*, 2011 US Dist LEXIS 148547 (NDCA 2011) (Motion brought by "Claimant" Carnival Cruise Lines for settlement benefits before the end of the claim period timely: Court reviews settlement agreement contract interpretation <u>de novo</u> as a matter of law); *see also* Settlement Agreement §§ 5.5, 16.7 & 16.8.

The Settlement Agreement requires Claimant to participate in the Claims process outlined in the Settlement Agreement, including submitting all claims by 1 September 2018 and, if the Claim is not accepted, appealing to the CRC, whose decisions are "final".   Settlement Agreement §§2.14 & 5.3.   The Settlement Agreement also states that the "Claim Period" runs through 30 December 2018, when Claimants must "obtain their chosen remedy".   *Id.* at §2.11.

However, as noted above, VWGoA (and the CRC) have bottlenecked many of Claimant's claims and not timely decided them.   Decl. of Farchione ¶8; ECF 5585:41. Moreover, likely due to a backlog in handling and processing claims of all types, VWGoA and Class Counsel appear to have extended the deadline for participants to appeal to the CRC to 13 January 2019.   Decl. of Cigavic ¶2 (Ex1).   In response to inquiry, Class Counsel has assured Claimant's counsel that these extensions / untimely decisions will not lead to wholesale claims denials pursuant to Settlement Agreement §§2.11 and 2.14 and that "Approved" claims will be paid even after 30 December 2018[4]. Decl. of Cigavic ¶2 (Ex2) ("If your clients have pending appeals…they will not lose their rights to obtain a remedy if their appeals are granted after December 30").

//

---

[4] This would be in keeping with this Court's recognition that "Volkswagen's response with respect to the 2.0-liter vehicles…evidences that it has not attempted, *and will not attempt*, to discourage Class Member participation in an effort to maximize unclaimed funds".  ECF 3229 at 42:17-20 (Approval of 3.0-liter settlement) (emphasis supplied).

P1218.2018.BLS27a

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

Claimant has attempted to fully and completely participate in the settlement process as required by the Settlement Agreement at Section 5 and has attempted to exhaust the remedies available under the Settlement Agreement in 2018 before coming to this Court for relief.  Decl. of Farchione ¶¶15-17, 20-21; Westlake Community Hosp. v. Superior Court, 17 Cal. 3d 465, 475-477 (1976) (requiring exhaustion in claims involving private Associations); Johnson v. Hydraulic Research & Mfg. Co., 70 Cal. App. 3d 675, 679-680 (1977) (requiring exhaustion in collective bargaining claims).  Claimant timely submitted its claims by 1 September 2018 and appealed any denials: Claimant only very recently received some (43) CRC denials and now brings this Motion to preserve its rights to the maximum extent possible.  Decl. of Farchione ¶¶15-17, 20-21

C.    Requested Relief: Order declaring Claimant should be paid Settlement Agreement benefits and that its Branded Title Claims are Approved

Claimant holds title to 67 "Branded Title" claims and 15 "Clean Title" claims with an insurance history (82 total) "Operable"[5] 2.0-liter TDI Volkswagen vehicles with Branded Title as of the date of this Motion ("Claimant's Claims") is:

(1)    an "Eligible Owner" pursuant to Settlement Agreement §2.30,

(2)    of an "Eligible Vehicle" pursuant to Settlement Agreement §2.33, and

(3)    is thereby entitled to the monetary benefits of the Settlement Agreement including:

(a) full vehicle value "Buyback" pursuant to Settlement Agreement §2.6 and Section 4 of Exhibit 3 (ECF 1685-3), and

(b) "Owner Restitution" pursuant to Settlement Agreement §2.52 and Section 5 of Exhibit 3 (ECF 1685-3); and

(4)    Claimant's Claims are "Approved".

*Infra* Section IV.

---

[5] "Operable" is defined in the Settlement Agreement at §2.50 as "a vehicle that can be driven under its own 2.0-liter TDI engine power".

**MOTION OF CLAIMANT FARCHIONE MOTORS, INC. TO ENFORCE 2.0L SETTLEMENT AGREEMENT (IN RE: VOLKSWAGEN "CLEAN DIESEL" LITIGATION – 15-MD-2672)**

P1218.2018.BLS27a

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

Alternatively, Claimant seeks an Order that VWGoA is estopped to deny payment of Claimant's Claims on promissory estoppel grounds following VWGoA's course of performance for many months in 2017, where VWGoA paid Branded Title claims without question, thereby generating justifiable reliance on the part of Claimant (who had purchased multiple otherwise eligible vehicles with Branded Title).  Decl. of Farchione ¶¶7, 12 *infra* Section IV D.

Alternatively, Claimant seeks an Order that VWGoA specifically perform the Settlement Agreement and Approve and pay Claimant's Claims.  *Infra* Section IV E.

Claimant comes to this Court as the only venue Claimant can present these arguments in support of its claims and to seek justice. Settlement Agreement §§5.3, 16.7, 16.8 & ECF 2102 at 48:17-19 (¶14).

## II.    Procedural Posture

### A.    Volkswagen's TDI Diesel Engine "Cheater" Fraud & Punishment

In the fall of 2015, VWGoA "publically admitted it had secretly and deliberately installed a defeat device – software designed to cheat emissions tests and deceive federal and state regulators – in nearly 500,000 Volkswagen-and Audi branded TDI diesel vehicles sold to American consumers".  ECF 2102 at 1:13-16.  Significant litigation followed leading to this Volkswagen Diesel Action.  *Id.*

Since the time of that announcement, VWGoA settled both 2.0-liter and 3.0-liter class action claims and agreed to pay between $11.233 and $14.033 billion in civil settlements, $4.9 billion for environmental remediation and to promote zero-emissions technology, and was ordered to pay "substantial criminal penalties" on the order of $4.3 billion and has been placed on "probation".  ECF 3229 at 15-25.

### B.    The Multi-District Class Action Litigation Settlement

#### 1.    *Volkswagen settles the class action lawsuits*

Following the disclosures by VWGoA, and the multiple lawsuits that followed, culminating in this MDL, the Class, government and VWGoA defendants quickly settled

**MOTION OF CLAIMANT FARCHIONE MOTORS, INC. TO ENFORCE 2.0L SETTLEMENT AGREEMENT (IN RE: VOLKSWAGEN "CLEAN DIESEL" LITIGATION – 15-MD-2672)**

P1218.2018.BLS27a

the 2.0L lawsuits and the settlement was approved by the Honorable Judge Breyer on 26 July 2016.  ECF 2102.

