UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: VOLKSWAGEN "CLEAN DIESEL"
MARKETING, SALES PRACTICES, AND
PRODUCTS LIABILITY LITIGATION

_____/

This Order Relates To:
MDL Dkt. No. 3606

_____/

MDL No. 2672 CRB (JSC)

**ORDER DENYING MOTION TO
REMAND**

Around 575,000 people who owned or leased a Volkswagen, Audi, or Porsche "clean diesel" car previously agreed to participate in one of two Court-approved class action settlements with these car makers. Rather than participate in those settlements, approximately 4,000 people instead chose to opt out of them. Some of these opt outs filed their own cases against the car makers in state court, and many of those cases were later removed to federal court by the defendants and transferred to this Court as part of the above-captioned MDL.

Whether there was a basis for removal has been contested, and more than 60 motions to remand, covering several hundred opt-out cases, were filed in this Court. This Order addresses one of those motions, ECF No. 3606. When it was filed, the ECF No. 3606 motion covered 114 separate cases. Each had been filed in California state court, by counsel at the law firm of Hyde and Swigart, and then removed by Volkswagen Group of America, Inc. ("VWGoA"). Many of the cases have since been voluntarily dismissed; only 30 remain outstanding.[1]

VWGoA removed the ECF No. 3606 cases on the basis of both federal question and diversity subject-matter jurisdiction. Plaintiffs, in their motion to remand, have argued that neither form of jurisdiction is present. The Court considers at this time only whether it has jurisdiction on the basis of diversity. Concluding that it does, it DENIES the ECF No. 3606 motion to remand.

_____

[1] The 30 remaining cases are listed in the Appendix at the end of this Order.

# I. BACKGROUND

Each of the ECF No. 3606 cases was filed by either an individual or a couple who bought or leased a Volkswagen or Audi TDI diesel-engine car.  The general factual allegations in the cases are the same.  Plaintiffs allege that they purchased the cars at California-based dealerships, and that prior to doing so, they read the window stickers attached to the cars, which advertised that the cars offered "good clean diesel fun." (*E.g.*, Stark Compl. ¶ 8, Case No. 3:16-cv-4250, Dkt. No. 1-2.)  Plaintiffs also allege that VWGoA and Volkswagen AG ("VW AG"), collectively referred to here as "VW," represented that the cars were environmentally friendly and would emit 25 percent fewer emissions than comparable gasoline-powered cars.  (*Id.* ¶¶ 8, 11.)

In fact, the cars did not have low emissions and were not good for the environment.  (*Id.* ¶ 10.)  And not only were the cars' emissions higher than represented, but VW, which oversaw the development of all Volkswagen and Audi TDI diesel-engine cars, knew this.  (*Id.* ¶¶ 15, 19-20.)  VW knew that the cars could not perform as promised and had specifically developed and installed software in them that detected and evaded emissions testing.  (*Id.*)  During testing, the cars appeared to satisfy governing emission standards; but when the cars were on the road, they emitted nitrogen oxides at up to 40 times the legal limits.  (*Id.* ¶ 10.)

In September 2015, in response to state and federal investigations, VW admitted that it had equipped its TDI-diesel engine cars with emissions-cheating software, and that it had been doing so since 2009.  (*Id.* ¶¶ 9, 15.)

The ECF No. 3606 complaints each include three claims against VWGoA and VW AG.  The claims are for violation of California's Consumer Legal Remedies Act ("CLRA"), Vehicle Code, and Song-Beverly Act.  (*Id.* ¶¶ 22-51.)  Plaintiffs seek remedies which include "incidental, consequential, and actual damages in excess of $25,000," statutory and punitive damages, "rescission and repurchase of the subject vehicle[s] and restitution of all monies expended," and reasonable attorneys' fees and costs.  (*Id.*, Prayer for Relief.)

VWGoA removed Plaintiffs' cases to federal court, in part on the basis of diversity subject-matter jurisdiction.  (*E.g.*, Stark Notice of Removal, Dkt. No. 1.)  VW AG apparently was

not served and did not join the notices of removal. Plaintiffs responded by filing the ECF No. 3606 motion to remand.

## II. LEGAL STANDARD

A defendant who seeks to remove a case to federal court must file a notice of removal "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). This "short and plain statement" requirement mirrors the one found in Rule 8(a)(1) of the Federal Rules of Civil Procedure, the general pleading rule for cases filed in federal court. The use of the same language is "[b]y design," the Supreme Court has explained: "Congress, by borrowing the familiar 'short and plain statement' standard from Rule 8(a), intended to 'simplify the "pleading" requirements for removal' and to clarify that courts should 'apply the same liberal rules to removal allegations that are applied to other matters of pleading.'" *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 553 (2014) (quoting H.R. Rep. No. 100–889, at 71 (1988)).

