UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION
_____/

This Order Relates To:
MDL Dkt. No. 3631
_____/

MDL No. 2672 CRB (JSC)

**ORDER GRANTING MOTION TO REMAND**

Around 575,000 people who owned or leased a Volkswagen, Audi, or Porsche "clean diesel" car previously agreed to participate in one of two Court-approved class action settlements with these car makers. Rather than participate in those settlements, approximately 4,000 people instead chose to opt out of them. Some of these opt outs filed their own cases against the car makers in state court, and many of those cases were later removed to federal court by the defendants and transferred to this Court as part of the above-captioned MDL.

Whether there was a basis for removal has been contested, and more than 60 motions to remand, covering several hundred opt-out cases, were filed in this Court. This Order addresses one of those motions, ECF No. 3631. The ECF No. 3631 motion covers 184 separate cases, each of which was originally filed in California state court against Volkswagen Group of America, Inc. ("VWGoA") and a California-based dealership.[1] VWGoA and the dealership defendants removed the cases to federal court on the basis of federal-question jurisdiction, and Plaintiffs, in their motion to remand, have argued that jurisdiction is lacking.

The ECF No. 3631 cases include only state-law claims. As a result, to give rise to federal-question jurisdiction, one or more of those claims must necessarily raise a substantial and disputed

---

[1] The motion purports to cover a 185th case, *Medrano v. Volkswagen Group of America, Inc.*, but that case is not part of the MDL. (*See* MDL Dkt. No. 3631-1 ¶ 105 (listing the *Medrano* individual case number, which is not a case number that is associated with this MDL).)

federal issue that can be resolved in federal court without disrupting the balance between federal and state courts struck by Congress. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313-14 (2005). The ECF No. 3631 cases do not meet this standard. While it is possible that a federal issue will arise in the cases, one very well may not. That is not sufficient to support federal-question jurisdiction, and the Court therefore GRANTS the motion to remand.

## I. BACKGROUND[2]

Diesel engines, while generally more fuel efficient than gasoline engines, have historically been known to emit greater quantities of air pollutants, including nitrogen oxides ("NOx"). This fact has limited their use in the United States. Yet in the mid-2000s, after significant research and development, Volkswagen, which is also affiliated with Audi and Porsche, claimed to have solved diesel's pollution problem. (*See, e.g.*, Worring Compl. ¶¶ 15-17, 20-21, Case No. 3:17-cv-0878, Dkt. No. 1-2; Sanwick Compl. ¶ 3, Case No. 3:17-cv-3032, Dkt. No. 1-2.) Volkswagen advertised that its TDI diesel-engine cars, which it first released in 2009, were powered by a cutting-edge engine that could provide exceptional power, performance, and fuel efficiency, while reducing NOx emissions by 95 percent as compared to other models. (*See, e.g.*, Worring Compl. ¶¶ 41-61.) The company also represented that the cars met the "the strictest EPA [emission] standards in the U.S." (*E.g.*, *id.* ¶ 55.)

The claims were false. Behind the scenes, Volkswagen had determined that, given budget and engineering constraints, it could not mass produce affordable low-emission, high performance diesel-engine cars. (*See, e.g.*, *id.* ¶ 19.) But rather than abandon or delay its plans, the company decided to develop and install a "defeat device" in its cars to evade emissions testing. During testing, the device made the company's TDI diesel-engine cars appear to be compliant with governing emission standards. But when the cars were on the road, the device deactivated or significantly reduced the effectiveness of emission controls, causing the cars to emit NOx at up to 40 times the legal limits. (*See, e.g.*, *id.* ¶¶ 30-40.)

---

[2] The general factual allegations in the ECF No. 3631 cases are the same. A summary of those allegations follows.

2

Volkswagen successfully evaded emissions testing for half a decade. But in September 2015, in response to increasingly demanding federal and state investigations, the company admitted that it had equipped its TDI diesel-engine cars with emissions-cheating software. (*See, e.g.*, *id.* ¶¶ 66-72.) The company also admitted that it had installed the same or similar software in 11 million diesel cars worldwide. (*E.g.*, *id.* ¶ 76.)

Each of the ECF No. 3631 cases was filed by either an individual or a couple who bought or leased a Volkswagen or Audi TDI diesel-engine car. They allege that they purchased the cars at California-based dealerships, and that prior to doing so, they relied on VWGoA's representations that the cars had "low emission[s]," and were "clean," "green," "good for the environment," and "fuel efficient." (*E.g.*, *id.* ¶¶ 13, 78-79, 87.) Had they known about the cars' actual emissions and use of a defeat device, Plaintiffs contend that they would not have purchased the cars or would have paid less to do so. (*See, e.g.*, *id.* ¶¶ 79, 111.)

