**BERNSTEIN LITOWITZ BERGER**
   **& GROSSMANN LLP**
JAMES A. HARROD
JAI CHANDRASEKHAR
ADAM D. HOLLANDER
KATE W. AUFSES
jim.harrod@blbglaw.com
jai@blbglaw.com
adam.hollander@blbglaw.com
kate.aufses@blbglaw.com
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444

*Attorneys for Lead Plaintiff ASHERS and*
*Plaintiff Miami Police and*
*Lead Counsel in the Securities Actions*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 2672 CRB (JSC) |
| _____/ | **CLASS ACTION** |
| This Document Relates To: Securities Actions | **LEAD COUNSEL'S NOTICE OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| *City of St. Clair Shores*, 15-1228 (E.D. Va.) *Travalio*, 15-7157 (D.N.J.) *George Leon Family Trust*, 15-7283 (D.N.J.) *Charter Twp. of Clinton*, 15-13999 (E.D. Mich.) *Wolfenbarger*, 15-326 (E.D. Tenn.) _____/ | Judge: Hon. Charles R. Breyer Courtroom: 6 Date: May 10, 2019 Time: 10:00 a.m. |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................ii

NOTICE OF MOTION FOR AN AWARD OF ATTORNEYS' FEES
AND LITIGATION EXPENSES ...........................................................................................1

STATEMENT OF ISSUES TO BE DECIDED .....................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................2

I.      PRELIMINARY STATEMENT .............................................................................2

II.     ARGUMENT ...........................................................................................................5

        A.      LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES OF 25% OF
THE SETTLEMENT FUND NET OF EXPENSES IS REASONABLE
AND SHOULD BE APPROVED ...........................................................5

                1.      Counsel Are Entitled To An Award Of Attorneys' Fees
From The Common Fund .............................................................5

                2.      The Court Should Calculate The Requested Fee As A
Percentage Of The Common Fund ..............................................5

                3.      A Fee Of 25% Of The Settlement Fund, Net Of Expenses,
Is Reasonable Under Either The Percentage Or The
Lodestar Method ..........................................................................6

                4.      The Factors Considered By Courts In The Ninth Circuit
Support Approval Of The Requested Fee ..................................10

                5.      The Fee Request Is Supported By Plaintiffs ...........................17

        B.      LEAD COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD
BE APPROVED .....................................................................................18

        C.      PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE COSTS
AND EXPENSES UNDER 15 U.S.C. §78u-4(a)(4) ............................19

III.    CONCLUSION ......................................................................................................20

# TABLE OF AUTHORITIES

**CASES**                                                                                              **PAGE(S)**

*In re 3Com Corp. Sec. Litig.*,
   No. 97-cv-21083, slip op. (N.D. Cal. Mar. 9, 2001 .................................................. 8

*In re Allergan, Inc. Proxy Violation Sec. Litig.*,
   No. 14-cv-02004 (C.D. Cal.) .................................................................................... 14

*In re Amgen Inc. Sec. Litig.*,
   2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ......................................................... 7

*In re Anthem Inc. Data Breach Litig.*,
   2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ......................................................... 7

*In re Apple Computer Sec. Litig.*,
   1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ........................................................... 16

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
   2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ......................................................... 16

*In re Biolase, Inc. Sec. Litig.*,
   2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) ....................................................... 11

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ............................................................................... 5, 6

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ................................................................................................ 5

*Booth v. Strategic Realty Tr., Inc.*,
   2015 WL 6002919 (N.D. Cal. Oct. 15, 2015) ......................................................... 7

*In re Broadcom Corp. Sec. Litig.*,
   2005 WL 8153006 (C.D. Cal. Sept. 12, 2005) ....................................................... 7

*In re Brocade Sec. Litig.*,
   No. 05-cv-02042, slip op. (N.D. Cal. Jan. 26, 2009) .............................................. 8

*Buccellato v. AT&T Operations, Inc.*,
   2011 WL 3348055 (N.D. Cal. June 30, 2011) ......................................................... 8

*Buccellato v. AT&T Operations, Inc.*,
   2011 WL 4526673 (N.D. Cal. June 30, 2011) ....................................................... 20

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   2016 WL 4126533 (N.D. Cal. Aug. 3, 2016) ............................................... 7, 10, 12

*In re Comverse Tech., Inc. Sec. Litig.*,
   2010 WL 2653354 (E.D.N.Y. June 24, 2010) ......................................................... 9

*Destefano v. Zynga, Inc.*,
    2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ............................................................. 7

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    2007 WL 2416513 (N.D. Cal. Aug. 16, 2007) ......................................................... 15

*Ellison v. Steven Madden, Ltd.*,
    2013 WL 12124432 (C.D. Cal. May 7, 2013) ........................................................... 6

*In re Equity Funding Corp. Sec. Litig.*,
    438 F. Supp. 1303 (C.D. Cal. 1977) ...................................................................... 15

*Fischel v. Equitable Life Assurance Soc'y of U.S.*,
    307 F.3d 997 (9th Cir. 2002) ................................................................................. 6

*In re Geron Corp. Sec. Litig.*,
    No. 3:14-cv-01224, slip op (N.D. Cal. July 21, 2017)............................................ 20

*Gustafson v. Valley Ins. Co.*,
    2004 WL 2260605 (D. Or. Oct. 6, 2004) ............................................................. 14

*Gutierrez v. Wells Fargo Bank, N.A.*,
    2015 WL 2438274 (N.D. Cal. May 21, 2015) ....................................................... 10

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................................................... 6

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ................................................................................... 18

*Hatamian v. Advanced Micro Devices, Inc.*,
    No. 14-cv-00226, slip op (N.D. Cal. March 2, 2018 ............................................... 7

*HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*,
    2010 WL 4156342 (S.D. Cal. Oct. 15, 2010) ..................................................... 7, 8

*Hefler v. Wells Fargo & Co.*,
    No. 16-cv-05479, slip op (N.D. Cal. Dec. 18, 2018 ........................................ 10, 14

*In re Heritage Bond Litig.*,
    2005 WL 1594389 (C.D. Cal. June 10, 2005) ................................................ 12, 14

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal. June 10, 2005) .................................................. 7, 12

*Hopkins v. Stryker Sales Corp.*,
    2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ...................................................... 8, 9

*In re HP Sec. Litig.*,
    No. 12-cv-05980-CRB, slip op (N.D. Cal. Nov. 16, 2015) .................................... 20

*In re Ikon Office Sols., Inc. Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000) .................................................................. 12

