# Exhibit 1

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/19/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

This Document Relates to All Actions

14-MD-2543 (JMF)
14-MC-2543 (JMF)

ORDER NO. 25

------------------------------------------------------------------------x

**[Regarding the Selection of Personal Injury and Wrongful Death
Bellwether Cases and Early Trial Scheduling]**

## INTRODUCTION

1. In June 2014, the United States Judicial Panel on Multidistrict Litigation ("JPML") began transferring cases relating to alleged defects in General Motors vehicles from various judicial districts to this Court for coordinated or consolidated pretrial proceedings. In addition to numerous cases seeking economic loss damages, *In re General Motors LLC Ignition Switch Litigation*, MDL No. 2543, currently includes more than one thousand plaintiffs who have filed personal injury and wrongful death claims against General Motors LLC ("New GM") and other defendants. At the conclusion of pretrial proceedings, the JPML must remand these personal injury cases (as well as economic loss cases) back to the originating/transferor courts across the country. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34 (1998) (noting that 28 U.S.C. § 1407 "obligates the Panel to remand any pending case to its originating court when, at the latest, [] pretrial proceedings have run their course"). The originating courts will then face the prospect of trying (or settling) scores of cases involving similar claims.

2. Before reaching that point in the course of this proceeding, the Court is tasked with identifying and implementing processes and tools to manage the litigation in an effective, efficient, and just manner. Lawyers and courts recognize that bellwether or test trials may be important case

management tools in a multidistrict proceeding involving numerous individual claims. For example, United States District Judge Eldon Fallon, who presided over the MDL proceedings concerning *Vioxx*[1] and *Propulsid*,[2] has noted that "by establishing a mechanism for conducting 'bellwether' or 'representative' trials, the transferee court can enhance and accelerate both the MDL process itself and the global resolutions that often emerge from that process." Fallon, *et al.*, *Bellwether Trials in Multidistrict Litigation*, 82 TUL. L. REV. 2323, 2325 (2008). Indeed, this Court has held that "bellwether trial[s] [] allow[] a court and jury to give the major arguments of both parties due consideration without facing the daunting prospect of resolving every issue in every action." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, No. 00-1898, MDL No. 1358 (SAS), 2007 WL 1791258, at *2 (S.D.N.Y. June 15, 2007); *see also, e.g.*, *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997) ("The notion that the trial of some members of a large group of claimants may provide a basis for enhancing prospects of settlement or for resolving common issues or claims is a sound one that has achieved general acceptance by both bench and bar."). Bellwether trials also provide the parties with an opportunity to develop litigation frameworks that can be used in cases remanded to the originating courts.

3.     The Court previously directed the parties to meet and confer "regarding a reasonable, but aggressive schedule that provides for bellwether trials as quickly as reasonably possible, given the nature and extent of the discovery and the claims in this litigation." Order No. 18 § VI; *see also* Order No. 22 § VII. After engaging in the meet and confer process, the parties were unable to agree upon a joint proposal for selecting personal injury/wrongful death bellwether cases or the schedule for trying such cases. Lead Counsel for the MDL Plaintiffs ("Lead Counsel")

---

[1]   *In re Vioxx Products Liability Litigation*, MDL No. 1657.

[2]   *In re Propulsid Products Liability Litigation*, MDL No. 1355.

and counsel for the MDL Defendants have submitted letter briefs supporting their respective proposals.  (14-MD-2543 Docket Nos. 417, 418; *see also* 14-MD-2543 Docket Nos. 372, 375).

4. The Court has considered these submissions, the parties' oral arguments at the status conference held on November 6, 2014, bellwether trial orders from other federal courts handling MDL proceedings, and literature discussing the use of bellwether trials in litigation.  The Court finds that bellwether trials will further the goal of effective and efficient case management in this MDL.  Among other things, such trials will help the Court and the parties to (a) evaluate the claims and defenses related to common issues in the proceeding; and (b) better understand the costs and burdens of subsequent litigation.

