1  Robert J. Giuffra, Jr. *(pro hac vice)*
   giuffrar@sullcrom.com
2  Sharon L. Nelles *(pro hac vice)*
   nelless@sullcrom.com
3  Suhana S. Han *(pro hac vice)*
   hans@sullcrom.com
4  Matthew A. Schwartz *(pro hac vice)*
   schwartzmatthew@sullcrom.com
5  SULLIVAN & CROMWELL LLP
6  125 Broad Street
   New York, New York 10004
7  Telephone:    (212) 558-4000
8  Facsimile:    (212) 558-3588

9  *Attorneys for Defendants Volkswagen AG,*
   *Volkswagen Group of America Finance, LLC*
10 *and VW Credit, Inc.*

11                    **UNITED STATES DISTRICT COURT**

12                  **NORTHERN DISTRICT OF CALIFORNIA**

13                       **SAN FRANCISCO DIVISION**

14

15 IN RE: VOLKSWAGEN "CLEAN              )
16 DIESEL" MARKETING, SALES             ) MDL No. 2672 CRB (JSC)
   PRACTICES, AND PRODUCTS              )
17 LIABILITY LITIGATION                 ) **JOINT CASE MANAGEMENT**
   _____      ) **STATEMENT AND [PROPOSED]**
18 This Document Relates to:            ) **ORDER**
                                        )
19 *United States Securities and Exchange* ) The Honorable Charles R. Breyer
20 *Commission* v. *Volkswagen AG, et al.*, Case )
   No. 19-cv-1391                       )
21 _____      )

22

23

24

25

26

27

28

Plaintiff United States Securities and Exchange Commission ("SEC") and Defendants Volkswagen Aktiengesellschaft ("VWAG"), Volkswagen Group of America Finance, LLC ("VWGoAF"), VW Credit, Inc. ("VCI") and Martin Winterkorn (collectively, "Defendants" or "VW") submit this Joint Case Management Statement and [Proposed] Order pursuant to the Standing Order for All Judges of the Northern District of California – Contents of Joint Case Management Statement, Civil Local Rule 16-9, this Court's March 21, 2019 order (ECF No. 11), and Rule 26(f) of the Federal Rules of Civil Procedure.

## 1. JURISDICTION & SERVICE

*The basis for the court's subject matter jurisdiction over plaintiff's claims and defendant's counterclaims, whether any issues exist regarding personal jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be served, a proposed deadline for service.*

The Court has jurisdiction over the subject matter of the above-captioned action (the "Action") under Section 22 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77v, Section 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1331, because the Action is a civil action arising under the laws of the United States. The parties do not dispute that venue is proper in this Court.

Defendant Winterkorn has not been served with the Complaint and is engaged in discussions with the SEC regarding acceptance of service. Absent an agreement by Winterkorn to accept service, the SEC anticipates filing a motion requesting leave to effect alternative service of the summons and complaint on Winterkorn. Defendant Winterkorn contends that he is not subject to personal jurisdiction in this Court.

Defendants VWAG, VWGoAF and VCI have agreed to accept service of the Complaint in exchange for a briefing schedule for their motion to dismiss negotiated with the SEC and pending Winterkorn's agreement with the SEC regarding acceptance of service.

## 2.   FACTS

*A brief chronology of the facts and a statement of the principal factual issues in dispute.*

**Plaintiff's Statement of Facts[1]:**

The SEC's Complaint, filed on March 14, 2019, alleges VW defrauded U.S. investors in connection with the offer and sale of more than $13 billion in corporate bonds and asset-backed securities during the period it was improperly using undisclosed computer software ("defeat device") to conceal the fact that its so-called "clean diesel" vehicles did not comply with U.S. emissions laws.  VW's sale of its clean diesel vehicles, particularly in the United States where its sales of diesel vehicles was poor, was a vital component of Winterkorn's plan—dubbed "Strategy 2018"—to make VW the largest, most profitable, and most environmentally friendly car company in the world by 2018. Many of VW's senior officials, including Winterkorn, knew that VW was using an illegal defeat device in its clean diesel vehicles.

The SEC alleges that, in connection with VW's sale of bonds and ABS in the United States, VW made material misstatements and omissions of fact in securities offering documents and its responses to due diligence questions (collectively, "Offering Documents"), which were disseminated to U.S. investors and/or underwriters, concerning its vehicles' emissions levels, its use of a defeat device, ongoing government investigations, and related matters.  For example, the complaint alleges that, from 2014 through 2015: (i) VW misrepresented in the Offering Documents that its top priority was reducing harmful vehicle emissions and being an environmental leader in the automobile industry by failing to disclose its use of the defeat device, its true vehicle emissions levels, and existing government investigations into its diesel emissions violations; (ii) VW misleadingly and improperly omitted from its financial statements, which were appended to and incorporated in its Offering Documents, the substantial financial exposure

---

[1]      The SEC disagrees with many of Defendants' characterizations and legal arguments set forth throughout the Joint Case Management Statement.  As just one example, Defendants assert that the SEC is not seeking relief in order to repay any of the harmed investors and that any monetary relief recovered in this case will be paid to the U.S. Treasury.  To the contrary, the SEC often distributes monetary recoveries to harmed investors depending on the facts and circumstances of each case, and may do so here.

it faced relating to the diesel emissions scheme; and (iii) VW misled the bond and ABS underwriters by falsely assuring them, in responses to the underwriters' due diligence questionnaires, that there were no material environmental issues, there were no relevant pending government investigations, VW was not violating the law, and VW had disclosed all facts that a reasonable investor would consider material to its investment in the securities.

