**BERNSTEIN LITOWITZ BERGER**
   **& GROSSMANN LLP**
JAMES A. HARROD
JAI CHANDRASEKHAR
ADAM D. HOLLANDER
KATE W. AUFSES
jim.harrod@blbglaw.com
jai@blbglaw.com
adam.hollander@blbglaw.com
kate.aufses@blbglaw.com
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444

*Attorneys for Lead Plaintiff ASHERS and Plaintiff Miami Police and Lead Counsel in the Securities Actions*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION _____/ This Document Relates To: Securities Actions *City of St. Clair Shores*, 15-1228 (E.D. Va.) *Travalio*, 15-7157 (D.N.J.) *George Leon Family Trust*, 15-7283 (D.N.J.) *Charter Twp. of Clinton*, 15-13999 (E.D. Mich.) *Wolfenbarger*, 15-326 (E.D. Tenn.) _____/ | MDL No. 2672 CRB (JSC) **CLASS ACTION** **PLAINTIFFS' AND LEAD COUNSEL'S REPLY BRIEF IN FURTHER SUPPORT OF (I) MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION AND (II) MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES** Judge:       Hon. Charles R. Breyer Courtroom:  6 Date:        May 10, 2019 Time:        10:00 a.m. |

REPLY BRIEF IN FURTHER SUPPORT OF MOTIONS FOR FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION, AND ATTORNEYS' FEES AND EXPENSES

MDL NO. 2672 CRB (JSC)

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................1

ARGUMENT ...........................................................................................................................3

I. THE SETTLEMENT CLASS'S REACTION SUPPORTS APPROVAL..................3

    1. The Court-Approved Notice Program ...............................................3

    2. The Settlement Class's Reaction Supports Approval of the Settlement, Plan of Allocation, and Fee and Expense Request ................................5

II. THE OBJECTIONS LACK MERIT .............................................................................6

    A. The Comlish Objection Lacks Merit..................................................6

        1. Mr. Comlish's Objection That Plaintiffs Should Have Continued To Litigate Is Unpersuasive ...............................................7

        2. Mr. Comlish's Criticism Of The Plan Of Allocation Is Baseless .........................8

    B. The Kerpelman Objection Lacks Merit ..............................................9

        1. Mr. Kerpelman's Objection To The Notice Is Baseless .....................................10

        2. Mr. Kerpelman's Objection To The Request For Attorneys' Fees Is Baseless ................................................................10

CONCLUSION ......................................................................................................................11

REPLY BRIEF IN FURTHER SUPPORT OF MOTIONS FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION AND AWARD OF ATTORNEYS' FEES AND EXPENSES

MDL NO. 2672 CRB (JSC)

i

Case 3:15-md-02672-CRB   Document 6254   Filed 05/03/19   Page 3 of 16</mark>

# TABLE OF AUTHORITIES

**CASES**           **PAGE(S)**

*In re Alstom Sec. Litig.*,
   Master File No. 03-CV-6595-VM (GWG) ........................................................................... 6

*In re BankAmerica Corp. Sec. Litig.*,
   263 F.3d 795 (8th Cir. 2001) ............................................................................................... 7

*Churchill Vill. LLC v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ............................................................................................... 5

*In re High-Tech Emp. Antitrust Litig.*,
   2015 WL 5159441 (N.D. Cal. Sept. 2, 2015) ...................................................................... 5

*In re HP Sec. Litig.*,
   Master File No. 3:12-cv-05980-CRB (Breyer, J.) ......................................................... 6, 10

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................................ 5

*In re Nuvelo, Inc. Sec. Litig.*,
   2011 WL 2650592 (N.D. Cal. July 6, 2011) ....................................................................... 5

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) .............................................................................. 5

*In re Quintus Sec. Litig.*,
   201 F.R.D. 475 (N.D. Cal. 2001) ........................................................................................ 7

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ............................................................................................... 5

*In re Toyota Motor Corp. Sec. Litig.*,
   Master File No. 10-CV-922 DSF ........................................................................................ 6

