UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This Order Relates To:<br>Dkt. No. 5824 | MDL No. 2672 CRB (JSC)<br><br>**ORDER GRANTING VOLKSWAGEN'S MOTION TO ENFORCE THE 2.0-LITER SETTLEMENT APPROVAL ORDER** |

When a lawyer is hired to file a lawsuit, state law often provides the lawyer with a charging lien. The charging lien attaches to any money awarded to the plaintiff in the case. If the plaintiff, upon receiving an award, refuses to pay his attorney's fees and costs, the attorney can seek to enforce the lien in court. *See generally* 7 Am. Jur. 2d Attorneys at Law §§ 316–37 (2019) (providing an overview on charging liens).

A charging lien can also protect a lawyer who is released and replaced. If the plaintiff hires a new lawyer who later obtains a monetary award, the original lawyer may be able to rely on the charging lien to get paid for work performed prior to the change in counsel. *See, e.g.*, *Artache v. Goldin*, 173 A.D.2d 667, 667 (N.Y. App. Div. 1991) (holding that a discharged lawyer was "entitled to a charging lien for the reasonable value of services rendered prior to the date of substitution of counsel"); *Heinzman v. Fine, Fine, Legum & Fine*, 234 S.E.2d 282, 286 (Va. 1977) (holding that a "discharged attorney is entitled to a fee based upon quantum meruit for services rendered prior to discharge") (footnote omitted).

In some circumstances, a plaintiff's attorney can also use a charging lien to recover fees from the defendant. When the plaintiff's lawyer provides the defendant with notice of the lien, and the defendant later settles with the plaintiff without notifying the plaintiff's lawyer, some courts have required the defendant to pay the plaintiff's lawyer's fees. *See, e.g.*, *Watson v. Nosal Realty, LLC*, No. 4240/01, 2002 WL 1592603, at *2 (N.Y. Sup. Ct. July 2, 2002) (explaining that

"a defendant who settles a cause of action with a plaintiff, without the plaintiff's attorney's knowledge," may be held liable "for the value of the services and disbursements of his opponent's attorney") (internal quotation marks omitted); *Katopodis v. Liberian S/T Olympic Sun*, 282 F. Supp. 369, 372 (E.D. Va. 1968) (explaining that the defendant, "in negotiating the settlement with plaintiff 'behind the back' of plaintiff's counsel . . . , [and knowing] of the plaintiff's counsel's lien, . . . acted in bad faith" and "at his peril" and is therefore "liable" for the fee). To avoid this outcome, it may be the defendant's duty to determine the amount of money owed to the plaintiff's lawyer and to retain it for him. *See Fischer-Hansen v. Brooklyn Heights R. Co.*, 66 N.E. 395, 398 (N.Y. 1903); *Watson*, 2002 WL 1592603, at *2.

With respect to the "clean diesel" litigation, when the public learned that Volkswagen (or VW) had installed defeat devices in hundreds of thousands of its diesel cars, lawyers nationwide raced to file lawsuits against the company on behalf of consumers who had bought or leased the cars. Some of those lawyers gave VW notice that, pursuant to state law, they were placing charging liens on their clients' claims. (*See, e.g.*, Dkt. No. 2159 (listing certain attorneys who notified VW of charging liens).)

A different set of lawyers, which this Court appointed, thereafter negotiated class settlements with VW on behalf of consumers who had bought or leased the affected cars. (One settlement covered the 2.0-liter cars; the other covered the 3.0-liter models.) The EPA, the FTC, and the California Air Resources Board, all of which were simultaneously negotiating consent decrees with VW, participated in the negotiations and supported the settlements.

A substantial number of consumers who had retained their own lawyers left those lawyers (and the cases they had filed) and accepted the class settlements. The consumers who accepted the settlements released "on behalf of themselves and their . . . attorneys, . . . . any claims for . . . liens . . . [or] attorneys' . . . fees or costs other than fees and costs awarded by the Court in connection with this Settlement." (2.0-Liter Settlement ¶ 9.3, Dkt. No. 1685; *accord* 3.0-Liter Settlement ¶ 12.3, Dkt. No. 2894.)

Despite the release of lien claims, James Feinman, a lawyer who filed lawsuits against VW on behalf of some consumers who later accepted the 2.0-liter settlement, filed an action in Virginia

state court, late last year, to enforce charging liens against VW. (*See* Monahan Decl., Ex. A, Dkt. No. 5824-2.) He asserts that he gave VW notice of the liens before the settlement, and he argues that the liens entitle him to recover reasonable fees and costs from VW for work that he did for his clients before they accepted the settlement. In response to Feinman's lien action, VW filed a motion in this Court to enforce the settlement's release of lien claims. That motion is at issue.

The 2.0-liter settlement's release covers Feinman's lien claims. It not only applies to class members, but also to their attorneys, and it releases "any claims" by class members or their attorneys "for . . . liens . . . [or] attorneys' . . . fees." (2.0-Liter Settlement ¶ 9.3.)[1] Feinman has not offered any reading of the release that would leave his liens against VW intact. He urges, though, that because the liens were his own, not his clients', and because he was not a class member—and was not represented by anyone whose interests were aligned with his—the release cannot be construed as releasing his liens without violating his due process rights. (*See* Opp'n, Dkt. No. 5882 at 16-20.)

