# EXHIBIT 1

1   Elizabeth J. Cabraser (State Bar No. 083151)      Robert J. Giuffra, Jr. (*admitted pro hac vice*)
    ecabraser@lchb.com                                Sharon L. Nelles (*admitted pro hac vice*)
2   LIEFF CABRASER HEIMANN &                          William B. Monahan (*admitted pro hac vice*)
    BERNSTEIN, LLP                                    giuffrar@sullcrom.com
3   275 Battery Street, 29th Floor                    nelless@sullcrom.com
    San Francisco, CA  94111-3339                     monahanw@sullcrom.com
4   Telephone:  (415) 956-1000                        SULLIVAN & CROMWELL LLP
    Facsimile:  (415) 956-1008                        125 Broad Street
5                                                     New York, New York 10004
    *Lead Counsel for Plaintiffs*                     Telephone:  (212) 558-4000
6                                                     Facsimile:  (212) 558-3588

7                                                     Laura Kabler Oswell
                                                      SULLIVAN & CROMWELL LLP
8                                                     1870 Embarcadero Road
                                                      Palo Alto, California 94303
9                                                     Telephone:    (650) 461-5600
                                                      Facsimile:    (650) 461-5700
10                                                    oswelll@sullcrom.com

11                                                    *Counsel for Defendants*

12                          UNITED STATES DISTRICT COURT

13                        NORTHERN DISTRICT OF CALIFORNIA

14                             SAN FRANCISCO DIVISION

15

16
    IN RE: VOLKSWAGEN "CLEAN DIESEL"             MDL 2672 CRB (JSC)
17  MARKETING, SALES PRACTICES AND
    PRODUCTS LIABILITY LITIGATION               **CONSUMER CLASS ACTION
18                                              SETTLEMENT AGREEMENT AND
                                                RELEASE**
19  This Documents Relates to:

20  Audi CO$_2$ Cases                           Hearing:
                                                Time:
21                                              Courtroom:  6, 17th floor

22                                              The Honorable Charles R. Breyer

23

24

25

26

27

28

# TABLE OF CONTENTS

1.  THE PROPOSED SETTLEMENT ................................................................................1

2.  DEFINITIONS ........................................................................................................3

3.  ORDER GRANTING PRELIMINARY APPROVAL ..........................................9

4.  CONSUMER COMPENSATION AND REMEDIES ........................................9

5.  CLASS CLAIMS PROCESS AND ADMINISTRATION ...........................11

6.  CONFIRMATORY DISCOVERY ...................................................................12

7.  REQUESTS FOR EXCLUSION ......................................................................12

8.  OBJECTIONS TO THE SETTLEMENT ......................................................13

9.  NOTICE PROGRAM ........................................................................................15

10. RELEASE AND WAIVER ................................................................................16

11. ESCROW ACCOUNT .......................................................................................22

12. ATTORNEYS' FEES AND EXPENSES .........................................................22

13. PROPOSED SCHEDULE FOR APPROVAL OF SETTLEMENT ..............24

14. AGREEMENT TO COOPERATE TO EFFECTUATE SETTLEMENT .....24

15. MODIFICATION OR TERMINATION OF THE CLASS ACTION
    AGREEMENT ...................................................................................................25

16. REPRESENTATIONS AND WARRANTIES ................................................27

17. GENERAL MATTERS AND RESERVATIONS ...........................................29

1   **1.      THE PROPOSED SETTLEMENT**

2          This Consumer Class Action Settlement Agreement (the "Class Action Agreement")

3   concerns certain Volkswagen, Audi, Porsche, and Bentley-branded gasoline vehicles for which

4   the miles-per-gallon ("MPG") as represented on the "Monroney" fuel economy label is not

5   accurate and will be revised.  This settlement offers current and former owners and lessees of

6   such vehicles lump-sum payments to compensate them fairly for damages they allege they

7   suffered, including increased fuel consumption and any inconvenience that may have resulted

8   from increased fuel consumption.

9          Federal law requires that new vehicles sold or leased in the United States have a

10  Monroney fuel economy label in their window that displays information about the vehicle's fuel

11  efficiency.  49 U.S.C. § 32908, *et seq*.; 40 C.F.R. §§ 600.301–302-12.  The Monroney fuel

12  economy label provides, among other things, the City, Highway, and Combined MPG of the

13  vehicle based on dynamometer testing on Environmental Protection Agency ("EPA") test cycles.

14  The Monroney fuel economy label also includes a five-year fuel cost estimate comparison to the

15  average fuel cost for all labeled vehicles in the vehicle's model year, assuming 15,000 miles per

16  year and using United States Department of Energy fuel price projections.

17         On November 5, 2016, the German newspaper *Bild am Sonntag* reported that the

18  California Air Resources Board had discovered a software function on certain Audi vehicles

19  equipped with a certain 8-speed automatic transmission that reduces carbon dioxide ("$CO_2$")

20  emissions to legal levels during test cycles, but not during on-road driving, a so-called "warm-up"

21  program.  In response to that article, starting in November 2016, consumers filed fourteen class

22  action lawsuits against AUDI AG and Audi of America, LLC (together, "Audi") and Volkswagen

23  AG and Volkswagen Group of America, Inc. (together, "Volkswagen") in federal courts across

24  the country, seeking to represent a proposed class of owners of Audi vehicles and alleging that

25  Audi and Volkswagen had implemented software in certain gasoline vehicles that resulted in

26  lower fuel efficiency than as stated on the required fuel economy label.  The actions were

27  consolidated with *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products

28  Liability Litigation*, MDL No. 2672 CRB (JSC) in the United States District Court for the

1   Northern District of California before the Honorable Charles R. Breyer.  Judge Breyer had

2   previously appointed Plaintiffs' Lead Counsel, as well as a committee of plaintiffs' lawyers from

3   law firms across the United States (referred to collectively as the Plaintiffs' Steering Committee

4   ("PSC")), to oversee the litigation on behalf of affected owners and lessees, and he ordered

5   Plaintiffs to file a consolidated complaint.  *See* Dkt. 3217.

6         On October 12, 2017, the PSC filed a Consolidated Consumer Class Action Complaint,

7   alleging claims against Volkswagen, Audi, and Robert Bosch GMBH and Robert Bosch, LLC

8   (together, "Bosch") for RICO violations, fraud by concealment, violation of the Magnuson-Moss

9   Warranty Act, breach of express and implied warranties under state laws, and violations of state

10  consumer protection and unfair practices statutes of all 50 states and the District of Columbia.  On

11  December 11, 2017, Volkswagen, Audi and Bosch filed motions to dismiss for failure to state a

12  claim, and briefing on the motions to dismiss concluded on February 15, 2018.  A hearing on

13  those pending motions was scheduled for May 11, 2018, but on April 16, 2018, the Parties agreed

14  to engage in discussions regarding resolution of the case.

15        Throughout this period, Plaintiffs conducted extensive testing on subject Audi gasoline

16  vehicles with the assistance of professional experts to test the issues raised in the *Bild am Sonntag*

17  reporting, and to determine whether fuel economy differed with and without the warm-up

18  function active.  Defendants also conducted extensive testing and analysis of the $CO_2$ emissions

19  and fuel economy of Audi, Bentley, Porsche and Volkswagen gasoline vehicles with automatic

20  transmissions to evaluate the warm-up function on a dynamometer and using computer

21  simulations.  Following briefing on the motions to dismiss, Plaintiffs and Defendants agreed to

22  share documents and information, conduct additional testing, and evaluate the results and

23  methodologies of their respective testing.

24        Plaintiffs and their experts also traveled to a testing facility in Ingolstadt, Germany to

25  observe certain testing conducted by Defendants, review the Defendants' testing data, and discuss

26  the testing with Defendants' engineers.  All of this information was shared as part of extensive

27  settlement efforts over the course of nearly a year, culminating in this Class Action Agreement.

28  Based on that testing and analysis, the Parties have identified 97,890 Audi, Bentley, Porsche and

Volkswagen vehicles for which the rounded fuel economy was one mile per gallon less in the City, Highway and/or Combined values than what was shown on the Monroney fuel economy label of those vehicles at the time of their initial sale or lease.  For all Class Vehicles, the difference in the results of testing and the Monroney fuel economy label was one mile per gallon when rounded using standard methods required in fuel economy certification, with the exception of one vehicle for which there was a two mile per gallon difference because the original Monroney fuel economy label contained an unrelated error.

**2.      DEFINITIONS**

As used in this Class Action Agreement, including the attached exhibits, the terms defined herein have the following meanings, unless this Class Action Agreement specifically provides otherwise:

2.1.     "Action" means the coordinated class, mass, and individual actions, however named, including but not limited to the Complaint as defined in Section 2.16, that are currently coordinated pursuant to 28 U.S.C. § 1407 in the United States District Court for the Northern District of California in *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, No. 3:15-md-02672-CRB (N.D. Cal.) (MDL 2672) (the "MDL") that relate to the Class Vehicles.

2.2.     "Audi" means AUDI AG and Audi of America, LLC.

2.3.     "Authorized Dealer" means any authorized Audi, Bentley, Porsche, or Volkswagen dealer located in the United States and Puerto Rico as evidenced by a current and valid Dealer Sales and Service Agreement.  "Non-Authorized Dealer" means any automobile dealer that is not an Authorized Dealer that is located in the United States and Puerto Rico.

2.4.     "Bentley" means Bentley Motors Limited and Bentley Motors, Inc.

2.5.     "Claim" means the claim of any Class Member or his or her or its representative submitted on a Claim Form as provided in this Class Action Agreement.

2.6.     "Claim Form" means the document used to submit a Claim under this Class Action Agreement.

2.7.    "Claims Period" means the time period during which Class Members may submit a Claim for review to obtain benefits under the Class Action Settlement.  The Claims Period shall run 120 days from the entry of the Order Granting Preliminary Approval.

2.8.    "Claims Administrator" means the third-party agent agreed to by the Parties and appointed by the Court to oversee the Claims process described in Section 5.

2.9.     "Class" means, for purposes of this Class Action Settlement only, a nationwide class, including Puerto Rico, of all persons (including individuals and entities) who own, owned, lease, or leased a Class Vehicle in the United States or its territories as of the date of the Motion for Preliminary Approval.  The following entities and individuals are excluded from the Class:

(a)    Defendants' officers, directors and employees and participants in Volkswagen's Internal Lease Program, and/or Porsche Associate Lease Program; Defendants' affiliates and affiliates' officers, directors and employees; Defendants' distributors and distributors' officers, directors and employees;

(b)    Judicial officers and their immediate family members and associated court staff assigned to this case; and

(c)    All those otherwise in the Class who or which timely and properly exclude themselves from the Class as provided in this Class Action Agreement.

2.10.    "Class Action Agreement" means this settlement agreement and the exhibits attached hereto, including any subsequent amendments or any exhibits to such amendments.  The Class Action Agreement may alternatively be referred to as the "Class Action Settlement" or the "Settlement."

2.11.    "Class Counsel" means Lead Counsel and the PSC.

2.12.    "Class Member" means a member of the Class.

2.13.    "Class Notice Program" means the program for distributing information about the Class Action Settlement to Class Members.

