1
2
3

UNITED STATES DISTRICT COURT

4

NORTHERN DISTRICT OF CALIFORNIA

5
6
7
8

IN RE: VOLKSWAGEN "CLEAN DIESEL"
MARKETING, SALES PRACTICES, AND
PRODUCTS LIABILITY LITIGATION

_____/

MDL No. 2672 CRB  (JSC)

**ORDER RE: (1) ECF NO. 6608
DISCOVERY DISPUTE, (2) ECF NO.
6607 MOTION TO SEAL**

9

This Order Relates To:

10

*Napleton*, No. 3:16-cv-2086-CRB

11

_____/

12

**I.  DISCOVERY DISPUTE**

13

Plaintiffs are preparing to take a Rule 30(b)(6) deposition of Bosch.  Bosch, while agreeing

14

to make witnesses available for that deposition, has requested a protective order to prevent

15

Plaintiffs from seeking testimony on six topics.  The Court considers those topics below.

16
17
18
19

Topic No. 1: Bosch's role in the creation, development, modification,
or refinement of the "acoustic function" (whether known by that name
or any other in German or another language) in Audi vehicles to
correct or compensate for a noise problem in the vehicles upon
ignition as described in paragraph 78 of the Third Amended
Complaint.

20

Bosch argues that this first topic is unwieldy and unduly burdensome because it effectively

21

requests a corporate witness to testify about all steps that Bosch took to create, develop, modify,

22

and refine the "acoustic function" in Audi vehicles over a 14-year period.  (*See* MDL Dkt. No.

23

6608 at 5.)  Plaintiffs counter that the topic is relevant because the Audi acoustic function "formed

24

the blueprint for the development of the defeat device software at issue in this case (in the EDC

25

17)."  (*Id.* at 10.)  Plaintiffs also insist that the relevant time period is five years, not 14.  (*See id.* at

26

11 (explaining that the relevant acoustic function appears to have been used from 2004 to 2008).)

27

The Court agrees with Plaintiffs that Bosch's role in creating and developing the Audi

28

acoustic function is relevant, given that the software at issue in this case may trace its origins to

that function.  The topic is overbroad however.  No relevant modifications to the Audi function are

alleged.  Thus, testimony on Bosch's role in modifying and refining the function over the course

of years (whether that be 14 years or five) is not relevant and would impose an unwarranted

burden on Bosch.

In light of the above, the Court instructs Bosch to provide a Rule 30(b)(6) witness to testify

about the company's role in creating and developing the Audi acoustic function.  But Bosch need

not provide a witness to testify about its role in modifying and refining that function.

Topic Nos. 16 and 17:[1]  These topics generally cover "the terms of engagement between

Bosch and other automobile [manufacturers]."  (MDL Dkt. No. 6608 at 12.)  Plaintiffs provide the

following explanation for why they seek this testimony:

> A key dispute in this case is whether Bosch actively developed and
> modified the defeat device software, or whether Volkswagen used it
> and modified it to its own ends. . . . Plaintiffs seek to establish that
> Bosch retained tight control over its software, and ultimately would
> not allow modifications without its knowledge.  If Bosch had
> agreements with other [car manufacturers] that were more restrictive
> than with Volkswagen, that would tend to support Bosch's defense
> that Volkswagen had the ability to modify the software on its own,
> and Plaintiffs are entitled to that discovery.  If Bosch's agreements
> with other [car manufacturers] were less restrictive (such that other
> [car manufacturers] had more control over the software), that would
> tend to support Plaintiffs' claims that Bosch's agreements with
> Volkswagen were designed to provide Bosch will full control over its
> software.

(*Id.* (emphasis omitted).)

The probative value of this evidence (that is, of testimony about the terms of engagement

between Bosch and car manufacturers other than Volkswagen) is limited.  As framed by Plaintiffs,

the relevant question is whether Bosch retained tight control over the software it provided to

Volkswagen.  The answer to that question should be evident from Bosch's agreements with

Volkswagen and from evidence of how those agreements were implemented.  (Did the agreements

allow Volkswagen to modify the software or not?)  The terms of engagement between Bosch and

---

[1] The Court uses the topic numbers used in the parties' joint letter brief.

1     other car manufacturers would at most provide a much less direct answer to the relevant question.

2         The burden on Bosch of providing the requested testimony would also be substantial. A

3 witness would need to identify and review the agreements Bosch had with every car manufacturer,

4 and then compare and contrast those agreements. Given Bosch's statement that it has entered into

5 agreements with "potentially 50 or more [car manufacturers]" (*id.* at 7), this would be a significant

6 undertaking.

7         The burden on Bosch of providing the requested testimony outweighs the testimony's

8 limited probative value. As a result, Bosch need not provide a witness to address Topic Nos. 16

9 and 17.

10         <u>Topic Nos. 46, 47, and 48</u>: The last three disputed topics relate to a letter that Bosch sent to

11 Volkswagen in 2008. Bosch explained in the letter that certain software Volkswagen had

12 requested could qualify as a defeat device if used improperly. Bosch then requested that

13 Volkswagen indemnify Bosch for any liability arising from the software's misuse. (*See* MDL

14 Dkt. No. 4175-1 at 7-12 (English version of the letter).) Plaintiffs maintain that Volkswagen

15 refused to sign the indemnity letter, but that Bosch still provided Volkswagen with the requested

16 software. (*See* MDL Dkt. No. 5862, TAC ¶¶ 102, 134.)

