UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: VOLKSWAGEN "CLEAN DIESEL"
MARKETING, SALES PRACTICES, AND
PRODUCTS LIABILITY LITIGATION
_____/

This Order Relates To:
Dkt. No. 6423

BONDHOLDER ACTION
_____/

MDL No. 2672 CRB  (JSC)

**ORDER DENYING MOTION FOR
SUMMARY JUDGMENT**

Plaintiff, a public pension fund, purchased Volkswagen bonds in 2014.  In October 2015, one month after Volkswagen's diesel scandal became front-page news, Plaintiff sold those bonds for a loss.  Plaintiff then filed a proposed class action against Volkswagen for violations of the federal securities laws.  In that action, Plaintiff maintains that Volkswagen was required (but failed) to disclose in its 2014 bond offering memorandum that the company was using defeat devices in millions of diesel cars worldwide to cheat on emissions tests and was at risk of losing billions of dollars as a result.  Without that information, Plaintiff asserts that the offering memorandum was misleading and led investors to purchase the company's bonds at artificially inflated prices.

Volkswagen has moved for summary judgment.  The company argues that summary judgment is warranted because Plaintiff lacks the evidence needed to prove reliance, which is one of the elements of its claims.  Specifically, Volkswagen urges that the evidence is insufficient to support that Plaintiff's investment manager, who bought the bonds on Plaintiff's behalf and had complete discretion to do so, read the offering memorandum before executing the trade.  And without such proof, Volkswagen insists that Plaintiff cannot prove that its investment manager would have acted differently and foregone purchasing the bonds if additional disclosures had been

1  made in the offering memorandum.

2      Having reviewed the record and—once more—the relevant caselaw, the Court concludes

3  that this case is best characterized as "primarily a nondisclosure case," as opposed to a "positive

4  misrepresentation case." *Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999).  As a result,

5  Plaintiff is entitled to a presumption of reliance under *Affiliated Ute Citizens v. United States*, 406

6  U.S. 128, 153–54 (1972), and need not prove that it or its investment manager actually relied on

7  the statements made in the bond offering memorandum.  *See Binder*, 184 F.3d at 1063–64.

8      The case is best characterized as a nondisclosure case because, as the Court noted in

9  *Bondholders I*, the "heart of the case" is an omission.  *In re Volkswagen "Clean Diesel" Mktg.,*

10 *Sales Practices, & Prod. Liab. Litig. (Bondholders I)*, No. MDL 2672 CRB (JSC), 2017 WL

11 3058563, at \*14 (N.D. Cal. July 19, 2017).  Volkswagen failed to disclose that, for years, it had

12 been secretly installing defeat devices in its "clean diesel" line of cars to mask unlawfully high

13 emissions, and that it was at risk of losing billions of dollars in fines and penalties if it was caught.

14 Volkswagen's failure to disclose this information is ultimately what drives Plaintiff's claims.

15     To be sure, Plaintiff does also base its claims on certain affirmative statements in the bond

16 offering memorandum.  (*See* Dkt. No. 4956, SAC ¶ 227 (detailing disclosures about Volkswagen's

17 focus on emission-reducing technologies and its need to comply with increasingly stringent

18 emission laws).)  As the Court noted in *Bondholders I*, though, "none of these statements were

19 necessarily false," and the reason they are relevant is that they may have been rendered misleading

20 by Volkswagen's failure to disclose its emissions fraud.  *See* 2017 WL 3058563, at \*6–7.  Even

21 these affirmative statements, in other words, are tethered to the omission that is at the heart of the

22 case.

23     In reaching this holding, the Court backtracks from *Bondholders II*, where it relied on

24 *Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017), in reasoning that *Affiliated Ute*'s

25 presumption of reliance did *not* apply.  *See In re Volkswagen "Clean Diesel" Mktg., Sales*

26 *Practices, & Prod. Liab. Litig. (Bondholders II)*, No. MDL 2672 CRB (JSC), 2018 WL 1142884,

27 at \*1–6 (N.D. Cal. Mar. 2, 2018).  For the reasons brought to the Court's attention by Plaintiff and

28 discussed in *Bondholders III*, the Court concludes that its interpretation of *Affiliated Ute* in

1  *Bondholders II* was inconsistent with *Binder*, 184 F.3d at 1063–64 and with *Blackie v. Barrack*,

2  524 F.2d 891, 905–06 (9th Cir. 1975). *See In re Volkswagen "Clean Diesel" Mktg., Sales*

