# Exhibit 3

Louis J. Freeh
3711 Kennett Pike
Wilmington, DE 19807
USA

Hans Dieter Pötsch
Vorsitzender des Aufsichtsrates
Volkswagen Aktiengesellschaft
Wolfsburg, Deutschland

Matthias Müller
Vorstandsvorsitzender
Volkswagen Aktiengesellschaft
Wolfsburg, Deutschland

Christine Hohmann-Dennhardt
Vorstand für Integrität und Recht
Volkswagen Aktiengesellschaft
Wolfsburg, Deutschland

6. Januar 2016

Sehr geehrte Damen und Herren,

diese Mandatierungsvereinbarung ("Vereinbarung") bestätigt unser Verständnis, dass die Volkswagen AG ("Unternehmen") Louis J. Freeh als Special Counsel für die Betreuung von Gerichtsverfahren, Durchsetzungsmaßnahmen sowie behördliche Maßnahmen im Bezug auf die Untersuchung der Vereinigten Staaten von Amerika eingeleiteten Untersuchungen zu Abgasemissionen ("Special Counsel") beauftragt.

Umfang der Mandatierung

1. Das Unternehmen und seine Tochtergesellschaften sind derzeit Gegenstand von zivilrechtlichen Ermittlungen, Gerichtsverfahren und behördlichen Maßnahmen im Zusammenhang mit Abgasemissionen. Darüber hinaus sind in diesem Zusammenhang gegen das Unternehmen verschiedene zivilrechtliche Rechtsstreitigkeiten anhängig. Diese Gerichtsverfahren, Durchsetzungsmaßnahmen und behördlichen Maßnahmen wurden oder werden in verschiedenen Jurisdiktionen in den Vereinigten Staaten von Amerika eingeleitet ("Spezielle Angelegenheiten").

2. Es ist davon auszugehen, dass diese Speziellen Angelegenheiten auf unbestimmte Zeit fortgesetzt werden und es dem Vorstand und Aufsichtsrat des Unternehmens abverlangen, mehrere externe Berater zu beauftragen, um extrem komplexe rechtliche Probleme sowie wirtschaftliche und strategische Fragen zu beantworten und zu lösen.

3. Um bei der Handhabung und Aufsicht dieser umfangreichen Gerichtsverfahren, Durchsetzungsmaßnahmen sowie behördliche Maßnahmen mitzuwirken, beauftragt das Unternehmen Louis J. Freeh als Special Counsel. Herr Freeh wird die direkte Verantwortung für die Handhabung und Aufsicht der vorgenannten Angelegenheiten sowie anderer Aufgaben und Verantwortlichkeiten, wie vom Unternehmen gewünscht, haben und als Rechtsanwalt für die Volkswagen AG und ihre Tochtergesellschaften fungieren.

4. Als Special Counsel wird Herr Freeh direkt an Christine Hohmann-Dennhardt, Vorstand für Integrität und Recht, berichten. Aufgrund der Komplexität und Bedeutung dieser Speziellen Angelegenheiten wird Herr Freeh auch regelmaessig an den Vorstand und den Aufsichtsrat des Unternehmens berichten und seinen Rat und seine Empfehlungen an beide Gremien abgeben.

5. Als Special Counsel wird Herr Freeh direkt mit den verschiedenen US-amerikanischen Regulierungs-, Strafverfolgungs- und Regierungsbehörden interagieren, welche im Zusammenhang mit den vorgenannten Speziellen Angelegenheiten laufende und zukünftige Ermittlungen und Untersuchungen durchführen.

6. Als Special Counsel wird Herr Freeh auch die diversen externen Rechtsanwälte und Berater, welche das Unternehmen im Zusammenhang mit den Speziellen Angelegenheiten beauftragt, direkt leiten und beaufsichtigen.

7. Der Special Counsel wird das Unternehmen auch hinsichtlich strafrechtlicher und zivilrechtlicher Untersuchungen, Gerichtsverfahren beraten, unterstützen und Empfehlungen abgeben. Das gleiche gilt für die angemessene Auflösung dieser Angelegenheiten, der Unternehmenskultur, internen Richtlinien und Maßnahmen, Compliance Ermittlungen, Wiederherstellungsmaßnahmen sowie der Nachhaltigkeit von notwendigen Veränderungen.

