# Exhibit 6

86

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| United States of America, Plaintiff, v. VOLKSWAGEN AG, Defendant. | No. 16-CR-20394 |
| | HONORABLE SEAN F. COX |
| | Offenses: (1) Conspiracy (2) Obstruction of Justice (3) Entry of Goods by False Statement |
| | Violations: (1) 18 U.S.C. § 371 (2) 18 U.S.C. § 1512(c) (3) 18 U.S.C. § 542 |
| | Statutory Maximum Period of Probation: Five years per count |
| | Statutory Minimum Period of Probation: None/Not Applicable |
| | Statutory Maximum Fine: 18 U.S.C. § 3571(d) (the greater of twice the gross gain or twice the gross loss) |
| | Statutory Minimum Fine: None/Not Applicable |

FILED
MAR 10 2017
CLERK'S OFFICE
DETROIT



GOVERNMENT EXHIBIT
1

## Rule 11 Plea Agreement

The United States of America, by and through the Department of Justice, Criminal Division, Fraud Section, the United States Attorney's Office for the Eastern District of Michigan, and the Department of Justice, Environment and Natural Resources Division, Environmental Crimes Section and with the approval of the Deputy Attorney General (collectively hereafter, "the Offices"), and the Defendant, Volkswagen AG (the "Defendant"), by and through its undersigned attorneys, and through its authorized representative, pursuant to authority granted by the Defendant's Management Board, with the consent of the Supervisory Board, hereby submit and enter into this plea agreement (the "Agreement"), pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. The terms and conditions of this Agreement are as follows:

### 1. Guilty Plea

#### A. Waiver of Indictment and Venue

Pursuant to Fed. R. Crim. P. 7, the Defendant agrees to knowingly waive its right to grand jury indictment and its right to challenge venue in the United States District Court for the Eastern District of Michigan, and to plead guilty to Counts One through Three of the Third Superseding Information.

#### B. Counts of Conviction

The Third Superseding Information charges three counts: (1) Count One - conspiracy in violation of 18 U.S.C. § 371, (2) Count Two - obstruction of justice in

violation of 18 U.S.C. § 1512(c), and (3) Count Three - introducing imported merchandise into the United States by mean of false statements in violation of 18 U.S.C. § 542. The Defendant further agrees to persist in that plea through sentencing and, as set forth below, to cooperate fully with the Offices in their investigation into the conduct described in this Agreement and other conduct related to the introduction into the United States of diesel vehicles with defeat devices as defined under U.S. law.

C. **Elements of Offenses**

<u>The elements of Count One (conspiracy) are as follows</u>:

(1) The elements for conspiracy to defraud the United States by obstructing the lawful function of the federal government are as follows:

(a) That two or more persons conspired, or agreed, to defraud the United States or one of its agencies or departments, in this case, the Environmental Protection Agency (EPA), by dishonest means;

(b) That the defendant knowingly and voluntarily joined the conspiracy; and

(c) That a member of the conspiracy did one of the overt acts described in the indictment for the purpose of advancing or helping the conspiracy.

2:16-cr-20394-SFC-APP Doc # 68 Filed 03/10/17 Pg 4 of 86 Pg ID 1392

(2) The elements for conspiracy to violate the wire fraud statute and Clean Air Act are as follows:

(a) That two or more persons conspired, or agreed, to commit a crime, in this case, a violation of the wire fraud statute (18 U.S.C. § 1343) and the Clean Air Act (42 U.S.C. § 7413(c)(2)(A)) as described below;

(b) That the defendant knowingly and voluntarily joined the conspiracy; and

(c) That a member of the conspiracy did one of the overt acts described in the indictment for the purpose of advancing or helping the conspiracy.

*Object of the Conspiracy – Wire Fraud – 18 U.S.C. § 1343*:

(a) The defendant knowingly participated in, devised, or intended to devise a scheme to defraud in order to obtain money or property;

(b) The scheme included a material misrepresentation or concealment of a material fact;

(c) The defendant had the intent to defraud; and

(d) The defendant used (or caused another to use) wire, radio or television communications in interstate or foreign commerce in furtherance of the scheme.

*Object of the Conspiracy – Clean Air Act – 42 U.S.C. § 7413(c)(2)(A)*

(a) The defendant knowingly made (or caused to be made) a false material statement, representation, or certification, or omission of material information;

(b) The statement, representation or certification that was made (or omitted), or caused to be made or omitted, was in a notice, application, record, report, plan or other document required to be filed or maintained under the Clean Air Act; and

(c) The statement, representation, certification, or omission of information, was material.

The elements of Count Two (obstruction of justice) are as follows:

(1) That the defendant altered, destroyed, mutilated, or concealed a record, document or other object;

(2) That the defendant acted knowingly;

(3) That the defendant acted corruptly; and

(4) That the defendant acted with the intent to impair the record, document or object's integrity or availability for use in an official proceeding.

The elements of Count Three (entry of goods by false statement) are as follows:

(1) That merchandise was imported;

(2) That the defendant entered or introduced merchandise into the commerce of the United States;

(3) That the defendant did so by means of a false statement, which it knew was false; and

(4) That the false statement was material to the entry of the merchandise.

D. **Statutory Maximum Penalties**

The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 371 (Count One) is a fine of $500,000 or twice the gross pecuniary gain or gross pecuniary loss resulting from the offense, whichever is greatest, Title 18, United States Code, Section 3571(c), (d); five years' probation, Title 18, United States Code, Section 3561(c)(1); and a mandatory special assessment of $400, Title 18, United States Code, Section 3013(a)(2)(B). The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1512(c) (Count Two) is a fine of $500,000; five years' probation, Title 18, United States Code, Section 3561(c)(1); and a mandatory special assessment of $400, Title 18, United States Code, Section 3013(a)(2)(B). The statutory maximum sentence that the Court can impose for a violation of Title 18,

United States Code, Section 542 (Count Three) is a fine of $500,000 or twice the gross pecuniary gain or gross pecuniary loss resulting from the offense, whichever is greatest, Title 18, United States Code, Section 3571(c), (d); five years' probation, Title 18, United States Code, Section 3561(c)(1); and a mandatory special assessment of $400, Title 18, United States Code, Section 3013(a)(2)(B).

E. **Factual Basis for Guilty Plea**

The Defendant is pleading guilty because it is guilty of the charges contained in the Third Superseding Information. The Defendant admits, agrees, and stipulates that the factual allegations set forth in Exhibit 2 (the Statement of Facts) are true and correct, that it is responsible under the laws of the United States for the acts of its employees described in Exhibit 2, and that the facts set forth in Exhibit 2 accurately reflect the Defendant's criminal conduct and provide a factual basis for the guilty plea. The Defendant agrees that it will neither contest the admissibility of, nor contradict, the Statement of Facts contained in Exhibit 2 in any proceeding.

2. **Sentencing Guidelines**

A. **Standard of Proof**

The Court will find sentencing factors by a preponderance of the evidence.

B. **Guideline Range**

There are no disputes with respect to the sentencing guidelines that require resolution by the court. While the Defendant does not adopt, agree or accept the United States Sentencing Guidelines (U.S.S.G.) analysis contained herein, for

purposes of avoiding the need for a contested sentencing proceeding and achieving a just and fair result, and because the Defendant agrees that the overall fine proposed herein achieves such a result, the Defendant does not contest the factual or legal basis of the Office's U.S.S.G. analysis contained in this Paragraph for the purposes of this proceeding and stipulates that the proposed fine constitutes a reasonable sentence under the factors listed in Title 18, United States Code, Section 3553(a). Pursuant to *United States v. Booker*, 543 U.S. 220 (2005), the Court must determine an advisory sentencing guideline range pursuant to the United States Sentencing Guidelines (U.S.S.G.). The Court will then determine a reasonable sentence within the statutory range after considering the advisory sentencing guideline range and the factors listed in Title 18, United States Code, Section 3553(a). The Defendant also understands that if the Court accepts this Agreement, the Court is bound by the sentencing provisions in Paragraph 3. The Offices submit that a faithful application of the U.S.S.G. to determine the applicable fine range yields the following analysis:

a. The 2016 U.S.S.G. are applicable to this matter.

b. Offense Level. Based upon U.S.S.G. § 2B1.1, the total offense level is 41, calculated as follows:

| | | |
|---|---|---|
| (a)(1) | Base Offense Level | 7 |
| (b)(1)(P) | Amount of Loss > $550 million | +30 |
| (b)(2)(A)(i) | More Than 10 Victims | +2 |
| (b)(10)(B) | Substantial Part of Scheme Committed from Outside the United States | +2 |

| | |
|---|---|
| **TOTAL** | 41 |

c. Base Fine. Based upon U.S.S.G. § 8C2.4(a), the base fine is $8,543,169,187 (the pecuniary loss from the offense caused by the Defendant)

d. Culpability Score. Based upon U.S.S.G. § 8C2.5, the culpability score is 11, calculated as follows:

| | | |
|---|---|---|
| (a) | Base Culpability Score | 5 |
| (b)(1) | the unit of the organization within which the offense was committed had 5,000 or more employees and an individual within high-level personnel of the unit participated in, condoned, or was willfully ignorant of the offense | +5 |
| (e) | obstruction of justice | +3 |
| (g)(3) | The organization fully cooperated in the investigation and clearly demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct | - 2 |
| **TOTAL** | | 11 |

Calculation of Fine Range:

| | |
|---|---|
| Base Fine | $8,543,169,187[1] |
| Multipliers | 2 (min)/4 (max) |
| Fine Range | $17,086,338,374 (min)/<br>$34,172,676,746 (max) |

[1] The base fine amount consists of the loss amount as calculated under USSG § 2B1.1 and accompanying Application Notes, discounted to reflect a 50% reduction for the litigation risk that both parties would bear were there a contested sentencing proceeding. *See, e.g.*, *United States v. Giovenco*, 773 F.3d 866 (7th Cir. 2014); *United States v. Prosperi*, 686 F.3d 32 (1st Cir. 2012).

3. **Sentence**

Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the Defendant agree that the appropriate disposition of this case is as set forth in this Section and agree to recommend jointly that the Court at a hearing to be scheduled at an agreed upon time impose it.

A. **Relevant Considerations**

The Offices enter into this Agreement based on the individual facts and circumstances presented by this case and the Defendant. Among the factors considered were the following:

1. the Defendant did not voluntarily disclose to the Offices the conduct described in Exhibit 2 (the Statement of Facts);

2. the Defendant cooperated with the Offices' investigation by, among other things, (i) gathering substantial amounts of evidence and performing forensic data collections in multiple jurisdictions; (ii) producing documents, including translations, to the Offices in ways that did not implicate foreign data privacy laws; (iii) collecting, analyzing, organizing, and producing voluminous evidence and information; (iv) interviewing hundreds of witnesses in the United States and overseas; (v) providing non-privileged facts relating to individuals and companies involved in the criminal conduct; and (vi) facilitating and encouraging

cooperation and voluntary disclosure of information and documents by current and former company personnel;

3. the Defendant has already agreed to compensate members of the class in *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, No. 3:15-md-2672 (N.D. Cal.), which consists of victims of the underlying criminal conduct that is the subject of this Agreement, and to pay into a NOx remediation trust, in an aggregate amount of approximately $11 billion (based on net present value);

4. despite obstruction of justice committed by certain of the Defendant's employees, principally in the form of document destruction, the Defendant, including through its outside counsel, self-disclosed this conduct to the Offices, remediated the conduct by recovering large portions of the deleted documents through a variety of forensic means, and conducted a thorough investigation of the conduct, the findings of which it reported to the Offices;

5. the Defendant engaged in remedial measures, including creation of a management board position to supervise the Defendant's legal and compliance functions, reorganization of the whistleblower system, improvements to its risk assessment systems, specific reforms to its engine-related practices, including a program to audit these reforms, termination the employment of six individuals who participated in, or failed to supervise employees who participated in, the misconduct

described in the Statement of Facts, suspending an additional eight individuals who participated in the misconduct described in the Statement of Facts for varying periods, and disciplining an additional three employees who participated in the misconduct described in the Statement of Facts; however, the Defendant's remediation remains incomplete;

6. the Defendant has committed to continue to enhance its compliance program and internal controls;

7. the Defendant has agreed, as part of its continuing cooperation obligations, and to ensure that the Defendant and its wholly-owned subsidiary Volkswagen Group of America ("VW GOA") implements an effective compliance program, to the appointment of an independent monitor (the "Monitor") for a period of up to three years, who will have authority with respect to the Defendant and VW GOA;

8. the nature and seriousness of the offenses;

9. the Defendant has no prior criminal history;

10. the Defendant has agreed to continue to cooperate with the Offices in any ongoing investigation of the conduct of the Defendant and its officers, directors, employees, agents, business partners, and consultants relating to the violations to which the Defendant is pleading guilty; and

11. the Defendant has agreed to pay an additional $1,500,000,000 to the United States to resolve claims for civil penalties arising from the underlying conduct that is the subject of this Agreement;

12. accordingly, after considering (1) through (11) above, (a) the Defendant received an aggregate discount of approximately 20% off of the bottom of the otherwise applicable U.S. Sentencing Guidelines fine range, reflecting its cooperation in the investigation, and (b) after application of the foregoing discount, the Defendant in addition received a credit of $11 billion, representing the net present value of the Defendant's settlements with consumers and payments to the NOx remediation trust in settlement of civil litigation.

B. **Fine**

The Defendant shall pay to the United States a criminal fine of $2,800,000,000, payable in full within ten days of the entry of judgment following the sentencing hearing in this matter. The Defendant shall not seek or accept directly or indirectly reimbursement or indemnification from any source with regard to the penalty amount that the Defendant pays pursuant to this Agreement. The Defendant further agrees that it shall not claim, assert, or apply for, either directly or indirectly, any tax deduction, tax credit, or any other offset with regard to any U.S. federal, state, or local tax or taxable income for any fine or forfeiture paid pursuant to this Agreement.

C. **Probation**

The parties agree that a term of organizational probation for a period of three years should be imposed on the Defendant pursuant to 18 U.S.C. §§ 3551(c)(1) and 3561(c)(1). The parties further agree, pursuant to U.S.S.G. § 8D1.4, that the term of probation shall include as conditions the obligations set forth in Paragraphs 5 and 6 below as well as the payment of the fine set forth in this Paragraph, but shall not include the obligations set forth in Paragraph 7 below.

D. **Special Assessment**

The Defendant shall pay to the Clerk of the Court for the United States District Court for the Eastern District of Michigan within ten days of the time of sentencing the mandatory special assessment of $1,200 ($400 per count).

E. **Restitution**

No order of restitution is appropriate in this case pursuant to 18 U.S.C. § 3663A(c)(3), as the number of identifiable victims is so large as to make restitution impracticable and/or determining complex issues of fact related to the cause or amount of victims' losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process. Moreover, as noted in Paragraph 2(A) above, the Defendant has already agreed to compensate members of the class in *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability*

*Litigation*, No. 3:15-md-2672 (N.D. Cal.), which consists of individuals who purchased affected vehicles described in Exhibit 2.

4. **Other Charges**

In exchange for the guilty plea of the Defendant and the complete fulfillment of all of its obligations under this Agreement, the Offices agree that they will not file additional criminal charges against the Defendant or any of its direct or indirect affiliates or subsidiaries related to: (1) any conduct described in the Third Superseding Information or Exhibit 2; (2) any conduct related to the emissions, or compliance with U.S. emissions standards, of the Subject Vehicles or the Porsche Vehicles as described and defined in the Third Superseding Information and Exhibit 2; and (3) any conduct disclosed by, or on behalf of, the Defendant or otherwise known to the Offices or the EPA as of the date of this Agreement. The Offices, however, may use any information related to the conduct described in the Statement of Facts against the Defendant: (a) in a prosecution for perjury or obstruction of justice apart from the charge in the Third Superseding Information and identified in the Statement of Facts; (b) in a prosecution for making a false statement; (c) in a prosecution or other proceeding relating to any crime of violence; or (d) in a prosecution or other proceeding relating to a violation of any provision of Title 26 of the United States Code. This Paragraph does not provide any protection against prosecution for any other conduct, including but not limited

to crimes committed in the future by the Defendant or by any of its affiliates, subsidiaries, officers, directors, employees, agents or consultants, whether or not disclosed by the Defendant pursuant to the terms of this Agreement. In addition, this Agreement does not provide any protection against prosecution of any joint ventures of which the Defendant is a part, or any individuals, regardless of their affiliation with the Defendant. The Defendant agrees that nothing in this Agreement is intended to release the Defendant from any and all of the Defendant's excise and income tax liabilities and reporting obligations for any and all income not properly reported and/or legally or illegally obtained or derived.

5. **The Defendant's Obligations**

A. Except as otherwise provided in Paragraph 6 below in connection with the Defendant's cooperation obligations, the Defendant's obligations under the Agreement shall last and be effective for a period beginning on the date on which the Third Superseding Information is filed and ending three years from the later of the date on which the Third Superseding Information is filed or the date on which the Monitor is retained by the Defendant, as described in Paragraph 15 below (the "Term"). The Defendant agrees, however, that, in the event the Offices determine, in their sole discretion, that the Defendant has failed specifically to perform or to fulfill each of the Defendant's obligations under this Agreement, an extension or extensions of the Term may be imposed by the Offices, in their sole discretion, for

up to a total additional time period of one year, without prejudice to the Offices' right to proceed as provided in Paragraph 9 below. Any extension of the Term extends all terms of this Agreement, including the terms of the Monitorship in Exhibit 3, for an equivalent period. Conversely, in the event the Offices find, in their sole discretion, that there exists a change in circumstances sufficient to eliminate the need for the Monitorship in Exhibit 3, and that the other provisions of this Agreement have been satisfied, the Term may be terminated early, except for the Defendant's cooperation obligations described in Paragraph 6 below.

B. The Defendant agrees to abide by all terms and obligations of this Agreement as described herein, including, but not limited to, the following:

1. to plead guilty as set forth in this Agreement;

2. to abide by all sentencing stipulations contained in this Agreement;

3. to appear, through its duly appointed representatives, as ordered for all court appearances, and obey any other ongoing court order in this matter, consistent with all applicable U.S. and foreign laws, procedures, and regulations;

4. to commit no further crimes;

5. to be truthful at all times with the Court and the Offices;

6. to pay the applicable fine and special assessments;

7. to cooperate with and report to the Offices as provided in Paragraph 6; and

8. to continue to implement a compliance and ethics program designed to prevent and detect fraudulent conduct throughout its operations.

C. The Defendant agrees that any fine or restitution imposed by the Court will be due and payable in full within ten days of the entry of judgment following the sentencing hearing, and the Defendant will not attempt to avoid or delay payment. The Defendant further agrees to pay the Clerk of the Court for the United States District Court for the Eastern District of Michigan the mandatory special assessment of $400 per count within ten business days from the date of sentencing.

6. **The Defendant's Cooperation and Reporting Obligations**

A. The Defendant shall cooperate fully with the Offices in any and all matters relating to the conduct described in this Agreement and Exhibit 2, and other related conduct under investigation by the Offices during the Term, subject to applicable law and regulations, until the later of the date upon which all investigations and prosecutions arising out of such conduct are concluded, or the end of the Term. At the request of the Offices, the Defendant shall also cooperate fully with other domestic law enforcement and regulatory authorities and agencies in any investigation of the Defendant, its parent company or its affiliates, or any of its present or former officers, directors, employees, agents, and consultants, or any other

party, in any and all matters relating to the conduct described in this Agreement and Exhibit 2, and other conduct related to the Defendant's installation of defeat devices and false and fraudulent representations pertaining thereto. The Defendant agrees that its cooperation pursuant to this Paragraph shall include, but not be limited to, the following:

1. The Defendant shall truthfully disclose all factual information not protected by a valid claim of attorney-client privilege or attorney work product doctrine, or by applicable law and regulations, including applicable data protection laws, with respect to its activities, those of its parent company and affiliates, and those of its present and former directors, officers, employees, agents, and consultants, including any evidence or allegations and internal or external investigations, about which the Defendant has any knowledge or about which the Offices may inquire. This obligation of truthful disclosure includes, but is not limited to, the obligation of the Defendant to provide to the Offices, upon request, any document, record or other tangible evidence about which the Offices may inquire of the Defendant.

2. Upon request of the Offices, the Defendant shall designate knowledgeable employees, agents or attorneys to provide to the Offices the information and materials described in Paragraph 6(A)(1) above on behalf of the Defendant. It is further understood that the Defendant must at all times provide complete, truthful, and accurate information.

3. The Defendant shall use its best efforts to make available for interviews or testimony, as requested by the Offices, present or former officers, directors, employees, agents and consultants of the Defendant. This obligation includes, but is not limited to, sworn testimony before a federal grand jury or in federal trials, as well as interviews with domestic law enforcement and regulatory authorities. Cooperation under this Paragraph shall include identification of witnesses who, to the knowledge of the Defendant, may have material information regarding the matters under investigation.

4. With respect to any information, testimony, documents, records or other tangible evidence provided to the Offices pursuant to this Agreement, the Defendant consents to any and all disclosures, subject to applicable law and regulations, including applicable data protection laws, to other governmental authorities in the United States of such materials as the Offices, in their sole discretion, shall deem appropriate.

B. In addition to the obligations in Paragraph 6(A), during the Term, should the Defendant learn of any evidence or allegation of a violation of U.S. federal law by or on behalf of the Defendant and relating to emissions of its vehicles, false or misleading statements made to public authorities or regulators, fraud or misrepresentations in the sale or marketing of its products, or obstruction of any pending or contemplated U.S. federal, state or local investigation or proceeding, the

Defendant shall promptly report such evidence or allegation to the Offices. Thirty days prior to the end of the Term, the Defendant, by the Chief Executive Officer of the Defendant and the Chief Financial Officer of the Defendant, will certify to the Offices that the Defendant has met its disclosure obligations pursuant to this Paragraph. Each certification will be deemed a material statement and representation by the Defendant to the executive branch of the United States for purposes of 18 U.S.C. § 1001, and it will be deemed to have been made in the judicial district in which this Agreement is filed.

7. **Other Obligations**

A. The Defendant agrees to retain an independent compliance monitor in accordance with Exhibit 3 of this Agreement.

B. While the obligation set forth in this Paragraph is not a condition to the term of probation, any failure to comply with the obligation set forth in this Paragraph shall constitute a breach of this Agreement and be subject to the terms set forth in Paragraph 9 below.

8. **Waiver of Appellate and Other Rights Under United States Law**

A. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as provided in this Agreement. The Defendant understands that the rights of criminal defendants in the United States include the following:

1. the right to plead not guilty and to persist in that plea;

2. the right to a jury trial;

3. the right to be represented by counsel – and if necessary have the court appoint counsel – at trial and at every other stage of the proceedings;

4. the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses; and

5. pursuant to Title 18, United States Code, Section 3742, the right to appeal the sentence imposed.

B. Nonetheless, the Defendant knowingly waives the right to appeal the conviction and any sentence within the statutory maximum described above (or the manner in which that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3742, or on any ground whatsoever except those specifically excluded in this Paragraph, in exchange for the concessions made by the United States in this plea agreement. This Agreement does not affect the rights or obligations of the United States as set forth in Title 18, United States Code, Section 3742(b). The Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of

Information Act, Title 5, United States Code, Section 552, or the Privacy Act, Title 5, United States Code, Section 552a. The Defendant waives all defenses based on the statute of limitations and venue with respect to any federal prosecution related to the conduct described in Exhibit 2 or the Third Superseding Information, including any prosecution that is not time-barred on the date that this Agreement is signed in the event that: (a) the conviction is later vacated for any reason; (b) the Defendant violates this Agreement; or (c) the plea is later withdrawn, provided such prosecution is brought within one year of any such vacation of conviction, violation of agreement, or withdrawal of plea plus the remaining time period of the statute of limitations as of the date that this Agreement is signed. The Offices are free to take any position on appeal or any other post-judgment matter. The parties agree that any challenge to the Defendant's sentence that is not foreclosed by this Paragraph will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver. Nothing in the foregoing waiver of appellate rights shall preclude the Defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

C. Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 limit the admissibility of statements made in the course of plea proceedings or plea discussions in both civil and criminal proceedings, if the guilty plea is later withdrawn. The Defendant expressly warrants that it has discussed these rules with

2:16-cr-20394-SFC-APP Doc # 68 Filed 03/10/17 Pg 24 of 86 Pg ID 1412

its counsel and understands them. Solely to the extent set forth below, the Defendant voluntarily waives and gives up the rights enumerated in Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410. Specifically, the Defendant understands and agrees that any statements that it makes in the course of its guilty plea or in connection with the Agreement, including the Statement of Facts set forth as Exhibit 2 to the Agreement, are admissible against it for any purpose in any U.S. federal criminal proceeding if, even though the Offices have fulfilled all of their obligations under this Agreement and the Court has imposed the agreed-upon sentence, the Defendant nevertheless withdraws its guilty plea.

9. **Breach of Agreement**

A. If the Defendant (a) commits any felony under U.S. federal law; (b) provides in connection with this Agreement deliberately false, incomplete, or misleading information; (c) fails to cooperate as set forth in Paragraph 6 of this Agreement; (d) fails to implement a compliance program as set forth in Paragraph 3(A)(7) of this Agreement; or (e) otherwise fails specifically to perform or to fulfill each of the Defendant's obligations under the Agreement, regardless of whether the Offices become aware of such a breach after the Term of the Agreement, the Defendant shall thereafter be subject to prosecution for any federal criminal violation of which the Offices have knowledge, including, but not limited to, the charges in the Third Superseding Information described in Paragraph 1, which may

be pursued by the Offices in the United States District Court for the Eastern District of Michigan or any other appropriate venue. Determination of whether the Defendant has breached the Agreement and whether to pursue prosecution of the Defendant shall be in the Offices' sole discretion. Any such prosecution may be premised on information provided by the Defendant. Any such prosecution relating to the conduct described in the attached Statement of Facts or relating to conduct known to the Offices prior to the date on which this Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the Defendant, notwithstanding the expiration of the statute of limitations, between the signing of this Agreement and the expiration of the Term of the Agreement plus one year. Thus, by signing this Agreement, the Defendant agrees that the statute of limitations with respect to any such prosecution that is not time- barred on the date of the signing of this Agreement shall be tolled for the Term of the Agreement plus one year. The Defendant gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such prosecution or action, except to the extent that such defenses existed as of the date of the signing of this Agreement. In addition, the Defendant agrees that the statute of limitations as to any violation of federal law that occurs during the term of the cooperation obligations provided for in Paragraph 6 of the Agreement will be tolled from the date upon which the

2:16-cr-20394-SFC-APP Doc # 68 Filed 03/10/17 Pg 26 of 86 Pg ID 1414

violation occurs until the earlier of the date upon which the Offices are made aware of the violation or the duration of the term plus three years, and that this period shall be excluded from any calculation of time for purposes of the application of the statute of limitations.

B. In the event the Offices determine that the Defendant has breached this Agreement, the Offices agree to provide the Defendant with written notice of such breach prior to instituting any prosecution resulting from such breach. Within thirty (30) days of receipt of such notice, the Defendant shall have the opportunity to respond to the Offices in writing to explain the nature and circumstances of such breach, as well as the actions the Defendant has taken to address and remediate the situation, which explanation the Offices shall consider in determining whether to pursue prosecution of the Defendant.

C. In the event that the Offices determine that the Defendant has breached this Agreement: (a) all statements made by or on behalf of the Defendant to the Offices or to the Court, including the attached Statement of Facts, and any testimony given by the Defendant before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the Offices against the Defendant; and (b) the Defendant shall not assert any claim under the United States Constitution,

Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that any such statements or testimony made by or on behalf of the Defendant prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible. The decision whether conduct or statements of any current director, officer or employee, or any person acting on behalf of, or at the direction of, the Defendant, will be imputed to the Defendant for the purpose of determining whether the Defendant has violated any provision of this Agreement shall be in the sole discretion of the Offices.

D. The Defendant acknowledges that the Offices have made no representations, assurances, or promises concerning what sentence may be imposed by the Court if the Defendant breaches this Agreement and this matter proceeds to judgment. The Defendant further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

10. **Parties to Plea Agreement**

The Defendant understands and agrees that this Agreement is between the Offices and the Defendant. Nevertheless, the Offices will bring this Agreement and the nature and quality of the conduct, cooperation and remediation of the Defendant, its direct or indirect affiliates and subsidiaries to the attention of other prosecuting

authorities or other agencies, as well as debarment authorities, if requested by the Defendant.

The Defendant agrees that this Agreement will be executed by an authorized corporate representative. The Defendant further agrees that a resolution duly adopted by the Defendant's Management Board, with the consent of the Supervisory Board in the form attached to this Agreement as Exhibit 1, authorizes the Defendant to enter into this Agreement and take all necessary steps to effectuate this Agreement, and that the signatures on this Agreement by the Defendant and its counsel are authorized by the Defendant's Management Board, with the consent of the Supervisory Board, on behalf of the Defendant.

The Defendant agrees that it has the full legal right, power, and authority to enter into and perform all of its obligations under this Agreement.

11. **Change of Corporate Form**

Except as may otherwise be agreed by the parties in connection with a particular transaction, the Offices may require, in their sole discretion, that, in the event that, during the Term of the Agreement, the Defendant undertakes any change in corporate form, including if it sells, merges, or transfers business operations that are material to the Defendant's consolidated operations, or to the operations of any subsidiaries or affiliates involved in the conduct described in Exhibit 2 (the Statement of Facts), as they exist as of the date of this Agreement, whether such sale

is structured as a sale, asset sale, merger, transfer, or other change in corporate form, the Defendant shall include in any contract for sale, merger, transfer, or other change in corporate form a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement. If the Offices so require, the purchaser or successor in interest must also agree in writing that the Offices' ability to declare a breach under this Agreement is applicable in full force to that entity, and the Defendant will agree that the failure to include these provisions in the transaction will make any such transaction null and void. The Defendant shall provide notice to the Offices at least thirty (30) days prior to undertaking any such sale, merger, transfer, or other change in corporate form. The Offices will inform the Defendant within such 30-day period if the Offices require the Defendant to take the steps referred to above. If the Offices notify the Defendant prior to such transaction (or series of transactions) that they have determined that the transaction(s) has the effect of circumventing or frustrating the enforcement purposes of this Agreement, as determined in the sole discretion of the Offices, the Defendant agrees that such transaction(s) will not be consummated. In addition, if at any time during the Term of the Agreement the Offices determine in their sole discretion that the Defendant has engaged in a transaction(s) that has the effect of circumventing or frustrating the enforcement purposes of this Agreement, they may deem it a breach of this Agreement pursuant to Paragraph 9 of this Agreement. Nothing herein shall restrict

the Defendant from indemnifying (or otherwise holding harmless) the purchaser or successor in interest for penalties or other costs arising from any conduct that may have occurred prior to the date of the transaction, so long as such indemnification does not have the effect of circumventing or frustrating the enforcement purposes of this Agreement, as determined by the Offices.

12. **Failure of Court to Accept Agreement**

This Agreement is presented to the Court pursuant to Fed. R. Crim. P. 11(c)(1)(C). The Defendant understands that, if the Court rejects this Agreement, the Court must: (a) inform the parties that the Court rejects the Agreement; (b) advise the Defendant's counsel that the Court is not required to follow the Agreement and afford the Defendant the opportunity to withdraw its plea; and (c) advise the Defendant that if the plea is not withdrawn, the Court may dispose of the case less favorably toward the Defendant than the Agreement contemplated. The Defendant further understands that if the Court refuses to accept any provision of this Agreement, neither party shall be bound by the provisions of the Agreement.

13. **Presentence Report**

The Defendant and the Offices waive the preparation of a Pre-Sentence Investigation Report. The Defendant understands that the decision whether to proceed with the sentencing without a Pre-Sentence Investigation Report is exclusively that of the Court. In the event the Court directs the preparation of a Pre-

Sentence Investigation Report, the Offices will fully inform the preparer of the Pre-Sentence Investigation Report and the Court of the facts and law related to the Defendant's case. At the time of the plea hearing, the parties will suggest mutually agreeable and convenient dates for the sentencing.

14. **Public Statements by the Defendant**

A. The Defendant expressly agrees that it shall not, through present or future attorneys, officers, directors, employees, agents or any other person authorized to speak for the Defendant make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the Defendant set forth above, contradicting the fact that the Defendant has pled guilty to the charges set forth in the Third Superseding Information, or contradicting the facts described in Exhibit 2. Any such contradictory statement shall, subject to cure rights of the Defendant described below, constitute a breach of this Agreement, and the Defendant thereafter shall be subject to prosecution as set forth in Paragraph 9 of this Agreement. The decision whether any such contradictory statement will be imputed to the Defendant for the purpose of determining whether it has breached this Agreement shall be at the sole discretion of the Offices. If the Offices determine that a public statement by any such person contradicts in whole or in part the fact that the Defendant pled guilty to the charges in the Third Superseding Information or a statement contained in Exhibit 2, the Offices shall so notify the Defendant, and

the Defendant may avoid a breach of this Agreement by publicly repudiating such statement(s) within five business days after notification. The Defendant shall be permitted to raise defenses, to take legal positions and to assert affirmative claims in other proceedings relating to the matters set forth in the Third Superseding Information and Exhibit 2 provided that such defenses and claims do not contradict, in whole or in part, the fact that the Defendant pled guilty to the charges in the Third Superseding Information or a statement in Exhibit 2. This Paragraph does not apply to any statement made by any present or former officer, director, employee, or agent of the Defendant in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of the Defendant.

B. The Defendant agrees that if it or any of its direct or indirect subsidiaries or affiliates issues a press release or holds any press conference in connection with this Agreement, the Defendant shall first consult the Offices to determine (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters between the Offices and the Defendant; and (b) whether the Offices have any objection to the release or statement.

15. **Independent Compliance Monitor**

A. Promptly after the Offices' selection pursuant to Paragraph 15(B) below, the Defendant agrees to retain the Monitor for the term specified in Paragraph 15(C). The Monitor's duties and authority, and the obligations of the Defendant with respect to the Monitor and the Offices, are set forth in Exhibit 3, which is incorporated by reference into this Agreement. The same Monitor shall serve as the Independent Auditor appointed pursuant to Paragraph 27(b) of the Third Partial Consent Decree in *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2672 CRB (JSC) (N.D. Cal.). No later than the date of execution of this Agreement, and after consultation with the Offices, the Defendant will propose to the Offices a pool of three qualified candidates to serve as the Monitor. If the Offices determine, in their sole discretion, that any of the candidates are not, in fact, qualified to serve as the Monitor, or if the Offices, in their sole discretion, are not satisfied with the candidates proposed, the Offices reserve the right to seek additional nominations from the Defendant. The parties will endeavor to complete the monitor selection process within sixty (60) days of the execution of this Agreement. The Monitor candidates or their team members shall have, at a minimum, the following qualifications:

1. demonstrated expertise with respect to federal anti-fraud and environmental laws, including experience counseling on these issues;

2. experience designing and/or reviewing corporate ethics and compliance programs, including anti-fraud policies, procedures and internal controls;

3. knowledge of automotive or similar industries;

4. the ability to access and deploy resources as necessary to discharge the Monitor's duties as described in the Agreement;

5. sufficient independence from the Defendant to ensure effective and impartial performance of the Monitor's duties as described in the Agreement; and

6. the qualifications set out in Paragraph 27(a) of the Third Partial Consent Decree in *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2672 CRB (JSC) (N.D. Cal.).

B. The Offices retain the right, in their sole discretion, to choose the Monitor from among the candidates proposed by the Defendant, though the Defendant may express its preference(s) among the candidates. In the event the Offices reject all proposed Monitors, the Defendant shall propose an additional three candidates within twenty (20) business days after receiving notice of the rejection. This process shall continue until a Monitor acceptable to both parties is chosen. The Offices and the Defendant will use their best efforts to complete the selection process within sixty (60) calendar days of the execution of this Agreement. If, during the

term of the monitorship, the Monitor becomes unable to perform his or her obligations as set out herein and in Exhibit 3, or if the Offices in their sole discretion determine that the Monitor cannot fulfill such obligations to the satisfaction of the Offices, the Offices shall notify the Defendant of the release of the Monitor, and the Defendant shall within thirty (30) calendar days of such notice recommend a pool of three qualified Monitor candidates from which the Offices will choose a replacement.

C. The Monitor's term shall be three years from the date on which the Monitor is retained by the Defendant, subject to extension or early termination as described in Paragraph 5. The Monitor's powers, duties, and responsibilities, as well as additional circumstances that may support an extension of the Monitor's term, are set forth in Exhibit 3. The Defendant agrees that it will not employ or be affiliated with the Monitor or the Monitor's firm for a period of not less than two years from the date on which the Monitor's term expires. Nor will the Defendant discuss with the Monitor or the Monitor's firm the possibility of further employment or affiliation during the Monitor's term.

16. **Complete Agreement**

This document states the full extent of the Agreement between the parties. There are no other promises or agreements, express or implied. Any modification of this Agreement shall be valid only if set forth in writing in a supplemental or revised plea agreement signed by all parties.

**AGREED:**

**FOR VOLKSWAGEN AG:**

Date: January 11, 2017

By: ______________________
Manfred Doess
General Counsel of Volkswagen AG

Date: January 11, 2017

By: ______________________
Reid Weingarten
Jason Weinstein
Christopher Niewoehner
Steptoe & Johnson LLP
Outside counsel for Volkswagen AG

Date: 11 January 2017

By: ______________________
Aaron R. Marcu
Olivia A. Radin
Linda Martin
Freshfields Bruckhaus Deringer US LLP
Outside counsel for Volkswagen AG

Date: January 11, 2017

By: ______________________
Robert J. Giuffra, Jr.
Sharon L. Nelles
Brent J. McIntosh
Sullivan & Cromwell LLP
Outside counsel for Volkswagen AG

**FOR THE DEPARTMENT OF JUSTICE:**

ANDREW WEISSMANN
Chief, Fraud Section
Criminal Division

Date: 1/11/17

By: ______________________
Benjamin D. Singer
Chief, Securities and Financial Fraud Unit
Gary A. Winters
Alison Anderson
David Fuhr
Trial Attorneys

JOHN CRUDEN
Assistant Attorney General
Environment and Natural Resources Division

Date: 1/11/17

By: ______________________
Jennifer L. Blackwell
Trial Attorney

BARBARA L. McQUADE
United States Attorney Eastern District of Michigan

Date: 1/11/17

By: ______________________
John K. Neal
Chief, White Collar Crime Unit