United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 2672 CRB (JSC)<br><br>**ORDER GRANTING BOSCH'S MOTION TO DISMISS** |
| This Order Relates To:<br>MDL Dkt. No. 5274<br><br>*Direct Auto Mgmt.*, No. 18-cv-0335-CRB | |

Robert Bosch GmbH and Robert Bosch LLC have moved to dismiss the complaint in *Direct Auto*, a case brought against them by an individual who planned to, but ultimately did not, open a VW-branded dealership in Westerville, Ohio. The case arises out of Volkswagen's "clean diesel" emissions scandal, which the plaintiff alleges the Bosch defendants participated in. Having considered the motion, the Court concludes that the plaintiff's only claim, a civil RICO claim, is not well pled. The motion to dismiss is GRANTED, with leave to amend.

\* \* \*

Jason Kuhn, the operator of two VW dealerships in the greater Tampa, Florida area, agreed during last decade's recession to operate a third VW dealership in the Tampa area after the operator of that dealership defaulted on his commercial mortgage. Volkswagen did not want Kuhn to permanently run three dealerships in the same metro area, but it agreed that he could run the third Tampa dealership until the economy improved, after which Volkswagen would find him another dealership opportunity in a different market. (*See* MDL Dkt. No. 5119, Compl. ¶¶ 26–31.)

That agreement ultimately resulted in Volkswagen promising Kuhn that he could open a VW dealership in Westerville, Ohio if he met certain conditions. The conditions, which were listed in an August 2013 letter of intent (the "LOI"), included that Kuhn needed to meet specified

capitalization requirements, acquire property for the dealership site, and construct a facility on the site that satisfied Volkswagen's design guidelines. (*See id.* ¶¶ 32–38, Ex. A (copy of the LOI).)

Kuhn set out to meet these requirements. He acquired property for the dealership, retained an architect to design the dealership, and worked to secure the necessary permits and approvals from the City of Westerville. In July 2015, the City approved his development plan, and he next set his sights on obtaining Volkswagen's approval. From the complaint, it appears that some additional work by Kuhn's architect was needed before he could submit his plan to Volkswagen. (*See id.* ¶¶ 39–44, 175–76.)

While Kuhn was finalizing his proposal, the EPA, in the fall of 2015, revealed that Volkswagen had been engaged in a large-scale and long-running defeat-device scheme. The disclosure was front-page news and threatened to damage the VW brand. Volkswagen represented to its dealers that it would financially assist them in the aftermath of the disclosure, and based at least in part on that representation, Kuhn decided to press forward with his plans to open a VW dealership in Westerville. (*See id.* ¶¶ 46–50, 175.)

Kuhn's plans hit a significant snag in February 2016. By then he had sent his final proposal for the dealership to Volkswagen. Upon reviewing the proposal, Volkswagen rejected it and requested that Kuhn and his architect "complete[ly] redo" it. (*Id.* ¶ 176.) Given the added costs that would be required to redo the proposal, as well as a diminished outlook for Volkswagen and its brand, Kuhn decided not to continue trying to fulfill the Westerville LOI. (*See id.* ¶ 185.)

After abandoning the Westerville LOI, Kuhn[1] filed a lawsuit against Volkswagen, alleging that the company, by concealing its defeat-device scheme, knowingly misled him about the value of the Westerville LOI. He also claimed that Volkswagen reneged on its promise to compensate him and other dealers for their losses from the emissions scandal. He included a RICO claim in his complaint, for which he named Robert Bosch LLC and Robert Bosch GmbH as codefendants with Volkswagen. He alleged that the RICO defendants worked together to develop the defeat

---

[1] Direct Automotive Management, Inc., a company that Kuhn controls and uses to operate his car dealerships, was named as the plaintiff. For simplicity, the Court uses Kuhn's name in place of Direct Automotive Management, Inc.

2

device that was at the center of the emissions scandal, and that by doing so they participated in a racketeering enterprise that caused him to sustain financial losses.

Kuhn ultimately settled with Volkswagen, leaving only his RICO claim against the Bosch defendants. In moving to dismiss Kuhn's complaint, the Bosch defendants contend that Kuhn's RICO claim cannot go forward because he has not satisfied RICO's standing requirements. Those requirements and their application follow.

\* \* \*

To maintain a civil RICO claim, a plaintiff must plausibly allege that he suffered (1) an injury to "business or property," that (2) was "by reason of" the defendants' racketeering activity. 18 U.S.C. § 1964(c). *See Harmoni Int'l Spice, Inc. v. Hume*, 914 F.3d 648, 651 (9th Cir. 2019); *Diaz v. Gates*, 420 F.3d 897, 898–903 (9th Cir. 2005) (en banc). Kuhn suggests that two losses he alleged in his complaint meet these requirements. Specifically, he points to allegations that after the defendants' defeat-device scheme was revealed, (i) the Westerville LOI declined in value, and (ii) he lost the out-of-pocket expenditures he had made to fulfill the LOI. (*See* Opp'n, MDL Dkt. No. 5444 at 13; Compl. ¶ 318.)

Kuhn's allegations are insufficient to support a plausible inference that these losses were "by reason of" the defendants' racketeering activity (i.e., by reason of the defeat-device scheme).

***First***, the drop in the LOI's value was caused by the scheme's discovery, not by the scheme itself. It was only after the EPA revealed the scheme that Kuhn alleges the LOI became less valuable. A loss of that kind is not recoverable under RICO. *See In re Am. Express Co. S'holder Litig.*, 39 F.3d 395, 400 (2d Cir. 1994) (affirming dismissal of RICO claim for lack of causation when the conspiracy "was not what injured American Express;" it was "the exposure of [the conspiracy] that caused the [company's] harm"); *Meng v. Schwartz*, 116 F. Supp. 2d 92, 97 (D.D.C. 2000) (dismissing RICO claim when the predicate acts of bribery were undertaken to benefit the plaintiffs and the plaintiffs' injuries arose only after the bribery was discovered), *aff'd* 48 F. App'x 1 (D.C. Cir. 2002).

If Kuhn had plausibly alleged that as a result of the defeat-device scheme, he overpaid for the Westerville LOI—paying one price for the LOI when, if he had known about the scheme, he

3

would have paid another, lower price—a different result could be warranted. For in that instance, the overpayment would have been caused by the scheme itself (or at least by the defendants' concealment of the scheme), not by its disclosure. *Cf. In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 349 F. Supp. 3d 881, 907 (N.D. Cal. 2018) (holding that consumers satisfied RICO's causation requirement when they alleged that because of the defeat-device scheme, they overpaid to purchase and lease the "clean diesel" cars, paying a premium for cars that were supposed to, but did not, have low emissions). Kuhn, however, does not allege that he paid *any* price for the LOI, let alone an inflated price.

Kuhn does allege that the Westerville LOI was a form of compensation. That Volkswagen offered it—and he accepted it—in exchange for his agreement to temporarily help keep an insolvent VW dealership in Florida open. Perhaps if Kuhn had known about the defeat-device scheme at the time of this exchange, he could have demanded different compensation. But without any specific allegations about what that different compensation would have been, it cannot be determined if he "overpaid" for what he received.

***Second***, the allegations also do not plausibly support that the defeat-device scheme caused Kuhn to lose the money he spent trying to fulfill the Westerville LOI. Kuhn did not walk away from the Westerville LOI because of the EPA's disclosure about Volkswagen's defeat devices. After that disclosure, he kept working on his plans for the Westerville dealership, but his proposal for the dealership was ultimately rejected by Volkswagen, with the company demanding that he and his architect "start the design process over from scratch." (Compl. ¶ 176.) Kuhn has not alleged that Volkswagen's decision to reject his proposal had anything to do with the emissions fraud. So it appears that the reason Kuhn lost his investment in the LOI was not the fraud, but his decision to withdraw from the LOI after he did not satisfy its requirements.

As currently pled, the decline in the value of the Westerville LOI and Kuhn's out of pocket expenditures to fulfill the LOI do not constitute losses that were "by reason" of defendants' racketeering activity. Kuhn therefore lacks statutory standing to pursue his RICO claim.

\* \* \*

As the RICO claim is the only claim outstanding, and Kuhn lacks standing to maintain it,

4

the Court GRANTS the Bosch defendants' motion to dismiss the complaint. It is not a certainty that Kuhn cannot allege facts sufficient to address the identified deficiencies, so the Court grants him leave to amend his complaint. His amended complaint, if any, must be filed within 45 days of this Order.[2]

**IT IS SO ORDERED.**

Dated: January 17, 2020

CHARLES R. BREYER
United States District Judge

---

[2] For the reasons identified in a prior Order, the Court confirms that it has personal jurisdiction over Bosch GmbH. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2017 WL 4890594, *17–18 (N.D. Cal. Oct. 30, 2017).