UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 2672 CRB (JSC) |
| | **ORDER DENYING THE MOTION TO DISQUALIFY** |

This Order Relates To:
Dkt. No. 7186.

Plaintiffs have moved to disqualify the undersigned under 28 U.S.C. §§ 144 and 455. The Court takes their concerns seriously and has carefully evaluated the request for disqualification. However, it is clear that the rulings and statements Plaintiffs complain of do not constitute the rare circumstances that would justify recusal. And because the affidavit supporting the motion is both legally insufficient and interposed for delay, the Court will not refer the motion to the Clerk for reassignment to another judge. Because no hearing is necessary to reach this conclusion, Plaintiffs' application for an order shortening the time to hear the motion to disqualify is denied as moot. See generally Application for Order Shortening Time (dkt. 7187).

## I.  BACKGROUND

This Court has previously described the events at the heart of this case:

> Over the course of six years, Volkswagen sold nearly 500,000 Volkswagen– and Audi-branded TDI "clean diesel" vehicles, which they marketed as being environmentally friendly, fuel efficient, and high performing. Consumers were unaware, however, that Volkswagen had secretly equipped these vehicles with a defeat device that allowed Volkswagen to evade United States Environmental Protection Agency ("EPA") and California Air Resources Board ("CARB") emissions test procedures. Specifically, the defeat device produces regulation-compliant results when it

> senses the vehicle is undergoing testing, but operates a less effective emissions control system when the vehicle is driven under normal circumstances. It was only by using the defeat device that Volkswagen was able to obtain Certificates of Conformity from EPA and Executive Orders from CARB for its TDI diesel engine vehicles. In reality, these vehicles emit nitrogen oxides ("NOx") at a factor of up to 40 times over the permitted limit.

In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig., No. 15-md-02672-CRB (JSC), 2016 WL 6248426, at *1 (N.D. Cal. Oct. 25, 2016). The scandal led to over a thousand civil lawsuits, which were consolidated before this Court by the Judicial Panel on Multidistrict Litigation. Id. at *2. The bulk of the civil actions were resolved in two settlements (one concerning 2.0-liter TDI vehicles and another for 3.0-liter TDI vehicles) approved by this Court. See generally In re: Volkswagen, 2016 WL 6248426; 3.0-Liter Class Action Settlement Approval Order (dkt. 3229).

Plaintiffs are opt-outs from the Class Settlements. Ungs Decl. (dkt. 7186-1) ¶ 4. They each brought California common law and statutory claims. See, e.g. Clendenen Amended Compl. (dkt. 6462) ¶¶ 113–69. Volkswagen moved for summary judgment on just the statutory claims. See generally MSJ (Clendenen dkt. 14).[1]

On February 4, 2020, this Court granted in part and denied in part Volkswagen's motion for summary judgment. See Order Granting in Part and Denying in Part MSJ (dkt. 7093) at 1–2. It denied summary judgment as to Plaintiffs' damages claims under the California Consumer Legal Remedies Act. Id. at 2. Volkswagen had argued that those claims must be dismissed under California Civil Code § 1782(b), which provides that "no action for damages may be maintained under Section 1780 if an appropriate correction, repair, replacement, or other remedy is given, or agreed to be given within a reasonable time, to the consumer." Id. at 8. Volkswagen took the position that the Class Settlements constituted an "appropriate correction" offer barring Plaintiffs' CLRA damages claims. Id. The Court held that "[t]his question presents a genuine dispute of

---

[1] A since-resolved technical problem forced Volkswagen to file its motion for summary judgment on the docket for Clendenen v. Volkswagen Group of America, Inc., No. 18-cv-07040-CRB, one of the individual cases at issue here. Other relevant documents were filed in the multi-district litigation docket, In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation, No. 15-md-02672-CRB. This Order identifies documents filed on the Clendenen docket by specifying the docket they were filed on next to the docket number.

2

1  material fact which the Court cannot resolve at this stage of the litigation." Id. at 10. However, based on California cases directing that the sufficiency of a correction offer is a legal question to be determined by the court, the Court noted "that it would be appropriate for the Court to determine whether the Class Settlements constituted appropriate CLRA correction offers." Id. at 9–10 (citing Benson v. Southern Cal. Auto Sales, Inc., 239 Cal. App. 4th 1198, 1207 (Cal. Ct. App. 2015). As of February 17, 2020, the parties had agreed that a bench trial would be an appropriate mechanism for the Court to make this determination. See Response by Plaintiffs to Defendants' Letter Brief (dkt. 7166) at 1.

Trial began and a jury was empaneled on February 18, 2020. See generally Transcript of February 18, 2018 Proceedings. The next day, Plaintiffs filed the instant motion to disqualify. See generally Mot. to Disqualify (dkt. 7186). Trial is set to resume next week with the aforementioned bench trial, which is set for February 24, 2020. Application for Order Shortening Time at 5.

## II.  LEGAL STANDARD

A party to a proceeding in district court may "make[ ] and file[ ] a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party." 28 U.S.C. § 144. Judges also have an affirmative duty to "disqualify [themselves] in any proceeding in which [their] impartiality might reasonably be questioned." 28 U.S.C. § 455. Under both § 144 and § 455, disqualification is appropriate if "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." Yagman v. Republic Ins., 987 F.2d 622, 626 (9th Cir. 1993) (citing In re Yagman, 796 F.2d 1165, 1179 (9th Cir. 1986)). "Accordingly, recusal will be justified either by actual bias or the appearance of bias." Id.

Pursuant to Civil Local Rule 3-14, "[w]henever an affidavit of bias or prejudice directed at a Judge of this Court is filed pursuant to 28 U.S.C. § 144, and the Judge has determined not to recuse him or herself and found that the affidavit is neither legally insufficient nor interposed for delay, the Judge shall refer the request for disqualification to the Clerk for random assignment to another Judge."

3

## III. DISCUSSION

This Order first addresses whether disqualification is required under §§ 144 and 455. It then addresses whether the request for disqualification must be referred to the Clerk for reassignment under Local Rule 3-14.

### A. Recusal

Plaintiffs argue that the Court's "intimate involvement in fashioning the Class Settlement raises the appearance of bias" in two ways. See Mot. to Disqualify at 7–9. First, because the Court will determine whether the Class Settlements constituted an appropriate correction offer under the CLRA. Id. at 8–9. Second, because various statements and rulings of the Court ostensibly "indicate that the Court already favors Volkswagen's case, and harbors significant antagonism toward Plaintiffs' case." Id. at 9–12.

#### 1. Determining whether the Class Settlements constituted an appropriate correction offer.

Plaintiffs are concerned the Court cannot render an unbiased ruling on whether the Class Settlements constituted an appropriate correction offer under the CLRA, because the Court presided over those settlements and ultimately approved them.[2] Plaintiffs fear it appears that "the Court has a dog in this fight, because the Court has a vested interest in deciding that the settlement that it presided over and approved was fair." Id. at 8–9. The Court concludes that having presided over the Class Settlements does not require its disqualification, for the very reasons Plaintiffs have explained in previous filings.

First, the Court's previous determination that the Class Settlements were "fair, reasonable, and adequate" under Federal Rule of Civil Procedure 23(e)(2) will not inappropriately influence its decision whether or not those agreements constitute an appropriate correction offer under the CLRA. See In re Volkswagen "Clean Diesel" Litigation, 895 F.3d at 605 (this Court applied Rule 23 when deciding whether to grant final approval). As Plaintiffs have pointed out, "[t]hat the class action settlement might have been found to have been fair and reasonable for purposes of

---

[2] The Court did not, as Plaintiffs assert, "fashion[ ]" the Class Settlements. See, e.g. Mot. at 3–4; see also In re Volkswagen 'Clean Diesel' Mktg., Sales Practices, and Prods. Liability Litig., 895 F.3d 597, 603–05 (9th Cir. 2018) (describing this Court's role in the settlement negotiations).

4

<u>final approval of the class claims</u>, does not automatically establish that it was an 'appropriate correction' under section 1782(b) for purposes of the opt-out Plaintiffs' individual claims." Opp'n to MSJ (Clendenen dkt. 24) at 25–26. The Court agrees. Whether the Class Settlements constituted an appropriate correction offer will be determined by California law on this CLRA defense, not Federal Rule of Civil Procedure 23. The Court's determination as to the applicability of the defense will not be guided by—or a reflection on—the adequacy of the Class Settlements as a resolution of the class claims.

Indeed, the Court agrees with Plaintiffs' earlier argument, from a brief filed just two days before the motion to disqualify, that having presided over the Class Settlements will <u>aid</u> the Court in evaluating their adequacy in the context of the CLRA claims presented here. Plaintiffs argued the Court should decide "whether the class action settlement satisfies the requirements for the 'correction' affirmative defense for purposes of the California Consumer Legal Remedies Act," in part because "the Court is in the unique and best position to decide the issue, having handled the class action case and knowing what was offered as part of the class action settlement, when it was offered, what conditions were involved with it, as well as other matters." Response by Plaintiffs to Defendant's Letter Brief at 1. The Court finds Plaintiffs' earlier position persuasive and concludes that having presided over the Class Settlements will aid rather than hinder its evaluation of their sufficiency under the CLRA.

### 2. Other statements and rulings.

Plaintiffs assert that various other rulings and statements demonstrate that having presided over the Class Settlements predisposed the Court to favor Volkswagen. But these statements amount at most to rulings Plaintiffs disagree with, which are inadequate to demonstrate bias. <u>United States v. Azhocar</u>, 581 F.2d 735, 739 (9th Cir. 1978) ("Adverse rulings do not constitute the requisite bias or prejudice of § 144.").

First, Plaintiffs believe that the Court has "[t]reat[ed] Plaintiffs as greedy for rejecting the Class Settlement and indicating that the Court will allow Volkswagen to paint them as such." Mot. to Disqualify at 9–10. The statements they cite do not support their claim. Some such statements were made during argument over whether the percentage of class members who

5

accepted the Class Settlements would be admissible to show that the Class Settlements were an appropriate correction offer. See Mot. to Disqualify at 9–10; Ungs Decl. Ex. E. Read in context, it is clear that the Court has yet to rule on whether this evidence is even admissible to show the reasonableness of the correction offer. See generally Ungs Decl. Ex. E. These statements are a far cry from a declaration by the Court that Plaintiffs' decision to opt out was driven by avarice.

Other such statements were made in the context of the Court encouraging the parties to "engage into settlement discussions." Ungs Decl. Ex. A at 8:9–13. The Court declines to adopt a rule that encouraging the parties to engage in settlement discussions evinces bias towards one side. Such a rule would undermine efforts to encourage parties to engage in good-faith negotiations. It also makes little sense—encouraging parties to attempt to reach a settlement recognizes that the claims in the case may have merit. That was exactly the case here. See id. at 8:21–23 ("I have Volkswagen here because they're the ones who have to pony up, as they say on the West Coast. They have to come in and they have to offer a settlement to you. Now, I just urge Volkswagen to come in, look at their positions, evaluate them, be reasonable."). While the Court referred to the large number of class members who accepted the Class Settlements, in context it is apparent that reference was intended to demonstrate the feasibility of a negotiated resolution, not to denigrate class members who chose to opt out. See generally id.

Plaintiffs next complain that the Court has already determined "that plaintiffs' cars necessarily have monetary value." Mot. to Disqualify at 10–11. True, the Court has rejected Plaintiffs' theory that, as a matter of law, the cars had no value because they could not legally be bought or sold. See, e.g. Omnibus Order re: Motions in Limine (dkt. 7106) at 1. But those adverse rulings cannot be the basis for disqualification under §§ 144 and 455. Azhocar, 581 F.2d at 739. Plaintiffs believe that the Court "stated on February 18, 2020 that it will grant a non-suit motion against Plaintiffs if counsel argues that the vehicles had no value." Mot. to Disqualify at 11. Plaintiffs do not cite, and the Court cannot find, any ruling or statement of the Court to that effect. To be clear, the Court may exclude evidence or argument in support of Plaintiffs' theory that the cars had no value as a matter of law, in keeping with its prior rulings on this issue. See, e.g. Omnibus Order re: Motions in Limine at 1. Similarly, it may grant a non-suit motion if

6

Plaintiffs are unable to present a legally sufficient theory of damages. But since no non-suit motion or motion to exclude such evidence is currently pending, the Court need not make definitive rulings on those issues now.

Plaintiffs also assert that "the Court has already decided that Plaintiff's expert will not be able to testify that Volkswagen's increased emissions created any risk to anyone's health." Mot. to Disqualify at 11. To the contrary, the Court has ruled that "Dr. Thurston <u>will</u> be allowed to testify that NOx emissions increase the risk of adverse human health impacts." Omnibus Order re: Motions in Limine at 2 (emphasis added). The Court has reserved its ruling on whether or not Dr. Thurston may also testify that the excess emissions <u>did</u> cause adverse human health impacts. Trans. of Feb. 18, 2020 Hearings (dkt. 7185) at 144:9–148:20 (declining to rule on the scope of Dr. Thurston's testimony at that time). In any event, if the Court ultimately excludes this testimony under Federal Rule of Evidence 702, that ruling will not be a proper basis for disqualification. <u>Azhocar</u>, 581 F.2d at 739.

Finally, Plaintiffs cite the Court's statement that the fraud perpetrated by Volkswagen was "different" from the fraud at issue in some other cases. Mot. to Disqualify at 12. This observation was made in the context of argument over the import of the Supreme Court's holding in <u>State Farm Mutual Automobile Insurance Co. v. Campbell</u>, 538 U.S. 408 (2003). <u>See</u> Trans. of Sept. 13, 2019 Proceedings (dkt. 6692) at 32:10–33:23. The Court observed shortly thereafter that the issue did not need to be decided at that time, <u>id.</u> at 34:7, and explicitly noted that <u>State Farm</u>'s applicability might be independent of "how egregious the fraud may be," <u>id.</u> at 32:11–15. True, the Court warned counsel that "we've got to be very careful and somewhat judicious when we start characterizing this as the most massive fraud that has ever occurred in the history of mankind," and that "you lose a certain amount of credibility when statements of that type are told to the Court." <u>Id.</u> at 33:12–17. But this expression of "impatience" or "annoyance" with certain arguments is insufficient to "establish bias or impartiality." <u>See</u> <u>United States v. McTiernan</u>, 695 F.3d 882, 892 (9th Cir. 2012).

In sum, Plaintiffs fail to demonstrate that this case involves "the rare[ ] circumstances" in which judicial rulings "evidence the degree of favoritism or antagonism required" to justify

7

disqualification. Liteky v. United States, 510 U.S. 540, 555 (1994).

**B.      Referral**

Having determined that recusal is improper, the Court must next decide whether it should refer this motion to the Clerk for reassignment, pursuant to Local Rule 3-14. Local Rule 3-14 requires referral in these circumstances if "the affidavit is neither legally insufficient nor interposed for delay." The Court concludes that the affidavit supporting the motion for disqualification is legally insufficient, for the reasons explained above.

It was also "interposed for delay." On February 17, 2020, Plaintiffs filed a brief with the Court setting forth their position on five items. See generally Response by Plaintiffs to Defendants' Letter Brief. The first item was "Bench Trial of the CLRA Damages Affirmative Defense." Id. Plaintiffs represented at that time that they believed that "whether the class action settlement satisfies the requirements for the 'correction' affirmative defense for purposes of the California Consumer Legal Remedies Act . . . should be decided by the Court in this case." Id. This was "for several reasons, including because . . . the Court is in the unique and best position to decide the issue, having handled the class action case and knowing what was offered as part of the class action settlement, when it was offered, what conditions were involved with it, as well as other matters." Id. Plaintiffs also indicated they were "agreeable" to "having the bench trial regarding the 'correction' affirmative defense at the very beginning of trial (on Monday, February 24, 2020)." Id.

Two days later, after trial commenced and a jury was empaneled, Plaintiffs adopted the opposite position in their Motion to Disqualify: that this Court's presiding over the Class Settlements was not a "unique" advantage but in fact disqualifying. Mot. to Disqualify at 7–9. Plaintiffs offer no explanation for their abrupt about-face. See generally id. Given this unexplained change of position, after trial had commenced and less than a week before the start of evidence, the Court concludes the Motion to Disqualify was "interposed for delay." Civil L.R. 3-14. It would therefore be inappropriate to refer it to the Clerk.

\
\

## IV. CONCLUSION

For the foregoing reasons, the motion to disqualify is denied.

**IT IS SO ORDERED.**

Dated: February 21, 2020



CHARLES R. BREYER
United States District Judge