UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION _____/ This Order Relates To: Bellwether Trial. _____/ | MDL No. 2672 CRB (JSC) **ORDER RE: JURY INSTRUCTIONS AND STIPULATED FACTS** |

This Order provides guidance for Phase One of the upcoming trial. The Court agrees with Plaintiffs and Volkswagen that California Civil Jury Instruction No. 1923 provides the proper measure of economic damages for the first phase of the trial. A copy of the model instruction that the Court will use as a guide for the relevant jury instructions in this case is attached as Exhibit A to this Order.

While the parties (and the Court) agree on the appropriate model jury instruction, they dispute the meaning of that instruction. CACI No. 1923 provides that a plaintiff's out-of-pocket damages are "the fair market value of what [the plaintiff] gave" less "the fair market value of what [the plaintiff] received" (original brackets omitted). "'Fair market value' is the highest price that a willing buyer would have paid on the date of the transaction to a willing seller" if "there [was] no pressure on either one to buy or sell" and "the buyer and seller [knew] all the uses and purposes for which the [car was] reasonably capable of being used." Id. (original brackets omitted). According to Plaintiffs, this means that the fair market value is the amount each of them would have paid for their cars on the original date of sale, had they known that those cars contained a defeat device. This

1    position is belied by caselaw, the ordinary meaning of "fair market value," and the plain
2    language of the model instructions.

3    Another court in this Circuit has recently considered, and rejected, Plaintiffs'
4    interpretation of California's out-of-pocket measure of damages. Judge Birotte's analysis
5    begins by noting that "[t]he rule is now well established that, in the typical case involving
6    a fraudulent vendor and a defrauded vendee" the "exclusive measure of damages" is "the
7    difference between the actual value of that with which the defrauded person parted and the
8    actual value of that which he received." In re: Ford Motor Co. DPS6 Powershift
9    Transmission Prods. Liability Litig., No. 18-ML-02814-AB (FFMx), 2019 WL 7171546,
10   at *4 (C.D. Cal. Dec. 2, 2019) (citing Walsh v. Hooker & Fay, 212 Cal. App. 2d 450, 458
11   (1963) & Cal. Civ. Code. § 3343). Turning to California caselaw, Judge Birotte
12   determined that "actual value" means "market value." Id. at *5 (citing Nece v. Bennett,
13   212 Cal. App. 2d 494, 497 (1963)). He therefore concluded that "'actual value' does not
14   mean Plaintiffs' subjective valuation of the vehicle" and so the plaintiffs' "own opinion as
15   to the value of the vehicle" could not establish their out-of-pocket damages. Id.

16   The Court is persuaded by Judge Birotte's reasoning and adopts it here. As noted
17   above, California caselaw and CACI No. 1923 establish that the proper measure of
18   damages is the amount Plaintiffs paid for their cars, less the actual fair market value of
19   those cars at the time of sale. See Nece, 212 Cal. App. 2d at 497. "Fair market value" is
20   an objective measure. It asks what price a typical, willing, and informed buyer and seller
21   would arrive at in an arm's-length transaction, not how much a particular individual would
22   have paid if that person had been fully informed. See Value, Black's Law Dictionary
23   (11th ed. 2019) (defining "fair market value" as "[t]he price that a seller is willing to
24   accept and a buyer is willing to pay on the open market and in an arm's-length transaction;
25   the point at which supply and demand intersect.").

26   The language Plaintiffs cite from CACI No. 1923 confirms this conclusion. That
27   model instruction defines fair market value as "the highest price that a willing buyer would
28   have paid on the date of the transaction to a willing seller, assuming:" no pressure and full

knowledge on both sides of the transaction. CACI No. 1923. The instruction speaks in terms of a generic buyer, paying the price determined by the market as a whole. Plaintiffs' reading would substitute the words "this Plaintiff" for "a willing buyer," but neither the language of the statute nor any case cited by the parties justifies that alteration.[1] Ultimately, Plaintiffs' position amounts to an unjustifiable effort to seek rescission in the guise of out-of-pocket damages.

Plaintiffs rely heavily on Schroeder v. Auto Driveaway Co., 11 Cal. 3d 908 (Cal. 1974), but that case does not support their position. The Schroeders hired Auto Driveaway to drive to Susanville, California a van loaded with merchandise for their new store. Id. at 912. Auto Driveaway's driver drove the van off the side of a mountain road, resulting in the total destruction of the van and substantial destruction of the Schroeder's goods. Id. at 913. The Schroeders sued for breach of contract, fraud, and conversion. Id. at 914.

Schroeder does not help Plaintiffs because it is distinguishable. The main measure of damages in Schroeder was "the difference between the value of the goods stored in the van and the salvage value." Id. at 921. Schroeder even distinguished a case that had applied the out-of-pocket measure of damages applicable here. Id. at 916–17 (holding there was "no similarity between . . . this case" and one which measured damages from fraud by "the difference between the amount the plaintiffs had paid for the property and what it was actually worth"). The disputed issue here—how to measure the fair market value of goods at the time of the original sale—was not relevant in Schroeder.

Plaintiffs have emphasized Schroeder's instruction that "[t]he opinion of an owner of personal property is in itself competent evidence of the value of that property, and sufficient to support a judgment based on that value." Id. at 921. This statement related to

---

[1] At the hearing, Plaintiffs also cited CACI No. 1923's direction that a plaintiff "may also recover amounts that [he/she/it] reasonably spent in reliance on" the fraudulent misrepresentations. The Court is not clear whether this reference was meant to support Plaintiffs' arguments regarding their reliance damages, or the correct measure of out-of-pocket damages. In any event, the Court interprets this language to describe the correct measure of reliance damages, not an alternative method for measuring out-of-pocket damages. On that note, the Court points out that Plaintiffs' reliance damages will be limited to "those amounts [that] would not otherwise have been spent." CACI No. 1923.

Mrs. Schroeder's testimony as to the original value and salvage value of her possessions. See id. at 920–21. Read in context, it does not establish that a plaintiff's subjective estimation of what she would have paid for an item can establish its fair market value.[2]

To the extent Schroeder is analogous to this case, it supports Volkswagen's preferred approach, not Plaintiffs'. Mrs. Schroeder's testimony established the original value of her possessions in part by estimating the amount she paid for them. Id. at 920. That is exactly what Plaintiffs will be allowed to do here. During Phase One, Plaintiffs may testify to the amount they paid for their TDI vehicles. But the Plaintiffs may not testify to the amount they would have paid for their vehicles if they had known about the defeat device at the time of the original sale. See Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

The parties also dispute how best to apprise the jury of certain stipulated facts. The Court has determined that the most fair and expeditious way to present these facts is for Plaintiffs' counsel to read aloud stipulated facts 1–15 from the Joint Proposed Pretrial Order during Plaintiffs' Phase One case-in-chief. See Joint Proposed Pretrial Order (dkt. 7040) at 6–7. No other presentation of the stipulated facts is necessary or allowed during this phase of the trial.

**IT IS SO ORDERED.**

Dated: February 21, 2020

_____
CHARLES R. BREYER
United States District Judge

---

[2] Plaintiffs' other authorities for this proposition are similarly distinguishable, inapplicable, or unhelpful. See Plaintiffs' Brief re: CACI 1923 (dkt. 7189) at 9. Universal Pictures Co. v. Harold Lloyd Corp., 162 F.2d 354 (9th Cir. 1947), was a copyright case. Id. at 357. It did not consider the proper measure of damages for fraud. See id. at 368–78. Shamilian v. BMW of North America, LLC, No. CV 16-6020 DSF (JPRx), 2017 WL 7156245 (C.D. Cal. Sept. 18, 2017), recognized that an owner's testimony regarding the value of his vehicle might be inadmissible because irrelevant. Id. at *2. Finally, Plaintiffs cite California Evidence Code § 813(a). But the Federal Rules of Evidence apply to this proceeding. See Fed. R. Evid. 1101.

4