Scot D. Wilson, State Bar No. 223367
swilson@knightlaw.com
Lauren Ungs, Bar No. 273374
laurenu@knightlaw.com
KNIGHT LAW GROUP, LLP
10250 Constellation Blvd., Suite 2500
Los Angeles, California 90067
Tel.: (310) 552-2250
Fax: (310) 552-7973

Bryan C. Altman, State Bar No. 122976
bryan@altmanlawgroup.net
ALTMAN LAW GROUP
10250 Constellation Blvd., Suite 2500
Los Angeles, California 90067
Tel.: (310) 277-8481
Fax: (310) 277-8483

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT FOR THE

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 2672 CRB (JSC) |
| ———————————————— | **TRIAL BRIEF BY PLAINTIFFS RE DEFENDANTS' "CORRECTION" DEFENSE TO THE CLRA CLAIM FOR DAMAGES** |
| This Document Relates to: | |
| ACTIONS SET FOR FEBRUARY 24, 2020 TRIAL | |

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................. 1

II.  SUMMARY OF ARGUMENT ............................................................................. 3

III.  THE AFFIRMATIVE DEFENSE TO PLAINTIFFS' CLRA CLAIM FOR DAMAGES DOES NOT APPLY FOR SEVERAL REASONS ................................................................... 7

A.  The "Appropriate Correction" Is an Affirmative Defense Under the CLRA ................................. 7

B.  CACI 4710 Specifies the Elements of the Affirmative Defense ........................................ 7

   1.  The Defense is Based on Cal. Civ. Code §§ 1782(b) and 1784 ................................... 7

   2.  Courts Discussing the Defense Rely on Both Sections 1782(b) and 1784............................... 8

   3.  The Legislative History of the CLRA ......................................................... 11

C.  The Defense Does Not Apply Because Defendants' Violations Were *Intentional* and Were Not the Result of a Bona Fide Error ............................................................................ 12

D.  Defendants Did Not Offer a "Correction" to Plaintiffs "Within 30 Days" of Notice of Their Violation of the CLRA.............................................................................................. 13

E.  The Class Action Settlement Did Not Constitute An "Correction" For Purposes of the CLRA .... 14

   1.  The 2.0 Settlement Came More Than Nine (9) Months After the CLRA Notice ................... 14

   2.  The Emissions Modification Option Was Not Available For Two (2) Years After the CLRA Notice For Most Vehicles ................................................................................ 14

   3.  The Settlement Agreement Gave VW Some Discretion in Deciding Who Was Eligibile and How Much They Might Get........................................................................................ 15

   4.  The Settlement Included a Broad Release and Other Conditions ........................................... 15

   5.  Punitive Damages, Attorney's Fees, and Costs Were Not Recoverable Under the Class Action Settlement Agreement............................................................................................ 15

F.  The Court Approved the Class Action Settlement As "Fair, Reasonable and Adequate" on October 25, 2016.............................................................................................. 16

G.    After Opting Out of the Class, Defendants Did Not Make an Appropriate Correction to the Plaintiffs in This Case .................................................................................................17

    1.    Defendants Did Not Offer an "Appropriate Correction" to Plaintiff Julia Robertston ...........17

    2.    Defendants Did Not Offer an "Appropriate Correction" to Plaintiff Byron Clendenen ..........18

    3.    Defendants Did Not Offer An "Appropriate Correction" to Plaintiffs Kenneth and Maria Coon ……………………………………………………………………………………19

    4.    Defendants Did Not Offer An "Appropriate Correction" to Plaintiffs Richard and Virginia Ortiz ……………………………………………………………………………………19

    5.    Defendants Did Not Offer An "Appropriate Correction" to Plaintiffs Luke and Kathryn Sanwick..................................................................................................................20

    6.    Defendants Did Not Offer An "Appropriate Correction" to Plaintiff Scott Salzer .................20

H.    The "Emissions Modification" Did Not "Correct," "Fix," or Make the Vehicles to Conform to the Original Certification Standards They Were Represented to Meet .......................................................20

I.    The Class Action Settlement Had Extensive Conditions, Including a Broad Release of All Claims – Which An Appropriate Correction Cannot Have Under California Law ..............................................23

J.    The Class Action Settlement Agreement Required Plaintiffs To Release Claims For Remedies Available To Them In This Case, Including Damages, Punitive Damages, Attorneys' Fees ................24

K.    The Class Action Settlement Gave the VW Discretion to Determine the Relief and Enforce The Release Even If the Terms Changed And the Agreement Was Voided ..................................................25

IV.    CONCLUSION.................................................................................................26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**

**Cases**

*Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)....................................................................20

*Benson v. Southern California Auto Sales, Inc.*, 239 Cal.App.4th 1198 (2015) .........................13

*Deitz v. Comcast Corp.*, 2006 WL 3533025, at *5 (N.D. Cal. Dec. 7, 2006)..............................12

*Hugh v. McCarthy*, 54 Cal. 2d 273, 279 (1960) ..........................................................................12

*In re MacBook Keyboard Litig.*, 2019 WL 6465285, *10 (Dec. 2, 2019)...................................25

*In re MacBook Keyboard Litig.*, 2019 WL 6465285, at *9 (N.D. Cal. Dec. 2, 2019)................12

*In re MacBook Keyboard Litig.*, 2019 WL 6465285, at 10 (N.D. Cal. Dec. 2, 2019)................6

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Prac. & Prod. Liab. Litig.*, 890 F.Supp.2d 1210,
    1218 (C.D. Cal. 2011)...........................................................................................................27

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Prac. & Prods. Liab. Litig.*, 890 F.Supp.2d 1210,
    1218 (C.D. Cal. 2011)...........................................................................................................26

*Lunada Biomedical v. Nunez*, 230 Cal.App.4th 459, 471 (2014) .........................................11, 15

*Luong v. Subaru of America, Inc.*, 2018 WL 2047646, *6 (N.D. Cal. 2018).............................6

*Luong v. Subaru of America, Inc.*, 2018 WL 2047646, *6 (N.D. Cal. May 2, 2018).........25, 26

*Neuwald v. Brock*, 12 Cal.2d 662, 668-69 (1939) ......................................................................12

*People v. Woodhead*, 43 Cal.3d 1002, 1010 (1987) ..............................................................11, 12

*Serova v. Sony Music Entm't*, 44 Cal.App. 5th 103 (2020) .......................................................12

*Valdez v. Seidner-Miller, Inc.*, 33 Cal.App.5th 600, 611 (2019).........................................7, 27

*Whelan v. Miles Indus.*, 2013 WL 12174135 (N.D. Cal. Jan. 3, 2013) .....................................13

William L. Stern, Cal. Prac. Guide, Chp. 10, *Consumer Legal Remedies Act – Special Defenses* (The
    Rutter Group 2020)...............................................................................................................10

**Statutes**

Civ. Code § 1542 .....................................................................................................................6, 18

Civ. Code § 1760 .........................................................................................................................15

Civ. Code § 1782 .....................................................................................................................4, 12

Civ. Code § 1782(a) ............................................................................................................13

Civ. Code § 1782(b) ............................................................................................................10

Civ. Code § 1782(c) ............................................................................................................26

Civ. Code § 1784 ........................................................................................................4, 10, 12

Civ. Code §§ 1750 ..............................................................................................................1

## I.    INTRODUCTION

This case involves the claims of ten (10) plaintiffs: Julia Robertson, Kenneth and Maria Coon, Luke and Kathryn Sanwick, Richard and Virginia Ortiz, Byron Clendenen, Scott Salzer, and Timothy Riley ("Plaintiffs").  All Plaintiffs assert claims for: (1) fraud - intentional misrepresentation; and (2) fraud – concealment against Defendants Volkswagen Group of America, Inc. and Volkswagen AG ("Defendants" or "VW").  Other than Mr. Riley, each Plaintiff also asserts a cause of action against Defendants for violation of the California Consumer Legal Remedies Act ("CLRA").  The CLRA is a consumer protection statute that is codified at Cal. Civ. Code §§ 1750 through 1784.

Defendants admit that they violated the CLRA. Below is the agreed CACI 4700 jury instruction which sets forth some of the facts that Defendants admit in connection with Plaintiffs' CLRA claim:

---

**CACI 4700 (MODIFIED) - ESSENTIAL FACTUAL ELEMENTS**

**All Plaintiffs except for Timothy Riley** claim that Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices in a transaction that resulted, or was intended to result, in the sale or lease of goods or services to a consumer, and that these Plaintiffs were harmed by the Defendants' violation.   To establish this claim, these Plaintiffs have the burden to prove all of the following:

1.    That each Plaintiff acquired, or sought to acquire, by purchase or lease, cars for personal, family, or household purposes;

2.    That Defendants represented that the cars had sponsorship, approval, characteristics, uses, or benefits which they did not have; represented that the cars were of a particular standard, quality, or grade when they were of another; advertised the cars with intent not to sell them as advertised; represented that the transactions in which each Plaintiff purchased or leased the cars conferred or involved rights, remedies, or obligations which they did not have or involve, or which are prohibited by law; and/or represented that the cars had been supplied in accordance with a previous representation when they had not;

3.    That each Plaintiff was harmed; and

4.    That his or her harm, **if any**, resulted from Defendants' conduct.

**Here, both Defendants have conceded all of the elements of the CLRA claims except that any of the Plaintiffs were harmed by Defendants' conduct.**

---

Exh. 5469 (CACI 4700).

_____
TRIAL BRIEF BY PLAINTIFFS RE DEFENDANTS' "CORRECTION" DEFENSE TO THE
CLRA CLAIM FOR DAMAGES

This case arises from Volkswagen's intentional violation of United States and California emissions standards by equipping so-called "clean diesel" vehicles with illegal defeat devices that gamed emissions testing procedures. Defendants admit that they <u>intentionally</u> misrepresented and concealed facts regarding the VW vehicles that Plaintiffs' bought or leased from them, that Plaintiffs did not know the true facts, that Plaintiffs' relied on Defendants' fraud, that Plaintiffs would have behaved differently had Defendants not engaged in their conduct, and that Plaintiffs' reliance on Defendants' conduct was a substantial factor in causing them harm.  CACI 1900; CACI 1901.  Defendants' acknowledge that some Plaintiffs suffered harm and are entitled to damages.  The amount of damages, however, is disputed.  The sole question in Phase One of the jury trial is the amount of compensatory damages. Phase Two of the jury trial will involve whether punitive damages are justified and, if so, in what amount.

The scandal led to numerous government actions and civil lawsuits, which were consolidated before this Court by the Judicial Panel on Multidistrict Litigation.  Several of the government actions resulted in criminal guilty pleas, consent orders, and consent decrees relevant here. The Federal Trade Commission Consent Order enjoins it from selling, leasing, marketing, or advertising any vehicle with a defeat device, and its First and Second Partial Consent Decrees with the EPA prohibit it from selling TDI vehicles without an approved emissions modification ("AEM") and disclosures approved by the EPA and CARB. The Plea Agreement in the criminal case required Volkswagen to promise that neither it, its officers, directors, employees, or agents would "make any public statement" contradicting its guilty plea or contest the admissibility of the facts admitted in the agreement and its exhibits in any proceeding.

There were two (2) consumer class action settlement agreements entered into and approved by this Court. Both required class members to release all claims arising from the emissions scandal. Plaintiffs Richard and Virginia Ortiz leased and then bought a 2.0-liter TDI diesel vehicle. Plaintiff Scott Salzer bought a 2.0-liter TDI diesel vehicle. Plaintiff Julia Robertson leased a 2.0-liter TDI vehicle. Plaintiffs Byron Clendenen, Kenneth and Maria Coon, and Luke and Kathryn Sanwick bought 3.0-liter TDI diesel vehicles.  Plaintiffs opted out of the class action settlement.  The issue in the bench trial phase of this case is whether the class action settlements constituted an appropriate correction under the CLRA, thus barring their claim for damages under the CLRA. The parties have agreed the question of whether this defense applies to the CLRA claim of the Plaintiffs in this case should be decided by the Court.

TRIAL BRIEF BY PLAINTIFFS RE DEFENDANTS' "CORRECTION" DEFENSE TO THE CLRA CLAIM FOR DAMAGES

## II.     SUMMARY OF ARGUMENT

Volkswagen argues that the class action settlement constitutes an "appropriate correction" and, thus, is an affirmative defense to Plaintiffs' claims for damages under the CLRA.  The Court, however, after considering the evidence and the applicable law, should decide that the "appropriate correction" defense to Plaintiffs' CLRA claim for damages does not apply for several reasons.

First, it is important to note that the "appropriate correction" is an affirmative defense under the CLRA.  Defendants have the burden of proving each of the elements of this affirmative defense. Defendants do not carry their burden on this defense in this case.

Second, there are multiple elements which Defendants must prove in connection with their affirmative defense – elements which they cannot prove in this case.  CACI 4710 specifies the elements of the "correction" defense under California law. Although the Court has previously made statements in other orders regarding Cal. Civ. Code § 1782(b) constituting a separate affirmative defense from Cal. Civ. Code § 1784, Plaintiffs respectfully request that the Court take a closer look at the cases discussing the "correction" defense, as well as the legislative history for the CLRA.  In doing so, Plaintiffs are confident that the Court will conclude that the affirmative defense is based on both sections 1782(b) and 1784. Indeed, most courts addressing the defense rely on both sections 1782(b) and 1784 and it makes sense to do so (given that they address the same subject and are both part of the CLRA).  Furthermore, the legislative history of the CLRA, including for sections 1782(b) and 1784 strongly supports considering them together in connection with the "correction" defense to damages.

Third, if sections 1782(b) and 1784 are considered together, Defendants' affirmative defense necessarily fails. The defense cannot possibly apply because it is undisputed that Defendants' violations of the CLRA were intentional and were not the result of a bona fide error.  In short, if the proper legal standard setting forth the elements of the affirmative defense is applied, the analysis ends here: the affirmative defense cannot be established.

Fourth, even if Defendants' could prove that their violations of the CLRA were "not intentional" and were the result of a bona fide error" or mistake or the Court determined section 1782(b) constituted its own separate CLRA defense, the defense still fails because Defendants did not offer a correction to Plaintiffs within 30 days of notice of their violation, as required by the CLRA's strict time requirements.

_____
TRIAL BRIEF BY PLAINTIFFS RE DEFENDANTS' "CORRECTION" DEFENSE TO THE
CLRA CLAIM FOR DAMAGES

Defendants totally ignore this issue because they have no response to it.  A letter dated October 15, 2015 was sent on behalf of Plaintiffs to Defendants, notifying them of their violations of the CLRA and demanding remedies under the CLRA.  The letter demanded a response within 30 days.  Defendants did not, "within 30 days" make an appropriate correction or agree that they would do so "within a reasonable time." This is a requirement under both section 1782(b) and 1784, and it is something that Defendants cannot prove that they did (because they failed to do it).

While the class action settlement which was ultimately reached was "fair, reasonable, and adequate" for purposes of Fed. R. Civ. P. 23, it was not an "appropriate correction" under the CLRA's affirmative defense requirements.  The class action settlement that Defendants now claim constitutes an "appropriate correction" was entered into on July 26, 2016 – more than nine (9) months after the October 15, 2015 CLRA notice.  The first class action settlement (for the 2.0-liter TDI diesel vehicles) was approved by the Court on October 25, 2016 – more than one year after the October 15, 2015 CLRA notice.  The Approved Emissions Modification ("AEM") option was not available for two (2) years after the CLRA notice for most vehicles.  Indeed, while it may be true that the timing of these things all happened very quickly for purposes of trying to come up with a compromise to address Defendants' unprecedented and monumental fraud and illegal conduct, Defendants (having admitted to illegal, criminal, and fraudulent conduct) are not in a position to argue that the strict time requirements under the CLRA should be ignored. The fact is that Defendants might have gotten the criminal and civil claims against them resolved fast, but they did not make timely correction within 30 days under the CLRA.

<u>Fifth</u>, after opting out of the class action, Defendants did not make an appropriate correction to the Plaintiffs in this case.  Even though they were not required to do so, given that a CLRA notice letter had already been sent on their behalf on October 15, 2015 by Class Counsel when they were part of the putative class of similarly situated persons, each Plaintiff sent their own individual CLRA letter to VW to which Defendants failed to offer an appropriate correction for various reasons.  Defendants did not even respond to some of the letters.  For others, Defendants incorrectly said that they had not opted out and was therefore barred from pursuing a claim.  For others, they were offered the emissions modification which Defendants acknowledged was not yet available.  Defendants' response (and in some cases lack of a response) does not constitute an "appropriate" – let alone a timely – correction under the CLRA.

4

1        Sixth, the class action settlement should also not be deemed an "appropriate correction" because

2    the "emissions modification" did not "correct," "fix" or make the vehicles conform to their original

3    certification standards they were represented to meet.  In fact, the emissions standards actually had to be

4    changed so that the software modifications could be approved and implemented because it was impossible

5    to modify the vehicles (given that they were polluting up to 40 times in excess of the original standards) to

6    comply with the original standards.  In addition, the modification has negative affected vehicle performance

7    in several ways.  The emissions modification was just that: a *modification*.  It was not a correction or "fix."

8    Where an offer does not truly "fix" or "cure" the defect, it is not an appropriate correction.  *See, e.g., In re*

9    *MacBook Keyboard Litig.*, 2019 WL 6465285, at 10 (N.D. Cal. Dec. 2, 2019); *Luong v. Subaru of America,*

10   *Inc.*, 2018 WL 2047646, *6 (N.D. Cal. 2018).  Defendants would like the Court to strain to avoid applying

11   these rules by pointing out these cases involved courts addressing the applicability of the correction defense

12   at the pleading phase.  The rules set forth by these courts – whether at the pleading phase or not – apply: if

13   what a defendant offers does not actually "fix" or "cure" the defect, it can be decided it was not an

14   appropriate correction.  That is what the Court should decide here.

15        Seventh, the class action settlement had extensive conditions, including a broad release of all

16   claims, a Cal. Civ. Code § 1542 waiver, and even required participating class members to sign their own

17   individual release (which is very rare in class action cases).  The individual release also had extensive

18   conditions and limitations, including a provision that said that Defendants could enforce the release even

19   if the settlement agreement pursuant to which the person was releasing all of their claims was changed or

20   voided.  While such provisions might be permissible for purposes of approving a class action settlement

21   for purposes of Rule 23, a defendant's settlement offer which includes numerous conditions, including a

22   broad release of claims is not an appropriate correction under the CLRA.  *Valdez v. Seidner-Miller, Inc.*,

23   33 Cal.App.5th 600, 611 (2019).  Eighth, the class action settlement agreement required Plaintiffs to release

24   and give up claims and remedies that are available to them in this case, including for damages, punitive

25   damages, attorney's fees, and costs (but did not offer to provide them with any such remedies as part of the

26   proposed offer).  As such, it should not be deemed an appropriate correction under the CLRA.  Other

27   plaintiffs who have opted out have since gotten judgments for more than they were offered in the class

28   settlement plus attorneys' fees and costs.

Ninth, the class action settlement gave Defendants some discretion to determine the relief and to enforce the release even if the terms changed or the agreement was voided.  Defendants were also able to back away from their initial promise that the emissions modification would allow vehicles to conform to the original certification standards.  An offer which gives the defendant the ability to determine what relief Plaintiff might be eligible for or get based on criteria that they have a role in establishing (but the consumer does not) is not an appropriate correction under the CLRA.  *Valdez*, 33 Cal.App.5th at 615-16.

Tenth and finally, the totality of the circumstances and consideration of the core purpose of the CLRA supports finding that the "correction" defense to damages does not apply.  The CLRA is a consumer protection statute.  Courts have consistently noted that the CLRA is to be liberally construed in favor of allowing consumers to enforce their rights.  Its provisions and the cases construing it should not be strained to block their claims.  Yet, that is exactly what Defendants, after having committed admittedly intentional violations of the CLRA, ask this Court to do.  Defendants, hoping that this Court will equate the class action settlement which was "fair, reasonable, and adequate," for purposes of Rule 23, with an "appropriate correction" for purposes of the CLRA.  The standards are completely different.

A class action settlement offer (or agreement) that is "fair, reasonable and adequate" is not the same as an "appropriate correction" under the CLRA.  One is a negotiated compromise with some give and take and meeting in the middle.  The other is a "correction" restoring a person to their position but for the violation.  In the Ninth Circuit, there is a strong judicial policy favoring the approval of class action settlements.  In California, there is a strong judicial policy of favoring the rights of consumers to pursue their CLRA claims.  A class action settlement proposal that is deemed "fair, reasonable, and adequate" for purposes of Rule 23 is not automatically an "appropriate correction" under the CLRA for those consumers who do not accept it.  If that was the test, then no plaintiff who opted out of a class action could ever bring a CLRA claim. Finding the class action settlement "fair, reasonable and adequate," is not at all inconsistent with finding that Defendants have not met their burden of proving the "correction" affirmative defense to damages.  Defendants admit that they intentionally violated the CLRA.  The Court should find that the elements of the affirmative defense are not met and let the jury decide Plaintiff's CLRA claim for damages.  That conclusion is supported by the law, the evidence, and the spirit and purpose of the CLRA.

_____
TRIAL BRIEF BY PLAINTIFFS RE DEFENDANTS' "CORRECTION" DEFENSE TO THE
CLRA CLAIM FOR DAMAGES

III.   **THE AFFIRMATIVE DEFENSE TO PLAINTIFFS' CLRA CLAIM FOR DAMAGES DOES NOT APPLY FOR SEVERAL REASONS**

   A.   <u>The "Appropriate Correction" Is an Affirmative Defense Under the CLRA</u>

   *First*, the "appropriate correction" is an affirmative defense to a claim for damages under the CLRA. As such, Defendants have the burden of proof in connection with this affirmative defense.

   B.   <u>CACI 4710 Specifies the Elements of the Affirmative Defense</u>

   *Second*, Judicial Council of California Civil Jury Instruction ("CACI") 4710 sets forth what a defendant is required to prove in order for the affirmative defense to a claim for CLRA damages to apply. CACI 4710.  The CACI 4701 instruction is set forth below:

## 4710 Consumers Legal Remedies Act—Affirmative Defense—Bona Fide Error and Correction (Civ. Code, § 1784)

[*Name of defendant*] is not responsible for damages to [*name of plaintiff*] if [*name of defendant*] proves both of the following:

1. The violation[s] alleged by [*name of plaintiff*] [was/were] ==not intentional== and ==resulted from a bona fide error== even though [*name of defendant*] used ==reasonable procedures adopted to avoid any such error;== and

2. ==Within 30 days of receiving== [*name of plaintiff*]'s ==notice of violation==, [*name of defendant*] made, or agreed to make within a reasonable time, ==an appropriate correction==, repair, replacement, or other remedy of the [*specify product or service*].

CACI 4710.

   Under California law, the affirmative defense to a CLRA claim for damages does not apply unless: (1) the violation was "not intentional and resulted from a bona fide error;" and (2) an appropriate correction was "made" or it was agreed to be be made "within a reasonable time," as confirmed in a response "within 30 days of receiving" the "notice of violation." *Id.*  Neither of these elements exist here.

   1.   **The Defense is Based on Cal. Civ. Code §§ 1782(b) and 1784**

   The "appropriate correction" defense to damages is set forth in California Civil Code sections 1782(b) *and* 1784.  Section 1782(b), which generally sets forth the notice requirements for a plaintiff under the CLRA, provides:

7

_____
TRIAL BRIEF BY PLAINTIFFS RE DEFENDANTS' "CORRECTION" DEFENSE TO THE
CLRA CLAIM FOR DAMAGES

1
2
3

"Except as provided in subsection (c), no action for damages may be maintained under Section 1780 if an appropriate correction, repair, or replacement, or other remedy is given, or agreed to be given within a reasonable time, to the consumer within 30 days after receipt of the notice."

4  Cal. Civ. Code § 1782(b)).

5  Section 1784, titled "*Damages, Defense*," sets forth the elements of the defense and states what the

6  person alleged to have committed the violation must prove, stating:

7
8
9
10
11
12

West's Ann.Cal.Civ.Code § 1784

§ 1784. Damages, defense

Currentness

No award of damages may be given in any action based on a method, act, or practice declared to be unlawful by Section 1770 if the person alleged to have employed or committed such method, act, or practice (a) proves that such violation was not intentional and resulted from a bona fide error notwithstanding the use of reasonable procedures adopted to avoid any such error and (b) makes an appropriate correction, repair or replacement or other remedy of the goods and services according to the provisions of subdivisions (b) and (c) of Section 1782.

13  Cal. Civ. Code § 1784. The Rutter Guide discusses the elements of proof for the damages defense to a

14  CLRA claim, explaining:

15
16
17
18
19

2. [10:86] **Unintentional Acts/Bona Fide Error Defense:** Unlike § 17200, proof of good faith and unintentional (i.e., "bona fide") error is a defense to a damage action brought under the CLRA. [CC § 1784] To establish this defense, the defendant must prove that (1) the violation was not intentional, (2) the violation resulted from a bona fide error notwithstanding the use of reasonable procedures adopted to avoid any such error, and (3) defendant made an appropriate correction, repair or replacement or other remedy of the goods and services once notified of the error.

20  William L. Stern, Cal. Prac. Guide, Chp. 10, *Consumer Legal Remedies Act – Special Defenses* (The Rutter

21  Group 2020), at ¶ 10:86.

22  **2.    Courts Discussing the Defense Rely on Both Sections 1782(b) and 1784**

23  Defendants suggest that their defense is only based on section 1782(b) – and not section 1784.  They

24  do this, of course, to try to avoid the element requiring them to prove their violations of the CLRA were

25  "not intentional" and resulted from a "bona fide error." Cal. Civ. Code § 1784.   Attempt to invoke the

26  defense to damages under the CLRA without being subject to section 1784's requirements is not supported

27  by the cases discussing the defense or the consumer protection purpose underlying the CLRA.

28

8

1   If a defendant could chose to invoke section 1782(b) – and not have section 1784 also apply, section

2   1784 would be left meaningless as no defendant would ever seek to have it apply instead of section 1782(b).

3   Reading section 1782(b) and section 1784 together also makes sense because applying section 1782(b) in

4   isolation could allow a defendant who committed *intentional* violations of the CLRA to avoid liability if

5   they offered a correction within 30 days. *Lunada Biomedical v. Nunez*, 230 Cal.App.4th 459, 471 (2014)

6   ("Damages are not awardable under the CLRA if the defendant proves its violation was not intentional and

7   resulted from a bona fide error despite reasonable procedures to avoid such an error, and remedies the

8   violating goods or services.").[1] The law instead allows a defendant whose violation was unintentional and

9   the result of a bona fide error to have the opportunity to avoid liability by agreeing to correct the mistake.

10   Defendants try to convince the Court that section 1782(b) creates an affirmative defense that is

11   separate from section 1784's "appropriate correction" defense, but without a requirement to prove that

12   Defendants conduct resulted from a *bona fide* error. Such an interpretation would render section 1784

13   meaningless[2] and and is contrary to basic principles of statutory construction. *People v. Woodhead*, 43

14   Cal.3d 1002, 1010 (1987); *Neuwald v. Brock*, 12 Cal.2d 662, 668-69 (1939); *Hugh v. McCarthy*, 54 Cal.

15   2d 273, 279 (1960) (holding that statute is to be taken and considered as a whole, so that seeming

16   inconsistencies are reconciled and that it is construed to give force and effect to all its provisions.).

17   For these reasons, in analyzing the "appropriate correction" defense, courts discuss section 1782

18   and 1784 <u>together</u>. *See, e.g., Luong v. Subaru of Am., Inc*., 2018 WL 2047646, at *6 (N.D. Cal. May 2,

19   2018) (discussing section 1782 and 1784 together in connection with the "appropriate correction" defense);

20   *In re MacBook Keyboard Litig.*, 2019 WL 6465285, at *9 (N.D. Cal. Dec. 2, 2019); *Serova v. Sony Music

21   Entm't*, 44 Cal.App.5th 103 n. 13 (2020) (citing sections 1782(b) and 1784 and stating: "The CLRA does

22   provide for a good faith defense to an action for damages, but the defense requires proof of "appropriate

23

24   _____

   [1] Reading section 1782(b) in isolation (and not also applying section 1784) would have the effect of treating

25   a person who unintentionally violated the CLRA the same as one to violated it intentionally. Section 1784,
   which is part of the CLRA, makes clear that the Legislature wanted to the defense to apply only to those

26   whose violation was "not intentional" and was the result of a "bona fide error[,]" effectively extending a
   special defense to who committed a violation of the law that was the result of an unintentional oversight or

27   mistake, assuming they offered an appropriate correction within 30 days. Cal. Civ. Code § 1784.

28   [2] If section 1782 was a separate defense, there would be no reason to have section 1784 as no defendant
   would ever claim the defense under section 1784 and subject themselves to the additional element of proof.

_____
TRIAL BRIEF BY PLAINTIFFS RE DEFENDANTS' "CORRECTION" DEFENSE TO THE
CLRA CLAIM FOR DAMAGES

correction, repair or replacement or other remedy of the goods and services."); *Lunada Biomedical*, 230 Cal.App.4th at 471 (citing Civ. Code § 1782(b) and Civ. Code § 1784 in discussing the damages defense); *Deitz v. Comcast Corp.*, 2006 WL 3533025, at *5 (N.D. Cal. Dec. 7, 2006) (citing Civ. Code § 1782(a)-(c) and Civ. Code § 1784 and stating: "The CLRA provides that the consumer may not recover damages if appropriate correction, repair, replacement or other remedy is given."); *Whelan v. Miles Indus.*, 2013 WL 12174135, at *2 (N.D. Cal. Jan. 3, 2013) (relying on both section 1782(b) and 1784 in connection with the "appropriate correction" CLRA defense).  Of the cases addressing the issue, the court in *Whelan v. Miles Indus.*, 2013 WL 12174135 (N.D. Cal. Jan. 3, 2013), most artfully and accurately described how the sections act in tandem and operate together, explaining:

> Specifically, Defendant has raised an affirmative defense to the consumer protection act claims in response to [the Plaintiff's] Consumer Legal Remedies Act (CLRA) demand for correction. *See* Cal. Civ. Code § 1782(a) ("Thirty days or more prior to the commencement of an action for damages pursuant to this title, the consumer shall do the following: (1) Notify the person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 of the particular alleged violations of Section 1770. (2) Demand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770."). Pursuant to California Civil Code section 1782(e), "evidence of compliance or attempts to comply with a demand may be introduced by a defendant for the purpose of establishing good faith to show compliance with a demand." The adequacy of compliance may result in an award of no damages. *See* Cal. Civ. Code § 1784 ("No award of damages may be given in any action based on a method, act, or practice declared to be unlawful by Section 1770 if the person alleged to have employed or committed such method, act, or practice (a) proves that such violation was not intentional and resulted from a bona fide error notwithstanding the use of reasonable procedures adopted to avoid any such error and (b) makes an appropriate correction, repair or replacement or other remedy of the goods and services according to the provisions of subdivisions (b) and (c) of Section 1782.")

*Id*. at *2.  The Court has previously relied on *Benson v. So. Cal. Auto Sales, Inc*., 239 Cal.App.4th 1198 (2015), for the proposition that section 1782(b) can be a separate defense.  Plaintiffs ask that the Court take another look at this important issue.  *Benson* did <u>not</u> address the applicability of section 1784.  Section 1784 is <u>not</u> referenced or cited in *Benson*.  More importantly, *Benson* specifically noted that section 1782(b) "was added early in the legislative process to insure that 'the consumer must give the merchant an opportunity to correct his ***mistake*.'** *Id*. at 1206 (Assem. Com. on Judiciary, Explanation of Am. to Assem. Bill No. 292, as amended (1970 Reg. Sess.) May 18, 1970) (emphasis added).

10

_____

### 3.       The Legislative History of the CLRA

The legislative history cited in *Benson* is significant – and actually supports Plaintiffs' position – for two (2) reasons. First, the legislative history quoted by the court in *Benson* demonstrates that it was the legislative intent to limit the defense only in those situations where the violation was a "*mistake*," *id*., which is consistent with section 1784.   The legislative history cited in *Benson* indicates that the legislature intended that the defense only apply if the violation was a "mistake." Second, *Benson* noted that section 1782(b) was "was *added early in the legislative process* to insure that 'the consumer must give the merchant an opportunity to correct his mistake.' *Id*.   Section 1784 enacted at the same time as section 1782(b), immediately below it in the text of the Act, indicating that it was specifically added to set forth the requirements of the affirmative defense and to incorporate the legislative purpose, i.e., to give merchants the opportunity to correct a *mistake*, and make that a clear in the statute.

The CLRA does not have a scienter element.  A plaintiff is not required to prove that a defendant intentionally violated one of the CLRA's prohibited acts.  The element requiring that a defendant prove that its violation was "not intentional" and was a "bona fide error" is consistent with the legislative purpose quoted in *Benson*. A defendant who intentionally violates the CLRA is not afforded the benefit of the defense. It instead makes sense and would be consistent with the legislative history and purpose to read the CLRA as a whole.

James S. Reed, who was Chief Counsel for the California Legislature's Assembly Judicial Committee, authored an article, titled *Legislating for the Consumer: An Insider's Analysis of the Consumer Legal Remedies Act*, PACIFIC LAW JOURNAL (Vol. 2 1971).  Mr. Reed was involved in the preparation of all legislative drafts of the Act and participated in all conferences and hearings as it passed through the legislative process. *Id*. at 1. Mr. Reed, who was directly involved in the legislative process and history leading to the enactment of the CLRA, *id*., explained:

> "In the case of the Consumer Legal Remedies Act, the policy statement was intended as a concise guid to the interpretation and application of its many provisions. The message is clear – *when in doubt, decide in the consumer's favor*. That is especially apparent in the admonition that the Act is meant to 'provide efficient and economical procedures' to protect the consumer, and, of course, to provide relief when he has been damaged."

*Id*. at 8-9 (italics in original).

11

"The following statement of legislative policy is of critical importance for an adequate understanding of the [CLRA]:"

> 'This title shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.'

*Id*. at 8 (quoting Cal. Civ. Code § 1760). "It [wa]s not the policy of the Act . . . to subject *honest* businesses to *ill-founded* lawsuits." *Id*. at 9 (emphasis added).  Here, Defendants were dishonest and this case involves intentional and admitted violations.  Mr. Reed explained the legislative intent of section 1782(b), explaining that its intent was focused on the requirement of notice as a pre-requisite to filing a class action:

> "The intent was to make certain that a person can commence a *class action* 30 days after he has made a demand on behalf of the *class* even if the mechant has offered to settle his particular claim in accordance with section 1782(b)[,]" but [a]n action so commenced may not be maintained, however, if the conditions for settlement with the *class* have been met."

*Id*. at 19. Finally, Mr. Reed explained the legislative intent of section 1784 as follows:

> "Section 1784 provides that no award of damages may be given (1) if the defendant proves that the violation was unintentional and (2) resulted from a bona fide error notwithstanding the use of reasonable procedures adopted to avoid such errors, and provided also that (3) the appropriate remedy is given. The burden of proof in each instance is on the defendant. This section was added at the request of business representatives."

*Id*. at 20. Thus, the legislative history supports reading and applying the CLRA damages defense together – i.e., section 1782 and 1784.

### C. The Defense Does Not Apply Because Defendants' Violations Were *Intentional* and Were Not the Result of a Bona Fide Error

The affirmative defense to Plaintiffs' claim for damages under the CLRA does not apply in this case (and cannot be established) because Defendants' violations were intentional and were not the result of a bona fide error or mistake.  *See* Cal. Civ. Code § 1784; *Lunada Biomedical v. Nunez*, 230 Cal.App.4th 459, 471 (2014). Defendants have admitted that they violated the CLRA and admitted that the fraudulent conduct that they engaged in was intentional.  *See, e.g.,* CACI 1900, 1901, CACI 4700 (admissions by VW as to elements of each claim other than damages).  Thus, the affirmative defense fails for this reason alone.

1   The conduct giving rise to the violations of the CLRA in this case were not only intentional – but

2   were also criminal.  *See* Exh. 5000 (VW Plea Agreement).  For example, "VW represented to its U.S.

3   customers," including Plaintiffs, "that the Subject Vehicles met the new and stricter U.S. emissions

4   standards" and "designed a specific marketing campaign to market these vehicles to U.S. customers as

5   'clean diesel' vehicles." Exh. 5000 (VW Plea Agreement, Exh-2 Statement of Facts ("SOF"), ¶ 30).  VW

6   deceived "U.S. customers about whether the Subject Vehicles . . . complied with U.S. emissions standards."

7   Exh. 5000 (SOF, ¶ 31).  VW: (a) knew that the Subject Vehicles "did not meet U.S. emissions standards;

8   (b) knew that VW was using software to cheat the U.S. testing process . . . (c) attempted to and did conceal

9   these facts from . . . U.S. customers." Exh. 5000 (SOF, ¶ 31).

10   VW intentionally designed and implemented software to evade and defeat U.S. emissions

11   standards. Exh. 5000 (SOF, ¶¶ 33-40).  VW intentionally engaged in this misconduct to obtain certifications

12   that were necessary to import and sell the vehicles in the United States and California.  Exh. 5000 (SOF,

13   ¶¶ 41-43).  While claiming that the vehicles met the applicable emissions standards and concealing the

14   facts about the defeat device, the vehicles in fact "emitted NOx at values of up to approximately 40 times

15   the permissible limit." Exh. 5000 (SOF, ¶¶ 52, 54, 58).

16   **D.** **Defendants Did Not Offer a "Correction" to Plaintiffs "Within 30 Days" of Notice of**

17   **Their Violation of the CLRA**

18   The affirmative defense also fails because Defendants did not make or offer to make an appropriate

19   correction within 30 days of notice of their violation of the CLRA.  On October 15, 2015, a letter was sent

20   by Elizabeth J. Cabraser of Lieff Cabraser, who was later appointed Lead Class Counsel, *see* Exh. 357-3,

21   on behalf of certain class representatives "and others similarly situated (the 'Proposed Class')," notifying

22   Defendants of their unlawful practices and violations of the CLRA.  Exh. 5448, at 1-2.  The Plaintiffs in

23   this case were part of the Class Proposed Class whom Ms. Cabraser's October 15, 2015 letter was sent on

24   behalf of.[3]  It is undisputed that Defendants did not offer a timely CLRA correction.

25

26   _____

27   [3] The sending of a 30-day notice letter by one plaintiff is sufficient to constitute notice on behalf of others.
*Luong v. Subaru of America, Inc*., 2018 WL 2047646, *6 (N.D. Cal. May 2, 2018).  "When one named

28   plaintiff provides written notice to a defendant on behalf of the plaintiff and similarly situated consumers, that notice satisfies section 1782 for all class members." *Id*. at *6.

_____
TRIAL BRIEF BY PLAINTIFFS RE DEFENDANTS' "CORRECTION" DEFENSE TO THE
CLRA CLAIM FOR DAMAGES

The October 15, 2015 letter stated that "Plaintiffs and the Proposed Class . . . request[ed] that within thirty (30) days of receiving th[e] letter, Volkswagen (1) agree to buy-back, correct, permanently repair, replace, or otherwise rectify the Class Vehicles, and (2) agree to reimburse Plaintiffs and all Proposed Class members for any associated out-of-pocket expenses." Exh. 5448, at 3. Defendants did not, "within 30 days after receipt of the notice" make "an appropriate correction, repair, or replacement, or other remedy" or state that they would do so "within a reasonable time." Civ. Code §§ 1784, 1782(b).  The class complaint was filed on February 26, 2016, again putting Defendants on notice of their violation of the CLRA.  Exh. 5468. Defendants failed to make a timely correction under the CLRA.  The defense fails for this reason.

**E.**     **The Class Action Settlement Did Not Constitute An "Correction" For Purposes of the CLRA**

**1.**     **The 2.0 Settlement Came More Than Nine (9) Months After the CLRA Notice**

The class action settlement agreement release involving the 2.0 liter TDI vehicles was signed and filed with the Court on July 26, 2016 – more than nine (9) months after the CLRA notice sent on October 15, 2015. Exh. 358.[4]  The class action settlement was not a "correction."  Rather, it was a compromise reached after "months of negotiation." Exh. 358-2. Even if it was considered an "appropriate correction," it was not timely under the CLRA's time requirements which are strictly construed.

**2.**     **The Emissions Modification Option Was Not Available For Two (2) Years After the CLRA Notice For Most Vehicles**

The class action settlement proposed to offer eligible class members with an "Approved Emissions Modification Option," as well as varying amounts of restitution for some vehicle owners and lessees. Exh. 358-4; Exh. 358-Ex. 1-1. However, at the time the settlement agreement was entered into, the modification had not been approved and was not available.  Exh. 358-18-21. VW still needed to apply for and get it approved by the EPA and CARB. *Id.*  The settlement agreement projected the emissions modifications to be ready in 2017. Exh. 358-Ex. 1-6.  As discussed *infra* in Section H., the emissions "modification" was just that – a *modification*.  It was not a "cure" or "correction," and it did not "fix" the vehicles nor did it

---

[4] The class action settlement and release involving the 3.0 liter vehicles was signed and submitted to the Court at a later time on February 10, 2017 – almost a year and a half after the October 15, 2015 notice.

make the vehicles conform to the original certification standards that they were represented to comply with. CARB and the EPA had to actually change the standards (by raising the allowable emissions limits) so that the vehicles could be on the road. *See, e.g.*, Exh. 5467-11. Moreover, the emissions modification negatively affected numerous vehicle systems and performance in several ways.

### 3.   The Settlement Agreement Gave VW Some Discretion in Deciding Who Was Eligibile and How Much They Might Get

Class members had to go through five (5) steps to get relief under the class action settlement.  Exh. 358-26. In addition, the settlement also gave VW some discretion to determine who was eligible and how much each eligible person might get. *Id*.

### 4.   The Settlement Included a Broad Release and Other Conditions

The class action settlement had a broad release and waiver of claims, *see* Exh. 358-31-36, releasing Defendants of all claims (known or unknown), including future claims, that "were or could have been" asserted against them, *id*. at 31-32, 36, as well as all "economic damages, punitive damages, exemplary damages, . . . attorneys, expert, consultant or other ligitation fees or costs. . . ." *Id*. at 32.  The release also included a waiver of Cal. Civ. Code § 1542.  *Id*. at 33.  The settlement agreement further required each class member to sign an individual release and agree that it be "effective" even if the settlement agreement benefits were not ultimately provided or the agreement was changed or even "voided in whole or in part." *Id*. at 34.  *See also* Exh. 358-Ex. 5-2. The individual release also had other conditions, including a choice of law provision and a forum selection clause (mandating that any disagreement or action regarding it be decided in the United States District Court for the Northern District of California). Exh. 358-Ex. 5-2. The release also stated that each person had the right to consult an attorney before signing it, *id*. at Ex. 5-6, even though no attorneys' fees could be recovered by non-class counsel. Exh. 358-25.

### 5.   Punitive Damages, Attorney's Fees, and Costs Were Not Recoverable Under the Class Action Settlement Agreement

Although the class action settlement allowed for some amount of restitution to eligible persons in varying amounts, the settlement agreement did not allow persons participating in the settlement to recover: (a) punitive damages; (b) attorney's fees; or (c) costs, even though each of those remedies were recoverable under the CLRA and other laws.

15

1

2

F. **The Court Approved the Class Action Settlement As "Fair, Reasonable and Adequate" on October 25, 2016**

3

More than one (1) year after the CLRA notice letter was sent to Defendants, the class action settlement agreement was approved by this Court on October 25, 2016. Exh. 357. In its order approving the settlement, the Court noted that it was "[j]ust over one year ago" that "Volkswagen publicly admitted that it had secretly and deliberately installed a defeat device – software designed to cheat emissions tests and deceive federal and state regulators – in nearly 500,000 Volkswagen- and Audi-branded TDI diesel vehicles sold to American consumers." Exh. 357-1. The Court summarized the factual background of the case, stating in part:

> "Over the course of six years, Volkswagen sold nearly 500,000 Volkswagen- and Audi-branded TDI 'clean diesel' vehicles, which they marketed as being environmentally friendly, fuel efficient, and high performing. Consumers were unaware, however, that Volkswagen had secretly equipped these vehicles with a defeat device that allowed Volkswagen to evade United States Environmental Protection Agency ('EPA') and California Air Resources Board ('CARB') emissions test procedures. . . . It was only by using the defeat device that Volkswagen was able to obtain Certificates of Conformity from EPA and Executive Orders from CARB for its TDI diesel engine vehicles. In reality, these vehicles emit nitrogen oxides ('NOx') at a factor of up to 40 times over the permitted limit."

Exh. 357-2.

Regarding the procedural history, the Court noted:

> "On September 3, 2015, Volkswagen admitted to EPA and CARB that it had installed defeat devices on its model years 2009 through 2015 Volkswagen and Audi 2.0-liter diesel engine vehicles. The public learned of its admission on September 18, 2015, when the EPA issued a Notice of Violation ('NOV') that alleged Volkswagen's use of the defeat device violated provisions of the Clean Air Act. . . Two months later, EPA issued a second NOV to Volkswagen, . . . which alleged Volkswagen had installed in its 3.0-liter diesel engine vehicles a defeat device similar to the one in the September 18 NOV. CARB also sent a second letter concerning the same manner."

Exh. 358-2.

The Court further noted that the settlement agreement resolving the 2.0-liter TDI diesel vehicles had been reached "[a]fter five months of intensive negotiations." Exh. 358-1. It was agreed as part of the class action settlement that "Class Counsel [would] seek no more than $324 million" in attorneys' fees, "plus no more than $8.5 million" in costs. Exh. 357-2.

16

The Court's order set forth the terms of the broad release of claims as part of the settlement agreement, Exh. 357-2-3, and specifically noted that "Class Members also expressly waive and release any rights they may have under California Civil Code section 1542 or similar federal or state law."  Exh. 357-3.  Noting that "[t]he Ninth Circuit maintains 'a strong policy' that favors class action settlements[,]" Exh. 357-8 (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)), the Court approved the settlement as "fair, reasonable, and adequate." *Id*.

The Court's order recognized that the settlement was a compromise and that not every factor supported its approval.  *See* Exh. 358-15 ("Strength of Plaintiff's Case: The first *Churchill* factor does not favor settlement.").  Regarding the strength of the case, the Court's order stated: "Liability is not an issue: Volkswagen admits to installing and failing to disclose the defeat device in its TDI diesel engine vehicles, which it marketed as environmentally friendly." Exh. 357-16. The Court noted that the Plaintiffs were seeking "rescission, restitution, and compensatory damages[,]" and that "Plaintiffs have a high probability of successfully obtaining their sought-after remedies." Exh. 357-16.

Neither the class action settlement nor the order granting final approval noted that, at least with respect to those consumers in California with CLRA claims, such persons could also recover punitive damages, as well as attorney's fees and costs despite the strength of their claims.  The class settlement treated all consumers – regardless of which state they were from or which claims they were asserting or could assert – as the same.  While the settlement was "fair, adequate and reasonable" for purposes of Fed. R. Civ. P. 23, it was not an appropriate "correction" – let alone a timely one - under the CLRA.

**G.**   **After Opting Out of the Class, Defendants Did Not Make an Appropriate Correction to the Plaintiffs in This Case**

**1.**   **Defendants Did Not Offer an "Appropriate Correction" to Plaintiff Julia Robertson**

Plaintiff Julia Robertson opted out of the class on December 2, 2016. Exh. 119.  On July 11, 2017, a letter was sent to VW notifying them of their violations of the CLRA. Exh. 5457.  Ms. Robertson leased a 2013 Volkswagen Golf for $16,426. *Id*. The letter asked VW for all damages and remedies available under the CLRA and called for a response within 30 days.  *Id*.  Counsel for VW responded to Ms. Robertson's letter on July 20, 2017. Exh. 124.

17

In response, VW incorrectly stated that Ms. Robertson "did not opt out of the settlement" and had therefore "released any and all claims (whether known and unknown) in any way related to the 2.0-liter TDI matter" and stated that the Court's order granting final approval of the settlement "expressly prohibit[ed her] from commencing or maintaining any action against Volkswagen related to this matter." *Id.*   VW's response – which falsely stated that Ms. Robertson had not opted out and was barred from bringing a claim – was clearly not an appropriate correction.

### 2.   Defendants Did Not Offer an "Appropriate Correction" to Plaintiff Byron Clendenen

Plaintiff Byron Clendenen opted out of the class on April 14, 2017.  *See* Exh. 5441.  A letter notifying VW of their violation of the CLRA was sent on behalf of Mr. Clendenen on July 11, 2017.  Exh. 39.  He bought a 3.0-liter 2013 Volkswagen Touareg for $56,813. The letter requested all damages and remedies available to Mr. Clendenen under the CLRA.  *Id.*  VW's counsel sent a letter in response to Mr. Clendenen's letter on July 20, 2017.  Exh. 213.  VW did not offer a correction within 30 days or agree that it would do so.  Instead, the letter said that *VW "will be provided with an opportunity* [to] make the affected vehicles compliant with Government emissions to which they were originally certified." *Id.*

VW's letter expressly acknowledged that what it was calling a "*fix*" was not available at the time (and that VW did not know when, if ever, it would be available) as it was going to be "*subject to EPA/CARB approval*" and would be deemed a *vehicle recall only*." *Id.*  (emphasis added).  In other words, the emissions modification was going to be offered as part of a vehicle recall – and was something that was available to all consumers regardless of the class action settlement.  The letter also said that "the owners of the affected vehicles w[ould] be contacted in the coming weeks." *Id.*  He was never contacted.

Months later, in letter simply dated "October 2017," VW sent a letter directly to Mr. Clendenen (not to his counsel) notifying him that "an emissions modification [wa]s now available" for his vehicle. Exh. 214.  The letter was not sent as part of a response to his CLRA letter.  Rather, it was a form letter to all affected consumers as part of VW's recall process.  *Id.*  VW's response was neither timely nor an appropriate correction under the CLRA. Thus, the affirmative defense to damages to does apply to his CLRA claim.

### 3. Defendants Did Not Offer An "Appropriate Correction" to Plaintiffs Kenneth and Maria Coon

Plaintiffs Ken and Maria Coon opted out of the class action on April 13, 2017. Exh. 5437. A letter was sent on behalf of Mr. and Mrs. Coon to VW notifying them of their violation of the CLRA on July 7, 2017. Exh. 5458. They purchased a 2014 Audi A6 3.0-liter TDI diesel vehicle for $77,957.11. *Id.* VW's counsel sent a letter in response on July 20, 2017. VW's response to Mr. and Mrs. Coon's letter was the substantively same as its response to the letter sent on behalf of Mr. Clendenen. The letter said that *Audi was going to be "provided with an opportunity* [to] make the affected vehicles" compliant with the government standards "to which they were originally certified." *Id.* (emphasis added). That, of course, never happened but underscores that VW initially believed that making the vehicles compliant with the original standards was something that was necessary and appropriate (and was something they were never able to do).

The letter stated that this supposed "fix" to conform the vehicles to their original certification would be "deemed a vehicle recall only" and had to be "subject to EPA/CARB approval" which had not yet happened. *Id.* Despite stating that they would be "contacted in the coming weeks," *id.*, the Coons never heard anything until December 2017. In a form Audi letter dated "December 2017," more than two (2) years after the original CLRA notice of violation and more than a year after the class action settlement was approved, which sent directly to Mr. and Mrs. Coon, Audi stated that "an emissions modification [wa]s now available" for their vehicle. *Id.* The letter also referenced a "booklet" regarding the emissions modification. *Id.* The Audi letter was not sent as part of a response to their CLRA notice. Rather, it was sent as part of Audi's recall process. *Id.* VW's response to Mr. and Mrs. Coon's CLRA notice was neither timely nor appropriate.

### 4. Defendants Did Not Offer An "Appropriate Correction" to Plaintiffs Richard and Virginia Ortiz

Plaintiffs Richard and Virginia Ortiz opted out of the class on September 15, 2016. Exh. 5435. A letter notifying VW of their violations of the CLRA was sent on behalf of Mr. and Mrs. Ortiz on July 14, 2017. Exh. 5461. They paid $17,263.25 to lease a 2014 Volkswagen Passat TDI which they later bought for $18,029.30. *Id.* The notice asked for all remedies available to them under the CLRA. *Id.*

19

---

1   VW never responded to the July 14, 2017 letter sent on behalf of Mr. and Mrs. Ortiz.  Thus, it is

2   impossible to say that VW offered Mr. and Mrs. Ortiz an appropriate correction in response to their CLRA

3   notice.

4          **5.      Defendants Did Not Offer An "Appropriate Correction" to Plaintiffs Luke and**

5                  **Kathryn Sanwick**

6          Plaintiffs Luke and Kathryn Sanwick opted out of the class on April 10, 2017.  Exh. 5442.  A letter

7   notifying VW of its violation of the CLRA was sent on behalf of Mr. and Mrs. Sanwick on April 19, 2017.

8   Exh. 27.  They bought a 2013 Audi Q7 3.0-liter TDI vehicle for $71,151.60.  *Id*. The letter requested all

9   remedies available to them under the CLRA. *Id*.  On May 24, 2017 – 35 days after their April 19, 2017

10  CLRA notice, VW's counsel sent a letter responding to the April 19 letter sent on behalf of Mr. and Mrs.

11  Sanwick.  Exh. 5456.  In addition to being untimely, the letter did not offer an appropriate correction.

12  Rather, it simply told the Sanwicks (who had already opted out of the class) that they could be part of the

13  class that the class action settlement offered them everything they might be entitled to (even though it did

14  not). *Id*.

15         **6.      Defendants Did Not Offer An "Appropriate Correction" to Plaintiff Scott**

16                 **Salzer**

17         Plaintiff Scott Salzer opted out of the class on December 5, 2016.  Exh. 5436. A CLRA letter was

18  sent on his behalf to VW, notifying them of their violations of the CLRA, on June 6, 2017. Exh. 5460.  The

19  letter requested all remedies available to him under the CLRA in connection with his purchase of a 2010

20  Volkswagen Jetta for $25,672.20.  VW never responded to his CLRA notice letter.  Thus, it cannot be said

21  that VW offered Mr. Salzer an appropriate or timely correction in response to his CLRA notice letter.

22         **H.      The "Emissions Modification" Did Not "Correct," "Fix," or Make the Vehicles to**

23                 **Conform to the Original Certification Standards They Were Represented to Meet**

24         The "emissions modification" which was stated to be an "option" under the class action settlement

25  agreement was actually offered to all consumers as part of a vehicle recall.  Exh. 57-4 ("You can . . . receive

26  the approved emissions modification as part of this recall.").  The emissions "modification" did not "fix"

27  or "correct" the vehicles' emissions control systems.

28

_____
TRIAL BRIEF BY PLAINTIFFS RE DEFENDANTS' "CORRECTION" DEFENSE TO THE
CLRA CLAIM FOR DAMAGES

Rather, following negotiations between VW, the EPA and CARB, the government regulators had to actually change the *standards* so that the vehicles could be modified and allowed to be legally driven and sold. VW admits that the vehicles were "originally certified to EPA and CARB emission standards" and, "[a]fter the modification, [the] vehicle's emissions will be reduced but will *still be higher* than the emission standard to which it was originally certified." Exh. 5319-9 (emphasis added); *accord* Exh. 57-3.

The emissions modification involved changing (or "reflashing") the software in the Engine Control Unit ("ECU") of the TDI vehicles to remove the software with the defect device. Exh. 5319-5. *See also* Exh. 57-2. It also included the replacement of several hardware parts, including the NOx Reduction Catalyst, Diesel Particulate Filter ("DPF") and other parts in some vehicles. Exh. 5319-6. VW knew that drivers were likely to "notice some differences in vehicle operating characteristics after the modification." Exh. 5319-6. For example, VW acknowledged that the "new software and hardware will affect" vehicles in several ways, including:

- "Engine sound will differ from [the] vehicle's prior operation" with "increased noise from the engine that is most noticeable at midrange engine speeds, specifically during moderate acceleration." Exh. 5319-7.

- "Frequency and occurrence of special engine operating modes (such as when and how the diesel particulate filter regenerates)." Exh. 57-2.

- "Drive Mode Changes – While driving in normal Drive model, the automatic transmission will shift at slightly higher engine speeds." Exh. 57-2.

- "Sport Mode Changes – While driving in Sport mode, the automatic transmission will shift earlier at low accelerator positions." Exh. 57-2.

- "Vehicle Drivability – There will be minor changes in engine torque while transitioning between operating modes." Exh. 5319-7. *See also* Exh. 57-2.

- "Decreased fuel economy – Your vehicle's fuel economy will decrease by up to 2 mpg, depending on driving style and habits." Exh. 5319-7. *See also* Exhs. 5322, 5321, 5324, 57-2.

- "On-board diagnostic (OBD) system changes," including the fact that the OBD was to be "modified and certain emission thresholds within the OBD system" were to be adjusted to "set new malfunction detection limits" which "may reduce the effectiveness of the OBD system in detecting malfunctions" and might result in the vehicle not passing a smog check. Exh. 5319-8.

21

- "Deisel exhaust fluid (DEF, also known as AdBlue®) consumption for [the] vehicle will increase. The consumption will go from 0.12 gal/1000 mi on average to between 0.18 and 0.28 gal/1000 mi on average . . ., representing an increase of 50% to 130%. . . . As a result, [the] vehicle will require more frequent filling, possibly even between service cycles." Exh. 57-3.

After the modification, there have been many reports of vehicles that "have experienced an issue when driving at high speeds (typically over 80 miles per hour) for fifteen minutes or longer" (which "need not be continuous and may accumulate over multiple consecutive trips") where the Malfunction Indicator Light will illuminate. Exh. 381-44. "If a vehicle that has received the AEM continues to be driven with this MIL illuminated, the vehicle will enter into an 'inducement,' which may render the vehicle inoperable if it is not promptly taken to a dealer after the MIL is illuminated." *Id*. at 45.

Where an offer "neither fixes the defect nor offers Plaintiffs all the relief they seek," it is not an "appropriate correction." *In re MacBook Keyboard Litig*., 2019 WL 6465285, *10 (Dec. 2, 2019). *See also Luong v. Subaru of America, Inc*., 2018 WL 2047646, *6 (N.D. Cal. May 2, 2018). In *In re MacBook Keyboard Litigation*, the plaintiffs claimed that certain Apple laptop computers had defectively designed keyboards. *In re MacBook Keyboard Litig*., 2019 WL 6465285, *10.  In that case, the plaintiffs brought several claims against Apple, including for violation of the CLRA. *Id*.  Apple sought dismissal of the plaintiffs' CLRA claim for damages, arguing that the plaintiffs could not recover damages because Apple "offered an appropriate correction, repair, replacement, or other remedy of the goods and services' under Cal. Civ. Code § 1782(c). *Id*. at *9.

Apple claimed that it satisfied its obligations by offering "correction, repair, replacement, or other remedy of the goods.'" *Id*. at *9.  It argued that the program it offered was "an appropriate remedy under the CLRA because [the Plaintiffs could] have their keyboards fixed free of charge and/or receive a refund for repair expenses if [they] paid to have their keyboards repaired." *Id*.  The court held that the offer could not preclude the plaintiff's claim for damages under the CLRA because the plaintiffs "dispute[d] the *effectiveness* of the program," and claimed that the supposed correction did not "fix the defect." *Id*. at *10 (citing *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Prac. & Prods. Liab. Litig*., 890 F.Supp.2d 1210, 1218 (C.D. Cal. 2011) (finding defendant's recall program was not an appropriate correction where the plaintiffs contended that the program did not "cure" the defect).

22

Similarly, in *Luong v. Subaru of America, Inc*., 2018 WL 2047646, *6 (N.D. Cal. May 2, 2018), the plaintiffs brought claims against Subaru for violations of the CLRA. *Id*. at *1. The plaintiffs alleged that certain Subaru Outback and Legacy vehicles were designed with defective windshields and that Subaru knew about the problem and concealed it from consumers. Subaru sought dismissal of the plaintiff's CLRA claim for damages. Subaru argued that the plaintiff's CLRA claim should be dismissed because it claimed that it had "already made a timely and appropriate correction offer long before th[e] action" was filed by implementing a comprehensive program." *Id*. at *6. Rejecting this argument, the court emphasized that Subaru's argument failed to acknowledge that what was offered by Subara would not constitute an appropriate correction if it did not fully correct the defect. *Id*. As explained by the *Luong* court, "[b]ecause [the] plaintiffs contest[ed] whether Subaru's program actually *cured* the defect of which they complain, the [] program does not moot their claim." *Id*. (citing *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Prac. & Prod. Liab. Litig*., 890 F.Supp.2d 1210, 1218 (C.D. Cal. 2011).

The same rationale applies here. The emissions modification did not "cure" or "fix" the defect. It was not a "correction." The "AEM" was a "*modification*" – a change – to the software which involved removing the defeat device software. Following the modification, the defect was not "cured." The vehicle was never corrected to be brought to its originally represented condition. CARB and EPA actually lowered their standards to allow the vehicles to be complaint. Moreover, far from restoring the vehicles to what they were originally represented and certified to be, the modification has resulted in substantial changes impairing the vehicle's performance and attributes. Thus, while a necessary step towards preventing the vehicle's from polluting as much as they were as a result of the illegal defeat device, the "AEM" does not constitute an "appropriate correction" under the CLRA.

I.   **The Class Action Settlement Had Extensive Conditions, Including a Broad Release of All Claims – Which An Appropriate Correction Cannot Have Under California Law**

A defendant's settlement offer which includes numerous conditions, including a broad release of claims, is not an appropriate correction under the CLRA. *Valdez v. Seidner-Miller, Inc*., 33 Cal.App.5th 600, 611 (2019). In *Valdez*, the Court of Appeal argeed with the plaintiff's contention that, "by conditioning relief on release of claims not subject to the CLRA's notice requirements and on compliance with other settlement terms," the defendant's "offer was not an appropriate correction offer." *Id*.

23

Similar to the release in the class action settlement and individual release that any participating class member who accepted the settlement was required to sign, the settlement offer in *Valdez* which the defendant claimed was an "appropriate correction" had a broad release of all claims and its acceptance would have had the effect of precluding the CLRA *and* all other claims. *Id.*  The Court of Appeal held that, because of this, it was not an appropriate correction.  *Id.* Here, as discussed in Section E.4. *supra*, it is beyond any legitimate dispute that the class action settlement had a broad release of claims, which would have had the effect of precluding the CLRA and all other claims if it was accepted.

J.    **The Class Action Settlement Agreement Required Plaintiffs To Release Claims For Remedies Available To Them In This Case, Including Damages, Punitive Damages, Attorneys' Fees**

An offer that requires a consumer waive all the remedies available in connection with all claims to them is not an "appropriate correction." *Valdez*, 33 Cal.App.5th at 602.  *Valdez* involved arguments by a defendant which are very similar to those made by VW in this case.  In *Valdez*, the plaintiff leased a Toyota from a car dealership.  *Id.* at 602. The plaintiff alleged that the vehicle had defects which the defendant had fraudulently concealed and asserted a claim for violation of the CLRA.  The Court of Appeal rejected the defendant's argument and reversed the decision of the trial court, explaining:

> "Where a business conditions its offer to remedy a violation of the CLRA on the consumer waiving his or her right to . . . remedies under other statutes and common law, the offer is not an appropriate correction offer as contemplated by section 1782, subdivision (b), and does not bar a lawsuit by the consumer."

*Id.* at 602.

The *Valdez* court emphasized that "[t]he Legislature enacted the CLRA 'to protect consumers against unfair and deceptive business practices . . . and '[t]o promote' these purposes, the Legislature directed that the CLRA 'be liberally construed and applied.' *Id.* at 609 (quoting *McGill v. Citibank, N.A.*, 2 Cal.5th 945, 954 (2017)) (italics added). Punitive damages are an available remedy in this case.  In Phase Two of the jury trial, the jury will decide whether punitive damages are justified and the amount of punitive damages.  Likewise, attorneys' fees and costs are also recoverable in this case.  Class members who participated in the settlement who were represented by non-class counsel were not allowed to recover their attorney's fees and costs.  Exh. 5447.

_____
TRIAL BRIEF BY PLAINTIFFS RE DEFENDANTS' "CORRECTION" DEFENSE TO THE CLRA CLAIM FOR DAMAGES

However, class members who opted out and later settled or resolved their claims with Defendants have been able to recover their attorneys' fees and costs (and have also recovered substantially more than they would recovered from the class settlement, e.g., one opt out plaintiff got a judgment for $39,587.80 plus attorneys' fees and costs, another opt-out plaintiff couple got a judgment for $34,179 plus their reasonable attorneys' fees and costs).  Exhs. 5445, 5446, 5443, 5444.

**K.**   **The Class Action Settlement Gave the VW Discretion to Determine the Relief and Enforce The Release Even If the Terms Changed And the Agreement Was Voided**

An offer which gives the defendant the ability to determine what relief the plaintiff might be eligible for or eventually get based on criteria that they have a role in determining or setting (and which is out of the consumer's control) is not an appropriate correction.  *Valdez*, 33 Cal.App.5th, at 615-16.  The settlement agreement which the defendant claimed was an appropriate correction allowed the defendant to get out of providing the plaintiff with relief if it determined that the plaintiff did not meet its eligibility criteria.  *Id.* According to *Valdez*, "conditioning CLRA remedies on [a defendant's] subjective determination" is "not an appropriate correction offer." *Id.* at 616.

VW negotiated with class counsel the amounts that eligible participants would get in restitution under the class settlement.  VW was also involved in determining who was eligible to participate in the settlement and how much they might get.  VW had a person involved in the Claims Review Committee to make decisions where there was a dispute or question regarding how much a person might get under the settlement.  VW also set criteria whereby certain consumers (e.g., 3.0-liter vehicle owners and lessees) would not be eligible for a buyback or restitution (and could only get the same AEM that was available to everyone as part of the recall).

Thus, while not identical, the same rationale and result of *Valdez* applies here.  Similar to the proposal in *Valdez*, the class action settlement agreement in this case proposed providing Plaintiffs with remedies that were subject to determinations by VW.  Here, as in *Valdez*, the class action settlement might have been fair and reasonable for purposes of final approval for the class claims, but it was not an "appropriate correction" for purposes of the opt-out Plaintiffs' individual claims in this case.  Thus, the affirmative defense to Plaintiffs' CLRA claim for damages does not apply in this case.

_____
TRIAL BRIEF BY PLAINTIFFS RE DEFENDANTS' "CORRECTION" DEFENSE TO THE CLRA CLAIM FOR DAMAGES

IV.     **CONCLUSION**

Based on the applicable legal standard, the evidence presented, and consistent with the consumer protection purpose of the CLRA, Plaintiffs respectfully request that the Court find that Defendants have not carried their burden of establishing the elements of the "appropriate correction" affirmative defense, and allow Plaintiffs' CLRA claim (a law that that Defendants admit they intentionally violated) for damages to be decided by the jury in this case.

Respectfully submitted,

Dated: February 23, 2020                    KNIGHT LAW GROUP

By:

Scot D. Wilson
Attorneys for Plaintiffs

_____
TRIAL BRIEF BY PLAINTIFFS RE DEFENDANTS' "CORRECTION" DEFENSE TO THE
CLRA CLAIM FOR DAMAGES