# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

February 28, 2020

Via ECF

The Honorable Charles R. Breyer,
　United States District Court for the Northern District of California,
　　450 Golden Gate Avenue, Courtroom 6, 17th Floor,
　　　San Francisco, CA  94102.

　　　　Re:　*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 3:15-md-2672-CRB

Dear Judge Breyer:

　　　　On behalf of Defendants Volkswagen AG and Volkswagen Group of America, Inc. ("Defendants"), I write regarding a number of misstatements made yesterday by Plaintiffs' counsel, both to the Court and also in front of the jury.

　　　　*First*, Ms. Ungs argued yesterday that Professor Bresnahan had secretly included undisclosed *post-fix* data in the regression analysis to which he testified yesterday, stating that Professor Bresnahan "went into this whole new line of opinions about analyzing the market post availability of the fix," and Plaintiffs objected that it was "beyond the scope of his expert opinion." (2/27/20 Rough Trial Tr. at 232:6-14.)  Mr. Altman even stated in front of the jury that Professor Bresnahan's opinions regarding sales following the approval of the fix exceeded the scope of his disclosed opinions. (2/27/20 Rough Trial Tr. at 161:4-6.)  Ms. Ungs' and Mr. Altman's statements were completely false.  Professor Bresnahan disclosed these opinion in his December 23, 2019 report. (Bresnahan Report ¶¶ 48-49 ("I find statistically insignificant estimates of excess diminution *after the announcement of the Fix*, indicating that there is no excess decline in the value of the at-issue vehicles *after the Fix was announced* compared to the value of the at-issue vehicles before the disclosure of

Hon. Charles R. Breyer                                                                                          -2-

the Defeat Software.").) Plaintiffs have had Professor Bresnahan's report since December and his slides since last Friday, February 21. Counsel's baseless suggestion, including in front of the jury, that Professor Bresnahan is presenting new, undisclosed opinions that are outside the scope of Professor Bresnahan's expert report was false and highly and unfairly prejudicial. No curative instruction excluding any portion of Professor Bresnahan's testimony is appropriate.

*Second*, Ms. Ungs also falsely stated that the end date for the regression analysis to which Professor Bresnahan testified yesterday included post-fix market sales. (2/27/20 Rough Trial Tr. at 244:19-245:2.) As Plaintiffs' counsel knows, the regression analysis to which Professor Bresnahan testified used market sales data that ended on the date the EPA and CARB approved the fix for the relevant vehicle. This is consistent with Professor Bresnahan's report, in which he disclosed (in no uncertain terms) that "[f]or each Plaintiff, I estimate the regression using all used transactions of the relevant model and model year from the first observed used sale *until the date on which the Fix became available* for the particular model and model year." (Bresnahan Report ¶ 37.) Further, all of the PIN data Professor Bresnahan relied on for this analysis is included in Exhibit 637-C – and was fully disclosed to Plaintiffs on January 13, 2020.

Nevertheless, Ms. Ungs showed the Court a *separate* and *different* set of PIN data located in Exhibit 637-B (the same data disclosed in Exhibit 2A to Professor Bresnahan's report, and which was also fully disclosed to Plaintiffs on January 13, 2020), which she claimed was the basis for Mr. Bresnahan's regression analysis. (2/27/20 Rough Trial Tr. at 237:1-2.) That was false. The dataset Ms. Ungs displayed, which lists 2.0 Liter Gen 1 VW TDI sales in California from September 2015 to November 2018, is *not* the same dataset used for Professor Bresnahan's regression analysis. That separate dataset supports Professor Bresnahan's opinion that there was always a market for TDI vehicles, not his separate opinion calculating damages to Plaintiffs using a regression analysis. (2/27/20 Rough Trial Tr. at 208:11-16, 264:4-13.)

Hon. Charles R. Breyer                                                                                                          -3-

*Third*, during cross-examination of Professor Bresnahan, Mr. Altman falsely stated that Professor Bresnahan had failed to produce the J.D. Power PIN data on which he relied to reach his opinions (Ex. 637), either at his deposition or thereafter. (2/27/20 Rough Trial Tr. at 204:16-25.)  As a preliminary matter, Professor Bresnahan was never asked to bring the underlying, voluminous and publicly available PIN data to his deposition.  (*See* Jan. 2, 2020 Notice of Deposition and Subpoena requesting production of "[a]ll documents that relate to compensation for the expert's study or testimony").)  Mr. Altman's suggestion that Professor Bresnahan had failed to meet some disclosure obligation was false.  Even worse, Defendants did in fact provide all of the underlying PIN data to the Plaintiffs.  My colleague emailed all of the PIN data to Plaintiffs in a production of trial exhibits on January 13, 2020.  And, in fact, Plaintiffs objected to the PIN data the following week, on January 20, 2020.  And even prior to this disclosure, the source for all of the data, which is equally available to Plaintiffs, was disclosed to Plaintiffs in Professor Bresnahan's expert report, served on December 23, 2019.  (Bresnahan Report, Exs. 2A-E, 3A-E, 5.)

*Fourth*, with respect to the binder of that same PIN data used in Court (Ex. 637), Ms. Ungs told the Court that "waving a large binder of inches of data that was not relevant to [Professor Bresnahan's] opinion to suggest that he used more data than he did to come to his opinions is prejudicial to the plaintiff."  (2/27/20 Rough Trial Tr. at 49:7-14.)  That statement, too, was false.  Professor Bresnahan used the data in that binder *either* (1) to reach the conclusion in his expert report that there always was a market for TDI cars, including after public awareness of the defeat device, or (2) to arrive at the regression-based damages calculations disclosed in his expert report.  Thus, the PIN data included in Exhibit 637 was relevant to the opinions disclosed in his report—and, as noted above, fully produced to Plaintiffs on January 13, 2020.

*Fifth*, following opening statements, Mr. Altman stated that I had said during opening arguments (with respect to the EPA- and CARB-approved fixes) that

Hon. Charles R. Breyer                                                                                                    -4-

"everyone was satisfied," and "there were no other complaints." (2/27/20 Rough Trial Tr. at 44:5-8.) That was false. I never made such a statement during opening arguments, and the Court correctly admonished Mr. Altman: "I think it's important if you're going to quote counsel on either side, it's important to be accurate." (2/27/20 Rough Trial Tr. at 45:1-2.) Although Professor Bresnahan's testimony yesterday referenced the fix (consistent with the opinions in his expert report), it only considered the fact that there was a fix available *for market-valuation purposes*, not for any sort of engineering opinion or to suggest that "everyone was satisfied" and no one ever complained. (See 2/27/20 Rough Trial Tr. at 161:16-162:1.)

*Sixth*, Ms. Ungs claimed that she did not have notice that Defendants intended to offer Exhibit 309 into evidence. (2/27/20 Rough Trial Tr. at 52:19-20.) And Mr. Altman went one step further, telling the Court that Exhibit 309 had not been produced to Plaintiffs. (2/27/20 Rough Trial Tr. at 100:22.) Both statements were false. In fact, not only was Exhibit 309 (a document produced to Defendants *by Plaintiffs*) included on Defendants' exhibit list (without any objection from Plaintiffs), my colleague emailed Ms. Ungs on Monday evening to inform her that Defendants intended to introduce Exhibit 309 into evidence as part of Professor Bresnahan's testimony (then expected for Tuesday). And, again, Plaintiffs did not object to the introduction of Exhibit 309. Any objection by Plaintiffs to Exhibit 309 has been waived, but moreover, Mr. Altman's and Ms. Ungs's statement to the Court was false.

*Seventh*, Mr. Altman attempted to elicit testimony from Professor Bresnahan, again in front of the jury, related to Defendants' buyback offers to owners of TDI vehicles through the class settlements. (2/27/20 Rough Trial Tr. at 202:19-20.) Mr. Altman asked this question, even though Plaintiffs previously sought to exclude evidence of these settlements in their Motion *in Limine* No. 3, on the purported basis that the settlements had no relevance to Plaintiffs' alleged damages. (ECF No. 7023 at 3.) If Plaintiffs now want to reverse course and introduce evidence of the interrelated class and

Hon. Charles R. Breyer                                                                                                  -5-

government settlements, including the more than 99% acceptance rate for the class action settlements, Defendants are prepared to introduce substantial evidence during this phase of trial on the settlements.

                                                                         Respectfully,

                                                                       *Robert J. Giuffra, Jr.*
                                                                         Robert J. Giuffra, Jr.

cc:  Plaintiffs' counsel (via ECF)