UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION _____/ This Order Relates To: Dkt. Nos. 6903 & 6904 _____/ | MDL No. 2672 CRB  (JSC) **ORDER AWARDING FEES AND COSTS** |

Garry Johnston and Jean Paul and Marie Walker (collectively, "Plaintiffs") opted out of the class action settlements that resolved most civil actions against Volkswagen AG and Volkswagen Group of America. Plaintiffs later accepted Volkswagen's Rule 68 offers. Those offers allowed Plaintiffs to seek reasonable attorneys' fees and costs, which they have now done. Johnston is awarded Johnston $22,234.50 in fees and $635.46 in costs, and the Walkers are awarded $19,540.50 in fees and $584.85 in costs. No hearing is necessary to resolve this matter.

**I.    BACKGROUND**

This Court has previously described the events that are the basis for Plaintiffs' claims:

> Over the course of six years, Volkswagen sold nearly 500,000 Volkswagen– and Audi-branded TDI "clean diesel" vehicles, which they marketed as being environmentally friendly, fuel efficient, and high performing. Consumers were unaware, however, that Volkswagen had secretly equipped these vehicles with a defeat device that allowed Volkswagen to evade United States Environmental Protection Agency ("EPA") and California Air Resources Board ("CARB") emissions test procedures. Specifically, the defeat device produces regulation-compliant results when it senses the vehicle is undergoing testing, but operates a less effective emissions control system when the vehicle is driven under normal circumstances. It was only by using the defeat device that

> Volkswagen was able to obtain Certificates of Conformity from EPA and Executive Orders from CARB for its TDI diesel engine vehicles. In reality, these vehicles emit nitrogen oxides ("NOx") at a factor of up to 40 times over the permitted limit.

In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig., No. 15-md-02672-CRB (JSC), 2016 WL 6248426, at *1 (N.D. Cal. Oct. 25, 2016). The scandal led to numerous government actions and over a thousand civil lawsuits, which were consolidated before this Court by the Judicial Panel on Multidistrict Litigation. Id. at *2. The bulk of the civil actions were resolved in two settlements (one concerning 2.0-liter TDI vehicles and another for 3.0-liter TDI vehicles) approved by this Court. See generally In re: Volkswagen, 2016 WL 6248426; 3.0-Liter Class Action Settlement Approval Order (dkt. 3229).

Plaintiffs opted out of the Class Settlements. Johnston Turnage Decl. (dkt. 6903-1) ¶ 16; Walker Turnage Decl. (dkt. 6904-1) ¶ 16. They sued Volkswagen in California Superior Court in 2016. Johnston Turnage Decl. ¶ 13; Walker Turnage Decl. ¶ 13. Volkswagen removed the cases to this Court, and Plaintiffs' subsequent motions to remand were denied. Johnston Turnage Decl. ¶ 13–14; Walker Turnage Decl. ¶ 13–14; see also Order Denying Remand (dkt. 5906). In September 2019, Plaintiffs filed First Amended Complaints, which included claims under the Song-Beverly Act and California Consumers Legal Remedies Act. Johnston FAC (dkt. 6733) at 1; Walker FAC (dkt. 6734) at 1.

The following month, Volkswagen served Plaintiffs with Rule 68 offers: $39,587.80 for Johnston, Johnston Offer of Judgment (dkt. 6804-1), and $34,179 for the Walkers, Walker Offer of Judgment (dkt. 6803-1). The offers allow Plaintiffs to keep their cars, which Volkswagen agreed to repair at no cost. Johnston Fee Mot. (dkt. 6903) at 1; Walker Fee Mot. (dkt. 6904) at 1. They also allowed Plaintiffs to seek reasonable fees and costs, to be determined by the Court. Johnston Offer of Judgment; Walker Offer of Judgment.

Johnston now seeks $63,128 in fees and $1,113.17 in costs. Reply (dkt. 7012) at 15. The Walkers seek $69,592 in fees and $633.55 in costs. Id. Volkswagen believes both Plaintiffs' requests should be reduced as to both fees and costs. Opp'n (Johnston[1] dkt. 10) at 25.

---

[1] Volkswagen's omnibus opposition to both motions was filed on the docket for Johnston's case, No. 16-cv-03752-CRB.

United States District Court
Northern District of California

## II. LEGAL STANDARD

Federal courts sitting in diversity apply state law to determine a party's entitlement to costs and attorneys' fees. Mangold v. Cal. Pub. Util. Comm'n, 67 F.3d 1470, 1478 (9th Cir. 1995). The Song-Beverly Act provides that a prevailing plaintiff may recover "a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." Cal. Civ. Code § 1794(d). The CLRA similarly directs that a prevailing plaintiff be awarded costs and attorneys' fees. Id. § 1780(e). Volkswagen does not contest that Plaintiffs prevailed under these statutes and are therefore entitled to reasonable fees and costs.

California courts calculate attorneys' fees pursuant to the lodestar method, which "first calculates the number of hours reasonably spent multiplied by the reasonable hourly rate for each billing professional, and then . . . adjust[s] the amount based on various relevant factors to ensure the fee reflects the fair market value of the attorney services for the particular action." K.I. v. Wagner, 225 Cal. App. 4th 1412, 1425 (Cal. Ct. App. 2014) (internal quotation marks and alterations omitted). It is the prevailing party's burden to show that the fees it seeks are reasonable. Nightingale v. Hyundai Motor Am., 31 Cal. App. 4th 99, 104 (Cal. Ct. App. 1994).

## III. DISCUSSION

The parties dispute the reasonable hourly rate for virtually all attorneys and non-attorney staff who worked on Plaintiffs' cases, whether an upward adjustment to the lodestar amount is appropriate, and what claimed hours and costs were reasonably expended.

### A. Hourly Rates

To show that the requested rates for their counsel are reasonable, Plaintiffs must "produc[e] satisfactory evidence that [they] are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." Obrien v. FCA US LLC, No. 17-cv-04042-JCS, 2019 WL 5295066, at *5 (N.D. Cal. Oct. 18, 2019) (citing Jordan v. Mulnomah Cty., 815 F.2d 1258, 1263 (9th Cir. 1987). The relevant legal community is the forum

3

district. Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992). Affidavits from comparably qualified practitioners in the same forum, decisions of other courts, and the Court's own experience are all appropriate guideposts for determining reasonable rates. Obrien, 2019 WL 5295066, at *5.

### 1. Abbas Kazerounian.

Plaintiffs' requested rate for Kazerounian is $710 an hour.[2] Johnson Fee Mot. at 7. Kazerounian graduated from California Western School of Law in 2007, has practiced consumer law for twelve years, and is a principal at his law firm. Johnston Turnage Decl ¶ 21. Volkswagen contests the reasonableness of Kazerounian's requested hourly rate and suggests that it be reduced to $450 an hour. Opp'n at 20.

Plaintiffs fail to show that the requested hourly rate for Kazerounian is reasonable. Their own survey of other consumer law litigators (many of whom have practiced many more years than Kazerounian and none of whom practice primarily in the San Francisco Bay Area) does not identify a single lawyer with as high an hourly rate. See Johnston Fee Mot. at 9. Plaintiffs attempt to justify the upward departure by pointing out that rates are higher in San Francisco than other parts of the country and listing some of Kazerounian's more impressive resume highlights. See Reply at 9–10. They also state that the requested rate was approved by courts in Florida and Ohio. Id. at 10. None of this establishes a reasonable rate for an attorney with comparable credentials in the Northern District of California.

But recent decisions from this district do suggest a reasonable rate for Kazerounian. Several decisions have held that $500 an hour was a reasonable rate for Steve Mikhov, a partner at the Knight Law Firm who specializes in consumer law and was admitted to the California Bar in 2003. See, e.g. Bratton v. FCA US LLC, No. 17-cv-01458, 2018 WL 5270581, at *4–5 (N.D. Cal. Oct. 22, 2018); see also Obrien, 2019 WL 5295066, at *5. Given Mikhov's similar qualifications, and based on its own experience, the Court finds that $500 an hour is a reasonable rate for

---

[2] Plaintiffs' reply states that the requested rate for Kazerounian is $705 an hour. Reply at 10. The discrepancy is both unexplained and irrelevant, since, as explained below, neither rate is reasonable.

4

Kazerounian as well.

### 2. Ellen Turnage.

Plaintiffs initially requested a rate of $400 an hour for Turnage, which Volkswagen did not oppose. Johnson Fee Mot. at 7; Opp'n at 19–20. Turnage graduated from the University of San Diego School of Law in 1995. Johnston Turnage Decl. ¶ 20. A rate of $400 an hour appears eminently reasonable compared with rates approved for attorneys with comparable or lesser experience in this district. See, e.g. Obrien, 2019 WL 5295066, at *6 (finding $400 an hour a reasonable rate for a Knight Law Group associate admitted to practice law in 2003).

In their reply, Plaintiffs request that the Court "increase [Turnage's] hourly fee rate to $600 an hour." Reply at 14. Plaintiffs' request for a higher rate is rejected because it is waived. See United States v. Patterson, 230 F.3d 1168, 1172 n.3 (9th Cir. 2000).

### 3. Sara Khosroabadi.

The requested rate for Khosroabadi is $295 an hour. See Johnston Fees Report (dkt. 6903-2) at 7. Volkswagen suggests reducing this rate to nothing, or in the alternative $200 an hour, because Plaintiffs initially failed to provide any information regarding Khosroabadi's experience or credentials. Opp'n at 21 & n.16. Plaintiffs have since submitted evidence that Khosroabadi was admitted to practice in California in 2014 and that other courts in California have approved her requested rate of $295 an hour. Khosroabadi Decl. (dkt. 7012-2) ¶¶ 8, 14–15. Because that rate is in line with those approved by other Northern District of California decisions for attorneys with comparable experience, Khosroabadi's requested rate is approved. See, e.g. Obrien, 2019 WL 5295066, at *5 (finding $325 an hour a reasonable rate for a lawyer admitted to practice law in 2016).

### 4. Anthony Chester.

As with Khosroabadi, Plaintiffs initially provided no evidence of Chester's experience or qualifications. Volkswagen argues his rate should therefore be reduced to nothing. Opp'n at 21. Plaintiffs do not disagree; their reply agrees to remove his hours from their requests for fees. See Reply at 15.

### 5. Non-attorney staff.

Plaintiffs seek fees for the work of various non-attorney staff, at rates ranging from $125 to $200 an hour. See Johnston Fees Report at 2, 8–10. Volkswagen requests that the requested rates for non-attorney staff be reduced to $75 an hour. Opp'n at 21–22. It bases this suggestion on a recent Northern District of California decision approving a requested rate of $75 for a paralegal who had worked for the plaintiffs' firm for two years. See Base v. FCA US LCC, No. 17-cv-01532-JCS, 2019 WL 4674368, at *5 (N.D. Cal. Sept. 25, 2019).

But approving a $75 an hour rate for a single paralegal hardly establishes that rate as the norm for paralegals in this area. Assessing a reasonable rate is made yet more difficult by the fact that Plaintiffs provide no information about non-attorney staff members' experience or qualifications, and sometimes request different rates for the same employee. Compare Walker Fees Report (dkt. 6904-2) at 8 (requested rate of $125 an hour for Ronza Lien), with Johnston Fees Report at 8 (requested rate of $200 an hour for Ronza Lien). Because Plaintiffs have not met their burden of showing that the requested rates for these staff members are reasonable, and there is insufficient evidence to determine a reasonable rate based on the Court's own experience, the Court declines to award fees for work billed by non-attorney staff.[3] See Obrien, 2019 WL 5295066, at *5.

### B. Multiplier

California courts sometimes adjust the lodestar amount with a multiplier. Ketchum v. Moses, 24 Cal. 4th 1122, 1132 (Cal. 2001). Factors relevant to whether to apply a multiplier include "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." Id.

Plaintiffs request a 1.50 multiplier (or 50% enhancement), see Johnston Fees Mot. at 13–14, which Volkswagen opposes, Opp'n at 22–24. The Court concludes that no multiplier is

---

[3] Many of these hours are not compensable for the additional reason that they were recorded to purely clerical tasks. See Nadarajah v. Holder, 569 F.3d 906, 921 (9th Cir. 2009); see also Johnston Fees Report; Walker Fees Report.

warranted. Contrary to Plaintiffs' assertion that an upward multiplier is warranted "[b]ased on counsel's knowledge. [sic] experience and guidance," Reply at 13, those factors are not present here. Given the fact that Volkswagen conceded liability and contested only Plaintiffs' harm, see, e.g. VW Answer (dkt. 6799), and that Plaintiffs' settled their claims before any significant motions practice, see Walker Notice of Acceptance (dkt. 6803), Johnston Notice of Acceptance (dkt. 6804), it cannot be said that the case involved particularly novel or difficult questions, required skill in presenting the issues, or "precluded other employment by the attorneys." Indeed, as to the last point, Plaintiffs' law firm represented hundreds of other opt-out plaintiffs in cases against Volkswagen. See Monahan Decl. (Johnston dkt. 10-11) ¶¶ 10, 12.

That leaves only the contingent nature of the fee award. Volkswagen conceding liability substantially reduced the risk that Plaintiffs would not recover. That being said, the outcome of the Bellwether Trial, where several plaintiffs recovered no damages and no plaintiffs succeeded on a CLRA or Song-Beverly Act claim, demonstrates that there was some risk Plaintiffs' counsel would not recover fees from Volkswagen. See Omnibus Order re: Bellwether Trial (dkt. 7346) at 5, Phase One Jury Verdict (dkt. 7251), Order re: MSJ (dkt. 7093) at 1. Plaintiffs' point out that their counsel fronted the costs for litigation for several years. Reply at 13–14. But other decisions in this district have rejected similar arguments, holding that the delayed payment and risk associated with representation on a contingent basis were adequately reflected in the attorneys' reasonable hourly rates, and did not warrant upward adjustment on their own. See, e.g. Obrien, 2019 WL 5295066, at *6. The Court agrees with those decisions and adopts their reasoning here. Plaintiffs' counsel litigated a straightforward case to an early settlement. The moderate risk that they would not be awarded fees is adequately reflected by the unadjusted lodestar amount.

### C.     Reasonable Hours

Courts should exclude from a fee request any hours not "reasonably expended," including those that are "excessive, redundant, or otherwise unnecessary." Jankey v. Poop Deck, 537 F.3d 1122, 1132 (9th Cir. 2008) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). "Ultimately, a 'reasonable' number of hours equals the number of hours which could reasonably

have been billed to a private client." Gonzalez v. City of Maywood, 729 F. 3d 1196, 1202 (9th Cir. 2013) (internal quotation marks and alterations omitted).  Volkswagen objects that a number of Plaintiffs' claimed hours do not meet this standard.

### 1. Unnecessary.

Volkswagen identifies four categories of hours it believes to be unreasonable because the work was unnecessary.

#### a. Work after acceptance of the Rule 68 offers.

Volkswagen argues that any work unrelated to accepting the Rule 68 offers or pursuing the instant fee motions became unnecessary once Plaintiffs communicated to their counsel that they wished to accept the offers. Opp'n at 10–11.  But whether this point warrants a deduction depends on when Plaintiffs told their counsel they wished to accept the offers.

Based on their fee report, Volkswagen thinks the Walkers told their lawyers they would accept the Rule 68 offer on October 6, 2019.  Id. at 9 & n.7.  In fact, the Walkers' fee report indicates that on October 6, they told their lawyers they would accept the offer if they could keep their repaired car.  Walker Fee Report at 6.  Turnage promised to investigate the matter and get back to them.  Id.  The next day, Turnage learned that a repair had been available all along.  Id. at 7.  She did not communicate that information to her clients until October 10, when she told them they both needed to agree on whether to accept or reject the offer by "Monday/Tuesday" (October 14 or 15, assuming she meant the following Monday or Tuesday).  Id.  And indeed, it was only on October 15 that Turnage drafted a letter regarding the Walkers' acceptance of the Rule 68 offer. Id.  Volkswagen points out that Turnage began drafting the instant fee motion on October 7, Opp'n at 9 n.7, but that does not mean the Walkers had accepted the Rule 68 offer or that it was unnecessary to prepare for subsequent litigation.  Because the fee reports support Plaintiffs' contention that the Walkers did not agree to accept the Rule 68 offer until October 15, hours expended in anticipation of subsequent litigation up to and on that date were reasonable.

Volkswagen's similar argument regarding Johnston runs into the same problem.  It asserts that he must have communicated his intent to accept the Rule 68 offer to his counsel by October

8

12, because Turnage began drafting the instant fee motion on October 13. Opp'n at 9 n.7. This makes no sense, even if one accepts Volkswagen's theory that Turnage could not have begun drafting a fee motion before her clients accepted a settlement offer. Johnston could have communicated his intent to accept on October 13, with Turnage starting work on the fees motion immediately thereafter. And in any event, the Court rejects Volkswagen's theory that work on the fee motion is a tell-tale sign that the Rule 68 offer had been accepted. The only tell-tale sign that Turnage knew Johnston was going to accept the offer was her drafting a letter regarding his acceptance—which the fee report indicates happened on October 15. Johnston Fee Report at 7. For the reasons explained above, work in preparation for potential litigation up to and on that date was reasonable.

### b. Remand motion.

Volkswagen next argues that hours expended on Plaintiffs' unsuccessful remand motion were unnecessary because the motion "in no way contributed to Plaintiffs' ultimate success in this litigation." Opp'n at 11. But "[r]are, indeed, is the litigant who doesn't lose some skirmishes on the way to winning the war" for "losing is part of winning." Cabrales v. Cty. of Los Angeles, 935 F.2d 1050, 1053 (9th Cir. 1991). The Ninth Circuit has therefore rejected an approach that would "scalpel out attorney's fees for every setback, no matter how temporary." Id. The standard for reasonableness is not whether the motion was a "necessary step to the plaintiff's ultimate victory" but whether the claimed hours were "reasonably spent in pursuit of the litigation." Jacobson v. Persolve, LLC, No. 14-cv-00735-LHK, 2016 WL 7230873, at *11 (N.D. Cal. Dec. 14, 2016) (internal citations and alterations omitted). Hours expended on a losing motion should be excluded if it was legally or factually unrelated to the claims in the lawsuit, baseless, or otherwise deficient. Id.

This standard is not met here. Although Plaintiffs' motion to remand was unsuccessful, that was because fact-specific estimations of possible compensatory and punitive damages and attorneys' fees suggested the amount in controversy was met. Order Denying Remand at 7–16. Plaintiffs' arguments on these points were unconvincing, but not frivolous. See id.

However, the hours recorded for work on the remand motion are unreasonable because they are duplicative. The remand motion was brought on behalf of over 100 different plaintiffs, in more than 100 actions. See Mot. for Remand Amended Ex. 7 (dkt. 3629-1). Turnage record six hours for the remand motion to Johnston and 11.3 hours to the Walkers. See Mot. at 11. It is not credible to believe spent spent a comparable amount of time working on the remand motion for each of the actions her firm sought to have remanded. it is far more likely she spent 17.3 hours total working on the remand motion. These hours are therefore duplicative of work done on behalf of other clients and must be reduced accordingly. The hours recorded for Turnage's work on the remand motion are reduced to 0.2 for Johnston and the Walkers each.

### c. Reviewing fact sheets.

Volkswagen complains that on October 3, 2019, Turnage spent 5.5 hours reviewing deficiencies Volkswagen had identified in Plaintiffs' fact sheets. Volkswagen argues convincingly that this work was unnecessary because Turnage had already spent time the previous summer reviewing the fact sheets with Plaintiffs. Opp'n at 12. Turnage's recorded hours are reduced by 2.6 and 2.9 hours for Johnston and the Walkers, respectively.

### d. Work related to the Bosch settlement.

Finally, Volkswagen correctly contends that hours Turnage spent on work related to the Bosch settlement were unnecessary to this litigation. Id. at 12–13. Bosch is not a defendant in this matter, and Plaintiffs' only serious counterargument is that this work was necessary to decide whether to add Bosch as a defendant or to participate in the Bosch class settlement (which they ultimately did). Id. at 6–7. That only demonstrates the absurdity of billing these hours to Volkswagen. Plaintiffs want Volkswagen to pay for legal work that ultimately led Plaintiffs to participate in a separate settlement with a different party. Their argument that they might have added Bosch as a defendant only highlights the fact that they did not, meaning that Bosch cannot pay for any fees sought in the instant motions. No fees will be awarded for the hours Turnage expended on work related to the Bosch settlements (1.9 hours for Johnston and 3.5 hours for the Walkers).

10

### 2. Duplicative, inefficient, or excessive.

Volkswagen has identified some of the work Plaintiffs' counsel did as duplicative, inefficient, or excessive, mostly because it replicated work done on behalf of other opt-out plaintiffs represented by the same law firm.

#### a. Initial complaints.

Turnage recorded three hours for drafting Johnston's initial complaint and 3.4 hours for drafting the Walkers'. Johnston Fee Report at 3; Walker Fee Report at 2. But the two complaints are virtually identical, both to each other, see generally Monahan Decl. Ex. 1 (Johnston dkt. 10-12), and to the other fifty complaints Turnage's firm filed in California state court in the spring and summer of 2016, see Monahan Decl. ¶ 10; see also, e.g. Monahan Decl. Ex. 5 (Johnston dkt. 10-16). Given these similarities, the claimed hours for drafting the initial complaints are unreasonable.

Plaintiffs respond that this time was necessary to conduct factual research. Reply at 1. This argument rings hollow, given the limited factual differentiation between the various complaints. Plaintiffs also attempt to distinguish Volkswagen's authorities. Id. at 1–2. But those attempts do not undermine the basic principle that unreasonably duplicative work cannot be charged to one's opponent. The hours Turnage spent drafting the initial complaints are reduced to half an hour for Johnston and the Walkers each. ME2 Prods., Inc. v. Pumaras, 2017 WL 4707015, at *7 (D. Haw. Oct. 19, 2017) (substantially reducing time "spent working n this cookie-cutter case").

Additionally, Volkswagen contends, Opp'n at 14, and Plaintiffs do not contest, Reply at 15, that the Court should reduce the Walkers' claimed hours by an additional 0.3 hours because time Turnage spent refiling their initial complaint after it was rejected by the Court was inefficient.

#### b. First Amended Complaints.

Similarly, Volkswagen argues that the hours Turnage recorded drafting Johnston and the Walkers' First Amended Complaints (5.5 and 17.9 hours, respectively) are unreasonable because the FACs are substantially identical. Opp'n at 14–15; see also Monohan Decl. Ex. 2 (Johnston

11

dkt. 10-13). Volkswagen has also identified similar complaints filed by other law firms. Monahan Decl. ¶ 4. For the reasons explained above, Turnage's recorded hours spent drafting each FAC are reduced to one hour for Johnston and the Walkers each.

### c. Fee motions.

Volkswagen contends that it was unreasonable for Turnage to spend 6.2 and 5.8 hours preparing Johnston and the Walkers' fee motions, respectively. Opp'n at 15. The instant motions are virtually identical. Compare Johnston Fee Motion, with Walker Fee Motion. Plaintiffs claim that the time-consuming work in preparing a fees motion is not writing the briefs but verifying and preparing the fee records. Reply at 3–4. The Court finds that this explanation does not justify the amount of time attributed to preparing the instant motions. The hours spent preparing Plaintiffs fee motions are reduced to two hours each for Johnston and the Walkers.

### d. April 17–18, 2018 mediation.

Kazerounian recorded 10.9 hours to Johnston and the Walkers each for preparing for, traveling to, and attending the April 2018 mediation before Judge Corley. Johnston Fee Report at 2; Walker Fee Report at 2. Volkswagen points out that at the time, Kazerounian's firm represented drivers with 269 TDI vehicles, just two of which were owned by these Plaintiffs. Monahan Decl. ¶ 12. Plaintiffs do not respond to this point, other than a few general, unsupported arguments that "if defendants want costs or fees apportioned, they have the burden of specifically identifying those items, the dates each plaintiffs settled, and the number of individuals involved in litigation during any relevant time frame." Reply at 7. Even accepting that position, Volkswagen has done exactly that. The Court will award each Plaintiff fees for only 0.1 hours worth of the time Kazerounian spent on preparing for and attending the April 2018 mediation. That requires a 10.8 hour reduction of Kazerounian's claimed time for Johnston and the Walkers each.

### e. May 10, 2019 case management conference.

A similar analysis applies to the Walkers' claimed 4.45 hours for Kazerounian to travel to and attend a May 9, 2019, case management conference. See Walker Fee Report at 2. Volkswagen suggests deducting the entirety, because there was no CMC on May 9 and no record

of Kazerounian attending the May 10 CMC. Opp'n at 16. But Plaintiffs credibly explain that Kazerounian simply mistyped the date and the record supports their contention that Kazerounian made no appearance due to the sheer number of lawyers in the courtroom that day. See Reply at 7; see also Transcript of May 10, 2019 Proceedings (dkt. 6310) at 3:12–16 (Court declined to have opt-out lawyers state their appearances because "That will be most of the people in the courtroom.").

But these hours will still be reduced to 0.2 hours for Johnston and the Walkers each, because at the time of the May 10 CMC Kazerounian's law firm represented thirty-six opt-out plaintiffs. See Appendix 1: Remaining Consumer Actions (dkt. 6237-1).

### 3. Travel.

Volkswagen asserts that travel time should be reduced by 50%. Opp'n at 18–19. Numerous courts have applied this rule, including in this circuit. See, e.g. Celestine v. FCA US LLC, No. 2:17-cv-0597 - JLT, 2019 WL 4274092, at *7 (E.D. Cal. Sept. 10, 2019) (collecting cases). Plaintiffs cite only one ostensibly contrary authority: a bankruptcy case from 1991 that acknowledged that other courts reduced travel time by half. See Reply at 8. That authority is unpersuasive, especially because it has become significantly more feasible to work while traveling since 1991. Travel time will be reduced by 50%.

Kazerounian records ten hours for Johnston and five hours for the Walkers traveling to and from San Francisco on September 12 and 13, 2019. Johnston Fee Report at 2; Walker Fee Report at 2. Fifteen hours to fly to San Francisco from Orange County and back again is not reasonable. The total travel time is reduced to six hours. Those hours are split equally between the Plaintiffs, and reduced by 50%, for a total of 1.5 hours each (or a 8.5 hour reduction for Johnston and 3.5 hour reduction for the Walkers).

As noted above, Kazerounian also recorded travel time for the mediation and CMC. Because the Court has already substantially reduced the hours associated with those events, and it would be difficult to parse the remainder between preparation, attendance, and travel, there is no need to apply a 50% reduction to that travel time.

### 4. Clerical tasks.

Clerical tasks such as "filing, transcript, and document organization time" are not compensable, regardless of who completes them. Nadarajah, 569 F.3d at 921. Courts in this circuit have held that "printing and saving documents, calendaring deadlines, and reviewing the documents and discovery previously received . . . to prepare a trial folder," are incompensable clerical tasks, Celestine, 2019 WL 4274092, at *8, while "preparing pleadings, reviewing client files, drafting deposition subpoenas, coordinating production of documents, and reviewing trial exhibit binders and deposition transcripts" are not, Forouzan, 2019 WL 856395, at *6. The parties dispute what recorded hours represent purely clerical work. Compare Opp'n at 17, with Reply at 8–9.

Most but not all of the hours Volkswagen identifies as purely clerical will be deducted. Turnage records time for tasks such as mailing and emailing documents, attaching documents to file, and receiving letters. See Opp'n App'x I (Johnston dkt. 10-9). No fees will be awarded for hours recorded to these purely clerical tasks.

Plaintiffs specifically defend only two of the entries Volkswagen identifies as purely clerical. See Reply at 8. They are correct that reviewing and revising billing and costs is not purely clerical. But receiving court orders is purely clerical, and no fees will be awarded for hours attributed to this task. Reviewing the Court's orders would be a different matter, but the challenged entries indicate receipt only. See Opp'n App'x I. The Court has identified only one other entry that Volkswagen incorrectly identifies as purely clerical: reviewing proof of service of the Walkers' complaint for filing with the Superior Court. See id.

In sum, the Court will deduct 2.5 of Turnage's recorded hours for Johnston and 2.4 of her recorded hours for the Walkers on this basis.

### 5. Estimated time.

Volkswagen challenges Plaintiffs' estimated hours for drafting a reply and attending a possible hearing for the instant motions. Opp'n at 18. Even assuming Volkswagen is correct that anticipated time is not compensable, Plaintiffs now specify that "Johnston incurred 7.15 hours to

draft the reply and Walkers incurred 6.55 hours." Reply at 9. No time will be incurred preparing for, traveling to, or attending a hearing, since none is necessary. Additionally, the Court finds that 13.7 hours is not a reasonable amount of time to spend preparing the joint reply filed on behalf of both Johnston and the Walkers. Turnage's recorded hours for working on the reply are reduced to six total, split evenly between Johnston and the Walkers (for deductions of 4.15 and 3.55 hours, respectively).

### 6. Unexplained time.

Volkswagen challenges a 1.6 hour entry recorded to the Walkers by Turnage for "TC with Attorney Dalton." Its complaint is that there is no explanation of what was discussed. Opp'n at 18. In reply, Plaintiffs explain that the call "related to the two cases which were part of the Bellwether trials, Johnston and Walkers." Reply at 9. It appears that the call was some sort of brainstorming session or strategic consultation. The Court finds the time spent on the call reasonable and will not deduct it.

### D. Costs

Costs, like fees, are reviewed for reasonableness. See Obrien, 2019 WL 5295066, at *7. Volkswagen challenges three categories of costs. First, $500 for each Plaintiff for potential travel to attend a hearing on the instant motion. Johnston Turnage Decl. ¶ 32; Johnston Fee Mot. at 16; Walker Fee Mot. at 16. Plaintiffs no longer seek these costs in their reply, they instead suggest that if a hearing is held they will seek their travel expenses after they are incurred. No hearing will be held, so these costs will not be awarded.

Second, Johnston has claimed a $429 hotel cancellation fee. Johnston Bill of Costs (dkt. 6903-4) at 6. This cost is not reasonable and will not be awarded.

Finally, Johnston claims $48.71 and the Walkers claim $48.70 for "Miscellaneous VW Costs." Johnston Bill of Costs at 5; Walker Bill of Costs (dkt. 6904-4) at 5. In reply, Plaintiffs explain that these expenses were incurred in connection with the April 2019 settlement hearing, that they were unfortunately labeled "miscellany," and that there is no way to override the label now. Reply at 14–15. This explains why these costs are labeled "miscellaneous," but not what

they were, so they will not be awarded.

## IV. CONCLUSION

For the foregoing reasons, Johnston is awarded $22,234.50 in fees and $635.46 in costs, and the Walkers are awarded $19,540.50 in fees and $584.85 in costs.

**IT IS SO ORDERED.**

Dated: April 30, 2020



CHARLES R. BREYER
United States District Judge