UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION

This Order Relates To:
Dkt. Nos. 6988, 6989, 7014, 7032

MDL No. 2672 CRB (JSC)

**ORDER DENYING MOTION TO ENFORCE SETTLEMENT AND GRANTING MOTIONS TO FILE UNDER SEAL**

Robert Bosch GmbH and Robert Bosch LLC (collectively, "Bosch") have brought the instant motion to enforce settlement against sixty-one opt-out plaintiffs (the "reneging Plaintiffs") who initially authorized their counsel to accept a proposed settlement, but later changed their minds. This dispute comes down to a basic tenet of contract law: that a binding contract requires mutual assent. The reneging Plaintiffs agreed to be bound by the terms of the agreement. But Bosch did not agree to those terms until after Plaintiffs' counsel had revoked their earlier acceptance. Because the reneging Plaintiffs and Bosch never mutually consented to be bound by the terms of the settlement, there was no binding agreement and Bosch's motion must be denied.

**I.     BACKGROUND**

The instant dispute can be traced to a mediation before this Court on January 25, 2019, between Bosch and 273 opt-outs from the Bosch Class Action Settlement ("Plaintiffs") represented by the Richard C. Dalton, LLC law firm and the Duck Law Firm ("Plaintiffs' counsel"). At the mediation, Plaintiffs' counsel and Bosch's counsel agreed to a settlement term sheet (the "Term Sheet" or "settlement") they would recommend to their respective clients.

The Term Sheet provided ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1
2
3
4
5

6  Kevin Duck of the Duck Law Firm emailed Bosch's counsel on April 4, 2019, to inform
7  them that 257 Plaintiffs had authorized him to accept the Term Sheet.  Bosch's counsel, Brandon
8  Adkins, suggested "giv[ing] it some more time to see what the 13 who have yet to respond will
9  decide to do" and that "[i]t would be helpful to know what you're planning to do with the 3 firm
10 rejects."  (Dkt. No. 6989-9, at 6–7.)  Adkins did not indicate that Bosch had authorized him to
11 accept the settlement.
12  On April 8, 2019, Duck followed up, asking "Do we have a settlement agreement?"  *Id.*
13 at 5.  Adkins responded the same day, saying "We're still discussing with our clients.  In the
14 meantime, do you have a proposal for how to address that there is less than 100% acceptance?"
15 *Id.*
16  Duck responded that he did not.  He asked again whether Bosch had authorized Adkins to
17 accept the Term Sheet.  "Please let me know if your client is agreeable to settle with the clients
18 who have indicated they will accept the offer per the terms and conditions of the offer by the close
19 of the week so that I can advise my clients accordingly."  *Id.* at 4.  The next day, April 9, Duck's
20 legal assistant Vicki Abshire replied to both Duck and Adkins to say that 261 Plaintiffs had
21 authorized their lawyers to accept the Term Sheet.
22  Adkins did not reply to Abshire's email.  He responded to Duck's email on April 11, to say
23 that
24
25
26  Duck did not agree and the email chain ends there.
27
28 [1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

On May 7, 2019, Plaintiffs' counsel Richard Dalton indicated in a court filing that Plaintiffs' had pending claims against Bosch. On May 22, 2019, this Court presided over a teleconference between counsel for both sides. Consistent with Dalton's filing, Duck took the position that there was no binding agreement between the parties.

Matthew Slater, counsel for Bosch, emailed Duck after the teleconference, stating that Bosch was prepared to move forward with the Term Sheet as to the 261 Plaintiffs who authorized their counsel to accept the settlement. Duck responded that he would take a poll of his clients to see who was still willing to move forward with the Term Sheet. As it turned out, only 200 of the Plaintiffs still wanted to participate in the settlement. Bosch moved ahead with the settlement as to those Plaintiffs. The final settlement between Bosch and the 200 participating Plaintiffs ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Bosch then brought the instant motion to enforce the settlement against the sixty-one Plaintiffs who authorized their lawyers to accept the Term Sheet, but changed their minds when Duck conducted his post-teleconference poll. The parties have conferred and agree that the instant Motion may be referred to and decided by this Court. (Dkt. No. 6988 at 4 n.1; Dkt. No. 6988-1 ¶ 14.)

## II.    LEGAL STANDARD

"[A] district court has the equitable power to enforce summarily an agreement to settle a case pending before it."[2] *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). The construction and enforcement of the settlement is governed by California contract law. *See United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992). A settlement is enforceable if it is complete and there was a "meeting of minds sufficient to effect a settlement agreement." *Callie*, 829 F.2d at 890–91; *see also Am. Aeronautics Corp. v. Grand Cent. Aircraft Co.*, 317 P.2d 694, 701 (Cal. Ct. App. 1957) (California law requires that "the parties all agree upon the same thing in the same sense" to form an enforceable contract), *superseded by statute on other grounds*

---

[2] If material facts regarding the terms or existence of the agreement are in dispute, "the parties must be allowed an evidentiary hearing." *Callie*, 829 F.2d at 890. There are no factual disputes, and neither side requests an evidentiary hearing, so none is necessary.

3

*as stated in Beavers v. Allstate Ins. Co.*, 274 Cal. Rptr. 766, 774 (Cal. Ct. App. 1990).

## III. DISCUSSION

The parties dispute both whether the Term Sheet constitutes a complete agreement and whether all parties agreed to its terms or authorized their counsel to do so. As explained below, the former requirement was satisfied, but the latter was not.

### A. Complete Agreement

Plaintiffs do not dispute that the Term Sheet was complete insofar as it contained all material terms of the agreement. Instead, they appear to argue that it was incomplete because it was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Dkt. No. 7014-3 at 7–8.)

Both arguments are foreclosed by binding precedent. As to the former, the Ninth Circuit has recognized that "an agreement is not unenforceable merely because it is subject to the approval of a formal contract." *First Nat'l Mortg. Co. v. Fed. Realty Inv. Trust*, 631 F.3d 1058, 1065 (9th Cir. 2011). As to the latter, California case law is clear that "[a] contract may contain a valid provision giving one or either of the parties thereto an option to terminate it within a certain time or on specified conditions." *R. J. Cardinal Co. v. Ritchie*, 218 Cal. App. 2d 124, 143 (Cal. Ct. App. 1963) (collecting cases).

### B. Agreement to the Settlement Terms

The Term Sheet is nonetheless unenforceable, because there was never mutual consent to its terms. *See Callie*, 829 F.2d at 891 (holding that for a settlement to be enforceable, the parties must have "had a meeting of the minds regarding" its terms). Bosch appears to argue that the reneging Plaintiffs were bound by the Term Sheet once they authorized their counsel to accept that agreement. At that point, Bosch suggests, the deal was done. This position conveniently ignores that Bosch, too, had to accept the agreement's terms.

Bosch's argument relies on an unspoken and counterfactual assumption that the Term Sheet was an offer made by Bosch to the Plaintiffs. But the Term Sheet itself belies that

4

1    contention. It states that "███████████████████████████████████████████████████

2    ████████████████████████████" (Dkt. No. 6989-8 at 3.) The Term Sheet was a set of terms

3    negotiated by the lawyers, which would only bind the parties once both sides agreed to it.

4        The email exchange between Duck and Adkins confirms this understanding. Duck asked

5    "Do we have a settlement agreement?" on April 8, 2019, after having indicated that the vast

6    majority of his clients were willing to take the deal. (Dkt. No. 6989-9 at 5–7.) Adkins responded

7    "We're still discussing with our clients." *Id.* at 5. By refusing to confirm the existence of an

8    agreement and indicating that he was still discussing the matter with Bosch, Adkins made clear

9    that his client had not yet agreed to the Term Sheet.

10       His next email to Duck supports this conclusion. Adkins had previously asked whether

11   Duck had "████████████████████████████████████████████?" *Id.* at 3. Duck

12   declined to offer different terms, and so Adkins █████████████████████████████

13   █████ Again, Adkins failed to communicate that his client was accepting the offer, and in fact

14   communicated the opposite, stating "████████████████████████████████████████

15   ████████████████████████████████████████████." *Id.* Adkins's email stated

16   that Bosch was not willing to accept the Term Sheet without the proposed revision.

17       Bosch's own evidence demonstrates that it accepted the agreement, at the earliest, at the

18   May 22, 2019 teleconference before this Court. But by then it was too late: Plaintiffs' counsel had

19   already taken the position that there was no agreement and that their clients had pending claims

20   against Bosch, revoking any earlier acceptance. (Dkt. No. 6988-1 ¶ 10 (Dalton filed an

21   Addendum to Case Management Statement indicating that his clients had pending claims against

22   Bosch prior to the teleconference).)

23   ████████████████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████████████████████

25   █████ But that is not what Bosch did, because it never accepted the Term Sheet before the

26   sixty-one reneging Plaintiffs retracted their acceptance. Because there was never mutual assent to

27   be bound as between Bosch and the reneging Plaintiffs, there was no enforceable agreement

28   between those parties. *See Am. Aeronautics Corp.*, 317 P.2d at 701.

United States District Court
Northern District of California

**C.     Motions to Seal**

Bosch and Plaintiffs have each brought motions to file multiple exhibits, declarations, and briefs under seal.  There is "a strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003).  "A party seeking to seal a judicial record . . . bears the burden of overcoming this strong presumption by meeting the 'compelling reasons' standard." *Kamakana v. City and Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).  "[T]he party must articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure such as the public interest in understanding the judicial process." *Id.* at 1178–79 (internal quotation marks, alterations, and citations omitted).  "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such court files might have become a vehicle for improper purposes, such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* at 1179 (internal citations and quotation marks omitted).

The Ninth Circuit has recognized an exception to this stringent standard for records attached to motions that are at most "tangentially related to the merits of a case." *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016).  Those records may be sealed on a showing of "good cause," as defined by Federal Rule of Civil Procedure 26(c).  *Id.* at 1097. Rule 26 provides that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  The party seeking to file records under seal must make a "particularized showing" that the good cause standard is met. *Kamakana*, 447 F.3d at 1180.

The "compelling reasons" standard applies here.  The motion to enforce the settlement agreement was dispositive, since it sought to compel the reneging Plaintiffs to relinquish their claims.  Although the Ninth Circuit has rejected a bright-line rule between "dispositive" and "non-dispositive" motions, that a motion is dispositive supports the conclusion that it is "more than tangentially related to the merits of a case." *See Ctr. for Auto Safety*, 809 F.3d at 1098–99.  This conclusion is supported by numerous decisions applying the compelling reasons standard to

6

requests to seal records attached to motions to approve a settlement, which are analogous to the instant motion in their potential for final disposition of the plaintiff's claims. *See, e.g. In re: Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3092256, at *2 (N.D. Cal. Mar. 16, 2018). Additionally, the parties agree that the "compelling reasons" standard applies.

All three motions seek to file briefs, declarations, and exhibits under seal to keep confidential the terms of the parties' settlement and the settlement negotiations. Courts in this district have recognized that the "general policy of protecting settlement negotiations and communications in order to promote settlement" satisfies the compelling reasons standard. *Celgard, LLC v. Targray Tech. Int'l Inc.*, No. 19-cv-02401-VKD, 2019 WL 3841997, at *2 (N.D. Cal. Aug. 15, 2019). The Court agrees.

However, the parties seek to seal far more than the proposed settlement's terms and the actual settlement negotiations. For example, Plaintiffs seek leave to file their entire Opposition under seal. This position does not satisfy the compelling reasons standard. *See Prosurance Grp., Inc. v. Liberty Mut. Grp., Inc.*, No. 10-CV-02600-LHK, 2011 WL 704456, at *2 (N.D. Cal. Feb. 18, 2011) (refusing to seal the parties' filings in their entirety, because "the documents consist largely of legal arguments . . . and it appears that the portions of the brief that discuss confidential or propriet[ar]y information could easily be redacted"). Further, the parties seek to file under seal the entirety of the post-Term Sheet emails, including content that does not involve settlement negotiations, but instead the parties' positions on whether there is a binding settlement agreement.

Accordingly, the motions to seal are granted to the extent they seek to seal the proposed settlement terms and actual settlement negotiations and denied in all other respects. For example, Bosch's exhibits 2 and 7 (the Term Sheet and settlement agreement) may be filed under seal in their entirety, as may exhibit 1 since it was exchanged pursuant to the settlement negotiations. The emails, however, must be redacted only to conceal the proposed settlement's terms and any actual negotiations on those terms. The parties' respective pleadings must be modified in accordance with this Order and Civil Local Rule 79-5(f). The Court's redaction of this Order gives the parties a roadmap on what material is appropriately redacted.

//

This Order disposes of Docket Nos. 6988, 6989, 7014, and 7032.

**IT IS SO ORDERED.**

Dated: May 12, 2020

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge