UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: VOLKSWAGEN "CLEAN DIESEL"
MARKETING, SALES PRACTICES, AND
PRODUCTS LIABILITY LITIGATION

_____/

This Order Relates To:
MDL Dkt. Nos. 6970 & 6971

_____/

MDL No. 2672 CRB  (JSC)

**ORDER GRANTING MOTIONS TO DISMISS**

Plaintiffs represent a putative class of Volkswagen salespeople.  They allege they were fooled into taking and keeping that job by the diesel emissions fraud and harmed by the drop in sales that followed when the fraud was revealed.  This Court dismissed Plaintiffs' initial Complaint with leave to amend.  The First Amended Complaint brings the same claims and a number of new ones against Volkswagen Group of America and Volkswagen AG (together, "Volkswagen") and Robert Bosch GmbH and Robert Bosch LLC (together, "Bosch").  For the most part, Plaintiffs fail to cure the deficiencies identified in the Court's previous order.  The claims they have salvaged (or which they raise for the first time in the FAC) suffer from other fatal flaws.  Volkswagen and Bosch's motions to dismiss are therefore granted.

I.      **BACKGROUND**

This Court has previously described the events that are the basis for Plaintiffs' claims:

> Over the course of six years, Volkswagen sold nearly 500,000
> Volkswagen- and Audi-branded TDI "clean diesel" vehicles, which
> they marketed as being environmentally friendly, fuel efficient, and
> high performing.  Consumers were unaware, however, that
> Volkswagen had secretly equipped these vehicles with a defeat
> device that allowed Volkswagen to evade United States
> Environmental Protection Agency ("EPA") and California Air
> Resources Board ("CARB") emissions test procedures.  Specifically,
> the defeat device produces regulation-compliant results when it
> senses the vehicle is undergoing testing, but operates a less effective
> emissions control system when the vehicle is driven under normal
> circumstances.  It was only by using the defeat device that

> Volkswagen was able to obtain Certificates of Conformity from EPA and Executive Orders from CARB for its TDI diesel engine vehicles.  In reality, these vehicles emit nitrogen oxides ("NOx") at a factor of up to 40 times over the permitted limit.

In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig., No. 15-md-02672-CRB (JSC), 2016 WL 6248426, at *1 (N.D. Cal. Oct. 25, 2016).  Plaintiffs allege that Bosch was involved "in the creation, development, marketing, and sale of [the] illegal defeat devices."  FAC (dkt. 6865) ¶ 57.

Plaintiffs are three salespeople who sell Volkswagen vehicles at dealerships in California. Id. ¶¶ 13–15.  Plaintiffs allege that they relied on Volkswagen and Bosch's fraudulent representations in advertisements, mandatory trainings, and other materials when they decided to begin and continue working as Volkswagen salespeople.  Id. ¶¶ 16, 123.

Plaintiffs' compensation was tied to the number of Volkswagen cars they sold in two ways. First, the dealerships paid each Plaintiff based mainly on commissions.  Id. ¶¶ 148–51.  Second, Volkswagen directly paid Plaintiffs "incentive compensation" based on the number of Volkswagen vehicles sold and metrics designed to measure customer satisfaction.  Id. ¶¶ 153–54, 156–59.  When the emissions fraud was revealed and Volkswagen's sales dropped, so did Plaintiffs' compensation.  Id. ¶¶ 163–66.  Plaintiffs allege part the decline was partly attributable to Volkswagen's "stop sales order," which halted sales of certain TDI vehicles when the scandal broke.  Id. ¶ 241.

Plaintiffs brought this lawsuit on behalf of themselves and all others similarly situated, hoping to recover the losses they attribute to the emissions scandal.  See id. at 1.  Their first Complaint alleged claims for breach of contract, negligent interference with prospective economic advantage, fraud, and violations of the Racketeer Influenced and Corrupt Organizations Act against Volkswagen, Bosch, and various officers of those companies.  Order Granting MTD (dkt. 6717) at 2.  This Court dismissed the Complaint in its entirety, with leave to amend.  Id. at 19.

Plaintiffs have now filed a First Amended Complaint against Volkswagen and Bosch only. See FAC at 1.  They once again assert claims for breach of contract, negligent interference with prospective economic advantage, fraud, and violations of RICO.  Id. ¶¶ 217–306.  They have also

United States District Court
Northern District of California

2

1   added claims against Volkswagen for violations of the California Labor Code and the California

2   Unfair Competition Law.  Id. ¶¶ 307–95.  Volkswagen and Bosch filed the instant motions to

3   dismiss.  See VW MTD (dkt. 6970); Bosch MTD (dkt. 6971).

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for
failure to state a claim upon which relief may be granted.  Dismissal may be based on either "the
lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal
theory."  Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019).  A complaint
must plead "enough facts to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal,
556 U.S. 662, 697 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A
claim is plausible "when the plaintiff pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 678.  When
evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to
be true and draw all reasonable inferences in favor of the nonmoving party."  Usher v. City of Los
Angeles, 828 F.2d 556, 561 (9th Cir. 1987).  "[C]ourts must consider the complaint in its entirety,
as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to
dismiss, in particular, documents incorporated into the complaint by reference, and matters of
which a court may take judicial notice."  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S.
308, 322 (2007).

Claims for fraud must meet the pleading standard of Federal Rule of Civil Procedure 9(b),
which requires a party "alleging fraud or mistake [to] state with particularity the circumstances
constituting fraud or mistake."  Rule 9(b) "requires . . . an account of the time, place, and specific
content of the false representations as well as the identities of the parties to the
misrepresentations."  Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotation
marks omitted).

If a court does dismiss a complaint for failure to state a claim, it should "freely give leave
[to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A court nevertheless has

United States District Court
Northern District of California

3

United States District Court
Northern District of California

discretion to deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."  Leadsinger, Inc. v. BMG Music Pub., 512 F.3d 522, 532 (9th Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

## III.    DISCUSSION

Each of Plaintiffs' new and amended claims suffers at least one fatal defect.  Many claims still suffer from the flaws that required dismissing Plaintiffs' initial Complaint.  This Order addresses the deficiencies of each claim in turn.

### a.    Breach of Contract

Plaintiffs concede that their breach of contract claim is not viable in light of the actual terms of the agreements they allege were violated.[1]  Opp'n to VW MTD (dkt 7015) at 29.  But they argue dismissal should be without prejudice, in case "they uncover in discovery evidence of other contractual obligations between Volkswagen and the Plaintiffs."  Id.  This proposal is contrary to the purpose of Rule 12(b)(6), which prevents unwarranted fishing expeditions premised on baseless claims.  See Iqbal, 556 U.S. at 678–79.  The breach of contract claim is dismissed with prejudice.  See Leadsinger, 512 F.3d at 532.

### b.    RICO Claims

The RICO claims are dismissed with prejudice because Plaintiffs once again fail to adequately allege proximate cause.  The proximate cause requirement has taken "many shapes" at common law, including foreseeability, directness, and certainty of damages.  Holmes v. Sec. Inv'r Prot. Corp., 503 U.S. 258, 268 (1992) (citing Associated Gen. Contractors of Cal., Inc. v. Carpenters, 459 U.S. 519, 532–33 (1983)).  For civil RICO claims, directness is most important.  Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 461 (2006) ("When a court evaluates a RICO

---

[1]  Plaintiffs do not—and could not—argue that those terms should not be considered by the Court at the pleading stage.  Because they form the basis of the breach of contract claims, the terms of the agreements are properly subject to incorporation by reference.  Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1002 (9th Cir. 2018).

claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."); see also Hemi Grp., LLC v. City of N.Y., 559 U.S. 1, 12 (2010) (plurality) ("Our precedents make clear that in the RICO context, the focus is on the directness of the relationship between the conduct and the harm.").

The directness requirement reflects that while unlawful conduct may cause "ripples of harm," the remediation of more distant ripples poses administrative problems that can be avoided in suits by the directly injured. Bank of Am. Corp. v. City of Miami, 137 S. Ct. 1296, 1306 (2017) (citation omitted). For example, "the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors." Holmes, 503 U.S. at 269. Also, if the claims of the indirectly injured are recognized, courts may be forced "to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries." Id. As Holmes explained: "[T]he need to grapple with these problems is simply unjustified by the general interest in deterring injurious conduct, since directly injured victims can generally be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely." Id. at 269–70; see also id. at 271 (noting that the "general tendency of the law, in regard to damages at least, is not to go beyond the first step" (quoting Assoc. Gen., 459 U.S. at 534)).

This Court previously concluded that Plaintiffs' RICO claims failed to satisfy this standard because "Plaintiffs' alleged injuries from the diesel scandal are well beyond the first step in the causal chain." Order Dismissing Complaint at 17.

> As alleged, Defendants initially duped regulators into certifying—and consumers into buying—Volkswagen's diesel cars (step one). When the veil was lifted on Volkswagen's defeat device scheme, consumers who had bought the cars—and the public at large—became less inclined to buy other Volkswagen cars that were still available for sale (step two). This meant that VW dealers' revenues and profits declined as they sold fewer cars (step three). In turn, VW salespersons made less money because their income was commission based and thus tied to the number of cars that they sold (step four).

Id. at 14–15. This four-step causal chain implicated the very policy concerns the Supreme Court has articulated regarding suits brought by the indirectly injured. Id. at 15.

United States District Court
Northern District of California

5

United States District Court
Northern District of California

1      Plaintiffs attempt to avoid the same result this time around by relying on Volkswagen's

2  stop sales order.  They argue that the stop sales order led Volkswagen to "stop[ ] its direct

3  payments to Plaintiffs for their sales," which constitutes "more direct harm."  Opp'n to VW MTD

4  at 12.  But even Plaintiffs' account posits the stop sale order as just one of three steps on the path

5  from the alleged RICO violation to their injury.  At the first step, Volkswagen and Bosch

6  conspired to deceive regulators and consumers into believing their diesel vehicles complied with

7  applicable emissions standards.  Id.  "As a direct consequence of its scheme, Volkswagen issued a

8  stop sales order" (step two).  Id.  And as a result of the stop sales order, Volkswagen "stopped its

9  direct payments to Plaintiffs for their sales" (step three).  Id.  This theory of causation goes beyond

10  the "first step," and thus implicates the same concerns identified in the Court's previous order.

11  See Order Dismissing Complaint at 15.

12      Plaintiffs also argue "that they were harmed the moment they made the employment

13  decision to sell Volkswagen vehicles, because it was foreseeable that they would ultimately lose

14  income."  Opp'n to VW MTD at 12.  This argument is nonsensical—that harm is foreseeable does

15  not make it instantaneous.[2]  And in any event this Court has already rejected Plaintiffs' arguments

16  that foreseeability, rather than directness, should be the "'central question' in analyzing proximate

17  cause under RICO."  Order Dismissing Complaint at 16 (citing Anza, 547 U.S. at 461 (2006)).

18  Nor is the problem, as Plaintiffs suggest, that they were not the "target of the scheme."  Opp'n to

19  VW MTD at 12.  The problem is that they have failed to allege a sufficiently direct injury from the

20  misconduct they complain of.

21      Plaintiffs' failure to adequately allege proximate cause is fatal to the RICO claims.  Failing

22  to adequately allege proximate cause twice, despite the Court's previous order laying out the

23  deficiencies in this claim, is incurably fatal.  The RICO claims are dismissed with prejudice.  See

24  Leadsinger, 512 F.3d at 532.  It is therefore unnecessary to address Volkswagen and Bosch's other

25  arguments against the RICO claims.

26

27  [2]  Plaintiffs' analogy to a Ponzi scheme is inapt.  See Opp'n to VW MTD at 13.  In a Ponzi
   scheme, the victim's money is taken on false pretenses, so there is a financial injury before the
28  scam is uncovered.  No money was taken from these Plaintiffs; their claimed harm is losing
   expected revenue once the fraud was revealed.

1

### c.  Fraud

2    Plaintiffs' common law fraud claims fail for the same reason as their RICO claims: they do

3    not adequately allege that Volkswagen and Bosch's ostensible fraud proximately caused their

4    harm.  Most of Plaintiffs' fraud allegations also suffer additional defects previously identified by

5    this Court.

6

### i.  Proximate cause.

7    California tort plaintiffs must allege "detriment proximately caused" by the defendant's

8    misconduct.  Cal. Civ. Code § 3333.  The FAC fails to satisfy this requirement.  As Volkswagen

9    suggests, this Court's recent order granting summary judgment against a putative class of

10   Volkswagen dealerships provides an instructive analogy.[3]  See Order Granting MSJ (dkt. 6956)

11   at 2–3.  The dealerships argued that they suffered damages because, absent Volkswagen and

12   Bosch's fraud, they could have continued to sell Volkswagen TDI vehicles.  Id.  This Court

13   rejected the contention that the dealer's loss of future sales was attributable to the fraud.  In fact,

14   while the fraud was ongoing, the dealers sold TDI vehicles to unsuspecting consumers and

15   therefore benefited (albeit unwittingly) from the scheme.  Id. at 3.  Those sales ceased only when

16   the fraud was revealed; the dealers' claimed injury was "not 'by reason' of the emissions fraud"

17   but instead the result of its discovery.  Id.  The Court also rejected the notion that if Volkswagen

18   had not manufactured noncompliant TDIs it would have designed legal vehicles that the

19   dealerships could have continued to sell.  Id. at 4.  That claim was unsupported and contrary to

20   record evidence, which showed that Volkswagen had never considered a legally compliant TDI

21   vehicle economically viable.  Id. at 4–5.

22   Plaintiffs' theory of damages from the alleged fraudulent scheme is essentially identical to

23   the dealerships'.  They allege that as a result of Volkswagen's fraud, sales of Volkswagen vehicles

24

25   _____

26   [3]  Volkswagen's argument that Plaintiffs fail to adequately allege "detrimental reliance," appears
     to basically restate the related contention that Plaintiffs fail to show proximate cause.  See VW
27   MTD at 17.  Fraud claims must allege reliance and detriment proximately caused by that reliance.
     See Gomez v. Bayview Loan Servicing, LLC, No. 3:14-cv-04004-CRB, 2015 WL 433669, at *6
28   (N.D. Cal. Feb. 2, 2015).  Volkswagen's arguments regarding detrimental reliance are therefore
     relevant to proximate cause.

declined, and "such losses directly resulted in decreased commissions for Plaintiffs."  FAC

¶¶ 163–66.  But as Plaintiffs' own allegations acknowledge, the drop in sales occurred only after

the fraud was revealed.  Id. ¶ 163.  Before that, Plaintiffs (like the dealerships) unwittingly

benefited from the fraud, which helped them sell cars.  Like the dealerships, then, the harm

Plaintiffs complain of was caused by the revelation of the scheme, not the scheme itself.

Plaintiffs' briefing simply proves the point.  They describe their harm as "the consequences of lost

sales when the fraud was exposed."  Opp'n to VW MTD at 22.

Plaintiffs' attempts to distinguish the Court's order on the dealerships' RICO claims are

unavailing.  First, they argue that "RICO proximate cause and common law proximate cause are

not identical concepts," and that under California law proximate cause requires only that the

plaintiff's harm was "not inevitable or due to unrelated causes."  Opp'n to Bosch MTD (dkt. 7016)

at 21.  This misstates California's proximate cause standard, which not only requires "simple

causality" (the requirement Plaintiffs seem to describe) but also considers "the degree of

connection between the conduct and the injury."  PPG Indus., Inc. v. Transamerica Ins. Co., 975

P.2d 652, 655–56 (Cal. 1999).

And even assuming California's proximate cause standard is not identical to RICO's,

California cases illustrate that Plaintiffs' allegations cannot satisfy either standard.  Service by

Medallion, Inc. v. Clorox Co., 52 Cal. Rptr. 2d 650 (Cal. Ct. App. 1996), is instructive.  Medallion

alleged that Clorox had made false statements that fraudulently induced Medallion to enter a

contract to provide janitorial services, which Clorox initially performed but terminated sooner than

anticipated.  Id. at 653, 656.  Medallion's alleged injury included, inter alia, expenses in preparing

to perform.  Id. at 656.

The Court of Appeals held that Medallion failed to adequately plead that this "'detriment

[was] proximately caused' by the defendant's tortious conduct."  Id. (quoting Cal. Civ. Code

§ 3333).  It concluded that because "[t]he expenses Medallion incurred in preparing to perform its

contractual duty . . . were essential to its subsequent performance of the service agreement," they

could not have been "detrimental."  Id.  "It was only when Clorox terminated the parties'

contractual relationship that Medallion could have perceived its reliance expenses as 'losses.'"  Id.

United States District Court
Northern District of California

1    Because "it was the termination, not the misrepresentation, that resulted in the alleged harm . . .

2    Medallion's reliance on [the fraudulent] promise by entering into the contract and preparing to

3    perform did not constitute 'detriment proximately caused' by Clorox's conduct." Id. at 656–57

4    (quoting Cal. Civ. Code § 3333).  Medallion is analogous to our case: because it was the

5    revelation of the fraudulent scheme, rather than the fraud itself, that caused Plaintiffs' alleged

6    harm, their "detriment [was not] proximately caused" by Volkswagen and Bosch's

7    misrepresentations.

8         Plaintiffs also point out that the dealerships' claims were dismissed on summary judgment.

9    Opp'n to VW MTD at 13.[4]  Relatedly, they suggest that whether Plaintiffs detrimentally relied on

10   Volkswagen and Bosch's misrepresentations is necessarily a jury question that cannot be resolved

11   at the pleading stage.  Id. at 21.  Even assuming the latter argument is relevant to proximate cause,

12   courts, including this one, dismiss fraud claims that fail to plausibly allege reliance or proximate

13   cause.  See Gomez, 2015 WL 433669, at *6; see also Medallion, 52 Cal. Rptr. 2d at 657.  And

14   although the previous order granted summary judgment, not a Rule 12 motion, it demonstrates that

15   Plaintiffs' theory of proximate cause is legally deficient.

16        Third, Plaintiffs attempt to distinguish the facts of the cases this Court relied on in its order

17   granting summary judgment against the dealerships.  Opp'n to VW MTD at 13.  But this is beside

18   the point; that order dealt with a basically identical theory of proximate cause and found that the

19   general principles announced by those cases rendered it deficient.  Finally, to the extent Plaintiffs

20   argue that the prior order was wrong because it relied on cases from outside the Ninth Circuit and

21   has been appealed, see id. at 14, those are not sufficient reasons for the Court to reconsider its

22   holding.

23        The fraud claims are dismissed for failure to adequately allege proximate cause.[5]  Because

24

---

25   [4]  This argument, like several others addressed in this section, was made in response to
     Volkswagen's argument that the order granting summary judgment on the dealerships' claims
26   necessitated dismissal of Plaintiffs' RICO claims.  See Opp'n to VW MTD at 12–13.  It is
     unnecessary to address arguments regarding the applicability of the summary judgment order to
27   Plaintiffs' RICO claims, since the RICO claims fail for other reasons.  But for the sake of
     completeness, the Court addresses those arguments insofar as they might be relevant to the state
28   law claims.
     [5]  Failure to adequately allege proximate cause is fatal to the negligent interference claims as well.

United States District Court
Northern District of California

1    the previous order dismissing Plaintiffs' fraud claims did not reach this issue, see Order Granting

2    MTD at 8–11, Plaintiffs are granted leave to amend fraud claims not subject to dismissal with

3    prejudice on other grounds.  The rest of this section discusses which of Plaintiffs' fraud claims

4    must be dismissed with prejudice, and why.

5              ii.        **Affirmative misrepresentations.**

6             Plaintiffs allege two theories of fraud, one based on affirmative misrepresentations and the

7    other on fraudulent nondisclosure.  FAC ¶¶ 252–53.  The allegations based on affirmative

8    misrepresentations once again fail to meet Rule 9(b)'s heightened pleading standard.  See Order

9    Granting MTD at 8–10.  To adequately "state with particularity the circumstances constituting

10   fraud," Plaintiffs would have to "specify when" they were exposed to the defendant's

11   misrepresentations and "which ones [they] found material."  Kearns v. Ford Motor Co., 567 F.3d

12   1120, 1126 (9th Cir. 2009).  Plaintiffs fail to do so.  Although they now plead the specific contents

13   of various and sundry false statements made in advertisements, training, and other materials, see

14   FAC ¶¶ 97–110, the closest they come to specifying when they encountered those misstatements is

15   an allegation that at some point before starting work as a Volkswagen salesperson "in or about

16   2011," Gaines saw fraudulent claims in unspecified Volkswagen ads "on television and in print

17   media," id. ¶¶ 15–16, and that he was exposed to additional false claims in training materials

18   provided by Volkswagen, id. ¶ 16.  This does not adequately specify when Gaines (or any other

19   plaintiff) was exposed to the false claims or which ones he found material, and thus fails to allege

20   the "who, what, when, where, and how of the misconduct alleged."  See Kearns, 567 F.3d at 1126.

21   Because Plaintiffs have failed to cure this deficiency in their affirmative misrepresentation theory

22   of fraud, even after an opportunity to amend, see Order Granting MTD at 9, the fraud claims based

23   on affirmative misrepresentations are dismissed with prejudice.  See Leadsinger, 512 F.3d at 532.

24             iii.       **Fraudulent concealment.**

25            To plead a claim for fraudulent concealment under California law, a plaintiff must allege

26

27   _____

28   See Redfearn v. Trader Joe's Co., 230 Cal. Rptr. 3d 98, 111 (Cal. Ct. App. 2018) (negligent
     interference claims require showing of proximate cause).  But since these claims may be dismissed
     with prejudice on other grounds, it is unnecessary to consider the issue in depth.

1  "knowing concealment or non-disclosure by a defendant with the intent to defraud, which induces

2  justifiable reliance and causes injury to the plaintiff." Tsai v. Wang, No. 17-cv-00614-DMR, 2017

3  WL 2587929, at *3 (N.D. Cal. June 14, 2017) (internal quotation marks and citations omitted).

4  The plaintiff must also allege "that the defendant was under a legal duty to disclose [the

5  concealed] facts." Los Angeles Mem'l Coliseum Comm'n v. Insomniac, Inc., 233 Cal. App. 4th

6  803, 831 (Cal. Ct. App. 2015).  California courts recognize four circumstances giving rise to such

7  a duty: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the

8  defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the

9  defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes

10  partial representations but also suppresses some material facts." LiMandri v. Judkins, 60 Cal.

11  Rptr. 2d 539, 543 (Cal. Ct. App. 1997).  Plaintiffs argue that active concealment and partial

12  representations are adequately alleged.  Opp'n to VW MTD at 21.

13     Both claims necessarily fail against Bosch and Volkswagen AG.  California courts have

14  held that "[e]ach of the [latter] three circumstances in which nondisclosure may be actionable

15  presupposes the existence of some other relationship between the plaintiff and defendant in which

16  a duty to disclose can arise." LiMandri, 60 Cal. Rptr. 2d at 543.  That relationship must be

17  transactional. Id.  For instance, "a duty to disclose may arise from the relationship between seller

18  and buyer, employers and prospective employee, doctor and patient, or parties entering into any

19  kind of contractual agreement." Id.  Plaintiffs allege no such relationship between themselves and

20  Bosch or Volkswagen AG.  Because Plaintiffs have twice failed to adequately allege fraud claims

21  against Bosch and Volkswagen AG, and those claims suffer from multiple deficiencies, the Court

22  concludes that leave to amend would be futile.  Dismissal of the fraud claims against Bosch and

23  Volkswagen AG is with prejudice.  See Leadsinger, 512 F.3d at 532.  In contrast, Plaintiffs allege

24  that they entered a contractual agreement with Volkswagen Group of America, so this requirement

25  is met as to that defendant.  FAC ¶ 218.

26     Plaintiffs have also once again failed to adequately allege a duty to disclose based on

27  partial representations.  Contrary to Plaintiffs' position, and as this Court has previously held,

28  Rule 9(b)'s heightened pleading standard applies to claims based on fraudulent omissions.  See

United States District Court
Northern District of California

11

Order Granting MTD at 11; see also Espineli v. Toyota Motor Sales, U.S.A., Inc., No. 2:17-cv-00698-KJM-CKD, 2019 WL 2249605, at *4 (E.D. Cal. May 24, 2019).  While courts in this district have recognized that plaintiffs cannot identify the contents and circumstances of an omission as specifically they would an affirmative misrepresentation, see MacDonald v. Ford Motor Co., 37 F. Supp. 3d 1087, 1096 (N.D. Cal. 2014), that does not excuse their obligation to plead with particularity the circumstances surrounding any partial representations giving rise to a duty to disclose, see Espineli, 2019 WL 2249605, at *4–5.  Because Plaintiffs' partial representations theory previously failed for the same reason, this fraud theory is dismissed with prejudice.

Plaintiffs also argue they have adequately alleged that the defendants' active concealment of the emissions fraud gave rise to a duty to disclose.  The FAC does sufficiently allege this theory of fraudulent omission.  To plead a duty to disclose based on active concealment, a plaintiff must plead more than "mere nondisclosure."  Espineli, 2019 WL 2249605, at *8 (internal citations and quotation marks omitted).  The complaint must allege "affirmative acts on the part of the defendants in hiding, concealing or covering up the alleged defect."  Id. (internal citations and quotation marks omitted).  In analogous cases involving product defects, courts in this district have found this standard satisfied by allegations that the defendant had knowledge of the defect and failed to appropriately address the problem.  See, e.g. Mui Ho v. Toyota Motor Corp., 931 F. Supp. 2d 987, 998–99 (N.D. Cal. 2013).  The FAC alleges a good deal more: it contains detailed allegations of a long-running conspiracy to hide the emissions fraud from regulators and consumers.  FAC ¶¶ 28–54.  Because Plaintiffs have adequately alleged a duty to disclose based on active concealment, they may file a Second Amended Complaint which addresses the deficient theory of proximate cause underlying the fraudulent concealment claim against Volkswagen Group of America.

### d.    Negligent Interference

To state a claim for negligent interference with prospective economic advantage, Plaintiffs must allege, inter alia, "that . . . an economic relationship existed between the plaintiff and a third

party which contained a reasonably probable future economic benefit or advantage to plaintiff." N. Am. Chem. Co. v. Superior Court, 69 Cal. Rptr. 2d 466, 479 (Cal. Ct. App. 1997). This Court previously dismissed Plaintiffs' negligent interference claims for failure to identify any such economic relationship "with particularity." Order Granting MTD at 7–8. Plaintiffs now identify three third parties with whom they enjoyed economic relationships: customers who, but for the fraud, might have purchased Volkswagen vehicles from them, the dealerships who otherwise would have paid them more in commissions, and Volkswagen who, but for Bosch's role in the scheme, would have paid Plaintiffs additional direct payments. Opp'n to VW MTD at 15–17; Opp'n to Bosch MTD at 13–15.

However, the negligent interference claims are still inadequately pled, because Plaintiffs fail to adequately allege that those relationships "contained a reasonably probably future economic benefit or advantage." See N. Am. Chem. Co., 69 Cal. Rptr. 2d at 479. Plaintiffs cannot rely on hypothetical future sales to unspecified customers because the alleged economic relationship must be "with a particular individual." Amaretto Ranch Breedables, LLC v. Ozimals, Inc., No. CV 10-5696 CRB, 2013 WL 3460707, at *7 (N.D. Cal. July 9, 2013). Since Plaintiffs cannot identify a particular customer who would have bought a car from them but for the fraud, they cannot satisfy this requirement.

The cases Plaintiffs cite are not to the contrary. See Opp'n to VW MTD at 15–16. Those decisions either involved plaintiffs who did provide examples of economic relationships whose benefits they were denied, see Cheverez v. Plains All Am. Pipeline, LP, No. CV15-4113 PSG (JEMx), 2016 WL 4771883, at *8 (Mar. 4, 2016 C.D. Cal.) (plaintiffs identified specific cancelled reservations resulting from oil spill), or who identified a relationship with a specific, albeit unidentified, individual, see Ramona Manor Convalescent Hosp. v. Care Enters., 225 Cal. Rptr. 120, 125–26 (Cal. Ct. App. 1986) (plaintiff need not allege the "injured party's specific identity or name"). Plaintiffs allege neither specific examples nor that they enjoyed an economic relationship with a specific but unidentified customer. And Plaintiffs' argument that repeat customers are important in their trade has been rejected by another decision of this district. Google Inc. v. Am. Blind & Wallpaper Factory, Inc., No. C 03-05340 JF, 2005 WL 832398, at *9 (N.D. Cal. Mar. 30,

United States District Court
Northern District of California

13

United States District Court
Northern District of California

2005) (allegations that "repeat customers" were likely to purchase plaintiffs' goods in the future were "too speculative to support" a negligent interference claim, and represented "merely a hope and a desire for unspecified future sales to unspecified returning customers" (internal quotation marks and alterations omitted)).  Finally, statistics showing a global drop in sales of Volkswagen vehicles after the fraud was revealed are no help, see FAC ¶¶ 163–65, because aggregated data does not identify a particular economic relationship or benefit.

That sales to hypothetical future customers were "at most a hope for an economic relationship and a desire for future benefit" is fatal to Plaintiffs' other alleged economic relationships as well.  See Westside Ctr. Assocs. v. Safeway Stores 23, Inc., 49 Cal.Rptr.2d 793, 804, 806 (Cal. Ct. App. 1996).  The ostensible lost economic benefit from both relationships was derivative of sales to customers: commissions from the dealerships and direct payments from Volkswagen.  If the sales are too speculative to support a negligent interference claim, the commissions and direct payments necessarily are as well.

Because this was Plaintiffs' second chance to plead a sufficiently particular economic relationship "which contained a reasonably probable future economic benefit or advantage," N. Am. Chem. Co., 69 Cal. Rptr. 2d at 479, and they have once again failed to do so, dismissal is with prejudice.  See Leadsinger, 512 F.3d at 532.  It is therefore unnecessary to address other arguments against these claims.

### e.    Employment Claims

Plaintiffs assert various California employment law claims against Volkswagen.  To successfully plead these claims and other state-law claims derivative of the ostensible employment violations Plaintiffs must adequately allege that Volkswagen was their employer.  Ochoa v. McDonald's Corp., 133 F. Supp. 3d 1228, 1232 (N.D. Cal. 2015).

Plaintiffs' position is that Volkswagen is their joint employer along with their respective dealerships.  Opp'n to VW MTD at 23.  "[T]he California Supreme Court has provided three alternative definitions for what it means for a person or entity to 'employ[ ]' someone: '(a) to exercise control over the wages, hours or working conditions, or (b) to suffer or permit to work, or

14

1    (c) to engage, thereby creating a common law relationship." Salazar v. McDonald's Corp., 944

2    F.3d 1024, 1029 (9th Cir. 2019) (quoting Martinez v. Combs, 231 P.3d 259, 277–79 (Cal. 2010)).

3    Plaintiffs rely on three allegations to argue that one or more of these definitions is met: that

4    Volkswagen paid them directly, required certain trainings, and could order the dealerships they

5    worked for to stop selling its vehicles. Opp'n to VW MTD at 23–24. These allegations satisfy

6    none of the three definitions of employment utilized by California courts.

           iv.    **Control.**

7
8    Plaintiffs argue that Volkswagen controls their wages because it directly pays them

9    incentive compensation tied to metrics such as the number of vehicles they sell. Id. at 23. But

10   California courts have concluded that "'control over wages' means that a person or entity has the

11   power or authority to negotiate and set an employee's rate of pay." Futrell v. Payday Cal., Inc.,

12   119 Cal. Rptr. 3d 513, 524 (Cal. Ct. App. 2010). Volkswagen's payment of additional

13   compensation on top of the rate negotiated and set by the dealerships cannot meet this standard.

14   Another Northern District of California decision has previously rejected an analogous argument.

15   Johnson v. Serenity Transportation, Inc., 141 F. Supp. 3d 974, 998 (N.D. Cal. 2015) ("While . . .

16   the Customer Defendants' initial fee contributes to the ultimate determination of how much

17   drivers receive, Serenity Transportation alone is alleged to have responsibility for determining the

18   rate at which drivers were ultimately paid.").

19   Plaintiffs also argue that Volkswagen's training constitutes control over their working

20   conditions. Opp'n to VW MTD at 24. But courts have repeatedly rejected arguments that

21   mandatory training demonstrates the level of control necessary to show employer status. Johnson,

22   141 F. Supp. 3d at 998.

23   Finally, Plaintiffs argue that because Volkswagen could stop sales of its vehicles, it could

24   prevent them from working, and thus controlled both their wages and their working conditions.

25   Opp'n to VW MTD at 24. But the power to stop a retailer from selling one's wares is not the

26   same as the power to fire its employees or set their wages, as demonstrated by cases holding that

27   franchisors were not joint employers with franchisees who sold their products. See, e.g. Salazar,

28

United States District Court
Northern District of California

944 F.3d at 1027 (McDonalds was not joint employer with its franchisee, even though franchisee was required to sell McDonald's products).

### v.   Suffer or permit.

The "suffer or permit" definition of employment refers to a "defendant's knowledge of and failure to prevent the work from occurring." Id. at 1030 (internal quotation marks and citations omitted).  It requires the power to hire and fire.  Id. at 1031.  Plaintiffs suggest Volkswagen had this power because it required certain training and "through the stop sales order it halted much of their work."  Opp'n to VW MTD at 25.  These arguments are self-evidently deficient.  Requiring training is not tantamount to the power to fire.  If the requirement was met, Volkswagen had no authority to remove the salesperson in question.  And it is even more obviously not tantamount to the power to hire.  As for the stop sales order, Plaintiffs' own briefing acknowledges that it "halted much"—but not all—"of their work."  Id.  That does not reveal the power to fire, much less to hire.  And, as noted above, similar arguments have been rejected by the Ninth Circuit and previous Northern District of California decisions.

### vi.   Common law relationship.

"According to California common law, the principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired."  Salazar, 944 F.3d at 1032 (internal quotation marks and citations omitted).  Volkswagen's direct payments to salespeople and authority to stop sales of its own vehicles do not implicate the "manner and means" by which Plaintiffs sold Volkswagen cars. And, as previously noted, mandatory training has previously been found insufficient to demonstrate an employment relationship.  Indeed, far greater control over the manner and means of work has been rejected as inadequate to allege an employment relationship.  See id. at 1027–28, 1032 (although McDonalds required franchisee to sell its products, use certain computer systems, employ Hamburger University-educated managers, and have employees wear standardized uniforms, these requirements merely constituted "quality control and maintenance of brand standards" and did not demonstrate a common law employment relationship).

Plaintiffs point out that "[a]t this stage [they] must only establish the plausibility of their joint employer claims." Opp'n to VW MTD at 27. But they have failed to do even that. The employment claims are dismissed. Both sides agree that that result also requires dismissing Plaintiffs' waiting time penalties, wage statement, and UCL claims because those claims are derivative of the Labor Code claims. VW MTD at 25 n.22; Opp'n to VW MTD at 29. Those claims are dismissed as well. Because Plaintiffs have not previously had a chance to amend these claims, dismissal is without prejudice.

## IV.    CONCLUSION

For the forgoing reasons, the motions to dismiss are granted. Plaintiffs are granted leave to amend only the Labor Code claims, claims derivative of the Labor Code claims, and claims based on fraudulent omissions by Volkswagen Group of America. Any amended complaint must be filed within forty-five days of the filing of this Order.

**IT IS SO ORDERED.**

Dated:   June 18, 2020

_____
CHARLES R. BREYER
United States District Judge