Raymond P. Boucher (SBN 115363)
Maria L. Weitz (SBN 268100)
BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903
Tel:  (818) 240-5400
Fax:  (818) 340-5401
ray@boucher.la
weitz@boucher.la

[Additional Counsel on Following Page]

Attorneys for Saavedra Plaintiffs
and the proposed Class

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LIGITATION | Case No. 3:15-md-02672-CRB<br><br>CLASS ACTION<br><br>**PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |
| This Document Relates To:<br><br>Saavedra, et al. v. Volkswagen Aktiengesellschaft, et al.,<br>    Case No. 3:16-cv-07214-CRB<br><br>Gaines v. Volkswagen Group of America, Inc.,<br>    Case No. 3:17-cv-01114-CRB | |

1

Todd M. Schneider (SBN 158253)
Carolyn Hunt Cottrell (SBN 166977)
SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel: (415) 421-7100
Fax: (415) 421-7105
tschneider@schneiderwallace.com
ccottrell@schneiderwallace.com

Sahag Majarian II (SBN 146621)
LAW OFFICES OF SAHAG MAJARIAN II
18250 Ventura Blvd.
Tarzana, California 91356
Tel:  (818) 609-0807
Fax: (818) 609-0892
sahagii@aol.com

Attorneys for Saavedra Plaintiffs and the proposed Class

Marcus J. Bradley
Kiley L. Grombacher
Robert N. Fisher
BRADLEY/GROMBACHER, LLP
2815 Townsgate Road, Suite 130
Westlake Village, California 91361
Tel: (805) 212-5124
Fax: (805) 270-7589
mbradley@bradleygrombacher.com
kgrombacher@bradleygrombacher.com
rfisher@bradleygrombacher.com

Justin Sterling
THE STERLING FIRM
9031 Phyllis Avenue, Suite 1
West Hollywood, California 90069
Tel: (310) 498-2750
Fax: (310) 734-7102

[Additional Counsel on Following Page]

///

///

///

2

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
**Lead Case No. 3:15-md-02672-CRB**

Robert C. Hayden
Richard E. Williamson
EZER WILLIAMSON LAW, A PROFESSIONAL CORPORATION
21515 Hawthorne Boulevard, Suite 1150
Torrance, California 90503
rch@ezerwilliamsonlaw.com
rew@ezerwilliamsonlaw.com
Tel: (310) 277-7747
Fax: (310) 277-2576

Attorneys for Gaines Plaintiff and the proposed Class

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
**Lead Case No. 3:15-md-02672-CRB**

Plaintiffs Robert Saavedra, Armando Rodriguez and Mickey Gaines (referred to as "Plaintiffs"), by their attorneys individually, on behalf of themselves and on behalf of all others similarly situated (the "VW Commissioned Vehicle Sales Representatives") bring this complaint against Defendants Volkswagen Aktiengesellschaft ("VW AG") and Volkswagen Group of America, Inc. ("VW America") (together, "Volkswagen").Plaintiffs allege, upon personal knowledge and belief as to their own acts, and upon information and belief (based upon the investigation of counsel) as to all matters to which allegations Plaintiffs believe substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery on behalf of themselves and all others similarly situated as follows:

**INTRODUCTION**

1.      Volkswagen and Bosch flouted the laws of the United States, pursuant to the publicly known "Dieselgate scandal" which has proven to have a substantial impact on the Volkswagen brand value and the sales of vehicles for which the individual vehicle sales representatives are commissioned.   Volkswagen and Bosch engaged in the fraudulent and deliberate use of a "defeat device," a secret software algorithm that was designed and installed to cheat emission tests.  The "defeat device" was designed and installed in Volkswagen diesel automobiles to dupe the Environmental Protection Agency ("EPA"), among other regulators, into approving the sale of non-compliant cars ("Defective Vehicles").  To do this, the "defeat device" detects when diesel engines are being tested in laboratory conditions and triggers functions that sacrifice performance in favor of limited emissions, bringing total emissions in line with regulatory requirements.  In normal use, the automobile performs at a higher level and emits pollutants in quantities well in excess of the legal limit.  As such, the Defective Vehicles cannot be legally operated in the United States.

2.      For years, Volkswagen's use of the "defeat device" went undetected.  Defective Vehicles were sold into the stream of commerce.  Indeed, Volkswagen advertised itself as an innovator in "Clean Diesel" technology.

///

3.      Volkswagen and Bosch's "defeat device" scheme ultimately backfired.  In the fall of 2015, following pressure from regulators, Volkswagen admitted to the use and function of defeat devices.  Volkswagen further admitted that millions of cars worldwide have defeat device software.  Volkswagen's defeat device scheme ultimately led to a host of legal actions. For example, several Volkswagen entities entered into, and a Federal Court approved, a class action settlement agreement between, inter alia, several Volkswagen entities and a class of consumers.  The class action settlement provides consumers with the opportunity to sell back or modify specified Volkswagen automobiles from model years spanning from 2009 to 2015.

4.      By manufacturing and selling cars with defeat devices that allowed for higher levels of emissions than was certified to the Environmental Protection Agency ("EPA"), and higher levels than state and federal regulations allow, Volkswagen violated the Clean Air Act and state environmental regulations, defrauded the public, and engaged in unfair competition under state and federal laws.

5.      This case arises because the Volkswagen and Bosch emission fraud has also caused harm to the hard-working men and women who make their livelihood selling vehicles in the Volkswagen brand.  Indeed, the resulting drop in the value of the vehicles affected by "Dieselgate" and the diminution of the Volkswagen brand more generally has caused direct and quantifiable harm to Plaintiffs and the Class.  As a result of this scheme, consumers across the nation came to associate the Volkswagen brand with the Defective Vehicles and fraudulent conduct, and salespersons ("SPs") across the nation experienced a sudden drop in customer inquiries, potential sales, and, ultimately, personal income.

6.      As a direct result of Volkswagen and Bosch's fraud, Plaintiffs and other Salespersons became misclassified as exempt employees, resulting in systematic violations of California's wage and hour laws.

7.      Volkswagen is properly viewed as a joint employer of SPs with any and all franchise dealers. In California, compensation policies applicable to SPs are uniform: SPs are classified as exempt pursuant to the Commissioned Salesperson Exemption. To qualify for this

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
**Lead Case No. 3:15-md-02672-CRB**

exemption: (1) Salespersons must earn at least 1.5 times California's minimum wage, and (2) At least 50% of Salespersons' compensation, each pay period, must derive from commissions. However, Salespersons are not necessarily compensated by commission.  In the beginning of each month, SPs are compensated by the greater of their hourly wages, or, commissions. Following Volkswagen's stop sale order in the fall of 2015, SPs working in the State of California routinely were prevented from earning commissions that outpaced their hourly wages, rendering them non-exempt employees as a matter of law.  As a result of this misclassification, Volkswagen systematically violates California's wage and hour laws.

8.      Moreover, even where the Commissioned Salesperson Exemption applies and exempts SPs from California's overtime requirements, Volkswagen was still required to separately compensate California SPs for rest breaks – breaks which, as a matter of law, are not compensated by commissions.  As a matter of uniform policy, Volkswagen does not separately compensate Salespersons for rest breaks.

9.      Based on the above, and as detailed below, Plaintiffs, on behalf of themselves and a Class of all Salespersons in all 50 states and the District of Columbia, hereby bring this action for violations of the federal Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1961 et seq. ("RICO")) and for common law breach of contract, fraud, and negligent interference with prospective economic advantage.  Plaintiffs seek to recover monetary damages (including treble damages under RICO) for their lost compensation and business caused by the defeat device fraud.

10.      On behalf of themselves and a Class of California Salespersons, Plaintiffs seek redress for Volkswagen's policies and practices of (1) misclassifying Plaintiffs and proposed Class members as exempt employees; (2) failing to authorize and permit Plaintiffs and proposed Class members to take meal and rest breaks to which they are entitled by law; (3) failing to pay Plaintiffs and proposed California Sub-Class members minimum wage for all time worked; (4) failing to pay Plaintiffs and proposed Class members overtime wages; (5) failing to provide Plaintiffs and proposed California Sub-Class members accurate, itemized wage statements; (6)

1   failing to timely pay Plaintiffs and proposed California Sub-Class members full wages upon

2   termination or resignation; and (7) failing to reimburse Plaintiffs and proposed California Sub-

3   Class members for necessary business expenses.

4                                                   **PARTIES**

5          11.     Plaintiff Robert Saavedra ("Plaintiff Saavedra") is an individual over the age of

6   eighteen, and, at all times mentioned in this Complaint, was a resident of the County of Los

7   Angeles, State of California.  Plaintiff Saavedra has worked as a SP at car dealerships selling

8   Volkswagen automobiles from approximately 2010 to 2017, and then from approximately

9   February 2019 to the present.  He has also been certified as a SP throughout that time period.

10  Plaintiff Saavedra receives incentive compensation from VW America for each Volkswagen

11  automobile he sells.  He also receives compensation from other sources tied to the number of

12  Volkswagen automobiles he sells. If Saavedra's commissions did not exceed his hourly wages,

13  he would be paid hourly wages instead of commissions .

14         12.     Plaintiff Armando Rodriguez ("Plaintiff Rodriguez") is an individual over the

15  age of eighteen, and, at all times relevant to this Complaint, was a resident of the County of Los

16  Angeles, State of California.  Plaintiff Rodriguez worked at car dealerships selling Volkswagen

17  automobiles between approximately June 2013 and July 2016, and later from approximately

18  April 2019 to the present.  Plaintiff Rodriguez obtained his certification as a SP in or around the

19  beginning of 2014.  Rodriguez received compensation from VW America for each Volkswagen

20  automobile he sold as an SP.  He also received compensation from other sources tied to the

21  number of Volkswagen automobiles he sold. If Plaintiff Rodriguez's commissions did not

22  exceed his hourly wages, he would be paid hourly wages instead of commissions.

23         13.     Plaintiff Mickey Gaines ("Plaintiff Gaines") is an individual over the age of

24  eighteen, and, at all times relevant to this Complaint, was a resident of the County of Los

25  Angeles, State of California.  Plaintiff Gaines is employed as a commissioned VW sales

26  representative for Volkswagen Van Nuys in Van Nuys, California, and previously worked at

27  Livingston VW in Woodland Hills, California.  Plaintiff Gaines has been employed as a SP

28

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
**Lead Case No. 3:15-md-02672-CRB**

since in or about 2011.  He has also been certified as a SP throughout that time period.  As such, he receives incentive compensation from VW America for each Volkswagen automobile he sells.  He also receives compensation from other sources tied to the number of Volkswagen automobiles he sells.  If Plaintiff Gaines's commissions did not exceed his hourly wages, he would be paid hourly wages instead of commissions.

14.     Defendant VW AG is a German corporation with its principal place of business in Wolfsburg, Germany.  VW AG is in the business of designing, developing, manufacturing, and selling automobiles.  On information and belief, VW AG is the parent company of VW America, Audi AG, and Porsche AG.  According to VW AG, it sold 10.14 million cars worldwide in 2014—including 6.12 million VW-branded cars, 1.74 million Audi-Branded cars, and 189,849 Porsche-branded cars.  Combined with other brands, VW AG boasts a 12.9% share of the worldwide passenger car market.  VW AG's sales revenue in 2014 totaled €202 billion (approximately $221 billion) and sales revenue in 2013 totaled €197 billion (approximately $215 billion).  At €12.7 billion (approximately $13.9 billion), VW AG generated its highest ever operating profit in fiscal year 2014, beating the previous record set in 2013 by €1.0 billion (approximately $1.1 billion).

15.     On information and belief, VW AG and Bosch engineered, designed, manufactured, and installed the defeat device software in Defective Vehicles and exported these vehicles with the knowledge and understanding that they would be sold throughout the United States.  On information and belief, VW AG also developed, reviewed, and approved marketing and advertising campaigns designed to sell the Defective Vehicles.

16.     Volkswagen Group of America, Inc. is a corporation doing business including, the advertising, marketing and sale of Volkswagen automobiles, in all 50 states (including the District of Columbia) and is organized under the laws of the State of New Jersey, with its principal place of business located at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171.  VW America is a wholly-owned subsidiary of Volkswagen AG, and it engages in business, in all 50 states.  In 2014 alone, VW America sold 552,729 vehicles from its 1,018 dealer locations

in all 50 states, including 95,240 TDI® "Clean Diesel" vehicles.  These vehicles were sold by commissioned sales representatives.  On information and belief, VW America is a wholly-owned subsidiary of VW AG.

17.     Plaintiffs are informed and believe, and thereon allege, that Defendants, at all times herein mentioned, were the partners, joint venturers, subsidiaries, successors in interest, managing agent, merged entities, agents, alter egos, part of a jointly owned, managed, and/or operated business enterprise, and/or employees of each other Defendant and in doing the acts, omissions, and things alleged herein were acting as such and within the scope of their authority as such agents and employees and with the permission and consent of all other Defendants.

JURISDICTION

18.     The Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs.  The Court has personal jurisdiction over Defendants pursuant to 18 U.S.C. § 1965(b), (d) and Cal. Code Civ. P. § 410.10.

## VENUE

19.     Venue is proper under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.  Volkswagen has marketed, advertised, sold, and leased Defective Vehicles, and Defendants otherwise conducted extensive business, in this District.  Moreover, multidistrict litigation involving the claims of consumers who purchased Defective Vehicles was venued in this District.

## INTRADISTRICT ASSIGNMENT

20.     This action is properly assigned to the San Francisco Division of this District pursuant to N.D. Cal. L.R. 3-2 because a substantial part of the events or omissions giving rise to Plaintiffs' claims arose in the counties served by the San Francisco Division.  Volkswagen conducts substantial business in the counties served by this Division, has marketed, advertised,

9

1   sold, and leased automobiles in those counties, and has caused harm to Class members residing

2   in those counties.  Moreover, multidistrict litigation involving the claims of consumers who

3   purchased Defective Vehicles was assigned to the San Francisco Division of this district.

4                                   **FACTUAL ALLEGATIONS**

5          **Exposure of the Fraud and Consumer Fall Out**

6          21.     Volkswagen's dieselgate scam has been well documented.

7          22.     The fallout from the discovery of Volkswagen's misdeeds caused great harm to

8   VW Commissioned Vehicle Sales Representatives, like Plaintiffs whose profits have been

9   erased and whose commissions have plummeted in value due to the inability to sell tens of

10  thousands of vehicles and the significant decline in brand value for all Volkswagen vehicles as a

11  result of Volkswagen's purposeful fraud and deceit.

12         **The Effect of the Scandal on SPs**

13         23.     SPs obtain certification from Volkswagen to sell Volkswagen automobiles.  In

14  exchange, SPs are paid incentive compensation for each Volkswagen automobile they sell.  SPs

15  also receive compensation from other sources for selling Volkswagen automobiles, as

16  Volkswagen is aware.

17         24.     Theoretically, the bulk of SP compensation is tethered to commissions.

18  Nevertheless, SPs clock in and out for work, their time is tracked, and SPs are given an hourly

19  rate for their services.  But as long as SP commissions outpace the value of their aggregate

20  hourly rates in a given pay period, the compensation SPs receive is comprised of commissions,

21  not hourly wages.  However, if SP commissions do not exceed the value of their hourly rates,

22  they do not receive any commissions, but instead receive the value of their hourly rates – which

23  typically are little more than California's minimum wage (around $9-10 per hour).

24         25.     SPs commissions are determined based upon a set formula.  Specifically, the

25  majority of the compensation received by SPs derives from a percentage payment (ranging

26  between 25% and 30% ) of the "front end" profits from the sale of the vehicles.  The "front end"

27

28

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
**Lead Case No. 3:15-md-02672-CRB**

1    is the difference between the dealer's invoice cost and the amount the customer actually paid for

2    the vehicle.

3          26.    Where SPs sell a vehicle at or below the cost or invoice price, they are

4    guaranteed a payment in an amount of or about $150.00.

5          27.    SPs are also compensated for bonuses based upon a non-discretionary bonus

6    matrix.  Under such matrix, SPs will receive a lump sum bonus payment if they are able to sell a

7    target number of vehicles in a given month.  For example, if one of the Plaintiffs sells twelve

8    (12) vehicles in a given month he is entitled to a lump sum payment of $500.00.  This payment

9    is increased as the SPs hit higher target numbers.

10         28.    Additionally, programs such as the "Fast Start" program provide further

11   opportunities for SPs to earn compensation.  Such programs are, again, tethered, directly to the

12   Volkswagen's Commissioned Sales Representatives' volume of sales in a given time period.

13   For example, the "Fast Start" program provides a lump sum monetary payment to

14   Volkswagen's Commissioned Sales Representatives who sell a given number of vehicles within

15   the first fifteen (15) days of the month.

16         29.    Another component of the compensation provided to SPs comes directly from

17   Volkswagen.  This includes payments for each sale made as well as VW Elite cash bonus

18   incentives.

19         30.    By contractual agreement, these VW Elite cash bonus incentives are provided

20   directly to the commissioned sales representatives by Volkswagen by electronic fund transfer

21   onto Visa credit cards.

22         31.    In the Fall of 2015, Volkswagen affirmatively prevented SPs from selling

23   between 25-40% of all vehicles on a given lot when it issued its "stop sale" order.  Volkswagen

24   did not procure or provide any additional vehicle inventory to make up for this shortcoming –

25   again, actively preventing SPs from selling cars.

26         32.    VW Elite cash bonus incentives are based on Customer Service Index or "CSI"

27   performance.  CSI is a VW corporate monitored performance of behavior which measures the

28

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
**Lead Case No. 3:15-md-02672-CRB**

manner in which commissioned sales representative represent the product and, more broadly, the VW brand to the consumer.

33.     CSI scores are an important part of everyday life at a dealership, and for good reason. Automakers want to hear from customers in order to gauge how well the franchise is doing in key areas, primarily customer satisfaction with the sales process. On the dealership level, these scores often determine future inventory. The better the score, the more likely a dealership is to get in-demand vehicles. Depending on the manufacturer, CSI scores also can affect the quarterly or annual bonuses it pays to the dealership, which are often essential to the dealership's bottom line.

34.     In car dealerships, it's common to hear salespeople ask — even beg — for customers who have just bought cars to give them top marks in the customer satisfaction surveys that will soon arrive. Here's why: The salesperson's pay, and potentially the job itself, may very well depend on getting perfect 10s in this survey.

35.     A CSI target of 95% or higher is quite common in dealerships. And a cumulative monthly CSI score lower than the target score will likely take a salesperson out of the running for bonus pay, which can easily exceed a third of the salesperson's total earnings. This threat of income loss is why salespeople, and sometimes managers, are so insistent on getting the highest marks possible on surveys. That is all 10s, and nothing less.

36.     It doesn't take much to bring a salesperson's CSI score below the store goal. Imagine that a salesperson received seven surveys in a month. If six of those surveys had a 95% satisfaction score and just one 90% score, she'd have an overall CSI score of 94%. She missed that month's target. Should a salesperson receive too many 94% CSI survey scores in a given time frame, she might not only miss out on additional income. Her job could be in jeopardy.

37.     Plaintiffs obtained their certification to sell Volkswagen automobiles in or around 2010, 2014, and 2011 respectively.  Plaintiff Saavedra received incentive compensation from Volkswagen for the sales of Volkswagen automobiles he made throughout the time period from 2010 to the present.  Plaintiff Rodriguez received incentive compensation from

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
**Lead Case No. 3:15-md-02672-CRB**

Volkswagen for the sales of Volkswagen automobiles he made throughout the time period between early 2014 and July 2016. Plaintiff Gaines received incentive compensation from Volkswagen for the sales of Volkswagen automobiles he made throughout the time period from 2011 to the present.

38.     Plaintiffs also received compensation from other sources tied to the number of Volkswagen automobiles they sold during the same, respective, periods.

39.     Once the "Dieselgate" scandal went public in 2015, the value of the Volkswagen brand was greatly diminished, sales of VW diesels were completely halted by the stop-sale order issued by Volkswagen, and sales of all VW vehicles plummeted. In November of 2015, Forbes reported that Volkswagen's passenger brand witnessed a fall of 5.3% in vehicle deliveries worldwide in the month of October, bringing the year-to-date drop in sales to 4.7%. This brand alone constitutes approximately 60% of the net volumes for the group, and thus the continual slowdown in sales for the namesake passenger brand is weighing on the group's overall performance.

40.     In July of 2016, Bloomberg reported that sales of Volkswagen vehicles tumbled 17% in May of that year. The Jetta line, the brand's best-selling models, fell 22% from a year earlier while the Passat dropped 14%.

41.      Indeed, Volkswagen AG admitted that its world-wide sales declined in 2015 for the first time since 2002. December sales dropped 5.2% to 834,800 vehicles, while full-year sales declined 2% to 9.9 million cars.

42.     Given the compensation structure of SPs, which was based in many ways upon sales volume, such losses directly resulted in decreased commissions for Plaintiffs and the Class.

43.     SPs were unaware that Volkswagen was selling Defective Vehicles through an organized scheme intended to defraud the government regulators, consumers, SPs, and the public at large. SPs would not have become SPs, and would not have sold Volkswagen automobiles, including Defective Vehicles, had they known of Volkswagen's unlawful scheme.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
**Lead Case No. 3:15-md-02672-CRB**

44.     Accordingly, SPs, who have bound their livelihood to the Volkswagen brand, have seen a sharp decrease in their compensation, including in the incentive payments they receive from Volkswagen and other compensation from other sources.  Plaintiffs, for their part, have seen a substantial decrease in their sales and compensation in the time period since the fraud became public.

Violations of California Wage and Hour Laws Resulting From Dieselgate

45.     Volkswagen is a joint employer of the SPs and is liable for the wage and hour violations as to Plaintiffs and members of the putative California Class, defined hereinafter.

46.     Volkswagen maintains direct control over the wages, hours, and working conditions of Plaintiffs and members of the putative California Class. Indeed, Volkswagen directly and routinely compensates SPs for their work.

47.     Volkswagen is in a close business relationship with its franchise dealers, and works together with the franchise dealers to provide the employment opportunity and compensation for SPs.

48.     Volkswagen provides mandatory, required training for the SPs. SPs must travel to the location designated by Volkswagen to complete these required trainings. Volkswagen requires the SP to complete these trainings in order to obtain certification to sell Volkswagen automobiles.

49.     With its control over required trainings and certifications, Volkswagen dictates whether the SPs can work for dealerships and sell Volkswagen vehicles. SPs cannot work at a Volkswagen dealership without Volkswagen's approval.

50.     In other words, SPs are not permitted to work at dealerships unless they complete Volkswagen's training and therefore, they are only permitted to work at the discretion of Volkswagen.

51.     For example, in or around March of 2020, Volkswagen organized a nationwide training program for a new vehicle.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
**Lead Case No. 3:15-md-02672-CRB**

52.     The training information was provided by Volkswagen, which also provided test vehicles, product knowledge specialists, and all other training materials and information.

53.     Each SP was required to attend this training in order to maintain their product certification status or they would not have been permitted to continue working at their dealership.

54.     This is but one example of Volkswagen's control over the training of SPs and therefore Volkswagen's control over whether each SP can work at a dealership.

55.     On information and belief, Volkswagen creates and maintains records relating to the SPs and, inter alia, completion of training by SPs, compensation paid directly by Volkswagen to the SPs, and tax reporting information for SPs.

56.     Volkswagen maintains direct control over the wages of Plaintiffs and members of the putative California Class because it pays compensation directly to SPs. This compensation includes, but is not limited to, the Volkswagen Elite cash bonus incentive program. Volkswagen unilaterally sets the rate of the compensation paid the SPs under these programs.

57.     Volkswagen maintains control over how the SPs complete their work. Volkswagen controls and provides the cars that SPs sell at Volkswagen dealerships. The SPs utilize the training and knowledge that they receive directly from Volkswagen in order to sell vehicles and complete sales transactions with customers.

58.     Volkswagen exercises complete control over the SPs ability to sell cars and earn compensation. Volkswagen determines which cars can and cannot be sold on franchise dealer lots. Volkswagen can unilaterally determine that franchise dealers may not sell certain cars – previously authorized – as it did in 2015 when it issued a stop sale order.

59.     SPs perform an essential function of Volkswagen's business. Without SPs, Volkswagen would not be able to sell its vehicles to its customers.

60.     The relationship between Volkswagen and the SPs is permanent and ongoing, continuing for the entirety of each SPs tenure at a Volkswagen dealership.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
**Lead Case No. 3:15-md-02672-CRB**

61.     Defendants' global fraud has injured SPs in ways going far beyond the damages to employment and employment opportunities described above. When Volkswagen issued the stop sale order in the Fall of 2015, SPs – who are classified as exempt under the Commissioned Salesperson Exemption – routinely became misclassified.  This is hardly surprising.  After all, when the basis for an employment exemption is that at least 50% of compensation is derived from sales, and the employer – here, Volkswagen – removes nearly 50% of inventory without a corresponding reduction in salesforce, it is only logical that per-Salesperson commissions will plummet.  And indeed, based on Volkswagen's uniform compensation policy, this is precisely what happened following the stop sale order in the Fall of 2015.

62.     Beginning with the basics of Volkswagen's uniform SP compensation model: Each day, Salespersons clock in and out of work, and their time is valued at an hourly wage – typically around $9-10 an hour during the relevant time period.  Salespersons are paid once a month, and that payment corresponds to the prior month's work.  If the value of Salespersons' hourly wages exceeds their commissions, they are paid their hourly wages, and not for any commissions.  If Salespersons' commissions exceed their hourly wages, they are paid on their commissions, and receive no hourly wages. And while the pre-Dieselgate experiences of SPs found that hourly wages rarely outpaced commissions, following the stop-sale order in the Fall of 2015, it was all too common for SP compensation to be comprised of hourly wages, not commissions.  This uniform compensation policy systematically violates California labor laws. Indeed, whether SPs are compensated with commission pay or hourly pay, wage and hour violations are certain.

63.     When Volkswagen issued a stop sale order in the Fall of 2015, Volkswagen not only interfered with Salespersons business relationships with both dealers and consumers, but Volkswagen made it exceedingly difficult for Salespersons to accumulate commissions that would outpace their hourly rates in a given pay period.  Salespersons report that this was a frequent occurrence following Volkswagen's stop sale order: they simply did not have sufficient

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
**Lead Case No. 3:15-md-02672-CRB**

cars to sell, and could not sell enough cars, to earn commissions that would outpace their hourly rates, frequently resulting in compensation comprised of hourly wages, not commissions.

64.     Starting with those months where SPs receive commission pay: When the value of Salesperson commissions exceeds their hourly rates, and Salespersons are only paid on those commissions. However, as a matter of law, when SP compensation is comprised of commissions, Volkswagen was required to separately compensate SPs for rest breaks.  As a matter of uniform policy, Volkswagen does not separately compensate SPs for rest breaks.

65.     Similarly, when commissions exceed sales, Volkswagen does not compensate SPs for non-productive work time, or time spent under Volkswagen's control for Volkswagen's benefit. When commissions exceed the hourly rates, Volkswagen does not compensate SPs for all time worked.  Simply, when commissions exceed sales, SPs receive commissions and Volkswagen bonuses – nothing more.

66.     When the value of Salesperson hourly rates exceeds their commissions, and Salespersons are only paid on their hourly rates, Volkswagen globally misclassifies Sales persons, resulting in numerous wage and hour violations.  Under these circumstances, it is logically impossible for Salespersons to qualify for the Commissioned Salesperson Exemption, as at least 50% their compensation does not derive from commissions – to the contrary, under these circumstances, zero percent of their compensation derives from commissions – yet Volkswagen continues to treat these individuals as exempt from California's overtime requirements.  Likewise, SPs do not make at least 1.5 times the minimum wage, as their hourly rates or only nominally above the minimum wage – about $9-10 an hour.

67.     Volkswagen does not compensate these employees at the required overtime rate for work performed in excess of eight hours in a day, or forty hours in a week, but instead pays Salespersons their ordinary hourly rate for all time worked.

68.     Salesperson wage statements do not accurately reflect their hourly rates, the hours they work, or whether Salespersons are being compensated for hourly work or commissions.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
**Lead Case No. 3:15-md-02672-CRB**

69.     Meal periods provided to SPs do not comply with California law.  Whether these meal periods are taken or not, SPs are on duty, and must be available to take calls on their personal cellular telephones from customers or dealers.

70.     SPs also incur necessary business expenses in the discharge of their duties.  SPs are required to use their personal cellular telephones to work for Volkswagen, and must be accessible via cellular telephone in order to communicate with dealers and customers.

## CLASS ACTION ALLEGATIONS

71.     Plaintiffs bring this suit as a class action on behalf of themselves and all others similarly situated pursuant to Federal Rule of Civil Procedure ("FRCP") 23.  The Class that Plaintiffs seek to represent is defined as follows:

All current and former California Salespersons working at any Volkswagen dealership at any time from November 4, 2015 to present (herein referred to as the "California Class").

72.     This action has been brought and may properly be maintained as a class action under FRCP 23 because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

     a.     **Numerosity**:  The potential members of the Class as defined are so numerous that joinder of all the members of the Class is impracticable.

     b.     **Commonality**:  There are questions of law and fact common to Plaintiffs and the Class that predominate over any questions affecting only individual members of the Class.  These common questions of law and fact include, but are not limited to:

          i.     Whether Volkswagen is viewed as a joint employer of Plaintiffs and California Class members;

          ii.     Whether Volkswagen continues to classify SPs as exempt when their hourly wages exceed commissions in a given pay period;

          iii.     Whether Volkswagen compensates California Class members at the required overtime rate for work performed in excess of 8 hours in a day, and 40 hours in a week;

18

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
**Lead Case No. 3:15-md-02672-CRB**

iv.     Whether Volkswagen requires California Class members to remain on call during meal and rest breaks;

v.     Whether Volkswagen requires California Class members to use their personal cellular telephone in working for Volkswagen;

vi.     Whether Volkswagen separately compensates California Class members for rest breaks when their commissions exceed hourly wages; and

vii.     Whether Volkswagen separately compensates California Class members for all non-productive time when commissions exceed hourly wages;

c.     **Typicality:**  Plaintiffs' claims are typical of the claims of the Class. Defendant's common course of conduct in violation of law as alleged herein has caused Plaintiffs and proposed Class members to sustain the same or similar injuries and damages.  Plaintiffs' claims are thereby representative of and co-extensive with the claims of the Class.

d.     **Adequacy of Representation**:  Plaintiffs are members of the Class, do not have any conflicts of interest with other proposed Class members, and will prosecute the case vigorously on behalf of the Class.  Counsel representing Plaintiffs is competent and experienced in litigating large employment class actions, including wage and hour class actions.  Plaintiffs will fairly and adequately represent and protect the interests of the Class members.

e.     **Superiority of Class Action:**  A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of all proposed Class members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.  Each proposed Class member has been damaged and is entitled to recovery by reason of Defendants' illegal policies and/or practices.  Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. The injury suffered by

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
**Lead Case No. 3:15-md-02672-CRB**

each Class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendants economically feasible. Individualized litigation increases the delay and expense to all Parties and the Court. By contrast, class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

      i.     In the alternative, the Class may be certified because the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Class, and, in turn, would establish incompatible standards of conduct for Defendants.

## **FIRST CAUSE OF ACTION**

### **Failure to Compensate for All Hours Worked**

### **California Labor Code**

### **(On Behalf of the California Class Against VW AG and VW America)**

73. Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

74. Plaintiffs allege that Volkswagen willfully engaged and continues to engage in a policy and practice of not compensating Plaintiffs and putative California Class Members for all hours worked or spent in Volkswagen's control. Detailed above, Volkswagen required, suffered, and/or permitted Plaintiffs and the putative California Class to perform work for the benefit of Volkswagen without compensation, with Volkswagen's knowledge.

75. In particular, Plaintiffs allege that Volkswagen willfully failed to pay Plaintiffs and putative California Class Members for all hours worked when they are paid on an hourly rate basis. In these circumstances, Volkswagen does not compensate Plaintiffs and putative California Class Members for work related activities, such as customer calls and other work activities, that they perform outside of their schedules shifts when they are not clocked in.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
**Lead Case No. 3:15-md-02672-CRB**

Additionally, in these circumstances, Volkswagen does not compensate Plaintiffs and putative California Class Members for work related activities, such as customer calls, that they perform when they are clocked out for meal periods.

76.     Similarly, when commissions exceed sales, Volkswagen does not compensate Plaintiffs and putative California Class Members for non-productive work time, or time spent under Volkswagen's control for Volkswagen's benefit. When commissions exceed the hourly rates, Volkswagen does not compensate Plaintiffs and putative California Class Members for all time worked.  Simply, when commissions exceed sales, Plaintiffs and putative California Class Members receive commissions and Volkswagen bonuses – nothing more.

77.      California Labor Code § 200 defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis or other method of calculation."

78.     California Labor Code § 204(a) provides that "[a]ll wages … earned by any person in any employment are due and payable twice during each calendar month…."

79.     California Labor Code § 1194(a) provides as follows:

Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

80.     IWC Wage Orders 7-2001(2)(G) and 4-2001(2)(K) define hours worked as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so…."

81.     In violation of California law, Volkswagen knowingly and willfully refuses to perform its obligation to provide Plaintiffs and putative California Class Members with compensation for all time worked. Therefore, Volkswagen committed, and continues to commit, the acts alleged herein knowingly and willfully, and in conscious disregard of Plaintiffs' and

putative California Class Members' rights. Plaintiffs and putative California Class Members are thus entitled to recover nominal, actual, and compensatory damages, plus interest, attorneys' fees, expenses and costs of suit.

82.     As a proximate result of the aforementioned violations, Plaintiffs and the putative California Class have been damaged in an amount according to proof at time of trial.

83.     Wherefore, Plaintiffs and the putative California Class request relief as hereinafter provided.

<u>**SECOND CAUSE OF ACTION**</u>

**Failure to Pay Minimum Wage**

**California Labor Code**

**(On Behalf of the California Class Against VW AG and VW America)**

84.     Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

85.     Volkswagen has maintained policies and procedures that force Plaintiffs and putative California Class Members to work off the clock, without compensation – let alone the minimum wage. Due to Volkswagen's systematic denial of payment for all hours worked, Plaintiffs and putative California Class Members are routinely compensated at a rate that is less than the statutory minimum wage.

86.     During the applicable statutory period, Labor Code §§ 1182.11, 1182.12, and 1197, and the Minimum Wage Order were in full force and effect and required that employees receive the minimum wage for all hours worked at the rate of eight dollars ($8.00) per hour commencing January 1, 2008, at the rate of nine dollars ($9.00) per hour commencing July 1, 2014, and at the rate of ten dollars ($10.00) per hour commencing January 1, 2016 and ending December 31, 2016. For employers with 26 or more employees, the minimum wage for all hours worked was ten dollars and fifty cents ($10.50) per hour from January 1, 2017 to December 31, 2017, inclusive; eleven dollars ($11.00) per hour from January 1, 2018 to

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
**Lead Case No. 3:15-md-02672-CRB**

December 31, 2018, inclusive; and twelve dollars ($12.00) per hour from January 1, 2019 to the present.

87.     IWC Wage Orders 4-2001(2)(K) and 7-2001(2)(G) define hours worked as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

88.     Labor Code § 1194(a) provides as follows:

> Notwithstanding any agreement to work for a lesser wage, any employee
> receiving less than the legal minimum wage or the legal overtime compensation
> applicable to the employee is entitled to recover in a civil action the unpaid
> balance of the full amount of this minimum wage or overtime compensation,
> including interest thereon, reasonable attorneys' fees, and costs of suit.

89.     Labor Code § 1194.2 provides that, in any action under § 1194 to recover wages because of the payment of a wage less than minimum wage fixed by an order of the Commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

90.     By failing to maintain adequate time records as required by Labor Code § 1174(d) and IWC Wage Orders 4-2001(7) and 7-2001(7), Volkswagen makes it difficult to calculate the minimum wage compensation due to Plaintiffs and putative California Class Members.

91.     As a direct and proximate result of Volkswagen's unlawful acts and/or omissions, Plaintiffs and putative California Class Members have been deprived of minimum wages in an amount to be determined at trial, and are entitled to a recovery of such amount, plus liquidated damages, plus interest thereon, attorneys' fees, and costs of suit pursuant to Labor Code §§ 1194, 1194.2 and 1197.1.

92.     Wherefore, Plaintiffs and the putative California Class request relief as hereinafter provided.

///

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
**Lead Case No. 3:15-md-02672-CRB**

## **THIRD CAUSE OF ACTION**

### **Failure to Pay Overtime Wages**

### **California Labor Code**

### **(On Behalf of the California Class Against VW AG and VW America)**

93.     Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

94.     Volkswagen does not properly compensate Plaintiffs and putative California Class Members with appropriate overtime premiums, including time-and-a half premiums based on their regular rate of pay, as required by California law.

95.     California Labor Code § 510(a) provides as follows:

> Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee.  In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee. Nothing in this section requires an employer to combine more than one rate of overtime compensation in order to calculate the amount to be paid to an employee for any hour of overtime work.

96.     California Labor Code § 1194(a) provides as follows:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
**Lead Case No. 3:15-md-02672-CRB**

1

2   97.    California Labor Code § 200 defines wages as "all amounts for labor performed

3   by employees of every description, whether the amount is fixed or ascertained by the standard

4   of time, task, piece, commission basis or other method of calculation."  All such wages are

5   subject to California's overtime requirements, including those set forth above.

6   98.    Volkswagen's policies and practices of requiring Plaintiffs and the putative

7   California Class Members to perform work off-the-clock before and after their paid shifts are

8   unlawful.  Even absent this off-the-clock work, the SPs, including Plaintiffs and putative

9   California Class Members, have worked over eight hours in a day and/or over forty hours in a

10  week, without being compensated at overtime rates. Accordingly, as a result of Volkswagen's

11  unlawful policies alleged herein, Plaintiffs and putative California Class Members have worked

12  overtime hours for Volkswagen's without being paid overtime premiums in violation of the

13  California Labor Code, applicable IWC Wage Orders, and other applicable law.

14  99.    Volkswagen has knowingly and willfully refused to perform its obligations to

15  compensate Plaintiffs and putative California Class Members for all premium wages for

16  overtime work.  Volkswagen is liable to Plaintiffs and putative California Class Members

17  alleged herein for the unpaid overtime and civil penalties, with interest thereon.  Furthermore,

18  Plaintiffs and putative California Class Members are entitled to an award of attorneys' fees and

19  costs as set forth below.

20  100.    As a proximate result of the aforementioned violations, Plaintiffs and the

21  putative California Class have been damaged in an amount according to proof at time of trial.

22  101.    Wherefore, Plaintiffs and the putative California Class request relief as

23  hereinafter provided.

24  **FOURTH CAUSE OF ACTION**

25  **Failure to Authorize, Permit, and/or Make Available Meal and Rest Periods**

26  **California Labor Code**

27  **(On Behalf of the California Class Against VW AG and VW America)**

28

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
**Lead Case No. 3:15-md-02672-CRB**

102.    Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

103.    Volkswagen failed to make available and prevented full, timely, uninterrupted, compliant meal and rest breaks for Plaintiffs and putative California Class Members, and required them to continue working during these breaks.

104.    Volkswagen also failed to pay Plaintiffs and putative California Class Members one hour of premium pay for missed breaks.

105.    California Labor Code §§ 226.7 and 512 and the applicable IWC Wage Orders require Volkswagen to authorize, permit, and/or make available timely and compliant meal and rest periods to its employees.  Labor Code §§ 226.7 and 512 and the IWC Wage Orders prohibit employers from employing an employee for more than five hours without a meal period of not less than thirty minutes, and from employing an employee more than ten hours per day without providing the employee with a second meal period of not less than thirty minutes.  Labor Code § 226.7 and the applicable Wage Orders also require employers to authorize and permit employees to take ten minutes of net rest time per four hours, or major fraction thereof of work, and to pay employees their full wages during those rest periods. Unless the employee is relieved of all duty during the thirty-minute meal period and ten-minute rest period, the employee is considered "on duty" and the meal or rest period is counted as time worked under the applicable Wage Orders.

106.    Under Labor Code § 226.7(b) and the applicable Wage Orders, an employer who fails to authorize, permit, and/or make available a required meal period must, as compensation, pay the employee one hour of pay at the employee's regular rate of compensation for each workday that the meal period was not authorized and permitted and/or not made available. Similarly, an employer must pay an employee denied a required rest period one hour of pay at the employee's regular rate of compensation for each workday that the rest period was not authorized and permitted and/or not made available.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
**Lead Case No. 3:15-md-02672-CRB**

107.     Despite these requirements, Volkswagen has knowingly and willfully refused to perform its obligations to authorize and permit and/or make available to Plaintiffs and the putative California Class Members the ability to take the timely and compliant off-duty meal and rest periods to which they are entitled.

108.     Volkswagen has also failed to pay Plaintiffs and the putative California Class Members one hour of pay for each timely, compliant, off-duty meal and/or rest period that they are denied.

109.     Volkswagen's conduct described herein violates California Labor Code §§ 226.7 and 512 and the applicable Wage Orders.  Therefore, pursuant to Labor Code § 226.7(b), Plaintiffs and the putative California Class Members are entitled to compensation for the failure to authorize and permit and/or make available meal and rest periods, plus interest, attorneys' fees, expenses, and costs of suit.

110.     As a proximate result of the aforementioned violations, Plaintiffs and the putative California Class Members have been damaged in an amount according to proof at time of trial.

111.     Wherefore, Plaintiffs and the putative California Class request relief as hereinafter provided.

## FIFTH CAUSE OF ACTION

**Failure to Separately Compensate Commissioned Employees for Rest Break Time and Other Nonproductive Time**

**California Labor Code**

**(On Behalf of the California Class Against VW AG and VW America)**

112.     Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

113.     Plaintiffs and putative California Class Members have been paid by Volkswagen on a commission basis during their tenure as SPs, but they were compensated entirely by commissions and separate incentive bonus payments from Volkswagen.  Plaintiffs and putative

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
**Lead Case No. 3:15-md-02672-CRB**

California Class Members were not separately compensated for rest and recovery time and other nonproductive time.

114.   Labor Code Section 226.2(a)(1) provides, for employees on a piece-rate basis during a pay period, "[e]mployees shall be compensated for rest and recovery periods and other nonproductive time separate from any piece-rate compensation."

115.   The Wage Orders also establish this requirement.

116.   Separate pay for rest and recovery periods and other non-productive time is required for commissioned employees under Labor Code Section 226.2 and the Wage Orders.

117.   Labor Code Section 226.2(a)(3)(A) provides:

Employees shall be compensated for rest and recovery periods at a regular hourly rate that is no less than the higher of:

(i) An average hourly rate determined by dividing the total compensation for the workweek, exclusive of compensation for rest and recovery periods and any premium compensation for overtime, by the total hours worked during the workweek, exclusive of rest and recovery periods.

(ii) The applicable minimum wage.

118.   Detailed above, Volkswagen willfully refused, and continues to refuse, to provide Plaintiffs and the putative California Class with separate compensation for rest and recovery time and other nonproductive time for those pay periods where they are paid on commission and separate incentive bonus payments from Volkswagen.

119.   Volkswagen's willful failure to pay the separate compensation for rest and recovery time and other nonproductive time, for those pay periods where they are paid on commission and separate incentive bonus payments from Volkswagen, constitutes a violation of Labor Code Section 226.2 and the Wage Orders.  As a result, Volkswagen is liable to Plaintiffs and the putative California Class for all amounts owing pursuant to Labor Code Section 226.2.

///

///

120.     As a proximate result of the aforementioned violations, Plaintiffs and the putative California Class Members have been damaged in an amount according to proof at time of trial.

121.     Wherefore, Plaintiffs and the putative California Class request relief as hereinafter provided.

**SIXTH CAUSE OF ACTION**

**Waiting Time Penalties Pursuant to Labor Code §§ 201-203**

**California Labor Code**

**(On Behalf of the California Class Against VW AG and VW America)**

122.     Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

123.     Plaintiffs and some putative California Class Members have left their employment with Volkswagen during the statutory period, at which time Volkswagen owed them unpaid wages.  These earned, but unpaid, wages derive from time spent working outside of their scheduled and paid shifts, working through meal periods, unpaid wages for rest and recovery periods and other nonproductive time, performing other work-related activities, as well as unpaid overtime compensation.

124.     California Labor Code § 201 provides:

If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.

125.     Labor Code § 202 provides:

If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

126.     Labor Code § 203 provides, in relevant part:

29

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
**Lead Case No. 3:15-md-02672-CRB**

1

2

3

4

5

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

6

7

8

9

10

11

12

13

14

15

16

17

18

     127.    Volkswagen willfully refused, and continues to refuse, to provide Plaintiffs and the putative California Class with pay for overtime, for off-the-clock work, including but not limited to work performed while clocked out during meal periods, with meal and rest period premium pay, and with separate pay for rest periods and other non-productive time.  In particular, as alleged above, Volkswagen knew and continues to know that Plaintiffs and the putative California Class Members performed off-the-clock work before and after their scheduled or paid shifts and during meal periods but refuses to pay Plaintiffs and the putative California Class Members for the off-the-clock work performed.  Volkswagen is aware Plaintiffs and the putative California Class Members have worked off-the-clock as a result of Volkswagen's unlawful policies and practices, were denied overtime, and were denied separate pay for rest and recovery periods and other nonproductive time, but Volkswagen nevertheless refuses to pay for work performed during these times or to authorize premium pay for missed or interrupted meal and rest periods.

19

20

21

22

23

     128.    Accordingly, Volkswagen willfully refused and continues to refuse to pay Plaintiffs and those members of the putative California Class that left their employment with Volkswagen all the wages that were due and owing them upon the end of their employment.  As a result of Volkswagen's actions, Plaintiffs and the putative California Class Members have suffered and continue to suffer substantial losses, including lost earnings and interest.

24

25

26

     129.    Volkswagen's willful failure to pay the former employees the wages due and owing them constitutes a violation of Labor Code §§ 201-202.  As a result, Volkswagen is liable to them for all penalties owing pursuant to Labor Code §§ 201-203.

27

28

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
**Lead Case No. 3:15-md-02672-CRB**

130.    Labor Code § 203 provides that an employee's wages will continue as a penalty up to thirty days from the time the wages were due.  Therefore, Plaintiffs and the putative California Class Members are entitled to such penalties pursuant to Labor Code § 203, plus interest.

131.    As a proximate result of the aforementioned violations, Volkswagen is liable to Plaintiffs and putative California Class Members alleged herein for the amounts described, with interest thereon, in an amount according to proof at time of trial.

132.    Wherefore, Plaintiffs and the putative California Class request relief as hereinafter provided.

## SEVENTH CAUSE OF ACTION

### Violations of Labor Code § 226 – Itemized Wage Statements

### California Labor Code

### (On Behalf of the California Class Against VW AG and VW America)

133.    Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

134.    Volkswagen does not provide Plaintiffs and putative California Class Members with accurate itemized wage statements as required by California law.

135.    California Labor Code § 226(a) provides:

Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
**Lead Case No. 3:15-md-02672-CRB**

1    rate basis, (4) all deductions, provided that all deductions made on written orders

2    of the employee may be aggregated and shown as one item, (5) net wages

3    earned, (6) the inclusive dates of the period for which the employee is paid, (7)

4    the name of the employee and his or her social security number, (8) the name and

5    address of the legal entity that is the employer, and (9) all applicable hourly rates

6    in effect during the pay period and the corresponding number of hours worked at

7    each hourly rate by the employee.  The deductions made from payments of

8    wages shall be recorded in ink or other indelible form, properly dated, showing

9     the month, day, and year, and a copy of the statement or a record of the

10    deductions shall be kept on file by the employer for at least four years at the

11    place of employment or at a central location within the State of California.

12    136.    The IWC Wage Orders also establish this requirement. (See IWC Wage Orders

13    4-2001(7) and 7-2001(7)).

14    137.    California Labor Code § 226.2(a)(2) provides:

15    The itemized statement required by subdivision (a) of Section 226 shall, in

16    addition to the other items specified in that subdivision, separately state the

17    following, to which the provisions of Section 226 shall also be applicable:

18     (A) The total hours of compensable rest and recovery periods, the rate of

19     compensation, and the gross wages paid for those periods during the pay period.

20    (B) [T]he total hours of other nonproductive time, … the rate of compensation,

21    and the gross wages paid for that time during the pay period.

22    138.    Labor Code § 226(e) provides:

23    An employee suffering injury as a result of a knowing and intentional failure by

24    an employer to comply with subdivision (a) is entitled to recover the greater of

25    all actual damages or fifty dollars ($50) for the initial pay period in which a

26    violation occurs and one hundred dollars ($100) per employee for each violation

27    in a subsequent pay period, not exceeding an aggregate penalty of four thousand

28

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
**Lead Case No. 3:15-md-02672-CRB**

dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

Plaintiffs seek to recover actual damages, costs, and attorneys' fees under this section.

139.    Volkswagen fails to provide timely, accurate, itemized wage statements to Plaintiffs and the putative California Class in accordance with Labor Code § 226(a) and the IWC Wage Orders.  In particular, the wage statements the Volkswagen provides its employees, including to Plaintiffs and the putative California Class, do not accurately reflect the actual hours worked, actual gross wages earned, or actual net wages earned.  This is because, in part, Volkswagen does not count as "hours worked" the off-the-clock time its SPs spend performing certain work activities outside of their scheduled paid shifts and during their meal periods. Additionally, the wage statements do not accurately reflect the actual overtime compensation and correct overtime rate for the SPs. The wage statements also do not provide the total hours of compensable rest and recovery periods and other nonproductive time, the rate of compensation, and the gross wages paid for those periods during the pay period for SPs on who compensated on commission and via other bonus payments for the pay period.

140.    Volkswagen's failure to comply with Labor Code §§ 226(a) and 226.2(a)(2) was and continues to be knowing and intentional.  Although, as alleged herein, Volkswagen was aware that Plaintiffs and the putative California Class Members performed off-the-clock work outside of their scheduled and paid shifts, were not paid proper overtime, and experienced other relevant wage and hour violations, Volkswagen systematically fails to include this time worked and other required information in their wage statements.

141.    Plaintiffs and putative California Class Members have suffered injury as a result of Volkswagen's knowing and intentional failure to provide timely, accurate itemized wage statements to them in accordance with Labor Code § 226(a).  In particular, the injury stemming from Volkswagen's violations is evidenced by this live and active dispute regarding unpaid wages, including overtime pay, between the Parties. As a result of Volkswagen's violations,

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
**Lead Case No. 3:15-md-02672-CRB**

Plaintiffs and the putative California Class are required to undertake the difficult and costly task of attempting to reconstruct Volkswagen's incomplete and inaccurate time and pay records to ensure that they are paid for all hours worked as required by California law.

142.     As a proximate result of the aforementioned violations, Volkswagen is liable to Plaintiffs and putative California Class Members alleged herein for the amounts described, with interest thereon, in an amount according to proof at time of trial. Furthermore, Plaintiffs are entitled to an award of attorneys' fees and costs as set forth below, pursuant to Labor Code § 226(e).

143.     Wherefore, Plaintiffs and the putative California Class request relief as hereinafter provided.

## EIGHTH CAUSE OF ACTION

### Failure to Reimburse for Necessary Business Expenditures

### California Labor Code

### (On Behalf of the California Class Against VW AG and VW America)

144.     Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

145.     Volkswagen did not reimburse Plaintiffs and putative California Class Members for necessary business expenditures.

146.     Labor Code § 2802 provides, in relevant part:

> An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful. … For the purposes of this section, the term "necessary expenditures or losses" shall include all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
**Lead Case No. 3:15-md-02672-CRB**

1

2       147.    Volkswagen regularly requires Plaintiffs and putative California Class Members

3   to pay out-of-pocket expenses necessary to perform their daily work assignments, including but

4   not limited to expenses related to usage of their personal cell phones to complete work-related

5   calls. Volkswagen fails to reimburse Plaintiffs and putative California Class Members for these

6   expenditures.

7       148.    Volkswagen is liable to Plaintiffs and putative California Class Members for the

8   unreimbursed expenses and civil penalties, with interest thereon, in an amount according to

9   proof at time of trial. Furthermore, Plaintiffs are entitled to an award of attorneys' fees and costs

10  as set forth below.

11      149.    Wherefore, Plaintiffs and the putative California Class request relief as

12  hereinafter provided.

13                          **NINTH CAUSE OF ACTION**

14                  **Violation of California Unfair Competition Law**

15              **California Business and Professions Code §§ 17200, et seq.**

16          **(On Behalf of the California Class Against VW AG and VW America)**

17      150.    Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set

18  forth herein.

19      151.    The California Unfair Competition Law ("UCL"), California Business and

20  Professions Code §§ 17200, et seq., prohibits unfair competition in the form of any unlawful,

21  unfair, or fraudulent business acts or practices.

22      152.    Business and Professions Code § 17204 allows a person injured by the unfair

23  business acts or practices to prosecute a civil action for violation of the UCL.

24      153.    Labor Code § 90.5(a) states it is the public policy of California to vigorously

25  enforce minimum labor standards in order to ensure employees are not required to work under

26  substandard and unlawful conditions, and to protect employers who comply with the law from

27

28

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
**Lead Case No. 3:15-md-02672-CRB**

1    those who attempt to gain competitive advantage at the expense of their workers by failing to

2    comply with minimum labor standards.

3         154.    Beginning at an exact date unknown to Plaintiffs and the putative California

4    Class, but at least since the date four years prior to the filing of this suit, Volkswagen has

5    committed acts of unfair competition as defined by the UCL by engaging in the unlawful,

6    unfair, and fraudulent business acts and practices described in this First Amended Consolidated

7    Class Action Complaint, including, but not limited to:

8              a.    violations of Labor Code §§ 200, 204, 1194, and 1198 and

9                    applicable IWC Wage Orders pertaining to the payment of wages

10                   for all hours worked;

11             b.    violations of Labor Code § 510 and applicable IWC Wage Orders

12                   pertaining to overtime;

13             c.    violations of Labor Code Section 226.2 and applicable IWC Wage

14                   Orders for failure to separately compensate for rest and recovery

15                   periods and other nonproductive time separate from commission

16                   and bonus compensation;

17             d.    violations of Labor Code §§ 226.7 and 512 and applicable IWC

18                   Wage Orders pertaining to meal and rest breaks;

19             e.    violations of Labor Code §§ 201-203;

20             f.    violations of Labor Code § 226 regarding accurate, timely

21                   itemized wage statements; and

22             g.    violations of Labor Code § 2802 regarding unreimbursed business

23                   expenses.

24        155.    The violations of these laws and regulations, as well as of the fundamental

25    California public policies protecting wages and discouraging overtime labor underlying them,

26    serve as unlawful predicate acts and practices for purposes of Business and Professions Code §§

27    17200, et seq.

28

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
**Lead Case No. 3:15-md-02672-CRB**

1    156.   The acts and practices described above constitute unfair, unlawful, and

2   fraudulent business practices, and unfair competition, under the UCL. Among other things, the

3   acts and practices have taken from Plaintiffs' and putative California Class Members' wages

4   rightfully earned by them, while enabling the Volkswagen to gain an unfair competitive

5   advantage over law-abiding employers and competitors.

6    157.   Business and Professions Code § 17203 provides that the Court may make such

7   orders or judgments as may be necessary to prevent the use or employment by any person of

8   any practice which constitutes unfair competition.  Injunctive relief is necessary and appropriate

9   to prevent Volkswagen from repeating the unlawful, unfair and fraudulent business acts and

10   practices alleged above.

11    158.   As a direct and proximate result of the aforementioned acts and practices,

12   Plaintiffs and putative California Class Members have suffered a loss of money and property, in

13   the form of unpaid wages which are due and payable to them.

14    159.   Business and Professions Code § 17203 provides that the Court may restore to

15   any person in interest any money or property which may have been acquired by means of such

16   unfair competition.  Plaintiffs and putative California Class Members are entitled to restitution

17   pursuant to Business and Professions Code § 17203 for all wages and payments unlawfully

18   withheld from employees during the four-year period prior to the filing of this Complaint.

19    160.   Plaintiffs' success in this action will enforce important rights affecting the public

20   interest and, in that regard, Plaintiffs sue on behalf of themselves and others similarly situated.

21   Plaintiffs and putative California Class Members seek and are entitled to unpaid wages,

22   declaratory relief, and all other equitable remedies owing to them.

23    161.   Plaintiffs herein take it upon themselves to enforce these laws and lawful claims.

24   There is a financial burden involved in pursuing this action, the action is seeking to vindicate a

25   public right, and it would be against the interests of justice to penalize Plaintiffs by forcing them

26   to pay attorneys' fees from the recovery in this action.  Attorneys' fees are appropriate pursuant

27   to Code of Civil Procedure § 1021.5 and otherwise.

28

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
**Lead Case No. 3:15-md-02672-CRB**

162.     Wherefore, Plaintiffs and the putative California Class request relief as hereinafter provided.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

A.     For compensatory damages, treble damages, and restitution in amounts to be proven at trial;

B.     For general and special damages;

C.     For a declaratory judgment that Volkswagen has violated the California Labor Code, California Business and Professions Code §§ 17200, et seq., other laws of the State of California, and public policy as alleged herein;

D.     For preliminary, permanent, and mandatory injunctive relief prohibiting Volkswagen, its officers, agents, and all those acting in concert with them from committing in the future those violations of law herein alleged;

E.     For an equitable accounting to identify, locate, and restore to all current and former employees the wages they are due, with interest thereon;

F.     For all costs of suit;

G.     For an award of costs and attorneys' fees, as allowed by law;

H.     For any and all applicable statutory and civil penalties;

I.     For pre- and post-judgment interest, as allowed by law; and

J.     For such other and further relief as this Court deems just and proper.

Respectfully submitted,

Date: July 31, 2020

*/s/ Carolyn Hunt Cottrell*
Carolyn Hunt Cottrell
Todd M. Schneider
Carolyn Hunt Cottrell
SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP

Attorneys for Saavedra Plaintiffs and the proposed Class

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
**Lead Case No. 3:15-md-02672-CRB**

Date: July 31, 2020

/s/ Raymond P. Boucher

Raymond P. Boucher
Raymond P. Boucher
Maria L. Weitz
BOUCHER LLP

Attorneys for Saavedra Plaintiffs and the proposed Class

Date: July 31, 2020

/s/ Kiley Grombacher

Marcus J. Bradley
Kiley L. Grombacher
Robert N. Fisher
BRADLEY/GROMBACHER, LLP

Attorneys for Gaines Plaintiff and the proposed Class

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
**Lead Case No. 3:15-md-02672-CRB**

1

## SIGNATORY ATTESTATION

2   The e-filing attorney hereby attests that concurrence in the content of the foregoing

3 document and authorization to file the foregoing document has been obtained from the other

4 signatories indicated by a conformed signature (/s/) within the foregoing e-filed document.

5 Date: July 31, 2020

6

7            */s/ Kiley Lynn Grombacher*
            Kiley Lynn Grombacher

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
**Lead Case No. 3:15-md-02672-CRB**

# CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court, Northern District of California, in In Re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation (Case No. 3:15-md-02672-CRB) and Saavedra, et al. v. Volkswagen Aktiengesellschaft, et al. (Case No. 3:16-cv-07214-CRB) by using the Court's CM/ECF system on July 31, 2020. Service will be accomplished by the Court's CM/ECF system.

Date: July 31, 2020

*/s/ Kiley Lynn Grombacher*
Kiley Lynn Grombacher

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
**Lead Case No. 3:15-md-02672-CRB**