UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: VOLKSWAGEN "CLEAN DIESEL"
MARKETING, SALES PRACTICES, AND
PRODUCTS LIABILITY LITIGATION
_____/

This Order Relates To:
Dkt. Nos. 7640 & 7641
_____/

MDL No. 2672 CRB  (JSC)


**ORDER AWARDING FEES AND
COSTS**

Plaintiffs are fifty-two individuals who opted out of the class action settlements that resolved most consumer claims arising from the Volkswagen clean diesel scandal.  Plaintiffs later accepted Volkswagen's Rule 68 offers.  Those offers allowed Plaintiffs to seek reasonable attorneys' fees and costs, which they have now done.  Plaintiffs are awarded $17,421.89 in costs. Their fee request is also granted, subject to the reductions and exclusions explained below.

I.     **BACKGROUND**

This Court has previously described the events that are the basis for Plaintiffs' claims:

> Over the course of six years, Volkswagen sold nearly 500,000 Volkswagen– and Audi-branded TDI "clean diesel" vehicles, which they marketed as being environmentally friendly, fuel efficient, and high performing.  Consumers were unaware, however, that Volkswagen had secretly equipped these vehicles with a defeat device that allowed Volkswagen to evade United States Environmental Protection Agency ("EPA") and California Air Resources Board ("CARB") emissions test procedures.  Specifically, the defeat device produces regulation-compliant results when it senses the vehicle is undergoing testing, but operates a less effective emissions control system when the vehicle is driven under normal circumstances.  It was only by using the defeat device that Volkswagen was able to obtain Certificates of Conformity from EPA and Executive Orders from CARB for its TDI diesel engine

vehicles.  In reality, these vehicles emit nitrogen oxides ("NOx") at a factor of up to 40 times over the permitted limit.

In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig., No. 15-md-02672-CRB (JSC), 2016 WL 6248426, at *1 (N.D. Cal. Oct. 25, 2016).  The scandal led to numerous government actions and over a thousand civil lawsuits, which were consolidated before this Court by the Judicial Panel on Multidistrict Litigation.  Id. at *2.  The bulk of the civil actions were resolved in two settlements (one concerning 2.0-liter TDI vehicles and another for 3.0-liter TDI vehicles) approved by this Court.  See generally In re: Volkswagen, 2016 WL 6248426; 3.0-Liter Class Action Settlement Approval Order (dkt. 3229).

Plaintiffs are fifty-two individual consumers who opted out of the Class Settlements.  See Mikhov Decl. (dkt. 7641-2) ¶¶ 1, 12.  Their cases were stayed when they were transferred into the MDL.  See Opp'n (dkt. 7662) at 16.

A Bellwether Trial was conducted before this Court in early 2020.  See Omnibus Order (dkt. 7346) at 3.  None of these Plaintiffs were parties to that trial—indeed, their participation was impossible because they refused to provide Lexecon waivers.  See Case Management Statement (dkt. 6647) at 11–12.  The ten Bellwether Plaintiffs were represented by the same law firms as these Plaintiffs.  See Trial Transcript Vol. 2 (dkt. 7228) at 235–36 (listing appearances for the Bellwether Plaintiffs); see also Mikhov Decl. ¶ 12.

Two rulings from the Bellwether Trial are relevant here.  First, the Court granted Volkswagen's motion for summary judgment on the Bellwether Plaintiffs' Song-Beverly Act claims.  Omnibus Order at 3.  Second, after a bench trial on the issue, it found that Volkswagen had offered an appropriate correction to four of the Bellwether Plaintiffs, foreclosing their Consumer Legal Remedies Act claims.  Id. at 3, 5–16.  The Court later noted that rulings from the Bellwether Trial were "presumptively applicable" to the remaining opt-out cases originally filed in the Northern District of California.  See Order re: Remaining Consumer Actions (dkt. 7362) at 1–2.

After the Bellwether Trial concluded, the Court lifted the stay applicable to Plaintiffs' cases.  See Scheduling Order (dkt. 7515).  Shortly afterward, Volkswagen made Plaintiffs Rule 68 offers, which they accepted.  Mikhov Decl. ¶ 33.  Those offers provided that Volkswagen would

2

pay "an amount for Plaintiff's costs (including reasonable attorneys' fees, if any) incurred in connection with this action through the date on which this offer is made, in an amount to be determined by the Court." See, e.g. Estenssoro Offer of Judgment (dkt. 7561-1).  Plaintiffs now seek $1,468,158.34 in fees and $120,044.23 in costs. See Reply (dkt. 7670) at 20.

## II.   LEGAL STANDARD

Federal courts sitting in diversity apply state law to determine a party's entitlement to costs and attorneys' fees.  Mangold v. Cal. Pub. Util. Comm'n, 67 F.3d 1470, 1478 (9th Cir. 1995).  The Song-Beverly Act provides that a prevailing plaintiff may recover "a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." Cal. Civ. Code § 1794(d).  The CLRA similarly directs that a prevailing plaintiff be awarded costs and attorneys' fees. Id. § 1780(e).

California courts calculate attorneys' fees pursuant to the lodestar method, which "first calculates the number of hours reasonably spent multiplied by the reasonable hourly rate for each billing professional, and then . . . adjust[s] the amount based on various relevant factors to ensure the fee reflects the fair market value of the attorney services for the particular action." K.I. v. Wagner, 225 Cal. App. 4th 1412, 1425 (Cal. Ct. App. 2014) (internal quotation marks and alterations omitted).  It is the prevailing party's burden to show that the fees it seeks are reasonable. Nightingale v. Hyundai Motor Am., 31 Cal. App. 4th 99, 104 (Cal. Ct. App. 1994).

## III.   DISCUSSION

The parties dispute the appropriate amount of both fees and costs. Compare Opp'n at 10, with Reply at 20.

### A.   Fees

Volkswagen argues that Plaintiffs are not entitled to fees or, in the alternative, that their requested fee award should be substantially reduced.

#### 1.   Plaintiffs are entitled to recover their reasonable attorneys' fees.

As an initial matter, Volkswagen argues that Plaintiffs are not entitled to recover attorneys'

3

United States District Court
Northern District of California

1   fees at all.  Opp'n at 14–15.  Although the Rule 68 offers promised that Volkswagen would pay

2   "reasonable attorneys' fees . . . in an amount to be determined by the Court," see, e.g. Order

3   Entering Judgment (dkt. 7566) at 2, Volkswagen now takes the position that the Court should

4   determine that amount to be zero, because Plaintiffs' fee-shifting claims were not viable, Opp'n at

5   14.

6        Volkswagen's argument relies on three of this Court's previous orders.  Id. at 14–15.  First,

7   the order granting Volkswagen's motion for summary judgment on the Bellwether Plaintiffs'

8   Song-Beverly claims.  Order re: MSJ (dkt. 7093) at 8.  Second, the Court's post-trial order finding

9   that Volkswagen made an "appropriate correction" offer under California Civil Code § 1782(b) to

10  four of the Bellwether Plaintiffs, precluding their CLRA claims.  See Omnibus Order at 5 & n.2.

11  Finally, an order noting that rulings from the Bellwether Trial were "presumptively applicable" to

12  the remaining opt-out consumer actions filed in the Northern District of California.  See Order re:

13  Remaining Individual Consumer Actions at 1–2.  Volkswagen reasons that because the Court

14  rejected the Bellwether Plaintiffs' Song-Beverly claims and (some) of their CLRA claims, these

15  Plaintiffs' Song-Beverly and CLRA claims must be similarly deficient.  Opp'n at 14–15.  And

16  since Plaintiffs have no other fee-shifting claims, the American rule applies, and the fee award

17  should be set at zero.  Id.

18       This argument distorts the Court's orders and the precedent Volkswagen relies on.  First,

19  the third order Volkswagen relies on does not apply to these Plaintiffs.  It says that rulings from

20  the Bellwether Trial are presumptively applicable to the "eight individual consumer actions

21  pending in this Court which were originally filed in the Northern District of California."  Order re:

22  Remaining Individual Consumer Actions at 1–2.  That limitation makes sense, since those actions,

23  unlike these, could have proceeded to trial before this Court.  See id. at 2; see also Case

24  Management Statement at 11–12.

25       Second, even if that order applied to these Plaintiffs, it would not foreclose their fee-

26  shifting claims.  This is most obvious vis a vis the CLRA claims.  This Court held that four of the

27  Bellwether Plaintiffs failed to bring viable CLRA claims because Volkswagen offered them an

28  appropriate correction.  Omnibus Order at 5–16.  But that determination was a fact-specific ruling

4

made only after a multi-day bench trial where both sides presented evidence on the adequacy of Volkswagen's offer.  Id. at 3–4.  Yes, the correction offers were made pursuant to the Class Settlements, which these Plaintiffs could have participated in.  But the Court's finding that those offers constituted appropriate corrections was based not only on the terms of the Class Settlements, but also on evidence specific to each Plaintiff, including admissions made in their complaints, id. at 10, the credibility of one of the Bellwether Plaintiffs who testified, id. at 12, and in some cases the compensatory damages awarded by the jury, id. at 14.  Tellingly, the post-trial order does not even stand for the proposition that every Bellwether Plaintiff received an appropriate correction offer barring their CLRA claims.  Omnibus Order at 5 n.2 (explicitly declining to consider whether the Bellwether Plaintiffs who failed to prove damages received an appropriate correction offer).  It certainly cannot stand for that proposition as applied to these Plaintiffs without additional evidence regarding their individual circumstances and the offers each of them received under the Class Settlements.

That conclusion is confirmed by the fact that an appropriate correction offer is an affirmative defense to a CLRA claim.  At trial, both sides agreed Volkswagen had the burden of demonstrating that the defense applied.  See Trial Transcript Vol. 2 at 242:4–6.  Not only has Volkswagen presented no evidence that the Class Settlements constituted an appropriate correction to these Plaintiffs, it never even filed answers to their Complaints.  Opp'n at 2 ("Volkswagen never filed an answer in this MDL to any of these Plaintiffs' complaints.").  These Plaintiffs' CLRA claims cannot be barred by an affirmative defense that Volkswagen offers no evidence to support and never even pled.

This conclusion would not be incompatible with the Court's order on the remaining individual consumer actions, even if that order applied to these Plaintiffs.  It stated that rulings from the Bellwether Trial were "presumptively applicable" to the remaining individual consumer plaintiffs whose cases were originally filed in the Northern District of California.  Order re: Remaining Individual Consumer Actions at 2.  But that only means that legal questions, such as those regarding the correct interpretation of the CLRA, would not be reconsidered absent new authority or novel arguments.  For example, the Court's earlier determination that California Civil

5

United States District Court
Northern District of California

Code §§ 1782(b) and 1784 announce independent defenses to a CLRA claim would stand, absent some compelling new argument or authority not presented during the Bellwether Trial.  See Omnibus Order at 5–9.  But its factual finding that the emissions modification had only a minor impact on the performance of Luke and Kathryn Sanwick's vehicle does not establish that the same was true for every Plaintiff who received that modification.  See id. at 11–12.

Finally, the sole authority Volkswagen cites to support its position, Benson v. Southern California Auto Sales, Inc., 192 Cal. Rptr. 3d 67 (Cal. Ct. App. 2015), actually demonstrates the deficiency of its argument.  In that case, the court declined to award fees to a settling plaintiff on the grounds that the defendant had offered an appropriate prelitigation correction offer, barring the plaintiff's CLRA claim.  See id. at 77–78.  But the settlement in that case specifically reserved the defendants' right to "contest the fee motion on 'any grounds available to them'" including "'in light of the pre-litigation offer per the CLRA.'"  Id. at 71.  And the defendants presented evidence of the pre-litigation offer made to Benson—they did not rely on rulings from another case involving related offers.  See id. at 75.  Volkswagen neither specifically reserved its right to argue that Plaintiffs' CLRA claims were not viable, nor presented evidence to support an affirmative defense to those claims.

Its failure to do so is fatal to its argument that it should pay no attorneys' fees whatsoever for these Plaintiffs.  Volkswagen relied heavily on Benson leading up to and during the Bellwether Trial, see, e.g. Trial Brief (dkt. 7236) at 1, and that case was cited in multiple orders of this Court, see, e.g. Omnibus Order at 14.  If Volkswagen wanted to preserve its argument that the Class Settlements were fatal to these Plaintiffs' CLRA claims, it knew exactly how to do that.  Instead, it settled these Plaintiffs' CLRA claims before any court order rendered them non-viable and without even pleading the affirmative defense it now relies on.  Because Volkswagen settled with Plaintiffs when they still had viable CLRA claims,[1] Plaintiffs prevailed on those claims, and are

---

[1] Plaintiffs' Song-Beverly claims present a more difficult question.  The Court granted Volkswagen's motion for summary judgment on the Bellwether Plaintiffs' Song-Beverly claims on grounds that are likely applicable to all opt-out Plaintiffs in this MDL.  See Order re: MSJ at 5–8.  But because Plaintiffs' CLRA claims entitle them to fees, it is unnecessary to determine whether their Song-Beverly claims also provide a basis for the fee request.  And as discussed below, the viability of Plaintiffs' Song-Beverly claims does not affect costs.  See supra

entitled to reasonable attorneys' fees.  See Cal. Civ. Code § 1794(d).  The rest of this section discusses the appropriate amount of the fees award.

### 2.     Reasonable hours.

Courts should exclude from a fee request any hours not "reasonably expended," including those that are "excessive, redundant, or otherwise unnecessary."  Jankey v. Poop Deck, 537 F.3d 1122, 1132 (9th Cir. 2008) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). "Ultimately, a 'reasonable' number of hours equals the number of hours which could reasonably have been billed to a private client."  Gonzalez v. City of Maywood, 729 F. 3d 1196, 1202 (9th Cir. 2013) (internal quotation marks and alterations omitted).  Volkswagen identifies multiple categories of hours that it believes should either be excluded or reduced for failure to meet this standard.

### a.     Bellwether trial.

Volkswagen's most significant proposed reduction is to exclude 1,409.5 hours worth of work spent preparing for (or appealing from) the Bellwether Trial.  See Opp'n at 16–17; see also Appendix A (dkt. 7662-1).  Because the Bellwether Trial involved plaintiffs not party to this motion, fees for work in connection with that trial cannot be recovered here.  See Feuer v. Thompson, No. 10-cv-00279 YGR, 2013 WL 2950667, at *6 (N.D. Cal. June 14, 2013) (denying fees for work done on another case while the relevant litigation was stayed).  This is especially so because, as Volkswagen points out, these Plaintiffs' cases were stayed from the time they were transferred to this Court until June 9, 2020, see Scheduling Order, and these Plaintiffs were not even eligible to participate in the Bellwether Trial because they never agreed to a Lexecon waiver, see Case Management Statement at 12 ("Plaintiffs . . . hereby do assert . . . their rights to have any cases originating in districts other than the Northern District of California remanded to those districts for trial.").

Plaintiffs do not dispute that they cannot recover fees for work done on behalf of the Bellwether Plaintiffs, nor do they argue that they benefited from the Bellwether Trial such that

Section III.B.

7

United States District Court
Northern District of California

they should recover fees for work done in connection with that litigation.  Instead, they contend that the work Volkswagen believes was done in connection with the Bellwether Trial includes "review of documents, depositions, plea agreements and indictments; considering and analyzing possible litigation strategies and preparing potential written discovery (hoping to obtain some discovery), [and] preparing outlines, summaries, charts, tables, and other work product that could be re-used."  Reply at 7–11.  Plaintiffs argue that this work benefited all of the Knight Law Group's clients and should be apportioned accordingly.[2]  Id.  They point out that some of these hours were incurred before it became clear who the Bellwether Plaintiffs would be, or whether the Knight Law Group would even participate in the Bellwether Trial.  Id. at 9.  They represent that they have already excluded work performed strictly on behalf of the Bellwether Plaintiffs, and volunteer to withdraw additional time incurred for work performed between April 23, 2020, and June 10, 2020.  Id. at 10–11.

The Court nevertheless finds it appropriate to substantially reduce the hours Volkswagen has identified as related to the Bellwether Trial.  Perusing the relevant entries reveals numerous tasks that would reasonably be incurred on behalf of plaintiffs going to trial, but not plaintiffs whose cases were stayed, such as communicating with jury consultants, selecting the Bellwether Plaintiffs, and communicating with witnesses who testified at the Bellwether Trial (or would have but for adverse evidentiary rulings).  See generally Appendix A.  Even if some of that work was done before the Bellwether Plaintiffs were selected, it was performed in preparation for the Bellwether Trial, which these Plaintiffs were not parties to and did not benefit from.

In the alternative, even if one accepts that this work was performed on behalf of all of Knight Law Group's clients, including these Plaintiffs, a substantial reduction would be justified because it was not reasonable to expend so much time on these tasks while Plaintiffs' cases were

---

[2]  Plaintiffs' reliance on a previous order apportioning hours incurred in connection with mediations involving multiple clients is misplaced.  Reply at 9 (citing Johnston/Walker Fees Order (dkt. 7377)).  In that case, there was no question that work related to the mediations was done on behalf of multiple clients, so apportionment between those clients was appropriate. Johnston/Walker Fees Order at 12–13.  Here, the question is not whether apportionment is appropriate when work is done on behalf of multiple clients, but whether this work was in fact done on behalf of these clients.

stayed.  See Alzheimer's Inst. of Am. v. Eli Lilly & Co., No. 10-cv-00482-EDL, 2016 WL 7732621, at *7 (N.D. Cal. Apr. 14, 2016) (reducing $110,000 in requested fees by $100,000 because plaintiff "fail[ed] to explain why expending such a large amount of time during the stay in this case was reasonable").  Another court in this district has concluded that very similar work, such as reviewing documents and deposition transcripts and tracking developments in related litigation, was not reasonably performed during a stay.  See id.

Plaintiffs attempt to distinguish such decisions by arguing that the parties in those cases failed to explain why the work was necessary.  Reply at 10–11.  They argue that the work they performed during the stay was justified by "the extraordinarily voluminous document production, very short discovery window, and lack of certainty as to which Plaintiffs, if any, would be in the bellwether trial."  Id. at 11.  But this explanation does not justify the enormous number of hours attributed to these Plaintiffs' cases while they were stayed.  The discovery issues Plaintiffs identify simply do not justify the number of apparently trial-related tasks ostensibly performed on behalf of clients whose straightforward consumer fraud claims did not even involve significant motions practice.  And, as discussed above, the fact that the Bellwether Plaintiffs were only selected later in the litigation does not mean that work spent preparing for the Bellwether Trial benefited any plaintiff who was not (and could not have been) a party to that trial.

That being said, some continued work during a stay is reasonable, see Alzheimer's Inst., 2016 WL 7732621, at *7, and the Court accepts that at least some of the work Volkswagen identifies as trial related was reasonably performed on behalf of these Plaintiffs.  Fortunately, it is not necessary to pick through the thirty-six pages worth of entries Volkswagen has identified as trial related to decide what tasks could reasonably have been performed on behalf of these Plaintiffs.  "[T]rial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."  Fox v. Vice, 563 U.S. 826, 838 (2011).  Based on the analysis above, the Court will apply a 90% reduction to the fees associated with entries identified in Appendix A, after deducting the hours Plaintiffs have already agreed to forego.

9

b.       **Post-Rule 68 offers.**

The Rule 68 offers provided that Volkswagen would pay reasonable fees and costs "through the date on which this offer is made."  <u>See, e.g.</u> Estenssoro Offer of Judgment.  Hours recorded after the Rule 68 offers were made are therefore not recoverable and should be excluded. <u>See</u> <u>Guerrero v. Cummings</u>, 70 F.3d 1111, 1112–13 (9th Cir. 1995).

Plaintiffs try to escape the terms of their bargain by arguing that California law invalidates their agreement to give up post-offer fees.  Reply at 12.  They rely on provisions of the Song-Beverly Act and CLRA stating that "[a]ny waiver by a consumer of the provisions of this title is contrary to public policy and shall be unenforceable and void."  Cal. Civ. Code § 1751; <u>see also</u> Cal. Civ. Code § 1790.1 ("Any waiver by the buyer of consumer goods of the provisions of this chapter, except as expressly provided in this chapter, shall be deemed contrary to public policy and shall be unenforceable and void.").  Plaintiffs reason that since provisions of the Song-Beverly Act and CLRA entitle them to reasonable attorneys' fees, any agreement waiving that entitlement is unenforceable.  Reply at 12.

This argument proves too much.  The provisions Plaintiffs cite are not limited to waivers of the right to attorneys' fees—they apply to a waiver of any right under the Song-Beverly Act or CLRA.  <u>See</u> Cal. Civ. Code § 1751; Cal. Civ. Code § 1790.1.  If Plaintiffs are correct that these provisions apply to settlements, then no settlement releasing any Song-Beverly Act or CLRA claim would be enforceable.  Presumably that is not the case, and these provisions apply only to waivers agreed to before a consumer's case arises (such as when they buy the product), <u>see, e.g.</u> <u>Brilliant v. Tiffin Motor Homes, Inc.</u>, No. C 09-04568 SI, 2010 WL 2721531, at *3–4 (N.D. Cal. July 7, 2010), not releases negotiated to end litigation.  Indeed, that is the conclusion reached by every court to have addressed this argument.  <u>See, e.g.</u> <u>Anderson v. Sullivan Motor Cars, LLC</u>, No. B212091, 2010 WL 2114994, at *5 (Cal. Ct. App. May 27, 2010) ("If a plaintiff consumer is prohibited from waiving provisions of the CLRA in order to settle, no settlement would be possible.  That would contradict the well-established public policy in California that favors and encourages settlement of litigation.").

All hours identified in Appendix B (dkt. 7662-2) are excluded.

United States District Court
Northern District of California

10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

   **c.**  **Motion to disqualify Judge Corley and in the California Judicial Counsel Coordination Proceeding**

  Volkswagen argues that hours related to Plaintiffs' motion to disqualify Judge Corley or incurred in the California Judicial Counsel Coordination Proceedings ("JCCP") after Plaintiffs' cases were removed to this Court are not compensable because that work was "unrelated to [Plaintiffs'] claims in the lawsuit, baseless, or otherwise deficient." Opp'n at 18–19.  Plaintiffs concede that this work is not compensable here.  See Reply at 12.  All hours identified in Appendix C (dkt. 7662-3) are excluded.

    **d.**  **Vague time entries.**

  When the documentation provided by the party requesting attorneys' fees is inadequate, "the district court may reduce the award accordingly."  Hensley, 461 U.S. at 433.  Work entries are inadequately vague when the district court is unable to discern how the time spent is attributable to the case at hand.  Center for Food Safety v. Vilsack, No. C–08–00484 JSW (EDL), 2011 WL 6259891, at *8 (N.D. Cal. Oct. 13, 2011).  Courts in this circuit have found billing entries unacceptably vague when they described the claimed work as "conference," "telephone call," or "review" without describing the subject of the call, correspondence, or review.  Prineville Sawmill Co. v. Longview Fibre Co., No. CV 01-1073-BR, 2003 WL 23957141, at *2 (D. Or. 2003).

  The entries Volkswagen challenges as inadequately vague are excluded, see Appendix D (dkt. 7662-4), with the following exceptions.  The entries dated September 12, 2018, December 18, 2018, December 20, 2018, and February 12, 2019, all specify that they involved communications with counsel for Volkswagen.  Specifying that a communication was with opposing counsel is a sufficiently specific description of the correspondence.  The entries dated May 20, 2019, November 14, 2018, and October 10, 2018, specify the subject the lawyer was reviewing and are therefore not inadequately vague.  The rest of the entries identified on Appendix D fail to adequately specify the subject of the communication, review, or work (at most they indicate the work was for this MDL) and are therefore excluded as unacceptably vague.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

###### e.    Clerical tasks.

Clerical tasks such as "filing, transcript, and document organization time" are not compensable, regardless of who completes them.  Nadarajah v. Holder, 569 F.3d 906, 921 (9th Cir. 2009).  Courts in this circuit have held that "printing and saving documents, calendaring deadlines, and reviewing the documents and discovery previously received . . . to prepare a trial folder," are incompensable clerical tasks, Celestine v. FCA US LLC, No. 2:17-cv-0597-JLT, 2019 WL 4274092, at *8 (E.D. Cal. Sept. 10, 2019), while "preparing pleadings, reviewing client files, drafting deposition subpoenas, coordinating production of documents, and reviewing trial exhibit binders and deposition transcripts" are not, Forouzan v. BMW of N. Am., No. CV 17-3875-DMG (GSx), 2019 WL 856395, at *6 (C.D. Cal. Jan. 11, 2019).  The parties dispute what hours represent purely clerical work.  Compare Appendix E (dkt. 7662-5), with Reply at 13.

The entries identified on Appendix E are almost entirely incompensable clerical tasks. They include arranging meetings, forwarding emails, updating contacts, calendaring, and multiple entries labeled "[v]arious admin work."  See Appendix E.  The sole exception is the entry for 0.6 hours dated May 8, 2019, which appears to be a communication regarding an upcoming hearing (not just the clerical work of coordinating a pre-hearing meeting).  With that exception, all time listed on Appendix E is excluded.

###### f.    Kiesel Law, Altman Law Group, and Greines, Martin, Stein & Richland, LLP.

Volkswagen next argues that all time recorded by three law firms, Kiesel Law, the Altman Law Group, and Greines, Martin, Stein & Richland, LLP ("Greines Martin"), should be excluded. Opp'n at 20–22.  It offers different reasons for excluding the time recorded by each of these firms.

Volkswagen argues that time recorded by the Altman Law Group and Greines Martin should be excluded because these firms' work was not on behalf of these Plaintiffs.  Id. at 22. Altman was brought on as lead trial counsel—since these Plaintiffs cannot be compensated for work on the Bellwether Trial, Volkswagen concludes that all of Altman's hours should be excluded.  Id.  Similarly, Greines Martin worked mainly on motions related to the Bellwether Trial

1  and the motion to disqualify Judge Corley.  Id.  That work is also not compensable, so

2  Volkswagen concludes that all of Greines Martin's hours should be excluded.

3  The Altman Law Group and Greines Martin's recorded hours will not be excluded in their

4  entirety, because Volkswagen's concerns are adequately addressed by other adjustments.  If

5  Altman's hours are mainly related to the Bellwether Trial, that problem is addressed by the

6  reduction applied to entries on Appendix A.  See infra Section III.A.2.a.  Similarly, the reduction

7  to hours related to the Bellwether Trial and the exclusion of all hours expended moving to

8  disqualify Judge Corley addresses Volkswagen's concerns regarding Greines Martin.  If those

9  adjustments lead to the exclusion of all hours billed by these firms, Volkswagen's additional

10  requested exclusions are redundant.  If those adjustments leave some hours billed by these firms,

11  further reductions would not be justified by Volkswagen's stated grounds for exclusion and should

12  be denied.  In any event, a further exclusion of the hours billed by these two firms is either

13  unnecessary or unwarranted.

14  In contrast, Volkswagen argues that work done by Kiesel Law was duplicative and

15  redundant, because the firm worked on this case for just ten months before being replaced by

16  another firm, Glaser Weil.  Opp'n at 20–21.  Volkswagen argues that Glaser Weil ended up

17  duplicating work already done by Kiesel and provides a few choice examples.  Id. at 21.  Plaintiffs

18  retort with examples of work Kiesel did that was not duplicated by Glaser Weil.  Reply at 13.

19  Even assuming some work Kiesel did was unique, it is inevitable that replacing them with Glaser

20  Weil after just ten months led to some unreasonable redundancies.  Other courts have applied

21  reductions when the Knight Law Group's staffing practices appear to have led to inefficiency.

22  See, e.g. Watts v. Ford Motor Co., No. PSC 1300795, 2020 WL 2465139, at *3 (Cal. Super. Ct.

23  Jan. 16, 2020).  Rather than combing through Plaintiffs' time sheets to identify redundant entries,

24  the Court will do "rough justice" and apply a 50% reduction to fees claimed for hours recorded by

25  Kiesel Law, to account for inefficiencies created by their brief engagement with this matter.  See

26  Fox, 563 U.S. at 838.

27

28

United States District Court
Northern District of California

### g.     Complaints.

Volkswagen argues that the 123.5 hours recorded for work spent preparing the initial and amended complaints is unreasonable because the complaints filed by the Knight Law Group's client are all substantially similar.  Opp'n at 23; see also Appendix G (dkt. 7662-7).  This Court has previously reduced the hours recorded to drafting complaints because they were virtually identical to those filed on behalf of other parties.  See Johnston/Walker Fee Order at 11–12.  But that decision is distinguishable.  It reduced only those hours spent drafting the initial and amended complaints.  See id.  Here, Volkswagen challenges time spent on various complaint-related tasks, such as legal research regarding service, communications with co-counsel, and drafting related stipulations.  See Appendix G at 1–2.  It was reasonable to spend some time on tasks related to the complaints other than drafting.  If one looks only at entries recorded to drafting the complaints, the time spent per Plaintiff is only slightly higher than the ninety minutes the Court approved for drafting an initial and amended complaint for each Plaintiff in its previous order on fees in this case.  See generally id.; see also Johnston/Walker Fee Order at 11–12.  No reduction will be applied to the entries listed at Appendix G, besides excluding the entries Plaintiffs have agreed to withdraw.  See Reply at 15.

### h.     Mediations.

Volkswagen challenges the time recorded to the mediations before Judge Corley and Ken Feinberg on two grounds.  First, it argues that these mediations were overstaffed and suggests a 50% reduction to account for the ostensible inefficiency.  Opp'n at 23–24.  Second, it points out that the Knight Law Group represented 219 clients at these mediations, and that any fees incurred for work related to the mediations should be apportioned accordingly.  Id. at 24.  Apportionment is appropriate.  This Court has previously apportioned the hours expended by a firm in connection with mediations between the clients represented by the firm at that mediation.  Johnston/Walker Fee Order at 12.

Plaintiffs' arguments against a similar result here are unconvincing.  First, they dispute the number of Plaintiffs represented at the mediations.  Reply at 15.  They claim that no more than

202 Plaintiffs were represented at any time, and that only sixty Plaintiffs were represented at the second mediation.  Id.  Unfortunately, Plaintiffs provide no citation supporting these claims,[3] see id., whereas Volkswagen cites a sworn declaration to support its position, see Opp'n at 24 (citing Monohan Decl. ¶ 20).  Since Plaintiffs have the burden of demonstrating their entitlement to fees, the Court must accept Volkswagen's figures.  See Nightingale, 31 Cal. App. 4th at 104.

Second, Plaintiffs suggest that this Court cannot rule on the reasonableness of fees for cases that were later remanded to the JCCP.  Reply at 15–16.  But that cuts in favor of a reduction, not against it.  If the Court cannot rule on the reasonableness of fees incurred in cases later remanded to California state courts, it cannot award fees for work done on those cases. Apportionment is therefore necessary.

Fees for the entries listed on Appendix H (dkt. 7662-8) will be reduced as follows.  First, the entries Plaintiffs have agreed to withdraw will be excluded.  See Reply at 16.  The remaining time challenged by Volkswagen will be divided by 219, see Appendix H at 1–3, by 219, and the result will be multiplied by fifty-two.  That figure is compensable, the rest of the hours challenged on pages 1–3 of Appendix H are not.

### i.    Fact sheets.

Plaintiffs record 91.7 hours to preparing plaintiff fact sheets and supplemental fact sheets. See Appendix I (dkt. 7662-9).  Volkswagen objects to this time on multiple grounds.  It argues some hours are redundant, because multiple attorneys reviewed the fact sheets.  Opp'n at 24–25. It argues the total time should be apportioned as between the sixty clients Knight Law Group represented at the time.  Id. at 25.  And it argues that Knight Law Group should have used paralegals rather than partners to do this work.  Id.  Plaintiffs, naturally, contest these points. Reply at 16–17.

Rather than combing through the time sheets for redundant entries or to second-guess Plaintiffs' staffing decisions, the Court will estimate a lodestar reduction that reflects a reasonable

---

[3]  The Notice of Submission (dkt. 5387) that Plaintiffs cite does not indicate the number of Plaintiffs Knight Law Group represented at the mediation.  It references an Appendix A listing those Plaintiffs, but that document is not available at the cited docket number.

United States District Court
Northern District of California

United States District Court
Northern District of California

effort for this work.  See Fox, 563 U.S. at 838.  Given the simple questions posed on the fact sheets, see Pretrial Order No. 24 (dkt. 6300) Attachment 1; Pretrial Order No. 25 (dkt. 6863) Attachment 1, and the substantial overlap between the initial fact sheet and the supplemental fact sheet, compare Pretrial Order No. 24 Attachment 1, with Pretrial Order No. 25 Attachment 1fees for the entries identified on Appendix I will be reduced by 75%.

### j.      Travel.

Volkswagen argues that hours recorded for travel time should be reduced.  Opp'n at 25–26.  Numerous courts have held that travel time is not fully compensable, including this one.  See Jackson/Walker Fees Order at 13.  This Court previously reduced travel time by 50%.  Id. However, many of the entries which include travel time are block billed with other tasks which are compensable.  See Appendix J (dkt. 7662-10).  To account for this, fees for the entries listed on Appendix J are subject to a 25% reduction.[4]

### k.      Internal communications.

Numerous courts have held that "in general, counsel should not bill for internal communications and communicating with each other, as such time is unnecessary."  See Durham v. FCA US LLC, No. 2:17-cv-00596-JLT, 2020 WL 243115, at *5 (E.D. Cal. Jan. 16, 2020) (collecting cases).  The Ninth Circuit has approved reducing fees for unnecessary internal communications.  Welch v. Metro. Life Ins. Co., 480 F.3d 942, 949 (9th Cir. 2007).

Volkswagen requests a 50% reduction of forty-one hours billed for internal communications.  Opp'n at 26; see also Appendix K (dkt. 7662-11).  Plaintiffs do not dispute "that excessive inter-office communications are not recoverable," but argue this was not an excessive amount of time given the length of the litigation, the number of lawyers involved, and the fact that they ostensibly have already taken "a chainsaw to their billing for this category."  Reply at 17–18. The Court agrees that this is an unreasonable amount of time to bill for internal communications (especially given the fact that Plaintiffs likely overstaffed this case, leading to additional and

---

[4]  Contrary to Plaintiffs' suggestion, this approach does not penalize block billing.  See Reply at 17.  It simply accounts for the fact that Plaintiffs block billed fully compensable tasks with partially compensable tasks.

inefficient internal communications) and will apply a 50% reduction to fees for the entries listed on Appendix K.

### l.   Stay.

Finally, Volkswagen argues that any remaining hours should be reduced by 50%, because Plaintiffs have failed to justify "expending such a large amount of time during the stay in this case." Opp'n at 27 (citing Alzheimer's Inst., 2016 WL 7732621, at *7). This proposed reduction is denied. Some amount of work was justified given the ongoing mediations and settlement discussions during the stay, as well as the possibility that litigation of these Plaintiffs' cases would commence shortly after the stay was lifted. To the extent the hours incurred were excessive in light of the stay, the adjustments applied above account for the inefficiencies.

### 3.   Reasonable hourly rates.

To show that the requested rates for their counsel are reasonable, Plaintiffs must "produc[e] satisfactory evidence that [they] are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." Obrien v. FCA US LLC, No. 17-cv-04042-JCS, 2019 WL 5295066, at *5 (N.D. Cal. Oct. 18, 2019) (citing Jordan v. Mulnomah Cty., 815 F.2d 1258, 1263 (9th Cir. 1987)). The relevant legal community is the forum district. Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992). Affidavits from comparably qualified practitioners in the same forum, decisions of other courts, and the Court's own experience are all appropriate guideposts for determining reasonable rates. Obrien, 2019 WL 5295066, at *5. The following analysis addresses only the requested hourly rates contested by Volkswagen. The hourly rates that Volkswagen does not contest are approved.

### i.   Steve Mikhov.

Mikhov's rate is reduced to $500 an hour, on the basis that another court in this district approved that rate for him earlier this year. See Boyzo v. FCA US LLC, No. 17-CV-04154-JCS, 2020 WL 1914805, at *2 (N.D. Cal. Apr. 20, 2020); see also Watts, 2020 WL 2465139, at *4 (reducing Mikhov's fee to $500 an hour). Additionally, this Court has recently reduced another attorney's hourly rate to $500, based on a comparison to Mikhov. See Johnston/Walker Fees

United States District Court
Northern District of California

Order at 4–5.

### ii.    Scott Wilson.

Wilson's rate is reduced to $500 an hour.  Wilson's experience and credentials are comparable to Mikhov's.  Both men are partners at Knight Law Group, were admitted to the bar around the same time, and specialize in plaintiff-side consumer litigation.  See Mikhov Fees Decl. (dkt. 7641-2) ¶¶ 48–49.  It is therefore appropriate to apply the same rate for both lawyers.

### iii.    Russell Higgins.

Just last year a court in this district reduced Higgins' hourly rate from $450 to $400 based on his experience and the decisions of other courts.  See Obrien, 2019 WL 5295066, at *6.  Based on that decision Higgins' rate is reduced to $400 an hour.

### iv.    Roger Kirnos and Lauren Ungs.

Kirnos and Ungs' hourly rates are reduced to $400 an hour each.  This is in line with the hourly rates other courts have approved for these lawyers.  See Mikhov Fees Decl. Ex. OO at 2, Ex. QQ at 2.  Although other lawyers who have been in practice for a comparable length of time have been awarded slightly lower rates by courts in this district, see, e.g. supra Section III.A.3.v, the fact that Kirnos and Ungs are partners warrants a higher rate, see Kirnos Decl. ¶¶ 51–52.

### v.    Christopher Swanson and Kristina Stephenson-Cheang.

Both Swanson and Stephenson-Cheang's rates are reduced to $350 an hour.  Earlier this year, another court in this district held that $375 was an unreasonably high hourly rate for these attorneys, and that $350 an hour was reasonable.  Base v. FCA US LLC, No. 17-cv-01532-JCS, 2020 WL 363006, at *4 (N.D. Cal. Jan. 22, 2020).

### vi.    Conor M. Kelly.

Kelly's experience is comparable to Swanson's.  He graduated from law school around the same time and has similarly relevant experience.  See Kirnos Decl. ¶¶ 54–55.  Kelly's hourly rate is reduced to $350, in line with the rate approved for Swanson.

18

1

United States District Court
Northern District of California

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### vii.     Maite Colon.

Earlier this year, another court in this district found $275 to be a reasonable hourly rate for Colon.  <u>Base</u>, 2020 WL 363006, at *4.  Given that decision, Colon's rate is reduced to $275 an hour.

### viii.     Natalee Fisher, Michael Ouziel, Marisa Melero, Jonathan Cagliata, Stephanie Ho, and Gregory Lehrmann.

Volkswagen opposes any fees for hours recorded by these six attorneys, because Plaintiffs initially failed to provide any information regarding their experience.  <u>See</u> Appendix L (dkt. 7662-12) at 2.  Plaintiffs have now provided that information.  <u>See</u> Kirnos Reply Decl. (dkt. 7670-1) ¶¶ 11–16.  The modest hourly rates requested for these six attorneys, which range from $200 to $250 an hour, are therefore approved.

### ix.     Bryan Altman.

Altman's requested hourly rate of $950 is not reasonable.  Multiple courts have found as much, reducing his rate to between $500 and $650 an hour.  <u>See, e.g.</u> Mikhov Decl. Ex. RR at 1; <u>Watts</u>, 2020 WL 2465139, at *2, *4.  And if anything, the survey of hourly rates Altman attaches to his declaration confirms that $950 an hour is unreasonably high.  <u>See</u> Altman Decl. (dkt. 641-3) Ex. B at 58–61 (listing hourly rates for California attorneys substantially lower than $950).  Altman's rate is reduced to $550 an hour, in line with the decisions of other courts.

### x.     Fred Heather and Richard Buckner.

Heather is a partner and Buckner is Of Counsel at Glaser Weil Fink Howard Avchen & Shapiro LLP.  Heather Decl. (dkt. 7641-4) ¶¶ 3–4.  Both men have been practicing since the early 1980s and have extensive litigation experience, including an appellate court clerkship (Buckner) and work as an Assistant United States Attorney (Heather).  <u>See</u> <u>id.</u>  Volkswagen suggests an hourly rate of $550 for Heather, comparing his experience to other attorneys in this MDL, including Altman and Mikhov.  Appendix L at 3.  And it suggests a rate of just $500 for Buckner, citing a California Superior Court decision from earlier this year.  <u>Id.</u>  Setting Heather and Buckner's rates this low would not be appropriate, because both men have substantially more

1    experience than Mikhov, Altman, or Wilson.  See Heather Decl. ¶¶ 3–4.  That experience justifies

2    a higher rate of $650 an hour, based on the Court's own experience, which is an appropriate basis

3    for determining reasonable hourly rates.  See Ingram v. Oroudjian, 647 F.3d 925, 928 (9th Cir.

4    2011).

5                            xi.    Aaron Allan.

6           Allan's experience is comparable to Altman's.  Like Altman, he has been in practice since

7    the late 1980s and has substantial litigation experience.  Compare Heather Decl. ¶ 5, with Altman

8    Decl. ¶¶ 1, 5.  His hourly rate is reduced to $550, in line with the rates approved by other courts

9    for Altman.

10                           xii.   Elias Dabaie, Azin Valafar, Cynthia Organ, and Makoa

11                                  Kawabata.

12          Dabaie, Valafar, Organ, and Kawabata have experience comparable to Swanson and

13   Stephenson-Cheang.  They were admitted to the bar between 2012 and 2014, and have robust

14   litigation experience, including a judicial clerkship with the High Court of American Samoa

15   (Organ).  See Heather Decl. ¶¶ 6–7, 9–10.  These attorneys are awarded the same rate approved

16   for Swanson and Stephenson-Cheang: $350 an hour.

17                           xiii.  Amber Hannah

18          Because Plaintiffs fail to provide any explanation of Hannah's qualifications or experience,

19   no fees will be awarded for her recorded hours.  See generally Heather Decl.; see also Obrien,

20   2019 WL 5295066, at *5.

21
22                           xiv.   Robert Peck.

23          Peck's experience is comparable to Heather and Buckner's.  He has been practicing law

24   since 1979 and has wracked up an impressive resume of litigation experience and legal

25   accomplishments.  See Peck Decl. (dkt. 7641-6) ¶¶ 1–4.  However, he does not cite any court

26   decisions or provide affidavits from other practitioners to support his claimed rate of $1,150 an

27   hour.  See generally id.  The Court will approve a rate in line with Heather and Buckner's: $650 an

28   hour.

United States District Court
Northern District of California

United States District Court
Northern District of California

### xv.    Rowena Santos and Gregory Yu.

Santos and Yu have credentials comparable to Higgins.  They have been in practice for roughly the same number of years and hold similar positions at their firm.  See Appendix L at 1, 5.  Their requested rates are reduced to $400 an hour, in line with the rate approved for Higgins by a recent decision in this district.  Obrien, 2019 WL 5295066, at *6.

### xvi.    Jacob Cutler and Tionna Dolin.

Cutler and Dolin have similar experience to Stephenson-Cheang and Kawabata, respectively.  See Appendix L at 2, 4–5.  The Court will therefore apply same hourly rate of $350 for all four attorneys.

### xvii.    Paul Kiesel.

Kiesel's experience is comparable to Altman's.  He has been in practice since 1985, has impressive litigation experience, and is the named partner at his law firm, which he founded.  Kiesel Decl. (dkt. 7641-5) ¶¶ 1,3.  Other courts have reduced Kiesel's requested hourly rate to $550, which is also the rate approved for Altman above.  See Monohan Decl. Ex. 13 (dkt. 7662-31) at 3–4.  Based on these decisions and the analogy to Altman, Kiesel's rate is reduced to $550 an hour.

### xviii.    Jeffrey Koncius.

Other courts have reduced Koncius's requested rate to $550 an hour.  See id.  This is in line with the rates approved for Kiesel and Altman, who have comparable experience.  See Kiesel Decl. ¶ 5.  Koncius's hourly rate is reduced to $550.

### xix.    Maria McConnell and Nicole Ramirez.

McConnell and Ramirez have experience comparable to Dabaie, Valafar, Organ, Kawabata, and Kelly.  See Appendix L at 3–4; see also Kiesel Decl. ¶¶ 6,9.  McConnell and Ramirez's requested hourly rates are therefore reduced to $350, the rate approved for Dabaie, Valafar, Organ, Kawabata, and Kelly.

21

United States District Court
Northern District of California

### xx.    Marc Poster.

Poster's requested hourly rate of $650 is approved.  This rate is comparable to those approved for less experienced attorneys like Heather and Buckner.  Volkswagen's comparisons to Mikhov, Altman, and Kiesel are inapt, because Poster is substantially more experienced than those attorneys.  See Tobisman Decl. (dkt. 7641-7) ¶ 10 (Poster graduated from law school in 1970 and has acquired substantial litigation experience in the fifty years since).

### xxi.    Gary Wax.

Wax has experience comparable to Ungs and Kirnos.  He is also a partner at his law firm and graduated from law school around the same time as those attorneys.  Tobisman Decl. ¶ 9.  The Court will therefore apply the same rate for Wax as for Ungs and Kirnos: $400 an hour.

### xxii.    Meehan Rash and Geoffrey Kehlmann.

Rash and Kehlmann's experience is comparable to Stephenson-Cheang and Organ's, respectively.  See id. ¶¶ 11–12.  They graduated from law school in 2008 (Rash) and 2014 (Kehlmann), and both served as law clerks for federal appellate courts.  Id.  The Court will apply a $350 hourly rate for both Rash and Kehlmann, consistent with the rates approved for other attorneys with comparable experience.

### 4.    Multiplier.

California courts sometimes adjust the lodestar amount with a multiplier.  Ketchum v. Moses, 24 Cal. 4th 1122, 1132 (Cal. 2001).  Factors relevant to the propriety of a multiplier include "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award."  Id.

Plaintiffs request a 1.40 multiplier (or 40% enhancement).  Fees Mot. (dkt. 7641) at 15–16.  No multiplier is warranted.  Plaintiffs believe an enhancement is justified by the risk that they would receive no compensation if they lost and the delay in payment.  Id.  This Court has previously rejected identical arguments, holding that the delayed payment and risk associated with representation on a contingent basis were adequately reflected in the attorneys' reasonable hourly

rates, and did not warrant upward adjustment on their own.  See Johnston/Walker Fee Order at 7.

Plaintiffs argue that this logic means that "[i]f this Court reduces Plaintiffs' hourly rates, then it should award a lodestar multiplier."  Reply at 19.  But that misreads the Court's earlier order, which both denied a multiplier and reduced certain hourly rates.  See Johnston/Walker Fee Order at 3–7; see also Obrien, 2019 WL 5295066, at *5–6 (denying a multiplier and reducing some hourly rates).  It is the reasonable rates determined by the Court, not by Plaintiffs, that appropriately account for contingent risk and delay.

### 5.     Total fee award.

The Parties are directed to apply the foregoing analysis to Plaintiffs' most recent fees request, then file a joint proposed order with a final fee award.  If the Parties cannot agree on the correct amount of the fee award, they should instead file a detailed explanation of their disputes regarding how to apply this Order.  If the parties are unable to agree on the proper application of the Court's rulings to Plaintiffs' fee request, the Court may have no choice but to estimate a reasonable fee award, in an amount to be determined.  See Fox, 563 U.S. at 838 ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants.").

### B.     Costs

Costs, like fees, are reviewed for reasonableness.  See Obrien, 2019 WL 5295066, at *7.  Plaintiffs acknowledge that some of the costs they initially sought, such as airfare for a private jet and $10,801 for a steak dinner and breakfast buffet, do not meet this standard.  See Reply at 19.  They have therefore withdrawn $58,503 worth of costs from their initial request.  Id.  Nevertheless, many of the remaining costs sought appear to have been incurred in preparation for the Bellwether Trial and are therefore not recoverable by these Plaintiffs.[5]

All costs listed under the category of "Deposition Costs" are denied.  See Kirnos Reply Decl. Ex. D.  It seems most likely that depositions were conducted in preparation for trial.  That is

---

[5]  The parties dispute whether Plaintiffs are entitled only to "costs" under 28 U.S.C. § 1920, or also to "expenses" under the Song-Beverly Act.  Compare Mot. for Costs (dkt. 7640) at 5–7, with Opp'n at 28–29.  But there is no contention that either standard allows Plaintiffs to recover costs incurred on behalf of other parties.  Since that is the sole basis for the Court's denial of certain costs, it is unnecessary to resolve the costs versus expenses issue.

1    especially true given the timing of these depositions, which were apparently all conducted in the

2    months leading up to the Bellwether Trial.  See id.  This amounts to a $4,703.75 deduction.

3            All costs listed under the category "Expert Witness" are denied.  See id.  Expert witnesses

4    were presumably retained in preparation for trial.  Tellingly, Stephen Charlton testified at the

5    Bellwether Trial, see Trial Transcript Vol. 7 (dkt. 7293) at 1523:15–1543:10, 1551:8–1559:8, and

6    the receipt associated with Michael Melkerson shows that he was principally consulted on issues

7    related to those proceedings, see Mikhov Decl. (dkt. 7640-2) at 79–88.  This amounts to a

8    $66,564.96 deduction.

9            The $50 incurred for "Rapid Legal Inv.: Delivery of CMS (courtesy copy)," dated

10   September 6, 2019 is denied.  The case management statement filed that day was chiefly

11   concerned with the Bellwether Trial.  See generally Case Management Statement (dkt. 6647) at 5–

12   12.

13           All costs listed under the category of "Travel" are denied, with the exception of the $40

14   incurred for "CMC (5-28-19): Parking for Melanie."  Travel costs related to the September 13,

15   2019 status conference are not recoverable by these Plaintiffs because that status conference dealt

16   mainly with issues related to the Bellwether Trial.  See Minute Entry for 9/13/19 CMC

17   (dkt. 6686).  The same is true of travel costs related to the October 16, 2019 status conference.

18   See Minute Entry for 10/16/19 CMC (dkt. 6813).  Although the remaining travel costs are only

19   described as having been incurred in connection with "VW MDL Litigation" or "Status

20   Conference," their proximity to the Bellwether Trial strongly suggests that they too were incurred

21   on behalf of the Bellwether Plaintiffs.  See Kirnos Reply Decl. Ex. D at 2.  This amounts to a

22   $5,258.83 deduction.

23           The $32.40 incurred for "MK Litigation Solution Inv.: CMC (10-16-19)" is denied.  As

24   discussed above, the CMC held on that date was related to the Bellwether Trial.  See Minute Entry

25   for 10/16/19 CMC.

26           The $1,543.72 incurred for "Westlaw Online Research for Glaser (1/1/20)"is denied,

27   because the proximity to the Bellwether Trial strongly suggests this research was done on behalf

28   of the Bellwether Plaintiffs.  For the same reason, the $252.90 and $3.40 incurred for "Document

United States District Court
Northern District of California

24

United States District Court
Northern District of California

1   Access Fees for Glaser (1/7/20)" are denied.

2        All costs listed under "International Litigation Service" are denied.  The receipts associated

3   with those entries suggest that these costs were mainly related to the Bellwether Trial, as they

4   were incurred shortly before it began and appear to be related to evidence Plaintiffs presented or

5   sought to present at trial.  <u>See</u> Mikhov Decl. at 229–32.  This deduction totals $12,072.38.

6        Finally, all costs listed under "Decision Quest" are denied.  Decision Quest provides jury

7   consulting services, and it is therefore safe to conclude that this expense benefited only those

8   plaintiffs whose cases were tried to a jury.  This deduction totals $12,140.

9        After the above deductions, Plaintiffs are awarded $17,421.89 in costs.

10  **IV.   CONCLUSION**

11       For the foregoing reasons, Plaintiffs are awarded $17,421.89 in costs.  The parties are

12  ordered to file a joint proposed order with a stipulated fee award in an amount consistent with the

13  rulings in this Order.  The joint proposed order must be filed no later than two weeks after the

14  filing of this Order.

15       **IT IS SO ORDERED.**

16       Dated: September 8, 2020

17                                                    _____
                                                      CHARLES R. BREYER
18                                                    United States District Judge

19

20

21

22

23

24

25

26

27

28