UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 2672 CRB  (JSC) |
| This Order Relates To:<br>*U.S. S.E.C. v. Volkswagen AG*,<br>No. 3:19-cv-1391-CRB | **ORDER GRANTING MOTION TO STRIKE AS TO WINTERKORN** |

The SEC is suing former Volkswagen CEO Martin Winterkorn for securities fraud, alleging that Winterkorn and Volkswagen failed to disclose information relating to Volkswagen's "clean diesel" fraud, resulting in Volkswagen investors paying inflated prices for bonds and losing money when the public learned the truth. See Amended Complaint (dkt. 7683). In his answer, Winterkorn pleaded numerous affirmative defenses. See Winterkorn Answer (dkt. 7726) at 31–32. His tenth affirmative defense asserted that he acted in acted in "good faith, including by reasonably relying upon the advice of others." Id. at 32. The SEC has moved to strike that affirmative defense as inadequately pleaded. See Mot. to Strike (dkt. 7750). The Court determines that no oral argument is necessary, vacates the hearing, and grants the SEC's motion as to Winterkorn.[1]

## I.   BACKGROUND

The Court has previously described Volkswagen's "clean diesel" fraud:

> Over the course of six years, Volkswagen sold nearly 500,000 Volkswagen-

---

[1] The SEC also moved to strike two affirmative defenses in Volkswagen's answer. See Mot. to Strike at 1. But with the SEC's consent, see Giuffra Letter (dkt. 7775) at 1, Volkswagen filed an amended answer on December 7, see VW Amended Answer (dkt. 7779). The Court thus denies the SEC's motion as to Volkswagen as moot

> and Audi-branded TDI "clean diesel" vehicles, which they marketed as being environmentally friendly, fuel efficient, and high performing. Consumers were unaware, however, that Volkswagen had secretly equipped these vehicles with a defeat device that allowed Volkswagen to evade United States Environmental Protection Agency ("EPA") and California Air Resources Board ("CARB") emissions test procedures. Specifically, the defeat device produces regulation-compliant results when it senses the vehicle is undergoing testing, but operates a less effective emissions control system when the vehicle is driven under normal circumstances. It was only by using the defeat device that Volkswagen was able to obtain Certificates of Conformity from EPA and Executive Orders from CARB for its TDI diesel engine vehicles. In reality, these vehicles emit nitrogen oxides ("NOx") at a factor of up to 40 times the permitted limit.

In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig., No. 15-md-02672-CRB (JSC), 2016 WL 6248426, at *1 (N.D. Cal. Oct. 25, 2016).

On March 14, 2019, the SEC filed a complaint alleging that Volkswagen Aktiengesellschaft, Volkswagen Group of America Finance, LLC, VW Credit, Inc. (collectively, Volkswagen), and former Volkswagen CEO Martin Winterkorn violated securities laws by offering and selling corporate bonds and asset-backed securities in the U.S. without disclosing Volkswagen's fraud and government investigations thereof. See No. 19 cv-1391-CRB Complaint (dkt. 1). On August 20, 2020, the Court granted in part and denied in part Volkswagen's motion to dismiss and denied Winterkorn's motion to dismiss. See Order re Motions to Dismiss (dkt. 7666). On September 4, 2020, the SEC filed an amended complaint. See Amended Complaint (dkt. 7683). The Amended Complaint alleges that Volkswagen, including Winterkorn, "repeatedly lied to and misled United States investors, consumers, and regulators as part of an illegal scheme to sell its purportedly 'clean diesel' cars and billions of dollars of corporate bonds in the United States." Id. ¶ 1.

In particular, the Amended Complaint alleges as follows: Winterkorn was aware of the defeat device by November 2007, the same year that Winterkorn became CEO and announced a "bold and aggressive plan" to make Volkswagen the most-profitable and environmentally-friendly car company in the world by 2018. Id. ¶¶ 2, 5. The "clean

2

diesel" engine was the "cornerstone of Winterkorn's plan," which was also known as "Strategy 2018." Id. ¶¶ 6–7. Volkswagen worked to achieve Strategy 2018 by purporting to develop a diesel engine that "would comply with U.S. emissions laws without sacrificing the power and fuel-efficiency of a traditional diesel engine." Id. ¶ 49. From 2010 to 2015, Volkswagen "sold billions of dollars of corporate bonds in the United States" to finance Strategy 2018. Id. ¶ 8. At the same time, Volkswagen falsely stressed its commitment to reducing vehicle emissions and its compliance with emissions laws. Id. ¶ 9. Throughout this time, Winterkorn and other senior Volkswagen officials knew that Volkswagen's clean diesel engine "was a sham." Id. ¶ 12. Indeed, Winterkorn knew about "every last technical detail" of Volkswagen vehicles. Id. ¶ 59.

In March 2014, researchers from the International Council on Clean Transportation (ICCT) published a study finding that Volkswagen diesel vehicles in fact emitted NOx at nearly 40-times the legal limit. Id. ¶ 91. High level executives, including Winterkorn, were aware of the ICCT Study "and the significant problems it created for VW." Id. ¶¶ 97, 112, 116, 120-121. Volkswagen realized that it faced staggering liability because U.S. regulators might soon discover the "clean diesel" fraud. So, beginning around May 2014, Volkswagen engaged in a "cover-up," refusing to tell U.S. regulators about the defeat device, implementing a "bogus software fix," and destroying evidence. Id. ¶¶ 16-17, 125-127, 133-134.[2]

Nonetheless, between May 2014 and June 2015, Volkswagen sold U.S. investors over $8 billion of bonds without disclosing the defeat device, the ICCT study, U.S. regulatory investigations, the scope of Volkswagen's legal exposure, or any other fact relating to Volkswagen's "clean diesel" fraud. Id. ¶¶ 18, 19, 149. Instead, Volkswagen stated that its cars complied with applicable laws and indicated that there were no pending or threatened government investigations involving its diesel vehicles. Id. ¶ 150.

Volkswagen's fraud and cover-up collapsed in August 2015 and, when the public

---

[2] The Amended Complaint does not allege that Winterkorn personally destroyed any evidence.

learned the truth, the value of Volkswagen bonds fell. Id. ¶¶ 20–21, 152. The next month, Winterkorn resigned from Volkswagen. Id. ¶ 56.

The SEC brought this civil enforcement action to recover the benefits that Volkswagen and Winterkorn allegedly fraudulently obtained by selling these bonds at inflated prices. Id. ¶¶ 18, 23–24. The SEC asserts claims against Winterkorn for securities fraud under §§ 10(b) and 20(a) of the Securities Exchange Act, 15 U.S.C. §§ 78j(b); 78t(a), and aiding and abetting under § 17(a)(2) of the Securities Act, 15 U.S.C. § 77o(b). Id. ¶ 24.

Winterkorn filed an answer on October 15, 2020, denying many of the allegations in the Amended Complaint. See Winterkorn Answer (dkt. 7726). Winterkorn's answer also purported to plead several affirmative defenses. See id. at 31-32. As relevant here, Winterkorn's answer stated:

> 10. Plaintiff's claims are barred, in whole or in part, because Winterkorn acted in good faith, including by reasonably relying upon the advice of others.
>
> 11. Plaintiff's claims are barred in part because Winterkorn is not liable under Section 20(a) of the Exchange Act because he is entitled to a good faith defense, because he acted in good faith and did not directly or indirectly induce the act or acts constituting the violation of cause of action. At all relevant times, Volkswagen maintained a reasonable and proper system of supervision and internal control over statements made in connection with securities.

Id. at 32.

On November 5, 2020, the SEC moved to strike Winterkorn's tenth affirmative defense as inadequately pleaded. See Mot. to Strike. Winterkorn opposes the motion. See Opp. (dkt. 7774).

## II. LEGAL STANDARD

"In responding to a pleading, a party must affirmatively state any . . . affirmative defense." Fed. R. Civ. P. 8(c)(1). Affirmative defenses "deny [a] plaintiff's right to recover, even if the allegations of the complaint are true." G & G Closed Circuit Events,

4

LLC v. Nguyen, No. 10-CV-00168-LHK, 2010 WL 3749284, at *5 (N.D. Cal. Sept. 23, 2010). Put differently, they "plead matters extraneous to the plaintiff's prima facie case, which deny the plaintiff's right to recover." Pertz v. Heartland Realty Investors, Inc., No. 19-cv-06330-CRB, 2020 WL 95636, at *1 (N.D. Cal. Jan 8, 2020). By contrast, "denials of the allegations in the complaint or allegations that the Plaintiff cannot prove the elements of his claims are not affirmative defenses." Id.

Under Rule 12(f) of the Federal Rules of Civil Procedure, a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). At one time, the Ninth Circuit held that an affirmative defense must be pleaded to give the plaintiff "fair notice" of the defense. Wyshak v. City Nat. Bank, 607 F.2d 824, 827 (9th Cir. 1979). But based on intervening case law, "this Court and the majority of courts in this district have held that the heightened pleading standard of Twombly and Iqbal . . . is now the correct standard to apply to affirmative defenses." Pertz, 2020 WL 95636, at *1 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009)). Accordingly, an answer containing an affirmative defense must plead "sufficient factual matter to state a defense that is 'plausible on its face.'" Id. (quoting Iqbal, 556 U.S. at 678).

## III. DISCUSSION

The SEC argues that Winterkorn's tenth affirmative defense is "conclusory" and that Winterkorn has not pleaded any "factual allegations" supporting the defense or showing how it applies to the SEC's claims. Mot. to Strike. at 4. Winterkorn argues that his "good faith" defense includes, but goes beyond, his reasonable reliance on advisors and may be pleaded in general terms. See Opp. at 2, 8–9. He argues that, in any event, his answer provides a factual basis for the defense because it alleges that (1) Winterkorn did not know about the defeat device and could not have known that any challenged statements were deceptive, id. at 3; (2) advisors told him about Volkswagen's development of its diesel engines and about the ICCT study but did not tell him about the defeat device, id. at 6; and (3) advisors prepared financial statements for which the SEC alleges he is

responsible, id. at 3, 6. Finally, Winterkorn argues that the Court should not strike his tenth affirmative defense because the SEC has not shown prejudice and striking the defense will not "move this litigation forward." Id. at 12-13.

The Court grants the SEC's Motion to Strike with leave to amend because Winterkorn's tenth purported affirmative defense is not an affirmative defense.

Winterkorn's tenth affirmative defense is "insufficient" under Rule 12(f) because Winterkorn's own characterization shows that it denies the elements of a securities fraud claim without separately asserting a defense. Winterkorn argues that his answer alleges that he did not know about the defeat device, partly because his advisors did not tell him about the defeat device, and that Winterkorn could not have known of any false or misleading statements in Volkswagen's filings. These arguments go to the elements of a § 10(b) claim. To state such a claim, the SEC must plead "(1) a material misrepresentation (or omission); (2) scienter, i.e., a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance . . . ; (5) economic loss; and (6) 'loss causation,' i.e., a causal connection between the material misrepresentation and the loss." Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341–42 (2005) (citation omitted). The second element—scienter—requires the SEC to show that the defendant intended "to deceive, manipulate, or defraud." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 197–99 (1976). Winterkorn denies having had this intent. But that denial amounts to an allegation that the SEC will be unable to prove the elements of a § 10(b) violation—not an affirmative defense that would deny the SEC any right to recover even if it could establish those elements. See G & G Closed Circuit Events, 2010 WL 3749284, at *5.[3]

As the SEC points out, if Winterkorn intends to assert a good faith defense that goes beyond his scienter, nothing in his Answer suggests what the substance of that defense might be. See Reply at 2. Winterkorn's tenth affirmative defense states that Winterkorn

---

[3] Thus, even were the Court to accept Winterkorn's invitation to reconsider its prior decisions applying Twombly and Iqbal to affirmative defenses, see Opp. at 8, which it declines to do, the Court would strike Winterkorn's tenth affirmative defense.

6

"acted in good faith, including by reasonably relying on the advice of others." Winterkorn Answer at 32. Another Northern District of California decision has held that good faith reliance on advisors may, in certain circumstances, constitute an affirmative defense to a securities fraud claim. See SEC v. Small Business Capital Corp., No. 5:12-cv-3237 EJD, 2013 WL 5544850, at *13 (Aug. 16, 2013) (requiring the defendant to show (1) complete disclosure to the advisor, (2) that the defendant requested the advisor's advice as to the legality of the contemplated action, (3) that the advisor told the defendant the action was legal, and (4) that the defendant relied on that advice in good faith) (citing SEC v. Goldfield Deep Mines Co. of Nevada, 758 F.2d 459, 467 (9th Cir. 1985)). But neither Winterkorn's Answer nor his Opposition contains anything linking Winterkorn's communications with others to the elements of such a defense. See Opp. at 9. Instead, Winterkorn focuses on how his communications with his advisors indicate that he did not have a culpable state of mind, which leads the Court back to the principle that denial of scienter is not an affirmative defense.

      The Court also rejects Winterkorn's request that the Court exercise its discretion to deny the SEC's motion. First, Winterkorn's argument that the SEC has not shown prejudice because the SEC will not incur additional costs if the Court denies the SEC's motion, see Opp. at 12, fails. Nothing in Rule 12(f) requires the SEC to show prejudice. Indeed, Rule 12(f) exists because continued litigation of a defense that is "insufficient . . . redundant, immaterial, impertinent, or scandalous" necessarily wastes courts' and parties' resources. Fed. R. Civ. P. 12(f). Second, Winterkorn's argument that striking his tenth affirmative defense will not "move this litigation forward" because the SEC has not moved to strike Winterkorn's eleventh affirmative defense, which also references "good faith," Opp. at 13 (citing Answer at 32), is both wrong and self-defeating. Winterkorn's eleventh affirmative defense refers only to the SEC's § 20(a) claim against Winterkorn. By contrast, Winterkorn's tenth affirmative defense does not specify to which claims it applies, and presumably applies to all claims. Therefore, striking Winterkorn's tenth affirmative defense eliminates his "good faith" defense as to the SEC's claims under

§ 10(b) of the Securities Exchange Act and § 17(a)(2) of the Securities Act. Further, if Winterkorn were right that his eleventh affirmative defense is substantially the same as his tenth affirmative defense, the Court would strike the tenth affirmative defense as "redundant." Fed. R. Civ. P. 12(f).

### IV. CONCLUSION

For the foregoing reasons, the Court grants the SEC's Motion to Strike as to Winterkorn's Answer with leave to amend. Winterkorn may file an amended answer on or before December 30, 2020. The Court denies the SEC's Motion to Strike as to Volkswagen's Answer as moot. See supra note 1.

**IT IS SO ORDERED.**

Dated: December 9, 2020



CHARLES R. BREYER
United States District Judge