UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION _____/ This Order Relates To: *U.S. S.E.C. v. Volkswagen AG*, No. 3:19-cv-1391-CRB _____/ | MDL No. 2672 CRB (JSC) **ORDER GRANTING MOTION TO STRIKE** |

The SEC is suing Volkswagen and former Volkswagen CEO Martin Winterkorn for securities fraud. The SEC alleges that Volkswagen and Winterkorn failed to disclose information relating to Volkswagen's "clean diesel" fraud, resulting in Volkswagen investors paying inflated prices for bonds in 2014 and 2015 and losing money when the public learned the truth. See Amended Complaint (dkt. 7683). In its Amended Answer, Volkswagen pleaded numerous affirmative defenses. See VW Amended Answer (dkt. 7779) at 45–53. Volkswagen's sixteenth affirmative defense asserts that the SEC's claims are barred based on "unclean hands." Id. at 49. The SEC has moved to strike that affirmative defense as inadequately pleaded. See Mot. to Strike (dkt. 7790). The Court determines that no oral argument is necessary, vacates the hearing, and grants the SEC's motion.

I.  **BACKGROUND**

The Court has previously described Volkswagen's "clean diesel" fraud, which became publicly known in September 2015:

> Over the course of six years, Volkswagen sold nearly 500,000 Volkswagen- and Audi-branded TDI "clean diesel" vehicles, which they marketed as being

environmentally friendly, fuel efficient, and high performing. Consumers were unaware, however, that Volkswagen had secretly equipped these vehicles with a defeat device that allowed Volkswagen to evade United States Environmental Protection Agency ("EPA") and California Air Resources Board ("CARB") emissions test procedures. Specifically, the defeat device produces regulation-compliant results when it senses the vehicle is undergoing testing, but operates a less effective emissions control system when the vehicle is driven under normal circumstances. It was only by using the defeat device that Volkswagen was able to obtain Certificates of Conformity from EPA and Executive Orders from CARB for its TDI diesel engine vehicles. In reality, these vehicles emit nitrogen oxides ("NOx") at a factor of up to 40 times the permitted limit.

In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig., No. 15-md-02672-CRB (JSC), 2016 WL 6248426, at *1 (N.D. Cal. Oct. 25, 2016).

On March 14, 2019, the SEC filed a complaint alleging that Volkswagen Aktiengesellschaft, Volkswagen Group of America Finance, LLC, VW Credit, Inc. (collectively, Volkswagen), and former Volkswagen CEO Martin Winterkorn violated securities laws by offering and selling corporate bonds and asset-backed securities in the U.S. without disclosing Volkswagen's fraud and government investigations thereof. See No. 19 cv-1391-CRB Complaint (dkt. 1). On August 20, 2020, the Court granted in part and denied in part Volkswagen's motion to dismiss and denied Winterkorn's motion to dismiss. See Order re Motions to Dismiss (dkt. 7666). On September 4, 2020, the SEC filed an amended complaint. See Amended Complaint (dkt. 7683). The Amended Complaint alleges that Volkswagen "repeatedly lied to and misled United States investors, consumers, and regulators as part of an illegal scheme to sell its purportedly 'clean diesel' cars and billions of dollars of corporate bonds in the United States." Id. ¶ 1.

In particular, the Amended Complaint alleges that between May 2014 and June 2015, Volkswagen sold U.S. investors over $8 billion of bonds without disclosing the defeat device, an International Council on Clean Transportation (ICCT) study finding that Volkswagen diesel vehicles emitted NOx at nearly 40-times the legal limit, U.S. regulatory investigations, the scope of Volkswagen's legal exposure, or any other fact relating to Volkswagen's "clean diesel" fraud. Id. ¶¶ 18, 19, 149. Instead, Volkswagen stated that its

2

cars complied with applicable laws and indicated that there were no pending or threatened government investigations involving its diesel vehicles. Id. ¶ 150. When the public learned the truth in September 2015, the value of Volkswagen bonds fell. Id. ¶¶ 20–21,

The SEC brought this civil enforcement action to recover the benefits that Volkswagen and Winterkorn allegedly fraudulently obtained by selling these bonds at inflated prices. Id. ¶¶ 18, 23–24. The SEC asserts claims against Volkswagen for securities fraud under §§ 10(b) and 20(a) of the Securities Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a), and § 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2). Id. at 57–59.

Volkswagen filed an Amended Answer on December 7, 2020, purporting to plead many affirmative defenses. See VW Amended Answer at 45–53. As relevant here, Volkswagen asserts an "unclean hands" defense. Although Volkswagen alleges that the SEC "acted wrongfully, willfully, in bad faith, with gross negligence, and with unreasonable delay in investigating and prosecuting this action," the defense centers on the SEC's delay in bringing suit despite its knowledge of the relevant underlying conduct and related litigation. Id. at 49.

Specifically, Volkswagen alleges that although the public learned about Volkswagen's use of defeat devices in September 2015, the SEC did not initiate this suit until March 2019. Id. In the interim, "numerous governmental agencies and private plaintiffs filed public claims against Volkswagen . . . and many settled those claims." Id. Volkswagen cites the Court's previous statement that the SEC waited until after three years of litigation: there had been "all of this litigation, all of these settlements, all of these efforts, [and] enormous devotion of . . . resources," including litigation involving the federal government, without "a word from the SEC." Id. at 49-50 (citing May 10, 2019 H'rg Tr. at 6). And Volkswagen alleges that, contrary to the SEC's statements, the SEC knew about the relevant bond offerings and their importance to Volkswagen well before March 2017 based on Volkswagen's public statements and a lawsuit brought by private bondholders concerning the same offerings. Id. at 50–52. Volkswagen also alleges that the SEC "unreasonably delayed in pursuing foreign evidence located abroad" by failing to

3

coordinate with its own Office of International Affairs to conduct an investigation in Germany until December 2017, "more than two years after both the public revelation of the defeat device and the date on which [the SEC] opened an official investigation into Volkswagen." Id. at 52.

Volkswagen alleges that the SEC's delay "in investigating and prosecuting this Action has caused prejudice to [Volkswagen]." Id. The SEC is seeking "approximately $300 million in disgorgement" from Volkswagen, along with "prejudgment interest." Id.; see also Amended Complaint at 60 (requesting that the Court order Volkswagen to "disgorge all ill-gotten gains from the conduct alleged . . . with prejudgment interest"). As Volkswagen puts it, as the SEC "delayed in investigating and bringing this Action, the amount of prejudgment interest that it could seek increased." Id. Finally, Volkswagen alleges that this "inflation of the potential recoverable relief . . . violate[s] Volkswagen's right to due process." Id. at 53.

On December 28, 2020, the SEC moved to strike Winterkorn's unclean hands defense as inadequately pleaded. See Mot. to Strike. Volkswagen opposes the motion. See Opp. (dkt. 7795).

## II.   LEGAL STANDARD

"In responding to a pleading, a party must affirmatively state any . . . affirmative defense." Fed. R. Civ. P. 8(c)(1). Affirmative defenses "deny [a] plaintiff's right to recover, even if the allegations of the complaint are true." G & G Closed Circuit Events, LLC v. Nguyen, No. 10-CV-00168-LHK, 2010 WL 3749284, at *5 (N.D. Cal. Sept. 23, 2010). Put differently, they "plead matters extraneous to the plaintiff's prima facie case, which deny the plaintiff's right to recover." Pertz v. Heartland Realty Investors, Inc., No. 19-cv-06330-CRB, 2020 WL 95636, at *1 (N.D. Cal. Jan 8, 2020). By contrast, "denials of the allegations in the complaint or allegations that the Plaintiff cannot prove the elements of his claims are not affirmative defenses." Id.

Under Rule 12(f) of the Federal Rules of Civil Procedure, a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous

4

matter." Fed. R. Civ. P. 12(f).  At one time, the Ninth Circuit held that an affirmative defense must be pleaded to give the plaintiff mere "fair notice" of the defense.  Wyshak v. City Nat. Bank, 607 F.2d 824, 827 (9th Cir. 1979).  But based on intervening case law, "this Court and the majority of courts in this district have held that the heightened pleading standard of Twombly and Iqbal . . . is now the correct standard to apply to affirmative defenses."  Pertz, 2020 WL 95636, at *1 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009)).  Accordingly, an answer containing an affirmative defense must plead "sufficient factual matter to state a defense that is 'plausible on its face.'"  Id. (quoting Iqbal, 556 U.S. at 678).

### III.   DISCUSSION

The SEC argues that if a private party may ever assert an unclean hands defense in an SEC enforcement action, the private party must meet a "high bar" when pleading that defense.  Mot. to Strike at 3.  The SEC further argues that because Volkswagen has not alleged facts showing egregious misconduct, occurring before the SEC filed this action, with a "direct nexus" to a "constitutional injury," Volkswagen has not met this bar.  Id.  Finally, the SEC argues that Volkswagen has suffered no prejudice as a result of its delay, but that the SEC will be prejudiced if forced to litigate Volkswagen's unclean hands defense.  Id. at 5–6.  Volkswagen argues that it has properly pleaded an unclean hands defense, Opp. at 6–15, that the SEC's motion to strike is "premature," id. at 5–6, and that denying the SEC's motion will not prejudice the SEC because it will not affect the scope of discovery, id. at 3–5.

The Court grants the SEC's Motion to Strike because Volkswagen sixteenth affirmative defense alleges only an arguably unreasonable delay, and such a delay—without more—cannot plausibly establish an unclean hands defense.

The unclean hands "doctrine is rooted in the historical concept of [a] court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith."  Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co., 324 U.S. 806, 814 (1945).  Thus, it requires that a party seeking equitable relief has "acted fairly and without fraud or

5

1   deceit as to the controversy in issue." Id. at 814–815. "The unclean hands doctrine
2   proscribes equitable relief when, but only when, an individual's misconduct has
3   'immediate and necessary relation to the equity that he seeks.'" Henderson v. United
4   States, 135 S. Ct. 1780, 1783 n.1 (2015) (quoting Keystone Driller Co. v. General
5   Excavator Co., 290 U.S. 240, 245 (1933)).

6   Unclean Hands is distinct from another equitable doctrine called "laches." Whereas
7   unclean hands requires some allegation of misconduct or deceit, laches may bar a court
8   from awarding equitable relief if the suit was brought after "unreasonable delay."
9   Patterson v. Hewitt, 195 U.S. 309, 318 (1904). Although "lapse of time is one of the chief
10  ingredients," courts of equity have also traditionally considered other factors including a
11  "complainant's knowledge or ignorance of the facts constituting the cause of action, as
12  well as his diligence in availing himself of the means of knowledge within his control." Id.
13  at 317–18. Although "laches cannot be invoked to bar legal relief" for a claim brought
14  within a statute's express limitations period, laches may bar "equitable relief, in
15  extraordinary circumstances." Petrella v. Metro-Goldwyn-Mayer, Inc., 572 U.S. 663, 677–
16  78 (2014). The Supreme Court has held that those circumstances do not include
17  government enforcement actions. United States v. Summerlin, 310 U.S. 414, 416 (1940)
18  ("It is well settled that the United States is not . . . subject to the defense of laches in
19  enforcing its rights."); but see United States v. Ruby Co., 588 F.2d 697, 705 n.10 (9th Cir.
20  1978) (acknowledging the "traditional rule" that "laches is not available against the
21  government in a suit by it to enforce a public right or protect a public interest," speculating
22  that this rule may be "subject to evolution," but concluding that "[e]ven if there were some
23  allowance for laches against the government," it would require a "showing of affirmative
24  misconduct").

25  The SEC's motion raises the threshold question whether a private party subject to
26  an SEC enforcement action seeking equitable relief may raise an unclean hands defense.
27  Neither the Supreme Court nor the Ninth Circuit has conclusively resolved that question.
28  But in addition to ruling out laches defenses against the government, the Supreme Court

has discussed the availability of another equitable defense in government enforcement actions: "estoppel." Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc., 467 U.S. 51, 59–60 (1984). Like unclean hands, estoppel is a fairness principle: "If one person makes a definite misrepresentation of fact to another person having reason to believe that the other will rely upon it and the other in reasonable reliance upon it does an act . . . the first person" may not be entitled to "regain property or its value that the other acquired by the act." Id. at 59 (quoting Restatement (Second) of Torts § 894(1) (1979)). But that principle does not apply to the government "on the same terms" that it applies to private plaintiffs, because "[w]hen the government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined." Id. at 60. Nonetheless, the Supreme Court has "left open the issue" whether the government's entitlement to special treatment should "expand . . . into a flat rule that estoppel may not in any circumstances run against the government." Id. The private defendant in Heckler could not "prevail without at least demonstrating that the traditional elements of an estoppel [were] present," which the defendant failed to do. Id. Thus, the Supreme Court did not decide whether there are "cases in which the public interest in ensuring that the government can enforce the law free from estoppel might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with the government." Id. The Ninth Circuit has subsequently held that estoppel may be asserted against the government, but only upon a showing that (1) the government engaged in "affirmative misconduct" causing a "serious injustice," and (2) "the public's interest will not suffer undue damage." Watkins v. U.S. Army, 875 F.2d 699, 707 (9th Cir. 1989).

      Like the Supreme Court in Heckler, the Court need not resolve whether a private party may ever raise an unclean hands defense in an SEC enforcement action because Volkswagen has not plausibly alleged the traditional elements of an unclean hands defense. No doubt, Volkswagen has plausibly alleged that the SEC "unreasonably

7

delayed" in bringing this suit, as that phrase is ordinarily understood.[1] But "unreasonable, prejudicial delay in commencing suit" is a laches defense, when such a defense is available. Petrella, 572 U.S. at 667. Even when asserted against a mere private party, an unclean hands defense requires more—some plausible allegation of "misconduct" indicating that the party has not acted in good faith. See Henderson, 135 S. Ct. at 1783 n.1.

Volkswagen has not plausibly alleged such misconduct. Volkswagen's allegations that the SEC "acted wrongfully, willfully, in bad faith, with gross negligence," VW Amended Answer at 49, are mere legal conclusions without factual support. Volkswagen's other allegations concerning the SEC's ability to bring suit earlier might show that the SEC not only "took too long," but also acted unreasonably and without diligence during the delay given its notice of Volkswagen's conduct. See Opp. to Mot. to Strike at 9. But while this alleged unreasonable delay may give rise to an inference of incompetence, or other enforcement priorities, or even that the SEC "swooped in to demand its piece of the action" after other enforcement actions settled, see Opp. to Mot. to Strike at 12, it does not plausibly establish affirmative misconduct.

The Court is unaware of any judicial decision to the contrary. Volkswagen cites various decisions declining to strike unclean hands defenses asserted by private defendants in government enforcement actions, see Opp. to Mot. to Strike at 7, 11–12, but these cases are distinguishable on either of two grounds.

First, several of these cases involve allegations of misconduct beyond unreasonable delay. For example, United States v. Innovative BioDefense, Inc. involved allegations that the U.S. Food & Drug Administration's selective enforcement decisions were motivated by "undue influence," that is, corruption. See 2019 WL 6971054, at *5 (C.D. Cal. Aug. 22, 2019); see also CFTC v. Minto LLC, 2016 WL 3944101, at *5 (S.D. Fla. May 17,

---

[1] As relevant here, Congress has established a five-year statute of limitations for the SEC to bring a "proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise." 28 U.S.C. § 2462.

8

2016) (discussing allegations that the Commodity Futures Trading Commission brought an enforcement action against the defendant after formally approving the defendant's relevant conduct); FTC v. Medicor LLC, 2001 WL 765628, at *3 (C.D. Cal. June 26, 2001) (discussing allegations that the Federal Trade Commission had "deprived" the defendants of access to relevant documents and failed to notify defendants of its investigation).

Second, other cases did not apply the Twombly/Iqbal pleading standard to affirmative defenses and thus did not assess whether the supporting allegations—if any—plausibly established misconduct or deceit. See SEC v. Nat. Diamonds Inv. Co., 2020 WL 95065, at *2 (S.D. Fla. Jan 8, 2020) (not setting forth a pleading standard for affirmative defenses, noting that "without more, a mere delay and lack of coordination in bringing an enforcement action may not ultimately qualify as egregious conduct," but declining to strike the defense in favor of additional factual development); SEC v. Spartan Sec. Grp., LTD, 2019 WL 3323477, at *1–2 (M.D. Fla. July 24, 2019) (expressly declining to apply Twombly and Iqbal to affirmative defenses); FTC v. Adept Mgmt., Inc., 2017 WL 1055959, at *1–2 (D. Or. March 20, 2017) (expressly declining to apply Twombly and Iqbal to affirmative defenses); EEOC v. United Parcel Service, Inc., 2017 WL 9482105, at *13 (E.D.N.Y. March 9, 2017) (declining to strike an unclean hands defense despite the defendant's failure to "provide any factual basis" for the defense); SEC v. Hold Bros. On-Line Inv. Servs., LLC, 216 F. Supp. 3d 422, 426 (D.N.J. 2016) (declining to strike an unclean hands defense without any discussion of the allegations supporting the defense); CFTC v. U.S. Bank, 2014 WL 294219 (expressly declining to apply Twombly and Iqbal to affirmative defenses). Indeed, several of these decisions pre-date Twombly and Iqbal. See SEC v. Nacchio, 438 F. Supp. 2d 1266, 1287 (D. Colo. 2006) (declining to strike an unclean hands defense because the Court could not tell "on the face of the pleadings" whether the facts could support such a defense); SEC v. Downe, 1994 WL 67826, at *2 (S.D.N.Y. March 3, 1994) (doubting that the "alleged misconduct" was "sufficiently egregious" but declining to strike so that the Court could evaluate the defense "in a concrete factual setting"); United States v. Martell, 844 F. Supp. 454, 459 (N.D. Ind. 1994)

1  (declining to strike an unclean hands defense without any discussion of the allegations
2  supporting the defense).  Decisions not applying a "plausibility" standard are particularly
3  inapposite given Volkswagen's wise concession that it "<u>must</u> plead sufficient factual
4  matter to <u>allege plausibly</u> that . . . the SEC's misconduct is egregious."  Opp. to Mot. to
5  Strike at 8 (citation omitted) (emphasis added).[2]

Volkswagen has not plausibly alleged facts establishing an unclean hands defense.
The Court thus gives Volkswagen 30 days to file a second amended answer alleging the
sort of affirmative and egregious misconduct that could give rise to such a defense.  The
Court need not consider whether Volkswagen may assert an unclean hands defense against
the SEC until Volkswagen makes this showing.  See <u>Heckler</u>, 467 U.S. at 60.

The Court's ruling is narrow in scope.  It has no bearing on other defenses or
arguments that could affect the propriety or amount of disgorgement.  For example,
Volkswagen's seventeenth affirmative defense asserts that disgorgement is not available
because Volkswagen has already "been disgorged of any ill-gotten gains."  <u>See</u> VW
Amended Answer at 53.  And Volkswagen has argued that a punitive disgorgement, with
prejudgment interest inflated by Volkswagen's delay, could violate Volkswagen's due
process rights.  <u>See</u> Opp. to Mot. to Strike at 12–14.  The Court expresses no view on these
arguments, which—whatever their merits—are independent of Volkswagen's inadequately
pleaded unclean hands defense.

## IV.    CONCLUSION

For the foregoing reasons, the Court grants the SEC's Motion to Strike with leave to
amend.  Volkswagen shall have 30 days from the date of this order to file a second
amended answer that addresses the above-described pleading deficiencies.

**IT IS SO ORDERED.**

Dated: February 1, 2021



---

[2] For the same reason, Volkswagen's argument that the SEC's motion to strike is "premature," <u>see</u> Opp. to Mot. to Strike at 5, fails.

10

CHARLES R. BREYER
United States District Judge

11