**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| IN RE VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION, | No. 20-15564 |
| | D.C. No. 3:15-md-02672-CRB |
| PUERTO RICO GOVERNMENT EMPLOYEES AND JUDICIARY RETIREMENT SYSTEMS ADMINISTRATION, *Plaintiff-Appellee,* | OPINION |
| v. | |
| VOLKSWAGEN AG; VOLKSWAGEN GROUP OF AMERICA, INC.; VOLKSWAGEN GROUP OF AMERICA FINANCE LLC; MICHAEL HORN; MARTIN WINTERKORN, *Defendants-Appellants.* | |

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted January 12, 2021
San Francisco, California

Filed June 25, 2021

Before: J. CLIFFORD WALLACE and MILAN D.
SMITH, JR., Circuit Judges, and JANE A. RESTANI,[*]
Judge.

Opinion by Judge Milan D. Smith, Jr.;
Dissent by Judge J. Clifford Wallace

---

## SUMMARY[**]

---

### Securities Fraud

The panel reversed the district court's order denying summary judgment to defendants in a putative securities fraud class action and remanded for the district court to further consider whether a triable issue of material fact existed.

Puerto Rico Government Employees & Judiciary Retirement Systems Administration, a public pension fund, sought to recover for losses relating to bonds issued by Volkswagen Group of America Finance, LLC.  The market prices of the bonds dipped below par value after the United States Environmental Protection Agency and the California Air Resources Board issued notices of violation relating to the installation of defeat devices in certain Volkswagen diesel vehicles.   In this "mixed" securities fraud case,

---

[*] The Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

plaintiff    alleged    both    omissions    and    affirmative
misrepresentations.

The elements of a claim under SEC Rule 10b-5 include
reliance upon the defendant's misrepresentation or omission.
The panel concluded that plaintiff's allegations could not be
characterized primarily as claims of omission.  Accordingly,
the *Affiliated Ute* presumption of reliance did not apply.  The
panel held that this presumption is limited to cases that
primarily allege omissions and present plaintiffs with the
difficult task of proving the speculative negative that they
would have relied on information had it been disclosed.
Here, plaintiff alleged an omission in Volkswagen's failure
to disclose that it was secretly installing defeat devices in its
"clean diesel" line of cars, but plaintiff also alleged multiple
affirmative    misrepresentations    about    environmental
compliance   and   financial   liabilities   in   its   offering
documents.

Dissenting, Judge Wallace wrote that the *Affiliated Ute*
presumption could be available because the primary focus of
plaintiff's claims was the key omission of Volkswagen's
installation of defeat devices.  Judge Wallace emphasized
that the court's prior decisions in *Blackie v. Barrack*, 524
F.2d 891 (9th Cir. 1975), and *Binder v. Gillespie*, 184 F.3d
1059 (9th Cir. 1999), controlled the panel's decision despite
the majority's refusal to apply those rulings, which only an
en banc court can do.

## COUNSEL

Robert J. Giuffra Jr. (argued), Sharon L. Nelles, Suhana S. Han, William H. Wagener, and Elizabeth N. Olsen, Sullivan & Cromwell LLP, New York, New York, for Defendants-Appellants.

Ian D. Berg (argued) and Takeo A. Kellar, Abraham Fruchter & Twersky LLP, San Diego, California; Mitchell M.Z. Twersky, Abraham Fruchter & Twersky LLP, New York, New York; for Plaintiff-Appellee.

Douglas Wilens, Robbins Geller Rudman & Dowd LLP, Boca Raton, Florida; Thomas C. Michaud, Vanoverbeke Michaud & Timmony P.C., Detroit, Michigan; for Amicus Curiae Michigan Association of Public Employees Retirement Systems.

Gideon A. Schor, Wilson Sonsini Goodrich & Rosati PC, New York, New York; Joseph A. Grundfest, The William A. Franke Professor of Law and Business, Stanford Law School, Stanford, California; for Amici Curiae Law Professors and Former SEC Officials.

Deanne E. Maynard and Adam L. Sorensen, Morrison & Foerster LLP, Washington, D.C.; Jordan Eth, Mark R. S. Foster, and James R. Sigel, Morrison & Foerster LLP, San Francisco, California; Daryl Joseffer and Janet Galeria, U.S. Chamber Litigation Center, Washington, D.C.; for Amici Curiae Chamber of Commerce of the United States of America, Securities Industry and Financial Markets Association, and Alliance for Automotive Innovation.

## OPINION

M. SMITH, Circuit Judge:

This case arises on interlocutory appeal to address the scope of the *Affiliated Ute* presumption of reliance in "mixed" securities-fraud cases that allege both omissions and affirmative misrepresentations. Because we conclude the allegations in this case cannot be characterized primarily as claims of omission, we hold that the *Affiliated Ute* presumption of reliance does not apply. *See Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). Accordingly, we reverse the order denying summary judgment to Volkswagen, and remand for the district court to further consider whether a triable issue of material fact exists.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.

Plaintiff-Appellee Puerto Rico Government Employees & Judiciary Retirement Systems Administration (Plaintiff) is a public pension fund that purchased bonds issued by Defendant-Appellant Volkswagen Group of America Finance, LLC (VWGoAF). Non-party Santander Asset Management LLC (Santander) served as Plaintiff's investment advisor.

Defendant-Appellant Volkswagen AG (VWAG) is an international manufacturer of automobiles. Defendant-Appellant Volkswagen Group of America, Inc. (VWGoA) is a wholly owned subsidiary of VWAG that markets and sells Volkswagen brand vehicles in the United States. Defendant-

Appellant VWGoAF is a wholly owned subsidiary of VWGoA that issues debt securities.[1, 2]

VWGoAF issued the bonds at issue in this case in three private placements that closed on May 23, 2014, November 20, 2014, and May 19, 2015. WGoAF issued an Offering Memorandum for each bond offering on May 15, 2014, November 12, 2014, and May 19, 2015, respectively (collectively, Offering Memoranda). Plaintiff alleges that on May 15, 2014, the same day VWGoAF issued its Offering Memorandum for the first bond offering, Santander placed orders to buy approximately $4 million worth of bonds on Plaintiff's behalf.

On September 18, 2015, the United States Environmental Protection Agency and California Air Resources Board issued notices of violation to VWGoA relating to the use of defeat devices in certain Volkswagen diesel vehicles. As has been widely publicized by the media, congressional hearings, and scores of lawsuits, Volkswagen was secretly installing defeat devices in millions of its diesel cars worldwide to mask unlawfully high emissions from regulators and cheat on emissions tests. Following the announcement, market prices of some Volkswagen bonds, including those purchased by Plaintiff, temporarily dipped below par value.

---

[1] Defendant-Appellant Martin Winterkorn served as VWAG's Chief Executive Officer and Chairman of the Board of Management from 2007 until his resignation in 2015. Between January 2014 and March 9, 2016, Defendant-Appellant Michael Horn was the President and Chief Executive Officer of VWGoA.

[2] All Defendants-Appellants are collectively referred to as Volkswagen.

## II.

Seeking to recover for losses relating to the bonds, Plaintiff filed this putative securities-fraud class action against Volkswagen alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Securities and Exchange Commission (SEC) Rule 10b-5, 17 C.F.R. § 240.10b-5. Although this case involves a long procedural history, both in our court and in the district court, the scope of this appeal is narrow. We focus only on the issue certified for interlocutory appeal from the district court's order denying Volkswagen's motion for summary judgment.

Volkswagen moved for summary judgment exclusively on the element of reliance in Rule 10b-5. Volkswagen argued that Plaintiff, despite its allegations, had no evidence that it or Santander relied on the Offering Memoranda, that the *Affiliated Ute* presumption of reliance did not apply, and that, if did it apply, Volkswagen had rebutted the *Affiliated Ute* presumption.

The district court denied Volkswagen's motion for summary judgment. The district court did not rule on the issue of direct reliance, instead reasoning that although Plaintiff bases its claims on certain affirmative statements, "Volkswagen's failure to disclose [the defeat device issue] is ultimately what drives Plaintiff's claims" and "[t]he case is best characterized as a nondisclosure case" such that "[u]nder [*Binder v. Gillespie*, 184 F.3d 1059 (9th Cir. 1999)] and [*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975)] . . . *Affiliated Ute*'s presumption of reliance applies."

Volkswagen moved the district court to reconsider or to certify the decision for interlocutory appeal. The district court certified the decision and ruled that the order denying

Volkswagen's motion for summary judgment "'involves a controlling question of law as to which there is substantial ground for difference of opinion' and that 'an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *See Reese v. BP Expl. (Ala.) Inc.*, 643 F.3d 681, 687–88 (9th Cir. 2011). We then granted Volkswagen's petition for permission to appeal pursuant to 28 U.S.C. § 1292(b).

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1292(b). We review an order denying summary judgment *de novo*. *Alaska v. United States*, 754 F.2d 851, 853 (9th Cir. 1985).

## ANALYSIS

### I.

"Rule 10b–5(b), enacted under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), makes it unlawful '[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.'" *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1157 (9th Cir. 1996) (quoting 17 C.F.R. § 240.10b–5(b)). The elements of a Rule 10b-5 claim are: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014) (citations and internal quotation marks omitted). If one of these elements is missing, the claim fails. *See, e.g., Loos v. Immersion Corp.*, 762 F.3d 880, 883 (9th Cir. 2014)

(affirming district court's dismissal where plaintiff failed to show loss calculation).

The Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), removed affirmative proof of reliance as a condition of recovery under certain limited circumstances. In *Affiliated Ute*, the Court considered whether members of the Ute Indian Tribe needed to prove actual reliance when they alleged "primarily a failure to disclose." *See id.* at 153. Specifically, the tribal members alleged that bank officers bought their restricted stock without disclosing that the bank created a secondary market in which that stock could be resold for profit. *Id.* at 133–39. This allowed the bank officers to purchase the tribal members' stock below market value and then sell it on the secondary market for a profit. *Id.* If required to affirmatively prove reliance under these circumstances, the tribal members would have been forced to prove a speculative negative: that they would have relied on information about the secondary market before selling their stock had the bank disclosed it. *Id.* The Court held that in such cases, "involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision." *Id.* at 153–54. The Court presumed reliance because "[t]his obligation to disclose and this withholding of a material fact establish the requisite element of causation in fact." *Id.* at 154.

Since the Supreme Court's decision in *Affiliated Ute*, we have recognized the presumption of reliance is "generally available to plaintiffs alleging violations of section 10(b) based on omissions of material fact." *See Binder v. Gillespie*, 184 F.3d 1059, 1063 (9th Cir. 1999) (citing *Kramas v. Sec.*

*Gas & Oil Inc.*, 672 F.2d 766, 769 (9th Cir. 1982)). We "embraced the [*Affiliated Ute*] presumption because of the difficulty of proving a 'speculative negative'—that the plaintiff relied on what was not said." *Id.* at 1064 (citing *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)). Accordingly, we have "applied the *Affiliated Ute* presumption to cases that 'are, or can be, cast in omission or non-disclosure terms.'" *Id.* at 1063 (quoting *Blackie*, 524 F.2d at 905; citing *Arthur Young & Co. v. U. S. Dist. Court*, 549 F.2d 686, 694 (9th Cir. 1977)).

In *Blackie*, we afforded the plaintiffs a presumption of reliance where they alleged that defendants omitted certain material facts from annual and interim financial reports, press releases, and SEC filings in violation Rule 10b-5(b). 524 F.2d at 894, 905–06. We recognized the rationale behind the presumption was that direct proof of reliance in omission cases would require "proof of a speculative negative"—that "I would not have bought had I known" or "I would not have sold had I known." *Id.* at 908. And because "[t]he class members' substantive claims either [were], or [could] be, cast in omission or non-disclosure terms," we excused this "difficult evidentiary burden" and afforded plaintiffs the *Affiliated Ute* presumption of reliance. *Id.* at 905–07.

The Dissent contends that *Blackie* was a "mixed" case, while other members of our court have characterized *Blackie* as a "pure omissions case." *See Binder*, 184 F.3d at 1068 (Reinhardt, J., dissenting). However one interprets the facts in *Blackie*, our subsequent binding circuit precedent makes clear that the *Affiliated Ute* presumption is limited to cases that primarily allege omissions and present plaintiffs with the difficult task of proving a speculative negative. *See id.* at 1064 (citing *Blackie*, 524 F.2d at 908).

In *Binder*, we distinguished "pure omissions" cases from "mixed" cases that allege both omissions and affirmative misrepresentations. *Id*. Seeking to "squarely decide[]" the scope of *Affiliated Ute* after *Blackie*, we held that the "presumption should not be applied to cases that allege both misstatements and omissions unless the case can be characterized as one that primarily alleges omissions." *Id.* at 1063–64. We instructed that this requires courts to "analytically characterize [the] action as either primarily a nondisclosure case (which would make the presumption applicable), or a positive misrepresentation case" (where the presumption would be unavailable). *Id.* at 1064 (quoting *Finkel v. Docutel/Olivetti Corp.*, 817 F.2d 356, 359 (5th Cir. 1987); citing *Austin v. Loftsgaarden*, 675 F.2d 168, 178 n.21 (8th Cir. 1982)).

With respect to characterizing Binder's allegations, the district court's order revealed that Binder alleged reliance on affirmatively false financial statements. *See id.* at 1063. As a result, we agreed with the district court's characterization of Binder's action as "not primarily an omissions case," and affirmed summary judgment because the district court's "decision not to apply the presumption was sound and supported by the weight of authority." *Id.* at 1064.

Since *Binder*, we continued conducting the requisite analytical inquiry to determine whether claims primarily allege omissions sufficient to trigger the *Affiliated Ute* presumption.[3]

---

[3] District courts within this circuit have done the same. *See, e.g.*, *ScripsAmerica, Inc. v. Ironridge Global LLC*, 119 F.Supp.3d 1213, 1250–51 (C.D. Cal. 2015); *McPhail v. First Command*, 247 F.R.D. 598, 613–14 (S.D. Cal. 2007); *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 490–91 (C.D. Cal. 2006).

In *Poulos v. Caesars World, Inc.*, we concluded the *Affiliate Ute* presumption did not apply because the plaintiffs, a putative class of gamblers, primarily alleged affirmative misrepresentations. 379 F.3d 654, 666–67 (9th Cir. 2004). The gamblers alleged that the trade dress of the electronic slot machines was misleading because the casinos "affirmatively mislabeled the video poker machines with statements like '52–card deck,' 'shuffle,' and 'draw.'" *Id.* at 667. We noted the alleged omission—that the machines neglected to specify that they operated differently than their older mechanical counterparts—was but one part of a much broader claim. *Id.* "Simply put, the Class Representatives' claims are based as much on what is *there* as what is purportedly missing." *Id.* This, we concluded, "pushe[d] the claims outside *Binder*'s presumption of reliance." *Id.*

In *Desai v. Deutsche Bank Securities Ltd.*, we again conducted the requisite analytical characterization and concluded the *Affiliate Ute* presumption did not apply. 573 F.3d 931, 940–41 (9th Cir. 2009). The investors alleged that banking entities engaged in a market-manipulation scheme to use securities loans to profit from a company's artificially inflated stock price. *Id.* at 934. While engaging in a "sophisticated scheme to manipulate the price of the company's stock," defendants allegedly used loans to avoid selling the stock after the price rose because selling would have depressed the stock price and reduced their fraudulent profit. *Id.* at 933–35. We reasoned that while this type of market manipulative conduct necessarily involves some nondisclosure, it primarily related to a misrepresentation or manipulation because it involved "activities designed to affect the price of a security artificially by simulating market activity that does not reflect genuine investor demand." *Id.* at 941.

In declining to apply the *Affiliated Ute* presumption, we recognized that "[a]ny fraudulent scheme requires some degree of concealment, both of the truth and of the scheme itself." *Id.* (quoting *Joseph v. Wiles*, 223 F.3d 1155, 1163 (10th Cir. 2000), *abrogated on other grounds by Cal. Pub. Emps. Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042 (2017)). But we explained the mere fact of concealment cannot transform affirmative conduct into omissions. *See id.* "To do otherwise would permit the *Affiliated Ute* presumption to swallow the reliance requirement almost completely . . . [and] fail to serve the *Affiliated Ute* presumption's purpose since this is not a case where reliance would be difficult to prove because it was based on a negative." *Id.* (quoting *Joseph*, 223 F.3d at 1163). Therefore, we held the *Affiliated Ute* presumption of reliance did not apply and "carefully maintained the well-established distinction, for purposes of the *Affiliated Ute* presumption, between omission claims, on the one hand, and misrepresentation and manipulation claims, on the other." *Id*.

## II.

We now turn to Plaintiff's allegations against Volkswagen. We acknowledge at the outset that Plaintiff alleges an omission, and that omission looms large over Plaintiff's claims. As the district court found, Volkswagen failed to disclose—for years—it was secretly installing defeat devices in its "clean diesel" line of cars to mask unlawfully high emissions from regulators and cheat on emissions tests. However, Plaintiff also alleges more than nine pages of affirmative misrepresentations that were made by Volkswagen *and relied upon* by Plaintiff and its investment advisor. These affirmative misrepresentations, which Plaintiff alleges it relied upon when purchasing the

bonds, push this case outside *Affiliated Ute*'s narrow presumption. *See Poulos*, 379 F.3d at 666–67.

To reach this conclusion, we look to the justification underlying the Supreme Court's decision in *Affiliated Ute*: reliance is impossible or impractical to prove when no positive statements were made. *See Blackie*, 524 F.2d at 907–08. This, as well as our post-*Blackie* circuit precedent, instructs that the *Affiliated Ute* presumption should be limited to situations in which a plaintiff would be forced to prove a speculative negative: "that the plaintiff relied on what was not said." *See Binder*, 184 F.3d at 1064 (citing *Blackie*, 524 F.2d at 908). Plaintiff does not allege that narrow circumstance in this case. Plaintiff alleges much was said, and importantly, that it relied on what was said.

Under the bolded heading "**FALSE AND MISLEADING STATEMENTS AND OMISSIONS**" in its Second Amended Complaint, Plaintiff alleges that Volkswagen "made numerous materially false and misleading statements and omissions, including to Bondholders, regarding the Company's operations and financial results, NOx emissions, emissions-control technology, its business and financial results, outlook, and compliance with U.S. and European regulatory standards." Plaintiff alleges that these false and misleading statements were contained in the three Offering Memoranda, and that each Offering Memorandum "contained substantively identical false and misleading statements." Some of the alleged affirmative misrepresentations in the Offering Memoranda include:

> Volkswagen is subject to laws and regulations that require it to control automotive emissions, including exhaust emissions standards, vehicle evaporation

standards and onboard diagnostic system requirements.

Automobile manufacturers must reduce the $CO_2$ emissions of their new passenger car fleet in the European Union according [to] the EU average of 130g $CO_2$/km from 2012 onward with a phase-in until 2015. The target to be achieved from 2020 onward is 95g $CO_2$/km.

*   *   *

Currently, Volkswagen offers in Europe [438/532] models or model variants with $CO_2$ emissions below 130g $CO_2$/km; [324/416] models emit less than 120g $CO_2$/km and [54/85] models are currently already below 100g $CO_2$/km.

*   *   *

Volkswagen's top priority for research & development [in past years] was to develop engines and drivetrain concepts to reduce emissions, and to develop and expand the modular longitudinal toolkit platforms and the modular transverse toolkit platforms.

*   *   *

A focal point of Volkswagen's current and future development activities is and will be innovative mobility concepts and the

> reduction of fuel consumption and emissions
> of the fleet.

Plaintiff alleges that these statements were "materially false" because Volkswagen "did not intend to . . . reduce emissions" and "misleading because they implied that Volkswagen had already reduced vehicle emissions when in truth Volkswagen's diesel engines emitted more pollutants than [it] represented." Plaintiff also alleges that these statements were "misleading because they implied that Volkswagen's vehicles were compliant with emissions regulations" when they were not.

Plaintiff also alleges, again in bold, that Volkswagen "**Made False And Misleading Statements And Omissions In Interim and Annual Reports <u>Referenced In The Offering Memoranda</u>**." Some of these alleged affirmative misrepresentations include:

> Volkswagen is . . . continuing to focus in depth on developing efficient drive technologies, thus extending its position as an innovation leader in the area of environmentally friendly mobility, and that [Volkswagen] offer[s] an extensive range of environmentally friendly, cutting-edge, high-quality vehicles for all markets and customer groups that is unparalleled in the industry. . . .

> The Volkswagen Group closely coordinates technology and product planning with its brands so as to avoid breaches of emission limits, which would entail severe sanctions.

Plaintiff alleges these statements were "materially false and misleading because rather than actually being 'environmentally friendly,' [Volkswagen] diesel vehicles were equipped with secret defeat devices that allowed them to be sold under the pretense that their NOx emissions were within the legal limits when they actually exceeded such limits by as much as 40 times." In addition, the statements concerning Volkswagen's efforts to avoid breaches of emission limits and its environmentally friendly vehicles "were misleading because they failed to disclose that its basis for avoiding breaches of emissions limits . . . and offering environmentally friendly emissions standards was an unlawful scheme to meet regulatory emissions standards; and, that but for the illegal scheme, Volkswagen would not have been able to sell a substantial portion of its vehicles."

Plaintiff also alleges that Volkswagen "**Made False And Misleading Statements And Omissions About [Volkswagen's] Financial Results <u>And Condition</u>**." In this regard, Plaintiff alleges that Volkswagen failed to "properly recognize provisions relating to its use of unlawful defeat devices in its 'clean diesel' vehicles, [so] its 'total liabilities were materially understated and its operating profit, total assets, and shareholders' equity were materially overstated in each of [Volkswagen's] periodic reports during the Class Period.'"

Not only does Plaintiff allege Volkswagen made numerous affirmative misrepresentations, Plaintiff expressly alleges that it relied on them. In relevant part, Plaintiff alleges:

> Plaintiff, through its authorized investment advisor with complete investment discretion, reviewed and relied upon the information contained in the Offering Memorandum that

> corresponds to Plaintiff's Bond purchases, including the alleged omissions and misrepresentations.
>
> *   *   *
>
> Accordingly, each purchaser of Bonds in the Offerings can demonstrate that it (1) was aware of the alleged misrepresentations and omissions in the Offering Document, and (2) purchased the Offering securities based on those misrepresentations and omissions.

This is not, as the Dissent contends, a case where "some 'positive statement' or affirmative misrepresentation was also made and relied upon." Instead, as we held in *Poulos*, "the [Plaintiff's] claims are based as much on what is *there* as what is purportedly missing." 379 F.3d at 666. As the district court correctly reasoned in earlier proceedings in this case, either Plaintiff relied on these affirmative misrepresentations in purchasing the bonds or it did not. If it did not, it cannot overcome this shortfall by invoking *Affiliated Ute*'s narrow presumption and characterizing its claims as primarily alleging omissions. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2018 WL 1142884, at *6 (N.D. Cal. Mar. 2, 2018).

This does not, as the Dissent suggests, add a "new evidentiary hurdle" for the Plaintiff. Instead, Plaintiff bears the burden to prove all elements of its Rule 10b-5 claim, including reliance, *see Halliburton Co.*, 573 U.S. at 267, and Plaintiff placed that evidentiary burden on itself by explicitly

pleading reliance on extensive, detailed, and specific affirmative misrepresentations.[4]

There is no question that Plaintiff alleges an omission regarding Volkswagen's use of defeat devices, but that omission is simply the inverse of the affirmative misrepresentations described above: Volkswagen made certain affirmative statements about environmental compliance and financial liabilities and those statements were materially false or misleading. *See Waggoner v. Barclays PLC*, 875 F.3d 79, 96 (2d Cir. 2017) (concluding that investors were not entitled to the *Affiliated Ute* presumption because the complaint alleged numerous affirmative misstatements, the "omission" was "simply the inverse" of the misrepresentation allegations, and the presumption does not apply to "misstatements whose only omission is the truth that the statement misrepresents"). The Dissent criticizes our favorable citation to *Waggoner*, but offers no authority for its opposing position that, in practice, "would swallow the reliance requirement almost completely" because affirmative misrepresentations are almost always rendered misleading by an omission.[5] *See Desai*, 573 F.3d at 941 (citation omitted).

---

[4] This case does not, as the Dissent argues, "defeat recovery by those whose reliance was indirect." Plaintiff does not allege indirect reliance; it alleges that "Plaintiff, through its authorized investment advisor with complete investment discretion [(Santander)], reviewed and relied upon the information contained in the Offering Memorandum that corresponds to Plaintiff's Bond purchases, including the alleged omissions and misrepresentations.

[5] Under our reading of *Affiliated Ute*, the presumption would have been unavailable, for example, if members of the Ute Indian Tribe pleaded reliance on affirmative statements from bank officers

As we noted before, "[a]ll misrepresentations are also nondisclosures, at least to the extent that there is a failure to disclose which facts in the representation are not true." *Little v. First Cal. Co.*, 532 F.2d 1302, 1304 n.4 (9th Cir. 1976). But while fraud necessarily involves concealing the truth, we cannot allow such concealment to transform affirmative misstatements into implied omissions. To do so would stray from *Affiliated Ute*'s purpose of excusing the difficult or impossible evidentiary burden of proving a "speculative possibility in an area where motivations are complex and difficult to determine." *See Blackie*, 524 F.2d at 908. Plaintiff does not face that burden here. It either relied on the alleged affirmative misrepresentations in purchasing the bonds or it did not. Therefore, the *Affiliate Ute* presumption of reliance does not apply because Plaintiff can prove reliance through ordinary means by demonstrating a connection between the alleged misstatements and its injury.[6] Otherwise, the exception would swallow the rule.

## CONCLUSION

Plaintiff does not face the difficult or impossible task of proving a speculative negative. Instead, Plaintiff alleges over nine pages of affirmative misrepresentations that it and its investment advisor relied upon when purchasing the bonds from Volkswagen. Therefore, while this is a "mixed" case that alleges both omissions and affirmative

---

representing that the bank did not create a secondary market for their restricted stock. But under the Dissent's reading, failing to disclose that the bank had created a secondary market would have rendered the bank officers' affirmative statements misleading, thus entitling them to the presumption despite explicit and provable reliance allegations.

[6] We offer no opinions on the other issues and presumptions raised in the parties' briefing.

misrepresentations, Plaintiff's allegations cannot be characterized primarily as claims of omission, so the *Affiliated Ute* presumption of reliance does not apply. If the Dissent's interpretation were adopted, *Affiliated Ute* would become available for all securities fraud claims because all misrepresentations can be cast as omissions, at least to the extent they fail to disclose which facts are not true. Accordingly, we reverse the order denying summary judgment to Volkswagen, and remand for the district court to further consider whether a triable issue of material fact exists.

**REVERSED AND REMANDED.**

WALLACE, Circuit Judge, dissenting:

I agree with the majority that this interlocutory appeal presents a mixed case of both omissions and affirmative misrepresentations. However, I maintain that our opinions in *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975), and *Binder v. Gillespie*, 184 F.3d 1059 (9th Cir. 1999), dictate that the *Affiliated Ute* presumption can be available here because the plaintiff alleges a case primarily based on Volkswagen's omission. Based upon my understanding of our binding precedent, the nine pages of affirmative misrepresentations in the second amended complaint do not alter the primary focus of the plaintiff's claims, particularly when the affirmative misrepresentations all relate back to the key omission: Volkswagen's installation of defeat devices to cheat on emissions tests and deceive government regulators.

The majority's attempt to reframe *Affiliated Ute*'s underlying justification as focused only on reaching cases where "reliance is *impossible* or impractical to prove when

*no positive statements* were made," Maj. Op. at 14 (emphasis added), is, in my view, a tortured reading of the Supreme Court's opinion to justify the conclusion the majority wishes to reach. The majority's unfortunate reading also effectively removes the availability of the *Affiliated Ute* presumption of reliance for plaintiffs alleging mixed cases primarily based on omissions if some "positive statement" or affirmative misrepresentation was also made and relied upon. This incorrect reading effectively overrules our reasoning and holdings in *Blackie* and *Binder*, which remain good law that bind this panel and our court until an en banc court overrules these cases. Even if our subsequent precedent diverges from aspects of our decision in *Blackie*, we are nonetheless bound to apply *Blackie* until it is expressly overruled. I agree that we face a dilemma in determining what set of facts may qualify as a case primarily based on omissions because "the categories of omission and misrepresentation are not mutually exclusive[,]" *Little v. First Cal. Co.*, 532 F.2d 1302, 1304 n.4 (9th Cir. 1976) (quotation marks omitted), but I disagree with the majority's conclusion and analysis. In the end, the crucial fact in the plaintiff's case is that Volkswagen's affirmative misrepresentations were rendered misleading because of its omission.[1]

I.

I disagree with the majority's analysis regarding whether the plaintiff has alleged a mixed case primarily based on omissions or one primarily predicated on affirmative

---

[1] I address only the threshold question of whether the plaintiff's claims rest primarily on Volkswagen's omission regarding the defeat devices so that the *Affiliated Ute* presumption may be available. I do not address whether Volkswagen had a duty to disclose or rebutted the presumption if there was a duty to disclose.

misrepresentations.  My disagreement begins with how the majority portrays the Supreme Court's decision in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), and our court's subsequent application of the precedent in intervening years.

The Supreme Court in *Affiliated Ute* held that there is a presumption of reliance where a defendant had a duty to disclose and the information withheld is material.  406 U.S. at 153–54.  In *Affiliated Ute*, the plaintiffs alleged that a bank and the bank's employees violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 by concealing the lucrative resale market for the plaintiffs' shares of capital stock, as well as the bank employees' role in creating that market.  *Id.* at 153.  The Supreme Court held that the bank and its employees omitted material facts regarding the resale market and that they had a duty to disclose that information to the plaintiffs.  *Id.*  The Supreme Court reasoned that "positive proof of reliance [was] not a prerequisite to recovery" for the failure to disclose under the circumstances of the case.  *Id.*  The Supreme Court held that "[a]ll that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision."  *Id*. at 153–54.  The duty to disclose *and* the omission of the material facts, therefore, established causation in fact.  *Id.* at 154.

We have adopted the *Affiliated Ute* presumption of reliance and confirmed its availability to plaintiffs alleging violations of Section 10(b) and Rule 10b-5 based on "omissions of material fact."  *Binder*, 184 F.3d at 1063.  We have applied the *Affiliated Ute* presumption where the plaintiffs' claims were "cast in omission or non-disclosure terms," and the defendants' material omissions rendered affirmative statements misleading.  *Blackie*, 524 F.2d

at 905–06; *see also Little*, 532 F.2d at 1304 (stating that
defendants in *Blackie* omitted certain material facts "from
annual and interim reports, press releases and SEC filings,"
and "[t]hese documents contained representations rendered
inaccurate by the omissions"). We have also held that the
presumption is available when plaintiffs allege both
omissions and misrepresentations if the case "primarily
alleges omissions," also known as a mixed case. *Binder*,
184 F.3d at 1064. As mentioned above, I maintain that this
is a mixed case primarily based on the omission, which
tracks the scenario in *Blackie*, so that the presumption may
be available.[2]

We reasoned in *Blackie* that the theory behind the
*Affiliated Ute* presumption is that proof of direct reliance in
an omission case would impose on a plaintiff the difficult
evidentiary burden to offer "proof of a speculative negative,"
— *i.e.*, I would not have bought had I known — which
"threatens to defeat valid claims . . . and threatens the
enforcement of the securities laws." *Blackie*, 524 F.2d at
908. In my opinion, that theory and concern are implicated
in this case, regardless of the majority's insistence to the
contrary. The majority's discussion of *Blackie* is limited

---

[2] The majority's assertion that *Blackie* has been understood to be a
"pure omissions" case confuses our precedent. *See* Maj. Op. at 11. In
*Binder*, the majority, speaking for our court, did not hold that *Blackie*
was a pure omissions case; the dissent in *Binder* made that distinction,
which I believe was incorrect. *See id.* at 1068 (Reinhardt, J. dissenting).
We also observed in *Little* that *Blackie* was not a pure omissions case.
*Little*, 532 F.2d at 1304 (stating that in *Blackie*, the defendants'
"documents contained representations rendered inaccurate by the
omissions" . . . but determining that "we need not go so far" because the
case before it was "the purest case of an omission"). I, therefore, believe
*Blackie* shares more in common with our later distinction of mixed cases
because *Blackie* involved affirmative misrepresentations rendered
misleading by the defendants' omissions, as occurred here.

and, instead, focuses on *Binder*'s discussion regarding mixed cases predicated on affirmative misrepresentations. *See* Maj. Op. at 10–11.  Despite the majority's attempts to avoid *Blackie* and our holding there, I believe our decision in *Blackie* controls here.  Ultimately, *Blackie* remains good law and is controlling precedent until an en banc court overrules it.  Importantly, this case shares similarities with *Blackie* that makes the majority's attempt to gloss over it disingenuous at best.

First, the plaintiffs in *Blackie* alleged omissions that rendered affirmative statements throughout various company materials and press releases misleading.  *Blackie*, 542 F.3d at 894.  We held these facts sufficient to make the *Affiliated Ute* presumption of reliance available.  *Id*. at 906. Second, we expressed a concern that I echo here: "[r]equiring direct proof from each purchaser that he relied on a particular representation when purchasing would defeat recovery by those whose reliance was indirect, despite the fact that the causational chain is broken only if the purchaser would have purchased the stock even had he known of the misrepresentation."  *Id.* at 907.[3]  In *Blackie*, we observed that such a purchaser may acquire a stock due to a "favorable price trend, price earnings ratio, or some other factor," so that their reliance is indirect because they rely "generally on the supposition that the market price is validly set and that

---

[3] I do not argue that *Blackie* controls here because the plaintiff alleges indirect reliance, as the majority claims.  *See* Maj. Op. at 19 n. 4. I agree with the majority that the plaintiff alleges direct reliance as well as requests a presumption of reliance in relation to Volkswagen's critical and material omission because it would not have purchased the bonds had it known of Volkswagen's fraudulent conduct regarding the defeat devices.  As a result, the majority's reference to my discussion of "indirect reliance" mischaracterizes my point and ignores that I quote our concern in *Blackie* in its full context.

no unsuspected manipulation has artificially inflated the price, and thus indirectly on the truth of the representations underlying the stock price." *Id.* As a result, we recognized that regardless of whether a purchaser is aware of it or not, the price they pay "reflects material misrepresentations." *Id.* We refused to "leave such open market purchasers unprotected" because the law is designed "to foster an expectation that securities markets are free from fraud[;] an expectation on which purchasers should be able to rely." *Id.*

While the bond purchases here did not occur on the open market but during a Rule 144A private placement, I nonetheless believe that *Blackie*'s rationale rings true to this case and the omission alleged. As in *Blackie*, Volkswagen's omission regarding its deceptive practices was clearly material, and it is common sense that a bond purchaser would not take on the significant risk of purchasing corporate debt from a business that is deceiving government regulators worldwide and would be penalized when discovered. *See id.* at 908 (recognizing as "common sense that a stock purchaser does not ordinarily seek to purchase a loss in the form of artificially inflated stock"). The majority's argument that proving a speculative negative would not be "impossible" here due to the numerous affirmative misrepresentations downplays both the severity of Volkswagen's omission and its role in the alleged fraud, as well as adds a new evidentiary hurdle for plaintiffs, *i.e.*, a plaintiff may only call upon the *Affiliated Ute* presumption if it is "impossible" to prove direct reliance or "positive prove of reliance." Neither the Supreme Court nor our court has set such a bar. *Cf. Affiliated Ute*, 406 U.S. at 151–52 (discussing Congress's intent for section 10 of the Securities Exchange Act of 1934 and Rule 10b-5 to not be construed "technically and restrictively, but flexibly to effectuate its remedial purpose") (citation and quotation marks omitted).

As I see it, the plaintiff has alleged primarily an omissions case predicated on Volkswagen's material omission because the omission rendered those affirmative misstatements misleading.

Finally, I believe the majority's reliance on *Desai v. Deutsche Bank Securities Ltd.*, 573 F.3d 931 (9th Cir. 2009), *Poulos v. Caesars World, Inc.*, 379 F.3d 654 (9th Cir. 2004), and *Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017), is misplaced.   As an initial matter, *Desai* involved manipulative conduct rather than an omission, *Poulos* involved civil Racketeer Influenced and Corrupt Organizations Act (RICO) claims rather than securities fraud, and *Waggoner* is Second Circuit precedent that does not bind our court.

In *Desai*, we expressly recognized "that manipulative conduct has always been distinct from actionable omissions," and emphasized that the plaintiffs alleged manipulative conduct rather than omissions because the alleged conduct was "designed to affect the price of a security artificially by simulating market activity that [did] not reflect genuine investor demand." *Desai*, 573 F.3d at 940–41; *see also id.* at 942 (declining to "recognize a new presumption for manipulative conduct cases" due to the Supreme Court's "restrictive view of private suits under § 10(b)").

In *Poulos*, we declined to determine whether the *Affiliated Ute* presumption of reliance could be available in the civil RICO action because the plaintiffs' other claims would preclude such a presumption.  *Poulos*, 379 F.3d at 666.   In addition, the class representatives in *Poulos* conceded that some of their claims "are not primarily claims of omission." *Id.* at 666–67.  With respect to another claim, we held that the plaintiffs' allegations were not primarily

predicated on omissions but were rather based on an approximately even mix of affirmative misrepresentations and omissions. *Id.* at 667 ("Simply put, the Class Representatives' claims are based as much on what is *there* as what is purportedly missing") (emphasis added). Here, the plaintiff makes no concession that its claims are not primarily based on Volkswagen's omission. Moreover, from my point of view, the plaintiff's allegations here are focused on Volkswagen's crucial omission regarding the installation of defeat devices, and the affirmative misrepresentations rendered misleading by that omission are further evidence of Volkswagen's attempts to disguise its fraud.

As for *Waggoner*, our sister circuit relied on precedent that is not binding on our court to hold that the plaintiffs' "claims [were] primarily based on misstatements not omissions." Although the Second Circuit recognized that the omissions in *Waggoner* "exacerbated the misleading nature of the affirmative statements," it determined that the *Affiliated Ute* presumption did not apply "to earlier misrepresentations made more misleading by subsequent omissions . . . nor [did] it apply to misstatements whose only omission is the truth that the statement misrepresents." *Waggoner*, 875 F.3d at 96 (quotation marks omitted), *citing Starr ex rel. Estate of Sampson v. Georgeson S'holder, Inc.*, 412 F.3d 103 (2d Cir. 2005); *Joseph v. Wiles*, 223 F.3d 1155, 1162 (10th Cir. 2000). This reasoning in *Waggoner* cuts directly against our holding in *Blackie*, and *Blackie* is binding precedent in our circuit that the majority and I must follow. *See Blackie*, 542 F.3d at 903–04. Yet the majority fails to do so here. My concern is that the majority's holding will result in future mixed cases being characterized as cases primarily based on affirmative misrepresentations so that the *Affiliated Ute* presumption will no longer be available.

## II.

For these reasons, I dissent from the majority's determination that the plaintiff has alleged primarily an affirmative misrepresentation case, rather than primarily an omission case.  I also dissent from the majority's decision to narrow drastically the availability of the *Affiliated Ute* presumption of reliance, in direct contravention of our decisions in *Blackie* and *Binder*.