Carmine D. Boccuzzi, Jr. (pro hac vice)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000 (Phone)
(212) 225-3999 (Facsimile)
cboccuzzi@cgsh.com

*Counsel for Defendants
Robert Bosch GmbH
and Robert Bosch LLC*

*Additional counsel listed on signature page*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 2672 CRB (JSC) |
| This Document Relates to:<br>*Iconic Motors, Inc. et al. v. Volkswagen Group of America, Inc. et al.*,<br>Case No. 3:17-cv-3185-CRB | **STIPULATION AND [PROPOSED] ORDER GOVERNING THE PRODUCTION OF HARD COPY DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**<br><br>The Honorable Charles R. Breyer |

WHEREAS, the Parties[1] mutually seek to reduce the time, expense, and other burdens associated with discovery, and to better define their obligations with respect to such information and materials;

WHEREAS, Iconic Motors, Inc. d/b/a Elgin Volkswagen and Slevin Capital Investments, Inc. (collectively "Plaintiffs") served requests for documents on Robert Bosch GmbH and Robert Bosch LLC (collectively the "Bosch Defendants"), specifically (1) Plaintiffs' First Set of Requests for Production to Bosch GmbH and (2) Plaintiffs' First Set of Requests for Production to Bosch LLC that include the same requests for documents sought by plaintiffs in *Napleton Orlando*

---

[1] All defined terms herein are the same as those used in the Stipulated Protective Order Governing Individual Dealer Actions, (Dkt. No. 5180) (the "Stipulated Protective Order"), unless otherwise noted.

- 1 -
STIPULATION AND [PROPOSED] ORDER GOVERNING PRODUCTION OF HARD COPY
DOCUMENTS AND ELECTRONICALLY STORED INFORMATION MDL NO. 2672 CRB (JSC)

*Imports, LLC et al. v. Volkswagen Group of America, Inc. et al.*, Case No. 3:16-CV-02086-CRB (the "*Napleton* Matter");

WHEREAS, plaintiffs in the *Napleton* Matter and the Bosch Defendants entered into stipulations related to discovery, including the Stipulation and Order Governing the Production of Hard Copy Documents and Electronically Stored Information (Dkt. No. 4880);

WHEREAS, the Bosch Defendants produced documents in accordance with Dkt. No. 4880 in the *Napleton* Matter after significant conferencing, including conferencing required by Dkt. No. 4880, and discovery motion practice regarding the same requests now served by Plaintiffs on the Bosch Defendants (the "Bosch Production");

WHEREAS, the Parties, having met and conferred, submit this *Stipulation and Proposed Order Governing the Production of Hard Copy Documents and Electronically Stored Information* (the "Order"), and respectfully request that the Court enter it as an Order;

NOW THEREFORE, it is hereby STIPULATED and ORDERED:

I.   **PURPOSE AND SCOPE**

   **A.   General.** This Order shall govern the production of hard copy documents and electronically stored information ("ESI") by the Parties in this Action. All Productions made pursuant to this Order are subject to prior orders issued in this matter. This Order does not supersede prior pretrial orders issued in this Action, which shall remain in effect except to the extent inconsistent with the provisions herein.

   **B.   Scope.** Nothing in this Order is intended to be an exhaustive list of discovery obligations or rights of the Party producing Discoverable Information ("Producing Party") or a Party requesting Discoverable Information ("Requesting Party"), or any other Party or Non-Party. To the extent additional obligations or rights not addressed in this Order arise under the Federal Rules of Civil Procedure, local rules, or applicable state and federal statutes, they shall be controlling.

   **C.   Limitations and Non-Waiver.** The Parties and their attorneys do not intend by this Order to waive their rights to any protection or privilege, including the attorney-client privilege and work product doctrine, or their rights to object to any discovery requests.

**D.     Variations.** In light of the varying and disparate data systems and architectures employed by the Parties, variations from this Order may be required. In the event that any Party identifies a circumstance where application of this Order is not technologically possible or practicable, the Producing Party will disclose to the Requesting Party the reason(s) for, and circumstances surrounding, the need to vary from this Order, and the Parties will meet and confer in an effort to reach agreement on an appropriate deviation from this Order. In the event that the Parties cannot reach agreement, the matter may be submitted to the Court for determination.

## II.    COOPERATION

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

## III.   IDENTIFICATION AND COLLECTION PROTOCOL FOR ESI

A.    If requested and/or necessary, the Parties shall meet and confer in an effort to agree upon the following: (a) custodial and non-custodial sources from which Documents and ESI will be obtained for production; (b) search methodology and search terms, if any, to be applied, or other search filtering or classification technologies; (c) location(s) and description(s) of relevant data sources including custodial, non-custodial, and third-party Documents; and (d) applicable timeframe(s) for collection and review of Documents and ESI.

B.    The Parties agree to the following approaches to filtering of ESI:

1.    De-duplication: The Parties shall use commercially acceptable methods (e.g., MD5 or SHA-1 hash values) to identify duplicate ESI and globally de-duplicate ESI. In the case of emails, the hash value shall be calculated on the concatenated value of the following fields: to, from, cc, bcc, date sent, email subject, and full body of the email; additionally, at a Party's option, the fields upon which hash values may be calculated may also include the "attachment count" field. Family groups, e.g., an email and its attachments, shall be de-duplicated only against other family groups as entities, e.g., using hash values calculated on concatenations of the hash values of all family members, and no document which

is not part of a family group shall be de-duplicated against a member of a family group. The metadata provided by the Parties for the produced version of each document withheld as a duplicate, shall include the following information for each such withheld document: Duplicate Custodians and Duplicate Custodians Folder Path. The Parties, in each production made pursuant to the Order, shall produce overlays updating the foregoing metadata to reflect updates to the designated metadata fields in that production.

2.  De-NISTing: Electronic files will be De-NISTed, removing commercially available operating system and application file information contained on the current NIST file list. If a Producing Party proposes to apply additional filters that identify common system files, nonuser generated files, and/or zero-byte file (*i.e.* computer files containing no data), the Producing Party will provide details to the Parties regarding the filters, how they work, and what impact (if any) they will have on the collections or productions.

3.  Relevant Time Frame/Date: The Parties may limit processing of Documents to that which was created, modified, sent, or received between certain dates as agreed by the Parties, or set forth by the Court.

**C. Reservation of Rights.** The Parties retain the right, upon reviewing any productions made by another Party in this Action or conducting other investigation and discovery, to request that Documents from additional non-custodial data sources and custodians be produced.

**D. Known Responsive ESI Must Be Produced.** ESI that is known to a Party to be responsive to a discovery request or relevant to the subject matter of this action shall not be withheld on the grounds that it was not identified as responsive by the protocol described in, or developed in accordance with, this Order.

**E. Unsearchable Documents.** Documents for which text-based search technologies are fundamentally ineffective, such as images or hard copy documents, must be reviewed without culling by search terms, predictive coding, or other technologies that rely primarily on text. Prior to the production of such unsearchable items, the Producing Party may conduct a page-by-page

review for responsiveness, confidentiality, privilege, and other protections. With agreement of the Receiving Party, a Producing Party, in good faith, may elect to use statistical sampling techniques to determine whether to review discrete, identified populations of unsearchable documents for responsiveness, confidentiality, privilege, and other protection. In the event that the Parties cannot reach agreement, the matter may be submitted to the Court for determination.

  **F.**  **Good Faith**. The Parties will act in good faith and use these procedures to identify and reduce the potential for disputes that may arise in connection with the search and/or review methodologies selected by the Producing Party.

## IV. PRODUCTION OF HARD COPY DOCUMENTS

Compliance with the procedures set forth below shall constitute compliance with Federal Rule of Civil Procedure 34(b)(2)(E).

  **A.**  Responsive documents that were either (i) originally generated as or converted into ESI but now only exist in physical hard copy format, (ii) printed ESI that contains new alterations since printed (*i.e.*, handwritten notes), or (iii) originally generated in hard-copy format shall be produced as single page, Group IV, 300 DPI TIFF format following the same protocols set forth herein. Each page shall be branded with a unique Bates number, which shall not be an overlay of the image. The images shall be accompanied by: (1) an OpticonTM or IPRO® "cross reference file" which associates each Bates number with its corresponding single-page TIFF image file; (2) a data load file containing Concordance® delimited text that will populate fields in a searchable flat database environment, containing one line for each document and each of the applicable fields as described in Appendix A, (a "Data Load File"), which will include the relative path to the text file for that document on the production media.

  **B.**  The Parties will use best efforts to unitize documents (*i.e.*, distinct documents should not be merged into a single record, and a single document should not be split into multiple records), and maintain document relationships (*i.e.*, attachment status).

  **C.**  If an original document being produced as an electronic image contains color, the document must be produced in color as a single page, 300 DPI JPG images with JPG

compression and a high-quality setting so as to not degrade the original image to the extent such a requirement for the production of color images does not require a Producing Party to re-collect or re-scan documents that already have been collected and scanned. Upon written request by the Requesting Party, the Producing Party shall take good faith measures to honor requests to produce color images where the Requesting Party believes in good faith that color is important to interpret the document.

**D.** Optical Character Recognition ("OCR") text for each document must also be provided as a single file and named with the Bates number of the first page of the document to which it corresponds. The OCR software must be set to the highest quality setting. Documents containing foreign language text must be OCR'ed using the appropriate settings for that language, (*e.g.*, OCR of German documents must use settings that properly capture umlauts). Scanned copies of paper documents must be subject to quality control measures to ensure the integrity of the image is preserved for OCR (*e.g.*, pages are not angled or skewed, text is not blurred or obscured, etc.). Settings such as "auto-deskewing" and "auto-rotation" should be used when appropriate during the OCR process to maximize text recognition on any given page. Documents that are redacted will be re-scanned using OCR software following redaction and only the OCR text of the non-redacted portions will be produced.

**E.** A delimited text file that contains available fielded data must also be included and at a minimum include Beginning Bates Number, Ending Bates Number, Beginning Attachment Number, Ending Attachment Number, Custodian, and Number of Pages. The delimiters for that file should be:

> Field Separator, ASCII character 20: "¶"
> Quote Character, ASCII character 254 "þ"
> Multi-Entry Delimiter, ASCII character 174: "®"

**F.** Identification of any objective coding, to the extent it exists at the time of production, for any hard copy documents must also be provided.

### V. PRODUCTION OF ESI

Compliance with the procedures set forth below shall constitute compliance with Federal Rule of Civil Procedure 34(b)(2)(E).

**A. Form of Production.** Except as otherwise provided in this paragraph, production of all non-redacted ESI, with the exception of Microsoft Excel files and nonprintable files shall include single-page Bates-stamped TIFF images, and accompanied by a load file with fielded data, a .txt file containing extracted text or OCR Text, and an image load file for the TIFFs. The Parties also shall produce non-redacted files in native format. All images of Microsoft Word documents and PowerPoint presentations shall be processed to show and reveal all comments, revision marks, speaker notes, or other user-created data that the source application can display to a user. Non-redacted Microsoft Excel documents and nonprintable files shall be produced in native format only with one page placeholder TIFF images as set forth in Section V.D below. Redacted ESI must be produced as TIFF images, accompanied by a load file with fielded data, a .txt file containing OCR'ed text, and an image load file for the TIFFs. Any documents embedded in a produced document, *e.g.*, an Excel .xls file embedded in a PowerPoint .ppt file, shall be produced separately as attachments. Except for image files embedded in emails collected before the date of filing of this Order, images embedded in emails shall not be produced separately. Notwithstanding the forgoing, the production of structured and handheld data as identified and described in Sections V.N and V.O shall be made in accordance with the agreement of the parties contemplated by those sections.

**B. Document Image Format.** Except as otherwise provided, all images must be produced as single-page, Group IV, 300 DPI TIFFs. Upon written request by the Requesting Party, the Producing Party shall take good faith measures to honor requests to produce color images where the Requesting Party believes in good faith that color is important to interpret the document. The Parties agree to meet and confer concerning any disputes over such requests. The Parties reserve the right to revisit their agreement to this

paragraph if the Parties' productions reveal a large number of documents that appear to be in color where color appears to be important to interpret the document.

**C.** E-mail and attachments will be produced according to the specifications in subparagraph V.A, above. If the Producing Party redacts any part of the e-mail before producing it, OCR text may be provided in place of extracted text. E-mail attachments shall be processed as though they were separate documents, and the Data Load File shall include a field in which the Producing Party shall identify, for each e-mail, the Bates range of any attachments.

**D.** Native files will be produced in a separate folder on the production media. The Data Load File shall contain a field that identifies the file path of the native file corresponding to each document. For non-redacted Microsoft PowerPoint and Microsoft Word files, the Parties shall produce the native file and Bates-stamped TIFF images. For non-redacted Microsoft Excel files and non-printable files, the TIFF image shall be a one page placeholder that shows (a) the name of the native file, (b) a unique Bates number, and (c) a Confidentiality Designation.

**E.** With the exception of image files embedded in emails and not produced separately, embedded files shall be treated as though they were separate files, except that the Bates range of the parent document and the documents embedded therein shall be identified in the same manner as the Bates range of an e-mail attachment.

**F.** **Text Files.** For each document, a single text file shall be provided along with the image files and the metadata discussed in Section V.L. The text file name shall be the same as the Bates number of the first page of the document. File names shall not have any special characters or embedded spaces. Electronic text must be extracted directly from the native electronic file unless the document requires redaction, is an image file, or is any other native electronic file that does not contain text to extract (*e.g.,* non-searchable PDFs). In these instances, a text file shall be created using OCR and shall be produced in lieu of extracted text. Extracted text shall be provided in UTF-8 text format.

G.  **Redactions.**  In situations where redaction of information is required, such redactions must be made in a way that ensures the integrity of the remaining text is preserved for OCR (*e.g.*, redactions must not obscure non-redacted text). Any redactions must be clearly visible on the face of the produced document (*e.g.*, the Parties must use black, not white, to make redactions on documents with a white background). Redactions shall be applied as set forth in the Stipulated Protective Order.

H.  **Document Unitization.**  For files produced as TIFF images, each page of a document shall be electronically saved as an image file. If a document consists of more than one page, the unitization of the document and any attachments shall be maintained as it existed in the original when creating the image files. The Parties shall produce a unitization file ("load file") for all produced documents in accordance with the following formatting:

**OCR and Extracted Text Files (.TXT Files)**:

- Single text file per document containing all of the document's pages
- Filenames should be of the form:

    <Bates num>.txt

    Where <Bates num> is the BATES number of the first page in the document.
- Text must be encoded in UTF-8.

**Image Files**:

- Single page per image
- TIFF is Group IV compression, 300 dpi unless color or grayscale image is necessary, then .JPG would be acceptable
- Filenames should be of the form:

    "<Bates num>.<ext>," where <Bates num> is the BATES number of the page, and <ext> is the appropriate extension for the image format (.jpg, .tif).

**Index Files**:

- "Concordance Default" delimited text file utilizing the following characters:
    - The "comma" delimiter is "¶" (020)

- - The "quote" delimiter is "þ" (254)
  - The "new line" delimiter is "®" (174)
- First line must contain the column/field names (set forth in Appendix A)
- Every row must have the same number of columns/fields (empty values are acceptable)
- Text must be encoded in UTF-8

**I.     Bates Numbering and Other Unique Identifiers.**  For files produced as TIFF images, each page of a produced document shall have a legible, unique page identifier ("Bates Number") electronically burned onto the TIFF image in such a manner that information from the source document is not obliterated, concealed, or interfered with. There shall be no other legend or stamp placed on the document image unless a document (i) qualifies for confidential treatment pursuant to the Stipulated Protective Order, or any other protective order entered by this Court in this Action, or (ii) has been redacted in accordance with applicable law or other court order (including any protective order), entered by this Court or any other court. In the case of Confidential or Highly Confidential Information, as defined in the Stipulated Protective Order, or materials redacted in accordance with applicable law or other order (including any protective order) entered by this Court or another court, a (1) designation may be burned onto the document's image at a location that does not obliterate or obscure any non-redacted information from the source document, and (2) for image files, the words "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER (MDL 2672)" or "HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER (MDL 2672)" shall be branded onto each image (as opposed to an overlay), and must be positioned to avoid obscuring parts of the image that are not blank.

**J.     Production Media.** Documents shall be produced on CD-ROM, DVD, external hard drive (with standard PC-compatible interface), or such other readily accessible computer or electronic media or via sFTP as the Parties may hereafter agree upon (the "Production Media"). The Parties shall accompany all document productions with a letter

identifying the production date and the Bates number range of the materials contained on such Production Media item.

**K.     Metadata.** With each produced ESI file, the Parties must produce each of the applicable metadata fields described in Appendix A (to the extent available and technically achievable). The metadata must be produced in the following format: (1) an Opticon™ or IPRO® "cross reference file" which associates each Bates number with its corresponding single-page TIFF image file; and (2) a Data Load File containing Concordance® delimited text that will populate fields in a searchable flat database environment, containing one line for each document and each of the applicable fields as described in Appendix A. Unless otherwise specified, by producing metadata, each Party affirms that such metadata came from its records, with the exception of vendor-entered source/Custodian and document/production number fields. Nothing in this stipulation requires a Party to manually populate a metadata field in Appendix A (other than Custodian and MD5Hash) if such fields cannot be extracted from a document, provided that the Parties agree to comply with reasonable requests for metadata that cannot be extracted from a document. For the avoidance of doubt, nothing in this Order shall act as a waiver of any objections that may exist to the production of such data.

**L.     Attachments.** Attachments must be mapped to their parent by the Attachment Range. If a parent email or one of its attachments is produced, all members of its family, except for privileged documents, and associated text and metadata, must be produced.

**M.     Structured or Aggregated data – Databases, Enterprise Systems, and Third Party Cloud Systems.** The Parties will meet and confer to address the identification, production, and production format of any responsive data contained in a database, other structured or aggregated data source, or third party cloud-based storage system. Prior to any such meet and confer, the Producing Party(ies) will provide sufficient information to enable the Requesting Party(ies) to evaluate the Producing Party's proposed method and format of production. In the event that the Parties cannot reach agreement, the matter may be submitted to the Court for determination.

  **N.**  **Non-English Documents.** The Parties shall produce any English translations of Non-English documents made in the normal course of business and each side reserves its rights to seek production of other translated documents through the discovery dispute procedures. At the appropriate time, the Parties shall meet and confer concerning procedures for using documents translated at the request of counsel in depositions and at trial, but anticipate and expect to follow the protocols reached in the *Napleton* Matter.

## VI. ENCRYPTION

To maximize the security of information in transit, any media on which Documents are produced may be encrypted by the Producing Party. In such cases, the Producing Party shall transmit the encryption key or password to the Receiving Party(ies), under separate cover.

## VII. EXCEPTION FILES

The Parties will use reasonable efforts and standard industry practices to address Documents that present imaging or form production problems (including encrypted and/or protected files identified during the processing of ESI) ("Exception Files"). Following the substantial completion of a document production, the Parties will promptly meet and confer regarding the volume of Exception Files and procedures that will be used to identify, access, and process Exception Files. In the event that the Parties cannot reach agreement on the handling of Exception Files through the meet and confer process, the matter may be submitted to the Court for determination.

## VIII. PROCESSING OF NON-PARTY DOCUMENTS

  **A.**  A Party that issues a non-Party subpoena ("Issuing Party") shall include a copy of this Order with the subpoena and request that the non-Party produce documents in accordance with the specifications set forth herein.

  **B.**  The Issuing Party is responsible for producing to all other Parties any documents obtained pursuant to a subpoena to any non-Party in the form in which they were produced by the non-Party. To the extent practical given the data volume, productions by a non-Party should be produced by the Issuing Party to all other Parties within seven (7) calendar days of the non-Party's production to the Issuing Party.

**C.** For the avoidance of doubt, nothing in this Order is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or non-Parties to object to a subpoena.

## IX. PRIVILEGED INFORMATION AND PREPARATION OF PRIVILEGE LOGS

Documents or Information subject to this Order that are subject to a claim of privilege shall be treated in a manner consistent with Pretrial Order No. 16 (Privilege Protocol), unless otherwise noted.

## X. MISCELLANEOUS PROVISIONS

**A.** The Parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this Order. No Party may seek relief from the Court concerning compliance with this Order unless it has first conferred with the other Parties.

**B.** **Third Party Data.** The Parties will meet and confer before serving any subpoenas in this matter on commercial e-mail providers, such as Google™ or Yahoo™, or any social media companies such as Facebook™ or Twitter™.

**C.** **Effect of Order.** The Parties' agreement to this Order is without prejudice to the right of any Party to seek an order from the Court to rescind or amend this Order for good cause shown. Nothing in this Order shall abridge the rights of any person to seek judicial review or to pursue other appropriate judicial action with respect to any discovery ruling made by the Court in this matter.

**D.** **Additional Requests.** The Parties reserve the right to propound additional Requests for Production that expressly require the production of certain categories of documents without relying on text-based search or classification technology.

## XI. INTEGRATION/APPENDICES

The following documents are incorporated herein by reference: "Appendix A," Dkt No. 1481-1, is a table describing the fields to be included in the document productions by each Producing Party and governed by this Order.

**IT IS SO ORDERED**.

Dated: _____, 2021

_____
Honorable Charles R. Breyer
UNITED STATES DISTRICT JUDGE

**SO STIPULATED.**

Dated: October 26, 2021

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: /s/ *Carmine D. Boccuzzi, Jr.*
Carmine D. Boccuzzi, Jr. (pro hac vice)
One Liberty Plaza
New York, New York 10006
(212) 225-2000 (Phone)
(212) 225-3999 (Facsimile)
cboccuzzi@cgsh.com

Jaime A. Bartlett (SBN 251825)
Sidley Austin LLP
555 California Street
San Francisco, CA 94104
(415) 772-1200 (Phone)
(415) 772-7400 (Facsimile)
jbartlett@sidley.com

*Counsel for Defendants*
*Robert Bosch GmbH and Robert Bosch LLC*

| | | |
|---|---|---|
| 1 | Dated: October 26, 2021 | BURKE, WARREN, MACKAY & SERRITELLA, P.C. |

By: /s/ *Danielle J. Gould (with permission)*
Ira M. Levin (pro hac vice)
Danielle J. Gould (pro hac vice)
Andrew D. LeMar (pro hac vice)
Eric P. VanderPloeg (pro hac vice)
330 North Wabash Avenue, 21st Floor
Chicago, Illinois 60611
Telephone:    312.840.7000
Facsimile:    312.840.7900
ilevin@burkelaw.com
dgould@burkelaw.com
alemar@burkelaw.com
evanderploeg@burkelaw.com

*Counsel for Plaintiffs*

## ATTESTATION (CIVIL LOCAL RULE 5-1(i)(3))

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from the signatories.

Dated: October 26, 2021

CLEARY GOTTLIEB STEEN & HAMILTON LLP
/s/ *Carmine D. Boccuzzi, Jr.*
Carmine D. Boccuzzi, Jr.