1  Elizabeth J. Cabraser (State Bar No. 083151)     Robert J. Giuffra, Jr. (*admitted pro hac vice*)
   ecabraser@lchb.com                               Sharon L. Nelles (*admitted pro hac vice*)
2  LIEFF CABRASER HEIMANN &                         giuffrar@sullcrom.com
   BERNSTEIN, LLP                                   nelless@sullcrom.com
3  275 Battery Street, 29th Floor                   SULLIVAN & CROMWELL LLP
   San Francisco, CA  94111-3339                    125 Broad Street
4  Telephone:  (415) 956-1000                       New York, New York 10004
   Facsimile:  (415) 956-1008                       Telephone:  (212) 558-4000
5                                                    Facsimile:  (212) 558-3588

6  *Lead Counsel for Plaintiffs*                     Laura Kabler Oswell (State Bar No. 241281)
                                                     oswelll@sullcrom.com
7                                                    SULLIVAN & CROMWELL LLP
                                                     1870 Embarcadero Road
8                                                    Palo Alto, California 94303
                                                     Telephone:   (650) 461-5600
9                                                    Facsimile:   (650) 461-5700

10                                                   *Counsel for Defendants*

11                                                   *[Additional counsel on signature page]*

12                  **UNITED STATES DISTRICT COURT**

13                 **NORTHERN DISTRICT OF CALIFORNIA**

14                     **SAN FRANCISCO DIVISION**

15

16  IN RE: VOLKSWAGEN "CLEAN DIESEL"          MDL 2672 CRB (JSC)
17  MARKETING, SALES PRACTICES AND
    PRODUCTS LIABILITY LITIGATION             **DECLARATION OF JENNIFER
18                                            KEOUGH ON SETTLEMENT NOTICE
                                              PLAN**
19  This Documents Relates to:

20  Porsche Gasoline Litigation (ECF No. 7803)    The Honorable Charles R. Breyer

21

22

23

24

25

26

27

28

I, Jennifer Keough, hereby declare and state as follows:

1.      I am the CEO, President and Co-Founder of JND Legal Administration LLC ("JND"). I have more than 20 years of experience creating and supervising notice and claims administration programs and have personally overseen well over 1,000 matters. A comprehensive description of my experience is attached as <u>Exhibit A</u>.

2.      JND is a leading legal administration services provider with headquarters located in Seattle, Washington, and multiple offices throughout the United States. JND has extensive experience with all aspects of legal administration and has administered hundreds of class action matters.

3.      I submit this Declaration regarding the Parties' proposed program for providing notice to Class Members (the "Notice Plan") of a settlement reached in *In Re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation*, Porsche Gasoline Cases, MDL 2672 CRB (JSC), and to address why it is consistent with other best practicable court-approved notice programs and the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), the Northern District of California's Procedural Guidance for Class Action Settlements, the Due Process Clause of the United States Constitution, and the Federal Judicial Center ("FJC") guidelines for best practicable due process notice.

## BACKGROUND EXPERIENCE

4.      JND's class action division provides all services necessary for the effective administration of class actions including: (1) all facets of legal notice, such as outbound mailing, email notification, and the design and implementation of media programs, including through digital and social media platforms; (2) website design and deployment, including on-line claim filing capabilities; (3) call center and other contact support; (4) secure class member data management; (5) paper and electronic claims processing; (6) calculation design and programming; (7) payment disbursements through check, wire, PayPal, merchandise credits, and other means; (8) qualified settlement fund tax reporting; (9) banking services and reporting; and (10) all other functions related to the secure and accurate administration of class actions.

5.      JND is an approved vendor for the United States Securities and Exchange Commission ("SEC") as well as for the Federal Trade Commission ("FTC") and we have worked with a number of other government agencies including: the U.S. Equal Employment Opportunity Commission ("EEOC"), the Office of the Comptroller of the Currency ("OCC"), the Consumer Financial Protection Bureau ("CFPB"), the Federal Deposit Insurance Corporation ("FDIC"), the Federal Communications Commission ("FCC"), the Department of Justice ("DOJ"), and the Department of Labor ("DOL"). We also have Master Services Agreements with various corporations, banks, and other government agencies, which were only awarded after JND underwent rigorous reviews of our systems, privacy policies, and procedures. JND has also been certified as SOC 2 compliant by noted accounting firm Moss Adams.[1] Finally, JND has been recognized by various publications, including the *National Law Journal*, the *Legal Times* and the *New York Law Journal*, for excellence in class action administration.

6.      The principals of JND, including me, collectively have over 80 years of experience in class action legal and administrative fields. We have personally overseen the administration of some of the most complex administration programs in the country and regularly prepare and implement court-approved notice campaigns throughout the United States. For example, my team and I handled all aspects of mailed notice, website activities, call center operations, claim intake, scanning and data entry, and check distribution for the $20 billion Gulf Coast Claims Facility. In the $10+ billion BP Deepwater Horizon Settlement, I worked directly for Patrick Juneau, the Court-appointed claims administrator, in overseeing all inbound and outbound mail activities, all call center operations, all claim intake, scanning and data entry and all check distributions for the program. I also oversaw the entire administration process in the $3.4 billion Cobell Settlement.

7.      JND was appointed as the notice and claims administrator in the landmark $2.67 billion Blue Cross Blue Shield antitrust settlement in which we mailed over 100 million postcard notices; sent hundreds of millions of email notices and reminders; placed notice via print, television, radio, internet; staffed the call center with 250 agents during the peak of the notice program; and

---

[1] As a SOC 2 Compliant organization, JND has passed an audit under AICPA criteria for providing data security.

1    received and processed more than eight million claims. We also handled the settlement

2    administration of the $1.3 billion Equifax Data Breach Settlement, the largest class action ever in

3    terms of the number of claims received (over 18 million); a voluntary remediation program in

4    Canada on behalf of over 30 million people; the $1.5 billion Mercedes-Benz Emissions settlements;

5    the $120 million GM Ignition class action economic settlement, where we sent notice to nearly 30

6    million class members, and the $215 million USC Student Health Center Settlement on behalf of

7    women who were sexually abused by a doctor at USC, as well as hundreds of other matters.

8    8.    In addition to the above, JND also handled notice and claims administration tasks

9    for the following motor vehicle cases: *Amin v. Mercedes-Benz USA, LLC*, No. 17-cv-01701- AT

10    (N.D. Ga.); *In re MyFord Touch Consumer Litig*., No. 13-cv-3072 (EMC) (N.D. Cal.); *In re*

11    *Navistar MaxxForce Engines Mktg., Sales Practices and Prods. Liab. Litig.*, No. 14-cv-10318

12    (N.D. Ill.); *Khona v. Subaru of Am., Inc.*, No. 19-cv-09323-RMB-AMD (D.N.J.), *Kommer v. Ford*

13    *Motor Co.*, No. 17-cv-296 (N.D.N.Y.), *Patrick v. Volkswagen Grp. of Am., Inc*., No. 19-cv-01908-

14    MCS-ADS (C.D. Cal.), *Pinon v. Mercedes-Benz USA, LLC and Daimler AG*, No. 18-cv-3984 (N.D.

15    Ga.), *Udeen v. Subaru of America, Inc.*, No. 18-cv-17334- RBK-JS (D.N.J.), as well as others.

16    9.    Our notice campaigns are regularly approved by courts throughout the United

17    States.

18    10.    JND's Legal Notice Team, which operates under my direct supervision, researches,

19    designs, develops, and implements a wide array of legal notice programs to meet the requirements

20    of Rule 23 and relevant state court rules. In addition to providing notice directly to potential class

21    members through direct mail and email, our media campaigns have used a variety of media

22    including newspapers, press releases, magazines, trade journals, radio, television, social media and

23    the internet depending on the circumstances and allegations of the case, the demographics of the

24    class, and the habits of its members, as reported by various research and analytics tools. During my

25    career, I have submitted several hundred affidavits to courts throughout the country attesting to our

26    role in the creation and launch of various media programs.

27

28

DECLARATION OF JENNIFER KEOUGH
ON SETTLEMENT NOTICE PLAN
MDL 2672 CRB (JSC)

## CASE BACKGROUND

11.     I have been asked by the Parties to prepare a Notice Plan to reach members of the Class and inform them about the Settlement and their rights and options.

12.     The Settlement resolves claims that certain gasoline-powered, model year 2005-2020 Porsche vehicles sold or leased in the United States that may produce excess emissions and/or may obtain worse fuel economy on the road than in testing conditions. The affected Class Vehicles include all Fuel Economy Class Vehicles, all Sport+ Class Vehicles, and all Other Class Vehicles, as those terms are defined in the Settlement Agreement. The nationwide Class includes all persons (including individuals and entities) who own, owned, lease, or leased a Class Vehicle, as defined in the Settlement Agreement. Those terms and definitions are incorporated herein by reference.

## NOTICE PLAN OVERVIEW

13.     The objective of the proposed Notice Plan is to provide the best notice practicable under the circumstances of this case, consistent with the methods and tools employed in other court-approved notice programs. The proposed Notice Program includes the following components, as further described in the sections below:

A.      Notice pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b) ("CAFA") to appropriate state and federal officials;

B.      Email notice to all Class Members for whom a valid email address is obtained;

C.      Direct mail notice to all known Class Members for whom an email notice bounces back undeliverable or for whom an email address is not obtained;

D.      Reminder notices via email and mail during the claims period;

E.      Supplemental digital notice placed through the leading digital network (Google Display Network – "GDN") and popular Porsche forums and related sites;

F.      An internet search campaign;

G.      The Settlement Website through which the Long Form Notice, attached as Exhibit B, will be posted and the Claim Form, attached as Exhibit C, may be submitted electronically or printed and mailed; and

1            H.      The Settlement toll-free number, post office box, and email address through

2  which Class Members may obtain more information about the Settlement and request that

3  the Long Form Notice and/or Claim Form be sent to them.

4        14.      The direct notice effort alone is expected to reach the vast majority of Class

5  Members. Based on my experience in developing and implementing class notice programs, I

6  believe the proposed Notice Plan will provide the best notice practicable under the circumstances.

7  **CAFA NOTICE**

8        15.      JND will provide notice of the proposed Class Action Settlement under CAFA no

9  later than 10 days after the proposed Settlement is filed with the Court. JND will provide such

10  notice to the appropriate state and federal government officials.

11  **DIRECT NOTICE EFFORT**

12        16.      An adequate notice plan needs to satisfy "due process" when reaching a class. The

13  United States Supreme Court, in *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974), stated that

14  direct notice (when possible) is the preferred method for reaching a class. In addition, Rule 23(c)(2)

15  of the Federal Rules of Civil Procedure provides that "the court must direct to class members the

16  best notice that is practicable under the circumstances, including individual notice to all members

17  who can be identified through reasonable effort. The notice may be by one or more of the following:

18  United States mail, electronic means, or other appropriate means."

19        17.      JND will send an Email Notice, attached as Exhibit D to all Class Members for

20  whom an email address is obtained. JND will mail a Short Form Notice, attached as Exhibit E, to

21  all known Class Members for whom an Email Notice bounces back undeliverable or for whom an

22  email address is not obtained.

23        18.      Defendants will provide a list of eligible Vehicle Identification Numbers ("VINs") to

24  JND. JND will use the VINS to work with third party data aggregation services to acquire potential

25  Class Members' contact information from the Departments of Motor Vehicles ("DMVs") for all current

26  and previous owners and lessees of the Class Vehicles. The contact information gained using this process

27  is considered particularly reliable because owners and lessees must maintain accurate and up-to-date

28  contact information in order to pay vehicle registration fees and keep driver licenses and voter

registrations current. I understand that Defendants also maintain physical addresses and email addresses for a significant number of potential Class Members, which they will provide to JND. JND will also receive Class Vehicle registration information, including, but not limited to, registration date, year, make, and model of the vehicle. After receiving the contact and VIN information from the DMVs, JND will promptly load the information into a case-specific database for the Settlement. JND will review the data provided in order to identify any undeliverable addresses and duplicate records. A unique identification number ("Unique ID") will be assigned to each Class Member to identify them throughout the administration process. JND employs appropriate administrative, technical and physical controls designed to ensure the confidentiality and protection of Class Member data, as well as to reduce the risk of loss, misuse, or unauthorized access, disclosure or modification of Class Member data.

19.     JND will conduct a sophisticated email append process to obtain email addresses for all potential Class Members. Prior to emailing the Notice, JND will evaluate the email for potential spam language to improve deliverability. This process includes running the email through spam testing software, DKIM[2] for sender identification and authorization, and hostname evaluation. Additionally, we will check the send domain against the 25 most common IPv4 blacklists.[3]

20.     JND uses industry-leading email solutions to achieve the most efficient email notification campaigns. Our Data Team is staffed with email experts and software solution teams to conform each notice program to the particulars of the case. JND provides individualized support during the program and manages our sender reputation with the Internet Service Providers ("ISPs"). For each of our programs, we analyze the program's data and monitor the ongoing effectiveness of the notification campaign, adjusting the campaign as needed. These actions ensure the highest possible deliverability of the email campaign so that more potential Class Members receive notice.

---

[2] DomainKeys Identified Mail, or DKIM, is a technical standard that helps protect email senders and recipients from spam, spoofing, and phishing.

[3] IPv4 address blacklisting is a common practice. To ensure that the addresses being used are not blacklisted, a verification is performed against well-known IP blacklist databases. A blacklisted address affects the reputation of a company and could cause an acquired IP addresses to be blocked.

21.     For each email campaign, including this one, JND will utilize a verification program to eliminate invalid email and spam traps that would otherwise negatively impact deliverability. We will then clean the list of email addresses for formatting and incomplete addresses to further identify all invalid email addresses.

22.     To ensure readability of the email, our team will review and format the body content into a structure that is applicable to all email platforms, allowing the email to pass easily to the recipient. Before launching the email campaign, we will send a test email to multiple ISPs and open and test the email on multiple devices (iPhones, Android phones, desktop computers, tablets, etc.) to ensure the email opens as expected.

23.     Additionally, JND will include an "unsubscribe" link at the bottom of the email to allow Class Members to opt out of any additional email notices from JND. This step is essential to maintain JND's good reputation among the ISPs and reduce complaints relating to the email campaign.

24.     Emails that are returned to JND are generally characterized as either "Soft Bounces" or "Hard Bounces." Hard Bounces are when the ISP rejects the email due to a permanent reason such as the email account is no longer active. Soft Bounces are when the email is rejected for temporary reasons, such as the recipient's email address inbox is full.

25.     When an email is returned due to a soft bounce, JND attempts to re-email the email notice up to three additional times in an attempt to secure deliverability. The email is considered undeliverable if it is a Hard Bounce or a Soft Bounce that is returned after a third resend.

26.     Prior to mailing notice, JND staff will perform advanced address research using skip trace databases and the United States Postal Service ("USPS") National Change of Address ("NCOA") database[4] to update addresses. JND will track all notices returned undeliverable by the USPS and will promptly re-mail notices that are returned with a forwarding address. In addition, JND will take reasonable efforts to research and determine if it is possible to reach a Class Member for whom a notice is returned without a forwarding address, either by mailing to a more recent

---

[4] The NCOA database is the official USPS technology product which makes changes of address information available to mailers to help reduce undeliverable mail pieces before mail enters the mail stream.

1    mailing address or using available skip-tracing tools to identify a new mailing address and/or an

2    email address by which the potential Class Member may be reached, if an email already has not

3    been sent.

4        27.    It is our understanding that the direct notice effort alone will reach virtually all Class

5    Members.

6                                    **REMINDER NOTICE**

7        28.    Reminder notices will be sent to identified Class Members that have not submitted

8    a claim, opted out of the Class, or have not unsubscribed from the email campaign. JND will confer

9    with the parties regarding the necessity and specific timing of any reminder notices, to avoid

10   logistical difficulties and to optimize effectiveness. The content of the reminder notice will be

11   materially the same as the initial direct notice, but will include a reminder to the Class Member that

12   they have not yet filed a claim and need to do so in order to receive a payment pursuant to the

13   Settlement. The language will also be adjusted to remove any deadlines that have passed.

14                              **SUPPLEMENTAL DIGITAL NOTICE**

15       29.    To supplement the direct notice effort, JND will implement a four-week digital

16   campaign through GDN, a vast network that reaches over 90% of internet users, and popular

17   Porsche forums, such as Planet-9.com, Rennlist.com, 718Forum.com, Cayenneforums.com,

18   986forum.com, as well as related sites such as prancinghorses.org, porscheclubgb.com, tipec.net,

19   and raceplanet.com.

20       30.    The GDN effort will deliver approximately 20 million impressions to one of the

21   following:

22            A.    sites with content related to Porsche vehicle shopping,

23            B.    an affinity audience of Performance & Luxury Vehicle Enthusiasts,

24            C.    those in market for Porsche Vehicles, Porsche Tuning, Porsche Repair

25   Service, Porsche Engines, Porsche Cars and Repairs Porsches,

26            D.    a "custom audience" based on Class Member emails,[5] or

27

28   _____
     [5] Process of matching Class Member emails to Google accounts. Digital ads are then specifically
     targeted to matched accounts that are active during the notice campaign.

                                                    DECLARATION OF JENNIFER KEOUGH
                                                    ON SETTLEMENT NOTICE PLAN
                                                    MDL 2672 CRB (JSC)

E.    individuals who visited the case website but did not file a claim (i.e., a "retargeting" effort).[6]

31.    Another 20 million impressions will be served through the Porsche forums and related sites, for a total of 40 million impressions.

32.    Digital activity will be served across all devices, with an emphasis on mobile.

33.    The digital ads will include an embedded link to the Settlement Website, where Class Members can get more information about the Settlement, as well as file a claim online.

## INTERNET SEARCH CAMPAIGN

34.    Web browsers frequently default to a search engine page, making search engines a common source to get to a specific website (i.e., as opposed to typing the desired URL in the navigation bar). As a result, an internet search campaign will be implemented to assist Class Members who are searching about the Settlement to locate the Settlement Website. When purchased keywords related to the Settlement are searched, a paid ad with a hyperlink to the Settlement Website may appear on the results page. Efforts will be monitored and optimized.

## SETTLEMENT WEBSITE

35.    JND will develop and deploy the informational and interactive, case-specific Settlement Website, www.PorscheGasolineSettlementUSA.com, which will have an easy-to-navigate design and will be formatted to emphasize important information and deadlines. The website will feature an interactive calculator where potential Class Members can input their VIN information and obtain an estimated payment amount from the Settlement. Other available features will include a page with answers to frequently asked questions, contact information for the Settlement Administrator, Settlement deadlines, and links to important case documents including the Long Form Notice, a list of Class Vehicles, the Claim Form, and the Settlement Agreement. The website will also include information on how potential settlement Class Members can opt-out of or object to the Settlement if they choose. The website address will be prominently displayed in all direct notice documents.

---

[6] An audience data pool will be created via a pixel placed on the Settlement Website. The audience data will be used to retarget individuals who visited the Settlement Website but did not submit a claim.

36.    The Settlement Website will feature an online Claim Form ("OCF") with document upload capabilities for the submission of claims. If a user logs into the OCF with their Unique ID, JND will prepopulate the OCF with the Class Members' name and contact information where possible. JND will work with the parties to design the online claims submission process to be streamlined and efficient for Class Members. Additionally, a Claim Form will be posted on the Settlement Website for download for Class Members who prefer to submit a Claim Form by mail.

37.    Claimants may provide their basic supporting documentation in a variety of formats. The claimant may take a picture of the document with their phone and upload the image to the Settlement Website, they may scan in the document for upload, or they may submit copies of the documents via U.S. Mail.

38.    The Settlement Website will be ADA-compliant and optimized for mobile visitors so that information loads quickly on mobile devices and will also be designed to maximize search engine optimization through Google and other search engines. Keywords and natural language search terms will be included in the site's metadata to maximize search engine rankings.

## TOLL-FREE NUMBER, P.O. BOX, AND EMAIL ADDRESS

39.    JND will make available its scalable call center resources to develop and manage the incoming telephone calls received in response to the Notice Program. JND will establish and maintain a 24-hour, toll-free telephone line that Class Members can call to obtain information about the Settlement. During business hours, JND's call center will be staffed with operators who are trained to answer questions about the Settlement using the approved answers to FAQs referenced above.

40.    JND will establish a dedicated email address to receive and respond to Class Member inquiries. JND will generate email responses from scripted answers to FAQs, which will be approved by Counsel and which will also be used by our call center personnel for efficiency and to maintain uniformity of messaging.

41.    JND will also establish two separate post office boxes for this administration, one to receive Class Member correspondence and paper Claim Forms, and another solely to receive exclusion requests.

**NOTICE DESIGN AND CONTENT**

42.     The proposed notice documents are designed to comply with Rule 23's guidelines for class action notices, the Northern District of California's Procedural Guidance for Class Action Settlements, and the FJC's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*. The notices contain easy-to-read summaries of the settlement and instructions on how to obtain more information about the case.

43.     Courts routinely approve notices that have been written and designed in a similar manner.

**REACH**

44.     Based on JND's experience with automotive settlements, we expect the direct notice effort alone to reach virtually all Class Members. The reminder notice effort, supplemental digital effort, and internet search campaign will further enhance that reach.

45.     The expected reach exceeds that of other court approved programs and is on the high end of the 70–95% reach standard set forth by the FJC.[7]

**CONCLUSION**

46.     In my opinion, the proposed Notice Plan provides the best notice practicable under the circumstances; is consistent with the requirements of Rule 23; the Northern District of California's Procedural Guidance for Class Action Settlements, and is consistent with other similar court-approved best notice practicable notice programs. The Notice Plan is designed to reach as many Class Members as possible and inform them about the Settlement and their rights and options.

---

[7] Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), p. 3 states: "…the lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class.  It is reasonable to reach between 70–95%."

1

2

3
      I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

4

5
      Executed this 15th day of June, 2022, at Seattle, Washington.

6

7

8
_____

9
Jennifer Keough

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 12 -

# - EXHIBIT A -

# JENNIFER KEOUGH

CHIEF EXECUTIVE OFFICER AND CO-FOUNDER





# INTRODUCTION

I.

Jennifer Keough is Chief Executive Officer and Co-Founder of JND Legal Administration ("JND"). She is the *only* judicially recognized expert in all facets of class action administration - from notice through distribution. With more than 20 years of legal experience, Ms. Keough has directly worked on hundreds of high-profile and complex administration engagements, including such landmark matters as the $20 billion Gulf Coast Claims Facility, $10 billion BP Deepwater Horizon Settlement, $3.4 billion Cobell Indian Trust Settlement (the largest U.S. government class action settlement ever), $3.05 billion VisaCheck/MasterMoney Antitrust Settlement, $2.67 billion Blue Cross Blue Shield antitrust settlement, $1.5 billion Mercedes-Benz Emissions Settlements; $1.3 billion Equifax Data Breach Settlement, $1 billion Stryker Modular Hip Settlement, $600 million Engle Smokers Trust Fund, $240 million Signet Securities Settlement, $215 million USC Student Health Center Settlement, and countless other high-profile matters. She has been appointed notice expert in many notable cases and has testified on settlement matters in numerous courts and before the Senate Committee for Indian Affairs.

The only female CEO in the field, Ms. Keough oversees more than 200 employees at JND's Seattle headquarters, as well as other office locations around the country.

She manages all aspects of JND's class action business from day-to-day processes to high-level strategies. Her comprehensive expertise with noticing, claims processing, Systems and IT work, call center logistics, data analytics, recovery calculations, check distribution, and reporting gained her the reputation with attorneys on both sides of the aisle as the most dependable consultant for all legal administration needs. Ms. Keough also applies her knowledge and skills to other divisions of JND, including mass tort, lien resolution, government services, and eDiscovery. Given her extensive experience, Ms. Keough is often called upon to consult with parties prior to settlement, is frequently invited to speak on class action issues, and has authored numerous articles in her multiple areas of expertise.

Ms. Keough launched JND with her partners in early 2016. Just a few months later, Ms. Keough was named as the Independent Claims Administrator ("ICA") in a complex BP Solar Panel Settlement. Ms. Keough also started receiving numerous appointments as notice expert and in 2017 was chosen to oversee a restitution program in Canada where every adult in the country was eligible to participate. Also, in 2017, Ms. Keough was named a female entrepreneur of the year finalist in the 14th Annual Stevie Awards for Women in Business. In 2015 and 2017, she was recognized as a "Woman Worth Watching" by Profiles in Diversity Journal.

Since JND's launch, Mrs. Keough has also been featured in numerous news sources. In 2019, she was highlighted in an Authority Magazine article, "5 Things I wish someone told me before I became a CEO," and a Moneyish article, "This is exactly how rampant 'imposter syndrome' is in the workforce." In 2018, she was featured in several Fierce CEO articles, "JND Legal Administration CEO Jennifer Keough aids law firms in complicated settlements," "Special Report—Women CEOs offer advice on defying preconceptions and blazing a trail to the top," and "Companies stand out with organizational excellence," as well as a Puget Sound Business Journal article, "JND Legal CEO Jennifer Keough handles law firms' big business." In 2013, Ms. Keough appeared in a CNN article, "What Changes with Women in the Boardroom."

Prior to forming JND, Ms. Keough was Chief Operating Officer and Executive Vice President for one of the then largest legal administration firms in the country, where

2

she oversaw operations in several offices across the country and was responsible for all large and critical projects. Previously, Ms. Keough worked as a class action business analyst at Perkins Coie, one of the country's premier defense firms, where she managed complex class action settlements and remediation programs, including the selection, retention, and supervision of legal administration firms. While at Perkins she managed, among other matters, the administration of over $100 million in the claims-made Weyerhaeuser siding case, one of the largest building product class action settlements ever. In her role, she established a reputation as being fair in her ability to see both sides of a settlement program.

Ms. Keough earned her J.D. from Seattle University. She graduated from Seattle University with a B.A. and M.S.F. with honors.



# II. LANDMARK CASES

Jennifer Keough has the distinction of personally overseeing the administration of more large class action programs than any other notice expert in the field. Some of her largest engagements include the following:

### 1. *Allagas v. BP Solar Int'l, Inc.*

**No. 14-cv-00560 (N.D. Cal.)**

Ms. Keough was appointed by the United States District Court for the Northern District of California as the Independent Claims Administrator ("ICA") supervising the notice and administration of this complex settlement involving inspection, remediation, and replacement of solar panels on homes and businesses throughout California and other parts of the United States. Ms. Keough and her team devised the administration protocol and built a network of inspectors and contractors to perform the various inspections and other work needed to assist claimants. She also built a program that included a team of operators to answer claimant questions, a fully interactive dedicated website with online claim filing capability, and a team trained in the very complex intricacies of solar panel mechanisms. In her role as ICA, Ms. Keough regularly reported to the parties and the Court regarding the progress of the case's administration. In addition to her role as ICA, Ms. Keough also acted as mediator for those claimants who opted out of the settlement to pursue their claims individually against BP. Honorable Susan Illston, recognized the complexity of the settlement when appointing Ms. Keough the ICA (December 22, 2016):

> The complexity, expense and likely duration of the litigation favors the Settlement, which provides meaningful and substantial benefits on a much shorter time frame than otherwise possible and avoids risk to class certification and the Class's case on the merits…The Court appoints Jennifer Keough of JND Legal Administration to serve as the Independent Claims Administrator ("ICA") as provided under the Settlement.

## 2. Chester v. The TJX Cos.

**No. 15-cv-01437 (C.D. Cal.)**

As the notice expert, Ms. Keough proposed a multi-faceted notice plan designed to reach over eight million class members. Where class member information was available, direct notice was sent via email and via postcard when an email was returned as undeliverable or for which there was no email address provided. Additionally, to reach the unknown class members, Ms. Keough's plan included a summary notice in eight publications directed toward the California class and a tear-away notice posted in all TJ Maxx locations in California. The notice effort also included an informational and interactive website with online claim filing and a toll-free number that provided information 24 hours a day. Additionally, associates were available to answer class member questions in both English and Spanish during business hours. Honorable Otis D. Wright, II approved the plan (May 14, 2018):

> ...the Court finds and determines that the Notice to Class Members was complete and constitutionally sound, because individual notices were mailed and/or emailed to all Class Members whose identities and addresses are reasonably known to the Parties, and Notice was published in accordance with this Court's Preliminary Approval Order, and such notice was the best notice practicable.

## 3. Cobell v. Salazar

**No. 96 CV 1285 (TFH) (D. D.C.)**

As part of the largest government class action settlement in our nation's history, Ms. Keough worked with the U.S. Government to implement the administration program responsible for identifying and providing notice to the two distinct but overlapping settlement classes. As part of the notice outreach program, Ms. Keough participated in multiple town hall meetings held at Indian reservations located across the country. Due to the efforts of the outreach program, over 80% of all class members were provided notice. Additionally, Ms. Keough played a role in creating the processes for evaluating claims and ensuring the correct distributions were made. Under Ms. Keough's supervision,

the processing team processed over 480,000 claims forms to determine eligibility. Less than one half of one percent of all claim determinations made by the processing team were appealed. Ms. Keough was called upon to testify before the Senate Committee for Indian Affairs, where Senator Jon Tester of Montana praised her work in connection with notice efforts to the American Indian community when he stated: "Oh, wow. Okay… the administrator has done a good job, as your testimony has indicated, [discovering] 80 percent of the whereabouts of the unknown class members." Additionally, when evaluating the Notice Program, Judge Thomas F. Hogan concluded (July 27, 2011):

> …that adequate notice of the Settlement has been provided to members of the Historical Accounting Class and to members of the Trust Administration Class…. Notice met and, in many cases, exceeded the requirements of F.R.C.P. 23(c)(2) for classes certified under F.R.C.P. 23(b)(1), (b)(2) and (b)(3). The best notice practicable has been provided class members, including individual notice where members could be identified through reasonable effort. The contents of that notice are stated in plain, easily understood language and satisfy all requirements of F.R.C.P. 23(c)(2)(B).

### 4.  *FTC v. Reckitt Benckiser Grp. PLC*

**No. 19CV00028 (W.D. Va.)**

Ms. Keough and her team designed a multi-faceted notice program for this $50 million settlement resolving charges by the FTC that Reckitt Benckiser Group PLC violated antitrust laws by thwarting lower-priced generic competition to its branded drug Suboxone.

The plan reached 80% of potential claimants nationwide, and a more narrowed effort extended reach to specific areas and targets. The nationwide effort utilized a mix of digital, print, and radio broadcast through Sirius XM. Extended efforts included local radio in areas defined as key opioid markets and an outreach effort to medical professionals approved to prescribe Suboxone in the U.S., as well as to substance abuse centers; drug abuse and addiction info and treatment centers; and addiction treatment centers nationwide.

### 5.    Gulf Coast Claims Facility (GCCF)

The GCCF was one of the largest claims processing facilities in U.S. history and was responsible for resolving the claims of both individuals and businesses relating to the Deepwater Horizon oil spill. The GCCF, which Ms. Keough helped develop, processed over one million claims and distributed more than $6 billion within the first year-and-a-half of its existence. As part of the GCCF, Ms. Keough and her team coordinated a large notice outreach program which included publication in multiple journals and magazines in the Gulf Coast area. She also established a call center staffed by individuals fluent in Spanish, Vietnamese, Laotian, Khmer, French, and Croatian.

### 6.    Health Republic Ins. Co. v. United States

**No. 16-259C (F.C.C.)**

For this $1.9 billion settlement, Ms. Keough and her team used a tailored and effective approach of notifying class members via Federal Express mail and email. Opt-in notice packets were sent via Federal Express to each potential class member, as well as the respective CEO, CFO, General Counsel, and person responsible for risk corridors receivables, when known. A Federal Express return label was also provided for opt-in returns. Notice Packets were also sent via electronic-mail. The informational and interactive case-specific website posted the notices and other important Court documents and allowed potential class members to file their opt-in form electronically.

### 7.    In re Air Cargo Shipping Servs. Antitrust Litig.

**No. 06-md-1775 (JG) (VVP) (E.D.N.Y.)**

This antitrust settlement involved five separate settlements. As a result, many class members were affected by more than one of the settlements, Ms. Keough constructed the notice and claims programs for each settlement in a manner which allowed affected class members the ability to compare the claims data. Each claims administration program included claims processing, review of supporting evidence, and a deficiency notification process. The deficiency

notification process included mailing of deficiency letters, making follow-up phone calls, and sending emails to class members to help them complete their claim. To ensure accuracy throughout the claims process for each of the settlements, Ms. Keough created a process which audited many of the claims that were eligible for payment.

## 8.  *In re Blue Cross Blue Shield Antitrust Litig.*

**Master File No.: 13-CV-20000-RDP (N.D. Ala.)**

JND was recently appointed as the notice and claims administrator in the $2.67 billion Blue Cross Blue Shield proposed settlement. To notify class members, we mailed over 100 million postcard notices, sent hundreds of millions of email notices and reminders, and placed notice via print, television, radio, internet, and more. The call center was staffed with 250 agents during the peak of the notice program. More than eight million claims were received. In approving the notice plan designed by Jennifer Keough and her team, United States District Court Judge R. David Proctor, wrote:

> *After a competitive bidding process, Settlement Class Counsel retained JND Legal Administration LLC ("JND") to serve as Notice and Claims Administrator for the settlement. JND has a proven track record and extensive experience in large, complex matters... JND has prepared a customized Notice Plan in this case. The Notice Plan was designed to provide the best notice practicable, consistent with the latest methods and tools employed in the industry and approved by other courts...The court finds that the proposed Notice Plan is appropriate in both form and content and is due to be approved.*

## 9.  *In re Classmates.com*

**No. C09-45RAJ (W.D. Wash.)**

Ms. Keough managed a team that provided email notice to over 50 million users with an estimated success rate of 89%. When an email was returned as undeliverable, it was re-sent up to three times in an attempt to provide notice to

the entire class. Additionally, Ms. Keough implemented a claims administration program which received over 699,000 claim forms and maintained three email addresses in which to receive objections, exclusions, and claim form requests. The Court approved the program when it stated:

> The Court finds that the form of electronic notice... together with the published notice in the Wall Street Journal, was the best practicable notice under the circumstances and was as likely as any other form of notice to apprise potential Settlement Class members of the Settlement Agreement and their rights to opt out and to object. The Court further finds that such notice was reasonable, that it constitutes adequate and sufficient notice to all persons entitled to receive notice, and that it meets the requirements of Due Process...

### 10. *In re Equifax Inc. Customer Data Sec. Breach Litig.*

**No. 17-md-2800-TWT (N.D. Ga.)**

JND was appointed settlement administrator, under Ms. Keough's direction, for this complex data breach settlement valued at $1.3 billion with a class of 147 million individuals nationwide. Ms. Keough and her team oversaw all aspects of claims administration, including the development of the case website which provided notice in seven languages and allowed for online claim submissions. In the first week alone, over 10 million claims were filed. Overall, the website received more than 200 million hits and the Contact Center handled well over 100,000 operator calls. Ms. Keough and her team also worked closely with the Notice Provider to ensure that each element of the media campaign was executed in the time and manner as set forth in the Notice Plan.

Approving the settlement on January 13, 2020, Judge Thomas W. Thrash, Jr. acknowledged JND's outstanding efforts:

> JND transmitted the initial email notice to 104,815,404 million class members beginning on August 7, 2019. (App. 4, ¶¶ 53-54). JND later sent a supplemental email notice to the 91,167,239 class members who had not yet opted out, filed a claim, or unsubscribed from the initial email notice. (Id., ¶¶ 55-56). The notice plan also provides for JND to perform two additional

*supplemental email notice campaigns. (Id., ¶ 57)...JND has also developed specialized tools to assist in processing claims, calculating payments, and assisting class members in curing any deficient claims. (Id., ¶¶ 4, 21). As a result, class members have the opportunity to file a claim easily and have that claim adjudicated fairly and efficiently...The claims administrator, JND, is highly experienced in administering large class action settlements and judgments, and it has detailed the efforts it has made in administering the settlement, facilitating claims, and ensuring those claims are properly and efficiently handled. (App. 4, ¶¶ 4, 21; see also Doc. 739-6, ¶¶ 2-10). Among other things, JND has developed protocols and a database to assist in processing claims, calculating payments, and assisting class members in curing any deficient claims. (Id., ¶¶ 4, 21). Additionally, JND has the capacity to handle class member inquiries and claims of this magnitude. (App. 4, ¶¶ 5, 42). This factor, therefore, supports approving the relief provided by this settlement.*

## 11. *In re General Motors LLC Ignition Switch Litig.*

No. 2543 (MDL) (S.D.N.Y.)

<u>GM Ignition Switch Compensation Claims Resolution Facility</u>

Ms. Keough oversaw the creation of a Claims Facility for the submission of injury claims allegedly resulting from the faulty ignition switch. The Claims Facility worked with experts when evaluating the claim forms submitted. First, the Claims Facility reviewed thousands of pages of police reports, medical documentation, and pictures to determine whether a claim met the threshold standards of an eligible claim for further review by the expert. Second, the Claims Facility would inform the expert that a claim was ready for its review. Ms. Keough constructed a database which allowed for a seamless transfer of claim forms and supporting documentation to the expert for further review.

## 12. *In re General Motors LLC Ignition Switch Litig.*

**No. 2543 (MDL) (S.D.N.Y.)**

Ms. Keough was appointed the class action settlement administrator for the $120 million GM Ignition Switch settlement. On April 27, 2020, Honorable Jesse M. Furman approved the notice program designed by Ms. Keough and her team and the notice documents they drafted with the parties:

> The Court further finds that the Class Notice informs Class Members of the Settlement in a reasonable manner under Federal Rule of Civil Procedure 23(e)(1)(B) because it fairly apprises the prospective Class Members of the terms of the proposed Settlement and of the options that are open to them in connection with the proceedings.

> The Court therefore approves the proposed Class Notice plan, and hereby directs that such notice be disseminated to Class Members in the manner set forth in the Settlement Agreement and described in the Declaration of the Class Action Settlement Administrator...

Under Ms. Keough's direction, JND mailed notice to nearly 30 million potential class members.

On December 18, 2020, Honorable Jesse M. Furman granted final approval:

> The Court confirms the appointment of Jennifer Keough of JND Legal Administration ("JND") as Class Action Settlement Administrator and directs Ms. Keough to carry out all duties and responsibilities of the Class Action Settlement Administrator as specified in the Settlement Agreement and herein...The Court finds that the Class Notice and Class Notice Plan satisfied and continue to satisfy the applicable requirements of Federal Rules of Civil Procedure 23(c)(2)(b) and 23(e), and fully comply with all laws, including the Class Action Fairness Act (28 U.S.C. § 1711 et seq.), and the Due Process Clause of the United States Constitution (U.S. Const., amend. V), constituting the best notice that is practicable under the circumstances of this litigation.

### 13. *In re Mercedes-Benz Emissions Litig.*

**No. 16-cv-881 (D.N.J.)**

JND Legal Administration was appointed as the Settlement Administrator in this $1.5 billion settlement wherein Daimler AG and its subsidiary Mercedes-Benz USA reached an agreement to settle a consumer class action alleging that the automotive companies unlawfully misled consumers into purchasing certain diesel type vehicles by misrepresenting the environmental impact of these vehicles during on-road driving.  As part of its appointment, the Court approved Jennifer Keough's proposed notice plan and authorized JND Legal Administration to provide notice and claims administration services.

> The Court finds that the content, format, and method of disseminating notice, as set forth in the Motion, Declaration of JND Legal Administration, the Class Action Agreement, and the proposed Long Form Notice, Short Form Notice, and Supplemental Notice of Class Benefits (collectively, the "Class Notice Documents") – including direct First Class mailed notice to all known members of the Class deposited in the mail within the later of (a) 15 business days of the Preliminary Approval Order; or (b) 15 business days after a federal district court enters the US-CA Consent Decree – is the best notice practicable under the circumstances and satisfies all requirements provided in Rule 23(c)(2)(B). The Court approves such notice, and hereby directs that such notice be disseminated in the manner set forth in the Class Action Settlement to the Class under Rule 23(e)(1)…JND Legal Administration is hereby appointed as the Settlement Administrator and shall perform all duties of the Settlement Administrator set forth in the Class Action Settlement.

On July 12, 2021, the Court granted final approval of the settlement:

> The Court has again reviewed the Class Notice Program and finds that Class Members received the best notice practicable under the circumstances.

### 14. *In re MyFord Touch Consumer Litig.*

**No. 13-cv-3072 (EMC) (N.D. Cal.)**

Ms. Keough was retained as the Notice Expert in this $17 million automotive settlement. Under her direction, the JND team created a multi-faceted website with a VIN # lookup function that provided thorough data on individual car repair history. To assure all of the data was safeguarded, JND hired a third-party to attempt to hack it, demonstrating our commitment to ensuring the security of all client and claimant data. Their attempts were unsuccessful.

In his December 17, 2019 final approval order Judge Edward M. Chen remarked on the positive reaction that the settlement received:

> The Court finds that the Class Notice was the best practicable notice under the circumstances, and has been given to all Settlement Class Members known and reasonably identifiable in full satisfaction of the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process... The Court notes that the reaction of the class was positive: only one person objected to the settlement although, by request of the objector and in the absence of any opposition from the parties, that objection was converted to an opt-out at the hearing.

### 15. *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*

**No. 2179 (MDL) (E.D. La.)**

Following the closure of the Gulf Coast Claims Facility, the Deepwater Horizon Settlement claims program was created. There were two separate legal settlements that provided for two claims administration programs. One of the programs was for the submission of medical claims and the other was for the submission of economic and property damage claims. Ms. Keough played a key role in the formation of the claims program for the evaluation of economic and property damage claims. Additionally, Ms. Keough built and supervised the back-office mail and processing center in Hammond, Louisiana, which was the hub of the program. The Hammond center was visited several times by

Claims Administrator Pat Juneau -- as well as by the District Court Judge and Magistrate -- who described it as a shining star of the program.

### 16. *In re Stryker Rejuvenate and ABG II Hip Implant Prods. Liab. Litig.*

**No. 13-2441 (MDL) (D. Minn.)**

Ms. Keough and her team were designated as the escrow agent and claims processor in this $1 billion settlement designed to compensate eligible U.S. Patients who had surgery to replace their Rejuvenate Modular-Neck and/or ABG II Modular-Neck hip stems prior to November 3, 2014. As the claims processor, Ms. Keough and her team designed internal procedures to ensure the accurate review of all medical documentation received; designed an interactive website which included online claim filing; and established a toll-free number to allow class members to receive information about the settlement 24 hours a day. Additionally, she oversaw the creation of a deficiency process to ensure claimants were notified of their deficient submission and provided an opportunity to cure. The program also included an auditing procedure designed to detect fraudulent claims and a process for distributing initial and supplemental payments. Approximately 95% of the registered eligible patients enrolled in the settlement program.

### 17. *In re The Engle Trust Fund*

**No. 94-08273 CA 22 (Fla. 11th Jud. Cir. Ct.)**

Ms. Keough played a key role in administering this $600 million landmark case against the country's five largest tobacco companies. Miles A. McGrane, III, Trustee to the Engle Trust Fund recognized Ms. Keough's role when he stated:

> *The outstanding organizational and administrative skills of Jennifer Keough cannot be overstated. Jennifer was most valuable to me in handling numerous substantive issues in connection with the landmark Engle Trust Fund matter. And, in her communications with affected class members, Jennifer proved to be a caring expert at what she does.*

### 18. *In re Washington Mut. Inc., Sec. Litig.*

No. 08-md-1919 MJP (W.D. Wash.)

Ms. Keough supervised the notice and claims administration for this securities class action, which included three separate settlements with defendants totaling $208.5 million. In addition to mailing notice to over one million class members, Ms. Keough managed the claims administration program, including the review and processing of claims, notification of claim deficiencies, and distribution. In preparation for the processing of claims, Ms. Keough and her team established a unique database to store the proofs of claim and supporting documentation; trained staff to the particulars of this settlement; created multiple computer programs for the entry of class member's unique information; and developed a program to calculate the recognized loss amounts pursuant to the plan of allocation. The program was designed to allow proofs of claim to be filed by mail or through an online portal. A deficiency process was established in order to reach out to class members who submitted incomplete proof of claims. The deficiency process involved reaching out to claimants via letters, emails, and telephone calls.

### 19. *King v. Bumble Trading Inc*

No. 18-cv-06868-NC  (N.D. Cal.)

Ms. Keough served as the notice expert in this $22.5 million settlement that alleged that Bumble's Terms & Conditions failed to notify subscribers nationwide of their legal right to cancel their Boost subscription and obtain a refund within three business days of purchase, and for certain users in California, that Bumble's auto-renewal practices violated California law.

JND received two files of class member data containing over 7.1 million records. Our team analyzed the data to identify duplicates and then we further analyzed the unique records, using programmatic techniques and manual review, to identify accounts that had identical information in an effort to prevent multiple

notices being sent to the same class member. Through this process, JND was able to reduce the number of records to less than 6.3 million contacts.

Approving the settlement on December 18, 2020, Judge Nathanael M. Cousins, acknowledged the high success of our notice efforts:

> *Pursuant to the Court's Preliminary Approval Order, the Court appointed JND Settlement Administrators as the Settlement Administrator... JND sent court-approved Email Notices to millions of class members...Overall, approximately 81% of the Settlement Class Members were successfully sent either an Email or Mailed Notice...JND supplemented these Notices with a Press Release which Global Newswire published on July 18, 2020... In sum, the Court finds that, viewed as a whole, the settlement is sufficiently "fair, adequate, and reasonable" to warrant approval.*

## 20. *Linneman v. Vita-Mix Corp.*

**No. 15-cv-748 (S.D. Ohio)**

Ms. Keough was hired by Plaintiff Counsel to design a notice program regarding this consumer settlement related to allegedly defective blenders. The Court approved Ms. Keough's plan and designated her as the notice expert for this case. As direct notice to the entire class was impracticable due to the nature of the case, Ms. Keough proposed a multi-faceted notice program. Direct notice was provided by mail or email to those purchasers identified through data obtained from Vita-Mix and third parties, such as retailers, dealers, distributors, or restaurant supply stores. To reach the unknown class members, Ms. Keough oversaw the design of an extensive media plan that included: published notice in *Cooking Light*, *Good Housekeeping*, and *People* magazine and digital notice; placements through Facebook/Instagram, Twitter, and Conversant; and paid search campaign through Google and Bing. In addition, the program included an informational and interactive website where class members could submit claims electronically, and a toll-free number that provided information to class

members 24 hours a day. When approving the plan, Honorable Susan J. Dlott stated (May 3, 2018):

> *JND Legal Administration, previously appointed to supervise and administer the notice process, as well as oversee the administration of the Settlement, appropriately issued notice to the Class as more fully set forth in the Agreement, which included the creation and operation of the Settlement Website and more than 3.8 million mailed or emailed notices to Class Members. As of March 27, 2018, approximately 300,000 claims have been filed by Class Members, further demonstrating the success of the Court-approved notice program.*

## 21. *Loblaw Card Program*

Jennifer Keough was selected by major Canadian retailer Loblaw and its counsel to act as program administrator in its voluntary remediation program. The program was created as a response to a price-fixing scheme perpetrated by some employees of the company involving bread products. The program offered a $25 gift card to all adults in Canada who purchased bread products in Loblaw stores between 2002 and 2015. Some 28 million Canadian residents were potential claimants. Ms. Keough and her team: (1) built an interactive website that was capable of withstanding hundreds of millions of "hits" in a short period of time; (2) built, staffed and trained a call center with operators available to take calls twelve hours a day, six days a week; (3) oversaw the vendor in charge of producing and distributing the cards; (4) was in charge of designing and overseeing fraud prevention procedures; and (5) handled myriad other tasks related to this high-profile and complex project.

## 22. *McWilliams v. City of Long Beach*

**No. BC261469 (Cal. Super. Ct.)**

Ms. Keough and her team designed and implemented an extensive notice program for the City of Long Beach telephone tax refund settlement. In addition to sending direct notice to all addresses within the City of Long Beach utility

billing system and from its GIS provider, and to all registered businesses during the class period, JND implemented a robust media campaign that alone reached 88% of the Class. The media effort included leading English and Spanish magazines and newspapers, a digital effort, local cable television and radio, an internet search campaign, and a press release distributed in both English and Spanish. The 12% claims rate exceeded expectations.

Judge Maren E. Nelson acknowledged the program's effectiveness in her final approval order on October 30, 2018:

> *It is estimated that JND's Media Notice plan reached 88% of the Class and the overall reach of the Notice Program was estimated to be over 90% of the Class. (Keough Decl., at ¶12.). Based upon the notice campaign outlined in the Keough Declaration, it appears that the notice procedure was aimed at reaching as many class members as possible. The Court finds that the notice procedure satisfies due process requirements.*

### 23.  *New Orleans Tax Assessor Project*

After Hurricane Katrina, the City of New Orleans began to reappraise properties in the area which caused property values to rise. Thousands of property owners appealed their new property values and the City Council did not have the capacity to handle all the appeals in a timely manner. As a result of the large number of appeals, the City of New Orleans hired Ms. Keough to design a unique database to store each appellant's historical property documentation. Additionally, Ms. Keough designed a facility responsible for scheduling and coordinating meetings between the 5,000 property owners who appealed their property values and real estate agents or appraisers. The database that Ms. Keough designed facilitated the meetings between the property owners and the property appraisers by allowing the property appraisers to review the property owner's documentation before and during the appointment with them.

## 24. *USC Student Health Ctr. Settlement*

**No. 18-cv-04258-SVW (C.D. Cal.)**

JND was approved as the Settlement Administrator in this important $215 million settlement that provides compensation to women who were sexually assaulted, harassed and otherwise abused by Dr. George M. Tyndall at the USC Student Health Center during a nearly 30-year period. Ms. Keough and her team designed a notice effort that included: mailed and email notice to potential Class members; digital notices on Facebook, LinkedIn, and Twitter; an internet search effort; notice placements in USC publications/eNewsletters; and a press release. In addition, her team worked with USC staff to ensure notice postings around campus, on USC's website and social media accounts, and in USC alumni communications, among other things. Ms. Keough ensured the establishment of an all-female call center, whose operators were fully trained to handle delicate interactions, with the goal of providing excellent service and assistance to every woman affected. She also worked with the JND staff handling lien resolution for this case. Preliminarily approving the settlement, Honorable Stephen V. Wilson stated (June 12, 2019):

> The Court hereby designates JND Legal Administration ("JND") as Claims Administrator. The Court finds that giving Class Members notice of the Settlement is justified under Rule 23(e)(1) because, as described above, the Court will likely be able to: approve the Settlement under Rule 23(e)(2); and certify the Settlement Class for purposes of judgment. The Court finds that the proposed Notice satisfies the requirements of due process and Federal Rule of Civil Procedure 23 and provides the best notice practicable under the circumstances.

### 25. *Williams v. Weyerhaeuser Co.*

**Civil Action No. 995787 (Cal. Super. Ct.)**

This landmark consumer fraud litigation against Weyerhaeuser Co. had over $100 million in claims paid. The action involved exterior hardboard siding installed on homes and other structures throughout the United States from January 1, 1981 to December 31, 1999 that was alleged to be defective and prematurely fail when exposed to normal weather conditions.

Ms. Keough oversaw the administration efforts of this program, both when she was employed by Perkins Coie, who represented defendants, and later when she joined the administration firm handling the case. The claims program was extensive and went on for nine years, with varying claims deadlines depending on when the class member installed the original Weyerhaeuser siding.  The program involved not just payments to class members, but an inspection component where a court-appointed inspector analyzed the particular claimant's siding to determine the eligibility and award level.  Class members received a check for their damages, based upon the total square footage of damaged siding, multiplied by the cost of replacing, or, in some instances, repairing, the siding on their homes.  Ms. Keough oversaw the entirety of the program from start to finish.



# III.

# JUDICIAL RECOGNITION

Courts have favorably recognized Ms. Keough's work as outlined above and by the sampling of judicial comments from JND programs listed below.

## 1.   Judge William M. Conley

*Bruzek v. Husky Oil Operations Ltd., (January 31, 2022*)
No. 18-cv-00697 (W.D. Wis.):

*The claims administrator estimates that at least 70% of the class received notice… the court concludes that the parties' settlement is fair, reasonable and adequate under Rule 23(e).*

## 2.   Judge Timothy J. Corrigan

*Levy v. Dolgencorp, LLC,* (December 2, 2021)
No. 20-cv-01037-TJC-MCR (M.D. Fla.):

*No Settlement Class Member has objected to the Settlement and only one Settlement Class Member requested exclusion from the Settlement through the opt-out process approved by this Court…The Notice Program was the best notice practicable under the circumstances. The Notice Program provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed Settlement set forth in the Agreement, to all persons entitled to such notice. The Notice Program fully satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution, which include the requirement of due process.*

## 3.   Honorable Nelson S. Roman

*Swetz v. GSK Consumer Health, Inc.,* (November 22, 2021) No. 20-cv-04731 (S.D.N.Y.):

*The Notice Plan provided for notice through a nationwide press release; direct notice through electronic mail, or in the alternative, mailed, first-class postage prepaid for identified Settlement Class Members; notice through electronic*

*media—such as Google Display Network and Facebook—using a digital advertising campaign with links to the dedicated Settlement Website; and a toll-free telephone number that provides Settlement Class Members detailed information and directs them to the Settlement Website. The record shows, and the Court finds, that the Notice Plan has been implemented in the manner approved by the Court in its Preliminary Approval Order.*

### 4.    Honorable James V. Selna

***Herrera v. Wells Fargo Bank, N.A.,*** (November 16, 2021)
No. 18-cv-00332-JVS-MRW (C.D. Cal.):

*On June 8, 2021, the Court appointed JND Legal Administration ("JND") as the Claims Administrator... JND mailed notice to approximately 2,678,266 potential Non-Statutory Subclass Members and 119,680 Statutory Subclass Members.  Id. ¶ 5. 90% of mailings to Non-Statutory Subclass Members were deemed delivered, and 81% of mailings to Statutory Subclass Members were deemed delivered.  Id. ¶ 9. Follow-up email notices were sent to 1,977,514 potential Non-Statutory Subclass Members and 170,333 Statutory Subclass Members, of which 91% and 89% were deemed delivered, respectively.  Id. ¶ 12.  A digital advertising campaign generated an additional 5,195,027 views.  Id.  ¶ 13...Accordingly, the Court finds that the notice to the Settlement Class was fair, adequate, and reasonable.*

### 5.    Judge Mark C. Scarsi

***Patrick v. Volkswagen Grp. of Am., Inc.,*** (September 18, 2021)
No. 19-cv-01908-MCS-ADS (C.D. Cal.):

*The Court finds that, as demonstrated by the Declaration of Jennifer M. Keough and counsel's submissions, Notice to the Settlement Class was timely and properly effectuated in accordance with Fed. R. Civ. P. 23(e) and the approved Notice Plan set forth in the Court's Preliminary Approval Order. The Court finds that said Notice constitutes the best notice practicable under the circumstances, and satisfies all requirements of Rule 23(e) and due process.*

### 6. Judge Morrison C. England, Jr.

***Martinelli v. Johnson & Johnson,*** (September 27, 2021)
No. 15-cv-01733-MCE-DB (E.D. Cal.):

*The Court appoints JND, a well-qualified and experienced claims and notice administrator, as the Settlement Administrator.*

### 7. Honorable Nathanael M. Cousins

***Malone v. Western Digital Corp.,*** (July 21, 2021) No. 20-cv-03584-NC (N.D. Cal.):

*The Court hereby appoints JND Legal Administration as Settlement Administrator... The Court finds that the proposed notice program meets the requirements of Due Process under the U.S. Constitution and Rule 23; and that such notice program— which includes individual direct notice to known Settlement Class Members via email, mail, and a second reminder email, a media and Internet notice program, and the establishment of a Settlement Website and Toll-Free Number—is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto. The Court further finds that the proposed form and content of the forms of the notice are adequate and will give the Settlement Class Members sufficient information to enable them to make informed decisions as to the Settlement Class, the right to object or opt-out, and the proposed Settlement and its terms.*

### 8. Judge Mark H.Cohen

***Pinon v. Mercedes-Benz USA, LLC and Daimler AG,*** (March 29, 2021)
No. 18-cv-3984 (N.D. Ga.):

*The Court finds that the content, format, and method of disseminating the Notice Plan, as set forth in the Motion, the Declaration of the Settlement Administrator (Declaration of Jennifer M. Keough Regarding Proposed Notice Plan) [Doc. 70-7], and the Settlement Agreement, including postcard notice disseminated through direct U.S. Mail to all known Class Members and establishment of a website: (a) constitutes the*

*best notice practicable under the circumstances; (b) are reasonably calculated, under the circumstances, to apprise settlement class members of the pendency of the action, the terms of the proposed Settlement Agreement, and their rights under the proposed Settlement Agreement; (c) are reasonable and constitute due, adequate, and sufficient notice to those persons entitled to receive notice; and (d) satisfies all requirements provided Federal Rule of Civil Procedure 23, the constitutional requirement of due process, and any other legal requirements. The Court further finds that the notices are written in plain language, use simple terminology, and are designated to be readily understandable by the Settlement Class...This Court also approves the Postcard Notice, the Long Form Notice, the Reimbursement Claim Form, and the Qualified Future Repair Claim Form in substantially the form as attached as Exhibits B to E to the Declaration of Jennifer M. Keough Regarding Proposed Notice Plan.*

### 9.  Honorable Daniel D. Domenico

***Advance Trust & Life Escrow Serv., LTA v. Sec. Life of Denver Ins. Co.,*** (January 29, 2021) No. 18-cv-01897-DDD-NYW (D. Colo.):

*The court approves the form and contents of the Short-Form and Long Form Notices attached as Exhibits A and B, respectively, to the Declaration of Jennifer M. Keough, filed on January 26, 2021...The proposed form and content of the Notices meet the requirements of Federal Rule of Civil Procedure 23(c)(2)(B)...The court approves the retention of JND Legal Administration LLC as the Notice Administrator.*

### 10.  Honorable Virginia A. Phillips

***Sonner v. Schwabe N. Am., Inc.,*** (January 25, 2021) No. 15-cv-01358 VAP (SPx) (C.D. Cal.):

*Following preliminary approval of the settlement by the Court, the settlement administrator provided notice to the Settlement Class through a digital media campaign.  (Dkt. 203-5).  The Notice explains in plain language what the case is about, what the recipient is entitled to, and the options available to the recipient in connection with this case, as well as the consequences of each option.  (Id., Ex. E).*

*During the allotted response period, the settlement administrator received no requests for exclusion and just one objection, which was later withdrawn. (Dkt. 203-1, at 11).*

*Given the low number of objections and the absence of any requests for exclusion, the Class response is favorable overall.  Accordingly, this factor also weighs in favor of approval.*

## 11.  Honorable R. Gary Klausner

**A.B. v. Regents of the Univ. of California,** (January 8, 2021)
No. 20-cv-09555-RGK-E (C.D. Cal.):

*The parties intend to notify class members through mail using UCLA's patient records. And they intend to supplement the mail notices using Google banners and Facebook ads, publications in the LA times and People magazine, and a national press release. Accordingly, the Court finds that the proposed notice and method of delivery sufficient and approves the notice.*

## 12.  Judge Vernon S. Broderick, Jr.

**In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.,** (December 16, 2020)
No. 14-md-02542 (S.D.N.Y.):

*I further appoint JND as Claims Administrator.  JND's principals have more than 75 years-worth of combined class action legal administration experience, and JND has handled some of the largest recent settlement administration issues, including the Equifax Data Breach Settlement.  (Doc. 1115 ¶ 5.)  JND also has extensive experience in handling claims administration in the antitrust context.  (Id.  ¶ 6.) Accordingly, I appoint JND as Claims Administrator.*

### 13. Honorable Laurel Beeler

***Sidibe v. Sutter Health,*** (November 5, 2020)
No. 12-cv-4854-LB (N.D. Cal.):

*Class Counsel has retained JND Legal Administration ("JND"), an experienced class notice administration firm, to administer notice to the Class. The Court appoints JND as the Class Notice Administrator. JND shall provide notice of pendency of the class action consistent with the procedures outlined in the Keough Declaration.*

### 14. Judge Carolyn B. Kuhl

***Sandoval v. Merlex Stucco Inc.,*** (October 30, 2020)
No. BC619322 (Cal. Super. Ct.):

*Additional Class Member class members, and because their names and addresses have not yet been confirmed, will be notified of the pendency of this settlement via the digital media campaign outlined by the Keough/JND Legal declaration...the Court approves the Parties selection of JND Legal as the third-party Claims Administrator.*

### 15. Honorable Louis L. Stanton

***Rick Nelson Co. v. Sony Music Ent.,*** (September 16, 2020)
No. 18-cv-08791 (S.D.N.Y.):

*The parties have designated JND Legal Administration ("JND") as the Settlement Administrator. Having found it qualified, the Court appoints JND as the Settlement Administrator and it shall perform all the duties of the Settlement Administrator as set forth in the Stipulation...The form and content of the Notice, Publication Notice and Email Notice, and the method set forth herein of notifying the Class of the Settlement and its terms and conditions, meet the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process. and any other applicable law, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled thereto.*

### 16. Judge Steven W. Wilson

***Amador v Baca,*** (August 11, 2020)
No. 10-cv-1649 (C.D. Cal.):

*Class Counsel, in conjunction with JND, have also facilitated substantial notice and outreach to the relatively disparate and sometimes difficult to contact class of more than 94,000 individuals, which has resulted in a relatively high claims rate of between 33% and 40%, pending final verification of deficient claims forms. Their conduct both during litigation and after settlement was reached was adequate in all respects, and supports approval of the Settlement Agreement.*

### 17. Judge Stephanie M. Rose

***Swinton v. SquareTrade, Inc.,*** (April 14, 2020)
No. 18-CV-00144-SMR-SBJ (S.D. Iowa):

*This publication notice appears to have been effective.  The digital ads were linked to the Settlement Website, and Google Analytics and other measures indicate that, during the Publication Notice Period, traffic to the Settlement Website was at its peak.*

### 18. Judge Joan B. Gottschall

***In re Navistar MaxxForce Engines Mktg., Sales Practices and Prods.,*** (January 3, 2020)
No. 14-cv-10318 (N.D. Ill.):

*WHEREAS, the Parties have agreed to use JND Legal Administration ("JND"), an experienced administrator of class action settlements, as the claims administrator for this Settlement and agree that JND has the requisite experience and expertise to serve as claims administrator; The Court appoints JND as the claims administrator for the Settlement.*

### 19.  Honorable Steven I. Locke

***Donnenfield v. Petro, Inc.,*** (December 4, 2019)
No. 17-cv-02310 (E.D.N.Y.):

*WHEREAS, the Parties have agreed to use JND Legal Administration ("JND"), an experienced administrator of class action settlements, as the claims administrator for this Settlement and agree that JND has the requisite experience and expertise to serve as claims administrator; The Court appoints JND as the claims administrator for the Settlement.*

### 20.  Honorable Amy D. Hogue

***Trepte v. Bionaire, Inc.,*** (November 5, 2019)
No. BC540110 (Cal. Super. Ct.):

*The Court appoints JND Legal Administration as the Class Administrator… The Court finds that the forms of notice to the Settlement Class regarding the pendency of the action and of this settlement, and the methods of giving notice to members of the Settlement Class… constitute the best notice practicable under the circumstances and constitute valid, due, and sufficient notice to all members of the Settlement Class. They comply fully with the requirements of California Code of Civil Procedure section 382, California Civil Code section 1781, California Rules of Court 3.766 and 3.769, the California and United States Constitutions, and other applicable law.*

### 21.  Judge Cormac J. Carney

***In re ConAgra Foods Inc.,*** (October 8, 2019)
No. 11-cv-05379-CJC-AGR (C.D. Cal.):

*Following the Court's preliminary approval, JND used a multi-pronged notice campaign to reach people who purchased Wesson Oils…As of September 19, 2019, only one class member requested to opt out of the settlement class, with another class member objecting to the settlement. The reaction of the class has thus been overwhelmingly positive, and this factor favors final approval.*

## 22. Judge Barbara Jacobs Rothstein

***Wright v. Lyft, Inc.,*** (May 29, 2019)

No. 17-cv-23307-MGC 14-cv-00421-BJR (W.D. Wash.):

*The Court also finds that the proposed method of distributing relief to the class is effective. JND Legal Administration ("JND"), an experienced claims administrator, undertook a robust notice program that was approved by this Court...*

## 23. Judge J. Walton McLeod

***Boskie v. Backgroundchecks.com,*** (May 17, 2019)

No. 2019CP3200824 (S.C. C.P.):

*The Court appoints JND Legal Administration as Settlement Administrator...The Court approves the notice plans for the HomeAdvisor Class and the Injunctive Relief Class as set forth in the declaration of JND Legal Administration. The Court finds the class notice fully satisfies the requirements of due process, the South Carolina Rules of Civil Procedure. The notice plan for the HomeAdvisor Class and Injunctive Relief Class constitutes the best notice practicable under the circumstances of each Class.*

## 24. Honorable James Donato

***In re Resistors Antitrust Litig.,*** (May 2, 2019)

No. 15-cv-03820-JD (N.D. Cal.):

*The Court approves as to form and content the proposed notice forms, including the long form notice and summary notice, attached as Exhibits B and D to the Second Supplemental Declaration of Jennifer M. Keough Regarding Proposed Notice Program (ECF No. 534-3). The Court further finds that the proposed plan of notice – including Class Counsel's agreement at the preliminary approval hearing for the KOA Settlement that direct notice would be effectuated through both U.S. mail and electronic mail to the extent electronic mail addresses can be identified following a reasonable search – and the proposed contents of these notices, meet the requirements of Rule 23 and due process, and are the best notice practicable*

*under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.The Court appoints the firm of JND Legal Administration LLC as the Settlement Administrator.*

## 25. Honorable Leigh Martin May

**Bankhead v. First Advantage Background Serv. Corp.,** (April 30, 2019)
No. 17-cv-02910-LMM-CCB (N.D. Ga.):

*The Court appoints JND Legal Administration as Settlement Administrator… The Court approves the notice plans for the Class as set forth in the declaration of the JND Legal Administration. The Court finds that class notice fully satisfies the requirements of due process of the Federal Rules of Civil Procedure. The notice plan constitutes the best notice practicable under the circumstances of the Class.*

## 26. Honorable P. Kevin Castel

**Hanks v. Lincoln Life & Annuity Co. of New York,** (April 23, 2019)
No. 16-cv-6399 PKC (S.D.N.Y.):

*The Court approves the form and contents of the Short-Form Notice and Long-Form Notice (collectively, the "Notices") attached as Exhibits A and B, respectively, to the Declaration of Jennifer M. Keough, filed on April 2, 2019, at Docket No. 120…The form and content of the notices, as well as the manner of dissemination described below, therefore meet the requirements of Rule 23 and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled thereto…the Court approves the retention of JND Legal Administration LLC ("JND") as the Notice Administrator.*

## 27. Judge Cormac J. Carney

**In re ConAgra Foods Inc,** (April 4, 2019)
No. 11-cv-05379-CJC-AGR (C.D. Cal.):

*The bids were submitted to Judge McCormick, who ultimately chose JND Legal Administration to propose to the Court to serve as the settlement administrator.*

*(Id. ¶ 65.) In addition to being selected by a neutral third party, JND Legal Administration appears to be well qualified to administer the claims in this case… The Court appoints JND Legal Administration as Settlement Administrator… JND Legal Administration will reach class members through a consumer media campaign, including a national print effort in People magazine, a digital effort targeting consumers in the relevant states through Google Display Network and Facebook, newspaper notice placements in the Los Angeles Daily News, and an internet search effort on Google. (Keough Decl. ¶ 14.) JND Legal Administration will also distribute press releases to media outlets nationwide and establish a settlement website and toll-free phone number. (Id.) The print and digital media effort is designed to reach 70% of the potential class members. (Id.) The newspaper notice placements, internet search effort, and press release distribution are intended to enhance the notice's reach beyond the estimated 70%. (Id.)*

## 28. Judge Kathleen M. Daily

***Podawiltz v. Swisher Int'l, Inc.,*** (February 7, 2019)
No. 16CV27621 (Or. Cir. Ct.):

*The Court appoints JND Legal Administration as settlement administrator…The Court finds that the notice plan is reasonable, that it constitutes due, adequate and sufficient notice to all persons entitled to receive notice, and that it meets the requirements of due process, ORCP 32, and any other applicable laws.*

## 29. Honorable Kenneth J. Medel

***Huntzinger v. Suunto Oy,*** (December 14, 2018)
No. 37-2018-27159 (CU) (BT) (CTL) (Cal. Super. Ct.):

*The Court finds that the Class Notice and the Notice Program implemented pursuant to the Settlement Agreement and Preliminary Approval Order constituted the best notice practicable under the circumstances to all persons within the definition of the Class and fully complied with the due process requirement under all applicable statutes and laws and with the California Rules of Court.*

### 30. Honorable Thomas M. Durkin

*In re Broiler Chicken Antitrust Litig.,* (November 16, 2018)
No. 16-cv-8637 (N.D. Ill.):

*The notice given to the Class, including individual notice to all members of the Class who could be identified through reasonable efforts, was the best notice practicable under the circumstances. Said notice provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed settlement set forth in the Settlement Agreement, to all persons entitled to such notice, and said notice fully satisfied the requirements of Rules 23(c)(2) and 23(e)(1) of the Federal Rules of Civil Procedure and the requirements of due process.*

### 31. Judge Maren E. Nelson

*Granados v. Cnty. of Los Angeles,* (October 30, 2018)
No. BC361470 (Cal. Super. Ct.):

*JND's Media Notice plan is estimated to have reached 83% of the Class. The overall reach of the Notice Program was estimated to be over 90% of the Class. (Keough Decl., at ¶12.). Based upon the notice campaign outlined in the Keough Declaration, it appears that the notice procedure was aimed at reaching as many class members as possible. The Court finds that the notice procedure satisfies due process requirements.*

### 32. Judge Cheryl L. Pollak

*Dover v. British Airways, PLC (UK),* (October 9, 2018)
No. 12-cv-5567 (E.D.N.Y.), in response to two objections:

*JND Legal Administration was appointed as the Settlement Claims Administrator, responsible for providing the required notices to Class Members and overseeing the claims process, particularly the processing of Cash Claim Forms...the overwhelmingly positive response to the Settlement by the Class Members, reinforces the Court's conclusion that the Settlement is fair, adequate, and reasonable.*

### 33. Judge Edward J. Davila

*In re Intuit Data Litig.,* (October 4, 2018)
No. 15-CV-1778-EJD (N.D. Cal.):

*The Court appoints JND Legal Administration ("JND") to serve as the Settlement Administrator…The Court approves the program for disseminating notice to Class Members set forth in the Agreement and Exhibit A thereto (herein, the "Notice Program"). The Court approves the form and content of the proposed forms of notice, in the forms attached as Attachments 1 through 3 to Exhibit A to the Agreement. The Court finds that the proposed forms of notice are clear and readily understandable by Class Members. The Court finds that the Notice Program, including the proposed forms of notice, is reasonable and appropriate and satisfies any applicable due process and other requirements, and is the only notice to the Class Members of the Settlement that is required.*

### 34. Judge Ann D. Montgomery

*In re Wholesale Grocery Prod. Antitrust Litig.,* (November 16, 2017)
No. 9-md-2090 (ADM) (TNL) (D. Minn.):

*Notice provider and claims administrator JND Legal Administration LLC provided proof that mailing conformed to the Preliminary Approval Order in a declaration filed contemporaneously with the Motion for Final Approval of Class Settlement. This notice program fully complied with Fed. R. Civ. P. 23, satisfied the requirements of due process, is the best notice practicable under the circumstances, and constituted due and adequate notice to the Class of the Settlement, Final Approval Hearing and other matters referred to in the Notice.*

### 35. Honorable David O. Carter

*Hernandez v. Experian Info. Sols., Inc.,* (April 6, 2018)
No. 05-cv-1070 (C.D. Cal.):

*The Court finds, however, that the notice had significant value for the Class, resulting in over 200,000 newly approved claims—a 28% increase in the number of*

*Class members who will receive claimed benefits—not including the almost 100,000 Class members who have visited the CCRA section of the Settlement Website thus far and the further 100,000 estimated visits expected through the end of 2019. (Dkt. 1114-1 at 3, 6). Furthermore, the notice and claims process is being conducted efficiently at a total cost of approximately $6 million, or $2.5 million less than the projected 2009 Proposed Settlement notice and claims process, despite intervening increases in postage rates and general inflation. In addition, the Court finds that the notice conducted in connection with the 2009 Proposed Settlement has significant ongoing value to this Class, first in notifying in 2009 over 15 million Class members of their rights under the Fair Credit Reporting Act (the ignorance of which for most Class members was one area on which Class Counsel and White Objectors' counsel were in agreement), and because of the hundreds of thousands of claims submitted in response to that notice, and processed and validated by the claims administrator, which will be honored in this Settlement.*



# IV.

# CASE EXPERIENCE

Ms. Keough has played an important role in hundreds of matters throughout her career. A partial listing of her notice and claims administration case work is provided below.

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Aaland v. Contractors.com and One Planet Ops* | 19-2-242124 SEA | Wash. Super. Ct. |
| *A.B. v. Regents of the Univ. of California* | 20-cv-09555-RGK-E | C.D. Cal. |
| *Achziger v. IDS Prop. Cas. Ins.* | 14-cv-5445 | W.D. Wash. |
| *Adair v. Michigan Pain Specialist, PLLC* | 14-28156-NO | Mich. Cir. |
| *Adkins v. EQT Prod. Co.* | 10-cv-00037-JPJ-PMS | W.D. Va. |
| *Advance Trust & Life Escrow Serv., LTA v. Sec. Life of Denver Ins. Co.* | 18-cv-01897-DDD-NYW | D. Colo. |
| *Ahmed v. HSBC Bank USA, NA* | 15-cv-2057-FMO-SPx | N.D. Ill. |
| *Allagas v. BP Solar Int'l, Inc.* | 14-cv-00560 (SI) | N.D. Cal. |
| *Amador v. Baca* | 10-cv-1649 | C.D. Cal. |
| *Amin v. Mercedes-Benz USA, LLC* | 17-cv-01701-AT | N.D. Ga. |
| *Anger v. Accretive Health* | 14-cv-12864 | E.D. Mich. |
| *Arthur v. Sallie Mae, Inc.* | 10-cv-00198-JLR | W.D. Wash. |
| *Atkins v. Nat'l. Gen. Ins. Co.* | 16-2-04728-4 | Wash. Super. Ct. |
| *Atl. Ambulance Corp. v. Cullum & Hitti* | MRS-L-264-12 | N.J. Super. Ct. |
| *Avila v. LifeLock Inc.* | 15-cv-01398-SRB | D. Ariz. |
| *Backer Law Firm, LLC v. Costco Wholesale Corp.* | 15-cv-327 (SRB) | W.D. Mo. |
| *Baker v. Equity Residential Mgmt., LLC* | 18-cv-11175 | D. Mass. |
| *Bankhead v. First Advantage Background Servs. Corp.* | 17-cv-02910-LMM-CCB | N.D. Ga. |
| *Barclays Dark Pool Sec. Litig.* | 14-cv-5797 (VM) | S.D.N.Y. |
| *Barrios v. City of Chicago* | 15-cv-02648 | N.D. Ill. |
| *Beezley v. Fenix Parts, Inc.* | 17-cv-7896 | N.D. Ill. |
| *Belanger v. RoundPoint Mortg. Servicing* | 17-cv-23307-MGC | S.D. Fla. |
| *Beltran v. InterExchange, Inc.* | 14-cv-3074 | D. Colo. |
| *BlackRock Core Bond Portfolio v. Wells Fargo* | 65687/2016 | N.Y. Super. Ct. |
| *Bland v. Premier Nutrition Corp.* | RG19-002714 | Cal. Super. Ct. |
| *Blasi v. United Debt Serv., LLC* | 14-cv-0083 | S.D. Ohio |

| CASE NAME | CASE NUMBER | LOCATION |
| --- | --- | --- |
| Bollenbach Enters. Ltd. P'ship. v. Oklahoma Energy Acquisitions | 17-cv-134 | W.D. Okla. |
| Boskie v. Backgroundchecks.com | 2019CP3200824 | S.C. C.P. |
| Boyd v. RREM Inc., d/b/a Winston | 2019-CH-02321 | Ill. Cir. Ct. |
| Bradley v. Honecker Cowling LLP | 18-cv-01929-CL | D. Or. |
| Brna v. Isle of Capri Casinos | 17-cv-60144 (FAM) | S.D. Fla. |
| Browning v. Yahoo! | C04-01463 HRL | N.D. Cal. |
| Bruzek v. Husky Oil Operations Ltd. | 18-cv-00697 | W.D. Wis. |
| Careathers v. Red Bull N. Am., Inc. | 13-cv-369 (KPF) | S.D.N.Y. |
| Carillo v. Wells Fargo Bank, N.A. | 18-cv-03095 | E.D.N.Y. |
| Carmack v. Amaya Inc. | 16-cv-1884 | D.N.J. |
| Cecil v. BP Am. Prod. Co. | 16-cv-410 (RAW) | E.D. Okla. |
| Chamblee v. TerraForm Power, Inc. | 16 MD 2742 (PKC)(AJP) | S.D.N.Y. |
| Chester v. TJX Cos. | 15-cv-1437 (ODW) (DTB) | C.D. Cal. |
| Chieftain Royalty Co. v. BP Am. Prod. Co. | 18-cv-00054-JFH-JFJ | N.D. Okla. |
| Chieftain Royalty Co. v. Marathon Oil Co. | 17-cv-334 | E.D. Okla. |
| Chieftain Royalty Co. v. Newfield Exploration Mid-Continent Inc. | 17-cv-00336-KEW | E.D. Okla. |
| Chieftain Royalty Co. v. SM Energy Co. | 18-cv-01225-J | W.D. Okla. |
| Chieftain Royalty Co. v. XTO Energy, Inc. | 11-cv-00029-KEW | E.D. Okla. |
| Christopher v. Residence Mut. Ins. Co. | CIVDS1711860 | Cal. Super. Ct. |
| City of Los Angeles v. Bankrate, Inc. | 14-cv-81323 (DMM) | S.D. Fla. |
| Cline v Sunoco, Inc. | 17-cv-313-JAG | E.D. Okla. |
| Cline v. TouchTunes Music Corp. | 14-CIV-4744 (LAK) | S.D.N.Y. |
| Cobell v. Salazar | 96-cv-1285 (TFH) | D.D.C. |
| Common Ground Healthcare Coop. v. United States | 17-877C | F.C.C. |
| Cooper Clark Found. v. Oxy USA | 2017-CV-000003 | D. Kan. |
| Corker v. Costco Wholesale Corp. | 19-cv-00290-RSL | W.D. Wash. |
| Corona v. Sony Pictures Entm't Inc. | 14−CV−09600−RGK−E | C.D. Cal. |
| Courtney v. Avid Tech., Inc. | 13-cv-10686-WGY | D. Mass. |
| Dahy v. FedEx Ground Package Sys., Inc. | GD-17-015638 | C.P. Pa. |
| Dargoltz v. Fashion Mkting & Merch. Grp. | 2021-009781-CA-01 | Fla. Cir. Ct. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *DASA Inv., Inc. v. EnerVest Operating LLC* | 18-cv-00083-SPS | E.D. Okla. |
| *Davis v. Carfax, Inc.* | CJ-04-1316L | D. Okla. |
| *Davis v. State Farm Ins.* | 19-cv-466 | W.D. Ky. |
| *Davis v. Yelp Inc.* | 18-cv-00400-EMC | N.D. Cal. |
| *DeFrees v. Kirkland and U.S. Aerospace, Inc.* | CV 11-04574 | C.D. Cal. |
| *de Lacour v. Colgate-Palmolive Co.* | 16-cv-8364-KW | S.D.N.Y. |
| *Delkener v. Cottage Health Sys.* | 30-2016-847934 (CU) (NP) (CXC) | Cal. Super. Ct. |
| *DeMarco v. AvalonBay Communities, Inc.* | 15-cv-00628-JLL-JAD | D.N.J. |
| *Deora v Nanthealth* | 17-cv-01825-TJH-MRWx | C.D. Cal. |
| *Diel v Salal Credit Union* | 19-2-10266-7 KNT | Wash. Super. Ct. |
| *Djoric v. Justin Brands, Inc.* | BC574927 | Cal. Super. Ct. |
| *Doan v. CORT Furniture Rental Corp.* | 30-2017-00904345-CU-BT-CXC | Cal. Super. Ct. |
| *Doan v. State Farm Gen. Ins. Co.* | 1-08-cv-129264 | Cal. Super. Ct. |
| *Donnenfield v. Petro, Inc.* | 17-cv-02310 | E.D.N.Y. |
| *Dougherty v. Barrett Bus. Serv., Inc.* | 17-2-05619-1 | Wash. Super. Ct. |
| *Doughtery v. QuickSIUS, LLC* | 15-cv-06432-JHS | E.D. Pa. |
| *Dover v. British Airways, PLC (UK)* | 12-cv-5567 | E.D.N.Y. |
| *Dwyer v. Snap Fitness, Inc.* | 17-cv-00455-MRB | S.D. Ohio |
| *Edwards v. Arkansas Cancer Clinic, P.A.* | 35CV-18-1171 | Ark. Cir. Ct. |
| *Edwards v. Hearst Commc'ns., Inc.* | 15-cv-9279 (AT) (JLC) | S.D.N.Y. |
| *Enquist v. City of Los Angeles* | BC591331 | Cal. Super. Ct. |
| *Erica P. John Fund, Inc. v. Halliburton Co.* | 02-cv-1152 | N.D. Tex. |
| *Expedia Hotel Taxes & Fees Litig.* | 05-2-02060-1 (SEA) | Wash. Super. Ct. |
| *Family Med. Pharmacy LLC v. Impax Labs., Inc.* | 17-cv-53 | S.D. Ala. |
| *Family Med. Pharmacy LLC v. Trxade Grp. Inc.* | 15-cv-00590-KD-B | S.D. Ala. |
| *Farmer v. Bank of Am.* | 11-cv-00935-OLG | W.D. Tex. |
| *Farris v. Carlinville Rehab and Health Care Ctr.* | 2019CH42 | Ill. Cir. Ct. |
| *Fielder v. Mechanics Bank* | BC721391 | Cal. Super. Ct. |
| *Finerman v. Marriott Ownership Resorts, Inc.* | 14-cv-1154-J-32MCR | M.D. Fla. |
| *Fishon v. Premier Nutrition Corp.* | 16-CV-06980-RS | N.D. Cal. |
| *Fitzgerald v. Lime Rock Res.* | CJ-2017-31 | Okla. Dist. Ct. |
| *Folweiler v. Am. Family Ins. Co.* | 16-2-16112-0 | Wash. Super. Ct. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| Fosbrink v. Area Wide Protective, Inc. | 17-cv-1154-T-30CPT | M.D. Fla. |
| Franklin v. Equity Residential | 651360/2016 | N.Y. Super. Ct. |
| Fresno Cnty. Employees Ret. Assoc. v. comScore Inc. | 16-cv-1820 (JGK) | S.D.N.Y. |
| Frost v. LG Elec. MobileComm U.S.A., Inc. | 37-2012-00098755-CU-PL-CTL | Cal. Super. Ct. |
| FTC v. Consumerinfo.com | SACV05-801 AHS (MLGx) | C.D. Cal. |
| FTC v. Reckitt Benckiser Grp. PLC | 19CV00028 | W.D. Va. |
| Gehrich v. Howe | 37-2018-00041295-CU-SL-CTL | N.D. Ga. |
| Gonzalez v. Banner Bank | 20-cv-05151-SAB | E.D. Wash. |
| Gonzalez-Tzita v. City of Los Angeles | 16-cv-00194 | C.D. Cal. |
| Gormley v. magicJack Vocaltec Ltd. | 16-cv-1869 | S.D.N.Y. |
| Graf v. Orbit Machining Co. | 2020CH03280 | Ill. Cir. Ct. |
| Gragg v. Orange Cab Co. | C12-0576RSL | W.D. Wash. |
| Granados v. Cnty. of Los Angeles | BC361470 | Cal. Super., Ct. |
| Gudz v. Jemrock Realty Co., LLC | 603555/2009 | N.Y. Super. Ct. |
| Guevoura Fund Ltd. v. Sillerman | 15-cv-07192-CM | S.D.N.Y. |
| Hahn v. Hanil Dev., Inc. | BC468669 | Cal. Super. Ct. |
| Haines v. Washington Trust Bank | 20-2-10459-1 | Wash. Super. Ct. |
| Halperin v. YouFit Health Clubs | 18-cv-61722-WPD | S.D. Fla. |
| Hanks v. Lincoln Life & Annuity Co. of New York | 16-cv-6399 PKC | S.D.N.Y. |
| Harrington v. Wells Fargo Bank NA | 19-cv-11180-RGS | D. Mass. |
| Harris v. Chevron U.S.A., Inc. | 15-cv-00094 | W.D. Okla. |
| Hawker v. Pekin Ins. Co. | 20-cv-00830 | S.D. Ohio |
| Hay Creek Royalties, LLC v. Roan Res. LLC | 19-cv-00177-CVE-JFJ | N.D. Okla. |
| Health Republic Ins. Co. v. United States | 16-259C | F.C.C. |
| Henry Price Trust v Plains Mkting | 19-cv-00390-RAW | E.D. Okla. |
| Hernandez v. Experian Info. Sols., Inc. | 05-cv-1070 (DOC) (MLGx) | C.D. Cal. |
| Hernandez v. Wells Fargo Bank, N.A. | 18-cv-07354 | N.D. Cal. |
| Herrera v. Wells Fargo Bank, N.A. | 18-cv-00332-JVS-MRW | C.D. Cal. |
| Hill v. Valli Produce of Evanston | 2019CH13196 | Ill. Cir. Ct. |
| Holmes v. LM Ins. Corp. | 19-cv-00466 | M.D. Tenn. |
| Holt v. Murphy Oil USA, Inc. | 17-cv-911 | N.D. Fla. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Horton v. Cavalry Portfolio Serv., LLC and Krejci v. Cavalry Portfolio Serv., LLC* | 13-cv-0307-JAH-WVG and 16-cv-00211-JAH-WVG | C.D. Cal. |
| *Howell v. Checkr, Inc.* | 17-cv-4305 | N.D. Cal. |
| *Hoyte v. Gov't of D.C.* | 13-cv-00569 | D.D.C. |
| *Hufford v. Maxim  Inc.* | 19-cv-04452-ALC-RWL | S.D.N.Y. |
| *Huntzinger v. Suunto Oy* | 37-2018-27159 (CU) (BT) (CTL) | Cal. Super. Ct. |
| *In re Air Cargo Shipping Servs. Antitrust Litig.* | 06-md-1775 (JG) (VVP) | E.D.N.Y. |
| *In re Akorn, Inc. Sec. Litig.* | 15-c-1944 | N.D. Ill. |
| *In re Am. Express Fin. Advisors Sec. Litig.* | 04 Civ. 1773 (DAB) | S.D.N.Y. |
| *In re AMR Corp. (Am. Airlines Bankr.)* | 1-15463 (SHL) | S.D.N.Y. |
| *In re Auction Houses Antitrust Litig.* | 00-648 (LAK) | S.D.N.Y. |
| *In re AudioEye, Inc. Sec. Litig.* | 15-cv-163 (DCB) | D. Ariz. |
| *In re AXA Equitable Life Ins. Co. COI Litig.* | 16-cv-740 | S.D.N.Y. |
| *In re Banner Health Data Breach Litig.* | 16-cv-02696 | D. Ariz. |
| *In re Blue Cross Blue Shield Antitrust Litig.* | 13-CV-20000-RDP | N.D. Ala. |
| *In re Bofl Holding, Inc. Sec. Litig.* | 15-cv-02324-GPC-KSC | S.D. Cal. |
| *In re Broiler Chicken Antitrust Litig.* | 16-cv-08637 | N.D. Ill. |
| *In re Chaparral Energy, Inc.* | 20-11947 (MFW) | D. Del. Bankr. |
| *In re Classmates.com* | C09-45RAJ | W.D. Wash. |
| *In re Cognizant Tech. Solutions Corp. Sec. Litig.* | 16-6509 | D.N.J. |
| *In re ConAgra Foods Inc.* | 11-cv-05379-CJC-AGR | C.D. Cal. |
| *In re CRM Holdings, Ltd. Sec. Litig.* | 10-cv-00975-RPP | S.D.N.Y. |
| *In re Equifax Inc. Customer Data Sec. Breach Litig.* | 17-md-2800-TWT | N.D. Ga. |
| *In re Equifax Inc. Sec. Litig.* | 17-cv-03463-TWT | N.D. Ga. |
| *In re General Motors LLC Ignition Switch Litig.* | 14-md-2543 | S.D.N.Y. |
| *In re Glob. Tel*Link Corp. Litig.* | 14-CV-5275 | W.D. Ark. |
| *In re GoPro, Inc. Shareholder Litig.* | CIV537077 | Cal. Super. Ct. |
| *In re Guess Outlet Store Pricing* | JCCP No. 4833 | Cal. Super. Ct. |
| *In re Helios and Matheson Analytics, Inc. Sec. Litig.* | 18-cv-06965JGK | S.D.N.Y. |
| *In re Illumina, Inc. Sec. Litig.* | 16-cv-03044-L-MSB | S.D. Cal. |
| *In re Initial Pub. Offering Sec. Litig. (IPO Sec. Litig.)* | No. 21-MC-92 | S.D.N.Y. |
| *In re Intuit Data Litig.* | 15-CV-1778-EJD | N.D. Cal. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *In re J.P. Morgan Stable Value Fund ERISA Litig.* | 12-cv-02548-VSB | S.D.N.Y. |
| *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig. (Indirect-Purchasers)* | 14-md-02542 | S.D.N.Y. |
| *In re Legacy Reserves LP Preferred Unitholder Litig.* | 2018-225 (JTL) | Del. Ch. |
| *In re LIBOR-Based Fin. Instruments Antitrust Litig.* | 11-md-2262 (NRB) | S.D.N.Y. |
| *In re Mercedes-Benz Emissions Litig.* | 16-cv-881 (KM) (ESK) | D.N.J. |
| *In re MyFord Touch Consumer Litig.* | 13-cv-3072 (EMC) | N.D. Cal. |
| *In re Mylan N.V. Sec. Litig* | 16-cv-07926-JPO | S.D.N.Y. |
| *In re Navistar MaxxForce Engines Mktg., Sales Practices and Prods. Liab. Litig.* | 14-cv-10318 | N.D. Ill. |
| *In re Novo Nordisk Sec. Litig.* | 17-cv-00209-BRM-LHG | D.N.J. |
| *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* | 2179 (MDL) | E.D. La. |
| *In re PHH Lender Placed Ins. Litig.* | 12-cv-1117 (NLH) (KMW) | D.N.J. |
| *In re Pokémon Go Nuisance Litig.* | 16-cv-04300 | N.D. Cal. |
| *In re Polyurethane Foam Antitrust Litig.* | 10-md-196 (JZ) | N.D. Ohio |
| *In re Pre-Filled Propane Tank Antitrust Litig.* | 14-md-02567 | W.D. Mo. |
| *In re Processed Egg Prod. Antitrust Litig.* | 08-MD-02002 | E.D. Pa. |
| *In re Resideo Tech., Inc. Sec. Litig.* | 19-cv-02863 | D. Minn. |
| *In re Resistors Antitrust Litig.* | 15-cv-03820-JD | N.D. Cal. |
| *In re Rev Grp., Inc. Sec. Litig.* | 18-cv-1268-LA | E.D. Wis. |
| *In re Rockwell Med. Inc. Stockholder Derivative Litig.* | 19-cv-02373 | E.D. N.Y. |
| *In re Saks Inc. Shareholder Litig.* | 652724/2013 | N.Y. Super. Ct. |
| *In re Sheridan Holding Co. I, LLC* | 20-31884 (DRJ) | Bankr. S.D. Tex. |
| *In re Signet Jewelers Ltd, Sec. Litig.* | 16-cv-06728-CM-SDA | S.D.N.Y. |
| *In re Snap Inc. Sec. Litig.* | 17-cv-03679-SVW-AGR | C.D. Cal. |
| *In re Spectrum Brand Sec. Litig.* | 19-cv-347-JDP | W.D. Wis. |
| *In re Stellantis N.V. v. Sec. Litig.* | 19-CV-6770 (EK) (MMH) | E.D.N.Y. |
| *In re Stericycle, Inc. Sec. Litig.* | 16-cv-07145 | N.D. Ill. |
| *In re Stryker Rejuvenate and ABG II Hip Implant Prods. Liab. Litig.* | 13-md-2441 | D. Minn. |
| *In re Tenet Healthcare Corp. Sec.* | CV-02-8462-RSWL (Rzx) | C.D. Cal. |
| *In re Tesla Inc. Sec. Litig.* | 18-cv-04865-EMC | N.D. Cal. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *In re The Engle Trust Fund* | 94-08273 CA 22 | Fla. 11th Cir. Ct. |
| *In re Ubiquiti Networks Sec. Litig.* | 18-cv-01620 (VM) | S.D.N.Y. |
| *In re Unilife Corp. Sec. Litig.* | 16-cv-3976 (RA) | S.D.N.Y. |
| *In re Vale S.A. Sec. Litig.* | 15 Civ. 09539 (GHW) | S.D.N.Y. |
| *In re Washington Mut. Inc. Sec. Litig.* | 8-md-1919 (MJP) | W.D. Wash. |
| *In re Webloyalty.com, Inc. Mktg. & Sales Practices Litig.* | 06-11620-JLT | D. Mass. |
| *In re Wholesale Grocery Prod. Antitrust Litig.* | 9-md-2090 (ADM) (TNL) | D. Minn. |
| *In re Williams Sec. Litig.* | 02-CV-72-SPF (FHM) | N.D. Okla. |
| *In re Yahoo! Inc. Sec. Litig.* | 17-cv-373 | N.D. Cal. |
| *Jerome v. Elan 99, LLC* | 2018-02263 | Tx. Dist. Ct. |
| *Jet Capital Master Fund L.P. v. HRG Grp. Inc.* | 21-cv-552-jdp | W.D. Wis. |
| *Jeter v. Bullseye Energy, Inc.* | 12-cv-411 (TCK) (PJC) | N.D. Okla. |
| *Johnson v. Hyundai Capital Am.* | BC565263 | Cal. Super. Ct. |
| *Johnson v. MGM Holdings, Inc.* | 17-cv-00541 | W.D. Wash. |
| *Johnston v. Camino Natural Res., LLC* | 19-cv-02742-CMA-SKC | D. Colo. |
| *Jordan v. WP Co. LLC, d/b/a The Washington Post* | 20-cv-05218 | N.D. Cal. |
| *Kennedy v. McCarthy* | 16-cv-2010-CSH | D. Conn. |
| *Kent v. R.L. Vallee, Inc.* | 617-6-15 | D. Vt. |
| *Kernen v. Casillas Operating LLC* | 18-cv-00107-JD | W.D. Okla. |
| *Khona v. Subaru of Am., Inc.* | 19-cv-09323-RMB-AMD | D.N.J. |
| *King v. Bumble Trading Inc.* | 18-cv-06868-NC | N.D. Cal. |
| *Kissel v. Code 42 Software Inc.* | 15-1936 (JLS) (KES) | C.D. Cal. |
| *Kokoszki v. Playboy Enter., Inc.* | 19-cv-10302 | E.D. Mich. |
| *Komesar v. City of Pasadena* | BC 677632 | Cal. Super. Ct. |
| *Kommer v. Ford Motor Co.* | 17-cv-00296-LEK-DJS | N.D.N.Y. |
| *Konecky v Allstate* | CV-17-10-M-DWM | D. Mont. |
| *Krueger v. Ameriprise Fin., Inc.* | 11-cv-02781 (SRN/JSM) | D. Minn. |
| *Lambert v. Navy Fed. Credit Union* | 19-cv-00103-LO-MSN | E.D. Va. |
| *Langan v. Johnson & Johnson Consumer Co.* | 13-cv-01471 | D. Conn. |
| *Larson v. Allina Health Sys.* | 17-cv-03835 | D. Minn. |
| *Lee v. Hertz Corp., Dollar Thrifty Auto. Grp. Inc.* | CGC-15-547520 | Cal. Super. Ct. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| Levy v. Dolgencorp, LLC | 20-cv-01037-TJC-MCR | M.D. Fla. |
| Linderman v. City of Los Angeles | BC650785 | Cal. Super. Ct. |
| Linkwell Corp. Sec. Litig. | 16-cv-62506 | S.D. Fla. |
| Linneman v. Vita-Mix Corp. | 15-cv-748 | S.D. Ohio |
| Lion Biotechnologies Sec. Litig. | 17-cv-02086-SI | N.D. Cal. |
| Liotta v. Wolford Boutiques, LLC | 16-cv-4634 | N.D. Ga. |
| Lippert v. Baldwin | 10-cv-4603 | N.D. Ill. |
| Lloyd v. CVB Fin. Corp. | 10-cv-6256 (CAS) | C.D. Cal. |
| Loblaw Card Program | Remediation Program | |
| Lord Abbett Affiliated Fund, Inc. v. Navient Corp. | 16-cv-112 | D. Del. |
| Mabrey v. Autovest | CGC-18-566617 | Cal. Super. Ct. |
| Machado v. Endurance Int'l Grp. Holdings Inc. | 15-cv-11775-GAO | D. Mass. |
| Macias v. Los Angeles County Dept. of Water and Power | BC594049 | Cal. Super. Ct. |
| Malin v. Ambry Gentics Corp. | 30-2018-00994841-CU-SL-CXC | Cal. Super. Ct. |
| Malone v. Western Digital Corp. | 20-cv-03584-NC | N.D. Cal. |
| Marical  v. Boeing Employees' Credit Union | 19-2-20417-6 | Wash. Super. Ct. |
| Martinelli v. Johnson & Johnson | 15-cv-01733-MCE-DB | E.D. Cal. |
| McClellan v. Chase Home Fin. | 12-cv-01331-JGB-JEM | C.D. Cal. |
| McClintock v. Continuum Producer Servs., LLC | 17-cv-00259-JAG | E.D. Okla. |
| McClintock v Enter. | 16-cv-00136-KEW | E.D. Okla. |
| McGann v. Schnuck Markets Inc. | 1322-CC00800 | Mo. Cir. Ct. |
| McGraw v. Geico Gen. Ins. Co. | 15-2-07829-7 | Wash. Super. Ct. |
| McKibben v. McMahon | 14-2171 (JGB) (SP) | C.D. Cal. |
| McKnight Realty Co. v. Bravo Arkoma, LLC | 17-CIV-308 (KEW) | E.D. Okla. |
| McNeill v. Citation Oil & Gas Corp. | 17-CIV-121 (KEW) | E.D. Okla. |
| McWilliams v. City of Long Beach | BC361469 | Cal. Super. Ct. |
| Messner v. Cambridge Real Estate Servs., Inc. | 19CV28815 | Or. Cir. Ct. |
| Mild v. PPG Indus., Inc. | 18-cv-04231 | C.D. Cal. |
| Miller Revocable Trust v DCP Operating Co., LP | 18-cv-00199-JH | E.D. Okla. |
| Miller v. Carrington Mortg. Serv., LLC | 19-cv-00016-JDL | D. Me. |
| Miller v. Guenther Mgmt. LLC | 20-2-02604-32 | Wash. Super. Ct. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| Miller v. Mut. of Enumclaw Ins. Co. | 19-2-12357-1 | Wash. Super. Ct. |
| Milstead v. Robert Fiance Beauty Sch., Inc. | CAM-L-328-16 | N.J. Super. Ct. |
| Moeller v. Advance Magazine Publishers, Inc. | 15-cv-05671 (NRB) | S.D.N.Y. |
| Mojica v. Securus Techs., Inc. | 14-cv-5258 | W.D. Ark. |
| Molnar v. 1-800-Flowers Retail, Inc. | BC 382828 | Cal. Super. Ct. |
| Monteleone v. Nutro Co. | 14-cv-00801-ES-JAD | D.N.J. |
| Moodie v. Maxim HealthCare Servs. | 14-cv-03471-FMO-AS | C.D. Cal. |
| Muir v. Early Warning Servs., LLC | 16-cv-00521 | D.N.J. |
| Murphy v. Precision Castparts Corp. | 16-cv-00521-sb | D. Or. |
| Mylan Pharm., Inc. v. Warner Chilcott Pub. Ltd. | 12-3824 | E.D. Pa. |
| Nasseri v. Cytosport, Inc. | BC439181 | Cal. Super. Ct. |
| Nesbitt v. Postmates, Inc. | CGC-15-547146 | Cal. Super. Ct. |
| New Orleans Tax Assessor Project | Tax Assessment Program | |
| New York v. Steven Croman | 450545/2016 | N.Y. Super. Ct. |
| NMPA Late Fee Program Grps. I-IVA | Remediation Program | CRB |
| Noble v. Northland | UWY-CV-16-6033559-S | Conn. Super. Ct. |
| Novoa v. The GEO Grp., Inc. | 17-cv-02514-JGB-SHK | C.D. Cal. |
| Nozzi v. Housing Auth. of the City of Los Angeles | CV 07-0380 PA (FFMx) | C.D. Cal. |
| Nwabueza v. AT&T | C 09-01529 SI | N.D. Cal. |
| Nwauzor v. GEO Grp., Inc. | 17-cv-05769 | W.D. Wash. |
| O'Donnell v. Fin. Am. Life Ins. Co. | 14-cv-01071 | S.D. Ohio |
| Ollila v. Babcock & Wilcox Enter., Inc. | 17-cv-00109 | W.D.N.C. |
| Ostendorf v. Grange Indem. Ins. Co. | 19-cv-01147-ALM-KAJ | S.D. Ohio |
| Paetzold v. Metro. Dist. Comm'n | X07-HHD-CV-18-6090558-S | Conn. Super. Ct. |
| Paggos v. Resonant, Inc. | 15-cv-01970-SJO | C.D. Cal. |
| Palazzolo v. Fiat Chrysler Auto. NV | 16-cv-12803 | E.D. Mich. |
| Palmer v City of Anaheim | 30-2017-00938646 | Cal. Super. Ct. |
| Parker v. Time Warner Entm't Co. | 239 F.R.D. 318 | E.D.N.Y. |
| Parker v. Universal Pictures | 16-cv-1193-CEM-DCI | M.D. Fla. |
| Parmelee v. Santander Consumer USA Holdings Inc. | 16-cv-783-K | N.D. Tex. |
| Patrick v. Volkswagen Grp. of Am., Inc. | 19-cv-01908-MCS-ADS | C.D. Cal. |
| Pauper Petroleum, LLC v. Kaiser-Francis Oil Co. | 19-cv-00514-JFH-JFJ | N.D. Okla. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| Pearlstein v. BlackBerry Ltd. | 13-cv-7060 | S.D.N.Y. |
| Pemberton v. Nationstar Mortg. LLC | 14-cv-1024-BAS (MSB) | S.D. Cal. |
| Pena v. Wells Fargo Bank | 19-cv-04065-MMC-TSH | N.D. Cal. |
| Perez v. DIRECTV | 16-cv-01440-JLS-DFM | C.D. Cal. |
| Perez v. Wells Fargo Co. | 17-cv-00454-MMC | N.D. Cal. |
| Perrigo Sec. Litig. | 16-CV-2805-MCA-LDW | D.N.J. |
| Peterson v. Apria Healthcare Grp., Inc. | 19-cv-00856 | M.D. Fla. |
| Petersen v. Costco Wholesale Co. | 13-cv-01292-DOC-JCG | C.D. Cal. |
| Phillips v. Hobby Lobby Stores, Inc. | 18-cv-01645-JHE; 16-cv-837-JHE | N.D. Ala. |
| Pierce v Anthem Ins. Cos. | 15-cv-00562-TWP-TAB | S. D. Ind. |
| Pine Manor Investors v. FPI Mgmt., Inc. | 34-2018-00237315 | Cal. Super. Ct. |
| Pinon v. Mercedes-Benz USA, LLC and Daimler AG | 18-cv-3984 | N.D. Ga. |
| Plymouth Cnty. Ret. Sys. v. GTT Commc'n, Inc. | 19-cv-00982-CMH-MSN | E.D. Va. |
| Podawiltz v. Swisher Int'l, Inc. | 16CV27621 | Or. Cir. Ct. |
| Prause v. TechnipFMC PLC | 7-cv-2368 | S.D. Tex. |
| Press v. J. Crew Grp., Inc. | 56-2018-512503 (CU) (BT) (VTA) | Cal. Super. Ct. |
| Purcell v. United Propane Gas, Inc. | 14-CI-729 | Ky. 2nd Cir. |
| Quezada v. ArbiterSports, LLC | 20-cv-05193-TJS | E.D. Pa. |
| Raider v. Archon Corp. | A-15-712113-B | D. Nev. |
| Ramos v. Hopele of Fort Lauderdale, LLC | 17-cv-62100 | S.D. Fla. |
| Rayburn v. Santander Consumer USA, Inc. | 18-cv-1534 | S.D. Ohio |
| RCC, P.S. v. Unigard Ins. Co. | 19-2-17085-9 | Wash. Super. Ct. |
| Reirdon v. Cimarex Energy Co. | 16-CIV-113 (KEW) | E.D. Okla. |
| Reirdon v. XTO Energy Inc. | 16-cv-00087-KEW | E.D. Okla. |
| Rhea v. Apache Corp. | 14-cv-00433-JH | E.D. Okla. |
| Rice v. Insync | 30-2014-00701147-CU-NP-CJC | Cal. Super. Ct. |
| Rice-Redding v. Nationwide Mut. Ins. Co. | 18-cv-01203 | N.D. Ga. |
| Rich v. EOS Fitness Brands, LLC | RIC1508918 | Cal. Super. Ct. |
| Rick Nelson Co. v. Sony Music Ent. | 18-cv-08791 | S.D.N.Y. |
| Rocchio v. Rutgers, The State Univ. of New Jersey | MID-L-003039-20 | N.J. Super. Ct. |
| Rollo v. Universal Prop. & Cas. Ins. | 2018-027720-CA-01 | Fla. Cir. Ct. |

| CASE NAME | CASE NUMBER | LOCATION |
|-----------|-------------|----------|
| *Rosado v. Barry Univ., Inc.* | 20-cv-21813 | S.D. Fla. |
| *Rose v Array Biopharma Inc.* | 17cv2789 | D. Colo. |
| *Roth v. GEICO Gen. Ins. Co. and Joffe v. GEICO Indem. Co.* | 16-cv-62942 | S.D. Fla. |
| *Routh v. SEIU Healthcare 775NW* | 14-cv-00200 | W.D. Wash. |
| *Ruppel v. Consumers Union of United States, Inc.* | 16-cv-2444 (KMK) | S.D.N.Y. |
| *Russett v. Nw. Mut. Life Ins. Co.,* | 19-cv-07414-KMK | S.D.N.Y. |
| *Saccoccio v. JP Morgan Chase* | 13-cv-21107 | S.D. Fla. |
| *Salgado v. UPMC Jameson* | 30008-18 | C.P. Pa. |
| *San Antonio Fire & Police Pension Fund v. Dole Food Co.* | 15-cv-1140 (LPS) | E.D. Del. |
| *Sanchez v. Centene Corp.* | 17-cv-00806-AGF | E.D. Mo. |
| *Sanders v. Glob. Research Acquisition, LLC* | 18-cv-00555 | M.D. Fla. |
| *Sandoval v. Merlex Stucco Inc.* | BC619322 | Cal. Super. Ct. |
| *Santa Barbara Channelkeeper v. State Water Res. Control Bd.* | 37-2020-00005776 | Cal. Super. Ct. |
| *Schlesinger v. Ticketmaster* | BC304565 | Cal. Super. Ct. |
| *Schulte v. Liberty Ins. Corp.* | 19-cv-00026 | S.D. Ohio |
| *Schwartz v. Intimacy in New York, LLC* | 13-cv-5735 (PGG) | S.D.N.Y. |
| *Schwartz v. Opus Bank* | 16-cv-7991 (AB) (JPR) | C.D. Cal. |
| *SEB Inv. Mgmt. AB v. Endo Int'l PLC* | 17-cv-3711-TJS | E.D. Pa. |
| *SEC v. Brian Lines, Fair Fund* | 07-cv-11387 (DLC) | S.D.N.Y |
| *SEC v. Henry Ford and Fallcatcher, Inc.* | 19-cv-02214-PD | E.D. Pa. |
| *Seegert v. P.F. Chang's China Bistro* | 37-2017-00016131-CU-MC-CTL | Cal. Super. Ct. |
| *Shah v Zimmer Biomet Holdings, Inc.* | 16-cv-00815-PPS-MGG | N.D. Ind. |
| *Sidibe v. Sutter Health* | 12-cv-4854-LB | N.D. Cal. |
| *Smith v. Pulte Home Corp.* | 30-2015-00808112-CU-CD-CXC | Cal. Super. Ct. |
| *Snap Derivative Settlement* | 18STCV09365; BC720152; 19STCV08413 | Cal. Super. Ct. |
| *Soderstrom v. MSP Crossroads Apartments LLC* | 16-cv-233 (ADM) (KMM) | D. Minn. |
| *Solberg v. Victim Serv., Inc.* | 14-cv-05266-VC | N.D. Cal. |
| *Sonner v. Schwabe N. Am., Inc.* | 15-cv-01358 VAP (SPx) | C.D. Cal. |
| *Speed v. JMA Energy Co., LLC* | CJ-2016-59 | Okla. Dist. Ct. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Staats v. City of Palo Alto* | 2015-1-CV-284956 | Cal. Super. Ct. |
| *Stanley v. Capri Training Ctr.* | ESX-L-1182-16 | N.J. Super. Ct. |
| *Steele v. PayPal, Inc.* | 05-CV-01720 (ILG) (VVP) | E.D.N.Y. |
| *Stein v. Eagle Bancorp, Inc.* | 19-cv-06873-LGS | S.D.N.Y. |
| *Steinberg v. Opko Health, Inc.* | 18-cv-23786-JEM | S.D. Fla. |
| *Stewart v. Early Warning Serv., LLC* | 18-cv-3277 | D.N.J. |
| *Stier v. PEMCO Mut. Ins. Co.* | 18-2-08153-5 | Wash. Super. Ct. |
| *Stillman v. Clermont York Assocs. LLC* | 603557/09E | N.Y. Super. Ct. |
| *Strickland v. Carrington Mortg. Servs., LLC* | 16-cv-25237 | S.D. Fla. |
| *Strougo v. Lannett Co.* | 18-cv-3635 | E.D. Pa. |
| *Stuart v. State Farm Fire & Cas. Co.* | 14-cv-04001 | W.D. Ark. |
| *Sudunagunta v. NantKwest, Inc.* | 16-cv-01947-MWF-JEM | C.D. Cal. |
| *Sullivan v Wenner Media LLC* | 16–cv–00960–JTN–ESC | W.D. Mich. |
| *Swafford v. Ovintiv Exploration Inc.* | 21-cv-00210-SPS | E.D. Okla. |
| *Swetz v. GSK Consumer Health, Inc.* | 20-cv-04731 | S.D.N.Y. |
| *Swinton v. SquareTrade, Inc.* | 18-CV-00144-SMR-SBJ | S.D. Iowa |
| *Terrell v. Costco Wholesale Corp.* | 16-2-19140-1-SEA | Wash. Super. Ct. |
| *Tile Shop Stockholders Litig.* | 2019-0892-SG | Del. Ch. |
| *Timberlake v. Fusione, Inc.* | BC 616783 | Cal. Super. Ct. |
| *Tkachyk v. Traveler's Ins.* | 16-28-m (DLC) | D. Mont. |
| *T-Mobile Remediation Program* | Remediation Program | |
| *Townes, IV v. Trans Union, LLC* | 04-1488-JJF | D. Del. |
| *Townsend v. G2 Secure Staff* | 18STCV04429 | Cal. Super. Ct. |
| *Trepte v. Bionaire, Inc.* | BC540110 | Cal. Super. Ct. |
| *Tyus v. Gen. Info. Sols. LLC* | 2017CP3201389 | S.C. C.P. |
| *Udeen v. Subaru of Am., Inc.* | 10-md-196 (JZ) | D.N.J. |
| *United States v. City of Austin* | 14-cv-00533-LY | W.D. Tex. |
| *United States v. City of Chicago* | 16-c-1969 | N.D. Ill. |
| *United States v. Greyhound Lines, Inc.* | 16-67-RGA | D. Del. |
| *USC Student Health Ctr. Settlement* | 18-cv-04258-SVW | C.D. Cal. |
| *Van Jacobs v. New World Van Lines, Inc.* | 2019CH02619 | Ill. Cir. Ct. |
| *Vasquez v. Libre by Nexus, Inc.* | 17-cv-00755-CW | N.D. Cal. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Vassalle v. Midland Funding LLC* | 11-cv-00096 | N.D. Ohio |
| *Viesse v. Saar's Inc.* | 17-2-7783-6 (SEA) | Wash. Super. Ct. |
| *Wahl v. Yahoo! Inc.* | 17-cv-2745 (BLF) | N.D. Cal. |
| *Watson v. Checkr, Inc.* | 19-CV-03396-EMC | N.D. Cal. |
| *Weimar v. Geico Advantage Ins. Co.* | 19-cv-2698-JTF-tmp | W.D. Tenn. |
| *WellCare Sec. Litig.* | 07-cv-01940-VMC-EAJ | M.D. Fla. |
| *White Family Minerals, LLC v. EOG Res., Inc.* | 19-cv-409-KEW | E.D. Okla. |
| *Williams v. Children's Mercy Hosp.* | 1816-CV 17350 | Mo. Cir. Ct. |
| *Williams v. Weyerhaeuser Co.* | 995787 | Cal. Super. Ct. |
| *Wills v. Starbucks Corp.* | 17-cv-03654 | N.D. Ga. |
| *Wilner v. Leopold & Assoc,* | 15-cv-09374-PED | S.D.N.Y. |
| *Wilson v. LSB Indus., Inc* | 15-cv-07614-RA-GWG | S.D.N.Y. |
| *Wornicki v. Brokerpriceopinion.com, Inc.* | 13-cv-03258 (PAB) (KMT) | D. Colo. |
| *Wright v. Lyft, Inc.* | 14-cv-00421-BJR | W.D. Wash. |
| *Wright v. Southern New Hampshire Univ.* | 20-cv-00609 | D.N.H. |
| *Yamagata v. Reckitt Benckiser, LLC* | 17-cv-03529-CV | N.D. Cal. |
| *Yates v. Checkers* | 17-cv-09219 | N.D. Ill. |
| *Yeske v. Macoupin Energy* | 2017-L-24 | Ill. Cir. Ct. |

# - EXHIBIT B -

# Porsche Gasoline Emissions Settlement

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

Porsche and Volkswagen (the "Defendants")[1] have agreed to a Consumer Class Action Settlement Agreement and Release (the "Settlement") to resolve claims that certain Porsche-branded gasoline vehicles sold or leased in the United States produce excess emissions and/or obtain worse fuel economy on the road than in testing conditions. Porsche and Volkswagen deny the claims but have decided to settle. The Court has not decided who is right. The purpose of this notice is to inform you of the proposed class action settlement so you may decide what to do.

Under the Settlement, maximum cash payments range from approximately $200 to $1,100 for original and sole owners of the Class Vehicles, depending on the model and model year of the vehicle. Former owners, lessees, and non-original owners may be eligible to claim compensation. Certain Class Vehicles will receive compensation based on changes to fuel economy, which will be reflected in an updated Monroney Label, and payments for those vehicles will vary based on months of ownership/lease. Furthermore, Class Vehicles with Sport+ Mode that are part of the ongoing Sport+ emissions recall will receive an additional $250 for completion of the recall. The total value of the Settlement is at least $80 million. **Please visit the Settlement Website to calculate your potential compensation.**

Specifically, the Settlement resolves claims that the miles-per-gallon ("MPG") indicated on the "Monroney" fuel economy labels on certain Porsche gasoline vehicles may not be accurate (the "Fuel Economy Class Vehicles"); that certain vehicles may exceed emission limits when driven in the user-selectable PDK Sport or Sport+ Mode (the "Sport+ Class Vehicles"); and that certain vehicles were conceivably impacted by the same issues, but testing did not identify deviations (the "Other Class Vehicles"). Together, the Fuel Economy Class Vehicles, Sport+ Class Vehicles, and Other Class Vehicles are called the "Class Vehicles."

## CLASS VEHICLES

| Make | Model Code | Carline | Derivative | Transmission | Model Year(s) |
|------|-----------|---------|-----------|--------------|---------------|
| Porsche | 982 | Boxster/Cayman | Base | AT/MT | 2017-2019 |
| Porsche | 982 | Boxster/Cayman | S | AT/MT | 2017-2019 |
| Porsche | 982 | Boxster/Cayman | GTS | AT/MT | 2018-2019 |
| Porsche | 981 I | Boxster/Cayman | Base | AT/MT | 2013-2016 |
| Porsche | 981 I | Boxster/Cayman | S | AT/MT | 2013-2016 |
| Porsche | 981 I | Boxster/Cayman | GTS | AT/MT | 2015-2016 |
| Porsche | 981 I | Boxster | Spyder | MT | 2016 |
| Porsche | 981 I | Cayman | GT4 | MT | 2016 |
| Porsche | 987 I | Boxster/Cayman | Base | AT/MT | 2005-2008 |
| Porsche | 987 I | Boxster/Cayman | S | AT/MT | 2005-2008 |
| Porsche | 987 II | Boxster/Cayman | Base | AT/MT | 2009-2012 |
| Porsche | 987 II | Boxster/Cayman | S | AT/MT | 2009-2012 |
| Porsche | 987 II | Boxster | Spyder | AT/MT | 2011-2012 |
| Porsche | 987 II | Cayman | R | AT/MT | 2012 |

---

[1] Capitalized terms have the meaning assigned to them in the Settlement Agreement, unless otherwise noted.

| Make | Model Code | Carline | Derivative | Transmission | Model Year(s) |
|------|-----------|---------|------------|--------------|---------------|
| Porsche | 991 I | Carrera Coupe/Cabrio/Targa | Base | AT/MT | 2012-2016 |
| Porsche | 991 I | Carrera Coupe/Cabrio/Targa | S | AT/MT | 2012-2016 |
| Porsche | 991 I | Carrera Coupe/Cabrio | Turbo | AT | 2014-2016 |
| Porsche | 991 I | Carrera Coupe/Cabrio | Turbo S | AT | 2014-2016 |
| Porsche | 991 I | Carrera Coupe/Cabrio/Targa | GTS | AT/MT | 2015-2016 |
| Porsche | 991 I | 911 | GT3 | AT | 2014-2016 |
| Porsche | 991 I | 911 | GT3 RS | AT | 2016 |
| Porsche | 991 I | 911 | R | MT | 2016 |
| Porsche | 991 II | Carrera Coupe/Cabrio/Targa | Base | AT/MT | 2017-2019 |
| Porsche | 991 II | Carrera Coupe/Cabrio/Targa | S | AT/MT | 2017-2019 |
| Porsche | 991 II | Carrera Coupe/Cabrio/Targa | GTS | AT/MT | 2017-2019 |
| Porsche | 991 II | Carrera | T | AT/MT | 2018-2019 |
| Porsche | 991 II | Carrera Coupe/Cabrio | Turbo | AT | 2017-2019 |
| Porsche | 991 II | Carrera Coupe/Cabrio | Turbo S | AT | 2017-2019 |
| Porsche | 991 II | 911 | GT3 | AT/MT | 2018 |
| Porsche | 991 II | 911 | GT2 RS | AT | 2018 |
| Porsche | 997 I | Carrera Coupe/Cabrio/Targa | Base | AT/MT | 2005-2008 |
| Porsche | 997 I | Carrera Coupe/Cabrio/Targa | S | AT | 2005-2008 |
| Porsche | 997 I | Carrera Coupe/Cabrio | Turbo | AT/MT | 2007-2009 |
| Porsche | 997 I | 911 | GT3 | MT | 2007-2008 |
| Porsche | 997 I | 911 | GT3 RS | MT | 2007-2008 |
| Porsche | 997 I | 911 | GT2 | MT | 2008-2009 |
| Porsche | 997 II | Carrera Coupe/Cabrio/Targa | Base | AT/MT | 2009-2012 |
| Porsche | 997 II | Carrera Coupe/Cabrio/Targa | S | AT/MT | 2009-2012 |
| Porsche | 997 II | 911 Coupe/Cabrio | GTS | AT/MT | 2011-2012 |
| Porsche | 997 II | 911 | Speedster | AT | 2011 |
| Porsche | 997 II | 911 Coupe/Cabrio | Turbo | AT/MT | 2010-2013 |
| Porsche | 997 II | 911 Coupe/Cabrio | Turbo S | AT | 2011-2013 |
| Porsche | 997 II | 911 | GT3 | MT | 2010-2011 |
| Porsche | 997 II | 911 | GT3 RS | MT | 2010-2011 |
| Porsche | E1 I | Cayenne | Base | AT/MT | 2005-2006 |
| Porsche | E1 I | Cayenne | S | AT | 2005-2006 |
| Porsche | E1 I | Cayenne | Turbo | AT | 2005-2006 |
| Porsche | E1 I | Cayenne | Turbo S | AT | 2006 |
| Porsche | E1 II | Cayenne | Base | AT/MT | 2008-2010 |
| Porsche | E1 II | Cayenne | S | AT | 2008-2010 |
| Porsche | E1 II | Cayenne | GTS | AT/MT | 2008-2010 |
| Porsche | E1 II | Cayenne | Turbo | AT | 2008-2010 |

*YOUR LEGAL RIGHTS UNDER THE SETTLEMENT ARE AFFECTED EVEN IF YOU DO NOTHING.*
*PLEASE READ THIS NOTICE CAREFULLY.*
*QUESTIONS? Go to www.PorscheGasolineSettlementUSA.com or call [phone]*

| Make | Model Code | Carline | Derivative | Transmission | Model Year(s) |
|------|-----------|---------|-----------|--------------|---------------|
| Porsche | E1 II | Cayenne | Turbo S | AT | 2009-2010 |
| Porsche | E2 I | Cayenne | Base | AT/MT | 2011-2014 |
| Porsche | E2 I | Cayenne | S | AT | 2011-2014 |
| Porsche | E2 I | Cayenne | Turbo | AT | 2011-2014 |
| Porsche | E2 I | Cayenne | GTS | AT | 2013-2014 |
| Porsche | E2 I | Cayenne | Turbo S | AT | 2014 |
| Porsche | E2 II | Cayenne | Base | AT | 2016-2018 |
| Porsche | E2 II | Cayenne | S | AT | 2015-2018 |
| Porsche | E2 II | Cayenne | Turbo | AT | 2015-2018 |
| Porsche | E2 II | Cayenne | Turbo S | AT | 2016-2018 |
| Porsche | E2 II | Cayenne | GTS | AT | 2016-2018 |
| Porsche | G1 I | Panamera | Base | AT | 2011-2013 |
| Porsche | G1 I | Panamera | S | AT | 2010-2013 |
| Porsche | G1 I | Panamera | GTS | AT | 2013 |
| Porsche | G1 I | Panamera | Turbo | AT | 2010-2013 |
| Porsche | G1 I | Panamera | Turbo S | AT | 2012-2013 |
| Porsche | G1 II | Panamera | Base | AT | 2014-2016 |
| Porsche | G1 II | Panamera | S | AT | 2014–2016 |
| Porsche | G1 II | Panamera | Turbo | AT | 2014–2016 |
| Porsche | G1 II | Panamera | Turbo S | AT | 2014–2016 |
| Porsche | G1 II | Panamera | GTS | AT | 2014–2016 |
| Porsche | G2 I | Panamera | Base | AT | 2017-2018 |
| Porsche | G2 I | Panamera | S | AT | 2017-2018 |
| Porsche | G2 I | Panamera | Turbo | AT | 2017-2020 |
| Porsche | G2 I | Panamera | Turbo ST | AT | 2018-2020 |
| Porsche | Macan | Macan | Base | AT | 2017-2018 |
| Porsche | Macan | Macan | S | AT | 2015-2018 |
| Porsche | Macan | Macan | GTS | AT | 2017-2018 |
| Porsche | Macan | Macan | Turbo | AT | 2015-2018 |

*Fuel Economy Class Vehicles*

The Parties identified the Fuel Economy Class Vehicles through a rigorous and lengthy analysis and testing process. Based on the test results, this Settlement offers cash payment to current and former owners and lessees of the Fuel Economy Class Vehicles to fully compensate them for their vehicles' potential increased fuel consumption. Based on that testing and analysis, the Parties have identified the Fuel Economy Class Vehicles identified in Question 4 below for which testing indicated that the rounded fuel economy may have been one or two miles per gallon less in the City, Highway and/or Combined values than what was shown on the Monroney fuel economy label of those vehicles at the time of their initial sale or lease. These vehicles are eligible for Settlement compensation even though some of the fuel economy differences may have resulted from the aging of the relevant vehicle,

*YOUR LEGAL RIGHTS UNDER THE SETTLEMENT ARE AFFECTED EVEN IF YOU DO NOTHING.*
*PLEASE READ THIS NOTICE CAREFULLY.*
*QUESTIONS? Go to www.PorscheGasolineSettlementUSA.com or call [phone]*

rounding in the calculation of MPG results, or various other factors that may have impacted the test results. The Settlement compensation for the Fuel Economy Class Vehicles varies based on each vehicle's change in fuel economy, as well as the periods of ownership or lease. Questions 4 and 5 of this Notice address the specific compensation for the Fuel Economy Class Vehicles.

### *Sport+ Class Vehicles*

The Sport+ Class Vehicles were similarly identified through extensive analysis and vehicle testing. Porsche has offered or expects to offer current owners of Sport+ Class Vehicles a regulator-approved repair that will reduce their vehicles' emissions in Sport+ Mode to comply with the relevant regulatory limits, along with an automatic $250 cash payment upon completion of the repair. If a repair is not made available for a Sport+ Class Vehicle, current owners of those vehicles will still be entitled to the $250 Sport+ cash payment (described in Questions 4 and 7).

### *Other Class Vehicles*

The Parties believe their testing covered all affected vehicles. It is possible, however, that certain Other Class Vehicles were impacted, even though no deviations were identified through testing. In an abundance of caution, Defendants will offer compensation to the owners and lessees of these vehicles as well (described in Question 4).

You are a Class Member if you own, lease, or previously owned or leased a Fuel Economy Class Vehicle or Other Class Vehicle as of **[preliminary approval date]**, or if you own a Sport+ Class Vehicle and complete the Sport+ Emissions Compliant Repair during your ownership. Class Members are encouraged to submit a claim with the required documentation online. The total amount of potential compensation to the Class through this Settlement is at least $80 million, and any money that is not distributed to Class Members will be directed to environmental remediation efforts approved by the Court.

For their work in securing this Settlement, Class Counsel will request up to 30% of the settlement value in attorneys' fees, plus reasonable costs. Class Counsel will also request service awards of up to $250 for the named Class Representatives who brought this lawsuit. If approved by the Court, the attorneys' fees and costs, and Class Representative service awards, will be paid out of the Settlement fund. As a condition of settlement, Defendants will not pay attorneys' fees and costs to any attorneys other than Settlement Class Counsel and attorneys authorized to perform work by Settlement Class Counsel.

This Notice is only a summary of the Settlement. The full details of the Settlement are available at www.PorscheGasolineSettlementUSA.com.

**4**

*YOUR LEGAL RIGHTS UNDER THE SETTLEMENT ARE AFFECTED EVEN IF YOU DO NOTHING.*
*PLEASE READ THIS NOTICE CAREFULLY.*
*QUESTIONS? Go to www.PorscheGasolineSettlementUSA.com or call [phone]*

| What This Notice Contains |
|---|

**PAGE**

BASIC INFORMATION ............................................................................................... 6

  1.    What options do I have?

CLASS MEMBERSHIP ............................................................................................... 6

  2.    Am I included in the Settlement?
  3.    Is anyone excluded from the Settlement?

CASH BENEFITS AND CLAIM SUBMISSION ......................................................... 7

  4.    How much can I get in this Settlement?
  5.    I have a Fuel Economy Class Vehicle. How was the monthly Fuel Economy
        compensation calculated?
  6.    How do I submit a claim for cash compensation?
  7.    My vehicle is a Sport+ Class Vehicle. How do I submit a claim for cash
        compensation?
  8.    What is the deadline to submit a claim for cash compensation?
  9.    When and how will I receive my payment?
  10.  What are the tax implications of receiving a Settlement payment?
  11.  What happens to money that is not claimed?

UNDERSTANDING THE CLASS ACTION PROCESS ............................................... 13

  12.  Why am I getting this Notice?
  13.  What is a class action?
  14.  What am I giving up in exchange for receiving the Settlement benefits?
  15.  What are my potential legal claims and remedies in this class action?
  16.  How do I get out of the Settlement?
  17.  If I do not exclude myself, can I sue the Defendants for the same thing later?
  18.  If I exclude myself, can I still get full benefits from the Settlement?
  19.  If I opt out and pursue my own case, could I get a larger recovery?
  20.  Do I have a lawyer in the case?
  21.  I have received solicitation letters from attorneys. Do I need to hire my own attorney
        to get money from the Settlement?
  22.  How will the lawyers and Settlement Class Representatives be paid? And how
        much?
  23.  How do I tell the Court if I do not like the Settlement?
  24.  What is the difference between objecting to the Settlement and opting out?
  25.  When and where will the Court decide whether to approve the Settlement?
  26.  Do I have to attend the hearing?
  27.  May I speak at the hearing?

GETTING MORE INFORMATION ............................................................................. 17

  28.  How do I get more information?

*YOUR LEGAL RIGHTS UNDER THE SETTLEMENT ARE AFFECTED EVEN IF YOU DO NOTHING.*
*PLEASE READ THIS NOTICE CAREFULLY.*
*QUESTIONS? Go to www.PorscheGasolineSettlementUSA.com or call [phone]*

# BASIC INFORMATION

| 1. What options do I have? |
|---|

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT | |
|---|---|
| **PARTICIPATE BY FILING A CLAIM** | To obtain compensation under this Settlement, you must submit a valid claim. Please refer to Questions 6 and 7 for details on how to submit a valid claim.<br><br>**You can submit your claim now**, and must electronically submit or postmark it no later than **[Claims Deadline]**. This schedule may change, so please visit the official Settlement Website (www.PorscheGasolineSettlementUSA.com) regularly for updates. |
| **REQUEST EXCLUSION** | If you wish to exclude yourself from the Settlement, you must submit a request to exclude yourself from, or "opt out" of, the Settlement, by **[Opt out deadline]**. If you do so, you will receive no compensation under this Settlement, but you will preserve your rights to sue the Defendants over the claims being resolved by this Settlement. Please refer to Questions 16 – 19 for further detail. |
| **OBJECT** | If you wish to object to the Settlement, you may write to the Court explain what you dislike about the Settlement. You must submit your objection by **[Objection deadline]**. If you object to the Settlement, you are expressing your views about the Settlement but you will remain a member of the Class (if you are otherwise eligible) and you will still release the claims covered by this Settlement. If you make an objection, you must still submit a claim to receive compensation under the Settlement. Please refer to Questions 23 and 24 for further details. |
| **GO TO A HEARING** | If you object to the Settlement as described above, you may ask to speak in Court about the fairness of the Settlement. Please refer to Questions 25 – 27 for further details. |

# CLASS MEMBERSHIP

| 2. Am I included in the Settlement? |
|---|

You are included in the Settlement if you own, lease, or previously owned or leased a Fuel Economy Class Vehicle or Other Class Vehicle as of [preliminary approval date], or if you own a Sport+ Class Vehicle and complete the Sport+ Emissions Compliant Repair during your ownership, unless such a repair is not made available.

The list of Fuel Economy Class Vehicles, Sport+ Class Vehicles, and Other Class Vehicles is found in the Introduction to this Notice, in Section 2.14 of the Settlement, and in the answer to Question 4, below.

If you are not sure whether you are included in the Settlement, please visit the official settlement website, www.PorscheGasolineSettlementUSA.com, or call [Phone].

| 3. Is anyone excluded from the Settlement? |
|---|

The following entities and individuals are **excluded** from the Class:

- Defendants' officers, directors and employees and participants in the Porsche Associate Lease Program; Defendants' affiliates and affiliates' officers, directors and employees; Defendants' distributors and distributors' officers, directors and employees;

*YOUR LEGAL RIGHTS UNDER THE SETTLEMENT ARE AFFECTED EVEN IF YOU DO NOTHING.*
*PLEASE READ THIS NOTICE CAREFULLY.*
*QUESTIONS? Go to www.PorscheGasolineSettlementUSA.com or call [phone]*

- Judicial officers and their immediate family members and associated court staff assigned to this case;

- All individuals who leased a Class Vehicle from a lessor other than Porsche Financial Services;

- All individuals who are not Fuel Economy Class Members, Sport+ Class Members, or Other Class Vehicle Class Members, as defined in Sections 2.29, 2.34, and 2.52 of the Settlement; and

- All those otherwise in the Class who or which timely and properly exclude themselves from the Class, as provided in the Settlement.

# CASH BENEFITS AND CLAIM SUBMISSION

## 4. How much can I get in this Settlement?

The compensation available in this Settlement depends on the specific Class Vehicle you own(ed) or lease(ed).

### FUEL ECONOMY CLASS VEHICLES

If you have a Class Vehicle that requires a Monroney Label change (known as the "Fuel Economy Class Vehicles"), the compensation will depend on the number of months that you owned or leased the vehicle. The table below lists the Fuel Economy Class Vehicles and the compensation available for those vehicles.

If you are the original owner of a Fuel Economy Class Vehicle and continued to own the vehicle on **[Preliminary Approval Filing Date]**, you will be eligible to claim the maximum compensation for that vehicle. If you acquired a *used* Fuel Economy Class Vehicle (i.e., you are not the original owner), or you previously owned or leased a Fuel Economy Class Vehicle, your compensation will depend on the number of months that you owned or leased the vehicle within the first 96 months after the vehicle was first sold or leased to its original owner/lessee. Finally, if you own a used Fuel Economy Class Vehicle as of **[Preliminary Approval Filing Date]**, and it has not been 96 months since the vehicle was first sold or leased to its original owner/lessee, you will be eligible to claim compensation for the months that you owned the vehicle, as well as any months remaining within that 96-month period.

| Model Code | Model | Derivative | Trans. | Model Year(s) | Compensation Per Month Owned/Leased | Maximum Compensation Per VIN |
|---|---|---|---|---|---|---|
| 981 I | Boxster/Cayman | Base | AT | 2013-2016 | $6.75 | $647.83 |
| 981 I | Boxster/Cayman | Base | MT | 2013-2016 | $3.81 | $366.17 |
| 981 I | Boxster/Cayman | S | AT | 2013-2016 | $3.81 | $366.17 |
| 981 I | Boxster/Cayman | S | MT | 2013-2016 | $4.16 | $399.45 |
| 981 I | Boxster/Cayman | GTS | AT | 2015-2016 | $7.32 | $703.04 |
| 987 II | Boxster/Cayman | Base | AT | 2009-2012 | $3.75 | $360.01 |
| 987 II | Boxster/Cayman | S | AT | 2009-2012 | $8.57 | $822.89 |
| 987 II | Boxster/Cayman | S | MT | 2009-2012 | $4.48 | $430.15 |
| 991 I | Carrera Coupe/Cabrio | Base (2WD) | AT | 2012-2016 | $3.77 | $362.35 |
| 991 I | Carrera Coupe/Cabrio | Base (4WD) | AT | 2013-2016 | $2.60 | $250.00 |
| 991 I | Targa | Base (4WD) | AT | 2014-2016 | $4.55 | $436.55 |
| 991 I | Carrera Coupe/Cabrio | S (2WD) | MT | 2012-2016 | $8.68 | 833.41 |
| 991 I | Carrera Cabrio/Targa | S (4WD) | AT | 2013-2016 | $4.55 | $436.55 |
| 991 I | Carrera Coupe | S (4WD) | AT | 2013-2016 | $4.13 | $396.86 |
| 991 I | Targa | GTS (4WD) | AT | 2016 | $4.55 | $436.55 |
| 997 I | Carrera Coupe/Cabrio | Base (2WD) | AT | 2005-2007 | $7.78 | $746.75 |
| 997 I | Carrera Coupe/Cabrio | Base (2WD) | AT | 2008 | $9.51 | $912.69 |
| 997 I | Carrera Coupe/Cabrio | Base (2WD) | MT | 2008 | $8.58 | $823.48 |

| Model Code | Model | Derivative | Trans. | Model Year(s) | Compensation Per Month Owned/Leased | Maximum Compensation Per VIN |
|---|---|---|---|---|---|---|
| 997 I | Carrera Coupe/Cabrio | S (2WD) | AT | 2005-2007 | $4.07 | $391.15 |
| 997 I | Carrera Coupe/Cabrio | S (2WD) | AT | 2008 | $9.51 | $912.69 |
| 997 I | Carrera Coupe/Cabrio | S (2WD) | MT | 2005-2007 | $2.60 | $250.00 |
| 997 I | Carrera Coupe/Cabrio | S (2WD) | MT | 2008 | $4.50 | $432.33 |
| 997 I | Carrera Coupe | Turbo | AT | 2007 | $4.50 | $432.33 |
| 997 I | Carrera Coupe/Cabrio | Turbo | AT | 2008-2009 | $5.59 | $536.88 |
| 997 II | Carrera Coupe/Cabrio | Base (2WD) | AT | 2009-2012 | $3.70 | $355.60 |
| 997 II | Carrera Coupe/Cabrio | S (2WD) | AT | 2009-2012 | $7.78 | $746.75 |
| 997 II | 911 Coupe/Cabrio | GTS (2WD) | AT | 2011-2012 | $7.78 | $746.75 |
| E2 I | Cayenne | S | AT | 2011-2014 | $7.69 | $738.36 |
| E2 I | Cayenne | Turbo | AT | 2012-2014 | $7.03 | $674.43 |
| E2 II | Cayenne | S | AT | 2017-2018 | $11.56 | $1,109.66 |
| G1 I | Panamera | S (4WD) | AT | 2010-2013 | $9.88 | $948.66 |

## OTHER CLASS VEHICLES

Class Vehicles that do not require a Monroney Label change (known as the "Other Class Vehicles"), are eligible for compensation of up to $200 per vehicle. The table below lists the Other Class Vehicles. If you are the original owner of such a vehicle and continued to own the vehicle on **[Preliminary Approval Filing Date]**, you are eligible to claim the maximum compensation for that VIN. If you are not the original owner, you will split the compensation with any other Class Member who submits a valid claim for that VIN.

| Model Code | Model | Derivative | Transmission | Model Year(s) |
|---|---|---|---|---|
| 982 | Boxster/Cayman | Base | AT/MT | 2017-2019 |
| 982 | Boxster/Cayman | S | AT/MT | 2017-2019 |
| 982 | Boxster/Cayman | GTS | AT/MT | 2018-2019 |
| 981 I | Boxster/Cayman | GTS | MT | 2015-2016 |
| 981 I | Boxster | Spyder | MT | 2016 |
| 981 I | Cayman | GT4 | MT | 2016 |
| 987 I | Boxster/Cayman | Base | AT/MT | 2005-2008 |
| 987 I | Boxster/Cayman | S | AT/MT | 2005-2008 |
| 987 II | Boxster/Cayman | Base | MT | 2009-2012 |
| 987 II | Boxster | Spyder | AT/MT | 2011-2012 |
| 987 II | Cayman | R | AT/MT | 2012 |
| 991 I | Carrera Coupe/Cabrio | Base (2WD) | MT | 2012-2016 |
| 991 I | Carrera Coupe/Cabrio/Targa | Base (4WD) | MT | 2013-2016 |
| 991 I | Carrera Coupe/Cabrio/Targa | S (4WD) | MT | 2013–2016 |
| 991 I | Carrera Coupe/Cabrio | S (2WD) | AT | 2012-2016 |
| 991 I | Carrera Coupe/Cabrio | Turbo | AT | 2014-2016 |
| 991 I | Carrera Coupe/Cabrio | Turbo S | AT | 2014-2016 |
| 991 I | Carrera Coupe/Cabrio | GTS (2WD) | AT/MT | 2015-2016 |
| 991 I | Carrera Coupe/Cabrio | GTS (4WD) | AT/MT | 2015-2016 |
| 991 I | Targa 4 | GTS | MT | 2016 |

*YOUR LEGAL RIGHTS UNDER THE SETTLEMENT ARE AFFECTED EVEN IF YOU DO NOTHING.*
*PLEASE READ THIS NOTICE CAREFULLY.*
*QUESTIONS? Go to www.PorscheGasolineSettlementUSA.com or call [phone]*

| Model Code | Model | Derivative | Transmission | Model Year(s) |
|---|---|---|---|---|
| 991 I | 911 | GT3 | AT | 2014-2016 |
| 991 I | 911 | GT3 RS | AT | 2016 |
| 991 I | 911 | R | MT | 2016 |
| 991 II | Carrera Coupe/Cabrio/Targa | Base | AT/MT | 2017-2019 |
| 991 II | Carrera Coupe/Cabrio/Targa | S | AT/MT | 2017-2019 |
| 991 II | Carrera Coupe/Cabrio/Targa | GTS | AT/MT | 2017-2019 |
| 991 II | Carrera | T | AT/MT | 2018-2019 |
| 991 II | Carrera Coupe/Cabrio | Turbo | AT | 2017-2019 |
| 991 II | Carrera Coupe/Cabrio | Turbo S | AT | 2017-2019 |
| 991 II | 911 | GT3 | AT/MT | 2018 |
| 991 II | 911 | GT2 RS | AT | 2018 |
| 997 I | Carrera Coupe/Cabrio | Base (2WD) | MT | 2005-2007 |
| 997 I | Carrera Coupe/Cabrio/Targa | Base (4WD) | AT/MT | 2006-2008 |
| 997 I | Carrera Coupe/Cabrio/Targa | S (4WD) | AT/MT | 2006-2008 |
| 997 I | 911 Coupe/Cabrio | Turbo | MT | 2007-2009 |
| 997 I | 911 | GT3 | MT | 2007-2008 |
| 997 I | 911 | GT3 RS | MT | 2007-2008 |
| 997 I | 911 | GT2 | MT | 2008-2009 |
| 997 II | Carrera Coupe/Cabrio | Base (2WD) | MT | 2009-2012 |
| 997 II | Carrera Coupe/Cabrio/Targa | Base (4WD) | AT/MT | 2009-2012 |
| 997 II | Carrera Coupe/Cabrio | S (2WD) | MT | 2009-2012 |
| 997 II | Carrera Coupe/Cabrio/Targa | S (4WD) | AT/MT | 2009-2012 |
| 997 II | 911 Coupe/Cabrio | GTS (2WD) | MT | 2011-2012 |
| 997 II | 911 Coupe/Cabrio | GTS (4WD) | AT/MT | 2012 |
| 997 II | 911 | Speedster | AT | 2011 |
| 997 II | 911 Coupe/Cabrio | Turbo | AT/MT | 2010-2013 |
| 997 II | 911 Coupe/Cabrio | Turbo S | AT | 2011-2013 |
| 997 II | 911 | GT3 | MT | 2010-2011 |
| 997 II | 911 | GT3 RS | MT | 2010-2011 |
| E1 I | Cayenne | Base | AT/MT | 2005-2006 |
| E1 I | Cayenne | S | AT | 2005-2006 |
| E1 I | Cayenne | Turbo | AT | 2005-2006 |
| E1 I | Cayenne | Turbo S | AT | 2006 |
| E1 II | Cayenne | Base | AT/MT | 2008-2010 |
| E1 II | Cayenne | S | AT | 2008-2010 |
| E1 II | Cayenne | GTS | AT/MT | 2008-2010 |
| E1 II | Cayenne | Turbo | AT | 2008-2010 |
| E1 II | Cayenne | Turbo S | AT | 2009-2010 |
| E2 I | Cayenne | Base | AT/MT | 2011-2014 |
| E2 I | Cayenne | GTS | AT | 2013-2014 |
| E2 I | Cayenne | Turbo S | AT | 2014 |
| E2 I | Cayenne | Turbo | AT | 2011 |
| E2 II | Cayenne | Base | AT | 2016-2018 |
| E2 II | Cayenne | S | AT | 2015-2016 |
| E2 II | Cayenne | Turbo | AT | 2015-2018 |

*YOUR LEGAL RIGHTS UNDER THE SETTLEMENT ARE AFFECTED EVEN IF YOU DO NOTHING.*
*PLEASE READ THIS NOTICE CAREFULLY.*
*QUESTIONS? Go to www.PorscheGasolineSettlementUSA.com or call [phone]*

| Model Code | Model | Derivative | Transmission | Model Year(s) |
|---|---|---|---|---|
| E2 II | Cayenne | Turbo S | AT | 2016-2018 |
| E2 II | Cayenne | GTS | AT | 2016-2018 |
| G1 I | Panamera | Base | AT | 2011-2013 |
| G1 I | Panamera | S (2WD) | AT | 2010-2013 |
| G1 I | Panamera | GTS | AT | 2013 |
| G1 I | Panamera | Turbo | AT | 2010-2013 |
| G1 I | Panamera | Turbo S | AT | 2012-2013 |
| G1 II | Panamera | Base | AT | 2014-2016 |
| G1 II | Panamera | S | AT | 2014–2016 |
| G1 II | Panamera | Turbo | AT | 2014-2016 |
| G1 II | Panamera | Turbo S | AT | 2014–2016 |
| G1 II | Panamera | GTS | AT | 2014–2016 |
| G2 I | Panamera | Base | AT | 2017-2018 |
| G2 I | Panamera | S | AT | 2017-2018 |
| G2 I | Panamera | Turbo | AT | 2017-2020 |
| G2 I | Panamera | Turbo ST | AT | 2018-2020 |
| Macan | Macan | Base | AT | 2017-2018 |
| Macan | Macan | S | AT | 2015-2018 |
| Macan | Macan | GTS | AT | 2017-2018 |
| Macan | Macan | Turbo | AT | 2015-2018 |

**SPORT+ CLASS VEHICLES**

In addition to the compensation described above, if you have a Class Vehicle that is also a Sport+ Class Vehicle, you will be eligible for an additional $250 after you complete the Sport+ Emissions Compliant Repair recall or submit a valid claim for the Sport+ Class Vehicle compensation (see Question 7). This Sport+ Class Vehicle compensation is paid on top of the compensation for Fuel Economy Class Vehicles and Other Class Vehicles described above. The table below lists the Sport+ Class Vehicles. To qualify as a Sport+ Class Vehicle your vehicle must be equipped with Sport+ Mode or PDK Sport Mode.

| Model Code | Model | Derivative | Transmission | Model Year(s) |
|---|---|---|---|---|
| 981 I | Boxster/Cayman | Base | AT | 2013-2016 |
| 981 I | Boxster/Cayman | S | AT | 2013-2016 |
| 981 I | Boxster/Cayman | GTS | AT | 2015-2016 |
| 991 I | Carrera Coupe/Cabrio/Targa | Base | AT | 2012-2016 |
| 991 I | Carrera Coupe/Cabrio/Targa | S | AT | 2012-2016 |
| 991 I | Carrera Coupe/Cabrio/Targa | GTS | AT | 2015-2016 |
| 991 I | 911 | GT3 | AT | 2014-2016[2] |
| 991 I | 911 | GT3 RS | AT | 2016 |
| E2 II | Cayenne | GTS | AT | 2016-2018 |
| G1 II | Panamera | Base | AT | 2014-2016 |
| G1 II | Panamera | S | AT | 2014-2016 |
| G1 II | Panamera | GTS | AT | 2014-2016 |
| G1 II | Panamera | Turbo | AT | 2014-2016 |
| G1 II | Panamera | Turbo S | AT | 2014-2016 |

[2] Only 991 I GT3 vehicles with certain software versions are included in the Sport+ Class.

*YOUR LEGAL RIGHTS UNDER THE SETTLEMENT ARE AFFECTED EVEN IF YOU DO NOTHING.*
*PLEASE READ THIS NOTICE CAREFULLY.*
*QUESTIONS? Go to www.PorscheGasolineSettlementUSA.com or call [phone]*

## 5.  I have a Fuel Economy Class Vehicle. How was the monthly Fuel Economy compensation calculated?

The Settlement is designed to compensate Class Members for driving vehicles for which the actual, on-road fuel economy may be up to 1-2 MPG may be less than was originally represented to consumers on the vehicle's Monroney labels. Differences between the original and revised fuel economy ratings among the Class Vehicles resulted in different compensation amounts for each model and model year.

The compensation available for Fuel Economy Class Vehicles consists of (1) the difference in cost for the amount of gasoline that would have been required under the original Monroney fuel economy label and the greater amount required under the adjusted fuel economy label, and (2) a goodwill payment of an additional 15% of those damages to account for the inconvenience associated with additional gas fill ups. The gasoline price used in the Settlement calculations is $3.97/gallon, based on an inflation-adjusted average nationwide price for premium fuel during the relevant time period. The Fuel Economy Class Vehicle compensation is available for the first 96 months after the vehicle was originally sold or leased (the full useful life of the vehicle), and the compensation is calculated on a monthly basis.

**For more information on the fuel economy difference in the Fuel Economy Class Vehicles, please see attachment [X] to the Settlement Agreement.**

## 6.  How do I submit a claim for cash compensation?

You must submit a claim and basic supporting documentation to receive your Settlement cash compensation. If your vehicle is also a Sport+ Class Vehicle, you will receive the additional Sport+ compensation automatically after you obtain the Emissions Compliant Repair (see Question 7 below), **but you must still submit a claim to receive the Fuel Economy or Other Class Vehicle Compensation**.

The online claims process takes only a few minutes to complete. To start your claim, please visit www.PorscheGasolineSettlementUSA.com, input your Vehicle Identification Number (VIN), and fill out the Claim Form. If you do not know your VIN, please check the driver's side dashboard and/or driver's side door post, which will contain the 17-digit VIN for your vehicle.

You will also need to submit basic documentation to establish the period during which you own(ed) or lease(ed) your vehicle, including, for example (and depending on your particular circumstances), your:

- Purchase agreement/lease contract; and
- Sale agreement (if you sold the vehicle) or proof of most recent registration (if you currently own the vehicle)

If you would prefer to submit your Claim Form and supporting documentation by mail, you can download and print forms from the Settlement Website or request a hardcopy form to be mailed to you by calling [Phone]. **For faster claims processing, you should submit your claim online at the website below, rather than by mail.**

Submit claims online: www.PorscheGasolineSettlementUSA.com

Submit claims via mail: [Address]

## 7.  My vehicle is a Sport+ Class Vehicle. How do I submit a claim for cash compensation?

If you own a Sport+ Class Vehicle for which an Emissions Compliant Repair recall is available, you will be eligible for the $250 Sport+ Class Vehicle compensation once your vehicle receives the Emissions Compliant

*YOUR LEGAL RIGHTS UNDER THE SETTLEMENT ARE AFFECTED EVEN IF YOU DO NOTHING.*
*PLEASE READ THIS NOTICE CAREFULLY.*
*QUESTIONS? Go to www.PorscheGasolineSettlementUSA.com or call [phone]*

Repair. After you complete the Emissions Compliant Repair, you will receive an automatic $250 payment once Porsche confirms that your vehicle received the Emissions Compliant Repair.

If you own a Sport+ Class Vehicle and an Emissions Compliant Repair does not become available for your vehicle, you must submit a claim to receive the $250 Sport+ Class Vehicle compensation. To submit a claim (see Question 6), please visit www.PorscheGasolineSettlementUSA.com.

The Claims Administrator will issue the Sport+ automatic payments on a rolling basis approximately every [6] months, and will include the $250 Sport+ Class Vehicle compensation with payment for your valid Fuel Economy or Other Class Vehicle claim, if applicable.

Please note that the Sport+ Class Vehicle compensation is paid separately from the Fuel Economy and Other Class Vehicle compensation described above. Even though the Sport+ Class Vehicle compensation will automatically be paid to you after you receive the Emissions Compliant Repair for your Sport+ Class Vehicle, **you must still submit a claim to receive the Fuel Economy or Other Class Vehicle Compensation.**

## 8.  What is the deadline to submit a claim for cash compensation?

**You can submit your claim now**, and must electronically submit or postmark it no later than **[Claim deadline]**. This schedule may change, so please visit www.PorscheGasolineSettlementUSA.com regularly for updates. If your claim is missing information or necessary documentation, however, the Settlement Administrator will notify you that your claim is incomplete, and you will have an additional 60 days from the date you are notified to fix the deficiency.

**Class Members who do not submit a claim by the deadline will not receive Settlement compensation but will still be members of the Class and will release their claims.**

If your vehicle is also a Sport+ Class Vehicle, you must complete the Emissions Compliant Repair by [Sport+ deadline] to receive the automatic Sport+ Class Vehicle compensation. If an Emissions Compliant Repair is not available for your Sport+ Class Vehicle, you must submit a Sport+ Class Vehicle claim form (as described in Question 7 above) by [Sport+ deadline].

## 9.  When and how will I receive my payment?

The Parties anticipate that the Settlement Administrator will begin issuing payments for valid claims for Fuel Economy and Other Class Vehicles after the claims deadline. When you submit your claim form, you may choose to receive your payment via check, Paypal, Venmo, or bank wire.

The Settlement Administrator will begin issuing the automatic payments for Sport+ Class Vehicles with payments for valid Fuel Economy and Other Class Vehicle claims, and will continue to issue these automatic payments on a rolling basis approximately every [6] months thereafter. These automatic payments will be issued via check to the address of the registered owner who completed the Sport+ Emissions Compliant Repair or submitted a valid Sport+ Class Vehicle claim form. If you have a Sport+ Class Vehicle and prefer to have your payment issued via Paypal, Venmo, or bank wire, please complete a claim form to select your payment option (see Questions 6 and 7).

## 10.    What are the tax implications of receiving a Settlement payment?

While it is the intention of Class Counsel that any payments made as a result of the Settlement not be subject to taxation, you should consult a tax professional to assess the specific tax implications of any payment you may receive. A tax professional will help you understand the specific tax implications for you.

## 11.  What happens to money that is not claimed?

If there are any funds remaining in the Settlement fund after all valid, complete, and timely Claims are paid to Class Members, the remaining money may be redistributed, if feasible, to the Class Members who submitted

valid claims. If it is not feasible and/or economically reasonable to distribute the remaining funds to Class Members, then the balance will be directed to environmental remediation efforts, subject to Court approval. This may include, for example, the purchase of greenhouse gas credits, environmental projects, and/or other, environmentally-focused recipients, as agreed by the Parties and approved by the Court.

**Please check www.PorscheGasolineSettlementUSA.com regularly for updates regarding the status of any unclaimed funds after the claims period has ended.**

## UNDERSTANDING THE CLASS ACTION PROCESS

### 12.   Why am I getting this Notice?

You are receiving this Notice because you may be a member of the Settlement Class. The Court in charge of this case authorized this Notice because Class Members have a right to know about the proposed Settlement of this lawsuit, and to understand all of their options before the Court decides whether to approve the Settlement. This Notice summarizes the Settlement and explains Class Members' legal rights and options under the Settlement.

Judge Charles R. Breyer of the United States District Court for the Northern District of California is in charge of this case. The case is known as the "Porsche Gasoline Emissions case" and has been consolidated in the *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, No. 3:15-md-2672. The people who sued are called the "Plaintiffs." Porsche and Volkswagen are the "Defendants."

### 13.   What is a class action?

A class action is a representative lawsuit. One or more plaintiffs (who are also called "class representatives") sue on behalf of themselves and all other people with similar claims, who are not named, but are described in the class definition and are called "class members." When a class action is settled, the Court resolves the issues in the lawsuit for all class members, except for those who request to be excluded from (or "opt out" of) the class. Opting out means that you will not receive benefits under the Settlement. The opt out process is described in Question 16 of this Notice.

### 14.   What am I giving up in exchange for receiving the Settlement benefits?

In exchange for your payment from Defendants, you will give up your right to sue the Released Parties for the claims being resolved by the Settlement, and will give up your right to obtain compensation other than the value provided by the Settlement (*see* Question 15 below). The Settlement has no effect on claims concerning vehicles not included in the Settlement.

Section 10 of the Settlement Agreement contains the complete text and details of what Class Members give up unless they exclude themselves from the Settlement, so please read it carefully. The Settlement Agreement is available at www.PorscheGasolineSettlementUSA.com. If you have any questions, you may talk to the law firms listed in Question 28 for free, or you may talk to your own lawyer at your own expense.

### 15.   What are my potential legal claims and remedies in this class action?

There are many claims for relief in this nationwide class action, including some claims that seek punitive damages. The list of claims starts at paragraph 143 of the Amended Consolidated Consumer Class Action Complaint, filed on [Complaint filing date], in the Northern District of California. The Amended Consolidated Consumer Class Action Complaint is available on the Settlement Website at www.PorscheGasolineSettlementUSA.com, under the "Documents" section. If you have any questions about the claims and remedies in the class action, you may talk to the law firms listed in Question 20 for free, or you may talk to your own lawyer at your own expense.

13

*YOUR LEGAL RIGHTS UNDER THE SETTLEMENT ARE AFFECTED EVEN IF YOU DO NOTHING.*
*PLEASE READ THIS NOTICE CAREFULLY.*
*QUESTIONS? Go to www.PorscheGasolineSettlementUSA.com or call [phone]*

## 16.  How do I get out of the Settlement?

If you do not want to receive benefits from the Settlement, and you want to retain the right to sue the Defendants about the legal issues in this case, then you must take steps to remove yourself from the Settlement. You may do this by asking to be excluded—sometimes referred to as "opting out" of—the Settlement. To do so, you must mail or e-mail a letter or other written document to the court-appointed Settlement Administrator. Your request must include:

- Your name, address, telephone number, and the VIN of your Class Vehicle;

- A statement as to whether you own/owned or lease/leased the Class Vehicle, and the dates of your ownership or lease of the Class Vehicle (i.e., start date and, if applicable, end date of possession);

- A statement that "I wish to exclude myself from the Class in Volkswagen/Audi/Porsche/Bentley Fuel Economy Class Action Settlement in *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, No. 3:15-md-02672-CRB (N.D. Cal.) (MDL 2672)" or substantially similar clear and unambiguous language; and

- Your personal signature and date (electronic signatures, including Docusign, are invalid and will not be considered personal signatures). Opt-out requests that are signed by an attorney but not by the Class Member are also invalid.

Your exclusion request must be postmarked to [address] or e-mailed to [email] no later than **[Opt out deadline]**, except that if you purchased a Sport+ Class Vehicle after [preliminary approval filing] and you wish to opt out only for that Sport+ Class Vehicle, you must submit signed written request (postmarked or e-mailed) by the [Sport+ Opt Out Deadline].

## 17.  If I do not exclude myself, can I sue the Defendants for the same thing later?

No. Unless you exclude yourself, you give up the right to sue the Defendants for all of the claims that the Settlement resolves and you will be bound by the Court's orders and judgments, even if you do not file a claim.

## 18.  If I exclude myself, can I still get full benefits from the Settlement?

No. If you exclude yourself, you will not get a payment from the Settlement.

## 19.  If I opt out and pursue my own case, could I get a larger recovery?

The law of most states provides for various remedies if a claim is proved at trial and upheld on appeal. None of these can be predicted with certainty, and all take additional time. The Settlement is designed to provide benefits that are certain and not subject to the delay and risk of trial and appeal. If you opt out and pursue your own case, you will need to hire an attorney at your own expense, or represent yourself, and there is no guarantee that you will recover any compensation.

## 20.  Do I have a lawyer in the case?

Yes. The Court previously appointed Lead Counsel to prosecute all consumer claims pending before Judge Charles R. Breyer as part of multidistrict litigation in *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, No. 3:15-md-02672-CRB (N.D. Cal.) (MDL 2672). Elizabeth J. Cabraser of Lieff Cabraser Heimann & Bernstein, LLP is Lead Counsel and has been appointed Interim Settlement Class Counsel ("Class Counsel") in this case. She can be contacted in that capacity at no charge to you at:

**Elizabeth Cabraser, Lead Counsel**
**Lieff Cabraser Heimann & Bernstein, LLP**
**275 Battery Street, 29th Floor**
**San Francisco, CA 94111**

*YOUR LEGAL RIGHTS UNDER THE SETTLEMENT ARE AFFECTED EVEN IF YOU DO NOTHING.*
*PLEASE READ THIS NOTICE CAREFULLY.*
*QUESTIONS? Go to www.PorscheGasolineSettlementUSA.com or call [phone]*

ecabraser@lchb.com

### 21.   I have received solicitation letters from attorneys. Do I need to hire my own attorney to get money from the Settlement?

No. Class Counsel will represent you for purposes of the Settlement at no charge to you. As explained in Question 22, any attorneys' fees and costs awarded to Class Counsel by the Court will be paid from the Settlement fund. Please note, however, if you have been or are currently represented by your own lawyer, any money you may owe to your lawyer will not be covered by this Settlement. If you want to be represented by your own lawyer, you may hire one at your own expense. It is possible that you will receive less money overall if you choose to hire your own lawyer to litigate against the Defendants rather than receive compensation from this Settlement.

### 22.   How will the lawyers and Settlement Class Representatives be paid? And how much?

Class Counsel will ask the Court to award attorneys' fees of up to 30% percent of the Settlement fund and up to $1.1 million in expenses to compensate them for the work they performed in litigating this case and securing this nationwide Settlement for the Class. Class Counsel will also ask the Court to award each of the 34 proposed Settlement Class Representatives a service award of up to $250 for their work in this litigation. The Court must approve Class Counsel's requests for fees, expenses, and Settlement Class Representative service awards, before it is paid from the Settlement fund.

Class Counsel will submit their request by **[fee motion deadline]**, and that document will be available at www.PorscheGasolineSettlementUSA.com shortly after it is filed with the Court. Class Members will have an opportunity to comment on and/or object to the request for attorneys' fees and expenses and Settlement Class Representative service awards,  as explained further in Question 23.

**Please check www.PorscheGasolineSettlementUSA.com regularly for updates regarding Class Counsel's request for attorneys' fees and expenses.**

### 23.   How do I tell the Court if I do not like the Settlement?

If you do not exclude yourself from the Settlement, you may object to it. The Court will consider your views in deciding whether to approve or reject this Settlement. If the Court does not approve the Settlement, no settlement payments will be sent, and the lawsuit will continue. To comment on or to object to the Settlement or Class Counsel's request for attorneys' fees and costs and Settlement Class Representative service awards, you or your attorney must submit your written objection to the Court, including the following:

- Your name, address, telephone number, and the VIN of your Class Vehicle;

- A statement as to whether you own/owned or lease/leased the Class Vehicle, and the dates of your ownership or lease of the Class Vehicle (i.e., start date and, if applicable, end date of possession);

- A statement saying that you object to the Porsche Gasoline Emissions Settlement in *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, No. 3:15-md-02672-CRB (N.D. Cal.) (MDL 2672)" or substantially similar clear and unambiguous language;

- The reasons you object to the Settlement, along with any supporting materials;

- A statement that you have reviewed the Class definition and have not opted out of the Class; and

- Your signature and date.

If you object through your own lawyer (hired at your own expense), your lawyer must comply with additional requirements contained in Section 8.2 of the Class Action Settlement.

In addition, if you intend to appear at the final approval hearing (the "Fairness Hearing"), you must submit a written notice of your intent (*see* Questions 25 and 27 below).

*YOUR LEGAL RIGHTS UNDER THE SETTLEMENT ARE AFFECTED EVEN IF YOU DO NOTHING.*
*PLEASE READ THIS NOTICE CAREFULLY.*
*QUESTIONS? Go to www.PorscheGasolineSettlementUSA.com or call [phone]*

You must mail your objection to all the addresses below postmarked no later than **[Objection deadline]**:

| Court | Class Counsel | Defense Counsel |
|---|---|---|
| Clerk of the Court/Judge Charles R. Breyer<br>Phillip Burton Federal Building & United States Courthouse<br>450 Golden Gate Avenue<br>San Francisco, CA 94102 | Elizabeth Cabraser<br>Lieff Cabraser Heimann & Bernstein, LLP<br>275 Battery Street, 29th Floor<br>San Francisco, CA 94111 | Sharon L. Nelles<br>Sullivan & Cromwell LLP<br>125 Broad Street<br>New York, NY 10004<br><br>Cari Dawson<br>Alston & Bird LLP<br>1201 W. Peachtree St. NE #4900<br>Atlanta, GA 30309 |

## 24.   What is the difference between objecting to the Settlement and opting out?

You can object only if you do not opt out of the Class. Opting out is telling the Court that you do not want to be part of the Settlement, and you do not want to receive any payment from the Settlement. If you opt out, you have no basis to object to the Settlement by telling the Court you do not like something about it, because the case no longer affects you.

If you object to the Settlement, you are expressing your views about the Settlement but remain a member of the Class (if you are otherwise eligible). If you make an objection, you must still submit a claim to receive compensation under the Class Action Settlement.

## 25.   When and where will the Court decide whether to approve the Settlement?

The Court will hold the final approval or "Fairness Hearing" on **[Hearing Date]**, at the United States District Court for the Northern District of California, located at the United States Courthouse, 450 Golden Gate Avenue, 17th Floor, San Francisco, CA 94102, before determining whether to approve the Settlement and Class Counsel's request for attorneys' fees and costs. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.PorscheGasolineSettlementUSA.com or call [Phone] for any updates to the hearing date, time or location. At this hearing, the Court will hear evidence about whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them and may listen to people who have asked to speak at the hearing. After the hearing, the Court will decide whether to approve the Settlement and Class Counsel's request for attorneys' fees and costs. We do not know how long that decision will take.

## 26.   Do I have to attend the hearing?

No. Class Counsel will answer questions the Court may have. You are welcome to attend at your own expense. If you timely file an objection, you do not have to come to Court to talk about it. As long as you submitted your written objection on time, the Court will consider it. You also may have your own lawyer attend at your expense, but it is not necessary.

## 27.   May I speak at the hearing?

You may ask the Court for permission to speak at the Fairness Hearing. The Court will determine whether to grant you permission to speak. To do so, you must file with the Court a written notice of your intent to appear. Be sure to include your name, address, telephone number, and your signature. Your notice of intention to appear must be filed or postmarked no later than **[hearing deadline],** and must also be sent to all of the addresses listed in Question 23.

*YOUR LEGAL RIGHTS UNDER THE SETTLEMENT ARE AFFECTED EVEN IF YOU DO NOTHING.*
*PLEASE READ THIS NOTICE CAREFULLY.*
*QUESTIONS? Go to www.PorscheGasolineSettlementUSA.com or call [phone]*

# GETTING MORE INFORMATION

| 28. How do I get more information? |
|---|

This Notice summarizes the proposed Settlement. More details are available in the Settlement Agreement. You can get a copy this Notice, the Settlement Agreement, and other documents from this litigation at **www.PorscheGasolineSettlementUSA.com**. You may also write with questions to [Address], or call [Phone]. You may also access the Court docket, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, 450 Golden Gate Avenue, 5th Floor, San Francisco, CA 94102.

**17**

*YOUR LEGAL RIGHTS UNDER THE SETTLEMENT ARE AFFECTED EVEN IF YOU DO NOTHING.*
*PLEASE READ THIS NOTICE CAREFULLY.*
*QUESTIONS? Go to www.PorscheGasolineSettlementUSA.com or call [phone]*

# - EXHIBIT C -

# CLAIM FORM INSTRUCTIONS
*Porsche Gasoline Emissions Settlement*

## INSTRUCTIONS FOR COMPLETING THE ENCLOSED CLAM FORM

Before filling out this Claim Form, please carefully read the instructions below and the full Notice available at www.PorscheGasolineSettlementUSA.com. You must complete a Claim Form to be eligible for compensation from the Porsche Gasoline Emissions Settlement. **Although you may complete and return the enclosed Claim Form by mail, the fastest way to submit a claim is online at** www.PorscheGasolineSettlementUSA.com**.**

If you have questions about this Claim Form, please visit the Settlement Website for additional information. You may also contact the Claims Administrator at [Phone], or [email], with your questions.

To complete your Claim Form, you must include the following:

1. **Claim Information**: Please neatly print or type all information requested on the enclosed Claim Form. **Submit only one Claim Form per Vehicle Identification Number (VIN).**

2. **Documentation**: Include <u>copies</u> of all required documentation with your Claim Form submission. Documentation requirements vary based on the ownership or leaseholder status of the vehicle. Please carefully review the documentation requirements for your claim.

3. **Claim Submission:** The fastest way to submit a claim is online at www.PorscheGasolineSettlementUSA.com. Your electronic claim must be **submitted by [DATE].** If you submit a paper Claim Form, it must be **postmarked no later than [DATE]** and addressed to:

[ADDRESS]

**Claim Verification:** All Claims are subject to verification. You will be notified if additional information is needed to verify your Claim.

**Assistance:** If you have questions concerning this Claim Form or need additional copies, contact the Claims Administrator at [Address], via email at [email], or by calling [Phone].

**Do you need to file claims for more than 10 vehicles?** If you need to file Claims for more than 10 vehicles, please <u>do not</u> use this Claim Form. Instead, contact [email] for assistance in filing your Claim.

<b>PLEASE KEEP A COPY OF YOUR CLAIM FORM FOR YOUR RECORDS.</b>

Failure to submit the required documentation or to complete all parts of the Claim Form may result in denial of the claim, delay its processing, or otherwise adversely affect the Claim.

<b>Questions? Please visit www.PorscheGasolineSettlementUSA.com, or call [phone]</b>

# CLAIM FORM
### *Porsche Gasoline Emissions Settlement*

**If you have more than one eligible vehicle, you must submit a separate Claim Form for each vehicle.**

## I.   VEHICLE OWNER/LEASEHOLDER INFORMATION

Please provide your name and contact information below. Correspondence concerning this Claim will be directed to the address provided below. You must notify the Claims Administrator if your contact information changes after your Claim is submitted.

| Primary Owner/Lessee First Name | MI | Last Name |
|---|---|---|
| Company Name (if the vehicle was owned or leased by a company) | | |
| Address 1 | | |
| Address 2 | | |
| City | State | ZIP Code |
| Email | Phone Number | |

## II.   VEHICLE INFORMATION

**Vehicle Identification Number:**

Please neatly print or type the Vehicle Identification Number (VIN)* of your eligible vehicle below. **If you have more than one eligible vehicle, you must submit a separate Claim Form for each vehicle.**

* A VIN is a 17-character number that can be found on the driver's side dashboard and/or driver's side door post

**Dates of Ownership or Lease:**

Please provide the date you <u>purchased</u> the vehicle **OR** <u>began leasing</u> the vehicle.

MM - DD - YYYY

Do you still own or lease the vehicle?   ☐ Yes   ☐ No

If you no longer own or lease the vehicle,* please provide the date you <u>sold</u> the vehicle **OR** the date your <u>lease ended</u>.

MM - DD - YYYY

*If your vehicle was totaled, enter the date the vehicle was transferred to an insurance company or otherwise sold to a junkyard, salvage dealer, or the equivalent. If you purchased your vehicle off lease and then sold it, enter the sale date.

**Questions? Please visit www.PorscheGasolineSettlementUSA.com, or call [phone]**

# CLAIM FORM
*Porsche Gasoline Emissions Settlement*

## III.    PROVIDE DOCUMENTATION REGARDING YOUR PURCHASE OR LEASE AGREEMENT

To obtain Settlement compensation, you must submit the following basic supporting documentation:

☐    Purchase or lease agreement reflecting your VIN and the date you acquired the vehicle; **AND**

☐    Current registration, or if you no longer possess the vehicle, a sale agreement or other documentation showing when you sold or transferred ownership of the vehicle.

All submitted documentation should be a **copy** of the original. The Settlement Administrator may contact you to request additional information or documentation to verify your claim. For additional information about what types of documentation are acceptable, please visit www.PorscheGasolineSettlementUSA.com, or call [phone].

## IV.    PAYMENT METHOD

Please select your preferred payment method for your Claim. If you do not select a payment method, a paper check will be used by default.

☐    Paper Check by Mail

☐    Venmo          User Name: _____

☐    PayPal          Email:_____

☐    Electronic Payment

If you selected "Electronic Payment" above, provide the required information below:

|  |  |
|---|---|
| | |
| Bank Name | Bank Address |
| | |
| Bank ABA Routing Number | Account Number |
| | |
| Name on Account | |

## V.    CERTIFICATION

I certify that all the information that I supplied in this Claim Form is true and correct to the best of my knowledge and belief.

_____        Date:  ☐☐ - ☐☐ - ☐☐☐☐
Signature of Primary Owner/Lessee                    MM        DD        YYYY

**Questions? Please visit www.PorscheGasolineSettlementUSA.com, or call [phone]**

3

# - EXHIBIT D -

**From: Porsche Claims Administrator**
**To: [Class Member email address]**
**Subject: Porsche Gasoline Emissions Settlement**

---

[Class Member Name]
[Address]
[VIN(s)]

**COURT-APPROVED**
**LEGAL NOTICE**

**This is an official,**
**Court-approved Notice about a**
**class action settlement. Please**
**review the important**
**information below.**

[Insert JND info]
[Address]
[Phone]
[Email]

## Porsche Gasoline Emissions Class Action Settlement Notice

**You may be eligible for a class action settlement payment as a current or former owner or lessee of certain gasoline engine Porsche Vehicles.**

**Settlement payments may be up to $200 – $1,100 depending on the vehicle, plus an additional $250 for certain vehicles subject to a Sport+ emissions recall.**

Dear [Class Member Name],

You are receiving this notice because you may be a Class member in a proposed class action settlement. Class members include current or former owners/ lessees of certain gasoline-powered Porsche vehicles. **A list of the vehicles included in the Settlement (called the "Class Vehicles") and additional information is available on the official Settlement Website at www.PorscheGasolineSettlementUSA.com**.

The Settlement provides at least $80 million to resolve claims that certain vehicles sold or leased in the United States produce excess emissions and/or obtain worse fuel economy on the road than in testing conditions. Defendants Porsche and Volkswagen deny the claims but have decided to settle. The Court has not decided who is right. The purpose of this notice is to inform you of the proposed class action settlement so you may decide what to do.

Under the Settlement, maximum cash payments range from $200 to approximately $1,100 for original and sole owners of the Class Vehicles, depending on the model and model year of the vehicle. Former owners, lessees, and non-original owners may be eligible to claim compensation. Certain Class Vehicles will receive compensation based on changes to fuel economy, which will be reflected in an updated Monroney Label, and payments for those vehicles will vary based on months of ownership/lease. Furthermore, Class Vehicles with Sport+ Mode that are part of the ongoing Sport+ emissions recall will receive an additional $250 for completion of the recall. The total value of the Settlement is at least $80 million. **Please visit the Settlement Website to calculate your potential compensation.**

## WHAT DO I NEED TO DO?

You must submit a claim to receive a settlement payment. The claim form asks for basic information and takes just a few minutes to complete. To submit your claim online, please visit www.PorscheGasolineSettlementUSA.com. You can also download a claim form on the Settlement Website or call to request a form, and submit your claim by mail. The fastest option is to submit your claim online.

**You should submit your claim now.** Claim forms must be electronically submitted or postmarked no later than **[Deadline]**. This schedule may change, so please visit the Settlement Website regularly for updates.

## How Do I Submit My Claim Online?



Visit the Settlement Website at www.PorscheGasolineSettlementUSA.com or scan the QR code above.



Insert your VIN, fill out the claim form and submit required documentation.



Under the current schedule, the deadline to file your claim is **[Date].** You should submit your claim now.

***Payments will be sent to eligible claims after the claims deadline.***

## WHAT ARE MY RIGHTS?

- You may object to or exclude yourself from the Settlement by **[Deadline]**. If you exclude yourself, you will not receive any settlement payments and any claims you may have will not be released. If you do not exclude yourself from the Settlement, you will not be able to sue the Defendants separately for the claims this Settlement resolves and you will be bound by the Court's orders and judgments, even if you do not file a claim. If you wish to object, the Court will consider your views in deciding whether to approve or reject this Settlement. If the Court does not approve the Settlement, no settlement payments will be sent, and the lawsuit will continue. You cannot object if you exclude yourself from the Settlement. For information on how to object or exclude yourself, visit www.PorscheGasolineSettlementUSA.com.

- The Court will hold a hearing on **[Final Approval Hearing Date]**, to consider whether to grant final approval to the Settlement. The hearing date may change, so please check the Settlement Website regularly for updates. You do not need to attend this hearing, but you are welcome to attend at your own expense.

- The attorneys representing the class (known as "Class Counsel") will ask the Court to award up to 30 percent of the Settlement fund to cover reasonable attorneys' fees plus expenses they incurred in litigating this case and securing this nationwide settlement for the Class. The Court must approve any fees and expenses that are awarded to Class Counsel, and any such fees and expenses will be paid from the Settlement fund. You can also hire your own attorney at your own expense, but you do not have to. Class Counsel will also request service awards up to $250 for the named Class Representatives who brought this lawsuit, which will be paid from the Settlement fund, subject to Court approval.

- To learn more details about the Settlement and review important case documents, please visit www.PorscheGasolineSettlementUSA.com. You may also access the Court docket, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, 450 Golden Gate Avenue, 5th Floor, San Francisco, CA 94102.

### Questions? Please Call [Number] or Visit www.PorscheGasolineSettlementUSA.com

To unsubscribe from this list, please click on the following link: Unsubscribe

# - EXHIBIT E -

[Class Member Name]
[Address]
[VIN(s)]

**COURT-APPROVED LEGAL NOTICE**

**This is an official, Court-approved Notice about a class action settlement. Please review the important information below.**

[Insert JND info]
[Address]
[Phone]
[Email]

## Porsche Gasoline Emissions Class Action Settlement Notice

**You may be eligible for a class action settlement payment as a current or former owner or lessee of certain gasoline engine Porsche Vehicles.**

**Settlement payments may be up to $200 – $1,100 depending on the vehicle, plus an additional $250 for certain vehicles subject to a Sport+ emissions recall.**

Dear [Class Member Name],

You are receiving this notice because you may be a Class member in a proposed class action settlement. Class members include current or former owners/ lessees of certain gasoline-powered Porsche vehicles. **A list of the vehicles included in the Settlement (called the "Class Vehicles") and additional information is available on the official Settlement Website at www.PorscheGasolineSettlementUSA.com.**

The Settlement provides at least $80 million to resolve claims that certain vehicles sold or leased in the United States produce excess emissions and/or obtain worse fuel economy on the road than in testing conditions. Defendants Porsche and Volkswagen deny the claims but have decided to settle. The Court has not decided who is right. The purpose of this notice is to inform you of the proposed class action settlement so you may decide what to do.

Under the Settlement, maximum cash payments range from $200 to approximately $1,100 for original and sole owners of the Class Vehicles, depending on the model and model year of the vehicle. Former owners, lessees, and non-original owners may be eligible to claim compensation. Certain Class Vehicles will receive compensation based on changes to fuel economy, which will be reflected in an updated Monroney Label, and payments for those vehicles will vary based on months of ownership/lease. Furthermore, Class Vehicles with Sport+ Mode that are part of the ongoing Sport+ emissions recall will receive an additional $250 for completion of the recall. The total value of the Settlement is at least $80 million. **Please visit the Settlement Website to calculate your potential compensation.**

### WHAT DO I NEED TO DO?

You must submit a claim to receive a settlement payment. The claim form asks for basic information and takes just a few minutes to complete. To submit your claim online, please visit www.PorscheGasolineSettlementUSA.com. You can also download a claim form on the Settlement Website or call to request a form, and submit your claim by mail. The fastest option is to submit your claim online.

**You should submit your claim now.** Claim forms must be electronically submitted or postmarked no later than **[Deadline]**. This schedule may change, so please visit the Settlement Website regularly for updates.

2427819.1

## How Do I Submit My Claim Online?



Visit the
Settlement Website at
www.PorscheGasolineSettlementUSA.com
or scan the QR code above.



Insert your VIN, fill out
the claim form and
submit required
documentation.



Under the current schedule, the
deadline to file your claim is **[Date]**.
You should submit your claim now.

***Payments will be sent to eligible
claims after the claims deadline.***

## WHAT ARE MY RIGHTS?

- You may object to or exclude yourself from the Settlement by **[Deadline]**. If you exclude yourself, you will not receive any settlement payments and any claims you may have will not be released. If you do not exclude yourself from the Settlement, you will not be able to sue the Defendants separately for the claims this Settlement resolves and you will be bound by the Court's orders and judgments, even if you do not file a claim. If you wish to object, the Court will consider your views in deciding whether to approve or reject this Settlement. If the Court does not approve the Settlement, no settlement payments will be sent, and the lawsuit will continue. You cannot object if you exclude yourself from the Settlement. For information on how to object or exclude yourself, visit www.PorscheGasolineSettlementUSA.com.

- The Court will hold a hearing on **[Final Approval Hearing Date]**, to consider whether to grant final approval to the Settlement. The hearing date may change, so please check the Settlement Website regularly for updates. You do not need to attend this hearing, but you are welcome to attend at your own expense.

- The attorneys representing the class (known as "Class Counsel") will ask the Court to award up to 30 percent of the Settlement fund to cover reasonable attorneys' fees plus expenses they incurred in litigating this case and securing this nationwide settlement for the Class. The Court must approve any fees and expenses that are awarded to Class Counsel, and any such fees and expenses will be paid from the Settlement fund. You can also hire your own attorney at your own expense, but you do not have to. Class Counsel will also request service awards up to $250 for the named Class Representatives who brought this lawsuit, which will be paid from the Settlement fund, subject to Court approval.

- To learn more details about the Settlement and review important case documents, please visit www.PorscheGasolineSettlementUSA.com. You may also access the Court docket, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, 450 Golden Gate Avenue, 5th Floor, San Francisco, CA 94102.

### Questions? Please Call [Number] or Visit
### www.PorscheGasolineSettlementUSA.com