IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No.  15-md-02672-CRB |
| | **ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT, GRANTING ATTORNEYS' FEES, AND ENTERING FINAL JUDGMENT** |
| This Document Relates to: | |
| Porsche Gasoline Litigation | |

The parties seek final approval of their settlement of this lawsuit brought on behalf of owners of approximately 500,000 gasoline-powered Porsche vehicles from model years 2005 through 2020.  Plaintiffs allege that some Porsche vehicles had worse fuel economy and higher emissions than the test-specific models, due to a different axle ratio, while other vehicles with a high performance "Sport+ Mode" exceeded $NO_x$ emissions limits while driven in that mode.  See Am. Compl. (dkt. 7969).

In May 2021, Porsche and Volkswagen moved to dismiss.  MTD (dkt. 7862).  After full briefing, the Parties asked the Court to postpone the hearing while they pursued discovery and engaged in settlement discussions.  See dkt. 7904.  In June 2022, the parties filed a motion for certification of the class and preliminary approval of an $80 million settlement.  See Preliminary Approval Mot. (dkt. 7971).  On July 8, 2022, the Court granted the motion for preliminary approval.  See Order Granting Preliminary Approval (dkt. 7997).

On August 26, 2022, the parties moved for final approval of the settlement and an

award of attorneys' fees and costs.  See Final Approval Mot. (dkt. 8032).  The Court held a final approval hearing on Friday, October 21, 2022.  See dkt. 8073.  The Court has considered the record, the Settlement Agreement, the briefing on this motion, the objections and comments it received, and the arguments at the hearing, and grants final approval of the settlement and Class Counsel's motion for attorneys' fees and costs, as modified by this Order.

## I.  DEFINED TERMS

Unless otherwise defined herein, all terms that are capitalized herein shall have the meanings ascribed to those terms in the Settlement Agreement.

## II.  STANDING OF CLASS MEMBERS

Courts considering class action settlements must verify that every class member has standing, and, as in the non-class action context, it is the plaintiffs' burden to establish standing.  TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2207–08 (2021).  But a plaintiff need only "demonstrate standing 'with the manner and degree of evidence required at the successive stages of the litigation.'"  Id. at 2208 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).  In TransUnion, which proceeded to trial, "the specific facts set forth by the plaintiff to support standing 'must be supported adequately by the evidence adduced at trial.'"  Id. (quoting Lujan, 504 U.S. at 561).  In this case, which remains at the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice."  Lujan, 504 U.S. at 561.

An objector, Wesley Lochridge, argues that the Other Class Vehicle Class Members in this settlement—who will receive up to $200 if they submit a valid claim, Settlement Agreement (dkt. 7971-1) ¶ 4.2—do not have standing at this stage of this litigation because they "do not have claims or damages."[1]  Lochridge Obj. (dkt. 8060) at 10.  This is because the Parties' testing for purposes of settlement "identified" "no potential [fuel economy]

---

[1] There is no dispute as to whether the Fuel Economy Class Members or the Sport+ Class Members have standing.

2

deviations" among those vehicles, but because those vehicles were "conceivably impacted," they were included as Class Vehicles.  Settlement Agreement at 3.  Class Counsel argues that this testing does not demonstrate that these Class Members "do not have claims or damages"—rather, the testing revealed that some class members had "damages that Plaintiffs allege were significantly smaller and more difficult to quantify, but certainly not zero."  Final Approval Reply (dkt. 8069) at 6.  In any case, Class Counsel argues, the Ninth Circuit's most recent decision on this issue, In re Apple Inc. Device Performance Litigation, 50 F.4th 769 (2022), forecloses this objection.

In In re Apple, the parties settled claims alleging throttling due to iPhone software updates after two motions to dismiss, but prior to class certification or summary judgment.  In re Apple, 50 F.4th at 777, 782.  While the plaintiffs alleged that all class members experienced throttling and "the iOS updates affected all Plaintiffs alike," Apple contended that some "users may not have . . . noticed any differences."  Id. at 781.  Objectors argued that allegations of throttling in the complaint were insufficient to establish class members' standing under TransUnion.  The Ninth Circuit disagreed, holding that, at that stage of the litigation—after motions to dismiss but before class certification or summary judgment—all that was required under Lujan is that the plaintiffs allege that all putative class members experienced the injury, and the plaintiffs did so.  Id. at 781–82.

Lochridge argues that this case is distinguishable from In re Apple because "the undisputed evidence acknowledged by both parties established that a large and discrete set of class members . . . do not have claims or damages," while in In re Apple there was a "possibility that some class members suffered no damages."  Lochridge Obj. at 9–10 (quoting In re Apple, 50 F.4th at 781–82).  Lochridge attempts to turn discovery for purposes of settlement into "undisputed evidence" adduced at trial, and he is unsuccessful. The Plaintiffs' testing for purposes of settlement has not been put before the Court, has been neither "proven [n]or disproven," and thus does not demonstrate that the Other Class Vehicle Class Members have no claims or damages.  In re Apple, 50 F.4th at 782.  While this testing may demonstrate that, for purposes of settlement, such class members have

United States District Court
Northern District of California

weaker claims than the Fuel Economy or Sport+ Class Members, it does not demonstrate that they have experienced no injury for purposes of standing.  If such testing were proven or stipulated to by the parties at trial, see TransUnion, 141 S. Ct. at 2209, the Court's conclusion would be different; as it stands, testing for settlement purposes undertaken prior to a decision on a motion to dismiss does not prove that Other Class Vehicle Class Members have no standing.  It only establishes the continued "possibility that some class members suffered no damages," which, as Apple instructs, does not defeat standing at the pleading stage.  The operative complaint in this case alleges that the axle ratio fraud affected every Fuel Economy and Other Class Vehicle. Am. Compl. ¶ 79.  Other Class Vehicle Class Members have thus "maintain[ed] their personal interest in the dispute at [this] stage[] of litigation." TransUnion, 141 S. Ct. at 2208 (quoting Davis v. FEC, 554 U.S. 724, 733 (2008)).

Thus, the Court finds that all class members have standing to participate in the settlement.

## III.    JURISDICTION

This Court has jurisdiction over the subject matter of this Action, all parties to the Action, and all Class Members.

## IV.    CERTIFICATION OF RULE 23(B)(3) CLASS FOR SETTLEMENT

Plaintiffs seek to certify a single nationwide class under Federal Rule of Civil Procedure 23(a) and Rule 23(b)(3).  Final Approval Mot. at 8–14.  Upon granting preliminary approval, the Court found that it was likely to be able to certify the class, see Preliminary Approval Order at 4.  The Court concludes that the settlement class has met all requirements of Rule 23(a) and Rule 23(b)(3) and grants certification for settlement.

### A.    Rule 23(a) Requirements

#### 1.    Numerosity

Under the first Rule 23(a) factor, the class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Some courts have held that numerosity may be presumed when the class comprises forty or more members.  See, e.g.,

United States District Court
Northern District of California

Krzesniak v. Cendant Corp., 05-cv-5156, 2007 WL 1795703, at *7 (N.D. Cal. June 20, 2007).  Here, Class Counsel estimates that the class includes approximately "several hundred thousand" members.  Final Approval Mot. at 8.  Joinder of thousands of class members is "clearly impractical."  See Palmer v. Stassinos, 233 F.R.D. 546, 549 (N.D. Cal. 2006).  Plaintiffs have therefore satisfied Rule 23(a)(1).

### 2.    Commonality

Under the second Rule 23(a) factor, the class must share common questions of law or fact. Fed. R. Civ. P. 23(a)(2).  Not all questions of law or fact must be common: "The existence of shared legal issues with divergent factual predicates is sufficient."  See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  In cases like this one, where fraud claims arise out of a uniform course of conduct, commonality is routinely found.  See, e.g., In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig., 17-md-2777, 2019 WL 536661, at *6 (N.D. Cal. Feb. 11, 2019).  While the injuries to each class member may not be precisely the same, because they are rooted in common questions of fact and law regarding emissions and fuel economy test results and how the realities differed from Porsche's representations, commonality is found here.  See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig., 15-md-2672, 2016 WL 4010049, at *10 (N.D. Cal. July 26, 2016) ("VW 2L Preliminary Approval Order").  Plaintiffs have thus satisfied Rule 23(a)(2).

### 3.    Typicality

Under the third Rule 23(a) factor, a representative party's claims or defenses must be "typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interest of the class."  Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (citing Weinberger v. Thornton, 114 F.R.D. 599, 603 (S.D. Cal. 1986)).  "Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'"  Rodriguez v. Hayes, 591 F.3d 1105,

1124 (9th Cir. 2010) (quoting Hanlon, 150 F.3d at 1020).

The Class Representatives appear to be represented in each of the three settlement classes—Fuel Economy Class Members, Sport+ Class Members, and Other Class Vehicle Class Members. See Am. Compl. ¶ 8; Settlement Agreement Ex. 1–4. The Class Representatives all allege that they were injured by Porsche's alleged fraudulent conduct and misrepresentations regarding the fuel economy of the Class Vehicles they owned or leased. See Am. Compl. ¶¶ 9–41. Because these alleged injuries are "reasonably co-extensive" with those of the rest of the class, typicality is satisfied. Rodriguez, 591 F.3d at 1124.

### 4.    Adequacy of Representation

Under the final Rule 23(a) factor, the representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representative parties are required to protect the interests of the class by (1) retaining qualified counsel who will prosecute the case vigorously, and (2) ensuring they do not have any conflicts of interest with the class. See Hanlon, 150 F.3d at 1020.

Objector Wesley Lochridge argues, in a similar vein to his standing objection discussed above, that because the claims of Fuel Economy Class Members are arguably stronger than the Other Class Vehicle Class Members, that the creation of formal subclasses and separate representation is required under Rule 23(a)(4). Lochridge Obj. at 10–12. But like the standing question, In re Apple also forecloses this argument: Where "[a]ll class members . . . experienced injury during the same time frame and in the same manner," the interests of that class are aligned such that they are "not tantamount to two adverse groups requiring separate representation." In re Apple, 50 F.4th at 781. Contrary to Lochridge's argument, this case is not like Amchem or Ortiz, where the parties' injuries stemmed from the same source but manifested over the past and the future, creating conflicting pay-now-versus-pay-later interests. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 626 (1997); Ortiz v. Firebrand Corp., 527 U.S. 815, 856–57 (1999). Rather, this is a case where a company's malfeasance—at the same time and in the same manner—may

6

have caused different degrees of harm to different class members. <u>In re Apple</u>, 50 F.4th at 781.  In such a case, the Ninth Circuit does not require the creation of subclasses or separate representation under Rule 23(a)(4).

### B. Rule 23(b) Requirements

Plaintiffs seek to certify the class under Rule 23(b)(3).  Final Approval Mot. at 11–14.  To be certified under Rule 23(b)(3), the proposed class must meet two additional requirements: (1) common questions of law and fact must predominate over individual claims; and (2) the litigation as a class action suit must be superior to other methods of resolving the controversy.  Fed. R. Civ. P. 23(b)(3).

#### 1. Predominance

Because Rule 23(b)(3) "analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2)," a finding of predominance requires more than the existence of commonality.  <u>Hanlon</u>, 150 F.3d at 1022.  Instead, "[t]he 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation'" and requires "courts to give careful scrutiny to the relation between common and individual questions in a case."  <u>Tyson Foods, Inc. v. Bouaphakeo</u>, 136 S. Ct. 1036, 1045 (2016) (quoting <u>Amchem</u>, 521 U.S. at 623).  Common questions of law and fact predominate over individual claims when the common questions "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication . . . ."  <u>Hanlon</u>, 150 F.3d at 1022 (internal quotation marks omitted).

This settlement meets the predominance requirement. Plaintiffs allege a common course of conduct—manipulation of emissions and fuel economy test results—that applies to all Class Members and is central to their claims. Even if that conduct injured Class Members to different degrees, the question of whether the fraud itself occurred is uniform: "If the Court were to find that [Porsche] has indeed engaged in a deceptive and fraudulent scheme, such a finding would apply to all of the Class Members' claims."  VW 2L Preliminary Approval Order, 2016 WL 4010049, at *12.  Because Porsche allegedly

7

"perpetrated the same fraud in the same manner against all Class Members," predominance is satisfied.  Id.

### 2. Superiority

In determining whether a class action is superior to other methods of resolving claims, courts consider whether the class action "will reduce litigation costs and promote greater efficiency."  Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996). A class action is also superior to other methods when it is the only realistic method of adjudicating class members' claims.  Id. at 1234–35.  Here, because the proposed class likely includes "several hundred thousand" members, there is no realistic alternative to a class action.  In addition, because the maximum damages recoverable based on the fuel economy differential is $1,109.66 or lower, class members would likely find the cost of litigating individual claims prohibitive.  See Settlement Agreement Ex. 3; Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1163 (9th Cir. 2001) (explaining that a wide "disparity between [class members'] litigation costs and what they hope to recover" favors a finding of superiority).  Individual lawsuits also risk "the possibility of inconsistent rulings and results" based on the same wrongful conduct and the same evidence.  In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., and Prods. Liab. Litig., 15-md-2672, 2017 WL 672727, at *14 (N.D. Cal. Feb. 16, 2017).  For these reasons, the Court concludes that a class action is the superior method of resolving this controversy.

Because Plaintiffs' proposed class meets the requirements of Rule 23(a) and Rule 23(b)(3), the Court grants certification of the class for settlement under Rule 23(b)(3).

## V.   APPOINTMENT OF CLASS COUNSEL

The Court confirms its appointment of Plaintiffs' Lead Counsel as Class Counsel under Rule 23(g).

## VI.   FINAL APPROVAL OF SETTLEMENT AS FAIR, REASONABLE, AND ADEQUATE

Under Federal Rule of Civil Procedure 23(e)(2), the Court may approve the

settlement "only on finding that it is fair, reasonable, and adequate."  In doing so, the Court must consider whether: (1) "the class representatives and class counsel have adequately represented the class"; (2) "the proposal was negotiated at arm's length"; (3) "the relief provided for the class is adequate," accounting for the risks of trial, the effectiveness of the proposed method of relief, and the terms of the fee award; and (4) "the proposal treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2).  There are overlapping factors that the Ninth Circuit requires courts to also consider:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Hanlon, 150 F.3d at 1026.  Where settlement takes place before class certification, settlement approval requires an even "higher standard of fairness" in order to protect absent class members.  See Lane v. Facebook, 696 F.3d 811, 819 (9th Cir. 2012).  However, the Court's role is not to determine "whether the settlement is perfect in [its] estimation"—but to determine if it is "fundamentally fair."  Id. (citing Hanlon, 150 F.3d at 1027).

### A.    Adequate Representation

Rule 23(e)(2)(A) requires the Court to consider whether "the class representatives and class counsel have adequately represented the class."  This case was zealously litigated: In the motion to dismiss briefing, the parties thoroughly aired (over 60 pages each) the legal issues the class might face in seeking relief.  See MTD (dkt. 7862); MTD Opp'n (dkt. 7884); MTD Reply (dkt. 7901).  After deciding to pursue settlement, the parties conducted extensive discovery, reviewing hundreds of thousands of Defendants' documents and comprehensively testing the different vehicle models to assess emissions and fuel economy differentials.  Stellings Decl. (dkt. 8032-1) ¶¶ 5, 10.  Class Counsel is experienced at litigating complex issues like those in this case, having served as Lead Counsel in this MDL since 2016.  See dkt. 1084.  This factor thus favors final approval.

United States District Court
Northern District of California

### B.   Arm's Length Negotiation

Rule 23(e)(2)(B) requires the Court to consider whether "the proposal was negotiated at arm's length."  This factor also favors approval: After extensive briefing on the motion to dismiss, the parties' settlement negotiations, which included robust document exchanges and extensive vehicle testing, went on for nearly a year. Stellings Decl. ¶ 5.  Extensive document discovery and lengthy discussion of settlement are viewed as indicators of an arm's-length negotiation.  See, e.g., Elder v. Hilton Worldwide Holdings, Inc., No. 16-CV-00278-JST, 2021 WL 4785936, at *7 (N.D. Cal. Feb. 4, 2021).  Because the Court sees no reason to doubt Lead Counsel's representations that settlement negotiations, like its litigation of this action prior, were "intensive, thorough, serious, informed, and non-collusive," the Court finds that this factor favors approval.  Preliminary Approval Order at 2; see also Stellings Decl. ¶¶ 2–11.

### C.   Adequacy

Rule 23(e)(2)(C) requires the Court to consider whether "the relief provided for the class is adequate" in light of three enumerated factors: the "costs, risks and delay of trial and appeal;" "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;" and "the terms of any proposed award of attorney's fees."  Fed. R. Civ. P. 23(e)(2)(C).[2]

The Settlement Fund consists of $80 million,[3] to be distributed as follows: Fuel Economy Class Members who submit a valid claim will be compensated based on the difference in cost for the amount of gasoline that would have been required had the original fuel economy label been accurate, for a 96-month use period.  See Settlement Agreement ¶ 4.1.  Settlement benefits for Fuel Economy Class Members will range from $250 to $1,109.66.  Id. Ex. 3.  Sport+ Class Members will receive a cash benefit of $250

---

[2] There is a fourth factor, which asks the Court to assess the significance of related agreements. Fed. R. Civ. P. 23(e)(2)(C)(iv).  Because there are none here, the Court does not address this factor.

[3] Defendants may pay up to an additional $5 million into the Settlement Fund to prevent recovery for Other Class Vehicle Class Members from dipping below $150.  See Settlement Agreement ¶ 4.2.

for bringing their vehicles in to receive a software update.  Id. ¶¶ 2.50; 4.3.  And Other Class Vehicle Class Members will receive a payment of up to $200 because, though no fuel economy deviations were identified in the Plaintiffs' testing, those vehicles could have been impacted by the same conduct that caused deviations for Fuel Economy Class Vehicles. Id. ¶ 4.2; id. at 3.

These high settlement benefit amounts—described by the Parties as "a very high percentage (for many, 100%) of the Class members' potential recoverable damages," Final Approval Reply at 1—coupled with the favorability of the other 23(e)(2)(C) factors as discussed below, militate in favor of finding the settlement fair, reasonable, and adequate.

### 1.    Costs, Risks, and Delay of Trial

Class Counsel points to the many risks of continuing this case to trial.  First, Plaintiffs' claims have not yet survived Defendants' motion to dismiss, and there is no guarantee that they will do so.  For example, a court in Michigan has recently agreed with Defendants' argument that claims like the Plaintiffs' are preempted by the ECPA.  See In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs. Litig., 19-md-2901, 2022 WL 551221 (E.D. Mich. Feb. 23, 2022).  Second, even if Plaintiffs' claims do survive past the pleading stage, they will face significant and expensive hurdles at class certification, summary judgment, and trial, where they would have to prove a complex and technical fraud and prove injury to a class numbering in the hundreds of thousands who purchased or leased hundreds of different vehicle models over the course of fifteen years. The prospect of recovery, even after many years of hard-fought litigation, would be uncertain.

Thus, the many risks associated with continuing this litigation militate in favor of settlement.

### 2.    The Method of Distribution

Further, the claim process and method of distribution is simple and straightforward. Fuel Economy Class Members and Other Class Vehicle Class Members may submit their claims on the settlement website, along with supporting documentation such as a purchase

agreement and/or proof of current registration.[4]  Sport+ Class Members need not even submit claims—instead they will receive a $250 settlement benefit automatically by taking their vehicle in to receive the software update.  Settlement Agreement ¶¶ 2.50, 4.3.  This method of processing claims is straightforward, fair, and reasonable.

The Lochridge objection, whose standing and class certification arguments were discussed above, also argues that the claim process documentation requirements are unreasonably onerous.  Lochridge Obj. at 6–7.  Lochridge points to a claim form that purports to require a purchase or lease agreement, where many owners may not have such documentation, many of the vehicles in the settlement being more than ten years old.  Id. at 6.

Class Counsel contends that both the claim form and the FAQ page on the website clarified that purchase or lease agreements were merely "examples" of the documentation that class members could submit to substantiate their claims.  Final Approval Reply at 4.  The Settlement Administrator has also taken the additional step to allow potential class members to submit claims without any documentation on the settlement website, allowing the settlement administrator to seek out the documentation independently (which can often be found without further aid from the class member).  Id. at 5; Third Keough Decl. (dkt. 8076) ¶ 3.  On October 6, 2022, the Settlement Administrator also sent reminder notices to the class members who have not yet submitted a claim, stating that they may file a claim without documentation, and their claim will be verified based on the information they provide.  Third Keough Decl. ¶ 4.[5]  In any case, Lochridge's concerns about the unavailability of documentation have not been borne out by the majority of claimants: According to the Settlement Administrator, of the 122,467 claims submitted, 100,657 have included some form of documentation.  Id. ¶ 6.  Lochridge's objection on this point is thus

---

[4] In response to an objection discussed below, the Settlement Administrator has begun allowing class members to submit claims without accompanying documentation. Third Keough Decl. (dkt. 8076) ¶ 3.

[5] While the claims deadline was previously set at November 7, 2022, at the request of the Parties at the Fairness Hearing, the Court extended this deadline to December 7, 2022.

United States District Court
Northern District of California

overruled.

### 3.    Attorneys' Fees

The Court assesses Class Counsel's request for attorneys' fees below, see Section VIII.A, and finds it reasonable as applied to the net settlement fund. Thus, this factor comes out in favor of finding the settlement adequate.

The Lochridge objection's argument regarding attorneys' fees is that, because "the interests of [Fuel Economy Class Members] were compromised," attorneys' fees above the twenty-five percent benchmark are not warranted. Lochridge Obj. at 12–13. Because the Court concludes that the interests of the Fuel Economy Class Members were not "compromised" by the inclusion of the Other Class Vehicle Class Members in the class, see supra Sections II, IV.A.4, the objection is thus overruled. Particularly because the Fuel Economy Class Members—the class members whose rights Lochridge seeks to vindicate—will receive, by some measures, close to all of the cost of the damages they might recover at trial, it is unreasonable to conclude that such a settlement is a poor result simply because other Class Members with perhaps weaker claims may recover under the Settlement as well.

### 4.    Adequacy Objections

Two additional objectors, Nicholas Bugosh and Matthew Killen, argue that the settlement is inadequate, though for different reasons. Both are without merit.

Killen[6] objects to the fairness of the formula devised by the parties, devising his own formula based on his own estimates of average consumer driving. Killen then suggests that a buyback option for affected consumers is the appropriate remedy because "[c]onsumers deserve the right to return the car to [Porsche] and their subsidiaries for a full refund." Killen Obj.

Class Counsel argues that the Parties used much more detailed data to develop their

---

[6] Killen's objection is invalid because, while he owns a Fuel Economy Class Vehicle, he purchased his vehicle after the 96-month period compensated under the Settlement, and thus is not a member of the class. Settlement Agreement ¶ 2.28. Nevertheless, for completion's sake, the Court addresses Killen's objection on its merits.

United States District Court
Northern District of California

United States District Court
Northern District of California

settlement plan than Killen's estimates.  Final Approval Reply at 10–11.  In any case, Killen does not argue that his calculation should be implemented, but rather that a buyback option is required to make the settlement fair.  Killen Obj.  As Class Counsel points out, many settlements of similar claims have been approved without providing such an option—such as the Audi $CO_2$ settlement in this MDL.  See Audi $CO_2$ Final Approval Order (dkt. 7244) at 1.  Because a buyback option is simply not required for this settlement to be fair, reasonable, and adequate, Killen's objection is overruled.

Bugosh argues essentially the opposite: That the settlement should be rejected because he has performed his own testing on his two Porsche vehicles (only one of which is a Class Vehicle), and they have passed his own personalized emissions and fuel economy tests.  He therefore argues that the Court should reject the settlement and "award[] $0.00 to the litigants because [the settlement] does not agree with [his] experience."  Bugosh Obj.  Bugosh's objection, "an apparent non-substantive assessment of the frivolity of the action," does not convince the Court that this settlement is not fair, reasonable and adequate, and is thus overruled.  Ko v. Natura Pet Prods., Inc., 09-cv-2619, 2012 WL 3945541, at *6 (N.D. Cal. Sept. 10, 2012).

### D.  Equitable Treatment of Class Members

The Class Members are treated equitably here because their cash payments are tied to the Plaintiffs' testing, and thus roughly correspond to the strength of their claims and the likelihood of damages at trial.  For owners of Fuel Economy Class vehicles, for which testing showed a clear discrepancy between tested fuel economy and the fuel economy on the vehicle's Monroney label, class members will receive the most compensation of the three groups: between $250 to $1,109.66.  Settlement Agreement at 3; Ex. 3.  For Sport+ vehicles, for which testing indicated that they exceeded emissions standards while in Sport+ mode, class members will receive $250 and a software update to fix the issue.  Id. at 3; id. ¶¶ 2.50; 4.3.  And for Other Class Vehicles, which were conceivably impacted but for which testing did not identify fuel economy deviation, class members will receive up to $200.  Id. at 3; id. ¶ 4.2.

1   Because these different recovery amounts "stem mostly from differences in the

2   damages suffered . . . rather than any improper favoring of one group of Class Members

3   over another," this factor is also satisfied.  In re Hyundai & Kia Fuel Econ. Litig., 13-md-

4   2424, 2014 WL 12603199, at *2 (C.D. Cal. Aug. 21, 2014), vacated and remanded, 881

5   F.3d 679 (9th Cir. 2018), aff'd on reh'g en banc, 926 F.3d 539 (9th Cir. 2019).

### E.   Remaining Ninth Circuit Factors

The majority of the Ninth Circuit factors have been addressed by consideration of

the 23(e)(2) factors. However, two remain to be considered: the endorsement of

experienced counsel and the reaction of the class.[7]  Hanlon, 150 F.3d at 1026.

### 1.   Endorsement of Experienced Counsel

Class Counsel, of course, believes the settlement is an "excellent outcome for all

Class members."  Final Approval Mot. at 22.  Because the Court has already confirmed

that Class Counsel is experienced, having served as Lead Counsel in this MDL since 2016,

see dkt. 1084, this factor favors final approval.

### 2.   Reaction of the Class

Following an extensive notice program, only twenty-seven opt-outs were received

(eleven valid) and three objections (two valid), a tiny percentage of the overall class.

Second Keough Decl. (dkt. 8069-1) ¶¶ 14–15.  Additionally, the claims process has been

unusually successful—as of October 20, 122,467 claim forms have been submitted,

covering 22% of the estimated eligible Class vehicles.  Third Keough Decl. ¶ 6.  This

percentage rises to 24% when the Sport+ Class vehicles that have already received a

software update (thus guaranteeing their owners a $250 payment without submission of a

claim form) are included.  Id.  This reaction strongly favors approval of the settlement.

Thus, the Court finds that the settlement is fair, reasonable, and adequate under the

23(e)(2) and Ninth Circuit factors.

---

[7] An additional factor applies if a government participant is present.  Hanlon, 150 F.3d at 1026.
While there is no government participant here, Class Counsel does point out that EPA and CARB
"reviewed the fuel economy calculations underpinning the Settlement's compensation formula for
Fuel Economy recovery." Preliminary Approval Mot. at 21.

United States District Court
Northern District of California

## VII.   NOTICE

The Court finds that the form, content, and methods of disseminating notice to the Class Members previously approved and directed by the Court have been implemented by the Parties, and: (1) comply with Rule 23(c)(2) of the Federal Rules of Civil Procedure as they are the best practicable notice under the circumstances and are reasonably calculated, under all the circumstances, to apprise the Class Members of the pendency of this Action, the terms of the Settlement, and their right to object to the Settlement; (2) comply with Rule 23(e) as they are reasonably calculated, under the circumstances, to apprise the Class Members of the pendency of the Action, the terms of the proposed settlement, and their rights under the proposed settlement, including, but not limited to, their right to object to, or opt out of, the proposed Settlement and other rights under the terms of the Settlement Agreement; (3) comply with Rule 23(h) as they are reasonably calculated, under the circumstances, to apprise the Class Members of any motion by Class Counsel for reasonable attorney's fees and costs, and their right to object to any such motion; (4) constitute due, adequate, and sufficient notice to all Class Members and other persons entitled to receive notice; and (5) meet all applicable requirements of law, including, but not limited to, 28 U.S.C. § 1715, Fed. R. Civ. P. 23(c), (e), and (h), and the Due Process Clause of the United States Constitution.

## VIII.   MOTION FOR ATTORNEYS' FEES AND EXPENSES

Plaintiffs move for attorneys' fees, litigation expenses, and service awards.  Final Approval Mot. at 23–34.  They seek the following: (1) attorneys' fees amounting to 30 percent of the $80 million gross Settlement Fund ($24 million); (2) $710,733.89 in litigation expenses, and (C) Service Awards of $250 each for 33 Class Representatives.  Id. The Court has carefully considered the filings in connection with this motion, as well as the record in this matter, and it grants the motion, modifying the fee award to apply Class Counsel's requested 30 percent fee to the net Settlement Fund (after subtracting litigation expenses and service awards), rather than the gross.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

A.      **Attorneys' Fees**

The Court may award reasonable attorneys' fees and costs at the conclusion of a class action. Fed. R. Civ. P. 23(h). The Court's role is to determine whether the attorneys' fees awarded are "fundamentally fair, adequate, and reasonable." <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 963 (9th Cir. 2003) (quoting Fed. R. Civ. P. 23(e)). It is customary to use the percentage-of-recovery method and cross-check the final number with a lodestar calculation. <u>See</u> <u>Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043, 1050–51 (9th Cir. 2002). The benchmark for attorneys' fees in the Ninth Circuit is twenty-five percent, with 20-30% as the typical range. <u>See</u> <u>Powers v. Eichen</u>, 229 F.3d 1249, 1256 (9th Cir. 2000); <u>Vizcaino</u>, 290 F.3d at 1047. However, in some cases, the twenty-five percent benchmark may be "inappropriate." <u>See</u> <u>Vizcaino</u>, 290 F.3d at 1048. Courts must not arbitrarily apply a percentage, but instead must show why that percentage and the award is appropriate based on the facts of the case. <u>Id.</u> Courts typically consider the following factors: (1) the results achieved for the class; (2) the risks of the litigation; (3) whether there are benefits to the class beyond the immediate generation of a cash fund; (4) whether the percentage rate is above or below the market rate; (5) the contingent nature of the representation and the opportunity cost of bringing the suit; (6) reactions from the class; and (7) a lodestar cross-check. <u>In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.</u>, 15-md-2672, 2017 WL 1047834, at *1 (N.D. Cal. Mar. 17, 2017) (citing <u>Vizcaino</u>, 290 F.3d at 1048–52) ("Volkswagen 2L Fee Order").

Although, applying the factors below, the Court finds that Class Counsel's request of 30 percent reasonable, the Court parts ways with Class Counsel in one respect: The Court does not calculate the 30 percent fee award based on the gross settlement fund of $80 million, but the net fund, after subtracting the litigation expenses and service awards.

It is not an abuse of discretion to calculate fees based on the gross fund. <u>See</u> <u>Powers</u>, 229 F.3d at 1258 ("[T]he choice of whether to base an attorneys' fee award on either net or gross recovery should not make a difference so long as the end result is reasonable."). But the Court is not required to use the gross and has a longstanding

17

1    preference for using the net. <u>See, e.g.</u>, <u>In re Google LLC St. View Elec. Commc'ns Litig.</u>,

2    10-md-2184, 2020 WL 1288377, at *7 (N.D. Cal. Mar. 18, 2020), <u>aff'd</u>, 21 F.4th 1102 (9th

3    Cir. 2021). Class Counsel's requested fee of thirty percent of the net settlement fund is

4    reasonable, as discussed below.

**1.    Results Achieved for the Class**

5

6          This is a strong settlement for class members.  Particularly for Fuel Economy Class

7    Members, who are likely to receive close to all of the damages they might expect to

8    receive at trial, it is an excellent result.  Final Approval Mot. at 24; <u>see also</u> <u>In re</u>

9    <u>Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.</u>, 895 F.3d 597 (9th

10   Cir. 2018) (describing another settlement in this MDL as "highly unusual" where the class

11   members received "as much as, perhaps more than, they could expect to receive in a

12   successful suit litigated to judgment").  And for Other Class Vehicle Class Members or

13   Sport+ Class Members—whose claims are likely weaker, and for whom the ability to

14   collect at trial is not guaranteed—it is a strong and immediate result when the alternative is

15   uncertain and delayed.[8]  And because the fund is non-reversionary, with excess funds

16   either re-distributed to class members or to environmental remediation efforts with Court

17   approval, it is thus possible that participating Class Members may collect even more than

18   the current estimates predict.  Settlement Agreement ¶ 4.4.  This factor thus supports the

19   requested fee.

**2.    The Risks of Litigation**

20

21          The litigation was indeed complex, involving a technical and intricate alleged

22   scheme involving multiple corporate defendants.  The investigation of the fraud was

23   likewise difficult and complicated, requiring rigorous vehicle testing, review of

24   contemporaneous documentation, and engagement of technical experts to uncover how

25

26   _____

27   [8] The Settlement also provides a non-monetary benefit to Sport+ Class Members, who are encouraged to bring their vehicles in for a software update. Settlement Agreement ¶ 4.3; <u>Volkswagen 2L Fee Order</u>, 2017 WL 1047834, at *3 (discussing non-monetary relief afforded class members, including a "fix[] to comply with emissions standards," as a factor supporting the request for attorneys' fees).

28

*United States District Court*
*Northern District of California*

hundreds of Porsche vehicles were affected by the fraud over the course of fifteen years of manufacturing.

And, as discussed above, the litigation remained risky until settlement.  The parties engaged in extensive Rule 12 motion practice that did not end in a decision; the prospect of a dismissal still looms.  And even if the case survived a motion to dismiss, the prospect of continuing on to trial held additional risks.  See supra Section VI.C.1.  This factor thus also supports the requested fee.

### 3.    Reasonableness of Percentage

Class Counsel's requested fee of 30 percent represents an upward departure from the Ninth Circuit benchmark of 25 percent.  Powers, 229 F.3d at 1256.  Nevertheless, courts in this Circuit often award fees at or exceeding 30 percent, and such awards are routinely upheld.  See Hernandez v. Dutton Ranch Corp., No. 19-cv-817, 2021 WL 5053476, at *6 (N.D. Cal. Sept. 10, 2021) (collecting cases).  However, the question is ultimately "not whether the district court should have applied some other percentage, but whether in arriving at its percentage it considered all the circumstances of the case and reached a reasonable percentage."  Vizcaino, 290 F.3d at 1048.  Class Counsel contends that a 30 percent fee is reasonable in this case because of the "unusually strong" recovery for Class Members and the "thorough, focused, and technical work that Counsel undertook to obtain it."  Final Approval Mot. at 27–28.

The Court agrees.  As discussed in prior sections, the Settlement provides at or near full recovery to Fuel Economy Class Members—the class members with the strongest claims—and significant recovery to Sport+ Class Members and Other Class Vehicle Class Members, for whom recovery at trial is not guaranteed.  Courts regularly award upwards of 30 percent fees to counsel achieving lesser results.  See, e.g., Andrews v. Plains All Am. Pipeline L.P., 15-cv-4113, 2022 WL 4453864, at *2 (C.D. Cal. Sept. 20, 2022) (awarding 32 percent fee to counsel who settled for between 25 percent and 65 percent of maximum possible compensatory damages); Carlin v. DairyAmerica, Inc., 380 F. Supp. 3d 998, 1019–20, 1022 (E.D. Cal. 2019) (awarding 33.3 percent fee to counsel who settled for 48

United States District Court
Northern District of California

percent of possible damages).  And as discussed in prior sections, this recovery is "in the face of complex and hotly disputed issues" of fact and law that required technical expertise.  Andrews, 2022 WL 4453864, at *2.  As a result, while the requested fee is a modest upward departure from the benchmark, it is reasonable under the circumstances.

### 4.      Opportunity Cost of the Suit

Class Counsel brought this claim on a purely contingent basis, agreeing to advance all necessary expenses, knowing that they would receive a fee only if there was a recovery.  It is an established practice to reward attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all.  See In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1299 (9th Cir. 1994).  Such a practice encourages the legal profession to assume such a risk and promotes competent representation for plaintiffs who could not otherwise hire an attorney.  Id.  Moreover, Class Counsel had to turn down opportunities to work on other cases to devote the appropriate amount of time, resources, and energy necessary to handle this complex case.  See Final Approval Mot. at 28; Stellings Decl. ¶¶ 23–35.  This factor supports the requested fee percentage.

### 5.      Reaction of the Class

As discussed above, see Section VI.E.2, the reaction of the class is overwhelmingly positive, which weighs in favor of settlement as well as Class Counsel's requested attorneys' fees.  Only one objector, Lochridge, raised a concern about the fee award, which has already been overruled.  See supra Section VI.C.3.

### 6.      Lodestar Cross-Check

A lodestar cross-check also supports the approval of the requested fee percentage.  Class Counsel spent a reasonable 27,888.80 hours litigating and settling this case until August 26, 2022, and reports that it will need approximately 1,500 additional hours to "finalize, protect, and implement the Settlement."  Stellings Decl. ¶¶ 23–25.  Using Class Counsel's historical, "then-present" billing rates (between $485–$1,325 for partners, $350–$690 for associates, $350–$450 for non-partner-track attorneys, and $220–$485 for

1    support staff) and accounting for those additional hours, the total lodestar comes out to

2    $12,921,292.35.[9] Id. ¶¶ 25–26, 29.  This yields a multiplier of 1.84.[10] That multiplier is

3    well within the acceptable range in the Circuit.  See Vizcaino, 290 F.3d at 1051 & n.6

4    (approving a 3.65 multiplier and citing appendix of cases showing that most approved

5    multipliers are between 1.0 and 4.0).  It is also below the multipliers approved in the other

6    settlements in this MDL.  Volkswagen 2L Fee Order, 15-md-2672, 2017 WL 1047834, at

7    *5 (N.D. Cal. Mar. 17, 2017) (approving multiplier of 2.63 in 2.0-liter settlement); In re

8    Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig., 15-md-2672, 2017

9    WL 3175924, at *4 (N.D. Cal. July 21, 2017) (approving multiplier of 2.02 in 3.0-liter

10   settlement); In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.,

11   15-md-2672, 2017 WL 2178787, at *3 (N.D. Cal. May 17, 2017) (approving multiplier of

12   2.32 in Bosch settlement); Audi $CO_2$ Final Approval Order at 5 (approving multiplier of

13   2.06 in Audi $CO_2$ settlement).

14         For the reasons discussed above, the Court concludes that the requested fee is

15   reasonable.

16         **B.    Litigation Costs**

17         Class Counsel are entitled to the reimbursement of reasonable litigation expenses.

18   See, e.g., Wakefield v. Wells Fargo & Co., 13-cv-5053, 2015 WL 3430240, at *6 (N.D.

19   Cal. May 28, 2015).  These are expenses that are reasonable, necessary, directly related to

20   the litigation, and normally charged to a fee-paying client.  See, e.g., Willner v. Manpower

21   Inc., 11-cv-02846, 2015 WL 3863625, at *7 (N.D. Cal. June 22, 2015).

22         Plaintiffs seek reimbursement of $710,733.89 in litigation expenses, representing

23

24   [9] In Lochridge's already-overruled objection to the percentage of attorneys' fees requested, see
25   supra Section VI.C.3, he also argues that Class Counsel's lodestar should be adjusted to exclude
     the hours spent working on claims of the Other Class Vehicle Class Members, as he argues that
26   those Class Members do not have standing. Lochridge Obj. at 13. Because the Court finds that
     those class members do have standing and are properly included in the class, see supra Section
27   Sections II, IV.A.4, this aspect of Lochridge's objection is also overruled.
     [10] This multiplier takes into account the Court's preference for using the net Settlement Fund to
28   calculate attorneys' fees, rather than the gross. As a result, it is slightly smaller than the multiplier
     calculated by Class Counsel. Stellings Decl. ¶ 25.

$560,733.89 in costs already incurred and $150,000 in projected costs to cover expenses "associated with the on-the-ground enforcement and assistance efforts this Settlement will require." Stellings Decl. ¶ 31. The most significant expense was the acquisition of four vehicles for testing ($337,950.67), though Class Counsel has subtracted a projected resale value of $200,000. Id. ¶¶ 32–33. Other significant expenses include expert fees ($169,227.47); travel expenses, including air travel ($92,405.87), hotels ($33,292.19), ground transportation ($10,353.56), and meals ($5,398.23); and technological and administrative expenses, including e-discovery fees ($65,907.98), investigation fees ($10,353.56) and legal research costs ($11,760.09). Id. ¶ 32.

Given the technical nature of this litigation—both the testing required and the experts employed to make sense of it—both the vehicle costs and the expert fees, while significant, are reasonable. Id. ¶ 33. Further, because the litigation necessitated travel to Germany for vehicle testing and discovery meetings, as well as settlement negotiations in New York, the travel expenses are likewise reasonable. Id. ¶ 36. Finally, the e-discovery and administrative expenses were also necessary, given the "millions of pages of documents" shared in discovery. Id. ¶ 35.

The Court finds that the expenses incurred in this litigation were reasonable, necessary to the effective representation of the class, and would normally be charged to a fee-paying client. The Court therefore grants Plaintiffs' motion for litigation expenses in the amount of $710,733.89.

## C.      Awards to Class Representatives

The Court finds that the requested service awards of $250 for each of the 33 Class Representatives are reasonable and appropriate. Settlement Agreement ¶ 16.2. Such awards are "intended to compensate class representatives for work done on behalf of the class [and] make up for financial or reputational risk undertaken in bringing the action." Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 958 (9th Cir. 2009). The Ninth Circuit has held that as high as $5,000 is a reasonable amount for an individual service award, particularly where, as here, the amount of the settlement fund reserved for service awards

United States District Court
Northern District of California

United States District Court
Northern District of California

represents a fraction of a percentage of the overall recovery.  In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 947 (9th Cir. 2015) (finding $5,000 reasonable for each of nine class representatives, where the incentive awards made up only 0.17% of the total settlement fund of $27 million).

The Court finds that the total amount of $8250 requested for service awards, as a mere 0.01% of the overall Settlement Fund, is reasonable, and grants the requested service awards.

## IX.     CONSUMMATION OF THE SETTLEMENT

Accordingly, the Court directs the Parties to consummate the Settlement according to its terms, as follows:

The terms of the Settlement Agreement and of this Order and Judgment shall be forever binding on Defendants, Plaintiffs, and Class Members (regardless of whether or not any individual Class Member submits a Claim Form), as well as their respective successors and assigns.

Only Class Members filing valid and timely Claim Forms shall be entitled to participate in the Settlement and receive a distribution from the Settlement Fund for Fuel Economy Class Vehicles and Other Class Vehicles.  Class Members with Sport+ Class Vehicles shall be entitled to participate in the Settlement and receive a distribution from the Settlement Fund upon timely completion of an Emissions Compliant Repair ("ECR") for their Class Vehicle and without filing a Claim Form.  All Class Members shall, as of the Effective Date (as defined in the Settlement Agreement ¶ 2.19), be bound by the releases set forth herein whether or not they submit a valid and timely Claim Form.

The Parties and Class Members are bound by the terms and conditions of the Settlement.  As of the Effective Date, Releasing Parties shall be deemed to have fully, finally, and forever released and discharged Released Parties from the Released Claims, as those terms are defined in the Settlement Agreement.  The full terms of the release described in this paragraph are set forth in Section 10 of the Agreement. The Court expressly adopts and incorporates by reference Section 10 of the Agreement.

Notwithstanding the paragraph above, nothing in this Judgment shall bar any action by any of the Parties to enforce or effectuate the terms of the Settlement Agreement or this Judgment.

The parties are to bear their own costs, except as awarded by this Court in this Order.

The benefits described above are the only consideration Defendants shall be obligated to give to the Class Members, with the exception of the service awards to be paid to the Class Representatives as directed by the Court.

The Court reserves the exclusive and continuing jurisdiction over the Action, the Class Representatives, the Class Members, and the Parties for the purposes of supervising the implementation, enforcement, construction, administration and consummation of the Settlement Agreement and this Judgment.

## X.   FINAL JUDGMENT AND DISMISSAL WITH PREJUDICE

Accordingly, the Court hereby orders, adjudges, finds, and decrees as follows:

The Court hereby CERTIFIES the Settlement Class and GRANTS the Motion for Final Approval of the Settlement. The Court fully and finally approves the Settlement in the form contemplated by the Settlement Agreement and finds its terms to be fair, reasonable, and adequate within the meaning of Federal Rule of Civil Procedure 23.

The Court DISMISSES the Action and all claims contained therein.

The Court CONFIRMS the appointment of Lead Counsel as Settlement Class Counsel.

The Court CONFIRMS the appointment of the Settlement Class Representatives listed as Plaintiffs in the Amended Consolidated Consumer Class Action Complaint.

The Court CONFIRMS the appointment of JND as Claims and Notice Administrator.

The Court GRANTS Class Counsel's request for attorneys' fees and costs as modified in this Order, and AWARDS Class Counsel $24,495,038.72 in attorneys' fees and costs, to be allocated by Lead Counsel among the PSC firms that performed common

24

benefit work in the Porsche Gasoline Cases pursuant to the terms of Pretrial Order No. 11.

The Court AWARDS the Settlement Class Representatives service awards of $250 each, to be paid in addition to the compensation they may receive as Settlement Class Members through the claims program.

Under Rule 54(b) of the Federal Rules of Civil Procedure, no just reason exists for delay in entering final judgment. The Court accordingly directs the Clerk to enter final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

Dated: November 9, 2022



CHARLES R. BREYER
United States District Judge