| | |
|---|---|
| 1 | Robert J. Giuffra, Jr. (*admitted pro hac vice*) |
| 2 | David M.J. Rein (*admitted pro hac vice*)<br>Matthew A. Schwartz (*admitted pro hac vice*) |
| 3 | Nicholas F. Menillo (*admitted pro hac vice*)<br>SULLIVAN & CROMWELL LLP |
| 4 | 125 Broad Street<br>New York, New York 10004 |
| 5 | Telephone: (212) 558-4000 |
| 6 | Facsimile: (212) 558-3588 |
| 7 | Michael H. Steinberg (State Bar No. 134179)<br>SULLIVAN & CROMWELL LLP |
| 8 | 1888 Century Park East<br>Los Angeles, California 90067 |
| 9 | Telephone: (310) 712-6600<br>Facsimile: (310) 712-8800 |
| 10 | |
| 11 | Judson O. Littleton (*admitted pro hac vice*)<br>SULLIVAN & CROMWELL LLP |
| 12 | 1700 New York Avenue, N.W. Suite 700<br>Washington, D.C. 20006 |
| 13 | Telephone: (202) 956-7500<br>Facsimile: (202) 956-7676 |
| 14 | |
| 15 | *Counsel for Defendants Volkswagen Group of America, Inc. and Audi of America, LLC* |
| 16 | |
| 17 | *[Additional Counsel Listed in Signature Block]* |

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 2672 CRB |
| | **DEFENDANTS' RESPONSE TO THE COUNTIES' SUPPLEMENTAL PROPOSED AMENDED COMPLAINTS** |
| This Document Relates to: | The Honorable Charles R. Breyer |
| *Environmental Protection Commission of Hillsborough County, Florida* v. *Volkswagen AG et al.*, No. 16-cv-2210 (N.D. Cal.) | |
| *Salt Lake County* v. *Volkswagen Group of America, Inc. et al.*, No. 16-cv-5649 (N.D. Cal.) | |

## PRELIMINARY STATEMENT

The time has come to proceed to summary judgment on the existing complaints. After Hillsborough and Salt Lake Counties promised to supplement their proposed amended complaints with additional facts showing both "that non-NOx emissions increased as a result of the [Updates]," and that this increase "caus[ed] a net increase in overall emissions," this Court granted the Counties permission to do so. (ECF No. 8106 at 1.) Yet instead of making plausible factual allegations supporting their speculative NOx/PM "trade-off" theory, the Counties have added to their latest (now, their third and fifth) proposed amended complaints a hodge-podge of generalized technical conjecture and irrelevant background facts, all of which have been public knowledge for years. The Counties' new allegations—made on "information and belief" and without any testing to back them up—remain woefully insufficient to state any claim. This Court should deny leave for the Counties to yet again amend their complaints, and should instead set a schedule for Volkswagen's reply brief on its pending summary judgment motion and a hearing on that motion, if necessary. Volkswagen is prepared to file its reply brief in 21 days.

## ARGUMENT

This Court's direction to the Counties was clear: they were required to allege "additional facts showing that non-NOx emissions increased as a result of the software update, causing a net increase in overall emissions." (*Id.* at 1.) Instead of doing so, the Counties' supplemental proposed amendments consist almost entirely of unrelated background information, much of which has been undisputed since the inception of this litigation.[1] These superfluous allegations—a transparent attempt to reiterate the Counties' summary judgment arguments—have

---

[1] Salt Lake adds allegations recounting the history of non-defendant Volkswagen AG's development of the original defeat devices (Salt Lake P4AC ¶¶ 12–26), the development of, and alleged motivations behind, the Updates (*id.* ¶¶ 27–47, 55–59), and CARB's testing on NOx emissions (*id.* ¶¶ 81–100). Salt Lake also inserts a brief section on discovery to try explain away its six-year failure to conduct any pre-suit testing or to otherwise develop its theory in this case beyond mere speculation. (*Id.* ¶¶ 103–106.)

Hillsborough's other supplemental amendments are likewise entirely unrelated to the Court's specific direction. They include additional allegations concerning the motivation behind the Updates (Hillsborough P2AC ¶¶ 6, 93–94), CARB's testing of NOx emissions (*id.* ¶¶ 99–105), discovery (*id.* ¶ 151), and Hillsborough's tampering provision (*id.* ¶¶ 161–62, 165–66).

nothing to do with the Court's direction to plead plausible facts that support their speculative theory that the Updates "caus[ed] a net increase in overall emissions." (*Id.*)

The sole amendments in Salt Lake's complaint that do attempt to address the Court's direction are the following six paragraphs, the most important of which are *still* carefully qualified ("on information and belief" and "likely") six years after Salt Lake sued VW based on the Updates:

- "attempt[s] to lower NOx emissions . . . would cause the vehicles to emit higher quantities of particulate matter (PM)" (SLC P4AC ¶ 49);
- based on the Volkswagen AG plea agreement, the vehicles' Diesel Particulate Filters ("DPFs") were failing pre-Update, yet the changes intended to address those failures caused the DPFs to fail even more frequently (*id.* ¶ 50);
- increased DPF regenerations can increase emissions of CO2 and "other gaseous pollutants" (*id.* ¶ 53);
- increased DPF regenerations can increase PM emissions (*id.* ¶ 54);
- "While some of the post-sale changes to the vehicles' software may have attempted to reduce NOx emissions, on information and belief they increased emissions of PM, soot, and other pollutants" (*id.* ¶ 66); and
- "based on engineering principles, the post-sale updates likely resulted in an increase in harmful emissions" (*id.* ¶ 102).

Hillsborough repeats these same speculative allegations almost verbatim, so the analysis is the same for both Counties. (*See* Hillsborough P2AC ¶¶ 95–97.)

*First*, these speculative and conclusory allegations cannot cure the futility of their claims. Instead, the Counties' "information and belief" allegations do little more than string together a series of general "engineering principles" to distract from their failure to plead any plausible *facts* suggesting that the Updates increased tailpipe PM emissions. Indeed, these "engineering principles" were known to the Counties years ago.

*Second*, the new allegations do not reflect any testing by the Counties of the Affected Vehicles to try to show increased "overall emissions," PM, or any other emission. The Counties' failure to conduct testing is particularly surprising since pre-suit testing—and pleading

-2-

the results of that testing—is a common practice in emissions litigation. *See Counts* v. *Gen. Motors*, 237 F. Supp. 3d 572, 579-80 (E.D. Mich. 2017) (complaint included allegations of PEMS testing by plaintiffs, along with third-party testing by regulators and NGOs); *In re Duramax Diesel Litig.*, 298 F. Supp. 3d 1037, 1046 n.4 (E.D. Mich. 2018) (complaint "summarize[d], in detail, the testing they conducted"); *Bledsoe* v. *FCA US LLC*, 378 F. Supp. 3d 626, 633 (E.D. Mich. 2019) (after dismissal of prior complaint without prejudice, amended complaint presented allegations of "extensive PEMS testing, [] chassis dynamometer testing, plus data logging").

*Third*, even if the Counties' rank speculation and appeal to general "engineering principles" could be considered well-pleaded facts, they still do not even plead that there was an actual "net increase in overall emissions." Indeed, the Counties have not identified precisely what the post-Update level of emissions allegedly were, or what their theory of a net increase would even *mean*. Would it be an increase in the total weight of tailpipe emissions, and, if so, would it be limited to emissions regulated by the EPA or CARB? For example, Salt Lake's proposed amended complaint references not just pollutants regulated by EPA or CARB, but also sulfur oxides, ash, unspecified hydrocarbons (beyond EPA-regulated HCHO), ammonia, hydrogen sulfide, and volatile organic compounds. (Salt Lake 4PAC ¶ 68; *see also* Salt Lake Opp. to Defs. Mot. Summ. J. (ECF No. 8041) at 6 (referencing "noise emissions").) Or would it be an increase in the number of molecules of those emissions released from the tailpipe? Or the putative harm caused by those emissions? The Counties have not even tried to quantify any alleged increase in PM emissions, or to compare that to the significant NOx reductions caused by the Updates, presumably because they know there is no plausible way to allege a net emissions increase on that basis.

*Fourth*, even putting aside the Counties' failure to set forth a coherent theory of what constitutes a "net increase in overall emissions," the record evidence, including the testing data of the Approved Emissions Modification ("AEM") that was provided to the Counties in discovery, directly refutes the Counties' speculation. The AEM reduced NOx *even more* than the Updates; thus, if the Counties' "engineering principles" held true, the AEM should have caused an even *greater* increase in non-NOx emissions than the Updates. But that is not what happened.

In fact, the AEM had little to no impact on—and in some cases, *reduced*—PM emissions. (*See* Defs.' Reply ISO Mot. to Exclude (ECF No. 8066) at 7.) This evidence both refutes the plausibility of the Counties' conclusory tradeoff theory, and makes clear that the Counties' claims cannot survive summary judgment.[2] Tellingly, neither the Counties' supplemental briefs nor their revised proposed amended complaints address this AEM testing at all.

Moreover, the record also shows that the PM emissions from the Affected Vehicles were always far below EPA limits, both in dynamometer and on-road testing of the original software, and in testing of the AEM. (*Id.* at 6-7.) Indeed, Salt Lake's own expert admits that the PM emissions from the Affected Vehicles varied between "20% of the" EPA limit of 0.01 g/mi and "up to 50 times lower"—a maximum of 0.002 g/mi. (Will Rep. (ECF No. 8041-3) at 15.) Thus, even if the Updates somehow increased PM emissions all the way up to the legal limit— which is something no regulator has ever asserted, and which is effectively impossible given the results of the AEM testing—that would increase PM emissions by less than .01 g/mi. By contrast, Exponent's emissions testing showed NOx reductions of up to 2.62 g/mi on certain routes, with most test routes showing a decrease of at least 0.2 g/mi. (*See* Harrington Rep. (ECF No. 8010-5) at 60-62.) The record thus clearly shows that the Updates reduced NOx emissions by an amount that was orders of magnitude greater than any conceivable increase in tailpipe PM emissions. (ECF No. 8066 at 7.)

In the end, the Counties' supplemental proposed amendments ultimately turn on the same old conclusory allegation that "the tradeoff between PM and NOx . . . would cause the vehicles to emit higher quantities of PM" (Hillsborough P2AC ¶ 95; *see also* Salt Lake P4AC ¶ 49), corroborated by no testing, no attempt to define what an increase in overall emissions means

---

[2] The Counties' claim that an amendment is not futile if it could survive a motion to dismiss—which the Counties' amendments cannot—is incorrect because "futility includes the inevitability of a claim's defeat on summary judgment." *Cal. ex rel. Cal. Dep't of Toxic Substances Control* v. *Neville Chem. Co.*, 358 F.3d 661, 673 (9th Cir. 2004) (internal quotations omitted); *see also Hastings* v. *Ford Motor Co.*, 2022 WL 848330, at *5 (S.D. Cal. Mar. 22, 2022) ("An amendment is futile if, as amended, the plaintiff's claims cannot survive summary judgment."); *Gabrielson* v. *Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir. 1986) ("The district court's conclusion that adding a cause of action . . . would be futile was correct because any such cause of action could be disposed of by summary judgment.").

or how much each emission moved as a result of the Updates, no explanation of how emissions *actually increased* beyond "engineering principles," and no attempt—despite the Court's clear request—to plausibly allege a "net increase" in emissions given the Updates' significant NOx reductions. The Counties' insufficient "supplemental" allegations merely further illustrate the futility of their proposed amended claims. And those new allegations do nothing to avoid that, as previously explained, the Counties' amendments: (i) would cause significant prejudice to VWGoA, (ii) were unduly delayed, and (iii) are a transparent attempt to avoid summary judgment. (ECF No. 8089 at 11-14, 17-18.)

## CONCLUSION

This Court should deny the Counties' motions for leave to amend their complaints.

Dated: January 31, 2023

Respectfully submitted,

By: */s/ Robert J. Giuffra, Jr.*
    Robert J. Giuffra, Jr. (*admitted pro hac vice*)
    David M.J. Rein (*admitted pro hac vice*)
    Matthew A. Schwartz (*admitted pro hac vice*)
    Nicholas F. Menillo (*admitted pro hac vice*)
    SULLIVAN & CROMWELL LLP
    125 Broad Street
    New York, New York 10004
    Telephone: (212) 558-4000
    Facsimile: (212) 558-3588

    Michael H. Steinberg (State Bar No. 134179)
    SULLIVAN & CROMWELL LLP
    1888 Century Park East
    Los Angeles, California 90067
    Telephone: (310) 712-6600
    Facsimile: (310) 712-8800

    Judson O. Littleton (*admitted pro hac vice*)
    SULLIVAN & CROMWELL LLP
    1700 New York Avenue, N.W. Suite 700
    Washington, D.C. 20006
    Telephone: (202) 956-7500
    Facsimile: (202) 956-7676

    *Counsel for Defendants Volkswagen Group of America, Inc. and Audi of America, LLC*

|   |   |
|---|---|
| 1 | By: */s/ Cari K. Dawson* |
| 2 | Cari K. Dawson (*admitted pro hac vice*)<br>Kara F. Kennedy (*admitted pro hac vice*)<br>ALSTON & BIRD LLP |
| 3 | One Atlantic Center<br>1201 West Peachtree St. |
| 4 | Atlanta, Georgia 30309<br>Telephone: 404-881-7000 |
| 5 | Facsimile: 404-881-7777 |
| 6 | *Counsel for Defendant Porsche Cars North America, Inc.* |

-6-

**ATTESTATION (CIVIL LOCAL RULE 5-1(h)(3))**

In accordance with Civil Local Rule 5-1(h)(3), I attest that concurrence in the filing of this document has been obtained from the signatories.

Dated:  January 31, 2023           SULLIVAN & CROMWELL LLP


            /s/ Nicholas F. Menillo
            Nicholas F. Menillo