IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No.  15-md-02672-CRB |
| | **ORDER DENYING MOTIONS FOR LEAVE TO AMEND COMPLAINTS** |
| This Document Relates to: | |
| Environmental Protection Commission of Hillsborough County v. Volkswagen AG et al., No. 16-cv-2210 | |
| Salt Lake County v. Volkswagen Group of America, Inc., et al., No. 16-cv-5649 | |

In the above-captioned MDL, the Environmental Protection Commission of Hillsborough County, Florida and Salt Lake County, Utah (collectively, the "Counties") contend that Defendants' post-sale software update violated the anti-tampering regulations of Hillsborough County and Utah, respectively.  See Rules of Env't Prot. Comm'n of Hillsborough Cnty. (EPC), Rule 1-8.05(1), (6); Utah Admin. Code § R307-201-4.

In September, after the parties began briefing Defendants' motion for partial summary judgment, in lieu of a reply, Defendants filed a "motion to exclude arguments regarding emissions other than $NO_x$."  Mot. to Exclude (dkt. 8044).  Defendants sought "an order that the Counties may not transform this nearly seven-year-old action, which has always been about $NO_x$ emissions, into a fishing expedition about other emissions, and (ii) an extension of all current deadlines associated with Defendants' pending motion for partial summary judgment . . . until the Court has decided this issue."  Id. at 1.

In October, the Court resolved Defendants' "motion to exclude," finding that the

Counties did not plead (in their first and third amended complaints, respectively) that Volkswagen was responsible for any excess emissions other than $NO_x$, precluding their arguments regarding other emissions in opposition to Defendants' motion for summary judgment.  Order on Mot. to Exclude (dkt. 8071) at 2.  However, considering that Ninth Circuit caselaw requires courts to treat arguments like those in the Counties' oppositions as motions for leave to amend their complaints, the Court allowed the Counties to move to amend.  Id.  The Counties did so, and those motions were fully briefed prior to the January 13 hearing on the motion.  See Mot. for Leave to File Fourth Am. Compl. by Salt Lake County (dkt. 8080) ("SLC Mot."); Mot. for Leave to File Second Am. Compl. by Environmental Protection Commission of Hillsborough County (dkt. 8081) ("EPC Mot."); Opp'n (dkt. 8089); Reply re: Mot. for Leave to File Fourth Am. Compl. (dkt. 8091) (SLC Reply"); Reply re: Mot. for Leave to File Second Am. Compl. (dkt. 8092) ("EPC Reply").

After the hearing, the Court allowed the Counties to supplement their complaints with "additional facts showing that non-$NO_x$ emissions increased as a result of the software update, causing a net increase in overall emissions," and instructed the parties to file supplemental briefing on the issue of futility.  See dkt. 8106.  The parties have done so. See Salt Lake County Supplemental Brief (dkt. 8109) ("SLC Supp. Brief"); Hillsborough County Supplemental Brief (dkt. 8112) ("EPC Supp. Brief"); Defendants' Supplemental Opp'n (dkt. 8117); Salt Lake County Supplemental Reply (dkt. 8119) ("SLC Supp. Reply"); Hillsborough County Supplemental Reply (dkt. 8118).

Because amendment would cause undue prejudice to Defendants and the Counties' amendments (including their supplemental amendments) are futile, the Counties' motions are DENIED.  The Counties may file amended oppositions to Defendants' motion for partial summary judgment by **March 10, 2023**.  Defendants may file their reply by **March 17, 2023**.  The hearing on the motion will be held on **April 21, 2023**.

## I.   LEGAL STANDARD

A court should "freely give leave" to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Ninth Circuit has instructed that the policy favoring amendment

2

"should be applied with 'extreme liberality.'" <u>United States v. Webb</u>, 655 F.2d 977, 979 (9th Cir. 1981) (quoting <u>Rosenberg Brothers & Co. v. Arnold</u>, 283 F.2d 406, 406 (9th Cir. 1960) (per curiam)).  However, leave to amend "is not to be granted automatically." <u>In re W. States Wholesale Nat. Gas Antitrust Litig.</u>, 715 F.3d 716, 738 (9th Cir. 2013) (quoting <u>Jackson v. Bank of Haw.</u>, 902 F.2d 1385, 1387 (9th Cir. 1990)).  A court considers five factors to assess whether to grant leave to amend: "[1] undue delay, [2] bad faith or dilatory motive on the part of the movant, [3] repeated failure to cure deficiencies by amendment previously allowed, [4] undue prejudice to the opposing party by virtue of allowance of the amendment, [and] [5] futility of amendment." <u>Leadsinger, Inc. v. BMG Music Publ'g</u>, 512 F.3d 522, 532 (9th Cir. 2008) (quoting <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)).

## II.   DISCUSSION

The Court addresses the leave to amend factors in the following order: (1) prejudice; (2) undue delay; (3) bad faith; and (4) futility.[1]

### A.   Prejudice

"The crucial factor in determining whether leave to amend should be granted is the resulting prejudice to the opposing party." <u>Jordan v. Los Angeles County</u>, 669 F.2d 1311, 1324 (9th Cir.), <u>judgment vacated sub nom.</u> <u>County of Los Angeles v. Jordan</u>, 459 U.S. 810 (1982).  "The party opposing amendment bears the burden of showing prejudice. <u>DCD Programs, Ltd. v. Leighton</u>, 833 F.2d 183, 187 (9th Cir. 1987).  Plaintiffs argue, citing <u>Stearns v. Select Comfort Retail Corp.</u>, 763 F. Supp. 2d 1128 (N.D. Cal. 2010), that Defendants' "showing of prejudice <u>must be substantial</u>," and that "the prospect of additional discovery needed by the non-moving party in itself [does not] constitute[] a sufficient showing of prejudice."  SLC Mot. at 8 (quoting <u>Stearns</u>, 763 F. Supp. 2d at 1158 (emphasis added)); EPC Mot. at 8 (same).

---

[1] While both Counties have previously amended their complaints, this factor carries little to no weight in the Court's analysis.

Whether or not a showing of "substantial" prejudice is necessary,[2] the Counties are incorrect that "the prospect of additional discovery" cannot "constitute[] a sufficient showing of prejudice." Stearns, 763 F. Supp. 2d at 1158. The Ninth Circuit has often pointed to the prospect of significant additional discovery in the face of new theories advanced in a proposed amended complaint as a showing of undue prejudice. See AmerisourceBergen Corp. v. Dialysist W., Inc., 465 F.3d 946, 953 (9th Cir. 2006) (finding prejudice where allowing the plaintiff to "advance different legal theories and require proof of different facts" would have "unfairly imposed potentially high, additional litigation costs"); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1161 (9th Cir. 1989) ("To put Mobil 'through the time and expense of continued litigation on a new theory, with the possibility of additional discovery,' would cause undue prejudice."); Jordan, 669 F.2d at 1324 (finding no abuse of discretion in denying a motion for leave to amend where the defendant "would have been required to conduct extensive, costly discovery in order to respond to the amended complaint"); Jackson, 902 F.2d at 1388 ("Putting the defendants through the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would be manifestly unfair and unduly prejudicial." (internal quotation marks and citation omitted)).

The discovery anticipated by the Counties' amended complaints is undoubtedly significant, requiring additional testing of other emissions after Defendants conducted a test program to measure $NO_x$ emissions. Opp'n at 11–12. The Counties argue that the decision to conduct testing only on $NO_x$ emissions was Defendants' conscious choice, because the Counties' "complaint[s] [were] not limited to $NO_x$." SLC Reply at 10; see also EPC Reply at 4–5 ("[T]he testing equipment utilized by Defendants' expert was capable of measuring other emissions besides $NO_x$, so Defendants could have captured and

---

[2] Stearns cites Genentech, Inc. v. Abbott Laboratories, 127 F.R.D. 529, 530–31 (N.D. Cal. 2010) for the proposition that "a showing of prejudice must be substantial" to overcome Rule 15's "liberal policy with respect to the amendment of pleadings." Stearns, 763 F. Supp. 2d at 1158. But Genentech describes the showing required as that of "undue" prejudice, phrasing that is consistently used by the Ninth Circuit. See Genentech, 127 F.R.D. at 531; see also, e.g., Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989); Leadsinger, 512 F.3d at 532.

analyzed these results if they actually wanted to obtain complete and correct results regarding the software updates' net effect on emissions."). But as the Court previously held, the Counties' complaints did not alert Defendants to alleged increases in any other emissions but $NO_x$. Order on Motion to Exclude at 3–4. Defendants were not required to conduct discovery to rebut allegations that the Counties had not given them notice of in their operative complaints.[3]

The Counties' reliance on Giuliano v. SanDisk Corp., 10-cv-2787, 2014 WL 4685012 (N.D. Cal. Sept. 19, 2014) and Stearns is unpersuasive. In Giuliano, the plaintiffs had moved to amend prior to the deadline for the close of fact discovery, and SanDisk did not "identif[y] any specific additional discovery that it will seek if Plaintiffs' motion is granted, let alone show[] that any additional discovery is required could not be completed before the discovery deadline." Giuliano, 2014 WL 4685012, at *5. While, as the Counties emphasize, the time for discovery on this issue was indeed short, it has passed. And unlike the defendants in Giuliano, Defendants have shown that alleging that emissions of "other pollutants" increased as a result of the software updates would require significant additional discovery and would "alter[] the nature of this litigation," which had previously been limited to allegations of increased $NO_x$ emissions. Stearns is even more inapposite, because the plaintiffs filed their motion for leave to amend in that case prior to resolution of defendants' motion to dismiss. Stearns, 763 F. Supp. 2d at 1134. The prospect of additional discovery is, of course, less prejudicial when the parties are still in the motion to dismiss stage.

Thus, Defendants have met their burden to show that they would be prejudiced if the Court were to grant the Counties leave to amend.

---

[3] EPC also argues that because "Defendants' experts designed and conducted their testing for other litigation and not based on the Counties' allegations," Defendants' arguments regarding the scope of previously conducted discovery ring hollow. EPC Reply at 4. But it comes to the same thing: If the Counties' complaints had given Defendants notice of allegations of increases of other emissions, Defendants would have altered their reports and reconducted the tests necessary to provide evidence to rebut those allegations on summary judgment. But because Defendants did not have such notice, see Order on Motion to Exclude at 3–4, the fact that they did not alter their reports and reconduct their tests signifies nothing.

United States District Court
Northern District of California

### B.    Undue Delay

A party has unduly delayed in bringing a motion for leave to amend when it does so long after it should have become aware of the information that underlies that motion.  See Jackson, 902 F.2d at 1388.  While undue delay is itself "insufficient to justify denying a motion to amend," Bowles v. Reade, 198 F.3d 752, 757–58 (9th Cir. 1999), "late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action."  Acri v. Int'l Ass'n of Machinists & Aerospace Workers, 781 F.2d 1393, 1398 (9th Cir. 1986).

The parties have very different understandings of when the Counties knew or should have known that Defendants would seek to argue that the software updates decreased $NO_x$ emissions—thus causing them to assert their current theory that non-$NO_x$ emissions rose as a result.  The Counties contend that they, like the plaintiffs in Desertrain v. City of Los Angeles, "only fully understood [the issue] late in the discovery period."  SLC Mot. at 8 (quoting Desertrain, 754 F.3d at 1154).  This is because they only received Defendants' expert report—detailing their post–software update testing of $NO_x$ emissions—in July 2022, and "[o]nly after receiving the Harrington report and discussing it with an expert did Salt Lake County begin to appreciate the trade-off that occurs between $NO_x$ and other emissions."  Id.; see also EPC Mot. at 7–8 (same).

Defendants, however, argue that the Counties "knew both of the core factual predicates underlying the theory they now claim supports their latest amendment" when they last amended their complaints in November 2017, long before the disclosure of the Harrington report in July 2022.  Opp'n at 5.  Defendants rely on five documents to make this claim: (1) the September 18, 2015 EPA and CARB notices of violation, see Opp'n Ex. F–G; (2) the plea agreement of a former Volkswagen employee entered in September 2016, see Rule 11 Plea Agreement at 7, United States v. Liang, No. 16-cr-20394, dkt. 19 (E.D. Mich. Sept. 9, 2016); (3) EPA's amended complaint, filed in the MDL in October 2016, which stated that the software updates "showed limited reduction in the rates of

emission of $NO_x$," dkt. 2009-3 ¶ 141; (4) the Court's order granting the motion to dismiss in Wyoming v. Volkswagen Grp. of Am., dkt. 3747 at 23 n.8, which mentions that Volkswagen's "updates as part of the recall brought emissions down relative to the original software"; and (5) the October 2017 testimony of Volkswagen's corporate representative, who testified that the CARB and EPA testing showed that "there were environmental benefits to the recall campaign and that $NO_x$ was indeed reduced," Opp'n Ex. B 269:7–11, and explained the "tradeoff" between $NO_x$ and PM emissions that the Counties argue that they first "beg[a]n to appreciate" when they received the Hutchinson report. Opp'n Ex. B at 182–83; SLC Mot. at 8.

While it is indisputable that the Counties knew or should have known about the mechanics of the "tradeoff" theory they now raise,[4] these documents do not conclusively show that the Counties knew or should have known that $NO_x$ emissions actually went down because of the updates, which would trigger the opportunity to allege that such a "tradeoff" occurred and that other emissions rose as a result.  The EPA and CARB notices of violation are circumspect about any emissions benefit as a result of the updates, and certainly did not conclusively "f[ind] that the Updates reduced on-road $NO_x$ emissions." Opp'n at 5; id. Ex. F at 4 (testing showed "only a limited benefit" to the updates); id. Ex. G at 2 ("Over-the-road PEMS testing showed that the recall calibration did reduce the emissions to some degree . . . .").  The Counties need not have known the intricacies of the Liang plea in Michigan, but even if they did, the statement that "the update lowered the $NO_x$ emissions in certain VW diesel vehicles on the road," Plea Agreement at 7, "does not mean that the updates lowered $NO_x$ emissions generally or even in a majority of vehicles." SLC Reply at 8.  Other documents Defendants point to are more persuasive:  Though the Wyoming order and the EPA complaint are not conclusive evidence of emissions reductions, they should have indicated to the Counties that those entities at least alleged

---

[4] EPC Am. Compl. (dkt. 4457) ¶ 26 ("Diesel engines must operate according to this trade-off between $NO_x$ and PM, and always exist in a state of balance between 'rich' and 'lean' conditions."); Opp'n Ex. B at 182–83.

United States District Court
Northern District of California

1    those reductions in good faith and on a sound factual basis.  See Wyoming Compl., dkt. 1 ¶

2    152, 16-cv-6646 (N.D. Cal. filed Nov. 1, 2016); United States Am. Compl., dkt. 2009-3 ¶

3    141, 15-md-2672 (N.D. Cal. filed Oct. 7, 2016; see also Wyoming v. Volkswagen Grp. Of

4    Am., 15-md-2672, dkt. 3747 at 23 n.8 (N.D. Cal. Aug. 31, 2017) ("But as Volkswagen

5    notes, its updates as part of the recall brought emissions down relative to the original

6    software.").  And finally, though the upshot of the Johnson deposition on this point is in

7    dispute,[5] it at least stands for the proposition that Johnson (and Volkswagen) understood

8    that the update had reduced $NO_x$ emissions relative to prior elevated measurements and

9    understood that CARB and the EPA had verified that result.  See Opp'n Ex. B at 268–

10   270.[6]

11       Overall, the Counties would certainly have had reason to suspect in 2017 that

12   Defendants would argue that the updates lowered $NO_x$ emissions and would marshal

13   discovery to that effect.  But Defendants do not demonstrate that the Counties "knew or

14   should have known" in 2017, without any doubt, that the updates lowered $NO_x$ emissions.

15   See Jackson, 902 F.2d at 1388.  It is at least possible that the Counties are actually seeking

16   to amend their complaint to assert this theory "in light of what they learned through

17

18   [5] The Counties contend that Johnson's testimony "confirmed that the new defeat devices were
     intended to help the Defendants cheat better, not to improve emissions, and that they in fact did
19   not lower emissions."  SLC Reply at 8.  For support, the Counties point to parts of the deposition
     transcript where Johnson was asked about particular software changes that were part of the update
20   but were not directed at reducing $NO_x$ emissions.  See dkt. 7947-4 at 119:12–18 ("And the effect
     of these two different changes to the software would be to enhance the ability of the car to have
21   the higher $NO_x$ emissions while it was on the road? . . . [A:] I would say that's correct.").  But
     Defendants argue—and Johnson affirmed in his testimony—that the updates as a whole lowered
22   $NO_x$ emissions, not particular software changes within the update.  The Counties further argue that
     Johnson's testified that the updates "did not lower emissions," pointing to a comparison Johnson
23   made between the post-update measurements and the cars' performance in "test mode."  See id. at
     274:2–6 ("Q. And after all of that software was added, the car still did not perform as well on the
24   road as they did in test mode as far as emissions; did they? A. That's correct.").  But Defendants
     argue not that $NO_x$ emissions were lowered as compared to the measurements in "test mode," but
25   as compared to the elevated $NO_x$ measurements while the cars were on the road prior to the
     implementation of the updates.
26   [6] The Counties further argue that Johnson's testimony "overstates the EPA and CARB findings."
     SLC Reply at 8.  But Johnson does not appear only to be referring to the September 18, 2015 EPA
27   and CARB notices of violation, but also the underlying testing and discussions between
     Volkswagen, EPA, and CARB that took place over a longer time span.  See Opp'n Ex. B at
28   269:12–16 ("Q: And the discussions that you're referencing there with EPA and CARB, did those
     happen before or after the September 18, 2015 NOV? A: It happened both before and after.").

                                                    8

discovery." <u>Giuliano</u>, 2014 WL 4685012, at *5.  As a result, Defendants have not demonstrated that the Counties have unduly delayed in bringing this motion to amend.

### C.    Bad Faith

Where a party seeks to amend their complaint to allege theories on which discovery has not been undertaken to avoid an adverse summary judgment ruling, a court may find bad faith.  <u>See Lockheed Martin Corp. v. Network Sols., Inc.</u>, 194 F.3d 980, 986 (9th Cir. 1999); <u>Juarez v. Delgado</u>, 13-cv-275, 2015 WL 13917169, at *1 (C.D. Cal. June 26, 2015) (same); <u>see also Schlacter-Jones v. Gen. Tel. of Cal.</u>, 936 F.2d 435, 443 (9th Cir. 1991) ("A motion for leave to amend is not a vehicle to circumvent summary judgment."), <u>abrogated on other grounds by Cramer v. Consol. Freightways, Inc.</u>, 255 F.3d 683 (9th Cir. 2001).  However, in this case, the Court invited the Counties to move for leave to amend in light of <u>Desertrain v. City of Los Angeles</u>, which instructs that new claims or theories raised in an opposition to a motion for summary judgment be construed as a request to amend the complaint.  Order on Mot. to Exclude; <u>see also Desertrain</u>, 754 F.3d at 1154.  It would be fairly draconian to accuse the Counties of engaging in bad faith litigation tactics for doing what the Court has invited them to do.

Nonetheless, crediting the Counties' contention that they did not receive conclusive evidence of reductions in $NO_x$ emissions until they received the Harrington report in July 2022, their theory of excess non-$NO_x$ emissions relies on a "tradeoff" known to them since at least 2017.  <u>See</u> EPC Am. Compl. (dkt. 4457) ¶ 26; Opp'n Ex. B at 182–83.  And the Counties do not explain exactly what in the Harrington report allowed them to "begin to appreciate the trade-off that occurs between $NO_x$ and other emissions," other than the obvious: that their initial theory of post-update increase in $NO_x$ emissions faced a much more difficult path through summary judgment.  SLC Mot. at 8; <u>see also Jackson</u>, 902 F.2d at 1388 ("Although appellants argue that the evidence of the Bank's representations, promises, and nondisclosures were not 'fully flushed out' until September or October of 1987, they cite no facts or theories gleaned from the additional discovery period to support this contention.").  The likeliest conclusion is that the Counties asserted this new theory "to

9

United States District Court
Northern District of California

1  avoid the possibility of an adverse summary judgment ruling" on this issue.  Acri, 781 F.2d

2  at 1398–99.  Particularly in light of Desertrain and the Court's prior order, these litigation

3  tactics certainly do not rise to the level of bad faith; but they at least suggest that asserting

4  a "tradeoff" theory at this stage of the litigation, and not earlier, represents a "tactical

5  choice."  Id.

6      **D.    Futility**

7      Courts apply the same standard to determine whether amendment would be futile as

8  on a Rule 12(b)(6) motion.  See Miller v. Rykoff–Sexton, Inc., 845 F.2d 209, 214 (9th Cir.

9  1988).  Thus, the Counties must proffer "enough facts to state a claim to relief that is

10  plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), by

11  "plead[ing] factual content that allows the court to draw the reasonable inference that the

12  defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678

13  (2009).[7]  However, the Court is mindful that "such issues are often more appropriately

14  raised in a motion to dismiss rather than in an opposition to a motion for leave to amend."

15  Stearns, 763 F. Supp. 2d at 1154 (quoting SAES Getters S.p.A. v. Aeronex, Inc., 219 F.

16  Supp. 2d 1081, 1086 (S.D. Cal. 2002)).

17      At the January 13 hearing on this motion, the Court expressed concern that the

18  Counties' proposed amendments would be futile, and the Counties informed the Court that

19  they could supplement their proposed amended complaints with additional facts.  The

20  Court allowed the Counties to do so, instructing them to plead "additional facts showing

21  that non-$NO_x$ emissions increased as a result of the software update, causing a net increase

22  in overall emissions."  See dkt. 8106.  The Counties plead the following pertinent facts:

23      (1) Running the vehicle for too long in "clean" mode (thus lowering the vehicle's

24  $NO_x$ emissions, as Defendants argue that the software updates did) would put strain on the

25  vehicle's other parts, including the diesel particulate filter (DPF), responsible for filtering

26

27  [7] The parties disagree as to whether "futility includes the inevitability of a claim's defeat on
   summary judgment."  Johnson v. Am. Airlines, Inc., 834 F.2d 721, 724 (9th Cir. 1987).  Because
28  the Court finds that the Counties' proposed amendments would be futile by applying a 12(b)(6)
   standard, it need not address this issue.

1    out excess particulate matter (PM), see SLC Proposed Fourth Am. Compl. (dkt. 8109-1) ¶
2    27; EPC Proposed Second Am. Compl. (dkt. 8112-1) ¶ 95.

3          (2) To the extent the software updates in part lowered $NO_x$ emissions, those updates
4    would overload the DPF, causing it to fail at higher rates and emit higher quantities of PM
5    into the atmosphere, see SLC Proposed Fourth Am. Compl. (dkt. 8109-1) ¶¶ 27, 49–50,
6    66; EPC Proposed Second Am. Compl. ¶ 95.

7          (3) Even when performing optimally, increased "regeneration" events, which occur
8    when particulates accumulate in the DPF, increase fuel consumption, which could result in
9    increased $CO_2$ emissions and other gaseous pollutants, see SLC Proposed Fourth Am.
10   Compl. ¶¶ 51–53; EPC Proposed Second Am. Compl. ¶¶ 96–97.

11         (4) PM is more harmful than $NO_x$ to human health, see SLC Proposed Fourth Am.
12   Compl. ¶ 67; EPC Proposed Second Am. Compl. ¶ 26.

13         (5) The post-sale updates' effects on non-$NO_x$ emissions have not yet been
14   comprehensively tested, see SLC Proposed Fourth Am. Compl. ¶ 101; EPC Proposed
15   Second Am. Compl. ¶ 106.

16         (6) In sum, "based on engineering principles, the post-sale updates likely resulted in
17   an increase in harmful emissions." See SLC Proposed Fourth Am. Compl. ¶ 102; EPC
18   Proposed Second Am. Compl. ¶ 106.

19         The Counties' proposed amendments (including their supplemental amendments)
20   fail to meet the 12(b)(6) standard.  Fundamentally, the Counties plead additional facts that
21   show a theoretical increase in PM as a result of a decrease in $NO_x$, the engineering
22   principles behind their "tradeoff" theory.  But they fail to plausibly allege that such a
23   theoretical increase was so substantial that it would outweigh any prospective decrease in
24   $NO_x$.  And as Defendants have persuasively argued, the Counties fail to articulate their
25   increased emission theory: How much PM would it take—by weight, by molecule, by
26   environmental harm—to outweigh any decrease in $NO_x$?  Why is it that the engineering
27   principles the Counties cite would lead to that result, as opposed to any other result (say, a
28   minimal or moderate increase in PM less than or commensurate with any decrease in

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1    $NO_x$)?  The Counties seem to allege that harm to human health is what matters—and

2    because "PM is more harmful than $NO_x$ to human health," any increase in PM would

3    outweigh, from an environmental harm perspective, any decrease in $NO_x$.  <u>See</u> SLC

4    Proposed Fourth Am. Compl. ¶ 67; EPC Proposed Second Am. Compl. ¶ 26.  But <u>how</u>

5    <u>much</u> PM was increased, and <u>how much</u> $NO_x$ was decreased, would obviously play a role

6    in such a comparison. The Counties cannot articulate any factual basis to render plausible

7    the notion that increased DPF failures would increase PM to such a degree that any

8    decrease in $NO_x$ would not matter to any environmental harm calculus.

9         The Counties argue that they have not had the ability to test these theories because

10    they did not have access to vehicles loaded with the proprietary software updates at issue

11    in this case, and that the discovery period prior to Defendants' motion for partial summary

12    judgment was short.  <u>See, e.g.</u>, SLC Supp. Brief at 4; SLC Supp. Reply at 1.  They may be

13    right about the former, and they are certainly right about the latter.  But the Court does not

14    expect the Counties to "prove their case at the pleading stage," as the Counties protest.

15    SLC Supp. Reply at 1.  The Court expects the Counties to "plead[] factual content that

16    allows the court to draw the reasonable inference that the defendant is liable for the

17    misconduct alleged."  <u>Iqbal</u>, 556 U.S. at 678.  The Court asks for facial plausibility, which

18    is "more than a sheer possibility that a defendant has acted unlawfully."  <u>Id.</u>  While it is not

19    impossible that the engineering principles the Counties allege may lead to an increase in

20    PM that overwhelms any accompanying decrease in $NO_x$, such a conclusion is "mere[ly]

21    possib[le]," not facially plausible, based on the facts as pleaded.  <u>Id.</u> at 678–79.[8]

22

---

23  [8] That leaves only EPC's newly alleged "reinstallation theory."  EPC Proposed Second Am.
Compl. ¶¶ 107–110.  First, EPC does not explain what it learned during discovery that allows it to

24  raise this theory now, instead of in its prior complaint.  <u>See</u> EPC Supp. Brief at 4.  Leave to amend
to add this theory may thus be denied based on undue delay and prejudice alone.  <u>See supra</u>

25  Sections II.A–B.  But even putting those issues aside, the Court does not see a material, practical
difference between the argument that Volkswagen failed to remove the defeat device software

26  when it installed the updates—which a district court in Florida has already persuasively reasoned
does not plausibly violate EPC's anti-tampering rule—and the argument that the original defeat

27  device software was reinstalled when the updates were installed.  <u>See</u> Env't Prot. Comm'n of
<u>Hillsborough Cnty. v. Mercedes-Benz USA, LLC</u>, No. 8:20-CV-2238-VMC-JSS, 2022 WL

28  1136610, at *5 (M.D. Fla. Apr. 18, 2022) ("These updates are not "tampering" as defined by the
rule because they do not cause the emissions control system to be inoperable. Rather, the original

## III.    CONCLUSION

For the foregoing reasons, the Counties' motions for leave to amend are DENIED. The Counties may file amended oppositions to Defendants' motion for partial summary judgment by **March 10, 2023**.  Defendants may file their reply by **March 17, 2023**.  The hearing on the motion for partial summary judgment will be held on **April 21, 2023**.

**IT IS SO ORDERED.**

Dated: February 17, 2023



CHARLES R. BREYER
United States District Judge

---

pre-sale defeat devices—on which the Commission has not and cannot base its claims—have rendered the emissions control system inoperable and the later software update has no effect on that system.").