IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No.  15-md-02672-CRB |
| This Document Relates to: | **ORDER GRANTING MOTION TO ENFORCE JUDGMENT** |
| Porsche Gasoline Litigation | |

Defendants Volkswagen AG, Dr. Ing. h.c. F. Porsche AG, and Porsche Cars North America, Inc. (together, "Porsche") seek to enjoin Maria Christiansen ("Christiansen") from pursuing her action filed in Orange County Superior Court (the "Orange County Action") against Porsche Cars North America, Newport Auto Center, Porsche of Newport Beach, Bosch Automotive Service Solutions, Inc., court-appointed settlement administrator JND Legal, and Does 1-10.  See Mot. (dkt. 8116) at 1.  Christiansen argues, inter alia, because she attempted to opt out of the settlement, Porsche cannot enforce the Court's Final Approval Order and Judgment against her.  See Opp'n (dkt. 8122); see also Order Granting Final Approval (dkt. 8088).

As discussed below, finding this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), the Court vacates the hearing currently set for March 24, 2023, and GRANTS Porsche's motion.

United States District Court
Northern District of California

I.      **BACKGROUND**

A.      **The Class Settlement**

In their class action complaint, Plaintiffs in this action alleged that some Porsche vehicles had worse fuel economy and higher emissions than the test-specific models, due to a different axle ratio, while other vehicles with a high performance "Sport+ Mode" exceeded $NO_x$ emissions limits while driven in that mode, bringing claims under common law, federal and state warranty laws, and state consumer protection laws.  See Am. Compl. (dkt. 7969).  After full briefing on a motion to dismiss, the parties asked the Court to postpone the hearing while they pursued discovery and engaged in settlement discussions.  See dkt. 7904. In June 2022, the parties moved for certification of the class and preliminary approval of an $80 million settlement.  See Preliminary Approval Mot. (dkt. 7971).

On July 8, 2022, the Court granted preliminary approval of the class settlement, setting September 30 as the deadline for class members to opt out.  See Order Granting Preliminary Approval (dkt. 7997) at 4.  To opt out, a class member was required to personally sign and either mail or e-mail a written request to opt out on or before the deadline. Settlement Agreement (dkt. 7971-1) ¶ 7.1.  The opt out request must include the class member's name, their address, their telephone number, the "VIN(s) of the Class Vehicle(s) forming the basis of the Class Member's inclusion in the class," whether the class member owned or leased the vehicle(s), and the dates of the ownership or lease of the vehicle(s).  Id.  By the September 30 deadline, the settlement administrator reported that eleven people had submitted valid opt-outs, and thus had opted out of the settlement.  See October Keough Decl. (dkt. 8072).  On November 9, 2022, the Court finally approved the settlement and entered final judgment.  See Order Granting Final Approval.

B.      **Christiansen's Action and Opt-Out Attempt**

On June 28, 2022, just prior to preliminary approval of the settlement, Christiansen filed a complaint in Orange County Superior Court, bringing claims for breach of warranty, fraud, design and manufacturing defects, and emissions tampering.  See Oswell

United States District Court
Northern District of California

Decl. (dkt. 8116-5) Ex. B ("Orange County Compl.").  When Christiansen attempted to serve Porsche Cars North America by mailing process to Porsche's counsel, counsel informed Christiansen that she was not authorized to accept service and that Christiansen was part of the settlement class, directing her to the settlement website.  Dawson Decl. (dkt. 8116-3) ¶¶ 3–5, Ex. A.  Christiansen indicates that she sent, or attempted to send, an opt out request to the settlement administrator on September 6, 2022, but the settlement administrator does not report receiving her opt-out request.  Mahan Decl. (dkt. 8122-1) Ex. 2;[1] January Keough Decl. (dkt. 8116-4) ¶ 6.

On October 25, 2022, Christiansen corresponded with the counsel for Porsche in the Orange County Action, who informed her that the settlement administrator had no record of any opt out request from her.  See Amir Decl. (dkt. 8116-2) ¶ 5; see also id. Ex. A. On November 4, 2022, Christiansen sent an email to the settlement administrator "request[ing] all copies JND received of [her] 'opt-out,' as well as any records regarding the non-inclusion of [her] opt-out in this matter."  Orange County Am. Compl. Ex. 10.  After receiving the email, JND performed an audit of its records, searching the Porsche Gasoline Litigation email address, info@porschegasolinesettlementusa.com, as well as the other case email addresses JND operates.  See January Keough Decl. ¶ 6.  JND found no record of any emails received from Christiansen until she reached out seeking information about her opt-out in November.  Id.  On November 9, 2022, JND replied to Christiansen, informing her that they had no record of her opt-out attempt on September 6, 2022.  Id. ¶ 7; Orange County Am. Compl. Ex. 10. On December 5, 2022, Christiansen responded to a reminder notice sent from the Porsche Gasoline Litigation email address, once again indicating that she sent an opt-out letter in September.  See Mahan Decl. Ex. 10.

---

[1] Christiansen concedes that this opt out attempt, even if successfully sent, would be invalid, because the VIN number of her vehicle includes a typo.  See Oswell Decl. Ex. A ¶¶ 90–91 ("Orange County Am. Compl."); Orange County Am. Compl. Ex. 19 ¶ 7 ("Christiansen Decl.").  Further, Christiansen's opt out letter does not include some additional information required under the Settlement Agreement, such as whether she owned or leased her Porsche.  See Settlement Agreement ¶ 7.1; see also Long-Form Notice (dkt. 7971-3) Ex. B at 14 (same).

Christiansen received an automatic reply from JND in response,[2] and then an employee at JND replied, reiterating that JND never received Christiansen's initial opt-out request.  See January Keough Decl. ¶ 9.

### C.   The Instant Motion

Instead of seeking relief from this Court, Christiansen filed an amended complaint in the Orange County action, asserting new claims against JND for declaratory relief, breach of fiduciary obligations, negligent settlement administration, and breach of California Business and Professions Code Sections 17200 and 17500 et seq.  See Orange County Am. Compl. ¶¶ 125–146.  In her declaration attached to this amended complaint, Christiansen contends that her opt-out request was successfully sent but "lost" by JND, and Porsche's counsel sought an extension of time to file its demurrer in the Orange County action to conceal JND's loss of her opt-out request until after the September 30 opt-out deadline, thus "unfairly extinguish[ing] her rights as a Plaintiff."  Christiansen Decl. ¶¶ 6–12.

On January 30, Christiansen filed a Notice of Related Case in this action, stating that she "submitted a timely and valid opt out in this matter," that the Court has "not been informed of [her] opt out," that Porsche is "using erroneous JND Legal Administration Reports" to seek a demurrer of her Orange County action.  See dkt. 8115 at 2.  Porsche responded by filing this motion, which is now fully briefed.  See Mot.; Opp'n; Reply (dkt. 8132).

## II.   DISCUSSION

Under the All Writs Act, Porsche seeks an order enjoining the pendency of the Orange County Action.  See Mot. at 1.  Christiansen argues that the Court should deny this motion for three reasons: First, the All Writs Act is an improper vehicle for this motion; second, the Orange County Action is not encompassed by the release in the class

---

[2] Keough states in her declaration that the Porsche Gasoline Litigation email address sends this automatic response to every initial email it receives. Thus, if Christiansen's initial opt-out request had reached that inbox, she would have received an automatic response in September. January Keough Decl. ¶ 10.

settlement; and third, even if the Court rejects Christiansen's first two arguments, because she has "indisputably" opted out of the class settlement, she is not a member of the settlement class, and thus the Court's judgment and the class's release of claims against Porsche does not apply to her.  See Opp'n.[3]

### A.   Application of the All Writs Act

Christiansen's first argument is entirely without merit.  "The power conferred by the [All Writs] Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice."  United States v. New York Tel. Co., 434 U.S. 159, 174 (1977) (citation omitted).  The All Writs Act empowers courts charged with administering and enforcing class settlements to enjoin parallel state-court actions.  See Keith v. Volpe, 118 F.3d 1386, 1390 (9th Cir. 1997) ("The All Writs Act, 28 U.S.C. § 1651, empowers the federal courts to enjoin state proceedings that interfere, derogate, or conflict with federal judgments, orders, or settlements.").  The Court has exercised this authority many times over the course of this litigation.  See, e.g., Order Granting Final Approval of Volkswagen Branded Franchise Dealer Class Action Settlement Agreement and Release, In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig., 229 F. Supp. 3d 1052, 1072–73 (N.D. Cal. 2017); Order Re: Volkswagen Group of America's Motion to Enforce the Volkswagen Branded Franchise Dealer Class Action Settlement Agreement, In re Volkswagen, 15-md-2672, dkt. 4951 (N.D. Cal. Mar. 30, 2018); Order Granting Motion to Enforce Settlement Release Against Class Member Maria Luisa Maciel, In re Volkswagen, 15-md-2672, dkt. 5168 (N.D. Cal. July 31, 2018); Order Granting Motion to Enforce Injunction and Release Against Edwin

---

[3] Christiansen also argues that her right to opt out is constitutionally protected, see Opp'n at 8–10, but, as Porsche points out, she fails to articulate how the notice or opt-out process violated that right.  She does not argue that she failed to receive notice, or that notice was constitutionally inadequate.  The question is thus not whether the notice and opt-out process violated her constitutional right to opt out, but whether her initial opt-out attempt was valid and, if not, whether she has demonstrated good cause to enforce her opt out retroactively.  See infra Section II.C.

United States District Court
Northern District of California

Rambuski, In re Volkswagen, 15-md-2672, dkt. 7019 (N.D. Cal. Jan. 9, 2020).  The cases Christiansen cites to the contrary are inapposite, addressing the question of whether, and when, a federal appellate court should issue a writ to against a federal district court, which is not the situation here.  See Opp'n at 3–4.

The Court is thus empowered to enjoin the Orange County Action, if it determines that Christiansen failed to exclude herself from the settlement.

### B.      The Release and the Orange County Action

Christiansen further argues that her claims in the Orange County Action are different from the claims released in the settlement.  Thus, even if she failed to opt out of the settlement, she did not release the claims she now asserts in state court.  See Opp'n at 2.

In the Final Approval Order, the Court ruled that "[a]s of the Effective Date, Releasing Parties shall be deemed to have fully, finally, and forever released and discharged Released Parties from the Released Claims."  Final Approval Order at 23.  In the Settlement Agreement, "Released Claims" are defined as all claims "arising out of or in any way related to the Sport+ Matter or Fuel Economy Matter or any allegation, claim or other subject matter of the Complaint or this Action."  Settlement Agreement ¶ 10.3.

Christiansen's claims against Porsche plainly are "related . . . [to the] subject matter of the Complaint or this Action."  Christiansen's factual allegations against Porsche are in many ways nearly identical to the allegations in the amended complaint in this action.  At points, Christiansen quotes the complaint in this action directly, calling it the "companion Class Action." See Orange County Am. Compl. ¶ 22.  Christiansen's argument that her claims "sound[] in" state law, common law, and county and municipal law, see, e.g., Opp'n App. A, and thus are exempt from the terms of the release, is incompatible with the terms of the release itself.  See Settlement Agreement ¶ 10.3 ("This Release applies without limitation to any and all Released Claims . . . under any federal, state, provincial, local . . . or international law, or statute, ordinance, code, regulation, contract, common law, equity, or any other source . . . .").  Christiansen's claims against JND, while certainly

6

more novel than her claims against Porsche, also "aris[e] out of or [are] in any way related to" this action because they arise from JND's administration of the class settlement.[4]

Thus, the Court is empowered to enjoin the Orange County Action, given that Christiansen's claims in that action are covered by the release and this Court's exclusive jurisdiction. But it may only do so if the Court finds that Christiansen failed to exclude herself from the settlement.

### C.      Christiansen's Opt Out Attempt

Finally, Christiansen argues that because she opted out of the settlement, her claims are not subject to the release, and the Orange County Action must be allowed to go forward. The Court disagrees.

Fundamentally, the parties disagree as to whether Christiansen's exclusion request was received by JND. Christiansen claims to have sent it; JND claims not to have received it. See Christiansen Decl. ¶ 7; January Keough Decl. ¶ 6. Porsche's argument for why Christiansen's opt out attempt may not have been successfully sent is compelling,[5] but the Court need not decide whether Christiansen's email was sent and received because, ultimately, it would have been deficient. See supra note 1. Thus, the question is not whether Christiansen submitted a valid opt out in September, but whether she has demonstrated good cause to belatedly opt out of the settlement now and pursue her claims in the Orange County Action.[6]

---

[4] In any case, even if Christiansen's claims against JND do not fall within the release, they undoubtedly fall within the Court's "exclusive and continuing jurisdiction over the Action . . . for the purposes of supervising the implementation, enforcement, construction, administration and consummation of the Settlement Agreement and this Judgment." Final Approval Order at 24. Thus, even if Christiansen's claims against JND are not barred, they must be brought in this Court, notwithstanding Christiansen's assertion, without citing any authority, that Orange County would be an "objectively more impartial venue" to address this issue. Opp'n at 4.

[5] Porsche argues that the settlement email address included a space, which was why it may not have been successfully sent. See Mot. at 9. In her opposition, Christiansen contends that the "address was written correctly and the email was identified as sent." Opp'n at 15.

[6] The Court acknowledges that there is some case law in the district indicating that the filing of a suit by a class member "constitute[s] an effective expression of a class member's desire to opt out." McCubbrey v. Boise Cascade Home & Land Corp., 71 F.R.D. 62, 69 (N.D. Cal. 1976). However, McCubbrey is distinguishable: In McCubbrey, the court found that notice violated due

United States District Court
Northern District of California

To determine whether a class member may belatedly opt out of a class settlement, courts consider whether there was "excusable neglect," by considering the <u>Pioneer</u> factors: (1) "the danger of prejudice to [Porsche]"; (2) "the length of the delay and its potential impact on judicial proceedings"; (3) "the reason for the delay, including whether it was within the reasonable control of [Christiansen]"; and (4) "whether [Christiansen] acted in good faith." <u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship</u>, 507 U.S. 380, 395 (1993); <u>see also</u> <u>Silber v. Mahon</u>, 18 F.3d 1449, 1455 (9th Cir. 1994) (citing other possibly relevant factors such as "the degree of compliance with the best practicable notice procedures; when notice was actually received and if not timely received, why not; what caused the delay, and whose responsibility was it; how quickly the belated opt out request was made once notice was received; how many class members want to opt out; and whether allowing a belated opt out would affect either the settlement or finality of the judgment").

A number of these factors would have come out in Christiansen's favor, had she moved for exclusion promptly after being notified on October 25 that her opt-out attempt had been unsuccessful. By all accounts, she attempted to opt out on September 6, during the opt-out period. While her request is deficient in a few respects, <u>see</u> <u>supra</u> note 1, it demonstrates an intent to opt out and preserve her claims against Porsche, even if JND never actually received it. And further, until October 25 and her email correspondence with Porsche's counsel in the Orange County Action, there is no indication that Christiansen knew her opt-out was unsuccessful. Accordingly, until that time, her delay

---

process, and the suit in question was filed during the opt-out period. <u>See id.</u> at 67–69. Christiansen does not argue that the notice in this case did not comport with due process, or that she did not receive notice—indeed, Porsche's counsel informed Christiansen directly that she was a member of the settlement class and must opt out to preserve her claims. Dawson Decl. ¶ 5. And unlike the suit in <u>McCubbrey</u>, which was filed during the opt-out period, Christiansen filed suit prior to beginning of the opt-out period. <u>See, e.g.</u>, <u>Bowman v. UBS Fin. Servs., Inc.</u>, 04-cv-3525, 2007 WL 1456037, at *2 (N.D. Cal. May 17, 2007) (distinguishing <u>McCubbrey</u> for the same reason); <u>In re Cathode Ray Tube (CRT) Antitrust Litig.</u>, 07-cv-5944, 2014 WL 4181732, at *5 (N.D. Cal. Aug. 20, 2014) ("[F]iling an individual case prior to the opt-out period and continuing to litigate that case through the opt-out period is insufficient.").

United States District Court
Northern District of California

1    was not within her "reasonable control."[7]  And at the time Christiansen was notified, only

2    four days after the final approval hearing, her delay would not have materially impacted

3    judicial proceedings, as final approval had not yet been granted and a final judgment had

4    not yet been entered.  As of October 25, Christiansen had all the information she needed to

5    submit a request—likely a successful one—in this Court that her opt out be counted.[8]  See,

6    e.g., In re Cathode Ray Tube (CRT) Antitrust Litig., No. C-07-5944-SC, 2014 WL

7    4181732, at *4 (N.D. Cal. Aug. 20, 2014) (granting a motion for retroactive enlargement

8    of the time to opt out where the settlement administrator failed to update the website to

9    note the opt out deadline and the class member promptly moved the Court to recognize

10   their belated opt-out request prior to final approval).

11        Now, the situation is markedly different. Instead of pursuing the route outlined

12   above, Christiansen instead filed more claims in the Orange County Action, this time

13   against JND, alleging "lost" opt outs and collusion between JND and Porsche to "unfairly

14   extinguish her rights as a Plaintiff." Christiansen Decl. ¶¶ 6–12.[9] It was not until January

15   30—three months after Christiansen had first been informed that her opt out had not been

16   received—that Christiansen informed the Court of the parties' disagreement regarding her

17

18   _____

19   [7] It is possible that Christiansen received a notice that her September 6 email was undeliverable, and as such, she would have had notice that her opt out request did not go through.  Such a notice

20   is not in the record.  The automatic reply Christiansen received from JND after her email on December 5 provides an indication that her September opt-out request did not go through—because, presumably, she would have received the same automatic reply in September if it had.

21   But, in any case, Christiansen would not have had notice that JND customarily sent automatic replies from the settlement email address until she got one in December, three months after her

22   initial opt-out attempt.

23   [8] Christiansen argues that it was JND's responsibility to inform the Court about their disagreement regarding receipt of her opt-out request.  Opp'n at 11–14.  Christiansen cites no authority for the proposition that a settlement administrator is compelled to inform the Court of such disputes.  But

24   in any case, even if JND "slept on the issue," Christiansen does not explain why she, too, slept on her right to seek exclusion in this Court, once she learned that her opt out attempt was

25   unsuccessful.

26   [9] Christiansen also asserts that JND's "loss" of her opt-out request is part of a pattern of deficient settlement administration.  See Opp'n at 11.  Christiansen's only piece of evidence for this

27   allegation is the small number of class members who filed valid requests for exclusion from the settlement.  See id.  But, as Porsche points out, the small number of opt outs could also be

28   explained by the class's overall satisfaction with the terms of the settlement.  See Reply at 4.

opt-out attempt.  <u>See</u> dkt. 8115.  And it was not until February 14 that, in her opposition to the instant motion, Christiansen finally argued that there was excusable neglect and good cause to allow her to be excluded from the settlement.  <u>See</u> Opp'n at 15–16.

Thus, while the one-month delay between the end of the opt-out period on September 30 and October 25 was arguably not within Christiansen's "reasonable control," the three and a half–month delay that followed undoubtedly was.  Courts in this district have held that even shorter delays marshal against finding excusable neglect.  <u>See</u> <u>In re Cathode</u>, 2014 WL 4181732, at *3 (four-week delay); <u>In re Static Random Access Memory (SRAM) Antitrust Litig.</u>, No. C 07-01819 CW, 2009 WL 2447802, at *3 (N.D. Cal. Aug. 7, 2009) (two-month delay); <u>see also</u> <u>In re Lithium Ion Batteries Antitrust Litig.</u>, No. 13-MD-02420-YGR, 2017 WL 6497597, at *2 (N.D. Cal. Dec. 19, 2017) (four-month delay).  While Porsche would likely not have been prejudiced had Christiansen moved for exclusion months ago, now that the settlement has been final for over four months, Porsche would be prejudiced because it will have to defend nearly identical claims that it understood to be precluded by the final approval order in this action.  <u>See</u> <u>Bowman</u>, 2007 WL 1456037, at *3; <u>see also</u> <u>Lithium Ion</u>, 2017 WL 6497597, at *2.

Therefore, Christiansen's arguments do not support a finding of excusable neglect, and the Court will not retroactively recognize Christiansen's unsuccessful opt-out attempt.  As a result, Christiansen is enjoined from pursuing her claims in the Orange County Action.

**III.    CONCLUSION**

For the foregoing reasons, Porsche's motion to enforce judgment is GRANTED.

**IT IS SO ORDERED.**

Dated: March 22, 2023

CHARLES R. BREYER
United States District Judge