United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No.  15-md-02672-CRB |
| | **ORDER ON PLAINTIFFS' MOTIONS FOR ATTORNEY'S FEES AND COSTS** |

This document relates to:

*Clendenen v. Volkswagen*,
Case No. 18-cv-7040

*Coon v. Volkswagen*,
Case No. 18-cv-6966

*Ortiz v. Volkswagen*,
Case No. 18-cv-6951

*Riley v. Volkswagen*,
Case No. 17-cv-2897

*Robertson v. Volkswagen*,
Case No. 18-cv-6956

*Salzer v. Volkswagen*,
Case No. 18-cv-7050

*Sanwick v. Volkswagen*,
Case No. 17-cv-3032

Under what has long been known as the "American Rule," each party to a lawsuit, win or lose, must ordinarily pay his or her own attorney fees, unless a statute or contract provides otherwise.  In California, the Consumer Legal Remedies Act (CLRA) authorizes courts to "award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to this section."  Cal. Civ. Code § 1780(e).

In these seven cases, the Plaintiffs (except Plaintiff Riley) sued Volkswagen for, among other claims, violation of the CLRA.  After the Plaintiffs filed suit, Volkswagen formally offered to settle with them in amounts ranging from around $12,000 to $29,000. They rejected these offers and went to trial.

That decision did not turn out well.  Three Plaintiffs received nothing, and three Plaintiffs recovered far less than what Volkswagen offered to settle.  As a result, these Plaintiffs paid Volkswagen more than $110,000 in costs under Federal Rule of Civil Procedure 68.  Only one case—the Sanwicks'—scraped by, and they walked away with $249 more than what Volkswagen had offered four years ago.

The average person would say trial was not an unalloyed success for the Plaintiffs.

The Plaintiffs' attorneys, however, praised their own performance—saying the results were, in their own words, "superlative" and "excellent by any measure."  The attorneys found the results so outstanding that they now come to court asking for over $623,000 in fees and costs.

The Court now must decide what the attorneys deserve.

## I.    BACKGROUND

The Court has previously described the events that are the basis for Plaintiffs' claims:

> Over the course of six years, Volkswagen sold nearly 500,000 Volkswagen and Audi-branded TDI "clean diesel" vehicles, which they marketed as being environmentally friendly, fuel efficient, and high performing.  Consumers were unaware, however, that Volkswagen had secretly equipped these vehicles with a defeat device that allowed Volkswagen to evade United States Environmental Protection Agency ("EPA") and California Air Resources Board ("CARB")

United States District Court
Northern District of California

> emissions test procedures.  Specifically, the defeat device produces regulation-compliant results when it senses the vehicle is undergoing testing, but operates a less effective emissions control system when the vehicle is driven under normal circumstances.  It was only by using the defeat device that Volkswagen was able to obtain Certificates of Conformity from EPA and Executive Orders from CARB for its TDI diesel engine vehicles.  In reality, these vehicles emit nitrogen oxides ("NOx") at a factor of up to 40 times over the permitted limit.

In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig., 2016 WL 6248426, at *1 (N.D. Cal. Oct. 25, 2016).  The scandal led to numerous government actions and over a thousand civil lawsuits, which were consolidated before this Court by the Judicial Panel on Multidistrict Litigation.  Id. at *2.  The bulk of the civil actions were resolved in two settlements approved by this Court.

Seven sets of Plaintiffs—Clendenen, Coons, Ortizes, Riley, Robertson, Salzer, and Sanwicks—opted out of the class settlements.  The Court then set these cases for trial.

In October 2019, Volkswagen made individual offers of judgment under Rule 68 to the Plaintiffs.  The settlement amounts ranged from $11,000 to $30,500.  The Plaintiffs, represented by Knight Law, rejected these offers.

Before trial, the Court granted Volkswagen's motion for summary judgment on the Song-Beverly claims, leaving only the Plaintiffs' common law fraud and CLRA claims for trial.  Volkswagen also conceded all elements of the Plaintiffs' remaining claims, except for damages.  At trial, the Plaintiffs sought economic damages of $373,229 and punitive damages of $582 million.

During the compensatory damages phase of trial, the jury awarded damages based on Volkswagen's expert's calculations: Riley ($1,080), Robertson ($952), Salzer ($582), and the Sanwicks ($3,133), and nothing to the remaining five Plaintiffs.  The Plaintiffs failed to offer any contrary expert opinions.

At the punitive damages phase, the jury awarded $25,000 per car to the four sets of Plaintiffs who recovered economic damages, for a total of $100,000.  After trial, on due process grounds, the Court reduced the jury's punitive damages awards to four times their

economic damages.  Dkt. 7346 at 25–28.  Because the Plaintiffs recovered less than Volkswagen's Rule 68 offers of judgment, they were required to pay for Volkswagen's costs.

The Plaintiffs appealed.  The Ninth Circuit held, among other things, that the Court should have used a ratio of 8-to-1 instead of 4-to-1.  Riley v. Volkswagen, 51 F.4th 896, 903–04 (9th Cir. 2022).  This Court, then, amended the final judgments consistent with the Ninth Circuit's opinion.

A summary of the relevant figures is provided here:

| Plaintiff(s) | Pre-Trial Rule 68 Offer | Economic Damages Sought at Trial | Punitive Damages Sought at Trial | Damages Award Post-Appeal (Including Punitive Damages) | Comparison of Award vs. Rule 68 Offer | Costs Plaintiffs Paid Volkswagen |
|---|---|---|---|---|---|---|
| Clendenen | $25,084 | $88,249.75 | | $0 | ($25,084) | $18,213.39 |
| Coons | $30,377 | $95,215.75 | | $0 | ($30,377) | $24,878.95 |
| Ortizes | $13,847.11 | $33,618.62 | $582 million | $0 | ($13,847.11) | $16,539.80 |
| Riley | $29,097 | $36,896.64 | | $9,720 | ($19,377) | $16,396.91 |
| Robertson | $11,960.15 | $22,164.10 | | $8,568 | ($3,392.15) | $18,225.90 |
| Salzer | $16,503 | $18,917.82 | | $5,238 | ($11,265) | $15,800.96 |
| Sanwicks | $27,884 | $78,166.92 | | $28,133 | $249 | $0 |
| **Total** | **$154,752.26** | **$373,229.60** | **$582 million** | **$51,659** | **($103,093.26)** | **$110,055.91** |

VW Opp. at 2 (dkt. 8163).

On March 20, 2023, the Plaintiffs filed four separate motions for attorney's fees and costs, which Volkswagen opposes.

4

## II.    LEGAL STANDARD

Federal courts sitting in diversity apply state law to determine a party's entitlement to costs and attorneys' fees.  Mangold v. Cal. Pub. Util. Comm'n, 67 F.3d 1470, 1478 (9th Cir. 1995).  The CLRA directs that a prevailing plaintiff be awarded attorney's fees and costs.  Cal. Civ. Code § 1780(e).

California courts calculate attorneys' fees pursuant to the lodestar method, which "first calculates the number of hours reasonably spent multiplied by the reasonable hourly rate for each billing professional, and then . . . adjust[s] the amount based on various relevant factors to ensure the fee reflects the fair market value of the attorney services for the particular action." K.I. v. Wagner, 225 Cal. App. 4th 1412, 1425 (Cal. Ct. App. 2014). It is the prevailing party's burden to show that the fees it seeks are reasonable.  Nightingale v. Hyundai Motor Am., 31 Cal. App. 4th 99, 104 (Cal. Ct. App. 1994).

## III.    DISCUSSION

The lone statutory basis for recovery of attorney's fees and costs here is the CLRA.[1] Section 1780(d) of the CLRA provides: "The court shall award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to this section."  Cal. Civ. Code § 1780(d).

Although the CLRA does not define the term "prevailing plaintiff," California courts have used two approaches to determine who prevailed.  One way is to apply the general definition of "prevailing party" found in Code of Civil Procedure section 1032.5— that is, a party prevails "if he obtained a 'net monetary recovery' on his CLRA claim." Kim v. Euromotors West/The Auto Gallery, 149 Cal. App. 4th 170, 179 (Cal. Ct. App. 2007).  Another way to decide prevailing party status under the CLRA is to use "a pragmatic approach"—that is, a court looks at "a practical level" and "analyz[es] which party realized its litigation objectives." Id.  A court also could consider "a combination of the[se] two" methods to determine whether a plaintiff prevailed under the CLRA.

---

[1] None of the Plaintiffs prevailed on the Song-Beverly claim.  See Riley v. Volkswagen, 2022 WL 17829997, at *3 (9th Cir. Dec. 21, 2022) (affirming summary judgment dismissal of Song-Beverly claim).

United States District Court
Northern District of California

### A.    Clendenen, Coons, Ortizes and Riley

Clendenen, Coons and Ortizes are not prevailing parties under the CLRA because they did not recover damages at trial.  And Riley did not even bring a CLRA claim.  These Plaintiffs are not entitled to attorney's fees.

### B.    Robertson and Salzer

Robertson and Salzer are not entitled to fees, either.  Although they recovered $5,238 and $8,568 at trial, they did not accomplish their litigation objectives because they ultimately paid more money to Volkswagen than they recovered from this litigation. That's because the damages they won at trial were lower than the settlement offers they had earlier rejected, and so Rule 68 required them to pay Volkswagen's post-offer costs. Under Rule 68, if an offeree rejects a pretrial settlement offer and the judgment finally obtained is "not more favorable than the offer," then the offeree is required to "pay the costs incurred after the making of the offer."  Fed. R. Civ. P. 68(d).

In assessing a plaintiff's degree of success under a fee-shifting provision like the CLRA, a court should consider a plaintiff's rejection of a Rule 68 offer that would have given him what he ultimately obtained at trial.  See, e.g., McKelvey v. Sec'y of U.S. Army, 768 F.3d 491, 495 (6th Cir. 2014) ("Few, if any, reasonable litigants would call a monetary judgment that comes in well under the money offered to settle the case a success."); see also 12 Wright & Miller § 3006.2 ("In setting reasonable attorneys' fees, a court is to look at the results obtained, and it need not close its eyes to the reality that plaintiff's post-offer legal work produces a net loss.").

The Plaintiffs are wrong that Rule 68 conflicts with California's substantive law. "If this case were litigated in state court, California's Rule 68 analogue would likewise prohibit the recovery of post-offer fees and costs."  Jimenez v. Ford Motor Co., 2022 WL 3151973, at *1 (N.D. Cal. Aug. 8, 2022) (Chhabria, J.) (citing Duale v. Mercedes-Benz USA, LLC, 148 Cal. App. 4th 718, 724–28 (Cal. App. Ct. 2007)).  Moreover, the California Supreme Court has instructed courts to "respect substance rather than form" when determining litigation success.  See Hsu v. Abbara, 9 Cal. 4th 863, 877 (Cal. 1995).

6

Here, after paying for Volkswagen's costs, Robertson and Salzer suffered a net loss of $9,657.90 and $10,562.96, respectively. See VW Opp. (dkt. 8163) at 2 ("Costs Plaintiffs Paid Volkswagen" minus "Damages Award Post-Appeal"). Their Rule 68 offers were much higher than what they ultimately recovered. Id. In other words, Robertson and Salzer would have been more successful had they accepted the Rule 68 offer instead of pressing on to trial. So, practically speaking, Robertson and Salzer did not prevail at trial. See, e.g., Van v. Language Line, LLC, 2016 WL 5339805, at *15 (N.D. Cal. Sept. 23, 2016) (denying fees where "Plaintiff's recovery is significantly less than Defendant's Rule 68 offer of judgment") (Koh, J.).

Nevertheless, Volkswagen agrees to pay Robertson's and Salzer's pre-Rule 68 fees and costs (except for expert fees), so the Court will award them that: $1,977.08 to Robertson and $2,924.33 to Salzer.[2]

## C.    Sanwicks

The only Plaintiffs who technically "prevailed" under the CLRA were the Sanwicks, who won by a nose. Their final prize was $28,133, which is just $249 more than what Volkswagen offered under Rule 68. Under the CLRA, the Court must award them attorney's fees and costs. Kim, 149 Cal. App. 4th at 178 ("an award of attorney fees to 'a prevailing plaintiff' in an action brought pursuant to the CLRA is mandatory").

There is a wrinkle to their "win," however. Where, as here, "a plaintiff rejects a Rule 68 offer, the reasonableness of an attorney fee award . . . will depend, at least in part,

---

[2] That Volkswagen has agreed to pay Robertson and Salzer pre-Rule 68 fees and costs is more than fair. Even if the Court would find them to be "prevailing plaintiffs" under the CLRA, the Court would refuse to award them post-Rule 68 offer fees and costs because these Plaintiffs gained nothing from the protracted litigation. See Marek v. Chesny, 473 U.S. 1, 11 (1985) ("In a case where a rejected settlement offer exceeds the ultimate recovery, the plaintiff—although technically the prevailing party—has not received any monetary benefits from the post-offer services of his attorney."); see, e.g., Jimenez, 2022 WL 3151973, at *1 ("Rule 68 [ ] precludes recovery of all attorneys' fees and costs incurred after the rejection of the initial offer—including the fees and costs incurred in connection with the motions for fees and costs."); cf., e.g., Duale, 148 Cal. App. 4th at 726 ("The language of section 998 'on its face' prevents a plaintiff who rejects a settlement offer that is greater than the recovery it ultimately obtains at trial from recovering 'postoffer' costs and attorney fees.").

United States District Court
Northern District of California

on the district court's consideration of the results the plaintiff obtained by going to trial compared to the Rule 68 offer." Haworth v. Nevada, 56 F.3d 1048, 1052 (9th Cir. 1995).

Volkswagen argues that the Court should not award the Sanwicks any post-offer fees because they recovered just $249 more than Volkswagen's Rule 68 offer after almost four years of additional litigation and, when adjusted for inflation, the Sanwicks lost $4,462.67. Perhaps that's true, but this Court cannot outright reject all post-offer fees on the ground that all post-offer work was "not necessary or reasonable." See Reck v. FCA US LLC, 64 Cal. App. 5th 682, 700 (Cal. Ct. App. 2021) (holding it was legal error to categorically deny all post-offer fees and costs as "not necessary or reasonable" where the recovery amount was 10% more than the offer). A litigant has every right to have his or her day in court.

As the Reck court reasoned: "In making the decision to reject a [Rule 68] offer, the plaintiff takes on the risk that he or she will not obtain a better result and will be deprived of post-offer attorney fees and be made to pay the other side's fees or costs." Id. at 698. "Plaintiffs must be free to take these kinds of calculated risks without fear that the trial court may deny reasonably incurred post-offer attorney fees even after successfully litigating their matter to a more favorable resolution. To endorse a different rule would create inordinate pressure on plaintiffs to accept low or unreasonable [Rule 68] settlement offers, and undermine the prosecution of meritorious civil rights or public interest litigation and the legislative interest in awarding a prevailing plaintiff their reasonable attorney fees and costs under mandatory fee-shifting statutes." Id.

Nonetheless, the Rule 68 offer will be weighed into the lodestar analysis.

### D.      Lodestar Analysis

The Plaintiffs' attorneys have filed four separate motions (plus over 600 pages in exhibits), collectively seeking over $623,000 in fees and costs. This amount is grossly inflated and unreasonable. It will be significantly reduced.[3]

---

[3] Because Volkswagen has agreed to pay pre-Rule 68 fees and costs, this section generally applies to only post-offer billings.

8

United States District Court
Northern District of California

### 1.    Exclusions

Courts exclude time that is expended on work that is legally or factually unrelated to plaintiff's claims in the lawsuit, baseless, or otherwise deficient.  See Jacobson v. Persolve, LLC, 2016 WL 7230873, at *5 (N.D. Cal. Dec. 14, 2016) (Koh, J.).  Volkswagen argues that the Plaintiffs cannot recover fees incurred for certain categories of work.

#### a.    Song-Beverly Claim

Volkswagen argues that work related to the Plaintiffs' Song-Beverly claim should be excluded from the fees award because they did not prevail under that statute.  In deciding whether to apportion out fees for work on unsuccessful claims, "the court should [ ] consider[] whether it could segregate the work [ ] counsel performed on causes of action for which she was entitled to fees from those for which she was not."  Graciano v. Robinson Ford Sales, Inc., 144 Cal. App. 4th 140, 157 (Cal. Ct. App. 2006).

Normally, where the "plaintiff's various claims involve a common core of facts or are based on related legal theories," apportionment between distinct causes of action is impracticable or impossible.  Harman v. City & Cnty. of San Francisco, 158 Cal. App. 4th 407, 417 (Cal. Ct. App. 2007); see, e.g., Pulliam v. HNL Auto. Inc., 60 Cal. App. 5th 396, 403 (Cal. Ct. App. 2021) (affirming trial court's decision not to reduce fees by one-sixth because the plaintiff was successful on only the Song-Beverly claim).

Here, Volkswagen has identified from Plaintiffs' timesheets certain billing entries specifically related to the Plaintiffs' Song-Beverly argument.  See VW Opp., Ex. B (dkt. 8163-2).  It appears that most of the requested fees on the Song-Beverly claim that Volkswagen seeks to exclude were done for the Plaintiffs' appellate briefs.  Although Volkswagen has identified certain billings related to the failed Song-Beverly claim, the Court declines Volkswagen's invitation to dissect Plaintiffs' appellate briefs into "issue parcels."  See Robinson v. Kimbrough, 652 F.2d 458, 466 (5th Cir. 1981).  It's better to make these adjustments under the lodestar analysis when the Court evaluates the "results achieved" in this case.  See Hensley v. Eckerhart, 461 U.S. 424, 436–37 (1983) (noting where a case involves both successful and unsuccessful claims, a court "may attempt to

1    identify specific hours that should be eliminated, or it may simply reduce the award to

2    account for the limited success"); accord, e.g., Mann v. Quality Old Time Serv., Inc., 139

3    Cal. App. 4th 328, 344–45 (Cal. Ct. App. 2006).

### b.    Non-Prevailing Plaintiffs

5    Clendenen and Riley did not prevail under the CLRA, so they cannot recover fees.

6    The fees ($3,938.36) in Volkswagen's Appendix C are excluded.

### c.    Irrelevant, Baseless and Deficient Work

8    Volkswagen requests eight categories of work to be excluded from the lodestar

9    analysis because Volkswagen deems them irrelevant, baseless or otherwise deficient.  VW

10   Opp. at 15–17.

- Volkswagen seeks to exclude fees sought in connection with the Plaintiffs'
  argument that the fair market value of their cars was zero.  This request is
  denied.  Although that argument was a clear loser, any deduction here is
  better saved for when the Court evaluates the results achieved in this case.

- For the same reason, Volkswagen's request to reject fees related to the
  excluded testimony of Louis Freeh is denied.

- Volkswagen's request to exclude fees ($14,259.64) resulting from the
  Plaintiffs' effort to disqualify this Court is granted.  The Plaintiffs' motion to
  disqualify was interposed for delay, and as the Ninth Circuit held, "entirely
  without merit." Riley, 2022 WL 17829997, at *4–5.

- Volkswagen's request to exclude fees ($6,041.21) resulting from the
  Plaintiffs' motion to stay post-trial cost-taxation proceedings pending appeal
  is granted.  It is well-established that repaying litigation costs does not
  constitute irreparably injury, so the Plaintiffs' effort to seek a stay was
  baseless.

- Volkswagen's request to exclude fees ($9,082.50) resulting from the
  Plaintiffs having to revise their brief because they violated the Ninth
  Circuit's rule on page limits is granted.  They should not be able to recover

United States District Court
Northern District of California

United States District Court
Northern District of California

fees for failing to follow straightforward court rules.

- Volkswagen's other request to exclude fees from requesting time extensions and correcting record cites in their appellate brief is denied.  It's not unreasonable for parties to request extensions, especially in an appeal for cases in a large MDL that went to trial.  Some of these extensions also may have been related to the COVID-19 pandemic.  See VW Opp., App'x D, at 11.  That the Ninth Circuit granted these extensions also suggests that some good cause was shown.  Furthermore, even experienced appellate practitioners often have slipups with circuit courts' more-enforced record citation rules, which sometimes are not as clear as page limits.

- Volkswagen's request to exclude $58.71 in fees for Plaintiffs' counsel conversing with reporters is granted because it's unrelated to advancing the Plaintiffs' claims.

- Volkswagen's request to exclude fees for work on other plaintiffs in other actions is granted.  See VW Opp., App'x D, § VIII.  Knight Law appears to have submitted time incorrectly attributed to the Sanwicks.

### d.      Vague Time Entries

When the documentation provided by the party requesting attorneys' fees is inadequate, "the district court may reduce the award accordingly."  Hensley, 461 U.S. at 433.  Work entries are inadequately vague when the district court is unable to discern how the time spent is attributable to the case at hand.  Center for Food Safety v. Vilsack, 2011 WL 6259891, at *8 (N.D. Cal. Oct. 13, 2011).  Billing entries are unacceptably vague, for instance, when it simply states "conference," "telephone call," or "review" without describing the subject of the call, correspondence, or review.  Prineville Sawmill Co. v. Longview Fibre Co., 2003 WL 23957141, at *2 (D. Or. 2003).

The vagueness of the billing entries that Volkswagen has identified speaks for itself.  See, e.g., VW Opp., App'x E (dkt. 8163-5) ("Exchange e-mails with co-counsel"; "Conf call"; "Conf call resume"; "<blank entry>").  They do not explain the subject of the work

performed.  Accordingly, the fees ($2,804.07) reflected in Appendix E are excluded.

### e.    Clerical Work

Clerical tasks such as "filing, transcript, and document organization time" are not compensable, regardless of who completes them.  Nadarajah v. Holder, 569 F.3d 906, 921 (9th Cir. 2009).  Courts have held that "printing and saving documents, calendaring deadlines, and reviewing the documents and discovery previously received . . . to prepare a trial folder," are clerical tasks that ineligible for compensation.  Celestine v. FCA US LLC, 2019 WL 4274092, at *8 (E.D. Cal. Sept. 10, 2019).  Meanwhile, "preparing pleadings, reviewing client files, drafting deposition subpoenas, coordinating production of documents, and reviewing trial exhibit binders and deposition transcripts" are compensable.  Forouzan v. BMW of N. Am., LLC, 2019 WL 856395, at *6 (C.D. Cal. Jan. 11, 2019).

Most of the entries identified by Volkswagen in its Appendix F are non-compensable clerical work—e.g., filing, calendaring and filling out transcript forms—and are thus excluded.  There are two exceptions: drafting the notices of appeal (1.2 hours by Peck) and conducting the Ninth Circuit "pre-argument Zoom test" (.3 hours by Gurrola). These tasks were attorney-level work either required for appellate review or ordered by the Ninth Circuit.

### f.    Appeals

Volkswagen argues that GMSR and AFLC should recover only one-seventh of their fees requested for the appeal because the group of Plaintiffs were ultimately unsuccessful in six of the seven actions.  Volkswagen notes that the other firms (Knight Law, Glaser Weil, and CCL) have conceded that they should recover only one-seventh of their time. Recognizing that "not all plaintiffs in the appeal are entitled to attorney fees," GMSR has proposed a 30-percent reduction.  GMSR Mot., Tobisman Decl. (dkt. 8143-1), at ¶ 21(b). AFLC has offered no reductions.

The Court rejects Volkswagen's proportionality approach to reducing fees.  Cf., e.g., Cunningham v. Cnty. of Los Angeles, 879 F.2d 481, 485 (9th Cir. 1988) ("[C]ourts

United States District Court
Northern District of California

United States District Court
Northern District of California

1    may not adopt rigid mathematical formulas tying the lodestar figure to the ratio of

2    defendants remaining at trial to defendants served in the complaint.  The Supreme Court

3    has disapproved on more than one occasion of such pretensions to mathematical

4    precision.").  Moreover, it's easier to attribute work and hours among clients for trial-level

5    work, but it makes less sense for appeals because, as GMSR notes, the "appellate issues

6    were the appellate issues," and the appellate work would be the same for just the Sanwicks

7    or for all seven Plaintiffs.  See GMSR Reply Br. (dkt. 8171) at 2.  Indeed, the Plaintiffs'

8    appellate briefs did not divide the issues among the seven sets of clients.  See, e.g.,

9    Appellants' Opening Br., Riley, 2021 WL 1148797.

10         Nonetheless, the Court agrees that a reduction is appropriate because, as GMSR

11   concedes, "not all plaintiffs in the appeal are entitled to attorney fees."  The Court accepts

12   GMSR's proposed 30-percent reduction and shall apply that to AFLC's hours, too.[4]

13                  **2.    Hourly Rates**

14         To show that the requested rates for their counsel are reasonable, the Plaintiffs must

15   "produc[e] satisfactory evidence that [they] are in line with those prevailing in the

16   community for similar services of lawyers of reasonably comparable skill and reputation."

17   Obrien v. FCA US LLC, 2019 WL 5295066, at *5 (N.D. Cal. Oct. 18, 2019) (citing Jordan

18   v. Mulnomah Cty., 815 F.2d 1258, 1263 (9th Cir. 1987)).  The relevant legal community is

19   the forum district.  Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992).  Affidavits

20   from comparably qualified practitioners in the same forum, decisions of other courts, and

21   the Court's own experience are all appropriate guideposts for determining reasonable rates.

22   Obrien, 2019 WL 5295066, at *5.

23         The Plaintiffs have submitted time for 34 attorneys and staff.  Volkswagen does not

24   contest the hourly rates for some of these attorneys and staff, and in a prior Order, the

---

26   [4] Even if GMSR did not propose the 30-percent reduction, the Court would find that

27   this reduction is fair to account for the non-prevailing plaintiffs.  Generally speaking, when
     a group of clients hire the same firm for representation to achieve a common objective,
     they share equally the fees and costs, unless otherwise agreed.  So some apportionment is

28   warranted.

Court has already determined the reasonable hourly rate for a number of these timekeepers. <u>See</u> Or. Awarding Fees and Costs (dkt. 7687). Those previously decided rates apply here as well. The Plaintiffs did not provide information about two attorneys in their motion, so the time for Michelle Cook (.1 hours) and Jeffrey Mukai (3.6 hours) are excluded.

### a. GMSR

The Court declines to reduce the rates of Cynthia Tobisman (Partner, $550.00–$700.00) (25 years of legal practice); Alana Rotter (Partner, $550.00–$650.00) (19 years); Jeffrey Gurrola (Counsel, $400.00–$450.00) (11 years); and Joseph Bui (Counsel, $450.00) (10 years). These lawyers are from Greines, Martin, Stein & Richland LLP, which handled the appeal. Contrary to Volkswagen's suggestion, these GMSR attorneys are not like those at Knight Law. The GMSR lawyers here are State Bar-certified appellate specialists (Tobisman and Rotter); clerked for distinguished judges (Rotter and Bui); and attended top law schools, Yale (Rotter and Gurrola) and Berkeley (Tobisman and Bui). Their hourly rates are reasonable for lawyers with their qualifications. <u>Cf., e.g.</u>, <u>Boyzo v. FCA US LLC</u>, 2020 WL 1914805, at *3 (N.D. Cal. Apr. 20, 2020) (three years ago, approving rate of $650 for Ms. Tobisman based on her "extensive appellate experience") (Spero, J.).

### b. AFLC and Knight Law

As for the remaining attorneys and staff, their hourly rates are reduced based on comparable levels, what other courts have fixed in other cases, and the Court's experience:

- **Gregory Babbitt (Partner, AFLC): $545.00**. <u>See</u> <u>Cardoso v. FCA USA LLC</u>, 2021 WL 1176532, at *3 (N.D. Cal. Mar. 29, 2021) (approving an hourly rate of $545/hour for Babbitt).

- **Arlyn Escalante (Associate, AFLC): $350.00**. <u>See generally</u> Or. Awarding Fees and Costs (dkt. 7687) at 17–22 (rates for comparable consumer law attorneys).

- **Roger Kirnos (Partner, Knight Law): $400.00**. <u>See</u> <u>id.</u>

- **Conor Kelley (Senior Associate, Knight Law): $350.00**. <u>See</u> <u>id.</u>

14

United States District Court
Northern District of California

- **Jacob Cutler (Senior Attorney, Knight Law): 350.00.** <u>See</u> <u>id.</u>
- **Lauren Ungs (Partner, Knight Law): $400.00.** <u>See</u> <u>id.</u>
- **Chris Swanson (Partner, Knight Law): $350.00.** <u>See</u> <u>id.</u>
- **Scott Wilson (Partner, Knight Law): $500.00.** <u>See</u> <u>id.</u>
- **Diana Folia (Paralegal, Knight Law): $125.00.** <u>See</u> <u>Ingram</u>, 647 F.3d at 928 (basing rate on Court's experience).
- **Daniel Kalinowski (Senior Attorney, Knight Law): $250.00.** <u>See</u> <u>Martinez v. Ford Motor Co.</u>, 2021 WL 3129601, at *7 (E.D. Cal. July 23, 2021) (approving an hourly rate of $250 for Kalinowsk); <u>Lin v. BMW of N.A., LLC</u>, 2020 WL 8743479, at *4 (C.D. Cal. Sept. 8, 2020) (same).
- **Zachary Powell (Senior Associate, Knight Law): $250.00.** <u>See</u> <u>In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.</u>, 2021 WL 3163652, at *6 (C.D. Cal. July 22, 2021) (approving an hourly rate of $250 for Powell).

### 3.    <u>Reasonable Hours</u>

Courts should exclude from a fee request any hours not "reasonably expended," including those that are "excessive, redundant, or otherwise unnecessary." <u>Jankey v. Poop Deck</u>, 537 F.3d 1122, 1132 (9th Cir. 2008) (quoting <u>Hensley</u>, 461 U.S. at 434). "Ultimately, a 'reasonable' number of hours equals the number of hours which could reasonably have been billed to a private client." <u>Gonzalez v. City of Maywood</u>, 729 F. 3d 1196, 1202 (9th Cir. 2013).  Volkswagen objects that a number of the Plaintiffs' claimed hours do not meet this standard.

### a.    **Internal Communications and Duplicative Work**

Courts have held that "in general, counsel should not bill for internal communications and communicating with each other, as such time is unnecessary." <u>See</u> <u>Durham v. FCA US LLC</u>, 2020 WL 243115, at *5 (E.D. Cal. Jan. 16, 2020) (collecting cases).  The Ninth Circuit has approved reducing fees for unnecessary internal communications.  <u>Welch v. Metro. Life Ins. Co.</u>, 480 F.3d 942, 949 (9th Cir. 2007).

The Plaintiffs generally agree that time spent on internal communications are not compensable, see GSMR Reply at 8–9, but note that certain entries identified by Volkswagen do not fall into that category.  Specifically, GSMR argues that time spent on internal moot argument sessions and preparation of oral argument, as well as time spent on reviewing the Ninth Circuit's decision in this case are compensable.  Id.  The Court agrees that oral argument preparation is not mere "internal communications" and is reasonable.  Time spent on reviewing court decisions is also compensable.  In reviewing the timesheets, however, it still appears that much of the time are spent on internal "meetings" and "conferences" and involve multiple attorneys, causing duplicative billing from different firms.  Accordingly, the Court removes from Volkswagen's Appendix G time spent on oral argument preparation and on reviewing court decisions, but otherwise agrees with Volkswagen that a 50-percent reduction is warranted.  See Or. Awarding Fees and Costs (dkt. 7687) at 16–17.

### b.      Travel Time

Lawyers from Knight Law, Glaser Weil and CCL have logged more than 30 hours for unproductive travel time—that is, time spent purely on travel to court and depositions.  See, e.g., VW Opp., App'x H ("Flight to SF"; "Travel from LA to SF for trial").  These hours are reduced by 50-percent.  See Celestine v. FCA US LLC, 2019 WL 4274092, at *7 (E.D. Cal. Sept. 10, 2019) ("[C]ourts have frequently reduced travel time by half to create a reasonable rate.") (collecting cases).

### c.      Excessive Work

Volkswagen asserts that two categories of work should be substantially reduced.  VW Opp. at 19.  First, Volkswagen argues hours related to the expert testimony of Dr. George Thurston should be reduced by one-third because the Court allowed him to testify on only two of his three opinions after a Daubert hearing.  Id.  Second, Volkswagen contends that the 20-plus hours spent on preparing for deposition designations should be reduced by 98-percent because the Plaintiffs used less than 2-percent of the deposition testimony they initially designated.  Id.

The Court declines to apply Volkswagen's proportional approach to determine the reasonableness of these hours. Just because a portion of an expert's testimony was deemed unsound or that a party did more preparation work than the attorneys ultimately needed at trial does not mean that the hours spent were unnecessary. It's better to make these adjustments later when the Court evaluates the overall results achieved in this case.

### 4.  <u>Lodestar Reduction</u>

The final step after determining the reasonable rate and hours is to consider whether any adjustments are warranted. "'Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it.'" <u>Camacho v. Bridgeport</u>, 523 F.3d 973, 978 (9th Cir. 2008) (quoting <u>Ferland v. Conrad Credit Corp.</u>, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001)); <u>see also</u> <u>Mikhaeilpoor v. BMW of N. Am., LLC</u>, 48 Cal. App. 5th 240, 247 (Cal. Ct. App. 2020) (recognizing a court may "ascertain whether under all the circumstances of the case the amount of actual time expended and the monetary charge being made for the time expended are reasonable."). Volkswagen bears the "burden of . . . challenging the accuracy and reasonableness" of the lodestar figure. <u>Gates v. Deukmejian</u>, 987 F.2d 1392, 1397–98 (9th Cir. 1992).

Where, as here, there is a massive fee application, "the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure "as a practical means of trimming the fat from a fee application." <u>Gates</u>, 987 F.2d at 1399–1400 (recognizing reductions based on "percentages [ ] are acceptable, and perhaps necessary, tools for district courts fashioning reasonable fee awards"). The Court is mindful that the greater the cut, the greater the explanation it is required. <u>See</u> <u>Vargas v. Howell</u>, 949 F.3d 1188, 1195 (9th Cir. 2020).

### a.  **Post-Rule 68 Offer**

A significant reduction in attorneys' fees is appropriate given the largely wasted litigation following Volkswagen's settlement offer. In the Ninth Circuit, it is well-established that "[w]hen a plaintiff rejects a Rule 68 offer, the reasonableness of an

attorney fee award . . . will depend, at least in part, on the district court's consideration of the results the plaintiff obtained by going to trial compared to the Rule 68 offer." Haworth, 56 F.3d at 1052.  Other circuits agree that a prevailing plaintiff's rejection of a settlement offer may be a factor affecting the amount of the fee award.  See Lohman v. Duryea Borough, 574 F.3d 163, 167–69 (3d Cir. 2009); Sheppard v. Riverview Nursing Ctr., Inc., 88 F.3d 1332, 1337 (4th Cir. 1996); Gurule v. Land Guardian, Inc., 912 F.3d 252, 261 (5th Cir. 2018); Moriarty v. Svec, 233 F.3d 955, 967 (7th Cir. 2000); Dalal v. Alliant Techsystems, Inc., 182 F.3d 757, 761–62 (10th Cir. 1999).  So, too, in California. See Reck, 64 Cal. App. 5th at 700 ("The reasonableness of the tendered section 998 offer in relation to the results obtained by the plaintiff may be a consideration in the overall recovery of a reasonable attorney fee award.").

Here, the Sanwicks' final judgment essentially was their Rule 68 settlement offer. In October 2019, Volkswagen offered them $27,884 to settle.  The Sanwicks' final judgment—after extensive pre-trial motions, trial and appeal (and a petition for rehearing)—was for $28,133.  In other words, after over a thousand hours later, all the Sanwicks got was $249 more than what they could have received almost four years ago. That the Plaintiffs' attorneys racked up over $620,000 in fees and expenses and prolonged litigation to achieve the same (and arguably worse) result is breathtaking.  That is, if inflation is considered, the Sanwicks lost $4,462.67 by rejecting Volkswagen's Rule 68 offer.  See Monahan Decl., Ex. 2 (dkt. 8163-20) (CPI calculation).[5]

There's no way for the Plaintiffs' attorneys to sugarcoat this—their attempt to do so is disingenuous.  See Knight Law Mot. at 6 (self-proclaiming "Plaintiffs' attorneys . . . achieved superlative results."); id. at 4 ("Plaintiffs' recovery are excellent by any measure."); Knight Law Reply at 15 (asking for a multiplier because of "excellent result"). Tellingly, neither GMSR nor AFLC boasted the results like the way Knight Law did.

---

[5] This begs the question, and perhaps it's a moot point: Under Rule 68, is the judgment that the Sanwicks finally obtained truly "more favorable" than the unaccepted offer?

1    The question, then, is what the attorneys' fees should be considering the Rule 68

2    offer.

3        To be sure, litigation post offer largely was wasted.  In similar situations, courts

4    have exercised discretion to either outright reject post-offer fees or substantially reduce

5    them.  For instance, the Ninth Circuit has held that a district court did not abuse its

6    discretion by denying attorney's fees for the period following a defendant's Rule 68 offer

7    where "to the extent that the terms of the final judgment exceeded, if at all, the terms of the

8    Rule 68 offer, that benefit accrued only to Plaintiff's lawyer."  Hatami v. Kia Motors Am.,

9    Inc., 544 F. App'x 724, 725 (9th Cir. 2013) (citing Haworth, 56 F.3d at 1052); see also

10   Hatami v. Kia Motors Am., Inc., 2011 WL 13142641, at *4 (C.D. Cal. Oct. 31, 2011)

11   (finding that the differences in the original and accepted Rule 68 offer immaterial); Salazar

12   v. Glenn E. Thomas Co., Inc., 2021 WL 5230798, at *4 (C.D. Cal. Nov. 5, 2021) (denying

13   Knight Law's post-offer fees because "the additional hours spent litigating this case

14   primarily benefitted the [plaintiffs'] counsel," and "the Court cannot see how an additional

15   eight months of litigation produced a more favorable outcome for the [plaintiffs]").

16       Self v. FCA US LLC is instructive.  2019 WL 1994459, at *10 (E.D. Cal. May 6,

17   2019).  There, the court reduced Knight Law's post-offer fees by 70-percent where the jury

18   award was only "marginally better": $4,666 more than the Rule 68 offer.  Id.  The plaintiff

19   recovered $84,666 from going to trial—i.e., over three times what the Sanwicks received.

20   Id.  The plaintiff's final judgment, which was achieved one year after the Rule 68 offer,

21   was 5.8-percent more than her Rule 68 offer.  Id. at *2, 10.  In comparison, the Sanwicks'

22   final judgment here isn't even 1-percent more than the Rule 68 offer.  The Self court

23   reduced the fees request by 70-percent, for a total lodestar of $37,164.

24       Similarly, in Patty v. FCA US, LLC, the court reduced Knight Law's fees by 70-

25   percent.  2020 WL 1082773, *2 (E.D. Cal. Mar. 6, 2020).  There, the defendant initially

26   offered $90,000 to settle the case, which the plaintiff rejected.  Id.  After 1.5 years of

27   litigation and an additional 83 hours, the plaintiff settled for only $9,000 higher than the

28   original offer.  Id.

United States District Court
Northern District of California

19

These cases show that a greater than 70-percent reduction is warranted here. After rejecting the settlement, the Sanwicks received much less than the plaintiffs in Self and Patty did. The Sanwicks' attorneys' post-Rule 68 work produced negligible results, and litigation took almost three times as long as it did in Self and Patty.

### b.    Other Lodestar Factors

Lodestar adjustments often are guided by 12 familiar factors. See Blanchard v. Bergeron, 489 U.S. 87, 92 n.5 (1989); Harman v. City & Cnty. of San Francisco, 158 Cal. App. 4th 407, 416 n.5 (Cal. Ct. App. 2007).[6]

The Supreme Court has held that in deciding attorney's fees, the degree of success obtained is an important factor. See Hensley, 461 U.S. at 436. "[U]nder state law as well as federal law, a reduced fee award is appropriate when a claimant achieves only limited success." Sokolow v. Cty. of San Mateo, 213 Cal. App. 3d 231, 249 (Cal. Ct. App. 1989)). "A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether." Serrano v. Unruh, 32 Cal. 3d 621, 635 (Cal. 1982); Chavez v. City of Los Angeles, 47 Cal. 4th 970, 990 (Cal. 2010).

In judging the plaintiff's success and the reasonableness of hours, the Court may consider "the amount of damages awarded as compared to the amount sought.'" Farrar v. Hobby, 506 U.S. 103, 114 (1992) (quoting Rivera, 477 U.S. at 586). "Such a comparison promotes the court's 'central' responsibility to 'make the assessment of what is a reasonable fee under the circumstances of the case.'" Id.; Guillory v. Hill, 36 Cal. App. 5th 802, 806 (Cal. Ct. App. 2019).

At trial, the Sanwicks sought $78,166.92 in economic damages and $582 million in punitive damages. Despite making this huge demand, the Plaintiffs offered no damages

---

[6] The 12 factors that may be considered to adjust the lodestar figure include: "(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."

United States District Court
Northern District of California

expert to support their alleged economic damages, thereby leaving Volkswagen's expert's opinion of the fair market value of their car unchallenged.  And the Plaintiffs invested over $30,000 in fees on the baseless argument that the fair market value of the cars was zero.  See VW Opp., App'x D, § 1.  The jury awarded the Sanwicks $3,133 as compensatory damages—i.e., the amount calculated by Volkswagen's expert.  It later awarded the Sanwicks $25,000 in punitive damages, which the Ninth Circuit found permissible.  See Riley, 51 F.4th at 903 & n.6.  The Sanwick's final judgment amount was near zero percent of what they (or their attorneys) wanted.

The Plaintiffs' strategy for a huge payday essentially was hoping to hit the jackpot with punitive damages.  To be sure, "[s]ometimes legal efforts that are reasonable ex ante look bad ex post."  Cole v. Wodziak, 169 F.3d 486, 488 (7th Cir. 1999).  In plain English:  Reasonable efforts could look unreasonable with the benefit of hindsight.  But that's not what happened here.  From the start, the Plaintiffs' attorneys just focused on punitive damages and essentially ignored what the cases were truly worth.  And they should have known that even if they had persuaded the jury to award a huge sum, it would have been hard to pass constitutional muster.  See State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 425 (2003) ("[s]ingle-digit multipliers are more likely to comport with due process"); Riley, 51 F.4th at 903 (capping punitive damages by a 1-to-8 ratio).  That the results obtained were abysmal relative to what the Plaintiffs sought weighs in favor of a downward adjustment.

Other factors also support a significant cut.  The time and labor required for resolution of this case could have been quick.  This was a run-of-the-mill CLRA/Song-Beverly case for Knight Law, which it self-proclaims to be "the largest and most respected lemon law firm in California," Knight Law Reply at 12.  The trial attorneys' performance here, however, was subpar and riddled with bad arguments and unnecessary motions.  Moreover, as an individual action in the MDL, the Sanwicks' case did not involve many complex issues.  There's also no indication that Knight Law, as a repeated lemon law player in California courts, was precluded from accepting other cases because it was busy

21

United States District Court
Northern District of California

prosecuting this one.  Nor have the other firms made such a showing.

Additionally, the Court, having presided over the MDL for over eight years, has learned what it reasonably takes to prosecute these cases to a fair result and what reasonable fee awards look like in cases involving the same or similar controversies.  See, e.g., In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig., No. 6903, 2020 WL 2086368, at *9 (N.D. Cal. Apr. 30, 2020) (awarding Johnston $22,234.50 in fees and the Walkers $19,540.50 in fees); Vodonick v. Volkswagen Aktiengesellschaft, 2020 WL 6081822, at *8 (N.D. Cal. Oct. 15, 2020) (awarding Vodonick $21,175 in fees); see also, e.g., Self, 2019 WL 1994459, at *10 (awarding Knight Law and co-counsel $37,164 after reductions); Patty, 2020 WL 1082773, *3 (awarding Knight Law $11,050 after reductions).  Although most of these cases did not involve a full trial and appeal, they illustrate the level of legal work it could have taken the Sanwicks to achieve a similar result.

Finally, the Court acknowledges that appellate counsel had minor success before the Ninth Circuit, but at the end of the day, it was largely inconsequential, and the Court must consider the litigation as a whole.

### c.    Percentage Reduction

After carefully considering all the circumstances, the Court finds that an 85-percent reduction of the Plaintiffs' post-offer fees is appropriate.

An 85-percent reduction certainly is steep, but it nonetheless is warranted given Volkswagen's Rule 68 offer and the bad result here.  This cut falls within the 70 and 100-percent reduction that other courts have applied in similar cases.  In Self and Patty, see supra, the courts reduced the fees by 70-percent.  A greater cut is warranted in this case because the Sanwicks achieved a worse result than the plaintiffs there.  Although Volkswagen primarily argues that the Court should deny post-offer fees altogether, the Court declines to do so out of respect for the Plaintiffs'—and future plaintiffs'—right to reject settlement offers and have their day in court.  See Reck, 64 Cal. App. 5th at 700.

The Ninth Circuit has recognized that "no reasonable person would pay lawyers

$148,000 to win $34,000," McGinnis, 51 F.3d at 810, let alone, here, pay $623,000 to win $28,133.  The Seventh Circuit, too, has noted that "[a] fee 19 times the damages"—here, requesting over 20 times—"is off the map."  Cole, 169 F.3d at 488.  To give the Plaintiffs' attorneys what they've asked for would reward their gamesmanship in racking up unnecessary work and hours.  It's clear that the only one who "benefited by pursuing the litigation after the Rule 68 offer was made was the plaintiffs' attorney."  Haworth, 56 F.3d at 1052.[7]

### d.    Fees-on-Fees

Knight Law and GSMR also request $19,861 in "fees-on-fees" for anticipated work in connection with the Plaintiffs' reply briefing and oral argument on their fees request. Because the Court has vacated the hearing and is ordering the parties to submit a joint proposed order, see infra, the attorneys should now account for actual hours rather than anticipated hours.

Furthermore, hours spent on the fee application is also subject to the 85-percent reduction.  Knight Law argues that "even if Plaintiffs ha[d] accepted the Rule 68 Offers they would have needed to file motions for attorney's fees, costs, and expenses."  Knight Law Reply, at 4.  GSMR similarly argues that "fees-on-fees are unquestionably recoverable under California law."  GSMR Reply, at 11.  It's true that hours spent on fee applications are recoverable.  See Doppes v. Bentley Motors, Inc., 174 Cal. App. 4th 967, 1002 (Cal. Ct. App. 2009).  But the application for fees and costs would have been far simpler—$863.61 for the Sanwicks—if it included only pre-Rule 68 billings.  See VW Opp. at 25.  And Volkswagen probably would have paid it without the need to file lengthy motions.

---

[7] The Plaintiffs attorneys' request for a 1.4 positive multiplier on fees is, of course, rejected.  See dkt. 7687 at 22–23 (denying positive multiplier).  In its reply, GSMR does not defend its position that a positive multiplier is warranted.  It focused on arguing that the Court should reject Volkswagen's suggested 80-percent negative multiplier.  See GMSR Reply, at 9–10; see also Turnage v. Old Dominion Freight Line, Inc., 2013 WL 2950836, at *2 (N.D. Cal. June 14, 2013) (noting "Plaintiff appears to have conceded []by absence of argument in the reply brief").

United States District Court
Northern District of California

### E.      Costs and Expenses

The Plaintiffs are seeking $45,334.20 in costs and expenses.  Volkswagen does not challenge the Plaintiffs' expenses incurred before the Rule 68 offer, so this section focuses on post-offer expenses.  Costs, like fees, are reviewed for reasonableness.  See Obrien, 2019 WL 5295066, at *7.

#### 1.      Expert Costs

It is well-established that a CLRA plaintiff is not entitled to recover expert-related costs unless the expert was ordered by the court.  Cal. Civ. Proc. § 1033.5(b); see, e.g., Henderson v. J.M. Smucker Co., 2014 WL 2723876, at *9 (C.D. Cal. 2014); First Nationwide Bank v. Mountain Cascade, Inc., 77 Cal. App. 4th 871, 875–76 (Cal. Ct. App. 2000).  The Plaintiffs' attempt to rely on the Song-Beverly Act as their statutory basis to recover expert costs is rejected because they did not prevail under that claim.  Accordingly, the expert-related costs identified in Volkswagen's Appendix O are excluded.

#### 2.      Travel

First class flights: $4,001.80; $333.77; $318.40.[8]

Executive van service: $250 (for four blocks).[9]

Uber Black SUV: $184.55.[10]

The price is not right.

In reviewing the Plaintiffs' invoices spanning 363 pages, see dkt. 8142-2, the Court is troubled by some lavish spendings of the attorneys and experts alike.[11]

For the attorneys, local travel expenses unrelated to attending depositions are denied in full.  See Gorman v. Tassajara Dev. Corp., 178 Cal. App. 4th 44, 72 (Cal. Ct. App.

---

[8] Id. at 285; id. at 78 (Los Angeles to San Francisco); id. at 252 (San Francisco to Santa Ana).

[9] Id. at 80 (hotel to courthouse).

[10] Id. at 242 (San Francisco to Oakland International Airport).

[11] For example, the Plaintiffs' punitive damages expert, Dr. Charlton, spent $2,002.28 at the San Francisco Proper Hotel over two nights. Id. at 42.  He later, in his own words, "mov[ed] to [a] less expensive hotel" at the Omni where he spent $342.45 to $454.39 per night. Id.  Even if there is a basis to recover expert-related expenses (there is not), the Court would reject such excessive spendings.  It doesn't take an expert to know that these costs were "expensive."

United States District Court
Northern District of California

2009) ("[Section 1033.5] does not provide for recovery of local travel expenses by attorneys and other firm employees unrelated to attending depositions."). Non-local travel by first or business class flights and rides by premium car services (e.g., Uber Black or Uber Black SUV) are reduced by 70%. See Apple Inc. v. Samsung Elecs. Co., 2014 WL 2854994, at *3 (N.D. Cal. June 20, 2014).

All other items identified in Volkswagen's Appendix P are reduced by 50% because much of the spendings were for the attorneys' own convenience and comfort (e.g., hotel catering and room services), not reasonable or necessary, or not properly itemized. See Parkinson v. Hyundai Motor Am., 796 F. Supp. 2d 1160, 1176 (C.D. Cal. 2010); Hawthorne v. Umpqua Bank, 2015 WL 1927342, at *7 (N.D. Cal. Apr. 28, 2015). The Plaintiffs do not seriously defend against the lavishness of some of their business travel.[12]

### 3. Miscellaneous Items

Expenses for copies of documents other than exhibits, legal research, transcripts, meals, overnight courier services, and certain printing services, see VW Opp., App'x O, are excluded. See Bonner v. Fuji Photo Film, 2008 WL 410260, at *7 (N.D. Cal. Feb. 12, 2008) (noting section 1033.5(b) "expressly precludes . . . fees for legal research (computer or otherwise), and postage and photocopying charges for non-exhibits").

## IV. CONCLUSION

The parties shall file a joint proposed order with a stipulated fees and costs award in amounts consistent with the rulings in this Order. If the parties cannot agree on the correct amounts, they should instead file a concise explanation detailing their disputes regarding how to apply this Order.

The joint proposed order must be filed by July 7, 2023.

**IT IS SO ORDERED.**

---

[12] It's immaterial that the trial attorneys are submitting expenses for only one-seventh of the total. They did so because only one of their seven clients is entitled to fees and costs. Moreover, one-seventh of lavishness can still be lavish.

Dated: June 20, 2023

CHARLES R. BREYER
United States District Judge