TODD KIM
Assistant Attorney General
Environment and Natural Resources Division

BETHANY ENGEL (MA-660840)
    U.S. Department of Justice
    P.O. Box 7611
    Washington, D.C. 20044-7611
    Telephone: (202) 514-6892
    Facsimile: (202) 514-0097
    Email: Bethany.Engel@usdoj.gov
Attorneys for Plaintiff United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>*United States v. Volkswagen AG et al.,* Case No. 16-cv-295 (N.D. Cal.) | MDL No. 2672 CRB<br><br>**DECLARATION OF CARLA LUGO MARTIN IN SUPPORT OF JOINT REQUEST FOR COURT APPROVAL OF MODIFICATIONS TO INDIAN TRIBE TRUST AGREEMENT** |

Pursuant to 28 U.S.C. § 1746, Carla Lugo Martin, based on my personal knowledge declare as follows:

1. I am a Legal Assistant at the United States Department of Justice, Environmental and Natural Resources Division, Environmental Enforcement Section and participated in and took notes at the May 24, 2022, listening session with Designated Beneficiaries for the above-captioned matter. If called as a witness, I could and would testify competently under oath to the facts below.
2. On May 9, 2022, I sent a letter via email to the 119 Designated Beneficiaries of the Trust inviting them to attend the teleconference listening session scheduled on May 24, 2022, at 1pm EST.
3. Attached as Exhibit 1 is a true and correct copy of the invitation that was sent to the Designated Beneficiaries of the Trust on May 9, 2022.
4. On May 19, 2022, I emailed the Mitigation Trust Discussion Framing Letter to the Designated Beneficiaries, on behalf of Deputy Assistant Attorney General Gina Allery.
5. Attached as Exhibit 2 is a true and correct copy of the framing letter that was sent to the Designated Beneficiaries of the Trust on May 19, 2022.
6. On May 24, 2022, I joined the teleconference listening session. The meeting began at 1:00pm EST and ended at 2:38pm EST.
7. At the beginning of the call, participants from the U.S. Department of Justice, the U.S. Environmental Protection Agency, and the Wilmington Trust ("Trustee") introduced themselves.
8. During the opening remarks, the agencies and the Trustee discussed the Tribal Subaccounts Remainder Balance, which at the time of the meeting was around $3.27 million.
9. We discussed that a fifth cycle, if held, would limit participation to the 119 tribes that previously qualified as Beneficiaries and if all 119 Designated Beneficiaries decided to

1. participate in a fifth funding cycle, disbursements to Beneficiaries would range between $14,000 and $360,000, based on a hypothetical allocation using the allocation formula in the Trust Agreement and the Tribal Subaccounts Remainder Balance.
10. The agencies clarified that in accordance with previous funding cycles, under a fifth funding cycle Trust Funds would be distributed to Beneficiaries only for Eligible Mitigation Actions pursuant to the Trust Agreement.
11. We discussed modifying the Trust Agreement to allow for a direct distribution of the money remaining in the Tribal Subaccounts, plus other Trust Funds, to the 119 Designated Beneficiaries, as an alternative to a fifth funding cycle.
12. The agencies clarified that if direct distribution were possible, distribution would be based on the existing allocation formula in the Trust Agreement and Tribes would need to return any unused funds. The Trustee estimated that disbursements to Beneficiaries under a hypothetical direct distribution allocation using the Tribal Subaccounts Remainder Balance of $3.27 million, plus other Trust Funds, would range between $23,000 and $588,000.
13. After describing the terms of a fifth funding cycle and the alternative proposal, the attendees were asked to answer these two questions:
    a. As with the previous four funding cycles, the distribution of Trust funds under a fifth cycle is dependent in part on the number of Beneficiaries that elect to participate and the Eligible Mitigation Actions for which they seek funding. Is the Tribe(s) you represent likely to participate in a fifth funding cycle, if one is held? If not, why not?
    b. Do you anticipate the Tribe you represent would be in a position to use NOx mitigation project funds if they were made available as a time-limited direct distribution? Is it more likely if Beneficiaries are not limited to the current project list?

14. Most tribal participants favored the direct distribution of Trust funds for mitigation actions with flexible project options.

15. No tribal participant opposed the direct distribution of Trust funds or the expansion of the mitigation actions beyond the current list.

**Expanding Mitigation Project List**

16. Of the 22 tribal participants that spoke during the call, at least 17 expressed the need for expanding the mitigation project list.

17. Two tribes expressed that they did not participate in any of the previous four funding cycles due to the limited mitigation action list.

18. One tribe, that participated in all funding cycles, suggested the addition of non-road engines as well as portable and non-portable generators to the project list.

19. One tribe that preferred direct distribution, stated they would participate in a fifth funding cycle, if, and only if, EV chargers were a project they could fund.

20. One tribal participant suggested including solar panels in the project list.

**Cost Increases**

21. Many participants shared their experiences with increases in labor, utilities, and materials costs and surcharges during the fourth funding cycle.

22. At least three tribes, were not able to fully fund their approved projects for the fourth funding cycle.

23. Some tribes asked for approval to use fifth cycle funds or direct disbursements to fund approved fourth cycle projects.

24. Some tribes whose funding went towards purchasing trucks and buses, explained that dealers provided estimated quotes, but once the tribe received approval and funding, the quotes increased. For example, three tribes could not purchase the number of vehicles they received approval for, because dealership costs increased significantly.

25. One tribal participant voiced that their fourth cycle project resulted in $100,000 in

surcharges.

**Timeline Concerns**

26. Nine tribal participants voiced their concerns over a timeline for using funding.

27. Many experienced supply chain and delivery delays during the fourth funding cycle that hindered the implementation of their approved projects. For example, a couple of tribes ordered vehicles that were on backorder for at least 11 months.

Dated: October 20, 2023

*Carla Lugo Martin*
Carla Lugo Martin
Legal Assistant
Environmental Enforcement Section
Environment and Natural Resources Div.
United States Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Telephone: (202) 532-3339
carla.lugo.martin@usdoj.gov