Ira M. Levin
    ilevin@burkelaw.com, *pro hac vice*
Danielle J. Gould
    dgould@burkelaw.com, *pro hac vice*
Joshua J. Cauhorn
    jcauhorn@burkelaw.com, *pro hac vice*
BURKE, WARREN, MACKAY & SERRITELLA, P.C.
330 North Wabash Avenue, 21st Floor
Chicago, Illinois 60611
Telephone:    312.840.7000
Facsimile:    312.840.7900
*Attorneys for Plaintiffs*
ICONIC MOTORS, INC. d/b/a ELGIN VOLKSWAGEN
SLEVIN CAPITAL INVESTMENTS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re: Volkswagen 'Clean Diesel' Marketing, Sales Practices, and Products Liability Litigation*<br><br>This document relates to: 17-cv-3185-CRB | LEAD CASE No. 15-md-02672- CRB<br><br>Hon. Charles R. Breyer<br><br>**PLAINTIFFS ICONIC MOTORS, INC. d/b/a ELGIN VOLKSWAGEN AND SLEVIN CAPITAL INVESTMENTS, INC.'S OPPOSITION TO ROBERT BOSCH GMBH AND ROBERT BOSCH LLC'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  April 11, 2025<br>Time:  10:00 a.m. |

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT.................................................................1

BACKGROUND..........................................................................................................................3

    I.    THE VW-BOSCH CONSPIRACY DAMAGED THE ICONIC PLAINTIFFS........................................................................................................3

    II.   THE ICONIC PLAINTIFFS SUE VW AND BOSCH............................................5

    III.  THE PARTIES ENGAGE IN COMMON DISCOVERY......................................6

    IV.  BOSCH'S MOTION. ..............................................................................................7

ISSUE TO BE DECIDED ..........................................................................................................8

ARGUMENT ..............................................................................................................................8

    I.    LEGAL STANDARD. .............................................................................................8

    II.   THE ICONIC PLAINTIFFS' DAMAGES ARE COGNIZABLE UNDER RICO. .....................................................................................................................8

         A.    The Iconic Plaintiffs Suffered Injury To "Business Or Property." ...............9

              1. There is legally cognizable harm to SCI…………………………………..11

              2. There is legally cognizable harm to Elgin VW…………………………...13

         B.    The Iconic Plaintiffs' Harms Are Distinguishable From The *Napleton* Dealers. ................................................................................15

    III.  THE CONSPIRACY CAUSED THE ICONIC PLAINTIFFS' RICO DAMAGES. .........................................................................................................16

    IV.  THE CONSPIRACY CAUSED THE ICONIC PLAINTIFFS' ILLINOIS CIVIL CONSPIRACY DAMAGES. ....................................................................22

    V.   THE VW SETTLEMENT DOES NOT ABSOLVE BOSCH. ..............................22

    VI.  BOSCH'S CITATION TO DOCUMENTS DEMONSTRATES A FACTUAL DISPUTE AND NEED FOR DISCOVERY....................................23

CONCLUSION ........................................................................................................................25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Federal Rules of Civil Procedure**

3

*Fed R. Civ. P. 56(d)*………………………………………………………………………………………..23

4

**Cases**

5

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006) ...................................... 16, 20, 21

6

*Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008) ............................ 17, 21

7

*Calloway v. Bovis Lend Lease, Inc.*, 995 N.E.2d 381 (Ill. App. Ct. 2013) .................................... 22

8

*Canyon Cty. V. Syngenta Seeds, Inc.*, 519 F.3d 1146 (9th Cir. 2016) ........................................... 9

9

*Chesapeake Employers' Ins. Co. v. Eades*, 77 F. Supp. 3d 1241 (N.D. Ga. 2015)........................ 14

10

*Corcel Corp. v. Ferguson Enters*, 551 Fed. Appx. 571 (11th Cir. 2014) ...................................... 15

11

*Dement v. Abbott Capital Corp.*, 589 F. Supp. 1378 (N.D. Ill. 1984) .......................................... 15

12

*Diaz v. Gates,* 420 F.3d 897 (9th Cir. 2005)  ............................................................. 9, 14, 21

13

*Dwyer v. Bicoy*, No. SACV 09-0064 -JVS(RNBx), 2009 U.S. Dist. LEXIS 140850 (C.D. Cal. Nov.

14

   17, 2009) ...................................................................................................... 17, 21

15

*Flintkote Co. v. Lysfjord*, 246 F.2d 368 (9th Cir. 1957)......................................................... 23

16

*Giammanco v. Giammanco*, 625 N.E.2d 990 (Ill. App. Ct. 1993)............................................ 10, 22

17

*Glob. Master Int'l Grp., Inc. v. Esmond Natural, Inc.*, 76 F.4th 1266 (9th Cir. 2023)............... 9, 16

18

*Hall v. Trivest Partners, L.P.*, No. 22-12743, 2023 WL 5941729 (E.D. Mich. Sep. 12, 2023) ..... 21

19

*In re Am. Express Co. S'holder Litig.*, 39 F.3d 395 (2d Cir. 1994) ............................................... 20

20

*In re Application of Busse*, 464 N.E.2d 651 (Ill. App. Ct. 1984)................................................. 15

21

*In re Duramax Diesel Litig.*, 298 F. Supp. 3d 1037 (E.D. Mich. 2018) ........................................ 12

22

*In re Volkswagen "Clean Diesel" Mktg.*, No. 3:15-md-02672-CRB, 2017 WL 4890594 (N.D. Cal.

23

   Oct. 30, 2017) ................................................................................................ 12, 13, 18

24

*Kinsey v. Scott*, 463 N.E.2d 1359 (Ill. App. Ct. 1984) ............................................................ 12

25

*Maiz v. Virani*, 253 F.3d 641 (11th Cir. 2001).................................................................... 13

26

*Marianas Hosp. Corp. v. Premier Bus. Sols. Inc.*, No. 07-00002, 2009 WL 750247 (D. Guam Jan.

27

   14, 2009).......................................................................................................... 20

28

*Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163 (9th Cir. 2002) ........................................................ 13

*Meng v. Schwartz*, 116 F. Supp. 2d 92 (D.D.C. 2000) ........................................................... 20, 21

*Moore v. PaineWebber, Inc.*, 189 F.3d 165 (2d Cir. 1999) ....................................................... 13

*Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099 (9th Cir. 2000) .......................... 8

*Oki Semiconductor Co. v. Wells Fargo Bank, N.A.*, 298 F.3d 768 (9th Cir. 2002) ...................... 17

*Oscar v. University Students Co-operative Ass'n*, 965 F.2d 783 (9th Cir. 1992) .......................... 10

*Painters & Allied Trades District Council 82 Health Care Fund v. Takeda Pharmaceuticals Co.*,

    943 F.3d 1243 (9th Cir. 2019) ......................................................... 17, 21, 25

*Rise Basketball Skill Dev., LLC v. K Mart Corp.*, No. 16-CV-04895-WHO, 2017 WL 2775030 (N.D.

    Cal. June 27, 2017) ......................................................... 16

*Sarno v. Thermen*, 608 N.E.2d 11 (Ill. App. Ct. 1992) ......................................................... 23

*Sheperd v. Am. Honda Motor Co., Inc.*, 822 F. Supp. 625 (N.D. Cal 1993) ........................... 21, 22

*Sound Video Unlimited, Inc. v. Video Shack, Inc.*, 700 F. Supp. 127 (S.D.N.Y.1988) .................. 15

*State of Wash. v. Am. Pipe & Const. Co.*, 280 F. Supp. 802 (W.D. Wash. 1968) ...................... 18

*Tauscher v. Phoenix Bd. of Realtors, Inc.,* 931 F.3d 959 (9th Cir. 2019) .................................... 8

*Time Savers, Inc. v. LaSalle Bank, N.A.*, 863 N.E.2d 1156 (Ill. App. Ct. 2007) ......................... 10

*United States v. Moeser*, No. 11-CR-127, 2013 WL 6176702 (E.D. Wis. Nov. 21, 2013) ........... 18

*Wallace v. Midwest Fin. & Mortg. Servs. Inc.*, 714 F.3d 414 (6th Cir. 2013) ...................... 18, 21

iii

## INTRODUCTION AND SUMMARY OF ARGUMENT

Bosch[1] opens its Motion with a false premise: that the Iconic Plaintiffs present the same fact pattern for causation and damages asserted by the class of VW dealers (the "*Napleton* Dealers") whose claims were dismissed by this Court. This is false because the Iconic Plaintiffs—one of which is not even a VW dealer—did not fall within the definition of the dealer class. Their causation and damages theories are based on unique factual allegations that are meaningfully distinct from those of the *Napleton* Dealers. This Court has already recognized the impact of these factual differences as to what is legally compensable under RICO in denying Bosch's motion to dismiss:

> The Bosch defendants' argument does not take into account that for two years prior to the EPA's first notice of violation, the *Iconic Motors* plaintiffs spent millions of dollars to construct a dealership that was customized to Volkswagen's branding requirements. Plaintiffs made this investment without any knowledge of the defeat-device scheme, and they allege that they would not have made the investment had they known about the scheme. Taking these allegations as true, [citation omitted], they plausibly support an injury to 'business or property' recoverable under RICO.

[Dkt. 7031 at 1–2.]

Bosch ignores this ruling. It instead repeats that it cannot be held responsible for the damage to the Iconic Plaintiffs from its conspiracy with VW to design and implement emissions defeat devices on VW vehicles—*e.g.,* such as their lost investment in the land on and the facility in which the Elgin VW dealership was to operate—arguing that such injury is not legally cognizable under RICO or Illinois civil conspiracy. However, Bosch presents no evidence, and certainly not the undisputed evidence required at the summary judgment stage, to in any way undermine the factual premise of the Iconic Plaintiffs' claims that distinguishes them from those of the *Napleton* Dealers. Simply, the Iconic Plaintiffs never would have moved forward with a more than ███████ investment if they had known the truth that: (a) VW was misrepresenting its purportedly premium, environmentally friendly brand; (b) misrepresenting its profitability projections premised on the

---

[1] "Bosch" means, collectively, Defendants Robert Bosch LLC ("Bosch LLC") and Robert Bosch GmbH ("Bosch GmbH"). "Iconic Plaintiffs" means, collectively, Iconic Motors, Inc. d/b/a Elgin Volkswagen ("Elgin VW") and Slevin Capital Investments, Inc. ("SCI"). "Motion" means Bosch's Motion for Summary Judgment. [Dkt. 8227.] "VW" means, collectively, Volkswagen Group of America, Inc. and Volkswagen Aktiengesellschaft.

1

1    future sale of (then unknown to the Iconic Plaintiffs) illegal vehicles; (c) and concealing the truth

2    that it was conspiring with Bosch to install emissions defeat devices. Revisiting Bosch's arguments

3    at summary judgment is thus not a presentation of developed evidence but instead a misleading

4    rehash of an argument this Court already rejected.

5         Bosch's motivation to effectively move for reconsideration appears strategic. Bosch was

6    otherwise facing resolution of its dispute with the Iconic Plaintiffs regarding requests for admission

7    to which it was refusing to respond (which it had given the impression it would do for months

8    through stipulations) or a motion to compel. These requests for admission sought information

9    relevant to proving that the Iconic Plaintiffs' damages were proximately caused by Bosch and VW's

10   conspiracy. The Iconic Plaintiffs also made it no secret that they would soon move to remand this

11   case to Illinois where it was filed and where additional discovery should proceed.[2]

12        It seems Bosch also hopes to influence this Court by pointing to ████████████████

13   ██████████████████████████████████████████████████████████████████████████████

14   without submitting evidence to meet Bosch's burden as the movant. ████████████████████

15   ██████████████████████████████████████████████████████████████████████████████

16   ██████████████████ Significant factual issues remain and should be resolved in Illinois.[3]

17        As this Court recognized at its December 6, 2024 conference, Bosch's Motion only presents

18   a "threshold" issue of whether the Iconic Plaintiffs' damages theories (in concept) are available

19   under RICO and Illinois civil conspiracy, *not* that there is not enough evidence of a specific damages

20

---

21   [2] Following Bosch's filing of the Motion, the Iconic Plaintiffs filed their intended motion to remand, which
22   this Court indicated it would expect to grant in the event Bosch's Motion is denied. [Dkt. 8249 at 5:18–20
     ("On the other hand, if I decide that, no, there is a basis, a plausible basis, one that survives summary
23   judgment as to damages, then it will go back to Illinois to be tried.").]

24   [3] Bosch does not argue that, **upon completing discovery**, there is insufficient undisputed evidence supporting
     an otherwise valid legal theory. Nor could it. Discovery is not complete. While the parties have diligently
25   worked through common discovery, Bosch is now refusing to fulsomely answer discovery regarding its
     conspiracy with VW, there is no scheduling order in place, and the parties have conducted little to no
26   discovery into the Iconic Plaintiffs' unique damages. [Dkt. 8231-2 at 13.] The Iconic Plaintiffs intended to
     seek remand to Illinois to perform discovery into its individual damages (*e.g.*, of property appraisers and
27   experts relative to the Iconic Plaintiffs' damages), which is all based in Illinois and thus far more efficient to
     conduct out of an Illinois court. [*Id.*] This aligns with Bosch's prior agreement to remand and the Court's
28   logic in keeping the case in 2018 for purposes of common discovery. [Dkt. 5103 at 5–6.]

2

Lead Case No. 15-md-02672-CRB
ICONIC PLAINTIFFS' OPPOSITION TO ROBERT BOSCH GMBH AND ROBERT BOSCH
LLC'S MOTION FOR SUMMARY JUDGMENT

number. [Dkt. 8249 at 12:18–20 ("[Bosch is not arguing] that [Plaintiffs] got the wrong number. They're saying no number arising out of this would be compensable.").] Accordingly, this Court should rule consistent with its prior ruling as to this "threshold" issue, deny the Motion, and remand this case to Illinois so that the parties can proceed with individual discovery as detailed in the attached Federal Rule of Civil Procedure 56(d) affidavit, including what they anticipate they will prove relating to proximate causation and their unique and individualized injuries.

## BACKGROUND

### I.    THE VW-BOSCH CONSPIRACY DAMAGED THE ICONIC PLAINTIFFS.

William Slevin, president of SCI and Elgin VW, has been an automobile dealer principal for over 35 years and has operated multiple successful dealerships. [**Exhibit A** (Declaration of William A. Slevin ("Slevin Decl.") ¶¶ 1, 3).] During 2013, Mr. Slevin sought out new business ventures and, as an established automotive dealer, had multiple new dealership opportunities he could pursue. [*Id.* ¶ 6.] Based on communications with, and representations by, VW representatives, Mr. Slevin applied to enter a business relationship with VW to build and open a new dealership in Elgin, Illinois as an "add point" dealership. [*Id.* ¶ 7.] An "add point" is an additional dealership within a geographic marketing area that is not replacing an existing dealer. [*Id.*]

Around this time, VW's representations to Mr. Slevin included its lauding of its past and future performance, including its "turbocharged direct injection" diesel vehicles ("TDIs"), and explicit representations about VW's environmentally friendly technologies, positive outlook for an Elgin dealership, and its high potential for profitability. [*Id.* ¶ 8.] VW provided Mr. Slevin profitability forecasts, which included sales of vehicles in which the Iconic Plaintiffs later learned VW installed the defeat device Bosch manufactured. [*Id.*] Mr. Slevin and SCI relied upon these numbers and statements in deciding to apply to VW as a new dealer. [*Id.*] They had no knowledge that VW was installing the defeat device manufactured by Bosch in its vehicles. [*Id.* ¶¶ 8–9.]

From a competitive field, VW selected Mr. Slevin to be the "add point" in Elgin, Illinois, including based on his status as an experienced dealer. [*Id.* ¶¶ 7, 11.] ███████

███████████████████████████████████████████████████████████████████

---

3

1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████████

6 ████████████████████████████████████████████████████████

7 ████████████████████████

8    Following this significant investment, and mere weeks before Elgin VW was set to open its

9 doors, on September 18, 2015, the Environmental Protection Agency ("EPA") issued a Notice of

10 Violation of the Clean Air Act ("First NOV") to VW. [*Id.* ¶ 18.] Shortly thereafter, VW's General

11 Manager for Network Development in the Midwest Region, Gordon Munroe, provided Mr. Slevin

12 assurances about the business arrangement in which Mr. Slevin was already ████████ in the hole,

13 specifically that the First NOV was only a minor bump in the road. [*Id.* ¶ 19.] Mr. Munroe assured

14 Mr. Slevin that the matters addressed in the First NOV were limited, would be addressed and

15 resolved quickly by VW, and that Elgin VW would still be expected to make the projected profits

16 promised by VW. [*Id.*] Mr. Munroe also assured Mr. Slevin that VW was taking steps to minimize

17 the impact of the First NOV on its sales and to incentivize customers to purchase VW vehicles and

18 that VW would fix the issue within three to four months. [*Id.*] Lacking any realistic choice given

19 the investment of more than ████████ and also lacking knowledge of the true extent of the Bosch-

20 VW fraudulent scheme, and given Mr. Munroe's statements that SCI's investment would be justified

21 by the profits the dealership would receive notwithstanding the First NOV, on October 30, 2015,

22 Mr. Slevin signed a dealer agreement with VW and proceeded to open Elgin VW. [*Id.* ¶ 21.]

23    Mr. Munroe either lied or was an unwitting enabler of the VW-Bosch conspiracy. On

24 November 2, 2015, three days after Mr. Slevin signed the dealer agreement for Elgin VW, the EPA

25 issued a second Notice of Violation ("Second NOV"). [*Id.*] And, Mr. Slevin began to realize VW's

26 actions were not a minor bump in the road, but instead that VW and Bosch were involved in a long-

27

28

1    standing, expansive and blatantly intentional conspiracy that left the Iconic Plaintiffs hemorrhaging

2    money almost from the moment Elgin VW opened its doors. [*Id.*]

3        Since November 2015, Elgin VW has suffered significant losses in profits, including

4    operating at a total net loss of ████████ for the years 2015–2019. [*Id.* ¶ 23.] This is a stark contrast

5    from VW's representations to Mr. Slevin, who touted a minimum of ████████ in net profit in the

6    first year of operation and in each year thereafter. [*Id.* ¶¶ 22–23.] VW represented to Mr. Slevin that,

7    with the historic profitability and excellent brand reputation of VW, that number would continue to

8    grow as Elgin VW became an established dealership. [*Id.* ¶ 22.]

9        Further, in addition to SCI's more than ████████ initial investment, all invested before

10   2015 when the EPA issued the First NOV, SCI faces an additional loss of at least ████████ in

11   interest on loans taken out to acquire property for, and to construct, the Elgin VW dealership. [*Id.*]

12   Moreover, in January 2019, SCI obtained an appraisal showing that the value of its real estate, and

13   the custom-built Elgin VW dealership, was worth only ████████ [Dkt. 8227-14.]

14       Had Mr. Slevin known of the VW-Bosch scheme before investing more than ████████ to

15   purchase and construct a White Frame, add point dealership, Mr. Slevin never would have entered

16   a business arrangement with VW and would have sought business opportunities elsewhere. [*Id.* ¶¶

17   24–25.] However, because Mr. Slevin did not know anything about the fraudulent conspiracy until

18   it was more than ████████ too late, the Iconic Plaintiffs are yet another victim of the VW-Bosch

19   fraudulent conspiracy—one in which Bosch profited to the detriment of others.

20   **II.    THE ICONIC PLAINTIFFS SUE VW AND BOSCH.**

21       To recover their damages, on May 18, 2017, the Iconic Plaintiffs filed suit against Bosch

22   and VW in the U.S. District Court for the Northern District of Illinois. [Case No. 1:17-cv-03728,

23   Dkt. at 1.] On May 31, 2017, the Judicial Panel on Multidistrict Litigation transferred the action to

24   this Court to be consolidated for common and coordinated discovery. [Dkt. 3295.]

25       After an initial motion to remand [*see* Dkt. 3481], which Bosch did not oppose outside of

26   claiming common discovery should be done in the MDL, on June 29, 2018, the Iconic Plaintiffs

27   filed their First Amended Complaint, including claims against Bosch for violations of RICO and

28

1    Illinois civil conspiracy. [*Id.*] On August 28, 2018, Defendants filed motions to dismiss. [Dkt. 5273.]

2    On October 1, 2018, the Iconic Plaintiffs filed a Notice of Voluntary Dismissal with Prejudice of

3    Volkswagen pursuant to settlement. [Dkt. 5365.]

4        On December 6, 2019, the Court granted Bosch's motion for summary judgment against a

5    putative class of dealership plaintiffs ("*Napleton II*"), finding that those plaintiffs failed to establish

6    proximate cause and damages under RICO and the civil conspiracy laws of those plaintiffs'

7    respective states. [Dkt. 6956.] The Court reasoned:

8            (1) "a reasonable fact finder could not find that the dealers suffered losses
             directly from the stop-sale[;]" (2) "[t]he dealers' lost profits from yet-to-be-
9            manufactured TDIs did not result from an injury to their "business or
             property" that was "by reason of" a pattern of racketeering activity orders[;]
10           (3) "[the buyback] category of damages is also not recoverable against the
             Bosch defendants under RICO[;]" (4) "dealers cannot recover under RICO
11           for losses resulting from a decline in goodwill[;] and (5) "[a]s with their
             RICO claims, the dealers have not submitted proof that [their state law civil-
12           conspiracy] damages are recoverable."

13    [*Id.* at 2, 5, 6, 7, 8, *respectively.*]

14       On January 14, 2020, the Court denied Bosch's motion to dismiss against the Iconic

15    Plaintiffs, wherein Bosch made identical arguments as in their motion for summary judgment

16    decided in *Napleton II*. The Court recognized that the Iconic Plaintiffs' claims for damages against

17    Bosch were distinct from the *Napleton* Dealers' claims. [Dkt. 7031 at 2; *supra* at 1.]

18    **III.    THE PARTIES ENGAGE IN COMMON DISCOVERY.**

19        The Iconic Plaintiffs focused on conducting and substantially completing any coordinated,

20    common discovery against Bosch because, *inter alia*, this was an extensive endeavor for a single set

21    of plaintiffs. [Dkt. 8231-2, ¶¶ 4–6.] In addition to a voluminous document production from VW,

22    Bosch produced roughly four (4) million pages of documents to the Iconic Plaintiffs. [*Id.*] The Iconic

23    Plaintiffs also sought and obtained nearly thirty (30) transcripts of the depositions of VW and Bosch

24    personnel, including three corporate representatives of Bosch. [*Id.*]

25        On February 2, 2024, the Iconic Plaintiffs issued their First Set of Interrogatories and

26    Requests for Admission to Bosch (the "RFAs"). [*Id.* ¶ 7.] The Iconic Plaintiffs issued the RFAs to

27    minimize and potentially avoid the need for further depositions of Bosch personnel. They intended

28

6

Lead Case No. 15-md-02672-CRB
ICONIC PLAINTIFFS' OPPOSITION TO ROBERT BOSCH GMBH AND ROBERT BOSCH
LLC'S MOTION FOR SUMMARY JUDGMENT

1   to then seek remand to the Northern District of Illinois to engage in discovery on individual issues,

2   mostly concerning their damages. [*See* Dkt. 8231.]

3      On April 12, 2024, Bosch responded to the RFAs. It failed, however, to answer many of

4   them. [Dkt. 8231-2 ¶¶ 7–8; 8231-3.] On May 20, 2024, the Iconic Plaintiffs sent Bosch a Rule 37

5   letter outlining the deficiencies in Bosch's responses, including 300+ non-responsive answers and/or

6   improper objections. [*Id.*] Over the next four months, the parties' counsel engaged in five telephone

7   conferences in which they discussed a stipulation to address the deficiencies. [Dkt. 8231-2 ¶ 9; 8231-

8   4.] On September 11, 2024, and prior to Bosch finalizing the above stipulations, Bosch filed the

9   Motion. [Dkt. 8227.] After doing so, Bosch stated it would no longer entertain fulsomely responding

10  to Plaintiffs' discovery while the Motion was pending. [Dkt. 8231-6.]

11  **IV.    BOSCH'S MOTION.**

12     As in its dismissal motion, Bosch argues in the Motion that: (1) the Iconic Plaintiffs suffered

13  no injury to "business or property"; (2) any injury was not proximately caused by Bosch; and (3)

14  the Illinois civil conspiracy claims fail for these same reasons. [Dkt. 8227.] The authority Bosch

15  cites is materially the same as in Bosch's motion to dismiss. [*Compare* Dkt. 8227 to Dkt. 5273.]

16     On December 6, 2024, the Court held a status conference addressing both the Motion and

17  the Iconic Plaintiffs' pending motion to remand. [*See* Dkt. 8249.] After hearing from the parties

18  regarding the Motion, including argument from the Iconic Plaintiffs that it is a rehash of Bosch's

19  motion to dismiss, the Court stated:

20           [T]here's no doubt that there could be a lot of discovery on the issue of
             damages. However…in a summary judgment motion, all you have to
21           present is that there's a material issue of fact that there may be a quarrel as
             to whether or not the damages are "X" or "X" minus "Y" isn't -- may very
22           well support a denial of the motion for summary judgment, ***but that's not
             really what I'm looking at. What I was looking at is whether, whether it's
23           "X" or whether it's "X" minus "Y," is it actually compensable***? Is it
             actually just too speculative? That's what I was looking at…that is to say
24           that that is a legitimate thing that the Court ought to look at, ***it's almost like
             a threshold matter***. And if that's the case, I would think, subject to the right
25           of the plaintiff to have tons of discovery if the motion is denied, with that
             understanding I simply try to decide the threshold issue***…[Bosch is] saying
26           no number arising out of this would be compensable. That's what I hear
             them say***…If that's the case, then it seems to me that you can figure out,
27           you know, a way to present that issue to me. Then I could adjudicate it as a
             threshold matter. And if you win on that point, then, you know, in all

28

---

likelihood it would go to Illinois. If you lose on that point that's the end of it.

[Dkt. 8249 at 11:25–13:1 (emp. added).]

In their pending motion to remand, the Iconic Plaintiffs detailed why they need substantial Illinois-specific discovery. [Dkt. 8231 at 6.] This Illinois-specific discovery will continue to raise even more genuine issues of material facts than already exist. [*See* Fed. R. Civ. P. 56(d) Decl. of Joshua J. Cauhorn ("Cauhorn Decl.").] Namely, no case-specific (Illinois) depositions have proceeded, including of Mr. Slevin, current and/or former employees of Elgin VW and SCI, Midwest VW representatives who made representations to Mr. Slevin, the Illinois-based appraisers of the subject property, or the parties' causation and damages experts. [Dkt. 8231-2.]

## ISSUE TO BE DECIDED

Whether, given the disputed issues of fact and that discovery is not otherwise completed, Bosch, the movant with the burden, can establish, as a matter of law, that the Iconic Plaintiffs are not entitled to any damages under the causation and damages theories alleged with respect to their RICO and Illinois civil conspiracy claims. The Iconic Plaintiffs answer "no."

## ARGUMENT

### I.    LEGAL STANDARD.

Summary judgment is appropriate "only if, taking the evidence and all reasonable inferences in the light most favorable to the non-moving party, there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law." *Tauscher v. Phoenix Bd. of Realtors, Inc.,* 931 F.3d 959, 962 (9th Cir. 2019). A moving party "without the ultimate burden of persuasion at trial … has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.,* 210 F.3d 1099, 1102 (9th Cir. 2000).

### II.    THE ICONIC PLAINTIFFS' DAMAGES ARE COGNIZABLE UNDER RICO.

As this Court recognized, Bosch's argument in its instant Motion is "[n]ot that [Plaintiffs] got the wrong number. [Bosch is] saying no number arising out of this would be compensable." [Dkt. 8249 at 12:18–21.] As a result, the Court is deciding only the "threshold issue" of whether

8

1   applicable legal authority provides for the recovery of damages (in concept) that the Iconic Plaintiffs

2   seek in their RICO and Illinois civil conspiracy claims and, if so, the viability of said claims is

3   "subject to the right of the plaintiff to have tons of discovery." [*Id.* at 12:13–15.]

4       While Bosch attached some documents to the Motion, which lack both foundation and

5   explanation of their context, importance, or application, these documents do not establish any

6   undisputed material facts. They instead simply reveal that the facts are disputed and subject to

7   discovery. [Dkt. 8227 at 5–9.]; *see* Section VI, *infra*. To meet its burden on the Motion, Bosch must

8   establish that, as a matter of law, there is no amount of damages that the Iconic Plaintiffs could

9   recover from Bosch based on their factual allegations, which hinge upon the critical fact that the

10  Iconic Plaintiffs would not have commenced doing any business with VW, including investing more

11  than ███████ into a unique and complicated investment, had they known about VW's fraudulent

12  conspiracy with Bosch. As demonstrated below, Bosch fails to meet its burden.

13      **A.  The Iconic Plaintiffs Suffered Injury To "Business Or Property."**

14      This Court already held that the Iconic Plaintiffs' "investment without any knowledge of the

15  defeat-device scheme" sufficiently alleges an "overpayment due to fraud [constituting] an injury to

16  'property' that is cognizable under RICO." [Dkt. 7031 at 2 (citing *Canyon Cty. V. Syngenta Seeds,*

17  *Inc.*, 519 F.3d 1146, 1150 (9th Cir. 2016).] A fulsome review of the law proves this Court was right.

18      It is true that a civil RICO injury requires "proof of concrete financial loss." *Glob. Master*

19  *Int'l Grp., Inc. v. Esmond Natural, Inc.*, 76 F.4th 1266, 1274 (9th Cir. 2023).  Yet, "[o]ur caselaw

20  has established *a low threshold* for plaintiffs to show a concrete RICO injury." *Id.* (emp. added)

21  (reversing summary judgment regarding whether plaintiff pleaded a domestic concrete injury). The

22  Ninth Circuit requires courts to look to "the relevant state's law" to determine whether alleged harm

23  qualifies as an injury to "business or property" under RICO. *Canyon Cnty.*, 519 F.3d at 977 (looking

24  to Idaho law, where alleged injury occurred).

25      *Diaz v. Gates* details the required analysis. There, plaintiff alleged that he lost employment

26  and wages because he had to defend unjust criminal charges and could not work while incarcerated.

27  420 F.3d 897, 898 (9th Cir. 2005). The district court dismissed plaintiff's claim, reasoning under

28

*Oscar* v. *University Students Co-operative Ass'n*, 965 F.2d 783 (9th Cir. 1992) that he lacked standing because "he did not allege an injury to 'business or property' as required by RICO." *Id.* The circuit court reversed, holding that plaintiff sufficiently alleged a RICO injury, and abrogating *Oscar* on the issue of what constitutes "injury to business or property." *Id.* at 900, 903. En banc, the Ninth Circuit looked to California state law — where plaintiff experienced injury and the relevant events took place — to determine "whether a particular interest amounts to property" protected by RICO. *Id.* at 899. The circuit court held that the plaintiff's alleged harms "amount to intentional interference with contract and interference with prospective business relations, both of which are established torts under California law." *Id.* at 900 (citations omitted).

The applicable state law for this Court to consider is Illinois law—where misrepresentations were made by VW, the land was purchased, the dealership building was constructed, and where Elgin VW is located. The Iconic Plaintiffs' harms amount to fraud by VW, recognized under Illinois law as effectuated through misrepresentation, omission, and/or concealment, which can be the subject of a conspiratorial scheme as is alleged here between VW and Bosch. *See Time Savers, Inc. v. LaSalle Bank, N.A.*, 863 N.E.2d 1156, 1167 (Ill. App. Ct. 2007). Illinois further recognizes and protects the damage to a plaintiff's business or property caused by fraud, generally "determined by assessing the difference between the actual value of property sold and the value the property would have had if the representations had been true." *Giammanco v. Giammanco*, 625 N.E.2d 990, 997 (Ill. App. Ct. 1993) ("to show injury, plaintiffs must allege facts which show the value of what they received was not equal to the value of what they were promised."). Yet, when appropriate, Illinois law will instead provide other measures of damages to address a plaintiff's injuries, including "out-of-pocket" damages. *Id.* at 1001 ("While the 'benefit-of-the-bargain' or, in appropriate circumstances, 'out-of-pocket' loss are the usual measures by which compensation is quantified, we do not believe they are in all cases a perfect litmus test for the existence of compensable damage.").

In *Giammanco*, plaintiff and defendant were each 50/50 shareholders in a corporation. *Id.* at 993. Plaintiff alleged defendant misrepresented and concealed the alleged existence of a side deal as part of a merger that benefitted defendant. *Id.* at 753. In dismissing plaintiff's complaint, the trial

10

court held that plaintiffs' alleged harm was not concrete and was speculative. *Id.* at 757. The appellate court reversed, holding that defendant's "alleged scheme altered the fundamental assumptions underlying the bargaining process, and even though [plaintiff] may not have been deceived with respect to the pecuniary aspects of the ultimate bargain, we believe the distortion of the bargaining process is itself sufficient to establish damage." *Id.* at 763.

Here, the Iconic Plaintiffs allege distinct harms to their businesses resulting from the VW-Bosch fraudulent scheme, each of which constitute injury to business or property protected by Illinois law and thus also RICO. VW's conduct in misrepresenting and concealing the VW-Bosch scheme, at the least, distorted the bargaining process following which Mr. Slevin decided to invest eight figures in purchasing land for, building, and opening a new VW dealership.

### 1. There is legally cognizable harm to SCI.

The evidence generated to date, and which SCI intends to continue to gather through discovery, shows that its investment in purchasing property for and building a new VW dealership was to its financial detriment and an investment that it never would have made but for being defrauded by the VW-Bosch scheme. [Slevin Decl, ¶¶ 24–25.]



[*Id.* ¶ 15.]. SCI ultimately incurred the following costs relating to the purchase of the VW-specified property and VW-specified buildout:

| Cost | Amount | |
|---|---|---|
| Property purchase | ██████ | |
| Construction | ██████ | |
| Fixtures, Equipment, and Assets | ██████ | |
| Land/Construction Cost Subtotal: | ███████ | |
| Financing Cost (Interest) | ██████ | |
| Property taxes | ██████ | |
| Total: | ███████ | |

11

1    [*Id.* ¶¶ 11–15.] In 2014, while making the foregoing investments at VW's direction and without

2    knowing of the VW-Bosch scheme, SCI obtained an appraisal valuing the property at ████████

3    [Dkt. 8227-13.]

4    However, a subsequent appraisal revealed that the actual value of the real estate with the

5    dealership building was only ████████████████████████████████████████████

6    ████████████████ which will be addressed with third party discovery. [Dkt. 8227-14.][4]

7    Also, VW's projections of future income that justified SCI's investment were materially false. They

8    were premised, in part, on VW manufacturing legally compliant vehicles for sale in the United

9    States. [Slevin Decl, ¶ 8.] When VW made these projections and induced SCI to invest more than

10   ████████ it and Bosch knew that they were engaged in their defeat device scheme. *Supra* at 3–5.

11   However characterized, SCI's harm is recoverable under RICO as an injury to business or

12   property under Illinois law. "[T]he proper measure of damages in cases of fraudulent

13   misrepresentation or concealment is the value the property would have had at the time of the sale if

14   the defects did not exist, minus the value the property actually had at the time of the sale due to the

15   defects." *Kinsey v. Scott*, 463 N.E.2d 1359, 1367–68 (Ill. App. Ct. 1984); *see In re Volkswagen*

16   *"Clean Diesel" Mktg.*, No. 3:15-md-02672-CRB, 2017 WL 4890594, at *733 (N.D. Cal. Oct. 30,

17   2017) ("*Napleton I*") ("An out-of-pocket loss is not required, however, for a financial loss to be

18   tangible or concrete.").

19   SCI's injury could also be viewed as an overpayment or lost investment out-of-pocket loss,

20   which is also recoverable under RICO. *E.g., Napleton I,* , 2017 WL 4890594, at *733–34  (an out-

21   of-pocket loss such as overpayment or lost investment also satisfies RICO's requirement that there

22   be a tangible, concrete loss); *In re Duramax Diesel Litig.*, 298 F. Supp. 3d 1037, 1071 (E.D. Mich.

23   2018) (distinguishing between recovery of loss investment/overpayment and recovery of contingent

24   losses under RICO); *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 172 (2d Cir. 1999) (losses based

25   on difference in value between fraudulent IRA and IRA that could have been obtained without the

26

27   ───────────────────
     [4] To the extent Bosch contests comparing the 2014 and 2018 appraisals, this demonstrates a fact dispute and

28   the need for further fact discovery (i.e., depositions of the appraisers) and expert discovery. *Infra* at 23–25.

criminal fraud was a recognized loss under RICO); *Maiz v. Virani*, 253 F.3d 641, 664 (11th Cir. 2001) (allowing "lost value" damages under RICO); *Fleishhauer v. Feltner*, 879 F.2d 1290, 1300 (6th Cir. 1989) (holding that plaintiffs could recover under RICO for "amounts invested in reliance on fraudulent conduct," cited by this Court in denying Bosch's motion to dismiss [Dkt. 7031 at 2]).

Accordingly, RICO provides SCI a remedy. Bosch's attacks on SCI's evidence merely indicate factual issues and the need for additional discovery, including expert testimony. *See Napleton I*, 2017 WL 4890594, at *735 (quoting *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1171 (9th Cir. 2002) ("[q]uestions regarding the relevant labor market and the growers' power within that market are exceedingly complex and best addressed by economic experts and other evidence at a later stage in the proceedings.")).

### 2. There is legally cognizable harm to Elgin VW.

Evidence gathered to date, as well as evidence and testimony Elgin VW intends to gather in discovery and present at trial, also will show that Elgin VW has suffered injury to its business and property recoverable under RICO, including, *inter alia*, █████████████ in contrast to the representations made by VW representatives to entice Mr. Slevin to do business with VW, which he never would have done if he had known about the VW-Bosch conspiracy. ███████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████ [Slevin Decl., ¶¶ 23–24.] Experts will determine the exact amounts of these damages during expert discovery.[5] *Infra* at 23–25.

Bosch does not contest in this Motion that it and VW were actively engaged in a conspiracy when VW misrepresented and concealed material facts from Mr. Slevin in 2013. [*See generally* Mot.]; *supra* at 3–5. This conspiracy included VW's and Bosch's RICO predicate acts of mail and

---

[5] Elgin VW has already produced many thousands of pages of documents, including, for example, ███ ████████████ Elgin VW expects that the documentary evidence, bolstered by witness testimony, will be reviewed, analyzed, and set out in an expert report addressing damages. Again, the issue in this Motion is not the amount of damages but whether Bosch has established that—under the facts and circumstances presented—Elgin VW is somehow not entitled any damages as a result of the fraud from which VW and Bosch profited.

13

Lead Case No. 15-md-02672-CRB
ICONIC PLAINTIFFS' OPPOSITION TO ROBERT BOSCH GMBH AND ROBERT BOSCH LLC'S MOTION FOR SUMMARY JUDGMENT

wire fraud. *Supra* at 3–5. Without knowing of the VW-Bosch fraudulent scheme, and relying on VW's profit projections (presumably based on historical sales of noncompliant TDIs and artificially inflated brand value from their sale and purported environmental friendliness), Mr. Slevin made a more than ███████ investment through SCI expecting that investment to be recouped and to further profit through Elgin VW. Volkswagen's profit projections to Mr. Slevin indicated that Elgin VW could expect profit of ███████ [Slevin Decl., ¶¶ 8, 22.] These projections were false, and Elgin VW was never able to earn them:

| Year | Expected Net Profit ($) | Actual Net Profit/(Loss) ($)[6] | Lost Profit ($) |
|---|---|---|---|
| 2015 | ████ | ████ | ████ |
| 2016 | ████ | ████ | ████ |
| 2017 | ████ | ████ | ████ |
| 2018 | ████ | ████ | ████ |
| 2019 | ████ | ████ | ████ |
| | | **Total Operating Loss:** | ████ |
| | | **Total Lost Profit in First Six Years of Operation:** | ████ |

Elgin VW's lost profit detailed above, or through being unable to pursue other business, is a concrete "benefit of the bargain" injury recognized by Illinois law. *Supra* at 9–10. Alternatively, so is the operating "out-of-pocket" loss it experienced. *Id.* Under *Diaz*, its harm is also thus recognized under RICO. *Id.*

Moreover, other federal courts analyzing similar facts hold that such damages are cognizable under RICO. *See, e.g., Chesapeake Employers' Ins. Co. v. Eades*, 77 F. Supp. 3d 1241, 1252 (N.D. Ga. 2015) (insurance company's loss of premium revenue that it would have made had defendant purchased insurance and not provided false certificates of insurance was a sufficiently tangible and concrete injury to support a RICO claim); *Corcel Corp. v. Ferguson Enters*, 551 Fed. Appx. 571, 578 (11th Cir. 2014) (reversing dismissal, holding plaintiff was entitled to introduce evidence of the

---

[6] [*See* Slevin Decl., ¶23.]

[7] The projected profit of $1,165,056 was multiplied by ⅙ for the two months that Elgin VW was in business for the year 2015.

alleged profit it could have made but for defendant's purported fraudulent applications for small business enterprise status from a local government).

Here, Elgin VW alleges and points to evidence of lost profits it would have earned but for, and amounts it lost due to, the VW-Bosch conspiracy. That VW concealed its conspiracy with Bosch induced Elgin VW to open a VW dealership, making it impossible for it to also invest in another business. Mr. Slevin will testify that had he known of the VW-Bosch scheme, he would never have done business with VW and would have, instead, proceeded with an alternative business endeavor or investment. [Slevin Decl., ¶ 25.] Additional discovery will show, and the Iconic Plaintiffs expect their expert to testify, that Mr. Slevin would have profited significantly more from an alternative business venture had VW not induced Elgin VW to open a dealership under false pretenses.[8]

**B.  The Iconic Plaintiffs' Harms Are Distinguishable From The *Napleton* Dealers.**

In its motion to dismiss, Bosch tried to distinguish the Iconic Plaintiffs' harms from the *Napleton* Dealers. [Dkt. 5273 at 2.] Now it calls them the same. [Dkt. 8227 at 2–3.] This Court has already seen through Bosch's shifting positions. [Dkt. 7031 at 1 ("[t]he principal difference between the two cases is that the dealership in *Iconic Motors* did not open for business until six weeks after the EPA first notified the public of its determination that Volkswagen had manufactured and installed defeat devices.").]

The Iconic Plaintiffs' unique position in purchasing and building out a new dealership while VW and Bosch engaged in their scheme, only to have the misfortune of being ready to open after the First NOV, means that they could not possibly have the same damages as the *Napleton* Dealers that had sold (and profited from) noncompliant TDIs. First, Elgin VW did not have a reputation and customer base before the First NOV. The Iconic Plaintiffs thus did not have goodwill to lose because

---

[8] Expert testimony regarding lost profits need only be reasonably certain. *See, e.g., Sound Video Unlimited, Inc. v. Video Shack, Inc.*, 700 F. Supp. 127 (S.D.N.Y.1988) (holding that defendants failed to demonstrate the absence of a genuine issue of material fact for RICO injury, wherein plaintiff alleged the fraudulent scheme caused an injury to a business relationship leading to lost profits); *De Ment v. Abbott Capital Corp.*, 589 F. Supp. 1378, 1386 (N.D. Ill. 1984) ("if the 'damages sustained' by a victim of a RICO violation include lost profits, we see no bar in the statute to recovery of those losses."); *In re Application of Busse*, 464 N.E.2d 651, 655 (Ill. App. Ct. 1984) ("absolute certainty concerning the amount of damage is not necessary to justify a recovery where the existence of damage is established; the evidence need only tend to show a basis for the computation of damages with a fair degree of probability.").

of the disclosure of the VW-Bosch fraudulent conspiracy. *See Rise Basketball Skill Dev., LLC v. K Mart Corp.*, No. 16-CV-04895-WHO, 2017 WL 2775030, at *5 (N.D. Cal. June 27, 2017) (cited in *Napleton II* [Dkt. 6956 at 7]) ("goodwill" is the probability that old customers will return and that the business "will continue in the future as in the past").

Bosch's attempt to further analogize the Iconic Plaintiffs to the *Napleton* Dealers by arguing that they have no damages resulting from the Stop-Sale Orders too fails. [Dkt. 8227 at 11.] As detailed above, the Iconic Plaintiffs allege and point to evidence of damages well beyond those caused by the Stop-Sale Orders. And, in *Napleton II,* this Court did not consider the Iconic Plaintiffs' *distinct* damages. In fact, in the order denying Bosch's motion to dismiss Iconic Plaintiffs' claims, the Court confirmed that Plaintiffs' damages theories are distinct from those of the *Napleton* Dealers and viable under RICO and Illinois civil conspiracy. [Dkt. 5273 at 1.]

For these reasons, this Court should reject Bosch's efforts to falsely equivocate the Iconic Plaintiffs' harm to that inflicted on the *Napleton* Dealers.

## III.    THE CONSPIRACY CAUSED THE ICONIC PLAINTIFFS' RICO DAMAGES.

Bosch next argues that it was not the proximate cause of the Iconic Plaintiffs' harm. It first raises an argument this Court already rejected, that the disclosure of the fraud, and the conundrum Elgin VW faced to open its doors following the First NOV (and potentially mitigate damages), constituted an intervening cause cutting off Bosch's liability. [Dkt. 8227 at 13–15.] This argument ignores RICO legal authority.

"[W]hen a court evaluates proximate causation, 'the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries.'" *Glob. Master Int'l Grp.*, 76 F.4th at 1275 (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006)). Yet, "proximate cause is not the same thing as the sole cause," and defendants' criminal enterprise need only be "a substantial factor in the sequence of responsible causation." *Dwyer v. Bicoy*, No. SACV 09-0064 - JVS(RNBx), 2009 U.S. Dist. LEXIS 140850, at *5–6 (C.D. Cal. Nov. 17, 2009) (citing *Oki Semiconductor Co. v. Wells Fargo Bank, N.A.*, 298 F.3d 768, 773 (9th Cir. 2002)) (denying motion for summary judgment where "Defendants are alleged to have conducted a fraudulent scheme that

16

Lead Case No. 15-md-02672-CRB
ICONIC PLAINTIFFS' OPPOSITION TO ROBERT BOSCH GMBH AND ROBERT BOSCH
LLC'S MOTION FOR SUMMARY JUDGMENT

directly resulted in Plaintiffs making investments into a business that later became insolvent."); *see also Bridge v. Phoenix Bond & Indemnity Co*., 553 U.S. 639, 656–57 (2008) (affirming circuit court's reversal of district court's dismissal of plaintiffs' complaint for lack of proximate cause, holding that RICO proximate cause is not limited only to those who relied on defendants' fraud but extends to others directly harmed by the fraud). While an intervening cause can cut off the chain of proximate cause, it must be "a later cause of ***independent origin*** that was ***not foreseeable***." *Painters & Allied Trades District Council 82 Health Care Fund v. Takeda Pharmaceuticals Co.*, 943 F.3d 1243, 1257 (9th Cir. 2019) (internal citations omitted, emp. added) (reversing motion to dismiss in favor of defendant drug manufacturers who argued that physicians' decisions to proscribe drugs constituted intervening cause defeating proximate causation).

Bosch first contends that Elgin VW's execution of a dealer agreement with VW after the First NOV constitutes an intervening cause. [Dkt. 8227 at 13.] This is the ***exact same*** argument, citing the ***exact same*** cases, and without citing to any evidence generated in discovery, that Bosch raised in its motion to dismiss that this Court already rejected. [*Compare* Dkt. 8227 *with* Dkt. 5273.] Bosch provides no reason for the Court to reconsider its ruling.

The First NOV, and Elgin VW's decision to open anyway, did not "intervene" to cause its harm. *First*, evidence proves that SCI invested more than ███████ *before* the First NOV as a direct result of VW-Bosch conspiracy. *Supra* at 3–5. In other words, the damage had been done.

*Second*, VW continued to act in furtherance of its criminal enterprise with Bosch by misrepresenting the scope and impact of the fraud and conspiracy after the First NOV. *Id*. It was only the Second NOV and the events that followed that exposed the massive fraud of VW and Bosch's involvement in the conspiracy. [Slevin Decl., ¶ 21.] Elgin VW certainly did not know of the November 2, 2015 Second NOV and subsequent events when Mr. Slevin signed a letter of intent with VW two years earlier on October 4, 2013. VW's conduct after the First NOV thus was a ***continuation*** of its conspiracy with Bosch that failed to disclose the full detail of what they did, ***not*** an event from which Elgin VW made an informed decision that was the true cause of the harm it alleges. Bosch cannot escape liability from its co-conspirator's conduct. *See, e.g., United States v.*

17

*Moeser*, No. 11-CR-127, 2013 WL 6176702, at *2 (E.D. Wis. Nov. 21, 2013), *aff'd*, 758 F.3d 793 (7th Cir. 2014) ("it is a step too far to suggest that the actions of a defendant's co-conspirators pursuant to a scheme to defraud can be considered intervening factors to show that a person was not directly and proximately harmed by that defendant"); *State of Wash. v. Am. Pipe & Const. Co.*, 280 F. Supp. 802, 805 (W.D. Wash. 1968) (under Clayton Act, "[co-conspirator] must share the responsibility for any damages proved which were occasioned by the [acts] of co-conspirators, even though it may not have directly participated in, or benefited from, such activity").

*Third*, Bosch's factual presentation that it "never had any relationship" with the Iconic Plaintiffs and related argument that the harm to SCI is derivative of that to Elgin VW [Dkt. 8227 at 8, 14] ignores applicable legal authority. In a RICO conspiracy, what matters for proximate cause is not a link between Bosch's conduct and the Iconic Plaintiffs directly, but that Bosch entered a scheme with VW and the Iconic Plaintiffs were injured because of that scheme. *See, e.g., Wallace v. Midwest Fin. & Mortg. Servs. Inc.*, 714 F.3d 414, 420 (6th Cir. 2013) (a RICO plaintiff "need only show use of the mail in furtherance of a scheme to defraud and an injury proximately caused by that scheme."); *Napleton I*, 2017 WL 4890594, at *747 (N.D. Cal. Oct. 30, 2017) ("What matters, though, is not whether there is a direct relationship between the plaintiff and defendant, but whether there is a sufficiently direct relationship between the defendant's wrongful *conduct* and the plaintiff's injury . . . ." (internal citations omitted, emp. in orig.)). Accordingly, Elgin VW's decision to mitigate any potential damages and open notwithstanding the First NOV, *after* SCI had invested ████████████████████████████████████████████████████ is not an intervening cause absolving Bosch for its wrongful conduct. It should have been foreseeable to Bosch and its co-conspirator VW that the Iconic Plaintiffs would have no option but to continue with opening Elgin VW to recoup SCI's more than ███████ investment, including because VW further misled Mr. Slevin about the scope and effect of VW-Bosch conspiracy. [Slevin Decl., ¶¶ 24–25.]

1    That is particularly the case because, in a guilty plea by Bosch and VW's co-conspirator

2    IAV GmbH ("IAV"),[9] IAV stated that VW made false representations that its vehicles complied

3    with U.S. emissions law to, among others, "U.S. dealers." [**Exhibit B**[10] (IAV Plea Agreement in

4    U.S.D.C. E.D. Mich. No. 16-CR-20394) at Ex. 2-8, p. 40 of 64 of PDF.] Oliver Schmidt, the former

5    General Manager in charge of the Environment and Engineering Office for Volkswagen Group of

6    America, Inc., agreed. [**Exhibit C** (Schmidt Plea Agreement in U.S.D.C. E.D. Mich. No. 16-cr-

7    20394) at 6.] Dealers like the Iconic Plaintiffs thus were not a party far down the chain of

8    communication—they were the ***direct*** subject of the scheme's fraudulent conduct.

9    Bosch next argues that the Iconic Plaintiffs' harm really results from disclosure of the fraud

10    and not from the fraud itself. However, the nature of the harm here is completely different from the

11    nature of the harm claimed by the *Napleton* Dealers. As this Court knows, the *Napleton* Dealers

12    alleged they lost profits from the discontinuation of TDIs after the reveal of the fraud. *See Napleton*

13    *II*, 2019 WL 6749534, at *305–06. The facts developed, however, to establish that VW could not,

14    at the time, make TDIs in a compliant manner. [Dkt. 6956 at 5.] This fact defeated the argument

15    that there should have been compliant TDIs to sell both before and after the discovery of the fraud.

16    [*Id.*] The facts also demonstrated that the *Napleton* Dealers had all been unwitting beneficiaries of

17    the fraud because "until those [fraudulent] acts were discovered, the dealers benefited from them,

18    profiting from the sale of noncompliant cars.[11] [*Id.*]

19    The first critical distinction here is that neither Iconic Plaintiff was ever in any way a

20    beneficiary of the VW-Bosch fraud. While the *Napleton* Dealers unwittingly profited, SCI was

21    relying on VW's misrepresentations to invest in land and build a property that it would not have

22    done but for the fraud, and Elgin VW had not yet opened its doors. [Slevin Decl., ¶ 25.] Specific to

---

9 According to the plea agreement, "VW AG owned fifty percent of IAV's shares and was IAV's largest
customer." [Ex. B at Exh. 2-8, p. 40 of 64 of PDF.]

10 Citations to Exhibits B and C and Group Exhibit E refer to exhibits to the Declaration of Joshua J. Cauhorn
in Support of Plaintiffs Iconic Motors, Inc. d/b/a Elvin Volkswagen and Slevin Capital Investments, Inc.'s
Opposition to Robert Bosch GmbH and Robert Bosch LLC's Motion for Summary Judgment filed herewith.

11 There is no legal authority to suggest that a victim who gains no benefit from the fraud—such as a person
who invests millions of dollars in reliance on the misrepresentations and omissions of a conspirator—cannot
recover damages simply because the public reaction to the fraud may, in effect, exacerbate those damages.

19

1  SCI, its damages are not lost profits but consider the actual value of its property at the time of the

2  transaction and/or its out-of-pocket investment loss. *See* Section V.A.1., *supra*.

3    Specific to Elgin VW, it never profited from the VW-Bosch conspiracy, but instead, upon

4  opening its doors, ██████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████ In effect, Elgin VW was forced—by virtue

6  of the dealership relationship it was fraudulently induced to enter and became stuck with—to bear

7  the loss of the VW-Bosch fraud, having never benefitted from it. It nonetheless did whatever it could

8  to mitigate its losses by trying to recover as much as it could in the marketplace. Ultimately, the

9  public exposure of the VW-Bosch conspiracy did not cause the Iconic Plaintiffs' damages but

10  merely revealed their existence. This public exposure is not an intervening cause when, unlike the

11  *Napleton* Dealers, the Iconic Plaintiffs had not been benefitting from the fraud.

12    Given the facts here, this Court should decline Bosch's invitation to analogize this case to

13  those where companies purportedly engaged in RICO conspiracies to benefit themselves by harming

14  their competitors. *See, e.g., In re Am. Express Co. S'holder Litig.*, 39 F.3d 395, 396–98 (2d Cir.

15  1994) [cited at Dkt. 8227 at 13] (in derivative suit, scheme to defraud former employee and current

16  competitor by key executives was undertaken to benefit the company, and it was only the discovery

17  of the scheme that purportedly damaged the company); *Meng v. Schwartz*, 116 F. Supp. 2d 92, 97

18  (D.D.C. 2000) [cited at Dkt. 8227 at 13] (RICO claims by shareholders seeking relief for scheme

19  by company to bribe politicians for the company's benefit lacked proximate cause because it was

20  the discovery of the scandal that purportedly harmed the company). These cases are inapplicable.

21    Rather, when courts consider analogous facts, they hold that there is a material factual

22  question for trial regarding proximate cause. *Marianas Hosp. Corp. v. Premier Bus. Sols. Inc*. is

23  instructive. There, plaintiffs alleged that defendants engaged in wire and mail fraud to cause plaintiff

24  to fail to make appropriate tax payments, forcing plaintiff to pay back payments, penalties, and

25  interest to the IRS. No. 07-00002, 2009 WL 750247, at *3 (D. Guam Jan. 14, 2009). Like Bosch

26  here [*see* Dkt. 8227 at 12 and 15], defendants relied heavily on *Anza*, 547 U.S. at 451, to argue that

27  there was no proximate cause because "none of the predicate acts…resulted in any *direct* damage

28

20

to [p]laintiff." *Id.* at *20 (emp. in orig.). The *Marianas* court distinguished *Anza*, however, reasoning that the RICO proximate cause analysis had been reanalyzed in a more recent case from the Supreme Court, *Bridge*, 553 U.S. at 656–57, which "rejected an overly formalistic approach to proximate cause analysis in RICO cases." *Id.* at *17. The court further reasoned that it was "especially important" that "[o]f *Anza* and its Ninth Circuit progeny, *every case but one* involved a claim brought against an economic competitor," and the one case that did not concerned novel damages that would be "extraordinarily difficult to calculate." *Id.* at *23 (emp. in orig.).

Instead of comparing to *Am. Express*, *Meng*, and *Anza*, which all concern a claim brought against or concerning a company gaining an advantage by harming a competitor, this Court should follow *Bridge* and other more factually on-point, more recent Ninth Circuit and Supreme Court precedent. *See, e.g., Bridge*, 553 U.S. at 656–57 (2008) (relief under RICO extends to others directly harmed by the fraud beyond victims who directly relied on it); *Glob. Master Intern'l Grp., Inc.*, 76 F.4th at 1275 (key question is whether injuries directly resulted from wrongful conduct); *Painters*, 943 F.3d at 1257 (9th Cir. 2019) (no intervening cause in case brought by patients who paid for drugs simply because doctors chose to prescribe them);[12] *see also Dwyer v. Bicoy*, No. SACV 09-0064-JVS(RNBx) , 2009 U.S. Dist. LEXIS 140850, at *5–6 (C.D. Cal. Nov. 17, 2009) (denying defendant's motion for summary judgment, holding that plaintiffs' assertions that they would not have invested in company if not for representations by defendants "preclude a finding that Defendants were not the proximate cause as a matter of law.").[13]

Bosch fails to meet its burden on summary judgment as to the legal analysis and otherwise selectively points to certain evidence serving only to demonstrate that there exist questions of fact in this case where discovery is not even completed. Accordingly, this Court should deny the Motion.

---

[12] Bosch's citation to *Sheperd v. Am. Honda Motor Co., Inc.*, 822 F. Supp. 625 (N.D. Cal 1993) fails for the same reason – it applies older, more rigid caselaw that has given way to the updated reasoning in *Diaz*, *Glob. Master Intern'l Grp., Inc.*, and *Painters*.

[13] *Accord, e.g., Hall v. Trivest Partners, L.P.*, No. 22-12743, 2023 WL 5941729, at *15 (E.D. Mich. Sep. 12, 2023) (even though defendant did not communicate directly to plaintiff, false representations to plaintiff were foreseeable consequence of scheme); *Wallace*, 714 F.3d at 420 (finding sufficient proximate cause had been alleged because while defendants' scheme "alone did not compel [plaintiff]" to experience harm, "it certainly increased the likelihood that he would").

## IV.   THE CONSPIRACY CAUSED THE ICONIC PLAINTIFFS' ILLINOIS CIVIL CONSPIRACY DAMAGES.

In its Motion, Bosch makes no independent argument as to the Iconic Plaintiffs' Illinois civil conspiracy claim. It only restates its argument that the Iconic Plaintiffs purportedly fail to show proximate cause. [Dkt. 8227 at 17.] Bosch's Illinois civil conspiracy proximate cause argument thus fails for the same reason as it does for its RICO claim. *Supra* at 16–21.

Moreover, Bosch ignores Illinois legal authority regarding civil conspiracy and fraud. For one, Illinois law considers proximate cause a question of fact that can "become a question of law only when the facts are not only undisputed but are also such that there can be no difference in the judgment of reasonable [people] as to the inferences to be drawn from them." *Calloway v. Bovis Lend Lease, Inc.*, 995 N.E.2d 381, 405 (Ill. App. Ct. 2013). Illinois law also takes a liberal approach in fashioning a remedy once a party introduces evidence of fraudulent conduct by a defendant:

> Courts administering justice should not be outpaced by creative wrongdoers. Moreover, we are mindful of the fact that damages in fraud cases serve an admonitory function which would be severely undermined if the harm which we have identified were held to be noncompensable as a matter of law. Such a holding would put those who conduct themselves honestly in such business dealings at a distinct disadvantage.

*Giammanco*, 625 N.E.2d at 1001 (internal citations omitted); *compare id. with Sheperd*, 822 F. Supp. at 630 (indicating, at least as of 1993, that RICO legal authority applies a stricter standard to proximate causation than for other claims). Here, as stated *infra* at 23–25, there exist factual issues for further discovery. Bosch wants to ignore those and bypass both discovery and trial. Doing so, however, flies in the face of Illinois (and federal) law.

## V.   THE ███████████ DOES NOT ABSOLVE BOSCH.

Bosch next tries to piggyback off ███████████ to avoid paying the Iconic Plaintiffs' damages to make them whole. This fails. ███████████████████████████████████████ ████████████████████████████████████████████████████████████ But this is not the total amount of damages suffered and, further, Bosch ignores that under RICO, the Iconic Plaintiffs' damages will be trebled, and any setoff benefit to Bosch will not be applied until ***after*** trebling. [Dkt. 4185 (10/30/17 Or.) at 7–8]; *see also, e.g., Flinkote Co. v. Lysfjord*, 246 F.2d 368, 398 (9th

22

Cir. 1957), *cert. denied*, 355 U.S. 835 (1957). Separately, punitive damages are also available under Illinois civil conspiracy. *Sarno v. Thermen*, 608 N.E.2d 11, 21 (Ill. App. Ct. 1992).

Here, before trebling, the evidence supports that the VW-Bosch conspiracy harmed SCI in the amount of at least ███████ reflecting the amounts SCI lost because of Bosch and Volkswagen's fraud. *Supra* at 11–13. Likewise, before trebling, the evidence supports the VW-Bosch conspiracy harmed Elgin VW in the amount of at least ██████ reflecting the net operating loss Elgin VW incurred from 2015–2019. *Supra* at 13–15. Particularly after trebling, ████████████████████████████████████████████████████████

## VI.     BOSCH'S CITATION TO DOCUMENTS DEMONSTRATES A FACTUAL DISPUTE AND NEED FOR DISCOVERY.

Federal Rule of Civil Procedure Rule 56(d) states:

> [i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

When a summary judgment motion is filed before a party has had an opportunity to pursue discovery relating to its theory of the case, district courts should grant a Rule 56(d) request fairly freely. *Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*, No. 5:20-cv-06846-EJD, 2022 WL 2304287, at **6–7 (N.D. Cal. Mar. 16, 2021) (denying motion for summary judgment and granting a Rule 56(d) request where defendants moved "for summary judgment long before the close of discovery" and "all the discovery has not yet been processed").

"To  prevail on a Rule 56(d) motion, the parties opposing a motion for summary judgment must make (a) a timely application [that] (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists." *United States v. 2366 San Pablo Ave*, No. 13-cv-02027-JST, 2014 WL 3704041, at *5 (N.D. Cal., July 24, 2014)

---

[14] The Iconic Plaintiffs intend to offer expert testimony regarding the specific amount of damages. *Infra* at 23–25.

23

1   (quoting *Blough v. Holland Realty, Inc.*, 574 F.3d 1084, 1091 n.5 (9th Cir. 2009)) (internal

2   quotations omitted). The requesting party must show via affidavit that: "(1) it has set forth in

3   affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist;

4   and (3) the sought-after facts are essential to oppose summary judgment." *Family Home & Fin. Ctr.,*

5   *Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008).

6        In accordance with same, the Iconic Plaintiffs attach the declaration of Joshua J. Cauhorn,

7   one of their attorneys, as **<u>Exhibit D</u>**, which outlines each of the elements detailed above.

8        Moreover, denial of summary judgment under Rule 56(d) is especially proper "where the

9   material sought is also the subject of outstanding discovery requests." *2366 San Pablo Ave*, 2014

10  WL 3704041, at *5-6 (quoting *Burlington N. Santa Fe R.R. v. Assiniboine & Sioux Tribes of the Ft.*

11  *Peck Reservation*, 323 F.3d 767, 775 (9th Cir. 2003) (cleaned up; emp. added).

12       Here, on February 2, 2024, the Iconic Plaintiffs served their First Set of Interrogatories and

13  their Requests for Admission to Bosch, and one year later, Bosch has still failed to fully respond.

14  *Supra* at 7. Several of these requests seek relevant information relating to Bosch's proximate cause

15  argument. For example, the Iconic Plaintiffs requested that Bosch admit the following, but, in each

16  instance, Bosch refused:



25  [**<u>Group Exhibit E</u>** at Nos. 473, 497, 499 (same RFAs issued to both Bosch entities); *see also, e.g.,*

26  Nos. 477–78, 489, 492–96 (███████████████████████████████████████

27  ██████████████████████████████████████████████████████).]

1  ████████████████████████████████████████████

2  ████████████████████████████████████████████

3  ████████████████████████████████████████████

4  ████████████████████████████████████████████

5  ████████████████████████████████████████████

6  ████████████████████████████████████████████

7  ███████████████████████████████ Plaintiffs need this

8  discovery to further address Bosch's proximate cause arguments head on.

9  As such, for the foregoing reasons and those reasons set forth in the attached declaration,

10 this Court should also deny Bosch's Motion pursuant to Rule 56(d). *See 2366 San Pablo Ave*, 2014

11 WL 3704041 (denying summary judgment where the plaintiffs had outstanding discovery requests,

12 and the parties had not yet developed an adequate factual record).

### CONCLUSION

14 For these reasons, the Court should deny the Motion and permit discovery to proceed. For

15 the reasons in the Iconic Plaintiffs' September 25, 2024 Motion to Remand [Dkt. 8231], that

16 discovery and trial in this matter should proceed in Illinois.

17 Dated: February 14, 2025          Respectfully submitted,

18                                   */s/ Joshua J. Cauhorn*

19                                   Ira M. Levin
                                     ilevin@burkelaw.com, *pro hac vice*
20                                   Danielle J. Gould
                                     dgould@burkelaw.com, *pro hac vice*
21                                   Joshua J. Cauhorn
                                     jcauhorn@burkelaw.com, *pro hac vice*
22                                   BURKE, WARREN, MACKAY & SERRITELLA, P.C.
                                     330 North Wabash Avenue, 21st Floor
23                                   Chicago, Illinois 60611
                                     Telephone:    312.840.7000
24                                   Facsimile:    312.840.7900

25                                   *Attorneys for Iconic Motors, Inc. d/b/a Elgin Volkswagen and*
                                     *Slevin Capital Investments, Inc.*

26

27

28

1

## CERTIFICATE OF SERVICE

2

    I hereby certify that on February 14, 2025, I electronically filed the foregoing Plaintiffs

3

Iconic Motors, Inc.'s d/b/a Elgin Volkswagen and Slevin Capital Investments, Inc.'s Opposition To

4

Robert Bosch GmbH And Robert Bosch LLC's Motion for Summary Judgment using the CM/ECF

5

system, which will provide electronic service notification to all counsel of record.

6

7
                                        /s/ Joshua J. Cauhorn
                                        JOSHUA J. CAUHORN, *pro hac vice*
8
                                        Attorney for Iconic Motors, Inc. d/b/a Elgin
9                                       Volkswagen and Slevin Capital Investments, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                              Lead Case No. 15-md-02672-CRB
                     PLAINTIFFS' OPPOSITION TO ROBERT BOSCH GMBH AND ROBERT BOSCH LLC'S
                                         MOTION FOR SUMMARY JUDGMENT
    4934-9640-9370