Ira M. Levin
  ilevin@burkelaw.com, *pro hac vice*
Danielle J. Gould
  dgould@burkelaw.com, *pro hac vice*
Joshua J. Cauhorn
  jcauhorn@burkelaw.com, *pro hac vice*
BURKE, WARREN, MACKAY & SERRITELLA, P.C.
330 North Wabash Avenue, 21st Floor
Chicago, Illinois 60611
Telephone:  312.840.7000
Facsimile:   312.840.7900
*Attorneys for Plaintiffs*
ICONIC MOTORS, INC. d/b/a ELGIN VOLKSWAGEN
SLEVIN CAPITAL INVESTMENTS, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re: Volkswagen 'Clean Diesel' Marketing, Sales Practices, and Products Liability Litigation*<br><br>This document relates to:<br><br>*Iconic Motors, Inc. v. Volkswagen Group of America, Inc.,* No. 3:17-cv-3185-CRB | LEAD CASE No. 15-md-02672- CRB<br><br>**DECLARATION OF JOSHUA J. CAUHORN PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56(d)** |

I, Joshua J. Cauhorn, declare as follows:

1.    I am a partner with the law firm of Burke, Warren, MacKay & Serritella, P.C. and one of the counsel of record for Plaintiffs, Iconic Motors, Inc. d/b/a Elgin Volkswagen ("Elgin VW") and Slevin Capital Investments, Inc. ("SCI") (collectively, the "Iconic Plaintiffs").

2.    I provide this declaration in support of the Iconic Plaintiffs' Opposition ("Opposition") to Robert Bosch GmbH and Robert Bosch, LLC's (collectively "Bosch") Motion for Summary Judgment (the "Motion") pursuant to Federal Rule of Civil Procedure 56(d).

3.    As outlined more specifically below, I certify that: (1) there are specific facts the Iconic Plaintiffs intend to elicit in further discovery; (2) the facts the Iconic Plaintiffs are seeking exist; and (3) the sought after facts are essential to oppose summary judgment.

## I.    BACKGROUND

4.    On September 11, 2024, Bosch filed its Motion for Summary Judgment.

5.    After filing its Motion for Summary Judgment, Bosch indicated that it was halting its meet and confer efforts relating to outstanding discovery. Accordingly, to date, Bosch has not fully responded to the Iconic Plaintiffs' First Set of Interrogatories and Requests for Admission to Bosch issued on February 2, 2024.

6.    Other than the resolution of the Iconic Plaintiffs' First Set of Interrogatories and Requests for Admission, discovery in this matter will largely be case-specific and focused in and around Illinois and the Midwest, including depositions of third-party witnesses, such as the certified appraisers who authored the 2014 appraisal (Paul D. Conn and Clayton P. Conn) for SCI's property on which the Elgin VW dealership operates, the certified appraisers who authored the 2018 appraisal (Arthur J. Murphy, Arthur J. Murphy III, and Christopher M. Strama) for that same property, the developers, construction company and consultants associated with SCI's purchase of such property and construction of the Elgin VW dealership, and the local VW[1] personnel who engaged directly with Mr. Slevin and the Iconic Plaintiffs.

---

[1] I refer to Volkswagen Akteingesellschaft and Volkswagen Group of America, Inc. collectively as "VW."

7.    Separately, the parties have not yet engaged in expert discovery, which the Iconic Plaintiffs anticipate will be largely focused on their individualized damages.

## II.    RULE 56(d)

### a.    *There Are Specific Facts the Iconic Plaintiffs Intend to Elicit in Further Discovery.*

8.    In its Motion for Summary Judgment, Bosch makes specific statements in its Motion that are contradicted, nullified, or placed in context by other evidence both gathered and anticipated to be gathered in the case. Each of those statements and the Iconic Plaintiffs' response is set out as follows:

a) Bosch Statements/Argument: Arguing that signing the Dealer Agreement precludes the Iconic Plaintiffs from incurring damages caused by the VW-Bosch conspiracy, Bosch states that the Iconic Plaintiffs decided to move forward with an Elgin VW dealership and executed a dealer agreement after the Environmental Protection Agency ("EPA") issued its first Notice of Violation. [Dkt. 8227 at 6 (citing 10/30/2015 Dealer Agreement and 8/25/2016 W. Slevin Letter).] However, Bosch also states that there was ████████████████████████████████ ████████████████████████████████████████████████████████████

    a. Iconic Plaintiffs' Response Demonstrating a Material Issue of Fact: At the time of signing the Dealer Agreement, the Iconic Plaintiffs (and Mr. Slevin) were not fully informed and knowledgeable as to the fraudulent conduct engaged in by VW and Bosch, which had otherwise been minimized and misrepresented by VW representatives to Mr. Slevin, including following the First NOV and prior to the signing of the Dealer Agreement. [*See* Slevin Decl. at ¶¶ 18–21.] ████████████████████████████████████████████████████████ ██████████████████████████████████████████ does not support any conclusion that it made a fully informed decision; ███████████████████████████ █████████████████ which was impacted by VW's continued misrepresentations. [*Id.*]

    b. Rule 56(d) Discovery: Certain VW employees located in the Midwest, including those outlined in the Iconic Plaintiffs 26(a)(1) disclosures who have not yet been deposed, are expected to testify regarding the circumstances following the First NOV and prior to the execution of the Dealer Agreement, including the misrepresentations VW personnel made to Mr. Slevin prior to the execution of the Dealer Agreement. These third-party witnesses are also expected to testify that at no time did VW in any way offer Mr. Slevin an option to opt out of the Dealer Agreement, *e.g.,* a total buyout from VW without incurring significant losses arising from his investment of more than ██████████ at that time. In addition, third party appraisal and real estate witnesses and expert witness(es) are expected to provide testimony that will establish that Mr. Slevin could not market and sell the Property to a willing buyer in an arms-length negotiation without significant losses to SCI.

b) Bosch Statements/Argument: Arguing that select (and contextually arguable) sales and profitability trends somehow inherently preclude the Iconic Plaintiffs from incurring damages caused by the VW-Bosch conspiracy, Bosch states that even before the emissions noncompliance was revealed, VW dealers were experiencing poor sales, including a study

3

which disclosed sales were down 6.9% in 2013. [Dkt. 8227 at 7 (citing Haig Partners, The Blue Sky Report Year Ends 2013 and 2014).] Bosch further states that sales per dealership had fallen by 10% since additional dealerships had been added. [*Id.*]

a. <u>Iconic Plaintiffs' Response Demonstrating a Material Issue of Fact</u>: Mr. Slevin sets out in his declaration VW's statements, including regarding its vehicle line and purportedly premium, environmentally friendly brand, that VW representatives considered to be most relevant to Elgin VW's projected performance, which were used to induce Mr. Slevin into a business relationship with VW. [*See* Slevin Decl. ¶ 8.] These projections promoted ███████ in net profits before taxes per year, and were re-emphasized by VW in assuring Mr. Slevin to continue moving forward with the Elgin VW Dealer Agreement. [*Id.* ¶¶ 8, 19.]

b. <u>Rule 56(d) Discovery</u>: Certain VW employees located in the Midwest, including those outlined in the Iconic Plaintiffs 26(a)(1) disclosures who have not yet been deposed, are expected to testify regarding the representations made to Mr. Slevin regarding the projections for Elgin VW and how the data cited by Bosch in its motion is inaccurate, inapplicable, and/or presented without context.

c) <u>Bosch Statements/Argument</u>: Arguing that, factually, the Iconic Plaintiffs' settlement with VW makes them whole so as to relieve Bosch of the payment of any damages, Bosch states that the Iconic Plaintiffs ███████████ in a settlement with VW. ██████████████ ███████████████████

a. <u>Iconic Plaintiffs' Response Demonstrating a Material Issue of Fact</u>: Mr. Slevin has provided testimony of well over ███████ in real estate purchase and construction costs, as well as interest from financing the purchase of the property and construction of the facility and real estate tax obligations. [*See* Slevin Decl. ¶¶ 11–15.] Mr. Slevin has also testified that Elgin VW ██████████ ████████████████ [*Id.* ¶ 23.] Further, Mr. Slevin has testified that since 2016, ██████████████████████████████████████████████ ████████ [*Id.* ¶ 31.] ██████████████████████████████████████████ ████████████████ [*Id.* ¶ 26.]

b. <u>Rule 56(d) Discovery</u>: The testimony of various third-party witnesses, including those outlined in the Iconic Plaintiffs 26(a)(1) disclosures who have not yet been deposed, are expected to testify regarding additional information that supports and corroborates these numbers and the total amount of damage to the Iconic Plaintiffs caused by the VW-Bosch conspiracy, including property appraisers, VW representatives addressing operating numbers and lost profits (in addition to Mr. Slevin and Elgin VW representatives). *See* ¶¶ 9–10, *infra*. In addition, expert witness(es) are expected to provide testimony addressing the fact discovery in this case, including Mr. Slevin's testimony, documentary evidence, and the to be obtained testimony of other third-party witnesses to support that neither SCI nor Elgin VW was made whole by the settlement with VW and that, when accounting for loss in value, lost revenue, lost profits, property tax payments, and loan interest payments, their collective damages ██████████████████████

d) <u>Bosch Statement/Argument</u>: Arguing that, factually, Elgin VW is not entitled to damages beyond its settlement with VW, Bosch states that, factually, Elgin VW continues to operate, and it cost essentially nothing out-of-pocket to open. [Dkt. 8227 at 8 (citing no evidence).]

   a. <u>Iconic Plaintiffs' Response Demonstrating a Material Issue of Fact</u>: While Elgin VW does continue to operate, overwhelming evidence shows there is a material issue of fact as to out-of-pocket expenses and operating losses. *E.g. supra* at ¶ c).a.

   b. <u>Rule 56(d) Discovery</u>: Certain witnesses, including those outlined in the Iconic Plaintiffs' 26(a)(1) disclosures who have not yet been deposed, are expected to testify to support the out-of-pocket expenses and operating losses set out by Mr. Slevin. *E.g. supra* at ¶ c).b.

e) <u>Bosch Statements/Argument</u>: Arguing that, factually, the Iconic Plaintiffs' only evidence (or apparently possible evidence) of damages are two appraisals of the Elgin VW property, which were placed in a comparison chart, ████████████████████████████ ████████████. [Dkt. 8227 at 8-9 (citing 2014 and 2019 Appraisals).] Of the loss shown in the 2018 appraisal, ██████████████████████████████████████████████ ██████████████████████████ *[Id.]* The 2018 appraisal admits that ██████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████ *[Id.* at 16.]

   a. <u>Iconic Plaintiffs' Response Demonstrating a Material Issue of Fact</u>: As Mr. Slevin testifies, the Iconic Plaintiffs' damages evidence is not limited to two appraisals. [*See generally* Slevin Decl. and *supra*.]

   b. <u>Rule 56(d) Discovery</u>: Certain witnesses, including those outlined in the Iconic Plaintiffs' 26(a)(1) disclosures who have not yet been deposed, such as Paul D. Conn, Clayton P. Conn, Arthur J. Murphy, Arthur J. Murphy III, and Christopher M. Strama (the certified appraisers of the 2014 and 2018 property appraisals) are expected to testify to the loss in property value and expound on the meaning behind certain findings in their respective appraisals, including extrinsic market factors.

### *b. The Facts the Iconic Plaintiffs Are Seeking Exist.*

9.     Much of the above stated evidence shall come from third-party witnesses explaining and providing context for documentary evidence from which Bosch has drawn (unsupported) conclusions. Those witnesses (and the documents to be subpoenaed from them) include:

   (1) Alan S. Bloom, Bloom General Contracting, Inc., construction company employed for the Elgin VW facility purchased by SCI;

   (2) Gary Laundroche, Bloom General Contracting, Inc., construction company employed for the Elgin VW facility purchased by SCI;

   (3) Randy Arnold, Ernst & Morris Consulting Group, Inc., construction company employed for the Elgin VW facility purchased by SCI;

   (4) Gordon Munroe, VW's General Manager for Network Development in the Midwest Region;

   (5) Merriman King, VW's Director of the Midwest Region;

(6) John "Skip" Redman, a VW employee and agent who evaluated the profitability of the Elgin VW;

(7) Mark McNabb, a former VW employee and agent who assisted Mr. Slevin with his dealership application;

(8) Bill Pulda, a VW Sales and Distribution Manager for the Midwest Region, who has knowledge of Elgin VW's business operations, sales and service performance and the impact of the emissions scandal on Elgin VW and the Midwest Region;

(9) Robert V. Parkins, a VW Regional Used Car Manager for the Midwest Region, who has knowledge of Elgin VW's business operations, sales and service performance, and the impact of the emissions scandal on Elgin VW and the Midwest Region;

(10)  Jason Haden, a VW General Manager of Sales Operations for the Midwest, who has knowledge of Elgin VW's business operations, sales and service performance, and the impact of the emissions scandal on Elgin VW and the Midwest Region;

(11)  Bob Kim, a VW General Manager of Network Operations, who has knowledge of Elgin VW's business operations, sales and service performance, and the impact of the emissions scandal on Elgin VW and the Midwest Region;

(12)  Alan Yax, a VW General Manager of Fixed Operations for the Midwest Region, who has knowledge of Elgin VW's business operations, sales and service performance, and the impact of the emissions scandal on Elgin VW and the Midwest Region;

(13)  Paul D. Conn, certified appraiser of 2014 Property Appraisal;

(14)  Clayton P. Conn, certified appraiser of 2014 Property Appraisal;

(15)  Arthur J. Murphy, certified appraiser of 2018 Property Appraisal;

(16)  Arthur J. Murphy III, certified appraiser of 2018 Property Appraisal; and

(17)  Christopher M. Strama, certified appraiser of 2018 Property Appraisal.

10.    This third-party evidence is in addition to the testimony of witnesses associated with the Iconic Plaintiffs, whom Bosch has not deposed, including:

(1) William Slevin, President, owner and Dealer Operator of Plaintiff Elgin VW, and the owner of Plaintiff SCI;
(2) Marty O'Donnell, Chief Controller, Slevin Automotive Group;
(3) George Poulos, (retired) General Manager at Elgin VW; and
(4) Marco Palacios, (former) Sales Manager at Elgin VW.

While it is Bosch's option to avoid discovering evidence through depositions, these witnesses have testimony to provide, which will be presented by the Iconic Plaintiffs, including

these witnesses' testimony as to information both within the control of the Iconic Plaintiffs and regarding that of third parties to be discovered as set out above.

### c. The Sought After Facts Are Essential to Oppose Summary Judgment.

11.     Bosch alleges in its Motion for Summary Judgment that the Iconic Plaintiffs do not have cognizable damages.

12.     All of the above witnesses, including the documents each witness possesses that will be obtained through third-party subpoenas issued in the Northern District of Illinois, are key to determining the fullest extent of the Iconic Plaintiffs' damages (and bolstering the testimony of Mr. Slevin, *see generally* Slevin Decl.), including:

- Damages resulting from SCI's expenses to acquire and construct Elgin VW's dealership facility, which it calculates to have cost ██████████ plus interest and taxes, which it calculates to have cost ██████████ and ██████████, respectively;

- SCI's losses, including the diminution in value of the dealership property and facility resulting from Defendants' fraud, the lost opportunity for the use of SCI's capital, additional expenses related to borrowed capital, including interest, and decreased rent/use and occupancy due and owing to SCI for the use of the property and facility, and carrying costs;

- Elgin VW's compensatory damages resulting from lost profits, lost trade-ins, lost service revenue, lost opportunity costs, the inability to sell vehicles at a premium, increased inventory carrying costs, paying for alternative inventory, decreased value of dealership inventory, reduced inventory, a new add point dealership at the time of the scandal, expenses resulting from the turnover of key sales personnel because of the scandal, and increased financing and related expenses;

- Elgin VW incurring a total of ██████████ in actual net losses from inception through December 31, 2019; and

- The total amount of its lost expected profits and reduction in inventory value, which Elgin VW calculates to be ██████████

13.     Based on the foregoing, and the posture of this case in this MDL, I certify that this request pursuant Rule 56(d) is timely, specifically identifies relevant information that has yet to be obtained through discovery, and that a reasonable basis exists for believing the information sought actually exists.

14.     The Iconic Plaintiffs also issued certain Requests for Admission to Bosch that are relevant to proximate causation which Bosch is refusing to answer. [*See* Opp at 24—25.] Having responsive and relevant information pertinent to proximate causation, such as ██████████
████████████████████████████████████████████

1     ███████████ , will enable the Iconic Plaintiffs to fully address Bosch's arguments head on.

2 As it stands now, Bosch's efforts to stonewall discovery hamper the Iconic Plaintiffs' ability to

3 respond to Bosch's argument that there existed certain intervening causes that relieve Bosch from

4 liability.

5     I declare under penalty of perjury under the laws of the United States of America that the

6 foregoing is true and correct.

7

8     Executed this 14th day of February, 2025, in Chicago, Illinois

9

10

11                    Joshua J. Cauhorn

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8