Carmine D. Boccuzzi, Jr. (*pro hac vice*)
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
(212) 225-2000 (Phone)
(212) 225-3999 (Facsimile)
cboccuzzi@cgsh.com

Jennifer Kennedy Park (SBN 244888)
Cleary Gottlieb Steen & Hamilton LLP
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
(650) 815-4100 (Phone)
jkpark@cgsh.com

*Counsel for Defendants*
*Robert Bosch GmbH and*
*Robert Bosch LLC*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re: Volkswagen 'Clean Diesel' Marketing, Sales Practices, and Products Liability Litigation* | LEAD CASE No. 15-md-02672-CRB |
| | **ROBERT BOSCH GMBH AND ROBERT BOSCH LLC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| This document relates to: | Hon. Charles R. Breyer |
| *Iconic Motors, Inc., et al. v. Volkswagen Group of America, Inc., et al.*, No. 3:17-cv-3185-CRB | Hearing: April 11, 2025, 10:00am |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1
ARGUMENT ..................................................................................................................... 2
I. PLAINTIFFS FAIL TO SHOW RICO INJURY. .............................................. 2
II. PLAINTIFFS FAIL TO SHOW PROXIMATE CAUSE FOR THEIR RICO CLAIM. ..... 6
III. PLAINTIFFS' "CIVIL CONSPIRACY" CLAIM UNDER ILLINOIS LAW ALSO FAILS FOR LACK OF COGNIZABLE INJURY AND LACK OF PROXIMATE CAUSATION. ........................................................................................... 8
IV. PLAINTIFFS HAVE FAILED TO DEMONSTRATE ADDITIONAL DISCOVERY THAT WOULD IDENTIFY A GENUINE DISPUTE OF MATERIAL FACT. ................. 9
CONCLUSION ................................................................................................................ 11

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006) ................................................................................................. 6, 8

*Bank of Am. Corp. v. City of Miami*,
    137 S. Ct. 1296 (2017) ................................................................................................. 10

*Bordelon v. Mindoro*,
    2019 WL 1438853 (N.D. Cal. Apr. 1, 2019) ............................................................... 10

*Bridge v. Phoenix Bond & Indemnity Co.*,
    553 U.S. 639 (2008) ....................................................................................................... 7

*Chesapeake Emps.' Ins. Co. v. Eades*,
    77 F. Supp. 3d 1241 (N.D. Ga. 2015) ............................................................................ 5

*Corcel Corp., Inc. v. Ferguson Enters.*,
    551 F. App'x 571 (11th Cir. 2014) ................................................................................ 5

*Dunmore v. Dunmore*,
    2013 WL 5569979 (E.D. Cal. Oct. 9, 2013) ................................................................. 8

*Fleischhauer v. Feltner*,
    879 F.2d 1290 (6th Cir. 1989) ....................................................................................... 5

*Gov't App Solutions, Inc. v. City of New Haven*,
    2023 WL 2957862 (E.D. Cal. Apr. 13, 2023) ............................................................... 7

*Hemi Grp., LLC v. City of New York*,
    559 U.S. 1 (2010) .......................................................................................................... 6

*Holmes v. Sec. Inv. Prot. Corp.*,
    503 U.S. 258 (1992) ...................................................................................................... 8

*In re Duramax Diesel Litig.*,
    298 F. Supp. 3d 1037 (E.D. Mich. 2018) ...................................................................... 5

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    2017 WL 4890594 (N.D. Cal. Oct. 30, 2017) ....................................................... 2, 4-6

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    2019 WL 4581340 (N.D. Cal. Sept. 20, 2019) ............................................................ 10

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   2019 WL 6749534 (N.D. Cal. Dec. 6, 2019) ................................................................... *passim*

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   2023 WL 4163397 (N.D. Cal. June 22, 2023) ......................................................................... 9

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   842 F. App'x 112 (9th Cir. 2021) ......................................................................................... 6-8

*Maiz v. Virani*,
   253 F.3d 641 (11th Cir. 2001) ................................................................................................. 5

*Mendia v. Garcia*,
   768 F.3d 1009 (9th Cir. 2014) ................................................................................................. 8

*Moore v. PaineWebber, Inc.*,
   189 F.3d 165 (2d Cir. 1999) ..................................................................................................... 5

*Mosaic Brands, Inc. v. Ridge Wallet LLC*,
   2021 WL 4535351 (C.D. Cal. Aug. 5, 2021) ......................................................................... 10

*Painters & Allied Trades District Council 82 Health Care Fund v. Takeda Pharms. Co. Ltd.*,
   943 F.3d 1243 (9th Cir. 2019) .......................................................................................... 10-11

*Proven Methods Seminars, LLC v. Am. Grants & Affordable Hous. Inst., LLC*,
   2008 WL 269080 (E.D. Cal. Jan. 29, 2008) ............................................................................ 5

*Sheperd v. Am. Honda Motor Co., Inc.*,
   822 F. Supp. 625 (N.D. Cal 1993) .......................................................................................... 9

**State Cases**

*Calloway v. Bovis Lend Lease, Inc.*,
   995 N.E.2d 381 (Ill. App. Ct. 2013) ........................................................................................ 9

*Giammanco v. Giammanco*,
   625 N.E.2d 990 (App. Ct. Ill. 1993) ....................................................................................... 9

*Lewis v. Lead Indus. Ass'n*,
   178 N.E.3d 1046 (Ill. 2020) ..................................................................................................... 8

**Other Authorities**

Fed. R. Civ. P. 56(d) ................................................................................................................. 9-10

BOSCH DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (MDL NO. 2672 CRB)
iii

**PRELIMINARY STATEMENT**

This Court's *Napleton* decisions have three clear holdings: (1) Volkswagen dealers could not recover supposed lost profits from TDIs that they had no right to sell, (2) lost brand value is an intangible injury not recoverable under RICO, and (3) Volkswagen dealers' supposed lost future profits from the inability to sell TDIs was caused by the revelation of Volkswagen's fraud, not by the fraud itself.[1] The record developed in this case over five years of discovery lays bare that those holdings squarely foreclose all of Plaintiffs' claims here too. In short, Plaintiffs' claims here are far more removed than the claims in *Napleton* that this Court, in a decision affirmed by the Court of Appeals, previously dismissed on summary judgment. Further discovery cannot change anything, and there certainly is no need to remand this case to Illinois only to delay reaching this conclusion for several more years. The Court should grant summary judgment to the Bosch Defendants and finally bring this case to a close.

Plaintiffs' efforts to identify the requisite concrete injury to business or property fall completely flat. While it is of course true that overpaying for something might constitute such an injury, in *this* case there is a total failure of proof on the issue of Plaintiffs' alleged "overpayment" in 2014 for the land, building, and dealership that they continue to operate today. And Plaintiffs' Opposition otherwise makes plain that they supposedly "overpaid" for the tarnished Volkswagen brand, which this Court has repeatedly held is too intangible to qualify as RICO injury. As to Plaintiffs' claims to "lost profits," that is just a rehash of the theory, soundly rejected by this Court in *Napleton*, that they somehow lost the right to sell a certain type of car (here, TDIs) even though they never had a right to receive from Volkswagen any particular type of vehicle to sell in their dealership.

Even if Plaintiffs somehow could demonstrate the existence of a disputed issue of material fact as to some concrete injury (they cannot), Plaintiffs cannot demonstrate as a matter of law that

---

[1] Capitalized terms not defined here have the same meanings as in Robert Bosch GmbH and Robert Bosch LLC's Notice of Motion and Motion for Summary Judgement, ECF No. 8227 ("Motion"). "Opposition" means Plaintiffs Iconic Motors, Inc. d/b/a Elgin Volkswagen and Slevin Capital Investments, Inc.'s Opposition to Robert Bosch GmbH and Robert Bosch LLC's Motion for Summary Judgment, ECF No. 8256.

1  the alleged emissions fraud was the reason for it.  Plaintiffs never experienced the purported harm
2  directly flowing from *that* alleged wrongdoing—*i.e.*, being stuck with unsellable TDIs—since
3  they never acquired such vehicles to sell (although they, like every other Volkswagen dealer, still
4  benefitted from the ability to service such vehicles as well as received other incentive payments
5  from Volkswagen).  As this Court held in *Napleton*, the misplaced claim of injury and damages
6  based on Volkswagen's reputational loss was caused not by the Bosch Defendants' alleged
7  conduct—supposedly working with Volkswagen to evade emissions regulations—but rather by
8  the discovery of Volkswagen's emissions noncompliance.  Similarly, Plaintiffs cannot claim or
9  demonstrate that the Bosch Defendants' alleged conduct is causing ongoing lost sales of vehicles
10 (none of which are TDIs).
11 ███████████████████████████████████████████████████████████████████████
12 █████████████████████████████████████████████████  Plaintiffs
13 have no basis in law or fact to add to that windfall through their claims against the Bosch
14 Defendants here.

## ARGUMENT

### I.  PLAINTIFFS FAIL TO SHOW RICO INJURY.

Plaintiffs try to couch their supposed losses in terms of lost "investment" or as profits they expected but did not receive.  *See* Opp'n at 12-15.  But all of these claims just use different words to describe theories of recovery that this Court rejected in *Napleton*—either the loss of the ability to sell noncompliant TDIs or lost brand value and goodwill after Volkswagen's emissions noncompliance came to light.  *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 6749534, at *3 (N.D. Cal. Dec. 6, 2019) ("*Napleton II*") ("The dealers' lost profits from yet-to-be-manufactured TDIs did not result from an injury to their 'business or property' that was 'by reason of' a pattern of racketeering activity. . . . The dealers accordingly cannot recover these lost profits under RICO."), *aff'd*, 842 F. App'x 112 (9th Cir. 2021); *see also id.* at *5 ("The Court reaffirms that the dealers cannot recover under RICO for losses resulting from a decline in goodwill.").  Plaintiffs cannot show the "'tangible' or 'concrete' financial loss" that RICO demands.  *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., &*

*Prods. Liab. Litig.*, 2017 WL 4890594, at *7 (N.D. Cal. Oct. 30, 2017) (citation omitted) ("*Napleton I*"); Mot. at 10-12.[2]

As an initial matter, Plaintiffs accept that in order for their overpayment theory to work they need to demonstrate that they paid too much at the time they purchased the land and dealership. *See* Opp'n at 12 (quoting *Kinsey v. Scott*, 463 N.E.2d 1359, 1367-68 (Ill. App. Ct. 1984), for holding that injury for overpayment "is the value the property would have had at the time of the sale if the defects did not exist, minus the value the property actually had at the time of the sale due to the defects"). Of course, there has been no such demonstration here—on its face, Plaintiffs' "evidence" puts forward purported appraisals as of 2014 (which tracks SCI's claimed purchase price) and 2018 (four years later). *See* Opp'n at 5. Plaintiffs effectively have no proof of *over*payment at the time of purchase. █████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
███████████████████████████████████

Moreover, Plaintiffs do not and cannot hide that the purported "defect" in what they received (and the driver of the alleged profit expectations for Elgin VW) was the inability to sell TDIs. *See* Opp'n at 14 (referencing "profit projections . . . based on historical sales of noncompliant TDIs"). And they similarly acknowledge that the value of "SCI's investment" is tied to "VW's projections of future income . . . premised . . . on VW manufacturing legally compliant vehicles for sale." *Id.* at 12; █████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████ But like the *Napleton* dealers, who claimed that "if Volkswagen had continued making the cars, [they] would have continued to sell and profit from them,"

---

[2] Plaintiffs note repeatedly that the Court previously denied the Bosch Defendants' motion to dismiss, which they say included many of the Bosch Defendants' current arguments. *See, e.g.*, Opp'n at 6. But Plaintiffs ignore that the same thing happened in *Napleton* too.

BOSCH DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (MDL NO. 2672 CRB)
3

1  Plaintiffs had no "'property' interest in the sale of TDIs that they did not own or possess at the
2  time of the stop-sale orders." See *Napleton II*, 2019 WL 6749534, at *2. Indeed, Volkswagen
3  had the sole discretion to stop making TDIs at any time. See Mot. at 15 (citing *Napleton II*, 2019
4  WL 6749534, at *2); see also ECF No. 8227-7 (October 30, 2015 Dealer Agreement). Plaintiffs
5  accordingly cannot state RICO injury by pointing to the alleged loss of a right they never had, or
6  the profits they hoped would flow from it. See *Napleton II*, 2019 WL 6749534, at *3, *5.[3]

7  Furthermore, any injury Plaintiffs might claim beyond the loss of TDI sales surely seeks
8  recovery for "intangible" brand value or "goodwill." See Opp'n at 1, 5, 14 (referencing
9  Volkswagen's "premium, environmentally friendly brand," "excellent brand reputation," and
10 "artificially inflated brand value"). However, as this Court previously held, repeatedly, "dealers
11 [cannot] recover under RICO for a decline in goodwill following the emissions fraud." *Napleton
12 II*, 2019 WL 6749534, at *4. Plaintiffs try to evade *Napleton*'s holding by framing their supposed
13 injury as "an overpayment or lost investment out-of-pocket loss," Opp'n at 11-12, but they
14 essentially suggest that SCI's land and facility are worth less because the facility has a "VW"
15 badge on the front. That is not cognizable injury. See *Napleton II*, 2019 WL 6749534, at *4
16 (explaining that "damage to goodwill is an intangible injury" and that RICO requires more than
17 "mere injury to a valuable intangible property interest" (citations omitted)); *Napleton I*, 2017 WL
18 4890594, at *6 ("a loss of goodwill is not recoverable" under RICO).

19 Plaintiffs also do not help their cause by arguing that they had "no goodwill to lose"
20 because Elgin VW had not opened before the first NOV to Volkswagen. See Opp'n at 15-16.
21 Whether the value of Elgin VW's own brand or Volkswagen's, Plaintiffs clearly seek to recover
22 lost brand value. If anything, that Elgin VW was a new business makes its claim even more

---

[3] ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ See Opp'n at 13. This claim is based only on the naked assertion that the president of SCI and Elgin VW "would have profited significantly more" from some unidentified "alternative business venture" had Volkswagen not induced him to open the Elgin VW dealership. See *id.* at 14-15. Plaintiffs further admit ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ that they opened the dealership with awareness of the NOV – which completely destroys the necessary causation between the Bosch Defendants' alleged RICO violation and Plaintiffs' supposed damages. See *infra* part II.

speculative than the *Napleton* dealers' claims, since Elgin VW seeks to recover for supposed harm to *potential* relationships with customers that it did not yet have. *See Proven Methods Seminars, LLC v. Am. Grants & Affordable Hous. Inst., LLC*, 2008 WL 269080, at *6 (E.D. Cal. Jan. 29, 2008) (granting motion to dismiss defendants' counterclaim that "*potential* consumers would have purchased their products and services" if not for the alleged RICO violation as a "non-compensable, speculative injury") (emphasis added)). Plaintiffs' own cases show how speculative their claim is by contrast. *See Chesapeake Emps.' Ins. Co. v. Eades*, 77 F. Supp. 3d 1241, 1252 (N.D. Ga. 2015) (plaintiff sought a "specific sum" to compensate it only for "premiums it was entitled to" under an insurance contract "but due to [d]efendants' alleged fraud . . . did not charge and collect"); *Corcel Corp., Inc. v. Ferguson Enters.*, 551 F. App'x 571, 578 (11th Cir. 2014) (plaintiff could demonstrate "direct evidence" of the profit it would have made for each contract it would have won but for defendant competitor's fraudulent scheme).

Plaintiffs' other authorities do not help them either. *See* Opp'n at 12-13. Many are decisions on motions to dismiss, stating nothing more than the unremarkable legal proposition that an allegation that a plaintiff paid for something it did not receive amounts to a claim of concrete injury. *See In re Duramax Diesel Litig.*, 298 F. Supp. 3d 1037, 1071 (E.D. Mich. 2018) (denying motion to dismiss where plaintiffs alleged vehicles did not perform as consumers expected); *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 170-71 (2d Cir. 1999) (vacating order granting motion to dismiss where plaintiffs alleged retirement account was actually a life insurance policy); *see also Maiz v. Virani*, 253 F.3d 641, 650, 655, 664 (11th Cir. 2001) (plaintiffs received shares in real estate development partnerships that were subject to undisclosed expenses and commissions); *Fleischhauer v. Feltner*, 879 F.2d 1290, 1292 (6th Cir. 1989) (plaintiffs received distribution rights for films that were not actually marketable). Here, after years of discovery, there is no dispute that SCI paid for land and a dealership facility, and that is what it still has today.[4]

---

[4] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* Opp'n at 22-23; *see also Napleton I*, 2017 WL 4890594, at *4.

## II. PLAINTIFFS FAIL TO SHOW PROXIMATE CAUSE FOR THEIR RICO CLAIM.

Even if Plaintiffs could show they were injured, they still cannot show that the Bosch Defendants proximately caused their supposed injuries. That independently defeats their RICO claim here. *See* Mot. at 12-16; *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries.").

*First*, SCI cannot show that its supposed lost investment damages were proximately caused by the Bosch Defendants' alleged RICO violation. Plaintiffs argue for pages and pages about the applicable standard under RICO, but it is common ground that RICO requires "direct" injury. *See, e.g.*, Opp'n at 16-21; Mot. at 12-16. And SCI's claim fails because its alleged injuries are far removed from the Bosch Defendants' alleged conduct. *See Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 10 (2010) (the "general tendency" of the law with respect to "proximate cause inquiries under RICO" is "not to go beyond the first step.") (citing *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 271-72 (1992)). Plaintiffs allege that the Bosch Defendants violated RICO by conspiring with Volkswagen to "develop[] and install[] 'defeat devices'" in Volkswagen vehicles. *See* ECF No. 5117 ¶ 1 ("Amended Complaint"); *see also Napleton I*, 2017 WL 4890594, at *9 (describing alleged wrongful conduct as Bosch Defendants' "partner[ship] with Volkswagen to implement the defeat device"). That alleged conduct is many, many steps removed from supposed changes in property values in Elgin, Illinois. *See* Mot. at 12-16.

As in *Napleton*, one of those steps is the *revelation* of Volkswagen's noncompliance, which disposes of Plaintiffs' RICO claim. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., and Prods. Liab. Litig.*, 842 F. App'x 112, 114-15 (9th Cir. 2021) ("Allowing Plaintiffs to recover for all possible consequences of the alleged RICO violations—including fallout from the discovery of RICO violations—runs counter to the notion of proximate cause."); *see also* Mot. at 13-15. In *Napleton II*, this Court held that "it was not the predicate acts of racketeering activity" (*i.e.*, the "falsifications of emissions tests") that caused the dealers' alleged losses, but rather "the emissions fraud's discovery." 2019 WL 6749534, at *3-4. So too here: the discovery of the alleged fraud is an intervening step that breaks any chain of proximate causation between the

Bosch Defendants' alleged conduct and SCI's alleged losses.  *See In re Volkswagen*, 842 F. App'x at 114 (the *Napleton* dealers' "theory of proximate causation necessarily encompasse[d] an intervening step: the discovery of the fraud"); *see also* Mot. at 13.[5]  Just like the *Napleton* plaintiffs, Plaintiffs here rely heavily on *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 642-44 (2008), but the Ninth Circuit made clear that *Bridge* cannot save these claims given the presence of that intervening step.  *See id.*

      SCI simply cannot escape *Napleton*'s holding.  Plaintiffs claim that SCI's alleged harm is "completely different" from the *Napleton* dealers' because SCI seeks lost value in its dealership, while the *Napleton* dealers sought lost profits from the inability to sell Volkswagen's TDIs.  *See* Opp'n at 19.  That actually makes SCI's claim even more attenuated than the claim in *Napleton*: the *Napleton* dealers sought lost future profits, but SCI goes further to seek the knock-on effects for its land and facility, which is at best derivative of Elgin VW's ability to generate future profits.  Nor does it make any difference that neither Plaintiff was a "beneficiary" of the alleged scheme before its discovery, as the Court found that the *Napleton* dealers were.  *See* Opp'n at 19-20; *Napleton II*, 2019 WL 6749534, at *2-4.  That difference does nothing to shorten the attenuated chain between the Bosch Defendants' alleged conduct and SCI's alleged injuries, and it therefore has no bearing on the proximate cause analysis.  Had Plaintiffs' dealership been open before the NOVs, it would have benefitted just as the *Napleton* dealers did—they are all similarly situated at a place well removed from the Bosch Defendants' alleged conduct, and their claims all fail for that reason.  *See* Mot. at 3-6 (discussing Volkswagen's comprehensive financial support programs for its dealers following the NOVs and opportunities for "dealers like Elgin VW" to earn additional profits from servicing TDIs).

      *Second*, Elgin VW's claim for lost profits was squarely rejected in *Napleton* for lack of proximate cause and fares no better here.  *See Napleton II*, 2019 WL 6749534, at *3 (rejecting

---

[5] Plaintiffs fail to engage with *Gov't App Solutions, Inc. v. City of New Haven* and its core holding that it was the public discovery of the alleged RICO violations that led directly to plaintiff's alleged lost business value, not the violation itself.  *See* 2023 WL 2957862, at *6-7 (E.D. Cal. Apr. 13, 2023), *aff'd*, 2024 WL 1299993 (9th Cir. Mar. 27, 2024); Mot. at 14.  That same holding disposes of their claims here.

claim for lost profits from sales of hypothetical future TDIs). All of the supposed lost profits Elgin VW seeks are from *after* the NOVs and therefore after the alleged RICO violations ended. *See* Opp'n at 5 ("*Since November 2015*, Elgin VW has suffered significant losses in profits . . . ." (emphasis added)). Thus, all of these alleged losses were proximately caused by the discovery of the noncompliance, not because of the Bosch Defendants' alleged conduct. *See In re Volkswagen*, 842 F. App'x at 115; *Napleton II*, 2019 WL 6749534, at *2-3. Indeed, Plaintiffs, like the *Napleton* dealers before them, cite no case awarding an indefinite stream of lost profits extending years after the RICO enterprise had ended. *See* Opp'n at 13-15. Nor could they, as this is exactly the sort of "uncertain inquiry" that RICO's proximate cause requirement is meant to stop. *See Anza*, 547 U.S. at 468; *Holmes*, 503 U.S. at 268.

Plaintiffs' claimed lost profits are also quintessentially "self-inflicted" harm that followed their decision to open the dealership (and stay open) after the truth emerged. *See Mendia v. Garcia*, 768 F.3d 1009, 1013 n.1 (9th Cir. 2014); Mot. at 13. And Elgin VW effectively concedes as much, in arguing that it made a "decision to mitigate any potential damages and open notwithstanding the First NOV." Opp'n at 18. This shows that Elgin VW made an independent choice that served as an intervening cause of liability, defeating proximate cause. *See Dunmore v. Dunmore*, 2013 WL 5569979, at *8 (E.D. Cal. Oct. 9, 2013) (plaintiff's guarantee of fraudulent loans *after* learning of defendants' fraudulent scheme "serve[d] as an intervening cause that [broke] the chain of causation on plaintiff's RICO claims").

**III. PLAINTIFFS' "CIVIL CONSPIRACY" CLAIM UNDER ILLINOIS LAW ALSO FAILS FOR LACK OF COGNIZABLE INJURY AND LACK OF PROXIMATE CAUSATION.**

Plaintiffs' fraud-based civil conspiracy claim under Illinois law requires proof of "actual injury," which must be "pecuniary in nature," "establish[ed] to a reasonable degree of certainty," and not "predicated on mere speculation, hypothesis, conjecture or whim." *Lewis v. Lead Indus. Ass'n*, 178 N.E.3d 1046, 1055-56 (Ill. 2020) (affirming grant of summary judgment on civil conspiracy claim for lack of injury). And their claim also requires a showing of proximate causation. *See* Mot. at 17 (citing *Turcios v. DeBruler Co.*, 32 N.E. 3d 1117, 1125 (Ill. 2015); *Merrilees v. Merrilees*, 998 N.E.2d 147, 162 (Ill. App. Ct. 2013)).

Plaintiffs' civil conspiracy claim therefore fails for the same reasons as their RICO claim. *See Napleton II*, 2019 WL 6749534, at *5 ("The damages that the dealers seek to recover under these state laws are materially the same as the damages they seek to recover under RICO. As with their RICO claims, the dealers have not submitted proof that these damages are recoverable."). Plaintiffs have failed to create an issue of material fact that they overpaid at the time SCI acquired the land and facility, nor can they show that they had any right to sell the hypothetical TDIs underpinning their lost investment and lost profits claims. *See supra* part I. And in any event, they cannot show proximate causation. *See supra* part II. Plaintiffs' short discussion of Illinois law, *see* Opp'n at 22, does nothing to suggest that Illinois law would allow this fatally flawed claim to proceed—in fact, none of their cases even involves a civil conspiracy claim (and one does not even discuss Illinois law).[6]

## IV. PLAINTIFFS HAVE FAILED TO DEMONSTRATE ADDITIONAL DISCOVERY THAT WOULD IDENTIFY A GENUINE DISPUTE OF MATERIAL FACT.

This case is more than seven years old. Discovery has been ongoing for more than five years. Plaintiffs have had ample time to develop a record, and they have now submitted declarations showing the best evidence they ever could hope to prove should this case continue. But the record as it stands supports summary judgment for the Bosch Defendants, and there is no need for further delay. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2023 WL 4163397, at *11 (N.D. Cal. June 22, 2023) (Breyer, J.) (finding that, after affording plaintiffs only five additional months of discovery, "[m]ore time for discovery [was] not warranted" given plaintiffs' failure "to take advantage of the additional time they ha[d] already received."); Fed. R. Civ. P. 56(d).

More specifically, Plaintiffs' laundry list of supposedly necessary "Illinois-specific discovery" could not possibly change the outcome here. *See* Opp'n at 6-8, 24-25; ECF No. 8256-12 ¶ 8 ("Cauhorn Declaration"). Nothing in the Cauhorn Declaration could cure the defects noted

---

[6] *See Calloway v. Bovis Lend Lease, Inc.*, 995 N.E.2d 381 (Ill. App. Ct. 2013) (no civil conspiracy claim); *Giammanco v. Giammanco*, 625 N.E.2d 990 (App. Ct. Ill. 1993) (same); *Sheperd v. Am. Honda Motor Co., Inc.*, 822 F. Supp. 625 (N.D. Cal 1993) (no Illinois law claims).

above, and that is reason enough to deny Plaintiffs' request under Rule 56(d). *See Bordelon v. Mindoro*, 2019 WL 1438853, at *1 n.3 (N.D. Cal. Apr. 1, 2019) (Breyer, J.) (denying continuance where plaintiff failed to "make clear what information is sought and how it would preclude summary judgment") (citation omitted)). For that matter, much of the evidence Plaintiffs claim to need is their *own evidence*. *See, e.g.*, Cauhorn Decl. ¶ 10 (proposing depositions of Plaintiffs' own employees). By definition, Plaintiffs cannot claim that this evidence is "unavailable" to them so as to delay summary judgment. *See* Fed. R. Civ. P. 56(d); *Mosaic Brands, Inc. v. Ridge Wallet LLC*, 2021 WL 4535351, at *3 (C.D. Cal. Aug. 5, 2021) (denying Rule 56(d) request because plaintiff failed "to explain why it cannot present facts on some of these matters that are clearly within its own exclusive knowledge").

Plaintiffs' complaints about the Bosch Defendants' responses to Plaintiffs' Interrogatories and Requests for Admission similarly provide no reason for further delay. *See* Opp'n at 24-25. Those requests all seek information about the Bosch Defendants' alleged work as a supplier to Volkswagen. *See id.* But even if the Bosch Defendants were to make *every single* admission that Plaintiffs request, the result here would still be the same, since Plaintiffs' alleged injuries are so far removed from the Bosch Defendants' alleged conduct that is subject to those discovery requests. *See supra* part II. Plaintiffs say they need the information they seek to show that harm to Plaintiffs was "foreseeable." Opp'n at 25. But that would do nothing for them: "'the central question' in analyzing proximate cause under RICO is not foreseeability, but whether the violation 'led directly to the plaintiff's injuries.'" *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 4581340, at *10 (N.D. Cal. Sept. 20, 2019) (citing *Anza*, 547 U.S. at 461); *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1306 (2017) ("foreseeability alone does not ensure the close connection that proximate cause requires").[7]

---

[7] *Painters*, which Plaintiffs cite on this point, does not help them. *See* Opp'n at 25; *Painters & Allied Trades District Council 82 Health Care Fund v. Takeda Pharms. Co. Ltd.*, 943 F.3d 1243, 1257 (9th Cir. 2019). In *Painters*, defendant pharmaceutical companies were alleged to have fraudulently concealed health risks for a diabetes drug, and patients and third-party payors paid for prescriptions on the basis of that concealment. 943 F.3d at 1251. But there, nothing "cut off the chain of proximate cause" between the defendants' alleged violation and the plaintiffs'

# CONCLUSION

For the reasons stated above and in the Bosch Defendants' Motion, the Court should grant summary judgment in favor of the Bosch Defendants on all of Plaintiffs' claims against the Bosch Defendants.

Dated: March 21, 2025

By: /s/ *Carmine D. Boccuzzi, Jr.*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
Carmine D. Boccuzzi, Jr. (*pro hac vice*)
One Liberty Plaza
New York, New York 10006
(212) 225-2000 (Phone)
(212) 225-3999 (Facsimile)
cboccuzzi@cgsh.com

Jennifer Kennedy Park (SBN 244888)
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
(650) 815-4100 (Phone)
jkpark@cgsh.com

*Counsel for Defendants*
*Robert Bosch GmbH and*
*Robert Bosch LLC*

---

alleged injury, as the physicians prescribing the drug were mere "intermediaries." *Id.* at 1257. Here, the chain is far more attenuated and includes multiple intervening causes. *See supra* part II.