IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: VOLKSWAGEN 'CLEAN DIESEL' MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This document relates to Case No. 17-cv-3185-CRB | Lead Case No. 15-md-02672-CRB<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |

Defendants Robert Bosch GmbH and Robert Bosch LLC filed this motion for summary judgment in the action brought against them by Plaintiffs Iconic Motors, Inc. and Slevin Capital Investments, Inc. for the Bosch Defendants' alleged role in Volkswagen's "clean diesel" emissions fraud. The Bosch Defendants argue that Plaintiffs have not identified any recoverable damages resulting from the emissions fraud. Finding the matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), the Court agrees with the Bosch Defendants and **GRANTS** the motion for summary judgment.

**I.     BACKGROUND**

William Slevin, the president of both plaintiff organizations in this action, entered into an agreement with Volkswagen in 2013 to establish a dealership in Elgin, Illinois. Slevin Decl. (dkt. 8256-2) ¶¶ 1, 6–7, 9–10. Motivating Slevin, at least in part, was Volkswagen's strong "past and expected future performance, including the success of its 'turbocharged direct injection' diesel vehicles," or TDIs, and its "future as a leader in environmentally friendly technologies." Id. ¶ 8. Slevin took out several loans to purchase the property for and to construct the Elgin dealership. Id. ¶ 12.

Shortly before the Elgin dealership opened, the Environmental Protection Agency

issued Volkswagen a notice of violation of the Clean Air Act. Id. ¶ 18. A Volkswagen general manager contacted Slevin to assure him that the notice of violation would not have significant negative impact on the Elgin dealership, id. ¶ 19, and Slevin shortly thereafter signed a dealer agreement with Volkswagen, id. ¶ 21. Only three days later the EPA issued Volkswagen a second notice of violation. Id.

The Court has detailed the nature and scope of Volkswagen and Bosch's emissions fraud at length in prior orders. See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig. (Napleton I), 2017 WL 4890594, at *1–2 (N.D. Cal. Oct. 30, 2017); In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig. (Napleton II), 2019 WL 6749534, at *1–2 (N.D. Cal. Dec. 6, 2019). For the purpose of this Order, it is sufficient to note that the emissions fraud affected Volkswagen's ability to sell TDIs in the United States. Napleton I, 2017 WL 4890594, at *1; Napleton II, 2019 WL 6749534, at *1. After the second notice of violation, Volkswagen ordered its dealerships to stop selling TDIs. Napleton II, 2019 WL 6749534, at *1. But the Elgin dealership had no TDIs in inventory at that time. See RFA Responses (dkt. 8227-5) at 2. Volkswagen never resumed selling TDIs in the United States and soon stopped manufacturing them altogether. See Napleton II, 2019 WL 6749534, at *2. Under its franchise agreements, Volkswagen—not the dealerships—retained discretion as to which types of cars to manufacture and make available for sale. Id.

Plaintiffs sued Volkswagen Group of America, Inc., Volkswagen AG, and the Bosch Defendants for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c), and for civil conspiracy under Illinois law. See Am. Compl. (dkt. 5117) ¶¶ 339–418, 456–63. Plaintiffs later entered a settlement with Volkswagen, leaving only their claims against the Bosch defendants. See Not. of Vol. Dismissal (dkt. 5365). The Bosch defendants moved to dismiss Plaintiffs' claims, and the Court denied their motion, explaining that Plaintiffs' investment in the Elgin dealership stated a claim under RICO but that summary judgment may be appropriate if Plaintiffs fail to factually support their alleged injury or link the injury to the fraud scheme. MTD Order

(dkt. 7031) at 1–2. The Bosch Defendants now move for summary judgment.[1]

## II.     LEGAL STANDARD

Summary judgment is proper when there is "no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine dispute of material fact. Celotext Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings to demonstrate the existence of a genuine dispute of material fact by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). If the nonmoving party fails to do so, "the moving party is entitled to a judgment as a matter of law." Celotex, 477 U.S. at 323.

## III.    DISCUSSION

The Bosch Defendants argue that summary judgment is proper because Plaintiffs have not alleged that they caused any damages that are cognizable under RICO or Illinois civil conspiracy law. Mot. (dkt. 8227) at 10–17. This is correct: the Bosch Defendants have shown that no genuine dispute of material fact exists as to whether the fraud itself— and not fallout from the fraud—proximately caused any recoverable injuries to Plaintiffs. And Plaintiffs have not rebutted this showing. Thus, summary judgment is appropriate.

### A.     Injury to Business or Property

RICO requires proof of an injury to a specific "business or property" interest. 18 U.S.C. § 1964(c); Diaz v. Gates, 420 F.3d 897, 900 (9th Cir. 2005) (en banc). Any such injury must be "tangible" or "concrete." Canyon County v. Syngenta Seeds, Inc., 519 F.3d

---

[1] Plaintiffs also move to remand for further discovery. Because the Court grants the motion for summary judgment, the Court **DENIES** Plaintiffs' motion as moot.

969, 975 (9th Cir. 2008). Intangible injuries, such as loss of goodwill, are not recoverable injuries under RICO. Oscar v. Univ. Students Co-op. Ass'n, 965 F.2d 783, 785 (9th Cir. 1992) ("mere 'injury to a valuable intangible property interest'" not recoverable under RICO), abrogated on other grounds by Diaz, 420 F.3d 897; Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc., 944 F.2d 597, 603 (9th Cir. 1991) (loss of goodwill not recoverable).

Some of Plaintiffs' injuries are, at base, intangible and therefore cannot support recovery under RICO's "business or property" requirement. Plaintiffs allege, for instance, that the emissions fraud led to a "diminution in brand value and brand loyalty," that the Elgin dealership and its staff "have become outlets for the anger and betrayal felt by" Volkswagen customers, and that the Volkswagen "brand is now demonstrably and permanently tainted." Am. Compl. ¶¶ 314–19. These are intangible injuries that are not recoverable under RICO. See Napleton I, 2017 WL 4890594, at *6–7 (citing Canyon County, 519 F.3d at 975, and Rent-A-Center, 944 F.2d at 603). Plaintiffs' argument that the Elgin dealership did not have goodwill to lose because it was not yet open when the emissions fraud was made public misses the point. Harm to intangible interests like business reputation and public perception is not an injury to "business or property" as that statutory language has been interpreted, regardless of whether there is a benchmark against which the business's reputation can be judged. See Proven Methods Seminars, LLC v. Am. Grants & Affordable Hous. Inst., LLC, CIV S-07-1588 WBS, 2008 WL 269080, at *6 (E.D. Cal. Jan. 29, 2008) (allegation that potential customers would have chosen certain products absent RICO violations is "non-compensable" and "speculative").

Plaintiffs argue that even if the concepts of business reputation, goodwill, and brand identity are themselves intangible, Plaintiffs suffered tangible pecuniary damages because (1) these injuries led to decreased sales of Volkswagen cars, from which Plaintiffs suffered a monetary injury, and (2) the property on which they built the Elgin dealership decreased in value. Opp. (dkt. 8256) at 11–15. But these claims merely "cast in different language" the same basic theory—that the emissions fraud harmed Volkswagen's (and Plaintiffs')

4

1  reputation and thus caused them harm.  Napleton I, 2017 WL 4890594, at *7.  And the link
2  between Plaintiffs' reputational and pecuniary injuries is speculative.

3        Plaintiffs' own authorities demonstrate this clearly.  Each involved allegations or
4  evidence of a tangible transaction, contract, agreement, or other interaction that would
5  have happened but for the alleged fraud.  See Chesapeake Emps.' Ins. Co. v. Eades, 77 F.
6  Supp. 3d 1241, 1252 (N.D. Ga. 2015) (plaintiff "was entitled to" premiums under an
7  insurance contract that it "did not charge and collect" due to the defendants' alleged fraud);
8  Corcel Corp. v. Ferguson Enters., 551 F. App'x 571, 578 (11th Cir. 2014) (plaintiff alleged
9  contracts it would have won but for fraud and could develop "direct evidence" with respect
10 to these specific contracts); In re Duramax Diesel Litig., 298 F. Supp. 3d 1037, 1071–72
11 (E.D. Mich. 2018) (plaintiffs alleged "a specific payment attributable directly to the
12 vehicle component at issue which they opted to purchase on the basis of fraudulent
13 conduct"); Moore v. PaineWebber, Inc., 189 F.3d 165, 170–71 (2d Cir. 1999) (plaintiffs
14 alleged that the defendant misrepresented a life insurance policy "as a retirement savings
15 plan like an IRA" that would "always have been [valued] at least as great as the sum of
16 their annual [] contributions").  Those are all tangible injuries that are thus recoverable
17 under RICO.  See Diaz, 420 F.3d at 900.  Plaintiffs, by contrast, do not identify specific
18 sales that they would have made but for the emissions fraud, nor do they identify what
19 property-value losses were caused by the emissions fraud.  Indeed, several of the above-
20 cited courts even clarified that speculative injuries, like those that Plaintiffs assert in this
21 case, are not cognizable under RICO.  See Eades, 77 F. Supp. 3d at 1252 ("[W]hile
22 Plaintiff logically incurred additional risk of loss … Plaintiff does not allege damages for
23 this intangible factor; it seeks compensation only for premiums it would have charged
24 under the insurance contract."); Fleischhauer v. Feltner, 879 F.2d 1290, 1300 (6th Cir.
25 1989) (limiting damages "to the amounts actually invested" in unmarketable products).

26       Because Plaintiffs' injuries are either intangible (lost goodwill or brand value) or
27 intractably tied up with intangible injuries (lost sales or property value), Plaintiffs have
28 failed to establish that they suffered an injury to business or property.

5

### B. Proximate Causation

Even if Plaintiffs can overcome the intangible nature of their asserted harms by connecting them to financial losses, though, such an argument would fail for a different reason—lack of proximate causation. A RICO plaintiff must prove that any injury to their business or property was proximately caused by the alleged misconduct. The Supreme Court has repeatedly articulated RICO's proximate cause requirement as demanding "some direct relation between the injury asserted and the injurious conduct alleged." Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 654 (2008) (quoting Holmes v. Sec. Inv'r Prot. Corp., 503 U.S. 258, 268 (1992)); Glob. Master Int'l Grp., Inc. v. Esmond Nat., Inc., 76 F.4th 1266, 1275 (9th Cir. 2023) ("[W]hen a court evaluates proximate causation, 'the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries.'" (quoting Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 461 (2006))).

Additionally, "the compensable injury flowing from a RICO violation 'necessarily is the harm caused by the predicate acts.'" Hemi Grp., LLC v. City of New York, 559 U.S. 1, 13 (2010) (quoting Anza, 547 U.S. at 457) (cleaned up); see also Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985) ("Any recoverable damages occurring by reason of a [RICO violation] will flow from the commission of the predicate acts."). RICO's proximate cause requirement therefore means that damages resulting from discovery or publicization of fraud, rather than fraud itself, are not cognizable. See In re Am. Express Co. Shareholder Litig., 39 F.3d 395, 400 (2d Cir. 1994) (no cognizable injury where shareholders of American Express lost value in their shares due to fallout over the company's RICO violations); In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods., Liab. Litig. (Napleton III), 842 F. App'x 112, 114 (9th Cir. 2021) (no cognizable injury when Volkswagen dealerships lost the opportunity to sell TDIs due to Volkswagen's emissions fraud scheme); Gov. App Sols., Inc. v. City of New Haven, 2024 WL 1299993, No. 23-15708, at *2 (9th Cir. Mar. 27, 2024) (no cognizable injury where business lost customers after it hired a consultant who turned out to be an FBI operative and who uncovered RICO violations).

6

This proves fatal to Plaintiffs' claims that derive from the reputational injuries that Volkswagen and Plaintiffs suffered after the emissions fraud was revealed. For one, any reputational injuries were not caused by the underlying fraud, but by the fraud's discovery and publicization. The Ninth Circuit has already confirmed that this is too attenuated to establish proximate cause. See Napleton III, 842 F. App'x at 114. Further, any pecuniary harm resulting from those reputational injuries, such as reduced sales or diminished property values, lies even further down the causal chain and is affected by additional third-party behavior of Volkswagen customers. See Gov. App. Sols., 2024 WL 1299993, at *2 (publication of company's scheme and clients' subsequent decisions not to do business with the company broke causal chain). With particular respect to the Elgin dealership's property value, it is necessary to separate Plaintiffs' investment in the property—which may have been directly caused by Volkswagen's representations, but which was not in itself an injury to Plaintiffs—from the subsequent loss in property value. Any property-value loss was not directly caused by Volkswagen's representations, but rather was the result of the fallout from the emissions fraud: lower sales, lost brand value, and the like.[2]

Plaintiffs attempt to analogize this case to Marianas Hospitality Corp. v. Premier Business Solutions, Inc., a case in which the defendant caused the plaintiff to defraud the IRS, which in turn led to the plaintiff suffering harm in the form of back payments and penalties owed to the IRS. Civ. No. 07-2, 2009 WL 750247, at *8–9 (D. Guam Jan. 14, 2009). The Marianas Hospitality court found that the plaintiff had adequately alleged proximate causation at the pleading stage. Id. But Marianas Hospitality is dissimilar in a key respect: the defendant caused the plaintiff to be an active part—if unwittingly—in its fraud scheme. See id. In this case, by contrast, Plaintiffs played no role in Defendants' emissions fraud scheme, whether as an unwitting abettor or a direct target of the scheme.

Moreover, any pecuniary harms that are derivative of reputational injuries are too

---

[2] The Court's order denying the Bosch Defendants' motion to dismiss Plaintiffs' claims does not hold to the contrary. Rather, the Court explained that Plaintiffs had alleged a RICO injury by identifying pecuniary harms but would need to sufficiently link those financial losses to the Bosch Defendants' misconduct. MTD Order (dkt. 7031) at 2.

7

uncertain to permit recovery. Plaintiffs' attempted reliance on car sales and land value would require parsing out confounding factors that could have slowed sales or diminished the value of the Elgin dealership, which strongly suggests that proximate cause is lacking. See Holmes, 503 U.S. at 269 ("the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors"). This is yet another reason why many of the authorities on which Plaintiffs rely are inapposite. See, e.g., Eades, 77 F. Supp. 3d at 1252 (fraud resulted in loss of ability to collect specific insurance premiums); Corcel Corp., 551 F. App'x at 578 (fraud resulted in loss of specific contracts); Moore, 189 F.3d at 170–71 (any lost value of life insurance policy affected by misrepresentations); In re Duramax, 298 F. Supp. 3d at 1071–72 (vehicle component entirely unusable; lost value ascertainable); Fleischhauer, 879 F.2d at 1300 (film distribution rights entirely unusable; lost value ascertainable).

  Plaintiffs' alternative theory is that they were injured by their inability to sell TDIs and Volkswagen's buyback of TDIs after the emissions fraud came to light. See Am. Compl. ¶¶ 313–16. The Court assumes that any lost profits from selling or servicing TDIs constitutes a business interest but finds that proximate cause is lacking here as well. Indeed, the Court has already considered and rejected this argument. See Napleton II, 2019 WL 6749534, at *2–4 (Volkswagen's decision to stop selling and buy back TDIs was "a result of the scandal, not the scheme itself" (quoting Meng v. Schwartz, 116 F. Supp. 2d 92, 97 (D.D.C. 2000))). Plaintiffs attempt to distinguish Napleton by pointing out that, unlike the dealerships at issue in that action, Plaintiffs never got to profit from selling TDIs before the emissions fraud was revealed. Opp. at 15. That is of no legal significance to the proximate cause question—"whether the alleged violation led directly to the plaintiff's injuries." Glob. Master Int'l, 76 F.4th at 1275 (citing Anza, 547 U.S. at 461).

  Thus, even if Plaintiffs have suffered a RICO injury to business or property, they have not established that any such injury was proximately caused by the emissions fraud scheme. Nor would the discovery that Plaintiffs seek in line with Federal Rule of Civil

8

Procedure 56(d)—namely, discovery as to the Bosch Defendants' work as a supplier to Volkswagen and their marketing efforts, see Opp. at 24–25—remedy these deficiencies. Even if the Bosch Defendants were to fully admit all the facts that Plaintiffs seek, that would not make Plaintiffs' alleged injuries any more direct or any less uncertain. See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig., 2019 WL 4581340, at *10 (N.D. Cal. Sept. 20, 2019) ("the 'central question' in analyzing proximate cause under RICO is not foreseeability, but whether the violation 'led directly to the plaintiff's injuries'" (quoting Anza, 547 U.S. at 461)).

### C. Illinois Civil Conspiracy

Plaintiffs' remaining claim is for civil conspiracy under Illinois law. Fraud claims under Illinois law require proof of "actual injury" that is "pecuniary in nature." Lewis v. Lead Indus. Ass'n, 178 N.E.3d 1046, 1056 (Ill. 2020) (citation omitted). Such injury must also be proximately caused by the defendant's misconduct—that is, it "must be the natural and not merely a remote consequence of the defendant's act." Turcios v. DeBruler Co., 32 N.E.3d 1117, 1125 (Ill. 2015) (citation omitted); see also Giammanco v. Giammanco, 625 N.E.2d 990, 1001 (Ill. App. 1993) ("in a fraud action 'a plaintiff may recover damages for any injury which is the direct and natural consequence of his acting on the faith of defendant's representations'" (citation omitted) (cleaned up)). As explained above, any pecuniary injury that Plaintiffs suffered was not a direct or natural consequence of the emissions fraud scheme or even Volkswagen's representations to Plaintiffs; it was the result of the discovery and publicization of the emissions fraud scheme and the resulting fallout. Thus, summary judgment is proper on Plaintiffs' civil conspiracy claim as well.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Bosch Defendants' motion for summary judgment.

**IT IS SO ORDERED.**

Dated: April 10, 2025



CHARLES R. BREYER
United States District Judge

9