The Court expressed that the "priority was to get the polluting cars off the road as soon as possible" and that, in order to effectuate this priority, "the need to efficiently process their repurchase is paramount".  ECF 2102 (18:13-14 & 31:11-12).  Claimant here has aided this process substantially and has 82 offending VWGoA TDI vehicles ready and available for repurchase by VWGoA (which will keep those vehicles out of the stream of commerce and off the roads forever).  Decl. of Farchione ¶2 (Ex1).

To further this priority, the Court expressly noted that the "settlement presumes all vehicles are in the same good condition" in order to "ensure the efficient distribution of benefits".  ECF 2102 at 33:20-22.

Finally, to achieve the above, the Court retained jurisdiction over legal actions or motions related to this settlement.  *Id.* at 48:17-19 (¶14) and Settlement Agreement §5.5 ("The Court retains the ongoing and exclusive jurisdiction and independent case management authority, as MDL Transferee Judge and under Federal Rule of Civil Procedure 23, regarding the general operation of the Claims Program and those appointed to implement and oversee it") and §9.16 ("The Court shall retain exclusive and continuing jurisdiction over all Parties, the Action, and this Class Action Agreement to resolve any dispute that may arise…including any dispute regarding validity, performance, interpretation, administration, enforcement….of the Class Action Agreement and no Party shall oppose the reopening and reinstatement of the Action on the MDL Court's active docket for the purposes of effecting this Section"); TNT Marketing, Inc. v. Agresti, 796 F.2d 276, 278 (9th Cir. 1986) ("…the court normally exercises its enforcement power [over a settlement agreement] in response to a motion to enforce the agreement").

//

//

//

**MOTION OF CLAIMANT FARCHIONE MOTORS, INC. TO ENFORCE 2.0L SETTLEMENT AGREEMENT (IN RE: VOLKSWAGEN "CLEAN DIESEL" LITIGATION – 15-MD-2672)**

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

P1218.2018.BLS27a

2.    *The Settlement Agreement states the purpose is full and complete compensation for Eligible Owners*

The 2.0L Diesel vehicles and Settlement Agreement is the focus this Motion.  ECF 1685 (defined in footnote 1 above as "Settlement Agreement").

The Settlement Agreement expressly states: "The ultimate goal of this agreement is to compensate owners …for any harm they suffered as a result of emissions issues and to ensure that Volkwagen's 2.0-liter TDI vehicles do not generate excess NOx emissions".  ECF 1685:3:20-22.

The "Executive Summary" (Decl. of Cigavic ¶2 (Ex3)) goes further and explains who is eligible:

The goal of the Volkswagen Class Settlement Program is to compensate everyone who owned or leased a Volkswagen or Audi 2.0-liter TDI vehicles ("Eligible Vehicle") on September 18, 2015 (the date the emissions allegations became public) *or who now own an Eligible Vehicle* (emphasis supplied).  *Id.*

Accordingly, VWGoA agreed to a "Funding pool … as on an assumed 100% Buyback of all purchased Eligible Vehicles…."  ECF 1685 (§2.42) and stipulated to a Judgment for $10,033,000,000.00 for that purpose.  ECF 2104:13-4-13.

Moreover, the Executive Summary expressly recognizes that "Cars sometimes change hands, so Class Members are grouped into three different categories: Eligible Owners, Eligible Sellers, and Eligible Lessees".  Decl. of Cigavic ¶2 (Ex3).

Moreover, the possibility of post opt-out date "totaling" is expressly recognized at ECF 1606-1 ¶5c, and entitles the former owner to partial restitution benefits only and not vehicle value, meaning the current Eligible Owner is entitled to the full vehicle value buyback, and also restitution if that former owner does not make a claim: all as initially recognized by VWGoA. *Id.*; Settlement Agreement §4.1; *infra* Section IV.

//

//

//

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

P1218.2018.BLS27a

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

3.      *Consent Orders among Volkswagen and the FTC and EPA support Claimant's Claims being "Approved"*

VWGoA also settled with the United States (on behalf of the EPA) and the Federal Trade Commission and memorialized these agreements in Consent Orders that were approved by the Court on 25 October 2016.  ECF 2103 (DOJ) and 2104 (FTC).  The Court expressly recognized that the Consent Orders and Settlement Agreement were all "inextricably tied to one another".  ECF 2102 at 23:13-15 & 3229 at 27:4-5.

The DOJ agreement on behalf of the EPA explains how the buyback of offending vehicles is critical to the success of the intertwined agreements:

> Offering buyback or lease termination further ensures the subject vehicles will be removed from the roads.  Indeed this mechanism offers an immediate, concrete solution that addresses the subject vehicles.
>
> ….
>
> That said, <u>requiring Volkswagen to purchase the subject vehicles is critical to the success of the implementation of the buyback program</u>. **Without an offer of monetary compensation in exchange for the return of their vehicles consumers would have little incentive to participate in a buyback, thus thwarting the attempts to remove the vehicles and reduced the excess emissions**. ECF 2103 at 10:2-4 & 13-18 (emphasis supplied).
>
> The purpose of this Buyback….Recall Program….is to remove 2.0 Liter Subject Vehicles that emit nitrogen oxides … in excess of applicable standards from the roads and highways of the United States pursuant to EPA's and CARB's respective authorities under the Clean Air Act ("CAA") and the California Health and Safety Code ("CHSC").  **In order to achieve this CAA and CHSC remedy, EPA/CARB require Settling Defendants' to offer the Buyback…for 100% of the non-compliant vehicles under terms described herein**.  ECF 2103-1 (§I).

If Claimant's Claims are not approved and the vehicles are not bought back by VWGoA, these Consent Orders will be thwarted.

## III.    **Brief Statement of Material Facts**

A.      <u>VWGoA Class Action Settlement Agreement provisions relevant to this Motion - 2.0L Settlement Agreement provisions</u>

The 2.0L Settlement Agreement defines "Class", in relevant part, as:

[A] nationwide class of all persons (including individuals and entities) who, on September 18, 2015, were registered owners or lessees of, or, in the case of Non-

**MOTION OF CLAIMANT FARCHIONE MOTORS, INC. TO ENFORCE 2.0L SETTLEMENT AGREEMENT (IN RE: VOLKSWAGEN "CLEAN DIESEL" LITIGATION – 15-MD-2672)**

P1218.2018.BLS27a

Volkswagen Dealers, held title to or held by bill of sale dated on or before September 18, 2015, a Volkswagen or Audi 2.0-TDI vehicle in the United States or its territories (an "Eligible Vehicle," defined more fully in Section 2.33), *or who, between September 18, 2015, and the end of the Claim Period, become a registered owner of, or, in the case of Non-Volkswagen Dealers, hold title to or hold by bill of sale dated after September 18, 2015, but before the end of the Claims Period*, an Eligible Vehicle in the United States or its territories.

*See* 2.0L Settlement Agreement, § 2.16 (emphasis supplied).

Specifically *excluded* from the definition of Class in the 2.0L Settlement Agreement are certain entities and individuals, including:

Owners whose Volkswagen or Audi 2.0-liter TDI vehicle (i) could not be driven under the power of its own 2.0-liter TDI engine on June 28, 2016, or (ii) had a Branded Title of Assembled, Dismantled, Flood, Junk, Rebuilt, Reconstructed, or Salvage on September 18, 2015, **and** was acquired from a junkyard or salvage yard after September 18, 2015[.] *Id.*, § 2.16(c) (emphasis added).

"Class Member" means a member of the "Class." *Id.* (§2.20).

"Eligible Owner" is defined in the 2.0L Settlement Agreement, in relevant part, as:

[T]he registered owner or owners of an Eligible Vehicle on June 28, 2016, or the registered owner or owners who acquire an Eligible Vehicle after June 28, 2016, but before the end of the Claim Period[.]…A Non-Volkswagen Dealer who, on or after June 28, 2016, holds title to or holds by bill of sale an Eligible Vehicle…shall qualify as an Eligible Owner regardless of whether that Non-Volkswagen Dealer is registered as the owner of the Eligible Vehicle, provided that the Non-Volkswagen Dealer otherwise meets the definition of an Eligible Owner.  *Id.* (§2.30).

The definition of "Eligible Vehicle" states:

"Eligible Vehicle" means Model Year 2009 through 2015 Volkswagen and Audi light-duty vehicles equipped with 2.0-liter TDI engines that (1) are covered, or purported to be covered, by the EPA Test Groups in the table immediately below this paragraph; (2) are, at any point during the period September 18, 2015 to June 28, 2016, registered with a state Department of Motor Vehicles or equivalent agency or owned by a Non-Volkswagen Dealer in the United States or its territories that (a) holds title to the vehicle or (b) holds the vehicle by bill of sale; (3) for an Eligible Owner, are currently Operable or cease to be Operable only after the Opt-Out Deadline; and (4) have not been modified pursuant to an Approved Emissions Modification. Eligible Vehicle also excludes any Volkswagen or Audi vehicle that was never sold in the United States or its territories.

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

| Model Year | EPA Test Group | Make and Model(s) |
|---|---|---|
| 2009 | 9VWXV02.035N | VW Jetta, VW Jetta SportWagen |
| 2009 | 9VWXV02.0U5N | VW Jetta, VW Jetta SportWagen |
| 2010 | AVWXV02.0U5N | VW Golf, VW Jetta, VW Jetta SportWagen, Audi A3 |
| 2011 | BVWXV02.0U5N | VW Golf, VW Jetta, VW Jetta SportWagen, Audi A3 |
| 2012 | CVWXV02.0U5N | VW Golf, VW Jetta, VW Jetta SportWagen, Audi A3 |
| 2012 | CVWXV02.0U4S | VW Passat |
| 2013 | DVWXV02.0U5N | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta SportWagen, Audi A3 |
| 2013 | DVWXV02.0U4S | VW Passat |
| 2014 | EVWXV02.0U5N | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta SportWagen |
| 2014 | EVWXV02.0U4S | VW Passat |
| 2015 | FVGAV02.0VAL | VW Beetle, VW Beetle Convertible, VW Golf, VW Golf SportWagen, VW Jetta, VW Passat, Audi A3 |

*Id.* (§2.33).

The 2.0L Settlement Agreement provides the following consumer compensation and remedies to Eligible Owners of Eligible Vehicles:

> Eligible Owners . . . who do not opt out of the Class have two different options under the Class Action Agreement: (1) a Buyback or Lease Termination Option; or (2) subject to regulatory approvals, an option to have their emissions systems modified free of charge by Volkswagen to reduce NOx emissions (the Approved Emissions Modification Option). Both options include a Restitution Payment, which will be the same regardless of which option the Class Member selects. In other words, Eligible Owners . . . may sell or surrender their Eligible Vehicle to Volkswagen and also receive a Restitution Payment, or they may have their Eligible Vehicle modified for free by Volkswagen and receive the same Restitution Payment. *Id.* (§4.1).

The 2.0L Settlement Agreement requires VWGoA to notify the Claimant within 10 business days of submission of the Claim whether the Claim is complete. ECF 1685-3 (p. 10); *see also* ECF 2104 at 33:6-20. Within 10 business days of notification that an application is complete, VWGoA is to notify the Claimant whether the Claimant is eligible for the elected remedy and send the Claimant a formal offer. *Id.*

VWGoA further agreed to make all reasonable efforts to ensure the timely and expeditious administration and implementation of the 2.0L Settlement Agreement and to minimize the costs and expenses incurred therein. ECF 1685 (§13.3).

By entering into the 2.0L Settlement Agreement, VW and its counsel agreed to act in good faith and use their best efforts to (i) effect the implementation of the 2.0L

P1218.2018.BLS27a

Settlement Agreement and (ii) advance the 2.0L Settlement Claims Program. *Id.* (§13.2). VWGoA met none of these requirements in handling Claimant's Claims.  *Supra* Section I A.  In fact, VWGoA admittedly bottlenecked all Branded Title claims for over one year. ECF 5559 at p. 39-41.

Other relevant provisions are:

"This Class Action Agreement will be binding upon, and inure to the benefit of, the successors, transferees, and assigns of Volkswagen, the Class Representatives, and Class Members".  ECF 1685 (§16.1).

"This Class Action Agreement and any amendments thereto, and any dispute arising out of or related to this Class Action Agreement, shall be governed by and interpreted according to the Federal Rules of Civil Procedure and applicable jurisprudence relating thereto, and the laws of the State of California notwithstanding its conflict of law provisions".  *Id.* (§16.7).

"Any disagreement and/or action to enforce this Class Action Agreement shall be commenced and maintained only in the United States District Court for the Northern District of California".  *Id.* (§16.8).

…All Parties agree that this Class Action Agreement was drafted by counsel for the Parties during extensive arm's-length negotiations.  No parol or other evidence may be offered to explain, construe, contradict, or clarify its terms, the intent of the Parties or their counsel, or the circumstances under which this Class Action Agreement was made or executed. *Id.* (§16.12)

B.   Independent Claims Supervisors Reports

1.   *The February 26, 2018 Report arbitrarily changes dates*

Potentially relevant to this Motion may be the "Independent Claims Supervisors Report" released February 26, 2018 ("February Report").  ECF4835.

The February Report is summarized here in relevant part with regard to Branded Title Claims, from pages 38-41: (i) vehicles with salvage title as of September 18, 2015 are not eligible for benefits, (ii) owners whose vehicles were acquired "prior to September 18, 2015, with a nonbranded or salvage rebuilt title may be eligible for both

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

**MOTION OF CLAIMANT FARCHIONE MOTORS, INC. TO ENFORCE 2.0L SETTLEMENT AGREEMENT (IN RE: VOLKSWAGEN "CLEAN DIESEL" LITIGATION – 15-MD-2672)**

P1218.2018.BLS27a

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

Vehicle Value and Owner Restitution…", (iii) "Owners of used vehicles that were purchased with a branded title and had a "salvage rebuilt" or equivalent title as of February 26, 2018, are potentially eligible for Vehicle Value if all other eligibility requirements are met", and then randomly:

> (iv) Owners of used vehicles that were purchased with a salvage title and continue to have a salvage title on or after February 26, 2018, are ineligible for compensation. Once a vehicle has been deemed ineligible to participate in the Claims Program due to the existence of a salvage title, no new claims submitted in connection with the VIN will be accepted for processing.

The report goes on to "recognize that some claims relating to vehicles with branded titles involve unique factual circumstances" and so "…the Claims Supervisor will continue to work collaboratively with the CRC to address such claims requiring more detailed analysis, so that determinations may be reached in conformity with the letter and spirit of the Class Action Settlement Agreement" and notes finally that "As with all eligibility determinations, consumers may file an appeal from Volkswagen's claims determinations with the CRC". *Id.*

As noted below, Claimant continued to work with VWGoA and the CRC, cooperated, and timely submitted its claims to both VWGoA and the CRC, as required by the Settlement Agreement at Section 5. *Id.* Claimant ultimately received CRC decisions on 43 of its claims as recently as 24; some of these denials state the rationale for denial as follows:

> Your vehicle is ineligible because it is a salvage branded (total loss) vehicle and is therefore not operable or cannot be legally registered and/or driven[6]. The stated goal of the 2.0-Liter Class Action Settlement is to "compensate owners or leasees of Eligible Vehicles for any harm they suffered as a result of the emission issues and to ensure that Volkswagen's 2.0-liter (sic) TDI vehicles do not generate excess NOx emissions." Because your vehicle cannot be legally driven and you are not the owner or lessee who suffered the original harm caused by the vehicle's TDI emissions issues, your claim is not consistent with the goal of the 2.0-Liter

---

[6] This statement is false. *Compare* Decl. of Farchione ¶¶5&6, 26: Claimant's Vehicles "are capable of being driven by the power of their own 2.0L diesel engine".

**MOTION OF CLAIMANT FARCHIONE MOTORS, INC. TO ENFORCE 2.0L SETTLEMENT AGREEMENT (IN RE: VOLKSWAGEN "CLEAN DIESEL" LITIGATION – 15-MD-2672)**

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

Class Action Settlement and is not eligible for compensation[7]. As such, your appeal to the Claims Review Committee is **denied.** Decl. of Farchione ¶2 (Ex3) (especially for example page 11).

For the reasons outlined below at Section IV, this rationale is neither supported by the Plain Meaning of the unambiguous Settlement Agreements nor in keeping with the Parties' Course of Performance in this matter. *Id.* Claimant's Claims should be "Approved" for full vehicle value and restitution.

2.      *The November 27, 2018 Report confirms bottlenecking of claims*

On 27 November 2018, the November Report was filed in the MDL action. ECF 5585. At pages 39-40, VWGoA admits the backlog of Branded Title claims and lists the numbers of total claims with Branded Title (5559) and states that 3228 of such claims have been deemed "ineligible", while 2331 have been deemed "eligible". *Id.* No explanation is provided as to why some Branded Title claims are "eligible" while others are denied. *Id.*

C.      Facts Supporting Claimant's Claims Should be Approved

1.      *Claimant is a member of the "Class" (§2.16) and an "Eligible Owner" (§2.30) of "Eligible Vehicles" (§2.33) and Appeared in this Action in August 2018*

Claimant (Farchione Motors, Inc.) has been in business in Wisconsin as a Non-Volkswagen automobile dealer since 2009. Farchione Decl. at ¶1. Claimant appeared in this action on 17 August 2018. *Id.;* ECF 5200.

Claimant is currently the registered owner of and holder of title to (or by bill of sale) **82** Volkswagen TDI vehicles, broken down as follows: 15 "ineligible" Clean Title vehicles and 67 "ineligible" Branded Title vehicles. *Id.* at ¶2 (Ex1). Claimant's vehicles were all purchased after June 2016, are "operable" by the definition in the Settlement Agreement in that they can be driven with their own 2.0-liter TDI engine, appear in the

---

[7] This statement is totally irrelevant and expressly rejected by the plain words of the Settlement Agreement. *Compare* Decl. of Farchione ¶2(Ex4) (VWGoA purchased back 51 of these Branded Title Vehicles with *infra* Section IV.

P1218.2018.BLS27a

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

applicable EPA test groups identified in the Settlement Agreement §2.33, and have not been modified. *Id.* at ¶6, 7, 28. Volkswagen and the CRC has denied 43 of these claims as of mid-November 2018 and 24 Branded Title claims remain pending with the CRC and 15 Clean Title claims. *Id.* at ¶2 (Ex1) &26.

> 2. *Claimant received full buyback and restitution Settlement Benefits for 51 vehicles with "Branded Title" until May 2017 and now has 67 claims for vehicles with "Branded Title"*

Claimant routinely purchases Volkswagen TDI vehicles at industry auctions and continued to do so after the Settlement in the Volkswagen Diesel Action, purchasing a total of 255 vehicles beginning in August 2016. *Id.* ¶¶6-7. 136 of these vehicles had "Clean title", and the remainder had some form of "Branded Title" (119). *Id.* at 7. None of Claimant's Claims relate to vehicles that had "Branded/Dismantled/Flood/Junk /Rebuilt/Reconstructed or Salvage Title" on 18 September 2015. *Id.* ¶7.

In 2016, Claimant submitted claims to Volkswagen under the Settlement Agreement and 51 claims with some form of "Branded Title" were paid full buyback and restitution by Volkswagen. *Id.* ¶2(Ex4).

Encouraged by Volkswagen's payment of these 51 claims and in justifiable reliance thereon, Claimant submitted for claims another 68 vehicles with "Branded Title". *Id.* ¶¶12-13. All of Claimant's vehicles are "operable" insofar as they can be driven with their own 2.0-liter TDI engine as instructed by VWGoA. *Id.* ¶¶5-6, 26, 28.

In May 2017, Volkswagen inexplicably stopped paying Branded Title claims and revoked pending offer letters, but VW did not formally deny any claims for over twelve months. *Id.* ¶8.

Claimant did not purchase these TDI vehicles to bear the cost of VW's fraud and pollution mess. *Id.* ¶27. If VW does not buyback these vehicles they will remain in the stream of commerce and continue polluting at a rate believed to be in excess of 40 times EPA approved levels. *Id.* ¶¶13-14, 27.

**MOTION OF CLAIMANT FARCHIONE MOTORS, INC. TO ENFORCE 2.0L SETTLEMENT
AGREEMENT (IN RE: VOLKSWAGEN "CLEAN DIESEL" LITIGATION – 15-MD-2672)**

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

3.   *Claimant timely submitted all relevant claims & attempted to
exhaust all available remedies under the Settlement Agreement
before bringing this Motion*

Of Claimant's remaining 82 vehicles, Claimant timely submitted claims to Volkswagen but Volkswagen did not formally deny any of these claims until the spring of 2018.  *Id.* ¶8.  Upon receiving these denials, Claimant appealed to the CRC.  *Id.* ¶15.  As of the date of this Motion, 43 were denied by the CRC by November 2018 and 25 await CRC decisions.  *Id.*  Accordingly, Claimant has attempted in good faith to fully and completely participate in the settlement process as required by the Settlement Agreement at Section 5 and has attempted to exhaust the remedies available under the Settlement Agreement in good faith before coming to this Court for relief.  *Id.* at ¶12.  Claimant timely submitted its claims by 1 September 2018 and appealed any denials.  *Id.*

**IV.    Law & Argument**

A.    The Court has ample jurisdiction to decide this Motion

Courts have "inherent power" to enforce settlement agreements among parties in pending litigation.  Dacanay v. Mendoza, 573 F2d 1075, 1078 (9th Cir. 1978).  *See generally* O'Connell & Stevenson, Federal Civil Procedure Before Trial, 2018, §§15:140, *et. seq.*  Moreover, federal Courts have the power to expressly "retain jurisdiction" in a settlement agreement executed in a matter pending before it.  *O'Connell & Stevenson* at §15:141.1.

Circuit Courts have held that when a District Court reserves jurisdiction to enforce a settlement agreement and federal jurisdiction exists over *either* a motion to enforce that agreement *or* a new federal action alleging breach of the settlement agreement.  28 USC §1367; Montgomery v. Aetna Plywood, Inc., 231 F3d 399, 411 (7th Cir. 2000); Myers v. Richland County, 429 F3d 740, 747 (8th Cir. 2005) (including actions by third party beneficiary); *O'Connell & Stevenson* at §15:141.11.

Additionally, this Court has ancillary jurisdiction to enforce its own Orders and Decrees so that to the extent a settlement agreement is embodied in a Judgment or Order,

P1218.2018.BLS27a

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

1    the Court has the power to enforce the agreement by execution and by contempt

2    proceedings.  TNT Marketing, Inc. v. Agresti, 796 F2d 276, 278 (9ᵗʰ Cir. 1986).

3    Here, the VW Diesel Litigation has not yet been dismissed and is still pending

4    before this Court.  Docket.  Furthermore, the Settlement Agreement expressly provides:

5    "The Court retains the ongoing and exclusive jurisdiction and independent case

6    management authority, as MDL Transferee Judge and under Federal Rule of Civil

7    Procedure 23, regarding the general operation of the Claims Program and those appointed

8    to implement and oversee it".  Settlement Agreement §5.5 (ECF 1685 at 27:12-15).  And

> The Court shall retain exclusive and continuing jurisdiction over all Parties, the Action, and this Class Action Agreement to resolve any dispute that may arise…including any dispute regarding validity, performance, interpretation, administration, enforcement….of the Class Action Agreement and no Party shall oppose the reopening and reinstatement of the Action on the MDL Court's active docket for the purposes of effecting this Section".

13   Settlement Agreement §9.16 (ECF 1685 at 37:6-12; see also ECF 2102 at 48:17-19 (¶14)

14   ("The Court retains the exclusive jurisdiction to enforce, administer, and ensure

15   compliance with all terms of the Settlement in accordance with the Settlement and this

16   Order").  Id.

17   Finally, the main provisions of the Settlement Agreement and Consent Orders are

18   embodied in three separate Orders of this Court at ECF 2102, 2103 and 2104.  Id.

19   It therefore follows that this Court has continuing jurisdiction and has lawfully and

20   properly retained jurisdiction within the meaning of the cases cited and the Settlement

21   Agreement and Court Orders.  Supra.  Accordingly, there is ample jurisdiction for this

22   Court to hear and decide this Motion.

23   The Court should give no deference to the CRC's contract analysis and should

24   review the contract interpretation issues presented by this Motion de novo based on its

25   own precedent and the Federal Rules of Civil Procedure.  In re Int'l Air Transp.

26   Surcharge Antitrust Litig., 2011 US Dist LEXIS 148547, *19 (NDCA 2011) ("However,

27   the Settlement Administrator's legal conclusion as to the proper construction of the

28   settlement agreements is owed no deference…[citing New York case] (applying de novo

**MOTION OF CLAIMANT FARCHIONE MOTORS, INC. TO ENFORCE 2.0L SETTLEMENT AGREEMENT (IN RE: VOLKSWAGEN "CLEAN DIESEL" LITIGATION – 15-MD-2672)**

P1218.2018.BLS27a

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

standard of review to construction of contract)"); *see also* Weddington Productions, Inc. v. Flick, 60 Cal. App. 4th 793, 815 (1998) (In the comparable California state law retention of jurisdiction context (CCP §664.6): "Factual determinations made by a trial court on a section 664.6 motion to enforce a settlement must be affirmed if the trial court's factual findings are supported by substantial evidence…**Other rulings are reviewed de novo for errors of law**" (emphasis supplied)).  Accordingly, the Court should review the CRC denials of Claimant's Claims <u>de novo</u>.  *Id.*

     B.    <u>The Settlement Agreement is a contract governed by California law</u> <u>rules of contract interpretation: the Plain Meaning of the Settlement</u> <u>Agreement Support Claimant's Claims being "Approved"</u>

        *1.    Contract interpretation law in Federal Actions*

The Settlement Agreement §16.7 states that "This Class Action Agreement …shall be governed by and interpreted according to the Federal Rules of Civil Procedure…and the laws of the State of California…".  *Id.*  Ninth Circuit caselaw supports the application of California state law, unless a federal statute is at issue.  *See* Skilstaf, Inc. v. CVS Caremark Corp., 669 F3d 1005, 1017 (9th Cir. 2012) (state law applies); Stroman v. West Coast Grocery Co., 884 F2d 458, 461 (9th Cir. 1989) (federal law governs interpretation and validity of claim based on federal statutes, here Title VII)).  *See generally O'Connell & Stevenson* at §§15:143-15:143.1. There being no federal statute interpretation issues involved in the Settlement Agreement, California contract interpretation law applies to this Motion.  *Id.*

Under California contract interpretation law <u>the Plain Meaning governs</u> and:

The purpose of the law of contracts is to protect the reasonable expectations of the parties." (Ben-Zvi v. Edmar Co. (1995) 40 Cal.App.4th 468, 475 … "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." (Civ. Code, § 1636.) "The interpretation must be fair and reasonable, not leading to absurd conclusions. [Citation.]" (Transamerica Ins. Co. v. Sayble (1987) 193 Cal. App. 3d 1562, 1566 [239 Cal. Rptr. 201].) "The court must avoid an interpretation which will make a contract extraordinary, harsh,  unjust, or inequitable. [Citation.]" (Strong v. Theis (1986) 187 Cal. App. 3d 913, 920–921

P1218.2018.BLS27a

[232 Cal. Rptr. 272].)  "The contract must be construed as a whole, without giving a distorting emphasis to isolated words or phrases. [Citation.]" (Transamerica Ins. Co. v. Sayble, supra, 193 Cal. App. 3d at p. 1566.)

Citizens for Goleta Valley v. HT Santa Barbara, 117 Cal. App. 4th 1073, 1076-1077 (2004); *see also* Vaillette v. Fireman's Fund Ins. Co., 18 Cal. App. 4th 680, 686 (1993) ("A settlement agreement is to be construed under the same rules that apply to any other contract. (Adams v. Johns-Manville Corp. (9th Cir. 1989) 876 F.2d 702, 704.)… Ordinarily, the words of the document are to be given their plain meaning and understood in their common sense; the parties' expressed objective intent, not their unexpressed subjective intent, governs" (emphasis supplied)).

    2.    *Argument: California contract law and the Plain Meaning of the Settlement Agreement supports Claimant's Claims being Approved*

For purposes of this Motion, California state contract law governs the interpretation of the Settlement Agreement. *Skilstaf*, 669 F3d at 1017.  There are no federal statutes at issue in the Settlement Agreement beyond the Federal Rules of Civil Procedure. *Compare Stroman*, 884 F2d at 461.

Here, the Settlement Agreement plainly requires the payment of Claimant's Claims because Claimant meets all requirements of the Settlement Agreement for such claims to be paid.  Specifically, Claimant is a member of the "Class" (§ 2.16) as a Non-Volkswagen Dealer who "holds title to" 82 vehicles that can be driven under their own power, were acquired after 28 June 2018, and none of Claimant's Claims relate to vehicles that had "Branded/Dismantled/Flood/Junk /Rebuilt/Reconstructed or Salvage Title" on 18 September 2015.  *Id.;* Decl. of Farchione ¶¶5-7, 12-13 & 26.

Claimant is an "Eligible Owner" (§ 2.30) insofar as Claimant became the registered owner  and title holder of 82 "Eligible Vehicle[s]" between 28 June 2016 and 1 September 2018 and Claimant "otherwise meets the definition of 'Eligible Owner', having been in business since before June 2016 and operating as a Non-Volkswagen Dealer since 2009.  Decl. of Farchione ¶¶1, 2 (Ex1).

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

P1218.2018.BLS27a

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

Claimant's vehicles are "Eligible Vehicle(s)" (§ 2.33) that are covered by the EPA Test Group Table (*supra* Section III A), are owned by a Non-VW Dealer, and are "operable" under §2.50 because they can be driven under the power of their own 2.0-liter TDI engine, and none of the vehicles are modified and all can meet VWGoA movement standards.  Decl. of Farchione ¶¶1, 2(Ex1), 5-7, 12-13 & 26, 28.  Thus, Claimant is a member of the "Class" and an "Eligible Owner" of "Eligible Vehicles" and it therefore entitled to settlement benefits under the Settlement Agreement, including full buyback and restitution for Claimant's Claims (listed in full at Exhibit 1 to Mr. Farchione's Declaration).  *Id;* Settlement Agreement §2.6; Section 4 Ex 1; §2.52 and Ex 1).

Moreover, the Settlement Agreement is <u>not ambiguous</u>: "[n]o parol or other evidence may be offered to explain, construe, contradict, or clarify its terms, the intent of the Parties, or their counsel, or the circumstances under which this Class Action Agreement was made or executed".  *Id.* at §16.12.  Thus, there is no need to go beyond the four corners: the CRC's reliance to support denying Branded Title claims on the alleged "intent" of the Parties to the Settlement Agreement (*supra* Section III B; Decl. of Farchione ¶2(Ex3 – e.g. page 11) is therefore <u>as erroneous as it is irrelevant</u>.  *Id; Vaillette*, 18 Cal. App. 4th at 686.

Finally, the Plain Meaning analysis, above, is supported by the Course of Performance among VWGoA and Claimant regarding Branded Title claims.  *Infra* Section IV B.  Settlement Agreement §16.12; *Vaillette*, 18 Cal. App. 4th at 686.  It therefore follows that pursuant to the four corners of the Settlement Agreement and the Plain (unambiguous) Meaning thereof, Claimant's Branded Title claims should be Approved for full vehicle value buyback and restitution.  The Court should so find, hold and order.

//

//

//

//

**MOTION OF CLAIMANT FARCHIONE MOTORS, INC. TO ENFORCE 2.0L SETTLEMENT AGREEMENT (IN RE: VOLKSWAGEN "CLEAN DIESEL" LITIGATION – 15-MD-2672)**

P1218.2018.BLS27a

C.     Volkswagen's Course of Performance Supports the Plain Meaning of the Settlement Agreement

1.     *Course of performance under California law*

Extrinsic evidence, beyond the four corners of the agreement, may be admissible in certain instances to show "course of performance".  Lennar Mare Island v. Steadfast Ins. Co., 176 F. Supp. 3d 949, 964 (EDCA 2016).

*Lennar* explains in detail:

> A 'course of performance' is a sequence of conduct between the parties to a particular transaction . . . ." Cal. Com. Code § 1303(a). It exists if both (1) the parties' agreement "involves repeated occasions for performance" by one of them and (2) the other has "knowledge of the nature of the performance and opportunity for objection to it" but "accepts the performance or acquiesces in it without objection.
>
> ….
>
> The rationale for the admission of course of performance evidence is a practical one… When interpreting a contract, the court's duty is to give effect to the parties' intentions at the time they entered the contract. Cal. Civ. Code § 1636. And 'the most reliable evidence of the parties' intentions" is their behavior after the contract is signed and before any controversy has arisen. Kennecott Corp. v. Union Oil Co. 196 Cal. App. 3d 1179, 1189, 242 Cal. Rptr. 403 (1987). *Id.*

Under California law, course of performance evidence is not linked to any showing that the contract is ambiguous because CCC §1856 expressly allows course of performance evidence to "explain" or "supplement" the agreement to show meanings the agreement is "reasonably susceptible to", *provided* the evidence does not plainly contradict the express terms of the agreement. *Id.* at 966-967 ("This court concludes section 1856(c) makes course of performance evidence admissible to explain or supplement but not to contradict the terms of an integrated agreement, even when the agreement's written terms are unambiguous"); *see also* Epic Communications, Inc. v. Richwave Technology, Inc., 237 Cal. App. 4th 1342, 1355 (2015) (*distinguishing* In re Tobacco Cases I, 186 Cal. App. 4th 42, 51-52 (2010)).

Four preliminary showings must be made: (1) the agreement "contemplates a series of repeated performance" by a person or entity, (2) acting in accord with the

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

P1218.2018.BLS27a

1 defendants' own interpretation, (3) known to defendant but not objected to by it, and (4)

2 occurring prior to the dispute arising.  *Lennar Mare Island*, 176 F. Supp. 3d at 972-973.

2. *Argument: Volkswagen's Course of Performance supports*
*Claimant's Claims being "Approved"*

5 Here, Course of Performance evidence is admissible to show the Settlement

6 Agreement plainly covers Branded Title claims because VW knowingly paid these claims

7 for five months in 2017 without objection before abruptly changing course and giving

8 rise to the dispute that necessitates this Motion.  Decl. of Farchione ¶2(Ex4); *Lennar*

9 *Mare Island*, 176 F. Supp. 3d at 972-973.

10 Specifically, all four elements required for the admissibility of course of

11 performance evidence are present here:

12 (1) the Settlement Agreement "contemplates a series of repeated performance"

13 by a person or entity insofar as VW agreed to pay settlement benefits for a total of nearly

14 500,000 vehicles for individuals and Dealers during a process that would take over two

15 years, and this Claimant submitted and was paid on 51 claims for Branded vehicles

16 before VWGoA abruptly changed their claims handling practices in May 2017.  ECF

17 2103 at 10:2-4 & 13-18; Settlement Agreement §§2.11 & 16.11; Decl. of Farchione ¶15

18 (Claimant made 255 claims for benefits with only 83 denied).

19 (2) Paying Branded Title claims was VWGoA's "own interpretation of the

20 Settlement Agreement" for many months as evidenced by the fact VWGoA paid full

21 vehicle value buyback and restitution on Branded Title vehicles for five months (and in

22 51 separate instances involving this Claimant (Decl. of Farchione ¶2(Ex4)).

23 (3) Paying Branded Title claims was obviously "known to [VWGoA but not

24 objected to" by it for five months as evidenced by the fact VWGoA paid full buyback and

25 restitution on Branded Title vehicles for those months (and in 51 separate instances

26 involving this Claimant (Decl. of Farchione ¶2(Ex4)).

27 (4) Finally, VWGoA's five months of paying full vehicle value buyback and

28 restitution on Branded Title claims occurred prior to the dispute at issue in this Motion:

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

P1218.2018.BLS27a

Claimant's Claims were initially paid in full but then bottlenecked and not denied formally until mid-2018 and only recently by the CRC (Decl. of Farchione ¶¶2(Ex4), 8). *See Lennar Mare Island*, 176 F. Supp. 3d at 972-973.

Therefore, the Course of Performance evidence proffered Claimant is admissible to show the interpretation that *VWGoA gave the Settlement Agreement* before it created this dispute by changing position in early 2017: this Course of Performance further supports that Claimant's Plain Meaning analysis, above, is correct and that the Settlement Agreement plainly covers Branded Title claims and entitles Claimant to full vehicle value buyback and restitution. *Supra* Section IV A; Settlement Agreement §16.12; *Vaillette*, 18 Cal. App. 4th at 686. Accordingly, Claimant's Claims should be "Approved" and the Court should so find, hold and order. *Id.*

D. <u>Promissory estoppel supports Claimant's Claims being "Approved"</u>

California recognizes the doctrine of promissory estoppel: "Under this doctrine a promisor is bound when he should reasonably expect a substantial change of position, either by act or forbearance, in reliance on his promise, if injustice can be avoided only by its enforcement". Smith v. City and County of San Francisco, 225 Cal. App. 3d 38, 48 (1990).

A party claiming promissory estoppel must show the existence of an agreement, reliance on that agreement, and the reasonableness of any such reliance. *See* MCA Records, Inc. v. Charly Records, 865 F. Supp. 649, 655 (CDCA 1994) (*citing* Smith v. City and County of San Francisco, *supra*).

Here, Claimant substantially and justifiably relied on VWGoA's Course of Performance in paying (without question) full vehicle value buyback and restitution on 51 claims for vehicles with Branded Title and now has 82 additional qualified vehicles that should be bought back. Decl. of Farchione ¶¶2(Exs 3&4), 12-13. Claimant's reliance was justified because the Settlement Agreement plainly covers such claims and VWGoA agreed and initially paid such claims. *Supra* Section IV A & B.

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

P1218.2018.BLS27a

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

1    Stated differently, since VWGoA paid Branded Title claims for five months then

2   that conduct induced justifiable reliance by Claimant to believe that such claims would be

3   paid by VWGoA under the Settlement Agreement in the future (to advance the buyback

4   provisions of the Settlement Agreement): therefore, promissory estoppel should apply to

5   prevent VW from denying these claims.  ECF 2103 at 10:2-4 & 13-18; *Smith*, 225 Cal.

6   App. 3dat 48; *MCA Records, Inc*., 865 F. Supp. at 655.  Accordingly, the Court should

7   Order these Claimant's Claims are "Approved" for full vehicle value buyback and

8   restitution and should so find, hold and order.

9    E.    Specific performance supports Claimant's Claims being "Approved"

10    A motion or action to enforce an existing settlement agreement is akin to a specific

11   performance.  Adams v. Johns-Manville Corp., 876 F2d 702, 709 (9th Cir. 1989) (no right

12   to jury trial on such a motion).  Accordingly, the Court has power to order specific

13   performance against the party in breach.  *TNT Mkting, Inc*., 796 F2d at 278.

14    Here, another alternate ground to support Claimant's Claims being "Approved"

15   for full vehicle value buyback and restitution is specific performance.  *Id.*  Since the Plain

16   Meaning of the Settlement Agreement supports VWGoA having to pay Claimant's

17   Claims, the Court should Order specific performance and hold that VWGoA should

18   perform in the present and future as they have in the past and "Approve" Claimant's

19   Claims for full vehicle value buyback and restitution.  *Id*.

20   //

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28   //

**MOTION OF CLAIMANT FARCHIONE MOTORS, INC. TO ENFORCE 2.0L SETTLEMENT
AGREEMENT (IN RE: VOLKSWAGEN "CLEAN DIESEL" LITIGATION – 15-MD-2672)**

P1218.2018.BLS27a

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

## Conclusion

For all the reasons outlined above, this Motion should be GRANTED and the Relief Requested *supra* at Section I B should be awarded to Claimant and the Branded Title claims at issue in this Motion should be "Approved" for full vehicle value buyback and restitution.  The Court should so find, hold and order.

Dated:       19 December 2018                    **JOHN H. CIGAVIC III, ESQ.**
**(ATTORNEY – BASIC LEGAL SERVICES)**

By: _____ /s/ John H. Cigavic III_____

JOHN H. CIGAVIC III, ESQ.
Attorney for Farchione Motors, Inc.

**MOTION OF CLAIMANT FARCHIONE MOTORS, INC. TO ENFORCE 2.0L SETTLEMENT AGREEMENT (IN RE: VOLKSWAGEN "CLEAN DIESEL" LITIGATION – 15-MD-2672)**

P1218.2018.BLS27a

## CERTIFICATE OF SERVICE

I hereby certify that, on 19 December 2018, service of this Notice of Motion and Motion and all Supporting Documents and Exhibits was accomplished pursuant to the Court's electronic filing procedures by filing this document through the ECF system.

I further certify that a hard copy of these ECF filed pleadings will be served by "express delivery", as a courtesy copy, on the persons and parties listed below pursuant to the applicable Settlement Agreements and Consent Orders:

| | |
|---|---|
| Sharon L. Nelles, Esq.<br>SULLIVAN & CROMWELL LLP<br>125 Broad Street<br>New York, New York 10004<br>Attorneys for Volkswagen Group of<br>America, Inc. | Elizabeth J. Cabraser, Esq.<br>LIEFF CABRASER HEIMANN &<br>BERNSTEIN, LLP<br>275 Battery Street, 29th Floor<br>San Francisco, CA 94111<br>Attorneys for the Class |
| Jonathan Cohen, Esq.<br>FEDERAL TRADE COMMISSION<br>600 Pennsylvania Avenue NW, CC-9528<br>Washington, DC 20580 | Bethany Engel, Esq.<br>Gabriel Allen, Esq.<br>US DEPARTMENT OF JUSTICE<br>PO Box 7611<br>Washington, DC 20044-7611 |

Dated:      19 December 2018

**JOHN H. CIGAVIC III, ESQ.**
**(ATTORNEY – BASIC LEGAL SERVICES)**

By: _____ /s/ John H. Cigavic III _____

JOHN H. CIGAVIC III, ESQ.
Attorney for Farchione Motors, Inc.

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

**MOTION OF CLAIMANT FARCHIONE MOTORS, INC. TO ENFORCE 2.0L SETTLEMENT AGREEMENT (IN RE: VOLKSWAGEN "CLEAN DIESEL" LITIGATION – 15-MD-2672)**

P1218.2018.BLS27a