Highlighting this symmetry, the Ninth Circuit explained in *Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014), that notices of removal, like complaints that are originally filed in federal court, must comply with the familiar *Twombly/Iqbal* pleading standard, and that jurisdictional challenges to removal should be resolved within the framework that governs motions to dismiss complaints for lack of subject-matter jurisdiction:

> Like plaintiffs pleading subject-matter jurisdiction under Rule 8(a)(1), a defendant seeking to remove an action may not offer mere legal conclusions; it must allege the underlying facts supporting each of the requirements for removal jurisdiction. A plaintiff who contests the existence of removal jurisdiction may file a motion to remand, *see* 28 U.S.C. § 1447(c), the functional equivalent of a defendant's motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1). As under Rule 12(b)(1), a plaintiff's motion to remand may raise either a facial attack or a factual attack on the defendant's jurisdictional allegations . . . .

*Leite*, 749 F.3d at 1122 (citation omitted).

The *Leite* court also summarized the rules governing facial and factual attacks to jurisdiction:

A "facial" attack accepts the truth of the . . . allegations but asserts that they are insufficient on their face to invoke federal jurisdiction. The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the . . . allegations as true . . . , the court determines whether [they] are sufficient as a legal matter to invoke the court's jurisdiction.

A "factual" attack, by contrast, contests the truth of the . . . factual allegations, usually by introducing evidence outside the pleadings. When the [party contesting jurisdiction] raises a factual attack, the [party asserting jurisdiction] must support her jurisdictional allegations with competent proof, under the same evidentiary standard that governs in the summary judgment context. The [party asserting jurisdiction] bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met.

*Id.* at 1121 (citations and internal quotation marks omitted).

One form of federal subject-matter jurisdiction, which is the only form considered in this Order, is diversity: district courts have subject-matter jurisdiction over civil cases where (1) the matter "is between . . . citizens of different States . . . [or between] citizens of a State and citizens or subjects of a foreign state," and (2) the amount in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)(1)–(2). Consistent with the framework outlined above, "[t]he party seeking to invoke the district court's diversity jurisdiction always bears the burden of both pleading and proving diversity jurisdiction." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 613-14 (9th Cir. 2016).

Subject-matter jurisdiction must exist when a case is first filed. A federal court that is considering whether it has jurisdiction on the basis of diversity must therefore consider "the state of things at the time of the action brought." *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473 (2007) (quoting *Mullan v. Torrance*, 9 Wheat. 537, 539 (1824)). This means examining whether the parties' citizenship was diverse and whether the amount in controversy exceeded $75,000 at the time the case was originally filed.

### III. DISCUSSION

VWGoA, as the removing party, bears the burden of demonstrating that this Court has diversity jurisdiction over the ECF No. 3606 cases. Whether VWGoA has satisfied that burden is considered next.

#### A.     Diversity of Citizenship

Diversity jurisdiction requires "complete diversity": "each plaintiff must be of a different citizenship from each defendant." *Grancare, LLC v. Mills ex rel. Thrower*, 889 F.3d 543, 548 (9th Cir. 2018). The rules governing citizenship differ for corporations and natural persons. A corporation is a citizen of the state or foreign state where it is incorporated and of the state or foreign state where it has its principal place of business. *See* 28 U.S.C. § 1332(c)(1). A natural person is a citizen of the state of her domicile, which is generally identified though "a compound of physical presence plus an intention to make a certain definite place one's permanent abode." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

VWGoA's notices of removal allege that Plaintiffs were citizens of California at the time the complaints were filed. (*See, e.g.*, Stark Notice of Removal ¶ 14 ("Plaintiff admits that Plaintiff is a resident of California and, upon information and belief, is a citizen of California.").) Plaintiffs do not challenge the truth of these allegations or contend that they are insufficient.

The notices of removal next allege that, when the complaints were filed, VWGoA was incorporated in New Jersey, that its principal place of business was in Virginia, and that it was therefore a citizen of New Jersey and Virginia. (*See id.* ¶ 15.) The notices also allege that VW AG was incorporated and headquartered in Germany, and thus was a citizen of Germany when the cases began. (*See id.* ¶ 16.)

Plaintiffs have not contested the truth of these allegations either, but they argue that the allegations are "unsupported." (MDL Dkt. No. 3606 at 24.) This argument misconstrues what is required at this stage. VWGoA, as the removing party, need only provide "a short and plain statement of the grounds for removal," 28 U.S.C. § 1446(a), in which it "allege[s] the underlying facts supporting each of the requirements for removal jurisdiction," *Leite*, 749 F.3d at 1122. The requirement at issue here is complete diversity; and VWGoA has alleged the underlying facts

5

supporting this requirement by alleging that, when the complaints were filed, it was a citizen of New Jersey and Virginia, VW AG was a citizen of Germany, and Plaintiffs were citizens of California. Plaintiffs have not cited to any authority that would require more than this at the pleading stage.

In the section of their motion in which they challenge diversity of citizenship, Plaintiffs also argue that "Volkswagen AG has not been served with the Complaint and has no standing to seek removal to federal court or to argue against remand to state court." (MDL Dkt. No. 3606 at 24.) It is unclear how this argument relates to diversity of citizenship. The argument also suffers from a factual error: VWGoA, not VW AG, filed the notices of removal (*see, e.g.*, Stark Notice of Removal ¶ 2), and VW AG has not joined in VWGoA's opposition to remand (*see* MDL Dkt. No. 4232 at 93-94). There is accordingly no issue regarding VW AG's standing to seek removal. Also, because VW AG is a citizen "of a foreign state," it does not defeat complete diversity. 28 U.S.C. § 1332(a)(3).

The allegations in VWGoA's notices of removal are sufficient to support that Plaintiffs were citizens of a different state than VWGoA and VW AG when the complaints were filed. The requirement of complete diversity is therefore satisfied.

## B. Amount in Controversy

When removal is based on diversity jurisdiction under 28 U.S.C. § 1332(a), the defendant bears the burden of establishing that the amount in controversy exceeds $75,000. Consistent with the pleading requirements outlined above, the Supreme Court has explained that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 135 S. Ct. at 554. But when the plaintiff challenges the defendant's allegations of the amount in controversy, "[e]vidence establishing the amount is required." *Id.*; *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (citing *Dart Cherokee* for the same proposition).[2]

---

[2] A further showing must be made if the complaint explicitly identifies the sum demanded and the defendant argues that a different sum is in controversy. *See* 28 U.S.C. § 1446(c)(2)(A). Because the ECF No. 3606 complaints do not demand specific sums, the Court does not consider that requirement here.

Plaintiffs, in their motion to remand, have challenged VWGoA's amount-in-controversy allegations, and VWGoA has submitted evidence in support of its allegations in response. The Court therefore construes the ECF No. 3606 motion as making a factual attack on the amount in controversy and proceeds by considering whether a preponderance of the evidence supports that the $75,000 threshold has been passed. *See Leite*, 749 F.3d at 1121 (preponderance of the evidence standard applies to factual attacks on jurisdiction); *Ibarra*, 775 F.3d at 1197 (preponderance of the evidence standard applies "where, as here, defendant's assertion of the amount in controversy is contested by plaintiffs").

The evidence falls into three categories: proof of "actual damages" in dispute (a term used here as a shorthand not only for compensatory damages, but also for the value of the equitable remedies of rescission and restitution), proof of punitive damages in dispute, and proof of attorneys' fees in dispute. Each category is considered in turn below.[3]

### 1. Actual Damages

VWGoA has offered evidence of the total amounts that Plaintiffs paid to buy and lease the cars. It contends that these amounts are an accurate measure of the actual damages in controversy.

Plaintiffs have indeed put the full amounts that they paid for the cars in controversy. For their warranty claims, they each specifically seek "reimbursement of the purchase price paid for the subject vehicle." (*E.g.*, Stark Compl. ¶ 49.) And for their CLRA claims, although their demands for relief are less specific (*see, e.g.*, *id.* ¶ 29 (seeking "actual . . . damages")), there is no reason to believe that they will seek a lesser recovery.

Whether Plaintiffs will be able to recover what they seek is a different question and is currently irrelevant. The amount in controversy is "not a prospective assessment of [the] defendant's liability;" it is "simply an estimate of the total amount in dispute." *Lewis v. Verizon*

---

[3] While some Plaintiffs also seek civil penalties under the Song-Beverly Act, civil penalties are not available under Song-Beverly for "a claim based solely on a breach of an implied warranty," Cal. Civ. Code § 1794(c), which is the only type of warranty claim Plaintiffs bring. Because "a specific rule of law" makes civil penalties unavailable, the Court does not include them in the amount in controversy. *Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362, 364 (9th Cir. 1986).

*Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). By seeking reimbursement of the purchase prices of the cars in question, Plaintiffs have clearly put the full amounts that they paid to buy and lease the cars in dispute.

Contrary to an argument made by Plaintiffs, what VW agreed to pay the owners and lessors of the same model cars in the 2.0-liter and 3.0-liter class action settlements, which this Court previously approved, is not an accurate proxy of the amounts in controversy in the ECF No. 3606 cases. Plaintiffs opted out of those settlements and, by now asking for the full amounts that they paid to buy and lease the cars, they seek more than what was offered by VW in those settlements. Similarly, individual offers that VW has made to settle the opt-out cases are not relevant because they do not indicate the full amounts in dispute; if they did, one would expect Plaintiffs to accept those offers and voluntarily dismiss their cases.

\* \* \*

The amounts that Plaintiffs paid to buy and lease the cars are generally not identified in the complaints. But the complaints do generally identify the makes, models, model years, and Vehicle Identification Numbers ("VINs") of the cars. (*See, e.g.*, Stark Compl. ¶ 7 (alleging that Plaintiff "purchased or leased a 2011 Volkswagen Golf" and listing the VIN).) Using that information, VWGoA contends that the amounts paid to buy and lease the cars can be reasonably estimated.

The estimates take some work because VWGoA reports that it does not have access to granular retail sales-price data for its cars. (Dealers negotiate the sales prices, and although dealers provide VWGoA with certain sales information—including customer names, customer contact information, VINs, and sales dates—the retail sales prices are apparently not reported.) (*See* Lytle Decl. ¶ 8, MDL Dkt. No. 4232-8.) Because VWGoA does not have access to sales-price data, it hired Jay R. Lytle, an Analytical Services Manager at Urban Science Applications, Inc., to estimate the amounts that Plaintiffs paid to buy and lease the cars. Mr. Lytle states that Urban Science performs consulting work for car manufacturers and that his work "regularly involves analyzing vehicle pricing, including prices paid by consumers for new and used vehicles." (*Id.* ¶¶ 4-5.)

Mr. Lytle's declaration describes his methodology in detail. In short, he first used the VINs that Plaintiffs provided, as well as VWGoA's retail-sales data, to determine if the cars were purchased new, purchased used, or leased. (*Id.* ¶ 10.) For cars that were purchased new or leased, he then used industry guides (*e.g.*, Kelley Blue Book and TRUECar) and a discounted version of the Manufacturer's Suggested Retail Price for the same model cars to estimate the original purchase prices and the total amount of lease payments. (*See id.* ¶¶ 13-22.) To estimate the prices paid for used cars, he used the NADA Guides' Clean Trade-In Values. (*See id.* ¶¶ 23-24.)

Mr. Lytle's estimates can be found in Exhibits A, B, and C to his declaration. (*See* MDL Dkt. No. 5834-3.) Of the 30 cars that are at issue in the ECF No. 3606 cases, 26 were purchased new, and Mr. Lytle's purchase price estimates for these cars range from $21,123 to $36,252. Of the other 4 cars at issue, 3 were purchased used and 1 was leased; Mr. Lytle's purchase price estimates for the used cars range from $16,175 to $20,175; his estimate of the total lease payments for the leased car is $9,097.

Plaintiffs have not challenged the accuracy of Mr. Lytle's numbers; they have not, for example, offered evidence to support that they paid different amounts for the cars in question. Yet Plaintiffs have objected to Mr. Lytle's declaration and the accompanying exhibits on grounds of relevance, failure to authenticate, and hearsay. (*See* MDL Dkt. No. 4490-10, Turnage Decl. ¶¶ 3-7.)

The objections are not meritorious. The exhibits to Mr. Lytle's declaration, which track and support his analysis, are clearly relevant. Mr. Lytle himself has declared what the exhibits are—e.g., his calculations, Kelly Blue Book prices, and VWGoA sales data—which is sufficient to authenticate them. *See* Fed. R. Evid. 901(b)(1) (explaining that evidence can be authenticated by "[t]estimony that an item is what it is claimed to be"). And the facts and data that Mr. Lytle has relied on are the type that "experts in the particular field" would use, Fed. R. Evid. 703, so even if these facts and data constitute hearsay, Mr. Lytle may offer opinions based on them, *see United States v. Vera*, 770 F.3d 1232, 1237 (9th Cir. 2014).

The fact that Plaintiffs have not challenged the accuracy of Mr. Lytle's numbers suggests that he has made reasonably accurate calculations. Mr. Lytle's methodology also appears

sensible: he used the vehicle-specific information that Plaintiffs provided in their complaints and respected market metrics and resources, and he explained in detail how he arrived at his estimates. Plaintiffs have put the full amounts that they paid to buy and lease the cars in dispute, and Mr. Lytle's estimates serve as a sufficient proxy of those amounts. Based on Mr. Lytle's estimates, the actual damages in controversy range from **$9,097** to **$36,252** per case.

### 2. Punitive Damages

"It is well established that punitive damages are part of the amount in controversy in a civil action." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001) (citing *Bell v. Preferred Life Assur. Soc'y*, 320 U.S. 238, 240 (1943); *Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982)). Before they may be included, however, two steps must generally be taken. First, the party asserting jurisdiction must establish that punitive damages would be permitted under the applicable state law based on the conduct alleged. *See Davenport v. Mut. Ben. Health & Accident Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963) (noting that exemplary damages should not be included in the amount in controversy "if under the applicable state law [they] would be legally impossible to recover"). Second, if punitive damages are allowed under state law, the amount of punitive damages that are in controversy must be determined. To do so, "[the] party asserting federal diversity jurisdiction may introduce evidence of jury verdicts in cases involving analogous facts." *Surber v. Reliance Nat. Indem. Co.*, 110 F. Supp. 2d 1227, 1232 (N.D. Cal. 2000).

Plaintiffs argue that a different standard applies. They note that in discussing punitive damages in the context of calculating the amount in controversy, a number of courts in this circuit (including this one) have stated that punitive damages may be included in the amount-in-controversy calculation "only if they are recoverable as a matter of law." *Wilson v. Union Sec. Life Ins. Co.*, 250 F. Supp. 2d 1260, 1264 n.6 (D. Idaho 2003); *accord Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002); *Surber*, 110 F. Supp. 2d at 1232 (citing *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 450 (S.D. Cal. 1995)). Relying on this phrasing, Plaintiffs argue that before punitive damages may be included in the amount in controversy, VWGoA "must put forward a showing that Plaintiffs' claims will . . . actually be awarded punitive damages." (Reply, Dkt. No. 4490 at 12 (emphasis omitted).)

10

Plaintiffs misinterpret what is required. The proper inquiry is not *will* punitive damages be recovered as a matter of law, but "*are* [punitive damages] recoverable as a matter of law." *Wilson*, 250 F. Supp. 2d at 1264 n.6; *see also Bell v. Preferred Life Assur. Soc. of Montgomery, Ala.*, 320 U.S. 238, 241 (1943) (concluding that the amount in controversy was satisfied where the plaintiffs' claims "might justify" an award of punitive damages under the governing state law).

None of the district court decisions cited above asked, in considering the amount in controversy, whether punitive damages would "actually be awarded." For good reason. Such a standard would be impossible to meet, as it would effectively require courts to prophesy about the ultimate results in the cases before them. Such a requirement is clearly not what is intended, for the amount in controversy is "simply an *estimate* of the total amount in dispute." *Lewis*, 627 F.3d at 400 (emphasis added).

The Court continues, then, by asking whether punitive damages *are recoverable* under the applicable state law based on the conduct alleged. Indeed they are. "In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice," California permits punitive damages. Cal. Civ. Code § 3294(a). Taking the allegations as true, this standard is satisfied here. Plaintiffs allege that VW represented that its TDI diesel-engine cars were environmentally friendly, when in fact VW knew that the cars utilized software to evade emissions testing and emitted nitrogen oxides at levels far exceeding the legal limits. (*E.g.*, Stark Compl. ¶¶ 8-11, 19-20.) This amounts to fraudulent conduct.

As for the amount of punitive damages in controversy, VWGoA has offered evidence of jury verdicts in three cases that it asserts involved facts analogous to those here. The first of these cases is *Johnson v. Ford Motor Company*, 113 P.3d 82 (Cal. 2005), where the plaintiffs sued Ford for concealing that a used car it had sold them had a history of transmission repairs and replacements. *Id.* at 85. Evidence supported that Ford had engaged in similar conduct "in some number of cases in addition to plaintiffs' own, perhaps a large number of other cases." *Id.* at 96. The jury awarded $10 million in punitive damages against Ford, but the California Supreme Court concluded that the award was inconsistent with due process. On remand, the Court of Appeal

11

affirmed a punitive damages award of $175,000, which was just less than 10 times the compensatory damages award. *See Johnson v. Ford Motor Co.*, 135 Cal. App. 4th 137, 150 (2005).

VWGoA next points to *Chrysler Corporation v. Schiffer*, 736 So. 2d 538 (Ala. 1999). The plaintiff there purchased a truck that Chrysler had represented was new but that in fact had been damaged, repaired, and repainted. *Id.* at 540, 546. Finding for the plaintiff, the jury awarded $50,000 in compensatory damages and $325,000 in punitive damages. *Id.* at 540. The Alabama Supreme Court affirmed on the condition that the plaintiff agree to accept a reduced punitive damages award of $150,000, a 3:1 multiple of compensatory damages. *Id.* at 549.

Lastly, VWGoA cites to *BMW of North America, Inc. v. Gore* ("*BMW II*"), 701 So. 2d 507 (Ala. 1997). The plaintiff there alleged that BMW failed to disclose that the car it sold him had been damaged by acid rain during its shipment from Germany and had subsequently been repainted. *Id.* at 508. Evidence at trial supported that BMW had a nationwide policy of not disclosing pre-delivery damage when the cost of repairs did not exceed three percent of the car's suggested retail price, a practice that was illegal in some states but not in others. *See id.* at 509; *see also BMW of N. Am., Inc. v. Gore* ("*BMW I*"), 646 So. 2d 619, 627 n.6 (Ala. 1994). The jury found for the plaintiff and awarded $4,000 in compensatory damages and $4 million in punitive damages. *BMW II*, 701 So. 2d at 509. On appeal, the U.S. Supreme Court held that the $4 million punitive damages award (and even a reduced punitive damages award of $2 million that was entered by the Alabama Supreme Court) was excessive and violated due process. *See BMW of N.A., Inc. v. Gore*, 517 U.S. 559, 562-63, 585-86 (1996). The Alabama Supreme Court, on remand, entered an order requiring the plaintiff to accept a reduced punitive damages award of $50,000, a 12:1 multiple of compensatory damages. *BMW II*, 701 So. 2d at 515.

Based on the awards in *Johnson*, *Schiffer*, and *Gore*, VWGoA argues that a conservative estimate of the punitive damages in controversy in each of the ECF No. 3606 cases is $50,000. That was the amount awarded in *Gore*, and it was the lowest award in the three sample cases. For 28 of the 30 cases at issue here, $50,000 in punitive damages would be less than a 3:1 multiple of the estimated actual damages, while the ratios for the other 2 cases would respectively be just

12

above 3:1 and just below 6:1.  All of these multiples are within the range of those permitted in *Johnson*, *Schiffer*, and *Gore*.

Plaintiffs take issue with the fact that *Schiffer* and *Gore* were governed by Alabama law, not California law.  But Alabama and California have similar punitive damages provisions, *compare* Ala. Code 6-11-20(a) (punitive damages available "where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff"), *with* Cal. Civ. Code § 3294(a) (punitive damages available "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice"), so the difference in law is not material.

Plaintiffs also argue that VWGoA's showing is insufficient because VWGoA "did not cite to a single case litigated by [Plaintiffs' counsel]."  (Reply, MDL Dkt. No. 4490 at 13.)  Plaintiffs have not cited to any authority that would require VWGoA to do so.  Nor would such a requirement be sensible, as counsel may not have litigated an analogous case to verdict and that fact alone does not mean that punitive damages are not in controversy in the cases in dispute.

Fraudulent conduct comes in many forms, and it is almost always possible to draw distinctions between the facts of one fraud and another.  But when *Johnson*, *Schiffer*, and *Gore* are stripped to their essentials, they offer reasonable comparisons to this case.  Each involved a global car manufacturer that deceived its customers about the characteristics of its cars.  And in *Johnson* and (to a lesser degree) in *Gore*, evidence also supported that the deceit was part of a pattern of fraudulent business practices, as is alleged here.

At this stage, the question is whether at least $50,000 in punitive damages is at stake in each of the cases.  Given the facts alleged and the amount of punitive damages awarded in comparable cases, it is clear that the answer to this question is yes.

At least **$50,000** in punitive damages is at stake in each of the ECF No. 3606 cases.

### 3.    Attorneys' Fees

When state law "authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998).  Until recently, it was an "open question [in

this circuit] whether attorney's fees that [were] anticipated but unaccrued at the time of removal or filing in federal court . . . [could] be included in the amount-in-controversy." *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 649 n.2 (9th Cir. 2016). That question was resolved, and answered affirmatively, last year:

> As explained in *Chavez* [*v. JPMorgan Chase & Co.*, 888 F.3d 413 (9th Cir. 2018)], when we assess the amount in controversy at the time of removal, we must include all relief to which a plaintiff is entitled if the action succeeds. 888 F.3d at 418. Accordingly, if the law entitles the plaintiff to future attorneys' fees if the action succeeds, "then there is no question that future [attorneys' fees] are 'at stake' in the litigation," *id.* at 417, and the defendant may attempt to prove that future attorneys' fees should be included in the amount in controversy.

*Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (second alteration in original).

If Plaintiffs prevail on either their CLRA or Song-Beverly Act claims, they may obtain attorneys' fees. *See* Cal. Civ. Code § 1780(e) ("The court shall award . . . attorney's fees to a prevailing plaintiff in litigation filed pursuant to [the CLRA]."); Cal. Civ. Code § 1794(d) ("If the buyer prevails in an action under [Song-Beverly], the buyer shall be allowed by the court to recover as part of the judgment . . . attorney's fees based on actual time expended . . . ."). Attorneys' fees are therefore "'at stake' in the litigation." *Fritsch*, 899 F.3d at 794 (quoting *Chavez*, 888 F.3d at 417).

To determine the amount of attorneys' fees at stake, the removing party can provide an "estimate[] [of] the amount of time that the case will require," and an estimate of "plaintiff's counsel's hourly billing rate." *Surber*, 110 F. Supp. 2d at 1232. VWGoA has offered the following evidence of this type here.

To estimate Plaintiffs' counsel's hourly billing rate, VWGoA has identified motions that counsel previously filed in this MDL that list counsel's hourly rates. For a partner and an associate at counsel's firm, those rates are respectively listed as $605 and $295 per hour. (*See* MDL Dkt. No. 2608-4 at 8.) In VWGoA's calculations, it has used the associate rate to be conservative.

14

To estimate the number of hours that Plaintiffs' counsel will spend litigating the ECF No. 3606 cases, VWGoA reviewed 34 "Lemon Law" cases that resulted in awards of attorneys' fees and expenses. Some of those cases settled; others went to trial. (*See* MDL Dkt. No. 4232-5, App. D (listing cases).) The number of hours that plaintiffs' counsel spent litigating these cases was often not disclosed, but VWGoA performed the following calculations to reach an average number of 201.6 hours per case:

> First, [VWGoA] separated attorneys' fees from attorneys' expenses in the 34 listed Lemon Law cases. Out of the total award of attorneys' fees and expenses, on average, 87.1% of the award was attributable to attorneys' fees and 12.9% was attributable to expenses. Therefore, to estimate the average amount of attorneys' fees in these cases (not including attorneys' expenses), [VWGoA] took 87.1% of $92,583.63 [with $92,583.63 reflecting the average total award of attorneys' fees and expenses]: [the result was] $80,640.34.

> Second, [VWGoA] used this estimate of the attorneys' fee awards to determine the average number of attorney hours for which fees were awarded in these 34 cases (given that the number of hours were not disclosed or readily available for many cases). [VWGoA] divided $80,640.34 by an inflated billing rate of $400/hour. The result is an estimate of the number of hours for which attorneys were awarded fees, on average, in these cases: 201.6 hours.

(Opp'n, MDL Dkt. No. 4232 at 58 (footnote omitted).)

Multiplying the estimated hourly rate of $295 by 201.6 hours, VWGoA has estimated that $59,472 in attorneys' fees are in controversy in each of the ECF No. 3606 cases.

The methodology that VWGoA has used strikes the Court as generally reasonable. The estimated hourly rate is supported by evidence, and the lemon-law cases that VWGoA has identified serve as reasonable comparisons to this case, as Plaintiffs' implied warranty claim under the Song-Beverly Act is effectively a lemon-law claim. *See Jensen v. BMW of N. Am., Inc.*, 35 Cal. App. 4th 112, 130 (1995) (referring to the Song-Beverly Act as a "Lemon Law"). Although Plaintiffs also bring CLRA and California Vehicle Code claims here, those claims include additional elements that, if anything, may increase the number of hours counsel spends litigating. Also, contrary to an argument made by Plaintiffs, VWGoA was not required to specifically identify cases that were litigated by the same counsel that is representing Plaintiffs here.

15

The Court's only concern with VWGoA's estimates is that they do not take into account that Plaintiffs' counsel is litigating dozens of cases against VW that are based on the same core allegations, and it is likely that certain efficiencies will be realized. For example, any evidence that counsel gathers to support that VW used emissions-cheating software will likely be used in all of the ECF No. 3606 cases.

To be sure, even with such efficiencies, Plaintiffs' counsel could easily spend at least 201.6 hours litigating each case. At a minimum, each Plaintiff will likely need to be deposed. And if the cases proceed to trial, separate trials may be required (if the cases remain unconsolidated) and there may be Plaintiff-specific damages issues.

To be conservative and to reflect possible economies of scale, however, the Court will only include 100.8 hours in the estimate for each of the ECF No. 3606 cases, which is half of the hours that VWGoA has estimated. The reduced number reflects that there are likely to be efficiencies in litigating many similar cases, but that these efficiencies will not reduce the time spent litigating each case to zero.

Multiplying 100.8 hours by the hourly rate of $295 leads to an estimate of **$29,736** in attorneys' fees per case. At least that amount of attorneys' fees is reasonably in controversy in each of the ECF No. 3606 cases.[4]

### 4. Total Amount in Controversy

When $50,000 in punitive damages is added to $29,736 in attorneys' fees, the combined amount exceeds $75,000. And when actual damages are also added, the amounts in controversy for the ECF No. 3606 cases range from **$88,833** to **$115,988**. Section 1332(a)'s amount-in-controversy requirement is satisfied.

### IV. CONCLUSION

VWGoA has plausibly alleged that there is complete diversity of citizenship between it and VW AG on the one hand, and Plaintiffs on the other. Also, a preponderance of the evidence

---

[4] VWGoA has also provided an estimate of costs for each of the ECF No. 3606 cases, but costs cannot be included in amount-in-controversy calculations. *See* 28 U.S.C. § 1332(a) (requiring that the amount in controversy "exceed[] the sum or value of $75,000, *exclusive of interests and costs*") (emphasis added).

United States District Court
Northern District of California

supports that the amount-in-controversy requirement is met. The Court therefore concludes that it has diversity subject-matter jurisdiction over the ECF No. 3606 cases and DENIES the motion to remand.

**IT IS SO ORDERED.**

Dated: February 19, 2019

_____
CHARLES R. BREYER
United States District Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**APPENDIX**

**(List of remaining ECF No. 3606 cases)**

1.   *Aleman v. VWGoA*, No. 16-cv-3707-CRB

2.   *Benz v. VWGoA*, No. 16-cv-4410-CRB

3.   *Blankenship v. VWGoA*, No. 16-cv-3559-CRB

4.   *Contreras v. VWGoA*, No. 16-cv-3717-CRB

5.   *Cynthia Williams, MPC v. VWGoA*, No. 16-cv-4739-CRB

6.   *Davis v. VWGoA*, No. 16-cv-5118-CRB

7.   *Fisher v. VWGoA*, No. 16-cv-3720-CRB

8.   *Flores v. VWGoA*, No. 16-cv-3899-CRB

9.   *Fruchter v. VWGoA*, No. 16-cv-4244-CRB

10.  *Gibb v. VWGoA*, No. 16-cv-3029-CRB

11.  *Gonzalez v. VWGoA*, No. 16-cv-5077-CRB

12.  *Gorgolinski v. VWGoA*, No. 16-cv-5230-CRB

13.  *Gutu v. VWGoA*, No. 16-cv-5020-CRB

14.  *Helman v. VWGoA*, No. 16-cv-3900-CRB

15.  *Huston v. VWGoA*, No. 16-cv-3859-CRB

16.  *Johnston v. VWGoA*, No. 16-cv-3752-CRB

17.  *Leon v. VWGoA*, No. 16-cv-5085-CRB

18.  *Lingafeldt v. VWGoA*, No. 16-cv-3026-CRB

19.  *Mayberry v. VWGoA*, No. 16-cv-4211-CRB

20.  *Mazingo v. VWGoA*, No. 16-cv-4284-CRB

21.  *Mitchell v. VWGoA*, No. 16-cv-4985-CRB

22.  *Robinson v. VWGoA*, No. 16-cv-3510-CRB

23.  *Soper v. VWGoA*, No. 16-cv-4283-CRB

24.  *Soriano v. VWGoA*, No. 16-cv-4446-CRB

25.  *Stark v. VWGoA*, No. 16-cv-4250-CRB

26.  *Walker v. VWGoA*, No. 16-cv-4993-CRB

United States District Court
Northern District of California

27.  *Walker v. VWGoA*, No. 16-cv-6513-CRB

28.  *Williams v. VWGoA*, No. 16-cv-4740-CRB

29.  *Wolfberg v. VWGoA*, No. 16-cv-5024-CRB

30.  *Wright v. VWGoA*, No. 16-cv-4122-CRB