The ECF No. 3631 complaints only include state-law claims. Each complaint includes an implied warranty claim, under California's Song-Beverly Act, and one or more fraud claims. (*See, e.g.*, Fisher Compl., Case No. 3:17-cv-1543, Dkt. No. 1-2.) Nearly all of the complaints also include a claim for violation of California's Consumers Legal Remedies Act ("CLRA"). (*See, e.g.*, Ebner Compl., Case No. 3:17-cv-0888, Dkt. No. 1-3.) A few complaints also include other state-law claims. (*See, e.g.*, Atkinson Compl., Case No. 3:16-cv-6416, Dkt. No. 1-2 (raising claims for breach of contract and for violation of California's Unfair Competition Law ("UCL"), in addition to fraud, warranty, and CLRA claims).) Among other forms of relief, Plaintiffs seek actual and punitive damages, rescission and restitution, and attorneys' fees. (*See, e.g.*, Bertagnolli Compl., Prayer for Relief, Case No. 3:17-cv-1277, Dkt. No. 1-2.)

VWGoA and the California-based dealership defendants removed Plaintiffs' cases to federal court on the basis of federal-question jurisdiction. (*See, e.g.*, Imhoff Notice of Removal, Case No. 3:17-cv-1064, Dkt. No. 1.) Plaintiffs responded by filing the ECF No. 3631 motion to remand. VWGoA, but not the dealership defendants, has opposed the motion. (*See* MDL Dkt. No. 4232.)

3

## II. FEDERAL-QUESTION JURISDICTION

A case filed in state court may be removed by the defendant to federal court if there is federal subject-matter jurisdiction. *See* 28 U.S.C. § 1441(a); *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1243 (9th Cir. 2009). One form of federal subject-matter jurisdiction, and the only form that has been raised here, is federal-question jurisdiction. To be present, one or more claims in the action must "aris[e] under" federal law. 28 U.S.C. § 1331.

Claims "arise under" federal law in two scenarios. The first is when "federal law creates the cause of action asserted." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562, 1569 (2016). The second is when the cause of action asserted was created by state law, but the cause (1) necessarily raises a federal issue that is (2) actually disputed and (3) substantial, and that (4) may be considered by a federal court without disrupting the balance between federal and state courts struck by Congress. *See id.* at 1570 (citing *Grable*, 545 U.S. at 314; *Gunn v. Minton*, 133 S. Ct. 1059, 1064-65 (2013)).

Only a "special and small category of cases" fit this second scenario. *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699 (2006). VWGoA asserts that the ECF No. 3631 cases do. Specifically, VWGoA contends that the ECF No. 3631 cases each include one or more claims that will require the Court to address the following three federal issues: (1) whether the emissions-cheating software that Volkswagen installed in the affected cars constituted a "defeat device," as that term is defined by federal regulations; (2) whether the affected cars were "street legal" at the time of sale; and (3) whether EPA will require Plaintiffs, pursuant to federal law, to have the affected cars repaired. Each of these issues is considered below.

### A. The "Defeat Device" Issue

Each of the ECF No. 3631 complaints includes a fraud claim that is based on a misrepresentation theory. To prevail on these claims, Plaintiffs will need to prove, among other things, that VWGoA knowingly made one or more misrepresentations to them about the affected cars, and that they relied on those misrepresentations. *See Engalla v. Permanente Med. Grp., Inc.*, 938 P.2d 903, 917 (Cal. 1997).

As VWGoA reads the complaints, the principal misrepresentation alleged is that VWGoA told Plaintiffs that the affected cars met federal emission standards when, in fact, the cars each contained a "defeat device." VWGoA notes that a "defeat device" is a term that is defined by federal regulations. *See* 40 C.F.R. § 86.1803–01 ("Defeat device means an auxiliary emission control device (AECD) that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use . . . ."). And VWGoA argues that this definition will need to be considered to determine whether the alleged representations were false.

There are two interrelated problems with VWGoA's argument. First, to the extent that there is a principal misrepresentation alleged in the complaints, it is not that the cars met federal emission standards. Plaintiffs allege that in purchasing the cars they relied on representations that the cars had "low emission[s]," and were "clean," "green," "good for the environment," and "fuel efficient." (*E.g.*, Worring Compl. ¶¶ 13, 78-79, 87.) They do not allege that they saw and relied on representations that the cars complied with federal emission standards. Allegations of the latter sort do appear in the complaints, but only in a section that details VWGoA's national media campaign. (*See, e.g.*, *id.* ¶ 55 (alleging that in a 2012 brochure, VWGoA stated that its TDI cars met "the strictest EPA standards in the U.S.").) No allegations directly link Plaintiffs to these representations.

Second, even if Plaintiffs did allege that they personally had relied on representations about the cars' compliance with federal emission standards, their claims still would not necessarily raise a federal issue. That is because there are alternative misrepresentations that underlie Plaintiffs' claims. As just noted above, VWGoA allegedly misrepresented that the cars had "low emission[s]," and were "clean," "green," "good for the environment," and "fuel efficient." (*E.g.*, Worring Compl. ¶¶ 13, 78-79, 87.) To prove that these representations were false or misleading, Plaintiffs could offer evidence supporting that the cars' actual emissions and fuel-usage levels were above industry averages and that the emissions were damaging to the environment. They would not need to prove that the cars didn't comply with federal emission laws.

5

The Ninth Circuit reached a similar conclusion in *Nevada v. Bank of America Corp.*, 672 F.3d 661 (9th Cir. 2012). There, Nevada alleged that Bank of America violated the State's Deceptive Trade Practices Act when it made misrepresentations to Nevada consumers about its home mortgage modification and foreclosure policies. *See id.* at 664. Some of the alleged misrepresentations arguably raised federal issues (*e.g.*, misrepresentations about whether consumers qualified for benefits under the Home Affordable Mortgage Program, 12 U.S.C. § 5219a), while others did not (*e.g.*, misrepresentations about the amount of time it would take to process loan modifications). *See id.* at 665. Under these circumstances, the Ninth Circuit held that Nevada's case did not give rise to federal-question jurisdiction. The Court explained: "When a claim can be supported by alternative and independent theories—one of which is a state law theory and one of which is a federal law theory—federal question jurisdiction does not attach because federal law is not a necessary element of the claim." *Id.* at 675 (quoting *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 346 (9th Cir. 1996)).

The same result follows here. Alternative and independent theories underly Plaintiffs' fraud claims, and at least some of those theories can be proven without needing to interpret federal law. In these circumstances, federal-question jurisdiction "does not attach because federal law is not a necessary element of the claim." *Id.*[3]

**B.      The "Street Legal" Issue**

In the section of their complaints that details VWGoA's national media campaign, Plaintiffs allege that VWGoA marketed and sold the affected cars "without ever disclosing to consumers that they were unlawful to sell *or drive* due to their high levels of NOx emissions." (*E.g.*, Worring Compl. ¶ 42 (emphasis added).) Pointing to the allegation that the cars were "unlawful to . . . drive," VWGoA argues that Plaintiffs have raised a disputed federal issue, since

---

[3] Having determined that federal law is not a necessary element of Plaintiffs' fraud claims because the claims are based in part on misrepresentations that have nothing to do with federal law, the Court will not separately consider Plaintiffs' argument that a federal issue will not arise because they bought the cars at issue in California, which has its own emission standards. (*See* Reply, MDL Dkt. No. 4474 at 7 n.1.)

6

VWGoA contests the allegation and since the Clean Air Act and federal regulations largely govern when cars can be legally driven in the United States.

VWGoA has given the "unlawful to drive" allegation, or as VWGoA refers to it, the "street legal" issue, outsized importance. Plaintiffs, as "masters of the complaint," may choose how to frame their claims. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 395 (1987). And they have done so here in a way where none of their claims turns on whether the cars were street legal.

Plaintiffs' fraud and CLRA claims are based on allegations that VWGoA misrepresented its cars' environmental and performance characteristics and concealed its use of emissions-cheating software. (*See, e.g.*, Worring Compl. ¶¶ 99-100, 106-08, 123.) These claims are not based on allegations that the cars were illegal to drive. The Song-Beverly, UCL, and breach of contract claims are similar. They are based on allegations that VWGoA's cars did not operate as promised because they were equipped with emissions-cheating software, not on allegations that the cars were illegal to drive. (*See, e.g.*, *id.* ¶¶ 141-43; Atkinson Compl. ¶¶ 27, 57.)

VWGoA does not dispute that Plaintiffs' claims do not turn on whether the cars were legal to drive. But it asserts that the issue will arise at the damages phase. At that time, VWGoA forecasts that Plaintiffs will argue that the cars were essentially worthless—and that compensatory damages should be equal to the full amount that Plaintiffs paid to buy the cars—because the cars were not "street legal."

Plaintiffs have not directly put forward this theory of recovery in their complaints. Could it arise anyway given the passing allegation that the cars were illegal to drive? Possibly. Will it necessarily arise? No. Assuming Plaintiffs prevail on the merits of their claims, the damages phase could proceed in a variety of ways. That one of those ways might raise a federal issue is not good enough to support jurisdiction under § 1331.

Compare *Grable*. It was not simply possible that a federal issue would arise there; the plaintiff's case entirely depended on it. The plaintiff's property was seized by the IRS and resold. In a quiet title action against the purchaser, the plaintiff argued that it still held title to the property because the IRS had not followed the Internal Revenue Code's notice rules before seizing it. *See* 545 U.S. at 310-11. In holding that the quiet title action gave rise to federal-question jurisdiction,

the Supreme Court explained that "the meaning of the federal statute [was] . . . an essential element of [the] quiet title claim," and indeed it "appear[ed] to be the only legal or factual issue contested in the case." *Id.* at 315.

A case that VWGoA has cited, *Burda v. M. Ecker Co.*, 954 F.2d 434 (7th Cir. 1992), is similar. The plaintiff there filed an application for judgment, under state law, asserting that his employer had improperly withheld a portion of a worker's compensation settlement that he and the employer had agreed to. The money at issue was withheld for federal tax purposes, and the success of the plaintiff's case depended entirely on whether the withholding was required by the Internal Revenue Code. Under those circumstances, the Seventh Circuit held that there was federal-question jurisdiction. *See id.* at 436-38.

The "street legal" federal issue in the ECF No. 3631 cases is not analogous to the federal issues that were raised in *Grable* and *Burda*. Unlike the federal issues in those cases, which needed to be resolved before any recovery could be had, Plaintiffs may prevail and recover damages from VWGoA without ever proving that the cars at issue were illegal to drive as a matter of federal law. Because the "street legal" federal issue will not necessarily arise, it does not support jurisdiction under § 1331.

## C. The Mandatory Repair Issue

VWGoA lastly argues that there are allegations in the ECF No. 3631 complaints which suggest that EPA will require Plaintiffs to have their cars modified (to comply with federal emission requirements), and that these modifications will substantially degrade the performance of the cars. VWGoA contends that these allegations raise a federal issue; namely, whether Plaintiffs "must accede to federally approved remedial measures in order to operate, resell, or trade in" the cars, and whether those remedial measures will reduce the value of the cars. (Opp'n, MDL Dkt. No. 4232 at 66.)

The Court could not locate the allegations cited by VWGoA. VWGoA, in its opposition, has cited to a paragraph in one of the ECF No. 3631 complaints as an example (*see id.* at 65 (citing Cardenas Compl. ¶ 16, No. 3:17-cv-2414, Dkt. No. 1-2)), but the cited paragraph does not

mention EPA or any mandatory repairs. Nor does any other paragraph in the example complaint mention mandatory repairs that will reduce the value of the cars.

In any event, even if the complaints did include the mandatory repair allegations, those allegations would not support federal-question jurisdiction. Like the "street legal" issue, the mandatory repair issue would not necessarily arise, for the issue would not be pivotal to the success of Plaintiffs' claims. It would simply be an add-on issue that, if the facts supported it, could enhance damages. Because Plaintiffs do not need to raise the mandatory repair issue to prevail, the issue does not support jurisdiction under § 1331.

### III. CONCLUSION

It is a "special and small category" of cases that only raise state-law claims but that support federal-question jurisdiction. *Empire Healthchoice*, 547 U.S. at 699. The ECF No. 3631 cases do not come within that category. The Court therefore GRANTS the motion to remand. Each of the ECF No. 3631 cases that is listed in Appendix A to the motion (*see* MDL Dkt. No. 3631-1) and that has not been terminated shall be remanded to California state court.

The Court does not award fees to Plaintiffs. "Absent unusual circumstances, courts may award attorney's fees under [28 U.S.C.] § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). A basis for removal is "not objectively unreasonable solely because . . . [it] lack[s] merit." *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008). Here, although VWGoA's arguments for removal lacked merit, they were not objectively unreasonable. "Cases [analyzing *Grable* jurisdiction] require courts to venture into a murky jurisprudence," *R.I. Fishermen's Alliance, Inc. v. R.I. Dep't of Envtl. Mgmt.*, 585 F.3d 42, 51 (1st Cir. 2009), which leaves room for creative arguments. Although it may still be possible to raise a *Grable* argument for removal that is unreasonable, VWGoA's arguments did not reach that line.

**IT IS SO ORDERED.**

Dated: March 8, 2019

CHARLES R. BREYER
United States District Judge

9