*In re Int'l Rectifier Corp. Sec. Litig.*,
   No. 07-cv-02544 (C.D. Cal.) ...................................................................... 14

*Knight v. Red Door Salons, Inc.*,
   2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ............................................... 17

*In re Lucent Techs., Inc. Sec. Litig.*,
   327 F. Supp. 2d 426 (D.N.J. 2004) ........................................................... 18

*In re Maxim Integrated Prods., Inc. Sec. Litig.*,
   No. 08-cv-00832 (N.D. Cal.) ..................................................................... 14

*Moore v. Verizon Commc'ns Inc.*,
   2014 WL 588035 (N.D. Cal. Feb. 14, 2014) ............................................... 9

*Morrison v. National Australia Bank Ltd.*,
   561 U.S. 247 (2010) ................................................................................... 13

*In re New Century*,
   No. 07-cv-00931 (C.D. Cal.) ..................................................................... 14

*In re Omnicom Grp., Inc. Sec. Litig.*,
   597 F.3d 501 (2d Cir. 2010) ...................................................................... 16

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................... passim

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ....................................................................... 6

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) ....................................................................... 6

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ................................................................. 16

*Rodman v. Safeway*,
   2018 WL 4030558 (N.D. Cal. August 22, 2018) ...................................... 10

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ..................................................................... 19

*Stetson v. Grissom*,
   821 F.3d 1157 (9th Cir. 2016) ..................................................................... 5

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   2013 WL 1365900 (N.D. Cal. Apr. 3, 2013) .............................................. 7

*Todd v. STAAR Surgical Co.*,
    2017 WL 4877417 (C.D. Cal. Oct. 24, 2017)........................................................20

*In re Veeco Instruments Inc. Sec. Litig.*,
    2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)........................................................18

*Vincent v. Hughes Air West, Inc.*,
    557 F.2d 759 (9th Cir. 1977)..............................................................................5

*Vinh Nguyen v. Radient Pharm. Corp.*,
    2014 WL 1802293 (C.D. Cal. May 6, 2014)........................................................6

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002)..........................................................5, 6, 8, 10

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
    2017 WL 1047834 (N.D. Cal. Mar. 17, 2017)........................................................9

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994)........................................................................12, 15

**STATUTES**

15 U.S.C. §78u-4(a)(4) ..........................................................................................19

Private Securities Litigation Reform Act of 1995 ..............................................2

PSLRA ..........................................................................................................passim

**OTHER AUTHORITIES**

Federal Rules of Civil Procedure Rule 23(h)........................................................1

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 (1995)..............17

Richard Posner, *Economic Analysis of Law* § 21.9 (3d ed. 1986) ........................15

**NOTICE OF MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND LITIGATION EXPENSES**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Rule 23(h) of the Federal Rules of Civil Procedure and the Court's Order Granting Motion for Preliminary Approval of Settlement (ECF No. 5593) (the "Preliminary Approval Order"), on May 10, 2019, at 10:00 a.m., Lead Counsel Bernstein Litowitz Berger & Grossmann LLP ("Lead Counsel" or "BLB&G") will move the Court, before the Honorable Charles R. Breyer, for an Order awarding attorneys' fees and reimbursement of Litigation Expenses in the above-captioned securities class action (the "Action").

This Motion is based on the following Memorandum of Points and Authorities, the accompanying Declaration of James A. Harrod in Support of (I) Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation and (II) Lead Counsel's Motion for An Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Harrod Declaration" or "Harrod Decl.") and its exhibits, all other prior pleadings and papers in this Action, arguments of counsel, and such additional information or argument as may be required by the Court.

A proposed Order will be submitted with Lead Counsel's reply submission on May 3, 2019, after the April 18, 2019 deadline for Settlement Class Members to object to the motion for fees and expenses has passed.

**STATEMENT OF ISSUES TO BE DECIDED**

1.       Whether the Court should approve as fair and reasonable Lead Counsel's application for an attorneys' fee award for Plaintiffs' Counsel in the amount of 25% of the Settlement Fund (the Settlement Amount, plus all interest accrued thereon), net of expenses.

2.       Whether the Court should approve the request for reimbursement of $296,879.86 in Litigation Expenses incurred by Lead Counsel in this Action.

3.       Whether the Court should approve the request for reimbursement of $4,940.49 to Lead Plaintiff Arkansas State Highway Employees' Retirement System and reimbursement of $2,387.50 to named Plaintiff Miami Police Relief and Pension Fund for their costs and expenses directly related to

their representation of the Settlement Class, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

## MEMORANDUM OF POINTS AND AUTHORITIES

Lead Counsel for the Court-appointed Lead Plaintiff Arkansas State Highway Employees' Retirement System ("ASHERS" or "Lead Plaintiff"), named Plaintiff Miami Police Relief and Pension Fund ("Miami Police," and together with ASHERS, "Plaintiffs"), and the Settlement Class respectfully submits this memorandum of law in support of its motion for (a) an award of attorneys' fees for Plaintiffs' Counsel[1] in the amount of 25% of the Settlement Fund, net of expenses awarded by the Court; (b) reimbursement of $296,879.86 in Litigation Expenses that were reasonably and necessarily incurred by Lead Counsel in prosecuting and resolving the Action; and (iii) reimbursement of $4,940.49 to ASHERS and $2,387.50 to Miami Police for their costs and expenses directly related to their representation of the Settlement Class, as authorized by the PSLRA.[2]

## I. PRELIMINARY STATEMENT

The proposed Settlement, which provides for the payment of $48 million in cash to resolve the Action, is an excellent result for the Settlement Class. The Settlement represents a substantial percentage of the likely recoverable damages in this case. In undertaking this litigation, counsel faced numerous challenges to proving both liability and damages that posed the serious risk of no recovery, or a substantially smaller recovery than the Settlement, for the Settlement Class. The significant monetary recovery was achieved through the skill, tenacity, and effective advocacy of Lead Counsel, who litigated this Action on a fully contingent basis against highly skilled defense counsel. The Settlement was reached only after nearly three years of hotly contested and difficult litigation, including substantial fact discovery, which required Lead Counsel to dedicate a significant amount of time and resources to the Action.

---

[1] Plaintiffs' Counsel are Lead Counsel BLB&G and Klausner, Kaufman, Jensen & Levinson, counsel for named Plaintiff Miami Police.

[2] Unless otherwise defined in this memorandum, all capitalized terms have the meanings defined in the Stipulation and Agreement of Settlement, dated August 27, 2018 (ECF No. 5267-1) (the "Stipulation" or "Settlement Stipulation") or the Harrod Declaration. Citations to "¶" in this memorandum refer to paragraphs in the Harrod Declaration.

As detailed in the accompanying Harrod Declaration,[3] Lead Counsel vigorously pursued this litigation from its outset by, among other things, (i) conducting an extensive investigation into the alleged fraud, which included consultation with experts and a thorough review of public information such as SEC filings, analyst reports, conference-call transcripts, news articles, Volkswagen advertisements and marketing materials, and related government and private litigation; (ii) drafting the highly detailed First Consolidated Complaint and Amended Complaint based on Lead Counsel's investigation; (iii) researching, briefing, and arguing oppositions to two separate rounds of Defendants' motions to dismiss the complaints; (iv) filing a motion to lift the stay of discovery imposed by the PSLRA; (v) moving for partial summary judgment regarding the issues of falsity and scienter with respect to several of VWAG's alleged false statements; (vi) serving several dozen document subpoenas on nonparties, serving and responding to interrogatories, obtaining more than 4 million pages of documents produced by Defendants and third parties and analyzing and reviewing those materials, producing over 26,000 pages of documents to Defendants, and litigating several contentious discovery disputes; (vii) preparing a motion for class certification and working with an expert on the accompanying report addressing market efficiency and class-wide damages; and (viii) engaging in intensive, arm's-length settlement negotiations.

The Settlement achieved through Lead Counsel's efforts is a particularly favorable result considering the significant risks of proving Defendants' liability and establishing loss causation and damages. These risks are discussed in detail in the Harrod Declaration at paragraphs 64 to 90 and are summarized in the memorandum of law supporting the Settlement. As discussed in those submissions, these risks posed a real possibility that Plaintiffs and the Settlement Class would not be able to recover or would have recovered a smaller amount if the Action proceeded through trial and appeals.

---

[3] The Harrod Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*, the nature of the claims asserted (¶¶ 16-18), the history of the Action (¶¶ 19-58), the negotiations leading to the Settlement (¶¶ 59-61), the risks and uncertainties of continued litigation (¶¶ 64-90), and the services Lead Counsel provided for the benefit of the Settlement Class (¶¶ 9, 19-58, 123).

As compensation for its significant efforts on behalf of the Settlement Class and the risks of nonpayment they faced in bringing the Action on a contingent basis, Lead Counsel seeks attorneys' fees in the amount of 25% of the Settlement Fund (net of expenses), the "benchmark" percentage awarded in the Ninth Circuit for contingency-fee litigation. The requested fee represents a multiplier of approximately 1.59 on Plaintiffs' Counsel's lodestar, which is on the lower end of the range of multipliers typically awarded in class actions with significant contingency risks such as this one.

Moreover, the requested fee has the full support of the two institutional Plaintiffs, ASHERS and Miami Police. *See* Declaration of Robyn Smith submitted by ASHERS (the "Smith Decl."), attached as Exhibit 1 to the Harrod Declaration, at ¶ 8; Declaration of Daniel Kerr, submitted by Miami Police (the "Kerr Decl."), attached as Exhibit 2 to the Harrod Declaration, at ¶ 7. Plaintiffs actively supervised the Action and have endorsed the requested fee as reasonable in light of the result achieved in the Action, the quality of the work counsel performed, and the risks of the litigation. *See* Smith Decl. ¶ 6-8; Kerr Decl. ¶ 5-7.

In addition, in accordance with the Preliminary Approval Order, 217,587 copies of the Notice have been mailed to potential Settlement Class Members and their nominees through April 3, 2019, and the Summary Notice was published in *Investor's Business Daily* and transmitted over the PR Newswire. *See* Declaration of Alexander Villanova (the "Villanova Decl."), attached as Exhibit 3 to the Harrod Decl., at ¶¶ 8-9. The Notice advised potential Settlement Class Members that Lead Counsel would apply for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund, net of expenses; reimbursement of Litigation Expenses to Plaintiffs' Counsel in an amount not to exceed $500,000; and reimbursement of costs and expenses to Plaintiffs in an aggregate amount not to exceed $50,000. *See* Notice, attached as Exhibit A to the Villanova Decl., at ¶¶ 5, 73. The expenses sought by Lead Counsel and Plaintiffs are significantly less than the maximum amounts stated in the Notice, and the fee request is as stated in the Notice. The deadline set by the Court for Settlement Class Members to object to the requested attorneys' fees and expenses has not yet passed, but, to date,

no objections to the request for fees and expenses have been filed on the Court's docket. ¶¶ 99, 131, 143.[4]

In light of the excellent recovery obtained, the time and effort devoted by Plaintiffs' Counsel to the Action, the skill, quality, and expertise required, the wholly contingent nature of the representation, and the considerable risks that counsel undertook, Lead Counsel respectfully submits that the requested fee award is reasonable and should be approved by the Court. In addition, the costs and expenses incurred by Lead Counsel and Plaintiffs are reasonable in amount and were necessarily incurred in the successful prosecution of the Action, and they too should be approved.

## II. ARGUMENT

### A. LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES OF 25% OF THE SETTLEMENT FUND NET OF EXPENSES IS REASONABLE AND SHOULD BE APPROVED

#### 1. Counsel Are Entitled To An Award Of Attorneys' Fees From The Common Fund

It is well settled that attorneys who represent a class and are successful in recovering a common fund for the benefit of class members are entitled to a reasonable fee paid from the fund as compensation for their services. The U.S. Supreme Court has recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Similarly, the Ninth Circuit has held that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *accord Stetson v. Grissom*, 821 F.3d 1157, 1165 (9th Cir. 2016).

#### 2. The Court Should Calculate The Requested Fee As A Percentage Of The Common Fund

Where a settlement produces a common fund, courts in the Ninth Circuit have discretion to employ either the percentage-of-recovery method or the lodestar method in setting attorneys' fees. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *Vizcaino v. Microsoft*

---

[4] The deadline for the submission of objections is April 18, 2019. Should any objections be received, Lead Counsel will address them in its reply papers, due on or before May 3, 2019.

*Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Notwithstanding that discretion, where there is an easily quantifiable benefit to the class—such as a cash common fund—the percentage-of-recovery approach is the prevailing method used. *See, e.g.*, *Ellison v. Steven Madden, Ltd.*, 2013 WL 12124432, at *8 (C.D. Cal. May 7, 2013) (finding "use of the percentage method" to be the "dominant approach in common fund cases"); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (same).

Most courts have found the percentage approach superior in cases with a common-fund recovery because it parallels the use of percentage-based contingency fee contracts, which are the norm in private litigation; aligns the lawyers' interests with that of the class in achieving the maximum possible recovery; and reduces the burden on the court by eliminating the detailed and time-consuming lodestar analysis. *See Omnivision*, 559 F. Supp. 2d at 1046; *Vinh Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) ("There are significant benefits to the percentage approach, including consistency with contingency fee calculations in the private market, aligning the lawyers' interests with achieving the highest award for the class members, and reducing the burden on the courts that a complex lodestar calculation requires").

### 3. A Fee Of 25% Of The Settlement Fund, Net Of Expenses, Is Reasonable Under Either The Percentage Or The Lodestar Method

Whether assessed under the percentage-of-recovery or lodestar approach, the fee request of 25% of the Settlement Fund—representing a multiplier of approximately 1.59—is fair and reasonable.

#### a. The Requested Attorneys' Fees Are Reasonable Under The Percentage Method

Lead Counsel seeks a fee of 25% of the Settlement Fund (net of expenses), the Ninth Circuit's well-established "benchmark" for percentage fees in common-fund cases. *See, e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015); *Bluetooth*, 645 F.3d at 942; *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002); *Vizcaino*, 290 F.3d at 1047-48; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).

While the 25% benchmark can "be adjusted upward or downward to account for any unusual circumstances," *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989), courts

have found fee awards in the amount of the 25% benchmark to be "presumptively reasonable." *Booth v. Strategic Realty Tr., Inc.*, 2015 WL 6002919, at *7 (N.D. Cal. Oct. 15, 2015). Courts have also found that, "in most common fund cases, the award exceeds that benchmark." *Omnivision*, 559 F. Supp. 2d at 1047; *accord In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 & n.14 (C.D. Cal. June 10, 2005).

The 25% fee requested by Lead Counsel, which has the full support of the institutional-investor Plaintiffs, is also well within the range of percentage fees that have been awarded in securities class actions and other complex class actions in the Ninth Circuit with recoveries of comparable size. *See, e.g.*, *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9-10 (C.D. Cal. Oct. 25, 2016) (awarding 25% fee in $95 million settlement); *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *22 (N.D. Cal. Feb. 11, 2016) (awarding 25% fee in $23 million settlement); *Hatamian v. Advanced Micro Devices, Inc.*, No. 4:14-cv-00226-YGR, slip op at 3-4 (N.D. Cal. March 2, 2018), ECF No. 364 (Harrod Decl. Ex. 9) (awarding fee of 25% of $29.5 million settlement, representing 4.22 multiplier). Indeed, percentage fees of 25% and higher have often been awarded in larger settlements. *See, e.g.*, *In re Anthem Inc. Data Breach Litig.*, 2018 WL 3960068, at *16 (N.D. Cal. Aug. 17, 2018) (applying 25% benchmark to $115 million settlement and, after concluding that upward departure was warranted, awarding 27% fee); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 4126533, at *1 (N.D. Cal. Aug. 3, 2016) (awarding 27.5% of $576.75 million common fund); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 WL 1365900, at *8 (N.D. Cal. Apr. 3, 2013) (awarding fee of 28.5% of $1.08 billion settlement); *In re Broadcom Corp. Sec. Litig.*, 2005 WL 8153006, at *4 (C.D. Cal. Sept. 12, 2005) (applying 25% benchmark to $150 million settlement).

> **b. The Requested Attorneys' Fees Are Reasonable Under The Lodestar Method**

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, courts in the Ninth Circuit typically cross-check the proposed award against counsel's lodestar, although such a cross-check is not required. *See Amgen*, 2016 WL 10571773, at *9 ("Although an analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit, a cross-check of the fee request with a lodestar amount can demonstrate the fee request's reasonableness."); *HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*, 2010 WL 4156342, at *2 (S.D. Cal. Oct. 15, 2010) ("Courts have

found that a lodestar analysis is not necessary when the requested fee is within the accepted benchmark.").

As detailed here and in the Harrod Declaration, Plaintiffs' Counsel spent 14,115.50 hours of attorney and other professional time prosecuting the Action for the benefit of the Settlement Class through March 29, 2019. ¶ 120. Plaintiffs' Counsel's lodestar, derived by multiplying the hours spent on the litigation by each attorney or other professional by his or her current hourly rate, is $7,514,066.25. Accordingly, the requested fee of 25% of the recovery, net of expenses, which equates to approximately $11.924 million, plus interest earned, represents a multiplier of approximately 1.59 on Plaintiffs' Counsel's lodestar.[5] *Id.*

Fee awards in class actions with substantial contingency risks generally represent positive multipliers of counsel's lodestar, often ranging up to four times the lodestar or even higher. *See Vizcaino*, 290 F.3d at 1051-52 (finding that "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases," and that, when the lodestar is used as a cross-check, "most" multipliers were in the range of 1 to 4, but citing numerous examples of even higher multipliers); *Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases.").

Accordingly, the 1.59 multiplier sought is at the low end of the range of multipliers typically awarded. *See, e.g., Vizcaino*, 290 F.3d at 1047-48 (affirming fee of 28% fee of $97 million settlement, representing 3.65 multiplier); *In re Brocade Sec. Litig.*, No. 3:05-cv-02042-CRB, slip op. at 13 (N.D. Cal. Jan. 26, 2009), ECF No. 496-1 (Harrod Decl. Ex. 10) (awarding fee of 25% of $160 million settlement, representing 3.5 multiplier); *In re 3Com Corp. Sec. Litig.*, No. C-97-21083-EAI, slip op. at 12 (N.D. Cal. Mar. 9, 2001), ECF No. 180 (Harrod Decl. Ex. 11) (awarding fee representing 6.67 multiplier); *see also Buccellato v. AT&T Operations, Inc.*, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (awarding fee representing 4.3 multiplier).

---

[5] The actual realized multiplier will decline over time, as Lead Counsel will devote additional attorney time to preparing for the final-approval hearing, overseeing the processing of claims by the Claims Administrator, and overseeing the distribution of the Settlement proceeds to Settlement Class Members with valid claims.

Indeed, courts have found that, because attorneys' normal hourly rates do not reflect compensation for contingency-fee risk, counsel in cases such as this one, with substantial contingency risks, are entitled to a multiplier. *See Moore v. Verizon Commc'ns Inc.*, 2014 WL 588035, at *6 (N.D. Cal. Feb. 14, 2014) ("because there is ample evidence in the record establishing that this case was risky and that recovery was far from certain, Class Counsel is entitled to a risk multiplier"); *Hopkins*, 2013 WL 496358, at *4; *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) (finding counsel who litigated complex case on contingent basis "entitled to a fee in excess of the lodestar"). Lead Counsel obtained an excellent recovery for the Settlement Class in this Action, notwithstanding the substantial risks it faced. There was a real risk that Plaintiffs' Counsel would receive no recovery for their efforts, and while (fortunately) this case was successfully resolved, many similar cases are not, demonstrating why multipliers are appropriate.

Plaintiffs' Counsel's lodestar is supported by Declarations from both Plaintiffs' Counsel firms (Harrod Decl. Exs. 4A and 4B). Consistent with the Northern District of California Procedural Guidance for Class Action Settlements, Lead Counsel's Declaration includes a detailed exhibit showing the hours incurred by each of their professionals who worked on this litigation, broken down by seven substantive categories of work. In addition, for each attorney or other professional whose time is included in Lead Counsel's lodestar, a summary of the principal tasks that he or she worked on in the litigation has been provided.

The current hourly rates for Lead Counsel range from $900 to $1,300 for partners, $775 for senior counsel and of counsel, $450 to $700 for associates, and $300 to $375 for paralegals. The current rates of BLB&G's staff attorneys, who were integrally involved in various aspects of the investigation and discovery, including the review of documents obtained from Defendants and third parties, are $350, $375, or $395 per hour depending on their number of years out of law school. The blended hourly rate for all Lead Counsel timekeepers in the application is $532. Lead Counsel believes that these rates are within the range of reasonable fees for attorneys working on sophisticated class-action litigation in this District. *See, e.g., In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving fee award following lodestar cross-check and finding that "[t]he blended average hourly billing rate is $529 per

hour for all work performed and projected, with billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals"); *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479, slip op at 21-22 (N.D. Cal. Dec. 18, 2018), ECF No. 252 (Harrod Decl. Ex. 12) (finding reasonable counsel's rates that ranged from $650 to $1,250 for partners or senior counsel, from $400 to $650 for associates, and from $245 to $350 for paralegals, and a blended hourly rate for all timekeepers of $406); *Gutierrez v. Wells Fargo Bank, N.A.*, 2015 WL 2438274, at *5 (N.D. Cal. May 21, 2015) (finding reasonable rates for Bay Area attorneys in 2015 of $475–$975 for partners, $300–$490 for associates, and $150–$430 for litigation-support staff and paralegals).

In sum, Lead Counsel's requested fee award is reasonable, justified, and in line with what courts in this Circuit award in class actions such as this one, whether calculated as a percentage of the fund or as a multiple of counsel's lodestar. As discussed below, each of the factors considered by courts in the Ninth Circuit also strongly supports the requested fee's reasonableness.

### 4. The Factors Considered By Courts In The Ninth Circuit Support Approval Of The Requested Fee

Courts in this Circuit consider the following factors when determining whether a fee is fair and reasonable: (1) the results achieved, (2) the risks of litigation, (3) the skill required and the quality of work, (4) the contingent nature of the fee and the financial burden carried by the plaintiffs, (5) awards made in similar cases, (6) the class's reaction, and (7) a lodestar cross-check. *See Omnivision*, 559 F. Supp. 2d at 1046-48 (citing *Vizcaino*, 290 F.3d at 1048-51). The lodestar cross-check (discussed above in Section II.A.3.b.) and each of the other factors confirm that the requested fee is fair and reasonable.

### a. The Quality Of The Results Achieved Supports The Fee Request

Courts have recognized that the quality of the results achieved is the most important factor in determining an appropriate fee award. *See Rodman v. Safeway*, 2018 WL 4030558, at *3 (N.D. Cal. August 22, 2018); *Cathode Ray Tube*, 2016 WL 4126533, at *4-5; *Omnivision*, 559 F. Supp. 2d at 1046. Here, Lead Counsel succeeded in obtaining a $48 million cash Settlement for the Settlement Class, notwithstanding the substantial risks Plaintiffs faced in the Action, including those related to establishing falsity, materiality, scienter, loss causation, and damages. ¶¶ 64-90. The Settlement

resulted from Lead Counsel's thorough investigation of the claims; drafting two highly detailed consolidated complaints that substantially survived Defendants' motions to dismiss; moving for partial summary judgment concerning falsity and scienter; conducting extensive fact discovery; preparing to file a motion for class certification; and engaging in vigorous, arm's-length settlement negotiations. ¶¶ 19-61. As a result of this Settlement, numerous Settlement Class Members will receive compensation for their losses resulting from Defendants' alleged federal securities-law violations.

The Settlement achieved by Plaintiffs' Counsel, as a percentage of likely recoverable damages in the Action, is far higher than typically achieved in securities class actions. The $48 million Settlement represents a recovery of approximately 33% of likely maximum recoverable damages, before giving effect to any disaggregation on any of the corrective-disclosure dates among other risks, for the Settlement Class, which Lead Counsel's expert has estimated to be approximately $147 million. ¶¶ 6, 91-92. Defendants would have argued that the maximum recoverable damages were significantly less and would have asserted colorable loss-causation arguments concerning both the nature and the impact of the corrective disclosures alleged by Plaintiffs. ¶¶ 81-85. In light of the significant risks of establishing liability that are entirely separate from the difficult loss-causation and damages hurdles Plaintiffs faced in this case, this level of recovery represents an excellent result for the Settlement Class. For example, Cornerstone Research has found that median settlements in securities class actions from 2009 to 2017 where damages were estimated to be in the range of $75–$149 million recovered only 5.0% of damages (before reductions for attorneys' fees and litigation expenses). *See* Cornerstone Research, *Securities Class Action Settlements 2018 Review and Analysis* (2019), at 6 (Harrod Decl. Ex. 6); *see also* NERA, Stefan Boettrich and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review* (2019), at 36 (Harrod Decl. Ex. 8) (finding that median settlement in 2018 as percentage of estimated damages was 2.6% for securities class actions overall); *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (finding that settlement representing "approximately 8% of the maximum recoverable damages . . . equals or surpasses the recovery in many other securities class actions"); *Omnivision*, 559 F. Supp. 2d at 1042 (finding settlement representing 9% of maximum damages fair and reasonable and "higher

than the median percentage of investor losses recovered in recent shareholder class action settlements").

Courts have recognized that, when counsel achieve a result for the class that is superior to the norm in comparable cases (as measured by the percentage of the class's possible damages recovered or other means), it is appropriate to increase the fee above the benchmark to reflect the quality of the result that counsel obtained. *See, e.g.*, *Omnivision,* 559 F. Supp. 2d at 1046 (finding that settlement with recovery of "approximately 9% of the possible damages, which is more than triple the average recovery in securities class action settlements . . . weighs in favor of granting the requested 28% fee"); *Heritage Bond*, 2005 WL 1594403, at *19; *see also Cathode Ray Tube*, 2016 WL 4126533, at *5 (finding, in antitrust case, that recovery of 20% of possible damages warranted "a modest increase over the Ninth Circuit benchmark," and awarding fees of 27.5% of $576.75 million common fund).

In light of these circumstances, the amount obtained is a substantial achievement on behalf of the Settlement Class and weighs in favor of granting the requested fee of 25% of the recovery, net of expenses.

### b. The Substantial Risks Of The Litigation Support The Fee Request

The risk of nonpayment assumed by counsel is an important factor in determining a fair fee award.[6] While courts have always recognized that securities class actions carry significant risks, post-PSLRA rulings make it clear that the risk of no recovery has increased significantly. ¶¶ 65-70. Courts have noted that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *In re Ikon Office Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000).

As discussed in greater detail in the Harrod Declaration, there were many substantial challenges to succeeding in this litigation. At the outset of the case, there was a significant risk that claims on behalf of the unlisted, OTC-traded ADRs at issue would be dismissed under the Supreme

---

[6] *See, e.g.*, *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299-1301 (9th Cir. 1994) ("*WPPSS*"); *Omnivision*, 559 F. Supp. 2d at 1047; *In re Heritage Bond Litig.*, 2005 WL 1594389, at *14 (C.D. Cal. June 10, 2005) ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award.").

Court's decision in *Morrison* v. *National Australia Bank Ltd.*, 561 U.S. 247 (2010). ¶¶ 28(i), 30, 36, 38, 71, 86, 127. Even though Plaintiffs successfully overcame that hurdle, to prevail at trial, Plaintiffs would have to prove not only that Defendants' statements about Volkswagen's compliance with emissions regulations were false or misleading but also that those statements were material, that Defendants knew or were reckless in not knowing that the statements were false when made, and that the statements were corrected and caused recoverable damages. While Plaintiffs and Lead Counsel believe in the merits of their claims, there would be many challenges in establishing all of these elements and a substantial risk that Plaintiffs might not be able to do so.

For example, Lead Counsel faced a significant hurdle in gathering the evidence required to establish Defendants' scienter due to the absence of any discovery procedures under German law similar to those available to litigants in the United States. ¶¶ 77-79. In addition, establishing scienter here would have been difficult because, despite Lead Counsel's extensive discovery efforts and investigations by multiple prosecutors, regulators, and other private parties (in both the United States and Europe), little evidence has been uncovered to date directly linking any of the Individual Defendants to the alleged fraud. ¶ 80. Indeed, Defendants claimed that VWAG's senior management were not even aware of the existence of the vehicles' defeat devices until shortly before the end of the Class Period, and VWAG's guilty plea in the criminal case concerning the emissions scandal did not establish that knowledge of the defeat devices reached senior executives whose scienter is attributable to VWAG. ¶ 78. Moreover, Defendants had credible arguments that any false or misleading statements they may have made about Volkswagen's compliance with emissions regulations were not material to investors and thus not actionable. ¶¶ 72-70. If Defendants convinced the Court or a jury that their misstatements were immaterial or that they did not act with scienter, this would have resulted in zero recovery for the Settlement Class. Defendants would have argued in opposition to class certification that the location of Class members' ADR transactions posed individual questions under the Supreme Court's decision in *Morrison* and its progeny and that the market for ADRs was not efficient, precluding a presumption of Class-wide reliance. ¶ 86. Either argument would have defeated class certification.

Lead Counsel also faced significant challenges in proving that the revelation of the truth about Defendants' false and misleading statements caused the declines in the prices of VWAG ADRs and in establishing the amount of damages. ¶¶ 81-85. Defendants had substantial loss-causation and damages arguments, including that the alleged fraud was fully disclosed no later than September 22, 2015, if not earlier, so that many of the price declines included in Plaintiffs' damages calculations did not constitute recoverable damages. ¶ 83. These arguments could have materially reduced the amount of recoverable damages available to the Class and adversely affected any potential recovery. These substantial risks facing the Settlement Class and Lead Counsel further support the requested fee.

### c. The Skill Required And The Quality Of The Work Performed Support The Fee Request

The third factor to consider in determining what fee to award is the skill required and the quality of the work performed. *See Gustafson v. Valley Ins. Co.*, 2004 WL 2260605, at \*2 (D. Or. Oct. 6, 2004) ("The 'prosecution and management of a complex national class action requires unique legal skills and abilities.'"); *Omnivision*, 559 F. Supp. 2d at 1047 ("This is particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss."); *see also Heritage Bond*, 2005 WL 1594389, at \*12 ("The experience of counsel is also a factor in determining the appropriate fee award.").

Here, the attorneys at BLB&G are among the most experienced and skilled practitioners in the securities-litigation field, and the firm has a long and successful track record in securities cases throughout the country, including within this Circuit.[7] Lead Counsel's reputation as experienced counsel in complex cases, who are both willing and able to litigate a case to resolution, facilitated Lead Counsel's ability to negotiate the Settlement, ultimately resulting in the $48 million recovery.

---

[7] *See, e.g., Hefler v. Wells Fargo & Co.*, No. 16-cv-05479 (N.D. Cal.) (BLB&G, as Lead Counsel, obtained approval of $480 million settlement); *In re Allergan, Inc. Proxy Violation Sec. Litig.*, No. 8:14-cv-02004 (C.D. Cal.) (BLB&G, as Co-Lead Counsel, obtained approval of $250 million settlement); *In re Maxim Integrated Prods., Inc. Sec. Litig.*, No. 08-00832 (N.D. Cal.) (BLB&G, as Co-Lead Counsel, obtained approval of $173 million settlement); *In re New Century*, No. 07-cv-00931 (C.D. Cal.) (BLB&G, as Lead Counsel, obtained approval of $125 million settlement); *In re Int'l Rectifier Corp. Sec. Litig.*, No. 07-02544 (C.D. Cal.) (BLB&G, as Co-Lead Counsel, obtained approval of $90 million settlement); *see also* Firm Resume of BLB&G (Harrod Decl. Ex. 4A-5).

From the outset, Lead Counsel aggressively sought to obtain the maximum recovery for the Settlement Class. Through Lead Counsel's persistent work, Plaintiffs were able to plead detailed allegations based on counsel's extensive investigation; largely defeat Defendants' motions to dismiss; move for partial summary judgment; conduct significant fact discovery, which included the resolution of numerous discovery disputes; and work with experts and consultants to present strong counter-arguments to Defendants' positions (including particularly on loss causation and damages). ¶¶ 19-58. Lead Counsel's extensive efforts and skill leading to the Settlement strongly support the requested percentage fee.

The quality and vigor of opposing counsel are also important in evaluating the services rendered by Lead Counsel. *See, e.g.*, *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977). Defendants Volkswagen and Diess were represented in this Action by Sullivan & Cromwell LLP, one of the country's most prestigious and experienced defense firms, which vigorously represented its clients. ¶ 124. Defendants Horn and Winterkorn were represented by similarly prestigious and experienced defense firms.[8] The fact that Lead Counsel achieved this excellent Settlement for the Settlement Class in the face of this formidable legal opposition further evidences the quality of its work.

### d. The Contingent Nature Of The Fee And The Financial Burden Carried By Counsel Support The Fee Request

The Ninth Circuit has confirmed that a determination of a fair and reasonable fee must include consideration of the contingent nature of the fee and the obstacles surmounted:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Richard Posner, *Economic Analysis of Law* § 21.9, at 534-35 (3d ed. 1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

*WPPSS*, 19 F.3d at 1299; *see also Omnivision*, 559 F. Supp. 2d at 1047; *In re Dynamic Random Access*

---

[8] Defendant Horn was represented by Schertler & Onorato, LLP, and Defendant Winterkorn by Joseph Hage Aaronson LLC. ¶ 124.

*Memory (DRAM) Antitrust Litig.*, 2007 WL 2416513, at *1 (N.D. Cal. Aug. 16, 2007).

Here, Plaintiffs' Counsel received no compensation during this litigation, invested over 14,000 hours for a total lodestar of approximately $7.514 million, and incurred expenses totaling over $296,000 in prosecuting and resolving the case. ¶¶ 114, 120. Additional work in implementing the Settlement and claims administration will also be required. Any fee award and expense reimbursement have always been at risk and contingent on the result achieved and on this Court's discretion in awarding fees and expenses.

Indeed, the risk of no recovery in complex cases is real. ¶¶ 65-70. Lead Counsel knows from personal experience that, despite the most vigorous and competent efforts, their success in contingent litigation such as this is never guaranteed. The commencement of a class action and denial of motions to dismiss are no guarantee of success. These cases are not always settled, nor are plaintiffs' lawyers always successful.[9] Hard, diligent work by skilled counsel is required to develop facts and theories to prosecute a case or persuade defendants to settle on terms favorable to a class.

> **e.** **Awards Made In Similar Cases And The Amount Of A Lodestar Cross-Check Support The Fee Request**

Lead Counsel's fee request is also supported by awards made in similar cases. As discussed in Section II.A.3.a. above, the 25% fee request is in line with the Ninth Circuit's "benchmark" for contingency-fee litigation and within the range of fee percentages awarded in comparable settlements. As discussed in Section II.A.3.b. above, the resulting multiplier of approximately 1.59 on Plaintiffs' Counsel's lodestar is also the low end of the typical range of lodestar multipliers applied in cases of this nature with substantial contingency-fee risks.

---

[9] *See, e.g., In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 504 (2d Cir. 2010) (affirming summary judgment in favor of defendant on loss-causation grounds); *see also Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict); *In re Apple Computer Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) (overturning jury verdict for plaintiffs after extended trial).

### f.    The Reaction Of The Settlement Class To Date Supports The Fee Request

The class's reaction to a proposed settlement and fee request is a relevant factor in approving fees. *See Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *7 (N.D. Cal. Feb. 2, 2009); *Omnivision*, 559 F. Supp. 2d at 1048. Here, the Claims Administrator began mailing the Notice Packet to potential Settlement Class Members on December 19, 2018. *See* Villanova Decl. ¶¶ 3-5. As of April 3, 2019, 217,587 Notice Packets have been mailed to potential Settlement Class Members and their nominees. *Id.* ¶ 8. In addition, the Summary Notice was published in *Investor's Business Daily* and transmitted over the PR Newswire on December 31, 2018. *Id.* ¶ 9. The Notice informed Settlement Class Members that Lead Counsel would seek fees "in an amount not to exceed 25% of the Settlement Fund (net of Court-approved Litigation Expenses)." Notice ¶¶ 5, 73. The Notice further informed Settlement Class Members of their right to object to the request for attorneys' fees and expenses. While the deadline for filing any objections is not until April 18, 2019, to date, no Settlement Class Member has filed an objection to the fees and expenses requested. ¶¶ 99, 131, 143.

### 5.    The Fee Request Is Supported By Plaintiffs

Both ASHERS and Miami Police are institutional investors—precisely the type of financially interested plaintiffs that Congress sought to encourage to play an active role in securities litigation by enacting the PSLRA. The PSLRA was intended to encourage institutional investors like Plaintiffs to assume control of securities class actions in order to "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 731 (1995). Congress believed that these institutions would be in the best position to monitor the prosecution of securities class actions and to assess the reasonableness of counsel's fee requests.

In their role as fiduciaries for the Settlement Class, Plaintiffs have closely supervised, monitored, and actively participated in the prosecution and settlement of the Action. *See* Smith Decl. ¶¶ 6-8; Kerr Decl. ¶¶ 5-7. Based on their direct observation of the high quality of work performed by Plaintiffs' Counsel throughout this litigation, ASHERS and Miami Police both believe that the

requested fee is reasonable in light of the substantial recovery in the Action, the work counsel performed, and the risks of the litigation. *See* Smith Decl. ¶ 8; Kerr Decl. ¶ 7. Accordingly, Plaintiffs' endorsement of the fee request in this PSLRA action supports its approval. *See, e.g.*, *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *8 (S.D.N.Y. Nov. 7, 2007) ("public policy considerations support the award in this case because the Lead Plaintiff . . . —a large public pension fund—conscientiously supervised the work of lead counsel and has approved the fee request"); *In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 442 (D.N.J. 2004) ("Significantly, the Lead Plaintiffs, both of whom are institutional investors with great financial stakes in the outcome of the litigation, have reviewed and approved Lead Counsel's fees and expenses request.").

## B. LEAD COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

Lead Counsel also requests that the Court grant its application for reimbursement of its Litigation Expenses incurred in prosecuting and resolving this litigation. ¶ 112. Expenses are reimbursable in a common-fund case where they are of the type typically billed by attorneys to paying clients in the marketplace. *See, e.g.*, *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (plaintiff may recover "those out-of-pocket expenses that 'would normally be charged to a fee paying client'"); *Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.").

From the beginning of the case, Lead Counsel was aware that it might not recover any of its expenses and would not recover anything unless and until the Action was successfully resolved. Lead Counsel also understood that, even assuming that the case was ultimately successful, an award of expenses would not compensate its for the lost use of the funds advanced to prosecute this Action. Thus, Lead Counsel was motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the Action. ¶ 134.

As discussed in detail in the Harrod Declaration, Lead Counsel incurred $296,879.86 in Litigation Expenses in litigating the Action. ¶¶ 133-140. The expenses for which payment is sought were reasonable and necessary for the prosecution and resolution of the litigation and are of the types that are routinely charged to hourly paying clients. These include expert fees, document-management

costs, online research, service of process expenses, out-of-town travel expenses, court fees, copying costs, and postage expenses. ¶¶ 135-139. The largest incurred expense is for the retention of Plaintiffs' experts, in the amount of $146,348.25, or approximately 49% of the total Litigation Expenses. ¶ 136. Another large component of the Litigation Expenses for which reimbursement is the combined costs for online legal and factual research, which amount to $64,385.67, or approximately 22% of the total amount of expenses. ¶ 137. Also, discovery/document management costs, in the amount of $52,551.43, represented approximately 18% of the total amount of expenses. ¶ 138. A complete breakdown by category of the expenses incurred by Lead Counsel is presented in Exhibit 5 to the Harrod Declaration. These expense items are incurred separately by Lead Counsel and are not duplicated in the firm's hourly rates.

The Notice provided to potential Settlement Class Members informed them that Lead Counsel intends to apply for the reimbursement of Litigation Expenses incurred by Plaintiffs' Counsel in an amount not to exceed $500,000. The amount of expenses now sought by Lead Counsel— $296,879.86—is significantly less than the amount stated in the Notice. The deadline for objecting to the fee and expense application is April 18, 2019. To date, there have been no objections to the request for attorneys' fees and litigation expenses.

## C. PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE COSTS AND EXPENSES UNDER 15 U.S.C. §78u-4(a)(4)

Lead Counsel also seek reimbursement of $7,327.99 to Plaintiffs. ¶ 141. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4); *see also Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (holding that named plaintiffs are eligible for "reasonable" payments as part of class-action settlement).

When evaluating the reasonableness of a lead-plaintiff award, courts may consider factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation," among others. *Staton*, 327 F.3d at 977. Here, Plaintiffs both took active roles in the litigation and have been fully committed to pursuing the class's claims since they became involved

in the litigation. *See* Smith Decl. ¶ 6; Kerr Decl. ¶ 5. These efforts, which included analyzing the potential claims and engaging Lead Counsel to pursue them, reviewing pleadings and briefs filed in the Action, assisting in responding to discovery, and consulting with counsel regarding the settlement negotiations, required employees of Plaintiffs to dedicate time they otherwise would have devoted to their regular duties. *See id.*[10] The requested reimbursement amounts are based on the number of hours that Plaintiffs' employees committed to these activities multiplied by a reasonable hourly rate for each employee. The amounts requested, $4,940.49 for ASHERS and $2,387.50 for Miami Police, are reasonable. *See, e.g., In re HP Sec. Litig.*, No. 3:12-cv-05980-CRB, slip op at 2 (N.D. Cal. Nov. 16, 2015) (Breyer, J.), ECF No. 279 (Harrod Decl. Ex. 13) (awarding $162,900 to lead plaintiff from settlement fund as "reimbursement for its costs and expenses directly related to its representation of the Settlement Class"); *see also Todd v. STAAR Surgical Co.*, 2017 WL 4877417, at *6 (C.D. Cal. Oct. 24, 2017) ($10,000 award); *In re Geron Corp. Sec. Litig.*, No. 3:14-cv-01224-CRB, slip op at 2 (N.D. Cal. July 21, 2017) (Breyer, J.), ECF No. 135 (Harrod Decl. Ex. 14) ($10,000 award); *Buccellato v. AT&T Operations, Inc.*, 2011 WL 4526673, at *4 (N.D. Cal. June 30, 2011) ($20,000 award).

## III.    CONCLUSION

From the outset of this litigation, Plaintiffs faced determined adversaries represented by experienced counsel. With no assurance of success in a case presenting substantial risks, Lead Counsel pursued the Action and successfully obtained the $48 million Settlement for the benefit of the Settlement Class. The Settlement reflects Lead Counsel's determination and efforts in the face of significant risk. Accordingly, Lead Counsel respectfully submits that the Court should approve the fee and expense application (i) awarding Plaintiffs' Counsel 25% of the Settlement Fund, net of expenses, (ii) awarding $296,879.86 for Lead Counsel's Litigation Expenses, and (iii) awarding $4,940.49 and $2,387.50 to Plaintiffs ASHERS and Miami Police, respectively, for their costs and expenses directly related to their representation of the Settlement Class.

---

[10] The Declarations submitted by ASHERS and Miami Police state the total number of hours spent by each of their employees on the Action, broken down by the following phases of the litigation: (i) Investigation and Initiation of the Litigation, (ii) Review of Pleadings, (iii) Discovery, and (iv) Settlement.

Dated: April 5, 2019

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

By: _s/ James A. Harrod_
James A. Harrod (*pro hac vice*)
Jai Chandrasekhar (*pro hac vice*)
Adam D. Hollander (*pro hac vice*)
Kate W. Aufses (*pro hac vice*)
Jim.Harrod@blbglaw.com
Jai@blbglaw.com
Adam.Hollander@blbglaw.com
Kate.Aufses@blbglaw.com
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444

*Attorneys for Lead Plaintiff ASHERS, Plaintiff Miami Police, and the Settlement Class*

**KLAUSNER KAUFMAN JENSEN & LEVINSON**
Robert D. Klausner
Stuart A. Kaufman
bob@robertdklausner.com
stu@robertdklausner.com
780 NW 4th Street
Plantation, FL 33317
Telephone: (954) 916-1202
Facsimile: (954) 916-1232

*Counsel for Plaintiff Miami Police*

#1280457