5. This Order contains the bellwether trial plan for cases in MDL 2543 involving personal injury and wrongful death claims based on alleged defects in vehicles manufactured by New GM or General Motors Corporation ("Old GM").  The Order sets forth the procedures for identifying and selecting claims to be tried under the plan and establishes the discovery and trial schedule for those cases.

6. Notwithstanding the advantages and usefulness of bellwether trials in litigation of this sort, the Court is of the view that there may be other, less expensive means that the Court and parties could and should use — in addition to bellwether trials — to advance the litigation and promote resolution of cases individually or globally, including but not limited to early neutral evaluation and summary jury trials (either on select issues, such as gross negligence and punitive damages, or in select cases).  The parties are directed to continue conferring about such additional means and should be prepared at future status conferences to address whether and when such means could or should be used.

## IDENTIFICATION OF BELLWETHER ELIGIBLE CASES

7. Eighteen (18) personal injury and wrongful death cases will be identified for case-specific fact discovery (the "Initial Discovery Pool") and then a subset of those cases will be subsequently selected for additional pretrial discovery and proceedings in preparation for trials starting in January 2016 (the "Early Trial Cases").

8. To be eligible for inclusion in the Initial Discovery Pool, a claim must satisfy the following criteria:

   a. Plaintiff's claim must involve a personal injury or death;

   b. Plaintiff's claim must involve an accident occurring after New GM acquired substantially all of Old GM's assets on July 10, 2009;

   c. The complaint containing Plaintiff's claim must have been filed and entered on the MDL 2543 docket or transferred by the JPML to the MDL (as defined below) by December 31, 2014;

   d. Plaintiff must not have accepted an offer through the GM Ignition Compensation Claims Resolution Facility; and

   e. By January 16, 2015, Plaintiff must have submitted a Short-Form Plaintiff Personal Injury Fact Sheet ("Short-Form PFS") that is substantially complete.

9. Federal law provides this Court with broad power to manage pretrial activities in this litigation. Many cases in this MDL proceeding were transferred from other courts to this venue by the JPML. Absent agreement by the parties, 28 U.S.C. § 1407 requires the JPML to remand a case back to the originating court before trial. Further, Order No. 1 authorized direct filing "in the Southern District of New York of related cases that emanate from other districts and that would appropriately be included in this MDL." Order No. 1 § III. The Court made clear,

however, that "upon completion of all pretrial proceedings applicable to a case directly filed in this Court pursuant to this provision, this Court, pursuant to 28 U.S.C. § 1404(a), will transfer that case to a federal district court of proper venue, as defined in 28 U.S.C. § 1391, after considering the recommendations of the parties to that case." *Id.* Accordingly, as discussed in paragraphs 35-37 below, for a claim to be eligible for inclusion in the Initial Discovery Pool, plaintiffs and defendants involved in the claim must waive any applicable venue and *forum non coveniens* challenges and agree that the claim can be tried in the United States District Court for the Southern District of New York without remanding the case to the transferor forum as required under *Lexecon*, 523 U.S. at 34.

## SUBMISSION OF PLAINTIFF PERSONAL INJURY FACT SHEETS

10. The Court has approved a Short-Form PFS that includes document requests and a variety of written authorizations for the release of records ("Authorizations"). *See* Exhibit 1. Each Plaintiff must submit a completed Short-Form PFS, executed Authorizations, and documents responsive to the requests in the Short-Form PFS ("Responsive Documents") pursuant to the terms of this Order.

11. A completed Short-Form PFS, which requires that each Plaintiff sign a Declaration under penalty of perjury, shall be considered to be interrogatory answers and responses to requests for production under the Federal Rules of Civil Procedure, and will be governed by the standards applicable to written discovery under the Federal Rules of Civil Procedure. Accordingly, MDL Defendants' use of the Short-Form PFS is in lieu of interrogatories and other discovery devices that they would otherwise have propounded, without prejudice to MDL Defendants' right to propound additional discovery as part of the bellwether trial program, in cases selected for trial, or upon remand of a case to its transferor court.

12. For cases that are directly filed in this judicial district and entered on the MDL 2543 docket on or before December 31, 2014, each Plaintiff must complete and submit a Short-Form PFS, applicable executed Authorizations, and Responsive Documents by January 16, 2015.

13. For cases the JPML transfers to MDL 2543 on or before December 31, 2014, each Plaintiff must complete and submit a Short-Form PFS, applicable executed Authorizations, and Responsive Documents by January 16, 2015. A case shall be deemed transferred to MDL 2543 either: (a) on the date the Clerk enters a certified copy of the JPML's Conditional Transfer Order on the docket of this Court, or (b) where transfer is contested, the date of transfer in any subsequent order from the JPML.

14. For cases that are directly filed in this judicial district and entered on the MDL 2543 docket on or after January 1, 2015, each Plaintiff must complete and submit a Short-Form PFS, applicable executed Authorizations, and Responsive Documents within forty (40) days after the complaint has been entered on the docket.

15. For cases the JPML transfers to this MDL on or after January 1, 2015, each Plaintiff must complete and submit a Short-Form PFS, applicable executed Authorizations, and Responsive Documents within forty (40) days after the case has been transferred to this Court.

16. Plaintiff's Short-Form PFS submission must be substantially complete, which means that a Plaintiff must:

    a. Answer all applicable questions in the Short-Form PFS (Plaintiff may answer questions in good faith by indicating "not applicable," "I don't know" or "unknown");

    b. Include a signed Declaration;

    c. Provide duly executed record release Authorizations; and

   d. Produce the documents requested in the Short-Form PFS, to the extent such documents are in Plaintiff's possession, custody, or control.

 17. All objections to the admissibility of information contained in the Short-Form PFS are reserved, and therefore no objections shall be lodged in the responses to the questions and requests contained in the Short-Form PFS.  This paragraph, however, does not prohibit a Plaintiff from withholding or redacting information based upon a recognized privilege.  If a Plaintiff withholds or redacts any information on the basis of privilege, he or she shall provide the MDL Defendants with a privilege log.

 18. Nothing in the Short-Form PFS shall be deemed to limit the scope of inquiry at depositions and admissibility of evidence at trial.  The scope of inquiry at depositions shall remain governed by the Federal Rules of Civil Procedure.  The Federal Rules of Evidence shall govern the admissibility of information contained in responses to the Short-Form PFS and no objections are waived by virtue of providing any Short-Form PFS response.

 19. As set forth above, Authorizations together with copies of such records, to the extent that those records or copies thereof are in a Plaintiff's possession, custody, or control, shall be provided with the Short-Form PFS at the time that the Plaintiff is required to submit a Short-Form PFS pursuant to this Order.

 20. In addition to the addressed Authorizations, Plaintiff's counsel shall also maintain in their file unaddressed, executed Authorizations.  Plaintiff's counsel shall provide executed Authorizations to counsel for the MDL Defendants (or communicate an objection to said request for authorizations) within fourteen (14) days of a request for such Authorizations.

 21. Undated Authorizations constitute permission for the MDL Defendants to date (and where applicable, re-date) Authorizations before sending them to records custodians.  Should

Plaintiffs provide Authorizations that are dated, this shall not constitute a deficiency or be deemed to be a substantially non-complete Short-Form PFS.

22. If an agency, company, firm, institution, provider or records custodian to whom any Authorization is presented refuses to provide records in response to that Authorization, the MDL Defendants shall notify a Plaintiff's individual representative counsel. Should a particular form be required, Defendants will provide it to Plaintiff's individual representative counsel. The individual Plaintiff shall thereafter execute and return within fourteen (14) days that authorization the agency, company, firm, institution, provider, or records custodian requires.

23. The MDL Defendants or their designees shall have the right to contact agencies, companies, firms, institutions or providers to follow-up on record copying or production.

24. Any Plaintiff who fails to comply with his or her Short-Form PFS obligations under this Order may be subject to having his or her claims dismissed. If Plaintiff has not submitted a completed Short-Form PFS within fourteen (14) days following the due date set forth herein, the MDL Defendants shall send a Notice of Overdue Discovery to Plaintiff's counsel identifying the discovery overdue and stating that, unless the Plaintiff complies with the Court's discovery orders, the case may be subject to dismissal. If Plaintiff fails to submit a completed Short-Form PFS within fourteen (14) days after service of the Notice of Overdue Discovery, the MDL Defendants may move the Court for an Order dismissing the relevant Complaint without prejudice. Plaintiff shall have fourteen (14) days from the date of the MDL Defendants' motion to file a response either (a) certifying that the Plaintiff has submitted a completed Short-Form PFS or (b) opposing the MDL Defendants' motion for other reasons. If a Plaintiff certifies that he or she has submitted a completed Short-Form PFS, the Plaintiff's claims shall not be dismissed (unless the Court finds that the certification is false or incorrect).

25. If the Court dismisses a Complaint without prejudice under the previous paragraph, the Order will be converted to a Dismissal With Prejudice upon the MDL Defendants' motion — to be filed no earlier than thirty (30) days after the Court's entry of the Order of Dismissal without Prejudice — unless a Plaintiff submits a completed Short-Form PFS or moves to vacate the dismissal without prejudice within that same time period.

### SELECTION OF THE INITIAL DISCOVERY POOL

26. The *Manual for Complex Litigation* notes that if bellwether trials "are to produce reliable information about other mass tort cases, the specific plaintiffs and their claims should be representative of the range of cases." MANUAL FOR COMPLEX LITIGATION (Fourth) § 22.315 (Federal Judicial Center 2004); Rothstein, *et al.*, MANAGING MULTIDISTRICT LITIGATION IN PRODUCTS LIABILITY CASES: A POCKET GUIDE FOR TRANSFEREE JUDGES at 44 (Federal Judicial Center 2011) ("If bellwether trials are to produce reliable information about the other cases in the MDL, the specific plaintiffs and their claims should be representative of the range of cases.").

27. There are multiple methods for selecting cases to populate the pool from which bellwether trials will be selected. For instance, some have suggested the cases be selected randomly. *See* MANUAL FOR COMPLEX LITIGATION (Fourth) § 22.315 (approving random selection methods). But the random-selection method has become increasingly disfavored for reasons explained by Judge Fallon:

> Under the random-selection option, the trial-selection pool is filled with a prearranged number of cases selected randomly from the total universe of cases in the MDL or from various logical subsets of that group. This method is easy to perform, but it can be problematic. If cases are selected at random, there is no guarantee that the cases selected to fill the trial-selection pool will adequately represent the major variables.

Fallon, *et al.*, *Bellwether Trials in Multidistrict Litigation*, 82 TUL. L. REV. at 2348; *see also In re Yasmin & Yaz (Drospirenone) Marketing, Sales Practices & Prods. Liab. Litig.*, MDL No. 2100,

9

No. 09-MD-02100, 2010 WL 4024778, at *2 (S.D. Ill. Oct. 13, 2010) ("Most modern plans seem to disfavor random selection in order to have better control over the representative characteristics of the cases selected. . . . The Court finds that the process that will provide the best sampling of cases will be one that allows both sides of this litigation to have a role in selecting cases.").

28.     In this proceeding, the Court finds that the most effective process for populating the Initial Discovery Pool is to allow both Plaintiffs and MDL Defendants to play a role in selecting the cases. Accordingly, this Order sets forth the procedures for identifying eighteen (18) representative bellwether claims for the Initial Discovery Pool, from which the Early Trial Cases will later be drawn.

29.     To facilitate efficient review of claim information, Lead Counsel shall place all Short-Form PFSs submitted by the deadline in an electronic and searchable database. Lead Counsel shall make the database available to counsel for the MDL Defendants by January 23, 2015.

30.     Immediately after the electronic and searchable fact sheet database is made available to counsel for the MDL Defendants, Lead Counsel and counsel for the MDL Defendants will meet and confer regarding (a) the type of alleged defects that should be encompassed within the scope of the bellwether trial plan and (b) the categorization of claims in the plan. If the parties cannot reach agreement by January 28, 2015, they shall immediately — but in no event later than February 2, 2015 — present these issues to the Court for resolution.

31.     Lead Counsel and counsel for the MDL Defendants shall meet and confer to discuss the process for (a) adding to the fact sheet database Short-Form PFSs that are submitted on or after January 17, 2015, and (b) Plaintiffs submitting amendments to previously submitted Short-Form PFSs.

32. It is important that the cases selected by the parties for inclusion in the Initial Discovery Pool be representative of the claims in the various categories agreed upon by the parties or, if necessary, determined by the Court. Further, the Initial Discovery Pool should contain a relatively equal number of representative claims from each category.

33. By 5 p.m. on February 17, 2015, Lead Counsel and counsel for the MDL Defendants will each file a list of nine (9) eligible Plaintiff's claims for inclusion in the Initial Discovery Pool. Lead Counsel and counsel for the MDL Defendants shall identify each claim by the named Plaintiff, MDL Docket Number, and provide the name of the Plaintiff's primary counsel.

34. For this bellwether trial plan to succeed, the cases selected as trial candidates must constitute a representative sampling of cases in this proceeding. To that end, the Court expects the parties to exercise good faith in selecting cases for potential inclusion in the Initial Discovery Pool, and not to select cases presenting unique or idiosyncratic facts or law that would render the results of these cases unenlightening. The Court cannot police this request and will not entertain applications regarding whether one side or another has abided by it. The Court merely sets forth its expectations.

35. For similar reasons, it is important for the parties to exhibit a willingness to waive venue and *forum non conveniens* challenges, including those issues outlined in *Lexecon*. The MDL Defendants and Plaintiffs, through their representative leaders, have expressed a willingness to waive such challenges. Accordingly, MDL Defendants have agreed to *Lexecon* waivers for all claims selected for inclusion in the Initial Discovery Pool. For all Plaintiffs selected by Lead Counsel for inclusion in the Initial Discovery Pool, it is understood that there shall be a *Lexecon* waiver for all those cases. For any Plaintiff selected by the MDL Defendants for inclusion in the

Initial Discovery Pool, if the Plaintiff selected is represented by Lead Counsel or their law firms, it is understood that there shall be a *Lexecon* waiver for that Plaintiff. If a Plaintiff selected by the MDL Defendants is not represented by Lead Counsel or their law firms, the Court recommends a *Lexecon* waiver and Lead Counsel will use best efforts to obtain such a waiver.

36. Any Plaintiff selected for the Initial Discovery Pool who (a) is not represented by Lead Counsel or their firms and (b) wishes to assert a *Lexecon* objection to his/her case being tried by the Court must file an objection in writing by February 24, 2015. If no objection is filed by the deadline, a Plaintiff will be deemed to have waived any rights under *Lexecon* and to have agreed to have his/her case tried by this Court.

37. If an objection is asserted and counsel for the MDL Defendants dispute that the objecting Plaintiff has a right to assert an objection under *Lexecon*, the parties will immediately — but in no event later than February 27, 2015 — present the issue to the Court for resolution. If the parties do not dispute the objection or if the Court sustains a Plaintiff's *Lexecon* objection, then the claim will be deemed removed from the Initial Discovery Pool. In that event, Defendants will have three (3) business days to select a replacement case.

38. *Lexecon* objections other than those for claims tried in the Court under the bellwether trial plan are preserved. Thus, if a claim in the Initial Discovery Pool is not selected for trial as an Early Trial Case, then the Court will restore the rights of the Plaintiff and the MDL Defendants in that claim to object to venue and jurisdiction in the Southern District of New York for purposes of trial.

39. The parties will replace duplicates from their respective lists as follows: Lead Counsel will replace the first duplicate, counsel for the MDL Defendants will replace the next

duplicate, and so on in alternating turns until all duplicates have been resolved and a full list of eighteen (18) cases is achieved. The deadline to replace all duplicates is February 20, 2015.

40. The parties shall meet and confer if a dispute arises over whether any of the selected claims are eligible for inclusion in the Initial Discovery Pool. If the parties are unable to resolve the dispute in good faith, the parties will immediately — by in no event later than February 23, 2014 — present the issue to the Court for resolution.

41. If a Plaintiff selected for the Initial Discovery Pool voluntarily settles his/her case on or before April 16, 2015, Lead Counsel will have the option to select a replacement case within three (3) business days. If a Plaintiff selected for the Initial Discovery Pool voluntarily dismisses his/her case on or before April 16, 2015, counsel for the MDL Defendants will have the option to select a replacement case within three (3) business days. (The parties shall meet and confer to discuss whether cases selected for the Initial Discovery Pool that are voluntarily settled or dismissed after April 16, 2015, should be replaced and, if so, how. The parties should include that issue on their proposed agenda for a status conference at the appropriate time.)

42. Case-specific core fact discovery of Plaintiffs in the Initial Discovery Pool will commence on February 18, 2015.[3] (The Court recognizes that the final composition of the Initial Discovery Pool may not be settled as of that date, in light of the potential for duplicate selections

---

[3] In their proposed bellwether orders, the parties included provisions requiring the eighteen Plaintiffs in the Initial Discovery Pool to submit supplemental fact sheets to be agreed upon by the parties. Although those provisions may have been included based on comments made by the Court at the November 6, 2014 status conference, the Court does not think that they are necessary or advisable. Instead, upon reflection, the Court believes that it makes more sense to begin case-specific core fact discovery immediately upon selection of the Initial Discovery Pool rather than providing time for an intermediate step. To the extent that the MDL Defendants need or want additional information from the Plaintiffs chosen for the Initial Discovery Pool that would have been in the supplemental fact sheet, they may seek it through case-specific discovery in the ordinary course.

and *Lexecon* objections.  Nevertheless, the Court does not believe that that is a reason to delay the beginning of core fact discovery.)  Among other things, case-specific fact discovery may consist of (a) additional document requests beyond those in the Short-Form PFS; (b) a deposition of Plaintiff; (c) depositions of treating physicians or medical providers; and (d) depositions of witnesses to the incident that is the subject of the claim.  Case-specific core fact discovery of Plaintiffs in the Initial Discovery Pool shall conclude no later than June 22, 2015.

43.     As directed by Order No. 20, the parties are operating under the Phase One Discovery Plan, the scope of which is limited to NHTSA Recall Campaign Numbers 14V346, 14V355, 14V394, 14V400, 14V490, 14V540, and 14V153.  Under Order No. 20, New GM is to begin a rolling production of Phase One Discovery documents by December 22, 2014, and will make reasonable efforts to substantially complete its production by May 5, 2015.  The parties, the MDL Court, and the courts in the Coordinated Actions desire to minimize the expense and inconvenience of this litigation by, as a general rule, providing for a single deposition of any witness.  Accordingly, unless the Court orders otherwise for good cause shown, depositions of former or current employees or officers of New GM or Old GM will start after New GM has substantially completed its Phase One document production.  The parties shall meet and confer, however, regarding whether some depositions may be taken at an earlier time.  If the parties are unable to reach an agreement, the issue shall be presented to the Court for resolution.

## IDENTIFYING AND SELECTING EARLY TRIAL CASES

44.     By 5 p.m. on June 24, 2015, Lead Counsel and counsel for the MDL Defendants will each file a list of five (5) eligible Plaintiff claims from the Initial Discovery Pool for inclusion on a list of potential early trial candidates.  Lead Counsel and counsel for the MDL Defendants

should identify each claim by the named Plaintiff, MDL Docket Number, and provide the name of the Plaintiff's primary counsel.

45.  The parties will replace duplicates from their respective lists as follows: Lead Counsel will replace the first duplicate, counsel for the MDL Defendants will replace the next duplicate, and so on in alternating turns until all duplicates have been resolved and each list contains five (5) cases. The deadline to replace all duplicates is June 26, 2015.

46.  By 5 p.m. on July 1, 2015, Lead Counsel will exercise two (2) strikes against the five (5) early trial candidates selected by the MDL Defendants, and counsel for the MDL Defendants will exercise two (2) strikes against the five (5) early trial candidates selected by Lead Counsel. The remaining six (6) cases — three from each list — will constitute the final set of Early Trial Cases to proceed to case-specific expert discovery.

## EXPERT DISCOVERY FOR EARLY TRIAL CASES

47.  Expert discovery for the Early Trial Cases shall proceed as follows:

- Lead Counsel shall disclose expert witnesses and submit any reports required under Fed. R. Civ. P. 26(a)(2)(B) on or before July 29, 2015; and

- Counsel for the MDL Defendants shall disclose expert witnesses and submit any reports required under Fed. R. Civ. P. 26(a)(2)(B) on or before September 21, 2015.

48.  Pursuant to F.R.E. 26(b)(4), "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial." Accordingly, Lead Counsel shall present their experts for deposition by September 14, 2015, and counsel for the MDL Defendants shall present their experts for deposition by November 5, 2015. All expert and fact discovery shall be completed by no later than November 5, 2015.

## SCHEDULING THE EARLY TRIAL CASES

49. By July 15, 2015, Lead Counsel and counsel for the MDL Defendants shall each submit letter briefs proposing the order of trials and setting forth the parties' supporting rationales for their proposed orders. The Court will then designate the order of the Early Trial Cases.

50. The first Early Trial Case ("MDL Bellwether Trial #1") will start on January 11, 2016. The parties shall submit any *Daubert* motions, any dispositive motions, and any motions *in limine* for MDL Bellwether Trial #1 by November 10, 2015. Unless the Court grants leave to do otherwise, each side shall file no more than a single memorandum of law in support of its *Daubert* motion(s) and a single memorandum of law in support of its motions *in limine*. Any opposition to a *Daubert* or dispositive motion shall be filed by December 1, 2015; any reply shall be filed by December 7, 2015. Unless the Court orders otherwise, memoranda shall comply with the page limits and other requirements set forth in this Court's Local Rules.

51. The Court will issue one or more additional Orders scheduling the pretrial deadlines and dates for the remaining Early Trial Cases. The Court is aware that *Melton v. General Motors LLC, et al.*, Case No. 14-1197-4 (Ga. St. Ct.), is currently scheduled for trial in Cobb County, Georgia, in February 2016. If a state court in a Related or Coordinated Action schedules a trial to commence in 2016, the parties shall immediately notify the Court. The Court will then coordinate with the applicable state courts and, if warranted, adjust the trial dates for the remaining Early Trial Cases.

52. The January 11, 2016 trial date for Bellwether Trial #1 will not be changed absent extraordinary circumstances. The other deadlines set forth herein are subject to change for good

cause shown, except that the parties shall confer before making any application to change any deadline set forth herein.

SO ORDERED.

Dated: November 19, 2014
      New York, New York

JESSE M. FURMAN
United States District Judge