Contrary to the representations in its Offering Documents, VW, including Winterkorn, knew, among other things: (i) VW was using an illegal defeat device on nearly every diesel vehicle VW sold in the United States from 2009 through 2015 to evade U.S. emissions laws, (ii) that U.S. regulators had open and active investigations into the emissions violations by VW's vehicles, (iii) VW was violating the law, and (iv) VW had not disclosed all material facts to investors. In fact, VW engineers told Winterkorn and other senior VW officials as early as November 2007 that VW was using the defeat device in its clean diesel vehicles. Meanwhile, VW raised billions of dollars from U.S. investors to fund its business operations despite the fact that many of its senior officials knew that the offering materials and other information it was disseminating to investors and underwriters were false and misleading.

For example, as part of its bond Offering Documents, VW included its audited and interim financial statements. Winterkorn, who knew that VW was using an illegal defeat device in the diesel cars sold in the United States, reviewed, approved and certified the accuracy of the financial statements knowing they were being used to solicit U.S. investors. The financial statements were materially false and misleading because they did not account for the massive exposure VW was facing as a result of its fraud. At the time, VW estimated its financial exposure to the fraud exceeded $20 billion dollars.

Additionally, for the ABS Offerings, VCI did not make any investigations or inquiries into certain matters before making representations about them. For example, VCI falsely represented that there were no pending or threatened regulatory developments affecting any of its affiliates. As detailed in the Complaint, the existence of EPA and CARB investigations into excessively-high emissions from VW diesel vehicles was well known by many individuals at

multiple VCI affiliates, and was also known by individuals within VCI itself, including at least one board member and a member of management. But VCI did not ask any of its affiliates about regulatory developments, and VW had no policies or procedures in place requiring VCI to do so. As a result, VCI made these false and misleading statements and omissions (and others) without any regard to whether they were true.

The SEC further alleges that, as a result of the above false statements and omissions, VW was able to pay lower interest rates on the securities it sold to U.S. investors than it would have had to pay if the true facts were known. Generally, investors require greater compensation for assuming greater investment risk. VW's concealment of its decades-long fraud exposed investors to significant risks without adequately compensating them for those risks. The market highlighted the fact that VW had short-changed investors when, following the public disclosure of VW's fraud in September 2015, the value of VW's bonds plummeted, falling by more than 7% of par value in some cases, and rating agencies downgraded the credit ratings on some of the bonds. As a result, VW improperly benefitted by hundreds of millions of dollars through the fraudulent conduct alleged in the Complaint.

When U.S. authorities began investigating emissions problems with VW vehicles, VW misled government investigators, concocted a sham software fix, and destroyed thousands of incriminating documents and other evidence. As a result of its conduct, VW was later indicted by the United States Department of Justice ("DOJ") and pled guilty to multiple crimes. Many of its senior personnel, including Winterkorn, have also been charged with crimes – in the United States and in Germany – for their roles in the scandal. Despite the amounts it has paid to DOJ for its admitted criminal violations, to the EPA for its violations of environmental laws, and to consumers for selling them defective vehicles, VW has not repaid the hundreds of millions of dollars in benefits it fraudulently obtained from the sale of its corporate bonds and ABS.

The SEC disputes VW's characterization of the release (set forth below) that was part of VW's settlement with the DOJ. First, the SEC is not a party to the release. Second, the language of the release between DOJ and VW does not apply to the civil securities fraud claims brought

by the SEC. Third, DOJ cannot release the SEC's claims. And, fourth, VW is precluded based on prior conduct from now claiming that the release bars the SEC's claims.

The full scope of relief sought by the SEC includes disgorgement, prejudgment interest, civil penalties, permanent injunctions, and an officer and director bar. These remedies have been routinely awarded and affirmed as appropriate by courts throughout the country, including the Ninth Circuit. *See SEC v. Liu*, 754 F. App'x 505, 509 (9th Cir. 2018) (rejecting argument based on *Kokesh* that district court lacked power to order disgorgement); *see also SEC v. Gault*, 751 F. App'x 974, 979-980 (9th Cir. 2018); *SEC v. Platforms Wireless Intern. Corp.*, 617 F.3d 1072, 1096-1098 (9th Cir. 2010).

**Defendants' Statement of Facts:[2]**

The SEC's Complaint alleges violations of U.S. securities laws concerning two types of securities issuances: (i) private placements of bonds issued by VWGoAF pursuant to SEC Rule 144A ("144A Bonds") on May 23, 2014, November 20, 2014, and May 22, 2015; and (ii) offerings of asset-backed securities ("ABS") by VCI, on April 23, 2014, August 12, 2014, October 15, 2014, and February 25, 2015. The August 12, 2014 issuance was effected as a private placement pursuant to Rule 144A ("144A ABS"). The other three ABS issuances were effected as public placements.

*The Subject Securities: 144A Bonds and ABS*

The SEC has brought this action even though (i) all the 144A Bonds were purchased only by Qualified Institutional Buyers ("QIBs"), (ii) Defendants have never missed a principal or interest payment on any of the securities (some of which have already been fully repaid), and (iii) all the securities maintained an investment-grade rating at all times. The 144A Bonds were sold through an initial offering, for which—as the offering memoranda stated—no efficient market existed. Thus, any slight decline in price for any of the 144A Bonds after the EPA's

---

[2]     Defendants vigorously dispute numerous factual assertions and legal arguments by the SEC in this Joint Case Management Statement, and look forward to litigating the merits of the SEC's claims.

September 18, 2015 Notice of Violation ("NOV") is not a reasonable or reliable measurement of the actual impact of the NOV, much less that of the allegedly false or omitted information, on the value of the 144A Bonds themselves or the interest rates at which they would have been marketable at issuance. Moreover, even if the 144A Bonds traded on an efficient market—as the SEC's theory requires—all of the 144A Bonds were priced at or above their pre-NOV value by August 2016. Finally, the majority of the 144A Bonds have already been fully redeemed, and all of the 144A Bonds issued in May 2014 will be fully redeemed within the next few weeks. To the best of Defendants' knowledge, the SEC has never before brought an enforcement action under these circumstances. To the extent that the sophisticated purchasers of the 144A Bonds believe they were harmed, they can seek redress through the on-going private action, *BRS* v. *Volkswagen AG, et al.*, No. 16-cv-3435 (N.D. Cal. filed June 20, 2016), where only a single lead plaintiff has sued claiming losses of less than $70,000.[3]

As for the ABS, not a single investor in the ABS that are the subject of the SEC's Complaint has brought a securities fraud claim against VCI or any of the other Defendants. This is not surprising because (i) the ABS have already been repaid in full; (ii) investors in the ABS received every single interest and principal payment;[4] and (iii) publicly available trading data shows that several of the ABS tranches either experienced an *actual increase* in secondary trading prices following the announcement of the NOV, or experienced *no decline* due to the absence of trading prior to the NOV.

*The Unprecedented Nature of this SEC Action*

The SEC's action—initiated more than three years after the September 18, 2015 public revelation of the existence of the defeat devices in certain diesel vehicles—appears to be driven

---

[3] As the SEC itself has explained, "[t]he key to the analysis of proposed Rule 144A is that certain institutions can fend for themselves." Resale of Restricted Sec.; Changes to Method of Determining Holding Period of Restricted Sec. Under Rules 144 and 145, Securities Act Release No. 33-6806, 1988 WL 1024389, at *14 (Oct. 25, 1988).

[4] As of the NOV, some tranches of the ABS offered on April 23, 2014, October 15, 2014, and February 25, 2015 had already been fully repaid and were no longer outstanding. As of the filing of the SEC's Complaint, none of the ABS were outstanding.

by hindsight bias and is an unfortunate example of government "piling on." VWAG has already paid more than $20 billion in the United States alone for its emissions-related conduct. VWAG has thus far paid almost $14.4 billion in United States consumer relief, $4.96 billion for United States zero-emissions vehicle technology and United States environmental remediation, and $4.3 billion in criminal and civil penalties to the United States Treasury, which is where any recovery obtained by the SEC would likely go. Perhaps the best evidence of the SEC's piling on is that VWAG and its subsidiary, Volkswagen Group of America, Inc. (the direct parent of Defendant VWGoAF), have paid $50 million to the United States Treasury to settle fraud claims brought by the Department of Justice Civil Division for alleged violations of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). As part of the FIRREA settlement, which included the exact same ABS that are the subject of this action, VWAG and its subsidiaries (including VCI and VWGoAF) obtained a broad release that includes civil fraud claims that can be brought by the United States Government.

Defendants believe that the Complaint lacks merit. Defendants deny that the statements and omissions identified in the Complaint were materially false and misleading. As to the ABS, Defendants deny that VCI was negligent in conducting due diligence on the ABS offerings, and that the SEC has adequately alleged negligence by VCI. Defendants also deny the existence of a causal connection between any alleged false or misleading statements and any money or property received by Defendants in connection with the ABS or 144A Bond issuances, because, among other things, the SEC fails to plead that even the most robust due diligence by VCI would have uncovered the defeat devices in certain diesel vehicles. Defendants further deny that any of the individuals actually involved in the preparation of the 144A Bond and ABS issuances knew of the existence of the defeat device or of the potential legal and regulatory consequences of the defeat device. Specifically, given that the EPA and the California Air Resources Board ("CARB") were aware of the results of a spring 2014 study conducted by the International Council on Clean Transportation ("ICCT Study") for over a year and a half before the NOV, Defendants deny that awareness of the results of the ICCT Study demonstrates knowledge of

the use of a defeat device or the extent and scope of regulatory and other exposure resulting from the emissions issues. Furthermore, to the extent that any of Defendants' employees were aware of the defeat device, they could not reasonably have anticipated the scope and scale of Defendants' resulting liability. Historically, emissions violations by automobile or engine manufacturers have been resolved through remediation efforts and modest civil penalties, the largest of which totaled $100 million. Finally, Defendants deny that VWAG or Winterkorn exercised control over VWGoAF in connection with the 144A Bond issuances, or that Winterkorn exercised control over VWAG in connection with the 144A Bond issuances.

Defendant Winterkorn also contends that the claims against him, which concern the 144A Bond issuances only, are flawed for at least two additional reasons. *First*, Defendant Winterkorn contends that he did not participate in those issuances and therefore is not subject to personal jurisdiction based on them. Unlike in the private bondholders action — where this Court found personal jurisdiction over Defendant Winterkorn based on the plaintiff's allegations of "Winterkorn's involvement with reviewing or preparing the Offering Memoranda"[5] — the SEC, after its pre-filing investigation into who prepared those materials, does not allege that Defendant Winterkorn played any role in reviewing, preparing, or otherwise authorizing the offering materials distributed in the United States on which the SEC's claims are premised.[6] *Second*, Defendant Winterkorn contends that the claims against him are factually flawed insofar as they are premised on the assertion that he knew about the defeat devices because he denies learning of the existence of a defeat device until after the last 144A Bond issuance.

*Availability of and Amount of Civil Penalties and Disgorgement Is Determined by Court*

---

[5]    *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2017 WL 3058563, at *17 (N.D. Cal. July 19, 2017).

[6]    The SEC alleges that copies of some financial statements prepared in Germany and signed by Winterkorn were attached, by the individuals who prepared the offerings, to the offering materials distributed in the United States. These financial statements, however, were not prepared or released with the specific purpose of soliciting U.S. investors.

Even if a jury were to find liability as to any of the Defendants, this Court would be tasked with determining what, if any, amount of civil penalties and disgorgement[7] are appropriate. When determining the appropriate civil penalty amount, if any, courts consider: "(1) the degree of scienter involved; (2) the isolated or recurrent nature of the infraction; (3) the defendant's recognition of the wrongful nature of his conduct; (4) the likelihood, because of defendant's professional occupation, that future violations might occur; and (5) the sincerity of his assurances against future violations. . . . Courts also sometimes consider (6) whether a defendant's conduct created substantial losses or the risk of substantial losses to others; (7) a defendant's lack of cooperation with authorities; and (8) whether the penalty that otherwise would be appropriate should be reduced due to a defendant's demonstrated current and future financial condition," and "[t]he court may also consider other sanctions the defendant faces, whether criminal or civil." *SEC* v. *Gold Standard Mining Corp*., 2016 WL 6892101, at *4 (C.D. Cal. May 26, 2016) (citations and internal quotation marks omitted).[8] To the extent the SEC alleges it is entitled to disgorgement, such relief must be "equitable in nature and aimed at the defendant's improper profits." *SEC* v. *Driver*, 2014 WL 6882854, at *2 (C.D. Cal. Dec. 4, 2014). Thus, "the securities violations and the allegedly unlawful gains must be causally connected," *SEC* v. *Wyly*, 71 F. Supp. 3d 399, 405 (S.D.N.Y. 2014), and "it is the SEC's burden to establish *both* a reasonable approximation of profits *and* the causal connection between the approximation and the violations." *SEC* v. *Wyly*, 56 F. Supp. 3d 260, 268 (S.D.N.Y. 2014)

---

[7]    In light of *Kokesh* v. *SEC*, 137 S. Ct. 1635 (2017), and based on the particular circumstances of this Action, any disgorgement sought by the SEC would constitute a penalty. *See In re Sherman*, 491 F.3d 948, 965 n.19 (9th Cir. 2007) ("Under the federal securities laws, the SEC is entitled to seek the disgorgement of ill-gotten gains only for the purpose of preventing unjust enrichment, not as a penalty.").

[8]    *See* 15 U.S.C. §§ 77t(d), 78u(d)(3) ("[T]he court shall have jurisdiction to impose, upon a proper showing, a civil penalty…[t]he amount of the penalty shall be determined by the court in light of the facts and circumstances."); *SEC* v. *Platforms Wireless Int'l Corp*., 617 F.3d 1072, 1096 (9th Cir.2010) ("[A] district court has broad equity powers to order the disgorgement of ill-gotten gains obtained through violation of the securities laws.").

(emphasis in original).   Additionally, the SEC must "prove but-for causation to assert a reasonable approximation of illegal profits."  *SEC* v. *Teo*, 746 F.3d 90, 107 (3d Cir. 2014).

The sanctions already imposed upon VWAG are significant.   VWAG has surrendered any alleged ill-gotten gains many times over, having paid more than $20 billion in the United States, including over $4 billion to the United States Treasury.   Divided evenly, that sum is almost $40,000 for each of the roughly 585,000 affected vehicles, dwarfing any conceivable profit—whether measured by profits from selling affected vehicles, alleged interest savings on the 144A Bonds and ABS, or both.  Given that civil penalties "are intended to punish, and label defendants as wrongdoers", they would be unnecessary, redundant and excessive here.  *Gabelli* v. *SEC*, 568 U.S. 442, 451-52 (2013); *see e.g. SEC* v. *Loomis*, 17 F. Supp. 3d 1026, 1032 (E.D. Cal. 2014) (explaining that "[g]iven the magnitude of other civil and criminal penalties [defendant] faces, the court declines to impose a civil penalty"); *SEC* v. *800america.com, Inc.*, 2006 WL 3422670, at *12 (S.D.N.Y. Nov. 28, 2006) (declining to award the civil penalties sought by SEC, explaining "I decline to heap additional penalties on the head of an already drowning defendant. The concept the SEC might think more about is that justice, even viewed from the perspective of a prosecutor, prospers on evenhandedness").

It does not matter that VWAG's prior settlements were not formally labeled as resolving federal securities law violations, as "the purposes of securities laws . . . require disregarding form for substance and placing emphasis upon economic reality."  *SEC* v. *Aqua-Sonic Prods. Corp.*, 687 F.2d 577, 584 (2d Cir. 1982).  Additionally, that investors suffered no losses and Defendants "ensure[d] that investors would continue to receive distributions" presents "special circumstances" such that "[t]his is not a case where the public interest supports taking past profits away" in the form of disgorgement from Defendants.  *In re RD Legal Capital, LLC*, SEC Release No. 1260, 2018 WL 5004711, at *82-83 (Oct. 15, 2018) (declining to award any disgorgement where the SEC sought more than $50 million and investors had not suffered significant losses, noting that such a disgorgement award "in this case and under these specific facts—may trigger constitutional scrutiny").

Disgorgement is also not appropriate here because "it is axiomatic that disgorgement should be fashioned on the amount of ill-gotten gain currently realized by the defendant and not yet already repaid."  *SEC* v. *Monarch Funding Corp*., 1996 WL 348209, at \*10 (S.D.N.Y. June 24, 1996).  Given that the SEC is not seeking relief in order to repay any of the allegedly harmed sophisticated investors, imposing further monetary sanctions on Defendants—whether in the form of disgorgement or civil penalties—would likely only add to the substantial amount that Defendants have already paid to the United States Treasury arising out of the emissions issue.

**The Parties' Principal Factual Disputes:**

The SEC believes the principal factual disputes include:

a. whether the alleged misstatements and omissions identified in the Complaint were materially false and misleading at the time they were made;

b. whether certain VW employees, including, but not limited to, VWAG's General Counsel and other members of the legal department, knew that VW diesel vehicles did not meet US emission standards (including, but not limited to, knowledge of the ICCT Study, VW's use of a defeat device, and/or related regulatory inquiries or investigations);

c. whether VW employees who were aware that VW diesel vehicles did not meet US emission standards had a duty to report that issue to VW's internal risk management system or in some other manner;

d. whether VW had effective policies and procedures to identify and disclose material issues, including, but not limited to, escalation of such issues to VWAG's General Counsel and/or VW's legal department for evaluation;

e. whether VW lied to and misled US regulators, including whether VW lied about a sham software fix in or about late 2014;

f. whether Winterkorn exercised power or control over VWAG and VWGoAF;

g. whether VWAG exercised power or control over VWGoAF;

h. whether VW was able to pay lower interest rates on the 144A Bonds and the ABS due to its alleged misstatements and omissions, including, but not limited to, whether the price of VW's 144A Bonds or ABS fell in secondary market trading after public disclosure of the defeat device scandal;

  i. whether Winterkorn and other senior VW officials were fired, suspended, or forced to resign because of their involvement in and/or knowledge of the defeat device scandal;

  j. the extent to which VW and its employees destroyed evidence, including the identities of the persons who destroyed evidence and why they did so;

Defendants believe the parties' principal factual disputes include:

  a. whether the alleged misstatements and omissions identified in the Complaint were materially false and misleading at the time they were made;

  b. whether there was any causal connection between any alleged false or misleading statement made by any of the Defendants in connection with the ABS and any money or property received by the Defendants;

  c. whether the individuals involved in the preparation of the 144A Bond and ABS issuances knew of the existence of the defeat device or of the potential legal and regulatory consequences of the defeat device, including the extent of remediation costs or penalties, at the time of each offering;

  d. whether Defendants received any ill-gotten gains attributable to the SEC's allegations, and whether Defendants have already relinquished any such alleged gains;

  e. whether VWAG misstated its financial statements prior to May 2014;

  f. whether VWAG had ultimate authority over the allegedly false and misleading statements and omissions made by its subsidiary VWGoAF;

  g. whether Defendant Winterkorn knew of the existence of the defeat device or of the potential legal and regulatory consequences of the defeat device, including the extent of remediation costs or penalties, at the time of each 144A Bond issuance;

  h. whether Defendant Winterkorn controlled the entities and/or individuals that made the allegedly materially false and misleading statements and omissions;

  i. whether the ABS declined in value after the EPA issued its Notice of Violation and the existence of the defeat device became public;

  j. whether VCI undertook reasonable investigation before making statements in connection with the ABS offerings; and

  k. whether this Court has personal jurisdiction over Defendant Winterkorn.

### 3. LEGAL ISSUES

*A brief statement, without extended legal argument, of the disputed points of law, including reference to specific statutes and decisions.*

The SEC alleges, and Defendants dispute, that:

a. As to the 144A Bonds, Defendants VWAG, VWGoAF, and Winterkorn, are liable for, directly or indirectly, with knowledge or recklessness, making untrue statements of material fact or omitting to state material facts necessary to make their statements not misleading, in connection with the purchase or sale of securities, in violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5;

b. As to the 144A Bonds, Defendant Winterkorn is liable for substantially assisting VWAG's and VWGoAF's violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5, having had actual knowledge of their violations and his role in furthering them, in violation of 15 U.S.C. § 78t(a);

c. As to the 144A Bonds, Defendants VWAG and VWGoAF are liable for, directly or indirectly, negligently, recklessly, or knowingly obtaining money or property by means of untrue statements of material fact or omitting to state material facts necessary to make their statements not misleading, in the offer or sale of securities, in violation of Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2);

d. As to the 144A Bonds, Defendant Winterkorn is liable for substantially assisting VWAG's and VWGoAF's violations of Section 17(a)(2) of the Securities Act, having had actual knowledge of their violations and his role in furthering them, in violation of 15 U.S.C. § 77o(b);

e. As to the ABS, Defendant VCI is liable for, directly or indirectly, in the offer or sale of securities, negligently or recklessly (i) obtaining money or property by means of untrue statements of material fact or omitting to state material facts necessary to make their statements not misleading, and (ii) engaging in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon purchasers of securities, in violation of Sections 17(a)(2) and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(2), 77(q)(a)(3);

f. As to the 144A Bonds, Defendants VWAG and Winterkorn are liable as control persons under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), for, directly or indirectly, inducing Defendant VWGoAF's material misstatements and omissions in connection with the purchase and sale of securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5(b) thereunder; and

g. As to the 144A Bonds, Defendant Winterkorn is liable as a control person under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), for, directly or indirectly, inducing Defendant VWAG's material misstatements and omissions in connection with the

purchase and sale of securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5(b) thereunder.

Defendant VCI contends, and the SEC disputes, that the U.S. Government, including the SEC, released claims concerning the ABS as part of the January 2017 settlement agreement between the United States and, among other entities, VCI.

Defendant Winterkorn contends, and the SEC disputes, that he is not subject to personal jurisdiction in this Court.

### 4. MOTIONS

*All prior and pending motions, their current status, and any anticipated motions.*

There are no pending motions at this time. Pursuant to a briefing schedule agreed to by the SEC, and subject to the Court's approval, Defendants intend to file motions to dismiss the claims related to the ABS offerings and some of the claims related to the 144A Bond offerings on or before June 28, 2019.

### 5. AMENDMENT OF PLEADINGS

*The extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for amending the pleadings.*

The parties do not currently anticipate any amendment to the pleadings prior to Defendants' filing of the motions to dismiss.

### 6. EVIDENCE PRESERVATION

*A brief report certifying that the parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirming that the parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action. See ESI Guidelines 2.01 and 2.02, and Checklist for ESI Meet and Confer.*

The parties certify that they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and the parties anticipate participating in a meet and confer to discuss the Rule 26(f) ESI Checklist as outlined by the Northern District of California.

The SEC has made efforts to preserve the evidence it has received (most of which was received from one or more of the Defendants). Additionally, on April 23, 2019, the SEC sent a list

of evidence preservation questions to counsel for Defendants and a list of additional VW custodians not on the January 26, 2017 MDL Custodian List whose documents and ESI the SEC believes should be preserved because those individuals were involved in the preparation of the Offering Documents at issue in this case. As of the date of this filing, the SEC has not received answers to any of those questions or confirmation that VW is taking steps to preserve documents and ESI for these custodians.

Defendants have made efforts to preserve evidence relevant to the claims and defenses likely to arise in this litigation in addition to the expansive preservation efforts already in place at the Volkswagen entities, including in connection with the MDL proceeding in this Court. Defendants have identified current and former employees who are likely to have custodial materials relevant to this litigation and have issued hold notices to those individuals. Defendants have also taken steps to ensure that non-custodial sources are subject to legal holds to preserve potentially relevant information. Counsel for Defendants received correspondence from the SEC raising evidence preservation questions on April 23, 2019 and are conferring with their clients about the topics raised in that correspondence, and will respond in due course.

### 7.  DISCLOSURES

*Whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26 and a description of the disclosures made.*

The parties shall exchange the initial disclosures required under Rule 26(a)(1) of the Federal Rules of Civil Procedure on or before June 10, 2019.

### 8.  DISCOVERY

*Discovery taken to date, if any, the scope of anticipated discovery, any proposed limitations or modifications of the discovery rules, a brief report on whether the parties have considered entering into a stipulated e-discovery order, a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f), and any identified discovery disputes.*

The parties have not yet served each other with discovery requests since this Action was filed.

**Plaintiff's Anticipated Discovery:**

The SEC anticipates taking discovery from numerous individuals and entities, many of whom are located outside of the United States.  The SEC will seek discovery from VW, its affiliates involved in the bond and ABS offerings, and Winterkorn.  This discovery will include witness depositions and written discovery requests, including requests for documents sought by the SEC during its investigation but that Defendants did not produce.  The SEC will also seek discovery regarding the approximately 40 or so VWAG and Audi employees who "destroyed documents and files related to U.S. emissions issues they believed would be covered by the [litigation] hold … to protect both VW and themselves from the legal consequences of their actions," as set forth in VW's January 11, 2017 criminal plea agreement.  The SEC will also seek additional discovery from investors who purchased Defendants' securities, as well as the underwriters, law firms and other participants in the securities offerings.  The SEC also will take discovery of VW's experts after they have been disclosed.  The SEC agrees that discovery in this case will be complex and time-consuming.

**Defendants' Anticipated Discovery:**

Although, as Defendants noted in Section 2, VWAG has paid substantial settlements arising out of the emissions issue, the primary factual issues underlying this Action have not been litigated previously.  Accordingly, the SEC's allegations in the Complaint are untested, and Defendants anticipate that discovery in this Action will be complex and time-consuming.  Many of the relevant documents, data, and fact witnesses are located in Germany, and obtaining access to such material will present unique difficulties.  Defendants anticipate seeking discovery from various federal and state government agencies regarding their (i) awareness of and response to the ICCT Study, (ii) investigation into the defeat device, and (iii) prior enforcement actions related to emissions violations.  Defendants will also seek discovery from the purchasers of the 144A Bonds and the ABS, as well as the bookrunners, underwriters, law firms, and accounting

firms involved in the issuances. Defendants believe that the SEC, in the course of its investigation, has already taken discovery from many of these third parties. Thus, Defendants anticipate that they may require more extensive third party discovery than the SEC. Moreover, Defendants anticipate that they will retain expert witnesses to address, among other issues, the SEC's allegations regarding due diligence standards and price decline. Defendants will seek discovery of any experts retained by the SEC to address these or other issues. Defendants also believe that expert witnesses will be indispensable to aiding the Court in determining the amount, if any, of an appropriate civil penalty or disgorgement.

## 9. CLASS ACTIONS

*If a class action, a proposal for how and when the class will be certified.*

The Action is not a class action.

## 10. RELATED CASES

*Any related cases or proceedings pending before another judge of this court, or before another court or administrative body.*

As the Court is aware, included in the above-captioned MDL are numerous cases concerning VWAG's use of illegal defeat devices in certain diesel vehicles, including cases brought by various state and federal governmental entities, consumers, vehicle dealers, and other private parties. Among the cases included in the MDL is *BRS* v. *Volkswagen AG, et al.*, No. 16-cv-3435 (N.D. Cal.), a putative class action initiated by a purchaser of the 144A Bonds. There are also actions pending in other U.S. federal and state courts, including criminal actions against individuals, as well as numerous actions in various courts outside the United States.

## 11. RELIEF

*All relief sought through complaint or counterclaim, including the amount of any damages sought and a description of the bases on which damages are calculated. In addition, any party from whom damages are sought must describe the bases on which it contends damages should be calculated if liability is established.*

The SEC requests that the Court:

a. Enter an order finding that Defendants have committed, and unless enjoined, will continue to commit, the violations alleged in the Complaint;

b. Permanently enjoin Defendants VWAG, VWGoAF, and Winterkorn from future violations of Section 17(a)(2) of the Securities Act and Section 10(b) of the Exchange Act and SEC Rule 10b-5;

c. Permanently enjoin Defendant VCI from future violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act;

d. Bar Defendant Winterkorn from serving as an officer or director of a public company, pursuant to Section 20(e) of the Securities Act and Section 21(d)(2) of the Exchange Act;

e. Order Defendants VWAG, VWGoAF, and VCI to disgorge all ill-gotten gains from the conduct alleged in the Complaint, with prejudgment interest;

f. Order civil penalties against Defendants VWAG, VWGoAF, and Winterkorn, pursuant to Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act;

g. Order civil penalties against Defendant VCI pursuant to Section 20(d) of the Securities Act; and

h. Order such other and further relief as the Court may deem just and proper.

As discussed in Sections 2 and 3, Defendants deny liability. Defendants also deny that the SEC has adequately alleged that the extraordinary remedy of an injunction is warranted, because the SEC's Complaint includes no allegations supporting its contention that Defendants are engaged in ongoing violations of the securities laws. Defendants will move the Court to dismiss the SEC's claims for injunctive relief.

The SEC's Complaint does not specify the amounts of disgorgement and civil penalties sought. However, as discussed in Section 2, the amount of disgorgement or civil penalties—if any—rests entirely within the discretion of this Court. Defendants will further respond to any claims by the SEC for specific amounts of disgorgement or civil penalties, and whether any are legally available to the SEC even if liability is shown, at the appropriate stage of the litigation.

### 12. SETTLEMENT AND ADR

*Prospects for settlement, ADR efforts to date, and a specific ADR plan for the case, including compliance with ADR L.R. 3-5 and a description of key discovery or motions necessary to position the parties to negotiate a resolution.*

The parties have not engaged in any ADR efforts to date, and have no specific ADR plan.

### 13. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

*Whether **all** parties will consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.* ____ YES _X_ NO

### 14. OTHER REFERENCES

*Whether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.*

The parties do not believe that the Action is suitable for reference to binding arbitration. The Action has already been referred to the Judicial Panel on Multidistrict Litigation, and is part of the above-captioned MDL.

### 15. NARROWING OF ISSUES

*Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate issues, claims, or defenses.*

**SEC's Statement**:

The SEC believes that, in the existing Bondholders Securities Class Action (*BRS v. Volkswagen AG, et al.*, Case No. 16-cv-3435) and the existing ADR Securities Class Action (*City of St. Clair Shores,* No. 15-6167; *Travalio*, No. 15-6168; *George Leon Family Trust*, No. 15-6166; *Charter Twp. of Clinton*, No. 16-190; *Wolfenbarger*, No. 16-184), the Court has already ruled (at the pleading stage), in whole or in part, on certain legal issues relevant to this matter. *See In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litig.*, 2017 WL 66281 (N.D. Cal. Jan. 4, 2017); 258 F. Supp. 3d 1037 (June 28, 2017); 2017 WL 3058563 (July 19, 2017); 2017 WL 6041723 (Dec. 6, 2017); 2018 WL 1142884 (Mar. 2, 2018); 328 F. Supp. 3d 963 (Sept. 7, 2018).

**Defendants' Statement**:

Subject to the Court's approval, the parties have agreed to a briefing schedule for Defendants' motions to dismiss. Defendants intend to file any motions to dismiss on or before June 28, 2019. At this time, Defendants do not intend to move to dismiss on falsity or materiality as to the same alleged misstatements or omissions on which this Court has already ruled in the Bondholder and ADR class actions.[9] Defendants will, however, seek dismissal of all claims pertaining to the ABS and of any claims pertaining to certain of the alleged misstatements regarding the 144A Bonds on which this Court has not ruled. Defendants will also seek dismissal of all claims for injunctive relief. Defendant Winterkorn will also seek dismissal of the claims against him for lack of personal jurisdiction. Defendants believe that the Court's resolution of any motions to dismiss will significantly narrow the issues in this Action.

### 16. EXPEDITED TRIAL PROCEDURE

*Whether this is the type of case that can be handled under the Expedited Trial Procedure of General Order 64, Attachment A. If all parties agree, they shall instead of this Statement, file an executed Agreement for Expedited Trial and a Joint Expedited Case Management Statement, in accordance with General Order No. 64, Attachments B and D.*

This Action cannot be appropriately handled under the Expedited Trial Procedure.

### 17. SCHEDULING

*Proposed dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.*

The parties agree that fact and expert discovery in this Action will be highly complex. Many of the fact witnesses and relevant documents are located overseas. Defendants note that due to the nature of the penalties and disgorgement sought by the SEC, extensive expert testimony and materials will be necessary. The parties have agreed to a briefing schedule for Defendants' motions to dismiss.

| ACTION | Proposed Due Dates |
|---|---|
| Exchange of Initial Disclosures: | June 10, 2019 |

---

[9] To the extent that statements the SEC alleges to be false or misleading are the same as those at issue in the Bondholder or ADR Actions on which the Court has already ruled, Defendants preserve any such challenge in case of appeal.

| ACTION | Proposed Due Dates |
|---|---|
| Defendants' Motions to Dismiss: | June 28, 2019 |
| Plaintiff's Opposition to Motions to Dismiss: | August 15, 2019 |
| Defendant's Reply in Support of Motions to Dismiss: | September 16, 2019 |
| Fact Discovery Cutoff: | April 30, 2021 |
| Expert Reports Exchanged: | 60 Days after Fact Discovery Cutoff: June 29, 2021 |
| Rebuttal Expert Reports Exchanged: | 60 days after exchange of Expert Reports: August 27, 2021 |
| Expert Discovery Cutoff: | 30 days after exchange of Rebuttal Reports: September 27, 2021 |
| Dispositive Motions & Opening Briefs: | 70 days after Expert Discovery Cutoff: December 6, 2021 |
| Oppositions to Dispositive Motions: | 50 days after Opening Motions: January 25, 2022 |
| Replies in Support of Dispositive Motions: | 30 days after Oppositions: February 24, 2022 |
| Pretrial Conference: | As set by the Court |
| Trial: | As set by the Court |

### 18. TRIAL

*Whether the case will be tried to a jury or to the court and the expected length of the trial.*

The liability phase of this Action will be tried to a jury. The penalties and relief phase of this Action will be tried to the Bench. The parties are not currently in a position to estimate the length of trial, considering the early stage of this litigation.

### 19. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

*Whether each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15. In addition, each party must restate in the case management statement the contents of its certification by identifying any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.*

As a governmental agency, the SEC is not required to file a certification under Civil Local Rule 3-15. Defendant Winterkorn hereby certifies that no persons, firms, partnerships,

corporations, or other entities are known by him to have either (i) a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding. Defendant VWAG hereby certifies that Porsche Automobil Holding SE is a publicly-held corporation that owns 10% or more of the stock of VWAG. Defendants VWGoAF and VCI hereby certify that they are each wholly owned subsidiaries of Volkswagen Group of America, Inc., which is, in turn, a wholly owned subsidiary of VWAG.

### 20. PROFESSIONAL CONDUCT

*Whether all attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.*

The attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

### 21. OTHER

*Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.*

The parties have incorporated their suggestions for expediting and streamlining the litigation in response to other topics in the Joint Case Management Statement.

Additionally, the parties have agreed in principle to request the Court's entry of an Order, pursuant to Fed. R. Evid. 502(d), providing that applicable privileges are not waived by the inadvertent production of a privileged document or ESI. The parties are negotiating the terms of a proposed order, which they anticipate presenting to the Court for approval in the near future.

Dated: May 3, 2019

Respectfully submitted,

/s/ *Robert J. Giuffra, Jr.*

Robert J. Giuffra, Jr. (*admitted pro hac vice*)
Sharon L. Nelles (*admitted pro hac vice*)
Suhana S. Han (*admitted pro hac vice*)
Matthew A. Schwartz (*admitted pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone:    (212) 558-4000

Facsimile:       (212) 558-3588

*Attorneys for Defendants Volkswagen AG,*
*Volkswagen Group of America Finance, LLC*
*and VW Credit, Inc.*

/s/ *Gregory P. Joseph*
Gregory P. Joseph (*admitted pro hac vice*)
Peter R. Jerdee (*admitted pro hac vice*)
Christopher J. Stanley (*admitted pro hac vice*)
JOSEPH HAGE AARONSON LLC
485 Lexington Avenue, 30th Floor
New York, New York 10017
Telephone:       (212) 407-1210
Facsimile:       (212) 407-1280

*Attorneys for Defendant Martin Winterkorn*

/s/ *Daniel J. Hayes*
Daniel J. Hayes
Jake A. Schmidt
Kevin A. Wisniewski
Michael D. Foster
U.S. SECURITIES & EXCHANGE
COMMISSION
175 West Jackson Blvd., Suite 1450
Chicago, Illinois 60604
Telephone:       (312) 353-3368
Facsimile:       (312) 353-7398

*Attorneys for Plaintiff United States Securities and*
*Exchange Commission*

# CASE MANAGEMENT ORDER

The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is approved as the Case Management Order for this case and all parties shall comply with its provisions.

IT IS SO ORDERED.

Dated:

_____
Hon. Charles R. Breyer
United States District Judge