*Waldbuesser v. Northrop Grumman Corp.*,
   2017 WL 9614818 (C.D. Cal. Oct. 24, 2017) ..................................................................... 5

*Wren v. RGIS Inventory Specialists*,
   2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ....................................................................... 5

**STATUTES**

Private Securities Litigation Reform Act ................................................................................ 4, 7

**OTHER AUTHORITIES**

Rule 23 ........................................................................................................................................ 10

Lead Plaintiff Arkansas State Highway Employees' Retirement System ("ASHERS" or "Lead Plaintiff") and named Plaintiff Miami Police Relief and Pension Fund ("Miami Police," and together with ASHERS, "Plaintiffs"), on behalf of themselves and the Settlement Class, and Lead Counsel Bernstein Litowitz Berger & Grossmann LLP ("Lead Counsel") respectfully submit this memorandum of law in further support of (i) Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation (ECF No. 6110) (the "Approval Motion"); and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (ECF No. 6111) (the "Fee Application").[1]

## PRELIMINARY STATEMENT

As detailed in the opening papers (ECF Nos. 6110-6112), the proposed Settlement is an excellent result for the Settlement Class considering the amount recovered as compared to the maximum recoverable damages; the serious risks that Plaintiffs faced in proving that Defendants made materially false statements with scienter, and in establishing loss causation and damages; and the costs and delays of continued litigation. The Settlement will be distributed fairly to all Settlement Class Members under the proposed Plan of Allocation. Finally, the Fee Application's request for attorneys' fees consisting of 25% of the Settlement Fund, net of Court-awarded Litigation Expenses, is in line with the Ninth Circuit's "benchmark" for contingency-fee litigation and within the range of fee percentages awarded in comparable settlements. The requested attorneys' fees are also reasonable in light of the excellent recovery obtained for the Settlement Class and the substantial risks that counsel faced, and because the 1.59 lodestar multiplier is on the lower end of the range of multipliers awarded in the Ninth Circuit.

The Settlement Class's reaction to the proposed Settlement has been extremely positive and further warrants both final approval and granting of the Fee Application. In accordance with the Court's Preliminary Approval Order (ECF No. 5593), the Claims Administrator has mailed the Notice Packet to

---

[1] Unless otherwise defined in this memorandum, all capitalized terms have the meanings defined in the Stipulation and Agreement of Settlement, dated August 27, 2018 (ECF No. 5267-1) (the "Stipulation" or "Settlement Stipulation") or the Declaration of James A. Harrod in Support of (I) Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation and (II) Lead Counsel's Motion for An Award of Attorneys' Fees and Reimbursement of Litigation Expenses (ECF No. 6112) ("Harrod Declaration" or "Harrod Decl.").

REPLY BRIEF IN FURTHER SUPPORT OF MOTIONS FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION AND AWARD OF ATTORNEYS' FEES AND EXPENSES

MDL NO. 2672 CRB (JSC)

1

217,589 potential Settlement Class Members and nominees. In response to the notice program, only two nominal objections (ECF Nos. 6177 and 6208) have been received. As discussed below, both objections are without merit and should be rejected by the Court.

The first, filed by Mr. Gregory Comlish (ECF No. 6177), which is technically styled as a request for exclusion but cannot meaningfully be read as such, suggests that the Class could have obtained a better outcome if it continued to litigate the case and that the Plan of Allocation is flawed. Plaintiffs and Lead Counsel had a well-informed understanding of the facts of the case when the decision to agree to the proposed Settlement was made; nothing Mr. Comlish points to (or could point to) materially alters those facts or the decision made to settle for the favorable recovery obtained. Further, the Plan of Allocation will fairly distribute the proposed Settlement in a manner consistent with Plaintiffs' theories of loss causation and damages in the case.

The second objection, filed by Mr. Jason A. Kerpelman (ECF No. 6208), argues, without any basis in fact or citation to evidence in support, that the notice and claims process were designed to "MINIMIZE THE NUMBER OF PEOPLE WHO WILL MAKE A CLAIM" in order to increase the award of attorneys' fees. This argument is contradicted by the terms of the Proposed Settlement, which provide that the full amount of the Settlement Fund, net of any attorneys' fees and expenses awarded by the Court, will be distributed to Settlement Class Members who file valid claims. The number or value of the Settlement Class Members' claims will have no effect on attorneys' fees.[2] In fact, the record in connection with mailing of the Notice Packets clearly supports the opposite conclusion—that Lead Counsel and the Claims Administrator engaged in diligent efforts to ensure that potential Settlement Class Members received timely notice.

---

[2] Neither objector has sufficiently established his standing as a member of the Settlement Class, which is a necessary condition for objecting. *See* Notice, attached as Exhibit A to the Declaration of Alexander Villanova Regarding (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received To Date, dated April 3, 2019 (ECF No. 6112-3) (the "Villanova Decl."), at ¶ 83 ("Any objection . . . must include documents sufficient to prove membership in the Settlement Class . . . .").

REPLY BRIEF IN FURTHER SUPPORT OF MOTIONS FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION AND AWARD OF ATTORNEYS' FEES AND EXPENSES   MDL NO. 2672 CRB (JSC)

2

In addition, after over 217,500 Notices were mailed, only 16 requests for exclusion from the Settlement Class were received.[3] The trading information provided by the persons and entities who requested exclusion indicates that they collectively purchased 12,780 VWAG ADRs, which amounts to just 0.03% of the approximately 42,600,000 ADRs estimated to have been affected by the misconduct alleged in the Action—a truly miniscule percentage.

Finally, a total of 62,689 Claims were received through May 1, 2019—representing a response rate of approximately 29% of the number of potential Settlement Class Members to whom Claim Forms were sent—which compares favorably to the claims-filing rate in other securities-class-action settlements, including those reached on behalf of American depositary share purchaser classes.

## ARGUMENT

### I. THE SETTLEMENT CLASS'S REACTION SUPPORTS APPROVAL

#### 1. The Court-Approved Notice Program

In accordance with the Preliminary Approval Order, the Claims Administrator, Epiq, conducted an extensive notice program under Lead Counsel's supervision, including mailing the Notice Packet to over 217,500 potential Settlement Class Members, publishing the Summary Notice in *Investor's Business Daily* and over the PR Newswire, and establishing a Settlement website, www.VolkswagenADRLitigation.com, which provides copies of the Notice, Claim Form, Stipulation, Complaint, and other documents and information concerning the Settlement.[4]

The Notice informed Settlement Class Members of the terms of the proposed Settlement and Plan of Allocation, and that Lead Counsel would apply for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund (net of expenses), for reimbursement of Plaintiffs' Counsel's Litigation Expenses in an amount not to exceed $500,000, and for reimbursement of Plaintiffs' costs and expenses under the PSLRA in an aggregate amount not to exceed $50,000. *See* Notice at ¶¶ 5, 73.

---

[3] All of the requests for exclusion were submitted by individuals or entities such as family trusts that appear to be small investors. Of the 16 requests for exclusion, 1 was received after the April 18, 2019 deadline. Plaintiffs request that this opt-out also be excluded from the Settlement Class.

[4] The notice program is described in the previously filed Villanova Declaration (ECF No. 6112-3), at ¶¶ 2-14. *See also* Supplemental Declaration of Alexander Villanova Regarding (A) Mailing of the Notice and Claim Form and (B) Report on Requests for Exclusion and Claims Received, dated May 3, 2019 (the "Supp. Villanova Decl."), filed with this brief.

The Notice also advised Settlement Class Members of their right to object to the proposed Settlement, the Plan of Allocation, and the request for attorneys' fees and expenses, or to request exclusion from the Settlement Class, and the April 18, 2019 deadline for doing so. *See id*. at p. 3, ¶¶ 75-89. In addition, both the Notice and Claim Form advised potential Settlement Class Members of the April 18, 2019 deadline to submit Claims in this matter. *See id.* at p. 3, ¶ 43; Claim Form, attached as Exhibit A to the Villanova Decl., at pp. 1, 9.

Epiq began mailing the Notice Packets to potential Settlement Class Members on December 19, 2018. *See* Supp. Villanova Decl. ¶ 2. As in most securities class actions, the large majority of Settlement Class Members are beneficial purchasers whose securities were held in the name of brokers and other nominees, and whose names and addresses are not directly available to the Parties. *Id*. ¶ 4. To reach these purchasers, the nominee owners were required, within seven days of receipt of the Notice, to (i) provide Epiq with names and addresses of the beneficial owners (Epiq then mailed these persons Notice Packets), or (ii) request additional Notice Packets from Epiq and then send them to the beneficial owners. *Id*. Through February 15, 2019—less than two months after the initial mailing date and more than two months before the deadline for filing opt-outs, objections, and Claims—Epiq had already mailed a total of 215,982 Notice Packets to potential Settlement Class Members and nominees, or 99.3% of the total number mailed. *Id*. ¶ 5. As of the filing of Plaintiffs' opening papers in support of final approval, a total of 217,587 Notice Packets had been mailed to potential Settlement Class Members, and as of May 1, 2019, a total of 217,589 Notice Packets have been mailed to potential Settlement Class Members. *Id*.

Epiq has also re-mailed 504 Notice Packets to persons whose original mailing was returned by the U.S. Postal Service and for whom updated addresses were provided to Epiq by the U.S. Postal Service, including Notice Packets that were returned as undeliverable and for which Epiq was able to obtain an updated address through the U.S. Postal Service National Change of Address ("NCOA") database. *Id*. ¶ 6. As of May 1, 2019, a total of 2,642 Notice Packets remain undeliverable. *Id.*

On April 5, 2019, 13 days before the objection deadline, Plaintiffs and Lead Counsel filed their opening papers in support of these motions. These papers were immediately available on the public

REPLY BRIEF IN FURTHER SUPPORT OF MOTIONS FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION AND AWARD OF ATTORNEYS' FEES AND EXPENSES — MDL NO. 2672 CRB (JSC)

4

docket (ECF Nos. 6110-6112) and were made available on the Settlement website, as well as Lead Counsel's website. *See* Supp. Villanova Decl. ¶ 7.

### 2. The Settlement Class's Reaction Supports Approval of the Settlement, Plan of Allocation, and Fee and Expense Request

Following the extensive notice program described above, only two objections and 16 requests for exclusion—collectively representing only 12,780 VWAG ADRs purchased during the Class Period, or just 0.03% of the approximately 42,600,000 ADRs estimated to have been affected—have been received.

Plaintiffs and Lead Counsel respectfully submit that the small number of objections and requests for exclusion supports a finding that the Settlement and the Plan of Allocation are fair, reasonable, and adequate. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (affirming as "a favorable reaction to the settlement" the submission of 54 objections relative to 376,301 notices); *Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement where only 45 of 90,000 potential class members objected); *In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5159441, at *3 (N.D. Cal. Sept. 2, 2015) (finding indicia of approval where only 11 of 64,466 class members objected and less than 0.9% opted out); *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *10-11 (N.D. Cal. Apr. 1, 2011) (finding that receipt of only 16 objections relative to 62,594 notices "strongly supports approval of the settlement"); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (finding that the "absence of a large number of objections" raises a "strong presumption" that the settlement terms are "favorable to the class members.") (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004)).

The Settlement Class's reaction to the requested attorneys' fees and expenses also supports those requests' fairness and reasonableness. *See, e.g.*, *Waldbuesser v. Northrop Grumman Corp.*, 2017 WL 9614818, at *5 (C.D. Cal. Oct. 24, 2017) (finding that receipt of only two objections to fee request, after mailing 210,000 notices, was "remarkably small given the wide dissemination of notice," which justified fee award of one-third of settlement fund); *In re Nuvelo, Inc. Sec. Litig.*, 2011 WL 2650592, at *3 (N.D. Cal. July 6, 2011) (finding receipt of only one objection to fee request to be "a

strong, positive response from the class, supporting an upward adjustment of the benchmark" fee award).

Furthermore, the Claim-filing rate supports approval of this Settlement. Through May 1, 2019, a total of 62,689 Claims have been received by Epiq, 57,233 of which were postmarked or received on or before the April 18, 2019 Claim-filing deadline and 5,456 of which were postmarked after the April 18, 2019 deadline. *See* Supp. Villanova Decl. ¶ 9.[5] In comparison to the number of persons to whom Notice Packets were mailed (217,589), the number of Claims filed represents a response rate of approximately 29%, which compares favorably to other settlements, including those reached on behalf of classes comprising purchasers of American depositary shares. *See, e.g.*, *In re HP Sec. Litig.*, No. 3:12-cv-05980-CRB (Breyer, J.), Claims Administrator Declaration in Support of Distribution Order, ECF No. 283 (N.D. Cal. July 7, 2017) (220,117 claims filed in comparison to 818,712 notice packets mailed, representing a response rate of approximately 27%); *In re Toyota Motor Corp. Sec. Litig.*, Master File No. CV 10-922 DSF (AJWx), Claims Administrator Declaration in Support of Distribution Order, ECF No. 347 (C.D. Cal. June 5, 2014) (192,673 claims filed in ADS settlement in comparison to 674,696 notice packets mailed, representing a response rate of approximately 29%); *In re Alstom Sec. Litig.*, Master File No. 03-CV-6595-VM (GWG), Claims Administrator Mailing Declaration, ECF No. 388 (S.D.N.Y. Sept. 30, 2011) & Claims Administrator Declaration in Support of Distribution Order, ECF No. 399 (S.D.N.Y Feb. 22, 2013) (7,792 claims filed in ADR settlement in comparison to 43,735 notice packets mailed, representing a response rate of approximately 18%).

## II.   THE OBJECTIONS LACK MERIT

### A.   The Comlish Objection Lacks Merit

As noted above, as a threshold matter, Mr. Comlish has not satisfied the basic requirements for submitting an objection. While Mr. Mr. Comlish states that he purchased a total of 200 VWAG ADRs for his daughter's college-savings plan on April 2, 2014 (and sold all those shares at a loss on

---

[5] Epiq's preliminary analysis of the Claims filed to date shows total Recognized Claims under the Plan of Allocation of $25,750,319.16 ($25,553,260.44 for timely-filed Claims and $197,058.72 for late Claims). However, it should be noted that all Claims are still subject to a comprehensive review under Epiq's standard claims-processing procedures, which will identify any deficiencies in Claims and could result in an increased or decreased total Recognized Claim amount.

September 21, 2015), he has not provided any documentation establishing membership in the Settlement Class. *See* Notice ¶ 83 ("Any objection . . . must include documents sufficient to prove membership in the Settlement Class"). Thus, Mr. Comlish has not established that he has standing to object. Despite Mr. Comlish's lack of standing, however, we address the substance of his criticisms of the Settlement below, recognizing that the Court may excuse procedural irregularity in a *pro se* filing.[6]

### 1. Mr. Comlish's Objection That Plaintiffs Should Have Continued To Litigate Is Unpersuasive

Mr. Comlish's criticism that Plaintiffs should have continued to litigate in order to benefit from ongoing revelations in the European litigation and investigations presents only the kind of judgment call that the PSLRA entrusts to Court-appointed lead plaintiffs and their Court-approved lead counsel. As the Eighth Circuit has explained:

> We think it plain that the lead-plaintiff provisions of the PSLRA create significant federal rights that previously did not exist. . . . The lead plaintiff's control over aspects of litigation such as discovery, choice of counsel, assertion of legal theories, retention of consultants and experts, and settlement negotiations gives the lead plaintiff decisional muscle that other members of the class lack.

*In re BankAmerica Corp. Sec. Litig.*, 263 F.3d 795, 801 (8th Cir. 2001); *see also In re Quintus Sec. Litig.*, 201 F.R.D. 475, 481 (N.D. Cal. 2001) ("The two principal responsibilities assumed by a lead plaintiff are: (1) monitor the conduct of class counsel, and (2) decide whether and when the case should be settled or taken to trial."). It is always possible to argue that additional discovery and other additional litigation might have led to a better settlement, but that is never certain. In particular here, the German indictment of Martin Winterkorn announced on April 15, 2019, alleges that he learned

---

[6] In Mr. Comlish's submission, he states both that he "wish[es] to be excluded from the proposed settlement" and that he "intend[s] to appear before the 9th Circuit in order to explain [his] position AGAINST this settlement proposal." A Settlement Class Member who opts out of the Settlement Class no longer has standing to object to the Settlement. *See* Notice ¶ 84. However, when read in context, Lead Counsel understands Mr. Comlish's letter to be an objection, given that it addresses two issues regarding the Settlement that he believes the Court should consider. If Mr. Comlish's filing were to be considered an opt-out, he would lose standing to object and would not be able to file a Claim or otherwise participate in a distribution from the Settlement Fund. Lead Counsel are serving a copy of this submission on Mr. Comlish by overnight delivery, and if he clarifies that it was his intention to opt out rather than object before the Settlement Hearing, we will add him to the list of persons excluded from the Settlement Class.

about the diesel-emissions fraud by May 2014, which is consistent with this Court's dismissal of Plaintiffs' financial-statement claims for the period before May 2014 and with Plaintiffs' argument in support of the Settlement that proving scienter for the period before May 2014 presented very significant risks. *See* Approval Motion (ECF No. 6110) at p. 20. Mr. Comlish identifies no specific information that has emerged since the Settlement was negotiated that would change Plaintiffs' and Lead Counsel's well-informed assessment of the case's value.

### 2. Mr. Comlish's Criticism Of The Plan Of Allocation Is Baseless

Mr. Comlish criticizes the Plan of Allocation for having a higher inflation-per-share amount on September 21, 2015, the day he sold ($8.28), than on the following day ($5.27). Mr. Comlish correctly notes that this means that investors who sold their shares on September 22, 2015 would have a greater Recognized Loss (assuming all other facts are the same) than if they sold on September 21, 2015, but they also would have suffered a much-greater out-of-pocket loss, as the VWAG Ordinary ADRs declined by $4.66 on September 22, 2015. As described in detail below, the Plan of Allocation accounts for this difference, which both reflects the price change in VWAG ADRs on September 22, 2015 and is based on Plaintiffs' financial expert's analysis of the relevant corrective disclosures and ADR price movements. Thus, the difference fairly reflects the extent to which prices on the different days were likely affected by the alleged fraud.

In particular, on Friday, September 18, 2015, the EPA issued a Notice of Violation and CARB announced an investigation, disclosing that Volkswagen *admitted* to deliberately cheating on US emissions tests. This disclosure caused the price of VWAG Ordinary ADRs to decline from $38.03 per ADR on September 17, 2015 to $36.31 per ADR on September 18, 2015, or approximately 5%. *See* Notice ¶ 55 & Table A; First Amended Consolidated Securities Class Action Complaint (ECF No. 2862) ("Complaint") ¶¶ 304–08.

On Sunday, September 20, 2015, then-CEO Winterkorn admitted that Volkswagen defrauded federal and state regulators. Also on September 20, 2015, Volkswagen halted US sales of its diesel-powered cars and launched an internal investigation into its misconduct. The next day, on Monday, September 21, 2015, the US Department of Justice opened a criminal probe into Volkswagen's admission that it rigged its diesel cars to beat emissions tests. Further, on September 21, 2015, the

German government stated that it would investigate whether VW AG manipulated emissions testing in Europe, and the US House of Representatives Energy Committee's Oversight Subcommittee announced plans to hold a hearing on the Volkswagen case. These additional disclosures caused the price of VWAG Ordinary ADRs to decline from $36.31 per ADR on September 18, 2015 to $30.10 per ADR on September 21, 2015, or approximately 17%, and caused the price of VWAG Preferred ADRs to decline from $36.47 per ADR on September 18, 2015, to $29.77 per ADR on September 21, 2015, or approximately 18%. *See* Notice ¶ 55 & Table A; Complaint ¶¶ 309–12.

On September 22, 2015, after Mr. Comlish sold his shares on the prior day, Volkswagen revealed that as many as 11 million vehicles worldwide contained the defeat devices used to evade emissions tests and that the Company would take a $7.3 billion charge to earnings and cut its full-year outlook. Winterkorn again acknowledged "misconduct" on September 22, 2015, and VWGoA's then-CEO, Defendant Horn, stated that "[o]ur company was dishonest with the EPA, and the [CARB] and with all of you . . . . [W]e've totally screwed up." These disclosures caused the price of VWAG Ordinary ADRs to decline from $30.10 per ADR on September 21, 2015 to $25.44 per ADR on September 22, 2015, or approximately 16%, and caused the price of VWAG Preferred ADRs to drop from $29.77 per ADR on September 21, 2015 to $23.98 per ADR on September 22, 2015—a decline of nearly 20%. *See* Notice ¶ 55 & Table A; Complaint ¶¶ 313–16.

Thus, the Plan of Allocation appropriately considers different levels of artificial inflation on different days, as determined by Plaintiffs' financial expert. It is neither "opaque" nor designed to "favor" any particular group of investors over others. For this reason, and the reasons stated above, Mr. Comlish's objection should be overruled.

**B.     The Kerpelman Objection Lacks Merit**

As an initial matter, Mr. Kerpelman has not provided any information or documentation regarding his transactions in VWAG ADRs which, as noted above, is a requirement for submitting an objection to the Settlement, the Plan of Allocation, or the Fee Application. Mr. Kerpelman has not established his standing to object. Nevertheless, we address the substance of Mr. Kerpelman's objections to the Notice and Lead Counsel's Fee Application below.

### 1. Mr. Kerpelman's Objection To The Notice Is Baseless

Mr. Kerpelman objects that the Notice did not state the April 18, 2019 claim-filing deadline prominently enough. However, the Notice complies with this District's Procedural Guidance for Class Action Settlements, is written in plain English, and was approved by the Court. *See* Preliminary Approval Order at 14. Furthermore, the Notice states the deadline for filing Claim Forms in bold capital letters on page 3, and the Claim-filing deadline also appears in bold in the first paragraph of page 1 of the Claim Form itself. As a practical matter, it is necessary to set a deadline for Claims, and the Notice here complies fully with Rule 23 and the requirements of due process. In any event, Epiq has contacted Mr. Kerpelman by telephone and informed him that, should he wish to submit a Claim at this point, he should do so as soon as possible, and to the extent his Claim is otherwise valid, it will be recommended by Lead Counsel for payment in connection with the motion for a Class Distribution Order to be filed after the completion of all Claims-processing in this matter. *See* Stipulation ¶ 28.[7]

### 2. Mr. Kerpelman's Objection To The Request For Attorneys' Fees Is Baseless

Mr. Kerpelman's objection to the request for attorneys' fees consists of vague, overheated rhetoric that ignores the extensive work that Lead Counsel did to achieve a favorable Settlement of this Action. His suggestion that the Notice was designed to minimize the number of Claims filed and that Plaintiffs' Counsel would somehow benefit from having fewer Claims filed is utterly unsupported. As explained in the Notice, the entire Net Settlement Fund (i.e., the Settlement Fund, net of any attorneys' fees, costs, and expenses awarded by the Court and net of approved Notice and Administration Costs and Taxes), will be distributed to those Settlement Class Members who file valid Claims that are approved for payment by the Court. If it becomes uneconomical to make a further distribution of any amount that is unclaimed (because of uncashed checks or the like), the remainder will be distributed to

---

[7] It is customary in securities class actions for courts to accept late but otherwise eligible late claims that are received while the processing of timely claims is ongoing. *See, e.g., In re HP Sec. Litig.*, No. 3:12-cv-05980-CRB (Breyer, J.), Order Authorizing Distribution of Net Settlement Fund, ECF No. 284 (N.D. Cal. August 11, 2017) & Claims Administrator Declaration in Support of Distribution Order, ECF No. 283 (N.D. Cal. July 7, 2017) (accepting 4,400 otherwise eligible claims submitted after the October 31, 2015 claim-filing deadline and received by the claims administrator on or before May 31, 2017).

the designated *cy pres* recipient, the Investor Protection Trust, subject to the approval of the Court. There is no scenario in which Plaintiffs' Counsel's fees would be larger because of a lower number of Claims being filed. Mr. Kerpelman's objection to the fee request does not address any of the specific facts of this case or any of the well-established factors relevant to fee awards under Ninth Circuit law. Accordingly, the objection should be overruled.

## CONCLUSION

For all the reasons stated above and in their opening papers, Plaintiffs and Lead Counsel respectfully request that the Court approve the Settlement, Plan of Allocation, and request for attorneys' fees and expenses.[8]

Dated: May 3, 2019

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

By: *s/ James A. Harrod*
James A. Harrod (*pro hac vice*)
Jai Chandrasekhar (*pro hac vice*)
Adam D. Hollander (*pro hac vice*)
Kate W. Aufses (*pro hac vice*)
Jim.Harrod@blbglaw.com
Jai@blbglaw.com
Adam.Hollander@blbglaw.com
Kate.Aufses@blbglaw.com
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444

*Attorneys for Lead Plaintiff ASHERS, Plaintiff Miami Police, and the Settlement Class*

---

[8] For the convenience of the Court, copies of the proposed Judgment, proposed Order Approving Plan of Allocation of Net Settlement Fund, and proposed Order Awarding Attorneys' Fees and Reimbursement of Litigation Expenses are attached to this brief as Exhibits 1, 2, and 3.

REPLY BRIEF IN FURTHER SUPPORT OF MOTIONS FOR FINAL APPROVAL OF SETTLEMENT
AND PLAN OF ALLOCATION AND AWARD OF ATTORNEYS' FEES AND EXPENSES

MDL NO. 2672 CRB (JSC)

11

| | |
|---|---|
| 1 | **KLAUSNER KAUFMAN JENSEN & LEVINSON** |
| 2 | Robert D. Klausner |
| 3 | Stuart A. Kaufman |
|   | bob@robertdklausner.com |
| 4 | stu@robertdklausner.com |
|   | 780 NW 4th Street |
| 5 | Plantation, FL 33317 |
|   | Telephone: (954) 916-1202 |
| 6 | Facsimile: (954) 916-1232 |

*Counsel for Plaintiff Miami Police*

#1289931

---

REPLY BRIEF IN FURTHER SUPPORT OF MOTIONS FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION AND AWARD OF ATTORNEYS' FEES AND EXPENSES

MDL NO. 2672 CRB (JSC)

12

# CERTIFICATE OF SERVICE

I certify that, on May 3, 2019, I caused the following papers to be filed electronically with the Clerk of the Court via the CM/ECF system, which will send automatic notification of the filing to all counsel of record in this matter:

- Plaintiffs' and Lead Counsel's Reply Brief in Further Support of (I) Motion for Final Approval of Settlement and Plan of Allocation and (II) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses; and

- Supplemental Declaration of Alexander Villanova Regarding (A) Mailing of the Notice and Claim Form and (B) Report on Requests for Exclusion and Claims Received.

I further certify that on May 3, 2019, I caused copies of these papers to be served by FedEx, overnight delivery, on the following objectors at the addresses below.

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*s/ James A. Harrod*
James A. Harrod

**Objectors Served by FedEx Overnight Delivery**

Mr. Jason A. Kerpelman
8 Hickory Ridge Court
Baltimore, MD 21228

Mr. Gregory Comlish
1969 10th Avenue
San Francisco, CA 94116

REPLY BRIEF IN FURTHER SUPPORT OF MOTIONS FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION AND AWARD OF ATTORNEYS' FEES AND EXPENSES

MDL NO. 2672 CRB (JSC)

1