Feinman had notice of the 2.0-liter settlement and its precise terms before the Court approved it. In a motion for attorneys' fees that he filed after settlement approval, he requested fees for, among other things, time that he spent reviewing the settlement and advising his clients on whether to accept it. (*See* Feinman's Fees Mot., Dkt. No. 2643-6 at 13-15.) Indeed, before settlement approval, Feinman even objected to the settlement on behalf of one of his clients. (*See* Objection, Dkt. No. 1893.) But he never objected to paragraph 9.3 of the settlement, which is the release.

Because Feinman had notice of the 2.0-liter settlement, the Court construes his opposition to VW's motion to enforce the release as a belated attempt to object to the settlement; a settlement that this Court approved over two years ago and that the Ninth Circuit agreed was fair and

---

[1] The settlement did leave open the possibility that this Court would award fees to non-class counsel if they demonstrated that their work benefited the class. (*See* 2.0-Liter Settlement ¶ 9.3 (explaining that the release did not apply to "fees and costs awarded by the Court in connection with this Settlement").) Non-class counsel were not able to make such a showing. VW was thus not required to pay their fees as part of the class action. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2017 WL 1474312, at *5 (N.D. Cal. Apr. 24, 2017) (denying non-class counsel's motions for attorneys' fees), *aff'd*, 914 F.3d 623 (9th Cir. 2019).

3

reasonable. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 617 (9th Cir. 2018). The Court will not consider Feinman's late objection. VW reasonably relied on the release's scope when it agreed to settle, and the Court will not modify the release at this juncture. *See also Schneider, Kleinick, Weitz, Damashek & Shoot v. City of New York*, 302 A.D.2d 183, 188 (N.Y. App. Div. 2002) (noting that a lawyer may waive or forfeit a charging lien by neglect).

The Court also notes that the release of attorneys' lien claims against VW was essential to the settlement's success. When this MDL began there was an ongoing harm that needed to be remedied: approximately 600,000 cars were emitting dangerous pollutants in the United States at levels that greatly exceeded legal limits. (*See* Feb. 25, 2016 Hr'g Tr. 12:20-13:14 (explaining that this ongoing environmental harm required urgent action by class counsel, VW, and the government).) To incentivize consumers to stop driving the cars, VW offered to buy the cars back at pre-scandal prices. The expectation was that consumers would then use those funds to buy or lease replacement cars.

The incentive worked. Within four months of approval, VW had taken possession of 137,979 2.0-liter TDI cars, 28 percent of the total number. (*See* Feb. 27, 2017 Claims Supervisor's Report, Dkt. No. 2979 at 56.) And within 24 months of approval, VW had removed from commerce or modified 455,394 2.0-liter TDI cars, approximately 94 percent of the total number. (*See* Nov. 26, 2018 Claims Supervisor's Report, Dkt. No. 5585 at 36.)[2]

If class members had not released their lawyers' lien claims, it is unlikely that these results would have been achieved. Without the release, VW likely would have been unable to disburse the settlement funds directly to consumers. If it had nonetheless done so, it would have risked later court orders requiring it to pay additional money (above what it had paid class members) to satisfy the liens. Without VW disbursing the settlement funds directly to consumers, it is probable

---

[2] Consumers had the option to return their cars to VW or to keep their cars but to have them modified. Both options included financial incentives, as VW agreed to make restitution payments to participating class members in either scenario. (*See* Approval Order, Dkt. No. 2102 at 6-7.) The buyback has been the preferred option. As of November 18, 2018, 85 percent of class members who selected a remedy had chosen the buyback over the modification. (See Nov. 26, 2018 Claims Supervisor's Report, Dkt. No. 5585 at 11.)

4

that consumers would have hesitated to return their polluting cars, which would have left the cars on the road and their emissions in the air.

Even if VW had made partial payments to class members, but held back the remaining funds until it knew for certain whether it would be required to satisfy charging liens, harmful ripple effects could have resulted. In such a scenario, consumers wouldn't have known the exact amounts that they stood to gain by participating in the settlement. And with that uncertainty, they may have refused to participate in the settlement and may have kept driving their VW cars.

VW's prompt payment of the settlement funds directly to affected consumers was needed to quickly remove the polluting cars from the road. The release gave VW assurances that it could distribute the funds to consumers without penalty. It was instrumental to the success of the settlement and, indeed, VW's counsel has represented that without it "a settlement [would] not have been achieved." (Apr. 23, 2019 Hr'g Tr. 46:3-4.)

While the 2.0-liter settlement released Feinman's liens against VW, the Court notes that his liens against the *res* itself were not affected by the settlement. VW has disbursed the settlement funds to class members, and if Feinman believes he has a right to a portion of those funds, he may seek to recover against his clients. Whether such a recovery is warranted is a matter that is not before this Court.

The lien claims that Feinman is currently pursuing against VW in Virginia state court are released claims. In the 2.0-liter settlement approval order, this Court enjoined releasing parties "from commencing, filing, initiating, instituting, pursuing, maintaining, enforcing or prosecuting, either directly or indirectly, any Released Claims . . . in any jurisdiction or forum, against any of the Released Parties." (Approval Order at 47 ¶ 9.) Pursuant to that Order, Feinman is enjoined from pursuing his lien claims against VW.

**IT IS SO ORDERED.**

Dated: May 6, 2019

CHARLES R. BREYER
United States District Judge