2.14.    "Class Representative" or "Settlement Class Representative" means a Plaintiff named in the Complaint, who meets the Class definition set forth in Section 2.9 of this Class

Action Agreement, and who has agreed to represent the Class for purposes of obtaining approval of, and effectuating, this Class Action Agreement, as listed in the Motion for Preliminary Approval.

2.15.   "Class Vehicle" means the gasoline-powered vehicles of the make, model, engine capacity, engine type, power, and model years listed in the table immediately below this paragraph that were sold or leased in the United States on or before the date of the Motion for Preliminary Approval.

| Make | Model | Engine Capacity (liters) | Model Year |
|---|---|---|---|
| Audi | A8L | 4.0L | 2015 |
| Audi | A8L | 6.3L | 2013 |
| Audi | A8L | 6.3L | 2014 |
| Audi | A8L | 6.3L | 2015 |
| Audi | A8L | 6.3L | 2016 |
| Audi | RS7 | 4.0L | 2014 |
| Audi | RS7 | 4.0L | 2015 |
| Audi | RS7 | 4.0L | 2016 |
| Audi | S8 | 4.0L | 2013 |
| Audi | S8 | 4.0L | 2014 |
| Audi | S8 | 4.0L | 2015 |
| Audi | S8 | 4.0L | 2016 |
| Bentley | Continental GT | 4.0L | 2013 |
| Bentley | Continental GT | 4.0L | 2014 |
| Bentley | Continental GT | 4.0L | 2015 |
| Bentley | Continental GT | 4.0L | 2016 |
| Bentley | Continental GT | 4.0L | 2017 |
| Bentley | Continental GTC | 4.0L | 2013 |
| Bentley | Continental GTC | 4.0L | 2014 |
| Bentley | Continental GT Convertible | 4.0L | 2015 |
| Bentley | Continental GT Convertible | 4.0L | 2016 |
| Bentley | Continental GT Convertible | 4.0L | 2017 |
| Bentley | Flying Spur | 4.0L | 2015 |
| Bentley | Flying Spur | 4.0L | 2016 |
| Bentley | Flying Spur | 6.0L | 2014 |
| Bentley | Flying Spur | 6.0L | 2015 |
| Bentley | Flying Spur | 6.0L | 2016 |
| Porsche | Cayenne | 3.6L | 2013 |
| Porsche | Cayenne | 3.6L | 2014 |
| Porsche | Cayenne | 3.6L | 2016 |
| Porsche | Cayenne GTS | 3.6L | 2016 |
| Porsche | Cayenne GTS | 4.8L | 2013 |
| Porsche | Cayenne GTS | 4.8L | 2014 |
| Porsche | Cayenne S | 3.6L | 2015 |
| Porsche | Cayenne S | 3.6L | 2016 |
| Porsche | Cayenne S | 4.8L | 2013 |
| Porsche | Cayenne S | 4.8L | 2014 |
| Porsche | Cayenne Turbo | 4.8L | 2013 |

- 5 -

| Make | Model | Engine Capacity (liters) | Model Year |
|------|-------|--------------------------|------------|
| Porsche | Cayenne Turbo | 4.8L | 2014 |
| Porsche | Cayenne Turbo S | 4.8L | 2014 |
| Porsche | Cayenne Turbo S | 4.8L | 2016 |
| Volkswagen | Tiguan 4MOTION | 2.0L | 2017 |
| Volkswagen | Touareg | 3.6L | 2013 |
| Volkswagen | Touareg | 3.6L | 2014 |

2.16.   "Complaint" means the Amended Consolidated Consumer Class Action Complaint that will be filed in the Action before the Motion for Preliminary Approval.

2.17.   "Court" means the United States District Court for the Northern District of California, San Francisco Division.

2.18.   "Defendants" means Audi, Bentley, Porsche, and Volkswagen.

2.19.   "Defendants' Lead Counsel" means Robert J. Giuffra, Jr. and Sharon L. Nelles of Sullivan & Cromwell LLP.

2.20.   "Effective Date" means the date the Court enters the Final Approval Order.

2.21.   "Escrow Account" means the escrow account managed by the Escrow Agent, which shall be the sole escrow account for compensation of Class Members under the Class Action Agreement.

2.22.   "Escrow Agent" means the agreed-upon entity to address and hold for distribution the funds identified in this Class Action Agreement pursuant to the terms of the Escrow Agreement.  The Parties agree that Citibank Private Bank shall serve as Escrow Agent, subject to approval by the Court.

2.23.   "Escrow Agreement" means the agreement by and among Plaintiffs' Lead Counsel and Defendants' Lead Counsel with respect to the escrow of the funds to be deposited into the Escrow Account pursuant to this Class Action Agreement.

2.24.    "Fairness Hearing" means the hearing held by the Court for the purpose of determining whether to approve this Class Action Agreement as fair, reasonable, and adequate.

2.25.   "Final Approval Order" means the Court's order approving the Class Action Settlement.

2.26.    "Motion for Preliminary Approval" means the motion filed pursuant to Rule 23(e)(1) of the Federal Rules of Civil Procedure.

2.27.    "Notice Administrator" means the third-party agent or administrator agreed to by the Parties and appointed by the Court to implement and consult on the Class Notice Program.

2.28.    "Opt-Out Deadline" means the last day a Class Member may opt out of the Class Action Settlement, which, subject to Court approval, is 60 days after the Order Granting Preliminary Approval.

2.29.    "Order Granting Preliminary Approval" means the order that may, at the discretion of the Court, be entered by the Court approving notice to the Class and concluding that the Court will likely be able to approve the Class Action Settlement and certify the proposed Class as outlined in Section 3 of this Class Action Agreement.

2.30.    "Parties" means the Class Representatives and Defendants, collectively, as each of those terms is defined in this Class Action Agreement.

2.31.    "Plaintiffs' Lead Counsel" or "Lead Counsel" means Elizabeth Cabraser of Lieff, Cabraser, Heimann & Bernstein, LLP, who was appointed by the Court on January 21, 2016, and who serves as the Chair of the PSC.

2.32.    "Plaintiffs' Steering Committee" or "PSC" means those counsel appointed to the Plaintiffs' Steering Committee by the Court in this Action on January 21, 2016.  Lead Counsel is Chair of the PSC.

2.33.    "Porsche" means Dr. Ing. h.c. F. Porsche AG and Porsche Cars North America, Inc.

2.34.    "Post-Appeal Date" means the latest date on which the Final Approval Order approving this Class Action Agreement becomes final.  For purposes of this Class Action Agreement:

2.34.1.    If no appeal has been taken from the Final Approval Order, "Post-Appeal Date" means the date on which the time to appeal therefrom has expired; or

2.34.2.    If any appeal has been taken from the Final Approval Order, "Post-Appeal Date" means the date on which all appeals therefrom, including petitions for rehearing or

reargument, petitions for rehearing *en banc* and petitions for a writ of *certiorari* or any other form of review, have been fully disposed of in a manner that affirms the Final Approval Order; or

2.34.3.    If Lead Counsel and Defendants agree in writing, the "Post-Appeal Date" can occur on any other earlier agreed date.

2.35.    "Release" means the release and waiver described in Section 10 of this Class Action Agreement and in the Final Approval Order.  In addition, Class Members who receive compensation pursuant to this Class Action Agreement will execute an Individual Release as described in Section 10.6 of the Class Action Agreement, and that Individual Release will remain valid even if the Final Approval Order is later reversed and/or vacated on appeal.

2.36.    "Released Claims" has the definition set forth in Section 10.3 of this Class Action Agreement.

2.37.    "Released Party" or "Released Parties" has the definition set forth in Section 10.2 of this Class Action Agreement.

2.38.    "Releasing Parties" has the definition set forth in Section 10.3 of this Class Action Agreement.

2.39.    "Settlement Value" means the total possible compensation available to the Class under this Settlement, which will be no less than $94,999,947.

2.40.    "Transmission/Fuel Economy Matter" means (1) the installation, presence, design, manufacture, assembly, testing, or development of software that used transmission shift maps or otherwise caused the transmission to operate in a manner in the certification and/or fuel economy testing process in any Class Vehicle that differed from transmission shift maps used or transmission operation in basic or dynamic shift programs (the "Transmission Warm-Up Mode"); (2) the marketing or advertisement of the fuel economy in the Class Vehicles to the extent the fuel economy was impacted by the Transmission Warm-Up Mode; and/or (3) the subject matter of the Action.

2.41.    "Volkswagen" means Volkswagen AG and Volkswagen Group of America, Inc. (d/b/a Volkswagen of America, Inc. or Audi of America, Inc.).

CONSUMER CLASS ACTION SETTLEMENT
AGREEMENT AND RELEASE
MDL 2672 CRB (JSC)

2.42.     Other capitalized terms used in this Class Action Agreement but not defined in this Section shall have the meanings ascribed to them elsewhere in this Class Action Agreement.

2.43.     The term "he or she" and "his or her" include "it" or "its" where applicable.

## 3.      ORDER GRANTING PRELIMINARY APPROVAL

3.1.     Shortly after completing the confirmatory discovery set forth in Section 6, the Parties shall file a Motion for Preliminary Approval.  Simultaneously, the Class Representatives shall move for certification of the Class for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(3), and 23(e).  It is expressly agreed that any certification of the Class shall be for settlement purposes only, and Defendants do not waive any arguments that they may have that class certification for any other purpose would be improper.

3.2.     The Parties agree to take all actions and steps reasonably necessary to obtain an Order Granting Preliminary Approval from the Court and to fully implement and effectuate this Class Action Settlement.

## 4.      CONSUMER COMPENSATION AND REMEDIES

4.1.     **Overview of Benefits**.  The Class Action Agreement provides cash compensation, which is available only to Class Members who do not opt out.  Class Member compensation is based on the difference between the cost of gasoline that would have been required for the Class Vehicles under the original Monroney fuel economy labels and the cost of gasoline required for the Class Vehicles under the adjusted fuel economy labels, in addition to a goodwill payment to account for the inconvenience associated with additional fill-ups.  Exhibit A to this Class Action Agreement sets forth the MPG differential and cash compensation for each Class Vehicle.  Class Members who no longer possess their Class Vehicles as of the date of the Motion for Preliminary Approval will be compensated on a pro rata basis for the months such Class Members owned or leased a Class Vehicle.  Class Members who are current lessees of a Class Vehicle (*i.e.* Class Members who held active leases as of the date of the Motion for Preliminary Approval) will be entitled to compensation for the full duration of their lease. Class Members who owned their Class Vehicles as of the date of the Motion for Preliminary Approval will be entitled to

compensation for the months they have owned their Class Vehicles, as well as any remaining months up to 96 months after the Class Vehicles were first sold.

4.2.    **Responsibility for Required Payments**.  Volkswagen AG shall bear the ultimate responsibility for all required payments owed by Defendants under this Class Action Agreement, as described herein.  Any legal successor or assign of Volkswagen AG shall assume Volkswagen AG's liability and remain jointly and severally liable for the payment and other performance obligations herein.  Volkswagen AG shall include an agreement to so remain liable in the terms of any sale, acquisition, merger, or other transaction changing the ownership or control of any of its successors or assigns.  No change in the ownership or control of any such entity shall affect the obligations herein of Volkswagen AG without modification of the Class Action Agreement.

4.3.    **Tax Implications**.  Class Members should consult their personal tax advisor for assistance regarding any tax ramifications of this Class Action Settlement.  Neither the PSC nor Defendants and their counsel are providing any opinion or advice as to the tax consequences or liabilities of Class Members as a result of any payments or benefits under this Class Action Settlement.

4.4.    **Deceased, Divorced, Dissolved, or Bankrupt Claim Members**.  Nothing in the Class Action Agreement shall prevent Class benefits from being provided, upon appropriate proof, to, or for the benefit of, an otherwise eligible Class Member, or that Class Member's estate or legal representative, notwithstanding that Class Member's death, divorce, dissolution, or bankruptcy (whether discharged or ongoing), in accordance with applicable law.

4.5.    **Allocation of Unclaimed Funds**.  The Settlement shall be non-reversionary, meaning that no amount of the Settlement Value will revert to Defendants.  If there are any funds remaining in the Settlement Value after all valid, complete, and timely Claims are paid, subject to Court approval, the balance will be directed to environmental remediation efforts.  This cy pres distribution may include, for example, the purchase of greenhouse gas credits, environmental projects in consultation with relevant regulators, and/or other, environmentally-focused recipients, as agreed by the Parties.  Defendants shall be under no obligation to make any distribution pursuant to this paragraph before the Post-Appeal Date.

**5.      CLASS CLAIMS PROCESS AND ADMINISTRATION**

        5.1.    **Claims Program**.  The Claims Program will involve four steps.  At **Step 1,** within 21 days following the Court's entry of the Order Granting Preliminary Approval, the Claims Administrator will send the Claim Form to each Class Member who owns, owned, leases, or leased a Class Vehicle for whom the Claims Administrator is able to locate current contact information.  At **Step 2**, Class Members will be required to submit a Claim Form with supporting documentation as agreed by the Parties and set forth in the Claim Form, and an Individual Release.  If the Claim Form is sent by U.S. mail, the envelope must be postmarked on or before the last day of the Claims Period.  If the Claim Form is submitted electronically, it must be submitted on or before the last day of the Claims Period.  At **Step 3**, upon receipt of a timely submitted Claim Form and Individual Release (as described in Section 10.6), the Claims Administrator will review the Claim to determine whether the Claim request meets all qualifications for payment (including any necessary supporting documentation), and if so the amount of that payment.  If the Claim is incomplete, within twenty-one days of receiving the Claim, the Claims Administrator shall contact the Class Member regarding these deficiencies and provide the Class Member sixty days to provide the missing documentation.  At **Step 4**, once the Claims Administrator determines that the Claim is complete, within thirty days of the later of (i) the Effective Date or (ii) receipt of a completed Claim, the Claims Administrator will send to a submitting Class Member the compensation to which the Claims Administrator determines the Class Member is entitled based on its Claim.

        5.2.    To the extent that settlement administration issues arise that are not addressed by this Class Action Agreement, Defendants' Lead Counsel agree to confer in good faith with Plaintiffs' Lead Counsel regarding any such issues.  A dispute among the Parties concerning the administration of the Claims Program may be brought to the attention of the Court for resolution.

        5.3.    **Claims Administrator**.  The Claims Administrator shall be responsible for overseeing the implementation and administration of the claims process, including validation of eligibility and approval of payments to Class Members.  Defendants shall pay the reasonable and necessary fees and costs incurred by the Claims Administrator for administration of this Class

1    Action Agreement.  Those fees and costs will be paid by Defendants in addition to the Settlement

2    Value.

3          5.4.    **The Court's Ongoing and Exclusive Jurisdiction**.  The Court retains the

4    ongoing and exclusive jurisdiction and independent case management authority, as MDL

5    transferee judge and under Federal Rule of Civil Procedure 23, regarding the general operation of

6    the Claims Program and those appointed to implement and oversee it.

7    **6.      CONFIRMATORY DISCOVERY**

8          6.1.    The Parties have already engaged in extensive discovery and information

9    exchanges regarding these claims, including the production and review of millions of pages of

10   documents produced in the MDL, as well as a thorough testing conducted over many months.

11   The Parties will engage in additional confirmatory discovery regarding the determination of the

12   fuel economy changes upon which the Settlement Value is calculated.  The Parties will not move

13   for the Order Granting Preliminary Approval until the confirmatory discovery is complete.

14   **7.      REQUESTS FOR EXCLUSION**

15         7.1.    **Manner of Opting Out**.  The Class Notice Program will provide instructions

16   regarding the procedures that must be followed to opt out of the Class pursuant to Federal Rule of

17   Civil Procedure 23(c)(2)(B)(v).  The Parties agree that, to opt out validly from the Class, a Class

18   Member must personally sign (electronic signatures, including Docusign, are invalid and will not

19   be considered personal signatures) and send a written request to opt out stating "I wish to exclude

20   myself from the Class in Volkswagen/Audi/Porsche/Bentley Fuel Economy Class Action

21   Settlement in *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products*

22   *Liability Litigation*, No. 3:15-md-02672-CRB (N.D. Cal.) (MDL 2672)," (or substantially similar

23   clear and unambiguous language) to the Claims Administrator on or before the Opt-Out Deadline

24   (postmarked or emailed no later than the Opt-Out Deadline).  The Class Member must either (i)

25   mail the signed written request to an address provided by the Claims Administrator; or (ii) e-mail

26   a complete and legible scanned copy or photograph of the signed written request to an e-mail

27   address provided by the Claims Administrator.  That written request must include the Class

28   Member's name, address, telephone number, and VIN of the Class Vehicle forming the basis of

the Class Member's inclusion in the Class, a statement as to whether the Class Member owns/owned or leases/leased the Class Vehicle, and the date(s) of the Class Member's ownership or lease of the Class Vehicle (i.e., start date and, if applicable, end date of possession).  Opt-out requests that are signed by an attorney but not by the Class Member are invalid.  The Parties retain discretion to determine whether any opt-out request substantially complies with the requirements above. The Claims Administrator will provide copies of all opt-out requests to Plaintiffs' Lead Counsel and Defendants' Lead Counsel within seven days of the receipt of each such request.  The Claims Administrator and the Parties shall promptly after receipt provide copies of any requests for exclusion, objections and/or related correspondence to each other.

7.2.    **Consequences of Failure to Opt Out in a Timely and Proper Manner**.  All Class Members who do not timely and properly opt out of the Class will in all respects be bound by all terms of this Class Action Agreement and the Final Approval Order upon the Effective Date.

7.3.    **Opting Out and Objecting Are Mutually Exclusive Options**.  Any Class Member who elects to opt out pursuant to this Section may not also object to the Settlement.  Any Class Member who elects to object pursuant to Section 8 herein may not also opt out pursuant to this Section.

## 8.    OBJECTIONS TO THE SETTLEMENT

8.1.    **Manner of Objecting**.  The Class Notice Program will provide instructions regarding the procedures that must be followed to object to the Settlement pursuant to Federal Rule of Civil Procedure 23(e)(5).  Provided that a Class Member has not submitted a written request to opt out, as set forth in Section 7, the Class Member may present written objections, if any, explaining why he or she believes the Class Action Settlement should not be approved by the Court as fair, reasonable, and adequate.  No later than such date as is ordered by the Court, a Class Member who wishes to object to any aspect of the Class Action Settlement must file with the Court, or as the Court otherwise may direct, a written statement of the objection(s).  The written statement of objection(s) must include a detailed statement of the Class Member's objection(s), as well as the specific reasons, if any, for each such objection, including any

evidence and legal authority the Class Member wishes to bring to the Court's attention.  That written statement also must contain the Class Member's printed name, address, telephone number, and VIN of the Class Vehicle forming the basis of the Class Member's inclusion in the Class, the dates of the Class Member's ownership or lease of the Class Vehicle, a statement that the Class Member has reviewed the Class definition and has not opted out of the Class, and any other supporting papers, materials, or briefs the Class Member wishes the Court to consider when reviewing the objection.

8.2.    **Objecting Through Counsel**.  A Class Member may object on his or her own behalf or through a lawyer hired at that Class Member's own expense, provided the Class Member has not submitted a written request to opt out, as set forth in Section 7.  The objection must state whether it applies only to the objector, to a specific subset of the Class, or to the entire Class, and also state with specificity the grounds for the objection.  Lawyers asserting objections on behalf of Class Members must: (1) file a notice of appearance with the Court by the date set forth in the Order Granting Preliminary Approval, or as the Court otherwise may direct; (2) file a sworn declaration attesting to his or her representation of each Class Member on whose behalf the objection is being filed or file (in camera) a copy of the contract between that lawyer and each such Class Member; and (3) comply with the procedures described in this Section.  Lawyers asserting objections on behalf of Class Members also must file a sworn declaration that specifies the number of times during the prior five-year period they have objected to a class action settlement on their own behalf or on behalf of a class member.

8.3.    **Intent to Appear at the Fairness Hearing**.  A Class Member (or counsel individually representing him or her, if any) seeking to make an appearance at the Fairness Hearing must file with the Court, by the date set forth in the Order Granting Preliminary Approval, a written notice of his or her intent to appear at the Fairness Hearing, in accordance with the requirements set forth in the Order Granting Preliminary Approval, or by such time and in such manner as the Court may otherwise direct.

8.4.    **Consequences of Failure to Object in a Timely and Proper Manner**.  Unless the Court directs otherwise, any Class Member who fails to comply with the provisions of this

1    Section will waive and forfeit any and all rights he, she, or it may have to object to the Class

2    Action Settlement and/or to appear and be heard on said objection at the Fairness Hearing.

3    Failure to object waives a Class Member's right to appeal.

4    **9.    NOTICE PROGRAM**

5         9.1.    **Class Notice**.  The Parties, in consultation with the Notice Administrator, shall

6    design a notice program that satisfies due process and meets the requirements of Federal Rule of

7    Civil Procedure 23(c) and the Northern District of California's Procedural Guidance for Class

8    Action Settlements.  The program will be further detailed in the Motion for Preliminary

9    Approval.

10        9.2.    **CAFA Notice**.  At the earliest practicable time, and no later than ten days after the

11   Parties notify the Court that a settlement has been reached in this matter, Defendants shall send to

12   each appropriate state and federal official the materials specified in 28 U.S.C. § 1715 and

13   otherwise comply with its terms.  The identities of such officials and the content of the materials

14   shall be mutually agreed to by the Parties.

15        9.3.    **Notice Administrator**.  The Notice Administrator shall be responsible for, among

16   other things, (i) preparing and sending individual notice, (ii) executing a publication notice

17   campaign, and (iii) consulting on and effectuating other aspects of the Class Notice Program.

18   Defendants will pay all reasonable and necessary costs of the Class Notice Program and the fees

19   and costs of the Notice Administrator in addition to the Settlement Value.  Within three business

20   days of the issuance of the Order Granting Preliminary Approval, Defendants shall transfer or pay

21   to the Notice Administrator an amount sufficient to cover the initial costs of the Class Notice

22   Program.

23        9.4.    Not later than ten days before the date of the Fairness Hearing, the Notice

24   Administrator shall file with the Court a list of those persons who have opted out or excluded

25   themselves from the Settlement.  The Notice Administrator shall file with the Court the details

26   outlining the scope, method, and results of the Class Notice Program.

27

28

**10.    RELEASE AND WAIVER**

10.1.    The Parties agree to the following release and waiver (as defined above, the Release), which shall take effect upon entry of the Final Approval Order.  The terms of the Release are a material term of the Class Action Agreement and will be reflected in the Final Approval Order.

10.2.    **Released Parties**.  Released Parties means any person who, or entity that, is or could be responsible or liable in any way whatsoever, whether directly or indirectly, for the Transmission/Fuel Economy Matter.  The Released Parties include, without limitation, (1) Volkswagen AG, Volkswagen Group of America, Inc. (d/b/a Volkswagen of America, Inc. or Audi of America, Inc.), Volkswagen Group of America Chattanooga Operations, LLC, AUDI AG, Audi of America, LLC, VW Credit, Inc., VW Credit Leasing, Ltd., VCI Loan Services, LLC, Porsche Automobil Holding SE, Dr. Ing. h.c. F. Porsche AG, Porsche Cars North America, Inc., Porsche Financial Services, Inc., Porsche Leasing Ltd., Bentley Motors Limited, Bentley Motors, Inc., and any former, present, and future owners, shareholders (direct or indirect), members (direct or indirect), directors, officers, members of management or supervisory boards, employees, attorneys, affiliates, parent companies (direct or indirect), subsidiaries (direct or indirect), predecessors, and successors of any of the foregoing (the "Released Entities"); (2) any and all contractors, subcontractors, joint venture partners, consultants, auditors, and suppliers of the Released Entities, including, but not limited to Aisin Seiki Co., Ltd., Conti Temic, Continental AG, IAV Automotive Engineering, Inc., IAV GmbH, Robert Bosch GmbH, Robert Bosch LLC, ZF AG, and ZF North America, Inc.; (3) any and all persons and entities indemnified by any Released Entity with respect to the Transmission/Fuel Economy Matter; (4) any and all other persons and entities involved in the design, research, development, manufacture, assembly, testing, sale, leasing, repair, warranting, marketing, advertising, public relations, promotion, or distribution of any Class Vehicle, even if such persons are not specifically named in this paragraph, including without limitation all Authorized Dealers, as well as Non-Authorized Dealers and sellers; (5) the Claims Administrator; (6) the Notice Administrator; (7) lenders, creditors, financial institutions, or any other Parties that financed any

1    purchase or lease of a Class Vehicle; and (8) for each of the foregoing, their respective former,

2    present, and future affiliates, parent companies, subsidiaries, predecessors, successors,

3    shareholders, indemnitors, subrogees, spouses, joint ventures, general or limited partners,

4    attorneys, assigns, principals, officers, directors, members of management or supervisory boards,

5    employees, members, agents, representatives, trustees, insurers, reinsurers, heirs, beneficiaries,

6    wards, estates, executors, administrators, receivers, conservators, personal representatives,

7    divisions, dealers, and suppliers.

8        10.3.   **Class Release**.  In consideration for the Settlement, Class Members, on behalf of

9    themselves and their agents, heirs, executors and administrators, successors, assigns, insurers,

10   attorneys (including any attorney engaged by Class Members who is not Class Counsel),

11   representatives, shareholders, owners associations, and any other legal or natural persons who

12   may claim by, through, or under them (the "Releasing Parties"), fully, finally, irrevocably, and

13   forever release, waive, discharge, relinquish, settle, and acquit any and all claims, demands,

14   actions, or causes of action, whether known or unknown, that they may have, purport to have, or

15   may have hereafter against any Released Party, as defined above, arising out of or in any way

16   related to the Transmission/Fuel Economy Matter.  This Release applies to any and all claims,

17   demands, actions, or causes of action of any kind or nature whatsoever, whether in law or in

18   equity, contractual, quasi-contractual or statutory, known or unknown, direct, indirect or

19   consequential, liquidated or unliquidated, past, present or future, foreseen or unforeseen,

20   developed or undeveloped, contingent or non-contingent, suspected or unsuspected, whether or

21   not concealed or hidden, arising from or in any way related to the Transmission/Fuel Economy

22   Matter, including without limitation (1) any claims that were or could have been asserted in the

23   Action; and (2) any claims for fines, penalties, economic damages, punitive damages, exemplary

24   damages, liens, injunctive relief, attorneys' fees, costs, or attorneys' liens (except as provided in

25   Section 12 of this Class Action Agreement), expert, consultant, or other litigation fees or costs

26   other than fees and costs awarded by the Court in connection with this Settlement or to attorneys

27   other than Class Counsel, or any other liabilities, that were or could have been asserted in any

28   civil, administrative, or other proceeding, including arbitration (the "Released Claims").  This

1   Release applies without limitation to any and all Released Claims regardless of the legal or

2   equitable theory or nature under which they are based or advanced including without limitation

3   legal and/or equitable theories under any federal, state, provincial, local, tribal, administrative, or

4   international law, or statute, ordinance, code, regulation, contract, common law, equity, or any

5   other source, and whether based in strict liability, negligence, gross negligence, punitive damages,

6   nuisance, trespass, breach of warranty, misrepresentation, breach of contract, fraud, or any other

7   legal or equitable theory, whether existing under the laws of the United States, a State, territory,

8   or possession of the United States, or of any other foreign or domestic state, territory, or other

9   legal or governmental body, whether existing now or arising in the future.  Notwithstanding the

10  foregoing, this Agreement does not release any claims for wrongful death or personal injury.

11          10.4.   **Possible Future Claims**.  For the avoidance of doubt, Class Members expressly

12  understand and acknowledge that they may hereafter discover claims presently unknown or

13  unsuspected, or facts in addition to or different from those that they now know or believe to be

14  true, related to the Transmission/Fuel Economy Matter, the Action and/or the Release herein.

15  Nevertheless, it is the intention of Class Counsel and the Settlement Class Representatives in

16  executing this Class Action Agreement to fully, finally, irrevocably, and forever release, waive,

17  discharge, relinquish, settle, and acquit all such matters, and all claims relating thereto which

18  exist, hereafter may exist, or might have existed (whether or not previously or currently asserted

19  in any action or proceeding) with respect to the Transmission/Fuel Economy Matter and/or the

20  Released Claims.

21          10.5.   **Waiver of California Civil Code Section 1542 and Analogous Provisions**.

22  Settlement Class Representatives expressly understand and acknowledge, and Class Members

23  will be deemed to understand and acknowledge Section 1542 of the California Civil Code, which

24  provides:  "**A general release does not extend to claims that the creditor or releasing party**

25  **does not know or suspect to exist in his or her favor at the time of executing the release and**

26  **that, if known by him or her, would have materially affected his or her settlement with the**

27  **debtor or released party.**"  Each Settlement Class Representative expressly acknowledges that

28  he, she, or it has been advised by Class Counsel of the contents and effect of Section 1542 and

that he, she, or it has considered the possibility that the number or magnitude of all claims may

not currently be known.  To ensure that this Release is interpreted fully in accordance with its

terms, Class Members expressly waive and relinquish any and all rights and benefits that they

may have under Section 1542 to the extent that such Section may be applicable to the Release.

Class Members likewise expressly waive and relinquish any rights or benefits of any law of any

state or territory of the United States, federal law or principle of common law, or of international

or foreign law, which is similar, comparable, analogous, or equivalent to Section 1542 of the

California Code to the extent that such laws or principles may be applicable to the Release.

10.6.   **Individual Release**.  Each Class Member who submits a Claim pursuant to this

Class Action Agreement shall be required to execute an Individual Release, in the form attached

as Exhibit B, as a precondition to receiving such payment.  Consistent with the Release provided

in this Agreement, the Individual Release will provide that the Class Member releases all of the

Released Parties from any and all present and future claims (as described in Section 10) arising

out of or related to the Transmission/Fuel Economy Matter.  The Individual Release shall provide

that the Class Member releases any potential claims under the Trade Regulation Rule Concerning

the Preservation of Consumers' Claims and Defenses, 16 C.F.R. § 433.2 (the "Holder Rule"),

relating to the Transmission/Fuel Economy Matter.  The Individual Release shall remain effective

even if the Final Approval Order is reversed and/or vacated on appeal, or if this Class Action

Agreement is abrogated or otherwise voided in whole or in part.

10.7.   **Actions or Proceedings Involving Released Claims**.  Class Members who do not

opt out in accordance with Section 7.1 expressly agree that this Release, and the Final Approval

Order, is, will be, and may be raised as a complete defense to, and will preclude, any action or

proceeding specified in, or involving claims encompassed by, this Release.  Class Members who

do not opt out shall not now or hereafter institute, maintain, prosecute, assert, and/or cooperate in

the institution, commencement, filing or prosecution of any suit, action, and/or other proceeding,

against the Released Parties with respect to the claims, causes of action and/or any other matters

subject to this Release.  To the extent that they have initiated, or caused to be initiated, any suit,

action, or proceeding not already encompassed by the Action, Class Members who do not opt out

shall cause such suit, action, or proceeding to be dismissed with prejudice.  If a Class Member who does not opt out commences, files, initiates, or institutes any new legal action or other proceeding for any Released Claim against any Released Party in any federal or state court, arbitral tribunal, or administrative or other forum, (1) such legal action or other proceeding shall be dismissed with prejudice and at that Class Member's cost; and (2) the respective Released Party shall be entitled to recover any and all reasonable related costs and expenses from that Class Member arising as a result of that Class Member's breach of his, her, or its obligations under this Release.  Within five business days of the Post-Appeal Date, Class Counsel will dismiss the Complaint with prejudice.

10.8.   **Ownership of Released Claims**.  Settlement Class Representatives represent and warrant that they are the sole and exclusive owners of any and all claims that they personally are releasing under this Class Action Agreement.  Settlement Class Representatives further acknowledge that they have not assigned, pledged, or in any manner whatsoever, sold, transferred, assigned or encumbered any right, title, interest or claim arising out of or in any way whatsoever pertaining to the Transmission/Fuel Economy Matter, including without limitation, any claim for benefits, proceeds or value under the Action, and that Settlement Class Representatives are not aware of anyone other than themselves claiming any interest, in whole or in part, in any benefits, proceeds or values to which Settlement Class Representatives may be entitled as a result of the Transmission/Fuel Economy Matter.  Class Members submitting a Claim Form shall represent and warrant therein that they are the sole and exclusive owner of all claims that they personally are releasing under the Class Action Agreement and that they have not assigned, pledged, or in any manner whatsoever, sold, transferred, assigned or encumbered any right, title, interest or claim arising out of or in any way whatsoever pertaining to the Action, including without limitation, any claim for benefits, proceeds or value under the Action, and that such Class Members are not aware of anyone other than themselves claiming any interest, in whole or in part, in any benefits, proceeds or values to which those Class Members may be entitled as a result of the Transmission/Fuel Economy Matter.

10.9. **Total Satisfaction of Released Claims**. Any benefits pursuant to the Class Action Agreement are in full, complete, and total satisfaction of all of the Released Claims against the Released Parties. Such benefits are sufficient and adequate consideration for each and every term of this Release, and this Release shall be irrevocably binding upon Settlement Class Representatives and Class Members who do not opt out of the Class.

10.10. **Release Not Conditioned on Claim or Payment**. The Release shall be effective with respect to all Releasing Parties, including all Class Members who do not opt out, regardless of whether those Class Members ultimately submit a Claim under this Class Action Agreement.

10.11. **Basis for Entering Release**. Class Counsel acknowledge that they have conducted sufficient independent investigation and discovery to enter into this Class Action Agreement and that they execute this Class Action Agreement freely, voluntarily, and without being pressured or influenced by, or relying on any statements, representations, promises, or inducements made by the Released Parties or any person or entity representing the Released Parties, other than as set forth in this Class Action Agreement. Settlement Class Representatives acknowledge, agree, and specifically represent and warrant that they have discussed with Class Counsel the terms of this Class Action Agreement and have received legal advice with respect to the advisability of entering into this Class Action Agreement and the Release, and the legal effect of this Class Action Agreement and the Release. The representations and warranties made throughout the Class Action Agreement shall survive the execution of the Class Action Agreement and shall be binding upon the respective heirs, representatives, successors and assigns of the Parties.

10.12. **Material Term**. Settlement Class Representatives and Class Counsel hereby agree and acknowledge that this Section 10 in its entirety was separately bargained for and constitutes a key, material term of the Class Action Agreement that shall be reflected in the Final Approval Order.

10.13. **Reservation of Claims**. This Class Action Agreement shall resolve the claims of Class Members who do not opt out only as they relate to the Released Claims. The Parties

1  reserve all rights to litigate liability and equitable relief of any sort for any subset of vehicles,

2  purchasers, or lessees not expressly covered by this Class Action Agreement.

3       10.14.  **Released Parties' Releases of Settlement Class Representatives, the Class, and**

4  **Counsel**.  Upon the Effective Date, Released Parties absolutely and unconditionally release and

5  forever discharge the Settlement Class Representatives, Class Members, Defendants' counsel and

6  Class Counsel from any and all claims relating to the institution or prosecution of the Action.

7       10.15.  **Jurisdiction**.  The Court shall retain exclusive and continuing jurisdiction over all

8  Parties, the Action, and this Class Action Agreement to resolve any dispute that may arise

9  regarding this Class Action Agreement or in relation to this Action, including any dispute

10  regarding validity, performance, interpretation, administration, enforcement, enforceability, or

11  termination of the Class Action Agreement and no Party shall oppose the reopening and

12  reinstatement of the Action on the Court's active docket for the purposes of effecting this Section.

13  **11.  ESCROW ACCOUNT**

14       11.1.  Within 10 business days after the Effective Date, Defendants shall fund the

15  Escrow Account with the Settlement Value, which funds shall be used by the Claims

16  Administrator, as necessary, to compensate Class Members who submit valid Claims pursuant to

17  this Class Action Agreement.

18       11.2.  In the event that the Class Action Settlement is terminated or invalidated for any

19  reason prior to the conclusion of the Claims Period, any funds in the Escrow Account, including

20  all interest accrued, shall be returned to Defendants.

21  **12.  ATTORNEYS' FEES AND EXPENSES**

22       12.1.  Defendants agree to pay reasonable attorneys' fees and expenses of Class Counsel

23  and other qualifying Participating Counsel as defined in Pretrial Order No. 11 ("PTO 11")

24  (Dkt. 1254) for work performed pursuant to PTO 11 in connection with the Action in an amount

25  to be separately negotiated by the Parties and that must be approved by the Court.  Defendants do

26  not agree to pay fees or expenses for any work that was not performed pursuant to PTO 11 in

27  connection with the Action, and this Class Action Agreement expressly releases Released Parties

28  from any liability to Class Members or their non-Class Counsel attorneys for such payments that

1    otherwise may be due by operation of law or otherwise.  Accordingly, except as provided in this

2    Paragraph 12.1, Defendants shall not be obligated to pay past or future attorneys' fees or expenses

3    of attorneys for individual Class Members who elect to participate in this Settlement.  Defendants

4    and Class Counsel represent that they have not discussed the amount of fees and expenses to be

5    paid prior to agreement on the terms of this Class Action Agreement.  Plaintiffs' Lead Counsel

6    and Defendants' Lead Counsel will attempt to negotiate the amount of attorneys' fees and

7    expenses to be paid by Defendants after the execution of this Class Action Agreement.  If the

8    Parties reach an agreement about the amount of attorneys' fees and expenses for work performed

9    pursuant to PTO 11, Plaintiffs' Lead Counsel will submit the negotiated amount to the Court for

10    approval, and Defendants will wire to an account specified by Plaintiffs' Lead Counsel all

11    attorneys' fees and expenses approved by the Court within three business days of the Court's

12    order approving such fees and expenses, provided that Lead Counsel submits to Defendants all

13    necessary payment information at least ten business days in advance of the Court's approval

14    order.  The Parties may agree upon a reasonable extension to the three business day deadline as

15    necessary.  If the Parties do not reach an agreement as to the amount of attorneys' fees and

16    expenses, the Parties will litigate the fee issue(s), and each Party will present its respective

17    position to the Court for determination.  The litigation of the fee issues will be subject to the

18    Parties' agreement that:  (1) any attorneys' fees and expenses awarded pursuant to this Paragraph

19    12.1 will be paid by Defendants in addition to the Settlement Value; (2) each Party will be free to

20    argue for what it believes is a reasonable fee; (3) Defendants and Plaintiffs' Lead Counsel will

21    request that the Court issue an Order setting forth the amount of any attorneys' fees and expenses

22    to be paid by Defendants in this action, and providing that Class Counsel and Participating

23    Counsel will not be permitted to seek additional fees and expenses after the Court makes its

24    award; and (4) the Parties shall have the right to appeal the Court's determination as to the

25    amount of attorneys' fees and expenses.  Defendants reserve all rights to object to an award of

26    attorneys' fees and/or expenses beyond what they believe to be reasonable.  No Class Members or

27    their attorneys other than Class Counsel or Participating Counsel who perform work pursuant to

28    PTO 11 in connection with this Action shall receive fees or expenses from Defendants under this

Class Agreement, any fee-shifting statute or attorneys' lien.  In the event the Class Action

Agreement is terminated pursuant to section 15.2, any attorneys' fees paid to Class Counsel will

be returned to Defendants.

**13.  PROPOSED SCHEDULE FOR APPROVAL OF SETTLEMENT**

13.1.  A comprehensive potential schedule for the approval of this Settlement is set forth

below, subject to Court approval.  The Parties will use their best efforts to advance the Settlement

along the lines outlined in the proposed schedule set forth below, recognizing it is subject to

change, as required by Court order and/or agreed to by the Parties.

| Date | Event |
|---|---|
| August 16, 2019 | Deadline for completion of confirmatory discovery |
| August 30, 2019 | Motion for Preliminary Approval |
| September 13, 2019 | Hearing on Motion for Preliminary Approval [**Remainder of schedule assumes entry of Order Granting Preliminary Approval on this date**] |
| September 13, 2019 | Class Notice Program begins |
| October 4, 2019 | Motions for Final Approval and Attorneys' Fees and Expenses filed |
| November 8, 2019 | Objection and Opt-Out Deadline |
| November 25, 2019 | Reply Memoranda in Support of Final Approval and Fee/Expense Application filed |
| December 13, 2019 | Final Approval Hearing |

**14.  AGREEMENT TO COOPERATE TO EFFECTUATE SETTLEMENT**

14.1.  Counsel for all Parties warrant and represent that they are expressly authorized by

the Parties whom they represent to negotiate this Class Action Agreement.  The persons signing

this Class Action Agreement on behalf of each Party warrants that he or she is authorized to sign

this Class Action Agreement on behalf of that Party.

14.2.  The Parties and their respective counsel will cooperate with each other, act in good

faith, and use their best efforts to effect the implementation of the Class Action Agreement.  In

the event the Parties are unable to reach agreement on the form or content of any document

- 24 -

needed to implement the Class Action Agreement, or on any supplemental provisions that may become necessary to effectuate the terms of this Class Action Agreement, the Parties may seek the assistance of the Court to resolve such disagreement.

14.3.    The Parties further agree to make all reasonable efforts to ensure the timely and expeditious administration and implementation of the Class Action Agreement and to minimize the costs and expenses incurred therein.

**15.    MODIFICATION OR TERMINATION OF THE CLASS ACTION AGREEMENT**

15.1.    The terms and provisions of this Class Action Agreement may be amended, modified, or expanded by written agreement of the Parties and approval of the Court; provided, however, that after entry of the Final Approval Order, the Parties may by written agreement effect such amendments, modifications, or expansions of this Class Action Agreement and its implementing documents (including all exhibits hereto) without further notice to the Class or approval by the Court if such changes are consistent with the Court's Final Approval Order and do not limit the rights of Class Members under this Class Action Agreement.

15.2.    This Class Action Agreement shall terminate at the discretion of either Defendants or the Settlement Class Representatives, through Lead Counsel, if: (1) Lead Counsel determines through confirmatory discovery that the Settlement is not fair, reasonable, or adequate; (2) the Court, or any appellate court(s), rejects, modifies, or denies approval of any portion of this Class Action Agreement or the proposed Settlement that the terminating Party in its (or their) sole judgment and discretion reasonably determine(s) is material, including, without limitation, the terms of relief, the findings, or conclusions of the Court, the provisions relating to notice, the definition of the Class, and/or the terms of the Release; or (3) the Court, or any appellate court(s), does not enter or completely affirm, or alters, narrows or expands, any portion of the Final Approval Order, or any of the Court's findings of fact or conclusions of law, that the terminating Party in its (or their) sole judgment and discretion reasonably determine(s) is material.  The terminating Party must exercise the option to withdraw from and terminate this Class Action Agreement, as provided in this Section 15, by a signed writing served on the other Parties no later

1    than twenty days after receiving notice of the event prompting the termination.  The Parties will

2    be returned to their positions status quo ante.

3         15.3.    If an option to withdraw from and terminate this Class Action Agreement arises

4    under Section 15.2 above, neither Defendants nor Settlement Class Representatives are required

5    for any reason or under any circumstance to exercise that option and any exercise of that option

6    shall be in good faith.

7         15.4.    If, but only if, this Class Action Agreement is terminated pursuant to Section 15.2,

8    above, then:

9              15.4.1.    This Class Action Agreement shall be null and void and shall have no

10   force or effect, and no Party to this Class Action Agreement shall be bound by any of its terms,

11   except for the terms of Section 15.2 herein;

12             15.4.2.    The Parties will petition the Court to have any stay orders entered

13   pursuant to this Class Action Agreement lifted;

14             15.4.3.    All of the provisions of this Class Action Agreement, and all

15   negotiations, statements, and proceedings relating to it, shall be without prejudice to the rights of

16   Defendants, Settlement Class Representatives, or any Class Member, all of whom shall be

17   restored to their respective positions existing immediately before the execution of this Class

18   Action Agreement, except that the Parties shall cooperate in requesting that the Court set a new

19   scheduling order such that no Party's substantive or procedural rights are prejudiced by the

20   settlement negotiations and proceedings;

21             15.4.4.    Released Parties expressly and affirmatively reserve all defenses,

22   arguments, and motions as to all claims that have been or might later be asserted in the Action,

23   including, without limitation, the argument that the Action may not be litigated as a class action;

24             15.4.5.    Settlement Class Representatives and all other Class Members, on

25   behalf of themselves and their heirs, assigns, executors, administrators, predecessors, and

26   successors, expressly and affirmatively reserve and do not waive all motions as to, and arguments

27   in support of, all claims, causes of action or remedies that have been or might later be asserted in

28

CONSUMER CLASS ACTION SETTLEMENT
AGREEMENT AND RELEASE
MDL 2672 CRB (JSC)

1    the Action including, without limitation, any argument concerning class certification, and treble

2    or other damages;

3            15.4.6.      Defendants expressly and affirmatively reserve and do not waive all

4    motions and positions as to, and arguments in support of, all defenses to the causes of action or

5    remedies that have been sought or might be later asserted in the Action, including without

6    limitation, any argument or position opposing class certification, liability, damages, or injunctive

7    relief;

8            15.4.7.      Neither this Class Action Agreement, the fact of its having been

9    entered into, nor the negotiations leading to it shall be admissible or entered into evidence for any

10   purpose whatsoever;

11           15.4.8.      Any settlement-related order(s) or judgment(s) entered in this Action

12   after the date of execution of this Class Action Agreement shall be deemed vacated and shall be

13   without any force or effect; and

14           15.4.9.      Defendants shall bear all reasonable and necessary costs incurred by

15   the Claims Administrator and Notice Administrator in connection with the implementation of this

16   Class Action Settlement up until its termination.  Neither the Settlement Class Representatives

17   nor Class Counsel shall be responsible for any such settlement-related costs.

18       15.5.   Notwithstanding the terms of this Section 15, if a Class Member has (1) received

19   compensation under the Class Action Agreement prior to its termination or invalidation and

20   (2) executed an Individual Release, such a Class Member and Defendants shall be bound by the

21   terms of the Individual Release, which terms shall survive termination or invalidation of the Class

22   Action Agreement.

23   **16.     REPRESENTATIONS AND WARRANTIES**

24       16.1.   Class Counsel represents that: (1) they are authorized by the Settlement Class

25   Representatives to enter into this Class Action Agreement with respect to the claims asserted in

26   the Action and any other claims covered by the Release; and (2) they are seeking to protect the

27   interests of the Class.

28

CONSUMER CLASS ACTION SETTLEMENT
AGREEMENT AND RELEASE
MDL 2672 CRB (JSC)

16.2.     Class Counsel further represents that the Settlement Class Representatives:
(1) have agreed to serve as representatives of the Class proposed to be certified herein; (2) are
willing, able, and ready to perform all of the duties and obligations of representatives of the
Class; (3) have read the pleadings in the Action, including the Complaint, or have had the
contents of such pleadings described to them; (4) have consulted with Class Counsel about the
obligations imposed on representatives of the Class; (5) understand that they are entitled only to
the rights and remedies of Class Members under this Class Action Agreement and not to any
additional compensation by virtue of their status as Settlement Class Representatives; and
(6) shall remain and serve as representatives of the Class until the terms of this Class Action
Agreement are effectuated, this Class Action Agreement is terminated in accordance with its
terms, or the Court at any time determines that said Settlement Class Representatives cannot
represent the Class.  Defendants shall retain the right to object to the payment of any service
awards, including the amount thereof.

16.3.     Volkswagen represents and warrants that the individual(s) executing this Class
Action Agreement are authorized to enter into this Class Action Agreement on behalf of
Volkswagen.

16.4.     Audi represents and warrants that the individual(s) executing this Class Action
Agreement are authorized to enter into this Class Action Agreement on behalf of Audi.

16.5.     Bentley represents and warrants that the individual(s) executing this Class Action
Agreement are authorized to enter into this Class Action Agreement on behalf of Bentley.

16.6.     Porsche represents and warrants that the individual(s) executing this Class Action
Agreement are authorized to enter into this Class Action Agreement on behalf of Porsche.

16.7.     The Parties acknowledge and agree that no opinion concerning the tax
consequences of the proposed Settlement to Class Members is given or will be given by the
Parties, nor are any representations or warranties in this regard made by virtue of this Class
Action Agreement.  In addition, the Parties acknowledge and agree that no tax ruling from any
governmental tax authority in relation to a Class Member's tax consequences will be requested by
Defendants.  The Parties further acknowledge and agree that nothing in this Agreement should be

relied upon by any Class Member as the provision of tax advice.  Each Class Member's tax consequences or liabilities, and the determination thereof, are the sole responsibility of the Class Member, and it is understood that each Class Member's federal, state, or foreign tax consequences or liabilities may vary depending on the particular circumstances of each individual Class Member.  Class Members shall hold Defendants and their counsel harmless from any federal, state, or foreign tax assessments, interest, and/or penalties that result for any amounts paid or benefits provided under this Agreement, and Defendants shall not be liable for the payment of any additional amounts now or in the future for any amount related to a Class Member's tax consequences.

**17.    GENERAL MATTERS AND RESERVATIONS**

17.1.    This Class Action Agreement will be binding upon, and inure to the benefit of, the successors, transferees, and assigns of Defendants, the Settlement Class Representatives, and Class Members.

17.2.    The Parties agree and acknowledge that (1) no government or governmental entity is a party to the Action or to this Class Action Agreement; (2) each Party is entering into this Class Action Agreement of its own volition, and no Party is entering into this Class Action Agreement at the direction of a government or governmental entity, or otherwise compelled by a government or governmental entity to do so; and (3) this Class Action Agreement is for the purpose of restitution, compensation or/and remediation for harm or damage alleged in the Complaint.

17.3.    Defendants' obligations under Section 4 in this Class Action Agreement are and shall be contingent upon each of the following:

17.3.1.    Entry by the Court of the Final Approval Order approving the Class Action Settlement;

17.3.2.    The occurrence of the Effective Date; and

17.3.3.    The satisfaction of any other conditions set forth in this Class Action Agreement.

17.4.     The Parties and their counsel agree to keep the existence and contents of this Class Action Agreement confidential until the date on which the Class Action Agreement is filed; provided, however, that this Section shall not prevent Defendants from disclosing such information, prior to such date, to state and federal agencies, other relevant government authorities, independent accountants, actuaries, advisors, financial analysts, insurers, or lawyers. The Parties and their counsel may also disclose the existence and contents of this Class Action Agreement to persons or entities (such as experts, courts, co-counsel, and/or administrators) to whom the Parties agree disclosure must be made in order to effectuate the terms and conditions of this Class Action Agreement.

17.5.     Settlement Class Representatives and Class Counsel agree that confidential information was made available to them solely through the settlement process provided pursuant to the protections of Federal Rule of Evidence 408 and any equivalent rule in other states or territories, and was made available on the condition that it not be disclosed to third parties (other than experts or consultants retained by Settlement Class Representatives in connection with the Action) or used for any purpose other than settlement of this Action.  Nevertheless, nothing contained herein shall prohibit Settlement Class Representatives from seeking certain confidential information pertinent to this Class Action Agreement through informal confirmatory discovery, even if not previously requested through formal discovery.

17.6.     Information provided by Defendants and/or Defendants' counsel to Settlement Class Representatives, Class Counsel, any individual Class Member, counsel for any individual Class Member, and/or administrators, pursuant to the negotiation and implementation of this Class Action Agreement, includes trade secrets and highly confidential and proprietary business information and shall be deemed "Highly Confidential" pursuant to the protective orders that have been or will be entered in the Action, and shall be subject to all of the provisions thereof. Any materials inadvertently produced shall, upon any Defendants' request, be promptly returned to the requesting Defendants' counsel, as appropriate, and there shall be no implied or express waiver of any privileges, rights and defenses.

17.7.    This Class Action Agreement, complete with its exhibits and all documents filed with the Court, sets forth the entire agreement among the Parties with respect to its subject matter, and it may not be altered, amended, or modified except by written instrument executed by Plaintiffs' Lead Counsel and Defendants' Lead Counsel.  The Parties expressly acknowledge that no other agreements, arrangements, or understandings regarding vehicles not expressed in this Class Action Agreement or the documents filed with the Court exist among or between them, and that in deciding to enter into this Class Action Agreement, they have relied solely upon their own judgment and knowledge.  This Class Action Agreement and the accompanying documents filed with the Court supersede any prior agreements, understandings, or undertakings (written or oral) by and between the Parties regarding the subject matter of this Class Action Agreement.

17.8.    This Class Action Agreement and any amendments thereto, and any dispute arising out of or related to this Class Action Agreement, shall be governed by and interpreted according to the Federal Rules of Civil Procedure and applicable jurisprudence relating thereto, and the laws of the State of California notwithstanding its conflict of law provisions.

17.9.    Any disagreement and/or action to enforce this Class Action Agreement shall be commenced and maintained only in the United States District Court for the Northern District of California.

17.10.  Whenever this Class Action Agreement requires or contemplates that one of the Parties shall or may give notice to the other, notice shall be provided by e-mail and/or next-day (excluding Saturdays, Sundays and Federal Holidays) express delivery service as follows:

If to Defendants, then to:

> Sharon L. Nelles
> SULLIVAN & CROMWELL LLP
> 125 Broad Street
> New York, New York 10004
> Email:  nelless@sullcrom.com

> Cari K. Dawson
> ALSTON & BIRD LLP
> 1201 West Peachtree Street
> Atlanta, GA 30309-3424
> Email: cari.dawson@alston.com

CONSUMER CLASS ACTION SETTLEMENT
AGREEMENT AND RELEASE
MDL 2672 CRB (JSC)

1      If to the Class, then to:

2          Elizabeth J. Cabraser
           LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
3          275 Battery Street, 29th Floor
           San Francisco, CA  94111
4          Email:  ecabraser@lchb.com

5      17.11.  All time periods in this Class Action Agreement shall be computed in calendar

6   days unless otherwise expressly provided.  In computing any period of time in this Class Action

7   Agreement or by order of the Court, the day of the act or event shall not be included.  The last day

8   of the period shall be included, unless it is a Saturday, a Sunday or a Federal Holiday, or, when

9   the act to be done is the filing of a paper in court, a day on which the court is closed, in which

10  case the period shall run until the end of the next day that is not one of the aforementioned days.

11  As used in this Class Action Agreement, "Federal Holiday" includes holidays designated in

12  Federal Rule of Civil Procedure 6(a) or by the Clerk of the United States District Court for the

13  Northern District of California.

14      17.12.  The Parties reserve the right, subject to the Court's approval, to agree to any

15  reasonable extensions of time that might be necessary to carry out any of the provisions of this

16  Class Action Agreement.

17      17.13.  The Class, Settlement Class Representatives, Class Counsel, Defendants, and/or

18  Defendants' Lead Counsel shall not be deemed to be the drafter of this Class Action Agreement

19  or of any particular provision, nor shall they argue that any particular provision should be

20  construed against its drafter.  All Parties agree that this Class Action Agreement was drafted by

21  counsel for the Parties during extensive arm's-length negotiations.  No parol or other evidence

22  may be offered to explain, construe, contradict, or clarify its terms, the intent of the Parties or

23  their counsel, or the circumstances under which this Class Action Agreement was made or

24  executed.

25      17.14.  The Parties expressly acknowledge and agree that this Class Action Agreement

26  and its exhibits, along with all related drafts, motions, pleadings, conversations, negotiations,

27  related notes, and correspondence, constitute an offer of compromise and a compromise within

28

CONSUMER CLASS ACTION SETTLEMENT
AGREEMENT AND RELEASE
MDL 2672 CRB (JSC)

the meaning of Federal Rule of Evidence 408 and any equivalent rule of evidence in any state or territory.

17.15.  The Settlement Class Representatives expressly affirm that the allegations contained in the Complaint were made in good faith, but consider it desirable for the Action to be settled and dismissed as to the Class Vehicles only because of the substantial benefits that the Settlement will provide to Class Members.

17.16.  The Parties agree that the Class Action Agreement was reached voluntarily after consultation with competent legal counsel.

17.17.  Neither this Class Action Agreement nor any act performed or document executed pursuant to or in furtherance of this Class Action Agreement is or may be deemed to be or may be used or construed as an admission of, or evidence of, the validity of any of the Released Claims, or of any wrongdoing or liability of any Released Parties; or is or may be deemed to be or may be used or construed as an admission of, or evidence of, any fault or omission of any Released Parties in any civil, criminal, regulatory, or administrative proceeding in any court, administrative agency or other tribunal.  Nor shall this Class Action Agreement be deemed an admission by any Party as to the merits of any claim or defense.

17.18.  Any of the Released Parties may file this Class Action Agreement and/or the Final Approval Order in any action that may be brought against it in order to support any defense or counterclaim, including without limitation those based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

17.19.  The Parties, their successors and assigns, and their counsel undertake to implement the terms of this Class Action Agreement in good faith, and to use good faith in resolving any disputes that may arise in the implementation of the terms of this Class Action Agreement.

17.20.  The waiver by one Party of any breach of this Class Action Agreement by another Party shall not be deemed a waiver of any prior or subsequent breach of this Class Action Agreement.

1          17.21.  If one Party to this Class Action Agreement considers another Party to be in

2     breach of its obligations under this Class Action Agreement, that Party must provide the

3     breaching Party with written notice of the alleged breach and provide a reasonable opportunity to

4     cure the breach before taking any action to enforce any rights under this Class Action Agreement.

5          17.22.  The Parties, their successors and assigns, and their counsel agree to cooperate fully

6     with one another in seeking Court approval of this Class Action Agreement and to use their best

7     efforts to implement this Class Action Agreement.

8          17.23.  This Class Action Agreement may be signed with an electronic or facsimile

9     signature and in counterparts, each of which shall constitute a duplicate original.

10          17.24.  In the event any one or more of the provisions contained in this Class Action

11    Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect,

12    such invalidity, illegality, or unenforceability shall not affect any other provision if Defendants'

13    Lead Counsel on behalf of Defendants, and Plaintiffs' Lead Counsel, on behalf of Settlement

14    Class Representatives and Class Members, mutually agree in writing to proceed as if such invalid,

15    illegal, or unenforceable provision had never been included in this Class Action Agreement.  Any

16    such agreement shall be reviewed and approved by the Court before it becomes effective.

17

18

19

20

21

22

23

24

25

26

27

28

1    FOR CLASS COUNSEL:

2

3        Date:   July 8, 2019

4                                            Elizabeth J. Cabraser (State Bar No. 083151)
                                             ecabraser@lchb.com
5                                            LIEFF CABRASER HEIMANN &
                                             BERNSTEIN, LLP
6                                            275 Battery Street, 29th Floor
                                             San Francisco, CA  94111-3339
7                                            Telephone:  (415) 956-1000
                                             Facsimile:  (415) 956-1008

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOR VOLKSWAGEN AG:


Date: _____

MANFRED DOESS
VOLKSWAGEN AG
P.O. Box 1849
D-38436 Wolfsburg, Germany


Date: _____

Hiltrud D. Werner
VOLKSWAGEN AG
P.O. Box 1849
D-38436 Wolfsburg, Germany

- 36 -

1    FOR AUDI AG:

2

3

4    Date:     _____

5              HANS-JOACHIM ROTHENPIELER
           AUDI AG
6          Auto-Union-Straße 1
           85045 Ingolstadt, Germany

7

8

9

10

11

12

13

14   Date:     _____

15           MARTIN WAGENER
           AUDI AG
16         Auto-Union-Straße 1
           85045 Ingolstadt, Germany

17

18

19

20

21

22

23

24

25

26

27

28

1    FOR BENTLEY MOTORS LIMITED:

2

3

4    Date: 20th June 2019.        JUSTINE PRIDDING
5                                 BENTLEY MOTORS LIMITED
                                  Pyms Lane
6                                 Crewe, Cheshire
                                  CW1 3PL England
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONSUMER CLASS ACTION SETTLEMENT
                                              AGREEMENT AND RELEASE
                                              MDL 2672 CRB (JSC)

1    FOR VOLKSWAGEN GROUP OF AMERICA, INC.:

2

3

Date: _____    _____

4                                DAVID DETWEILER

5                                VOLKSWAGEN GROUP OF AMERICA, INC.
                                 2200 Ferdinand Porsche Drive
6                                Herndon, Virginia 20171

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONSUMER CLASS ACTION SETTLEMENT
AGREEMENT AND RELEASE
MDL 2672 CRB (JSC)

1   FOR AUDI OF AMERICA, LLC:

2

3

4       Date: 07 - 03 - 19

CIAN O'BRIEN
5                                          AUDI OF AMERICA, LLC
                                           2200 Ferdinand Porsche Drive
6                                          Herndon, Virginia 20171

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONSUMER CLASS ACTION SETTLEMENT
AGREEMENT AND RELEASE
MDL 2672 CRB (JSC)

1   FOR BENTLEY MOTORS, INC.:

2

3
   Date: 6/21/2019

4                                          _____

5                                          CHRISTOPHE GEORGES
                                           BENTLEY MOTORS, INC.
6                                          2003 Edmund Halley Drive, Suite 300,
                                           Reston, Virginia 20191

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  COUNSEL FOR VOLKSWAGEN AG, AUDI AG, BENTLEY MOTORS LIMITED,
   VOLKSWAGEN GROUP OF AMERICA, INC., AUDI OF AMERICA LLC, BENTLEY
2  MOTORS, INC.

3

4

5  *July 8, 2019*
6  Date                                    Robert J. Giuffra, Jr.
                                           Sharon L. Nelles
7                                          William B. Monahan
                                           giuffrar@sullcrom.com
8                                          nelless@sullcrom.com
                                           monahanw@sullcrom.com
9                                          SULLIVAN & CROMWELL LLP
                                           125 Broad Street
10                                         New York, New York 10004
                                           Telephone:  (212) 558-4000
11                                         Facsimile:  (212) 558-3588

12                                         Laura Kabler Oswell
                                           SULLIVAN & CROMWELL LLP
13                                         1870 Embarcadero Road
                                           Palo Alto, California 94303
14                                         Telephone:   (650) 461-5600
                                           Facsimile:   (650) 461-5700
15                                         oswelll@sullcrom.com

16

17

18

19

20

21

22

23

24

25

26

27

28

- 42 -

1

FOR DR. ING. H.C. F. PORSCHE AG:

2

3

4

Date:

Uwe-Karsten Städter
5

Member of the Executive Board - Procurement

6

DR. ING. H.C. F. PORSCHE
AKTIENGESELLSCHAFT
7

Porschestrasse 911
71287 Weissach, Germany

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    FOR DR. ING. H.C. F. PORSCHE AG:

2

3

4        Date:

Lutz Meschke
5                                                Deputy Chairman and Member of the Executive
Board - Finance and IT
6
DR. ING. H.C. F. PORSCHE
7                                                AKTIENGESELLSCHAFT

8                                                Porscheplatz 1
70435 Stuttgart, Germany
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    FOR PORSCHE CARS NORTH AMERICA, INC.:

2

3

4        Date:                                        _____

5                                                     GEORGE FEYGIN
                                                      Vice President, General Counsel and Secretary
6                                                     PORSCHE CARS NORTH AMERICA, INC.
                                                      1 Porsche Drive
7                                                     Atlanta, Georgia  30354

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  FOR PORSCHE CARS NORTH AMERICA, INC.:

2

3

4        Date:

5                                    GLENN GARDE
                                     Vice President, After Sales
6                                    PORSCHE CARS NORTH AMERICA, INC.
                                     1 Porsche Drive
7                                    Atlanta, Georgia  30354

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  COUNSEL FOR DR. ING. H.C. F. PORSCHE AG and PORSCHE CARS NORTH AMERICA,
2  INC.:

3

4

   Date:
5
        CARI K. DAWSON
6       Alston & Bird LLP
        One Atlantic Center
7       1201 West Peachtree Street
        Atlanta, Georgia  30309
8       Telephone: (404) 881-7766
        Facsimile: (404) 253-8576
9       cdawson@alston.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A
# MPG Differential and Cash Compensation for Each Class Vehicle

| Make | Model | Engine Capacity (liters) | Model Year | Current Fuel Economy Label | | | Modified Fuel Economy Label | | | Compensation Per Month Owned/Leased[1] | Maximum Compensation Per VIN |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | City | Hwy | Comb. | City | Hwy | Comb. | | |
| Audi | A8L | 4.0L | 2015 | 18 | 29 | 22 | 18 | 29 | 21 | $11.10 | $1,065.60 |
| Audi | A8L | 6.3L | 2013 | 13 | 21 | 16 | 13 | 20 | 15 | $21.30 | $2,044.80 |
| Audi | A8L | 6.3L | 2014 | 13 | 21 | 16 | 13 | 20 | 15 | $21.30 | $2,044.80 |
| Audi | A8L | 6.3L | 2015 | 14 | 22 | 17 | 13 | 22 | 16 | $18.80 | $1,804.80 |
| Audi | A8L | 6.3L | 2016 | 14 | 22 | 17 | 13 | 22 | 16 | $18.80 | $1,804.80 |
| Audi | RS7 | 4.0L | 2014 | 16 | 27 | 19 | 15 | 27 | 19 | $8.00 | $768.00 |
| Audi | RS7 | 4.0L | 2015 | 15 | 25 | 18 | 14 | 25 | 18 | $9.00 | $864.00 |
| Audi | RS7 | 4.0L | 2016 | 15 | 25 | 18 | 14 | 25 | 18 | $9.00 | $864.00 |
| Audi | S8 | 4.0L | 2013 | 15 | 26 | 19 | 15 | 26 | 18 | $14.90 | $1,430.40 |
| Audi | S8 | 4.0L | 2014 | 15 | 26 | 19 | 15 | 26 | 18 | $14.90 | $1,430.40 |
| Audi | S8 | 4.0L | 2015 | 17 | 27 | 20 | 16 | 27 | 20 | $7.20 | $691.20 |
| Audi | S8 | 4.0L | 2016 | 15 | 25 | 19 | 15 | 25 | 18 | $14.90 | $1,430.40 |
| Bentley | Continental GT | 4.0L | 2013 | 15 | 24 | 18 | 14 | 24 | 18 | $9.00 | $864.00 |
| Bentley | Continental GT | 4.0L | 2014 | 15 | 24 | 18 | 14 | 24 | 18 | $9.00 | $864.00 |
| Bentley | Continental GT | 4.0L | 2015 | 15 | 25 | 19 | 15 | 25 | 18 | $14.90 | $1,430.40 |
| Bentley | Continental GT | 4.0L | 2016 | 15 | 25 | 19 | 15 | 25 | 18 | $14.90 | $1,430.40 |

---

[1]      Class Members who held active leases as of the date of the Motion for Preliminary Approval will be entitled to compensation for the full duration of their lease.  Class Members who owned their Class Vehicles as of the date of the Motion for Preliminary Approval will be entitled to compensation for the months they have owned their Class Vehicles, as well as any remaining months up to 96 months after the Class Vehicles were first sold.

| Make | Model | Engine Capacity (liters) | Model Year | Current Fuel Economy Label | | | Modified Fuel Economy Label | | | Compensation Per Month Owned/Leased[1] | Maximum Compensation Per VIN |
|------|-------|------|------|------|------|------|------|------|------|------|------|
| | | | | City | Hwy | Comb. | City | Hwy | Comb. | | |
| Bentley | Continental GT | 4.0L | 2017 | 15 | 25 | 19 | 15 | 25 | 18 | $14.90 | $1,430.40 |
| Bentley | Continental GTC | 4.0L | 2013 | 14 | 24 | 17 | 13 | 24 | 17 | $10.10 | $969.60 |
| Bentley | Continental GTC | 4.0L | 2014 | 14 | 24 | 17 | 14 | 23 | 17 | $8.20 | $787.20 |
| Bentley | Continental GT Convertible | 4.0L | 2015 | 14 | 24 | 17 | 13 | 23 | 16 | $18.80 | $1,804.80 |
| Bentley | Continental GT Convertible | 4.0L | 2016 | 14 | 24 | 17 | 13 | 23 | 16 | $18.80 | $1,804.80 |
| Bentley | Continental GT Convertible | 4.0L | 2017 | 14 | 24 | 17 | 13 | 23 | 16 | $18.80 | $1,804.80 |
| Bentley | Flying Spur | 4.0L | 2015 | 14 | 24 | 17 | 13 | 24 | 17 | $10.10 | $969.60 |
| Bentley | Flying Spur | 4.0L | 2016 | 14 | 24 | 17 | 13 | 24 | 17 | $10.10 | $969.60 |
| Bentley | Flying Spur | 6.0L | 2014 | 12 | 20 | 15 | 12 | 20 | 14 | $24.30 | $2,332.80 |
| Bentley | Flying Spur | 6.0L | 2015 | 12 | 20 | 15 | 12 | 20 | 14 | $24.30 | $2,332.80 |
| Bentley | Flying Spur | 6.0L | 2016 | 12 | 20 | 15 | 12 | 20 | 14 | $24.30 | $2,332.80 |
| Porsche | Cayenne | 3.6L | 2013 | 17 | 23 | 19 | 16 | 23 | 19 | $8.00 | $768.00 |
| Porsche | Cayenne | 3.6L | 2014 | 17 | 23 | 20 | 17 | 23 | 19 | $13.40 | $1,286.40 |
| Porsche | Cayenne | 3.6L | 2016 | 19 | 24 | 21 | 17 | 24 | 20 | $12.20 | $1,171.20 |
| Porsche | Cayenne GTS | 3.6L | 2016 | 16 | 23 | 19 | 16 | 23 | 18 | $14.90 | $1,430.40 |
| Porsche | Cayenne GTS | 4.8L | 2013 | 15 | 21 | 17 | 14 | 20 | 16 | $18.80 | $1,804.80 |
| Porsche | Cayenne GTS | 4.8L | 2014 | 15 | 21 | 17 | 14 | 20 | 16 | $18.80 | $1,804.80 |
| Porsche | Cayenne S | 3.6L | 2015 | 17 | 24 | 20 | 16 | 24 | 19 | $13.40 | $1,286.40 |
| Porsche | Cayenne S | 3.6L | 2016 | 17 | 24 | 20 | 16 | 24 | 19 | $13.40 | $1,286.40 |
| Porsche | Cayenne S | 4.8L | 2013 | 16 | 22 | 18 | 15 | 22 | 18 | $9.00 | $864.00 |

| Make | Model | Engine Capacity (liters) | Model Year | Current Fuel Economy Label | | | Modified Fuel Economy Label | | | Compensation Per Month Owned/Leased[1] | Maximum Compensation Per VIN |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | City | Hwy | Comb. | City | Hwy | Comb. | | |
| Porsche | Cayenne S | 4.8L | 2014 | 16 | 22 | 18 | 15 | 22 | 18 | $9.00 | $864.00 |
| Porsche | Cayenne Turbo | 4.8L | 2013 | 15 | 22 | 17 | 14 | 21 | 17 | $18.80 | $1,804.80 |
| Porsche | Cayenne Turbo | 4.8L | 2014 | 15 | 22 | 17 | 14 | 21 | 17 | $18.80 | $1,804.80 |
| Porsche | Cayenne Turbo S | 4.8L | 2014 | 14 | 20 | 16 | 13 | 20 | 15 | $21.30 | $2,044.80 |
| Porsche | Cayenne Turbo S | 4.8L | 2016 | 14 | 21 | 17 | 14 | 21 | 16 | $18.80 | $1,804.80 |
| Volkswagen | Tiguan 4MOTION | 2.0L | 2017 | 20 | 24 | 21 | 20 | 23 | 21 | $5.40 | $518.40 |
| Volkswagen | Touareg | 3.6L | 2013 | 17 | 23 | 19 | 16 | 23 | 19 | $8.00 | $768.00 |
| Volkswagen | Touareg | 3.6L | 2014 | 17 | 23 | 19 | 16 | 23 | 19 | $8.00 | $768.00 |

# Exhibit B
# Individual Release
# of Claims

## INDIVIDUAL RELEASE OF CLAIMS

*In re Volkswagen "Clean Diesel" Marketing,*
*Sales Practices, and Products Liability Litigation,*
MDL No. 15-2672 (N.D. Cal.) (Audi CO2 Cases)

## MUST BE COMPLETED BY CLAIMANT PRIOR TO RECEIVING
## ANY COMPENSATION

1. In exchange for benefits that (i) the Claims Administrator has determined I am eligible to receive under the class action settlement agreement in this case (the "Class Action Agreement")[1] and (ii) Defendants, as applicable, have agreed to provide to me, the sufficiency of which I hereby acknowledge, I, on behalf of myself and my agents, heirs, executors, administrators, successors, transferees, assigns, insurers, attorneys, representatives, shareholders, owners associations, and any other legal or natural persons who may claim by, through or under me, hereby fully, finally, irrevocably, and forever release, waive, discharge, relinquish, settle, and acquit any and all claims, demands, actions, or causes of action, whether known or unknown, that I may have, purport to have, or may hereafter have against any Released Party arising out of or in any way related to the Transmission/Fuel Economy Matter, except for claims of personal injury or wrongful death.  This Individual Release is effective and binding on the earlier of (i) the date I deposit, cash, transfer, or otherwise accept any compensation under the Class Action Agreement or (ii) thirty days after I receive any compensation under the Class Action Agreement.

2. This Individual Release incorporates by reference the release and associated provisions set forth in Section 10 of the Class Action Agreement as if set forth fully herein, and, as to those provisions, shall have the same scope and effect as the Class Action Agreement.[2]  This Individual Release supplements the release and associated provisions set forth in Section 10 of the Class Action Agreement.  It does not supersede them.

3. I expressly understand and acknowledge that this Individual Release applies to claims of which I am not presently aware.  I expressly understand and acknowledge Section 1542 of the California Civil Code, which provides:  "**A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party**."  I acknowledge that I am aware of, the contents and effect of Section 1542 and have considered the possibility that the number or magnitude of all claims may not currently be known.  To ensure that this Individual Release is interpreted fully in accordance with its terms, I expressly waive and relinquish any

---

[1] The terms "Class Action Agreement," "Class Counsel," "Claims Administrator," "Defendants," "Final Approval Order," "Action," "Released Party," and "Transmission/Fuel Economy Matter" have the meanings given to them in Sections 2.10, 2.11, 2.8, 2.18, 2.25, 2.1, 10.2, and 2.40 of the Class Action Agreement.

[2] A copy of the Class Action Agreement is available at [    ].

and all rights and benefits that I may have under Section 1542 to the extent that such section may be applicable to the Individual Release and likewise expressly waive and relinquish any rights or benefits of any law of any state or territory of the United States, federal law or principle of common law, or of international or foreign law, which is similar, comparable, analogous, or equivalent to Section 1542 of the California Code to the extent that such laws or principles may be applicable to the Individual Release.

4. **For the avoidance of doubt, I expressly understand and acknowledge that I may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that I now know or believe to be true, related to the Transmission/Fuel Economy Matter, the Action and/or the Individual Release herein.  Nevertheless, it is my intention in executing this Individual Release to fully, finally, irrevocably, and forever release, waive, discharge, relinquish, settle, and acquit all such matters, and all claims relating thereto which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action or proceeding) with respect to the Transmission/Fuel Economy Matter in accordance with the terms of the Class Action Agreement.**  This includes, without limitation, any claims I have or may have with respect to the Transmission/Fuel Economy Matter under the Trade Regulation Rule Concerning the Preservation of Consumers' Claims and Defenses, 16 C.F.R. § 433.2 (the "Holder Rule").

5. The Individual Release shall remain effective regardless of any judicial, quasi-judicial, arbitral, administrative, regulatory, or other decision relating to the liability of any Released Party in connection with the Transmission/Fuel Economy Matter.  For the avoidance of doubt, this Individual Release shall remain effective even if the Final Approval Order is reversed and/or vacated on appeal, or if the Class Action Agreement is abrogated or otherwise voided in whole or in part.

6. This Individual Release waives or releases any right to receive further monetary compensation or to pursue additional benefits under the Class Action Agreement.  This Individual Release is limited to my vehicle VIN _____ and does not affect my rights, claims, or benefits regarding any other vehicle.

7. This Individual Release, and any dispute arising out of or related to this Individual Release, shall be governed by and interpreted according to the Federal Rules of Civil Procedure and applicable jurisprudence relating thereto, and the laws of the State of California notwithstanding its conflict of law provisions.

8. Any disagreement concerning and/or action to enforce this Individual Release shall be commenced and maintained only in the United States District Court for the Northern District of California.

9. I represent and warrant that I have carefully read and understand this Individual Release and that I execute it freely, voluntarily, and without being pressured or influenced by, or relying on, any statement or representation made by any person or entity acting on behalf of any Released Party.  I certify that I understand that I have the right to consult with an attorney of my choice before signing this Individual Release.

10. I represent and warrant that I have authority and capacity to execute this Individual Release and that I am the sole and exclusive owner of all claims that I am releasing pursuant to this Individual Release.  I acknowledge that I have not assigned, pledged, or in any manner whatsoever sold, transferred, assigned or encumbered any right, title, interest or claim arising out of or in any way whatsoever pertaining to the Transmission/Fuel Economy Matter.

I acknowledge that I have read and understood this Release and that I have freely executed it by signing below.*

Date: _____   _____   _____
                                *Printed Name*                    *Signature*

I acknowledge that I have read and understood this Release and that I have freely executed it by signing below.*

Date: _____   _____   _____
                                *Co-Registrant Printed Name*    *Co-Registrant Signature*

* Your claim will not be complete unless you fill in your vehicle's VIN in Paragraph 6.