17         Bosch argues that the indemnity letter is not relevant because it concerned emissions

18 software for *gasoline* powered cars, not the diesel powered cars at issue in this case. While that

19 fact may lessen the letter's evidentiary value, the letter—and testimony about it—is still relevant.

20 The letter demonstrates that Bosch knew that its software could be used as a defeat device and that

21 Bosch shared this knowledge with Volkswagen. From these facts, it becomes more plausible that

22 Bosch also knew that its software for diesel powered cars could be used as a defeat device.

23         Topic Nos. 46, 47, and 48 are relevant to Plaintiffs' claims, and Bosch has not proven that

24 the burden of providing a corporate witness to address these topics would outweigh the likely

25 benefit of the testimony. As a result, Bosch must provide a corporate witness to testify on these

26 topics.

27         Bosch's request for a protective order is GRANTED in part and DENIED in part.

28

3

**II.  MOTION TO SEAL**

Bosch has asked for permission (i) to redact certain information from the parties' joint letter brief and from Exhibit 3 to Plaintiffs' counsel's supporting declaration, and (ii) to file under seal in their entirety Exhibits 1 and 2 to counsel's supporting declaration.  Exhibit 1 is an internal Bosch document, from 2005, about the "system requirements" of certain Bosch software.  Exhibit 2 is an internal Bosch email from 2009.

Because the parties' discovery dispute is only tangentially related to the merits of the case, Bosch only needs to put forward a "good cause" for sealing and redacting the information in question.  *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097, 1101 (9th Cir. 2016).  The good cause standard is less exacting than the "compelling reasons" standard, which applies to requests to seal information in dispositive motions.  *See id.*  But it nevertheless requires more than "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning."  *Beckman Indus., Inc. v. Int'l Inc.*, 966 F.2d 470, 476 (9th Cir. 1992) (citation omitted).  "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted."  *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002).

For Exhibits 1 and 2 to counsel's declaration, Bosch has not met the good cause standard to support sealing these exhibits in their entirety.  Bosch explains that these exhibits contain "confidential business information regarding company policies and operations, as well as highly technical information concerning programing and calibration."  (MDL Dkt. No. 6607-1, Slater Decl. ¶ 5.)  That appears to be an accurate description of the exhibits, but what is missing is "a showing that specific prejudice or harm will result if the exhibits are not sealed."  *Phillips*, 307 F.3d at 1211.  The exhibits are Bosch documents that are between 10 and 15 years old.  How Bosch will be harmed if these documents are publicly disclosed is only explained by the statement that disclosure "would cause commercial harm to [Bosch]."  (Slater Decl. ¶ 5.)  That general statement does not support that specific prejudice or harm will result if the exhibits are not sealed.

As for Bosch's request to redact portions of the parties' letter brief and Exhibit 3 to counsel's declaration, only some of the redactions are warranted.  Consistent with prior Orders,

4

1  the Court will permit Bosch to redact the names and job titles of employees who are nonparties in

2  this action. (*See, e.g.*, MDL Dkt. Nos. 4049, 4147, 5223, 6590.) Those redactions will help

3  protect nonparty privacy rights, which is a good cause that supports the request. *Cf. Hunt v. Cont'l*

4  *Cas. Co.*, No. 13-cv-05966 HSG, 2015 WL 5355398, at *2 (N.D. Cal. Sept. 14, 2015) (protecting

5  nonparties' privacy rights is a compelling reason supporting the redaction of their names).[2]

6       The other requested redactions will not be permitted. They are mostly of quotes,

7  paraphrases, and citations to Exhibits 1 and 2 to counsel's declaration. The other requested

8  redaction is of a summary in the letter brief of the 2008 indemnity letter. (*See* MDL Dkt. No.

9  6608 at 7 n.7.) Because the Court has denied Bosch's request to seal Exhibits 1 and 2, it will not

10  permit Bosch to redact quotes, paraphrases, and citations to those exhibits. As for the summary of

11  the indemnification letter, the letter is already in the public record (*see* MDL Dkt. No. 4175-1),

12  and there is no reason to believe that a summary of the letter will cause prejudice or harm to Bosch

13  if not redacted.

14       The Court DENIES Bosch's request to seal Exhibits 1 and 2 to the declaration of

15  Plaintiffs' counsel; the Court GRANTS Bosch's request to redact the names and job titles of

16  employees who are nonparties in this action; and the Court DENIES Bosch's request to redact

17  references in the parties' letter brief to Exhibits 1 and 2 to counsel's declaration and to the 2008

18  indemnification letter.

19       **IT IS SO ORDERED.**

20  Dated: September 13, 2019

JACQUELINE S. CORLEY
United States Magistrate Judge

21

22

23

24

25

26

27

28

---

[2] Bosch may also redact nonparty identifying information in the three exhibits attached to counsel's declaration. If Bosch does so, it should offer some means to distinguish between the nonparties for purposes of comprehension.

5