3  *Practices, & Prod. Liab. Litig. (Bondholders III)*, 328 F. Supp. 3d 963, 973–78 (N.D. Cal. 2018)

4  (considering but not ruling on Plaintiff's request for reconsideration of *Bondholders II*). *Binder*

5  and *Blackie* are binding on this Court; *Waggoner* is not. Under *Binder* and *Blackie*, the Court

6  concludes that *Affiliated Ute*'s presumption of reliance applies.[1]

7       Having determined that a presumption of reliance applies, the Court turns to whether

8  Volkswagen has sufficiently rebutted that presumption. To do so on summary judgment,

9  Volkswagen must offer evidence that establishes "beyond controversy" that Plaintiff's investment

10  manager "would not have attached significance to the omitted facts, and therefore would have

11  acted as he did if he had known the truth." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885,

12  888 (9th Cir. 2003); *Keirnan v. Homeland, Inc.*, 611 F.2d 785, 789 (9th Cir. 1980).

13       Pointing to the deposition of Plaintiff's investment manager, Volkswagen contends that the

14  evidence in the record would not permit a jury to reasonably conclude that the investment manager

15  read the bond offering memorandum before purchasing the bonds. Based on that interpretation of

16  the record, Volkswagen insists that it has rebutted the presumption of reliance; for if Plaintiff's

17  investment manager did not read the offering memorandum, then, the theory goes, Plaintiff cannot

18  prove that its investment manager would have attached significance to the emissions fraud (and

19  foregone the investment in Volkswagen bonds) if Volkswagen had disclosed the fraud in the

20  offering memorandum.

21       In the run-of-the-mill omissions case, an investor's failure to read the relevant disclosure

22  documents could indeed be fatal. Having not read those documents, any additional disclosures in

23  them would have been unlikely to come to the investor's attention. As a result, it would be

24

25  ───────────────

26  [1] Volkswagen's contention that *Blackie* was only a fraud-on-the-market case is inaccurate. As the
   Ninth Circuit explained in a subsequent decision, *Blackie* "brought within the scope of *Affiliated
   Ute* a case in which it was alleged that certain material facts were omitted from [certain] reports,"

27  and the reports "contained representations rendered inaccurate by the omissions." *Little v. First
   Cal. Co.*, 532 F.2d 1302, 1304 (9th Cir. 1976). *Blackie*'s reasoning that reliance could also be
   proven on the facts of the case based on the fraud-on-the-market theory was only "an alternative

28  rationale for its holding." *Id.* at 1304 n.3.

1    difficult for the investor to prove that he would have acted differently—and avoided the

2    investment—if additional disclosures were made in those documents.

3            This is not a run-of-the-mill omissions case, however.  The omitted facts detailed

4    Volkswagen's large-scale and long-running defeat-device scheme.  When that scheme was

5    disclosed to the public, in September 2015, it was front-page news and prompted congressional

6    hearings, video apologies by Volkswagen executives, and hundreds of lawsuits.  The disclosure

7    also prompted Plaintiff's investment manager to reevaluate Plaintiff's investment in Volkswagen

8    bonds and to sell those bonds for a loss within a month's time.  (*See* Dkt. No. 6580–1, Berg. Decl.,

9    Exs. 8–12.)

10           If Volkswagen had disclosed its defeat-device scheme in its 2014 bond offering

11   memorandum, instead of waiting until September 2015, the same publicity, and the same response

12   by Plaintiff's investment manager, would likely have followed.  The scheme was so substantial

13   and blatant that it is hard to fathom that its disclosure would have gone unnoticed by the investing

14   public, and that Plaintiff's investment manager would not have been made aware of it.

15           Assuming, then, that Volkswagen's evidence demonstrates that Plaintiff's investment

16   manager did not read the offering memorandum prior to purchasing the bonds, that evidence alone

17   is insufficient to establish beyond controversy that Plaintiff's investment manager would not have

18   attached significance to the omitted facts about Volkswagen's emissions fraud if those facts had

19   been disclosed in the offering memorandum.  As a result, Volkswagen has not rebutted *Affiliated*

20   *Ute*'s presumption of reliance.

21           Volkswagen moved for summary judgment exclusively on the element of reliance.

22   Because it has failed to rebut *Affiliated Ute*'s presumption of reliance, summary judgment is not

23   warranted and the Court DENIES Volkswagen's motion.

24           **IT IS SO ORDERED.**

25   Dated: September 26, 2019

26
                                                    _____
27                                                  CHARLES R. BREYER
                                                    United States District Judge
28

4