9. Der Special Counsel unterstützt ebenfalls bei interner und externer Kommunikation bzgl. der vorgenannten Speziellen Angelegenheiten, einschließlich
   a. Kommunikation mit wichtigen Führungskräften;
   b. Kommunikation mit Vertretern von Regierung und Aufsichtsbehörden;
   c. Kommunikation mit den Medien und der Öffentlichkeit.

10. Während der Mandatierung hat der Special Counsel uneingeschränkten Zugriff auf das Mangement, Partner, Mitarbeiter, Rechtsanwälte sowie Interessensvertreter des Unternehmens. Dies beinhaltet, dass ihm alle Informationen und Unterlagen, die er anfordert, zur Verfügung gestellt werden. Der Special Counsel sagt zu, das Bundesdatenschutzgesetz zu beachten, nach welchem die Verarbeitung oder Verwendung von geschützten "personenbezogenen Daten" (Definition s.u.) ohne Zustimmung nicht erlaubt ist. "Personenbezogene Daten" sind alle Details oder Informationen über persönliche oder sachliche Verhältnisse (z.B. Name, Anschrift, Beruf, Qualifikationen, Vertragsverhältnisse von Kunden, Mitarbeitern etc.), die eine Verbindung zu einer bestimmten Person schaffen. Wie durch das Bundesdatenschutzgesetz definiert, beinhaltet "Verarbeitung" Sammeln, Speichern, Verändern, Kommunikation, Sperren und Löschen von personenbezogenen Daten. "Verwendung" ist jede Verwendung personenbezogener

      Daten, welche nicht Verarbeitung ist.

11. Das Unternehmen bestätigt und sagt zu, dass der Special Counsel ausschließlich für die Zwecke der Rechtsberatung und Empfehlungen, wie hier vorgesehen, beauftragt wird. In dieser Eigenschaft wird der Special Counsel als Rechtsanwalt tätig, und die Pflichten des Special Counsels aus dieser Mandatierung bestehen ausschließlich gegenüber dem Unternehmen. Um die Kommunikation innerhalb des Unternehmens zu erleichtern, wird der Special Counsel eine E-Mail Adresse im E-Mail-System des Unternehmens, eine ausgewiesene Unternehmensrufnummer sowie Visitenkarten mit Logo des Unternehmens haben, welche seinen Titel als Special Counsel ausweisen. Das Unternehmen wird auch angemessene Büroräume für den Special Counsel und seine Mitarbeiter in Wilmington, Delaware und Washington, D.C. zur Verfügung stellen. Der Special Counsel wird als Rechtsanwalt des Unternehmens beauftragt, und seine Arbeit und Kommunikation unterliegen dem Anwaltsprivileg, dem Work Product Privileg sowie anderen Privilegien, die auf das Unternehmen beratende Anwälte Anwendung finden.

<u>Vertraulichkeit</u>

Der Special Counsel verpflichtet sich, die Informationen, die er während seiner Mandatierung von dem Unternehmen erhalten hat, vertraulich zu behandeln und sichert ausdrücklich zu, diese Informationen nicht an Dritte weiterzugeben, es sei denn, das Unternehmen wünscht oder genehmigt dies im Vorhinein oder sei es, dass der Special Counsel per Gesetz dazu verpflichtet ist, diese Informationen offen zu legen.

Diese Bestimmung gilt für alle Informationen, die der Special Counsel während seiner Mandatierung durch das Unternehmen erhält, einschließlich Informationen bzgl. finanzieller oder wirtschaftlicher Tätigkeiten des Unternehmens oder seiner Tochtergesellschaften, deren unbefugte Weitergabe das Unternehmen oder jede Unternehmensgruppe oder Tochtergesellschaft beeinträchtigen oder schädigen könnte.

<u>Mandatierungszeitraum</u>

Diese Mandatierung beginnt mit dem Datum dieser Vereinbarung und endet frühestens drei (3) Jahre nach Beginn der Mandatierung. Nach Ablauf der drei Jahre kann das Unternehmen und der Special Counsel die Beauftragung per Vereinbarung verlängern. Es ist davon auszugehen, dass der Special Counsel die Mehrheit seiner Arbeitszeit dieser Mandatierung widmen wird und auf andere Beauftragungen, welche mit seiner Arbeit im Auftrag des Unternehmens in Konflikt geraten könnten, verzichtet. Um die Position und Arbeit des Special Counsel zu stärken, kann Herrn Freeh während seines Mandatierungszeitraumes nicht gekündigt werden mit Ausnahme von außergewöhnlichen Gründen.

<u>Grundvergütung</u>

Der Special Counsel erhält eine jährliche Festvergütung von fünf Millionen US Dollar ($ 5 Mio). Diese Vergütung gilt als verdient mit Erhalt. Das Unternehmen nimmt gleiche monatliche Zahlungen innerhalb von dreißig (30) Tagen nach Rechnungsstellung durch den Special Counsel vor. Das Unternehmen ist nicht für den Steuerabzug seiner Vergütung zuständig. Der Special Counsel ist für die Abführung der Steuern verantwortlich.

KVW_00000237

Erfolgsabhängige Vergütung

Zwischen dem Unternehmen und dem Special Counsel wird vereinbart, dass der Special Counsel Anspruch auf zusätzliche erfolgsabhängige Vergütung hat, wenn das Unternehmen durch die Beratung, Verhandlungen, Empfehlungen und Arbeit des Special Counsel Vergleiche oder Beschlüsse mit US Behörden und US prozessführende Parteien im Zusammenhang mit den vorgenannten Speziellen Angelegenheiten erzielt.

Um die Mandatierung annehmen und die wesentliche Mehrheit seiner Arbeitszeit der Mandatierung widmen zu können, muss der Special Counsel verschiedene andere Berufs- und Geschäftsmöglichkeiten aufgeben. Um den Special Counsel angemessen für sein langfristiges Engagement zu entschädigen, willigt das Unternehmen ein, ihm einen Pauschalbetrag zu zahlen in Höhe von zehn Prozent (10 %) der Einsparungen, die das Unternehmen und seine Tochtergesellschaften bzgl. Kosten durch Vergleiche, - einschließlich Anwaltskosten, Bußgelder - gerichtlicher Urteile und Schiedssprüche im Zusammenhang mit den Speziellen Angelegenheiten und durch die Arbeit des Special Counsel erzielt hat. Das Unternehmen und der Special Counsel vereinbaren, die Höhe dieser Ersparungen anhand von angemessenen und professionell anerkannten Grundsätzen und nach Treu und Glauben festzulegen. Das Unternehmen und der Special Counsel vereinbaren ebenfalls, dass sie ihr Möglichstes tun werden, sich bzgl. der Höhe dieser Einsparungen zu einigen. Sofern erforderlich, wird eine „Big Four" Wirtschaftsberatungsgesellschaft zur Bestimmung der Einsparungen beauftragt.

Die erfolgsabhängige Vergütung nach dieser Klausel ist am oder vor dem 6. Januar 2019 fällig oder am Ende der Mandatierung des Special Counsel, je nachdem, was später eintritt.

Erstattung von Reisekosten

Zusätzlich zu den Kosten/ der Vergütung des Special Counsel gemäß dieser Vereinbarung stimmt das Unternehmen zu, dem Special Counsel alle seine reisebezogenen Auslagen, die im Zusammenhang mit seiner Beauftragung im Rahmen dieser Vereinbarung anfallen, auf Anfrage von Zeit zu Zeit zu erstatten. Der Special Counsel hat angemessene Dokumentation seiner Auslagen, einschließlich Belege, vorzulegen. Das Unternehmen wird innerhalb von dreißig (30) Tagen nach Erhalt des Antrags durch den Special Counsel und der Belege die Erstattung vornehmen. Es wird vereinbart, dass das Unternehmen dem Special Counsel spezielle Zugeständnisse aufgrund von Behinderung gewährt.

Haftungsfreistellung

Das Unternehmen stimmt zu, den Special Counsel von und gegen alle Verluste, Ansprüche, Schäden und Verbindlichkeiten gesamtschuldnerisch freizustellen, denen der Special Counsel nach allen anwendbaren staatlichen und lokalen Gesetzen der USA, Deutschland oder anderen Ländern (d.h. außer USA und Deutschland) unterliegen kann bzgl. oder in Zusammenhang mit der Beauftragung des Special Counsel und durch die durch den Special Counsel gemäß dieser Vereinbarung festgelegten zu erbringenden Leistungen. Das Unternehmen verpflichtet sich, dem Special Counsel alle Kosten (einschließlich Anwaltsgebühren und Auslagen) zu erstatten, sobald sie im Zusammenhang mit der Untersuchung, Vorbereitung oder Verteidigung jeglicher anhängiger oder angedrohten Klagen oder Verfahren anfallen, welche daraus resultieren, ob der Special Counsel beteiligt ist oder nicht, ob die Klage oder das Verfahren durch das Unternehmen initiiert oder durch oder im Namen des Unternehmens eingeleitet wurden oder nicht.

Das Unternehmen verpflichtet sich ebenfalls, dem Special Counsel sämtliche Zeit zu einem

Tagessatz von fünfzehntausend US Dollar ($ 15.000) zusätzlich zu angemessenen Auslagen zu vergüten, wie sie im Zusammenhang mit der Untersuchung, Vorbereitung oder Verteidigung jeglicher anhängiger oder angedrohten Klagen oder Verfahren, welche daraus resultieren, ob der Special Counsel beteiligt ist oder nicht, ob die Klage oder das Verfahren durch das Unternehmen initiiert oder durch oder im Namen des Unternehmens eingeleitet wurden oder nicht. Das Unternehmen stimmt auch zu, dass der Special Counsel gegenüber dem Unternehmen, seinen Aktionären und Gläubigern nicht haftet (weder direkt noch indirekt, aus Vertrag oder Billigkeitsrecht oder anderweitig) bzgl. oder resultierend aus der Beauftragung des Special Counsel durch die durch den Special Counsel gemäß dieser Vereinbarung festgelegten zu erbringenden Leistungen außer in dem Umfang, dass ein zuständiges Gericht per rechtskräftigem Urteil feststellt, dass Verlust, Klage, Schaden oder Haftung aus dem schlechten Glauben oder grober Fahrlässigkeit des Special Counsel resultieren.

Das Unternehmen verpflichtet sich dazu, ohne die vorherige schriftliche Zustimmung des Special Counsel bei anhängigen oder angedrohten Klagen, Verfahren oder Ansprüchen keinen Vergleich zu schließen, keinem Urteil zuzustimmen, bzgl. dessen Freistellung gemäß des Abschnitts „Haftungsfreistellung" angestrebt werden kann (ob der Special Counsel tatsächliche oder potenzielle Partei derartiger Forderungen, Klagen oder Verfahren ist oder nicht), es sei denn, ein derartiger Vergleich oder Zustimmung beinhaltet eine bedingungslose Freistellung des Special Counsel von jeglicher Haftung, die sich aus einer solchen Klage, Verfahren oder Anspruch ergeben.

Für den Fall, dass der Special Counsel bei einer Klage, die von oder im Namen oder gegen das Unternehmen oder einer Konzerngesellschaft hervorgebracht wurde und in welcher der Special Counsel nicht als Beklagter benannt ist, erscheinen soll oder muss, verpflichtet sich das Unternehmen, den Special Counsel für seine Zeit und Auslagen, welche ihm im Zusammenhang mit der Vorbereitung und Teilnahme als Zeuge oder Beteiligter entstanden sind einschließlich, ohne Einschränkung, der Gebühren und Auslagen seines externen Rechtsbeistandes, zu einem Tagessatz von fünfzehntausend US Dollar ($ 15.000) sowie jegliche angemessene Auslagen zu erstatten.

Die Verpflichtung des Unternehmens aus dem Abschnitt "Haftungsfreistellung" wirkt auch nach Beendigung dieser Vereinbarung fort.

Sonstiges

Ausschluss, Änderung oder andere Abänderungen dieser Vereinbarung sind nicht wirksam, es sei denn, sie sind in Schriftform und von jeder Partei unterzeichnet und dadurch verbindlich.

Diese Vereinbarung unterliegt den Gesetzen des Bundesstaates Delaware, nach welchen Verträge in diesem Bundesstaat aus- und durchgeführt werden, und wird gemäß diesen Gesetzen ausgelegt.

Bitte bestätigen Sie durch Unterzeichnung und Rücksendung der beigefügten doppelten Kopie, dass das Vorgenannte unsere Vereinbarung richtig darlegt.

_____

Louis J. Freeh

_____         _____

Mr. Matthias Muller                          Mr. Hans Dieter Poetsch
Chairman, Board of Management                Chairman, Board of Supervisors


_____

Hon. Christine Hohmann-Dennhardt
Board of Management Member for Law
and Integrity


Diese Beauftragung hat am 6. Januar 2016 begonnen.

Wolfsburg, 6. Januar 2016                    Wilmington, DE …………………………
………………………………………….         …………………………………………………..
Christine Hohmann-Dennhardt                  Louis J. Freeh

Louis J. Freeh
3711 Kennett Pike
Wilmington, DE 19807
USA

Hans Dieter Pötsch
Chairman, Board of Supervisors
Volkswagen Aktiengesellschaft
Wolfsburg, Germany

Matthias Müller
Chairman, Board of Management
Volkswagen Aktiengesellschaft
Wolfsburg, Germany

Christine Hohmann-Dennhardt
Board of Management Member for Law and Integrity
Volkswagen Aktiengesellschaft
Wolfsburg, Germany

January 6, 2016

To whom it may concern:

This mandate agreement ("agreement") confirms our understanding that Volkswagen AG ("company") commissions Louis J. Freeh as the Special Counsel for handling court proceedings, enforcement measures, as well as official measures in reference to examining the investigations, initiated by the United States of America, concerning exhaust gas emissions.

Scope of the mandate

1. The company and its subsidiaries are currently the focus of civil investigations, court proceedings, and official measures in the context with exhaust gas emissions. Furthermore, in this context several civil law suits are pending against the company. These law suits, enforcement measures, and official measures have been or will be initiated in various jurisdictions in the United States of America ("special matters").
2. It must be assumed that these special matters will continue for an undetermined period of time and require that the Board of Management and the Board of Supervisors of the company commission several external consultants in order to respond to extremely complex legal problems as well as to attain economic and strategic matters.

1

3. In order to cooperate in the handling and supervision of these extensive court proceedings, enforcement measures, as well as official measures the company appoints Louis J. Freeh as a Special Counsel. Mr. Freeh shall be directly responsible for the handling and supervision of the above-mentioned matters as well as other tasks and responsibilities as requested by the company and act as the attorney for Volkswagen AG and its subsidiaries.
4. As the Special Counsel, Mr. Freeh shall report directly to Christine Hohmann-Dennhardt, Board of Management Member for Law and Integrity. Due to the complexity and importance of these special matters Mr. Freeh shall also report regularly to the Board of Management and the Board of Supervisors of the company and offer his advice and recommendations to both committees.
5. In the function of Special Counsel Mr. Freeh shall directly interact with the various US-American regulatory, criminal, and governmental authorities, which conduct ongoing and future investigations and examinations in the context with the above-stated special matters.
6. As the Special Counsel Mr. Freeh shall also directly manage and supervise the various external attorneys and consultants, who the company commissions in the context with the special matters.
7. The Special Counsel shall consult the company also regarding criminal and civil investigations and court proceedings, support it, and issue recommendations. The same applies for the appropriate resolution of these matters, the company culture, internal guidelines and measures, compliance investigations, recovery measures, as well as the sustainability of the required changes.
8. ./.
9. The Special Counsel also supports in-house and external communication regarding the above-mentioned special matters, including
    a. Communication with important executives;
    b. Communication with representatives of the government and supervisory authorities;
    c. Communication with the media and the public.
10. During the term of the mandate, the Special Counsel shall have unrestricted access to the management, partners, employees, attorneys, as well as representatives of the company. This includes that he is provided with any and all information and documents he requests. The Special Counsel promises to comply with the Federal Privacy Act, according to which the processing or utilization of protected "personal data" (see definition below) without approval is prohibited. "Personal data" include any and all details or information concerning personal or factual circumstances (e.g., name, address, profession, qualifications, contractual relationships of customers, employees, etc.), which establish a connection to a certain person. As defined by the Federal Privacy Act, "processing" includes gathering, saving, altering, communicating, blocking, or deleting personal data. "Utilization" refers to any and all use of personal data which is not considered processing.

11. The company hereby confirms and promises that the Special Counsel is commissioned exclusively for the purposes of legal consulting and recommendations as provided hereby. In this function, the Special Counsel shall act as an attorney, and any obligations of the Special Counsel from this mandate arise exclusively towards the company. In order to facilitate the communication within the company the Special Counsel shall be provided with an email address in the email-system of the company, issued a company phone number, as well as business cards with the logo of the company, which confirm his title as Special Counsel. The company shall also provide appropriate office space to the Special Counsel and his team in Wilmington, Delaware, as well as in Washington, D.C. The Special Counsel is hereby commissioned as the attorney of the company and his work and communications are subject to the attorney-client privilege, the work-product privilege, as well as other privileges applicable to the attorneys consulting the company.

<u>Confidentiality</u>

The Special Counsel promises to treat with confidentiality any and all information obtained from the company during his mandate and explicitly ensures that such information will not be forwarded to third parties, unless the company requests or permits it in advance or in the case the Special Counsel is obligated by law to disclose the information.

This regulation applies for any and all information which the Special Counsel obtains from the company during the mandate, including information regarding financial or economic activities of the company or its subsidiaries, if the unauthorized forwarding thereof might compromise or damage the company or any company group or subsidiary.

<u>Term of the mandate</u>

This mandate begins with the date of this agreement and ends at the earliest three (3) years after the mandate becoming effective. Upon expiration of three years, the company and the Special Counsel can extend the mandate by way of agreement. It is assumed that the Special Counsel will dedicate his working hours to this mandate and abstain from any and all appointments, which might represent a conflict of interest with his work for the company. In order to strengthen the position and work of the Special Counsel Mr. Freeh may not be dismissed during the term of his mandate, except for extraordinary reasons.

<u>Basic remuneration</u>

The Special Counsel shall receive a fixed annual remuneration in the amount of five million US dollars ($ 5 million). This remuneration is considered earned upon receipt. The company shall issue equal monthly installments within thirty (30) days upon receiving an invoice from the Special Counsel. The company is not responsible for withholding taxes for this compensation. The Special Counsel is responsible for paying his taxes.

Performance based commission

It is agreed between the company and the Special Counsel that the Special Counsel shall be entitled to an additional performance based commission, if the company achieves settlements with or decisions by US-authorities and litigating US-parties in the context with the above-mentioned special matters based on the consulting, negotiations, recommendations, and the work of the Special Counsel.

In order to allow accepting the mandate and dedicating the essential majority of his working hours to this mandate the Special Counsel must waive several other professional and business opportunities. In order to appropriately compensate the Special Counsel for his extended commitment the company agrees to pay a flat rate in the amount of ten percent (10 %) of the savings the company and its subsidiaries yield and/or the costs saved by settlements, including attorney's fees, fines, court judgments, and arbitration awards in the context with the special matters and due to the work of the Special Counsel. The company and the Special Counsel hereby agree that the amount of these savings is to be determined in good faith based on appropriate and professionally accepted principles. The company and the Special Counsel shall also agree that they will attempt to come to an agreement regarding the amount of these savings, to the extent possible. If necessary, one of the "big four" auditing companies shall be appointed to determine the savings.

The performance based commission according to this clause shall be due on or before January 6, 2019 or at the end of the mandate of the Special Counsel, whichever occurs later.

Compensation of travel expenses

In addition to the costs / the remuneration of the Special Counsel according to this agreement, the company agrees to occasionally reimburse the Special Counsel any and all of his travel-related expenses arising in the context with the mandate stipulated in this agreement, upon request. The Special Counsel shall provide appropriate documentation of his expenses, including receipts. The company shall issue reimbursement within a term of thirty (30) days upon receipt of the application and the receipts from the Special Counsel. It is hereby agreed that the company shall grant the Special Counsel some benefits based on disability.

Release from liability

The company agrees to jointly and severally release the Special Counsel from any and all loss, claims, damages, and liabilities, which may be filed against the Special Counsel pursuant to all applicable state and local laws of the USA, Germany, or any other country (i.e. outside the USA and Germany) regarding or in the context with the commissioning of the Special Counsel and the services stipulated in this agreement and to be performed by the Special Counsel. The company promises to reimburse the Special Counsel any and all costs (including attorney's fees and expenses) as soon as they arise in the context with the investigation, preparation, or defense of any and all pending or looming complaints or legal proceedings which result regardless if the Special Counsel is or was involved therein or if the complaint or the legal proceedings were initiated by the company or in the name of the company.

The company promises also to compensate the Special Counsel for all of his time at a daily rate of fifteen thousand US dollars ($ 15,000) plus appropriate expenses, accruing in the context with the investigation, preparation, or defense of any pending or looming complaints or legal proceedings, regardless if the Special Counsel is involved, if the complaint or the legal proceedings are or were initiated by the company or in the name of the company. The company also agrees that the Special Counsel is not liable towards the company, its shareholders, and creditors (neither directly nor indirectly from this agreement or from equitable jurisdiction or for other reasons) concerning or resulting from the mandate of the Special Counsel based on the services stipulated and to be performed by the Special Counsel pursuant to this agreement, except to the extent that a responsible court has determined by way of an effective judgment that the loss, complaint, damage, or liability was the result of bad faith or gross negligence of the Special Counsel.

The company promises, without the prior written consent of the Special Counsel, to abstain from entering into any settlements or accepting any judgments for which release can be attempted pursuant to section "release from liability" (regardless if the Special Counsel is the actual or potential party of such claims, complaints, or legal proceedings), unless such a settlement or acceptance includes an unconditional release of the Special Counsel from any and all liability arising from such a complaint, legal proceeding, or claim.

In the event the Special Counsel shall or must appear in a complaint, which was filed by or in the name or against the company or a group company and in which the Special Counsel is not named the Defendant, the company promises to compensate the Special Counsel for his time and expenses arising in the context with the preparation and participation as a witness or involved party, including without limitation the fees and costs from his external legal counsel, at a daily rate of fifteen thousand US dollars ($ 15,000) as well as any and all appropriate expenses.

The obligation of the company from the paragraph "release from liability" shall also apply after the expiration of this agreement.

Miscellaneous

Exclusions, amendments, or any changes of this agreement are ineffective, unless they are made in writing and signed by all parties, and thus become effective.

This agreement is subject to the laws of the State of Delaware, pursuant to which any and all contracts in this state are issued and executed, and shall be interpreted based on these laws.

Please confirm with your signature and the return of the attached duplicate that the above-stated version represents a correct embodiment of our agreement.

Louis Freeh

_____                    _____
Mr. Matthias Müller                                                   Mr. Hans Dieter Poetsch
Chairman, Board of Management                            Chairman, Board of Supervisors

_____
Hon. Christine Hohmann-Dennhardt
Board of Management Member for Law
and Integrity



This mandate has become effective as of January 6, 2016.
Wolfsburg, January 6, 2016                                              Wilmington, DE
_____                    _____
Christine Hohmann-Dennhardt                                  Louis J. Freeh

6


**TRANSPERFECT**

City of New York, State of New York, County of New York

I, Alyssa Mullally, hereby certify that the document **"Louis J. Freeh Draft Engagement Letter"** is to the best of my knowledge and belief, a true and accurate translation from German into English.

_____
Alyssa Mullally

Sworn to before me this
December 23, 2019

_____
Signature, Notary Public

WENDY POON
NOTARY
NO. 01PO6356754
QUALIFIED IN
QUEENS COUNTY
COMM. EXP.
04-03-2021
PUBLIC
STATE OF NEW YORK

_____
Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS
1250 BROADWAY, 6TH FLOOR, NEW YORK, NY 10001 | T 212.689.5555 | F 212.689.1059 | WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE